# DOCKET NUMBER 23

ENTERED _____

FILED

SEP - 7 2005

CLERK, US BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
                              DEPUTY

1          UNITED STATES BANKRUPTCY COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3          JUDGE PETER W. BOWIE, PRESIDING

                              CERTIFIED COPY

5    IN THE MATTER OF:              NO. 05-05926-PB

6

7

8    FRANCIS J. LOPEZ

9

10

11   ALLEGED DEBTOR'S MOTION TO DISMISS OR TRANSFER

12   INVOLUNTARY PETITION TO THE NORTHERN DISTRICT OF FLORIDA

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDING

16

17

18               SAN DIEGO, CALIFORNIA

19            MONDAY, AUGUST 22, 2005

20

21   U.S. BANKRUPTCY COURT          BY COLLETTA JOHNSON, CSR,RPR
     DEPARTMENT THREE               CSR NO. 12589
22   325 WEST F STREET              FEDERAL COURT REPORTERS
     SAN DIEGO, CA 92101            325 WEST F STREET
23                                  SAN DIEGO, CA 92101
                                    (619) 474-3737
24

25

                                                        1

1                          APPEARANCES

2

3

4    FOR CREDITOR:              ROBBINS & KEEHN
                                BY:  L. SCOTT KEEHN
5                               530 B STREET, SUITE 2400
                                SAN DIEGO, CALIFORNIA 92101
6                               (619) 232-1700

7

8    FOR DEBTOR:                LAW OFFICE OF M. JONATHAN HAYES
                                BY:  M. JONATHAN HAYES
9                               21800 OXNARD STREET, #840
                                WOODLAND HILLS, CALIFORNIA 91367
10                              (818) 710-3656

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    SAN DIEGO, CALIFORNIA, MONDAY, AUGUST 22, 2005, 2:45 P.M.

