# DOCKET NUMBER 32

1   L. Scott Keehn (61691)
    Sarah H. Lanham (213555)
2   **ROBBINS & KEEHN, APC**
    A Professional Corporation
3   530 "B" Street, Suite 2400
    San Diego, California 92101
4   Telephone: (619) 232-1700

5   Attorneys for Petitioning Creditor
    **ALAN STANLY**

6

7

8               **UNITED STATES BANKRUPTCY COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                              )   **Case No. 05-05926-PBINV**
                                        )
12                                      )   **Involuntary Chapter 7**
    FRANCIS J. LOPEZ, an individual,    )
13                                      )   **MEMORANDUM OF POINTS AND**
            Alleged Debtor.             )   **AUTHORITIES IN OPPOSITION TO**
14                                      )   **MOTION BY ALLEGED DEBTOR FOR AN**
                                        )   **ORDER BIFURCATING TRIAL RE**
15                                      )   **INVOLUNTARY PETITION; SETTING**
                                        )   **DEADLINE TO ADD NEW PETITION**
16                                      )   **CREDITORS; AND REQUIRING THE**
                                        )   **POSTING OF A BOND**
17                                      )
                                        )
18                                      )   **Date:**    December 19, 2005
                                        )   **Time:**    10:00 a.m.
19                                      )   **Judge:**   Hon. Peter W. Bowie
                                        )   **Dept.:**   Four (4)
20  _____)

21

22          Petitioning creditor Alan Stanly ("Stanly") respectfully submits this memorandum of

23  points and authorities in opposition to the "Motion by Alleged Debtor for an Order Bifurcating

24  Trial re Involuntary Petition; Setting Deadline to Add New Petition Creditors; and Requiring the

25  Posting of a Bond" (the "Motion") filed by Francis J. Lopez, an individual and the alleged debtor

26  herein ("Lopez") Motion to Dismiss or Transfer Involuntary Petition (the "Motion").  In

27  opposition to the Motion Stanly represents as follows:

28  / / /

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9995

# I.

# INTRODUCTION

Lopez has moved to bifurcate the trial in the case, but it appears that he has *missed the point* as to the purpose of bifurcation. The purpose of such a motion — to provide judicial economy and conserve the resources of the parties — is not served where, as here, the issues presented in each of the proposed phases of trial are established by much of the same evidence. The very evidence that will establish whether or not a given claimant is to be included in the count of creditors for purposes of § 303(b)(2)[1] also sheds much light on whether or not the debtor is generally paying his debts as they come due. The economies which are the ultimate objection of bifurcation cannot be achieved where the underlying factual questions are so heavily intertwined.

The request for a bond is equally flawed. It ignores the fact that Stanly holds an interest bearing judgment in the principal amount of $50,000.00 which would have to be exhausted by setoff before any out of pocket payment would be necessary. It also ignores the fact that Lopez has made no showing of the existence or probable existence of facts which would justify an award of attorneys fees or costs against him as the petitioning creditor.

The premature nature of Lopez' request for cutoff dates is demonstrated by his established history of using abusive discovery tactics to hinder, delay and frustrate the progress of litigation against him. The unarticulated premiss of the request is that Mr. Lopez can be expected to give full and timely responses to the discovery requests that will be promulgated in connection with this action. But his track record undermines the viability of that assumption. That renders the request for any form of cutoff both premature and ill-advised.

Simply put, there is no portion of the motion which is well taken, and all of its relief should be denied.

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

**Stanly and Lopez' Prior Business Relationship:**

In or about August 1994, Stanly formed Computer Handyman, Inc., later renamed Prism Advanced Technologies, Inc. ("Prism"). In 1996, Stanly gave Lopez 50% of the corporation, and

---

[1]     Unless otherwise indicated all section references are to Title 11 United States Code.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1   they began conducting business together.  Stanly was Chairman and President, while Lopez was

2   its CFO, Vice Chairman and Vice President.  Lopez later created and assumed the titles of CEO

3   and CFO.[2]  Prism is a California corporation that made and sold primarily transportation software,

4   and sold such software, as well as computer hardware and services.  Stanly is a computer

5   programmer by trade and created the software that became the basis of Prism's products.[3]

6       In or about November, 2002, through March, 2003, a dispute arose between Stanly and

7   Lopez concerning certain corporate expenditures Lopez made for personal purposes.  Stanly also

8   discovered that Lopez had formed a competing business venture and had used Prism's money to

9   fund it.  Confronted with Stanly's awareness of his improper conduct, Lopez chose to attack rather

10  than defend, and filed a number of actions against Stanly in the Superior Court of San Diego

11  County.[4]

12  **The Superior Court Actions:**

13      The first case filed was *Prism Advanced Technologies, Inc. and Lopez v. Stanly*, San Diego

14  Superior Court Case Number GIN 028765 filed on April 3, 2003 (the "Receivership Case").  In

15  this case Lopez (acting on behalf of Prism) claimed civil harassment and sought to have Stanly

16  excluded from the business premises.[5]

17      Just one month later, May 14, 2003, Lopez filed another action against Stanly entitled

18  *Lopez and Prism Advanced Technologies, Inc. v. Stanly*, San Diego Superior Court Case Number

19  GIN 029692 (the "Lopez v. Stanly Action").  In this case Lopez brought causes of action against

20  Stanly for money damages.[6]

21      Just over a month later, two of Prism's creditors commenced based on breach of contract.

22  The first is entitled *Union Bank of California v. Lopez*, San Diego Superior Court Case Number

23  GIN 030827 (the "UBOC Action") and *Pacific Carlsbad Partners, LLC v. Prism Advanced*

24

25      [2]    See ¶11 of the "Declaration of Alan Stanly in Opposition to Motion to Dismiss or

26  Transfer Involuntary Petition", Docket Item No. 8 (the "Stanly Decl."), a copy of which is
    attached hereto as Exhibit "A" and incorporated herein by this reference.

27      [3]    Stanly Decl. at ¶12.

28      [4]    *Id*, at ¶13.

        [5]    *Id*, at ¶14.

        [6]    *Id*.

104788/SCF/5311.01

*Technologies, Lopez and Stanly*, San Diego Superior Court Case Number GIC 813397 (the "PCP Action"), both filed on June 26, 2003.[7]

**Prism Goes into Receivership and Involuntary Bankruptcy:**

In April 2003, Stanly and Lopez stipulated to the appointment of Richard M. Kipperman as receiver to take over Prism's assets and operations in the Receivership Case. A sale of Prism's assets was proposed in the Receivership Case, and Stanly was the only interested bidder.[8] But before the sale could be finalized, on August 22, 2003, three creditors filed an involuntary Chapter 7 petition against Prism.[9] That case, entitled *In Re Prism Advanced Technologies, Inc.,* Case No. 03-7777-M7, is still pending before this Bankruptcy Court (the "Prism Bankruptcy"). Stanly contends that the filing of the involuntary petition against Prism was orchestrated by Lopez as an attempt to disrupt the receiver's sale of Prism's assets to Stanly.[10] Ironically, Gregory Akers, the Chapter 7 trustee, offered substantially all of the Prism assets for sale in the Prism Bankruptcy, and Stanly purchased them despite Lopez' efforts to frustrate the sale. That sale was approved by Judge Meyers of this Court on December 24, 2003.[11] In approving the sale of Prism's assets, Judge Meyers also ordered Lopez to immediately turnover any and all of the assets of the bankruptcy estate.[12] However, Lopez has failed and refused to comply with that order.[13]

**Lopez Flees to Florida:**

In or about July 2003 Lopez fled to Florida in order to avoid liability for his misconduct and to become judgment-proof.[14] However, his absence from this jurisdiction proved to be no impediment to his desire to actively engage in the California litigation that sprang up before and after his strategic departure. That participation included both civil litigation in the State Court —

---

[7]    *Id*.

[8]    *Id*, at ¶17.

[9]    Southern California Bankruptcy Case No. 03-07777-JM; Docket Item No. 1.

[10]    Stanly Decl., at ¶18.

[11]    *Id*, at ¶¶19-20.

[12]    See Request for Judicial Notice (RJN) filed concurrently herewith. Case No. 03-07777-JM, Docket Item 120 , Judge Meyers' Order at ¶ 5.

[13]    Stanly Decl., at ¶21.

[14]    *Id*, at ¶4.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

104788/SCF/5311.01

in multiple cases — and in the Involuntary Bankruptcy case that he engineered for his former corporate enterprise. He is in reality a California debtor-in-exile hoping that the heat will dissipate.  Lopez also maintains business actively here through several corporate entities.[15]

**Stanly's Judgment and Sanctions Against Lopez:**

After purchasing substantially all of Prism's assets, Stanly brought a Motion for Summary Judgment and Lopez dismissed all of his derivative claims in the original Receivership Case.[16]

Then, in September 2004, Stanly obtained a judgment against Lopez in the amount of $50,000.00 in the UBOC Action.  No part of that judgment has been paid.[17]

Stanly also has additional claim against Lopez in the amount of $2,000.00, based on a sanctions award to Stanly against Lopez on June 24, 2005 by Hon. H. Lee Sarokin, as the discovery referee in the Lopez v. Stanly Action.   No part of those sanctions have been paid.[18]

**These Involuntary Bankruptcy Proceedings:**

Prior to filing his petition in this case, Stanly conducted a Judgment Debtor's Exam of Lopez in Florida.[19]  The evidence gleaned from that examination showed that Lopez claimed to have no income or nor did he appear to have any non-exempt assets of consequence located in the State of Florida that would be available to his creditors.[20]   The available evidence disclosed predominant claims held by California creditors.  They were Stanly, Alternative Resolution Center ( *ex rel* Hon. H. Lee Sarokin), and Union Bank of California.[21]

When all of the creditors remedies available under State law proved impotent against the elusive and resourceful Mr. Lopez, Stanly turned to the creditors remedy of last resort —  an involuntary petition under 11 U.S.C § 303 which was filed on June 30, 2005.  Through that petition Stanly seeks to realize upon whatever collection entitlements are available — including

---

[15]     *Id*, at ¶25.

[16]     *Id*, at ¶14.

[17]     Stanly Decl., Exhibit 1.

[18]     Stanly Decl at ¶ 2 (B).

[19]     *Id*, at ¶ 3.

[20]     *Id.*

[21]     *Id*, at ¶¶ 6 and 25.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

104788/SCF/5311.01

those that can be realized through the exercise of a trustees avoidance powers.  Stanly filed the involuntary petition as the sole moving creditor pursuant to 11 U.S.C. § 303(b)(2) on the basis that the information available to him made it clear that Lopez had less than twelve creditors.[22]

On July 20, 2005, Lopez filed his "Motion to Dismiss or Transfer Involuntary Petition" (the "Dismissal Motion").[23]  After a hearing on August 22, 2005, this Court denied the Dismissal Motion and required Lopez to answer the bankruptcy petition by no later than September 7, 2005.[24]  Lopez timely filed the Answer.[25]

**Lopez' History of Stonewalling and Abusing Discovery**

The Lopez v. Stanly Action has "*brought out the worst*" in Lopez insofar as demonstrating his willingness to stonewall Stanly's attempts to procure discovery as well as his  willingness to abuse the discovery process.  Some of that misconduct is epitomized by the Superior Court's *"Order Re III — Report and Recommendation of Discovery Referee* filed August 29, 2005 (The "Sanctions Order").[26]  The order adopts the Discovery Referee's recommendations (Exhibit A to the Sanctions Order) in awarding sanctions in favor of Stanly.  In the two years that case has been pending Lopez and his counsel have consistently displayed their propensity to frustrate and delay discovery.  The Discovery Referee lamented that propensity as follows:

> Despite some minor differences in that history asserted by plaintiffs, it is clear that plaintiff  [Lopez] repeatedly and consistently failed to comply in the face of relentless and persistent pursuit by the defendants [Stanly], necessitating numerous letters and motions to compel compliance.[27]
>
> •••
>
> Defendants set forth their long history in attempting to take the deposition of Mr. Lopez and recite the incident of April 11, 2005, with which I have previously dealt. Here again, the evidence is clear that despite repeated attempts to arrange the deposition of Mr. Lopez, it final ly took place for 2 hours, only after an order and in the presence of the Referee.[28]

/ / /

---

[22]    Id, at ¶¶ 8 and 25.

[23]    See Docket Item No. 6.

[24]    See Docket Item No. 20.

[25]    See Docket Item No. 22.

[26]    RJN item 2.

[27]    Id. at Exhibit A at P. 2 ¶ B.a. (Document Production).

[28]    Id. at Exhibit A at P. 3 ¶ C.a. (Refusal to appear for Deposition).

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

104788/SCF/5311.01

1    The Discovery Referee also laments their basic abuse of discovery by observing:

2         As to the depositions of Mr. Ling and Mr. Jamieson, plaintiffs gloss over but do not
         deny the failure to give defendants notice, but argue that no harm has resulted.[29]
3

4         Thus, this movant — whose prayer for relief includes a request for cut off dates — comes

5    before the Court with a pre-existing history of discovery abuse that cannot be ignored.  Stanly

6    remains hopeful that Lopez has *learned his lesson* with respect to the futility and added expense

7    associated abusing the discovery process.  But only time will tell.

8    **The Question of Creditors:**

9         Realizing that he would be forced to address the merits of the bankruptcy petition, on

10   September 19, 2005, Lopez filed his "Declaration of Lopez Re Creditors" (the "Lopez Decl.",

11   Docket Item No. 25) in which he purports to identify a total of 22 creditors who hold claims which

12   are neither contingent or subject to a bona fide dispute (other than the Stanly Judgment which

13   Lopez has appealed), nor are they claims of employees and insiders.[30]  The purpose of the Lopez

14   Declaration is to establish that the provisions in §303(b)(2), which require only one moving

15   creditor when the alleged debtor has less than twelve such claims, do not apply in this case

16   because Lopez has more than twelve creditors with qualified claims.  If true, then the provisions of

17   §303(b)(1) apply, which require three moving creditors to sustain a bankruptcy petition.

18        Upon receiving the Lopez Declaration, Stanly issued subpoenas to twelve of the alleged

19   creditors listed in therein, and the discovery process is ongoing.[31]  The purpose of Stanly's

20   discovery is to determine whether, in fact, these additional, newly-disclosed claims meet the

21   criteria set forth in §303(b).  In order to qualify, each of these creditor's claims must be: (i)

22   noncontingent; (ii) not the subject of a bona fide dispute; (iii) not held by an entity that is a

23   transferee of a transfer that is voidable under sections 544, 545, 547, 548, 549, or 725(a); and (iv)

24   not held by an employee or insider of Lopez.[32]

25   / / /

26   _____

27        [29]    Id. at Exhibit A at P. 5 ¶ __ (Unnoticed Deposition).

28        [30]    See Lopez Decl., at ¶2.

     [31]    See "Declaration of L. Scott Keehn" (the "Keehn Decl."), filed concurrently
     herewith, at ¶3.  See also Declaration of Michael V. Pundeff filed concurrently herewith.

          [32]    Keehn Decl., at ¶¶ 4-5.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

104788/SCF/5311.01

Stanly's discovery is intended to facilitate the determination of whether each of these claims actually existed at the time the petition was filed. A number of the claims appear to be for services which are typically paid in advance.[33] For example, Lopez has listed Verizon Wireless as holding a claim for $45.00. This appears to be the amount due for one months basic services under a normal cell phone contract. Typically, these fees are paid in advance of the services actually being rendered. Accordingly, as the services have not yet been provided, an actual claim has not yet been created. Stanly believes that discovery will confirm that Verizon's alleged "claim" does not meet the criteria of §303(b)(2). The same will likely apply to the following "claims":

| CLAIMANT: | CLAIM DESCRIPTION: | CLAIM AMOUNT: | ZERO BAL.[34] |
|---|---|---|---|
| Progressive Insurance | Auto Insurance | $  157.20 | ✓ |
| Coastal Community Insurance | Flood Insurance | 1,012.00 | ✓ |
| Okaloosa Gas District | Utilities | 45.00 | |
| Northwest Florida Daily News | Newspaper | 45.00 | |
| Allstate Floridian | Homeowners Insurance | 1,900.00 | |
| Verizon Wireless | Utilities | 45.00 | |
| Cox Communications | Utilities | 112.00 | |
| Cingular Wireless | Utilities | 125.00 | |
| Valley Forge Life Insurance | Life Insurance | 0.00[35] | ✓ |
| American Home Shield | Insurance | 128.00 | ✓ |

Stanly's discovery is also intended to disclose whether any of these claims are subject to being voided pursuant to the provisions of Chapter 5 cited in §303(b)(2), particularly the avoidance provisions regarding preferences under §547. While Lopez contends that none of his creditors received payments that were outside the ordinary coarse of business[36], this assertion is an improper legal conclusion that must be subjected to the rigorous test required by the Bankruptcy Code.[37] The only way to do that is to allow Stanly to complete his discovery.

