# DOCKET NUMBER 32-1

1   L. Scott Keehn (61691)
    Sarah H. Lanham (213555)
2   **ROBBINS & KEEHN, APC**
    A Professional Corporation
3   530 "B" Street, Suite 2400
    San Diego, California 92101
4   Telephone: (619) 232-1700

5   Attorneys for Petitioning Creditor
    **ALAN STANLY**

6

7

8                   **UNITED STATES BANKRUPTCY COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                              )   **Case No. 05-05926-PBINV**
                                        )
12                                      )   **Involuntary Chapter 7**
    FRANCIS J. LOPEZ, an individual,    )
13                                      )   **REQUEST FOR JUDICIAL NOTICE IN**
            Alleged Debtor.             )   **OPPOSITION TO MOTION BY ALLEGED**
14                                      )   **DEBTOR FOR AN ORDER BIFURCATING**
                                        )   **TRIAL RE INVOLUNTARY PETITION;**
15                                      )   **SETTING DEADLINE TO ADD NEW**
                                        )   **PETITION CREDITORS; AND**
16                                      )   **REQUIRING THE POSTING OF A BOND**
                                        )
17                                      )   **Date:**      December 19, 2005
                                        )   **Time:**      10:00 a.m.
18                                      )   **Judge:**     Hon. Peter W. Bowie
                                        )   **Dept.:**     Four (4)
19  _____)

20  / / / / /

21  / / / / /

22  / / / / /

23  / / / / /

24  / / / / /

25  / / / / /

26  / / / / /

27  / / / / /

28  / / / / /

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9905

1    TO:    Hon. Peter W. Bowie, Judge of the United States Bankruptcy Court:

2        In accordance with and pursuant to Rule 201 of the Federal Rules of Evidence, Petitioning

3    Creditor Alan Stanly respectfully requests that the court take judicial notice of the following:

4        1.    The court's "Order Granting Trustee's Motion to Sell Personal Property Free and

5    Clear of Liens," entered as Docket Item No. 120 in *In re Advanced Technologies, Inc.*, pending as

6    case number 03-07777-M7 before the United States Bankruptcy Court for the Southern District of

7    California (a copy of which is attached hereto as Exhibit 1); and,

8        2.    The court's "Order Re: III — Report and Recommendation of Discovery Referee,"

9    filed August 29, 2005, in *Lopez, et al. v. Stanley, et al.*, pending as case number GIN 029692

10   before the Superior Court of the State of California, for the County of San Diego, North County

11   Branch (a copy of which is attached hereto as Exhibit 2).

12

13   Dated:    December 5, 2005        **ROBBINS & KEEHN**
                                       A Professional Corporation

14

15

16                         By:    //s// L. Scott Keehn
                                  L. Scott Keehn

17                                Sarah H. Lanham
                                  Attorneys for Petitioning Creditor

18                                Alan Stanly

19

20

21

22

23

24

25

26

27

28

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

104785/LSK/5311.01

# EXHIBIT 1

ENTERED 12-24-03

FILED

DEC 2 4 2003

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Bankruptcy No. 03-07777-M7 |
| PRISM ADVANCED TECHNOLOGIES, INC., | ORDER GRANTING TRUSTEE'S MOTION TO SELL PERSONAL PROPERTY FREE AND CLEAR OF LIENS |
| Debtor. | |

After a hearing on December 1, 2003, and review of the pleadings and alternative orders lodged by Alan Stanly, Con-Way Air Express, Inc., Priority Air Express, LLC., and Francis Lopez and the objection filed by James Bears, and based on Findings of Fact and Conclusions of Law entered separately,

IT IS ORDERED that:

1.  The Trustee's Motion to Sell Personal Property Free and Clear of Liens is granted.   The Purchase Agreement attached hereto as Exhibit A is approved, except as expressly modified in this Order. Alan Stanly is a good faith purchaser pursuant to 11 U.S.C. § 363(m). All assets are sold on an "as-is, where-is" basis.

2.  The estate's interest in all assets of any type of Prism Advanced Technologies, Inc. ("Prism") and the bankruptcy estate of

1

1   Prism are transferred to Alan Stanly, including all claims and causes
2   of action based on state or federal law, including, but not limited
3   to, all fraud, fraudulent conveyance, tort contract, account
4   receivable or other claims held by Prism against any party; EXCEPT FOR
5   THE FOLLOWING:

6          A.   Claims and causes of action set forth at 11 U.S.C. §§
7   542, 543, 544, 545, 546, 547, 548 and 550.  Alan Stanly IS acquiring
8   all claims under these sections against Alan Stanly, Stanly's family,
9   affiliates, agents and attorneys;

10         B.   Cash and depository accounts of Prism;

11         C.   50% of any tax refund owing to Prism;

12         D.   Any claims of the bankruptcy estate or Prism against
13  Union Bank.

14      3.   This sale is free and clear of all liens, claims and
15  interests of any type, EXCEPT the interests of Francis Lopez, if any,
16  and those of Priority Air Express, LLC., and Con-Way Air Express Inc.

