# DOCKET NUMBER 43

1   L. Scott Keehn (61691)
    **ROBBINS & KEEHN, APC**
2   A Professional Corporation
    530 "B" Street, Suite 2400
3   San Diego, California 92101
    Telephone: (619) 232-1700
4
    Attorneys for **Moving Creditor, ALAN STANLY**
5

6               **UNITED STATES BANKRUPTCY COURT**

7               **SOUTHERN DISTRICT OF CALIFORNIA**

8                       **SAN DIEGO DIVISION**

9                                    )   Case No. 05-05926-PBINV
                                     )
10  In Re:                           )   Involuntary Chapter 7
                                     )
11                                   )
            FRANCIS J. LOPEZ         )
12                                   )   **ALAN STANLY'S MEMORANDUM OF**
            Alleged Debtor           )   **POINTS AND AUTHORITIES IN**
13                                   )   **OPPOSITION TO MOTION TO DISMISS**
                                     )   **INVOLUNTARY PETITION**
14                                   )
                                     )
15                                   )   **Date:**  April 3, 2006
                                     )   **Time:** 11:00 a.m.
16                                   )   **Ctrm:** 4
                                     )
17                                   )
    _____ )
18
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

106191/LFK/5311.01

**I**

**INTRODUCTION**

The Motion to Dismiss provides cause for both encouragement and alarm. It is encouraging to the extent that it reflects Lopez's intention to commit his assets to the satisfaction of his debts; but it alarmingly reveals his return to past practices of hood-winking courts and the parties before them so that he can abscond with assets earmarked for the satisfaction of claims.[1] Unfortunately, whatever encouragement can be gleaned from the Motion appears to be eclipsed by the sense of *deja-vu* created by what appears to be just another attempt to lull the Court with a false promise of payment to cover a covert usurpation of assets.[2]

That relegates us to looking to the substantive merit of the motion, and of that there is none.  The Motion is an attempt to establish a payment plan (a *plan of reorganization* as bankruptcy practitioners might say) in Chapter 7 — the one Chapter in the Code where no such Plan was ever contemplated by Congress. It takes that impossible proposal, and makes it more egregious by imposing upon unnoticed creditors an impermissible disparity of treatment in the general unsecured class of claims depending upon the *liquidated* or  *unliquidated* nature of the claim. Not surprisingly, Lopez cites not a single authority to support the requested relief.  There is none. The Motion can only be denied.

**II**

**FACTUAL CHRONOLOGY OF PERTINENT EVENTS**[3]

1994:        Stanly formed Computer Handyman, Inc. which was later renamed Prism Advanced Technologies, Inc.

1996:        Stanly gave Lopez 50% interest in Prism Advanced Technologies, Inc. ("Prism"). Prism was a California corporation that created, authored and licensed transportation software; and sold computer hardware and services.

11/2002 -

---

[1]     See, Part III C below regarding the secret sale of Lopez's Carlsbad residence in 2003 in violation of a "no sale" stipulation, and Lopez's subsequent flight (with the proceeds) to Florida.

[2]     *Id.*

[3]     The facts herein are supported by the Declaration of Alan Stanly, filed concurrently herewith.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9695

