# DOCKET NUMBER 64

M. Jonathan Hayes (Bar No. 90388)
**Law Office of M. Jonathan Hayes**
21800 Oxnard St, Suite 840
Woodland Hills, CA 91367
Telephone: (818) 710-3656
Facsimile: (818) 710-3659
jhayes@polarisnet.net

Attorneys for Alleged Debtor Francis Lopez

FILED SD
06 JUN 13 AM 11:56
U.S. BANKRUPTCY CT
SO. DIST. OF CALIF

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| In Re:<br><br>  FRANCIS J. LOPEZ,<br><br>    Alleged Debtor | CASE NO. 05-05926-PBINV<br><br>Involuntary Chapter 7<br><br>**OPPOSITION OF ALLEGED DEBTOR FOR SUMMARY JUDGMENT**<br><br>Date: June 26, 2006<br>Time: 2:00 p.m.<br>Ctrm: 4 |

TO THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY JUDGE, TO PETITIONING CREDITORS ALAN STANLY, NORTHWEST FLORIDA DAILY NEWS, ALTERNATIVE RESOLUTION CENTER:

## I.

## INTRODUCTION

Alleged Debtor Francis J. Lopez ("Lopez") hereby opposes the motion for summary judgment brought by Petitioning Creditor Alan Stanley on the ground that the evidence produced by Stanly establishes that there are more than 12 creditors in this estate and there are fewer than three Petitioning Creditors and therefore this case should be dismissed. Furthermore, Lopez is generally paying his debts as they become due.

## II.

## SUMMARY OF STANLY'S MSJ

Alan Stanly urges the court to reach the conclusion that there are no creditors at all in this estate and therefore the issue at hand in the "first phase," i.e., are there enough petitioning creditors, should be found in favor of Stanly as a matter of law. The basis for this startling position is that most of the 22 creditors identified by Lopez are disputed, or received avoidable pre- or post-petition transfers. Some of the creditors it is alleged were not creditors on June 30, 2005.

Mr. Lopez' creditors are almost all consumer type debts which he generally pays each month.

## III.

## LOPEZ HAD SIGNIFICANTLY MORE THAN 12 CREDITORS ON JUNE 30, 2005

Following the analysis of Mr. Stanly beginning on page 7:

**A. Allstate Floridian.** According to the MSJ, this creditor is not a creditor because Mr. Lopez was not indebted to Allstate Floridian as of June 30, 2005. That is not true because Allstate Floridian provided homeowners' coverage, and Mr. Lopez had a bill to pay in the approximate amount of $1,900. This bill was received prior to June 30, 2005.

1  Failure to pay this bill would have resulted in the cancellation of the coverage. Is Mr.
2  Keehn suggesting that only bills with a due date of June 30, 2005 or before qualify as
3  creditors? (See Response to Moving Party Separate Statement of Undisputed Facts in
4  Support of Motion by Alleged Debtor for Summary Judgment, Page 5, Items 35 through
5  38; Page 6, Items 39 through 40; See Lopez Declaration, Page 4: Para. 14)

6  **B. American Express.** Mr. Keehn has claimed that Mr. Lopez doesn't actually
7  owe American Express anything. Mr. Lopez has already provided documentation of the
8  debt to American Express. Mr. Keehn, during the deposition of Mr. Lopez, asserted that
9  American Express told him that they couldn't confirm that there was an amount owing.
10 Mr. Lopez asked Mr. Keehn to provide written documentation as to that statement, which
11 Mr. Keehn could not do, as none exists. Mr. Lopez is the primary guarantor of several
12 American Express credit card accounts, plus a revolving line of credit. Mr. Lopez
13 contacted American Express, who informed him that they did not have access to his
14 accounts because of the involuntary petition, and that they were being handled by a
15 separate department. (See Response to Moving Party Separate Statement of Undisputed
16 Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 6, Items 41
17 through 43; See Lopez Declaration, Page 4: Para. 16; See Exhibit 14)

18 **C. American Home Shield.** This creditor issued a home appliance policy for Mr.
19 Lopez's primary residence. This policy was an annual one, and was in effect at the time of
20 the involuntary petition. At the time of the petition, Mr. Lopez was indebted to American
21 Home Shield in the amount of $128.00.

