# DOCKET NUMBER 65

1 | M. Jonathan Hayes (Bar No. 90388)
**Law Office of M. Jonathan Hayes**
2 | 21800 Oxnard St, Suite 840
Woodland Hills, CA 91367
3 | Telephone: (818) 710-3656
Facsimile: (818) 710-3659
4 | jhayes@polarisnet.net

5 | Attorneys for Alleged Debtor Francis Lopez

FILED SD

06 JUN 13 AM 11:57

CLERK
U.S. BANKRUPTCY CT
SO. DIST OF CALIF

6

7

8 | UNITED STATES BANKRUPTCY COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | SAN DIEGO DIVISION

11

12 | In Re:                                    ) CASE NO. 05-05926-PBINV
                                             )
13 |     FRANCIS J. LOPEZ,                    ) Involuntary Chapter 7
                                             )
14 |     Alleged Debtor                       )
                                             )
15 |                                          ) **RESPONSE TO MOVING PARTY**
                                             ) **SEPARATE STATEMENT OF**
16 |                                          ) **UNDISPUTED FACTS IN SUPPORT**
                                             ) **OF MOTION BY ALLEGED DEBTOR**
17 |                                          ) **FOR SUMMARY JUDGMENT**
                                             )
18 |                                          ) Date: June 26, 2006
                                             ) Time: 2:00 p.m.
19 |                                          ) Ctrm: 4
                                             )
20 |                                          )
                                             )
21 |                                          )
                                             )
22 |                                          )

23

24 |     TO THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY

25 | JUDGE, TO PETITIONING CREDITORS ALAN STANLY, NORTHWEST FLORIDA

26 | DAILY NEWS, ALTERNATIVE RESOLUTION CENTER:

27

28

1    COMES NOW alleged debtor Francis J. Lopez and submits the following Statement

2  of Undisputed Facts in Support of alleged debtor's Motion for Summary Judgment

3  ("Motion").  Alleged debtor submits that the following facts establish that there are no

4  material facts in issue and that the request for summary judgment in this case should be

5  granted and the case dismissed:

| FACT | EVIDENCE |
|---|---|
| **CASE FILING AND JURISDICTION** | |
| 1.    This case was commenced with an involuntary petition on June 30, 2005. | Agree that this fact is undisputed |
| 2.    This Court has jurisdiction under the involuntary petition. | Agree that this court has jurisdiction. |
| **GENERAL AND BACKGROUND FACTS** | |
| 3.    Francis and Madeleine Lopez were married in 1991. | Agree that this fact is undisputed |
| 4.    Francis and Madeleine Lopez did not enter into a prenupital agreement prior to their marriage. | Agree that this fact is undisputed |
| 5.    Francis and Madeleine Lopez have maintained the same joint checking account with Compass Bank since 2004. | Disputed as to date.  This account was opened in 2003. (See Lopez Declaration, Page 1: Para. 2) |
| 6.    According to Lopez's custom and practice, consistently applied, when he placed a handwritten notation on a bill, that indicates that the bill has in fact been paid. | Disputed as to "handwritten notation".  If the notation includes payment information, undisputed. (See Lopez Declaration, Page 2: Para. 3) |
| 7.    Noveon Systems is a Delaware corporation formed in may or June of 2003. | Agree that this fact is undisputed |
| 8.    Lopez first became employed by Noveon Systems in the latter half of July, 2003. | Agree that this fact is undisputed |
| 9.    Lopez was an officer of Noveon Systems from the time of its formation until late 2004 or sometime in mid 2005, at which point he resigned based on advice he received from attorneys. | Agree that this fact is undisputed |
| 10.    Lopez has served as a director of Noveon Systems from or about the time of its formation, and cannot recall if he has ever | Agree that this fact is undisputed |

| | |
|---|---|
| resigned that position. | |
| 11.    Lopez provides services to Noveon in a sales capacity and customer service liaison for scheduling work and related services. | Agree that this fact is undisputed |
| 12.    Current compensation from Noveon Systems consists of a profit sharing plan in which he would receive a percentage of profits. | Agree that this fact is undisputed |
| 13.    Lopez received less than $12,500 in license fees from Noveon from January to April 27, 2006. | Agree that this fact is undisputed |
| 14.    Lopez has received less than $50,000 dollars in aggregate compensation in all categories from Noveon since its inception through and including April 27, 2006. | Agree that this fact is undisputed |
| 15.    As of April 27, 2006, Lopez has received no profit sharing payments from Noveon (ever). | Agree that this fact is undisputed |
| 16.    In the early summer of 2005, Lopez became licensed to sell life, health, and health insurance annuities and variable annuities in the State of Florida.  He utilized that license in a couple of ventures, but quickly abandoned pursuit of that business activity. | Disputed.  Lopez has not abandoned that business activity. (See Lopez Declaration, Page 2: Para. 4) |
| 17.    Francis Lopez's income from all sources in the calendar year 2005 was less than $50,000. | Agree that this fact is undisputed |
| 18.    Lopez is the author of the document entitled "Francis Lopez Exhibit A List of Creditors."*  *Hereinafter sometimes referred to as the "Creditor List" or "List of Creditors." | Agree that this fact is undisputed |
| **LOPEZ'S RESIDENCE HAS APPARENT EQUITY OF $405,000.00** | |
| 19.    Lopez purchased his residence at 310 San Myrtle Trail in the first half of 2003 for the purchase price of $745,000. | Deny.  Purchased by Francis and Madeleine Lopez, as husband and wife, and held as tenancy by the entirety. (See Lopez Declaration, Page 2: Para. 5). |
| 20.    The current amount of the obligations secured by the residence are approximately $750,000. | Deny.  Secured obligations are in excess of $800,000. (See Lopez Declaration, Page 2: Para. 6). |
| 21.    The current value of the residence is | Disputed.  That is the "for sale" price. |

