# DOCKET NUMBER 73

1  L. Scott Keehn (SBN 61691)
   **ROBBINS & KEEHN**
2  A Professional Corporation
   530 "B" Street, Suite 2400
3  San Diego, California 92101
   Telephone: (619) 232-1700
4
   Attorneys for **Petitioning Creditors**
5

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11                                    )  Case No. 05-05926-PBINV
12                                    )
   In Re:                             )  Involuntary Chapter 7
13                                    )
        FRANCIS J. LOPEZ,             )
14                                    )  **CREDITORS' MEMORANDUM OF**
                   Alleged Debtor     )  **POINTS AND AUTHORITIES IN REPLY**
15                                    )  **TO LOPEZ'S OPPOSITION TO SUMMARY**
                                      )  **JUDGMENT MOTION**
16                                    )
                                      )  **[BIFURCATED PHASE I]**
17                                    )
                                      )  Date:  June 26, 2006
18                                    )  Time:  2:00 p.m.
                                      )  Judge: The Honorable Peter W. Bowie
19                                    )  Ctrm:  4
   _____)
20

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

*ROBBINS & KEEHN, APC*
*ATTORNEYS AT LAW*
*2400 UNION BANK BUILDING · 530 "B" STREET*
*SAN DIEGO, CALIFORNIA 92101*
*TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095*

107461/ASG/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9995

I.    **INTRODUCTION**

Distilled to its essence the Lopez Opposition is a tale "*full of sound and fury, signifying nothing.*"[1]  It is built on testimony that is part sham, part conclusion, part illusion, and wholly non-responsive to the evidence that compels the granting of the motion.

The Lopez motion for summary judgment presents, among other things, the opposite perspective of the same issues raised in this motion.  It essentially raises the same issues in a separate procedural context as those raised in the opposition to this motion.  The opposition to that motion filed by the petitioning creditors also addresses and disposes of the issues raised in this opposition.  Accordingly, the petitioning creditors incorporate herein by this reference the following pleadings and papers as though the same were fully set forth herein at this point:  (a) the "Opposition by Petitioning Creditors to Alleged Debtors Motion for Summary Judgment" [Docket Item 68]; (b) "Creditors' Separate Statement of Undisputed Material Facts" [Attachment 1 to Docket Item 68]; (c) "Evidentiary Objections etc." [Attachment 2 to Docket Item 68]; (d) "Declaration of Alan Stanly (including the transcript of the Lopez exam)" [Attachment 3 to Docket Item 68]; (e) "Declaration of L. Scott Keehn filed in Opposition to Alleged Debtor's Motion for Summary Judgment (LSK 6/15/06 Decl)" [Docket Item 69].

II.    **DISCUSSION**

A.    **THE "SHAM AFFIDAVIT" RULE BAR'S ALL PORTIONS OF THE LOPEZ OPPOSITION DECLARATION ASSERTING THE EXISTENCE OF MORE THAN SEVEN (NON INSIDER) CREDITORS.**

The Ninth Circuit follows what is commonly referred to as the "Sham Affidavit" rule.  This principle precludes a party from utilizing either new declarations, or specious corrections to prior deposition testimony [both referred to as "Sham Affidavits"] to support their position in the context of a summary judgment motion.[2]  The rule is well accepted among circuits and has been

---

[1]        William Shakespeare, *Macbeth*, Act V, scene 5.

[2]        *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.* 397 F.3d 1217, 1225 (C.A.9 (Or.),2005) citing *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991).

107461/ASG/5311.01

1  explained at length in Part III.A. of Petitioning Creditors' Opposition to the Lopez Summary

2  Judgment Motion (Docket Item 68) and is specifically incorporated herein by this reference.[3]

3      In his initial examination on May 9, 2005, the only creditors that Lopez could identify

4  were: Citi-Bank, Fleet Credit Card, American Express, Wayne Wise, and the Fort Walton Beach

5  Medical Center.[4]  That is a total of five.  He also testified that there might be a "*couple of others*"

6  whose names he was unable to recall specifically at the time.[5]  So according to his original

7  testimony, Lopez conceded that he would have no more than seven non-insider creditors as of

8  May 9, 2005.  To the extent that his Opposition Declaration purports to identify in excess of seven

9  non-insider creditors – without explaining how they came into existence between May 9 and June

10  30, 2005 – the testimony must be stricken in the context of this summary judgment motion under

11  the Sham Affidavit Rule.  When the Sham portions of the Opposition Declaration are stricken,

12  there is no evidence to rebut that which has been advanced by petitioning creditors' to establish

13  that the number of creditors within the Section 303 Count is in fact less than twelve.

