# DOCKET NUMBER 73-1

1  L. Scott Keehn (SBN 61691)
   **ROBBINS & KEEHN**
2  A Professional Corporation
   530 "B" Street, Suite 2400
3  San Diego, California 92101
   Telephone: (619) 232-1700
4
   Attorneys for **Petitioning Creditors**
5

6           **UNITED STATES BANKRUPTCY COURT**

7           **SOUTHERN DISTRICT OF CALIFORNIA**

8

9                                        ) Case No. 05-05926-PBINV
                                         )
10 In Re:                                ) Involuntary Chapter 7
                                         )
11        FRANCIS J. LOPEZ,              )
                                         )
12                                       ) **CREDITORS' SEPARATE STATEMENT
          Alleged Debtor                ) OF UNDISPUTED MATERIAL FACTS IN
13                                       ) REPLY TO LOPEZ'S OPPOSITION TO
                                         ) SUMMARY JUDGMENT MOTION [RSUF]**
14                                       )
                                         ) **[BIFURCATED PHASE I]**
15                                       )
                                         ) Date:   June 26, 2006
16                                       ) Time:   2:00 p.m.
                                         ) Judge: The Honorable Peter W. Bowie
17                                       ) Ctrm:   4
   _____)
18

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

Petitioning creditors herein respectfully submit this Reply Statement of Undisputed Facts in reply to Lopez's opposition to the Creditors' " Motion for Summary Judgment etc."

| UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| **CASE FILING AND JURISDICTION** ||
| 1.  This case was commenced with an involuntary petition on June 30, 2005. | Docket Item 1.  See also Docket Item 65 (Lopez "Response to Moving Party Separate Statement, Etc." ["Lopez UF"]) at **Lopez UF 1.** |
| 2.  This Court has jurisdiction under the involuntary petition. | 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a) and (b)(1).  **Lopez UF 2.** |
| **GENERAL AND BACKGROUND FACTS** ||
| 3.  Francis and Madeleine Lopez were married in 1991. | Lopez Depo. page 63, lines 4-6.  **Lopez UF 3.** |
| 4.  Francis and Madeleine Lopez did not enter into a prenuptial agreement prior to their marriage. | Lopez Depo. page 63, lines 7-10.  **Lopez UF 4.** |
| 5.  Francis and Madeleine Lopez have maintained the same joint checking account with Compass Bank since 2003. | Lopez Depo. page 74, line 11-25; Lopez Depo. Exhibit 5; LSK Decl. ¶ 15, Exhibit N, CB 001-002. **See Lopez Declaration in Opposition to Summary Judgment Motion ("Oppo Decl") at ¶ 2.** |
| 6.  According to Lopez's custom and practice, consistently applied, when he places a handwritten notation on a bill, that indicates that the bill has in fact been paid. | Lopez Depo. page 87, line 20 - page 88, line 6.  *Note:* Lopez's declaration to the contrary (Oppo Decl at ¶ 3) must be stricken under the Sham Affidavit Rule (see Evidentiary Objections ("Evid Obj") filed concurrently herewith). |
| 7.  Noveon Systems is a Delaware corporation formed in May or June of 2003. | Lopez Depo. page 50, lines 7-15.  **Lopez UF 7.** |
| 8.  Lopez first became employed by Noveon Systems in the latter half of July, 2003. | Lopez Depo. page 49, lines 9-12.  **Lopez UF 8.** |
| 9.  Lopez was an officer of Noveon Systems from the time of its formation until late 2004 or sometime in mid 2005, at which point he resigned based on advice he received from attorneys. | Lopez Depo. page 52, line 11 - page 53, line 14; LSK Decl. at ¶ 14 (Madeleine's Depo.), page 36, lines 21-24.  **Lopez UF 9.** |
| 10.  Lopez has served as a director of Noveon Systems from or about the time of its formation, and cannot recall if he has ever resigned that position. | Lopez Depo. page 53, line 12 - page 54, line 3.  **Lopez UF 10.** |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 11.  Lopez provides services to Noveon in a sales capacity and is a customer service liaison for scheduling work and related services. | Lopez Depo. page 54, line 22 - page 55, line 1. **Lopez UF 11.** |
| 12.  Current compensation from Noveon Systems consists of a profit sharing plan in which he would receive a percentage of profits. | Lopez Depo. page 55, line 18 - page 56, line 2. **Lopez UF 12.** |
| 13.  Lopez received less than $12,500 in license fees from Noveon from January 1 to April 27, 2006. | Lopez Depo. page 58, line 8 - page 59, line 15. **Lopez UF 13.** |
| 14.  Lopez has received less than $50,000 dollars in aggregate compensation in all categories from Noveon since its inception through and including April 27, 2006. | Lopez Depo. page 59, lines 17-23. **Lopez UF 14.** |
| 15.  As of April 27, 2006, Lopez has received no profit sharing payments from Noveon (ever). | Lopez Depo. page 62, lines 20-23. **Lopez UF 15.** |
| 16.  In the early summer of 2005, Lopez became licensed to sell life and health insurance annuities and variable annuities in the State of Florida.  As of April 27, 2006, he only utilized that license in a couple of ventures. | Lopez Depo. page 47, line 21 - page 48, line 20. **Oppo Decl at ¶ 4** |
| 17.  Francis Lopez's income from all sources in calendar year 2005 was less than $50,000. | Lopez Depo. page 70, line 18 - page 71, line 1. **Lopez UF 17.** |
| 18.  Lopez is the author of the document entitled "Francis Lopez Exhibit A List of Creditors."*<br><br>*Hereinafter sometimes referred to as the "Creditor List" or "List of Creditors." | Lopez Depo. page 25, lines 8-9; Lopez Depo. Exhibit 17. **Lopez UF 18.** |
| **LOPEZ'S RESIDENCE HAS APPARENT EQUITY OF $405,000.00** | |
| 19.  Lopez purchased his residence at 310 San Myrtle Trail in the first half of 2003 for the purchase price of $745,000. | Lopez Depo. page 101, line 18 - page 102, line 4. *Note:* Lopez's declaration to the contrary (Oppo Decl at ¶ 5) must be stricken because it is an impermissible lay opinion regarding a legal issue; and the conveyance declaration (Exhibit 1 to Oppo Decl) is the best evidence of the manner in which title to the residence was taken. The warranty deed does not specify tenancy by the entities. |
| 20.  The current amount of the obligations secured by the residence are in excess of $800,000. | Lopez Depo. page 108, line 7 - page 109, line 2. *Note:* **Oppo Decl at ¶ 6.** |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9695

