# DOCKET NUMBER 84

1  M. Jonathan Hayes (Bar No. 90388)
   **Law Office of M. Jonathan Hayes**
2  21800 Oxnard St, Suite 840
   Woodland Hills, CA 91367
3  Telephone: (818) 710-3656
   Facsimile: (818) 710-3659
4  jhayes@polarisnet.net

5  Attorneys for Alleged Debtor Francis Lopez

6

7

8               UNITED STATES BANKRUPTCY COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10                    SAN DIEGO DIVISION

11

12  In Re:                              ) CASE NO. 05-05926-PBINV
                                        )
13      FRANCIS J. LOPEZ,               ) Involuntary Chapter 7
                                        )
14      Alleged Debtor                  )
                                        ) **RESPONSE OF ALLEGED DEBTOR**
15                                      ) **TO SUGGESTION OF MOOTNESS**
                                        ) **FILED BY PETITIONING CREDITOR**
16                                      ) **ALAN STANLEY; DECLARATIONS**
                                        ) **OF M. JONATHAN HAYES AND**
17                                      ) **FRANCIS J. LOPEZ IN SUPPORT**
                                        ) **THEREOF**
18                                      )
19                                      )
                                        ) Date:  (No Hearing Scheduled)
20                                      ) Time:
                                        ) Ctrm:  4
21                                      )
                                        )
22                                      )

23      TO THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY

24  JUDGE, TO PETITIONING CREDITORS ALAN STANLY, NORTHWEST FLORIDA

25  DAILY NEWS:

26

27

28

FILED KD
06 JUL 28 PM 3:00
U.S. BANK CLERK
SO. DIST RUPTCY CT.
OF CALIF.

1

2    Alleged Debtor Francis J. Lopez ("Lopez") hereby responds to and disagrees with

3    the Suggestion of Mootness filed by Petitioning Creditor Alan Stanly ("Stanly") as

4    follows:

5

6    **A. <u>NORTHWEST FLORIDA DAILY NEWS IS NOT AND CANNOT BE A</u>**

7    **<u>PETITIONING CREDITOR</u>**

8        Even if Mr. Kipperman qualifies as a Petitioning Creditor, which he does not,

9    Northwest Florida Daily News does not qualify either as is proven and *established by*

10   *Stanly's evidence* in his Memorandum of Points and Authorities in Support of Petitioning

11   Creditor's Motion for Summary Judgment (Bifurcated Phase – 1).  On page 8 of that

12   pleading (a copy attached) Stanly states:

13       "M.  Northwest Florida Daily News.

14       (1) This creditor did not hold a claim against Lopez on June 30, 2005,

15          because on May 17, 2005, his subscription had been pre-paid for a 3-

16          month period. [UF 98]"

17

18       Undisputed fact No. 98 (copy attached) states:

19       "98.  Of the $97.39 payment to the Northwest Florida Daily News made on

20       May 17, 2005, approximately $55.39 was made on account of the past due

21       obligation, and the remaining $42.00 was an advance payment for the next

22       three months."

23

24       In his Opposition to the MSJ of Lopez, Stanly again stated on page 12 (copy

25   attached):

26       NORTHWEST FLORIDA DAILY NEWS        Non-Creditor (Pre-Paid)

27

28       Therefore, at most, there are still only two petitioning creditors.

LAW OFFICES
M. Jonathan Hayes

2

Response to Suggestion of Mootness

**B. KIPPERMAN IS NOT A CREDITOR OF LOPEZ AT ALL, OR AT MOST, IS A CONTINGENT DISPUTED CREDITOR AND THEREFORE CANNOT BE A PETITIONING CREDITOR**

Richard Kipperman was appointed Receiver of the assets of Prism Advanced Technologies, Inc. ("Prism"), by order of the Superior Court entered on April 22, 2003, pursuant to stipulation by Prism and its two shareholders. Mr. Kipperman took possession of Prism's assets under the wing of the state court and subsequently turned the assets over to the bankruptcy trustee when an Order for Relief was entered against Prism in or about September, 2003. A copy of Mr. Kipperman's Final Report submitted to the state court on or about December 16, 2003, is attached hereto.

