# DOCKET NUMBER 86

# WRITTEN DECISION NOT FOR PUBLICATION

ENTERED 9/26/06
FILED SEP 26 2006
CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY /o-j DEPUTY

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re                                )   Case No. 05-05926-PBINV
                                     )
FRANCIS J. LOPEZ,                    )   ORDER ON MOTION FOR
                                     )   SUMMARY JUDGMENT
        Alleged Debtor.              )
_____)

On September 30, 2005, Alan Stanly commenced this case by filing an involuntary petition against alleged debtor, Francis Lopez. Northwest Florida Daily News later joined in the petition. Lopez challenged the petition on the ground that three petitioning creditors were necessary under Bankruptcy Code § 303(b)(1) because twelve or more entities held claims against him. On June 26, 2006, the Court held a hearing on the parties' cross-motions for summary judgment on the issue of the number of holders of claims against Lopez for the purposes of § 303(b). The Court requested additional briefing and took the matter under submission.

///

On July 20, 2006, before the Court ruled on the motions, Richard Kipperman, who asserts a claim against Lopez in the amount of $30,968.57, filed a joinder in the involuntary petition. On the same date Stanly filed a "Suggestion of Mootness" contending that the issue regarding whether there are a sufficient number of creditors to support an involuntary petition is now moot as a result of Mr. Kipperman's joinder, thereby raising to three the number of petitioning creditors and satisfying the requirements for the filing of an involuntary bankruptcy petition regardless of the number of creditors included in the "Section 303" count.

On the Court's direction Lopez filed a response to the Suggestion of Mootness. He contends that Mr. Kipperman (and Northwest Florida Daily News for that matter) does not qualify as a petitioning creditor.

**Number of Holders of Claims**

Bankruptcy Code Section 303(b) provides:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title-

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $12,300 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by

one or more of such holders that hold in the aggregate at least $12,300 of such claims;

On September 7, 2005, Lopez filed an answer to the petition alleging that he had more than 12 creditors, and thus there were an insufficient number of petitioners. On September 19, 2005, Lopez filed a declaration listing those creditors -- twenty-two in all.

Stanly, on the other hand, argues that many of the creditors asserted by Lopez do not qualify to be counted in the determination of whether there are 12 or more creditors for various reasons. Of the twenty-two alleged holders of claims, Stanly contends that:

-- seven did not hold a claim against Lopez as of the petition date;

- one (Alan Stanly) is an excluded "insider" of Lopez;

-- three are "disputed";

-- nine received postpetition transfers voidable under § 548; and

-- eleven received preferences voidable under § 547.

The Court has considered the arguments and evidence submitted by Stanly and Lopez regarding each of the alleged creditors and finds as follows with respect to each.

**Allstate Floridian:**

As to this creditor, Stanly contends that it did not hold a claim as of June 30, 2005 -- the date of the petition. Lopez counters that prepetition the premium amount was adjusted upward

- 3 -

1 so there was a balance owing of $134.  The Court finds that
2 according to the premium statement, which Lopez provided, an
3 additional amount was owing as of the petition date -- that is,
4 the covered period July, 2004 through July, 2005 was not
5 necessarily paid in full as Stanly suggests.  The Court finds
6 that this creditor should be counted.

7 **American Express:**
8     Stanly initially contended that American Express did not
9 hold a claim as of the petition date.  However, in his reply
10 Stanly concedes that this creditor should be counted.

11 **American Home Shield:**
12     Again, Stanly contends that this creditor did not hold a
13 claim as of the petition date.  In his opposition Lopez argued
14 that as of the petition date he was indebted to this creditor in
15 the amount of $128.  However, Lopez provides no evidence of such
16 and does not even mention this creditor in his declaration.  It
17 appears from Exhibit E to the Declaration of L. Scott Keehn in
18 support of Petitioning Creditors' Motion for Summary Judgment
19 (Keehn Dec.) that this creditor's policy was paid up through
20 7/16/05.  Since Lopez has provided no evidence to the contrary,
21 the Court finds that this creditor should not be counted.

22 **B of A:**
23     Stanly contends that this creditor should not be counted
24 because it received preferential payments which are voidable
25 under § 547 and postpetition payments voidable under § 548.
26 Lopez admits that minimum payments were made on this account, but

- 4 -

1 argues that they were made in the ordinary course of business.
2     While the "ordinary course" defense might apply to the
3 alleged preferences, there is no comparable defense to the
4 admitted postpetition transfers.  It is clear Lopez made
5 postpetition payments to this creditor.  While they are
6 authorized under § 303(f), they are nevertheless voidable.  See
7 § 549(a)(2).  Section 549(b) provides that in an involuntary case
8 such a transfer may not be avoided to the extent value is given
9 in exchange.  However, Lopez has provided no evidence of any such
10 value being received.  Thus, the Court finds that this creditor
11 should not be counted.

