# DOCKET NUMBER 114-2

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11 In Re:                        ) Case No.  05-05926-PBINV
                                 )
12     FRANCIS J. LOPEZ,         ) Involuntary Chapter 7
                                 )
13          Alleged Debtor.      ) **DECLARATION OF L. SCOTT KEEHN RE:**
                                 ) **MOTION FOR AN ENFORCEMENT**
14                               ) **ORDER IMPOSING MONETARY**
                                 ) **SANCTIONS AGAINST THE DEBTOR**
15                               )
                                 ) **[BIFURCATED PHASE II]**
16                               )
                                 ) Date:  November 19, 2007
17                               ) Time:  2:00 p.m.
                                 ) Judge: The Honorable Peter W. Bowie
18                               ) Ctrm:  4
                                 )
19                               )
                                 )
20                               )
                                 )
21 _____)

22     I, L. Scott Keehn, declare:

23     1.    I am an attorney at law, duly licenced to practice before all courts of this State, and

24 before the United States District Court for the Southern District of California.  I am a shareholder

25 of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

26 personal knowledge of the factual matters stated herein.

27     2.    The "Declaration of L. Scott Keehn in Support of Petitioning Creditors' Motion for

28 an Enforcement Order: (1) Imposing Monetary Sanctions Against the Debtor; and (2) Imposing

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1    Evidentiary Sanctions Against the Debtor" was filed herein by my office on May 24, 2007, and is

2    incorporated herein by this reference.[1]  In that Declaration, I summarized the delay and *bad faith*

3    discovery tactics employed by Lopez during the 6-month period of December 3, 2006 through

4    May 23, 2007.

5            3.        On March 12, 2007, the Court ordered Lopez to provide supplemental discovery

6    responses on or before April 11, 2007.  The Court — in open session — indicated that it was

7    deferring its ruling on the request for monetary sanctions of $4,442 because: (a) it wanted the risk

8    of those sanctions to serve as a *Sword of Damocles* to encourage compliance with the Court's

9    order; and (b) Lopez would have to "work his way out of those sanctions."  Unfortunately, Lopez

10   is apparently unimpressed with either this Court's order or the threat of sanctions.

11           4.        On June 25, 2007, the Court conducted its hearing on Petitioning Creditors' request

12   for monetary and evidentiary sanctions based on Lopez's dilatory tactics up to that time.[2]  The

13   Court deferred again the imposition of previously requested monetary sanctions ($4,442.00), but

14   ordered the imposition of evidentiary sanctions precluding Lopez's use of any documents which he

15   had not yet produced.[3]

16           5.        On the courthouse steps following the June 25, 2007 hearing, I conferred with

17   Lopez's attorney Jonathan Hayes regarding Petitioning Creditors' request to take Lopez's

18   deposition.  At that time, I stated that I would like to calendar the deposition before July 31, 2007

19   because I would be out of my office for virtually the entire month of August.  Mr. Hayes and I

20   agreed that either July 20 or July 27 would work on our calendars, and Mr. Hayes indicated that

21   he would inquire as to Lopez's availability on those dates.

22           6.        Three days later, on June 28, 2007, Mr. Hayes transmitted to me the following

23   email message: *"I have spoken to my client about the deposition dates we discussed, July 20 or 27.*

24   *He is checking his calendar.  I will let you know **shortly.**"* (Emphasis added.)

25   _____

26           [1]        See Exhibit 1, Docket Item 105 (attachment #2).

27           [2]        See Exhibit 2, Docket Item 110 [Transcript of the June 25, 2007 hearing ("6/25/07
     Transcript")].

28           [3]        See Exhibit 2, 6/25/07 Transcript at p. 17.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111886/LFK/5311.01

7. Twenty-two days later — in the early evening of July 20, 2007 — Mr. Hayes transmitted an email suggesting, for the first time, July 31, 2007, as an available date for the deposition.

8. Given that July 31, 2007 would be my last day in the office before a 30-day vacation, I knew I would be fully consumed with matters necessary to be completed in preparation for that absence. Because of that, and because of the fact that I had received absolutely no communication from Mr. Hayes' office following the June 28, 2007 email, my office issued and mailed to Mr. Hayes a notice of Lopez's deposition for Tuesday, September 11, 2007, at 9:00 a.m. in our office.

9. On July 31, 2007, there was a further Status Conference in the case. I reported to the Court the events summarized in paragraphs 5-8 above, including the fact that we had noticed Mr. Lopez's deposition for September 11, 2007. Mr. Hayes stated in open court that he would communicate that information to Mr. Lopez, and let me know if there was any problem with that date. That was the last I heard from Mr. Hayes until September 10, 2007.

10. In the afternoon of September 10, 2007 — less than 24 hours before the deposition was scheduled to begin — Lopez's attorney sent me a brief email stating that Lopez was "*unable to make travel arrangements for the deposition tomorrow*." The email suggested October 8, 2007 or October 22, 2007 as possible dates for the deposition. Lopez's deposition is currently scheduled for October 22, 2007 at 9:30 a.m. based on Mr. Hayes' representation that it was an acceptable date and time.

11. As stated in open court on June 25, 2007,[4] once Lopez's deposition is conducted, Petitioning Creditors intend to prepare and file their summary judgment motion to establish that Lopez was in fact not paying his debts as they came due as of the date of the involuntary petition.

12. Lopez's past misconduct in this case mirrors his extensive misconduct in other litigation involving Lopez and Petitioning Creditor Alan Stanly in other San Diego courts, as detailed in the Declaration of Timothy P. Dillon filed herein on September 27, 2007 and

---

[4]     See Exhibit 2, 6/25/07 Transcript at p. 18.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1   incorporated herein by this reference.[5]  Considering Lopez's pervasive custom and practice of

2   refusing to perform his duties as a litigant unless and until he is [forensically] bludgeoned into

3   submission by the court, it appears clear that monetary sanctions should now be imposed.

4   Without a significant sanctions order, I do not believe that Lopez will ever voluntarily appear for,

5   and participate in good faith at, his deposition in this case.

6          13.      My office spent a total of 13.6 hours preparing this second motion for sanctions to

7   redress Lopez's discovery abuses.  Specifically, attorney Leslie F. Keehn spent 12.6 hours

8   working on this motion, at her standard hourly rate of $225.00.  I worked 1.0 hour, at my standard

9   hourly rate of $320.00.  Petitioning Creditors will be billed a total of $3,155.00 for this motion.

10         14.      I have reviewed the applicable time and billing records generated by my office.

11  True and correct copies of those records are attached hereto as Exhibit 4,[6] and are summarized as

12  follows: (a) $2,164.50 for 7.7 hours (attorney and paralegal time) spent preparing the necessary

13  documents and questions for Lopez's deposition; (b) $224.00 for 0.7 hours of my time to confer

14  with attorney Hayes regarding Lopez's last minute failure to appear; and (c) $6,590.00 for 25.7

15  hours of total attorney time (including my time and Leslie F. Keehn's time) reviewing the

16  requisite evidence, and drafting the declarations in support of Petitioning Creditors' renewed

17  motion for the monetary sanctions originally requested on May 24, 2007.

18         15.      With this motion, Petitioning Creditors are seeking monetary sanctions in the total

19  amount of **$12,133.50** to fully reimburse them for the fees they have actually incurred as described

20  in Paragraphs 13 and 14 above.

21        I declare under penalty of perjury under the laws of the United States that the foregoing is

22  true and correct, and that this Declaration was executed this 19th day of October, 2007, at San

23  Diego, California.

24                       /s/ L. Scott Keehn
                         L. Scott Keehn

25

26

27       [5]     See Exhibit 3, Docket Item 111 (attachment #1).

28       [6]     The non-applicable entries in the billing records contained in Exhibit 4 have been
    redacted.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111886/LFK/5311.01

# EXHIBIT 1

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8  **UNITED STATES BANKRUPTCY COURT**

9  **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                                    ) Case No. 05-05926-PBINV
                                              )
12       FRANCIS J. LOPEZ,                    ) Involuntary Chapter 7
                                              )
13              Alleged Debtor.               ) **DECLARATION OF L. SCOTT KEEHN IN**
                                              ) **SUPPORT OF PETITIONING**
14                                            ) **CREDITORS' MOTION FOR AN**
                                              ) **ENFORCEMENT ORDER: (1) IMPOSING**
15                                            ) **MONETARY SANCTIONS AGAINST THE**
                                              ) **DEBTOR; AND (2) IMPOSING**
16                                            ) **EVIDENTIARY SANCTIONS AGAINST**
                                              ) **THE DEBTOR**
17                                            )
                                              ) **[BIFURCATED PHASE II]**
18                                            )
                                              ) Date:   June 25, 2007
19                                            ) Time:   10:30 a.m.
                                              ) Judge: The Honorable Peter W. Bowie
20                                            ) Ctrm:  4
                                              )
21  ─────────────────────────────────────────)

22       I, L. Scott Keehn, declare:

23       1.     I am an attorney at law, duly licenced to practice before all courts of this State, and

24  before the United States District Court for the Southern District of California.  I am a shareholder

25  of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

26  personal knowledge of the factual matters stated herein.

27       2.     On November 03, 2006, my office served Lopez with Petitioning Creditors' First

28  Set of Written Discovery for Phase II (the "Phase II Written Discovery"), consisting of: (1) First

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1   Phase II Requests for Admission Propounded by Petitioning Creditors [10 Requests]; (2) First

2   Phase II Request for Production of Documents by Petitioning Creditors [162 categories of

3   documents]; and (3) First Phase II Interrogatories Propounded by Petitioning Creditors [35

4   Interrogatories].  True and correct copies of the Phase II Written Discovery are attached hereto,

5   marked Exhibits A, B and C respectively.  Lopez's responses were due on December 4, 2006.

6        3.     On December 03, 2006, Lopez served his "Response to Requests for Admission

7   Propounded to Alleged Debtor Francis J. Lopez (Phase II)."  **Lopez's responses were deficient,**

8   **and Lopez failed to verify the responses.**

9        4.     On December 05, 2006, Lopez served his "Response to Interrogatories Propounded

10   to Alleged Debtor Francis J. Lopez (Phase II).  **Lopez's responses were deficient, and Lopez**

11   **failed to verify the responses.**  At the same time, Lopez served his "Response to Requests for

12   Production of Documents."  **Lopez's responses were deficient.**

13        5.     On December 13, 2006, I sent a *meet and confer* letter to Lopez's attorney, M.

