# DOCKET NUMBER 119

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING


```
                                    )
                                    )
   FRANCIS J. LOPEZ                  )  CASE NO. 05-05926-PB
                                    )
                                    )
_____)
```


1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER
   IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, NOVEMBER 19, 2007


SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200

SAN DIEGO, CALIFORNIA, MONDAY, NOVEMBER 19, 2007, 2:00

--- O 0 O ---

*THE CLERK:*  IN THE MATTER OF FRANCIS J. LOPEZ.

WE HAVE TWO MATTERS:  PETITIONING CREDITORS'
MOTION FOR AN ENFORCEMENT ORDER IMPOSING MONETARY
SANCTIONS AGAINST THE DEBTOR; AND, CONTINUED STATUS
CONFERENCE ON INVOLUNTARY PETITION AND ANSWER.

APPEARANCES, PLEASE.

*MR. KEEHN:*  GOOD AFTERNOON, YOUR HONOR.

SCOTT KEEHN APPEARING ON BEHALF OF THE
PETITIONING CREDITORS.

*MR. HAYES:*  GOOD AFTERNOON, YOUR HONOR.

JOHN HAYES, H-A-Y-E-S, FOR THE ALLEGED DEBTOR.

*THE COURT:*  OKAY.  LET'S TAKE THE STATUS FIRST.

*MR. KEEHN:*  OKAY.

*THE COURT:*  I TAKE IT THE DEPOSITION DID GO FORWARD,
FINALLY?

*MR. KEEHN:*  YES, IT DID.  AND IN FACT, SHORTLY BEFORE
LEAVING TO MAKE THIS APPEARANCE, A MESSENGER ARRIVED AND
DELIVERED THE TRANSCRIPT.

SO THE REVIEW PERIOD IS NOW IN PROCESS.

*THE COURT:*  AND THEN?

*MR. KEEHN:*  WELL, WE -- OUR PLAN OF PREPARING A
SUMMARY JUDGMENT MOTION HAS NOT CHANGED.

WE THINK THAT THAT'S THE WAY TO PROCEED; EVEN IF
WE DON'T GET THE GOLDEN RING, I THINK WE'LL ELIMINATE MANY
ISSUES THAT YOU WON'T NEED TO TAKE TIME TO TRY.

*THE COURT:*  OKAY.

MR. HAYES, ANYTHING ELSE ON STATUS?

*MR. HAYES:*  NO, YOUR HONOR.  I AGREE.

*THE COURT:*  ALL RIGHT.

MR. KEEHN?

*MR. KEEHN:*  THANK YOU, YOUR HONOR.

AS A PRELIMINARY MATTER ON THE MOTION, I WOULD
RENEW THE EVIDENTIARY OBJECTIONS TO THE LOPEZ --

*THE COURT:*  PARAGRAPHS SEVEN THROUGH TEN?

*MR. KEEHN:*  CORRECT.

AND I WOULD INQUIRE OF THE COURT IF YOU WOULD LIKE
SEPARATE ARGUMENT ON THAT OR JUST RULE ON IT AT THE END?

*THE COURT:*  I'LL RULE ON IT AT THE END.

*MR. KEEHN:*  THANK YOU, YOUR HONOR.

WITH REGARD TO THIS MOTION -- AND I'M ASSUMING
THAT YOUR HONOR HAS HAD AN OPPORTUNITY TO AND HAS, IN FACT,
REVIEWED THE PAPERS AND IS FAMILIAR WITH THE FACTS AS THEY
ARE SET FORTH THERE.

SO I WON'T BELABOR THE RECORD HERE THIS AFTERNOON
WITH THE REPETITION OF THAT, OTHER THAN TO SAY IT'S A
REMARKABLE RECORD.

AND REMARKABLE IN THE LACK OF NOT ONLY DILIGENCE
BUT EVEN RESPECT, IN TERMS OF WHAT WAS GIVEN BY THIS
ALLEGED DEBTOR IN RESPONSE TO HIS OBLIGATIONS.

I THINK, HOWEVER, AS BAD AS THAT RECORD IS, WHAT
HAS LED US HERE TODAY, WHAT IS EQUALLY REMARKABLE THIS
AFTERNOON IS FOUND WITHIN THE FOUR CORNERS OF THE
OPPOSITION.  AND IT'S NOT REMARKABLE IN THE SENSE OF
WHAT'S THERE; IT IS FAR MORE REMARKABLE IN THE SENSE OF
WHAT ISN'T THERE.

YOU DON'T, FOR EXAMPLE, SEE ANY ARGUMENT THAT THE THEORIES UPON WHICH THE SANCTIONS ARE REQUESTED ARE FLAWED IN ANY WAY.  YOU DO NOT SEE ANY CHALLENGE TO THE EVIDENCE THAT'S BEEN PRESENTED.  YOU DO NOT SEE ANY CONTRAVENTION OF THE LONG HISTORY OF DILATORY DISCOVERY TACTICS THAT ARE LAID OUT AT LENGTH IN THE DILLON DECLARATION AND MY OWN DECLARATION, IN SO FAR AS IT APPLIES TO THIS CASE.

