# DOCKET NUMBER 126

```
L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
```
**KEEHN & ASSOCIATES**
A Professional Corporation
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

Attorneys for **Petitioning Creditors**

# UNITED STATES BANKRUPTCY COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>FRANCIS J. LOPEZ,<br><br>Alleged Debtor.<br>_____ | Case No. 05-05926-PBINV<br><br>**REPLY TO OPPOSITION TO MOTION FOR AN ORDER IMPOSING TERMINATING SANCTIONS AGAINST THE DEBTOR**<br><br>**[BIFURCATED PHASE II]**<br><br>Date: January 28, 2008<br>Time: 10:30 a.m.<br>Judge: The Honorable Peter W. Bowie<br>Ctrm: 4 |

Petitioning Creditors respectfully submit their Reply to Alleged Debtor Francis J. Lopez's Opposition to their Motion for an Order from this Court imposing terminating sanctions against Lopez by striking his answer and entering an Order for Relief forthwith.

/ / /
/ / /
/ / /
/ / /
/ / /

Case No. 05-05926-PBINV                                                                                       112903/LFK/5311.01

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................. 1

II. FACTUAL BACKGROUND ................................................. 2

    A. Procedural History ..................................................... 2

    B. Evidence of Affluence ................................................. 4

III. DISCUSSION .................................................................. 5

    A. Lopez Has Not Been Candid With the Court and His Claimed Inability to Pay the Sanctions Award is Disingenuous. ........................ 5

    B. The Evidence Offered by Lopez in Support of His Opposition is Specious and Conclusory. .............................................. 7

    C. The Lopez Bank Account Is Marital Property and Available to the Creditors of Both Francis and Madeleine Lopez ........................ 8

    D. Lopez Should Have Followed Appropriate Procedure to Obtain the Requested Relief from this Court's Order .............................. 9

IV. CONCLUSION ............................................................... 10

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

# I. INTRODUCTION

**So as they say in New York:** *Enough already!*[1]
Hon. John S. Rodes, Sr.  United States District Court Judge (Deceased)

Despite an apparent annual income of approximately $123,800,[2] Lopez continues his long history of non-cooperation and non-compliance with an unsupported and disingenuous protestation of poverty. Enough is enough. Since this Petition was filed over two and one half years ago, Lopez's discovery misconduct has made a mockery of these proceedings and this Court's authority. And through it all, Lopez has avoided paying even one penny of the $8,130.50 in accrued monetary sanctions that this Court ordered he pay on or before December 19, 2007, after multiple warnings and deferment of the Order for over ten months.

Lopez's Opposition is more of the same old thing — i.e., Lopez purporting to cooperate while bemoaning his victimization at the hands of Petitioning Creditors, and, ultimately, not actually doing anything to process this case forward, fulfill his duties as a litigant, or comply with the lawful orders of the court. His Opposition claims he has fully cooperated with all discovery requests, and even voluntarily appeared for his own deposition. What he fails to acknowledge is that the limited discovery Petitioning Creditors were able to squeeze out of him were extracted at the cost of over a year of relentless effort, and three motions to compel that which should have been voluntarily tendered.

Lopez then feigns good faith by suggesting – but not tendering – a partial payment to be followed by monthly installments to pay the sanctions over a five-month period of time (i.e., $4,000 "*immediately*" and $1,000 per month thereafter).[3] Again, what he does not say and what he fails to do are far more significant than what he does say. Specifically, he fails to explain why

---

[1] See: *40235 Washington St. Corp. v. W.D. Lusardi* 177 F. Supp. 2nd 1090, 1107 (S.D. Cal, 2001), *Affirmed* on other grounds by *Lusardi v. 40235 Washington St. Corp.* 329 F3d1076 (9th Cir (Cal) 2003. (Judge Rhoades lamenting – with substantial justification – the waste of judicial resources. It is a sentiment that has both value and wisdom when applied here.)

[2] See Declaration of Cynthia K. Lay ("Lay Decl.") filed concurrently herewith at ¶¶ 8-10 and Exhibit 3.

[3] See, Lopez's Opposition, page 4, lines 1 - 2.

Case No. 05-05926-PBINV — - 1 - — 112903/LFK/5311.01

1  he has not proffered any evidence of his inability to pay the sanctions award in full; and he fails to
2  explain why, if he is truly sincere about making a good faith effort to pay the award, he has failed
3  to pay even the $4,000 he admits to having the immediate ability to pay, rather than just dangling
4  the prospect of partial payment to create leverage to coerce a protracted payment plan.  A man
5  acting in good faith does not withhold an obligatory payment to create a negotiating advantage.
6  But Lopez is not a man acting in good faith so he does exactly that.