2

3        MS. PEARSON:  FRANCIS J. LOPEZ, ALLEGED DEBTOR'S

4    MOTION TO DISMISS OR TRANSFER INVOLUNTARY PETITION TO

5    THE NORTHERN DISTRICT OF FLORIDA.

6        MR. KEEHN:  GOOD AFTERNOON, YOUR HONOR.  SCOTT KEEHN

7    FROM THE FIRM OF ROBBINS & KEEHN APPEARING ON BEHALF OF

8    PETITIONING CREDITOR, ALAN STANLY, WHO IS PRESENT AND AT

9    COUNSEL TABLE.

10       THE COURT:  OKAY.

11       MR. HAYES:  GOOD AFTERNOON, YOUR HONOR.  JONATHAN

12   HAYES, H-A-Y-E-S, FOR THE ALLEGED DEBTOR.

13       THE COURT:  MR. HAYES, YOUR MOTION.

14       MR. HAYES:  YOUR HONOR, THE MOTION ASKS THAT THE

15   INVOLUNTARY BANKRUPTCY BE DISMISSED AS A BAD FAITH

16   FILING AS A LITIGATION TACTIC, OR IN THE ALTERNATIVE,

17   ASK THE COURT TO ABSTAIN FROM HEARING THE INVOLUNTARY AT

18   ALL, OR IN THE ALTERNATIVE, ASK THAT THE CASE BE

19   TRANSFERRED TO FLORIDA BECAUSE THAT'S WHERE THE DEBTOR

20   LIVES.  THAT'S WHERE HIS CREDITORS ARE.  THAT'S WHERE

21   HIS FAMILY IS.  THAT'S WHERE HIS PROPERTY IS.

22           I DON'T KNOW HOW MUCH THE COURT WANTS.

23       THE COURT:  I'VE READ THE PAPERS.

24       MR. HAYES:  RIGHT.  I'M CERTAINLY WILLING AND READY

25   TO ANSWER ANY QUESTIONS THE COURT MAY HAVE.

1    THE COURT:  I ASSUME YOU APPRECIATE THAT I CAN'T

2 RELY ON YOUR CLIENT'S CONCLUSORY ASSERTION THAT THERE

3 ARE MORE THAN 12 CREDITORS TO SIMPLY USE THAT AS A BASIS

4 FOR DISMISSAL; RIGHT?

5    MR. HAYES:  YES.  I ACCEPT THAT.

6    THE COURT:  ALL RIGHT.

7    MR. HAYES:  I BELIEVE THERE IS MORE THAN AMPLE

8 EVIDENCE THAT IT'S A LITIGATION TACTIC.  THESE PARTIES

9 HAVE BEEN GOING AT IT FOR A FEW YEARS NOW.  THIS IS A

10 BUSINESS DIVORCE.  THERE IS LITIGATION PENDING NOW

11 BETWEEN THEM.  AND THIS INVOLUNTARY WILL THROW THAT OFF

12 THE TRACK, BRINGING IN A TRUSTEE.  IT JUST SEEMS TO BE

13 TRANSPARENT TO ME THAT THE PURPOSE OF THE BANKRUPTCY IS

14 NOT TO ALLOW MR. LOPEZ'S PROPERTY TO BE ADMINISTERED FOR

15 THE BENEFIT OF HIS CREDITORS.

16    THERE'S A COMMENT THAT -- WELL, I THINK THERE'S

17 FRAUDULENT CONVEYANCES, THAT IS SILLY FOR ONE THING, BUT

18 THERE'S NO EVIDENCE OF WHAT IT MIGHT BE; WHAT HE MIGHT

19 HAVE TRANSFERRED; WHERE IT MIGHT BE.  THERE'S THESE

20 PROPERTIES THAT THESE CORPORATIONS THAT THE TESTIMONY --

21 THE STATEMENTS IN THE DECLARATIONS -- ARE CONSISTENT

22 WITH THE TESTIMONY IN THE DEBTOR'S EXAM.  THEY'RE

23 DEFUNCT CORPORATIONS.

24    BUT IF THE COURT ISN'T WILLING TO JUST DISMISS

25 IT AS BEING IN BAD FAITH, THEN WE WOULD ASK THAT THE

1   CASE BE TRANSFERRED BACK TO FLORIDA AND MOVE THERE.

2   THAT'S WHERE HE LIVES NOW.  IT'S BEEN MORE THAN TWO

3   YEARS.  HE'S ONLY COME TO CALIFORNIA A COUPLE OF TIMES

4   SINCE.  THAT'S, FRANKLY, INVOLVED WITH THESE LITIGATION

5   MATTERS.  I PERSONALLY HAVE NEVER MET HIM.  THIS IS THE

6   SECOND MATTER I'VE HANDLED FOR HIM.  I KNOW HE

7   DOESN'T -- I SHOULD SAY --

8       THE COURT:  DOES HE REALLY EXIST?

9       MR. HAYES:  HE DOES.  SOMEBODY WITH HIS NAME CALLED

10  ME THIS MORNING, AND I RECOGNIZED IT WAS THE SAME VOICE

11  AS I HAD HEARD BEFORE.

12      THE COURT:  WHOEVER THAT IS; RIGHT?

13      MR. HAYES:  THANK YOU.

14          I CAN ANSWER MORE QUESTIONS.

15      THE COURT:  NO.  GO AHEAD MR. KEEHN.

16      MR. KEEHN:  THANK YOU, YOUR HONOR.  FIRST, YOUR

17  HONOR, BEFORE I ADDRESS THE ISSUES, I WANT TO THANK BOTH

18  THE COURT AND COUNSEL FOR THE ACCOMMODATION IN

19  SCHEDULING.  AND I THINK YOUR BROTHERS FORWARD OF

20  BROADWAY WILL THANK YOU AS WELL.  WE WERE SUCCESSFUL IN

21  OUT ATTEMPTS TO SETTLE THAT MATTER.

22          BUT ADDRESSING THESE ISSUES, YOUR HONOR, AND I

23  THINK IT'S FAIRLY CLEAR ON THE RECORD NOW THAT WE'RE NOT

24  REALLY SUGGESTING, AS THE MOVING PAPERS INDICATED, THAT

25  THE MATTER BE DISMISSED FOR LESS THAN 12 CREDITORS.  I

1  THINK EVERYONE UNDERSTANDS HOW THAT NEEDS TO BE PROVEN

2  UP.

3          AS FAR AS BAD FAITH LITIGATION TACTICS, YOUR

4  HONOR, I THINK A COUPLE OF THINGS THAT ARE IN THE RECORD

5  ARE INTERESTING TO NOTE.

6          FIRST, THERE WAS NO EVIDENTIARY OBJECTION TO OR

7  CONTROVERSY OVER THE FACTS EMBODIED IN MR. STANLY'S

8  DECLARATION, WHICH I THINK FAIRLY AND ADEQUATELY