---

[33]    See Exhibit A to Lopez Decl.

[34]    See Decl. of Michael V. Pundeff at ¶ 6 — These "creditors" responded to the subpoena by showing a zero balance was due.

[35]    This is not a typographical error. In his desperation to locate creditors that might defeat this involuntary petition, Lopez has even listed creditors which outright admits he owed no money on the petition date.

[36]    See Declaration of Francis J. Lopez attached to the moving papers at ¶5.

[37]    See Evidentiary Objections filed concurrently herewith.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

104788/SCF/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1    American Express — one of Lopez' alleged creditors —  has responded to Stanly's

2  subpoenas by sending letters stating that they have no documentation which is responsive to the

3  subpoenas — that there is nothing that supports any claim against Lopez[38].

**III.**

**ARGUMENT**

**A.    Bifurcation of Trial Is Not Proper Because it Would Result in Duplicative Testimony and Evidence and Will Not Provide Judicial Economy.**

8    Rule 42(b) of the Federal Rules of Civil Procedure (FRCP), made applicable by Rule 7042

9  of the Federal Rules of Bankruptcy Procedure (FRBP) provides [t]he court, in furtherance of

10  convenience or to avoid prejudice, or when separate trials will be conducive to expedition and

11  economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim,

12  or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party

13  claims, or issues. . . . The separation of issues is discretionary and there are criteria to determine

14  whether it is proper.  The Seventh Circuit Court of Appeals enumerated the procedure to

15  determine whether separate trials are necessary as follows:

> First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. *DeWitt, Porter, Huggett, Shumacher & Morgan v. Kovalic*, 991 F.2d 1243, 1245 (7th Cir. 1993).  Only one of these criteria – avoidance of prejudice or judicial economy – need be met before a court can order separation. *MCI Communications v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983).  Next the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party.  See *Angelo v. Armstrong World Industries*, 11 F.3d 957, 964 (10th Cir. 1993).  Finally, separate trials must not be granted if doing so would violate the Seventh Amendment.  See *Hydrite Chemical Company v. Calumet Lubricants Co.* 47 F.3d 887, 890 (7th Cir. 1995).[39]

23    In this case, bifurcation is improper because the issues are not separable.  The two issues

24  — (i) whether there are sufficient creditors, and (ii) whether the Alleged Debtor is generally not

25  paying such debtor's debts as they become due — are so interwoven that the proof offered as to

26  the first serves equally to demonstrate the second.  The evidence and argument on regarding these

27  two issues are overlapping and duplicative; it would not be conducive to judicial economy to

28

---

[38]    See Keehn Decl, at ¶ 6.

[39]    *Houseman v. Aviation Underwriters*, 171 F.3d 1117. (C.A.7 Wis. 1999)

104788/SCF/5311.01

bifurcate the issues in this case.  They can not be severed.  As a consequence separate trials enhances the over-all economic burden to the petitioning creditor.  That enhances burden renders bifurcation prejudicial to Stanly.

The same witnesses would testify in both phases and the issues and testimony are the similar.  The issue of whether the alleged debtor is generally not paying such debtor's debts as they become due concentrates on the identifying the creditors, the types of debts owed and whether the alleged debtor's payment history to each and all of his creditors.  The issue of whether there are sufficient creditors also requires the Court to focus on the type of creditor, whether the debt is in dispute, how much the creditor is owed, whether the alleged debtor has been making payments to the respective creditors in accordance with the contract terms and customary terms in the industry.[40]  This evidence simultaneously sheds light on both the issues of whether or not a specific creditor is included in the court for purposes of § 303(b)(2), and whether the alleged debtor is generally paying his debts as they come due.  The issues are inextricably intertwined.  The same witnesses will testify, the same evidence will be used.  Therefore, the trial should not be bifurcated because it would not be conducive to judicial economy.

**B.    Stanly must be allowed to complete discovery before any deadline can be set regarding the addition of new moving creditors.**

The Debtor alleges in his motion to bifurcate that no further discovery is required regarding the number of actual debtors.  That is not true.  In determining whether a debtor has twelve or more creditors, 11 U.S.C. § 303 (b)(2) excludes entities such as employees, insiders, and transferees of a voidable transfer under Bankruptcy Code §§ 544, 545, 547, 548, 549 and 724(a).  Petitioning creditor will have to delve into each and every creditor listed by Alleged Debtor to determine whether they are a creditor within the meaning of § 303.  The next step would be to determine whether the creditor is holding claims that are not contingent as to liability and not subject to a bona fide dispute as to liability or amount.[41]  These factors require significant discovery regarding each and every creditor listed by the alleged debtor.

/ / /

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2401 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

---

[40]    11 U.S.C. § 547(c)(2) ordinary course of business exception creates three separate factors that all must be present for the defense to apply.  Any or all three may be at issue here.

[41]    11 U.S.C. § 303(b).

104788/SCF/5311.01

1    That discovery has been commenced, but it has been marred by the failure of many of the

2    recipients to respond to the subpoenas issued to date.[42]  The challenge of enforcing those

3    subpoenas — most of which were served on entities on the Eastern seaboard of neighboring states

4    — will increase the discovery that must be taken from the Alleged Debtor himself.

5    That discovery is being promulgated,[43] but if *the past is prologue to the future*, then we

6    cannot ignore the prospect that Lopez will engage in significant delays and endless stonewalling

7    that will protract the process unnecessarily.  If we see here a reoccurrence of the pattern of

8    *repeated and consistent* failure to comply with discovery obligations despite Stanly's *persistent*

9    *pursuit,*  then it would be unfair to handicap Stanly's prosecution of the petition because the

10   process is not completed prior to a deadline at this time.  Beyond that, establishing a discovery

11   cut-off or a deadline for Joinder by additional creditors could actually motivate Lopez to return to

12   his disreputable practices of delay.  Once Lopez has established his own *bona fides* by full and

13   timely responses to Stanly's discovery, this deadline issue may be ripe for revisiting.  But for the

14   present,  it is premature.

15

16   **C.**    **A Bond Is Not Warranted in this Case Because Petitioning Creditor Has a $50,000.00**
        **Judgment Against the Debtor and Filed the Involuntary Petition in Good Faith.**

17   Pursuant to 11 U.S.C. § 303(e), the Court, after notice and hearing, and for cause, may

18   require the petitioners to file a bond to indemnify the debtor under subsection (i).  The Bankruptcy

19   Code does not impose a mandatory bond requirement.[44]  Subsection (i) exposes petitioners to

20   liability for costs and the alleged debtor's attorney fees if their petition is dismissed.[45]  However,

21   they are not liable for damages unless they are found to have filed in bad faith.[46]  As the Alleged

22   Debtor noted, Congress' intent was that the bonding requirement be designed to "discourage

23   frivolous petitions as well as the more dangerous spiteful petitions, based on a desire to embarrass

24   the debtor . . . or to put the debtor our of business without good cause. . . ."  H.R.Rep.No.95-595,

25

26   [42]    See Declaration of Michael V. Pundeff filed concurrently herewith

27   [43]    See Declaration of Sarah H. Lanham filed concurrently herewith.

28   [44]    *In re Reed*, 11 B.R. 755, 757-758 (Bankr. S.D. W. Va. 1981).

     [45]    11 U.S.C. § 303(i).

     [46]    *Id.*

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

104788/SCF/5311.01

1   95th Cong., 1st Sess. 323 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.  The petitioning

2   Creditor in this case has not acted in bad faith and did not file the petition out of spite.

3       The Alleged Debtor has failed to demonstrate why a bond is required in this matter.  The

4   Petitioning Creditor has a $50,000.00 judgment against the Debtor.  If the petition were dismissed,

5   then any costs or attorneys fees could be offset against the amount already owed to Petitioning

6   Creditor, Therefore, bond is unnecessary in this case as a practical matter.

7       Ironically, the best case to support the proposition that no bond should be required in these

8   proceedings is the very case cited by Lopez in support of his request, *Matter of Dill*, 13 B.R. 9

9   (D.Nev. 1981).  In that case the bankruptcy court denied the alleged debtor's request for the

10  imposition of a bond based on the fact that the case involved real property, "the value of which

11  has not been shown to be declining."[47]  Here, as in *Dill* case, the petition creditor has a claim

12  against the alleged debtor in the principal amount of $50,000.00 - two and a half times the amount

13  of the requested bond.  Its value did not erode with the passage of time.  To the contrary, it

14  continued to bear interest up to the petition date.  In the unlikely event that a judgment is rendered

15  by this Court against Stanly for commencing these involuntary proceedings, then any such award

16  will simply be deducted from the amount of Stanly's Judgment.

17      As in *Dill*, Stanly, as the petitioning creditor, is a man of "substantial means", and no bond

18  is "necessary to protect the Alleged Debtor, should the Court finally hold in his favor".[48]  Here

19  there is substantial means demonstrated by the unpaid Judgment standing alone.

20      Finally, bonds should not be required on a routine basis as the bonding requirement is

21  designed to "discourage frivolous petitions as well as the more dangerous spiteful petitions, based

22  on a desire to embarrass the debtor ... or to put the debtor out of business without good cause ...."

23  *H.R.Rep.No.95-595, 95th Cong., 1st Sess.* 323 (1977), *U.S.Code Cong. & Admin.News* 1978, p.

24  5787.  See *In re Reed*, 11 B.R. 755 (Bkrtcy.W.Va., 1981).  There is no evidence that suggests that

25  Stanly is abusing the bankruptcy process to embarrass the debtor or force him to go out of

26  business.  Rather, the evidence supports the conclusion that Stanly is a legitimate creditor owed

27  over $52,000.00 based on a Judgment and a Sanctions Order duly issued by the California

28

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9995

[47]   *Matter of Dill*, supra, at page 11.

[48]   *Id*, at page 11.

104788/SCF/5311.01

1  Superior Court.  He wants nothing more than that to be paid, and it is apparent that the forced

2  liquidation through Bankruptcy is his last, best and final hope for realizing that goal.

3      Lopez speculates that *an order granting [him] fees, costs, and damages against Mr. Stanly*

4  *is likely to be difficult to collect.*[49]  Yet there are no facts — cited or otherwise — to support that

5  conclusion.  Conversely, the uncontroverted existence of an unpaid Judgment of $50,000.00,

6  against which any award of costs etc. could be offset with a few strokes of a pen provides ample

7  evidence of exactly the opposite conclusion.  Lopez has failed to demonstrate any basis for the

8  imposition of a bond.

### IV.

### CONCLUSION

11      There is no functional utility to be gained by bifurcation as requested.  In fact, the

12  bifurcation may lead to a duplication of efforts that only increase the cost of litigation to all

13  parties.  Likewise, Lopez has failed to establish any entitlement, to or need for, a bond in any

14  amount at this time.  Lopez is no stranger to hard-fought litigation, and he has demonstrated a

15  propensity for obstructionism that compels extreme caution as well as scepticism in considering

16  any request to truncate Stanly's ability to garner the evidence necessary to gain the relief to which

17  he is entitled.  That renders it far too early to enter any kind of cut off orders.

18      For these and all the foregoing reasons, the Motion, and all of its requests for relief, should

19  be denied.

21  Dated:   December 5, 2005          **ROBBINS & KEEHN**
                                        A Professional Corporation

24                          By:   //s//  L. Scott Keehn
25                                L. Scott Keehn
                                  Charles F. Robbins
26                                Sarah H. Lanham
                                  Attorneys for Petitioning Creditor
                                  Alan Stanly

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

---

[49]      Lopez P's & A's at P. 6, Ln 9-10.

104788/SCF/5311.01

EXHIBIT A

L. Scott Keehn (61691)
Sarah H. Lanham (213555)
**ROBBINS & KEEHN, APC**
A Professional Corporation
530 "B" Street, Suite 2400
San Diego, California 92101
Telephone: (619) 232-1700

Attorneys for Petitioning Creditor
**ALAN STANLY**

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In Re: | Case No. 05-05926-PBINV |
|  | Involuntary Chapter 7 |
| Francis J. Lopez, | **DECLARATION OF ALAN STANLY IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER INVOLUNTARY PETITION** |
| Alleged Debtor. |  |
|  | **Date:** August 22, 2005 |
|  | **Time:** 10:00 a.m. |
|  | **Judge:** Hon. Peter W. Bowie |
|  | **Dept.:** 4 |

I, Alan Stanly, declare as follows:

1.     I am over the age of 18 and the petitioning creditor in this involuntary bankruptcy proceedings.  I have first-hand knowledge of all the following, and if called as a witness could and would  testify to the facts set out below.

## OVERVIEW

2.     (A)     I am an unpaid judgment creditor of Francis J. Lopez.  The principal amount of my claim against him is $50, 000.00.  That claim is memorialized by an abstract of

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9995

1    judgment in my favor, against Mr. Lopez, in the principal amount of $50,000.00, in the case of

2    *Union Bank of California, N.A. v. Stanly and Lopez* (GIN030827), issued September 30, 2004 and

3    recorded in the office of the County Recorder for the County of San Diego, State of California on

4    May 24, 2005, as document number 2005-0437287 (the "Abstract"). A true copy of the Abstract

5    is attached as Exhibit 1 to this declaration. No portion of this judgment has been satisfied.

6        (B)    I also have an additional claim against Mr. Lopez in the amount of

7    $2,000.00, based on the sanctions award to me against him on June 24, 2005 by Hon. H. Lee

8    Sarokin, as the discovery referee in *Lopez v. Stanly.* [1] No part of those sanctions have been paid.

9        3.    On May 9, 2005, I had a Judgment Debtor's Examination of Mr. Lopez conducted

10   in Walton Beach, Florida. Excerpts of the relevant portions of the transcript of that examination

11   are attached as Exhibit 3 to this declaration (the "JDE Transcript"). From Testimony gleaned at

12   the Judgment Debtor's Examination, I learned that Mr. Lopez has no salary [2] and that he does not

13   appear to have any non-exempt assets of consequence available to his creditors in the State of

14   Florida.

15       4.    Prior to filing this involuntary petition, I had been informed, and came to believe,

16   that the Bankruptcy Code is supposed to be a remedy for creditors, as well as providing relief for

17   poor, but honest, debtors. As part of the remedy to creditors, I was informed and came to believe,

18   that a Bankruptcy Trustee is vested with the ability to "unwind," or "set aside" transfers that have

19   been made by the debtor before the filing of the Bankruptcy case that were either fraudulent to his

20   creditors, or allowed favored creditors to receive a disproportionately-high payments on their

21   obligations to the detriment of disfavored creditors. Based upon my first hand knowledge of Mr.

22   Lopez, his attempts to loot our prior business enterprises, his intentions (which he has openly

23   disclosed to me) to make himself "judgment proof," his "fire sale" of his Carlsbad residence prior

24

25       [1]    See Exhibit 2 (6/24/05 Cover Letter and Report and Recommendations) at Report,
        etc. P. 2 (bolded sentence).

26
        [2]    JDE Transcript at P 10 Line 1-3 [Note: Page and Line references all correlate to the
27   pagination of the Transcript itself. Those numbers appear in the top right hand corner of the
        transcript (far right margin of the printed document). As a result of printing protocols used to
28   create hard copies of the document, the pagination of the printed document does not correlate to
        the pagination of the official transcript.]