17      4.   The reference to James Bears in Paragraph 1 of the Purchase
18  Agreement shall be stricken based on the representation of James Bears
19  in open court that he possesses no license or permission from the
20  Chapter 7 Trustee to use any of the bankruptcy estate's assets.

21      5.   Francis Lopez shall turn over any property of the bankruptcy
22  estate or Prism in his possession or under his control and shall
23  provide the Trustee with access to any location controlled by him in
24  which assets of the bankruptcy estate are located and allow the
25  Trustee to inventory and take possession of such assets.

26      6.   This order shall be immediately effective and no stay shall
27  apply to its execution.

28      7.   Immediately upon entry of this Order, Alan Stanly and any of

2

1   his assignees, agents or persons acting under his direction or control

2   shall turn over to Priority Air Express, LLC., all or any part of the

3   Priority Air Express source code and related information and materials

4   in their respective possession, custody or control, or which may

5   hereafter come into their respective possession, custody or control,

6   as defined and described in the Priority Air Express agreement with

7   Prism.

8      8.   Immediately upon entry of this Order, Alan Stanly and any of

9   his assignees, agents or persons acting under his direction or control

10   shall turn over to Con-Way all or any part of the Con-Way related

11   information and materials in their respective possession, custody or

12   control, or which may hereafter come into their respective possession,

13   custody or control, as defined and described in Section 12 of the

14   Software License Agreement dated November 28, 2001, entered into by

15   and between Prism and Con-Way, and signed on behalf of Prism by

16   Francis J. Lopez, CEO, including, but not limited to (in the words of

17   such Section 12):

18           A.   The source code for the Software;

            B.   All Documentation related thereto as well as

19   all   necessary   and   available   information,   proprietary

    information in English; and

20           C.   Technical Documentation in English which will

  enable LICENSEE to create, maintain and/or enhance the

21   Software without the aid of SUPPLIER or any other person or

  reference to any other materials, maintenance tools (test

22   programs and program specifications) proprietary or third

23   party system utilities (compiler and assembler descriptions),

  description   of   the   system/program   generation,   and

24   descriptions of any SUPPLIER tools required to provide

  LICENSEE to continue to use the Software.

25

26   Dated: DEC 24 2003

27

                                _____

28                    JAMES W. MEYERS, Judge
                   United States Bankruptcy Court

                         3

# Exhibit A

## PURCHASE AGREEMENT AND RELEASE

THIS PURCHASE AGREEMENT AND RELEASE (the "Agreement") is entered by and between Gregory Akers ("Seller") as and on behalf of the Chapter 7 bankruptcy trustee of the estate (the "Estate") of Prism Advanced Technologies, Inc., and Alan Stanly ("Stanly") or Stanly's assignee ("Buyer"), and Union Bank of California ("Bank") with reference to the following facts:

A.    On September 18, 2003, (the "Filing Date"), an order for relief was entered against Prism Advanced Technology, Inc. ("Prism") under Chapter 7 of Title 11, United States Code, in the United States Bankruptcy Court, Southern District of California ("Court"), Case No. 03-07777-M7.

B.    Seller is the duly appointed and acting Chapter 7 Trustee of Prism.

C.    Bank holds a duly perfected security interest in all the assets of Prism and is owed approximately $350,000.

D.    For the consideration and on the terms set forth herein, Seller desires to sell to Buyer all the non-cash assets (including accounts receivable) of the Estate except the claims and causes of action set forth at 11 U.S.C. Sections 542, 543, 544, 545, 547, 548 and 550, but including any 11 U.S.C. Sections 542, 543, 544, 546, 547, 548, and 550 claims against Buyer and except one-half of any tax refund to which Prism is entitled and to release and assign to Stanly and Stanly's family, affiliates, agents and attorneys from any and all claims, all rights, interests, causes of action, rights of rescission, costs, expenses and attorney's fees whether or not contingent, unliquidated or unmatured, known or unknown as  against Stanly and Stanly's family, affiliates, agents and attorneys.  In addition, Seller shall release and assign to Bank any and all claims owned by Prism or the Estate against Bank in exchange for Bank's agreement to release its lien on Prism's assets, including the Assets (as defined below) being transferred hereunder to Buyer on the conditions set forth in this Agreement.

E.    The assets being sold hereunder are all the tangible and intangible assets of Prism. This includes all the software and intellectual property owned by Prism, including but not limited to copyrights, trademarks, patents, ideas, trade secrets and trade dress rights, whether registered or unregistered, filed or unfiled, tangible or intangible, furniture and equipment, contract rights with Prism's customers, accounts receivable and customer lists, except the claims and causes of action set forth at 11 U.S.C. Sections 542, 543, 544, 545, 547, 548 and 550, but including any 11 U.S.C. Sections 542, 543, 544, 546, 547, 548, and 550 claims against Buyer and except one-half of any tax refund to which Prism is entitled (the "Assets").