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | | |
|---|---|---|
| 03/2003: | Dispute arose between Stanly and Lopez regarding personal expenditures Lopez made with Prism's funds; In addition, Stanly learned Lopez had used Prism funds to start a competing business. | |
| 04/2003: | Lopez and Stanly stipulated to appoint Richard Kipperman as receiver to run Prism's affairs. In or about July 8, 2003, the receiver ceased Prism's operations. | |
| 04/03/2003: | Lopez filed *Prism Advanced Technologies, Inc. and Lopez v. Stanly*, San Diego Superior Court Case Number GIN 028765, wherein Lopez claimed civil harassment, and sought Stanly's ejection from Prism's business premises. No hearing on the merits was ever held in this action. | |
| 04/30/2003: | Letter from Union Bank of California to Stanly and Lopez demanding payment on a Prism bank loan (approx. $300,000), personally guaranteed by both Stanly and Lopez.  Union Bank's representative, Adam Karrer, emphasized to Lopez that, if necessary, Union Bank would vigorously pursue Lopez's personal assets to satisfy the obligation. | |
| 05/14/2003: | Lopez filed *Lopez and Prism Advanced Technologies, Inc. v. Stanly*, San Diego Superior Court Case Number GIN 029692 which sought money damages. | |
| 06/03/2003: | Letter from Pacific Carlsbad Partners to Stanly and Lopez requesting payment on an outstanding balance of a promissory note executed by Prism, and personally guaranteed by both Stanly and Lopez. The letter states that Pacific Carlsbad will seek a writ of attachment if a civil collection action is filed. | |
| 06/26/2003: | Union Bank of California filed a civil collection action entitled *Union Bank of California v. Lopez*, San Diego Superior Court Case Number GIN 030827; and Pacific Carlsbad Partners filed a civil collection action entitled *Pacific Carlsbad Partners, LLC v. Prism Advanced Technologies, Lopez and Stanly*, San Diego Superior Court Case Number GIC 813397. | |
| 07/03/2003: | "Stipulation for Temporary Protective Order" filed in *Pacific Carlsbad Partners, LLC v. Prism Advanced Technologies, Lopez and Stanly*, whereby **Stanly and Lopez each stipulate not to sell their residential real property** – assets which could be used to pay the outstanding balance on the note owed to Pacific Carlsbad Partners– **until at least August 8, 2003, the date of the hearing on Pacific Carlsbad Partners's Application for Writ of Attachment.** | |
| **07/18/2003:** | **Lopez violates the Stipulation for Temporary Protective Order filed on 07/03/2003, sells his Carlsbad residence – for a price that is below fair market value, and on a shortened escrow – and flees to Florida.**[4] | |
| 08/22/2003: | Involuntary Chapter 7 Bankruptcy Petition filed against Prism in the United States Bankruptcy Court for the Southern District of California, Case | |

---

[4]      See also, Lopez Declaration in Support of Motion to Dismiss, ¶2 ("I have been a permanent resident of Florida since July, 2003 when I and my family moved there from California").  Lopez *Does it to his creditors once — shame on him*." Now he seeks an opportunity to do it to us twice.

106191/LFK/5311.01

1    Number 03-07777.

2    09/20/2004:    Judgment entered against Lopez in favor of Stanly in the principal amount
3    of $50,000 in *Union Bank of California v. Lopez*, San Diego Superior Court
     Case Number GIN 030827. Interest begins to accrue on that judgment at the
     statutory rate of 10% per annum.[5]

4

5    11/30/2004:    Lopez filed a Notice of Appeal of the judgment entered in *Union Bank of
     California v. Lopez*, in the California Court of Appeal, Fourth Appellate
6    District, Division 1 (San Diego), Case Number: D045451. The appeal is
     currently stayed, pending the outcome of Lopez's involuntary bankruptcy
7    case. Lopez's California attorneys file quarterly status reports with the
     Court of Appeal regarding Lopez's bankruptcy (last status report filed on
     01/11/2006).

8

9    06/30/2005:    •    Involuntary Chapter 7 Bankruptcy Petition filed herein against
          Lopez.
10        •    As of this date, Stanly held an undisputed, liquidated claim against
          Lopez in the amount of 53,877.10,[6] and disputed and unliquidated
11         claims against Lopez (acquired in the purchase of Prism's assets) in
          the approximate amount of $500,000. In addition, Greg Akers, the
12         Chapter 7 Trustee in the Prism Case, holds insider preference
          avoidance claims in at least the amount of $25,000.
          •

13   12/21/2005:    Creditor Northwest Florida Daily News filed Joinder in Involuntary Petition
     for Francis J. Lopez. [Docket Number 36]

14

15   12/21/2005:    Creditor Alternative Resolution Center filed Joinder in Involuntary Petition
     for Francis J. Lopez. [Docket Number 37]

16   02/22/2006:    Without notice to any creditors, Lopez listed his Florida residence (a 5-
     bedroom, custom-built home in a prestigious, gated community) for sale,
17   through listing agent Coastal Properties of N.W. Florida. The list price is
     $1,295,000.00.

18

19   03/27/2006:    •    Stanly learns – for the first time – that Lopez has listed his Florida
          residence for sale, when the Florida process service who is
20         attempting to personally serve Lopez with a Deposition Subpoena
          sees the For Sale sign, and lock box, on Lopez's vacant residence.
21        •    Lopez files a de facto "Plan" of reorganization masquerading as a
          motion to dismiss the case. But he fails to give notice to all creditors
22         or to provide treatment to the disputed and unliquidated creditor
          body.
          •

23   04/07/2006:    Date escrow is scheduled to close on the sale of Lopez's Florida residence.