22 **D. Bank of America.** Payments were made in the ordinary course of business to
23 this creditor. These were in the amounts of $50.00 to $54.00 per month. If the payments
24 had not been made, the account would have been closed, and the creditor would have taken
25 action against Mr. Lopez. These were minimum payments required by this creditor to
26 keep the account in good standing, made in the ordinary course of business, made
27 according to ordinary business terms agreed upon by Mr. Lopez and the creditor. (See
28 Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion

by Alleged Debtor for Summary Judgment, Page 6, Items 47 through 55; Page 7: Item 56; See Lopez Declaration, Page 4: Para. 16; See Exhibit 4)

**E. Bankcard Services.** This account is not subject to a bona fide dispute. At one time, this creditor imposed a late fee which Mr. Lopez felt should not have been applied, but this was rectified by the creditor to his satisfaction. As to a pre-petition preference, payments were made to keep the account in good standing, and were done in the ordinary course of business. Further, this creditor did not receive any payments from Mr. Lopez that were unusual as to the amount. Failure to pay this creditor would have resulted in a cancellation of the creditor's services, and would have resulted in collection and or other legal actions against Mr. Lopez. (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 8, Items 57 through 60; See Lopez Declaration, Page 4: Para 17).

**F. Cingular Wireless.** Payments made to Cingular Wireless were done in the ordinary course of business. Failure to make payments to this creditor would have resulted in the cancellation of Mr. Lopez's cell phone privileges, a vital service provided by the creditor. Post-petition payments to Cingular Wireless were made in exchange for continuing telephone services provided to Mr. Lopez. Most of the payments to this creditor were in fact made by Noveon Systems, Inc., Mr. Lopez's employer. (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 8, Items 61 through 64; See Exhibit 13).

**G. Citicards.** Mr. Lopez and Citicards made a payment arrangement of $379.00 per month, in order to keep this account in good standing. Payments were made on a monthly basis, by electronic debit from Mr. and Mrs. Lopez's bank account. These payments were made in the ordinary course of business, and failure to make them would have resulted in legal action against Mr. Lopez, as well as negative marks on his credit rating. Further, these were minimum payments, required in order for the continued service provided by the creditor to remain in place. The filing of the involuntary petition on June 30, 2005 resulted in Citicards informing Mr. Lopez that they could not accept further

payments until the bankruptcy case was dismissed. . (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 9, Items 65 through 72; See Lopez Declaration, Page 4: Para. 16; See Exhibit 14)

**H. Coastal Community Insurance.** This creditor provides flood insurance for the Lopez's primary residence. Payments are made via an escrow account by the mortgage lender. The fact that payments are made from an escrow account in no way relieves Mr. Lopez from the obligation to pay these bills. As of June 30, 2005, Mr. Lopez did in fact renew his policy with this creditor, and continuation of coverage required that payments be made on the renewal policy. (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 9, Items 73 through 74; Page 10, Items 75 through 78; See Lopez Declaration, Page 5: Para. 19).

**I. Cox Communications.** This creditor provides cable and internet services to Mr. Lopez. Payments were made in the ordinary course of business, on a monthly basis. In general, payments were made by Mr. Lopez's employer, Noveon Systems, Inc. or were made by Mr. Lopez with reimbursement by Noveon. Failure to make these payments would have resulted in a termination of the services provided by this creditor. Continuation of services and their corresponding payments, post-petition, were necessary and done in the ordinary course of business. . (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 10, Items 79 through 81; See Exhibit 5)

**J. Ft. Walton Beach Medical Center.** This debt is not the subject of a bonafide dispute. Mr. Lopez did understand from the doctor that the items should be covered by his health insurance, however, Mr. Lopez did not get approval from his insurance company prior to having the procedure done, and does not dispute the debt. Ultimately, procedures not approved beforehand by the health insurance company are the responsibility of the

patient, and Mr. Lopez understands this, which is why he listed Ft. Walton Beach Medical Center as a creditor in these proceedings. See Lopez Declaration, Page 5: Para. 20).

**K. Household Bank.** Mr. Lopez made minimum payments to this creditor, which were necessary for this credit card account to remaining good standing. Payments were made for debts incurred in the ordinary course of business. . (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 11, Items 85 through 90; See Lopez Declaration, Page 5: Para. 21; See Exhibit 6).

**L. Kelly Plantation Owners Association.** This creditor is a homeowner association for the Lopez family residence. The quarterly assessment was paid in the ordinary course of business, made in accord with ordinary business terms. Failure to make these payments would result in collection and/or other legal action against the Lopez family. Further, payments to this creditor were often made from Mrs. Lopez's checking account. (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 11, Item 91; Page 12, Items 92 through 95; See Exhibit 7. )

**M. Northwest Florida Daily News.** This creditor was listed as a petitioning creditor by Stanly and Keehn. In fact, they were a creditor of Mr. Lopez's at the time of the involuntary filing, but have been paid in the ordinary course of business. Now Stanly and Keehn state that Northwest Florida Daily News is not a creditor, for the purposes of their current argument. Payments made to this creditor were made in accordance with the ordinary course of business, in accordance with normal business terms. . (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 12, Items 96 through 100; See Lopez Declaration, Page 5: Para. 22).