| | |
|---|---|
| $1,295,000.00. | The actual price at sale is estimated at between $1.1 million and $1.2 million. (See Lopez Declaration, Page 2: Para. 7). |
| 22. The residence is encumbered by a mortgage to Lehman Brothers Bank in the amount of $750,000.00. | Agree that this fact is undisputed |
| 23. The residence is encumbered by a Home Equity Credit Line in the amount of $125,000.00, of which at least $65,000 has been drawn. | Agree that this fact is undisputed |
| 24. Lopez is entitled to a minimum homestead exemption in the amount of $75,000.00. | Deny, the home is owned as tenancy by the entirety and is therefore completely exempt. (See Lopez Declaration, Page 2: Para. 8) |
| 25. The net apparent equity in the residence to an estate is $405,000.00. | Deny, the equity in the residence, after sales commission and taxes, is closer to $260,000. The residence is not owned by Lopez individually and is thus not property of the bankruptcy estate. (See Lopez Declaration, Page 2: Para. 9) |
| 26. Other than his residence, Lopez has no assets of any significant value (more than $10,000 equity). | Deny, the residence is not an asset of Lopez. Lopez also owns intellectual property that may be worth in excess of $10,000. (See Lopez Declaration, Page 3: Para. 10 ) |
| **THE TOTAL FORESEEABLE CLAIMS AGAINST THE LOPEZ ESTATE ARE AT LEAST $2,595,800.00** | |
| 27. Stanly holds claims against Lopez that total in excess of $2,435,800.00. | Deny, See Lopez Declaration, Page 3: Para. 11 |
| 28. Frederick Lopez holds claims against Lopez in the amount of $55,000. | Deny, See Lopez Declaration, Page 3: Para. 12 |
| 29. Other entities hold claims against Lopez of approximately $105,000.00. | |
| **LOPEZ OWES HIS FATHER – FREDERICK LOPEZ – $55,000 ($20,000 PRE-PETITION / $35,000 POST-PETITION BORROWING)** | |
| 30. As of May 9, 2005, Lopez owed his father – Frederick Lopez - $20,000 on account of money that Lopez had borrowed from him. | Agree that this fact is undisputed |
| 31. As of June 30, 2005, none of the monies that Lopez had borrowed from his father had been repaid. | Agree that this fact is undisputed |

| | | |
|---|---|---|
| 1<br>2 | 32. Since June 30, 2005, Lopez has borrowed an additional sum of $35,000 from his father. | Deny. The $35,000 figure includes amounts previously borrowed. (See Lopez Declaration, Page 3: Para. 13) |
| 3<br>4<br>5 | 33. Lopez did not include his father as a creditor on Exhibit A to his Answer (Lopez Depo. Exhibit 17) because he understood that it was not appropriate to include relatives on that list. | Agree that this fact is undisputed |
| 6 | **LOPEZ'S ATTORNEY WILL HAVE POST-PETITION GAP CLAIMS** | |
| 7<br>8<br>9 | 34. To the best of his recollection (as refreshed by his review of available documents), Lopez has not paid his attorney of record in this case anything since February 5, 2006. | Agree that this fact is undisputed |
| 10<br>11 | **ALLSTATE FLORIDIAN WAS NOT A CREDITOR ON JUNE 30, 2005, BECAUSE THE PREMIUM DUE FOR THE 7/16/04 THROUGH 7/16/05 PERIOD WAS FULLY PAID ON MARCH 16, 2005** | |
| 12<br>13<br>14 | 35. Lopez has produced any and all documents evidencing any and all payments he made to Allstate Floridian (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 15<br>16<br>17 | 36. Lopez claims to have been indebted to Allstate Floridian (insurance company) in the approximate amount of $1,900 as of June 30, 2005. | Agree that this fact is undisputed |
| 18<br>19<br>20<br>21<br>22<br>23 | 37. However, as of June 30, 2005, Lopez was not indebted to Allstate Floridian indemnity company in any amount because the premium period then in effect (7/16/04 to 7/16/05), payments for the prior period would have been completed before June 30, 2005, and the obligation to pay for the upcoming period would not begin to accrue until July 15, 2005, with the first payment due in September of that year. | Deny. Payments for the 7/2004 to 7/2005 period were handled from an escrow account with the mortgage company. On April 27, 2005, the premium was increased from $1907.50 per annum to $2900.00 per annum. As of the petition date, there was a balance owing to this creditor. (See Exhibit 2, Notice from Allstate Floridian;, See Lopez Declaration, Page 4: Para 14) |
| 24<br>25 | 38. The coverage period for the insurance policy maintained by Lopez through Allstate Floridian Indemnity Company ran from 7/16/04 to 7/16/05. | Deny. There were two coverage periods, for the period 7/2004 through 7/2005, and for 7/2005 through 7/2006. (See Lopez Declaration, Page 4: Para. 14) |