14  **B.    Lopez Failed to Rebut Petitioning Creditors' Assertion that *Non-Creditor Entities***
        **Must be Excluded from the Section 303(b) Count.**

15

16      In the summary judgment context, once "a moving party carries its burden of production,

17  the nonmoving party must produce evidence to support its claim or defense."[6]  Any such evidence

18  must be admissible pursuant to the Federal Rules of Evidence.[7]  Here, Lopez has failed to present

19  admissible evidence to establish the following non-creditor entities should be included in the

20  Section 303(b) count:

21

22  _____

23      [3]      See Exhibit C for full text.

24      [4]      RSUF 166-169.

25      [5]      RSUF 170

26      [6]      *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103
        (9th Cir. 2000); *In re Chin-Liang Chan*, 325 B.R. 432, 437 (Bkrtcy. N.D.Cal. 2005) ("the
27      nonmoving party must go beyond the pleading and identify facts demonstrating a genuine issue
        for trial").

28      [7]      FRCP 56(e).

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

107461/ASG/5311.01

| Non-Creditor Status | Lopez's Response | Lopez's proffered Insufficient and/or Inadmissible Evidence |
|---|---|---|
| Allstate Floridian (RSUF 35-40)<br><br>Homeowners Insurance policy for the period 7/16/04 - 7/16/05 was paid in full in March 2005 – prior to the Petition Date. [See, Lopez Decl., Exhibit 2, pages 2B-1 & 2B-2; RSUF 37.] | Lopez asserts, for the first time, that a balance of $134.00 was owed as of the Petition Date due to policy changes which resulted in an increased premium. [Lopez Opp., pp. 2-3.] This contradicts Lopez's "List of Creditors" attached to his Answer alleging an outstanding balance of $1900. | Lopez Decl., Exhibit 2, pages 2-1, 2-2 & 2-3 are inadmissible as improperly redacted copies of correspondence. Significantly, this correspondence does not show that any payment is actually due, and no due-date is provided.  Without that, the evidence does not establish an amount owing as of the Petition Date. |
| American Home Shield (RSUF 41-46)<br><br>This insurance policy for the period 7/16/04 through 7/16/05 was paid in full, and therefore nothing was due as of the Petition Date. [RSUF 46.] | Lopez reiterates his unsupported claim that he is indebted to this creditor in the amount of $128.00. [Lopez Opp., p. 3.] | No evidence provided. Lopez's Declaration fails to even mention this entirely. |
| Coastal Community Insurance (RSUF 73-78)<br><br>This insurance policy for the period 7/30/04 though 7/30/05 had been paid in full by August 9, 2004 - before the Petition Date. [RSUF 75-78.] | Lopez asserts that certain "renewal" payments were required as of the Petition Date, but never specifies any amounts or due dates. [Lopez Opp., p. 5.] | No evidence provided. Lopez's Declaration fails to specifically address this entity's non-creditor status, and instead makes general, irrelevant assertions regarding escrow accounts. [Lopez Decl. ¶19.] |
| Northwest Florida Daily News (RSUF 96-100)<br><br> As of 5/17/05, this newspaper subscription had been pre-paid for a 3-month period. [RSUF 98.] | Lopez acknowledges that nothing was owed to this creditor as of the Petition Date. [RSUF 98.] | No tangible evidence provided. |
| Progressive Insurance (RSUF 112-115)<br><br>This automobile insurance policy had been paid in full as of the Petition Date. [RSUF 114.] | Lopez claims that a certain "Exhibit 10" supports his claim that an installment payment was due as of the Petition Date. [Lopez Opp., p. 7.] | No evidence provided. Lopez failed to produce the referenced "Exhibit 10." Moreover, Lopez's Declaration never mentions this entity. |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

107461/ASG/5311.01

| Non-Creditor Status | Lopez's Response | Lopez's proffered Insufficient and/or Inadmissible Evidence |
|---|---|---|
| Valley Forge Life Insurance (RSUF 132-137)<br><br>Madeleine Lopez — the alleged debtor's spouse — purchased this life insurance policy on Lopez. Therefore, Lopez is not the account debtor obligated to pay this entity. [RSUF 135.] | Lopez never claims that he is the account debtor on this obligation, or that any amount was actually due on the Petition Date. [Lopez Opp., p. 8.] | No tangible evidence provided. |

The Ninth Circuit is very clear regarding the effect of an opponent's failure to produce sufficient evidence to rebut the moving party's showing:

> If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.[8]

Lopez has failed to present evidence establishing that these entities were in fact qualifying creditors as of the Petition Date, and therefore the Petitioning Creditors are entitled to summary adjudication in their favor.