| | |
|---|---|
| 21.  The current value of the residence was recently listed on sale at a price of $1,295,000.00.  In April 2006, Lopez accepted an offer to purchase the residence for the price of $1,195,000.  That sale was never consummated. | See LFK Decl., original moving papers, at ¶ 2, Exhibit A. **Oppo Decl at ¶ 7.** |
| 22.  The residence is encumbered by a mortgage to Lehman Brothers Bank in the amount of $750,000.00. | See LFK Decl. at ¶ 4, Exhibit C. **Lopez UF 22.** |
| 23.  The residence is encumbered by a Home Equity Credit Line in the amount of $125,000.00, of which at least $65,000 has been drawn. | See Lopez Depo. page 116, line 7 - page 118, line 18; and LFK Decl. at ¶ 3, Exhibit B. **Lopez UF 23.** |
| 24.  Lopez is entitled to a minimum homestead exemption in the amount of $75,000.00. | Cal. CCP § 704.730(a)(2).  *Note:* Lopez's declaration at Oppo Decl ¶ 8 must be stricken as an improper legal opinion . Further that testimony does not contradict RSUF 24 which only asserts the minimum value of the homestead exemption. |
| 25.  The net apparent equity in the residence to an estate is approximately $250,000. | **Oppo Decl at ¶ 9** |
| 26.  Other than his residence, and certain unspecified intellectual property having an unknown value, Lopez has no assets of any significant value (more than $10,000 equity). | Stanly Decl. at ¶ 13. **Oppo Decl at ¶ 10.** |
| **THE TOTAL FORESEEABLE CLAIMS AGAINST THE LOPEZ ESTATE ARE AT LEAST $2,595,800.00** | |
| 27.  Stanly holds claims against Lopez that total in excess of $2,435,800.00.  Lopez asserts offsetting claims for invasion of privacy but offers no evidence of the factual basis of the claims, and is unable to specify an estimated amount thereof. | Stanly Decl. at ¶¶ 8-11. **Oppo Decl at ¶ 11.** |
| 28.  Frederick Lopez holds claims against Lopez in the amount of $55,000. | See next section below.  Lopez's declaration to the contrary (Oppo Decl at ¶ 12) must be stricken under the Sham Affidavit Rule. |
| 29.  Other entities hold claims against Lopez of approximately $105,000.00. | Stanly Decl. at ¶ 12. |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2401 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| LOPEZ OWES HIS FATHER - FREDERICK LOPEZ - $55,000 ($20,000 PRE-PETITION / $35,000 POST-PETITION BORROWING) | |
|---|---|
| 30.  As of May 9, 2005, Lopez owed his father – Frederick Lopez – $20,000 on account of money that Lopez had borrowed from him. | Lopez Depo. page 28, lines 17 - page 29, line 5.  **Lopez UF 30.** |
| 31.  As of June 30, 2005, none of the monies that Lopez had borrowed from his father had been repaid. | Lopez Depo. page 31, lines 12-16.  **Lopez UF 31.** |
| 32.  Since June 30, 2005, Lopez has borrowed an additional sum of $35,000 from his father. | Lopez Depo. page 30, lines 5-15.  Lopez's declaration to the contrary (Oppo Decl at ¶ 13) must be stricken under the Sham Affidavit Rule. |
| 33.  Lopez did not include his father as a creditor on Exhibit A to his Answer (Lopez Depo. Exhibit 17) because he understood that it was not appropriate to include relatives on that list. | Lopez Depo., page 27, lines 13-20.  **Lopez UF 33.** |
| LOPEZ'S ATTORNEY WILL HAVE POST-PETITION GAP CLAIMS | |
| 34.  To the best of his recollection (as refreshed by his review of available documents), Lopez has not paid his attorney of record in this case anything since February 5, 2006. | Lopez Depo. at page 14, line 14 - page 16, line 15.  **Lopez UF 34.** |
| ALLSTATE FLORIDIAN WAS NOT A CREDITOR ON JUNE 30, 2005, BECAUSE THE PREMIUM DUE FOR THE 7/16/04 THROUGH 7/16/05 PERIOD WAS FULLY PAID ON MARCH 16, 2005 | |
| 35.  Lopez has produced any and all documents evidencing any and all payments he made to Allstate Floridian (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 8-9; Lopez Depo. Exhibit 1. *Note:* Lopez's declaration to the contrary (Oppo Decl at ¶ 26) must be stricken under the Sham Affidavit Rule.  The "New Evidence" is unspecified and should be excluded as not timely produced, i.e. the search referred to is one that Lopez was obligated to perform prior to his deposition, and he offers no excuse for his delay. |
| 36.  Lopez claims to have been indebted to Allstate Floridian (insurance company) in the approximate amount of $1,900 as of June 30, 2005. | Lopez Depo. Exhibit 17 at page 1.  **Lopez UF 36.** |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 37.  However, as of June 30, 2005, Lopez was not indebted to Allstate Floridian indemnity company in any amount because for the premium period then in effect (7/16/04 to 7/16/05), payments for the prior period would have been completed before June 30, 2005, and the obligation to pay for the upcoming period would not begin to accrue until July 17, 2005, with the first payment due in September of that year. | Lopez Depo. page 154, line 25 - page 155, line 20; Lopez Depo. Exhibit 25. Lopez's declaration to the contrary (Oppo Decl at ¶ 14) must be stricken under the Sham Affidavit Rule. |
| 38.  The coverage period for the insurance policy maintained by Lopez through Allstate Floridian Indemnity Company ran from 7/16/04 to 7/16/05. | LSK Decl. ¶ 4, Exhibit C, Allstate 010. Lopez's declaration to the contrary (Oppo Decl at ¶ 14) must be stricken under the Sham Affidavit Rule. |
| 39.  The final installment for the premium for that period became due on November 21, 2004. | LSK Decl. ¶ 4, Exhibit C, Allstate 010. Lopez's declaration to the contrary (Oppo Decl at ¶ 15) must be stricken under the Sham Affidavit Rule. |
| 40.  The final installment was not timely paid, the policy was cancelled for nonpayment of the premium on March 1, 2005 (Allstate 014), and subsequently paid, and reinstated without a lapse of coverage on March 16, 2005 (Allstate 018). | LSK Decl. ¶ 4, Exhibit C, Allstate 010, 014 and 018. **See also Oppo Decl exhibit 2B.** |
| **AMERICAN EXPRESS MAY HAVE BEEN A CREDITOR ON JUNE 30, 2005** | |
| 41.  Lopez has produced any and all documents evidencing any and all payments he made to American Express (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 14, lines 10-11; Lopez Depo. Exhibit 1. *Note:* Lopez testimony of Oppo Decl at ¶ 16 must be stricken because it expresses an impermissible legal conclusion, and because statements of account from American Express are the best evidence of the amounts claimed . |
| 42.  Lopez asserts that he has an account with American Express (3783949802283007) upon which he owed $22,000 as of June 30, 2005. | Lopez Depo. Exhibit 17 (creditor list) at page 17-3.  **Lopez UF 42.** |
| 43.  However, American Express indicates that there was no amount due and owing from Lopez on June 30, 2005. | LSK Decl. ¶ 5, Exhibit D; Lopez Depo. page 155, line 21 - page 160, line 9. |
| 43.1.  Despite producing no documents in response to the Subpoena, American Express asserts claims against Lopez. | **Oppo Exhibit 3-1** |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| **AMERICAN HOME SHIELD WAS NOT A CREDITOR ON JUNE 30, 2005** | |
|---|---|
| 44.  Lopez asserts that he was indebted to American Home Shield in the amount of $128.00 on June 30, 2005. | Lopez Depo. Exhibit 17 at page 3.  **Lopez UF 44.** |