Mr. Kipperman has submitted his billings to the bankruptcy court and obviously has a claim against the Prism estate. He has never, for the past three years, sent Mr. Lopez a bill, invoice, demand, or even a suggestion that Mr. Lopez may owe some of these fees personally.

At most, Mr. Kipperman's claim against the Alleged Debtor is contingent which by itself disqualifies his position as a petitioning creditor. In fact, Lopez was not even a party to the litigation at the time Kipperman was appointed. The suit was brought by Prism to remove Stanly from the Board of Directors.

Furthermore, the enforcement of the alleged claim against Mr. Lopez personally is probably barred by the statute of limitations which, by itself, makes the claim disputed as to liability. Mr. Lopez would obviously vigorously oppose attempt to collect these fees from him personally.

In summary, there is still only one petitioning creditor. The submission of an new petitioning creditor is simply additional evidence that Alan Stanly knows he does not have enough petitioning creditors and is desperately attempting to keep this action alive. This involuntary petition is preventing Mr. Lopez from selling his home which is greatly

1  harming Mr. Lopez and his family.

2

3

4                                    Respectfully submitted,

5                                    LAW OFFICES OF M. JONATHAN HAYES

6

7

8  Dated:   July 28, 2006        By:  _____

9                                    M. Jonathan Hayes, attorney for Francis J.
                                     Lopez.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF FRANCIS LOPEZ

I, Francis Lopez, declare and state as follows:

1. I am the alleged debtor in this involuntary proceeding. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2. I was mistaken about Northwest Florida Daily News being a creditor of mine on June 30, 2005.

3. Richard Kipperman was appointed Receiver of the assets of Prism Advanced Technologies, Inc. ("Prism"), by order of the Superior Court entered on April 22, 2003, pursuant to stipulation by Prism and its two shareholders. Mr. Kipperman took possession of Prism's assets and subsequently turned the assets over to the bankruptcy trustee when an Order for Relief was entered against Prism in or about September, 2003. A true and correct copy of Mr. Kipperman's Final Report submitted to the state court on or about December 16, 2003, is attached hereto.

4. Mr. Kipperman has never, for the past three years, sent me a bill, invoice, demand, notice, or even a suggestion that I may owe some of these fees personally. I would certainly very aggressively oppose any attempt by Kipperman to make me pay the fees. I was not even a party to the litigation at the time Kipperman was appointed. The suit was brought by Prism to remove Stanly from the Board of Directors.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 28th day of July, 2006 at Destin, Florida.

By: _____
Francis J. Lopez

LAW OFFICES
M. Jonathan Hayes

5

Response to Suggestion of Mootness

1
2
3    **DECLARATION OF M. JONATHAN HAYES**
4
5    I, M. Jonathan Hayes, declare and state as follows:

6        1.  I am an attorney, authorized to practice before this court.  I have personal

7    knowledge of the facts stated herein, and if called as a witness, I could and would testify

8    competently thereto.

9        2.  Attached hereto are true and correct copies of page 8 of Memorandum of Points

10   and Authorities in Support of Petitioning Creditor's Motion for Summary Judgment

11   (Bifurcated Phase – 1); of UF 98 of Stanly's Statement of Undisputed Facts; and, page 12

12   of his opposition to the MSJ of Lopez.

13

14       I declare under penalty of perjury that the foregoing is true and correct to the best of

15   my knowledge, information and belief.  Executed on this 2 8th day of July,  2006 at

16   Woodland Hills, California.

17
18
19
20   By: _____
         M. Jonathan Hayes
21
22
23
24
25
26
27
28

Response to Suggestion of Mootness

PROOF OF SERVICE

I, MJ Hayes, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 21800 Oxnard St., Suite 840, Woodland Hills, CA 91367. On July 28, 2006, I served the within documents:

**RESPONSE OF ALLEGED DEBTOR TO SUGGESTION OF MOOTNESS FILED BY PETITIONING CREDITOR ALAN STANLEY; DECLARATIONS OF M. JONATHAN HAYES AND FRANCIS J. LOPEZ IN SUPPORT THEREOF**

        by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

X      by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

..     by causing personal delivery by            of the document(s) listed above to the person(s) at the address(es) set forth below.