**Bankcard Services:**

13     Stanly contends that this claim is subject to a bona fide
14 dispute as to the late fees.  Stanly also argues that this
15 creditor should not be counted because it received preferential
16 payments which are voidable under § 547.
17     Lopez has provided evidence that the issue over late fees
18 had been resolved. Lopez also argues that the payments were made
19 in ordinary course in order to keep the account current.
20     The Court finds that Stanly has failed to establish that
21 there is a bona fide dispute.  In the deposition transcript of
22 Lopez (175:18-177-13), upon which Stanly relies, Lopez merely
23 says that he probably does not agree that the $39 late fee should
24 have been charged and that it was probably resolved on another
25 statement.  The Court does not find that this establishes that
26 the claim is subject to a bona fide dispute.

1    Stanly argues that Lopez failed to provide evidence of his
2 payment practices with respect to this creditor or creditor's
3 requirements.  However, the Court is comfortable accepting
4 Lopez's assertion that this credit card company requires minimum
5 monthly payments in the ordinary course.  Stanly has provided no
6 evidence that Lopez made unusual payments to this creditor.  The
7 Court finds that this creditor should be counted.
8 **Cingular Wireless:**
9    Stanly contends that this creditor should not be counted
10 because it received preferential payments which are voidable
11 under § 547 and postpetition payments voidable under § 548.
12 Lopez admits that payments were made on this account, but argues
13 that they were made in the ordinary course of business and to
14 maintain service.  Lopez also contends that most of the payments
15 were made by Noveon - his employer.
16    As with B of A, discussed above, while the "ordinary course"
17 defense might apply to the alleged preferences, there is no
18 comparable defense to the admitted postpetition transfers.  It is
19 clear Lopez made postpetition payments to this creditor.  While
20 they are authorized under § 303(f), they are nevertheless
21 voidable.  See § 549(a)(2).  Section 549(b) provides that in an
22 involuntary case such transfer may not be avoided to the extent
23 value is given in exchange.  However, Lopez has provided no
24 evidence of any such value being received.  Further, the evidence
25 indicates that Lopez owed a prepetition balance and that the
26 entire bill was paid postpetition.  Thus, to the extent any

1 postpetition value was given by Cingular, the amount of the
2 payments would have exceeded this value and thus some portion
3 would be recoverable -- the exception under § 549(b) is only "to
4 the extent any value ... is given." Finally, Lopez provides no
5 evidence that any of the payments were made by his employer.

      Thus, the Court finds that this creditor should not be counted.

**Citicards:**

      Stanly contends that this creditor should not be counted because it received preferential payments which are voidable under § 547. Lopez admits that payments of $379/month were made, but argues that they were made in the ordinary course to keep the account current per an agreement with Citicards. The payments were direct debits from his checking account.

      Unlike that discussed in connection with Bankcard Services above, this does not appear to be a typical minimum payment situation where the minimum amount due changes based upon the prior month's activity. Rather, this appears to be an arrangement Lopez reached with this creditor to repay an overextended account. Lopez contends that he paid $379/month. However, Stanly's undisputed evidence indicates that Lopez made two payments each month. Again, Lopez has failed to establish that this is a typical ordinary course arrangement. The Court finds that this creditor should not be counted.

///
///

**Coastal Community Insurance:**

Stanly contends that this creditor did not hold a claim as of the petition date -- that it was paid by Lopez's lender. Lopez argues in his brief that the policy had been renewed as of June 30, 2005 so payments would continue to come due. However, Lopez's declaration is silent as to this alleged creditor. Based upon Lopez's deposition testimony (see Depo. Trans. at 119-25) it does not appear that any amount was owing as of the petition date. The premium for coverage through July, 2005 had been paid. The statement Lopez relied upon in the deposition was for coverage beginning after the petition was filed. See Depo. Trans. at Ex. 20. The Court finds that this creditor should not be counted.

**Cox Communications:**

Stanly contends that this creditor received postpetition payments in full satisfaction of its obligation. Lopez contends in his brief that payments on this account were made in the ordinary course of business and to maintain service and that most of the payments were made by Noveon -- Lopez's employer. However, Lopez's declaration does not provide any evidence whatsoever with regard to this creditor including of his payment practices with respect to this creditor or payment by his employer. All Lopez does is attach the statement.