14   Jonathan Hayes, notifying him of the deficiencies in Lopez's responses to the Phase II Written

15   Discovery.

16        6.     On December 15, 2006, attorney Hayes and I participated in a telephonic *meet and*

17   *confer* conference wherein the parties agreed that Lopez would provide supplemental responses to

18   the Phase II Written Discovery on or before January 12, 2007.

19        7.     On January 12, 2007 – the Deadline for Lopez to provide the promised

20   supplemental responses to the Phase II Written Discovery – **Lopez failed, without explanation,**

21   **to provide supplemental responses to the Phase II Written Discovery.**

22        8.     On January 19, 2007, I sent a follow-up *meet and confer* letter to attorney Hayes

23   requesting an explanation regarding Lopez's failure to provide the promised supplemental

24   responses to discovery, and notifying Lopez of the imminent likelihood of a motion to compel his

25   responses to the Phase II Written Discovery.  **Lopez failed, without explanation, to respond to**

26   **that** *meet and confer* **letter.**

27        9.     On January 29, 2007, Petitioning Creditors filed a Motion to Compel responses to

28   the Phase II Written Discovery.  **Lopez failed, without explanation, to respond or file an**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

110315/LFK/5311.01

1   **Opposition to that Motion.**

2        10.     On March 10, 2007 – a Saturday, just two days prior to the scheduled hearing on

3 Petitioning Creditors' Motion to Compel Lopez's responses to the Phase II Written Discovery –

4 attorney Hayes emailed me approximately 155 pages of documents, purportedly in response to the

5 "First Phase II Request for Production of Documents by Petitioning Creditors." **This last-minute**

6 **"*document dump*" was improper because the documents: (1) were not responsive to the**

7 **Requests, (2) were not organized by category of Request, and (3) consisted of at least 103**

8 **pages of pleadings filed in the San Diego Superior Court which are already in the Petitioning**

9 **Creditors' possession. Lopez failed, without explanation, to explain the deficiencies and/or**

10 **his failure to provide the agreed-upon supplemental responses.**

11        11.     On March 12, 2007, I appeared at the hearing during which this Court granted

12 Petitioning Creditors' motion to compel Lopez to provide supplemental responses to the Phase II

13 Written Discovery.[1] The Court ordered Lopez to provide the supplemental responses on or before

14 April 11, 2007. The Court — in open session — indicated that it was deferring its ruling on the

15 request for monetary sanctions of $4,242 because: (a) it wanted the risk of those sanctions to serve

16 as a *Sword of Damocles* to encourage compliance with the Court's order; and (b) Lopez would

17 have to "work his way out of those sanctions."

18        12.     On April 10, 2007, Lopez mailed my office a set of supplemental responses to the

19 Phase II Written Discovery which were patently deficient in that, i.e., they failed to fully respond

20 to the Interrogatories asked, failed to provide facts in support of asserted denials to the Requests

21 for Admissions, and failed to produce responsive documents. True and correct copies of Lopez's

22 supplemental responses are attached hereto marked Exhibits D, E and F.

23        13.     On May 11, 2007, the parties, through their counsel, attended a status conference

24 wherein this Court ordered Lopez to file proper supplemental responses to the Phase II Written

25 Discovery on or before May 21, 2007. Later that afternoon, I met with attorney Hayes at my office

26 regarding the deficiencies in Lopez's supplemental responses to the Phase II Written Discovery.

27

28

---

[1]      See, Docket Item #93.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

110315/LFK/5311.01

1    Attorney Hayes requested that I set forth the deficiencies in a *meet and confer* letter to him.

2        14.    As requested, on May 14, 2007, I sent a *meet and confer* letter via email and first

3    class United States mail to attorney Hayes which enumerated each and every deficiency in Lopez's

4    supplemental responses to the Phase II Written Discovery. A true and correct copy of that letter is

5    attached hereto, marked Exhibit G.

6        15.    After the close of business, at 7:10 P.M., on May 21, 2007 – the deadline for Lopez

7    to supplement his supplemental responses to the Phase II Written Discovery – attorney Hayes

8    emailed me a request for two additional days for Lopez to supplement his responses to the Phase II

9    Written Discovery. The next morning, on May 22, 2007, I responded to attorney Hayes' email by

10   indicating that I would grant the requested two-day extension of time, in exchange for a stipulation

11   providing Petitioning Creditors with an equivalent two-business-day extension of time – from May

12   25, 2007 to May 30, 2007 – to file any necessary discovery motion. A true and correct copy of that

13   email correspondence is attached hereto, marked Exhibit H.

14       16.    On May 23, 2007, attorney Hayes sent me an email wherein he withdrew Lopez's

15   request for an extension of time, and notified me that Lopez would not be providing any additional

16   responses to the Phase II Written Discovery. A true and correct copy of that email correspondence

17   is attached hereto, marked Exhibit I.

18       I declare under penalty of perjury under the laws of the United States that the foregoing is

19   true and correct, and that this Declaration was executed this 24th day of May, 2007, at San Diego,

20   California.

21                                    /s/ L. Scott Keehn
22                                    L. Scott Keehn

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

110315/LFK/5311.01

# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING


|  |  |
|---|---|
| | ) |
| | ) |
| FRANCIS J. LOPEZ | ) CASE NO. 05-05926-PB |
| | ) |
| | ) |
| _____ | ) |


1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT
ORDER: A )IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR;
AND, B) IMPOSING EVIDENTIARY SANCTIONS AGAINST THE
DEBTOR.


REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, JUNE 25, 2007


SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, JUNE 25, 2007 , 10:00 A.M.

--- O O O ---

THE CLERK:    IN THE MATTER OF FRANCIS J. LOPEZ.  TWO

MATTERS: CONTINUED STATUS CONFERENCE ON INVOLUNTARY

PETITION AND ANSWER; AND, PETITIONING CREDITORS' MOTION

FOR AN ENFORCEMENT ORDER (1) IMPOSING MONETARY SANCTIONS

AGAINST THE DEBTOR; AND, (2) IMPOSING EVIDENTIARY

SANCTIONS AGAINST THE DEBTOR.

APPEARANCES, PLEASE.

MR. KEEHN:    GOOD MORNING, YOUR HONOR.

SCOTT KEEHN APPEARING ON BEHALF OF THE PETITIONING

CREDITORS.

MR. HAYES:    GOOD MORNING, YOUR HONOR.

JOHN HAYES APPEARING FOR THE DEBTOR -- ALLEGED DEBTOR.

MR. KEEHN:    YOUR HONOR, THIS PARTICULAR ODYSSEY BEGAN

BEFORE THANKSGIVING, IF YOU CAN BELIEVE THAT, BACK ON

NOVEMBER 3RD.

THE COURT:    THAT'S NOTHING AT ALL COMPARED TO ADAMS.

     MR. KEEHN:    YOU KNOW, I WAS HOPING YOU WOULDN'T

JUST CONFINE YOURSELF TO THIS RECORD.  AND ALSO THE CASE

BEFORE, THERE WERE THIRTEEN MEET AND CONFER LETTERS; AND

WE DON'T MEET THAT RECORD, EITHER.

BUT THIS IS AN INVOLUNTARY PETITION.  AND WE WERE HOPING

TO MOVE IT ALONG WITH A LITTLE MORE ALACRITY THAN YOU MIGHT

EXPECT IN --

THE COURT:    SO YOU'RE SAYING IT REMAINS INVOLUNTARY?

MR. KEEHN:    OH, VERY INVOLUNTARY.

WHAT WE HAVE HERE IN RESPONSE TO OUR REQUEST FOR DISCOVERY

THAT WERE PROMULGATED NOW SEVEN MONTHS AGO; AT FIRST THERE
WAS NO RESPONSE AT ALL IN THE APPROPRIATE PERIOD.  ALL
OBJECTIONS WERE WAIVED.  AND WHEN WE MOVED FOR MOTION TO
COMPEL THE SANCTIONS.  COUNSEL COMES IN AND APOLOGIZES
FOR DEBTOR, BEMOANS THE FACT THAT WE'RE ASKING FOR A LOT
OF INFORMATION; AND AGREES TO THE COURT'S RULING THAT
SUPPLEMENTAL RESPONSES SHOULD BE PROVIDED NOT LATER THAN
THE 21ST OF MAY.

WELL, ON THE 21ST OF MAY -- AND, ACTUALLY NOTHING HAPPENED
BETWEEN THE TIME THE COURT MADE THAT -- GAVE THE DEBTOR
THAT SECOND CHANCE.  NOTHING HAPPENED BETWEEN THEN AND
MAY 21ST UNTIL SHORTLY AFTER SEVEN IN THE EVENING WHEN MR.
HAYES E-MAILED MY E-MAIL WITH A REQUEST FOR A DAY OR TWO
EXTENSION.

WELL, I DIDN'T HAVE ANY PROBLEM WITH A DAY OR TWO
EXTENSION, AS LONG AS I GET AN EQUAL EXTENSION AND TIME
TO REPLY.  AS SOON AS I SAW THE E-MAIL THE FOLLOWING
MORNING, I RELAYED THAT INFORMATION TO MR. HAYES.

IN RESPONSE TO THAT, I RECEIVED ANOTHER E-MAIL THAT SAID,
NO, WE'RE NOT GOING TO PROVIDE ANYTHING ELSE AND WE'RE
WITHDRAWING OUR REQUEST FOR EXTENSION.

SO ONCE AGAIN, WE HAVE THE TIME PERIOD PASSING AND, OF
COURSE, WE WERE PREJUDICED, NOT IN AN OVERWHELMING DEGREE,
BUT NOTICEABLY BY THE FACT THAT IN RESPONSE TO THE FIRST
E-MAIL WE HAD ANTICIPATED THAT WE WOULD NOT HAVE TO MEET
THE ORIGINAL DEADLINE FOR RESPONSE.