THAT IS REMARKABLE BECAUSE IT PAINTS A VERY DARK PICTURE CONCERNING MR. LOPEZ.  IT PAINTS THE PICTURE, AN ACCURATE PICTURE, THAT THE GENTLEMEN IS SIMPLY A CLASSIC SCOFFLAW WHO WILL NOT COMPLY WITH HIS OBLIGATIONS IN DISCOVERY UNTIL IT IS SO PAINFUL NOT TO RESPOND THAT HE ACTUALLY COMES FORWARD AND DOES SOMETHING.  AND THAT IS EXEMPLIFIED IN THIS RECORD.

I HAVE SOME SYMPATHY FOR MR. HAYES BECAUSE I HAVE EVERY CONFIDENCE THAT MR. HAYES IS DOING EVERYTHING HE CAN TO PROD HIS CLIENT INTO COMPLIANCE, AND THAT THE DATES HE HAS GIVEN ME HAVE BEEN IN GOOD FAITH FROM HIS PART; AND HIS CLIENT SIMPLY REFUSES TO COME FORWARD WHEN IT'S TIMELY.

HE, SORT OF, INDUCES THE PETITIONING CREDITORS INTO SPENDING MONEY IN PREPARATION; KNOWING ALL THE WHILE THAT HE'S NOT REALLY GOING TO COMPLY.  SO THOSE EXPENSES WERE INCURRED.

AND THERE'S ANOTHER THING THAT YOU DON'T SEE IN ANY OF THE OPPOSITION.  YOU DO NOT SEE EITHER THE CONTENTION OR THE ARGUMENT THAT ANY OF THE FEES INCURRED

IN RESPONSE TO MR. LOPEZ'S FAILURE TO COMPLY WITH
DISCOVERY RESPONSES WERE UNREASONABLE, UNNECESSARY OR
UNWARRANTED.

WHAT YOU SEE IS THE CONTENTION THAT, "GEE, I
CAN'T AFFORD IT."  THAT'S NOT A DEFENSE.  SO ALL OF THE
EVIDENCE THAT HAS BEEN ADVANCED BY THE PETITIONING
CREDITORS IN RESPONSE TO THIS -- IN SUPPORT OF THIS MOTION
IS UN-REBUTTED.  AND THE ONLY EVIDENCE THAT MR. LOPEZ HAS
NOT HAD THE OPPORTUNITY TO REBUT IS THAT WHICH WAS
CONTAINED IN MY REPLY DECLARATION.  AND IF THERE'S
REBUTTAL TO THAT, I WOULD INVITE AN OFFER OF PROOF.

BUT I SIMPLY SAID, IN EFFECT, THAT THE COMPLAINT
ABOUT HAVING TO COME HERE WHEN HE HAS NO OTHER BUSINESS
IN CALIFORNIA IS SPECIOUS BECAUSE HE NEVER SAID HE WANTED
TO DO THAT.  WE CERTAINLY, UNDER THE LOCAL RULES, HAVE AN
OBLIGATION TO EXTEND EVERY COURTESY AND MAKE EVERY EFFORT
TO SET DATES FOR DEPOSITIONS THAT ARE CONVENIENT TO ALL
PARTIES.

SO IF THERE'S A CHALLENGE TO THAT, IF SOMEONE HAS
ASKED MY OFFICE AND WE'VE FAILED IN THAT DUTY, I WOULD LIKE
TO HEAR ABOUT IT, BECAUSE I'M NOT AWARE OF IT.

SO WHERE IT LEAVES US IS A POSITION WHERE IF THE
COURT DOES NOT FINALLY COME DOWN ON MR. LOPEZ -- AND HE
HAS HAD MANY AND MANY A CHANCE, DATING BACK FROM THE FIRST
DISCOVERY MOTION MADE IN CONNECTION WITH PHASE ONE TO
COMPLY WITHOUT EXPENSE -- IF THE COURT DOESN'T DO IT NOW,
THEN DISCOVERY HAS NO MEANING.

IF PARTIES CAN SIMPLY REFUSE TO COOPERATE UNTIL
THE EXPENSE ASSOCIATED WITH THE DISCOVERY COMES TO
OUTWEIGH THE VALUE THAT IS GARNERED FROM THE INFORMATION,
WELL, THEN YOU'VE WRITTEN DISCOVERY RULES OUT OF THE
FEDERAL RULES OF CIVIL PROCEDURE OUT OF THE LOCAL RULES
OF BANKRUPTCY PROCEDURE.  AND THAT IS NOT WHAT THE RULES
THAT PROVIDE FOR SANCTIONS ARE INTENDED TO DO.