Evidence obtained by Petitioning Creditors suggests that Lopez does have the ability to immediately pay the sanctions award in full, but is simply choosing not to do so. The choice is obviously economically convenient and it is strategically beneficial as well.  The strategy is simple.  Lopez has insured that every inch of progress made by the Petitioning Creditors comes at the price of unnecessary costs and as well as delay.  By the simple expedient of increasing the costs of litigation, Lopez can economally eviscerate the utility of the remedy sought.  Under the cover of delay he can further dilute the value of the remedy here by incurring new debt that catapults abroad of all pre-petition creditors as administrative gap claims.  His choice reflects a pattern of behavior and purpose that is insidious, inexcusable, and intolerable.

## II.  FACTUAL BACKGROUND

**A.   PROCEDURAL HISTORY**

- **January 29, 2007.**  The sanctions odyssey begins with Petitioning Creditors first Motion to Compel Discovery (Docket Item 91 [Sanctions requested $4,242]).

- **November 19, 2007.**  The Court imposes its sanctions of $8,130.50 and makes it clear that they are entirely due and payable thirty (30) days from that date – December 19, 2007 (the "Sanctions Deadline").  The Court also admonishes Lopez, through his counsel, that failure to pay the sanctions could result in terminating sanctions.[4]  That admonishment concludes with this point-blank warning:

> But at this point in time, those sums will be required to be paid within thirty days to Mr. Keehn's firm.  And your client should be made very aware, Mr. Hayes, that if he fails to pay that total sum

---

[4] See Declaration of L. Scott Keehn filed concurrently herewith at ¶2 and Exhibit 1 (Transcript of the 11/19/07 Hearing at p. 16, ln. 9 to p. 18, ln. 13).

Case No.  05-05926-PBINV           - 2 -                           112903/LFK/5311.01

within thirty days of today's date – and that's today's date, not the date of the entry of the order – within thirty days of today's date, I will consider a terminating sanction motion to strike his opposition to the petition. And we'll take it from there.[5]

- **November 26, 2007.** Petitioning Creditors send Lopez's counsel a copy of the lodged Sanction Order together with wire transfer instructions for Keehn & Associates, APC, general operating account to facilitate timely compliance. The accompanying Transmittal Memorandum emphasizes the importance of timely payment as follows:

> The court has now imposed upon Mr. Lopez the duty to pay the full $8,130.50 awarded in sanctions. The enclosed wire instructions are provided to facilitate his full and timely discharge of that duty. The Petitioning Creditors would first steal and then paraphrase Admiral Lord Nelson's famous signal to his fleet as the Battle of Trafalgar was about to commence: *The United States Bankruptcy Court expects every man to do his duty!* The Petitioning Creditors hold the same expectation.[6]

This was intended to provide Lopez with advance warning that no delay in payment would be tolerated by the Petitioning Creditors.

- **November 26, 2007 to December 18, 2007** [Sanctions Deadline minus one day] – Lopez provides nothing but the *sounds of silence*.

- **December 19, 2007** [Sanctions Deadline]. Lopez, through counsel, communicates that he cannot pay the sanctions award and indicates that he can pay $4,000 plus $1,000 per month thereafter. However, Lopez tenders nothing[7].

- **December 20, 2007.** Petitioning Creditors, through counsel, responded to Lopez's counsel declining to acquiesce to any adjustment in the payment schedule imposed by the Sanctions Order. The reason for that position was specifically summarized as follows:

> "I do not now believe, nor have I ever since the date that I served you with the order and our bank wire instructions believed that your client lacked the financial ability to timely comply with the Court's order. I am informed and believe that my client has or has access to the evidence necessary to establish the validity of my belief. I say that so that your client has fair warning that should he be inclined to

---

[5] *Id.* Transcript of Proceedings at page 18, lines 6-13.

[6] See Declaration of L. Scott Keehn, filled concurrently herewith at ¶ 3 and Exhibit 2.