9  ESTABLISHES BOTH FINDINGS AS FAR AS THIS CASE IS

10 CONCERNED.  IF YOU SEARCH THE RECORD OF THIS CASE, THE

11 ONLY CREDITOR THAT IS DISCLOSED AS TO IDENTITY AND

12 AMOUNT OF THE CLAIM IS MR. STANLY.  HIS CLAIM, AS THE

13 EVIDENCE SHOWS, IS A JUDGMENT CLAIM, PRINCIPAL AMOUNT OF

14 $50,000.  NOW, SOMEWHERE IN THE REPLY PAPERS, I BELIEVE,

15 THE CONTENTION IS ADVANCED THAT THIS IS SOMEHOW A

16 DISPUTED CLAIM.  WELL, AS YOU CAN SEE FROM EXHIBIT 1 TO

17 THE STANLY DECLARATION, IT'S THE RESULT OF THE JUDGMENT.

18 AND THERE'S NO STAY OF THE EXECUTION.

19         SO EVEN IF THE MATTER IS ON APPEAL, I THINK FOR

20 PURPOSES OF DETERMINING WHETHER THIS IS A BONA FIDE

21 DISPUTE, AS THAT TERM IS USED BY THE *BANKRUPTCY CODE*, IT

22 DOESN'T EXIST.

23         SO HERE WE HAVE THE ONLY CREDITOR WE REALLY

24 KNOW ABOUT IN THE MATTER, WHO HAS A FIVE-FIGURE CLAIM

25 THAT CAN'T FAIRLY BE CHARACTERIZED AS THE SUBJECT OF

1  CONTROVERSY.  WHO IS HERE.  WHO'S CLAIM ORIGINATED HERE

2  IN THE COURTS OF CALIFORNIA.  AND HE HAS FILED THE

3  BANKRUPTCY PETITION HERE FOR THE PURPOSE OF ATTEMPTING

4  TO COLLECT IT HERE.  AND I WILL GET INTO THIS IN A

5  LITTLE MORE DETAIL, BUT WHEN IT COMES TO THE QUESTION OF

6  WHETHER WHEN AN ORDER FOR RELIEF IS ULTIMATELY ENTERED

7  IN THIS CASE, AND SOME TRUSTEE IS SADDLED WITH THE

8  CONSIDERABLE UNDERTAKING OF SIFTING THROUGH MR. LOPEZ'S

9  HISTORY OF TRANSACTIONS AND EVENTS, HE WILL BE LOOKING

10  TO WITNESSES THAT ARE HERE IN CALIFORNIA.

11          NOW, I THOUGHT IT INTERESTING THAT COUNSEL SAID

12  THAT THERE WAS SOME VAGUE REFERENCE TO FRAUDULENT

13  TRANSFER, BUT HE DIDN'T HAVE ANY IDEA WHAT THAT IS.  I

14  FOUND THAT INTERESTING BECAUSE, AND I OFFERED THE PROOF

15  ON NOVEMBER 1ST OF 2004, MR. LOPEZ VERIFIED SUPPLEMENTAL

16  RESPONSES TO INTERROGATORIES IN THE STATE COURT ACTION

17  REFERRED TO AS *LOPEZ V. STANLY*.  WHAT WAS INTERESTING IN

18  HIS RESPONSE, SUPPLEMENTAL RESPONSE TO INTERROGATORY

19  9.1, WHICH I DIDN'T HAVE THE TEXT OF IT IN FRONT OF ME,

20  SO I HAD TO PARAPHRASE HIS ANSWER, BUT HE'S SAYING --

21      THE COURT:  IF IT WAS IN 9.1, IT MUST HAVE BEEN ONE

22  YOU WROTE; RIGHT?

23      MR. KEEHN:  IT MAY HAVE BEEN ONE OF THE -- I BELIEVE

24  IT WAS THE COURT'S, YOUR HONOR.  SO, NO, I CAN'T TAKE

25  CREDIT FOR THAT.  I WOULD LIKE TO.

1    BUT IT ADDRESSES DAMAGES.  AND HE CLAIMS

2  $50,000 OF DAMAGES AGAINST MR. STANLY BECAUSE HE HAD TO

3  SELL HIS HOME FOR $50,000 LESS THAN ITS FAIR MARKET

4  VALUE.  SO WHAT WE HAVE IS A JUDICIAL OMISSION BY THIS

5  ALLEGED DEBTOR THAT HE HAS SOLD HIS PRIMARY ASSET, HIS

6  RESIDENCE, FOR AT LEAST $50,000 -- THAT'S WHAT HE ADMITS

7  TO IT BEING -- UNDER THE MARKET.  HE ALSO SAYS IN THIS

8  DECLARATION THAT HE'S BEEN A FLORIDA RESIDENT SINCE JULY

9  OF 2003.  STILL THAT RESIDENCE OCCURRED SHORTLY BEFORE

10  MR. LOPEZ REMOVED HIMSELF TO FLORIDA.

11    NOW, THAT RAISES A REALLY INTERESTING PROBLEM

12  FOR WHATEVER TRUSTEE IS ULTIMATELY SADDLED WITH THE

13  BURDEN OF FIGURING OUT WHAT WAS WHAT WITH REGARD TO

14  MR. LOPEZ.  AND THE REASON THAT IT'S SUCH AN INTRIGUING

15  QUESTION IS BECAUSE SECTION 308 OF THE NOW FAMOUS

16  *BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT*,

17  MAKES IMMEDIATELY EFFECTIVE ITS AMENDMENTS TO SECTION

18  522(O).

19    NOW, THAT SECTION, THE COURT WILL RECALL,

20  PROVIDES A TEN-YEAR LOOK BACK FOR TRANSACTIONS,

21  BASICALLY, THAT RESULT IN DISPOSITIONS THAT MAY HAVE

22  BEEN MADE FOR THE PURPOSE OF HINDERING, DELAYING, OR

23  DEFRAUDING CREDITORS, AND NOW RESULTS IN A HOMESTEAD.

24    WELL, FLORIDA'S HOMESTEAD IS LEGENDARY UNDER

25  $25,000.  I CAN'T CITE YOU THE EXACT STATUTORY

1    PROVISION, BUT IF THE COURT WANTS IT, I CAN PROVIDE IT.

2    AND SO WE SEE THAT WITHIN A MONTH OF HIS ESTABLISHING

3    HIS RESIDENCE IN FLORIDA, MR. LOPEZ ADMITS TO SELLING

4    HIS HOMESTEAD HERE FOR LESS THAN FAIR VALUE AND ACQUIRES

5    A HOME IN FLORIDA WHERE HE CAN NOW CLAIM HIS $125,000

6    EXEMPTION.  NOW, WHAT THE AMENDMENT TO 522(O) PUTS INTO

7    THE HANDS OF THE TRUSTEE IS THE ABILITY TO SET ASIDE

8    $50,000 WORTH OF THAT EXEMPTION.