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

103242/SHL/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1   to fleeing to Florida in 2003, and involvement with him in years of civil litigation , I had formed

2   the opinion, and continued to believe, that a Bankruptcy Trustee in this case will have the ability

3   to "unwind" or "set aside" a variety of transactions or transfers made by Mr. Lopez in his attempts

4   to become "judgment proof."  The information available to me also led me to conclude, and I

5   continue to believe that such recoveries will provide a substantial return to creditors in this estate,

6   and that most, if not all, of the target defendants for such actions are residents of the State of

7   California, if not in the Southern District itself.

8        5.    Based on these conclusions, I further concluded that any litigation by a Bankruptcy

9   Trustee to make those recoveries would be more conveniently and more cost effectively

10  conducted here in the Southern District of California where most, if not all, of the parties and

11  witnesses will be, rather than the State of Florida.

12       6.    Prior to filing the petition in this district, I was also aware of at least two other

13  California creditors that would also be better able to participate in a Bankruptcy case filed here in

14  California, rather than in Florida.  They are: (a) Alternative Resolution Center by Hon H. Lee

15  Sarokin [a private discovery referee that Lopez refuses to pay, [3] ] and (b) Union Bank of

16  California, which is owed approximately $7,500.00  from Lopez on account of his stipulated

17  conditional settlement with the Bank.[4]  I am also a California creditor with a claim that is not

18  insignificant, and I have also learned from the process and expense of conducting a Judgment

19  Debtor's Exam in the State of Florida, that participating in legal proceedings conducted in this

20  state is far more convenient and cost effective for me as a creditor, than having to hire out-of-state

21  attorneys to handle proceedings in a different state.

22       7.    Based upon the information available to me, as summarized in ¶¶ 3 - 6 above, I

23  formed the opinion and continue to believe, that conducting Mr. Lopez's Chapter 7 liquidation

24  proceeding here in the State of California will be more convenient and cost effective for his

25  / / /

26

27        [3]    See ¶ 25 below.

28        [4]    See Exhibit 4, attached hereto.

1   Chapter 7 Trustee, the creditors, and witnesses in the litigation that will foreseeably be conducted

2   in that case.  That is why I had the case filed in this District.

3           8.      Prior to filing the petition in this case, the information available to me indicated,

4   and I continued to believe, that Mr. Lopez does not have twelve or more non-insider creditors.

5   Having reviewed the Motion to Dismiss (the "Motion") and the "Declaration of Francis J. Lopez"

6   (the "Lopez Declaration") included as part of the motion, I see nothing in the way of evidence to

7   cause me — or which could lead a court to believe — that he in fact has twelve or more creditors.

8   Although Mr. Lopez testifies that he has "*more than twelve creditors and am generally paying my*

9   *debts as they become due, except of course the purported debt owed to Mr. Stanly.*" [5] His sworn

10  testimony has proven to be false in the past[6] and cannot be accepted at face value absent a

11  disclosure of supporting details.  Of course, there is no such supporting detail in either the Motion,

12  or the Lopez Declaration.  Therefore all of my information leads me to conclude, and I continue to

13  believe and assert, that Mr. Lopez has fewer than twelve creditors.

14          9.      I had a business relationship with Mr. Lopez from approximately 1993 to March,

15  2003.  The relationship ended badly due to, among other things, Mr. Lopez's practice of looting

16  our corporate assets, attempting, and breaching his fiduciary duties by engaging in competitive

17  activity for his benefit at our corporations' expense.  The decline and fall of that relationship has

18  lead to a variety of civil actions in which we are parties, including a case now pending in the

19  Superior Court entitled *Lopez, et al. v. Stanly, et al.* (San Diego Superior Court Case No.

20  GIN029692 and  related cross actions) and the involuntary Bankruptcy of *In re Prism Advanced*

21  *Technologies, Inc.* now pending before this Bankruptcy Court as Case No. 03-777-M7.  Although

22  he claims to have been a resident of the State of Florida since 2003, that remote residency has not

23  prevented him from actively participating in litigation and the Prism Bankruptcy pending here in

24  California.  Based on his vigorous participation in all of the litigation that we have been involved

25  in and the Prism Bankruptcy, I have concluded, believe, and submit that Mr. Lopez is able to

26

27          [5]      Lopez Declaration at P 10 Lines 26-27.

28          [6]      See ¶ 28 below.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1  participate in a court proceeding here in California just as effectively as if it were conducted in

2  Florida.

3      10.     As more fully explained in ¶ 23 below, Mr. Lopez also has business interests here

4  in the State of California.  I am informed,  believe, and submit that those interests, or their value,

5  are assets that may be administered by his Chapter 7 Trustee.  The location of those assets in

6  California, is another reason why it appeared to me, and I continue to believe, that California is a

7  more appropriate location for conducting Mr. Lopez's Bankruptcy than the State of Florida.

8                **BACKGROUND OF BUSINESS AND LITIGATION WITH LOPEZ**

9      11.     In or about August 1994, I formed Computer Handyman, Inc., later renamed Prism

10  Advanced Technologies, Inc.  In 1996, I gave Mr. Lopez 50% of my corporation, and we began

11  conducting business together.  I was Chairman and President, while Lopez was its CFO, Vice

12  Chairman and Vice President.  Lopez later created and assumed the titles of CEO and CFO.

13      12.     Prism is a California corporation that made and sold primarily transportation

14  software, and sold such software, as well as computer hardware and services.  I am a computer

15  programmer by trade and created the software that became the basis of Prism's products.

16      13.     In or about November, 2002, through March, 2003, a dispute arose between Lopez

17  and me  concerning certain expenditures he made for personal purposes.  I also learned that he had

18  formed a competing business venture and had used Prism's money to fund it.  Confronted with my

19  awareness of his improper conduct, he chose to attack rather than defend, and filed actions against

20  me in the Superior Court of San Diego County.

21      14.     The first case filed was *Prism Advanced Technologies, Inc. and Lopez v. Stanly*,

22  San Diego Superior Court Case Number GIN 028765 filed on April 3, 2003.  In this case Lopez

23  (acting on behalf of Prism) claimed civil harassment  and sought to have me excluded from the

24  business premises.  Lopez originally filed a verified complaint, personally and derivatively (on

25  behalf of Prism), on May 14, 2003.  After I purchased substantially all of the assets in the *Prism*

26  matter, I filed a Motion for Summary Judgment and Lopez dismissed all of his derivative claims.

27  The second case, filed on May 14, 2003, is *Lopez and Prism Advanced Technologies, Inc. v.*

28  *Stanly*, San Diego Superior Court Case Number GIN 029692.  In this case Lopez brought causes

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

103242/SHL/5311.01

of action against me for money damages. Two other cases were later filed. In those cases in which Lopez is a defendant based on allegations of breach of contract: *Union Bank of California v. Lopez*, San Diego Superior Court Case Number GIN 030827 and *Pacific Carlsbad Partners, LLC v. Prism Advanced Technologies, Lopez and Stanly*, San Diego Superior Court Case Number GIC 813397, both filed on June 26, 2003.

15.     I ultimately obtained a judgment in the amount of $50,000.00 against Lopez in the *Union Bank of California v. Lopez*, San Diego Superior Court Case Number GIN 030827 case.[7]

16.     Lopez currently has retained three attorneys in San Diego and Los Angeles: Joseph Fischbach, Thomas Gorrill, and Jonathon Hayes. And, Lopez has regularly traveled to California to attend depositions in these cases. He also traveled here from Florida to give testimony against me in an unrelated case (*Stanly v. Business Furniture Group*).

17.     In April 2003, Lopez and I stipulated to the appointment of Richard M. Kipperman as receiver to take over Prism's assets and operations *Prism Advanced Technologies, Inc. v Stanly* (San Diego Superior Court Case No. GIN028765)[the "Receivership Case"]. A sale of Prism's assets was proposed in the Receivership Case, and I was the only interested bidder.

18.     But before the sale could be finalized, on August 22, 2003, three creditors, James Bears, Crown Hill Consulting, Inc. (through George Ortiz), and EvidentData Inc., filed an involuntary Chapter 7 petition against Prism.[8] That case *In Re Prism Advanced Technologies, Inc.* — Case No. 03-7777-M7 — is still pending before this Bankruptcy Court (the "Prism Bankruptcy"). I am informed and believe that the filing of the involuntary petition against Prism was orchestrated by Lopez as an attempt to disrupt the receiver's sale of Prism's assets to me.

19.     Contrary to his declaration testimony,[9] Lopez was a vibrant and active participant in the Prism Bankruptcy. Lopez actually tried to get Mr. Akers — the Chapter 7 Trustee — to effectively sell the Prism assets to him to be paid through some visionary scheme to sell copies of

---

[7]     See Exhibit 1.

[8]     Southern California Bankruptcy Case No. 03-07777-JM; Docket Item No. 1.

[9]     Lopez Declaration at P. 10 Line 10-11 where he falsely states he had no involvement other than defending an action he claims the Trustee filed against him.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2401 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

103242/SHL/5311.01

1    Prism's primary asset — the source code, in a thinly veiled attempt to purchase a legal copy

2    himself.  Meyers granted him the opportunity, and he vigorously marketed the assets on behalf of

3    the estate.  Those efforts failed.

4         20.    Ultimately, the Bankruptcy Court approved a sale of Prism's assets to me on

5    December 24, 2003, [10] despite objections by Lopez.

6         21.    In approving the sale of Prism's assets, the Honorable James Meyers also ordered

7    Lopez to immediately turnover any and all of the assets of the bankruptcy estate.[11]  However,

8    Lopez has failed and refused to comply with that order.  Because he has refused to turnover those

9    items it appears to me that — more probably than not — I will be forced to compel his compliance

10   by bringing a contempt motion in the Prism Bankruptcy.

11                 **LOPEZ'S OTHER CALIFORNIA ACTIVITIES AND ASSETS**

12        22.    Other than his extensive involvement in litigation in San Diego, Lopez has

13   numerous other contacts in this state.  For example, Lopez's new business entity's, Noveon

14   Systems, Inc., only programmer, salesperson and technician are located in California.  And,

15   Lopez's company has clients in California as well.

16        23.    Contrary to his declaration testimony, Lopez does have assets and does business in

17   California.  He has a 50 percent or greater ownership interest in at least five California

18   corporations and/or limited liability companies including:

19              1.    Prism;

20              2.    Cambria Holdings LLC;[12]

21              3.    F2 Systems Technologies, Inc.;[13]

22              4.    Prism Freight Services, Inc.; and,

23              5.    Metro Consolidation Carrier, Inc.

24   _____

25   [10]    A true and correct copy of Judge Meyers' December 24, 2003 order is attached
     hereto and incorporated herein as Exhibit 5; Southern California Bankruptcy Case No. 03-07777-
26   JM; Docket Item No. 120.

27   [11]    See ¶ 5 of Judge Meyers' Order.

28   [12]    See Exhibit 3 at P.7, Line 11 through P. 8 Line 15.

     [13]    See Exhibit 3 (JDE Transcript), at P.33, Lines 5-19.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9695

103242/SHL/5311.01

24.    Lopez has also filed a claim for $115,029.00 against Prism in its bankruptcy case.[14] This claim is California asset.

### LOPEZ CREDITORS AND NON-PAYMENT OF DEBT

25.    I am informed and believe that Lopez does not have twelve creditors. Of the few creditors that Lopez does have, they appear to be located in California. I am located in California. Admissions made by his own attorneys show that the unpaid discovery referee — Alternative Resolution Center for the services of Hon. H. Lee Sarokin as discovery referee — is also located in California.[15] Union Bank of California is also located in California.

26.    I am informed and believe that Lopez is paying certain of his creditors, particularly his attorneys, while leaving others, like me and Judge Sarokin, unpaid. Only the powers of a Trustee to set aside unfairly received payments to give all creditors an equal share of whatever the Lopez estate turns out to be.

27.    It still appears that Lopez is generally not paying his debts as they come due. He has testified under oath that he has no income.[16] He continues to fail and refuse to pay the debts owed by him to me and Judge Sarokin at a minimum.

### THE LOPEZ DECLARATION IS FALSE AND MISLEADING

28.    The unreliability of Lopez's testimony is demonstrated by the fact that he testified under oath at his May 9, 2005 judgment debtor examination that he was merely an employee of Noveon and not an officer, director or shareholder of that corporation.[17] However, upon performing an internet search of Florida's Secretary of State website, I learned that Lopez is, in fact, the president, a director and the agent for Noveon.[18] His testimony of limited involvement in the Prism Bankruptcy is false (see ¶ 18 above). His declaration testimony that the Prism Trustee

---

[14]    Claim Register Item No. 4, filed January 12, 2004.

[15]    See Exhibit 6 - 5/19/05 Letter from Joseph Fischbach; and Exhibit 7 - 5/23/05 Letter from Joseph Fischbach, explaining that Lopez cannot pay his past due debt.

[16]    See Exhibit 3 at P.10, Lines1 through 3.

[17]    See JDE Transcript (Exhibit 3) at P. 7, Line 11 through P. 8, Line15.

[18]    A true and correct copy of the printout of the Florida Secretary of State website and accompanying abbreviations are attached hereto and incorporated herein as Exhibit 8.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

103242/SHL/5311.01

1    sued him [19] is also false.  The case docket [20] reveals that no such action was ever filed.

2       29.    The Lopez declaration is cleverly worded to create the false impression that there is

3    some question about the present validity of my claim.[21] However, as shown by Exhibit 1, my claim

4    results from Judgment entered against him, and there is no stay of execution on that Judgment.

5    The testimony that attempts to trivialize that Judgment by calling it a "purported debt" [22] is just the

6    latest in a long history of Lopez to mislead people and courts, even when he is under oath.

7                                    **MY GOOD FAITH**

8       30.    The facts establishing my good faith are summarized in paragraphs 1-10 above.  In

9    addition, I would also say that I did not bring this petition with a bad faith or intent to "remove"

10   Lopez from the pending state court litigation.  In fact, nothing is further from the truth.  On July 5,

11   2005, my bankruptcy counsel wrote to Lopez's state court counsel requesting that he stipulate to

12   allow the bankruptcy automatic stay to be lifted to allow the state court action to proceed to

13   Judgment .[23]  Lopez's counsel responded on July 6, 2005, stating that he would refer my "odd

14   request" to Lopez's bankruptcy counsel and that a response would be forthcoming.[24] He refused to

15   do so, and intends to litigate his claims against me in that case, while my claims are stayed.[25]

16       I declare under penalty of perjury that the foregoing is true and correct.  Executed this

17   5th day of August, 2005, at San Diego, California.

18                                    //s// Alan Stanly
                                      **Alan Stanly**
19

20   _____

21   [19]    Lopez Declaration at P. 10, Lines 8-9.

22   [20]    See Request for Judicial Notice, Item 1.

23   [21]    Lopez Declaration at P. 10, Line 27 (characterizing my claim as a "purported
     debt").

24   [22]    *Id.*

25   [23]    A true and correct copy of the July 5, 2005 letter is attached hereto and
26   incorporated herein as Exhibit 9.

27   [24]    A true and correct copy of Attorney Fischbach's July 6, 2005 letter is attached
     hereto and incorporated herein as Exhibit 10.
28
     [25]    See Exhibit 11 (7/21/05 Letter from Mr. Dillon to Mr. Fischbach) and Exhibit 12
     (7/25/05 Letter from Mr. Fischbach to Mr. Dillon).

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

EXHIBIT 1



PLEASE COMPLETE THIS INFORMATION.