F.    The sale is to be free and clear of all liens and encumbrances.  It is subject to the approval of the Court. A condition of the sale is that Buyer be found by the Court to be a good faith purchaser of the Assets under 11 U.S.C. Section 363(m). It shall be Seller's responsibility to obtain an order of the Court with these terms.

G.    Buyer has agreed to pay the following sums in full performance of the payment terms of this Agreement:

1.     $205,000 to Bank directly.
2.     $35,000 to Seller.

Further, Buyer will agree not to file a claim for any money owing to him by Prism or the Estate. Buyer estimates that these claims exceed $200,000.

Buyer has agreed to pay the estate's $35,000 share of the sales price to the Trustee by cashier's check by 5:00 p.m. on November 28, 2003. This payment will not be refunded in the event that Buyer is the successful bidder and the sale is approved, but Buyer fails to complete his performance hereunder.

H.     Seller and Buyer have agreed that Seller, on behalf of the Estate, shall release all claims against Stanly and Stanly's family, affiliates, agents and attorneys as part of this Agreement, including any preference claims that it may have. Seller has investigated the claims against Bank and Stanly arising under the Bankruptcy Code and prepetition activities. Seller believes that these claims are appropriately resolved under the terms of this Agreement, given the consideration being offered by Buyer and the waiver of rights by the Bank reflected in 11 U.S.C. Section 363(f) and defenses to claims asserted by Stanly and Bank. Stanly asserts that he has conferred a substantial benefit upon the Estate by: (1) obtaining Bank's cooperation in the proposed sale hereunder by not foreclosing under its security agreement prior to the December 1, 2003 hearing on the proposed sale and to release its lien against Prism's assets, including the Assets which are the subject of this Agreement as provided in this Agreement; (2) assisting the Trustee; and (3) making a substantial offer to the Estate for the Assets subject to an overbid procedure, thereby potentially bringing in more money to the Estate.

I.     Buyer agrees to provide to Priority Air Express and Con-Way Freight the source code belonging to each and to remove from all the Assets he receives all proprietary information given by them to Prism should they so request upon completion of the sale of Assets to Buyer. This obligation only arises if this Agreement is approved by the Court in a final order.

NOW, THEREFORE, upon the terms and subject to the conditions herein stated, and in reliance upon the recitals herein, and for good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

1.     Assets Being Purchased.

On the Closing Date, and subject to the terms and conditions herein contained, Seller shall transfer, assign, convey and deliver to Buyer, and Buyer shall purchase all the assets of Prism, except as specifically listed below. This shall include assets defined in the broadest possible manner, including but not limited to that contained in 11 U.S.C. Section 541(a). This shall include, but is not limited to, the following assets:

-2-

(a)  All contracts with clients and customer lists.

(b)  The furniture, computers and related equipment, and all other tangible personal property.

(c)  All customer lists, books, files, lists of advertisers, web site responses and inquiries, vendors and suppliers, computer and electronic data processing material, correspondence and other business records pertaining to the operation of Prism.

(d)  All software and intellectual property owned by Prism. All derivative works from Prism's source code. All of Prism's intellectual property rights including, without limitation: (a) all of Prism's rights in any of its (i) patents, patent applications, patent disclosures and all related continuation, continuation-in-part, divisional, reissue, reexamination, utility, model, certificate of invention and design patents, patent applications, registrations and applications for registrations, (ii) trademarks, service marks, trade dress, logos, trade names and corporate names and registrations and applications for registration thereof, (iii) copyrights and registrations and applications for registration thereof, (iv) mask works and registrations and applications for registration thereof, (v) computer software, data and documentation, (vi) trade secrets and confidential business information, whether patentable or unpatentable and whether or not reduced to practice, know-how, manufacturing and production processes and techniques, research and development information, copyrightable works, financial, marketing and business data, pricing and cost information, business and marketing plans and customer and supplier lists and information, (vii) other proprietary rights relating to any of the foregoing and (viii) copies and tangible embodiments thereof; (ix) rights, if any, of computer software programs and systems and documentation relating to the foregoing or used or useable in the Business; and (x) other proprietary information owned, controlled, created or used or useable by or on behalf of Seller in connection with the conduct of the Business in which Seller has any interest whatsoever, whether or not registered, including rights or obligations under any license agreement with any other person.

(e)  All sales leads, including prospect databases, prospect lists and related contact information, including email addresses.

(f)  All claims, rights, and causes of action against any party in favor of Prism existing at the time of the Closing of the sale, whether or not the right has matured, ripened or is inchoate including, without limitation, fraud and fraudulent transfer claims Seller could exercise under 11 U.S.C. Section 544 which Prism could exercise in the absence of a bankruptcy filing, but excluding the claims and causes of action set forth at 11 U.S.C. Sections 542, 543, 544, 545, 547, 548 and 550, but including any 11 U.S.C. Sections 542, 543, 544, 546, 547, 548, and 550 claims against Buyer

Seller shall make his best efforts to deliver the Assets to Buyer.