24

25

26        [5]    Cal. Code of Civil Procedure §§685.010 [10% per annum] and 685.020(a) [interest
27   begins to accrue upon entry of judgment].

28        [6]    Includes interest from September 20, 2004 to June 30, 2005 (283 days of interest at
     $13.70 per day).

106191/LFK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2401 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1

### III

2

### DISCUSSION

3

4

**A.    LOPEZ'S MOTION TO DISMISS IS PROCEDURALLY DEFECTIVE
        AND SUBSTANTIVELY INDEFENSIBLE**

5

    **1.    Procedural Defects: Inadequate Notice and No Supporting Authority.**

6

       "All creditors of the alleged debtor have standing to object to the proposed dismissal; they

7

need not meet the qualifications necessary to initiate or join in an involuntary petition." [7] Here, the

8

Proof of Service filed with Lopez's Motion to Dismiss establishes that the only creditors who have

9

received notice of the Motion are the three petitioning creditors: Alan Stanly, Northwest Florida

10

Daily News, and Alternative Resolution Center. Given that a bankruptcy court will not dismiss a

11

case unless it finds dismissal to be in the best interest of *all* of the parties, *all* of an alleged

12

debtor's creditors must be notified of a request for dismissal, and given an opportunity to object.[8]

13

Section 303(j) of the Bankruptcy Code specifically states that an involuntary bankruptcy petition

14

may not be dismissed without notice to "all creditors." The purpose of the notice requirement is to

15

protect the non-petitioning creditors from a collusive dismissal.[9] Here, Lopez's failure to provide

16

all of his creditors with notice of his Motion is fatal to the Motion, and the Motion should be

17

denied.

18

       The second procedural defect in the Motion springs from the substantive flaw described in

19

part (2) below. Specifically, Lopez has ignored the — not insignificant — procedural requirement

20

imposed by LBR 9014-2(b) which clearly mandates that all motions be supported and

21

"*accompanied by ... a memorandum of points and authorities upon which the movant is relying*."

22

On the face of the moving papers, it is clear that this requirement has been ignored. A thoughtful

23

analysis of the relief requested reveals the reason for the omission: There is no authority to

24

support dismissal under these circumstances or by utilization of the mechanism proposed.

25

26

    [7]     *In re Taub*, 150 B.R. 96, 98 (Bkrtcy. D.Conn. 1993).

27

    [8]     11 U.S.C. §§303(j); 305(a)(1).

28

    [9]     *In re Rajneesh Neo-Sannyas Intern. Commune*, 59 B.R. 49, 51 (Bkrtcy. D.Or.
1986).

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

-5-

### 2.    <u>Fatal Substantive Flaw</u>: No Legal Authority

Lopez should not be granted the requested relief without – *at a minimum* – being required to cite to some authority indicating that the relief he requests is in fact available, and within the Court's power to grant. Alas, there is no authority because the Motion is – in effect – a *de facto* "Plan" of reorganization. Lopez's Motion consists entirely of a proposed payment plan, the likes of which are available within the statutory framework of a Chapter 11 or Chapter 13 case –but not one in a Chapter 7. There is no existing legal authority that would allow a Chapter 7 debtor to exit the proceedings with a de facto "Plan."  Beyond that, the provisions of this plan, which first ignore, and then provide a disparate treatment of disputed and unliquidated claims, make this specific proposal intensely inapposite to the policies of the Bankruptcy Code. Ratable distribution to all creditors — as determined by the definition of §101(5), not just those described in §303 (b) — is an overarching principle and goal of the Bankruptcy Code. Specifically:

> The purpose of bankruptcy law is to equitably adjust the relationship between a debtor and its creditors, ratably distributing limited assets among competing claimants in accordance with the federally-mandated priority scheme.[10]

> A purpose of bankruptcy is so to administer an estate as to bring about a ratable distribution of assets among the bankrupt's creditors.[11]

> ...historically one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets..."[12]

> It is the purpose of bankruptcy to cause whatever assets the bankrupt has to be distributed ratably among the creditors.[13]

Lopez's proposed plan throws the ratable distribution concept out the window. It addresses only the non-contingent and liquidated claims — those described in §303(b) — and makes no provision for the known unliquidated claims. So under the Lopez *de facto* Plan, the liquidated

---

[10]  *In re Auto Parts Club, Inc.*, 224 B.R. 445, 447 (Bankr. S.D. Cal. 1998).