**N. Okaloosa Gas District.** Stanly claims that this creditor received both pre-petition preferences and voidable post-petition transfers. As to pre-petition preferences, this creditor received payments for debts incurred in the ordinary cource of financial

affairs, in accordance with ordinary business terms. Failure to make payments to this creditor would have resulted in cancellation of utility services to the Lopez's primary residence. As to post-petition payments, payments were made in exchange for continued utility services. (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 13, Items 101 through 111; See Exhibit 7; See Exhbit 9).

**O. Progressive Insurance.** Stanly claims that this creditor was in fact not a creditor as of June 30, 2005. His reasoning for this is that because the existing auto policy was in effect at that time, and not up for renewal until August 8, 2005, Progressive was not a creditor. This is false. Progressive Insurance, like most other auto insurance providers, allows for monthly payments to keep the policy in force. Mr. Lopez, in fact, had a payment due to Progressive at the time of the involuntary filing. . (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 14, Items 112 through 115; See Exhibit 10).

**P. Citibank/Quicken Platinum Card.** Stanly claims that this creditor received both pre-petition preferences and post-petition transfers. In fact, pre-petition payments were for debts incurred in the ordinary course of business, and were made in the ordinary course of business. Note that the payment amounts were minimum payments; small payments required to keep this credit card in good standing. . (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 14, Items 116 through 119).

**Q. Alan Stanly.** Most astonishing is Stanly's assertion that his is not even a creditor himself (when determining the number in toto) because he is an insider. Since Lopez is an indidivual, the only way Stanly could be an insider is to be a general partner of Lopez on June 30, 2005 or be in control of Mr. Lopez. It is clear that Stanly is trying to be in total control of Mr. Lopez but he is obviously not and is obviously not an insider.

**R. Texaco/Shell.** This creditor provides a gas credit card to Mr. Lopez. Pre-petition payments were made in payment of debts incurred in the ordinary course of

business, and were made in accordance with ordinary business terms. Continued payments to this creditor are required to maintain the services provided, as well as to maintain Mr. Lopez's credit privileges and credit standing. . (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 15, Items 123 through 130; Page 16, Item 131; See Exhibit 11).

  **S. Union Bank.** In mid-2004, Mr. Lopez and Union Bank executed a settlement agreement whereby Mr. Lopez agreed to pay Union Bank the sum of $15,000 in monthly installments, which were comprised of 12 monthly payments of $500, followed by 9 monthly payments of $1,000. As of June 30, 2005, there was an outstanding balance of approximately $4,000. This has been subsequently paid, in exchange for the release of Mr. Lopez from any claims from its lawsuit against Mr. Lopez. This debt and related payments were in accord with the settlement agreement reached between Mr. Lopez and Union Bank, and were made in the ordinary course of business, in accord with the terms specified in the settlement agreement. . (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 18, Items 148 through 157, Page 19, Items 158 through 163).

  **T. Valley Forge Life Insurance.** This is an insurance company that issued a 20-year term policy for Mr. Lopez. This is a long term obligation that requires payment or else the policy will be canceled. If the balance as of June 30 was indeed $0 for the 2005 year, that does not mean that Mr. Lopez is not obligated to make the successive annual payments, and thus he listed Valley Forge as a creditor. Mrs. Lopez is the beneficiary of this life insurance policy on Mr. Lopez. . (See Response to Moving Party Separate Statement of Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page 16, Items 132 through 137; See Lopez Declaration, Page 6: Para. 23).

  **U. Verizon Wireless.** This creditor provided cell phone service for Mr. Lopez. Although at one time the amount owed was disputed by Mr. Lopez, it was subsequently straightened out and Verizon was paid in full. Payment to Verizon was on a monthly basis and was required in order to receive continued cell phone service. Payments made to

1  Verizon were either paid directly by Mr. Lopez or by Mr. Lopez's employer, Noveon
2  Systems, Inc. (See Response to Moving Party Separate Statement of Undisputed Facts in
3  Support of Motion by Alleged Debtor for Summary Judgment, Page 17, Items 138 through
4  141; See Lopez Declaration, Page 6: Para. 24).

5      **V. Wayne Wise.** Mr. Wise and Mr. Lopez executed a promissory note in June of
6  2004. The original terms of that note required repayment in one year. In May of 2005,
7  before the payment was due, Mr. Wise agreed to extend the note indefinitely, with the
8  agreement that the note would be paid in full upon the successful sale of the Lopez's
9  primary residence. Mr. Lopez and Mrs. Lopez offered to pay Mr. Wise one year's interest,
10 or $900, as part of this oral agreement. That payment was made, by Mrs. Lopez, in
11 fulfillment of that obligation. . (See Response to Moving Party Separate Statement of
12 Undisputed Facts in Support of Motion by Alleged Debtor for Summary Judgment, Page
13 17, Items 142 through 147; See Lopez Declaration, Page 6: Para. 25).