26

27

28

5

Statement of Undisputed Facts,
Motion for Summary Judgment

| | |
|---|---|
| 39. The final installment for the premium for that period became due on November 21, 2004. | Deny. Allstate Floridian allowed for payments by month, which were exercised by Mr. Lopez. These payments extended into 2005 (See Exhibit 2A; also see Lopez Declaration, Page 4: Para. 15) |
| 40. The final installment was not timely paid, the policy was cancelled for nonpayment of the premium on March 1, 2005 (Allstate 014), and subsequently paid, and reinstated without a lapse of coverage on March 16, 2005 (Allstate 018). | Deny. The policy was never cancelled, though a cancellation notice was sent. Funds were received late out of the mortgage company's escrow account, but payment was received. (See Exhibit 2B) |

### AMERICAN EXPRESS WAS NOT A CREDITOR ON JUNE 30, 2005

| | |
|---|---|
| 41. Lopez has produced any and all documents evidencing any and all payments he made to American Express (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 42. Lopez asserts that he has an account with American Express (3783949802283007) upon which he owed $22,000 as of June 30, 2005. | Agree that this fact is undisputed |
| 43. However, American Express indicates that there was no amount due and owing from Lopez on June 30, 2005. | Deny. Mr. Keehn made this assertion to Mr. Lopez during his depo, but did not have anything in writing from American Express confirming that assertion, and Mr. Lopez's correspondence with American Express confirms the debt. Also, Mr. Lopez has correspondence from American Express indicating amounts owing on the various credit card accounts for which Mr. Lopez was primary cardholder and guarantor. (See Exhibit 3, Letters from American Express). (See Lopez Declaration, Page 4: Para. 16; See Exhibit 14) |

### AMERICAN HOME SHIELD WAS NOT A CREDITOR ON JUNE 30, 2005

| | |
|---|---|
| 44. Lopez asserts that he was indebted to American Home Shield in the amount of $128.00 on June 30, 2005. | Agree that this fact is undisputed |
| 45. Lopez has produced any and all documents evidencing any and all payments he made to American Home Shield (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |

| | |
|---|---|
| 46. The Lopez contract with American Home Shield that was in place on the Petition Date (06/30/05) began on July 16, 2004 and did not expire until July 16, 2005. | Agree that this fact is undisputed |

### BANK OF AMERICA RECEIVED BOTH PRE-PETITION PREFERENCE PAYMENTS AND VOIDABLE POST-PETITION PAYMENTS

| | |
|---|---|
| 47. Lopez asserts that as of June 30, 2005, he was indebted to Bank of America in the approximate amount of $2,386. | Agree that this fact is undisputed |
| 48. Lopez has produced any and all documents evidencing any and all payments he made to Bank of America (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 49. On May 6, 2005, Lopez transferred $50.00 on account of the Bank of America obligation. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 50. On or about May 17, 2005, Lopez caused $50.00 to be paid to Bank of America on account of the pre-petition obligation. | Agree that this fact is undisputed |
| 51. On June 22, 2005, Lopez paid Bank of America $54.00 dollars on account of the debt he owed to them as identified on his "list of creditors". | Agree that this fact is undisputed |
| 52. On June 24, 2005, Lopez transferred $54.00 to Bank of America on account of this debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 53. On June 28, 2005, Lopez transferred $54.00 to Bank of America on account of his pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 54. On June 28, 2005, Bank of America received a payment of $54.00 on account of the obligation reflected on his "list of creditors". | Agree that this fact is undisputed |
| 55. At some point in the month of June, but before June 30, 2005, Lopez made a payment of $54.00 on account of that obligation. | Agree that this fact is undisputed |

| | |
|---|---|
| 56. On August 11, 2005, Lopez transferred $292.50 to Bank of America on account of this pre-petition obligation. | Deny as to the term "transferred". Deny, payment was made by Mrs. Lopez, using her own checking account. (See Exhibit 4, Payment to Bank of America). |