**C.    Lopez Failed to Present Evidence Rebutting Petitioning Creditors' Assertion that *Insiders* Alan Stanly and Frederic Lopez Must be Excluded from the Section 303(b) Count.**

Lopez does not dispute that his father, Frederic Lopez, is not a qualifying creditor for purposes of the 303(b) count. Regarding Alan Stanly, Lopez's opposition expresses "astonishment" at the movants' exclusion of Stanly from the 303(b) count, and then concludes – without citation to any authority or evidence – that Stanly "obviously" is not an insider.[9]

However, Lopez failed to proffer any facts whatsoever to refute the movants' evidence establishing that Stanly is Lopez's "insider" due to his 50% interest in Prism Technologies (Lopez owns the other 50%)[RSUF 121-122]. Lopez's own declaration never even attempts to address this fact. This failure to respond is patently insufficient to defeat summary judgment:

---

[8]    *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, supra, at 1103.

[9]    Lopez Opp., page 7, lines 22 - 26.

ROBBINS & KEEHN, APC<br>ATTORNEYS AT LAW<br>2400 UNION BANK BUILDING · 530 "B" STREET<br>SAN DIEGO, CALIFORNIA 92101<br>TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

107461/ASG/5311.01

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*[FRCP 56 (e)]

**D.    Lopez Failed to Present Evidence Rebutting the Claim that *Disputed Debts* Must be Excluded from the Section 303(b) Count.**

Lopez failed to refute the evidence presented by the Petitioning Creditors which establishes that – as of the Petition Date – Lopez disputed the following claims:

| Disputed Claims | Lopez's Response | Lopez's proffered Insufficient and/or Inadmissible Evidence |
|---|---|---|
| Bankcard Services (RSUF 57-60)<br><br>Lopez disputed certain late charges on this account. [Movants' RSUF 60.] | Lopez claims the dispute with this creditor was resolved, but does not specify the date of the resolution. [Lopez Opp., p.4; Lopez Decl. ¶17.] | No tangible evidence provided. Without any such evidence, Lopez has failed to establish whether the claim was actually disputed as of the Petition Date – the relevant date for purposes of the Section 303(b) count. |
| Walton Beach Medical Center (RSUF 82-84)<br><br>Lopez disputed this medical bill, contending he was assured that the services would be covered by his insurance. | Lopez claims that the circumstances giving rise to the dispute need to be "clarified." [Lopez Decl. ¶20.] | No tangible evidence provided. Lopez's Declaration claims the status of this dispute "needs clarification" but then fails to clarify whether Lopez continues to dispute the bill, or intends to pay it. In any event, Lopez's testimony regarding this creditor is improper and inadmissible. |
| Verizon Wireless (RSUF 138-141)<br><br>During the period of April 2005 through August 3, 2005, Lopez disputed charges of approximately $227 on his account. [RSUF 139-141.] | Lopez claims the dispute was resolved, but does not specify the date of the resolution. [Lopez Decl. ¶24.] The testimony does not assert that the dispute was resolved before June 30, 2005, which plainly implies that it was not. | Lopez's declaration, and Exhibit 15 provided in support thereof, merely establish that as of November 4, 2005 – 4 months *after* the relevant Petition Date – the dispute had been resolved.<br><br>The above evidence is consistent with Lopez's prior deposition testimony establishing that he resolved this dispute by paying the disputed charges on August 3, 2005 – *after* the relevant Petition Date. [Movants' RSUF 141.] Thus, there is no tangible evidence to refute the existence of a dispute with this creditor as of June 30, 2005. |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

107461/ASG/5311.01

**E.    Lopez Failed to Meet His Burden of Proving His Proffered "*Ordinary Course of Business*" Defense to Certain Preferences or His Defenses to *Post-Petition Transfer Voidability.***

Lopez does not dispute that creditors who received preferences or improper post-petition transfers must be excluded from the Section 303(b) count.[10]  Nor does he deny making payments to many of his listed creditors during the preference period, and after the petition date. He simply defends transfers as being made in the "ordinary course of business."