| 45.  Lopez has produced any and all documents evidencing any and all payments he made to American Home Shield (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 14, lines 4-5; Lopez Depo. Exhibit 1. *Note:* See Objection to Oppo Decl ¶ 26 above. |
| 46.  The Lopez contract with American Home Shield that was in place on the Petition Date (06/30/05) began on July 16, 2004 and did not expire until July 16, 2005. | American Home Shield - "Contract Home Page" - ASH 0002 (LSK Decl. ¶ 6, Exhibit E).  **Lopez UF 46.** |
| **BANK OF AMERICA RECEIVED BOTH PRE-PETITION PREFERENCE PAYMENTS AND VOIDABLE POST-PETITION PAYMENTS** | |
| 47.  Lopez asserts that as of June 30, 2005, he was indebted to Bank of America in the approximate amount of $2,386. | Lopez Depo. Exhibit 17 at page 2.  **Lopez UF 47.** |
| 48.  Lopez has produced any and all documents evidencing any and all payments he made to Bank of America (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 12-13; Lopez Depo. Exhibit 1. *Note:* See Objection to Oppo Decl ¶ 26 above. |
| 49.  On May 6, 2005, Lopez transferred $50.00 on account of the Bank of America obligation. | LSK Decl., ¶ 7, Exhibit F, page 1.  Oppo Decl at ¶ 27 must be stricken because (a) it expresses impermissible lay opinions, unsupported by factual basis; and, (b) as a Sham Affidavit that contradicts his prior testimony regarding his unemployed status. Oppo Decl at ¶ 28 must be stricken as an impermissible lay opinion regarding a legal conclusion (aggravated by the absence of the facts upon which it was predicated). |
| 50.  On or about May 17, 2005, Lopez caused $50.00 to be paid to Bank of America on account of the pre-petition obligation. | Lopez Depo. page 172, line 25 - page 173, line 23.  **Lopez UF 50.** |
| 51.  On June 22, 2005, Lopez paid Bank of America $54.00 dollars on account of the debt he owed to them as identified on his "list of creditors." | Lopez Depo. page 83, lines 1-15; Lopez Depo. Exhibit 7, page 1 (check no.1617, $54.00).  **Lopez UF 51.** |
| 52.  On June 26, 2005, Lopez transferred $54.00 to Bank of America on account of this debt. | LSK Decl. ¶ 7, Exhibit F, page 2. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 53.  On June 28, 2005, Lopez transferred $54.00 to Bank of America on account of his pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, CB 0185. *Note:*  See Objection to Oppo Decl ¶ 27 and 28 above. |
| 54.  On June 28, 2005, Bank of America received a payment of $54.00 on account of the obligation reflected in the "list of creditors." | Lopez Depo. page 83, line 19 - page 85, line 6; Lopez Depo. Exhibit 7, page 1 (check no. 1617).  **Lopez UF 54.** |
| 55.  At some point in the month of June, but before June 30, 2005, Lopez made a payment of $54.00 on account of that obligation. | Lopez Depo. page 171, lines 1-17; page 171, line 22 - page 172, line 12; Lopez Depo. Exhibit 27.  **Lopez UF 55.** |
| 56.  On August 11, 2005, Lopez transferred $292.50 to Bank of America on account of this pre-petition obligation. | LSK Decl. ¶ 7, Exhibit F, page 3. *Note:* Oppo Exhibit 4 must be stricken.  It is incomplete, lacks foundation and is irrelevant because it does not identify the account holder. |
| **BANK CARD SERVICES RECEIVED PRE-PETITION PREFERENCE PAYMENTS AND ITS ACCOUNT WAS SUBJECT TO A BONA FIDE DISPUTE** | |
| 57.  Lopez was indebted to Bank Card Services in some amount as of June 30, 2005. | Lopez Depo. Exhibit 17 at page 2.  **Lopez UF 57.** |
| 58.  Lopez has produced any and all documents evidencing any and all payments he made to Bank Card Services (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 21-22; Lopez Depo. Exhibit 1. *Note:* See Objection to ¶ 26 above. |
| 59.  Bank Card Services received payment on account during the period of April 1 through June 30, 2005. | Lopez Depo. page 175, lines 13-18.  **Lopez UF 59.** |
| 60.  However, Lopez has a bonafide dispute over this creditor's unilateral position of late charges on the account because the account mechanism required an automatic deduction for at least the minimum amount due on the account.  This account is subject to a bonafide dispute. | Lopez Depo. page 175, line 18 - page 177, line 10. Lopez's declaration to the contrary (Oppo Decl at ¶ 17) must be stricken under the Sham Affidavit Rule  filed concurrently herewith.  The Oppo Decl at ¶ 17 must also be stricken because it appears to be irrelevant.  Although vague at the time, the testimony appears to address a past petition resolution of the dispute which would be irrelevant to the issues before the court (except to the extent that a post petition resolution necessarily concedes the existence of a dispute on the petition date.) |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| CINGULAR RECEIVED EITHER A PRE-PETITION PREFERENCE PAYMENT OR A VOIDABLE POST-PETITION TRANSFER | |
|---|---|
| 61.  Lopez has produced any and all documents evidencing any and all payments he made to Cingular Wireless (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 23-24; Lopez Depo. Exhibit 1. *Note:* See Objection to Oppo Decl ¶ 26 above. |
| 62.  On June 19, 2005, Lopez owed Cingular $313.40. | Lopez Depo. page 91, lines 3-11; Lopez Depo. Exhibit 18.  **Lopez UF 62.** |
| 63.  As of June 19, 2005, Lopez was past due in obligations owed to Cingular in the amount of $151.81. | Lopez Depo. page 91, lines 3-11; Lopez Depo. Exhibit 18; Lopez Depo. Exhibit 9 at page 4.  **Lopez UF 63.** |
| 64.  At some time between June 19, 2005, and January 10, 2006, the obligation owed to Cingular as of June 19, 2005, was paid in full. | Lopez Depo. page 91, lines 3-20; page 99, line 14 - page 100, line 19; Lopez Depo. Exhibit 9 at page 3.  **Lopez UF 64.** |
| CITICARD RECEIVED PRE-PETITION PREFERENCE PAYMENTS | |
| 65.  Lopez has produced any and all documents evidencing any and all payments he made to Citi Cards (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 14, lines 6-7; Lopez Depo. Exhibit 1. *Note:* See Objection to Oppo Decl ¶ 26 above. |
| 66.  On April 18, 2005, Lopez transferred $379.00 to Citicard on account of the pre-petition obligation. | LSK Decl. ¶ 8, Exhibit G, page 2; and Lopez Depo. page 180, lines 7-14; page 181, lines 3-12. *Note:* The Oppo Decl ¶ 18 must be stricken because: (a) Lopez's disagreement with the use of the word "transferred" is irrelevant, and includes the implied, but impermissible legal opinion that the exchange of cash is not a transfer; (b) statements regarding minimum amounts are not the best evidence of the contractual obligation; (c) his legal conclusion arguing ordinary cause is an impermissible lay opinion (agitated by the absence of the facts upon which it is based); and, (d) speculation as to what Stanly knew is objectionable as lacking foundation .  Oppo Decl at ¶ 27 must be stricken because (a) it expresses impermissible lay opinions, unsupported by factual basis; and (b) as a Sham Affidavit that contradicts his prior testimony regarding his unemployed status . |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