..     by transmitting via email

..     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

L. Scott Keehn
ROBBINS & KEEHN, APC
530 B Street, Suite 2400
San Diego, CA 92101
AND BY EMAIL

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 28, 2006, at Los Angeles, California.

_____
MJ Hayes

satisfied its pre-petition obligation at some point after June 30, 2005, but before April 27, 2006. [UF 79-81]

**J.    Ft. Walton Beach Medical Center.** This claim is subject to a bona fide dispute as to liability based upon factual misrepresentations made to Lopez in the process of his admission. [UF 82-84]

**K.    Household Bank.** This creditor received pre-petition payments on its antecedent obligations between April 1, 2005, and June 30, 2005, including, but necessarily limited to, payments made on May 16 and 17, 2005. [UF 85-90]

**L.    Kelly Plantation Owners Association.** At some time after June 30, 2005, but before December 12, 2005, the pre-petition obligation owed to this entity had been paid in full. [UF 91-95]

**M.    Northwest Florida Daily News.**

(1) This creditor did not hold a claim against Lopez on June 30, 2005, because on May 17, 2005, his subscription had been pre-paid for a 3-month period. [UF 98]

(2) This entity also received pre-petition payments on its antecedent debt which are avoidable preferences. [UF 96, 97, 99 & 100]

**N.    Okaloosa Gas District.**

(1) This entity received payments that are voidable as preferences including, but not necessarily limited to, those made on May 3, May 19 and June 19, 2005. [UF 101-104]

(2) This entity also received post-petition payments that fully satisfied its pre-petition claim. [UF 105-111]

**O.    Progressive Insurance.** This entity did not hold a claim against Lopez on June 30, 2005, because the premiums due for the policy in force had been previously paid. [UF 112-115]

**P.    Citibank/Quicken Platinum Card.**

(1) This entity received voidable preference payments on, but not necessarily only on, May 2 and June 27, 2005. [UF 116-118]

(2) This entity also received post-petition payments on account of its pre-petition obligations. [UF 119-120]

10/157/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2480 UNION BANK BUILDING, 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 TELECOPIER (619) 544-9021

| Creditors Listed in Lopez's Answer | Included in §303(b)(2) Count | Excluded Because |
|---|---|---|
| BANKCARD SERVICES (Credit Card) | NO | Disputed & §547 |
| CINGULAR WIRELESS (Mobile Phone) | NO | §547 or §549 |
| CITI CARDS (Credit Card) | NO | §547 |
| COASTAL COMMUNITY INSURANCE (Property Insurance) | NO | Non-Creditor (Post-Petition Debt) |
| COX COMMUNICATIONS (Television and Internet) | NO | §549 |
| FT. WALTON BEACH MEDICAL CENTER (Emergency Room/Medical Services) | NO | Disputed |
| HOUSEHOLD BANK / HSBC (Credit Card) | NO | §547 |
| KELLY PLANTATION OWNERS ASSOCIATION (Homeowners Association) | NO | §549 |
| NORTHWEST FLORIDA DAILY NEWS (Newspaper) | NO | Non-Creditor (Pre-Paid) & §547 |
| OKALOOSA GAS DISTRICT (Utilities) | NO | §547 & §549 |
| PROGRESSIVE INSURANCE (Auto Insurance) | NO | Non-Creditor (Post-Petition Debt) |
| QUICKEN PLATINUM CARD (Credit Card) | NO | §547 & §549 |
| STANLY, ALAN (Judgment Creditor) | NO | Insider |
| TEXACO/SHELL (Gasoline Credit card) | NO | §547 & §549 |
| UNION BANK OF CALIFORNIA (Settlement) | NO | §547 & §549 |
| VALLEY FORGE LIFE INSURANCE (Life Insurance) | NO | Non-Creditor |
| VERIZON WIRELESS (Mobile Phone) | NO | Disputed & §549 |