It seems clear Lopez made postpetition payments to this creditor as authorized under § 303(f). Under § 549(a)(2) these payments would be voidable. Lopez argues that he received value

in exchange, but has provided no evidence thereof. Further, the evidence indicates that Lopez owed a prepetition balance (the monthly statement is as of 7/22/05) and that the entire bill was paid postpetition. Thus, to the extent any postpetition value was given by Cox, the amount of the payments would have exceeded this value and thus some portion would be recoverable. Lopez also provides no evidence that payments were made by his employer. The Court finds that this creditor should not be counted.

**Ft. Walton Medical Center:**

Stanly argues that this claim is subject to a bona fide dispute as to liability. Lopez denies that there is a dispute. Rather, he explains, he initially thought the services would be covered by insurance (because the doctor told him they would), but subsequently accepted that they were not because he did not get prior approval.

The Court finds that Stanly has failed to establish that there is a bona fide dispute with regard to this claim. Stanly characterizes Lopez's deposition testimony as admitting that he thought the claim was in dispute. The Court does not agree. All Lopez said at his deposition is that he was sore that the doctor told him the claim would be covered by insurance and he later learned that it was not. He uses the term "dispute" but never actually claims he was not liable on the claim. See Depo. Trans. at 182:5-185:4. The Court finds that this creditor should be counted.

**Household Bank:**

Stanly contends that this creditor should not be counted because it received preferential payments voidable under § 547. Lopez contends that the payments were made for debts incurred in ordinary course and that they were made to keep the account current per an agreement with Household Bank.

Like the payment made to Citicards, these do not appear to be a typical minimum payment situation where the minimum amount due changes based upon the prior month's activity. Rather, Lopez made sporadic payments of differing amounts less than the minimum monthly amount. Lopez has not provided evidence that these payments were made in the ordinary course. The Court finds that this creditor should not be counted.

**Kelly Plantation Owners Assoc.**

Stanly argues that this creditor should not be counted since it received postpetition payments in full satisfaction of its claim. Lopez contends that these are homeowners association fees owing on his residence and that they were incurred and paid in the ordinary course. He also contends that they are frequently paid from his wife's checking account.

As noted above, there is no ordinary course defense to postpetition payments recoverable under § 549. Lopez made postpetition payments to this creditor as authorized under § 303(f). Under § 549(a)(2) these payments are voidable. Lopez provided neither argument nor evidence that he received value in exchange for the payments. Even if he did receive value (common

1  ground maintenance or security for example), the evidence
2  indicates that Lopez owed a prepetition balance and that the
3  entire bill was paid postpetition.  Thus, to the extent any
4  postpetition value was given the amount of the payments would
5  have exceeded this value and thus some portion would be
6  recoverable.  The Court finds that this creditor should not be
7  counted.
8  **M. Northwest Florida Daily News**
9       In his declaration Lopez admits that this prepetition claim
10 was paid postpetition.  The Court therefor finds that this
11 creditor should not be counted.
12 **Okaloosa Gas District:**
13      Lopez admits that he made postpetition payments to this
14 creditor, but that they were made to maintain utility service to
15 his residence.  The exhibit provided by Stanly indicates that the
16 payments were less than $50.00/month.  The Court finds that
17 continued utility service constitutes value received in exchange
18 for such payments.  Accordingly, the Court finds that this
19 creditor should be counted.
20 **Progressive Insurance:**
21      Stanly contends that this creditor did not hold a claim as
22 of the petition date - that the premiums for the period had been
23 paid prepetition.  Lopez has provided no evidence to establish
24 the existence of any claim owing to this alleged creditor.  The
25 Court finds that this creditor should not be counted.
26 ///

**Citibank/Quicken Platinum Card:**

Lopez admits that he made postpetition payments to this creditor and provides no evidence that value was received in exchange. Accordingly, the Court finds that this creditor should not be counted.

**Alan Stanley:**

Stanly contends that he, Stanly, cannot be counted because he is an "insider" as he and Lopez each own 50% of Prism. The analysis is a bit convoluted, but Stanly appears to be correct.

The definition of "insider" includes an "affiliate." § 101(31)(E). An "affiliate" includes a corporation owned more than 20% by the debtor. § 101(2)(B). Thus, Prism is an "affiliate" and "insider" of Lopez. Section 101(31)(E) also provides that an "insider of an affiliate" of the debtor is also an insider of the debtor. Stanly, as owner of more than 20% of Prism, is an insider of Prism under § 101(2)(B), and thus an insider of Lopez under § 101(31)(B) because he is an insider of an affiliate of Lopez.

So, Stanly is a "holder of a claim against" Lopez and thus qualifies to be a petitioning creditor under § 301(b)(1). However, for the purposes of determining the number of creditors, he is excluded as an insider under § 301(b)(2). The Court finds that this creditor is not to be counted.