SO, UPON RECEIVING THE WITHDRAWAL E-MAIL, WE QUICKLY

REGROUPED AND DID OUR REPLY -- DID OUR MOTION, RATHER.  WE
HAD ONLY A FEW DAYS TO DO THAT, GIVEN THE SETTING OF THIS
PARTICULAR HEARING IN ORDER TO GIVE AN ADEQUATE TIME TO
RESPOND.  SO WE DID THAT.

AND WE HAVE WHAT HAS BECOME A FAMILIAR PATTERN.  WE HAVE,
WHAT PURPORTS TO BE RESPONSES GIVEN ON BEHALF OF MR. LOPEZ;
AND, IN FACT, THEY'RE NOT REALLY GOOD-FAITH RESPONSES AT
ALL.  THEY PROVIDE SOME PAPER, MOST OF WHICH WAS PLEADINGS
IN CASES THAT MR. LOPEZ HAD EVERY REASON TO KNOW THAT WE
ALREADY HAD AND SO WOULD BE COMPLETELY USELESS.

NOW, THIS PARTICULAR DISCOVERY DISPUTE CREATES A DYNAMIC
THAT'S DIFFERENT FROM MOST DISCOVERY DISPUTES, BECAUSE
MOST DISCOVERY DISPUTES ARISE IN TRADITIONAL LITIGATION.
AND TRADITIONAL LITIGATION IS ALWAYS LOOKING BACK AT AN
EVENT AND IS STATIC, IN TERMS OF WHERE THE LIABILITIES WILL
FALL.  BECAUSE THEY DEPEND ON WHAT HAPPENED BACK WHEN
WHATEVER INCIDENT OCCURRED, WHATEVER COURSE OF CONDUCT
OCCURRED THAT GAVE RISE TO THE TRADITIONAL LITIGATION.
SO YOU'RE ALWAYS LOOKING BACKWARDS AND YOU'RE NOT REALLY
CONCERNED ABOUT WHAT'S HAPPENING ON A GOING-FORWARD
BASIS.

THE DIFFERENT DYNAMIC THAT'S CREATED IN EVERY INVOLUNTARY
PETITION IS THE INVOLUNTARY GAP DYNAMIC.  BECAUSE, WHILE
DELAY IS ALWAYS PREJUDICIAL TO BRINGING A MATTER TO ITS
QUICK AND COST EFFECTIVE CONCLUSION, IT HAS AN AUXILIARY
PREJUDICE IN INVOLUNTARY CASES BECAUSE THE DEBTOR IS FREE
TO CREATE OBLIGATIONS THAT WILL BECOME INVOLUNTARY GAP

CLAIMS AND LEAPFROG AHEAD IN PRIORITY TO THE CLAIMS OF THE
CREDITORS THAT BROUGHT THE ACTION.

AND THAT PARTICULAR FORM OF PREJUDICE IS RENDERED ALL THE
MORE DISTURBING BECAUSE THERE'S NO WAY TO MONITOR IT, NO
WAY TO QUANTIFY IT.  MR. LOPEZ IS OUT THERE.  MAYBE HE'S
NOT CREATING INVOLUNTARY GAP CLAIMS AND PERHAPS HE IS.
BUT THE RISK IS THAT THE UTILITY OF THE REMEDY OF
INVOLUNTARY BANKRUPTCY AS A CREDITOR'S REMEDY IS SUBJECT
TO THIS FORM OF DILUTION, SIMPLY BECAUSE THE ALLEGED
DEBTOR REFUSES -- I WANT TO UNDERSCORE THAT -- REFUSES TO
COMPLY WITH THE DISCOVERY IN GOOD FAITH.

WE ARE TRYING TO NARROW THE ISSUES WITH THE EVIDENCE THAT'S
AVAILABLE SO THAT WE CAN PROCEED IN THE SECOND PHASE, AS
WE DID IN THE FIRST, TO PRESENT THE ISSUES TO THE COURT
IN A SUMMARY JUDGMENT FASHION, BECAUSE WE THINK THIS CASE
IS AMENABLE TO SUMMARY JUDGMENT.

AND MR. LOPEZ IS JUST VERY ADROITLY BLOCKING THAT WITH THIS
PASSIVE/AGGRESSIVE TACTIC OF HIS, WHERE HE DOESN'T REPLY
AT ALL UNTIL HIS BACK IS ABSOLUTELY TO THE WALL AND SOME
DRACONIAN CONSEQUENCE MIGHT BEFALL HIM.  AND THEN HE'LL
RESPOND, BUT HE WON'T REALLY RESPOND IN GOOD FAITH.  HE
GIVES YOU A PARITY OF GOOD-FAITH, THAT DOES NOT ADVANCE
THE PURPOSES OF DISCOVERY.

NOW, WE SHOULDN'T HAVE TO WAIT UNTIL HIS BACK IS AGAINST
THE WALL TO GET OUR RESPONSES.  WE'RE ENTITLED TO OUR
RESPONSES THIRTY DAYS AFTER THEY'RE SERVED, THIRTY-THREE
WHEN THEY'RE SERVED BY MAIL.

AND WE'RE LONG PAST THAT WITH THESE DISCOVERY REQUESTS
THAT WERE PROMULGATED BACK IN NOVEMBER.  AND AS THE
OBJECTION DISCLOSES, THE ALLEGED DEBTOR IS WELL AWARE THAT
WE'RE DOING, ONCE AGAIN, WHAT WE DID IN THE FIRST PHASE;
WE'RE USING THE WRITTEN DISCOVERY AS, TO SORT OF TEE UP
THE ISSUES FOR OUR, DEPOSITION EXAMINATION, WHICH IS THE
NORMAL WAY TO PROCEED.

SO BY HINDERING AND DELAYING THE DISCOVERY PROCESS IN THE
WRITTEN PHASE, HE NATURALLY DEFERS THE ORAL EXAMINATION,
WHICH IN TURN DEFERS, ONCE AGAIN, THE DAY OF RECKONING.
AND ALL THE WHILE HE'S FREE TO BE OUT THERE INCURRING
FURTHER GAP CLAIMS.

SO I THINK THAT WHAT WE'VE SUGGESTED IN OUR PAPERS IS THE
APPROPRIATE RESPONSE.  NUMBER ONE, THE DEFERRED MONETARY
SANCTIONS THAT THE COURT ORIGINALLY AWARDED OF $42
000 -- EXCUSE ME, I'M DREAMING -- $4,242. SHOULD BE
IMPOSED.

THE -- I DON'T THINK THAT THE RESULT THE COURT HAD HOPED
TO ACHIEVE BY DEFERRING IT HAS BEEN ACHIEVED.  I DON'T
THINK IT EVER WILL BE ACHIEVED.  I THINK THAT THIS IS JUST
MR. LOPEZ'S LITIGATION TACTIC; HALT, HINDER AND DELAY AND
MAYBE I'LL HAVE TO ANSWER SOMEDAY.

THE EVIDENTIARY SANCTIONS THAT WE'VE REQUESTED, I THINK,
ARE APPROPRIATE.  AND THEY WILL FACILITATE THE PURPOSE OF
DISCOVERY, BECAUSE THEY NARROW THE ISSUES FOR US, EVEN
WITHOUT THE COOPERATION OF THE ALLEGED DEBTOR.

SO WE WOULD REQUEST THAT THE EVIDENTIARY SANCTIONS BE

IMPOSED AS REQUESTED, AND THAT THE MONETARY SANCTION BE

AWARDED FORTHWITH, WITH A DATE CERTAIN ESTABLISHED AS TO

WHEN THAT SECTION SHOULD BE PAID.

THE COURT:    MR. HAYES.

MR. HAYES:    YOUR HONOR, THANK YOU.  I HAVE A COUPLE OF

COMMENTS.

THE FIRST ONE IS, I WANTED TO COMMENT ON THIS, THE REQUEST

I'VE MADE OF MR. KEEHN FOR ANOTHER ONE OR TWO DAYS.  I'VE

HAD -- MR. LOPEZ LIVES IN FLORIDA, AND I HAVE A HARD TIME

COMMUNICATING WITH HIM.  WE COMMUNICATE BY E-MAIL AND I

HAVE HIS CELL PHONE, AND INEVITABLY, I CATCH HIM WHEN HE'S

PICKING HIS KIDS UP OR HE'S IN A STORE OR SOMETHING AND

THERE'S THE THREE-HOUR TIME GAP.

ANYWAY, I SPOKE TO HIM VERY BRIEFLY A COUPLE OF TIMES.  I

SAID, LOOK, WE HAVE TO GET THEM MORE DOCUMENTS.

THERE'S -- MR. KEEHN SENT ME THIS LETTER, WHAT ARE WE GOING

TO DO?  WE DISCUSSED IT REAL QUICKLY.  AND FINALLY, THE

TIME CAME WHERE HE ABSOLUTELY HAD TO FILE A RESPONSE, AND

THAT'S WHEN I SENT THE E-MAIL TO MR. KEEHN SAYING, GIVE

ME ANOTHER DAY OR TWO.

THE FOLLOWING DAY I SPOKE TO MR. LOPEZ AT GREAT LENGTHS.

AND WE WENT THROUGH THE LETTER ONE BY ONE.  AND I MEAN,

THERE ISN'T ANYTHING ELSE WE CAN COME UP WITH.  THERE

ISN'T ANY OTHER DOCUMENTS EXCEPT THIS ISSUE WITH THE WIFE.

THERE ISN'T ANY DOCUMENTS THAT HAVEN'T BEEN TURNED OVER.

THERE ISN'T ANY, ANY MORE EXPLANATION OR, OR, MORE DETAILS

THAT WE COULD GIVE, OTHER THAN REALLY REPEAT INFORMATION

THAT'S ON VARIOUS -- OF THE MANY STATEMENTS THAT HAVE BEEN
TURNED OVER I BELIEVE MANY TIMES BY NOW.

BUT, ADDRESSING THE MOTION, THE MOTION HAS TWO PARTS.  ONE
IS GRANT THESE SANCTIONS, WHICH I, FRANKLY, BELIEVE HAS
ALWAYS BEEN THE GOAL.  AND THE SECOND IS THESE EVIDENTIARY
SANCTIONS.