I THINK THIS COURT HAS BEEN MORE THAN LENIENT
WITH MR. LOPEZ.  I THINK IF THERE WERE A SCINTILLA, JUST
ONE SCINTILLA, OF REASONABLENESS IN HIS EFFORTS TO
COOPERATE, HE WOULD FIGURATIVELY WALK OUT OF THIS
COURTROOM TODAY UNSCATHED BY THE IMPOSITION OF ANY
SANCTIONS.

BUT I THINK THAT THE UTILITY OF THIS REMEDY HAS
BEEN HARMED BY HIS FAILURE.  AND AS I POINT OUT IN THE
CONCLUSION, THERE IS AN INCALCULABLE HARM -- MAY NOT EXIST
AT ALL, BUT IT MAY EXIST IN MONUMENTAL FORM -- THAT WE
CANNOT ASCERTAIN OR MEASURE AT THIS POINT; AND THAT IS,
THE HARM THAT EXISTS BECAUSE THE DAY-BY-DAY PASSAGE OF
TIME BETWEEN THE FILING OF THE PETITION IN JUNE OF '05 AND
THE ENTRY OF THE ORDER FOR RELIEF CREATES A UNIVERSE OF
GAP CLAIMS THAT WILL SPRING AHEAD IN PRIORITY TO THOSE OF
THE PETITIONING CREDITORS THAT FIRST SOUGHT THE REMEDY.

THAT PUTS THE KIND OF SANCTIONS MOTION THAT WE
HAVE HERE TODAY IN A DIFFERENT LEVEL OF THE STRATOSPHERE
THAN NORMAL DISCOVERY MOTIONS.  RARELY DOES THE MERE
FAILURE TO PROVIDE TIMELY DISCOVERY CREATE THE

OPPORTUNITY TO HAVE EXACERBATING THE HARM OF THE PARTIES
AS IT DOES HERE IN THE CONTEXT OF AN INVOLUNTARY PETITION.

I THINK THAT WHEN WE WERE HERE LAST, THE COURT
MADE THE COMMENT THAT THE SWORD OF DAMOCLES THAT IT ONCE
SUSPENDED ABOVE MR. LOPEZ'S HEAD HAD BEEN CUT.  I THINK
THAT IT SHOULD FALL, AND FALL WITH A FORCE THAT WILL SERVE
AS A ROBUST DETERRENT FOR ANY SIMILAR CONDUCT NOT ONLY OF
MR. LOPEZ BUT OTHERS WHO BELIEVE THAT THE DISCOVERY
OBLIGATIONS EMBODIED IN THE FEDERAL RULES OF CIVIL
PROCEDURE ARE ADVISORY RATHER THAN OBLIGATORY.

WE HAVE REQUESTED SLIGHTLY OVER
$12,000 -- TWELVE THOUSAND, ONE THIRTY-THREE AND SOME
CHANGE.  AND WE WOULD REQUEST THAT THE COURT ENTER IT'S
ORDER AUTHORIZING SANCTIONS IN THAT AMOUNT, MAKING THEM
PAYABLE FORTHWITH AND COLLECTABLE VIA WRIT FROM ANY SOURCE
OTHER THAN PROPERTY OF THE ESTATE.

*THE COURT:*  MR. HAYES.

*MR. HAYES:*  THANK YOU, YOUR HONOR.

YOUR HONOR, I ALWAYS HAVE A HARD TIME WITH THESE
SORTS OF MOTIONS BECAUSE MY CLIENT HAS NOT DONE A GOOD JOB
OF RESPONDING TO DISCOVERY.

THERE HAVE BEEN LAST MINUTE PRODUCTION OF
DOCUMENTS.  I CAN'T -- HE KIND OF NAGGED AT ME ABOUT OUR
RESPONSE.  WHY AM I JUST -- HOW COME I'M NOT GOING AFTER
MR. KEEHN?  "LOOK AT ALL THE DOCUMENTS WE PRODUCED."
AND, "LOOK HOW MUCH THIS IS HURTING ME."

AND I CAN'T COME IN HERE AND SAY THAT WE'RE THE

REAL GOOD GUY AND WE DID EVERYTHING RIGHT.  AND MR. KEEHN
IS JUST BEING A MEAN GUY.

AND THE COURT MENTIONED AT THE LAST HEARING THAT
THE STRING HAS BEEN SEVERED; AND THEREFORE, I'VE ASSUMED,
BASICALLY, THAT SANCTIONS ARE GOING TO HAPPEN.