[7] See Declaration of L. Scott Keehn at ¶ 5, Exhibit 3.

submit a declaration under penalty of perjury to the effect that he did not comply with the court's sanctions order because he lacked the financial ability to do so, he does so at his peril."[8]

- **December 20, 2007 through January 14, 2008.** Lopez makes no tender of any portion of the Sanctions and provides nothing other than the now familiar *sounds of silence*.[9]

- **January 15, 2007.** Lopez mails his opposition to the motion for terminating sanctions supported by his conclusory statement that he lacked the ability to comply with the Court's order.[10]

**B.   EVIDENCE OF AFFLUENCE**

1. Lopez is currently employed by an entity known as Cargotel, pursuant to the terms of a "Cargotel Contractor Agreement" dated August 17, 2006.[11] Under the terms of the Cargotel Contractor Agreement Lopez is reimbursed his out-of-pocket expenses[12] and a daily fee of $400 per day up to "an annualized compensation level of $150,000".[13]

2. During the course of litigation pending against Lopez's wife, Madeleine J. Magill-Lopez, attorneys representing petitioning creditor Alan Stanly or one of his entities subpoenaed bank records from SunTrust Bank located in Orlando, Florida, and obtained monthly checking account statements for Madeleine Lopez for the seven month period from December 2006, through June 2007[14] (hereinafter the "Bank Records"). The Bank Records indicate that in the seven month period reflected by them, Madeleine and/or Francis Lopez caused deposits to be made to the account in the aggregate amount of $72,225.46[15]. That reflects:

---

[8] See Declaration of L. Scott Keehn at ¶ 6, Exhibit 4.

[9] See Declaration of L. Scott Keehn at ¶ 4.

[10] See Docket Item 125 (Proof of Service).

[11] See Declaration of L. Scott Keehn at ¶ 7 and Exhibit 5 (partial Depo Transcript and Depo Exhibit 2).

[12] See LSK Declaration at Exhibit 5, Depo Exhibit p. 1.

[13] *Id.* Depo Exhibit 2 at p. 2-7.

[14] See Declaration of Timothy P. Dillon filed concurrently herewith at ¶3 and Exhibit 2.

[15] See Declaration of Cynthia K. Lay filed concurrently herewith at ¶¶8-10 and Exhibit 3.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1 • An annualized total — $123,822.15[16];

2 • A monthly average — $10,317.92;

3 • Monthly excess over Mrs. Lopez's salary — $6,410.34;

4 • Family income which is 90.4% over the median for a Florida family of four[17]; and,

5 • Family income which is 80.3% over the median income of a "Two Earner

6 Household" in the State of Florida[18].

## III. DISCUSSION

**A. Lopez Has Not Been Candid With the Court and His Claimed Inability to Pay the Sanctions Award is Disingenuous.**

In his Declaration, Lopez claims: "I did not make the sanctions payment because I was unable to come up with the full amount of the sanctions in Mid-December."[19] Significantly, he fails to offer any evidence of why he was "unable to come up with" the money, and what efforts he actually made to do so. For example, Lopez never specifies what his income and expenses currently are, or were, at or around the 30-day time period from when the Court entered the sanctions Order (11/19/2007) through the payment deadline (12/18/2007).[20] But for the evidence garnered by Petitioning Creditors in other litigation, the Court would remain completely unaware of the $123,820 annual income available to the Lopez household.

Nor does Lopez explain why he never contacted Petitioning Creditors to advise of his efforts to obtain payment, and/or advise of his purported inability to pay.[21] This day of reckoning has been a long time coming. Lopez must have known long before December 19, 2007, that he "could not" pay the sanctions award (assuming that was the case). But, rather than prompt and

---

[16] *Id.*

[17] See Lay Decl. at ¶¶ 2-4 and Exhibit 1 (Census Bureau Median Family Income by Family Size from U.S. Trustee website).

[18] *Id.* and Exhibit 2 (Median Income Data from U.S. Census website).

[19] See, Lopez's Opposition, page 5 (Declaration of Francis Lopez), lines 8 - 9.

[20] See, Docket Item 117.

[21] See Declaration of L. Scott Keehn filed concurrently herewith ("Keehn Decl."), ¶3.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

candid disclosure, he holds his cards close to his vest to maximize his perceived bargaining position.

Lopez's claimed inability to pay the sanctions award appears particularly disingenuous given the evidence of his and his wife's regular incomes. On or about August 17, 2006, Lopez entered into an employment contract with a corporation known as Cargotel, Inc. ("Cargotel") whereby he agreed to perform services for Cargotel in exchange for compensation in the amount of $400 per day, plus commissions of up to $150,000 per year.[22] As recently as August 13, 2007, Lopez declared that he was still working for Cargotel as its Vice President of Marketing,[23] and Petitioning Creditors have no reason to believe that his employment has terminated.