9         AND WHERE WILL THE WITNESSES COME FROM IF THE

10   TRUSTEE CHOOSES TO LITIGATE THAT ISSUE?  THEY'RE NOT IN

11   FLORIDA.  THEY'RE ALL IN CALIFORNIA.  THE REALTOR THAT

12   SOLD IT IS HERE IN CALIFORNIA.  ANY OF THE PARTIES THAT

13   MADE OFFERS TO MR. LOPEZ ARE HERE IN CALIFORNIA.  IN

14   OTHER WORDS, THE ONLY TRUSTEE THAT WOULD BE

15   DISADVANTAGED BY HAVING THE CASE MOVED TO FLORIDA IS THE

16   FLORIDA TRUSTEE.

17        AND I SUBMIT TO YOU THAT IF THIS CASE IS

18   TRANSFERRED TO FLORIDA, THAT TRUSTEE, BELEAGUERED AS HE

19   WILL BE WITH THIS CASE, IS MORE PROBABLY THAN NOT GOING

20   TO THROW UP HIS HANDS AND ABANDON ALL OF THESE POTENTIAL

21   CLAIMS.  AND YOU WILL HAVE ISSUES THAT COULD RESULT IN

22   SIGNIFICANT CONTRIBUTIONS TO THE ESTATE GOING UNATTENDED

23   TO.  WHY?  BECAUSE THE WITNESSES AREN'T IN FLORIDA.

24        BUT WE'RE NOT LEFT WITH JUST THE HOMESTEAD.

25   BECAUSE THERE IS A GAGGLE OF WITNESSES THAT PERTAIN TO

1    AN ASSET, WHICH ACCORDING TO, ONCE AGAIN, MR. LOPEZ'S

2    NOVEMBER 1ST RESPONSE TO SUPPLEMENTAL RESPONSE TO

3    INTERROGATORY 9.1, SAYS THAT HE DOESN'T KNOW FOR SURE,

4    BUT HIS DAMAGES RANGE SOMEWHERE -- AGAIN, MR. STANLY --

5    RANGE SOMEWHERE BETWEEN $800,000 AND A MILLION FIVE.

6          NOW, WHAT DAMAGES ARE THOSE?  THOSE ARE DAMAGES

7    THAT HE HAS ALLEGED IN THE ACTION PENDING IN SUPERIOR

8    COURT, THE LOPEZ V. STANLY ACTION.  EVERY WITNESS ON THE

9    WITNESS LIST IN THAT CASE, OTHER THAN MR. LOPEZ HIMSELF,

10   IS HERE IN CALIFORNIA.  AND IF, IN FACT, HIS CLAIMS ARE

11   VALID, AND I WILL FOOTNOTE FOR THE RECORD THAT WE

12   CONTEND THAT THEY ARE NOT, AND I'VE REVIEWED THE MATTER

13   WITH TRIAL COUNSEL FOR THAT ACTION AND SHARE HIS

14   CONFIDENCE THAT MR. STANLY WILL BE VINDICATED, AND THAT

15   THE ACTUAL OBLIGATIONS WILL GO IN THE OTHER DIRECTION.

16   BUT TWO MOST VALUABLE POTENTIAL SOURCES IN A THEORETICAL

17   CONTEST FOR THIS ESTATE, THE LITIGATION ITEM AND THE

18   HOMESTEAD ITEM.  WITNESSES HERE IN CALIFORNIA.

19          NOW, WE'RE NOT THROUGH YET BECAUSE I WILL

20   INDICATE TO THE COURT THAT AFTER REVIEWING THE REPLY, I

21   WENT BACK TO THE JUDGMENT DEBTOR'S EXAM, EXCERPTS OF

22   WHICH WERE INCLUDED IN OUR -- IN MR. STANLY'S --

23   DECLARATION, AND I WILL MAKE AS AN OFFER OF PROOF THAT

24   ON PAGES 49 TO 50 OF THAT EXAMINATION, MR. LOPEZ ADMITS

25   TO HAVING SOLD HIS ROLEX WATCH TO ONE OF HIS ATTORNEYS,

1    MR. FISCHBACH, FOR THE PRINCELY SUM OF $2,500.  NOW, I'M

2    NO EXPERT ON ROLEX WATCHES, BUT MY GUESS IS THAT ANY

3    TRUSTEE WORTH HIS SALT IS GOING TO WANT TO KNOW A LITTLE

4    BIT MORE ABOUT THAT TRANSACTION.  MR. FISCHBACH IS HERE

5    IN CALIFORNIA.

6          AT PAGES 55 AND 56, I'LL REPRESENT TO THE COURT

7    AND MAKE AS AN OFFER OF PROOF, MR. LOPEZ ADDRESSES THE

8    ISSUE OF A JAPANESE SUIT OF ARMOR THAT HE WAS KNOWN TO

9    POSSESS.  HE CLAIMS THAT HE SOLD IT IN 2003.  WHEN ASKED

10   DID HE SELL IT IN FLORIDA, HE ANSWERED, "NO."

11         SO WE KNOW SINCE HE DIDN'T SELL IT FLORIDA, HE

12   MUST HAVE SOLD IT IN CALIFORNIA.  AND HOW MUCH DID HE

13   SELL IT FOR?  AGAIN, THE STAGGERING SUM OF $1,500.  I

14   DON'T KNOW FROM JAPANESE SUITS OF ARMOR, BUT MY GUESS IS

15   ANY TRUSTEE LOOKING AT THIS CASE IS GOING TO WANT TO

16   KNOW A LITTLE BIT MORE ABOUT HOW THAT PRICE WAS DERIVED

17   AND WHAT EVIDENCE OF VALUE THERE MAY BE.

18         I SUBMIT TO YOU THAT THOSE TRANSACTIONS, ALL OF

19   WHICH BY MR. LOPEZ'S ADMISSION, HERE IN THE STATE OF

20   CALIFORNIA WILL NOT BE -- FIND ANY ENLIGHTENMENT FROM

21   WITNESSES IN THE STATE OF FLORIDA.

22         SO THE QUESTION THEN BECOMES, AS WE HAVE

23   INDICATED IN OUR PAPERS, IN TERMS OF VENUE SELECTION, I

24   THINK ONE POINT IS VERY SIGNIFICANT TO MAKE AT THE

25   OUTSET.  NO ONE ARGUES THAT THIS IS A TECHNICALLY

1   DEFECTIVE VENUE.  THE PENDENCY OF THE PRESENT BANKRUPTCY

2   CASE, THAT OF THE AFFILIATE, CLEARLY ESTABLISHES

3   PROPRIETY OF VENUE HERE IN THE SOUTHERN DISTRICT.

4        HAVING FILED THE CASE AS A CREDITOR'S REMEDY,

5   AND SOMETIMES WE GET SO WRAPPED UP IN THE DEBTOR RELIEF