RECORDING REQUESTED BY:

    Alan Stanly

AND WHEN RECORDED MAIL TO:

    Alan Stanly
    c/o Dillon & Simonsen
    4660 La Jolla Village
    Suite 775
    San Diego, CA 92122

DOC #    2005-0437287

MAY 24, 2005    2:47 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:           17.00
PAGES:          3    NOTICES:   1

*THIS SPACE FOR RECORDER'S USE ONLY*

## Abstract of Judgment

(Please fill in document title(s) on this line)

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

9/95
Rec.Form #R25

EJ-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and address):* | TEL NO.: |
| --- | --- |

[X] Recording requested by and return to:   (858) 259-2868
Timothy P. Dillon, SBN 190839
Timothy P. Dillon, Esq.
Weintraub Dillon PC
12520 High Bluff Drive, Suite 260
San Diego, CA 92130

[X] ATTORNEY FOR   [X] JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 325 South Melrose
MAILING ADDRESS: 325 South Melrose
CITY AND ZIP CODE: Vista, CA 92083
BRANCH NAME: North County Division

*FOR RECORDER'S USE ONLY*

PLAINTIFF: Union Bank of California, N.A.

DEFENDANT: Alan Stanly and Francis Lopez

| ABSTRACT OF JUDGMENT [ ] Amended | CASE NUMBER: GIN 030827 |
| --- | --- |

*FOR COURT USE ONLY*

1. The [X] judgment creditor [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      [ ] Name and last known address

   Francis Lopez
   310 Sand Myrtle Trl.
   Destin, Florida 32541-3429

   b. Driver's license No. and state:                [ ] Unknown
   c. Social security No.:                            [ ] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to *(name and address):*
      Francis Lopez

   e. [ ] Original abstract recorded in this county:     f. [ ] Information on additional judgment debtors is
          (1) Date:                                              shown on page two.
          (2) Instrument No.:

Date: September 29, 2004

Timothy P. Dillon
(TYPE OR PRINT NAME)                                     ▶ _____
                                                          (SIGNATURE OF APPLICANT OR ATTORNEY)

2. a. [X] I certify that the following is a true and correct abstract    6. Total amount of judgment as entered or last renewed:
         of the judgment entered in this action.                            $ 50,000.00
   b. [ ] A certified copy of the judgment is attached.
3. Judgment creditor *(name and address):*                               7. [ ] An [ ] execution lien [ ] attachment lien
   Alan Stanly                                                              is endorsed on the judgment as follows:
   1569 Berkshire Court, San Marcos, CA, 92069                               a. Amount: $
4. Judgment debtor *(full name as it appears in judgment):*                  b. In favor of *(name and address):*
   Francis Lopez

[SEAL]


5. a. Judgment entered on
      *(date):* September 20, 2004
   b. Renewal entered on
      *(date):*

   This abstract issued on *(date):*
   SEP 3 0 2004

8. A stay of enforcement has
   a. [X] not been ordered by the court.
   b. [ ] been ordered by the court effective until
          *(date):*
9. [ ] This judgment is an installment judgment.

Clerk, by _____ , Deputy
          T. ROBERTS

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2003]                ABSTRACT OF JUDGMENT
                                                    (CIVIL)
Legal Solutions Plus
Code of Civil Procedure, §§ 480.480, 674, 700.190
Page 1 of 2

EXHIBIT 2

**H. LEE SAROKIN**
*United States Circuit Judge, Retired*
*P.O. Box 675932*
*Rancho Santa Fe, CA 92067*

(858) 759 0904 Office
(858) 759 0629 Fax
haddonl@cox.net

Timothy P. Dillon, Esq. (fax 587-2587)
Joseph S. Fischbach, Esq. (fax 310 278-2894)

June 24, 2005

Re: *Lopez v. Stanly*

Dear Counsel:

   I enclose III – Report and Recommendation and request that Mr. Dillon arrange to submit it to the Court. Thank you.

Very truly yours,

H. Lee Sarokin

Cc: Steve Davis ARC

## SUPERIOR COURT OF THE STATE OF CALIFONIA

## FOR THE COUNTY OF SAN DIEGO

FRANCIS LOPEZ, individually and as
Representative of Prism Advanced Technologies,
Inc., a California Corporation,  PLAINTIFF

CASE NO. GIN029692

Judge Richard G. Cline

III -  REPORT AND
RECOMMENDATION OF
DISCOVERY REFEREE ON
PENDING DISCOVERY and
SANCTIONS MOTIONS

vs.

ALAN STANLY, Prism Advanced
Technologies, Inc. and DOES 1 through 50 inclusive.
DEFENDANTS

---

The undersigned respectfully submits the following report and recommendation for the Court's consideration:

Defendants again move for evidentiary and/or monetary sanctions against the plaintiffs. I had previously recommended reserving on the sanctions to be imposed in the hope that holding the sword over the heads of counsel would encourage them to end their bickering and accusations, but to no avail. They are unable to agree as to any matter or fact. Indeed, their respective motions are peppered with charges of fraud and misrepresentation against each other. The motions are accompanied by wholesale reproductions of exhibits and pleadings (most of which have been previously submitted)

1

with no effort to cull out what is particularly relevant to the pending motions.
Notwithstanding the voluminous submissions, I will attempt to address each of the
assertions made.

A. Plaintiffs' Refusal to Answer Initial Round of Written Discovery

It is undisputed that plaintiffs failed to make any response to defendants' initial
demands and was sanctioned for such failure.

B. Second Round of Written Discovery

a. Production of Documents

I will not attempt to recite the history outlined by defendants of plaintiffs' failures
to comply with discovery requests. Despite some minor differences in that history
asserted by plaintiffs, it is clear that plaintiffs repeatedly and consistently failed to
comply in the face of relentless and persistent pursuit by the defendants, necessitating
numerous letters and motions to compel compliance. Even as of this date, I cannot
determine whether or not there has been full compliance. Some of the remaining issues
are discussed below.

**Sanctions are awarded in favor of the defendants and against the plaintiffs in
the amount of $2000, and plaintiffs are directed to file a declaration within 5 days
representing that they have complied with all outstanding discovery requests.**

b. Audio recordings

According to defendants, plaintiffs admit being in possession of 33 audio
recordings which support their eavesdropping claim against the defendants. Despite
repeated requests and subpoenas, no audio recordings have been produced by plaintiffs.
(This dispute continues notwithstanding the fact that apparently defendant Stanly has

2

admitted and was convicted of such eavesdropping.)

**Plaintiffs shall be precluded from offering at trial any audio recordings that have not been furnished to defendants as of this date.**

c. Hudacko videotape

The subject video tape apparently is in the possession of the police, and thus cannot be turned over by Mr. Hudacko.

**Plaintiffs are directed to make all reasonable efforts to obtain said video and provide a copy of same to defendants, if obtained. Plaintiffs shall outline such efforts to defendants' counsel in writing.**

D. CD ROM

The parties dispute whether or not the CD-ROM illustrating Mr. Lopez's contributions to the Prism technology has been produced.

**If the CD-ROM has not been furnished to defendants, then plaintiffs shall be precluded from offering same at the trial of this matter.**

C. Depositions

a. Refusal to Appear for Depositions

Defendants set forth their long history in attempting to take the deposition of Mr. Lopez and recite the incident of April 11, 2005, with which I have previously dealt. Here again, the evidence is clear that despite repeated attempts to arrange the deposition of Mr. Lopez, it finally took place for 2 hours, only after an order and in the presence of the Referee.

**The rulings on this matter have been set forth in prior reports.**

b. Refusal to Answer Questions at Depositions

3

I am unaware of the status of this issue and whether it has been resolved by the "meet and confer" correspondence, although, in view of the history case, it is unlikely. **No ruling will be made at this time**.

D. Statement of damages

This is a particularly troubling matter and raises serious ethical questions in view of the charges and counter-charges made by counsel. Defendants made a request for the statement on Oct. 22, 2004. Defendants claim that no statement has ever been served, until the opposition to these motions was filed. Plaintiffs have attached a statement and proof of service dated Nov. 30, 2004. Plaintiffs claim that the motion of defendants in regard to this matter is "intentionally fraudulent" and "the best example of perfidy of this alleged motion". Yet, in response to defendants' motion to furnish a statement of damages, no assertion was made that such a statement had been prepared and served. Indeed, although plaintiffs assert that no effort was made to obtain the statement after November of 2004 (thus proving its receipt), defendants moved to compel it and an order was entered compelling plaintiffs to furnish such a statement on April 28, 2005. Even subsequent to the order, plaintiffs did not assert that they had already complied.

On June 23, 2005, I directed counsel to advise me whether or not there had been any prior correspondence or declarations from plaintiffs that such a statement had been prepared and served. Counsel for plaintiffs insists that the statement was served in November of 2004, but offers no reason why that assertion was not made in opposition to prior motions to compel it. Counsel for defendants re-asserts that he never received the statement of damages on any prior occasion and that plaintiffs never claimed that they had sent it in response to letters or motions demanding it and the order directing that it be

4

supplied.

Even if plaintiffs furnished the statement of damages and defendants, for some reason, had not received it, plaintiffs failed to advise that they had done so, despite requests and motions by defendants and the April 28, 2005, order of the referee that it be produced.

**Sanctions are awarded to defendants and against plaintiffs' counsel in the amount of $1245.**

E. Notice of Deposition Subpoenas for Production of Documents on Third Party

Defendants claim that plaintiffs subpoenaed documents from Microsoft and no notice was served upon defendants. Although plaintiffs do not deny the failure to serve notice (notwithstanding that they charge that the claim is "frivolous" and "fraudulent"), those documents were subsequently transmitted to defendants so that any harm from the failure to notify has been cured. However, defendants insist that not all of the documents have been produced.

**Plaintiffs are precluded from offering at trial any such documents which have not heretofore been produced.**

As to the depositions of Mr. Ling and Mr. Jamieson, plaintiffs gloss over but do not deny the failure to give defendants notice, but argue that no harm has resulted.

**Plaintiffs are directed to give proper notice in the future, and failing same, plaintiffs shall be precluded from offering any documents so procured.**

F. Sanctions for Independent Medical Exam

I have already ruled upon this matter and reserved as to the sanction to be imposed.

**Defendants are awarded sanctions against plaintiffs' counsel in the sum of**

5

**$2,948.75**

G. Declaration re Prism Expenditures

The parties were directed to file declarations regarding their use of Prism funds for personal or non-Prism business. Both have filed such declarations. Whether or not they are true and complete cannot be determined. To the extent either party has failed to comply, sanctions would be warranted.

**Each party is granted 10 days to supplement said declarations. If either party fails to fully disclose such transactions, then monetary sanctions shall be imposed.**

H. Deposition Schedule

**The parties were and are directed to prepare and file a deposition schedule within 5 days for the remaining depositions.** (I do not know whether or not the existing stipulation is usable.) **Once established no deposition shall be adjourned except for the illness of counsel or the witness without the prior consent of the referee or the court or the written consent of counsel. Counsel are directed not to accept any other client or business assignments that conflict with the deposition schedule.**

I. Procedural objections

**The objections to the pending motions on procedural grounds are rejected.**

**Respectfully submitted:**

H. Lee Sarokin, Discovery Referee
This 24 day of June ,2005

**The report and recommendations of the Referee are hereby approved and adopted; SO ORDERED this _____ day of _____ 2005**

6

Richard C. Cline,
Judge of the Superior Court

EXHIBIT 3

Debtors Exam.txt

IN THE CIRCUIT COURT FOR
OKALOOSA COUNTY, FLORIDA
CASE NO. 2004CA004439

FROM THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SAN DIEGO, NORTH COUNTY BRANCH
CASE NO: GIN 030827

UNION BANK OF CALIFORNIA, N.A.,
A National Banking Association
            Plaintiff,

vs.

FRANCIS J. LOPEZ, ALAN STANLY
And Does I through Does IV
Inclusive
            Defendants.

AND RELATED CROSS ACTIONS
_____/


        The Deposition of FRANCIS J. LOPEZ taken by the

attorney for Alan Stanly, commencing at 2:05 p.m. on the

9th day of May, 2005, at Richard H. Powell & Associates,

92 Eglin Parkway, NE, Fort Walton Beach, Florida, before

Wanda M. Pearcey, Court Reporter and Notary Public at

Large, in and for the State of Florida.

⬚

2

1                       APPEARANCES

2

3 FOR ALAN STANLY:        RICHARD H. POWELL, ESQUIRE
                          Richard H. Powell & Assoicates
4                         92 Eglin Parkway, NE
                          Ft. Walton Beach, FL 32549
5

Page 1

Debtors Exam.txt

6 FOR FRANCIS LOPEZ:        JENNIFER A. WINTRODE, ESQUIRE
                           Attorney at Law
7                          P.O. Box 6944
                           4481 Legendary Drive, Suite 200
8                          Destin, FL 32550

9

10 _____

11

12                         INDEX

13                                              PAGE

14 WITNESS:

15      FRANCIS J. LOPEZ

16 DIRECT EXAMINATION

17      BY MR. POWELL                            3

18 EXHIBIT A                                     52

19 CERTIFICATE OF OATH                           66

20 CERTIFICATE OF REPORTER                       67

21

22

23

24

25


                TRAWICK COURT REPORTING


                                                 3

1 WHEREUPON,

2                     FRANCIS J. LOPEZ

3 was called as a witness and, after having been first duly

4 sworn, was deposed and testified as follows:

5                     DIRECT EXAMINATION

6 BY MR. POWELL:

7       Q.    State your full name for the record, please.

8       A.    Francis J. Lopez.
                       Page 2

Debtors Exam.txt

19      A.      I never got a copy of the appraisal.

20      Q.      What is your estimate of the value of that
21 home at this time?

22      A.      My best estimate is somewhere around 1.2
23 million.

24      Q.      Okay.  What is your Social Security number?

25      A.      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.

TRAWICK COURT REPORTING

7

1       Q.      Have you ever been known by any other names
2 besides Francis Lopez?

3       A.      Francis Lopez or Francis J. Lopez.

4       Q.      Okay.  What's your educational background?

5       A.      I have a high school diploma and a four-year
6 BA degree.

7       Q.      Where did you obtain your BA degree?

8       A.      University of California, San Diego.

9       Q.      And in what discipline?

10      A.      Economics and political science.

11      Q.      Are you currently employed?

12      A.      Yes.

13      Q.      Where?

14      A.      Noveon Systems, N-o-v-e-o-n, Systems.

15      Q.      Is that a corporation?

16      A.      Yes.

17      Q.      So is the technical name Noveon Systems,
18 Inc.?

19      A.      That's correct.

20      Q.      What state was this formed in?

21      A.      It was -- what state was it incorporated in?

22      Q.      Yes.

Page 6

Debtors Exam.txt

23    A.    Delaware.

24    Q.    When?

25    A.    Approximately June of 2003.

TRAWICK COURT REPORTING

8

1    Q.    Who are the shareholders of that corporation?

2          MS. WINTRODE:  He's only an employee of the

3    corporation.

4          MR. POWELL:  Right.

5          MS. WINTRODE:  So he's not a shareholder of

6    it.

7          MR. POWELL:  Okay.  Well, then he can tell me

8    that then.

9          THE WITNESS:  I am not a share holder of the

10   company.

11   Q.    (By Mr. Powell)  Are you an officer in the

12 corporation?

13   A.    No.

14   Q.    Are you a director?

15   A.    No.

16   Q.    How long have you been employed by the

17 company?

18   A.    Since approximately July of 2003.

19   Q.    Who is your immediate supervisor?

20   A.    Madeline Lopez.

21   Q.    Your wife?

22   A.    Yes.

23   Q.    What office does she hold in this

24 corporation?

25   A.    She's the president.

Page 7

Debtors Exam.txt

TRAWICK COURT REPORTING

9

1      Q.    Are there any other officers?

2      A.    No.

3      Q.    Is she the sole director?

4      A.    Yes.

5      Q.    And what are your duties with this company?

6      A.    My duties are to participate in a sales

7 capacity, to assist in development of work for clients, and

8 to direct contractors to perform work.

9      Q.    And what's the general purpose of Noveon

10 System?  What product does it sell or produce or what

11 service does it provide?

12      A.    Technology consulting.

13      Q.    Have you developed any software on behalf of

14 that company since you've been employed by it?

15      A.    Myself personally?

16      Q.    Yes, sir.

17      A.    No.

18      Q.    How many employees does the corporation

19 have?