-3-

100004.010757/436046.02

Any license or permission given by the Seller to any party, including Francis Lopez, Tawnya Smothermon, Jim Bears, Martin Hudacko, and any of their affiliates or attorneys to use any of the estate's Assets shall be revoked and shall be null and void and no longer effective upon the approval of this sale, or execution of this agreement.

The purchase of Assets does not include cash and depository accounts, but shall include any and all of Prism's accounts receivable. The cash and depository accounts shall remain property of the bankruptcy estate. Further, Seller shall retain 50% of any tax refund owing to Prism and all avoidance rights not assigned or released herein described in 11 U.S.C. Sections 544, 545, 546, 547, 548 and 549. The purchase of Assets shall also not include the Released Claim against the Bank which are released and assigned to the Bank pursuant to paragraph 10.b of the Agreement.

Buyer is not assuming any liabilities of Prism under this Agreement.

2. <u>Closing Date</u>.

The Closing Date of this sale is agreed to be the date the bankruptcy court order approving the sale becomes a final order as defined in paragraph 6, below, or earlier, in the sole discretion of Buyer. In the event the Closing Date occurs more than 30 days from the date of the execution of this Agreement by Buyer, Buyer shall have the exclusive right to cancel the sale in his discretion at any time thereafter.

3. <u>Free and Clear of Liens</u>.

Subject to the provisions of paragraph 10 below, Seller and Bank agree that the Assets shall be conveyed free and clear of liens and interests on the Closing Date pursuant to the express order of the Court approving this Agreement.

4. <u>Purchase Price</u>.

The purchase price for the Assets shall be:

   a. Not less than $205,000 paid to Union Bank directly from Buyer.
   b. Not less than $35,000 paid to Seller.

5. Best Efforts

Seller and Buyer shall use their respective best efforts to consummate the transaction contemplated herein and shall not voluntarily take any course of action inconsistent with the consummation of these transactions, except as provided herein. Seller shall use his best efforts to procure the consent of the Court to the sale of the Assets to Buyer hereunder. In the event an overbid or alternate bid is submitted for the Assets, or any of them, Seller agrees to demand that the overbid be at least $260,000 in cash.

-4-

6.    Approval of the Court

The approval of the transactions contemplated in this Agreement shall be evidenced by entry of an order of the bankruptcy court approving this Agreement in its entirety and without modification (unless such modification is approved by Buyer, Seller and Bank in writing) and directing and authorizing the sale of the Assets free and clear of all liens and interests (the "Order"). A condition of the sale is that the court shall expressly find that Buyer is a good faith buyer as provided in 11 U.S.C. Section 363(m).

7.    Appeal

The duty to defend a sale to Buyer based on this Agreement shall be shared equally by Buyer and Seller. Seller shall not be entitled to collect the sales consideration and not defend this sale on appeal. In the event an appeal is filed of an order approving a sale to Buyer, whether under this Agreement or as a bidder in a sale based on this Agreement, Seller agrees that Seller shall file a joinder of the appeal if Buyer opposes the appeal.

8.    Overbid

In the event that the Assets or any part of them are sold pursuant to court order to any party other than Buyer, Buyer and Seller agree that:

a.    Seller shall have no liability of any kind to Buyer based on the failure of the bankruptcy court to approve this Agreement. Buyer shall be entitled to file a claim against the Estate.

b.    Any sums paid by Buyer to Seller shall be refunded to Buyer

Buyer shall receive $12,000 from the initial overbid to compensate him for his costs and expenses in pursuing the purchase of the Assets.

c.    All sums on deposit from Buyer shall be returned to Buyer immediately at the end of the hearing on the sale if Buyer is not the successful bidder..

d.    In the event of an overbid or alternate bid, Seller shall require bidder to deposit no less than $260,000 in cash or cashier's checks payable to Seller by 5:00 p.m. on November 28, 2003 in order to qualify to bid.

In the event of an overbid which results in a sale to other than the Buyer, the first $20,000 overbid increment shall be divided $12,000 to Buyer as provided in paragraph "c" above, with the balance of $8,000 to be divided 75% to the Bank and 25% to the Estate. In the event of an overbid which results in a sale to the Buyer, the entirely of the first $20,000 overbid increment shall be divided 75% to the Bank and 25% to the Estates. Any subsequent

-5-

overbids in excess of $260,000 shall be divided between the Bank and the Estate in the same ration, to wit, 75% to the Bank and 25% to the Estate

e.    In the event of a sale to anyone other than Buyer, all claims, contract rights and causes of action, whether based on the Bankruptcy Code or state law or otherwise, including all such claims against Alan Stanly, Stanly's family, agents, affiliates and attorneys shall remain property of the Estate except as released herein.

f.    Any overbid after the minimum $260,000 overbid shall be in increments of at least $10,000.

g.    Seller will advise any overbidder that the Assets are sold "as is, where is" and that there are competing claims of ownership as to certain intellectual property assets. To qualify to bid, any overbidder must confirm in a writing given to Seller that the Seller made this disclosure.