[11]  *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161 (1946).

[12]  *Young v. Higbee Co.*, 324 U.S. 204, 210 (1945).

[13]  *Hassen v. Jonas*, 373 F.2d 880, 881 (9th Cir. 1967).

106191/LFK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2401 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

claims get paid (presumably 100%), while the unliquidated claim holders get to chase Lopez for whatever may be left. But insofar as the Bankruptcy Code is concerned, both the liquidated and the unliquidated claims occupy the same level of priority — general unsecured claims. Thus the Lopez *de facto* is a scheme that is at odds with the most fundamental underpinnings of the Bankruptcy Code. It can not be put into effect.

If Lopez has a passion for proposing a plan, then he should embrace rather than resist the bankruptcy process, consent to an order for relief under Chapter 11 (or 13 if he qualifies), and move forward with his plan. As it is, he is asking this Court to deprive all creditors of the protections afforded by those chapters that enable debtors to propose restructuring plans. That circumvention is an anathema to the Bankruptcy Code, and this Court should have no part in such a perversion of the Code's most salutary policies.

**B.    LOPEZ FAILS TO ESTABLISH THE REQUISITE "CAUSE" FOR DISMISSAL**

11 U.S.C. §707 governs the dismissal of a Chapter 7 case, and is the beginning point of the Court's analysis of this Motion. Subsection (a) provides a non-exclusive list of what constitutes sufficient "cause" for dismissal, including:

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

Here, Lopez's Motion requests dismissal in order to facilitate the close of escrow – **currently scheduled for Friday, April 7, 2006** – on the sale of his Florida home. See, Motion to Dismiss, page 2, lines 13-15 ("The sale escrow cannot close without the [dismissal] order because of the 'cloud' on title created by this case"). Certainly, facilitating the sale of an alleged debtor's only significant asset – a transaction outside the ordinary course of the debtor's business, and without notice to any creditors – cannot be the sort of "cause" Congress intended to support a dismissal under Section 707.

Lopez's ostensibly magnanimous gesture of using the proceeds from the sale to pay all the

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

106191/LFK/5311.01

creditors he listed in his Answer is likewise insufficient to support a dismissal.[14] Significantly, Lopez's "full payment" proposal is based on hopelessly incomplete information: He proposes to sell certain real property without providing any evidence whatsoever as to: (1) the fair market value of the property, (2) the agreed-upon sale price for the property, (3) existing encumbrances on the property, (4) his projected net proceeds, (5) his tax basis in the residence, and/or (6) the tax consequences to the estate (without dismissal) of the sale under its currently terms. Without those fundamental, foundational facts, this Court lacks the evidentiary springboard upon which to take the suggested leap to the conclusion that dismissal would be in the best interest of *all* of Lopez's creditors.[15] Lopez asks the Court and creditors to make that leap on faith alone. The impropriety of that request is self-evident.[16]

Lopez's dismissal plan does not even purport to treat all similarly-situated creditors equally. Rather, types of creditors within the same class would be treated differently. Specifically, Lopez has proposed one plan for creditor Wayne Wise (upon sale of Lopez's residence, immediately pay the full amount claimed), another plan for Petitioning Creditor Alan Stanly (an amorphous "bond" scheme which, at best, *may* result in Stanly receiving the outstanding principal amount owed on his judgment without any of the accrued interest), another plan for each of the remaining creditors Lopez chose to list in his Answer (negotiate a "resolution" with each creditor regarding how much Lopez actually owes), and significantly, no plan whatsoever for those creditors who have disputed and/or unliquidated claims. Such disparate treatment is patently

---

[14]     *Matter of Nina Merchandise Corp.*, 5 B.R. 743, 746 (Bkrtcy. N.Y. 1980) ("dismissal should not be granted because of the ability of the debtor to pay off some or all outstanding creditors").

[15]     *In re Rajneesh Neo-Sannyas Intern. Commune*, supra, 59 B.R. at 52 (bankruptcy court would not dismiss an involuntary Chapter 7 case where the dismissal would "not assure equal treatment for the unsecured creditors who would share pro-rata in a Chapter 7"); see also, *In re Auto Parts Club, Inc.*, supra, 224 B.R. at 447 ("The purpose of bankruptcy law is to equitably adjust the relationship between a debtor and its creditors, ratably distributing limited assets among competing claimants in accordance with the federally-mandated priority scheme").