15     In summary,

| Creditor Listed in Lopez's Answer | Included in §303(b)(2) Count |
|---|---|
| ALLSTATE FLORIDIAN (Homeowners Insurance) | yes |
| AMERICAN EXPRESS (Credit Card) | yes |
| AMERICAN HOME SHIELD (Insurance) | yes |
| BANK OF AMERICA (Credit Card) | yes |
| BANKCARD SERVICES (Credit Card) | yes |
| CINGULAR WIRELESS (Mobile Phone) | yes |
| CITI CARDS (Credit Card) | yes |

| | | |
|---|---|---|
| 1 2 | COASTAL COMMUNITY INSURANCE (Property Insurance) | yes |
| 3 | COX COMMUNICATIONS (Television and Internet) | yes |
| 4 5 | FT. WALTON BEACH MEDICAL CENTER (Emergency Room/Medical Services) | yes |
| 6 | HOUSEHOLD BANK / HSBC (Credit Card) | yes |
| 7 8 | KELLY PLANTATION OWNERS ASSOCIATION (Homeowners Association) | yes |
| 9 10 | NORTHWEST FLORIDA DAILY NEWS (Newspaper) | yes |
| 11 | OKALOOSA GAS DISTRICT (Utilities) | yes |
| 12 13 | PROGRESSIVE INSURANCE (Auto Insurance) | yes |
| 14 | QUICKEN PLATINUM CARD (Credit Card) | yes |
| 15 16 | STANLY, ALAN (Judgment Creditor) | yes |
| 17 | TEXACO/SHELL (Gasoline Credit Card) | yes |
| 18 19 | UNION BANK OF CALIFORNIA (Settlement) | yes |
| 20 | VALLEY FORGE LIFE INSURANCE (Life Insurance) | yes |
| 21 22 | VERIZON WIRELESS (Mobile Phone) | yes |
| 23 | WISE, WAYNE (Personal Loan) | yes |

## IV.

## THERE ARE INSUFFICIENT PETITIONING CREDITORS AND THEREFORE THIS CASE MUST BE DISMISSED

At the time the Involuntary Petition was filed, June 30, 2005, Lopez had at least 22 creditors. He attested to this fact on September 7, 2005 with his Answer. Section 303 of the bankruptcy code therefore requires that there be at least three petitioning creditors.

Section 303 states:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $10,000 . . .

Seeing that Lopez clearly had more than 12 creditors and therefore three petitioning creditors are required, Stanly began a desperate attempt to find more petitioning creditors. On or about December 20, 2005, more than two months after the first set of subpoenas were served by Stanly to creditors of Lopez (and almost six months after the petition was filed), Northwest Daily News, with a purported claim of $69.30 was induced by Stanly or his counsel to join the involuntary petition. Eight days later Alternative Resolution Center, with a purported claim of $1,575.00, joined as well.

Lopez owed no debt to Alternative Resolution Center on June 30, 2005, see Declaration of Steven Davis, par. 3.

Therefore there is, at most, only two petitioning creditors in the face of well more than 12 total creditors and this involuntary case must be dismissed.

The requirement that, in the presence of 12 or more creditors, at least 3 must petition before an order for relief issues is not jurisdictional, but is an **absolute defense** to the issuance of an order for relief. *In Re Kidwell*, (Bkrtcy E.D. Cal. 1993) 158 B.R. 203. If no more petitioning creditors join this case, it is Stanly's **burden** to prove that the alleged debtor has fewer than 12 creditors. *In Re Smith* (Bkrtcy. N.D.Ga. 1999) 243 B.R. 169, 183.

## V.

## CONCLUSION

Alleged Debtor prays that this court grant him summary judgment and dismiss this case, and for other orders which are just.

Dated: June 2006                                Respectfully submitted

By: _____
M. Jonathan Hayes
Attorney for Alleged Debtor Francis Lopez

Signature by the attorney constitutes a certification under Fed. R. Bankr. P. 9011 that the relief provided by the order is the relief granted by the court.

Submitted by:

By: _____
M. Jonathan Hayes
Attorney for Francis J. Lopez

PROOF OF SERVICE

I, Cassidy Hayes, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 21800 Oxnard St., Suite 840, Woodland Hills, CA 91367. On June 12, 2006, I served the within documents:

OPPOSITION OF ALLEGED DEBTOR FOR SUMMARY JUDGMENT

..   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

X   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

..   by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below.

..   by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery

..   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

L. Scott Keehn
Sarah H. Lanham
ROBBINS & KEEHN, APC
530 B Street, Suite 2400
San Diego, CA 92101
AND BY EMAIL

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 12, 2006, at Los Angeles, California.

_____
Cassidy Hayes