**BANK CARD SERVICES RECEIVED PRE-PETITION PREFERENCE PAYMENTS AND ITS ACCOUNT WAS SUBJECT TO A BONA FIDE DISPUTE**

| | |
|---|---|
| 57. Lopez was indebted to Bank Card Services in some amount as of June 30, 2005. | Agree that this fact is undisputed |
| 58. Lopez has produced any and all documents evidencing any and all payments he made to Bank Card Services (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 59. Bank Card Services received payment on account during the period of April 1 through June 30, 2005. | Agree that this fact is undisputed |
| 60. However, Lopez has a bonafide dispute over this creditor's unilateral position of late charges on the account because the account mechanism required an automatic deduction for at least the minimum amount due on the account. This account is subject to a bonafide dispute. | Deny, the misunderstanding was resolved to the mutual satisfaction of both Mr. Lopez and the creditor. (See Lopez Declaration, Page 4: Para. 17). |

**CINGULAR RECEIVED EITHER A PRE-PETITION PREFERENCE PAYMENT OR A VOIDABLE POST-PETITION TRANSFER**

| | |
|---|---|
| 61. Lopez has produced any and all documents evidencing any and all payments he made to Cingular Wireless (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 62. On June 19, 2005, Lopez owed Cingular $313.40. | Agree that this fact is undisputed |
| 63. As of June 19, 2005, Lopez was past due in obligations owed to Cingular in the amount of $151.81. | Agree that this fact is undisputed |
| 64. At some time between June 19, 2005 and January 10, 2006, the obligation owed to Cingular as of June 19, 2005, was paid in full. | Agreed. It was paid in full by Noveon Systems, Inc. The primary purpose for this cell phone was for business. See Exhibit 13. |

**CITICARD RECEIVED PRE-PETITION PREFERENCE PAYMENTS**

| | |
|---|---|
| 65. Lopez has produced any and all documents evidencing any and all payments he made to Citi Cards (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 66. On April 18, 2005, Lopez transferred $379.00 to Citicard on account of the pre-petition obligation. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28; Page 4: Para. 18). |
| 67. On April 19, 2005, Lopez transferred $379.00 to Citibank. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28; Page 4: Para. 18). |
| 68. On May 18, 2005, Lopez transferred $379.00 to Citicard on account of the pre-petition obligation. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28; Page 4: Para. 18). |
| 69. On May 19, 2005, Lopez transferred $379.00 to Citicard on account of the pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28; Page 4: Para. 18). |
| 70. On June 18, 2005, Lopez transferred $379.00 to Citicard on account of the pre-petition obligation. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28; Page 4: Para. 18). |
| 71. On June 20, 2005, Lopez transferred $379.00 to Citibank. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28; Page 4: Para. 18). |
| 72. On June 30, 2005, Lopez was indebted to Citi Card/AA Advantage Card in the amount of $32,136.57. | Agree that this fact is undisputed |
| **COASTAL COMMUNITY INSURANCE WAS NOT A CREDITOR ON JUNE 30, 2005** | |
| 73. The creditor identified as Coastal Community Insurance is the insurance company that provides flood insurance for the Lopez residence. | Agree that this fact is undisputed |
| 74. Lopez has produced any and all documents evidencing any and all payments he made to Coastal Community Insurance (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |

| | |
|---|---|
| 75. An insurance policy was issued by Coastal Community Insurance for 7/30/04 – 7/30/05. | Agree that this fact is undisputed |
| 76. By August 9, 2004, that premium had been paid in full. | |
| 77. The premiums for the flood insurance policy provided by Coastal Community Insurance are paid by Lopez's lender from an escrow account, and are not paid by Francis or Madeleine Lopez. | Agree, although the ultimate responsibility for the payment out of any escrow account belongs to me and/or my wife. (See Lopez Declaration, Page 5: Para. 19) |
| 78. As of June 30, 2005, Lopez was not indebted to Coastal Community Insurance because the insurance for the period beginning July 30, 2004 and ending July 30, 2005, had been paid, and the next coverage period – July 30, 2005 through July 30, 2006 – was not due, owing, or accrued. | |

### COX COMMUNICATIONS RECEIVED A VOIDABLE POST-PETITION TRANSFER

| | |
|---|---|
| 79. As of June 30, 2005, Lopez was indebted to Cox Communications in the amount of $112. | Agree that this fact is undisputed |
| 80. Lopez has produced any and all documents evidencing any and all payments he made to Cox Communications (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 81. At some point after June 30, 2005, the entire amount of the pre-petition obligation owed to Cox Communications was paid in full by Lopez. | Deny as to payment by Lopez. The payment was made by Noveon Systems, Inc., from its checking account. (See Exhibit 5, Check stub for Cox Communications) |