To establish the ordinary course of business defense, and thereby defeat summary judgment, Lopez bears the burden of establishing:

> (1) the debt and its payment are ordinary in relation to past practices between the debtor and that particular creditor, and (2) the payment was ordinary in relation to prevailing business standards.[11]

Summary judgment will not be defeated without admissible evidence of both elements, even where the moving party merely points out the opponent's lack of evidence.[12]

Lopez does not even attempt to provide evidence to support either of the elements. Instead, he summarily concludes that preference-period and/or post-petition payments to the following creditors were made in the "ordinary course of business."  Such unsupported assertions in his Memorandum of Points & Authorities that these transfers "were made in the ordinary course of business" do not constitute evidence, much less the requisite "admissible evidence" to defeat summary judgment. Similarly he has failed to produce any evidence to actually support his conclusory testimony to the effect that various post-petition transfers were not made by him or from his estate.  Without the necessary evidence, Lopez's asserted defense fails.

---

[10]    11 U.S.C. § 303(b)(2)

[11]    *In re National Lumber and Supply, Inc.*, 184 B.R. 74, 79 (9th Cir.BAP 1995) .

[12]    *Id.* ("On a summary judgment motion, if the nonmoving party bears the burden of proof on an issue at trial, the moving party simply may point to the absence of evidence to support the nonmoving party's case").

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

107461/ASG/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

| Creditor/Transferee | Lopez's Failure to Provide the Requisite Evidence |
|---|---|
| Bank of America (RSUF 47-56)<br><br>Received voidable transfers under both § 547 & § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. Exhibit 4 to Lopez's Declaration is an invoice from Bank of America showing that as of July 13, 2005, his account is past due. Lopez never attempts to explain how this invoice establishes the requisite elements of his asserted defense. Significantly, Lopez never attempts to explain why his "past due" account status should be deemed "ordinary" in the course of his dealings with this creditor. No other tangible evidence was provided. |
| Bankcard Services (RSUF 57-60)<br><br>Received voidable transfers under § 547. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. These transfers are not addressed in either Lopez's Declaration or Lopez's Response to movants' Separate Statement of Undisputed Facts. |
| Cingular Wireless (RSUF 61-64)<br><br>Received voidable transfers under both § 547 & § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. These transfers are not addressed in either Lopez's Declaration or Lopez's Response to movants' Separate Statement of Undisputed Facts. Exhibit 13 to Lopez's Declaration is an invoice from Cingular showing that as of 6/19/2005, his account was charged a late fee. Significantly, Lopez never attempts to explain why his delinquent account status (as evidenced by the late fee) should be deemed "ordinary" in the course of his dealings with this creditor. No other tangible evidence was provided. |
| Citi Cards (RSUF 65-72)<br><br>Received voidable transfers under § 547. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. These transfers are not addressed in either Lopez's Declaration or Lopez's Response to movants' Separate Statement of Undisputed Facts. |
| Cox Communications (RSUF 79-81)<br><br>Received voidable transfers under § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. These transfers are not addressed in either Lopez's Declaration or Lopez's Response to movants' Separate Statement of Undisputed Facts. Exhibit 5 to Lopez's Declaration is an invoice from Cox dated 7/22/05. Lopez never attempts to explain how this single invoice establishes his standard practice of dealing with this creditor. No other tangible evidence was provided. |
| Household Bank/HSBC (RSUF 85-90)<br><br>Received voidable transfers under § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. Lopez's proffered hearsay statement that Household Bank told him that a $50 payment "would suffice" does not even begin to establish Lopez's ordinary course of dealing with this creditor. No tangible evidence was provided. |