| | |
|---|---|
| 67. On April 19, 2005, Lopez transferred $379.00 to Citibank. | LSK Decl. ¶ 15, Exhibit N, CB 0172; and Lopez Depo. page 180, lines 7-14; page 181, lines 3-12. *Note:* The Oppo Decl ¶ 18 must be stricken because: (a) Lopez's disagreement with the use of the word "transferred" is irrelevant, and includes the implied, but impermissible legal opinion that the exchange of cash is not a transfer; (b) statements regarding minimum amounts are not the best evidence of the contractual obligation; (c) his legal conclusion arguing ordinary cause is an impermissible lay opinion (agitated by the absence of the facts upon which it is based); and, (d) speculation as to what Stanly knew is objectionable as lacking foundation . |
| 68. On May 18, 2005, Lopez transferred $379.00 to Citicard on account of the pre-petition obligation. | LSK Decl. ¶ 8, Exhibit G, page 3; and Lopez Depo. page 180, lines 7-14; page 181, lines 3-12. *Note:* The Oppo Decl ¶ 18 must be stricken because: (a) Lopez's disagreement with the use of the word "transferred" is irrelevant, and includes the implied, but impermissible legal opinion that the exchange of cash is not a transfer; (b) statements regarding minimum amounts are not the best evidence of the contractual obligation; (c) his legal conclusion arguing ordinary cause is an impermissible lay opinion (agitated by the absence of the facts upon which it is based); and, (d) speculation as to what Stanly knew is objectionable as lacking foundation . |
| 69. On May 19, 2005, Lopez transferred $379.00 to Citibank on account of his pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, CB 0181; and Lopez Depo. page 180, lines 7-14; page 181, lines 3-12. *Note:* The Oppo Decl ¶ 18 must be stricken because: (a) Lopez's disagreement with the use of the word "transferred" is irrelevant, and includes the implied, but impermissible legal opinion that the exchange of cash is not a transfer; (b) statements regarding minimum amounts are not the best evidence of the contractual obligation; (c) his legal conclusion arguing ordinary cause is an impermissible lay opinion (agitated by the absence of the facts upon which it is based); and, (d) speculation as to what Stanly knew is objectionable as lacking foundation . |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 70.  On June 18, 2005, Lopez transferred $379.00 to Citicard on account of the pre-petition obligation. | LSK Decl. ¶ 8, Exhibit G, page 4; and Lopez Depo. page 179, lines 8-23; Lopez Depo. Exhibit 29.  *Note:* The Oppo Decl ¶ 18 must be stricken because: (a) Lopez's disagreement with the use of the word "transferred" is irrelevant, and includes the implied, but impermissible legal opinion that the exchange of cash is not a transfer; (b) statements regarding minimum amounts are not the best evidence of the contractual obligation; (c) his legal conclusion arguing ordinary cause is an impermissible lay opinion (agitated by the absence of the facts upon which it is based); and, (d) speculation as to what Stanly knew is objectionable as lacking foundation . |
| 71.  On June 20, 2005, Lopez transferred $379.00 to Citibank. | LSK Decl. ¶ 15, Exhibit N, CB 0184. *Note:*  The Oppo Decl ¶ 18 must be stricken because: (a) Lopez's disagreement with the use of the word "transferred" is irrelevant, and includes the implied, but impermissible legal opinion that the exchange of cash is not a transfer; (b) statements regarding minimum amounts are not the best evidence of the contractual obligation; (c) his legal conclusion arguing ordinary cause is an impermissible lay opinion (agitated by the absence of the facts upon which it is based); and, (d) speculation as to what Stanly knew is objectionable as lacking foundation . |
| 72.  On June 30, 2005, Lopez was indebted to Citi Card/AA Advantage Card in the amount of $32,136.57. | Lopez Depo. page 178, line 23 - page 179, line 23.  **Lopez UF 72.** |
| **COASTAL COMMUNITY INSURANCE WAS NOT A CREDITOR ON JUNE 30, 2005** | |
| 73.  The creditor identified as Coastal Community Insurance is the insurance company that provides flood insurance for the Lopez residence. | Lopez Depo. page 119, line 4-9.  **Lopez UF 73.** |