107398/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-0905

| KELLY PLANTATION OWNERS ASSOCIATION RECEIVED A VOIDABLE POST-PETITION TRANSFER | |
|---|---|
| 91. Lopez has produced any and all documents evidencing any and all payments he made to Kelly Plantation Owners Association (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; Lopez Depo. Exhibit 1. |
| 92. On June 30, 2005, Lopez was indebted to the Kelly Plantation Homeowners Association in the amount of $550 on account of home owner association dues. | Lopez Depo.. Exhibit 17, page 17-1; LSK Decl. ¶ 11, Exhibit J, pages 6-7. |
| 93. These association bills are generated quarterly, and Lopez has no control over the assessments made. | Lopez Depo. page 188, lines 1-22; page 189, lines 12-20. |
| 94. The obligation owed to Kelly Plantation Homeowners Association on June 30, 2005, has subsequently been paid by Lopez. | Lopez Depo. page 190, lines 2-22; Lopez Depo. Exhibit 32. |
| 95. At some point in time after June 30, 2005, but before December 12, 2005, that obligation had been paid in full. | LSK Decl. ¶ 11, Exhibit J, pages 5 & 7. |
| NORTHWEST FLORIDA DAILY NEWS WAS A CREDITOR ON JUNE 30, 2005, BECAUSE ITS SUBSCRIPTION HAD BEEN PRE-PAID [IT ALSO RECEIVED PRE-PETITION TRANSFERS] | |
| 96. Lopez has produced any and all documents evidencing any and all payments he made to Northwest Florida Daily News (identified as one of his creditors) during the time period of June 30, 2005 through April 27, 2006. | Lopez Depo. page 12, lines 1-8; page 13, lines 6-7; Lopez Depo. Exhibit 1. |
| 97. On May 17, 2005, Lopez paid the Northwest Florida Daily News the sum of $97.39. The payment included past due amounts plus an advance payment for the next three months. | Lopez Depo. page 85, line 21 to page 86 line 6; page 90 line 17-22; Lopez Depo. Exhibit 8 at page 4. |
| 98. Of the $97.39 payment to the Northwest Florida Daily News made May 17, 2005, approximately $55.39 was made on account of the past due obligation, and the remaining $42.00 was an advance payment for the next three months. | Lopez Depo. page 85, line 21 to page 86 line 6; page 90 line 17-22; and Exhibit 8, page 1 ("subscription options" in the upper right hand corner) [i.e. subscription rate for 16 weeks (~3 months) equals $42.00]. |
| 99. When completing his list of creditors, (Lopez Depo. exhibit 17) Lopez was only estimating an amount due to the Northwest Florida Daily News. | Lopez Depo. page 191, line 13 - page 192, line 8. |

- 13 -



1 | Richard M Kipperman
P.O. Box 3939
2 | La Mesa, California 91944-3939
8324 Allison Avenue
3 | La Mesa, California 91941

4 | (619) 668-4500

5 | Receiver

6

7

8 | SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9 | COUNTY OF SAN DIEGO NORTH COUNTY BRANCH

10 | PRISM AND PRISM ADVANCED
TECHNOLOGIES, INC.,
         ) Case No. GIN 028765
11 |          ) RECEIVER'S FINAL REPORT; INTERIM
          ) ACCOUNTING (JUNE 1, 2003
12 |        Plaintiffs,  ) THROUGH DECEMBER 1, 2003); FINAL
          ) ACCOUNTING; INTERIM FEE
13 | v.         ) REQUEST; AND, FINAL FEE REQUEST
          )
14 | ALAN STANLY,    )
          ) Date:   None
15 |        Defendant. ) Time:  None
          ) Dept:   4
16 |          )
          ) Judge:  JOEL M. PRESSMAN
17 |          )

18

19 |     I, Richard M Kipperman, the duly appointed, qualified, and acting Receiver herein

20 | ("Receiver"), make this Final Report, Interim and Final Accounting, and Interim and

21 | Final Fee Request as follows:

22 | <u>REPORT OF ADMINISTRATION</u>

23 |     The Receiver was appointed by an order of the Superior Court for the State of

24 | California, County of San Diego, dated April 22, 2003.  The Receiver was qualified to

25 | act as Receiver by executing the oath required by law.  The requirement to file a bond

26 | was waived.

27 |     The property that is the subject of this receivership consists of plaintiff's Business

28 | property, which includes, but is not limited to, plaintiff's inventory, fixtures, goods,

1 documents, patents, trademarks, software, copyrights, books, records, papers, and
2 accounts of the businesses (hereinafter "Subject Property").