**Texaco/Shell:**

Lopez admits that he made postpetition payments to this creditor and provides no evidence that value was received in

1  exchange.  The Court finds that this creditor should not be
2  counted.
3  **Union Bank:**
4      Again Lopez admits making postpetition payments to this
5  creditor, and provides no evidence that value was received in
6  exchange.  The Court finds that this creditor should not be
7  counted.
8  **Valley Forge Life Insurance:**
9      Stanly contends that this creditor did not hold a claim as
10 of the petition date because the premiums for the period had been
11 paid.  Also, Lopez is not the account debtor, but rather Madeline
12 Lopez.  See Keehn Dec at Exhibit L.  Lopez argues that this is a
13 life insurance policy which requires yearly payments.  However,
14 he provides no evidence that he, as opposed to Madeline, is the
15 debtor on this account.  Accordingly, the Court holds that this
16 claim should not be counted.
17 **Verizon Wireless:**
18     Stanly contends that this claim was subject to a bona fide
19 dispute as of the petition date.  It appears from Lopez's
20 testimony at his deposition that Verizon asserted a claim for
21 $262.47, while Lopez disputed any amount over $35.00.  Lopez
22 eventually paid the disputed portion, but not until August 21,
23 2005 - nearly two months after the petition was filed.  In his
24 deposition Lopez explained that he disputed the claim, but that
25 at some point he just got tired of fighting and paid it.  He does
26 not say that it was resolved prior to him simply paying the

disputed amount. See Depo. Trans. at 151-54. Thus, it appears that as of the petition date, this claim was subject to a bona fide dispute and should not be counted.

Alternatively, Lopez admits that this creditor was paid postpetition and provides no evidence of value received in exchange. Accordingly, it should not be counted because it could be voided under § 549. Either way this claim should not be counted.

**Wayne Wise:**

Stanly alleges that this creditor received a preferential payment of $900 on April 17, 2005 for interest which had accrued on a note. Lopez argues that the payment was made in exchange for Wise's agreement to extend the maturity date of the note until Lopez could sell his residence.

The Court finds that the extension which Lopez received in exchange for the payment is akin to an agreement to forebear an action against the debtor which, although valid consideration for a contract, cannot constitute "new value," within meaning of the new value exception to trustee's preference-avoidance power. See, <u>In re McLean Industries, Inc.</u>, 162 B.R. 410 (S.D.N.Y. 1993) (reversed on other grounds 30 F.3d 385). Thus, this creditor should not be counted.

**Summary and Conclusion**

Based upon the foregoing analysis, the Court finds that of the twenty-two creditors alleged by Lopez, seventeen must be excluded from the count in § 301(b)(2) for one or more of

- 14 -

the reasons set out in § 301(b). This leaves only five holders of claims against Lopez that qualify to be counted under § 301(b)(2). Since this is clearly "fewer than 12," the petition was properly filed by one claim holder - Stanly.[1]

The Court does not reach the issue of whether Richard Kipperman (and/or Northwest Florida Daily News) is a proper petitioning creditor (which Lopez disputes), as only one petitioning creditor is required given the Court's ruling.

For the reasons set forth above, the Court grants Stanly's motion for summary judgment and denies Lopez's motion for summary judgment on the issue of the number of holders of claims against Lopez for the purposes of § 303(b).

IT IS SO ORDERED.

DATED: SEP 26 2006

PETER W. BOWIE, Chief Judge
United States Bankruptcy Court

---

[1] In his opposition to the motion for summary judgment, Lopez alleges another, previously undisclosed creditor - Curd, Galindo & Smith, LLP. Even if this creditor were included, the number would still be insufficient to require more than one petitioning creditor.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re Case No. 05-05926-PBINV

**CERTIFICATE OF MAILING**

The undersigned, a regularly appointed and qualified clerk in the office of the United States Bankruptcy Court for the Southern District of California, at San Diego, hereby certifies that a true copy of the attached document, to wit:

was enclosed in a sealed envelope bearing the lawful frank of the Bankruptcy Judges and mailed to each of the parties at their respective address listed below:

Attorney for Alleged Debtor:

M. Jonathan Hayes, Esq.
21800 Oxnard Street, Ste. 840
Woodland Hills, CA 91367

Attorney for Petitioning Creditor Alan Stanly:

L. Scott Keehn, Esq.
530 B Street, Suite 2400
San Diego, CA 92101

Said envelope(s) containing such document were deposited by me in a regular United States mail box in the City of San Diego, in said district on September 26, 2006.

*Barbara J. Kelly*
Barbara J. Kelly, Judicial Assistant