AS FAR AS THE SANCTIONS, THE $4000. I JUST WANT TO SAY
AGAIN, I JUST DON'T THINK THERE'S ANY OTHER DOCUMENTS THAT
CAN BE TURNED OVER OTHER THAN MRS. LOPEZ'S DOCUMENTS,
THERE ARE NO OTHER DOCUMENTS THAT CAN BE TURNED OVER THAT
HAVEN'T ALREADY BEEN TURNED OVER.

I BROUGHT MR. LOPEZ'S FIRST DEPOSITION.  IT'S
240-SOMETHING PAGES.  THIS IS WELL MORE THAN A YEAR AGO.
THE REST OF THESE PAPERS ARE EXHIBITS.  EVERY STATEMENT
OF EVERY ONE OF HIS BILLS OF THE TWENTY OR SO CREDITORS
ARE ALL CONSUMER DEBTS.  THIS IS WELL MORE THAN A YEAR OLD.
MR. KEEHN HAS SENT OUT SEVERAL SUBPOENAS.  I'M ACTUALLY
NOT SURE WHAT HE'S GOTTEN FROM THOSE.  WE PROVIDED MORE
DOCUMENTS TWICE IN THIS GO AROUND.  IF MR. KEEHN REALLY
WANTED TO GET MOVING WITH THIS, JUST TAKE THE DEPOSITION
AGAIN.  HE'S BEEN TELLING ME HE'S GOING TO TAKE THIS
DEPOSITION.  HE SOMEHOW CAN'T BECAUSE HE
REALLY -- THERE'S SOME MAGICAL PIECE OF PAPER THAT I'M NOT
CLEAR ABOUT THAT HE HASN'T GOTTEN YET; AND THEREFORE, HE
CAN'T GO FORWARD.  THAT'S JUST RIDICULOUS.

WITH RESPECT TO THE DOCUMENTS IN MRS. LOPEZ'S POSSESSION,
I'VE ACTUALLY NEVER MET MRS. LOPEZ.  BUT I MEAN, MY WIFE

HAS A CHECKING ACCOUNT AND SHE CARRIES THE CHECKBOOK
AROUND IN HER PURSE.  AND I'D BE LOOKING FOR A DIVORCE
ATTORNEY IF I WENT INTO HER PURSE AND FOUND HER CHECKBOOK
AND STARTED SENDING OFF INFORMATION SOMEBODY HAPPENED TO
BE SUING ME.

THE COURT:    SO YOU'RE CONTENDING THIS IS ALL SEPARATE
PROPERTY, AND HE HAS NO INTEREST WHATSOEVER IN THE FUNDS
THAT SHE ADMINISTERS OR THE DEBT SHE'S INCURRED WHETHER
IT'S A LEHMAN BROTHERS, OR THE MORTGAGE ON THE HOUSE OR
ANY OF THOSE KINDS OF THINGS?

MR. HAYES:    I DON'T KNOW IF I'D GET INTO WHETHER IT'S
COMMUNITY PROPERTY OR NOT.  BUT IF THEY WANT, I MEAN, THEY
CAN GO AFTER HER.  THEY CAN SUBPOENA HER OR THEY CAN COME
IN WITH SOME SORT OF EVIDENCE OF WHY THEY HAVE THE RIGHT
TO MAKE MR. LOPEZ --

THE COURT:    SO WHAT'S YOUR THEORY, WHAT'S YOUR THEORY
ON WHY SHE DOESN'T HAVE TO PROVIDE AN ANSWER WITH RESPECT
TO WHAT SHE HAS OR HOLDS OR PAYS, PARTICULARLY, IF HE'S
GOT SOME OBLIGATION OR LIABILITY ON IT?

MR. HAYES.  THEY HAVEN'T ASKED HER.  THEY'RE ASKING HIM.

THE COURT:    NO.  THAT'S NOT MY QUESTION.  MY QUESTION
IS, WHAT'S YOUR THEORY FOR WHY HE DOESN'T HAVE TO ANSWER
THAT QUESTION?

MR. HAYES:    THAT'S HER RIGHT TO PRIVACY.

THE COURT:    SO IT'S HER RIGHT TO PRIVACY, BECAUSE IT'S
SOME SEPARATE INTEREST OF HERS OR WHAT?

WHERE DOES SHE HAVE A RIGHT TO PRIVACY ON SOMETHING THAT

YOU SAY YOU DON'T GET TO THE COMMUNITY PROPERTY QUESTION.
I MEAN, HE'S GOT A COMMUNITY PROPERTY INTEREST IN IT, IF
HE'S GOT A STATE STATUTORY RIGHT TO CO-MANAGEMENT OF
COMMUNITY ASSETS OR ANYTHING ELSE THAT I HAVE NO IDEA WHAT
FLORIDA LAW PROVIDES.

I'M ASKING YOU WHAT YOUR THEORY IS FOR WHY HE DOESN'T HAVE
TO ANSWER IT?

MR. HAYES:    WELL, FOR ONE THING, FLORIDA IS NOT
COMMUNITY PROPERTY.  AND I DON'T KNOW HOW FLORIDA LAW IS.
BUT WHAT I FOCUSED ON IS MR. LOPEZ, GO TO YOUR WIFE AND
GET THESE DOCUMENTS.

THE COURT:    NO, POSSESSION -- YOU KNOW, WHAT DOES HE
HAVE IN HIS POSSESSION OR CONTROL?  WHAT DOES HE HAVE?
HAS HE PRODUCED EVERYTHING THAT'S IN HIS POSSESSION OR
CONTROL WITH RESPECT TO THAT?

MR. HAYES:    OH, ABSOLUTELY.  BUT THAT'S --

THE COURT:    AND THAT'S INCLUDING AS TO HIS LIABILITY
WITH RESPECT TO IT?

MR. HAYES:    YES.  AS FAR AS I KNOW.  BUT THAT DOES
RAISE THE QUESTION OF DOES -- IS WHAT'S IN HIS WIFE'S PURSE
IN HIS POSSESSION OR CONTROL?  I MEAN, THAT'S WHAT HE'S
TELLING ME.  I CAN'T --

THE COURT:    NO.  YOUR ANSWER IS, HE HAS NO INTEREST OR
OBLIGATION IN THE LEHMAN BROTHERS OR THE MORTGAGE OR
WHATEVER IT IS, THEN WHY DON'T YOU AGREE TO THOSE
EVIDENTIARY SANCTIONS AS WELL?  YOU SAY HE'S TURNED OVER
EVERYTHING.

MR. HAYES:    WELL, EVERYTHING THAT'S IN HIS POSSESSION OR HIS CONTROL WITHOUT GETTING DIVORCED; YES.

THE COURT:    THEN THE ANSWER, IT SEEMS TO ME, IS THAT YOU AGREE TO THE EVIDENTIARY SANCTIONS, SAID THAT HE CANNOT PRODUCE ANYTHING HE HAS NOT ALREADY PRODUCED, COME TIME OF TRIAL WITH RESPECT TO THE ISSUE THAT WE'LL BE LITIGATING IN THIS PHASE 2 OF THIS ISSUE.

MR. HAYES:    I MIGHT DO THAT.  I HADN'T THOUGHT OF IT, MYSELF.

I WAS FOCUSING ON THE MOTION, WHICH BASICALLY ASKED YOU TO GRANT SUMMARY JUDGMENT TODAY.  BUT I WOULD AGREE WITH THE THEORY THAT THINGS -- HE SHOULDN'T BE ABLE TO COME IN WITH SOMETHING AFTER THIS, OR HE SHOULDN'T BE ABLE TO, "QUOTE," "UNQUOTE," FIND SOMETHING, YOU KNOW, TWO DAYS BEFORE TRIAL.

AND I DO BELIEVE EVERYTHING'S BEEN TURNED OVER.

THE COURT:    WELL, THAT'S WHAT MR. KEEHN IS -- I HAVE NO IDEA WHAT HIS STRATEGY IS, BUT THAT'S AT LEAST WHAT HE'S ASKING FOR IN THE CONTEXT OF THIS MOTION, BECAUSE HE WANTS TO BE ABLE TO CLOSE THE BOOK AND THEN GO TAKE YOUR CLIENT'S DEPO KNOWING THAT YOUR CLIENT IS NOW PRECLUDED FROM STEPPING UP AND SAYING OH, BUT HERE'S THIS, AND HERE'S THIS AND HERE'S THAT; AND NOT EVER HAVING HAD A CHANCE TO LOOK AT IT OR INDEPENDENTLY VALIDATE IT FROM THIRD PARTIES OR ANY OF THOSE KINDS OF THINGS.

YOU WOULDN'T WALK INTO A DEPO BLIND THAT WAY.  I'M CONFIDENT OF THAT.