I MEAN, FROM MY OWN VIEWPOINT, THERE ARE FOUR OR
FIVE OTHER ACTIONS GOING ON HERE IN SAN DIEGO BETWEEN THESE
TWO PARTIES.  THERE'S BEEN A HUMONGOUS AMOUNT OF
PRODUCTION RESPONSES.  AND WHEN I SPEAK TO HIM, HE SAYS,
"GEEZ, NOW WHAT?"  AND I SAY, YOU KNOW, "YOU HAVE TO GET
THIS TO ME BY FRIDAY."  AND THEN THE FOLLOWING FRIDAY, I
CALL HIM AND HE SAYS, "OH, SORRY, SORRY, SORRY.  I'LL GET
IT TO YOU."

SO I CAN'T STAND UP HERE AND DO MY LITIGATION
ROUTINE AND ATTACK MR. KEEHN AND TRY TO WALK OUT OF HERE
WITH NOTHING.

HAVING SAID ALL OF THAT, THOUGH, I DO HAVE JUST
A COUPLE OF COMMENTS, UM, THAT I WOULD LIKE TO MAKE.

AS FAR AS THE DEPOSITION GOES,
MR. KEEHN -- MR. LOPEZ DID SHOW UP HERE IN SAN DIEGO ON
OCTOBER 23RD.  HE SHOWED UP WITHOUT ME.  HE HASN'T -- I
CAN'T PAY MY HOTEL BILLS WITH WHAT HE'S PAID ME IN THE LAST
COUPLE OF YEARS.  I OFFERED TO COME AND HE SAID, "NO, I'LL
JUST DO THE DEPOSITION MYSELF."  HE CALLED ME SEVERAL
TIMES DURING THE DAY COMPLAINING ABOUT THE QUESTIONS.
BUT AS I UNDERSTAND IT, HE DIDN'T REFUSE TO ANSWER
ANYTHING.

MR. KEEHN MAKES A BIG DEAL IN HIS MOTION ABOUT
HE AND I SPOKE IN JUNE; I WAS SUPPOSED TO GET BACK TO HIM
WITH A DATE; IT TOOK ME LONGER THAN EXPECTED.  HE TOLD ME
THAT HE WOULDN'T BE HERE THE ENTIRE MONTH OF AUGUST.  I
FORGOT THAT.  I DIDN'T TELL MR. LOPEZ, "LOOK, WE GOT TO
GET A DATE IN EARLY OR MIDDLE JULY BECAUSE MR. KEEHN IS
GOING OUT OF TOWN."  BUT ANYWAY, WE GAVE HIM THE DATE OF
JANUARY -- I MEAN, OF JULY 31ST.

MR. KEEHN CALLED ME OR SENT ME AN E-MAIL
IMMEDIATELY SAYING, "THAT WON'T WORK.  I TOLD YOU I'M
GOING OUT OF TOWN."  THAT'S MY MISTAKE.

HE THEN, UNILATERALLY, PICKED SEPTEMBER 11TH.
AND I CALLED MR. LOPEZ MAYBE A WEEK OR TEN DAYS BEFORE
THAT.  AND I SAID TO HIM, "YOU'RE SHOWING UP, RIGHT?"  HE
SAID, "OH, LET ME TRY TO GET TICKETS."

THEN HE CALLED ME BACK A FEW DAYS LATER AND SAID
THAT TICKETS WOULD COST $2,000; HE CAN'T MAKE IT.  SO I
TOLD HIM THAT, YOU KNOW, I'M NOT CALLING MR. KEEHN UNTIL
YOU GIVE ME AN ABSOLUTE DEFINITE DATE THAT YOU WILL COME
TO SAN DIEGO AND HAVE YOUR DEPOSITION TAKEN.  HE GAVE ME
THAT ON SEPTEMBER 10TH.  I GAVE IT TO MR. KEEHN
IMMEDIATELY AFTER THAT.

AS FAR AS THE DOCUMENTS GO AND THE RESPONSES TO
THE REQUEST FOR INTERROGATORIES, THE FIRST MOTION TO
COMPEL THE COURT MAY REMEMBER THAT I DIDN'T OPPOSE IT,
BECAUSE BY THE TIME IT HAD BEEN FILED, MY CLIENT HAD FOUND
MORE DOCUMENTS RESPONSIVE TO THE 165 CATEGORIES.  HE

PRODUCED -- HE RESPONDED FURTHER TO INTERROGATORIES.

AFTER THAT, THERE WAS A SECOND MOTION TO COMPEL. AND THE RESULT OF THAT WAS NO ADDITIONAL DOCUMENTS, NO ADDITIONAL RESPONSES BECAUSE THE DEFENSE WAS, YOU'VE GOT EVERYTHING. AND I AGREED IN COURT ON THAT HEARING THAT WE WOULD NOT OPPOSE AN ORDER THAT SAYS IF THERE'S ANYTHING ELSE OUT THERE THAT WE HAVEN'T TURNED OVER, HE DOESN'T GET THAT. I MEAN, HE CAN'T USE THAT IN COURT. THAT WAS THE RESULT OF THE SECOND MOTION TO COMPEL.