Lopez is not the sole source of financial support for he and his wife, Madeleine. Madeleine apparently earns a *net* salary of $3,907.58 per month from her job at Scripps Florida, which is automatically deposited into her checking account held at SunTrust bank.[24] Collectively, Lopez and his wife appear to be earning sufficient salaries to have allowed Lopez to raise the $8,130.50 within the 30-day period provided by the Court. Lopez has provided no evidence to the contrary.

Evidence garnered from discovery conducted in other litigation demonstrates that the Lopez household made deposits into his general checking account for the periods ending December 14, 2006 through June 15, 2007, totaling $72,225.46.[25] That is an average of $10,317.92 per month, which is $6,410.34 per month in excess of the known net salary deposited by Mrs. Lopez in the amount of $3,907.58.[26] That income available for deposit of roughly

---

[22] See, Keehn Decl., Exhibit A.

[23] Exhibit 1, to the Declaration of Timothy P. Dillon filed concurrently herewith ("Dillon Decl.").

[24] See, Dillon Decl., Exhibit 2.

[25] See Lay Decl. at ¶¶ 8-10 and Exhibit 3.

[26] See Dillon Decl. at ¶ 3 and Exhibit 2.

$123,822.15 over the statewide median family income for a family of four in the state of Florida,[27] which is 90.4% over that median family income. The same figure would represent $55,135.15 over the U.S. Census Bureau's estimated median income for a "two-earner" household in the state of Florida,[28] which is 80.3% over the median income of a "two-earner" household in the state of Florida. In sum, the available evidence which the Petitioning Creditors have been able to garner strongly suggest that the Lopez Family household is anything but poverty-stricken despite the Lopez opposition declaration which concludes to the contrary. That evidence, coupled with Lopez's lack of disclosure, suggest his active intent to mislead the Court. That inference is bolstered in light of the fact that on December 20, 2007, his counsel was specifically warned that Petitioning Creditors had evidence to rebut the claim of poverty, and Lopez — at his peril — persisted in suggesting to the Court that he was unable to pay, while standing silent on the reality of the income available to his household.

**B.     The Evidence Offered by Lopez in Support of His Opposition is Specious and Conclusory.**

Despite the fact that the events that have led to this day of reckoning began in January of 2007, Lopez offers no explanation as to why, despite that period of warning, he was simply "unable to come up with the full amount of the sanctions in mid-December."[29] An honest litigant in Lopez's position would have submitted an evidentiary summary identifying: (a) all amounts of cash, balances of deposit accounts, and other liquid assets that were available on November 19, 2007; (b) all cash received by his household between November 19, 2007 and December 19, 2007, to demonstrate the total amount of cash available in that time period; and, (c) a detailed listing of all expenditures made between November 19, 2007 and December 19, 2007, by amount, nature and purpose, in order to establish his necessary expenses. With that evidence, the Court could

---

[27] Lay Decl. At ¶¶ 2-4 and Exhibit 1 ("Census Bureau Median Family Income by Family Size" from U.S. Trustee website), i.e., median income for family of four equals $65,024.

[28] *Id.* and Exhibit 2 (Median income data from U.S. Census website) which indicates that the median income for a two-earner household in the state of Florida is $68,687.

[29] Lopez Declaration ("Lopez Decl.") at ¶ 2.

determine for itself whether Lopez was really "unable" to make the payment as ordered, or had simply been rendered unable to do so by other spending decisions voluntarily made in the operative time-frame. Lopez has never proffered such evidence, either before or after his failure to comply with the Sanctions Order. Knowing what was at stake for the violation, his silence on the point strongly suggests both: (a) that the evidence would demonstrate the willful nature of his failure to pay the Sanctions Order, and (b) Lopez has a healthy respect for the penalties of perjury. At this point, the only effective way to redress Lopez's misconduct, is to grant the motion for terminating sanctions, and enter the Order for Relief forthwith.

**C.   The Lopez Bank Account Is Marital Property and Available to the Creditors of Both Francis and Madeleine Lopez**

Florida is an *equitable distribution* State which is similar to a *community property* State such as California in that all property acquired during the marriage is presumptively "*marital property*," belonging equally to both spouses.[30] Upon dissolution, the marital property is typically distributed equally to each spouse, unless equitable considerations mandate a different distribution.[31] Here, since Francis and Madeleine Lopez have been married since before the couple fled to Florida, the monies deposited into Madeleine's SunTrust checking account presumptively constitute *marital property*, owned equally by, and for the benefit of, both Lopez and Madeleine.[32]

Under Florida law, the debts incurred by Lopez during his marriage to Madeleine constitute *marital liabilities* for which both spouses are presumptively equally responsible.[33] With these principles in mind it is clear that all of the monies deposited into the Lopez Account are marital assets which could have been used towards payment of the Sanctions Award. Those deposits reflect a robust stream of income available to satisfy the sanctions and Lopez has

---

[30] See, Fla. Stat. §61.075(5)(a)(1).