6   ASPECT OF THE BANKRUPTCY CASE, THAT WE FORGET THAT FROM

7   THE STATUTES OF ELIZABETH I FORWARD, BANKRUPTCY LAWS IN

8   ENGLAND AND THE UNITED STATES HAVE VERY STRONG ROOTS AS

9   A CREDITOR'S REMEDY.  MR. STANLY IS A CREDITOR.  HE

10  WOULD LIKE TO BE PAID.  IF THAT'S BAD FAITH, IF THAT'S

11  WHAT'S EMBRACED WITHIN THE CONCEPT AS FAR AS MR. LOPEZ

12  SEES IT, THEN THIS IS IN BAD FAITH.  BUT ALL HE'S DOING

13  IS EXERCISING WHAT AMOUNTS TO A CREDITOR'S REMEDY OF

14  LAST RESORT.  THE CREDITOR'S REMEDY OF LAST RESORT ONLY

15  BECAUSE ALL OF THE CREDITORS THAT MR. LOPEZ HAS WILL

16  BENEFIT FROM THESE PROCEEDINGS IN THE EVENT THAT A COURT

17  ORDER FOR RELIEF IS ENTERED.

18       SO THE CASE LAW THAT WE HAVE CITED IN OUR

19  OPPOSING PAPERS, AND I DON'T THINK THERE'S ANY

20  ARGUMENT -- I SAW NO ARGUMENT TO THIS IN THE REPLY, NONE

21  AT ALL -- THAT ONCE YOU HAVE A CASE WHERE YOU CAN SAY

22  THAT THE VENUE IS PROPER, AS A MATTER OF LAW IT'S NOT

23  IMPROPER, THEN YOU LOOK TO THE CONVENIENCE OF THE

24  PARTIES AND THE WITNESSES.

25       NOW, WE ARE HERE TODAY, TWO PARTIES ARGUING IN

1    A CASE THAT WILL ENCOMPASS OTHER PARTIES WHO ARE

2    CREDITORS.  WE'LL KNOW WHO THEY ARE WHEN MR. LOPEZ FILES

3    HIS SCHEDULES.  AND THEY'RE ALL GOING TO BE BENEFITTED

4    BY THE ACTION HERE.  I THINK THAT IT IS NOT THE

5    TRANSACTIONS, OCCURRENCES, AND EVENTS THAT MR. LOPEZ HAS

6    ENGAGED IN SINCE HE LEFT THIS JURISDICTION THAT WILL

7    EVER BE MUCH OF AN ISSUE.  MUCH MORE OF AN ISSUE WILL BE

8    THE TRANSACTIONS, OCCURRENCES, AND EVENTS THAT OCCURRED

9    IN THE TEN-YEAR PERIOD 19 -- EXCUSE ME -- FROM 1995 TO

10   2003 PERIOD WHEN HE WAS DOING BUSINESS HERE IN THE

11   SOUTHERN DISTRICT OF CALIFORNIA.  THOSE ARE THE

12   TRANSACTIONS AND EVENTS THAT ARE GOING TO BE RELEVANT.

13          AND TWO OF THE CASES THAT HAVE CLOSE PARALLEL

14   TO OUR SITUATION HERE, THE *WAXELBAUM* CASE AND *KONA JOINT*

15   *VENTURES* CASE -- EXCUSE ME.  THE BANKRUPTCY COURT FROM

16   HAWAII, AT LEAST WITHIN THE NINTH DISTRICT, POINTS OUT

17   THAT'S REALLY THE KEY.  WHERE ARE THOSE WITNESSES GOING

18   TO BE?  I HAVEN'T SEEN ANY EVIDENCE IN THE FORM OF A

19   DECLARATION.  AND I HAVEN'T HEARD ANY ARGUMENT THAT IT

20   ISN'T ENTIRELY CONCLUSIONARY.  AND THAT INDICATES THAT

21   THE CONVENIENCE OF THE PARTIES, OR IN THIS CASE, THE

22   VERY PURPOSE FOR WHICH INVOLUNTARY PROCEEDING HAS BEEN

23   INITIATED.  AND THAT IS TO PUT OUR ARMS AROUND WHATEVER

24   ASSETS MR. LOPEZ HAS AT THE MOMENT, AND SEE TO IT THAT

25   THEY ARE FULLY AND FAIRLY ADMINISTERED IN ACCORDANCE

1   WITH THE BANKRUPTCY LAWS OF THE UNITED STATES.

2           NOW, IN HIS DECLARATION, HIS REPLY DECLARATION,

3   MR. LOPEZ INDICATES, FOR EXAMPLE, THAT HIS INTEREST IN

4   CAMBRIA HOLDINGS HAS NO VALUE.  IT'S DEFUNCT.  HE SAYS,

5   "IT HOLDS NO ASSETS."

6           HE DOESN'T SAY, I THINK THEY HOLD NO ASSETS.

7   HE SAYS, "NO ASSETS."

8           WE ARE GOING TO PROVE, AND I'VE CONFIRMED

9   THROUGH THAT ENTITY'S CPA, TAX RETURNS HAVE BEEN FILED

10  THAT SHOW ASSETS IN THAT ENTITY.  HIS INTEREST IN THAT

11  ENTITY IS AN ASSET THAT CAN BE SOLD.  HIS INTEREST IN

12  PRISM, WHICH AT FIRST BLUSH, ONE COULD HAVE SOME

13  SYMPATHY FOR HIS CONTENTION THAT PRISM IS A CHAPTER 7

14  DEBTOR ITSELF; AND, THEREFORE, IT HAS NO VALUE.

15          I WOULD OFFER TO PROVE, YOUR HONOR, THAT

16  MR. STANLY HIMSELF, THE OTHER 50 PERCENT SHAREHOLDER,

17  HAS AN INTEREST IN PURCHASING THE REMAINING 50 PERCENT.

18  I THINK THE RECORD THAT WE PROVIDED IN CONNECTION WITH

19  MR. STANLY'S DECLARATION, THE FINDINGS OF FACT WHERE HE

20  PURCHASED ASSETS OUT OF PRISM, CORROBORATED HIS

21  CONTENTION THAT HE HAS AN INTEREST IN ACQUIRING THAT

22  ENTITY.  THAT ENTITY, I'M TOLD, HAS LOST CARRYFORWARD

23  ATTRIBUTES THAT WOULD BE USEFUL IN THE HANDS OF A SOLE

24  SHARE.  MR. STANLY IS A CANDIDATE FOR THAT.  AND HE HAS

25  DEMONSTRATED IN THE PAST HIS WILLINGNESS AND ABILITY TO

14

1  PAY FOR THINGS OUT OF BANKRUPTCY, WHICH GOES TO THE

2  BENEFIT OF ALL CREDITORS.  AND SO THAT, TOO, IS A REASON

3  FOR MAINTAINING THE ACTION HERE IN PARALLEL WITH THE

4  *PRISM* ACTION.