20      A.    It has two.

21      Q.    Yourself and --

22      A.    Madeline.

23      Q.    Has it had any other employees since its

24 formation in June of 2003, besides the two of you?

25      A.    No.

TRAWICK COURT REPORTING

10

1      Q.    What is your current salary with this

Page 8

Debtors Exam.txt

2 company?

3       A.    Currently not taking a salary.

4       Q.    Have you received any remuneration from this

5 company?

6       A.    Yes.

7       Q.    When is the last time you received any

8 compensation?

9       A.    It would have been 2004.  I received partial

10 payment for a license that I sold the company.

11      Q.    And what license was that that you sold the

12 company?

13      A.    A license to provide software that I own.

14      Q.    That you currently own?

15      A.    Yes.

16      Q.    What software do you own?

17      A.    I own various freight transportation related

18 software.

19      Q.    Okay.  How did you come to acquire this

20 software?

21      A.    That's a pretty long story, but essentially,

22 I purchased the software in the early '90s and Mr. Stanly,

23 your client, and I developed a software over a number of

24 years.

25      Q.    The software that you acquired in the early

TRAWICK COURT REPORTING

11

1 '90s, where were you employed at that time?

2       A.    A company called Metro Consolidation Carrier,

3 Inc.

4       Q.    Were you and Mr. Stanly doing business

Page 9

Debtors Exam.txt

16      A.    No.

17      Q.    Do you own any stock at all at this time?

18      A.    No.

19      Q.    What about Prism?

20      A.    I thought you meant publicly traded stock.

21      Q.    No, I didn't say that.  I just said stocks.

22      A.    I have a share certificate from Prism, which

23 is a defunct corporation.  I imagine the value of that is

24 zero.

25      Q.    How many shares does that certificate

TRAWICK COURT REPORTING

33

1 represent, if you recall?

2      A.    I don't recall.  It's either 1,000 or 5,000

3 shares.

4      Q.    Any other stock?

5      A.    I've got shares in a company called F2

6 Systems, actually F2 Systems Technology.  Also not publicly

7 traded.

8      Q.    How many shares do you own in that company?

9      A.    I have it here somewhere.

10      Q.    Okay.  Is that still a viable company?

11      A.    It hasn't done anything in operations or

12 anything like that.

13      Q.    Do you know any of the other shareholders of

14 that company?

15      A.    The other share holder of that company is

16 Frederick Lopez.

17      Q.    Do you know what percentage of ownership you

18 have?

Page 29

Debtors Exam.txt

19    A.    Fifty percent.

20    Q.    And your father has the other fifty

21 percent?

22    A.    Yes.  For all intents and purposes, that's a

23 dormant corporation.

24    Q.    Does it have any assets?

25    A.    No.

TRAWICK COURT REPORTING

34

1    Q.    Any other closed corporation besides Prism

2 and F2?

3    A.    There's a limited liability company called

4 Cambria Holdings, LLC, which I own fifty percent of.

5    Q.    And who are the other members of that

6 company?

7    A.    The other owner is Mr. Stanly.

8    Q.    Does that LLC own any assets that you're

9 aware of?

10    A.    Not that I'm aware of, no.

11    Q.    The 2003 return also reflects some long-term

12 capital gains in -- well, two different sales, I guess.

13 SCRI.

14    A.    Yes.

15    Q.    What does that stand for?

16    A.    It stands for Sea Corp.

17    Q.    Own any stock in that corporation at this

18 time?

19    A.    No, I do not.

20    Q.    What about item 6, have you filed any

21 tangible personal property tax returns in the last three

22 calendar years?

Page 30

EXHIBIT 4

Jeffrey Isaacs (Bar No. 042622)
Gerald P. Kennedy (Bar No. 105887)
PROCOPIO, CORY, HARGREAVES
    & SAVITCH LLP
530 B Street, Suite 2100
San Diego, California 92101
Telephone:   (619) 238-1900
Facsimile:   (619) 235-0398

Attorneys for Plaintiff, Union Bank of California, N.A.

F I L E D
Clerk of the Superior Court

APR 1 9 2004

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

NORTH COUNTY DIVISION

| | |
|---|---|
| UNION BANK OF CALIFORNIA, N.A., <br><br> Plaintiff, <br><br> v. <br><br> FRANCIS J. LOPEZ, ALAN STANLY, and DOES I through DOES IV, inclusive, <br><br> Defendants. | Case No. GIN 030827 <br><br> **CONDITIONAL SETTLEMENT AND STIPULATION FOR DISMISSAL OR ENTRY OF JUDGMENT AND ORDER THEREON [LOCAL RULE 2.14]** <br><br> DATE:  None Set <br> TIME:  None Set <br> DEPT:  27 <br> JUDGE: Hon. Jacqueline M. Stern |

**IT IS HEREBY STIPULATED** by and between Plaintiff Union Bank of California, N.A. (the "Bank") and Defendant Francis J. Lopez ("Lopez") pursuant to Local Rule 2.14 of the San Diego Superior Court Rules for the conditional settlement of the above-entitled action and dismissal thereof or for entry of judgment thereon (the "Stipulation") as follows:

<u>RECITALS</u>

A.    This Stipulation is made with respect to the following facts:

1.    The Bank is, and at all times mentioned herein was, a National Banking Association organized and existing under the laws of the United States of America.

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon

100004 010757/457363.02

2

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                     Case No. GIN 030827
100004.010757/457363.02

9.     Pursuant to the Security Agreement and the Loan Agreement and as security for any and all obligations owing to the Bank by Prism, including but not limited to the Initial Note, a UCC Financing Statement (the "Financing Statement") covering the Collateral was filed in favor of Plaintiff with the Secretary of State of California as Instrument No. 0205160235 on February 15, 2002.

10.     From and after February 14, 2002, the Bank extended credit and made loans to Prism pursuant to the terms of the Initial Note, the Loan Agreement, Security Agreement, Lopez Guaranty, Stanly Guaranty, and Financing Statement

11.     On or about February 28, 2003, the Bank agreed to a sixty-day extension of time for Prism to repay the obligations due and owing under the Initial Note.

12.     On or about March 4, 2003, Prism executed and delivered to the Bank a second Commercial Promissory Note dated February 28, 2003, in place and instead of the Initial Note (the "Second Note"), in the principal amount of $300,000, interest to be paid to the Bank monthly as provided therein, and continuing until April 29, 2003, at which time the entire remaining principal balance then outstanding along with all accrued and unpaid interest would become due and payable.

13.     The Bank at all relevant times herein was the lawful owner and holder of the Initial Note and the Second Note, and the owner and holder of the beneficial interest under the Loan Agreement, Security Agreement, Financing Statement, Lopez Guaranty and Stanly Guaranty (collectively, the "Loan Documents").

14.     The Bank contends it has performed all conditions on its part to be performed pursuant to the terms of the Loan Documents, including but not limited to those to be performed under the Lopez Guaranty and the Stanly Guaranty.

15.     On or about April 22, 2003, Richard Kipperman ("Kipperman") was appointed Receiver for Prism pursuant to the Stipulation Regarding Appointment of Richard Kipperman as Receiver, filed with the San Diego Superior Court, North County Branch, in Case No. GIN 028765, <u>Prism and Prism Advance Technologies, Inc. v. Alan Stanly</u>, (the "Receivership Action") and all or substantially all of the Collateral came under Kipperman's possession and control.

16.     On or about June 26, 2003 the Bank commenced the above-entitled action in the San Diego Superior Court, North County Division based on the Lopez Guaranty and the Stanly Guaranty (the

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                              Case No. GIN 030827
100004.010757/457363.02

1   "Guaranty Action").   On October 29, 2003, Lopez filed a cross-complaint against the Bank in the

2   Guaranty Action alleging, among other things, that the Bank failed to follow instructions from Lopez to

3   freeze a certain deposit account maintained by Prism at the Bank thereby causing damage to Prism and

4   Lopez (the "Lopez Cross-Complaint").

5       17.     On August 22, 2003, Prism became the subject of an involuntary bankruptcy proceeding

6   filed in the United States Bankruptcy Court for the Southern District of California as Case No. 03-07777-

7   JM7 (the "Chapter 7 Proceeding") subsequent to which an order for relief was entered. Gregory Akers

8   was appointed Chapter 7 Trustee in the Chapter 7 Proceeding and undertook to sell Prism's assets,

9   including the Collateral.

10      18.     The Bank contends that the entire principal and accrued and unpaid interest was due

11  and owing under the Second Note in the sum of $301,979.52 which, as of June 14, 2003, was

12  comprised of principal in the sum of $295,352.54 and interest in the sum of $6,626.98 and, thereafter,

13  interest from June 14, 2003 under the Second Note at the daily rate of $86.14.  The Bank further

14  contends it is entitled to additional late charges, attorneys' fees and costs of suit as result of Prism's

15  default, so that as of July 14, 2003 the total sum owing under the Loan Documents was in excess of

16  $326,979.52 (this amount together with interest, attorney's fees and costs accruing from July 14, 2003

17  shall hereafter be referred to as the "Claim").  The Bank acknowledges it has heretofore received a

18  payment against the Claim in the sum of $205,000 in consideration for the Bank's release of its interest

19  in all or substantially all of the Collateral in the Chapter 7 Proceeding in order to facilitate the sale

20  thereof.

21      19.     It is the desire of the Bank, on the one hand, and Lopez, on the other hand, to resolve all

22  differences between them with respect to the Loan Documents, the Claim, the Receivership Action, the

23  Guaranty Action (including the Lopez Cross-Complaint), the Chapter 7 Proceeding and the Collateral

24  without the necessity of further litigation on the terms and conditions hereinbelow set forth.

25  ## STIPULATION

26      B.      Based on the foregoing Recitals it is hereby stipulated and agreed by the Bank and Lopez

27  as follows:

28      1.      Payments by Lopez to Bank.  Lopez shall pay to the Bank the sum of $15,000 in 21

4

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                                                    Case No. GIN 030827
100004.010757/457363.02




1    monthly installments as follows:

2          a.    The sum of $6,000 payable in installments of $500 per month commencing May

3          1, 2004 and thereafter on the first day of each succeeding month until said sum of

4          $6,000 is paid in full; and

5          b.    The sum of $9,000 payable in installments of $1,000 per month commencing on

6          May 1, 2005 and thereafter on the first day of each succeeding month until said

7          sum of $9,000 is paid in full.

8        2.    <u>Where Payments to Bank Must be Made.</u>  All payments to the Bank shall be made by

9    Lopez at the following address:

10         Mr. Adam Karrer
              Credit Officer
11         Union Bank of California
              445 South Figueroa Street
12         Los Angeles, California 90071

13        3.    <u>Event of Default.</u>  An event of default ("Event of Default") under this Stipulation shall

14    be:

15          a.    The failure of the Bank to physically receive any monthly payment by close of

16          business on its respective due date or, in the event that a particular due date falls

17          on a weekend or holiday, on the first day thereafter which is an actual business

18          day.  For example, in the event that the initial $500 payment due May 1, 2004

19          referred to in paragraph B.1. of this Stipulation is not actually received on or

20          before close of business on May 3, 2004, which is a Monday, an Event of Default

21          will have occurred; or

22          b.    The dishonor of any payment for any reason after its deposit or presentation for

23          payment by the Bank.

24        4.    <u>Notice of Event of Default.</u>  In the event of an Event of Default, the Bank shall provide

25    notice ("Notice") to counsel for Lopez by facsimile and mail as follows:

26         Joseph Fischbach, Esquire
              Fischbach & Fischbach
27         9595 Wilshire Boulevard, Suite 410
              Beverly Hills, California 90212
28         Telephone: 310-278-4015
              Facsimile:  310-278-2894

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                                     Case No. GIN 030827
100004.010757/457363.02



1    5.    <u>Entry of Judgment on this Stipulation.</u>  In the event that the payment which is the subject

2    of the Notice is not received by the Bank by close of business within three business days of the date of

3    such Notice, the Bank may, in its sole discretion, file a declaration with the above-entitled Court setting

4    forth with particularity the Event of Default and the amount of any payments made to that point in time

5    under paragraph B.1. of this Stipulation and the above-entitled Court shall thereupon enter judgment in

6    favor of the Bank and against Lopez for the sum of $50,000 less any such payments made under

7    paragraph B.1. of this Stipulation.  For example, if $1,000 has been paid at the time of an Event of

8    Default, then the Bank would be entitled to entry of judgment for $49,000.  In the event that the Bank

9    files such a declaration, the only issue before the Court shall be whether an Event of Default occurred and

10   whether such Event of Default was timely cured.

11   6.    <u>Enforcement of Judgment on this Stipulation.</u>  In the event the Bank obtains judgment

12   against Lopez pursuant to this Stipulation, such judgment shall accrue interest from the time of entry of

13   the judgment at the judgment rate of 10% per annum and the Bank may thereafter enforce the judgment

14   against Lopez in any manner the Bank in its sole discretion deems advisable.

15   7.    <u>Power of this Court to Set Aside Dismissal and Enter Judgment.</u>  Pursuant to Rule 2.14

16   of the San Diego Superior Court Rules, entry of judgment shall be withheld and this matter shall be

17   immediately dismissed, without prejudice, reserving to the above-entitled Court the power to set aside the

18   dismissal and order entry of judgment in the event of an event of default as set forth herein or enter

19   dismissal, with prejudice, upon the request of the Bank as set forth in this Stipulation.

20   8.    <u>Request for Dismissal Upon Timely Payment in Full.</u>  In the event that Lopez makes

21   timely payment of all of the payments referred to in paragraph B.1. of this Stipulation, the Bank shall

22   request that the above-entitled action be dismissed with prejudice in its entirety as to Lopez only as to all

23   claims and causes of action asserted against Lopez therein.

24   9.    <u>Non-Waiver of Rights Against Stanly.</u>  Nothing contained in this Stipulation shall be

25   construed as a waiver by the Bank of its right to pursue Stanly for the entirety of the Claim based on the

26   Loan Documents through the Guaranty Action or in any other manner the Bank, in its sole discretion,

27   deems appropriate.

28   10.   <u>Release by Lopez.</u>  Other than as expressly set forth in this Stipulation, Lopez hereby

6

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                                                    Case No. GIN 030827
100004.010757/457363.02

1  generally releases the Bank, together with its employees, agents, attorneys, representatives, successors,

2  stockholders and asssigns, from any and all rights, claims, interests, causes of action, rights of rescission,

3  costs, expenses and attorney fees, whether or not contingent, unliquidated or unmatured, known or

4  unknown, specifically and solely relating to or arising from the Loan Documents, the Claim, the

5  Receivership Action, the Guaranty Action (including the Lopez Cross-Complaint), the Chapter 7

6  Proceeding and/or the Collateral (the "Lopez Released Claims").    Notwithstanding the foregoing, the

7  Bank has been informed by Lopez that Lopez and Stanly have agreed to dismiss their respective cross-

8  complaints against each other in the above-entitled action and that, although they have agreed to release

9  the Bank from all claims, they have not agreed to release each other.  Rather, Lopez and Stanly will

10  litigate in the action pending before the above-entitled Court entitled <u>Lopez v. Stanly</u>, Case No. GIN

11  029692 their respective claims against each other arising out of the transactions referenced in both the

12  complaint and in their respective cross-complaints in the Guaranty Action.

13      11.    <u>Release by the Bank.</u>  Other than as expressly set forth in this Stipulation, the Bank

14  hereby generally releases Lopez, together with his employees, agents, attorneys, representatives,

15  successors, and assigns, from any and all rights, claims, interest, causes of action, rights of rescission,

16  costs, expenses and attorney fees, whether or not contingent, unliquidated or unmatured, known or

17  unknown, specifically and solely relating to or arising from the Loan Documents, the Claim, the

18  Receivership Action, the Guaranty Action (including the Lopez Cross-Complaint), the Chapter 7

19  Proceeding and/or the Collateral but excluding any other obligations to the Bank (the "Bank Released

20  Claims").  Nothing in this paragraph B.11. shall be construed as a release by the Bank of any claims it

21  may have against Stanly.