9.    <u>Release of Stanly by Seller.</u>

Except as otherwise set forth in this Agreement, upon the Closing Date of a sale to Buyer Seller on behalf of the Estate fully, absolutely and forever releases and discharges Stanly and Stanly's family, affiliates, agents and attorneys from and any and all manner of claims, all rights, interests, causes of action, rights of rescission, costs, expenses and attorney's fees whether or not contingent, unliquidated or unmatured, whether now known or unknown and whether suspected or unsuspected, anticipated and unanticipated, and whether or not concealed or hidden, which now exist or heretofore have existed prior to the Closing Date.

Seller hereby expressly waives any and all rights and benefits conferred upon Seller, the Estate or Prism against Stanly and Stanly's family, affiliates, agents and attorneys by the provisions of Section 1542 of the California Civil Code which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Seller has read the foregoing releases of Stanly and Stanly's family, affiliates, agents and attorneys and recognizes and understand that the same applies to and covers all claims heretofore and hereinafter arising, whether or not known or suspected to exist at the present time.

In the event Buyer is the high bidder, Buyer will not file any claim against the Estate.

10.    <u>Conditions Upon Which Bank Shall Release its Lien and Release of Bank by Estate.</u>

-6-

a.    Release of Lien by Bank

Bank shall release its lien against all of Prism's Assets, including the Assets which are the subject of the sale provided that all of the following occur:

(1)    "The Bank receive on or before December 15, 2003 the sum of not less than $205,000 together with 75% of any overbid in excess of $240,000 or $252,000 as is appropriate under paragraph 8..g. of this Agreement."

(2)    The Bank is released from all claims against it owned by the Trustee, Prism or the Estate as more particularly set forth in paragraph "b" below.

(3)    The Bank may but shall not be required to accept a sum less than the full amount of its claim in the event that the ultimate buyer of the Assets is an individual other than Buyer.

b.    Release of Bank by Seller and Assignment of Released Claims.

Other than as expressly set forth in this Agreement, Seller, on behalf of the Estate and Prism and conditioned upon the closing of the sale of the Assets in strict accordance with the terms and provisions of this Agreement hereby releases the Bank together with the Bank's employees, agents, attorneys, representatives, successors and assigns from any and all rights, claims, interests, causes of action, rights of rescission, costs, expenses and attorney's fees whether or not contingent, unliquidated or unmatured, known or unknown as between Seller, the Estate and/or Prism, on the one hand, and the Bank, on the other hand, relating to or arising from the loan transaction upon which the Bank's claim is based or the Bank's relationship with Prism or any of Prism's employees, agents or representatives relating to or arising from such loan transaction (the "Released Claims"). In connection with the foregoing, the Trustee on behalf of Prism and the Estate hereby assigns to Bank all of such Released Claims in their entirety so that upon the close of the sale of the Assets to the extent such claims still exist, the Bank shall be the sole and exclusive owner of such Released Claims.

As to Bank, Seller hereby expressly waives any and all rights and benefits conferred upon Seller, the Estate or Prism by the provisions of Section 1542 of the California Civil Code which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

-7-

Seller has read the foregoing releases of Bank and recognizes and understands that the same applies to and covers all claims heretofore and hereinafter arising, whether or not known or suspected to exist at the present time.

12.    Governing Law; Jurisdiction; Successors and Assigns; Counterparts; Entire Agreement

This Agreement:

a.    shall be construed under and in accordance with the laws of the State of California;

b.    shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. This Agreement and its terms are not transferable except to an assignee of Stanly.. The stipulation by the Bank herein to release its lien as part of this Agreement does not apply to any other sale or asset transfer unless agreed to by the Bank.  Bank reserves its ability to assert all its 11 U.S.C. Section 363(f) rights as to any other transfer;

c.    may be executed in one or more counterparts, all of which shall be considered one and the same Agreement, and shall become effective when one or more counterparts shall have been signed by each of the parties and delivered to Bank, Seller and Buyer;

d.    embodies the entire agreement and understanding, and supersedes all prior agreements and understandings, between the parties relating to the subject matter hereof;

e.    may only be amended in writing signed by all the parties hereto.

f.    Buyer and Seller and Bank agree that any action to interpret or enforce the terms of this Agreement may be brought only in the United States Bankruptcy Court, Southern District of California.