[16]     This *leap of faith* is made all the more inappropriate when considered in light of Lopez's past misconduct in similar circumstances discussed in part C below.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1  improper in the context of any chapter,[17] and should be flatly rejected.

2  **C.    LOPEZ HAS DEMONSTRATED THAT HE IS NOT TRUSTWORTHY — HIS**
3  **EXIT FROM BANKRUPTCY REQUIRES COURT SUPERVISION**

4      Lopez has already demonstrated his willingness to dishonor promises made to a court and

5  other parties in pending litigation.[18]  Ominously, Lopez appears to be setting up precisely the same

6  forensic scam he used to hinder and evade his creditors in 2003 – sell his residence and flee with

7  the proceeds. In July 2003, just 15 days after executing a written stipulation promising not to sell

8  his Carlsbad residence, Lopez sold that residence and fled to Florida. Now, only a few years later,

9  when aggressive creditors have once again caught up with him, Lopez is attempting to sell his

10  residence – the only significant asset available to satisfy the outstanding claims. Significantly,

11  Lopez listed the Florida residence for sale on February 22, 2006, without any notice whatsoever to

12  the Court or any of the creditors in this case. Lopez remained silent about the sale at the status

13  conference held by this Court on March 20, 2006 – even though at that point the property had

14  been on the market for approximately a month —  and that sale was the obvious source of money

15  needed to fund the *pay-and-dismiss* concept discussed at that hearing.

16      Stanly only recently learned that Lopez's residence was actually for sale when he

17  attempted to serve Lopez with the deposition subpoena in this action, and the Florida process

18  server discovered the For Sale sign, and lock-box on the residence door. Even Lopez's own

19  Motion never clearly discloses the fact that he has already found a buyer for the property, or that it

20  is in escrow, and ready to close. Instead, the Motion is artfully worded to convey the impression

21  that Lopez and

22   his wife only recently decided to put the property on the market for the purported purpose of

---

[17]     Absent the express consent of all creditors that receive something less than the best treatment given to any member of the class (see e.g. §1124(a)(4)).

[18]     See Part II above and Stanly Declaration [Regarding his promise not to liquidate his Carlsbad residence prior to an attachment hearing followed by his dishonor of the promise, sacrificial (below the market) sale of that residence, and flight to Florida].

-9-                    106191/LFK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9995

1    paying creditors.[19]

2       Given his acts of banditry in earlier proceedings before the Superior Court, and his current

3    lack of candor with respect to his most significant asset, it is clearly essential to keep this debtor

4    safely corralled inside the confines of an orderly bankruptcy proceeding. Lopez provides no

5    evidence to suggest that he can or should be trusted to act in the best interest of his creditors

6    without being forced to do so by this Court; and there is ample evidence to show his propensity to

7    use dishonesty and sharp practices to the detriment of his creditors.  There is just no escaping the

8    obvious need to keep Lopez under judicial supervision to insure that he delivers what he promises.

9                                            **IV**

10                                   <u>**CONCLUSION**</u>

11       There is absolutely no authority that permits the relief requested. The Motion would

12   pervert rather than promote the policies upon which the Bankruptcy Code is grounded, and robs

13   most of the creditor constituencies of notice and opportunity to be heard. It is poorly conceived

14   and beyond repair. For these and all of the forgoing reasons the Motion must be denied. [20]

15

16   Dated: March 29, 2006                **ROBBINS & KEEHN**
                                          A Professional Corporation
17

18

19                              By:    //s// L. Scott Keehn
                                       L. Scott Keehn
20                                     Attorneys for Petitioning Creditor
                                       Alan Stanly
21

22

23   ─────────────────

24       [19]    See, Motion to Dismiss, page 2, lines 12-14 ("Mr. Lopez and his wife have recently
         agreed to sell their home and the proceeds of the sale will be sufficient to pay all creditors in
25       full").

26       [20]    However, to the extent that what the Motion really reflects is Lopez's first step in
         facing and dealing with his creditors, then that step is to be applauded.  The petitioning creditors
27       encourage Lopez to hasten the day when repayment will be realized by consenting to the entry of
         an Order for Relief under the chapter of his choosing.  Prompt action in that direction may even
28       permit his estate to preserve and perform the pending sale (or a better one)  — which also hastens
         the day that Lopez can receive the cash benefit of his homestead exemption.

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095