### THE CLAIM OF FT. WALTON BEACH MEDICAL CENTER IS THE SUBJECT OF A BONA FIDE DISPUTE

| | |
|---|---|
| 82. Lopez has produced any and all documents evidencing any and all payments he made to Fort Walton Beach Medical Center (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 7: 4-13) |
| 83. On June 30, 2005, Lopez was indebted to the Fort Walton Beach Medical Center in the approximate amount of $1,600. | Agree that this fact is undisputed |

| | |
|---|---|
| 84. However, this obligation is the subject of a bonafide dispute as to Lopez's liability. The dispute arises from the fact that the admitting doctor – and an agent of the creditor – affirmatively represented to Lopez that the treatments being made would be covered by his insurance, when in fact they were not. Lopez's nonpayment of the bill arises from this dispute. | Deny. While the doctor did suggest to Lopez that the procedure should be covered, it in fact was not, and after checking with his insurance company, Lopez acknowledges that the bill needs to be paid. Lopez did not get pre-approval for the procedure from the insurance company. (See Lopez Declaration, Page 5: Para. 20). |

**HOUSEHOLD BANK RECEIVED PRE-PETITION PREFERENCE PAYMENTS**

| | |
|---|---|
| 85. On June 30, 2006, Lopez was indebted to Household Bank/ HSBC in the approximate amount of $5,000. | Agree that this fact is undisputed |
| 86. Lopez has produced any and all documents evidencing any and all payments he made to Household Bank/ HSBC (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 87. On or about May 16, 2005, Lopez made a payment on account of the Household Bank obligation in the amount of $50. | Agree that this fact is undisputed |
| 88. On May 17, 2005, Lopez transferred $100.00 to Household Bank on of his antecedent debt. | Deny as to the use of the term "transferred". Agreement with the term "paid". Mr. Lopez's records show a payment of $50, not $100. (See Exhibit 6) |
| 89. The May 17, 2005 payment to Household Bank was $223.91 less than the minimum payment due in that cycle. | Deny. Household Bank told Mr. Lopez that a minimum payment of $50 would suffice. (See Lopez Declaration, Page 5: Para. 21). |
| 90. Other payments were also made to Household Bank on account of the pre-petition obligation in the months of April and June, 2005. | Agree that this fact is undisputed |

**KELLY PLANTATION OWNERS ASSOCIATION RECEIVED A VOIDABLE POST-PETITION TRANSFER**

| | |
|---|---|
| 91. Lopez has produced any and all documents evidencing any and all payments he made to Kelly Plantation Owners Association (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |

| | |
|---|---|
| 92. On June 30, 2005, Lopez was indebted to the Kelly Plantation Owners Association in the amount of $550 on account of home owner association dues. | Agree that this fact is undisputed |
| 93. These association bills are generated quarterly, and Lopez has no control over the assessments made. | Agree that this fact is undisputed |
| 94. The obligation owed to Kelly Plantation Owners Association on June 30, 2005, has subsequently been paid by Lopez. | Deny. This was paid by Madeleine Lopez, from her checking account.(See Exhibit 7, payment to Kelly Plantation) |
| 95. At some point in time after June 30, 2005, but before December 12, 2005, that obligation had been paid in full. | Agree that this fact is undisputed |

**NORTHWEST FLORIDA DAILY NEWS WAS A CREDITOR ON JUNE 30, 2005, BECAUSE ITS SUBSCRIPTION HAS BEEN PRE-PAID [IT ALSO RECEIVED PRE-PETITION TRANSFERS]**

| | |
|---|---|
| 96. Lopez has produced any and all documents evidencing any and all payments he made to Northwest Florida Daily News (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 97. On May 17, 2005, Lopez paid the Northwest Florida Daily News the sum of $97.39. The payment included past due amounts plus an advance payment for the next three months. | Agree that this fact is undisputed |
| 98. Of the $97.39 payment to the Northwest Florida Daily News made May 17, 2005, approximately $55.39 was made on account of the past due obligation, and the remaining $42.00 was an advance payment for the next three months. | Agree that this fact is undisputed |
| 99. When completing his list of creditors (Lopez Depo. exhibit 17) Lopez was only estimating an amount due to the Northwest Florida Daily News. | Deny. The amount was for a classified ad run by Northwest Florida Daily News that was subsequently paid by Lopez. (See Lopez Declaration, Page 5: Para. 22). |
| 100. If any amount was in fact owed to Northwest Florida Daily News, it was paid in full post-petition. | Agree that this fact is undisputed |