107461/ASG/5311.01

| Creditor/Transferee | Lopez's Failure to Provide the Requisite Evidence |
|---|---|
| Kelly Plantation Owners Association (RSUF 91-95)<br><br>Received voidable transfers under § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. Exhibit 7 to Lopez's Declaration suggests that Lopez's wife paid $550 to this creditor on 7/26/05. Lopez never attempts to explain how this alleged payment establishes his standard practice of dealing with this creditor. No other tangible was provided. |
| Northwest Florida Daily News (RSUF 96-100)<br><br>Received voidable transfers under § 547. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. No tangible evidence was provided. |
| Okaloosa Gas District (RSUF 101-114)<br><br>Received voidable transfers under both § 547 & § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. Exhibits 7 and 9 to Lopez's Declaration evidence two payments to this creditor (on 7/21/05 and 10/31/05 respectively). Lopez never attempts to explain how these two payments establish his standard practice of dealing with this creditor. No other tangible evidence was provided. |
| Quicken Platinum Card RSUF 116-120)<br><br>Received voidable transfers under both § 547 & § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. This creditor is not addressed in Lopez's Declaration, and no tangible evidence is provided. |
| Texaco/Shell (RSUF 123-131)<br><br>Received voidable transfers under both § 547 & § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. This creditor is not addressed in Lopez's Declaration, and no tangible evidence is provided. |
| Union Bank of CA(RSUF 148-163)<br><br>Received voidable transfers under both § 547 & § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. This creditor is not addressed in Lopez's Declaration, and no tangible evidence is provided. |
| Verizon Wireless (RSUF 138-141)<br><br>Received voidable transfers under both § 547 & § 549. | Lopez failed to produce any evidence whatsoever regarding either: (1) his payment practice with this creditor, or (2) this creditor's payment requirements. Lopez admits that a payment of approximately $227 was paid to this creditor in August 2005 to settle a dispute. [Movants' UF 139-141.] Clearly, such a settlement could not be deemed "ordinary" in the course of his dealings with Verizon. In addition, Exhibit 15 to Lopez's Declaration consists solely of two invoices from this creditor dated 11/4/05 & 12/4/05. Lopez never attempts to explain how these invoices establish his standard practice of dealing with this creditor. No other tangible was provided. |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

107461/ASG/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1   With respect to Cox Communication, the fact that Noveon Systems ("Noveon") – a

2   corporation wholly owned by Mrs. Lopez[13] – accommodated the post-petition transfer is no

3   defense to its avoidability.  From Lopez's testimony, we know that high-speed internet services

4   were delivered to the Lopez residence on his account for use on behalf of Noveon, and Lopez

5   expected a reimbursement of that expense from Noveon.[14]  However, there is no dispute that

6   Lopez was the account debtor on the obligation.  To the extent that he had a legitimate

7   reimbursement claim of that bill, it was a chose in action held by Lopez against Noveon.  That

8   claim for reimbursement was an asset of his estate.

9   The purpose of making post petition transfers avoidable is to insure that the distribution

10  scheme of the Bankruptcy Code is not circumvented by post petition payments.  The asset and

11  liability picture of the debtor is intended to freeze as of the petition date with assets liquidated and

12  claims paid in accordance with the Bankruptcy priorities.[15]  Post petition transfers that tinker with

13  that scheme become avoidable under § 549.

14  Throughout the Bankruptcy Code the concept of a "*transfer*" is broadly construed to

15  effectuate the overarching purposes of the code.  The following is a useful tutorial on the breadth

16  of the concept delivered by the Bankruptcy Court for the Northern District of Illinois:

17  "Transfer" is defined in Section 101(58)[54] of the Bankruptcy Code to encompass
    "every mode, direct or indirect, absolute or conditional, voluntary or involuntary,

18  of disposing of or parting with property or with an interest in property." 11 U.S.C.
    § 101(58)[54]. Congress intended transfer to be construed as broadly as possible.

19  H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 314 (1977), U.S.Code Cong. &
    Admin.News 1978, p. 5787. As is evidenced in the definition, a transfer does not

20  have to be made directly by a debtor. The term "transfer" as used in various
    bankruptcy statutes has been broad enough to cover such indirect transfers and to

21  catch various circuitous arrangements which have the effect of a fraudulent
    conveyance. *Matter of Compton Corp.,* 831 F.2d 586, 591-92 (5th Cir.1987); *Katz*

22  *v. First Nat. Bank of Glen Head,* 568 F.2d 964, 969 n. 4 (2nd Cir.1977), *cert.*
    *denied*434 U.S. 1069, 98 S.Ct. 1250, 55 L.Ed.2d 771 (1978); *In re Grambling,* 99

23  B.R. 515, 517-18 (Bankr.D.Conn.1989). To combat circuity, courts have broken
    down transfers into two transfers, one direct, and one indirect. *Compton Corp.,* 831

24

25  [13]    LSK 6/15/06 Decl Exhibit M (Madeline Depo) at Page 36, lines 10-20.