107449/LSK/5311.01

| | |
|---|---|
| 74. Lopez has produced any and all documents evidencing any and all payments he made to Coastal Community Insurance (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 12, line 25 - page 13 line 1; Lopez Depo. Exhibit 1. Lopez's declaration to the contrary (Oppo Decl at ¶ 26) must be stricken under the Sham Affidavit Rule filed concurrently herewith. The "New Evidence" is unspecified and should be excluded as not timely produced, i.e. the search referred to is one that Lopez was obligated to perform prior ro his deposition, and he offers no excuse for his delay. |
| 75. An insurance policy was issued by Coastal Community Insurance for 7/30/04-7/30/05. | LSK Decl. ¶ 9, Exhibit H. **Lopez UF 75.** |
| 76. By August 9, 2004, that premium had been paid in full. | LSK Decl. ¶ 9, Exhibit H, pages 2-4. |
| 77. The premiums for the flood insurance policy provided by Coastal Community Insurance are paid by Lopez's lender from an escrow account, and are not paid by Francis or Madeleine Lopez. | Lopez Depo. page 119, line 4 - page 120, line 6. **Lopez UF 77.** |
| 78. As of June 30, 2005, Lopez was not indebted to Coastal Community Insurance because the insurance for the period beginning July 30, 2004 and ending July 30, 2005, had been paid, and the next coverage period – July 30, 2005 through July 30, 2006 – was not due, owing, or accrued. | Lopez Depo. page 120, lines 7-11; Lopez Depo. Exhibit 10; Lopez Depo. page 121, line 9 - page 125, line 13. |
| **COX COMMUNICATIONS RECEIVED A VOIDABLE POST-PETITION TRANSFER** | |
| 79. As of June 30, 2005, Lopez was indebted to Cox Communications in the amount of $112. | Lopez Depo. Exhibit 17, page 2; Lopez Depo. page 135, line 10 - page 136, line 13; Lopez Depo. Exhibit 21. **Lopez UF 79.** |
| 80. Lopez has produced any and all documents evidencing any and all payments he made to Cox Communications (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 16-17; Lopez Depo. Exhibit 1. Lopez's declaration to the contrary (Oppo Decl at ¶ 26) must be stricken under the Sham Affidavit Rule filed concurrently herewith. The "New Evidence" is unspecified and should be excluded as not timely produced, i.e. the search referred to is one that Lopez was obligated to perform prior ro his deposition, and he offers no excuse for his delay. |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 81. At some point after June 30, 2005, the entire amount of the pre-petition obligation owed to Cox Communication was paid in full. | Lopez Depo. page 136, lines 16-20; see also page 134, line 23 - page 135, line 3; page 133, line 4-18; Lopez Depo. Exhibit 5, page 4, column 3, row 2 (check no. 1558). |
| **THE CLAIM OF FT. WALTON BEACH MEDICAL CENTER IS THE SUBJECT OF A BONA FIDE DISPUTE** | |
| 82. Lopez has produced any and all documents evidencing any and all payments he made to Fort Walton Beach Medical Center (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 14, lines 12-13; Lopez Depo. Exhibit 1. *Note:* Oppo Decl at ¶ 27 must be stricken because (a) it expresses impermissible lay opinions, unsupported by factual basis; and, (b) as a Sham Affidavit that contradicts his prior testimony regarding his unemployed status . |
| 83. On June 30, 2005, Lopez was indebted to the Fort Walton Beach Medical Center in the approximate amount of $1,600 dollars. | Lopez Depo. Exhibit 17 at page 4. **Lopez UF 83.** |
| 84. However, this obligation is the subject of a bonafide dispute as to Lopez's liability. The dispute arises from the fact that the admitting doctor – and an agent of the creditor – affirmatively represented to Lopez that the treatments being made would be covered by his insurance, when in fact they were not. Lopez's nonpayment of the bill arises from this dispute. | Lopez Depo. page 182, line 5 - page 185, line 4. *Note:* to the extent he deems elusive: Lopez's declaration to the contrary (Oppo Decl at ¶ 20) must be stricken under the Sham Affidavit Rule  filed concurrently herewith. |
| **HOUSEHOLD BANK RECEIVED PRE-PETITION PREFERENCE PAYMENTS** | |
| 85. On June 30, 2006, Lopez was indebted to Household Bank/ HSBC in the approximate amount of $5,000. | Lopez Depo. Exhibit 17 at page 3. **Lopez UF 85.** |
| 86. Lopez has produced any and all documents evidencing any and all payments he made to Household Bank/HSBC (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 14, lines 8-9; Lopez Depo. Exhibit 1. *Note:* See Objections to Oppo Decl ¶ 26, above. |
| 87. On or about May 16, 2005, Lopez made a payment on account of the Household Bank obligation in the amount of $50. | Lopez Depo. page 185, lines 5-19; Lopez Depo. Exhibit 31. **Lopez UF 87.** |
| 88. On May 17, 2005, Lopez transferred $50.00 to Household Bank on of his antecedent debt. | LSK Decl. ¶ 10, Exhibit I, page 7. *Note:* **Lopez UF 88.** |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 89. The May 17, 2005 payment to Household Bank was $223.91 less than the minimum payment due in that cycle. | LSK Decl. ¶ 10, Exhibit I, page 6. *Note:* Oppo Decl at ¶ 21 must be stricken as hearsay and if admitted lacks foundation as to the identity and authority of the hearsay declarant. |
| 90. Other payments were also made to Household Bank on account of the pre-petition obligation in the months of April and June, 2005. | Lopez Depo. page 185, line 20 - page 186, line 4. **Lopez UF 90.** |

**KELLY PLANTATION OWNERS ASSOCIATION RECEIVED A VOIDABLE POST-PETITION TRANSFER**

| | |
|---|---|
| 91. Lopez has produced any and all documents evidencing any and all payments he made to Kelly Plantation Owners Association (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; Lopez Depo. Exhibit 1. **Lopez UF 91.** |
| 92. On June 30, 2005, Lopez was indebted to the Kelly Plantation Homeowners Association in the amount of $550 on account of home owner association dues. | Lopez Depo.. Exhibit 17, page 17-1; LSK Decl. ¶ 11, Exhibit J, pages 6-7. **Lopez UF 92.** |
| 93. These association bills are generated quarterly, and Lopez has no control over the assessments made. | Lopez Depo. page 188, lines 1-22; page 189, lines 12-20. **Lopez UF 93.** |
| 94. The obligation owed to Kelly Plantation Homeowners Association on June 30, 2005, has subsequently been paid by Lopez. | Lopez Depo. page 190, lines 2-22; Lopez Depo. Exhibit 32. *Note:* Exhibit 7 to the Oppo Decl is not a check. Rather it is a redacted and altered bank statement that shows checks and amounts but not the payee. Accordingly it lacks the necessary foundation of relevence. |
| 95. At some point in time after June 30, 2005, but before December 12, 2005, that obligation had been paid in full. | LSK Decl. ¶ 11, Exhibit J, pages 5 & 7. **Lopez UF 95.** |

**NORTHWEST FLORIDA DAILY NEWS WAS A CREDITOR ON JUNE 30, 2005, BECAUSE ITS SUBSCRIPTION HAD BEEN PRE-PAID [IT ALSO RECEIVED PRE-PETITION TRANSFERS]**

| | |
|---|---|
| 96. Lopez has produced any and all documents evidencing any and all payments he made to Northwest Florida Daily News (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 6-7; Lopez Depo. Exhibit 1. *Note:* See Objection to Oppo Decl ¶ 26 above. |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 97. On May 17, 2005, Lopez paid the Northwest Florida Daily News the sum of $97.39. The payment included past due amounts plus an advance payment for the next three months. | Lopez Depo. page 85, line 21 to page 86 line 6; page 90 line 17-22; Lopez Depo. Exhibit 8 at page 4. **Lopez UF 97.** |
| 98. Of the $97.39 payment to the Northwest Florida Daily News made May 17, 2005, approximately $55.39 was made on account of the past due obligation, and the remaining $42.00 was an advance payment for the next three months. | Lopez Depo. page 85, line 21 to page 86 line 6; page 90 line 17-22; and Exhibit 8, page 1 ("subscription options" in the upper right hand corner) [i.e. subscription rate for 16 weeks (~3 months) equals $42.00]. **Lopez UF 98.** |
| 99. When completing his list of creditors, (Lopez Depo. exhibit 17) Lopez was only estimating an amount due to the Northwest Florida Daily News. | Lopez Depo. page 191, line 13 - page 192, line 8. *Note:* Lopez's declaration to the contrary (Oppo Decl at ¶ 22) must be stricken under the Sham Affidavit Rule filed concurrently herewith. |
| 100. If any amount was in fact owed to Northwest Florida Daily News, it was paid in full post-petition. | Lopez Depo. page 192, lines 9-15. **Lopez UF 100.** |
| **OKALOOSA GAS DISTRICT RECEIVED BOTH PRE-PETITION PREFERENCES AND VOIDABLE POST-PETITION TRANSFERS** | |
| 101. Lopez has produced any and all documents evidencing any and all payments he made to Okaloosa Gas District (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 4-5; Lopez Depo. Exhibit 1. *Note:* See objections to Oppo Decl ¶ 26 above. |
| 102. On May 3, 2005, Lopez transferred $171.70 to Okaloosa Gas District. | LSK Decl. ¶ 15, Exhibit N, CB 0173. *Note:* See objection to Oppo Decl ¶ 26 above. Oppo decl at ¶ 28 must be stricken as an impermissible lay opinion regarding a legal conclusion (aggravated by the absence of the facts upon which it was predicated). |
| 103. As of May 19, 2005, Lopez was indebted to the Okaloosa Gas District in the amount of $82.74 (the "5/19/05 obligation"). | Lopez Depo. Exhibit 22 at page 1. **Lopez UF 103.** |
| 104. On June 13 or 15, 2005, Lopez paid the sum of $82.74 on account of the 5/19/05 obligation; however the payment was untimely made and a late charge in the amount of $8.27 was imposed. | Lopez Depo. Exhibit 22 at page 2. *Note:* Lopez UF 104. See also objection to Oppo Exhibit 7 above, which applies to exhibit 12 as well. |
| 105. As of June 30, 2005, Lopez was indebted to the Okaloosa Gas District in the amount of $44.33. | Lopez Depo. Exhibit 17, page 1; LSK Decl. ¶ 12, Exhibit K, page 3; and Lopez Depo. Exhibit 17 at page 1; Lopez Depo. Exhibit 22 at page 2; Lopez Depo. Exhibit 12 at page 5. **Lopez UF 105.** |