3     The order appointing the Receiver directed the Receiver to take possession of,
4 and manage, the Subject Property, to collect income there from, to care for the Subject
5 Property, and to incur the expenses necessary for such care.

6     At the time of the Receiver's appointment, plaintiff had ceased business
7 operations at the Prism business premises located at 5962 Priestly Drive, Carlsbad, CA
8 and Prism employees were conducting Prism's business operations primarily out of their
9 homes. With the exception of certain furniture that was leased; a room of items that
10 plaintiff advised were plaintiff's property; and, certain personal property belonging to
11 defendant, the Prism business premises on Priestly Drive had been vacated. The
12 majority of plaintiff's business equipment had been placed in storage by Francis Lopez,
13 one of plaintiff's principals, prior to the appointment of the Receiver. The storage facility
14 employed by Lopez was People Movers Mayflower, 13790 Stowe Drive, Poway, CA
15 92064, and Lopez stored the equipment under the account name "Magill, Madi & Lopez,
16 Frances".

17     During the course of the receivership, some of Prism's business operations were
18 conducted from the Priestly Drive location while some of the Prism employees
19 continued to work out of their homes.

20     By the end of June 2003 it was becoming increasingly evident that the revenue
21 produced through plaintiff's business operations was not sufficient to meet plaintiff's
22 ongoing daily business expenses, much less, sufficient to meet past due obligations. As
23 a result of the declining revenue, the Receiver was required to terminate the
24 employment of plaintiff's three remaining employees, and the Receiver cease plaintiff's
25 business operations effective July 8, 2003.

26     Following the cessation of plaintiff's business operations, with a sale of the
27 business premises pending, and with the motion of the Receiver to sell the plaintiff's
28 assets to Alan Stanly pending before this court, the property/equipment of plaintiff that

1  was located at the business premises was moved out and stored with MAT Express,

2  San Diego with corporate offices located at 2719 Kurtz Street, Suite C, San Diego, CA

3  92110, on August 14, 2003. Alan Stanly arranged for the moving and storage of this

4  property/equipment.

5        In addition to performing the duties under the order appointing him, and during

6  the course of the receivership, the Receiver worked with the principals of plaintiff,

7  Francis Lopez and Alan Stanly, in an effort to arrange for an amicable resolution of the

8  differences and issues between the two. Various options were explored including the

9  sale of plaintiff's assets to either party. Only Alan Stanly expressed a concrete interest

10  in purchasing plaintiff's assets on negotiated terms, and eventually the Receiver brought

11  a motion with this Court to approve a sale of plaintiff's assets to Alan Stanly on the

12  negotiated terms. Notice of the motion was served on the parties to this receivership

13  and on plaintiff's creditors on August 9, 2003. The hearing date for the motion was

14  August 26, 2003. Those receiving notice were advised in the notice that oppositions

15  and/or responses to the motion were to be filed with the court and served on the

16  Receiver's attorney no later than August 19, 2003. With no oppositions and/or

17  responses having been filed by the August 19, 2003 bar date, the Receiver's motion to

18  sell plaintiff's assets to Alan Stanly was proceeding to the August 26 hearing date,

19  however, on August 22, 2003 certain creditors of plaintiff placed plaintiff into an

20  involuntary chapter 7 bankruptcy. With the filing of the involuntary bankruptcy, the

21  Receiver's motion did not go forward and the Receiver ceased all further activity in this

22  receivership. Meanwhile, Alan Stanly filed an abstention motion with the bankruptcy

23  court. The abstention motion was eventually denied, and the bankruptcy court has

24  retained jurisdiction of the involuntary bankruptcy.

25        With the retention of jurisdiction by the bankruptcy court, the Receiver turned

26  over all of plaintiff's property that was in the Receiver's possession to the chapter 7

27  bankruptcy trustee, with the exception of $508.48 that remains in the receivership

28  account controlled by the Receiver. The Receiver will turn over the $508.48 to the

1   chapter 7 trustee.  The Receiver is unclear as to whether or not the chapter 7

2   bankruptcy trustee has taken possession of plaintiff's property under the Magill/Lopez

3   account at People Movers Mayflower, and plaintiff's property at MAT Express.