MR. HAYES:    NO.  YOU KNOW, WHAT I WAS FOCUSING ON IS
THE MOTION SAYS ELIMINATE ALL EVIDENCE ENTIRELY REGARDING
EACH ONE OF THESE CATEGORIES; NOT JUST ELIMINATE -- NOT
JUST HAVE AN EVIDENTIARY SANCTION THAT WE CAN'T FIND,
"QUOTE," "UNQUOTE," FIND MORE DOCUMENTS.
I THINK I WOULD AGREE TO THAT.  WHATEVER DOCUMENTS HAVEN'T
BEEN TURNED OVER UP TO NOW, I WOULD AGREE TO THAT.
THE COURT:    OKAY.
MR. HAYES:    I'M NOT SURE I -- YOU KNOW, HE JUST FOUND
A JOB AND HE DOESN'T HAVE $4,400.  AND I DON'T KNOW WHAT
ELSE I CAN SAY.
YOU SAID, YOU'RE NOT SURE WHAT MR. KEEHN'S STRATEGY IS.
I MEAN, IF THEY REALLY WANTED THIS CASE TO BE FINISHED,
THEY WOULD HAVE TAKEN HIS DEPOSITION SIX OR EIGHT MONTHS
AGO.
THE COURT:    I WOULDN'T HAVE.  I WAS A LITIGATOR FOR A
BUNCH OF YEARS.  I'M NOT WALKING INTO A DEPOSITION WHEN
THERE'S A WHOLE BUNCH OF DOCUMENTS OUT THERE AND HAVE THEM
SURPRISE ME.
MR. HAYES:    WELL, I DON'T THINK THERE ARE.
THE COURT:    WELL --
MR. HAYES:    FOR MONTHS THERE HAVEN'T BEEN A WHOLE BUNCH
OF DOCUMENTS OUT THERE, BUT ALL RIGHT, I HAVE NOTHING
FURTHER.
THE COURT:    OKAY.  MR. KEEHN.
MR. KEEHN:    YES.  THANK YOU, YOUR HONOR.
IN ADDITION TO THE REASONS THAT YOU'VE ALLUDED TO AS TO

WHY YOU WOULDN'T TAKE THE DEPOSITION WITHOUT THE
DOCUMENTS, THERE WERE RESPONSES THAT MR. LOPEZ GAVE IN HIS
ORIGINAL DEPOSITION A YEAR AGO, NOW, THAT TO THE EFFECT
THAT, WELL THERE ARE MORE DOCUMENTS.  I JUST HAVE TO LOOK
AT THEM.  AND OBVIOUSLY THAT'S A DOOR WE NEED TO CLOSE.
IF WE GET THE EVIDENTIARY SANCTIONS, AS MR. HAYES
SUGGESTED, WE'VE CLOSED THE DOOR.

AND I, IN TERMS OF THE -- IF HE'S AGREEING TO THE SANCTIONS
THEN I DON'T NEED TO ADDRESS HOW HELLACIOUS THIS ARGUMENT
OF MARITAL STRESS IS CONCERNED.  I DID HAVE SOME DOCUMENTS
THAT WERE RECENTLY FILED IN THE DISTRICT COURT THAT BLOW
THAT OUT OF THE WATER.  BUT IF HE'S AGREEING TO IT, I WON'T
ADDRESS IT.

AS FAR AS THE MONETARY SANCTION IS CONCERNED, YOUR HONOR,
THIS -- WE TRIED TO CLOSE THE DOOR IN A PROCESS THAT BEGAN
SEVEN MONTHS AGO.  I SHOULDN'T BE HERE SEVEN MONTHS LATER
CLOSING IT ON A CAPITULATION TO A SECOND MOTION TO COMPEL
THAT I SHOULDN'T HAVE HAD TO FILE.

IF THERE REALLY ARE NO DOCUMENTS, THEN WHY IS THE RESPONSE,
WELL, THERE'S MORE THINGS I NEED TO CHECK AND I CAN'T BE
SURE.  IF THERE REALLY ARE NO DOCUMENTS, THEN WHY WAS THAT
ANSWER NOT GIVEN BACK IN MAY?  WHY WAS IT NOT GIVEN BACK
IN DECEMBER WHEN IT WOULD HAVE BEEN TIMELY?  THERE'S NO
EXPLANATION FOR THAT.

THIS IS EXACTLY THE KIND OF GAMESMANSHIP THAT RULE ONE OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE ABHORS.  THE
PURPOSE OF THE RULES, THEMSELVES, IS TO PROVIDE A

MECHANISM AND A FRAMEWORK FOR THE RAPID AND FAIR
RESOLUTION OF ISSUES.

NOW, ONE COMMENT, SORT OF, AT LEAST I INFERRED THE ARGUMENT
FROM THE FACT THAT WE HAVE TWO TO THREE INCHES OF PAPER
FROM THE ORIGINAL DEPOSITION.  AND WHY ARE WE STILL HERE
A YEAR LATER?

IN ADDITION TO NOT HAVING THE DOCUMENTS PRODUCED, WE ALSO
HAVE THE POINT THAT THIS CASE WAS BIFURCATED AT MR. LOPEZ'S
REQUEST.  THERE WERE MANY QUESTIONS THAT I COULD EASILY
HAVE ASKED THE FIRST GO AROUND THAT MIGHT HAVE OBVIATED
THE NEED FOR FURTHER DEPOSITION, OR AT LEAST REDUCED IT.
I COULDN'T BECAUSE OF THE CONSTRAINTS PLACED BY THE
BIFURCATION ORDER.  AND I TRIED TO ADHERE TO THAT ORDER.
SO I HAVE TO TAKE HIS DEPOSITION YET A SECOND TIME.

AND THEN ONE OF THE LAST REMARKS THAT COUNSEL MADE, I
THINK, UNDERSCORES THE NEED FOR THE SANCTIONS HAVING BEEN
IMPOSED BECAUSE IT HIGHLIGHTS THE GAMESMAN-LIKE APPROACH
THAT MR. LOPEZ HAS TAKEN.  AND THAT, THAT COMMENT WAS, HE
JUST GOT A JOB.

WELL, IF BY THAT HE'S REPRESENTING TO THE COURT THAT UP
UNTIL THIS TIME HE'S BEEN UNEMPLOYED, I THINK THAT
EXACERBATES THE CULPABILITY OF MR. LOPEZ IN NOT TIMELY
RESPONDING.  WHAT ELSE WAS HE DOING?  WAS HE REALLY
SPENDING FORTY HOURS A WEEK LOOKING FOR A JOB?

IF HE WAS UNEMPLOYED, CERTAINLY HE WOULD HAVE HAD MORE TIME
AVAILABLE TO TEND TO HIS DUTIES AS A LITIGANT THAN A
FULLY-EMPLOYED INDIVIDUAL WOULD.  AND EVEN A

FULLY-EMPLOYED INDIVIDUAL IS EXPECTED TO RESPOND AND
RESPOND TIMELY TO DISCOVERY OBLIGATIONS.

AS I SAID IN THE BEGINNING, WE DON'T KNOW TODAY, AND WE
WON'T KNOW UNTIL THAT ORDER FOR RELIEF IS ENTERED AND
SCHEDULES ARE FILED, IF THAT EVER HAPPENS.  HOW MUCH THIS
ESTATE AND THE GENERAL UNSECURED CREDITORS THAT BROUGHT
THIS POSITION HAVE BEEN PREJUDICED BY THIS DELAY AND THE
INCURRING OF GAP CLAIMS?

I THINK THAT MESSAGE THE COURT SENT THE FIRST TIME TO  MR.
LOPEZ WAS, I'LL GIVE YOU ANOTHER CHANCE.  I THINK THE
MESSAGE THAT THE COURT NEEDS TO SEND TO MR. LOPEZ NOW IS,
THIS ISN'T A GAME.  AND THERE AREN'T ANY MORE CHANCES.
AND YOU DIDN'T PLAY BY THE RULES, AND SO THE SHIELD THAT
I PUT IN FRONT OF YOU BEFORE, IS NOW DOWN.  AND THESE
SANCTIONS ARE DUE AND PAYABLE.

THE COURT:    WELL, IN MY VIEW, AT LEAST AT THIS POINT
IN TIME AND ON THE PRESENT STATE OF THE RECORD, THE
EVIDENTIARY SANCTIONS ARE WARRANTED, AND WILL BE ORDERED
IN THE FOLLOWING RESPECTS:

WITH RESPECT TO DEBTOR'S RESPONSE TO REQUEST FOR ADMISSION
NUMBER FIVE, THAT WILL BE, AND THE DEBTOR HAS AGREED, THAT
WILL BE AN UNQUALIFIED ADMISSION;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS FROM NOVION BETWEEN JANUARY 1 OF 2005 TO JULY 1
OF 2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED FROM JANUARY 1, 2005 TO JULY 1,

2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED BY HIS WIFE BETWEEN JANUARY 1,
2005 AND JULY 1 OF 2005.  AND I WILL ADD, AS TO THESE
PROHIBITIONS, THAT'S TO THE EXTENT NOT ALREADY DISCLOSED
TO THE MOVING CREDITORS, THE PETITIONING CREDITORS.  IF
IT'S BEEN DISCLOSED, THEN IT'S THERE.  THERE'S NO
PRECLUSION OF USE OF THAT INFORMATION IF IT'S BEEN
PREVIOUSLY PROVIDED TO THE PETITIONING CREDITORS, IN THE
CONTEXT OF THE DISCOVERY OF THIS CASE;

THE DEBTOR WILL BE PROHIBITED FROM PROVIDING ANY EVIDENCE
OF A DEBT IN FAVOR OF LEHMAN BROTHERS OR ANY PAYMENT TO
LEHMAN BROTHERS AS OF THE PETITION DATE EXCEPT TO THE
EXTENT AND SAME PROVISO, EXCEPT TO THE EXTENT ALREADY
DISCLOSED TO THE COUNSEL FOR PETITIONING CREDITORS;

AND, DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
DEBT IN FAVOR OF AMERICAN EXPRESS, BANK OF AMERICA, BANK
CARD, CINGULAR, CITI CARD, HOUSEHOLD BANK, NORTHWEST
FLORIDA DAILY NEWS, CITIBANK QUICKEN, TEXACO, VERIZON,
UNION BANK, OR MR. GORRILL OR ANY PAYMENT TO ANY OF THEM
AS OF THE PETITION DATE, EXCEPT TO THE EXTENT ALREADY
PROVIDED THE COUNSEL FOR PETITIONING CREDITORS IN THE
CONTEXT OF THE DISCOVERY IN THIS MATTER.

AS TO THE MONETARY SANCTIONS, I AM, AGAIN, GOING TO DEFER
AWARDING THOSE.  BUT THEY REMAIN THE SORT OF DAMOCLES OVER
MR. LOPEZ.  BECAUSE I DON'T KNOW THE ANSWER TO SOME OF
MR. KEEHN'S SPECULATION AS TO WHAT'S GOING ON.  MR. KEEHN

IS CONVINCED THAT THIS IS A GAME THAT MR. LOPEZ IS PLAYING.
I'M NOT YET CONVINCED OF THAT.

SO EVENTUALLY WE WILL GET TO THE ANSWER ONE WAY OR THE
OTHER.  AND ONCE I KNOW THE ANSWER, I'LL APPLY THEM, IF
I DEEM THAT'S APPROPRIATE AT THE TIME.  BUT THE
EVIDENTIARY SANCTIONS AT THIS POINT IN TIME ARE WARRANTED.
I'LL SIGN AN ORDER TO THAT EFFECT.