THE THIRD MOTION TO COMPEL WAS THIS FAILURE TO APPEAR. HE DIDN'T SHOW UP ON SEPTEMBER 11TH; HE SHOWED UP ON OCTOBER 23RD. AND AGAIN, GIVEN THE COURT'S COMMENTS, TO ME, IS A MATTER OF DEGREE. HE CAN'T PAY ANYWAY.

MY OWN VIEW IS THIS IS AN -- I JUST HAVE NO DOUBT ABOUT IT -- THIS IS A SETUP FOR A MOTION TO STRIKE THE ANSWER. THEY'RE TRYING TO GET AS MUCH SANCTIONS AS THEY CAN. TRY TO GET MORE THAN HE CAN PAY. THEN THE NEXT THING COMING WILL BE A MOTION TO STRIKE THE ANSWER. AND THEN THEY WON'T HAVE TO GO THROUGH WITH THE MOTION FOR SUMMARY JUDGMENT.

BUT I WOULD ASK THE COURT TO EITHER MAKE IT A FRACTION OF WHAT MR. KEEHN HAS ASKED FOR, OR TO SET IT ASIDE, I MEAN, CARRY IT AGAIN. MR. KEEHN IS GOING TO FILE A MOTION FOR SUMMARY JUDGMENT. WE'LL FINALLY GET THIS OVER WITH. THAT -- I MEAN, WE SHOULD BE ABLE TO HEAR THAT IN THE NEXT MONTH OR SO. AND PERHAPS DELAY OF THE ULTIMATE

RESOLUTION OF THIS MOTION UNTIL THE MATTER IS FINALLY
RESOLVED.

    *THE COURT:* MR. KEEHN.

    *MR. KEEHN:* THANK YOU, YOUR HONOR.

    MY REMARKS ARE DIRECTED TO MR. LOPEZ AND NOT
MR. HAYES.  AND I WILL SAY THAT I WISH THAT I WASN'T HERE
ASKING FOR ANY SANCTIONS.

    I'M ENTITLED TO DISCOVERY UNDER THE RULES,
UNLESS OBJECTIONS -- GOOD FAITH OBJECTIONS -- ARE
PROPOUNDED OF WHICH IN THIS CASE WE HAVE HAD NONE.

    AS FAR AS THE DEPOSITION BEING TAKEN WITHOUT
MR. HAYES, THAT'S NO CHANGE FROM PHASE ONE PROCEDURE.
MR. STANLEY AND I TRAVELED TO FLORIDA AS THE COURT KNOWS
IN PHASE ONE.  AND WE CONDUCTED THE DEPOSITION.  AND IN
THAT CASE, AT THAT TIME, MR. LOPEZ CHOOSE NOT TO HAVE THE
DEPOSITION -- NOT TO BE REPRESENTED AT THE DEPOSITION.

    IN ADDITION TO THAT, I BELIEVE -- I KNOW THAT I
HAD ADMONISHED MR. LOPEZ, WHETHER IT WAS ON THE RECORD OR
NOT, I CAN'T RECALL SPECIFICALLY.  BUT I TOLD HIM THAT AT
ANY TIME HE WANTED TO CONFER WITH COUNSEL CONCERNING A
QUESTION THAT WE WOULD PAUSE AND ALLOW HIM TO DO THAT.  NO
SUCH REQUEST WAS EVER MADE.

    SO THIS NOTION THAT HE'S SOMEHOW BEEN PREJUDICED
BY THE WAY THE DEPOSITION WAS CONDUCTED IS JUST NONSENSE.
THE NOTION THAT HE'S SOMEHOW EXCUSED FROM HIS PRIOR
MISCONDUCT BECAUSE HE FINALLY CONDESCENDED TO SHOW UP ON
OCTOBER 22ND AFTER ALL OF HIS BROKEN PROMISES IS A

COMPLETE ABSURDITY.  HE HAD A DUTY TO SHOW UP ON THE JULY
20 OR 27TH DATE THAT HIS COUNSEL PROVIDED TO ME.  AND THE
ONLY THING BACK IN JUNE 25 THAT WAS LEFT UP IN THE AIR WAS
WHETHER IT WOULD BE THE 20TH OR THE 27TH.

ALL OF THIS IS ESTABLISHED IN MY ORIGINAL
DECLARATION.  AND HE SENT -- MR. HAYES SENDS ME AN E-MAIL
WHICH TELLS ME WHAT I AM ONE HUNDRED PERCENT CONFIDENT HE
BELIEVED TO BE TRUE AT THE TIME AND THAT HE WOULD LET ME
KNOW WHICH OF THOSE TWO DATES IT WOULD BE SHORTLY.