[31] See, Fla. Stat. §61.075(1); *Karimi v. Karimi*, 867 So. 2d 471, 475 (Fla. 5th D.C.A. 2004).

[32] See, *Heinrich v. Heinrich*, 609 So. 2d 94, 95 - 96 (Fla. 3rd D.C.A. 1992) (if certain "assets were acquired during the course of the parties' marriage, they are presumptively marital assets").

[33] See, Fla. Stat. §61.075(5)(a)(1).

advanced no evidence to show why it was not. Petitioning Creditors submit the Sanctions were not paid simply because Lopez chose to spend the money elsewhere rather than enduring the discomfort of having his lifestyle adversely impacted by the Sanctions Order.

**D.   Lopez Should Have Followed Appropriate Procedure to Obtain the Requested Relief from this Court's Order**

If Lopez was truly incapable of complying with the Sanctions Order, then he should have at least complied with the Federal Rules of Civil Procedure ("FRCP"), and filed a motion for relief from the Order pursuant to FRCP 60(b)/FRBP 9024 which provides, in pertinent part:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . or (6) any other reason that justifies relief.

In choosing not to bring a motion for relief, Lopez has once again attempted to avoid his responsibilities as a litigant. As set forth above, he fails to specify what, if any, evidence exists to support his claimed inability to comply with the Order. He proffers nothing more than his own naked assertion that he was "*unable to come up with full amount*." Obviously, that would be patently insufficient to meet the requisite showing of excusable neglect or other justification under FRCP 60(b), and it should likewise be rejected in the context of this Motion.

Lopez could have sought relief from the timing of the Sanctions Order if he had evidence to support his hollow contention that he was unable to pay within the time mandated by the court. No such motion was even sought. An even simpler form of relief could have been embodied in a simple motion for extension of time to satisfy the sanctions award for good cause. The fact that Lopez is represented by experienced and capable bankruptcy counsel, coupled with the fact that neither such motion for relief was requested strongly suggests that there were neither conceptual grounds or factual evidence that could be used to support such a request. If there were no grounds for filing timely motions for relief from the Sanctions Order, there are no grounds to oppose the request for the terminating sanctions which were a foreseeable result of the failure to fully and timely comply with the courts Sanctions Order.

///

## IV.  CONCLUSION

The hearing on this motion will come one day prior to the first anniversary of the commencement of the sanctions odyssey.  Along the way, this Court has bent over backwards to extend to Lopez every benefit of the doubt and reasonable opportunity to comply with his obligations of a litigant.  Lopez appears to view that leniency with disdain.

When the Court finally awarded monetary sanctions, it clearly expressed the disturbing nature of Lopez's conduct and warned him plainly that failure to make full and timely payment of the sanctions awarded would create the risk of a terminating sanction.  The Petitioning Creditors bolstered that warning by expressing, with equal clarity, that they would tolerate no delay in payment.  But, the Court's threat of a terminating sanction has fallen on deaf ears as Lopez first ignores his duty to pay, then fails to seek any relief from the order imposed, and finally submits a declaration under penalty of perjury that is rendered materially misleading by the omission of critical income data that was obviously available to him.  Simply put, Lopez has learned nothing from his experiences before this Court, and continues in his stubborn course of conduct that is tantamount to baiting the Court to actually impose a meaningful sanction.

At the same time, Lopez remains free to dilute the utility of this involuntary petition by creating new and unknowable involuntary gap claims that will advance ahead of those of the Petitioning Creditors and all other pre-petition creditors.  Meanwhile, Lopez has advanced no authorities to rebut the applicability of the principles and authority cited against him in the moving papers, and relies entirely on his protestations of poverty and inability to comply.  The evidence overwhelmingly suggests that his protestations are false.  There is no reason why the ultimate sanction should not be imposed at this time.

For this and all of the foregoing reasons, the Court should grant the motion and issue a terminating sanction striking Lopez's answer to the petition and directing the entry of an order for relief.

Dated: January 22, 2008            **KEEHN & ASSOCIATES**
                                   A Professional Corporation

                            By:    //s// L. Scott Keehn
                                   L. Scott Keehn, Attorneys for **Petitioning Creditors**

Case No.  05-05926-PBINV            - 10 -                    112903/LFK/5311.01