5       AND, OF COURSE, AS INDICATED IN OUR OPPOSING

6  PAPERS, IT'S ENTIRELY POSSIBLE THAT THERE WILL BE

7  FURTHER ACTIONS IN THE *PRISM* CASE INITIATED BY

8  MR. STANLY TO COMPEL THE COMPLIANCE WITH ORDERS MADE BY

9  JUDGE MEYERS IN CONNECTION WITH THE SALE OF ASSETS TO

10  HIM.

11       AS RECENTLY AS LAST WEEK, MR. LOPEZ FILED

12  SUBSTANTIAL DECLARATIONS AND OTHER OPPOSITION IN THE

13  *LOPEZ V. MARTIN* CASE.  HE SEES VALUE THERE.  I SUBMIT TO

14  YOU THAT WHEN AN ORDER FOR RELIEF IS ENTERED, A TRUSTEE

15  SHOULD LOOK AT THAT CASE.  AND HE CAN'T DO THAT

16  EFFECTIVELY FROM FLORIDA.

17       I THINK, IN SUM, OTHER THAN JUST A

18  CONCLUSIONARY ALLEGATION THAT THIS IS A LITIGATION

19  TACTIC, THERE'S NO EVIDENCE THAT SUPPORTS THAT CHARGE.

20       NOW, I UNDERSTAND THE HEAT THAT'S GENERATED BY

21  LITIGATION.  I ALSO UNDERSTAND THE PROPENSITY OF A

22  WITNESS WHO IS A PARTY TO THAT LITIGATION CAUGHT UP IN

23  ALL OF ITS NUANCES.  HE TENDS TO VIEW HIS ADVERSARY WITH

24  GREAT SUSPICION.  AND SO IT DOESN'T SURPRISE ME THAT THE

25  KNEE-JERK ACTION OF MR. LOPEZ TO THIS EXERCISE OF THE

1    CREDITORS' REMEDY IS:  WELL, THIS MUST BE ANOTHER BAD

2    FAITH TACTIC.

3         WELL, YOU HEARD FROM COUNSEL DURING HIS

4    PRESENTATION.  YOU HEARD HIM SAY THAT WE'RE TRYING TO

5    "DERAIL THAT LITIGATION."  AND I THINK THAT WE HAVE

6    SUBMITTED IN OPPOSITION SUBSTANTIAL EVIDENCE TO COUNTER

7    THAT NOTION.  THERE WAS THE CORRESPONDENCE BOTH FROM OUR

8    OFFICE AND FROM MR. DILLON'S OFFICE, THE STATE COURT

9    COUNSEL, THAT WERE APPENDED TO MR. STANLY'S DECLARATION.

10        AND THEY ESTABLISHED TWO THINGS.  THAT, NUMBER

11   ONE, MR. STANLY IS PREPARED TO STIPULATE THAT THOSE

12   MATTERS CAN GO FORWARD SO THAT THERE WOULDN'T BE A

13   DELAY.  THE REQUEST FOR THAT STIPULATION WAS REBUFFED.

14        MR. STANLY ALSO HAD OFFERED -- TRIED -- TO GET

15   AN AGREEMENT AMONG COUNSEL TO CONCEDE THAT WHICH THE

16   CASE LAW PROVIDES.  AND THAT IS THAT A DEFENDANT IN AN

17   ACTION WHERE THE TITLE 11 DEBTOR IS THE PLAINTIFF, IS

18   NOT PRECLUDED BY THE AUTOMATIC STAY FROM THE DEFENSIVE

19   ACTION OF A SUMMARY JUDGMENT MOTION AGAINST THE

20   PLAINTIFF'S CASE.  AND, OF COURSE, THAT'S THE REASON

21   THAT THAT ISSUE WAS PUT BEFORE JUDGE MOOREFIELD, I

22   BELIEVE IT IS, IN THE STATE COURT, WHO CONCURRED WITH

23   THE AUTHORITIES THAT WERE PRESENTED.  AND THAT'S WHY THE

24   SUMMARY MOTION JUDGMENT AGAINST THE DEBTOR'S ACTION IS

25   PROCEEDING TO HEARING SOMETIME MID-SEPTEMBER.

1    BUT MR. STANLY HAS NEVER DONE ANYTHING TO

2  "DERAIL THAT LITIGATION."  AND HE DOESN'T INTEND TO.