22      12.    <u>Release of Unknown Claims.</u>  The releases contained in paragraphs B.10. and B.11. of

23  this Stipulation shall be effective as a bar to all actions, causes of action, suits, claims, liens or demand

24  of any kind arising from or related to the Lopez Released Claims and the Bank Released Claims. THE

25  PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY LEGAL COUNSEL,

26  ARE FAMILIAR WITH AND HEREBY WAIVE THE PROTECTIONS OF CALIFORNIA CIVIL

27  CODE § 1542 (or any similar provision of any other jurisdiction) WHICH PROVIDES AS

28  FOLLOWS:

7

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                                                    Case No. GIN 030827
100004.010757/457363.02

> A general release does not extend to claims which the creditor does not
> know or suspect to exist in his favor at the time of executing the release,
> which if known by him must have materially affected his settlement with
> the debtor.

13.    <u>Good Faith Determination.</u>  The Bank acknowledges that Lopez may desire to seek a determination of the above-entitled Court of good faith pursuant to Code of Civil Procedure §877.6 and the Bank will reasonably cooperate with Lopez in connection with such a determination but this Stipulation shall not be affected by, delayed by or contingent upon such a determination or any motion in connection therewith.

14.    <u>Credit Reporting by Bank.</u>  Lopez contends that a negative credit report exists with respect to the transactions upon which the Guaranty Action is based.  To the extent that such a report was made by the Bank, the Bank shall within a reasonable period of time inform such credit reporting agency that any such negative report was the result of a "bona fide dispute" which has now been "settled and compromised" or words to that effect.  In the event that no Event of Default occurs under this Stipulation which is not cured in sufficient time so that the Bank is entitled to entry of judgment pursuant to paragraph B.5. of this Stipulation, the Bank shall refrain from making any negative credit report concerning Lopez to any credit reporting agency.  However, in the event that an Event of Default occurs under this Stipulation so that the Bank is entitled to entry of judgment under paragraph B.5. of this Stipulation, then the Bank shall be entitled to report concerning Lopez to any credit reporting agency that the Bank, in its sole discretion, deems appropriate.  In the event that the Bank has not complied with its obligations under this paragraph, Lopez shall advise the Bank of such non-compliance in writing at the address provided under paragraph B.2. of this Stipulation and, in addition, provide to the Bank a copy of any written credit report which reflects non-compliance by the Bank of its obligations under this paragraph and such other information concerning the Bank's non-compliance under this paragraph as the Bank reasonably requests.  Within 60 days of receipt of such written information from Lopez, the Bank shall take reasonable action to remedy the problem.  In the event that upon expiration of such 60 day period, Lopez is not satisfied with the Bank's remedial efforts under this paragraph, Lopez and the Bank agree to submit the resolution of such dispute to the alternative dispute resolution procedures as provided in the Alternative Dispute Resolution Agreement executed by Lopez in conjunction with the Loan

8

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                                                                Case No. GIN 030827
100004.010757/457363.02

1  Documents upon which the Guaranty Action is based.  To the extent that a dispute arises pursuant to this

2  paragraph, paragraph B.16. of this Stipulation shall not apply.  Rather, each party shall bear their own

3  attorney's fees and costs in connection with the resolution of such dispute.

4        15.   <u>Dismissal of Lopez Cross-Complaint.</u>  Upon the filing of this Stipulation, Lopez shall

5  forthwith cause the Lopez Cross-Complaint to be dismissed with prejudice as to all claims and causes of

6  action asserted against the Bank only.

7        16.   <u>Litigation to Enforce Stipulation.</u>  Other than as provided in paragraph B.14. of this

8  Stipulation, in the event of litigation to interpret or enforce any of the terms of this Stipulation, the

9  prevailing party to such litigation shall be entitled to, in addition to any other relief awarded, reasonable

10  attorney fees and costs incurred therein.

11        17.   <u>Investigation Prior to Execution.</u>  Each party to this Stipulation has made such

12  investigation of the facts pertaining to this Stipulation, and all of the matters pertaining thereto as such

13  party deems necessary.  Each party to this Stipulation has consulted with counsel before entering into this

14  Stipulation.

15        18.   <u>Entire Stipulation.</u>  This Stipulation is the entire agreement between the parties with

16  respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written

17  agreements and discussions.  This Stipulation may be amended only by an agreement in writing.  No

18  promise, inducement or agreement not herein expressed has been made to the other.

19        19.   <u>Binding on Successors.</u>  This Stipulation is binding upon and shall inure to the benefit of

20  the parties hereto and their assigns, heirs, and successors in interest.

21        20.   <u>Construction of Stipulation.</u>  Each party has cooperated in the drafting of this Stipulation.

22  Hence, in any construction to be made of this Stipulation, the same shall not be construed against any

23  party.

24        21.   <u>Reasonable Acts.</u>  Each party shall execute any document and perform all acts

25  reasonably necessary or convenient for the purpose of carrying out the terms and provisions of this

26  Stipulation.

27        22.   <u>Authority to Execute.</u>  Each party to this Stipulation warrants and represents that such

28  party is authorized to execute this Stipulation.

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                             Case No. GIN 030827
100004.010757/457363.02

 

GIN030827

23.   _Time is of the Essence._  Time is of the absolute essence of this Stipulation and each and every provision thereof.

24.   _Facsimile and Counterparts._  This Stipulation may be executed by facsimile and in counterparts.

DATED: 4/8/04                    UNION BANK OF CALIFORNIA, N.A.

                                 By: _____
                                     Adam Karrer, Assistant Vice President

DATED: _____          **SEE FACSIMILE SIGNATURE ATTACHED**
                                 Francis J. Lopez

## ORDER

The Court, having considered the foregoing Conditional Settlement and Stipulation for Dismissal or Entry of Judgment,

**IT IS ORDERED** as follows:

1.    The Stipulation is approved.

2.    Pursuant to Rule 2.14 of the San Diego Superior Court Rules, entry of judgment shall be withheld and this matter shall be immediately dismissed, without prejudice, reserving to the above-entitled Court the power to set aside the dismissal and order entry of judgment in the event of an event of default as set forth herein or enter dismissal, with prejudice, upon the request of the Bank as set forth in the Stipulation.

DATED: APR 1 9 2004             JACQUELINE M. STERN
                                _____
                                Judge, San Diego Superior Court

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                                    Case No. GIN 030827
100004.010757/457363.02

APR 15 2004 12:11PM  HP LASERJET 3200                                                        p.2

FROM :                              FAX NO. :850 269 1034              Apr. 13 2004 11:55AM  P1

GIN030827

23.  Time is of the Essence.  Time is of the absolute essence of this Stipulation and each and
every provision thereof.

24.  Facsimile and Counterpart.  This Stipulation may be executed by facsimile and in
counterparts.

DATED: _____              UNION BANK OF CALIFORNIA, N.A.


                                   By: _____
                                        Adam Karwe, Assistant Vice President


DATED: 4-13-04                     _____
                                   Francis J. Lopez


                                      ORDER

The Court, having considered the foregoing Conditional Settlement and Stipulation for Dismissal
or Entry of Judgment,

    IT IS ORDERED as follows:

    1.    The Stipulation is approved

    2.    Pursuant to Rule 2.14 of the San Diego Superior Court Rules, entry of judgment shall be
withheld and this matter shall be immediately dismissed, without prejudice, reserving to the above-
entitled Court the power to set aside the dismissal and order entry of judgment in the event of an event of
default as set forth herein or enter dismissal, with prejudice, upon the request of the Bank as set forth in
the Stipulation.

DATED: _____              _____
                                   Judge, San Diego Superior Court


                                          10
             Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Devsign, et al.                                          Case No. and another



1

2  Approved as to Form and Content:

3  PROCOPIO, CORY, HARGREAVES
   & SAVITCH LLP

4

5  By:

6      Jeffrey Isaacs, Attorneys for Plaintiff
       Union Bank of California, N.A.

7

8  FISCHBACH & FISCHBACH

9

   By:  SEE FACSIMILE SIGNATURE ATTACHED

10     Joseph S. Fischbach, Attorneys for Defendant
       Francis J. Lopez

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon
Union Bank v. Lopez, Stanly, et al.                                    Case No. GIN 030827
100004.010757/457363.02

APR 16 2004 8:45AM    HP LASERJET 3200    P.2

Approved as to Form and Content:

PROCOPIO, CORY, HARGREAVES
  & SAVITCH LLP

By: _____
    Jeffrey Isaacs, Attorneys for Plaintiff
    Union Bank of California, N.A.

FISCHBACH & FISCHBACH

By: _____
    Joseph S. Fischbach, Attorneys for Defendant
    Francis J. Lopez

11

Conditional Settlement and Stipulation for Dismissal or Entry of Judgment and Order Thereon

Union Bank v. Lopez, Barely, et al                                Case No. GIN 030627

100004.01075 7/457243.02

EXHIBIT 5

ENTERED 12-24-03

FILED

DEC 24 2003

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re

PRISM ADVANCED TECHNOLOGIES, INC.,

                              Debtor.

Bankruptcy No. 03-07777-M7

ORDER GRANTING TRUSTEE'S MOTION TO SELL PERSONAL PROPERTY FREE AND CLEAR OF LIENS

After a hearing on December 1, 2003, and review of the pleadings and alternative orders lodged by Alan Stanly, Con-Way Air Express, Inc., Priority Air Express, LLC., and Francis Lopez and the objection filed by James Bears, and based on Findings of Fact and Conclusions of Law entered separately,

IT IS ORDERED that:

1. The Trustee's Motion to Sell Personal Property Free and Clear of Liens is granted.  The Purchase Agreement attached hereto as Exhibit A is approved, except as expressly modified in this Order. Alan Stanly is a good faith purchaser pursuant to 11 U.S.C. § 363(m). All assets are sold on an "as-is, where-is" basis.

2.  The estate's interest in all assets of any type of Prism Advanced Technologies, Inc. ("Prism") and the bankruptcy estate of

1

1   Prism are transferred to Alan Stanly, including all claims and causes

2   of action based on state or federal law, including, but not limited

3   to, all fraud, fraudulent conveyance, tort contract, account

4   receivable or other claims held by Prism against any party; EXCEPT FOR

5   THE FOLLOWING:

6         A.   Claims and causes of action set forth at 11 U.S.C. §§

7   542, 543, 544, 545, 546, 547, 548 and 550. Alan Stanly IS acquiring

8   all claims under these sections against Alan Stanly, Stanly's family,

9   affiliates, agents and attorneys;

10        B.   Cash and depository accounts of Prism;

11        C.   50% of any tax refund owing to Prism;

12        D.   Any claims of the bankruptcy estate or Prism against

13   Union Bank.

14     3.   This sale is free and clear of all liens, claims and

15   interests of any type, EXCEPT the interests of Francis Lopez, if any,

16   and those of Priority Air Express, LLC., and Con-Way Air Express Inc.

17     4.   The reference to James Bears in Paragraph 1 of the Purchase

18   Agreement shall be stricken based on the representation of James Bears

19   in open court that he possesses no license or permission from the

20   Chapter 7 Trustee to use any of the bankruptcy estate's assets.

21     5.   Francis Lopez shall turn over any property of the bankruptcy

22   estate or Prism in his possession or under his control and shall

23   provide the Trustee with access to any location controlled by him in

24   which assets of the bankruptcy estate are located and allow the

25   Trustee to inventory and take possession of such assets.

26     6.   This order shall be immediately effective and no stay shall

27   apply to its execution.

28     7.   Immediately upon entry of this Order, Alan Stanly and any of

1   his assignees, agents or persons acting under his direction or control

2   shall turn over to Priority Air Express, LLC., all or any part of the

3   Priority Air Express source code and related information and materials

4   in their respective possession, custody or control, or which may

5   hereafter come into their respective possession, custody or control,

6   as defined and described in the Priority Air Express agreement with

7   Prism.

8        8.   Immediately upon entry of this Order, Alan Stanly and any of

9   his assignees, agents or persons acting under his direction or control

10  shall turn over to Con-Way all or any part of the Con-Way related

11  information and materials in their respective possession, custody or

12  control, or which may hereafter come into their respective possession,

13  custody or control, as defined and described in Section 12 of the

14  Software License Agreement dated November 28, 2001, entered into by

15  and between Prism and Con-Way, and signed on behalf of Prism by

16  Francis J. Lopez, CEO, including, but not limited to (in the words of

17  such Section 12):

18              A.   The source code for the Software;
                B.   All Documentation related thereto as well as
19      all   necessary   and   available   information,   proprietary
        information in English; and
20              C.   Technical Documentation in English which will
        enable LICENSEE to create, maintain and/or enhance the
21      Software without the aid of SUPPLIER or any other person or
        reference to any other materials, maintenance tools (test
22      programs and program specifications) proprietary or third

23      party system utilities (compiler and assembler descriptions),
        description   of   the   system/program   generation,   and
24      descriptions of any SUPPLIER tools required to provide
        LICENSEE to continue to use the Software.

25

26  Dated: DEC 24 2003

27  _____
                                                JAMES W. MEYERS, Judge
28                                              United States Bankruptcy Court

3

# Exhibit A

# PURCHASE AGREEMENT AND RELEASE

THIS PURCHASE AGREEMENT AND RELEASE (the "Agreement") is entered by and between Gregory Akers ("Seller") as and on behalf of the Chapter 7 bankruptcy trustee of the estate (the "Estate") of Prism Advanced Technologies, Inc., and Alan Stanly ("Stanly") or Stanly's assignee ("Buyer"), and Union Bank of California ("Bank") with reference to the following facts:

A.    On September 18, 2003, (the "Filing Date"), an order for relief was entered against Prism Advanced Technology, Inc. ("Prism") under Chapter 7 of Title 11, United States Code, in the United States Bankruptcy Court, Southern District of California ("Court"), Case No. 03-07777-M7.

B.    Seller is the duly appointed and acting Chapter 7 Trustee of Prism.

C.    Bank holds a duly perfected security interest in all the assets of Prism and is owed approximately $350,000.

D.    For the consideration and on the terms set forth herein, Seller desires to sell to Buyer all the non-cash assets (including accounts receivable) of the Estate except the claims and causes of action set forth at 11 U.S.C. Sections 542, 543, 544, 545, 547, 548 and 550, but including any 11 U.S.C. Sections 542, 543, 544, 546, 547, 548, and 550 claims against Buyer and except one-half of any tax refund to which Prism is entitled and to release and assign to Stanly and Stanly's family, affiliates, agents and attorneys from any and all claims, all rights, interests, causes of action, rights of rescission, costs, expenses and attorney's fees whether or not contingent, unliquidated or unmatured, known or unknown as  against Stanly and Stanly's family, affiliates, agents and attorneys.  In addition, Seller shall release and assign to Bank any and all claims owned by Prism or the Estate against Bank in exchange for Bank's agreement to release its lien on Prism's assets, including the Assets (as defined below) being transferred hereunder to Buyer on the conditions set forth in this Agreement.

E.    The assets being sold hereunder are all the tangible and intangible assets of Prism. This includes all the software and intellectual property owned by Prism, including but not limited to copyrights, trademarks, patents, ideas, trade secrets and trade dress rights, whether registered or unregistered, filed or unfiled, tangible or intangible, furniture and equipment, contract rights with Prism's customers, accounts receivable and customer lists, except the claims and causes of action set forth at 11 U.S.C. Sections 542, 543, 544, 545, 547, 548 and 550, but including any 11 U.S.C. Sections 542, 543, 544, 546, 547, 548, and 550 claims against Buyer and except one-half of any tax refund to which Prism is entitled (the "Assets").

F.    The sale is to be free and clear of all liens and encumbrances.  It is subject to the approval of the Court. A condition of the sale is that Buyer be found by the Court to be a good faith purchaser of the Assets under 11 U.S.C. Section 363(m).  It shall be Seller's responsibility to obtain an order of the Court with these terms.