13.    Notices

Any notice or other communications required or permitted hereunder shall be sufficiently given if sent by certified or registered mail, postage prepaid, addressed as follows:

To Buyer:              Alan Stanly
                       1569 Berkshire Ct.
                       San Marcos, CA 92069

With A Copy to:        Michael T. O'Halloran, Esq.
                       1010 Second Avenue, #1727
                       San Diego, CA 92101

- 8 -

100004.010757/436046.02

And to

Timothy Dillon, Esq.
Weintraub Dillon PC
12520 High Bluff Drive, Suite 260
San Diego, CA 92130

To Seller:                    Gregory Akers
                              10731 Treena St. #209
                              San Diego, CA 92131

With A Copy to:               Susan Stevenson, Esq.
                              Pyle, Sims, Duncan & Stevenson
                              401 B Street, #1500
                              San Diego, CA 92101

To Bank:                      Mr. Adam Karrer
                              Assistant Vice President
                              Union Bank of California
                              445 South Figueroa Street
                              Los Angeles, California 90071

With A Copy to:               Jeffrey Isaacs, Esq.
                              Procopio, Cory, Hargreaves & Savitch
                              530 B Street, Suite 2100
                              San Diego, CA 92101

or such other addresses as shall be furnished in writing by either party to the other party. Any such notice or communication shall be deemed to have been given as of three business days after the date so mailed.

14.    Severability

      If any provision of this Agreement shall be invalid or unenforceable, the other provisions of this Agreement shall continue in full force, and the validity and enforceability thereof shall not be adversely affected.

15.    Time of Essence

      TIME IS OF THE ESSENCE as to each and every provision of this Agreement.  the bankruptcy court has shortened time to 10 calendar days for notice of the December 1, 2003 hearing on the motion to approve the Agreement.

- 9 -

100004.010757/436046.02

16.    <u>Construction</u>

The parties agree that each party and its counsel have reviewed and revised this Agreement and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement or any amendments or exhibits hereto.

17.    <u>Representative Capacity</u>

Seller is signing this Agreement solely in his capacity as the bankruptcy trustee for Prism. He shall not have any personal or individual liability arising out of this Agreement or the transaction contemplated hereby except for willful misconduct.

**IN WITNESS WHEREOF,** Seller and Buyer and Bank have each caused this Agreement to be executed on their respective behalf as of the day and year noted below.


Dated: _____, 2003                    _____
                                        GREGORY AKERS
                                        CHAPTER 7 BANKRUPTCY TRUSTEE



Dated: _____, 2003                    _____
                                        ALAN STANLY


Dated: _____, 2003                    UNION BANK OF CALIFORNIA


                                        _____
                                        By: Adam Karrer Title: Assistant Vice President

I00004.010757/436046.02

# EXHIBIT 2

F I L E D
Clerk of the Superior Court

AUG 2 9 2005

By: PATRICIA LEAPART, Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO, NORTH COUNTY BRANCH

FRANCIS LOPEZ, an individual and as
representative of PRISM ADVANCED
TECHNOLOGIES, INC., a California
corporation,

     Plaintiff,

vs.

ALAN STANLY, Prism Advanced
Technologies, Inc. and DOES 1-50, inclusive,

     Defendants.

_____

ALAN STANLY, an individual,

     Cross-Complainant,

vs.

FRANCIS LOPEZ, an individual;
MARTIN HUDACKO, an individual;
JAMES BEARS, an individual; and ROES 2-
50, inclusive.

     Cross-Defendants.

CASE NUMBER:  GIN 029692

ORDER RE:  III - REPORT AND
RECOMMENDATION OF DISCOVERY
REFEREE

WHEREAS, on June 30, 2005 involuntary bankruptcy proceedings were initiated against Plaintiff and Cross-Defendant, Francis Lopez ("Lopez"). Due to the bankruptcy, all claims and actions against Lopez are stayed, whereas as all claims and actions asserted by Lopez and/or against Plaintiff and Cross-Defendant, Martin Hudacko ("Hudacko") and Defendant and Cross-Complainant, Alan Stanly ("Stanly") are not stayed.

WHEREAS, on June 24, 2005, the Discovery Referee, Hon. Lee Sarokin, submitted the III-Report and Recommendation of Discovery Referee on Pending Discovery and Sanctions Motion (the "Report and Recommendations III"), imposing both monetary and exclusionary sanctions against Plaintiffs, Lopez and Hudacko and Plaintiffs' counsel attached hereto as Exhibit "A".

WHEREAS, to the extent the Report and Recommendation -- III applies to Hudacko, Lopez and Hudacko's counsel, and claims asserted by Plaintiffs against Stanly, it is not stayed and shall be entered into order.

NOW THEREFORE, after consideration of the Report and Recommendation – III, Plaintiffs' Objections to Report of Discovery Referee, Alan Stanly's Response to Plaintiffs' Objection to Report of Discovery Referee and good cause appearing therefore, the Court enters the following orders:

1.     Sanctions are awarded in favor of defendants and against Hudacko in the amount of $1,500 due and payable within ten (10) days of the date of this Order.

2.     Plaintiffs are directed to file a declaration within fifteen (15) days of the date of this order, representing that they have complied with all outstanding discovery requests.