**OKALOOSA GAS DISTRICT RECEIVED BOTH PRE-PETITION PREFERENCES AND VOIDABLE POST-PETITION TRANSFERS**

| | |
|---|---|
| 101. Lopez has produced any and all documents evidencing any and all payments he made to Okaloosa Gas District (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 102. On May 3, 2005, Lopez transferred $171.70 to Okaloosa Gas District. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 103. As of May 19, 2005, Lopez was indebted to the Okaloosa Gas District in the amount of $82.74 (the "5/19/05 obligation). | Agree that this fact is undisputed |
| 104. On June 15, 2005, Lopez paid the sum of $82.74 on account of the 5/19/05 obligation; however the payment was untimely made and a late charge in the amount of $8.27 was imposed. | Agree that the payment was made; however, the payment was made on June 13, 2005, not June 15, 2005. Further, the payment was made by Mrs. Lopez from her own checking account. (See Exhibit 12) |
| 105. As of June 30, 2005, Lopez was indebted to the Okaloosa Gas District in the amount of $44.33. | Agree that this fact is undisputed |
| 106. On July 20, 2005, Lopez paid Okaloosa Gas District $44.33 on account of the pre-petition obligation. | Deny, payment was made by Mrs. Lopez from her own checking account (See Exhibit 7) |
| 107. On July 20, 2005, the pre-petition obligation to Okaloosa Gas District was paid in full, however the payment was untimely and a late charge of $3.61 was imposed. | Agree that this fact is undisputed |
| 108. On August 3, 2005, Lopez transferred $34.10 to the Okaloosa Gas District. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 109. On September 29, 2005, Lopez transferred $46.38 to Okaloosa Gas District. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 110. On November 3, 2005, the Okaloosa Gas District received a payment in the amount of $37.32 from Lopez on account of obligations identified in the "list of creditors". | Deny. This payment was made for the September - October 2005 billing. (See Exhibit 9) |
| 111. Lopez general pays the Okaloosa Gas District bills from the Compass Bank checking account. | Agree that this fact is undisputed |

| | |
|---|---|
| **PROGRESSIVE INSURANCE WAS NOT A CREDITOR ON JUNE 30, 2005** | |
| 112. As of June 30, 2005, Lopez claims to have been indebted to Progressive Insurance Company in the amount of $157.20. | Agree that this fact is undisputed |
| 113. Lopez has produced any and all documents evidencing any and all payments he made to Progressive Insurance Company (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 114. However, as of June 30, 2005, no amount was actually due to Progressive Insurance Company, because the existing policy was in effect at that time and was not up for renewal until August 8, 2005. | Deny. Progressive Insurance charged in periodic installments, had sent Mr. Lopez a bills for the 2004-2005 as well as the 2005-2006 periods.. (See Exhibit 10) |
| 115. However, had any amount been due and owing to Progressive Insurance Company on June 30, 2005, it was subsequently paid by Lopez. | Agree that this fact is undisputed |
| **CITIBANK – ON THE QUICKEN PLATINUM CARD – RECEIVED BOTH PRE-PETITION PREFERENCES AND VOIDABLE POST-PETITION TRANSFERS** | |
| 116. Lopez has produced any and all documents evidencing any and all payments he made to Quicken Platinum Card (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 117. On May 2, 2005, Lopez transferred $32.09 to Quicken Platinum Card on account of the pre-petition obligation. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 118. On June 27, 2005, Lopez transferred $18.00 to Quicken Platinum Card on account of the pre-petition obligation. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 119. As of June 30, 2005, Lopez was indebted to Quicken Platinum Select in the approximate amount of $848. At some point between May 24, 2005, and June 23, 2005, Lopez paid $18 on the Quicken Platinum Select card obligation. | Agree that this fact is undisputed |

LAW OFFICES
M. Jonathan Hayes

Statement of Undisputed Facts,
Motion for Summary Judgment

| | |
|---|---|
| 120. On August 1, 2005, Lopez transferred $40.00 to Quicken Platinum Card on account of the pre-petition obligation. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |

### STANLY IS AN INSIDER BECAUSE BOTH HE AND LOPEZ OWN 50% OF PRISM ADVANCE TECHNOLOGIES INC. ("PRISM")

| | |
|---|---|
| 121. Lopez is a 50% shareholder of Prism. | Agree that Lopez **was** a 50% shareholder. Prism has ceased business operations and is bankrupt. |
| 122. Alan Stanly is a 50% shareholder, officer and director of Prism. | Agree that Stanly **was** a 50% shareholder. Prism has ceased business operations and is bankrupt. |

### TEXACO RECEIVED BOTH PRE-PETITION PREFERENCES AND VOIDABLE POST-PETITION TRANSFERS

| | |
|---|---|
| 123. Lopez has produced any and all documents evidencing any and all payments he made to Texaco/Shell (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 124. On April 4, 2005, Lopez transferred $40.00 to Texaco on account of the pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 125. On May 9, 2005, Lopez transferred $20.00 to Texaco on account of the pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 126. As of June 30, 2005, Lopez was indebted to Texaco/Shell Oil in the amount of $350.20. | Agree that this fact is undisputed |
| 127. Texaco accepted payment on accounts from Lopez after June 30, 2005. | Agree that this fact is undisputed |
| 128. On or about August 9, 2005, Lopez paid $50.99 on account of the pre-petition obligation. | Agree that this fact is undisputed |
| 129. On September 26, 2005, Lopez made a payment to Texaco/Shell Oil in the amount of $10 on account of the pre-petition obligation. | Agree that this fact is undisputed |
| 130. On October 24, 2005, Lopez made a payment to Texaco/Shell in the amount of 25.00 on account of the pre-petition obligation. | Agree that this fact is undisputed |

| | |
|---|---|
| 131. The post-petition payments were made from the Compass Bank Checking account. | Deny, some payments were made by Madeleine Lopez from her separate checking account. (See Exhibit 11) |