26  [14]    Lopez Depo at page 133 line 16 through page 135, line 3 (see Exhibit B attached
27  hereto for the full text of the colloquy).

28  [15]    See e.g. *In re Auto Parts Club, Inc.* 224, 445, 447 (Bankr. S.D. Cal. 1998), citing
    *Vanston Bondholders Protective Committee v. Green* 329 U.S. 156, 161 (1946)

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

F.2d at 591. In this proceeding, it is undisputed that a direct transfer occurred. Sizzler transferred $1.4 million to River Bank via a check payable to Quest Equities. This transfer is not the transfer which the Trustee seeks to avoid. Rather, the Trustee seeks to avoid the indirect transfer from FBN to River Bank, Quest Equities and/or Quest Realty. The Trustee contends that the fact pattern in this case is analogous to cases in which the Debtor directs a party to pay money due the Debtor to another party. If the effect of the transfer is to defraud creditors, the transfer will be avoided. **An example of an indirect transfer is when A has a claim against B, and instead of B paying A directly for the claim, A directs B to pay C. The transfer from A to C is an indirect transfer of A's property.** *See Virginia Nat. Bank v. Woodson,* 329 F.2d 836 (4th Cir.1964) (Indirect transfer occurred when debtor's sister made payment to Bank for debtor's overdrawn account); *Smith v. Patton,* 194 Ill. 638, 62 N.E. 794 (1902) (Pursuant to settlement agreement concerning a will contest, an indirect transfer occurred when will contestant directed legatee to transfer money to his daughter). In such a scenario, the debtor never has possession of the funds, but directs a third party to transfer those funds to a recipient. For fraudulent transfer purposes, the transaction is treated the same as if the debtor transferred the funds, instead of the third party.[16]

Here we have Lopez directing Noveon to pay Cox,[17] fitting snugly into the "A directs B to pay C" scenario described in *FBN Food Service, Inc*. The whole step-by-step transaction is the transfer, it occurred post petition, and it is avoidable under § 549.

## III.    CONCLUSION

Lopez has failed on every front to meet his burden of coming forward with the evidence necessary to defeat the motion. Accordingly the motion should be granted in its entirety, or, alternatively the court should adjudicate the undisputed facts.

Dated:  June 21, 2006                        **ROBBINS & KEEHN**
                                             A Professional Corporation


                               By:    //s// L. Scott Keehn
                                      L. Scott Keehn
                                      Attorneys for **Petitioning Creditors**

---

[16]    *In re FBN Food Service, Inc*. 175 B.R. 671, 683 (Bkrtcy.N.D.Ill.,1994) (Emphasis added)

[17]    See LSK 6/15/06 Decl, Exhibit M (Madelines Depo) at Page 53, line 6 to page 54 line 4 (Lopez is general manager of Noveon, controls finances, and prepares checks that Madeline signs without review).

107461/ASG/5311.01

# EXHIBIT A

## SUMMARY OF SECTION 303 COUNT
## BASED ON UNDISPUTED EVIDENCE

| Creditors Listed in Lopez's Answer | Included in §303(b)(2) Count | Excluded Because |
|---|---|---|
| ALLSTATE FLORIDIAN (Homeowners Insurance) | NO | Non-Creditor (Post-Petition Debt) See Reply Statement of Undisputed Facts ["RSUF"] 35-40 |
| AMERICAN EXPRESS (Credit Card) | YES | Non-Creditor (Disclaims Debt) RSUF 41-43.1 |
| AMERICAN HOME SHIELD (Insurance) | NO | Non-Creditor (Post-Petition Debt) RSUF 44-46 |
| BANK OF AMERICA (Credit Card) | NO | §547 & §549 RSUF 47-56 |
| BANKCARD SERVICES (Credit Card) | NO | Disputed & §547 RSUF 57- 60 |
| CINGULAR WIRELESS (Mobile Phone) | NO | §547 or §549 RSUF 61- 64 |
| CITI CARDS (Credit Card) | NO | §547 RSUF 65- 72 |
| COASTAL COMMUNITY INSURANCE (Property Insurance) | NO | Non-Creditor (Post-Petition Debt) RSUF 73-78 |
| COX COMMUNICATIONS (Television and Internet) | NO | §549 RSUF 79-81 |
| FT. WALTON BEACH MEDICAL CENTER (Emergency Room/Medical Services) | NO | Disputed RSUF 82-84 |
| HOUSEHOLD BANK / HSBC (Credit Card) | NO | §547 RSUF 85-90 |