107449/LSK/5311.01

| 106. On July 20, 2005, Lopez paid Okaloosa Gas District $44.33 on account of the pre-petition obligation. | LSK Decl. ¶ 12, Exhibit K, page 3. *Note:* See Objection to Oppo Exhibit 7 above. |
|---|---|
| 107. On July 20, 2005, the pre-petition obligation to Okaloosa Gas District was paid in full, however the payment was untimely and a late charge of $3.61 was imposed. | Lopez Depo. page 138, line 8 - page 139, line 4; Lopez Depo. Exhibit 12 at page 4. **Lopez UF 107.** |
| 108. On August 3, 2005, Lopez transferred $34.10 to the Okaloosa Gas District. | LSK Decl. ¶ 15, Exhibit N, CB 0192. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |
| 109. On September 29, 2005, Lopez transferred $46.38 to Okaloosa Gas District. | LSK Decl. ¶ 15, Exhibit N, CB 0204; and Lopez Depo. page 83, line 19 - page 85, line 6; Lopez Depo. Exhibit 6, page 3 (check no. 1682). *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |
| 110. Withdrawn. | |
| 111. Lopez generally pays the Okaloosa Gas District bills from the Compass Bank checking account. | Lopez Depo. page 139, line 17 - page 140, line 12. **Lopez UF 111.** |
| **PROGRESSIVE INSURANCE WAS NOT A CREDITOR ON JUNE 30, 2005** ||
| 112. As of June 30, 2005, Lopez claims to have been indebted to Progressive Insurance Company in the amount of $157.20. | Lopez Depo. page 140, lines 18-21; Lopez Depo. Exhibit 17 at page 1. **Lopez UF 112.** |
| 113. Lopez has produced any and all documents evidencing any and all payments he made to Progressive Insurance (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | LSK Decl. ¶¶ 2-3, Exhibits A-B (hereinafter "Lopez Depo.") page 12, lines 1-8, 20-24; Lopez Depo. Exhibit 1. *Note:* See Objection to Oppo Decl ¶ 26 above. |
| 114. However, as of June 30, 2005, no amount was actually due to Progressive, because the existing policy was in effect at that time and was not up for renewal until August 8, 2005. | Lopez Depo. Exhibit 13 at page 3. *Note:* There is no Exhibit 10 attached to the Oppo Decl. |
| 115. However, had any amount been due and owing to Progressive on June 30, 2005, it was subsequently paid by Lopez. | Lopez Depo. page 142, lines 18-24. **Lopez UF 115.** |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| CITIBANK — ON THE QUICKEN PLATINUM CARD — RECEIVED BOTH PRE-PETITION PREFERENCES AND VOIDABLE POST-PETITION TRANSFERS | |
|---|---|
| 116.  Lopez has produced any and all documents evidencing any and all payments he made to Quicken Platinum Card (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 1-2; Lopez Depo. Exhibit 1.  *Note:* See Objection to ¶ 26 above. |
| 117.  On May 2, 2005, Lopez transferred $32.09 to Quicken Platinum Card on account of the pre-petition obligation. | LSK Decl. ¶ 8, Exhibit G, page 5.  *Note:* See Objection to ¶ 26 above. |
| 118.  On June 27, 2005, Lopez transferred $18.00 to Quicken Platinum Card on account of the pre-petition obligation. | LSK Decl. ¶ 8, Exhibit G, page 7.  *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |
| 119.  As of June 30, 2005, Lopez was indebted to Quicken Platinum Select in the approximate amount of $848.  At some point between May 24, 2005, and June 23, 2005, Lopez paid $18 on the Quicken Platinum Select card obligation. | Lopez Depo. page 194, line 17 - page 195, line 2; Lopez Depo. Exhibit 33 at page 2. **Lopez UF 119.** |
| 120.  On August 1, 2005, Lopez transferred $40.00 to Quicken Platinum Card on account of the pre-petition obligation. | LSK Decl. ¶ 8, Exhibit G, page 8.  *Note:* See Objection to Oppo Decl ¶27 and 28 above. |
| STANLY IS AN INSIDER BECAUSE BOTH HE AND LOPEZ OWN 50% OF PRISM ADVANCE TECHNOLOGIES INC. ("PRISM") | |
| 121.  Lopez is a 50% shareholder of Prism. | See ¶ 1 of the Declaration of Francis Lopez in Opposition to Motion for Relief from Stay, Southern District of California U.S. Bankruptcy Court Case No. 03-07777-INV7, Docket Item 45.  **Lopez UF 121.** |
| 122.  Alan Stanly is a 50% shareholder, officer and director of Prism. | Stanly Decl. at ¶ 2.  **Lopez UF 122.** |
| TEXACO RECEIVED BOTH PRE-PETITION PREFERENCES AND VOIDABLE POST-PETITION TRANSFERS | |
| 123.  Lopez has produced any and all documents evidencing any and all payments he made to Texaco/Shell (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 10-11; Lopez Depo. Exhibit 1.  *Note:* See Objection to Oppo Decl ¶ 26 above. |
| 124.  On April 4, 2005, Lopez transferred $40.00 to Texaco on account of the pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, Compass Bank ["CB"] 0030.  *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |

107449/LSK/5311.01

| | |
|---|---|
| 125. On May 9, 2005, Lopez transferred $20.00 to Texaco on account of the pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, CB 0034. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |
| 126. As of June 30, 2005, Lopez was indebted to Texaco/Shell Oil in the amount of $350.20. | Lopez Depo. Exhibit 17 at page 2; Lopez Depo. Exhibit 23 at page 1; Lopez Depo. page 146, lines 2-23; page 147, lines 14-17. **Lopez UF 126.** |
| 127. Texaco accepted payment on accounts from Lopez after June 30, 2005. | Lopez Depo. page 173, line 24 - page 174, line 5. **Lopez UF 127.** |
| 128. On or about August 9, 2005, Lopez paid $50.99 on account of the pre-petition obligation. | Lopez Depo. page 147, lines 18-23; Lopez Depo. Exhibit 23 at page 2. **Lopez UF 128.** |
| 129. On September 26, 2005, Lopez made a payment to Texaco/Shell Oil in the amount of $10 on account of the pre-petition obligation. | Lopez Depo. Exhibit 14 at page 4. **Lopez UF 129.** |
| 130. On October 24, 2005, Lopez made a payment to Texaco/Shell in the amount of 25.00 on account of the pre-petition obligation. | Lopez Depo. Exhibit 14 at pages 4-5. **Lopez UF 130.** |
| 131. The post-petition payments were made from the Compass Bank Checking account. | Lopez Depo. page 148, lines 4-6. *Note:* See Objection to Oppo Decl Exhibit 7 and 12 above. The same objection applies to Exhibit 11. |
| **VALLEY FORGE LIFE INSURANCE IS NOT A CREDITOR BECAUSE LOPEZ NEVER OWED IT ANY MONEY (AND NEITHER DID HIS WIFE, MADELEINE) AS OF JUNE 30, 2005** | |
| 132. Lopez has asserted that as of June 30, 2005, he is indebted to the Valley Forge Life Insurance company in the amount of "$0.00($486.00 per year)". | Lopez Depo. Exhibit 17 at page 3. **Lopez UF 132.** |
| 133. Lopez has produced any and all documents evidencing any and all payments he made to Valley Forge Life Insurance (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 14, lines 2-3; Lopez Depo. Exhibit 1. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 134.  However, Lopez is not the account debtor for that obligation. | Lopez Depo. page 195, line 22 - page 197, line 8; see also Lopez Depo. Exhibit 16. *Note:* Oppo Decl ¶ 23 must be stricken because it is not the best evidence of the terms of insurance policy that it references. It also expresses impermissible lay opinion as to the nature of legal obligations created by the policy document (aggravated by the absence of the facts (e.g. policy provisions) upon which the opinion is predicated). |
| 135.  Madeleine Lopez — the alleged debtor's spouse — not Lopez himself, is the account debtor obligated to pay the Valley Forge Life Insurance obligation. | LSK Decl. ¶ 13, Exhibit L, pages 2-3. *Note:* See objection to Oppo Decl ¶ 23 above. |
| 136.  Madeleine Lopez, the account debtor with respect to the Valley Forge Life Insurance Obligation, pays that obligation through Noveon Systems, Inc. (a corporation in which she is the sole owner/shareholder) of which she is the sole authorized signatory on its bank accounts, and signs all of its checks upon reviewing the same. | LSK Decl. ¶ 13, Exhibit L, page 3 and LSK Decl. ¶ 14, Exhibit M [Madeleine Lopez Depo. Transcript ("Excerpts")], page 36, lines 10-24; page 39, lines 10-17; page 41, lines 20-23; page 53, line 2 - page 54, line 4; and page 54, line 23 - page 55, line 6. **Lopez UF 136.** |
| 137.  There was no amount due to Valley Forge Life Insurance Company on June 30, 2006, because that annual premium had been paid at or shortly after February 5, 2005. | Lopez Depo. Exhibit 34 (annual renewal premium due February 5, 2005); Lopez Depo. page 198, line 24 - page 199, line 18.  *Note:* See Objection to Oppo Decl ¶ 23 above. |
| **THE VERIZON CLAIM WAS DISPUTED AS OF JUNE 30, 2005, BUT SUBSEQUENTLY PAID BY A VOIDABLE POST-PETITION TRANSFER** | |
| 138.  Lopez has produced any and all documents evidencing any and all payments he made to Verizon Wireless (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12 lines 1-8; page 13, lines 14-15; Lopez Depo. Exhibit 1.  *Note:* See Objection to Oppo Decl ¶ 26 above. |
| 139.  On or about April 21, 2005, Verizon Wireless forwarded to Lopez an invoice for charges totaling $262.47. | Lopez Depo. Exhibit 24 (the "4/21/05 invoice").  **Lopez UF 139.** |
| 140.  Lopez disputed the validity and amount of the 4/21/05 invoice to the extent that it exceeded $35. | Lopez Depo. page 151, line 5 - page 152, line 21.  *Note:* Oppo Decl ¶ 24 admits the existence of the dispute (and does not contend that it was resolved before June 30, 2005). |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9005