4          With the bankruptcy court retaining jurisdiction of plaintiff's involuntary

5   bankruptcy, the Receiver is now filing this final report and final accounting.  The

6   requirement of a Receiver's bond was waived at the time of the appointment of the

7   Receiver, consequently, the Receiver was not required to, and did not obtain a

8   Receiver's bond for this receivership.

9          During the course of the receivership, the Receiver collected revenue, interest,

10  and money owing to plaintiff, in the amount of $72,127.15, made authorized and

11  approved disbursements in the amount of $65,747.09, and reversed one deposit, due to

12  the issuance of a stop payment notice thereon, in the amount of $5,871.58, resulting in

13  cash on hand with the Receiver on December 1, 2003 in the amount of $508.48.

14          RECEIVER'S INTERIM CASH ACCOUNTING 06/01/03 THROUGH 12/01/03

15  Beginning cash:

16  a.     Cash on hand as of 06/01/03                                      $    9,252.65
        (incl -$35.94 Bnk Charge 5/31/03 and +$2.60 Interest 5/31/03)

17

18  Revenues collected:

19  a.     A/R   Cross Freight Systems              $       372.77
    b.     A/R   Cross Freight Systems              $       745.54
    c.     A/R   Sankyu USA, Inc.                   $       175.00
20  d.     A/R   Con-Way Air Express                $    11,379.89
    e.     A/R   Cross Freight Systems              $       372.77
21  f.     A/R   Amerijet International             $     2,037.75
    g.     A/R   Amerijet International             $     8,380.00
22  h.           State Comp Insurance Fund          $       936.29
    i.     A/R   Curtain Air Freight                $     5,871.58
23  j.           Interest                           $         1.06

24  TOTAL REVENUES                                                        $   30,272.65

25  Disbursements:

26  a.     Operating Expenses                       $    31,404.19
    b.     Curtain Air Freight Stop Payment         $     5,871.58
27  c.     Verizon Wireless                         $     1,741.05

28  ///

---

4

1 | TOTAL DISBURSEMENTS | $ 39,016.82

2 | ENDING CASH BALANCE 12/01/03 | $   508.48

3 | Attached hereto as Exhibit "A" and incorporated herein by this reference, is a copy of

4 | the receiver's receipts and disbursements record for the period June 1, 2003 through

5 | December 1, 2003.

6 | <u>RECEIVER'S FINAL CASH ACCOUNTING</u>

7 | <u>Beginning cash:</u>

8 | a.       Cash on hand as of 04/02/03 | $     0.00

9 | <u>Revenues collected:</u>

10 | a.    4/22-5/31/03  Now Express Cartage  $   1,195.00

11 |

12 | b.    4/22-5/31/03  Sunkyu USA             $      175.00
c.    4/22-5/31/03  Con-Way Air Express   $  11,379.89
d.    4/22-5/31/03  Alan Stanly           $  17,634.38
13 | e.    4/22-5/31/03  Interest              $        .24
f.    4/22-5/31/03  Now Express Cartage   $       87.50
14 | g.    4/22-5/31/03  Con-Way Air Express   $  11,379.89
h.    4/22-5/31/03   Interest pd 5/31/03  $        2.60
15 | i.    6/01-12/01/03  Cross Freight Systems $      372.77
j.    6/01-12/01/03  Cross Freight Systems $      745.54
16 | k.    6/01-12/01/03  Sankyu USA, Inc.     $      175.00
l.    6/01-12/01/03  Con-Way Air Express   $  11,379.89
17 | m.   6/01-12/01/03  Cross Freight Systems $      372.77
n.    6/01-12/01/03  Amerijet International $    2,037.75
18 | o.    6/01-12/01/03  Amerijet International $    8,380.00
p.    6/01-12/01/03  State Comp Ins Fund   $      936.29
19 | q.    6/01-12/01/03  Curtain Air Freight   $    5,871.58
r.    6/01-12/01/03  Interest pd 6/30/03   $        1.06
20 |