MR. KEEHN:    THANK YOU, YOUR HONOR.

THE COURT:    OKAY.  NOW, WE HAVE A STATUS CONFERENCE.
TIMING.

ARE YOU, NOW, LOOKING AT THE DEPOSITION, MR. KEEHN?

MR. KEEHN:    I AM.  AND CONSISTENT WITH THE LOCAL
RULES, I NEED TO CONFER WITH COUNSEL AS TO AVAILABLE DATES.

MR. HAYES:    I HAVE TO BE BACK HERE JULY 31ST.  THAT'S
A LITTLE QUICK, BUT I'M GOING TO BE HERE ANYWAY.

THE COURT:    JULY 31ST?  THAT'S A TUESDAY.

MR. KEEHN:    YES.

THE COURT:    WHAT TIME IS YOUR HEARING ON THE 31ST?

MR. HAYES:    AT 10:00.  IT'S A SUMMARY JUDGMENT MOTION,
SO IT COULD BE IN THE AFTERNOON; SUMMARY JUDGMENT MOTION
THAT HASN'T BEEN FILED.

THE COURT:    WE COULD DO 2:00 P.M. ON THE 31ST.  DOES
THAT WORK?

MR.KEEHN:    IT'S CLEAR ON MY CALENDAR, YOUR HONOR.

MR. HAYES:    2:00?

THE COURT:    OKAY.  AND WE'LL DO THAT AS A FURTHER
STATUS CONFERENCE.  BUT IN THE MEANTIME, I ASSUME THE TWO

OF YOU WILL MEET AND CONFER ON A DEPOSITION DATE.  AND THEN

ONCE THE DEPOSITION IS CONCLUDED, I ASSUME MR. KEEHN,

YOU'RE PLANNING A MOTION?

MR. KEEHN:     I AM.

THE COURT:     JUST SO MR. HAYES SEES WHAT'S COMING AND

THEN WE'LL -- ONCE THAT MOTION'S DECIDED, WE'LL KNOW WHERE

WE GO NEXT, IF ANYWHERE.

MR. HAYES:     GREAT.

MR. KEEHN:     THANK YOU, YOUR HONOR.

MR. HAYES:     THANK YOU, YOUR HONOR.

THE COURT:     ALL RIGHT.  WE'LL BE IN RECESS.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

          I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY

CERTIFY:

THAT I REPORTED IN SHORTHAND THE PROCEEDINGS
HELD IN THE FOREGOING CAUSE ON THE 25TH DAY OF JUNE, 2007;
THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING
UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT
CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.


DATED THIS _____ DAY OF _____, 2007.


_____
LYNETTE ALVES, CSR #12534, RPR #61256

# EXHIBIT 3

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8              UNITED STATES BANKRUPTCY COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                          )  Case No. 05-05926-PBINV
                                    )
12     FRANCIS J. LOPEZ,            )  **DECLARATION OF TIMOTHY P. DILLON**
                                    )
13          Alleged Debtor.         )  **[BIFURCATED PHASE II]**
                                    )
14                                  )  Date:  October 1, 2007 (Status Conference)
                                    )  Time:  10:30 a.m.
15                                  )  Judge: The Honorable Peter W. Bowie
                                    )  Ctrm:  4
16                                  )
                                    )
17                                  )
                                    )
18                                  )
                                    )
19  _____   )

20     I, TIMOTHY P. DILLON, declare as follows:

21     1.     I am an attorney duly admitted to practice before the Courts of this State. I am a

22  shareholder of the law firm of Dillon & Gerardi, APC, counsel for Petitioning Creditor Alan

23  Stanly ("Stanly") in certain cases involving the alleged debtor herein, Francis J. Lopez ("Lopez"),

24  which were and/or are pending before the San Diego Superior Court and the United States District

25  Court for the Southern District of California (the "Additional Lopez Cases"). In connection with

26  the Additional Lopez Cases, I am the *shareholder in charge* of the engagement of the firm on

27  behalf of Stanly, and the attorney within the firm who is most knowledgeable with respect to all

28  aspects of the Additional Lopez Cases. I make this Declaration based upon facts within my

- 1 -                                          111575/LFK/5311.01

1   firsthand knowledge acquired in the course of conducting litigation against Lopez in the

2   Additional Lopez Cases.

3       2.      The delay and bad-faith litigation tactics employed by Lopez and his counsel

4   throughout the Additional Lopez Cases are summarized below.

5                   *Union Bank of California v. Francis J. Lopez, et. al.*

6               **San Diego Superior Court(Case No.: GIN 030827)**

7   <u>Case Summary (06/2003 - 09/2004):</u>

8       3.      In or about June of 2003, Union Bank of California initiated a litigation against

9   both Lopez and Stanly as guarantors of a loan which their corporation, Prism, had defaulted on.

10  Both Lopez and Stanly filed cross-claims against each other for contribution and indemnity.

11  Lopez and Stanly eventually settled with Union Bank. Stanly prevailed on a motion for good faith

12  settlement and obtained a dismissal of Lopez's cross-claims. At time of trial, the sole issues left in

13  the case were Stanly's claims against Lopez for indemnity and contribution. Trial in the Union

14  Bank matter was continued several times due to Lopez's dilatory conduct, as more fully set forth

15  below. When the Court finally held trial, neither Lopez nor his counsel appeared. Trial proceeded

16  without Lopez.

17  <u>Summary of Dilatory / Bad Faith Tactics:</u>

18      4.      On March 9, 2004, Lopez requested a trial continuance due to the "illness of his

19  wife's aunt." Based on that request, the parties ultimately stipulated to continue the trial for four

20  months — until July 9, 2004.

21      5.      On July 2, 2004 — the date of the trial readiness conference — Lopez's attorney,

22  Joseph Fischbach ("Fischbach"), faxed a "Declaration re: Non-Readiness for Trial" to my office.

23  A true and correct copy of that Declaration is attached hereto as Exhibit 1 to the "Compendium of

24  Exhibits in Support of Renewed Request for an Enforcement Order Imposing Monetary Sanctions

25  Against Alleged Debtor Francis J. Lopez" (hereinafter referred to as the "Exhibits Compendium")

26  filed concurrently herewith. In his Declaration, Fischbach stated that he would be unable to

27  appear for trial because he had scheduled another trial for July 7, 2004. This was the first time

28  Fischbach had ever indicated that he would be unable to attend trial. He did not personally appear

KEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
492 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 406-5200  FACSIMILE (619) 406-5201

111575/LFK/5311.01

1  at the trial readiness conference.  Instead, Fischbach sent an *appearance counsel* to the trial

2  readiness conference who was not affiliated with Fischbach's law firm, and was unfamiliar with

3  the case.  Because a "Declaration for Non-Readiness for Trial" is not a proper method of obtaining

4  a trial continuance, and Lopez did not properly apply for a continuance of trial, the Court had no

5  legal basis on which to order a continuance.   The Court then confirmed that trial call would

6  remain set for July 9, 2004.

7        6.    On July 9, 2004, Lopez and his counsel failed to appear for trial, and the trial court

8  issued an Order to Show Cause as to why sanctions should not be issued against them.  A true and

9  correct copy of the Order is attached as Exhibit 2 to the Exhibits Compendium.

10        7.    On July 16, 2004, Fischbach appeared before the Court and confirmed that he was

11  in trial on another matter on the dates set for trial in *Union Bank of California v. Francis J. Lopez,*

12  *et. al.* and stated that his failure to appear at the scheduled trial date was due to a mix-up with

13  co-counsel.  No declaration of co-counsel was ever provided to corroborate the existence of the

14  mix-up or how it came to be.  Additionally, Lopez provided declarations to the Court from himself

15  and his physician stating Lopez was suffering from "diverticulitis" and was too ill to participate in

16  a trial.  A true and correct copy of the Declarations is attached as Exhibit 3 to the Exhibits

17  Compendium.  This was the first time the Court had been advised of Lopez's purported

18  diverticulitis.  Stanly was aware that Lopez could easily induce the aggravating symptoms of his

19  condition by eating popcorn.  The Court continued the trial for approximately 60 days — until

20  September 10, 2004.

21        8.    On September 9, 2004 — one day before the twice-continued trial was set to begin

22  — Lopez applied *ex parte* for a third trial continuance.  A true and correct copy of the Ex Parte

23  Application is attached as Exhibit 4 to the Exhibits Compendium.  Lopez claimed he was still

24  suffering from diverticulitis, and that the medication he took for it made him "groggy."[1]  Lopez

25  further stated that he could not appear for trial due to scheduled colonoscopy and endoscopy

26

27

28

     [1]   See, Exhibits Compendium Tab 4.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1150
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111575/LFK/5311.01

1  procedures.[2] The evidence in support of Lopez's application was defective in that the declarations

2  were not signed under penalty of perjury under the laws of the State of California. The Court

3  ordered the application continued until September 10, 2004, and the Court's minute order

4  provided precise instructions to Lopez as to how to provide a competent declaration. A true and

5  correct copy of that Order is attached as Exhibit 5 to the Exhibits Compendium.

6       9.    On September 10, 2004, Stanly appeared with a proposal for the commencement of

7  trial. Lopez appeared through *appearance counsel* who was not affiliated with Fischbach's law

8  firm, and was unfamiliar with the status of the case. Despite the Court's specific instruction, no

9  competent declaration was provided to support Lopez's request for a third trial continuance.

10  Based on that, the Court denied his request.

11       10.    Trial proceeded on September 14, 2004, wherein Stanly obtained a judgment

12  against Lopez for $50,000.

13  *Francis Lopez v. Alan Stanly*

14  **San Diego Superior Court (Case No.: GIN029692)**

15  <u>Case Summary (05/2003 - 06/2005):</u>

16       11.    This case has been stayed by the involuntary bankruptcy petition filed herein.