AND I BELIEVE THAT HE BELIEVED THAT BECAUSE HE
FELT CERTAIN HIS CLIENT WOULD TELL HIM IN A FEW DAYS WHICH
OF THOSE TWO DAYS HE WAS GOING TO SHOW UP.  WELL, MR. LOPEZ
LET HIM DOWN.  MR. LOPEZ IS IN THE HABIT OF LETTING PEOPLE
DOWN WHEN IT COMES TO DISCOVERY, WHETHER IT'S HIS OWN
COUNSEL OR OPPOSING PARTY.

SO THEN WE HAVE TO GO RIGHT DOWN THE ROAD AGAIN.
HERE WE GO AGAIN WITH MR. LOPEZ HAVING TO FORCE HIM TO DO
WHAT HE SHOULD BE DOING VOLUNTARILY; AND HE'S NEVER
OBJECTED TO ANY DATES OR SO FORTH.

AND IF MR. HAYES SAYS HE FORGOT THAT PORTION OF
OUR DISCUSSION WHERE I INFORMED HIM OF MY ABSENCE, I TAKE
THAT AT FACE VALUE.  BUT THE FACT REMAINS, YOU CAN'T TELL
ME ON THE 27TH DAY OF JULY, WHEN I AM GOING TO BE ABSENT
FROM THE DISTRICT FOR ALL BUT THE LAST DAY OF AUGUST AND
EXPECT ME TO RE-JUGGLE MY CALENDAR TO FIT IN MR. LOPEZ
BECAUSE HE'S ONCE AGAIN CONDESCENDING TO DO HIS DUTY AT
THAT PARTICULAR DATE AND TIME; THAT'S COMPLETELY

UNREASONABLE.

       MR. LOPEZ WOULD BE THE FIRST TO COMPLAIN THAT THAT SHORT NOTICE FOR A DEPOSITION WAS PREJUDICIAL. IN FACT, MR. LOPEZ, IN EFFECT, IS COMPLAINING THAT THE FORTY-TWO DAYS HE HAD TO PREPARE FOR THE SEPTEMBER 11TH APPEARANCE WAS IN ADEQUATE. THIS IS JUST MORE OF THE SAME IN SO FAR AS MR. LOPEZ IS CONCERNED.

       AS LONG AS IT'S PAINLESS FOR HIM, PAINLESS BECAUSE YOU'RE GOING TO DEFER TO THE END OF THE CASE; PAINLESS BECAUSE YOU'RE GOING TO GIVE HIM TIME TO PAY A DEBT THAT HE INCURRED THAT SHOULD NEVER HAVE BEEN INCURRED. WE SHOULD HAVE BEEN JUST LITIGATING THE FACTS AND LAW THE WAY THE RULES CONTEMPLATE RATHER THAN GOING ON THIS SIDESHOW TO GET HIM TO SHOW UP AND GIVE TESTIMONY.

       IF YOU MAKE IT PAINLESS, WHICH IS WHAT MR. HAYES IS ESSENTIALLY ASKING YOU TO DO -- AND MR. LOPEZ RELIES ON THIS -- "GEE, IF I CAN JUST DEFER THE DAY OF JUDGMENT UNTIL AFTER I'VE ACTUALLY COMPLIED," NOT TIMELY COMPLIED, BUT COMPLIED -- "THEN I GET SOME MERCY."

       AND I SUBMIT TO YOU THAT THERE ARE MANY OCCASIONS WHERE MERCY IS WARRANTED; THIS IS NOT ONE OF THEM. NONE OF THESE SANCTIONS WERE INEVITABLE. THEY WERE ALL BROUGHT UPON MR. LOPEZ'S HEAD BY HIS OWN MISCONDUCT. AND EVEN IF WE DID BRING A MOTION TO STRIKE, THAT'S A PRETTY RADICAL RESPONSE. AND IF I WAS A BETTING PERSON, I WOULDN'T BET ON IT, EVEN IF HE DOESN'T PAY. AT LEAST NOT IN THE NEAR TERM. AND THAT'S WHY WE HAVEN'T ASKED FOR IT,

FRANKLY.

       WITH ALL OF THE DELAY THAT WE'VE ENCOUNTERED, WITH THE RISK OF EXPANDING THE UNIVERSE OF INVOLUNTARY GAP CLAIMS, WE COULD HAVE BROUGHT THAT REQUEST IN GOOD -- IN EQUALLY GOOD FAITH; WE DIDN'T.  BUT WE'RE ASKING FOR THE MONEY.  WE THINK WE'RE ENTITLED TO THE MONEY.  WE THINK THE COURT SHOULD AWARD IT; AWARD IT ALL; AND, MAKE IT PAYABLE FORTHWITH.

       *THE COURT:*  ALL RIGHT.

       WELL, I'VE BEEN OVER IT MULTIPLE TIMES, AND I DO THINK IT'S TIME.