3  HE'S PERFECTLY HAPPY TO PROCEED AT A PACE WITH THE

4  TRIAL.  AND IN THAT CASE, THE TRUSTEE HERE OR FLORIDA OR

5  ANYWHERE WILL BE HANDED AN ADJUDICATION AS TO WHAT THAT

6  ASSET, IF IT EXISTS, IS.  SO THERE'S NO INTENTION TO

7  DELAY THAT'S SUPPORTED BY THE EVIDENCE.

8    THERE'S NO EVIDENCE THAT SUPPORTS A FINDING OF

9  BAD FAITH.  WHAT MR. STANLY HAS DONE IS HE HAS ACTED

10  QUICKLY TO ENFORCE HIS CREDITOR'S RIGHTS, AS HE SEES

11  THEM, BEFORE HIS FEARS THAT MR. LOPEZ MAY SEEK READ

12  ASSETS OR OTHERWISE PUT THEM BEYOND THE REACH OF HIS

13  CREDITORS OR HIS TRUSTEE CAN COME TO FRUITION.  AND,

14  TOO, BROUGHT THIS MATTER BEFORE THE COURT AS PROMPTLY AS

15  HE COULD IN THE HOPES THAT AS FEW AS POSSIBLE OF THE

16  POTENTIALLY AVOIDABLE TRANSACTIONS THAT MR. LOPEZ HAS

17  WOULD RIPEN TO A POINT WHERE THEY WERE BEYOND THE

18  STATUTES OF LIMITATION.  THE OTHER SIDE OF A CREDITOR'S

19  REMEDY IS NOT BAD FAITH.  THERE IS NO, ABSOLUTELY NO,

20  EVIDENCE OF BAD FAITH.

21    AND ONE FINAL OFFER OF PROOF.  AND I MAKE THIS

22  AS AN OFFER OF PROOF BECAUSE I'VE ONLY SEEN THE

23  CONFIRMING FACTS FROM THE ALTERNATIVE RESOLUTION

24  COMPANY, I BELIEVE IT IS, THE ENTITY THAT EMPLOYED THE

25  PRIVATE MEDIATOR, THAT VERIFIED THAT THEY ARE STILL OWED

1    IN THE NEIGHBORHOOD OF $1,500.  SO THERE'S ANOTHER

2    CALIFORNIA CREDITOR TO BE BENEFITED.  CALIFORNIA

3    CREDITORS ARE THE ONLY ONES WE KNOW BY NAME.  MR. STANLY

4    IS LIKELY TO BE THE LARGEST IN THE CASE.  AND I THINK

5    HIS FORUM SELECTION, UNDER THE CONTROLLING PRINCIPALS,

6    HAS TO BE GIVEN DEFERENCE.

7            AND THERE IS ABSOLUTELY NO EVIDENCE, NONE, THAT

8    SUPPORTS THE NOTION THAT THE CREDITORS OF THIS ESTATE,

9    IF AN ESTATE IS CREATED BY ORDER OF RELIEF, WILL BENEFIT

10    BY A TRANSFER TO FLORIDA.  MR. LOPEZ WILL BE THE SOLE

11    BENEFICIARY OF THAT WINDFALL.

12        THE COURT:  MR. HAYES.

13        MR. HAYES:  THANK YOU, YOUR HONOR.

14            FIRST OF ALL, I'D LIKE TO OBJECT TO THE BULK OF

15    MR. KEEHN'S TESTIMONY UP HERE.  VERIFIED INTERROGATORIES

16    9.1, I HAVEN'T SEEN THAT.  IT ISN'T IN ANY OF THE

17    PAPERS.  THERE WAS TESTIMONY ABOUT HIS HOME BEING SOLD

18    BEFORE FILING.  I DIDN'T KNOW THAT.  IT WAS NOT IN THE

19    PAPERS.  I DIDN'T ASK.  I DIDN'T KNOW THAT THERE'S THIS

20    ROLEX WATCH SOLD FOR $2,000.  AND THAT'S MR. KEEHN'S

21    GUESS THAT IT'S WORTH MORE THAN THAT.  THERE'S TAX

22    RETURNS FROM HIS CPA FOR -- I DIDN'T GET THE NAME OF THE

23    COMPANY -- BUT OTHER SUBSTANTIAL DECLARATIONS FILED

24    RECENTLY.

25            BUT WHAT WAS REALLY INTERESTING TO ME IS THAT

1  THEY DID TAKE MR. LOPEZ'S DEBTOR'S EXAM IN FLORIDA.

2  THEY ATTACHED A COUPLE PAGES OF IT TO THE MOTION -- TO

3  THE OPPOSITION.  PRESUMABLY, ALL OF THAT WOULD HAVE BEEN

4  IN THERE.  DID YOU SELL YOUR HOUSE?  HOW MUCH DID YOU

5  GET FOR IT?  HOW MUCH DID YOU SELL IT FOR, THE AMOUNT?

6  DID YOU SELL ANYTHING ELSE IN THE LAST YEAR?  HAVE YOU

7  SOLD ANYTHING IN FIVE YEARS?  PRESUMABLY, THEY WOULD

8  HAVE ASKED THAT, AND IT WOULD HAVE BEEN IN THE DEBTOR'S

9  EXAM.  THEY WOULD HAVE HAD SOMETHING TO ATTACH.

10  MR. KEEHN'S SAID THIS IS A HISTORY OF TRANSACTIONS AND

11  EVENTS.  WHY ISN'T IT IN THERE?  AND I'LL OBJECT AND ASK

12  THAT THE COURT STRIKE ALL OF THAT TESTIMONY.

13         BUT GETTING BEYOND THE OBJECTION, I THINK

14  MR. KEEHN SAID THAT MR. LOPEZ IS ALLEGING MILLIONS OF

15  DOLLARS, OR, I GUESS, $1,800,000 IN DAMAGES IN THIS

16  LITIGATION.  ACTUALLY, I DIDN'T REALIZE THAT.  I HAVEN'T

17  BEEN INVOLVED IN THE LITIGATION.

18         BUT, I MEAN, IT JUST POPPED OUT AT ME AS SO

19  OBVIOUS, THE MOTIVATION AT THIS POINT.  HE'S BEING SUED

20  FOR A MILLION DOLLARS.  IF THERE'S A CHAPTER 7, HE'LL

21  HAVE SOMEBODY TO NEGOTIATE WITH AND TO GET THAT TO GO

22  AWAY FOR, HOPEFULLY, SOME -- YOU KNOW, THERE WILL BE A

23  NEW FACE ON WHO'S AFTER HIM.  IT WILL BE THE TRUSTEE.

24  THAT SHOWS THAT IT IS LITIGATION STRATEGY.

25         THE SECTION 522(O), AND THAT WORKS NO MATTER

1   WHAT STATE THE BANKRUPTCY IS IN, IF THERE'S AN OBJECTION

2   TO THE HOMESTEAD EXEMPTION ON THE HOME THAT HE OWNS IN

3   FLORIDA, THAT APPLIES NO MATTER WHICH STATE THE

4   BANKRUPTCY IS IN.  IT'S IRRELEVANT TO HOW THE HOMESTEAD

5   WORKS, AT LEAST, UNDER SECTION 522(O).

6        BUT I WOULD LIKE TO MAKE ONE LAST COMMENT.  I

7   DIDN'T FILE AN EVIDENTIARY OBJECTION TO MR. STANLY'S

8   DECLARATION.  60 PERCENT OF IT, AT LEAST, IS ARGUMENTS,

9   AND IT'S COMPLETELY OBJECTIONABLE, BUT I'M TRYING TO

10  FOCUS JUST ON THE INCREDIBLE UNFAIRNESS TO AN INDIVIDUAL

11  LIVING IN FLORIDA WITH HIS FAMILY HAVING TO GET STUCK

12  WITH GOING THROUGH A BANKRUPTCY IN CALIFORNIA.  I'M

13  REALLY TRYING TO KEEP HIS COSTS DOWN.  THAT'S WHY I

14  LIMITED THE MOTION TO WHAT IT IS.  AND I DIDN'T FILE AN

15  EVIDENTIARY OBJECTION.

16        BUT DOES THE COURT HAVE ANY QUESTIONS OF ME?

17     THE COURT:  NOPE.

18     MR. HAYES:  THANK YOU.

19     THE COURT:  ALL RIGHT.  WELL, I'LL TELL YOU MY VIEW.

20  FIRST OFF, IT'S 1412 OF TITLE 28 THAT GOVERNS TRANSFER

21  OF CASES UNDER TITLE 11 AS DISTINCT FROM TRADITIONAL

22  CIVIL CASES, WHICH IS 1404.  AND IT DOESN'T INCLUDE

23  CONVENIENCE OF WITNESSES AS ONE OF THE GROUNDS

24  INTERESTINGLY.  IT'S NOT AS BROAD AS 1404(A) IS.

25  INDEED, THERE'S A BRAND NEW CASE OUT OF THE NINTH

1  CIRCUIT THAT HAS JUST COME DOWN THAT DISCUSSES IT

2  SOMEWHAT.

3      I'M SATISFIED THAT ON THE PRESENT RECORD, THERE

4  IS NO BASIS FOR DISMISSAL OF THIS INVOLUNTARY PETITION.

5  THAT'S FIRST.

6      SECONDLY, THE REQUEST HAS BEEN MADE THAT I

7  ABSTAIN.  BUT THERE IS NOTHING FOR ME TO ABSTAIN IN

8  FAVOR OF.  ABSTENTION WORKS IF THERE WERE AN ADVERSARY

9  PROCEEDING PENDING AS PART OF THIS, AND THERE WAS

10  ALREADY A PROCEEDING PENDING SOMEWHERE ELSE THAT COULD

11  GET THROUGH IT EXPEDITIOUSLY AND RESOLVE THAT QUESTION.

12  THERE IS NO OTHER PLACE THAT HAS JURISDICTION.

13      SO WE'RE REALLY ONLY TALKING ABOUT TRANSFERRING

14  VENUE IN THIS CONTEST.  AND I'M NOT PREPARED ON THIS

15  RECORD TO SAY THERE'S A BASIS FOR DOING SO.  BUT I LEAVE

16  IT OPEN FOR US TO CONSIDER.

17      IT SEEMS TO ME THAT IF MR. LOPEZ WANTS TO FIND

18  OUT WHETHER THERE'S ANYTHING HERE, STEP ONE MAY BE TO

19  AGREE TO ENTRY OF AN ORDER FOR RELIEF.  WE GET A CHAPTER

20  7 TRUSTEE IN THERE, AND THEN WE FIND OUT.