G.    Buyer has agreed to pay the following sums in full performance of the payment terms of this Agreement:

1.  $205,000 to Bank directly.
2.  $35,000 to Seller.

Further, Buyer will agree not to file a claim for any money owing to him by Prism or the Estate. Buyer estimates that these claims exceed $200,000.

Buyer has agreed to pay the estate's $35,000 share of the sales price to the Trustee by cashier's check by 5:00 p.m. on November 28, 2003. This payment will not be refunded in the event that Buyer is the successful bidder and the sale is approved, but Buyer fails to complete his performance hereunder.

H.    Seller and Buyer have agreed that Seller, on behalf of the Estate, shall release all claims against Stanly and Stanly's family, affiliates, agents and attorneys as part of this Agreement, including any preference claims that it may have. Seller has investigated the claims against Bank and Stanly arising under the Bankruptcy Code and prepetition activities. Seller believes that these claims are appropriately resolved under the terms of this Agreement, given the consideration being offered by Buyer and the waiver of rights by the Bank reflected in 11 U.S.C. Section 363(f) and defenses to claims asserted by Stanly and Bank. Stanly asserts that he has conferred a substantial benefit upon the Estate by: (1) obtaining Bank's cooperation in the proposed sale hereunder by not foreclosing under its security agreement prior to the December 1, 2003 hearing on the proposed sale and to release its lien against Prism's assets, including the Assets which are the subject of this Agreement as provided in this Agreement; (2) assisting the Trustee; and (3) making a substantial offer to the Estate for the Assets subject to an overbid procedure, thereby potentially bringing in more money to the Estate.

I.    Buyer agrees to provide to Priority Air Express and Con-Way Freight the source code belonging to each and to remove from all the Assets he receives all proprietary information given by them to Prism should they so request upon completion of the sale of Assets to Buyer. This obligation only arises if this Agreement is approved by the Court in a final order.

**NOW, THEREFORE,** upon the terms and subject to the conditions herein stated, and in reliance upon the recitals herein, and for good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

1.    <u>Assets Being Purchased.</u>

On the Closing Date, and subject to the terms and conditions herein contained, Seller shall transfer, assign, convey and deliver to Buyer, and Buyer shall purchase all the assets of Prism, except as specifically listed below. This shall include assets defined in the broadest possible manner, including but not limited to that contained in 11 U.S.C. Section 541(a). This shall include, but is not limited to, the following assets:

-2-

(a)    All contracts with clients and customer lists.

(b)    The furniture, computers and related equipment, and all other tangible personal property.

(c)    All customer lists, books, files, lists of advertisers, web site responses and inquiries, vendors and suppliers, computer and electronic data processing material, correspondence and other business records pertaining to the operation of Prism.

(d)    All software and intellectual property owned by Prism. All derivative works from Prism's source code. All of Prism's intellectual property rights including, without limitation: (a) all of Prism's rights in any of its (i) patents, patent applications, patent disclosures and all related continuation, continuation-in-part, divisional, reissue, reexamination, utility, model, certificate of invention and design patents, patent applications, registrations and applications for registrations, (ii) trademarks, service marks, trade dress, logos, trade names and corporate names and registrations and applications for registration thereof, (iii) copyrights and registrations and applications for registration thereof, (iv) mask works and registrations and applications for registration thereof, (v) computer software, data and documentation, (vi) trade secrets and confidential business information, whether patentable or unpatentable and whether or not reduced to practice, know-how, manufacturing and production processes and techniques, research and development information, copyrightable works, financial, marketing and business data, pricing and cost information, business and marketing plans and customer and supplier lists and information, (vii) other proprietary rights relating to any of the foregoing and (viii) copies and tangible embodiments thereof; (ix) rights, if any, of computer software programs and systems and documentation relating to the foregoing or used or useable in the Business; and (x) other proprietary information owned, controlled, created or used or useable by or on behalf of Seller in connection with the conduct of the Business in which Seller has any interest whatsoever, whether or not registered, including rights or obligations under any license agreement with any other person.

(e)    All sales leads, including prospect databases, prospect lists and related contact information, including email addresses.

(f)    All claims, rights, and causes of action against any party in favor of Prism existing at the time of the Closing of the sale, whether or not the right has matured, ripened or is inchoate including, without limitation, fraud and fraudulent transfer claims Seller could exercise under 11 U.S.C. Section 544 which Prism could exercise in the absence of a bankruptcy filing, but excluding the claims and causes of action set forth at 11 U.S.C. Sections 542, 543, 544, 545, 547, 548 and 550, but including any 11 U.S.C. Sections 542, 543, 544, 546, 547, 548, and 550 claims against Buyer

Seller shall make his best efforts to deliver the Assets to Buyer.

- 3 -

Any license or permission given by the Seller to any party, including Francis Lopez, Tawnya Smothermon, Jim Bears, Martin Hudacko, and any of their affiliates or attorneys to use any of the estate's Assets shall be revoked and shall be null and void and no longer effective upon the approval of this sale, or execution of this agreement.

The purchase of Assets does not include cash and depository accounts, but shall include any and all of Prism's accounts receivable. The cash and depository accounts shall remain property of the bankruptcy estate. Further, Seller shall retain 50% of any tax refund owing to Prism and all avoidance rights not assigned or released herein described in 11 U.S.C. Sections 544, 545, 546, 547, 548 and 549. The purchase of Assets shall also not include the Released Claim against the Bank which are released and assigned to the Bank pursuant to paragraph 10.b of the Agreement.

Buyer is not assuming any liabilities of Prism under this Agreement.

2.    Closing Date.

The Closing Date of this sale is agreed to be the date the bankruptcy court order approving the sale becomes a final order as defined in paragraph 6, below, or earlier, in the sole discretion of Buyer. In the event the Closing Date occurs more than 30 days from the date of the execution of this Agreement by Buyer, Buyer shall have the exclusive right to cancel the sale in his discretion at any time thereafter.

3.    Free and Clear of Liens.

Subject to the provisions of paragraph 10 below, Seller and Bank agree that the Assets shall be conveyed free and clear of liens and interests on the Closing Date pursuant to the express order of the Court approving this Agreement.

4.    Purchase Price.

The purchase price for the Assets shall be:

a.    Not less than $205,000 paid to Union Bank directly from Buyer.
b.    Not less than $35,000 paid to Seller.

5.    Best Efforts

Seller and Buyer shall use their respective best efforts to consummate the transaction contemplated herein and shall not voluntarily take any course of action inconsistent with the consummation of these transactions, except as provided herein. Seller shall use his best efforts to procure the consent of the Court to the sale of the Assets to Buyer hereunder. In the event an overbid or alternate bid is submitted for the Assets, or any of them, Seller agrees to demand that the overbid be at least $260,000 in cash.

-4-

6.    Approval of the Court

The approval of the transactions contemplated in this Agreement shall be evidenced by entry of an order of the bankruptcy court approving this Agreement in its entirety and without modification (unless such modification is approved by Buyer, Seller and Bank in writing) and directing and authorizing the sale of the Assets free and clear of all liens and interests (the "Order"). A condition of the sale is that the court shall expressly find that Buyer is a good faith buyer as provided in 11 U.S.C. Section 363(m).

7.    Appeal

The duty to defend a sale to Buyer based on this Agreement shall be shared equally by Buyer and Seller. Seller shall not be entitled to collect the sales consideration and not defend this sale on appeal. In the event an appeal is filed of an order approving a sale to Buyer, whether under this Agreement or as a bidder in a sale based on this Agreement, Seller agrees that Seller shall file a joinder of the appeal if Buyer opposes the appeal.

8.    Overbid

In the event that the Assets or any part of them are sold pursuant to court order to any party other than Buyer, Buyer and Seller agree that:

a.    Seller shall have no liability of any kind to Buyer based on the failure of the bankruptcy court to approve this Agreement. Buyer shall be entitled to file a claim against the Estate.

b.    Any sums paid by Buyer to Seller shall be refunded to Buyer

Buyer shall receive $12,000 from the initial overbid to compensate him for his costs and expenses in pursuing the purchase of the Assets.

c.    All sums on deposit from Buyer shall be returned to Buyer immediately at the end of the hearing on the sale if Buyer is not the successful bidder..

d.    In the event of an overbid or alternate bid, Seller shall require bidder to deposit no less than $260,000 in cash or cashier's checks payable to Seller by 5:00 p.m. on November 28, 2003 in order to qualify to bid.

In the event of an overbid which results in a sale to other than the Buyer, the first $20,000 overbid increment shall be divided $12,000 to Buyer as provided in paragraph "c" above, with the balance of $8,000 to be divided 75% to the Bank and 25% to the Estate. In the event of an overbid which results in a sale to the Buyer, the entirely of the first $20,000 overbid increment shall be divided 75% to the Bank and 25% to the Estates. Any subsequent

100004.010757/436046.02

overbids in excess of $260,000 shall be divided between the Bank and the Estate in the same ration, to wit, 75% to the Bank and 25% to the Estate

e.      In the event of a sale to anyone other than Buyer, all claims, contract rights and causes of action, whether based on the Bankruptcy Code or state law or otherwise, including all such claims against Alan Stanly, Stanly's family, agents, affiliates and attorneys shall remain property of the Estate except as released herein.

f.      Any overbid after the minimum $260,000 overbid shall be in increments of at least $10,000.

g.      Seller will advise any overbidder that the Assets are sold "as is, where is" and that there are competing claims of ownership as to certain intellectual property assets. To qualify to bid, any overbidder must confirm in a writing given to Seller that the Seller made this disclosure.

9.      <u>Release of Stanly by Seller.</u>

Except as otherwise set forth in this Agreement, upon the Closing Date of a sale to Buyer Seller on behalf of the Estate fully, absolutely and forever releases and discharges Stanly and Stanly's family, affiliates, agents and attorneys from and any and all manner of claims, all rights, interests, causes of action, rights of rescission, costs, expenses and attorney's fees whether or not contingent, unliquidated or unmatured, whether now known or unknown and whether suspected or unsuspected, anticipated and unanticipated, and whether or not concealed or hidden, which now exist or heretofore have existed prior to the Closing Date.

Seller hereby expressly waives any and all rights and benefits conferred upon Seller, the Estate or Prism against Stanly and Stanly's family, affiliates, agents and attorneys by the provisions of Section 1542 of the California Civil Code which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Seller has read the foregoing releases of Stanly and Stanly's family, affiliates, agents and attorneys and recognizes and understand that the same applies to and covers all claims heretofore and hereinafter arising, whether or not known or suspected to exist at the present time.

In the event Buyer is the high bidder, Buyer will not file any claim against the Estate.

10.     <u>Conditions Upon Which Bank Shall Release its Lien and Release of Bank by Estate.</u>

-6-

a.   Release of Lien by Bank

Bank shall release its lien against all of Prism's Assets, including the Assets which are the subject of the sale provided that all of the following occur:

(1)   "The Bank receive on or before December 15, 2003 the sum of not less than $205,000 together with 75% of any overbid in excess of $240,000 or $252,000 as is appropriate under paragraph 8..g. of this Agreement."

(2)   The Bank is released from all claims against it owned by the Trustee, Prism or the Estate as more particularly set forth in paragraph "b" below.

(3)   The Bank may but shall not be required to accept a sum less than the full amount of its claim in the event that the ultimate buyer of the Assets is an individual other than Buyer.

b.   Release of Bank by Seller and Assignment of Released Claims.

Other than as expressly set forth in this Agreement, Seller, on behalf of the Estate and Prism and conditioned upon the closing of the sale of the Assets in strict accordance with the terms and provisions of this Agreement hereby releases the Bank together with the Bank's employees, agents, attorneys, representatives, successors and assigns from any and all rights, claims, interests, causes of action, rights of rescission, costs, expenses and attorney's fees whether or not contingent, unliquidated or unmatured, known or unknown as between Seller, the Estate and/or Prism, on the one hand, and the Bank, on the other hand, relating to or arising from the loan transaction upon which the Bank's claim is based or the Bank's relationship with Prism or any of Prism's employees, agents or representatives relating to or arising from such loan transaction (the "Released Claims"). In connection with the foregoing, the Trustee on behalf of Prism and the Estate hereby assigns to Bank all of such Released Claims in their entirety so that upon the close of the sale of the Assets to the extent such claims still exist, the Bank shall be the sole and exclusive owner of such Released Claims.

As to Bank, Seller hereby expressly waives any and all rights and benefits conferred upon Seller, the Estate or Prism by the provisions of Section 1542 of the California Civil Code which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

-7-

Seller has read the foregoing releases of Bank and recognizes and understands that the same applies to and covers all claims heretofore and hereinafter arising, whether or not known or suspected to exist at the present time.

12.     <u>Governing Law; Jurisdiction; Successors and Assigns; Counterparts: Entire Agreement</u>

This Agreement:

a.     shall be construed under and in accordance with the laws of the State of California;

b.     shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. <u>This Agreement and its terms are not transferable except to an assignee of Stanly.</u>. The stipulation by the Bank herein to release its lien as part of this Agreement does not apply to any other sale or asset transfer unless agreed to by the Bank.  Bank reserves its ability to assert all its 11 U.S.C. Section 363(f) rights as to any other transfer;

c.     may be executed in one or more counterparts, all of which shall be considered one and the same Agreement, and shall become effective when one or more counterparts shall have been signed by each of the parties and delivered to Bank, Seller and Buyer;

d.     embodies the entire agreement and understanding, and supersedes all prior agreements and understandings, between the parties relating to the subject matter hereof;

e.     may only be amended in writing signed by all the parties hereto.

f.     Buyer and Seller and Bank agree that any action to interpret or enforce the terms of this Agreement may be brought only in the United States Bankruptcy Court, Southern District of California.

13.     <u>Notices</u>

Any notice or other communications required or permitted hereunder shall be sufficiently given if sent by certified or registered mail, postage prepaid, addressed as follows:

To Buyer:                     Alan Stanly
                              1569 Berkshire Ct.
                              San Marcos, CA 92069

With A Copy to:               Michael T. O'Halloran, Esq.
                              1010 Second Avenue, #1727
                              San Diego, CA 92101

-8-

100004.010757/436046.02

And to

Timothy Dillon, Esq.
Weintraub Dillon PC
12520 High Bluff Drive, Suite 260
San Diego, CA 92130

To Seller:                  Gregory Akers
                            10731 Treena St. #209
                            San Diego, CA 92131

With A Copy to:             Susan Stevenson, Esq.
                            Pyle, Sims, Duncan & Stevenson
                            401 B Street, #1500
                            San Diego, CA 92101

To Bank:                    Mr. Adam Karrer
                            Assistant Vice President
                            Union Bank of California
                            445 South Figueroa Street
                            Los Angeles, California 90071

With A Copy to:             Jeffrey Isaacs, Esq.
                            Procopio, Cory, Hargreaves & Savitch
                            530 B Street, Suite 2100
                            San Diego, CA 92101

or such other addresses as shall be furnished in writing by either party to the other party. Any such notice or communication shall be deemed to have been given as of three business days after the date so mailed.

14.      <u>Severability</u>

If any provision of this Agreement shall be invalid or unenforceable, the other provisions of this Agreement shall continue in full force, and the validity and enforceability thereof shall not be adversely affected.

15.      <u>Time of Essence</u>

TIME IS OF THE ESSENCE as to each and every provision of this Agreement. the bankruptcy court has shortened time to 10 calendar days for notice of the December 1, 2003 hearing on the motion to approve the Agreement.

- 9 -

100004.010757/436046.02

16.    Construction

The parties agree that each party and its counsel have reviewed and revised this Agreement and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement or any amendments or exhibits hereto.

17.    Representative Capacity

Seller is signing this Agreement solely in his capacity as the bankruptcy trustee for Prism. He shall not have any personal or individual liability arising out of this Agreement or the transaction contemplated hereby except for willful misconduct.

**IN WITNESS WHEREOF**, Seller and Buyer and Bank have each caused this Agreement to be executed on their respective behalf as of the day and year noted below.