3.     Sanctions are awarded to defendants and against Fischbach & Fischbach in the amount of $3,698.75, due and payable within ten (10) days of the date of this order.

4.     Plaintiffs shall be precluded from the offering at trial of any audio recordings that have not been furnished to defendants on or before June 24, 2005.

5.     Plaintiffs are precluded from offering at trial any such documents which have not

[PROPOSED] ORDER RE: III - REPORT AND RECOMMENDATION OF DISCOVERY REFEREE

heretofore been produced via the deposition subpoena for production of documents served on Microsoft, Inc. Plaintiffs are directed to give proper notice of all deposition subpoenas in the future, and failing same, plaintiffs shall be precluded from offering any documents so procured.

6.     Each party, within ten (10) days, is to supplement their previously submitted declaration regarding their use of Prism Advanced Technologies, Inc. ("Prism") funds for personal or non-Prism business. Should the parties fail to adequately describe their transactions, monetary sanctions shall be issued.

7.     The recommended ruling of the discovery referee regarding the CD-ROM illustrating Lopez's contributions to Prism's technology affects Stanly's claims against Lopez, and is thus stayed and will be ruled upon by this court at a later time.

8.     The recommended ruling of the discovery referee regarding the monetary sanctions against Lopez is stayed and will be ruled upon by this court at a later time.

9.     Deposition schedule: The parties are directed to prepare and file a deposition schedule within fifteen (15) days for the remaining depositions. Once established, no deposition shall be adjourned except for the illness of counsel, or the witness, without the prior consent of the referee or the Court or the written consent of counsel. Counsel are directed not to accept any other client or business assignments that conflict with the deposition schedule.


IT IS SO ORDERED


MICHAEL B. ORFIELD

Dated: August 29, 2005     _____
                           Hon. Michael B. Orfield
                           Judge of the Superior Court


3

[PROPOSED] ORDER RE: III - REPORT AND RECOMMENDATION OF DISCOVERY REFEREE

EXHIBIT A

SUPERIOR COURT OF THE STATE OF CALIFONIA

FOR THE COUNTY OF SAN DIEGO

FRANCIS LOPEZ, individually and as                    CASE NO. GIN029692
Representative of Prism Advanced Technologies,
Inc., a California Corporation, PLAINTIFF             Judge Richard G. Cline

                                                     III - REPORT AND
                                                     RECOMMENDATION OF
                                                     DISCOVERY REFEREE ON
                                                     PENDING DISCOVERY and
                                                     SANCTIONS MOTIONS
vs.

ALAN STANLY, Prism Advanced
Technologies, Inc. and DOES 1 through 50 inclusive.
DEFENDANTS

---

The undersigned respectfully submits the following report and recommendation for the Court's consideration:

Defendants again move for evidentiary and/or monetary sanctions against the plaintiffs. I had previously recommended reserving on the sanctions to be imposed in the hope that holding the sword over the heads of counsel would encourage them to end their bickering and accusations, but to no avail. They are unable to agree as to any matter or fact. Indeed, their respective motions are peppered with charges of fraud and misrepresentation against each other. The motions are accompanied by wholesale reproductions of exhibits and pleadings (most of which have been previously submitted)

1

Jun 24 05 01:45p    H. Lee Sarokin    858 759-0629    p.3

with no effort to cull out what is particularly relevant to the pending motions. Notwithstanding the voluminous submissions, I will attempt to address each of the assertions made.

A. Plaintiffs' Refusal to Answer Initial Round of Written Discovery

It is undisputed that plaintiffs failed to make any response to defendants' initial demands and was sanctioned for such failure.

B. Second Round of Written Discovery

a. Production of Documents

I will not attempt to recite the history outlined by defendants of plaintiffs' failures to comply with discovery requests. Despite some minor differences in that history asserted by plaintiffs, it is clear that plaintiffs repeatedly and consistently failed to comply in the face of relentless and persistent pursuit by the defendants, necessitating numerous letters and motions to compel compliance. Even as of this date, I cannot determine whether or not there has been full compliance. Some of the remaining issues are discussed below.

Sanctions are awarded in favor of the defendants and against the plaintiffs in the amount of $2000, and plaintiffs are directed to file a declaration within 5 days representing that they have complied with all outstanding discovery requests.

b. Audio recordings

According to defendants, plaintiffs admit being in possession of 33 audio recordings which support their eavesdropping claim against the defendants. Despite repeated requests and subpoenas, no audio recordings have been produced by plaintiffs. (This dispute continues notwithstanding the fact that apparently defendant Stanly has

2

admitted and was convicted of such eavesdropping.)

Plaintiffs shall be precluded from offering at trial any audio recordings that have not been furnished to defendants as of this date.

c. Hudacko videotape

The subject video tape apparently is in the possession of the police, and thus cannot be turned over by Mr. Hudacko.