**VALLEY FORGE LIFE INSURANCE IS NOT A CREDITOR BECAUSE LOPEZ NEVER OWED IT ANY MONEY (AND NEITHER DID HIS WIFE, MADELEINE) AS OF JUNE 30, 2005**

| | |
|---|---|
| 132. Lopez has asserted that as of June 30, 2005, he is indebted to Valley Forge Life Insurance company in the amount of "$0.00($486.00 per year)". | Agree that this fact is undisputed |
| 133. Lopez has produced any and all documents evidencing any and all payments he made to Valley Forge Life Insurance (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 134. However, Lopez is not the account debtor for that obligation. | Deny, unclear that Mr. Lopez does not have a responsibility to pay the obligation. Mrs. Lopez is the beneficiary. (See Lopez Declaration, Page 6: Para 23) |
| 135. Madeleine Lopez – the alleged debtor's spouse – not Lopez himself, is the account debtor obligated to pay the Valley Forge Life Insurance obligation. | Deny, unclear that Mr. Lopez does not have a responsibility to pay the obligation. Mrs. Lopez is the beneficiary. (See Lopez Declaration, Page 6: Para. 23). |
| 136. Madeleine Lopez, the account debtor with respect to the Valley Forge Life Insurance Obligation, pays that obligation through Noveon Systems, Inc. (a corporation in which she is the sole owner/shareholder) of which she is the sole authorized signatory on its bank accounts, and signs all of its checks upon reviewing the same. | Agree that this fact is undisputed |
| 137. There was no amount due to Valley Forge Life Insurance Company on June 30, 2006, because that annual premium had been paid at or shortly after February 5, 2005. | Deny. The policy is a 20 year term policy and the requirement is an annual fee to maintain the policy. (See Lopez Declaration, Page 6: Para. 23 ) |

**THE VERIZON CLAIM WAS DISPUTED AS OF JUNE 30, 2005, BUT SUBSEQUENTLY PAID BY A VOIDABLE POST-PETITION TRANSFER**

| | |
|---|---|
| 138. Lopez has produced any and all documents evidencing any and all payments he made to Verizon Wireless (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 139. On or about April 21, 2005, Verizon Wireless forwarded to Lopez an invoice for charges totaling $262.47. | Agree that this fact is undisputed |
| 140. Lopez disputed the validity and amount of the 4/21/05 invoice to the extent that it exceeded $35. | Lopez thought there was an overcharge. Once the bill was explained to him, he made the payment. (See Lopez Declaration, Page 6: Para. 24) |
| 141. As of June 30, 2005, the disputed portion of the Verizon obligation – in excess of $200 – had not been paid; however the disputed obligation was ultimately paid by Lopez on August 3, 2005. | Lopez thought there was an overcharge. Once the bill was explained to him, he made the payment. The payment was posted by Verizon on August 3, 2005. (See Lopez Declaration, Page 6: Para. 24) |
| **WAYNE WISE RECEIVED A PRE-PETITION PREFERENCE** | |
| 142. Lopez has produced any and all documents evidencing any and all payments he made to Wayne Wise (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Agree that this fact is undisputed |
| 143. Lopez obligation to Wayne Wise is memorialized by a promissory note dated June 16, 2004. | Agree that this fact is undisputed |
| 144. The obligation owed by Lopez to Wayne Wise is unsecured. | |
| 145. On May 17, 2005, Lopez paid Wayne Wise the sum of $900 for the interest that had accrued under the June 16, 2004, promissory note. | Deny. The payment was made by Mrs. Lopez, from her own checking account. (See Exhibit 12) |
| 146. Other than the payment of $900 interest paid on May 17, 2005, no other payments have been made on the promissory note to Wayne Wise. | Agree that this fact is undisputed |
| 147. That payment was not made in accordance with the terms of the promissory note (i.e. it was less than the full amount due). | Deny. Payment was made in accord with an oral agreement between the Lopez's and Mr. Wise. (See Lopez Declaration, Page 6: Para 25) |