-1-

| Creditors Listed in Lopez's Answer | Included in §303(b)(2) Count | Excluded Because |
|---|---|---|
| KELLY PLANTATION OWNERS ASSOCIATION (Homeowners Association) | NO | §549 RSUF 91-95 |
| NORTHWEST FLORIDA DAILY NEWS (Newspaper) | NO | Non-Creditor (Pre-Paid) & §547 RSUF 96-100 |
| OKALOOSA GAS DISTRICT (Utilities) | NO | §547 & §549 RSUF 101-114 |
| PROGRESSIVE INSURANCE (Auto Insurance) | NO | Non-Creditor (Post-Petition Debt) RSUF 112-115 |
| QUICKEN PLATINUM CARD (Credit Card) | NO Duplicate of Citi-Card (Two Claims – Same Carrier) | §547 & §549 RSUF 116-120 |
| STANLY, ALAN (Judgment Creditor) | NO | Insider RSUF 121-122 |
| TEXACO/SHELL (Gasoline Credit card) | NO | §547 & §549 RSUF 123-131 |
| UNION BANK OF CALIFORNIA (Settlement) | NO | §547 & §549 RSUF 148-163 |
| VALLEY FORGE LIFE INSURANCE (Life Insurance) | NO | Non-Creditor RSUF 132-137 |
| VERIZON WIRELESS (Mobile phone) | NO | Disputed & §549 RSUF 138-141 |
| WISE, WAYNE (Personal Loan) | NO | §547 RSUF 142-147 |

# EXHIBIT B

Q. Okay. So if you paid -- on those occasions
when you did pay the Cox Communications bill, did you
pay them from the Compass Bank account?

A. Yeah. It's possible. It's also possible
that since Cox Communications supplied internet --
basically, internet services, it's possible that it
may have been paid out of Noveon's account.

Q. Okay. Why would Noveon pay your Cox
Communication bill?

A. Did you hear the first part of my answer?

Q. Yeah, I did, but the internet has many uses.

A. When it has to do with high speed internet,
mainly for business use, then it's quite conceivable
that that may have been paid out of Noveon.

Q. Okay. But you don't know for sure one way
or the other?

A. Not looking at this, no.

Q. All right. All we know for sure from
looking at Exhibit Number 5 is that for whatever
reason -- well, I can't read that date going back to
the Row 2, Column 3 check. Can you read the date?
Is that 11/11/04? I can't read it at all.

A. That one says 11/11/04, but I don't think
that's the same payment.

Q. Okay. Noveon was in business in November
of 2004, right?

A. Yes.

Q. It was using internet, correct?

A. Absolutely.

Q. The internet that goes to your home?

A. That's correct.

Q. Okay. Do you still have internet service
from Cox Communications as we speak?

A. Yes, I do.

Q. Have they ever discontinued service for nonpayment?

A. Never.

Q. Okay. So you've generally paid the
bills -- well, whatever the amount that was due on
June 30th, 2005, that's been paid, hasn't it?

A. Which one are you referring to now?

Q. Well --

A. Exhibit 11?

Q. Well, let's just start with Exhibit 17. We

# EXHIBIT C

**A.    THE LOPEZ DECLARATION IN SUPPORT OF HIS SUMMARY JUDGMENT MOTION ("LOPEZ SJM DECL") IS A "SHAM AFFIDAVIT" WHICH MUST BE STRICKEN.**

The Ninth Circuit follows what is commonly referred to as the "Sham Affidavit" rule. This principle precludes a party from utilizing either new declarations, or specious corrections to prior deposition testimony [both referred to as "Sham Affidavits"] to support their position in the context of a summary judgment motion.[1]  The rule is well accepted among circuits in addition to the Ninth Circuit, and is specifically followed in at least the Third Circuit,[2] the Seventh Circuit[3], and Eighth Circuit.[4]  The purpose of the "Sham Affidavit" rule has been explained by various courts as follows:

> The very purpose of summary judgment under Rule 56 is to prevent "the assertion of unfounded claims or the interposition of specious denials or sham defenses ····"10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2712 (1983). If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.
> *Id.* We emphasized that while summary judgment "is to be reserved for those cases in which there is no genuine material issue

---

[1]    *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.* 397 F.3d 1217, 1225 (C.A.9 (Or.),2005) citing *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991).