| | |
|---|---|
| 141. As of June 30, 2005, the disputed portion of the Verizon obligation – in excess of $200 – had not been paid; however the disputed obligation was ultimately paid by Lopez on August 3, 2005. | Lopez Depo. page 153, line 17 - page 154, line 19; Lopez Depo. Exhibit 15 at page 3. **Oppo Decl ¶ 24.** |
| **WAYNE WISE RECEIVED A PRE-PETITION PREFERENCE** | |
| 142. Lopez has produced any and all documents evidencing any and all payments he made to Wayne Wise (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, line 35 - page 14, line 1; Lopez Depo. Exhibit 1. **Lopez UF 142.** |
| 143. Lopez obligation to Wayne M. Wise is memorialized by a promissory note dated June 16, 2004. | Lopez Depo. page 133, line 11-16; Lopez Depo. Exhibit 19. **Lopez UF 143.** |
| 144. The obligation owed by Lopez to Wayne Wise is unsecured. | Lopez Depo. page 110, line 21 - page 113, line 10. |
| 145. On May 17, 2005, Lopez paid Wayne Wise the sum of $900 for the interest that had accrued under the June 16, 2004, promissory note. | Lopez Depo. page 113, line 17 - page 115, line 22. *Note:* See Objection to Oppo Exhibit 12 above. |
| 146. Other than the payment of $900 interest paid on May 17, 2005, no other payments have been made on the promissory note to Wayne M. Wise. | Lopez Depo. page 201, lines 20-23. **Lopez UF 146.** |
| 147. That payment was not made in accordance with the terms of the promissory note (i.e. it was less than the full amount due). | Lopez Depo. Exhibit 19. *Note:* Oppo Decl ¶ 25 must be stricken because it violates the Parole evidence Rule; and because it is not the best evidence of the oral agreement supposedly made by Wise. |
| **UNION BANK OF CALIFORNIA RECEIVED BOTH PRE-PETITION PREFERENCES AND AVOIDABLE POST-PETITION TRANSFERS** | |
| 148. Lopez has produced any and all documents evidencing any and all payments he made to Union Bank of California (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 18-19; Lopez Depo. Exhibit 1. *Note:* See Objection to Oppo Decl ¶ 26 above. |
| 149. In April, May, and June of 2005, Lopez paid $1,000 per month to Union Bank on account of its compromise/settlement agreement. | Lopez Depo. page 204, line 3. **Lopez UF 149.** |
| 150. On April 13, 2005, Lopez transferred $500.00 to Union Bank of California on account of the pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, CB 0168. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 151.  On April 13, 2005, Lopez made a second $500.00 transfer to Union Bank on account of the pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, CB 0169. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |
| 152.  On May 18, 2005, Lopez transferred $1,000.00 to Union Bank of California on account of his pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, CB 0180. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |
| 153.  As of June 30, 2005, Lopez was indebted to Union Bank in an amount at least equal to $4,000. | Lopez Depo. Exhibit 17 at page 2. **Lopez UF 153.** |
| 154.  That obligation reflected a settlement compromise agreement with Union Bank. | Lopez Depo. page 202, lines 1-16. **Lopez UF 154.** |
| 155.  Since June of 2005, Union Bank has received monthly payments that have completely satisfied Lopez's compromise/settlement obligation, and all payments were made from the Compass Bank account. | Lopez Depo. page 204, line 10 - page 207, line 2; Lopez Depo. Exhibit 6, page 3 (check no. 1683); Lopez Depo. Exhibit 6, page 4 (check no. 1676); Lopez Depo. Exhibit 7, page 1 (check no. 1620). **Lopez UF 155.** |
| 156.  On July 8, 2005, Union Bank received a payment from Lopez in the amount of one thousand dollars on account of the debt owed to that entity and referred to on the debtor's "list of creditors." | Lopez Depo. page 83, line 1 - page 85, line 6; Lopez Depo. Exhibit 7, page 1 (check no. 1620, $1,000 dated 6/30/05 and cleared on 7/8/05); and LSK Decl. ¶ 15, Exhibit N, CB 0186. **Lopez UF 156.** |
| 157.  On August 8, 2005, Lopez transferred $1,000 to Union Bank of California on account of his pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, CB 0191. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |
| 158.  On September 8, 2005, Union Bank of California received a payment in the amount of $1,000 from Lopez on account of the obligation reflected in the "list of creditors." | Lopez Depo. page 83, line 19 - page 85, line 6; Lopez Depo. Exhibit 6, page 4, column 1, row 2 (check no. 1676); and LSK Decl. ¶ 15, Exhibit N, CB 0199. **Lopez UF 158.** |
| 159.  On October 6, 2005, Union Bank of California received a payment in the amount of $1,000 from Lopez. | Lopez Depo. page 83, line 19 - page 85, line 6; Lopez Depo. Exhibit 6, page 3 (check no. 1683); and LSK Decl. ¶ 15, Exhibit N, CB 0206. **Lopez UF  159.** |
| 160.  On or about October 31, 2005, Lopez transferred $1,000.00 to Union Bank of California on account of his pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, CB 0210. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |
| 161.  On November 7, 2005, Union Bank received a payment from Lopez in the amount of one thousand dollars on account of the obligation owed to it as a creditor identified on the debtor's "list of creditors." | Lopez Depo. page 83, line 1 - page 85, line 6; Lopez Depo. Exhibit 7, page 3 (check no. 1688 for $1,000). **Lopez UF 161.** |

107449/LSK/5311.01

| | |
|---|---|
| 162.  On December 12, 2005, Union Bank received a payment from Lopez in the amount of one thousand dollars on account of the obligation owed to it as a creditor identified on the debtor's "list of creditors." | Lopez Depo. page 83, line 1 - page 85, line 6; Lopez Depo. Exhibit 7, page 2 (check no. 1692 for $1,000); and LSK Decl. ¶ 15, Exhibit N, CB 0213.  **Lopez UF 162.** |
| 163.  On January 11, 2006, Lopez transferred $1,000.00 to Union Bank of California on account of his pre-petition debt. | LSK Decl. ¶ 15, Exhibit N, CB 0216. *Note:* See Objection to Oppo Decl ¶ 27 and 28 above. |
| **LOPEZ HAS PREVIOUSLY TESTIFIED THAT HE HAD NO MORE THAN SEVEN CREDITORS** | |
| 164.  In May of 2005, Lopez was indebted to his father Frederick in the amount of approximately $20,000. | Lopez Exam at page 21 lines 2 to 11. |
| 165.  In May, 2005, Lopez was indebted to his brother Mike in the amount of approximately $17,000. | Lopez Exam at page 22 lines 6 to 13. |
| 166.  In May, 2005, Lopez estimated his total credit card debt to be approximately $60,000.  In May of 2005, the only creditors that Lopez could think of were his Mastercard from CitiBank, his Fleet credit card, maybe the Amex card, his father and his brother (a total of five). | Lopez Exam at page 22 lines 18 to 21 (reference page 19 line 17 through page 22 line 21). |
| 167.  On further examination, Lopez was able to recall an additional loan in the amount of $15,000 he took from his friend, Wayne Wise. | Lopez Exam at page 28 lines 11 to 22. |
| 168.  As of May 9, 2005, that debt was still outstanding. | Lopez Exam at page 28 lines 21 to 22. |
| 169.  On further examination, Lopez admits there might be a medical debt owed to the Fort Walton Beach Medical Center (that would bring the total creditors list to seven). | Lopez Exam at page 58 lines 19 to 23. |
| 170.  He also indicates that there are "a couple of others that I can't recall the names of them". | Lopez Exam at page 59 lines 3 to 5. |
| **LOPEZ HAS NO SECURED DEBT** | |
| 171.  The original purchase money obligation secured by the Lopez residence at 310 Sand Myrtle Trail, Destin, Florida, had been previously paid off. | Lopez Depo at page 103 lines 12 to 21 and page 104 lines 7-12. |

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

107449/LSK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| | |
|---|---|
| 172.  Mrs. Lopez is the only borrower on the obligation secured by the current first mortgage against the Lopez residence. | Lopez Depo at page 104 lines 7-12 and page 104 line 17 to page 105 line 15; page 108 lines 16-24. |
| 173.  Mrs. Lopez is the only borrower on the obligation secured by the current second mortgage against the Lopez residence. | Lopez Depo at page 116 line 7 to page 117 line 8. |
| 174.  Lopez is not responsible for the purchase money debt obligation on the 2005 Chevy Suburban. | Lopez Exam at page 42 lines 7 to 15. |
| 175.  There is no outstanding debt associated with the 1997 Ford. | Lopez Exam at page 42 lines 16 to 17. |
| **THERE IS SIGNIFICANT EVIDENCE TO SHOW THAT LOPEZ IS NOT GENERALLY PAYING HIS DEBTS AS THEY COME DUE** | |
| 176.  Lopez himself admits that he does not always pay his debts as they come due. | Declaration of Francis Lopez submitted in support of his Motion for Summary Judgment ("Lopez SJM Decl") at page 14 lines 24-25. |
| 177.  Lopez himself admits that he is deliberately not paying the judgment against him held by Stanly. | Lopez SJM Decl at page 14 lines 26-27. |

Dated:  June 21, 2006              **ROBBINS & KEEHN**
                                   A Professional Corporation


                        By:    //s// L. Scott Keehn
                               L. Scott Keehn
                               Attorneys for **Petitioning Creditors**

107449/LSK/5311.01