21 | TOTAL REVENUES | $ 72,127.15

22 | <u>Disbursements:</u>

23 | a.    4/22-5/31/03    Operating Expenses   $  32,555.91
b.    4/30/03          Bank Charges         $       10.00
24 | c.    5/31/03          Bank Charges         $       35.94
d.    6/01-12/01/03    Operating Expenses   $  31,404.19
25 | e.    6/01-12/01/03    Curtain Air Freight Sys $  5,871.58
(Adj re Stop Pmnt)
26 | f.    6/01-12/01/03    Verizon Wireless     $    1,741.05

27 | TOTAL DISBURSEMENTS | $ 71,618.67

28 | ENDING CASH BALANCE 12/01/03 | $   508.48

RECEIVER'S FINAL REPORT, INTERIM AND FINAL ACCOUNTING, AND INTERIM AND FINAL FEE REQUEST

1    <u>INTERIM FEES AND EXPENSES 06/01/03 THROUGH 12/05/03</u>

2        The Receiver seeks payment for services rendered by the Receiver and the

3    Receiver's staff for the period June 1, 2003 through December 5, 2003 in the amount of

4    $23,473.00 which is a reasonable and fair amount to be allowed as compensation for

5    the services rendered.  The Receiver seeks the reimbursement of expenses incurred for

6    the period June 1, 2003 through December 5, 2003 in the amount of $364.27, for a total

7    for fees and expenses for the period June 1, 2003 through December 5, 2003 in the

8    amount of $23,837.27.

9        Attached hereto as Exhibit "B", and incorporated herein by this reference, is a

10    detail of the services and fees of the Receiver and the Receiver's staff, and a detail of

11    the Receiver's expenses, for the period June 1, 2003 through December 5, 2003.

12    <u>SUMMARY OF RECEIVER'S FINAL FEES AND EXPENSES</u>

| Period | Fees | Costs Expenses | Period Totals For Fees and Costs/Expenses |
|---|---|---|---|
| 04/22/03 - 05/31/03 | $21,400.00 | $245.28 | $21,645.28 |
| 06/01/03 - 12/05/03 | 23,473.00 | 364.27 | 23,837.27 |
| | | Total : | $45,482.55 |
| | | Balance : | $45,482.55 |

21        No part of the $45,482.55 balance above has been paid to the Receiver and the

22    total amount of $45,482.55 is due and owing to the Receiver.

23        WHEREFORE, the Receiver requests as follows:

24        1.  The Receiver's final report, final accounting, and final fee request be

25    approved;

26        2.  The Receiver be allowed for the interim period June 1, 2003 through

27    December 5, 2003 the sum of $23,473.00 as compensation for the services of the

28    Receiver and the Receiver's staff, and the sum of $364.27 for expenses, for a total for

RECEIVER'S FINAL REPORT, INTERIM AND FINAL ACCOUNTING, AND INTERIM AND FINAL FEE REQUEST

1  fees and expenses for the interim period in the amount of $23,837.27;

2      3.  The Receiver be allowed for the entire receivership period, the sum of

3  $44,873.00 as compensation for the services of the Receiver and the Receiver's staff,

4  and the sum of $609.55 for expenses, for a total for fees and expenses for the entire

5  receivership period in the amount of $45,482.55;

6      4.  The Court find that any unpaid accounts payable, payroll, employee vacation

7  pay, employee expense reimbursement, payroll taxes, and property taxes or other taxes

8  of Prism, Prism Advanced Technologies, Inc., the receivership, or the receivership

9  estate, are not the responsibility of the Receiver;

10     5.  The Court find that the Receiver duly and fully complied with his obligations as

11  Receiver, and that no claims exist against the Receiver, whether known or unknown;

12     6.  The Receiver be discharged; and,

13     7.  The Receiver be directed to maintain all of his files relating to this receivership

14  for a period of four (4) years from the date of the order discharging the Receiver, and

15  that the Receiver be authorized to destroy such files after such date.

16

17  Dated:  16 Dec 03

18                                          Richard M Kipperman, Receiver

19

20

21

22

23

24

25

26

27

28

---

RECEIVER'S FINAL REPORT, INTERIM AND FINAL ACCOUNTING, AND INTERIM AND FINAL FEE REQUEST