17  Lopez initially sued Stanly for breach of fiduciary duty, trespassing, conversion and invasion of

18  privacy. All but the invasion of privacy claims were dismissed via a motion for summary

19  adjudication. Stanly counter-claimed on a variety of claims, including breach of fiduciary duty,

20  unfair competition and misappropriation of trade secrets. Stanly obtained many discovery

21  sanctions against Lopez for his discovery violations. Because of the involuntary bankruptcy

22  petition, the Court did not issue monetary sanctions against Lopez. However, prior to the filing of

23  the bankruptcy petition, a discovery referee recommended the issuance of several thousand dollars

24  of discovery sanctions against Lopez, and $5,198.75 of discovery sanctions were issued against

25  Lopez's counsel and co-Plaintiff. The Court also issued evidentiary sanctions against Lopez.

26  ///

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

---

[2]    *Id.*

**Summary of Dilatory / Bad Faith Tactics:**

12.     Without justification or excuse, Lopez failed to provide any response to Stanly's First Set of written discovery propounded on him on December 31, 2003. Stanly filed a motion to compel discovery responses. During the extended meet and confer process, the parties worked out a resolution whereby Lopez paid Stanly $600 in sanctions and provided Stanly with discovery responses. In exchange, Stanly took the motion off calendar.

13.     On July 28, 2004, Stanly propounded a Second Set of written discovery consisting of interrogatories, requests for admission and requests for production on Martin Hudacko ("Hudacko") and Lopez. On September 2, 2004, Hudacko and Lopez provided responses consisting solely of identical boilerplate objections, without a single substantive response. After a meet and confer process, Lopez provided some substantive responses, however, these responses were still woefully inadequate. In addition, Lopez sought a protective order as to certain discovery (based on trade secret protection) and others he claimed he had already answered appropriately.

14.     In November of 2004, Lopez moved to appoint a discovery referee. Stanly agreed, and Judge Sarokin was appointed as discovery referee based on the parties' stipulation.

15.     On January 7, 2005, Stanly submitted to Judge Sarokin a motion to compel the discovery responses of Hudacko and Lopez. On February 18, 2005, Stanly's motion was granted, and Judge Sarokin ordered Lopez to respond to the written discovery requests and produce response documents. The 02/18/2005 ruling of Judge Sarokin was entered as an order of the trial court.

16.     On March 4, 2005 (the ordered production date), Lopez failed, without justification or excuse, to comply with Judge Sarokin's 02/18/2005 Order by failing to provide any responsive documents to Stanly's requests for production of documents. Stanly made several requests to Judge Sarokin for an additional Order requiring Lopez to produce documents, and for the imposition of sanctions against Lopez. On March 24, 2005, Judge Sarokin issued another Order requiring Lopez to produce all responsive documents on or before March 18, 2005.

17.     On April 1, 2005, after persistent requests from Stanly's attorneys, and two Orders

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111575/LFK/5311.01

1   from Judge Sarokin, Lopez finally produced approximately 50 pages of additional materials via

2   email. Although Lopez provided some documents, he still failed, without justification or excuse,

3   to provide a video tape and several documents specifically referred to in his discovery responses.

4   Further, Lopez failed to provide audio recordings and a CD ROM purportedly in his possession.

5       18.     On April 15, 2005, Stanly filed another motion to compel and request for monetary

6   sanctions against Lopez, requesting, amongst other documents, that the audio recordings be

7   produced. On April 28, 2005, Judge Sarokin granted Stanly's motion and demanded Lopez

8   produce all responsive documents, including the audio recordings and the CD ROM.

9       19.     After Judge Sarokin issued the 04/28/2005 Order, Lopez produced some audio

10  recordings, but failed, without justification or excuse, to produce any of the other documents he

11  had been ordered to produce.

12      20.     After several repeated requests for production of the missing documentation, Stanly

13  brought another motion to compel before Judge Sarokin. On June 24, 2005, Judge Sarokin

14  granted the motion, and issued evidentiary and monetary sanctions against Lopez in the amount of

15  $2,000. A true and correct copy of that Order is attached as Exhibit 6 to the Exhibits

16  Compendium.

17      21.     On March 8, 2005, Lopez failed, without justification or excuse, to appear for the

18  deposition of Stanly that Lopez had noticed for that day, causing Stanly and his counsel great

19  expense and inconvenience.

20      22.     Without justification or excuse, Lopez repeatedly served deposition subpoenas on

21  third parties without providing notice of the Subpoenas to Stanly in an effort to secretly obtain

22  discovery without Stanly's knowledge. Stanly was only made aware of Lopez' failure to provide

23  notice of third party depositions after certain witnesses informed Stanly of the subpoenas. Judge

24  Sarokin issued evidentiary sanctions against Lopez for this conduct in his 06/24/2005 Report.[3]

25      23.     Pursuant to the terms of a protective Order issued by Judge Sarokin, and adopted

26  by the trial court, all parties were ordered to provide declarations detailing their use of corporate

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

---

[3]     See, Exhibits Compendium Tab 6.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2400 · FACSIMILE (619) 400-2201

1  funds for personal expenses. While Stanly complied with this request, Lopez did not. Lopez's

2  declaration failed, without justification or excuse, to describe his use of corporate funds with any

3  particularity. Stanly was forced to bring another motion before Judge Sarokin, requesting that

4  supplemental declarations be ordered. In his 06/24/2005 Report, Judge Sarokin granted Stanly's

5  motion and Ordered supplemental declarations be produced.[4]

6      24.   Lopez refused to stipulate to limit his emotional distress claims pursuant to

7  California Code of Civil Procedure §2032, despite Stanly's repeated requests and Lopez's

8  representations that he would enter into a stipulation. Accordingly, Stanly moved for an Order

9  requiring a medical examination of Lopez. Judge Sarokin issued sanctions against Lopez and his

10  counsel in the amount of $2,948.75 for their failure to initially stipulate. This ruling is contained

11  in Judge Sarokin's 06/24/2005 Report.[5]

12      25.   On October 22, 2004, Stanly served Lopez with a request for a Statement of

13  Damages. Lopez never provided it, despite multiple follow-up requests. Judge Sarokin ordered

14  the Statement served, and Lopez failed to comply with that Order, insisting that the Statement had

15  already been served on Stanly. Judge Sarokin issued monetary sanctions in the amount of $1,245

16  against Lopez for his failure to comply with his Order. This ruling was also contained in Judge

17  Sarokin's 06/24/2005 Report.[6]

18                *Enterprise Technology Holdings v. Noveon Systems, Inc. et al.*

19     **United States District Court for the Southern District of California (Case No.: 05-cv-2236)**

20  Case Summary (12/2005 - Present):

21      26.   Stanly is the President of Enterprise Technology Holdings, Inc. ("ETH") which

22  filed this action against Noveon Systems, Inc., a company whose common stock is all owned by

23  Mrs. Lopez. ETH successfully obtained a preliminary injunction against Noveon, enjoining

24  Noveon, and all those acting in concert with Noveon, from utilizing, selling, licensing or

25

26       [4]    See, Exhibits Compendium Tab 6.

27       [5]    See, Exhibits Compendium Tab 6.

28       [6]    See, Exhibits Compendium Tab 6.

111575/LFK/5311.01

1  marketing Prism's software (the company formerly owned by Stanly and Lopez).  Thereafter,

2  without any proffered justification or excuse, Novcon simply stopped participating in the

3  litigation.  Noveon's counsel admitted his client was not participating in the litigation and, as a

4  result, Noveon's counsel withdrew from the case on January 17, 2007.  It appears Lopez decided

5  to stop doing business as Noveon, and let the company take the fall in the case.  Lopez left the

6  company with no money, no assets and no appointed officers or elected directors.

7          Although all of the Noveon stock is in his wife's name, Lopez was the company's founder

8  and the person who had managed all the day-to-day operations.  The last remaining issue in this

9  case is whether Lopez's wife is an alter-ego of Noveon and thus liable for the company's debts.

10 **Summary of Dilatory / Bad Faith Tactics:**

11         27.    In October of 2006, ETH propounded written discovery on Noveon.  Noveon failed

12 and refused to respond to the discovery requests even after multiple meet and confer attempts, and

13 two telephonic conferences with Magistrate Judge Catherine Bencivengo.

14         28.    ETH filed a motion for monetary, issue, evidentiary and terminating sanctions

15 against Noveon based on its failure to provide any discovery responses.  Noveon failed to oppose

16 the motion.  On December 8, 2007, Judge Bencivengo granted ETH's motion and ultimately

17 issued evidentiary, issue and terminating sanctions.

18         29.    On August 16, 2007, the Court granted ETH's motion for a default judgment

19 against Noveon.  A true and correct copy of that Order is attached as Exhibit 7 to the Exhibits

20 Compendium.

21         <u>LOPEZ'S ALLEGATIONS OF UNFAIR BIAS</u>

22         30.    Lopez's apparent *modus operandi* in the Additional Lopez Cases was to allege

23 unfair bias against the judicial officers who issued sanctions or adverse rulings against him.

24         31.    In *Union Bank of California v. Francis J. Lopez, et. al.,* Lopez responded to Judge

25 Sarokin's adverse rulings (described above) by failing to pay his portion of Judge Sarokin's

26 referee fees, and filing a motion to disqualify him based on alleged bias.  Based on Lopez's

27 allegations, Judge Sarokin resigned rather than respond to the motion.  Lopez also alleged that

28 Judge Jacqueline Stern was biased against him.  He filed a complaint against Judge Stern with the

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1215
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

1  judicial counsel, and unsuccessfully moved to disqualify her.