       I HAVE TO SAY THAT I'M -- YOU KNOW, AS TROUBLED AS I'VE BEEN ALL ALONG IN THIS CASE AND MY DISTRESS HAS GROWN OVER THE INTERVENING PERIOD OF TIME, IN REVIEWING MR. LOPEZ'S OPPOSITION TO THIS PARTICULAR MOTION AND PARTICULARLY HIS EXPLANATION OF THE BUSINESS LEADING UP TO SEPTEMBER 11TH, REALLY, REALLY TROUBLES ME, FRANKLY.

       AND IT TROUBLES ME IN ANOTHER PARTICULAR. MR. HAYES HAS SURMISED THAT THESE MOTIONS ARE REALLY AN EFFORT TO PIN MR. LOPEZ INTO A POSITION WHERE HE GETS SOME KIND OF TERMINATING SANCTION, IF YOU WILL, AGAINST HIM THAT ALLOWS A DETERMINATION, IN FACT, HE'S A DEBTOR; NOT AN ALLEGED DEBTOR; WHETHER IT'S BY STRIKING HIS RESPONSE IN  OPPOSITION TO THE PETITION -- THE INVOLUNTARY PETITION -- OR IN SOME OTHER FORM.  AND CERTAINLY THAT'S A THEORY WHICH WOULD NOT BE GROUNDLESS, ASSUMING THAT THAT'S MR. KEEHN'S THEORY.  BUT THAT'S WHAT PUZZLES ME

ALL THE MORE.

IF THERE'S ANY THOUGHT THAT THAT'S A POSSIBLE
THEORY, THEN WHY WOULDN'T YOU STEP UP AND SAY RIGHT OUT
OF THE SHOOT, "SEPTEMBER 11TH ISN'T GOING TO WORK FOR ME."
OR, "I NEED A DATE -- WE NEED TO JUGGLE A DATE.  I'VE GOT
THESE TWO OTHER BALLS UP IN THE AIR WITH MY GEORGIA AND
MICHIGAN TRAVEL AND STUFF."  AND, "I NEED TO NAIL THIS
DOWN AND HAVE SOME COMMUNICATION THAT'S GOING TO THOSE
ENDS."

AND PARTICULARLY WITH WHAT HAD PRECEDED IT.  I
JUST DON'T FIND ANY KIND -- ANY SEMBLANCE OF GOOD FAITH
ON MR. LOPEZ'S PART IN RESPONDING TO THIS.  I'M NOT CLEAR
IN MY MIND WHETHER IT'S A MATTER OF HIS JUST NOT
RECOGNIZING THE SIGNIFICANCE OF THIS MATTER TO HIM; NOT
SETTING IT AS SOME KIND OF PRIORITY; HAVING SOME SENSE THAT
IF HE'S NOT SERVED WITH A SUBPOENA HE'S A FREE AGENT.  I
HONESTLY DON'T KNOW WHAT IT IS.

BUT AT THIS POINT IN TIME, I THINK IT'S
APPROPRIATE TO AWARD MONETARY SANCTIONS AGAINST
MR. LOPEZ.  THE ORIGINAL AMOUNT SOUGHT BEFORE THIS MOTION
WAS $4,242.  IN ADDITION, FUNDS ARE SOUGHT TO COMPENSATE
FOR THE TIME EXPENDED IN PREPARING FOR THE DEPOSITION
THOUGHT TO OCCUR ON SEPTEMBER 11TH IN THE AMOUNT OF
$2,164.50; THERE WAS THE $224 FOR COMMUNICATING WITH
MR. HAYES ABOUT THE NON-APPEARANCE OF MR. LOPEZ IN THERE;
AND, THERE'S A SUM FOR PREPARING THE RENEWED MOTION,
WHICH, FRANKLY, I THINK IS TOO HIGH.  SO I'M ALLOWING

$1,500 FOR PREPARING THE MOTION.

SO THAT'S AN AWARD TOTALING THE COMPONENTS OF
$4,242; $2,164.50; $1,500 FOR PREPARING THE MOTION; AND,
$224 FOR THE COMMUNICATION.  AND WHEN YOU ADD THOSE UP
THAT'S THE TOTAL MONETARY SANCTION I'M AWARDING AT THIS
TIME.  AND I'M STILL RESERVING ON THE DIFFERENCE.

BUT AT THIS POINT IN TIME, THOSE SUMS WILL BE
REQUIRED TO BE PAID WITHIN THIRTY DAYS TO MR. KEEHN'S
FIRM.  AND YOUR CLIENT SHOULD BE MADE VERY AWARE,
MR. HAYES, THAT IF HE FAILS TO PAY THAT TOTAL SUM WITHIN
THIRTY DAYS OF TODAY'S DATE -- AND THAT'S TODAY'S DATE,
NOT THE DATE OF ENTRY OF THE ORDER -- WITHIN THIRTY DAYS
OF TODAY'S DATE, I WILL CONSIDER A TERMINATING SANCTION
MOTION TO STRIKE HIS OPPOSITION TO THE PETITION.  AND
WE'LL TAKE IT FROM THERE.