21      ONE OF YOUR CONCERNS, MR. HAYES, IS THIS NOTION

22  THAT THE TRUSTEE CAN NEGOTIATE FOR THE VALUE OF

23  MR. LOPEZ'S CAUSE OF ACTION AGAINST MR. STANLY, AND THAT

24  MR. STANLY MAY BE ABLE TO BUY HIS PEACE THROUGH THE

25  TRUSTEE.  IF, IN FACT, THE ONLY LIABILITIES THAT

1  MR. LOPEZ HAS ARE THIS $50,000 OWED ON THE STANLY

2  JUDGMENT, AND A FEW OTHER THINGS, THEN MR. LOPEZ WOULD

3  BE RECOGNIZED AS HAVING AN INTEREST, BECAUSE IN THEORY

4  IT COULD BE A SOLVENT ESTATE IN DISCUSSING WHAT COULD

5  HAPPEN TO THAT CAUSE OF ACTION.  NOTE THAT THERE IS SOME

6  RESIDUAL BORNE IN THAT CONTEXT BECAUSE HE WOULD HAVE AN

7  INTEREST IN THAT CIRCUMSTANCE.  IT'S ONLY WHEN WHATEVER

8  THE TRUSTEE CAN GET FOR IT IS GOING TO BE LESS THAN

9  WHAT'S OWED BY THE ESTATE THAT THE DEBTOR ENDS UP HAVING

10 NO INTEREST AND IS UNABLE TO PARTICIPATE IN THAT PROCESS

11 IN ANY KIND OF MEANINGFUL WAY.  BUT GIVEN THOSE KINDS OF

12 NUMBERS AND SO ON, AND GIVEN THE DEBTOR'S THEORY OF WHAT

13 IT MAY BE WORTH, THERE MAY WELL BE SOMETHING THERE THAT

14 WOULD BE RESIDUAL.  AND SO THE DEBTOR IS NOT CLOSED OUT

15 FROM JUST PARTICIPATING IN THAT PROCESS IF, IN FACT,

16 THAT IS SOMETHING THAT OCCURRED.  I HAVE NO IDEA WHETHER

17 THAT WILL OCCUR.

18      SO AT THIS POINT IN TIME, THE MOTION TO CHANGE

19 VENUE WILL BE DENIED, AS WILL THE MOTION TO DISMISS, AND

20 ABSTAIN.  BUT THAT WILL BE WITHOUT PREJUDICE.  AND WE'LL

21 TAKE ANOTHER LOOK AT IT.  IF, IN FACT, WE WIND UP IN A

22 FEW -- IN A SHORT PERIOD OF TIME IN A MONTH OR TWO, THE

23 TRUSTEE SAYS THERE'S NOTHING HERE THAT I WANT TO PURSUE

24 AND FILES A REPORT OF NO DISTRIBUTION, THAT WE MAY

25 EITHER -- YOUR CLIENT MAY EITHER HAVE A DISCHARGE OR

1    WILL HAVE A BASIS FOR TRANSFER BECAUSE OF THE THINGS

2    THAT MR. KEEHN HAS PARADED AS BEING POSSIBLE BASES FOR

3    RECOVERY FOR THE BENEFIT OF CREDITORS BY A TRUSTEE,

4    TRUSTEE IS DETERMINED NOT TO PURSUE FOR WHATEVER REASON.

5        MR. HAYES:  I HAVE A RIGHT TO FILE AN ANSWER; RIGHT?

6        THE COURT:  OH, ABSOLUTELY.  SURE.

7        MR. HAYES:  AND A TRUSTEE ISN'T GOING TO BE

8    APPOINTED UNLESS THERE'S A MOTION.

9        THE COURT:  NO.  THERE'S GOING TO BE -- WELL, NO,

10   ONCE THERE'S AN ORDER FOR RELIEF IN A 7, A TRUSTEE WILL

11   BE APPOINTED.

12       MR. HAYES:  ABSOLUTELY.  BUT YOU'RE NOT ENTERING AN

13   ORDER.

14       THE COURT:  NO.  YOU GET TO FILE AN ANSWER AND

15   CONTEST IT.  BUT, YOU KNOW, IF YOU FILE AN ANSWER AND

16   CONTEST IT, THEN THERE WILL BE DISCOVERIES AS TO THE

17   FACTS ON WHICH YOU PREDICATE YOUR ANSWERS.

18       MR. KEEHN:  YOUR HONOR, JUST A POINT OF

19   CLARIFICATION, I UNDERSTAND CRYSTAL CLEAR THE DENIAL OF

20   THE VENUE MOTION IS WITHOUT PREJUDICE.  BUT THAT WITHOUT

21   PREJUDICE TAG DOESN'T GO TO THE OTHER TWO MOTIONS.

22       THE COURT:  WELL, AS TO ABSTAIN, THERE'S NOTHING TO

23   ABSTAIN IN FAVOR OF.  AND AS TO THE MOTION TO DISMISS ON

24   THE GROUNDS THAT IT'S BAD FAITH AT THIS POINT IN TIME --

25   I MEAN, IF SUBSEQUENTLY SOMETHING TURNS UP THAT

1  PERSUADES ME THAT IT IS, I'D EXPECT TO HEAR ABOUT IT

2  FROM MR. HAYES.

3      MR. HAYES:  WELL, WOULD THE COURT GIVE ME A DEADLINE

4  TO FILE AN ANSWER?  I MEAN, I DON'T THINK THERE'S A

5  STATUTORY DEADLINE.

6      MR. KEEHN:  YOUR HONOR, IF THEY FILED FROM THE TIME

7  THE SUMMONS WAS SERVED, THEY GET 30 DAYS.  THEY HAVE NOW

8  KNOWN ABOUT IT FOR A COUPLE OF MONTHS.  I WOULD THINK

9  IT'S FAIR IF AN ANSWER WAS FILED 15 DAYS FROM TODAY'S

10  DATE.

11      MR. HAYES:  OKAY.

12      THE COURT:  IS 15 DAYS COMFORTABLE WITH YOU?

13      MR. HAYES:  YES.

14      THE COURT:  OKAY.  THAT WOULD MAKE IT THE 6TH OF

15  SEPTEMBER, WHICH IS A TUESDAY, THE FIRST DAY AFTER LABOR

16  DAY.

17      MR. HAYES:  YOUR HONOR, COULD YOU MAKE IT THE 7TH?

18      THE COURT:  SURE.  I HATE DEADLINES THAT FALL AFTER

19  THREE-DAY WEEKENDS MYSELF.  AND I HAVE NO PROBLEM WITH

20  THAT ACCOMMODATION.

21      MR. HAYES:  I HAVE TO MAIL IT, SO IT WOULD BE --

22  ANYWAY, THE 7TH IS GREAT.

23      THE COURT:  OKAY.

24      MR. HAYES:  THANK YOU.

25      THE COURT:  WE'LL SEE YOU ANON.

1       MR. HAYES:   MR. KEEHN WILL SUBMIT AN ORDER?

2       MR. KEEHN:   YES.  I WILL.   I DO HAVE A PROPOSED FORM

3   OF ORDER.

4       MR. HAYES:   THANK YOU, YOUR HONOR.

5       MR. KEEHN:   THANK YOU, YOUR HONOR.

6       THE COURT:   ALL RIGHT. WE'LL BE IN RECESS.

7            (PROCEEDINGS CONCLUDED AT 3:20 P.M.)

8                        -OOO-

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO


I, COLLETTA JOHNSON, HEREBY CERTIFY:


THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE

FOREGOING CAUSE ON THE 22ND DAY OF AUGUST, 2005;

THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING

UNDER MY DIRECTION AND THAT THE FOREGOING 25 PAGES

CONTAIN A CORRECT STATEMENT OF THE PROCEEDINGS.


DATED THIS 5TH DAY OF SEPTEMBER, 2005.




COLLETTA JOHNSON
CSR NO. 12589

26