Dated: _____, 2003

_____
GREGORY AKERS
CHAPTER 7 BANKRUPTCY TRUSTEE


Dated: _____, 2003

_____
ALAN STANLY


Dated: _____, 2003

UNION BANK OF CALIFORNIA


_____
By: Adam Karrer Title: Assistant Vice President


- 10 -

EXHIBIT 6

# FISCHBACH & FISCHBACH
### A LAW CORPORATION
**9595 WILSHIRE BLD., SUITE 410**
**BEVERLY HILLS, CA 90212**

TELEPHONE: (310) 278-4015
FAX: (310) 278-2894

WRITER'S E-MAIL
jsf@fischbachlaw.com

May 19, 2005

Hon. H. Lee Sarokin
**Via Telecopier Only**
858-759-0629

*RE:    LOPEZ V. STANLY*

Dear Judge Sarokin:

Thank you for your letter.

Let me first begin by disagreeing with you. The responsibility of paying the private mediation service is that of the parties pursuant to the court order. The court order does not make counsel liable. It is not my practice to bankroll my clients' cases. If I were to do that, I would be out of business in one year.

I have forwarded your letter requesting a $5,000.00 cost retainer to Mr. Lopez. Mr. Lopez is unable to afford that at this time and although he is willing to pay as he goes with regular monthly bills, he simply cannot post a retainer of $5000.00. The Court Order does not so require.

Thank you for your continuing assistance.

Very Truly Yours,

**FISCHBACH & FISCHBACH**
**A LAW CORPORATION**

**JOSEPH S. FISCHBACH**
**ATTORNEY AT LAW**
JSF:mb
  cc:  Client
          Steve Davis
          T. Dillon

V:\Lopez\Stanly\Corr\sarokinfax51905.wpd

EXHIBIT 7

# FISCHBACH & FISCHBACH
### A LAW CORPORATION
**9595 WILSHIRE BLD., SUITE 410**
**BEVERLY HILLS, CA 90212**

TELEPHONE: (310) 278-4015
FAX: (310) 278-2894

WRITER'S E-MAIL
jsf@fischbachlaw.com

May 23, 2005

Hon. H. Lee Sarokin
**Via Telecopier Only**
858-759-0629

*RE:    LOPEZ V. STANLY*

Dear Judge Sarokin:

Thank you for your fax. I have asked Francis for his position on continuing with the reference in light of his financial crisis. Unfortunately as you know his finances are tight at this point, and he no longer has the economic ability to pay for Stanly's scorched earth policy of generating needless fees in the hope that Francis will give up. Thus, unless Dillon will advance all costs subject to a cost bill to the prevailing party, we must ask you to cease and desist at this point.

On another note I not have a copy of any letter from Dillon to you dated May 18.

Thank you for your assistance.

Very Truly Yours,

FISCHBACH & FISCHBACH
A LAW CORPORATION

JOSEPH S. FISCHBACH
ATTORNEY AT LAW
JSF:mb
CC: Dillon

V:\Lopez\Stanly\Corr\sarokinfax52305.wpd

EXHIBIT 8



## Foreign Profit

### NOVEON SYSTEMS, INC.

PRINCIPAL ADDRESS
310 SAND MYRTLE TRAIL
DESTIN FL 32541

MAILING ADDRESS
PO BOX 219
DESTIN FL 32540

| Document Number | FEI Number | Date Filed |
|---|---|---|
| F05000001817 | 432022111 | 03/21/2005 |

| State | Status | Effective Date |
|---|---|---|
| DE | ACTIVE | NONE |

## Registered Agent

| Name & Address |
|---|
| LOPEZ, FRANCIS<br>310 SAND MYRTLE TRAIL<br>DESTIN FL 32541 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| LOPEZ, MADELEINE L<br>310 SAND MYRTLE TRAIL<br><br>DESTIN FL 32541 | DVPS |
| LOPEZ, MADELEINE L<br>310 SAND MYRTLE TRAIL<br><br>DESTIN FL 32541 | T |
| LOPEZ, FRANCIS<br>310 SAND MYRTLE TRAIL<br><br>DESTIN FL 32541 | DP |



# Annual Reports

| Report Year | Filed Date |
|---|---|
|  |  |

[ Previous Filing ]        [ Return to List ]        [ Next Filing ]

No Events
No Name History Information

# Document Images

Listed below are the images available for this filing.

03/21/2005 -- Foreign Profit

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

**Corporations Inquiry**        **Corporations Help**

### Abbreviations found in "Title" field of detail screen:

| | | |
|---|---|---|
| **P** | - | President, Preacher*, Pastor*, or Priest* |
| **V** | - | Vice President |
| **S** | - | Secretary, or Sister* |
| **T** | - | Treasurer or Trustee |
| **R** | - | Receiver, Referee |
| **C** | - | Chairman, Cashier, Controller/Comptroller, Commander, Chief, or Commodore |
| **B** | - | Bookkeeper, Brother*, or Bishop* |
| **D** | - | Director, or Deacon* |
| **F** | - | Father* |
| **E** | - | Elder* |
| **A** | - | Apostle*, Administrator, or Attorney |
| **O** | - | Officer or Overseer |
| **Q** | - | Quarter Master |
| **M** | - | Manager or Missionary* |
| **G** | - | General |
| **L** | - | Limited |
| **MGR** | - | Manager |
| **MGRM** | - | Managing Member |
| **CEO** | - | Chief Executive Officer |

\* These abbreviations may be found with some nonprofit corporations such as churches.

EXHIBIT 9

ROBBINS & KEEHN
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ARLINGTON RAY ROBBINS
(1932-2004)

L. SCOTT KEEHN
MICHAEL V. PUNDEFF
CHARLES F. ROBBINS
SARAH H. LANHAM
LISA L. KEEHN

2400 UNION BANK BUILDING
530 "B" STREET
SAN DIEGO, CALIFORNIA 92101

TELEPHONE (619) 232-1700
TELECOPIER (619) 544-9095

## ~VIA FACSIMILE AND FIRST-CLASS MAIL~

July 5, 2005

Joseph Fischbach, Esq.
Fischbach & Fischbach
9595 Wilshire Blvd #410
Beverly Hills, CA 90212-2504

Re:    *In re Francis J. Lopez*, Involuntary Petition No.05-05926-PBINVOL;
       <u>San Diego Superior Court Case No. GIN 029692</u>

Dear Mr. Fischbach:

This office represents Alan Stanly as the petitioning creditor in the above-referenced involuntary bankruptcy case against Francis J. Lopez. As you are aware, the involuntary bankruptcy petition filed on June 30, 2005, triggers an automatic stay of all actions against Mr. Lopez, including the pending San Diego Superior Court Case No. GIN 029692.

It appears to be in both of our clients' best interests to allow the state court action to proceed to judgment. Therefore, our client proposes that the parties stipulate to allow the automatic stay to be lifted to allow the state court case to proceed to judgment only. The stay would remain in place to protect Mr. Lopez against any efforts in furtherance of collection or appeal of any judgment.

Please advise as soon as possible concerning whether you are amenable to such a stipulation.

Very truly yours,

**ROBBINS & KEEHN, APC**

Sarah H. Lanham

SHL:shl
cc:    Client
       Tim P. Dillon, Esq.
*102958/SHL/5311.01*

FAX HEADER 1:
FAX HEADER 2:

TRANSMITTED/STORED : JUL. 5. 2005  5:33PM

| FILE MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|
| 4318 MEMORY TX | | G3   :   760 587 2587 | OK | 2/2 |

-----------------------------------------------------------------------
REASON FOR ERROR
E-1) HANG UP OR LINE FAIL                     E-2) BUSY
E-3) NO ANSWER                                E-4) NO FACSIMILE CONNECTION
E-5) MAIL SIZE OVER

ROBBINS & KEEHN
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ARLINGTON RAY ROBBINS
(1932-2004)

L. SCOTT KEEHN
MICHAEL V. PUNDEFF
CHARLES F ROBBINS
SARAH H. LANHAM
LISA L KEEHN

2400 UNION BANK BUILDING
530 "B" STREET
SAN DIEGO, CALIFORNIA 92101

TELEPHONE (619) 232-1700
TELECOPIER (619) 544-9055

## FACSIMILE TRANSMISSION

RECIPIENT:                    Tim Dillon

                             Facsimile No.: ( 858 ) 587-2587

DATE:                         7/5/05

CLIENT NO:                    5311.01

SENDER:                       Sarah H. Lanham
                             ROBBINS & KEEHN, APC
                             Facsimile No.:  (619) 544-9095

TOTAL NUMBER OF PAGES TRANSMITTED (INCLUDING COVER SHEET):  2

IF YOU DO NOT RECEIVE ALL OF THESE PAGES,
PLEASE CALL (619) 232-1700, AS SOON AS POSSIBLE.

SPECIAL INSTRUCTIONS:

Date: _____     Time: _____     By: _____

40839/seh/8888.01

FAX HEADER 1:
FAX HEADER 2:

TRANSMITTED/STORED : JUL. 5. 2005  5:33PM
FILE MODE        OPTION              ADDRESS                          RESULT        PAGE

4317 MEMORY TX                        G3  :17607521509                 OK           2/2

REASON FOR ERROR
   E-1) HANG UP OR LINE FAIL                    E-2) BUSY
   E-3) NO ANSWER                               E-4) NO FACSIMILE CONNECTION
   E-5) MAIL SIZE OVER

## ROBBINS & KEEHN
### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW

ARLINGTON RAY ROBBINS
(1932-2004)

L. SCOTT KEEHN
MICHAEL V. PUNDEFF
CHARLES F. ROBBINS
SARAH H. LANHAM
LISA L. KEEHN

2400 UNION BANK BUILDING
530 "B" STREET
SAN DIEGO, CALIFORNIA 92101

TELEPHONE (619) 232-1700
TELECOPIER (619) 544-9095

## *FACSIMILE TRANSMISSION*

*RECIPIENT*:  _____ *Alan Stanly* _____

*Facsimile No.*: *( 760 ) 752-1509*

*DATE*:  _____ *7/5/05* _____

*CLIENT NO*:  _____ *5311.01* _____

*SENDER*:  _____ *Sarah H. Lanham* _____
*ROBBINS & KEEHN, APC*
*Facsimile No.*:  *(619) 544-9095*

*TOTAL NUMBER OF PAGES TRANSMITTED (INCLUDING COVER SHEET)*:_2_

*IF YOU DO NOT RECEIVE ALL OF THESE PAGES,*
*PLEASE CALL (619) 232-1700, AS SOON AS POSSIBLE.*

*SPECIAL INSTRUCTIONS*:

Date: _____  Time: _____  By: _____

40839/seh/8888.01

FAX HEADER 1:
FAX HEADER 2:

TRANSMITTED/STORED : JUL. 5. 2005  5:32PM
FILE MODE          OPTION              ADDRESS                                        RESULT        PAGE

4316 MEMORY TX                         G3  :FISCHBACH                                  OK           2/2

-------------------------------------------------------------------------------------------

REASON FOR ERROR
  E-1) HANG UP OR LINE FAIL                        E-2) BUSY
  E-3) NO ANSWER                                   E-4) NO FACSIMILE CONNECTION
  E-5) MAIL SIZE OVER

# ROBBINS & KEEHN
### A Professional Corporation
### ATTORNEYS AT LAW

ARLINGTON RAY ROBBINS
(1932-2004)

L. SCOTT KEEHN
MICHAEL V PUNCEFF
CHARLES F ROBBINS
SARAH H. LANHAM
LISA L. KEEHN

2400 UNION BANK BUILDING
530 "B" STREET
SAN DIEGO, CALIFORNIA 92101

TELEPHONE (619) 232-1700
TELECOPIER (619) 544-9005

## *FACSIMILE TRANSMISSION*

*RECIPIENT:*           *Joseph Fischbach*

                       Facsimile No.: *( 310 ) 278-2894*

*DATE:*                7/5/05

*CLIENT NO:*           5311.01

*SENDER:*              Sarah H. Lanham
                       ROBBINS & KEEHN, APC
                       Facsimile No.: (619) 544-9095

*TOTAL NUMBER OF PAGES TRANSMITTED (INCLUDING COVER SHEET):* 2

*IF YOU DO NOT RECEIVE ALL OF THESE PAGES,*
*PLEASE CALL (619) 232-1700, AS SOON AS POSSIBLE.*

*SPECIAL INSTRUCTIONS:*

Date: _____        Time: _____        By: _____

*40839/seh/8888.01*

EXHIBIT 10

# FISCHBACH & FISCHBACH
## A Law Corporation

**Author's Direct E-Mail:**
*JSF@Fischbachlaw.com*

9595 Wilshire Boulevard
Suite 410
Beverly Hills, CA 90212

Telephone   (310) 278-4015
Facsimile   (310) 278-2894

July 6, 2005

**VIA TELECOPIER ONLY**
**619-544-9095**

Sarah Lanham
ROBBINS AND KEEHN
2400 Union Bank Building
530 "B" Street
San Diego, CA 92101

Re:   **In re Francis Lopez**

Dear Ms. Lanham:

This will acknowledge receipt of your rather odd request. Mr. Lopez's bankruptcy attorney will be advised of your request and you will receive a response in due course.

Very truly yours.

**FISCHBACH & FISCHBACH**
**A LAW CORPORATION**

**DICTATED BUT NOT READ**

**JOSEPH S. FISCHBACH**
**ATTORNEY AT LAW**
JSF:mb

V:\Lopez\Bankruptcy 2005\Lanham 7-6-05.wpd



EXHIBIT 11



DILLON
SIMONSEN

DILLON & SIMONSEN, APC
3660 LA JOLLA VILLAGE DRIVE, SUITE 275
SAN DIEGO, CALIFORNIA 92122
PHONE 858.587.1800  FAX 858.587.2587

WWW.DILLONSIMONSEN.COM

July 21, 2005

**VIA FACSIMILE (310) 278-2894**
**& U.S. MAIL**

Joseph S. Fischbach, Esq.
Fischbach & Fischbach
9595 Wilshire Blvd., Suite 410
Beverly Hills, CA 90212

   Re:  <u>**Lopez v. Stanly**</u>

Dear Mr. Fischbach:

  We are writing in follow-up to our previous correspondence concerning the involuntary bankruptcy filed against your client, Francis Lopez.  Although Mr. Lopez's *affirmative* claims against Mr. Stanly are <u>not</u> stayed by the filing of the involuntary petition, it is our understanding that the claims of Mr. Stanly against Lopez *are* stayed. In light of the fact that trial is set for October 2005, we would like to stipulate to relief from the stay to take this matter to judgment and no further.  Please advise us if you are willing to stipulate so that we may continue with the litigation of this case.

  We look forward to your prompt reply.

       Yours Very Truly
       DILLON & SIMONSEN, APC

       Timothy P. Dillon, Esq.

TPD/cah
cc: Alan Stanly

EXHIBIT 12

# FISCHBACH & FISCHBACH
## A LAW CORPORATION
### 9595 WILSHIRE BLD., SUITE 410
### BEVERLY HILLS, CA 90212

TELEPHONE: (310) 278-4015
FAX: (310) 278-2894

WRITER'S E-MAIL
jsf@fischbachlaw.com

July 25, 2005

**VIA TELECOPIER ONLY**
**858-587-2587**

Timothy P. Dillon
Dillon & Simonsen, APC
4660 La Jolla Village Dr., Suite 775
San Diego, CA 92122

Re:     **Lopez v. Stanly**

Dear Mr. Dillon:

Mr. Dillon, as I understand it you want me stipulate to releasing the Automatic Stay for the entire action. We see no reason to do so. We are however considering electing to proceed on the Complaint. As I understand it, the Debtor would have the option to proceed under your theory and since we have not yet made our decision, it would be premature to give you an answer at this juncture.

Very truly yours,


**FISCHBACH & FISCHBACH**
**A LAW CORPORATION**

**DICTATED BUT NOT READ**

**JOSEPH S. FISCHBACH**
**ATTORNEY AT LAW**
JSF: mb
Enclosure
CC: Client


V:\Lopez\Stanly\Corr\Dillon Ltr. - 7.25.05.wpd