Plaintiffs are directed to make all reasonable efforts to obtain said video and provide a copy of same to defendants, if obtained. Plaintiffs shall outline such efforts to defendants' counsel in writing.

D. CD ROM

The parties dispute whether or not the CD-ROM illustrating Mr. Lopez's contributions to the Prism technology has been produced.

If the CD-ROM has not been furnished to defendants, then plaintiffs shall be precluded from offering same at the trial of this matter.

C. Depositions

a. Refusal to Appear for Depositions

Defendants set forth their long history in attempting to take the deposition of Mr. Lopez and recite the incident of April 11, 2005, with which I have previously dealt. Here again, the evidence is clear that despite repeated attempts to arrange the deposition of Mr. Lopez, it finally took place for 2 hours, only after an order and in the presence of the Referee.

The rulings on this matter have been set forth in prior reports.

b. Refusal to Answer Questions at Depositions

3

I am unaware of the status of this issue and whether it has been resolved by the "meet and confer" correspondence, although, in view of the history case, it is unlikely. No ruling will be made at this time.

D. Statement of damages

This is a particularly troubling matter and raises serious ethical questions in view of the charges and counter-charges made by counsel. Defendants made a request for the statement on Oct. 22, 2004. Defendants claim that no statement has ever been served, until the opposition to these motions was filed. Plaintiffs have attached a statement and proof of service dated Nov. 30, 2004. Plaintiffs claim that the motion of defendants in regard to this matter is "intentionally fraudulent" and "the best example of perfidy of this alleged motion". Yet, in response to defendants' motion to furnish a statement of damages, no assertion was made that such a statement had been prepared and served. Indeed, although plaintiffs assert that no effort was made to obtain the statement after November of 2004 (thus proving its receipt), defendants moved to compel it and an order was entered compelling plaintiffs to furnish such a statement on April 28, 2005. Even subsequent to the order, plaintiffs did not assert that they had already complied.

On June 23, 2005, I directed counsel to advise me whether or not there had been any prior correspondence or declarations from plaintiffs that such a statement had been prepared and served. Counsel for plaintiffs insists that the statement was served in November of 2004, but offers no reason why that assertion was not made in opposition to prior motions to compel it. Counsel for defendants re-asserts that he never received the statement of damages on any prior occasion and that plaintiffs never claimed that they had sent it in response to letters or motions demanding it and the order directing that it be

4

supplied.

Even if plaintiffs furnished the statement of damages and defendants, for some reason, had not received it, plaintiffs failed to advise that they had done so, despite requests and motions by defendants and the April 28, 2005, order of the referee that it be produced.

**Sanctions are awarded to defendants and against plaintiffs' counsel in the amount of $1245.**

E. Notice of Deposition Subpoenas for Production of Documents on Third Party

Defendants claim that plaintiffs subpoenaed documents from Microsoft and no notice was served upon defendants. Although plaintiffs do not deny the failure to serve notice (notwithstanding that they charge that the claim is "frivolous" and "fraudulent"), those documents were subsequently transmitted to defendants so that any harm from the failure to notify has been cured. However, defendants insist that not all of the documents have been produced.

**Plaintiffs are precluded from offering at trial any such documents which have not heretofore been produced.**

As to the depositions of Mr. Ling and Mr. Jamieson, plaintiffs gloss over but do not deny the failure to give defendants notice, but argue that no harm has resulted.

**Plaintiffs are directed to give proper notice in the future, and failing same, plaintiffs shall be precluded from offering any documents so procured.**

F. Sanctions for Independent Medical Exam

I have already ruled upon this matter and reserved as to the sanction to be imposed.

**Defendants are awarded sanctions against plaintiffs' counsel in the sum of**

5

$2,948.75

G. Declaration re Prism Expenditures

The parties were directed to file declarations regarding their use of Prism funds for

personal or non-Prism business. Both have filed such declarations. Whether or not they

are true and complete cannot be determined. To the extent either party has failed to

comply, sanctions would be warranted.

Each party is granted 10 days to supplement said declarations. If either party fails

to fully disclose such transactions, then monetary sanctions shall be imposed.

H. Deposition Schedule

The parties were and are directed to prepare and file a deposition schedule

within 5 days for the remaining depositions. (I do not know whether or not the existing

stipulation is usable.) Once established no deposition shall be adjourned except for

the illness of counsel or the witness without the prior consent of the referee or the

court or the written consent of counsel. Counsel are directed not to accept any other

client or business assignments that conflict with the deposition schedule.

I. Procedural objections

The objections to the pending motions on procedural grounds are rejected.

Respectfully submitted:

H. Lee Sarokin, Discovery Referee

This 24 day of June ,2005

The report and recommendations of the Referee are hereby approved and adopted;
SO ORDERED this _____ day of _____ 2005

6

Jun 24 05 01:46p    H. Lee Sarokin                858 759-0629              p.8

Richard C. Cline,
Judge of the Superior Court

7