| | |
|---|---|
| **UNION BANK OF CALIFORNIA RECEIVED BOTH PRE-PETITION PREFERENCES AND AVOIDABLE POST-PETITION TRANSFERS** | |
| 148. Lopez has produced any and all documents evidencing any and all payments he made to Union Bank of California (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Deny, documents in Lopez's possession at the time of the request were produced (See Lopez Declaration, Page 6: Para 26) |
| 149. In April, May, and June of 2005, Lopez paid $1000 per month to Union Bank of California on account of its compromise/settlement agreement. | Agree that this fact is undisputed |
| 150. On April 13, 2005, Lopez transferred $500.00 to Union Bank of California on account of the pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 151. On April 13, 2005, Lopez made a second $500.00 transfer to Union Bank of California on account of the pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 152. On May 18, 2005, Lopez transferred $1000.00 to Union Bank of California on account of the pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 153. As of June 30, 2005, Lopez was indebted to Union Bank in an amount at least equal to $4,000.00. | Agree that this fact is undisputed |
| 154. That obligation reflected a settlement compromise agreement with Union Bank. | Agree that this fact is undisputed |
| 155. Since June of 2005, Union Bank has received monthly payments that have completely satisfied Lopez's compromise/settlement obligation, and all payments were made from the Compass Bank account. | Agree that this fact is undisputed |
| 156. On July 8, 2005, Union Bank received a payment from Lopez in the amount of one thousand dollars on account of the debt owed to that entity and referred to on the debtor's "list of creditors". | Agree that this fact is undisputed |
| 157. On August 8, 2005, Lopez transferred $1000.00 to Union Bank of California on account of his pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |

| 158. On September 8, 2005, Union Bank received a payment from Lopez in the amount of one thousand dollars on account of the debt owed to that entity and referred to on the debtor's "list of creditors". | Agree that this fact is undisputed |
|---|---|
| 159. On October 31, 2005, Union Bank received a payment from Lopez in the amount of one thousand dollars. | Agree that this fact is undisputed |
| 160. On or about October 31, 2005, Lopez transferred $1,000.00 to Union Bank of California on account of his pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |
| 161. On November 7, 2005, Union Bank received a payment from Lopez in the amount of one thousand dollars on account of the debt owed to that entity and referred to on the debtor's "list of creditors". | Agree that this fact is undisputed |
| 162. On December 12, 2005, Union Bank received a payment from Lopez in the amount of one thousand dollars on account of the debt owed to that entity and referred to on the debtor's "list of creditors". | Agree that this fact is undisputed |
| 163. On January 11, 2006, Lopez transferred $1,000.00 to Union Bank of California on account of his pre-petition debt. | Deny as to the term "transferred". Agreement with the term "paid". (See Lopez Declaration, Page 7: Para. 27 through 28). |

## CONCLUSIONS OF LAW

1) This involuntary petition must be dismissed because the alleged debtor had more than 12 creditors at the time of the filing of the involuntary petition and there are fewer than three petitioning creditors.

2) Even if there are sufficient petitioning creditors, this involuntary petition must be dismissed because the alleged debtor was generally paying his debts as they become due at the time of the involuntary filing.

1

2   Dated:  June 12 2006                          Respectfully submitted

3

4                                                 By: _____
                                                                          CMH
5                                                     M. Jonathan Hayes
                                                      Attorney for Alleged Debtor Francis
6                                                     Lopez

7

8
        Signature by the attorney constitutes a certification under Fed. R. Bankr. P. 9011
9
    that the relief provided by the order is the relief granted by the court.
10

11
        Submitted by:
12

13
        By: _____
14                                            CMH
            M. Jonathan Hayes
15          Attorney for Francis J. Lopez

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2    PROOF OF SERVICE
     I, Cassidy Hayes, declare:

3        I am a resident of the State of California and over the age of eighteen years, and not
4   a party to the within action; my business address is 21800 Oxnard St., Suite 840,
    Woodland Hills, CA 91367.  On June 12, 2006, I served the within documents:

5

6               by transmitting via facsimile the document(s) listed above to the fax
7               number(s) set forth below on this date before 5:00 p.m.

8       X       by placing the document(s) listed above in a sealed envelope with postage
                thereon fully prepaid, in the United States mail at Los Angeles, California
9               addressed as set forth below.

10      ··      by causing personal delivery by                     of the document(s) listed
                above to the person(s) at the address(es) set forth below.

11      ··      by placing the document(s) listed above in a sealed _____
12              envelope and affixing a pre-paid air bill, and causing the envelope to be
                delivered to a _____ agent for delivery

13      ··      by personally delivering the document(s) listed above to the person(s) at the
14              address(es) set forth below.

15  L. Scott Keehn
    Sarah H. Lanham
16  ROBBINS & KEEHN, APC
    530 B Street, Suite 2400
17  San Diego, CA 92101
18  AND BY EMAIL

19      I am readily familiar with the firm's practice of collection and processing
    correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal
20  Service on that same day with postage thereon fully prepaid in the ordinary course of
    business.  I am aware that on motion of the party served, service is presumed invalid if
21  postal cancellation date or postage meter date is more than one day after date of deposit for
    mailing in affidavit.

22      I declare that I am employed in the office of a member of the bar of this court at
23  whose direction the service was made.

24      Executed on June 12, 2006, at Los Angeles, California.

25

26      _____
                Cassidy Hayes
27

28