[2]    *Martin v. Merrell Dow Pharmaceuticals, Inc.* 851 F.2d 703, 706 (C.A.3 (Pa.),1988)

[3]    *U.S. v. Funds in the amount of $30,670* 403 F3d 448, 466 (C.A. 7 (ILL.), 2005).

[4]    *City of St. Joseph, Mo. v. Southwestern Bell Telephone 439 F.3d 468,* (475 -476 (C.A.8 (Mo) 2006), citing *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1363 - 1366 (8th Cir.1983).

of fact for determination," if "testimony under oath ⋯ can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment." *Id.* No party should be allowed to create "issues of credibility" by contradicting his own previous testimony.[5]

The same thought was noted by the 7th Circuit:

This is why courts do not countenance the use of so-called "sham affidavits," which contradict prior sworn testimony, to defeat summary judgment.[6]

The logic of, and purposes served by the rule apply with equal force where, as here, the "Sham Affidavit" is offered to secure rather than evade summary judgment.

This "Sham Affidavit" rule is not an arcane or esoteric legal concept. Rather, it is the reflection of a basic and intuitive reality. That is: *Truth is constant.* It does not change in a way that allows witnesses to alter their testimony to meet the perceived requirements of their position in a summary judgment motion. That would be an anathema to the overarching purpose of every

---

[5]    *City of St. Joseph, Mo. v. Southwestern Bell Telephone* 439 F.3d 468 (475 -476 (C.A.8 (Mo) 2006), citing *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1363 - 1366 (8th Cir.1983); In accord if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact, see also *Martin v. Merrell Dow Pharmaceuticals, Inc.* 851 F.2d 703, 706 (C.A.3(Pa.),1988).

[6]    *U.S. v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars* 403 F.3d 448, 466 (C.A.7 (Ill.) 2005)[Summary judgment would be meaningless if litigants could manufacture genuine issues of material fact through self-serving and unsupported "admissions" materially different from positions taken in the past. This is why courts do not countenance the use of so-called "sham affidavits," which contradict prior sworn testimony, to defeat summary judgment], citing *Bank of Ill. v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168-69 (7th Cir.1996) ["We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions⋯ If such contradictions were permitted, ⋯'the very purpose of the summary judgment motion-to weed out unfounded claims, specious denials, and sham defenses-would be severely undercut.' "]

2

aspect of civil litigation, which is to seek out and find the truth, so that the law might be applied to that truth.

Lopez presents a prime example of both the utility and propriety of the "Sham Affidavit" rule. A review of his testimony as referenced in the Petitioning Creditors' Evidentiary Objections filed concurrently herewith ("Objections") – specifically with reference to Objections 2, 4, 7 and 9 – demonstrates his willingness to give different testimony at various times, presumably to conform to whatever his perception of his best interests at the moment may be. Such propensities are not tolerated in the context of federal litigation, and the "Sham Affidavit" rule has been developed as a principle to prevent the process from becoming contaminated by contrived after-the-fact testimony.

Lopez was first examined at length as to the identity of his creditors in the May, 9, 2005 deposition/examination.[7] At most he could identify seven such creditors, and allowed for the possibility that there might be one or two more that he could not think of at the time.[8] He now uses his declaration as a "Sham Affidavit" in an attempt to disavow the earlier testimony and substitute the newly manufactured statements that better suit his purpose at this point in time. This more purposefully crafted testimony runs afoul of both the principles and policies of promoting the integrity of the judicial process that the "Sham Affidavit" rule is designed to serve. The Lopez SJM Decl. cannot stand.

The Lopez SJM Decl. also has contrived testimony which must be stricken under the "Sham Affidavit" doctrine which is now offered to support his contention that he had mortgage

---

[7]     See Exhibit A to the Declaration of Alan Stanly filed concurrently herewith.

[8]     CSUF No. 164-170.

3

obligations and other secured creditors that he was paying timely,[9] that Stanly is not an "insider" subject to exclusion in the § 303 Count,[10] and to assert that none of his putative creditors held claims that were subject to a dispute as of June 30, 2005.[11]  All of this evidence must be stricken, and excluded from consideration in support of the Lopez summary judgment motion under the "Sham Affidavit" rule.

When the Sham Affidavit is stricken there is no putative evidence to support Lopez's motion for summary judgment.

---

[9]    See Objection No. 4.

[10]   See Objection No. 7.

[11]   See Objection No. 9.