2      32.     Likewise, in *Francis Lopez v. Alan Stanly*, Lopez responded to Judge Michael

3  Orfield's adverse rulings by alleging he was unfairly biased against him, and moving for

4  disqualification.  Judge Orfield voluntarily recused himself, and the case was referred to Judge

5  Thomas Nugent.

6  **FEES INCURRED FOR PREPARING SUMMARIES RE: LOPEZ'S MISCONDUCT**

7      33.     The summaries of the Additional Lopez Cases discussed herein were specifically

8  prepared for Stanly's bankruptcy counsel (Keehn & Associates, APC) by my office in support of

9  Stanly's renewed request for monetary sanctions against Lopez in the above-entitled bankruptcy

10 case.  My office spent a total of 6.25 hours compiling the summaries, reviewing past documents,

11 reviewing old case files and finalizing this declaration.  Stanly was billed $1,018.75 for actual

12 legal fees incurred, as set forth below:

13      Attorney Timothy P. Dillon: 1.25 hour ($215 per hour)

14      Attorney Sunjina Kaur Ahuja: 5.0 hours ($150 per hour)

15      I declare under penalty of perjury under the law of the United States that the foregoing is

16 true and correct, and that this Declaration was executed on this 26th day of September, 2007, at

17 San Diego, California.

18

19

20      _____
        TIMOTHY P. DILLON

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200   FACSIMILE (619) 400-2201

111575/LFK/5311.01

# EXHIBIT 4

October 19, 2007                    Keehn & Associates, APC                    Page 1
4:25 pm                          Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 9317 | 8/1/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>▬▬▬▬▬▬▬▬▬▬▬▬▬▬ | 0.10 | 100.00 | 10.00 |
| 9345 | 8/3/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>▬▬▬▬▬▬▬▬▬▬▬▬▬▬ | 0.20 | 100.00 | 20.00 |
| 9356 | 8/6/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>▬▬▬▬▬▬▬▬▬▬▬▬▬▬ | 0.10 | 100.00 | 10.00 |
| 9431 | 8/23/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>▬▬▬▬▬▬▬▬▬▬▬▬▬▬ | 0.20 | 100.00 | 20.00 |
| 9956 | 9/2/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>REVIEW OF WORLD SAVINGS DOCUMENTS IN<br>PREPARATION FOR UPCOMING DEPOSITION. | 0.80 | 320.00 | 256.00 |
| 9973 | 9/4/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WORK ON DOCUMENT REVIEW AND<br>PREPARATION FOR UPCOMING DEPOSITION. | 1.00 | 320.00 | 320.00 |
| 9991 | 9/5/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>E-CORRESPONDENCE WITH CLIENT REGARDING<br>VIDEO TAPE DEPOSITION. | 0.10 | 320.00 | 32.00 |
| 9992 | 9/5/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WORK ON INITIAL PREPARATION FOR DEPOSITION<br>OF FRANCIS LOPEZ. | 1.10 | 320.00 | 352.00 |
| 10519 | 9/9/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WORKED IN SUPPORT OF DEPOSITION OF<br>FRANCIS LOPEZ REGARDING OUTLINE AND<br>SUMMARY OF EVIDENCE PERTAINING TO<br>REQUISITE ELEMENTS OF CLAIM. | 1.30 | 225.00 | 292.50 |

October 19, 2007                           Keehn & Associates, APC                           Page 2
4:25 pm                                   Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 10081 | 9/10/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>REVIEW OF DOCUMENTS AND RELATED<br>PREPARATION FOR UPCOMING DEPOSITION | 2.60 | 320.00 | 832.00 |
| 10082 | 9/10/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RRR RECEIPT, REVIEW AND RESPOND TO<br>E-CORRESPONDENCE FROM ATTORNEY HAYES<br>GIVING NOTICE THAT LOPEZ WILL NOT ATTENED<br>HIS 9/11/07 DEPOSITION | 0.20 | 320.00 | 64.00 |
| 10331 | 9/10/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>PARALEGAL SUPPORT REGARDING ATTORNEY<br>PREPARATION FOR UPCOMING DEPOSITION OF<br>FRANCIS LOPEZ. | 0.40 | 100.00 | 40.00 |
| 10333 | 9/10/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>PARALEGAL SUPPORT REGARDING COMPILATION<br>OF TAX DOCUMENTS PRODUCED BY LOPEZ. | 0.40 | 100.00 | 40.00 |
| 10086 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RR RECEIPT AND REVIEW OF<br>E-CORRESPONDENCE FROM CLIENT REGARDING<br>ISSUES WITH FRANCIS LOPEZ | 0.20 | 320.00 | 64.00 |
| 10087 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RR RECEIPT AND PRELIMINARY REVIEW OF<br>MATERIALS FROM TIM DILLON'S OFFICE FOR USE<br>IN SUPPORT OF SANCTIONS MOTIONS AGAINST<br>LOPEZ | 0.80 | 320.00 | 256.00 |
| 10088 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>██████████████████████ | 0.80 | 320.00 | 256.00 |
| 10140 | 9/13/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>██████████████████████ | 0.10 | 320.00 | 32.00 |
| 10141 | 9/13/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>██████████████████████ | 0.10 | 320.00 | 32.00 |

October 19, 2007                         Keehn & Associates, APC                         Page 3
4:25 pm                                  Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| | | | REQUEST. | | | |
| 10217 | 9/17/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10218 | 9/17/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ECO E-CORRESPONDENCE TO JOHN HAYES REGARDING DEPOSITION ISSUES | 0.10 | 320.00 | 32.00 |
| 10351 | 9/17/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 100.00 | 10.00 |
| 10553 | 9/18/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEWED SUMMARIES AND SUPPORTING DOCUMENTS PERTAINING TO LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS PROVIDED BY THE OFFICES OF DILLON & GERARDI, APC; WORKED ON DRAFT OF COMPREHENSIVE SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS IN SUPPORT OF PETITIONING CREDITORS' REQUEST FOR SANCTIONS; DRAFTED EMAIL CORRESPONDENCE TO ATTORNEY SUNJINA K. AHUJA IN SUPPORT OF SAME. | 3.90 | 225.00 | 877.50 |
| 10240 | 9/19/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) TCW TELEPHONE CONFERENCE WITH ALAN STANLY REGARDING SANCTIONS MOTIONS AND RELATED ISSUES | 0.40 | 320.00 | 128.00 |
| 10241 | 9/19/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON PREPARATION FOR LOPEZ DEPOSITION AND GROUND WORK FOR SANCTIONS MOTION | 1.70 | 320.00 | 544.00 |
| 10253 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM ATTORNEY HAYES REGARDING DEPOSITION | 0.20 | 320.00 | 64.00 |
| 10254 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) TCW TELEPHONE CONFERENCE WITH CLIENT REGARDING FOLLOW-UP RE: SANCTIONS AND | 0.30 | 320.00 | 96.00 |

October 19, 2007
4:25 pm

Keehn & Associates, APC
Detail Time Submittal Report

Page 4

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| | | | RELATED ISSUES | | | |
| 10255 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON DEVELOPMENT OF EVIDENTIARY RECORD FOR SANCTIONS HEARING | 1.60 | 320.00 | 512.00 |
| 10574 | 9/20/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RECEIVED AND REVIEWED EMAIL CORRESPONDENCE FROM ATTORNEY SUNJINA K. AHUJA REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; COMPLETED DRAFT OF COMPREHENSIVE SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS IN SUPPORT OF PETITIONING CREDITORS' RENEWED REQUEST FOR SANCTIONS. | 1.30 | 225.00 | 292.50 |
| 10277 | 9/21/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON EVIDENTIARY SUPPORT FOR SANCTIONS MOTIONS | 1.30 | 320.00 | 416.00 |
| 10586 | 9/24/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; DRAFTED CORRESPONDING COMPENDIUM OF EXHIBITS; DRAFTED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS. | 6.60 | 225.00 | 1485.00 |
| 10403 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVISE AND EDIT PROPOSED DECLARATION FOR TIMOTHY DILLON | 0.40 | 320.00 | 128.00 |
| 10404 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM CLIENT RE: SAME | 0.20 | 320.00 | 64.00 |
| 10405 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON SANCTIONS MOTION | 0.50 | 320.00 | 160.00 |
| 10588 | 9/25/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED COMPENDIUM OF EXHIBITS REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; REVISED AND FINALIZED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; DRAFTED DECLARATION OF L. SCOTT KEEHN REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS. | 4.30 | 225.00 | 967.50 |

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 10409 | 9/26/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RRR RECEIPT, REVIEW AND RESPOND TO<br>MULTIPLE E-CORRESPONDENCE REGARDING<br>DECLARATIONS | 0.20 | 320.00 | 64.00 |
| 10410 | 9/26/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.40 | 320.00 | 128.00 |
| 10591 | 9/26/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>REVIEWED EMAILS FROM ATTORNEY DILLON AND<br>CLIENT; REVISED DILLON DECLARATION. | 0.80 | 225.00 | 180.00 |
| 10440 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.80 | 320.00 | 576.00 |
| 10441 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.30 | 320.00 | 96.00 |
| 10442 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.30 | 320.00 | 96.00 |
| 10599 | 9/27/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>FINALIZED DECLARATION OF TIMOTHY P. DILLON<br>REGARDING LOPEZ'S DILATORY/BAD FAITH<br>LITIGATION TACTICS; WORKED IN SUPPORT OF<br>FILING PETITIONING CREDITORS' RENEWED<br>REQUEST FOR MONETARY SANCTIONS AGAINST<br>LOPEZ. | 0.30 | 225.00 | 67.50 |
| 10740 | 9/28/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RECEIVE, REVIEW AND RESPOND TO<br>E-CORRESPONDENCE FROM ATTORNEY HAYES<br>REGARDING SANCTIONS ISSUE. | 0.20 | 320.00 | 64.00 |
| 10868 | 10/1/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.20 | 320.00 | 64.00 |

October 19, 2007
4:25 pm

Keehn & Associates, APC
Detail Time Submittal Report

Page 6

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 10869 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WOF WORK ON FOLLOW-UP REGARDING<br>SANCTIONS MOTION | 0.20 | 320.00 | 64.00 |
| 10871 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.90 | 320.00 | 288.00 |
| 10872 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.00 | 320.00 | 320.00 |
| 10961 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.00 | 320.00 | 320.00 |
| 10911 | 10/3/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10912 | 10/3/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10935 | 10/4/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WOF WORK ON FOLLOW-UP REGARDING<br>PRESENTATION OF EVIDENTIARY MATERIALS IN<br>SUPPORT OF SANCTIONS MOTION | 0.90 | 320.00 | 288.00 |
| 10950 | 10/5/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |

|  | Daily Total (Billable) | 42.30 | | 11448.50 | ** |
|--|------------------------|-------|--|----------|----|
|  | Grand Total (Billable) | 42.30 | | 11448.50 | ** |