*MR. KEEHN:*  YOUR HONOR, COULD I ASK THE COURT TO GO
OVER THE AWARD ONE MORE TIME?

*THE COURT:*  SURE.  $4,242 FROM YOUR ORIGINAL
APPLICATION; $2,164.50 FOR THE 7.7 HOURS PREPARING FOR THE
9-11 DEPOSITION; $1,500 FOR PREPARING PRESENT MOTION;
AND, THE $224 FOR THE TIME SPENT ON SEPTEMBER 10TH
COMMUNICATING WITH MR. HAYES.  THOSE ARE THE COMPONENTS.

*MR. KEEHN:*  THANK YOU, YOUR HONOR.

*THE COURT:*  ALL RIGHT.

NEW STATUS CONFERENCE DATE?

*MR. KEEHN:*  WELL, YOUR HONOR, IT WOULD BE GOOD TO SET
IT FOR A DATE THAT'S MORE THAN THIRTY DAYS BEYOND TODAY'S

DATE, SO WE'LL KNOW WHETHER WE'VE PAID OR NOT.

    *THE COURT:* RIGHT. I'M ASSUMING -- DO WE WANT TO SET IT FOR A DATE WHEN THERE WOULD ALSO POSSIBLY BE A SUMMARY JUDGMENT HEARING DATE?

        OR SHOULD WE TAKE THIS AS STEP ONE, AND THE SUMMARY JUDGMENT AS STEP TWO BECAUSE IT MAY BE OBVIATED?

    *MR. KEEHN:* I THINK THE LATTER.

    *THE COURT:* MR. HAYES?

    *MR. HAYES:* I THINK MR. KEEHN OUGHT TO FILE HIS MOTION FOR SUMMARY JUDGMENT. I MEAN, DISCOVERY IS OVER NOW -- OR, SET A TRIAL DATE.

        I DON'T SEE WHY WE HAVE TO WAIT THIRTY DAYS TO SEE WHAT HAPPENS.

    *THE COURT:* WELL, SO WE CAN FIND OUT WHETHER HE PAYS IT OR NOT. YOU THINK HE'S GOING TO COME IN HERE AND APPEAR ON A TRIAL WHEN HE DOESN'T PAY THE SANCTIONS?

        I'M NOT GOING TO PERMIT THAT. HE'S EXHAUSTED MY GOOD GRACES, MR. HAYES.

    *MR. HAYES:* ALL RIGHT.

    *THE COURT:* SO, JILL, I GUESS WE OUGHT TO GO THIRTY DAYS. BUT I THINK IT LOOKS LIKE IT'S GOING TO HAVE TO BE THE FIRST WEEK OF JANUARY.

    *THE CLERK:* I'VE RESERVED SOME TIME ON THE 18TH. DO YOU WANT TO DO THAT?

    *THE COURT:* OKAY. WE CAN DO THAT.

    *MR. KEEHN:* WELL, HE HAS UNTIL THE 19TH TO PAY.

    *THE CLERK:* HOW MUCH TIME WILL YOU NEED?

*THE COURT:* IT'S NOT GOING TO TAKE LONG.

*THE CLERK:* OKAY.

*THE COURT:* MR. HAYES MAY WANT TO APPEAR TELEPHONICALLY.

*MR. HAYES:* I WOULD, YOUR HONOR.

*THE CLERK:* JANUARY 7TH AT 9:30 A.M.

*THE COURT:* OKAY.

AND YOU'LL NEED TO CALL MS. WILKINSON AND BECAUSE OF THE HOLIDAYS, I'D SUGGEST YOU CALL BEFORE CHRISTMAS, A COUPLE WEEKS IN ADVANCE, TO SET IT UP WITH HER.

*MR. HAYES:* GREAT.

*THE COURT:* NORMALLY SHE ASKS FOR SEVEN DAYS TO DO THAT. BUT I'M NOT SURE WHERE SHE'S GOING TO BE.

*THE CLERK:* I WILL PUT A COURT NOTE ON HER V-CAL.

*THE COURT:* ALL RIGHT.

*MR. HAYES:* GREAT. THANK YOU, YOUR HONOR.

*MR. KEEHN:* THANK YOU, YOUR HONOR.

*THE COURT:* WE WILL BE IN RECESS.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

       I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY CERTIFY:

       THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE FOREGOING CAUSE ON THE 19TH DAY OF NOVEMBER, 2007; THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.

       DATED THIS _____ DAY OF _____, 2007.

_____
       LYNETTE ALVES, CSR #12534, RPR #61256