# DOCKET NUMBER 126-1

1  L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
A Professional Corporation
3  402 West Broadway, Suite 1210
San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                          )  Case No.  05-05926-PBINV
                                    )
12      FRANCIS J. LOPEZ,           )  **DECLARATION OF L. SCOTT KEEHN**
                                    )
13          Alleged Debtor.         )  **[BIFURCATED PHASE II]**
                                    )
14                                  )
                                    )  Date:   January 28, 2008
15                                  )  Time:   10:30 a.m.
                                    )  Judge: The Honorable Peter W. Bowie
16                                  )  Ctrm:  4
                                    )
17                                  )
                                    )
18  _____ )

19      I, L. SCOTT KEEHN, declare as follows:

20      1.    I am an attorney at law, duly licenced to practice before all courts of this State, and

21  before the United States District Court for the Southern District of California.  I am a shareholder

22  of the firm Keehn & Associates, APC, attorneys of record for Petitioning Creditors.  I have

23  personal knowledge of the factual matters stated herein.

24      2.    Attached hereto as Exhibit 1 is a true copy of excerpts from the transcript of the

25  Court's proceeding conducted in this case on November 19, 2007.

26      3.    On November 26, 2007, I sent Mr. Hayes an e-mail to which I attached a copy of

27  the lodged Sanctions Order, a Transmittal Memorandum, and wire instructions for the Firm's

28  general account.  The Transmittal Memorandum explained the Petitioning Creditors' expectation

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1    of full and timely compliance with the Sanctions Order.  A true copy of the e-mail and its

2    attachments are attached hereto marked Exhibit 2 and incorporated herein by this reference.

3          4.      As of the date of this Declaration, no portion of the $8,130.50 sanctions award

4    (pursuant to this Court's Order dated 11/19/2007) has been paid, or tendered.

5          5.      At no time during the 30-day time period from when the Court made the Sanctions

6    Order (11/19/2007), through the payment deadline (12/18/2007), did Alleged Debtor Francis J.

7    Lopez ("Lopez") or his attorney ever contact my office to discuss any aspect of the sanctions

8    award other than the e-mail sent by Mr. Hayes on December 19, 2007 (the Sanctions Deadline),

9    asserting for the first time Lopez's inability to pay and requesting a consensual variance from the

10   relief requested.  A copy of that e-mail is attached hereto as Exhibit 3.  My office has never been

11   provided with any specific facts pertaining to Lopez's efforts to pay the sanctions award, and/or

12   the reasons for his purported inability to pay the full amount on or before December 18, 2007, as

13   ordered by the Court.

14         6.      On December 20, 2007, I promptly responded to Mr. Hayes' e-mail declining to

15   acquiesce to any variance from the performance required by the Sanctions Order.  Attached hereto

16   marked Exhibit 4 and incorporated herein by this reference is a true, but redacted copy of that e-

17   mail.  The redacted portion of the e-mail embodies a compromise proposal which is redacted to

18   preserve the privilege pursuant to Rule 408 of the Federal Rules of Evidence.

19         7.      On October 22, 2007, I personally conducted the videotaped Deposition of Francis

20   J. Lopez (the "Lopez Deposition") in San Diego, California.  In the course of the Lopez

21   Deposition, Lopez authenticated an employment contract entitled "Cargotel Contractor

22   Agreement" as a true and correct copy of the employment agreement between him and Cargotel,

23   Inc.[1]  Lopez testified that he entered into the employment contract with Cargotel in August of

24   2006.[2]  A true and correct copy of: (a) the relevant portions of the Lopez Deposition Transcript,

25   and (b) the complete, executed copy of the Cargotel Contractor Agreement (Deposition Exhibit 2)

26

27         [1]       See, Lopez Deposition transcript, page 20, lines 6 - 21.

28         [2]       See, Lopez Deposition transcript, page 21, lines 5 - 18.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1  is attached hereto as Exhibit 5.

2      I declare under penalty of perjury under the laws of the United States that the foregoing is

3  true and correct, and that this Declaration was executed this 22nd day of January, 2008, at San

4  Diego, California.

5                                    //s// L. Scott Keehn

6                                    **L. Scott Keehn**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

# EXHIBIT 1

1          UNITED STATES BANKRUPTCY COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3        CHIEF JUDGE PETER W. BOWIE, PRESIDING

4

5                              )

6                              )

7    FRANCIS J. LOPEZ          ) CASE NO. 05-05926-PB

8                              )

9                              )

10   _____)

11

12

13

14   1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

15   2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER
        IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR

16

17        REPORTER'S TRANSCRIPT OF PROCEEDINGS

18             SAN DIEGO, CALIFORNIA

19           MONDAY, NOVEMBER 19, 2007

20

21

22

23   SAN DIEGO BANKRUPTCY REPORTERS
     BY: LYNETTE ALVES
24   P.O.BOX 496
     SOLANA BEACH, CA 92075
25   (858) 336-8558

**EXHIBIT 1**
**PAGE 1**

1    CLAIMS, WE COULD HAVE BROUGHT THAT REQUEST IN GOOD -- IN

2    EQUALLY GOOD FAITH; WE DIDN'T.  BUT WE'RE ASKING FOR THE

3    MONEY.  WE THINK WE'RE ENTITLED TO THE MONEY.  WE THINK THE

4    COURT SHOULD AWARD IT; AWARD IT ALL; AND, MAKE IT PAYABLE

5    FORTHWITH.

6         *THE COURT:*  ALL RIGHT.

7              WELL, I'VE BEEN OVER IT MULTIPLE TIMES, AND I DO

8    THINK IT'S TIME.

9              I HAVE TO SAY THAT I'M -- YOU KNOW, AS TROUBLED

10   AS I'VE BEEN ALL ALONG IN THIS CASE AND MY DISTRESS HAS

11   GROWN OVER THE INTERVENING PERIOD OF TIME, IN REVIEWING

12   MR. LOPEZ'S OPPOSITION TO THIS PARTICULAR MOTION AND

13   PARTICULARLY HIS EXPLANATION OF THE BUSINESS LEADING UP TO

14   SEPTEMBER 11TH, REALLY, REALLY TROUBLES ME, FRANKLY.

15             AND IT TROUBLES ME IN ANOTHER PARTICULAR.

16   MR. HAYES HAS SURMISED THAT THESE MOTIONS ARE REALLY AN

17   EFFORT TO PIN MR. LOPEZ INTO A POSITION WHERE HE GETS SOME

18   KIND OF TERMINATING SANCTION, IF YOU WILL, AGAINST HIM THAT

19   ALLOWS A DETERMINATION, IN FACT, HE'S A DEBTOR; NOT AN

20   ALLEGED DEBTOR; WHETHER IT'S BY STRIKING HIS RESPONSE IN

21   OPPOSITION TO THE PETITION -- THE INVOLUNTARY PETITION --

22   OR IN SOME OTHER FORM.  AND CERTAINLY THAT'S A THEORY WHICH

23   WOULD NOT BE GROUNDLESS, ASSUMING THAT THAT'S MR. KEEHN'S

24   THEORY.  BUT THAT'S WHAT PUZZLES ME ALL THE MORE.

25             IF THERE'S ANY THOUGHT THAT THAT'S A POSSIBLE

**EXHIBIT 1**
**PAGE 2**

1    THEORY, THEN WHY WOULDN'T YOU STEP UP AND SAY RIGHT OUT OF

2    THE SHOOT, "SEPTEMBER 11TH ISN'T GOING TO WORK FOR ME."

3    OR, "I NEED A DATE -- WE NEED TO JUGGLE A DATE.  I'VE GOT

4    THESE TWO OTHER BALLS UP IN THE AIR WITH MY GEORGIA AND

5    MICHIGAN TRAVEL AND STUFF."  AND, "I NEED TO NAIL THIS DOWN

6    AND HAVE SOME COMMUNICATION THAT'S GOING TO THOSE ENDS."

7         AND PARTICULARLY WITH WHAT HAD PRECEDED IT.  I

8    JUST DON'T FIND ANY KIND -- ANY SEMBLANCE OF GOOD FAITH ON

9    MR. LOPEZ'S PART IN RESPONDING TO THIS.  I'M NOT CLEAR IN

10   MY MIND WHETHER IT'S A MATTER OF HIS JUST NOT RECOGNIZING

11   THE SIGNIFICANCE OF THIS MATTER TO HIM; NOT SETTING IT AS

12   SOME KIND OF PRIORITY; HAVING SOME SENSE THAT IF HE'S NOT

13   SERVED WITH A SUBPOENA HE'S A FREE AGENT.  I HONESTLY DON'T

14   KNOW WHAT IT IS.

15        BUT AT THIS POINT IN TIME, I THINK IT'S

16   APPROPRIATE TO AWARD MONETARY SANCTIONS AGAINST MR. LOPEZ.

17   THE ORIGINAL AMOUNT SOUGHT BEFORE THIS MOTION WAS $4,242.

18   IN ADDITION, FUNDS ARE SOUGHT TO COMPENSATE FOR THE TIME

19   EXPENDED IN PREPARING FOR THE DEPOSITION THOUGHT TO OCCUR

20   ON SEPTEMBER 11TH IN THE AMOUNT OF $2,164.50; THERE WAS THE

21   $224 FOR COMMUNICATING WITH MR. HAYES ABOUT THE

22   NON-APPEARANCE OF MR. LOPEZ IN THERE; AND, THERE'S A SUM

23   FOR PREPARING THE RENEWED MOTION, WHICH, FRANKLY, I THINK

24   IS TOO HIGH.  SO I'M ALLOWING $1,500 FOR PREPARING THE

25   MOTION.

EXHIBIT 1
PAGE 3

```
 1              SO THAT'S AN AWARD TOTALING THE COMPONENTS OF

 2    $4,242; $2,164.50; $1,500 FOR PREPARING THE MOTION; AND,

 3    $224 FOR THE COMMUNICATION.  AND WHEN YOU ADD THOSE UP

 4    THAT'S THE TOTAL MONETARY SANCTION I'M AWARDING AT THIS

 5    TIME.  AND I'M STILL RESERVING ON THE DIFFERENCE.

 6              BUT AT THIS POINT IN TIME, THOSE SUMS WILL BE

 7    REQUIRED TO BE PAID WITHIN THIRTY DAYS TO MR. KEEHN'S FIRM.

 8    AND YOUR CLIENT SHOULD BE MADE VERY AWARE, MR. HAYES, THAT

 9    IF HE FAILS TO PAY THAT TOTAL SUM WITHIN THIRTY DAYS OF

10    TODAY'S DATE -- AND THAT'S TODAY'S DATE, NOT THE DATE OF

11    ENTRY OF THE ORDER -- WITHIN THIRTY DAYS OF TODAY'S DATE, I

12    WILL CONSIDER A TERMINATING SANCTION MOTION TO STRIKE HIS

13    OPPOSITION TO THE PETITION.  AND WE'LL TAKE IT FROM THERE.

14        MR. KEEHN:  YOUR HONOR, COULD I ASK THE COURT TO GO

15    OVER THE AWARD ONE MORE TIME?

16        THE COURT:  SURE.  $4,242 FROM YOUR ORIGINAL

17    APPLICATION; $2,164.50 FOR THE 7.7 HOURS PREPARING FOR THE

18    9-11 DEPOSITION; $1,500 FOR PREPARING PRESENT MOTION; AND,

19    THE $224 FOR THE TIME SPENT ON SEPTEMBER 10TH COMMUNICATING

20    WITH MR. HAYES.  THOSE ARE THE COMPONENTS.

21        MR. KEEHN:  THANK YOU, YOUR HONOR.

22        THE COURT:  ALL RIGHT.

23              NEW STATUS CONFERENCE DATE?

24        MR. KEEHN:  WELL, YOUR HONOR, IT WOULD BE GOOD TO SET

25    IT FOR A DATE THAT'S MORE THAN THIRTY DAYS BEYOND TODAY'S
```

**EXHIBIT 1**
**PAGE 4**

# EXHIBIT 2

# L. Scott Keehn - Sanctions Order, Notice of Lodgement & TM

| | |
|---|---|
| **From:** | L. Scott Keehn |
| **To:** | jhayes@polarisnet.net |
| **Date:** | 11/26/2007 1:41 PM |
| **Subject:** | Sanctions Order, Notice of Lodgement & TM |
| **Attachments:** | Stanly112307TM&NOLSamcOrd.pdf |

Jon,

Please see the attachments below, and let me know if you have any questions, comments or objections to the form of the order.

Best regards,
Scott



This is an e-mail from Keehn & Associates, APC, Attorneys-at-Law.  THE CONTENTS OF THIS E-MAIL ARE PRIVILEGED AND CONFIDENTIAL AND ARE INTENDED ONLY FOR THE USE OF THE ORDINARY USER OF THE E-MAIL ADDRESS TO WHICH IT WAS ADDRESSED.  No one
else may copy or forward all or any of it in any form.  Our postal address is 402 West Broadway, Suite 1210, San Diego, California  92101.

If you receive this e-mail in error, we would be obliged if you would contact the sender by reply email or telephone at (619) 400-2200 and destroy all copies of the original message.

**EXHIBIT 2**
**PAGE 1**

# KEEHN & ASSOCIATES

402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101

A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS AT LAW
www.keehnlaw.com

PHONE: (619) 400-2200
FACSIMILE: (619) 400-2201

## TRANSMITTAL MEMORANDUM
<Via First Class Mail>

| | |
|---|---|
| DATE: | November 26, 2007 |
| TO: | M. Jonathan Hayes, Esq.<br>Law Office of M. Jonathan Hayes<br>21800 Oxnard Street, Suite 840<br>Woodland Hills, CA  91367 |
| FILE NUMBER: | 5311.01 |
| ENCLOSURES: | **1.**   Notice of Lodgement of Orders: (1) Granting Petitioning Creditors' Motion for an Enforcement Order, Etc. and Imposing Specific Monetary Sanctions; (2)  Setting Compliance Date for Payment of Sanctions; (3)  Reserving Jurisdiction for Further Ruling on Balance of Sanctions Requested; And, (4) Continuing Status Conference<br><br>**2.**   Wire Instructions to the Keehn & Associates, APC General Operating Account |
| REQUESTED ACTION: | The court has now imposed upon Mr. Lopez the duty to pay the full $8,130.50 awarded in sanctions. The enclosed wire instructions are provided to facilitate his full and timely discharge of that duty.  The Petitioning Creditors would first steal and then paraphrase Admiral Lord Nelson's famous signal to his fleet as the Battle of Trafalgar was about to commence:  *The United States Bankruptcy Court expects every man to do his duty!*  The Petitioning Creditors hold the same expectation. |

Very truly yours,

**KEEHN & ASSOCIATES, APC**

By: *L. Scott Keehn*
L. Scott Keehn

Enclosures
112257/5311.01

**EXHIBIT 2**
**PAGE 2**

## WIRE TRANSFER INSTRUCTIONS

**ACCT NAME:**
KEEHN & ASSOCIATES, APC

**ABA NUMBER:**
122232109

**ACCT NUMBER:**
2070227641

**BANK ADDRESS:**
CALIFORNIA BANK AND TRUST
SAN DIEGO B STREET OFFICE
525 B STREET
SAN DIEGO, CA  92101
(800) 400-6080

112258/5311.01

**EXHIBIT 2**
**PAGE 3**

L. Scott Keehn (SBN 61691)
**KEEHN & ASSOCIATES, APC**
402 W. Broadway, Suite 1210
San Diego, California 92101
Telephone:    (619) 400-2200
Facsimile:    (619) 400-2201

Attorneys for **Petitioning Creditors**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200  FACSIMILE (619) 400-2201

## UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>FRANCIS J. LOPEZ,<br><br>                Debtor. | **Bankruptcy Case No.  05-05926-PB7**<br><br>**NOTICE OF LODGEMENT OF ORDERS:**<br><br>**(1) GRANTING PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY SANCTIONS;**<br><br>**(2)  SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS;**<br><br>**(3)  RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF SANCTIONS REQUESTED; AND,**<br><br>**(4) CONTINUING STATUS CONFERENCE**<br><br>Date:   November 19, 2007<br>Time:   2:00 p.m.<br>Dept:   4<br>Judge: Hon. Peter W. Bowie |

    **NOTICE IS HEREBY GIVEN** that pursuant to Rule 7054-3(b) of the Local Rules of the

United States Bankruptcy Court for the Southern District of California ("LBR"), the original of the

"**ORDERS: (1) GRANTING PETITIONING CREDITORS' MOTION FOR AN**

**ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY**

**EXHIBIT 2**
**PAGE 4**

1  SANCTIONS; (2) SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS;

2  (3) RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF

3  SANCTIONS REQUESTED; AND, (4) CONTINUING STATUS CONFERENCE," a copy

4  of which is attached hereto marked "Exhibit 1" and incorporated herein by this reference, was

5  lodged with the Bankruptcy Court for signature by the Honorable Peter W. Bowie on November

6  26, 2007.

7       Pursuant to LBR 7054-3(b)(1), you are advised that you have five (5) business days within

8  which to file and serve, pursuant to LBR 7054-3(b)(3), any objections to the form and/or the

9  substance of the pleadings, and/or serve upon the undersigned alternate pleadings if desired.

10

11  Dated:  November 26, 2007            KEEHN & ASSOCIATES,
                                        A Professional Corporation

12

13

14                                      By:  //s// L. Scott Keehn
                                            L. Scott Keehn

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

EXHIBIT 2
PAGE 5
- 2 -
112259/5311.01

# EXHIBIT 1

**EXHIBIT 2**
**PAGE 6**

CSD 1001C [11/15/04]
Name, Address, Telephone No. & I.D. No.
L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
KEEHN & ASSOCIATES, APC
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

Attorneys for **Petitioning Creditors**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

FRANCIS J. LOPEZ,

Debtor.

**LODGED**

BANKRUPTCY NO.   05-05926-PBINV

Date of Hearing:   November 19, 2007
Time of Hearing:   2:00  p.m.
Name of Judge:   Hon. Peter W. Bowie

## ORDERS:
## (1) GRANTING PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY SANCTIONS; (2) SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS; (3) RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF SANCTIONS REQUESTED; AND, (4) CONTINUING STATUS CONFERENCE

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through  2  with exhibits, if any, for a total of  2  pages, is granted.  Motion Docket Entry No.  114 .

// 

//

//

//

//

//
DATED:

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:
**KEEHN & ASSOCIATES, APC**

_____
(Firm name)

By: L. Scott Keehn
Attorney for [X] Movant ☐ Respondent

**EXHIBIT 2**
**PAGE 7** CSD1001C/112271

CSD 1001C (11/15/04)(Page 2)
ORDERS: (1) GRANTING PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY SANCTIONS; (2)  SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS; (3) RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF SANCTIONS REQUESTED; AND, (4) CONTINUING STATUS CONFERENCE

ALLEGED DEBTOR: FRANCIS J. LOPEZ                                              CASE NO:   05-05926-PBINV

---

Petitioning Creditors' "Motion for an Enforcement Order Imposing Sanctions etc." against Alleged Debtor Francis J. Lopez (the "Motion") came on regularly for hearing on November 19, 2007, at 2:00 p.m. in Department 4 of the above-entitled Court located at 325 West "F" Street, San Diego, California, the Honorable Peter W. Bowie presiding.  Appearances were made by the firm of Keehn & Associates, APC, by L. Scott Keehn, on behalf of Petitioning Creditors; and the Law Office of M. Jonathan Hayes, by M. Jonathan Hayes on behalf of Alleged Debtor, Francis J. Lopez ("Lopez"), in opposition to the Motion.

The Court, having previously considered all of the pleadings, papers, requests, declarations and arguments submitted by the parties in support of their positions, and, good cause therefore appearing,

**IT IS HEREBY ORDERED** that:

(1)     The Motion is Granted, and the court hereby awards sanctions against alleged debtor Francis J. Lopez in the amount of $8,130.50 (the "Sanctions");

(2)     Lopez shall pay the Sanctions, or cause them to be paid, to the law firm of Keehn & Associates, APC on or before December 19, 2007; and, in the event that the Sanctions are not paid by that date, the court will entertain and consider imposing a terminating sanction as a further enforcement remedy;

(3)     The Court specifically reserves jurisdiction for, and deferred its ruling on, the balance of the monetary sanctions requested by the Motion, but which were not awarded at this time (i.e., the sum of $4,300); and,

(4)     The Status Conference on this matter will continued to  January 7, 2008, at 9:30 a.m. in Department 4 of the above entitled court.

**EXHIBIT 2**
**PAGE 8**1001C/112271

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9              **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                          )   Case No.  05-05926-PBINV
                                     )
12        FRANCIS J. LOPEZ,          )   Involuntary Chapter 7
                                     )
13             Alleged Debtor.       )
                                     )   **PROOF OF SERVICE**
14                                   )
                                     )
15                                   )
                                     )
16                                   )   Judge:  The Honorable Peter W. Bowie
                                     )   Ctrm:  4
17                                   )
                                     )
18  ─────────────────────────────── )

19        I, the undersigned, declare that I am over the age of eighteen years and not a party to this

20  cause. I am employed in, or am a resident of, the County of San Diego, California, and my

21  business address is:  402 West Broadway, Suite 1210, San Diego, California.

22        On the date shown below, I caused to be served the following document(s):

23  **NOTICE OF LODGEMENT OF ORDERS: (1) GRANTING PETITIONING
    CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING**
24  **SPECIFIC MONETARY SANCTIONS; (2)  SETTING COMPLIANCE DATE FOR
    PAYMENT OF SANCTIONS; (3)  RESERVING JURISDICTION FOR FURTHER**
25  **RULING ON BALANCE OF SANCTIONS REQUESTED; AND, (4) CONTINUING
    STATUS CONFERENCE**
26
27  [ ]   BY PERSONAL SERVICE:  I placed a true copy of the above document(s) in a sealed

28        envelope clearly labeled to identify the attorney for the party being served, and personally

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**EXHIBIT 2**
**PAGE 9**

112270/5311.01

1    caused said such envelope to be personally delivered on each addressee named hereafter:

2    [ ]   BY FACSIMILE AND MAIL: I declare that upon the prior agreement of the party being

3    served, I served the above named documents by facsimile transmission during usual office

4    hours from facsimile number 619-400-2201, to a facsimile machine maintained by the person

5    on whom it is served and that the transmission was reported as complete and without error.

6    Thereafter, I mailed (by first-class mail, postage prepaid) a true copy to each addressee

7    named hereafter:

8    [✔]   BY MAIL: I declare that I am readily familiar with the business practice for collection and

9    processing of correspondence for mailing with the United States Postal Service, that the

10    correspondence shall be deposited with the United States Postal Service this same day in the

11    ordinary course of business; and that a true copy was placed in a separate envelope, with

12    postage thereon fully prepaid for each addressee named hereafter:

13    M. Jonathan Hayes
       Law Office of M. Jonathan Hayes

14    21800 Oxnard Street, Suite 840
       Woodland Hills, CA  91367

15

16    [ ]   BY E-MAIL OR ELECTRONIC TRANSMISSION: I caused a true copy of the above-

17    named document(s) to be sent to the person(s) at the e-mail addresses listed below. I did not

18    receive, within a reasonable time after the transmission, any electronic message or other

     indication that the transmission was unsuccessful:

19

20    I declare under penalty of perjury under the laws of the United States that the foregoing is

     true and correct.

21

22    Executed on November 26, 2007.

23                         /s/ Jeanine M. Bourcier
                         **JEANINE M. BOURCIER**

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**EXHIBIT 2**
**PAGE 10**
- 2 -
112270/5311.01

# EXHIBIT 3

## L. Scott Keehn - Francis Lopez Sanctions

| | |
|---|---|
| **From:** | "M. Jonathan Hayes" <jhayes@polarisnet.net> |
| **To:** | "L. Scott Keehn" <scottk@keehnlaw.com> |
| **Date:** | 12/19/2007 11:04 AM |
| **Subject:** | Francis Lopez Sanctions |

Mr. Keehn,

  My client does not have the $8,100 in sanction to pay now.  He can pay you $4,000 now and $1,000 per month until paid.  Let me know if that will work.

  Thanks, Jon Hayes

M. Jonathan Hayes
jhayes@polarisnet.net
21800 Oxnard St. Suite 840
Woodland Hills, CA 91367
(818) 710-3656
(818) 710-3659 fax
(818) 402-7537 cell
www.lawprofessorblogs.com
If you have received this message in error, please call (818) 710-3656
and notify me of that fact and destroy all copies of this message."
Thank you.

**EXHIBIT 3**
**PAGE 1**

# EXHIBIT 4

# L. Scott Keehn - Re: Francis Lopez Sanctions

**From:**     L. Scott Keehn
**To:**       Hayes, M. Jonathan
**Date:**     12/20/2007 6:08 PM
**Subject:**  Re: Francis Lopez Sanctions

Jon,

I have been in deposition all day yesterday, a hearing in Indio this morning and in Department 2 this afternoon, so I have only this moment seen your email. I apologize for the delay.

Turning to your inquiry itself, the answer is "no". I do not now believe, nor have I ever since the date that I served you with the order and our bank wire instructions believed that your client lacked the financial ability to timely comply with the Court's order. I am informed and believe that my client has or has access to the evidence necessary to establish the validity of my belief. I say that so that your client has fair warning that should he be inclined to submit a declaration under penalty of perjury to the effect that he did not comply with the court's sanctions order because he lacked the financial ability to do so, he does so at his peril.



Please let me know if you have any questions or comments. Meanwhile I hope that you and your family enjoy an extremely pleasant holiday season, and begin the new year fully refreshed.

Best regards,
Scott

# KEEHN
## ASSOCIATES

This is an e-mail from Keehn & Associates, APC, Attorneys-at-Law. THE CONTENTS OF THIS E-MAIL ARE PRIVILEGED AND CONFIDENTIAL AND ARE INTENDED ONLY FOR THE USE OF THE ORDINARY USER OF THE E-MAIL ADDRESS TO WHICH IT WAS ADDRESSED. No one
else may copy or forward all or any of it in any form. Our postal address is 402 West Broadway, Suite 1210, San Diego, California 92101.

If you receive this e-mail in error, we would be obliged if you would contact the sender by reply email or telephone at (619) 400-2200 and destroy all copies of the original message.

>>> "M. Jonathan Hayes" <jhayes@polarisnet.net> 12/19/2007 11:05 AM >>>
Mr. Keehn,

**EXHIBIT 4**
**PAGE 1**

My client does not have the $8,100 in sanction to pay now.  He can pay you $4,000 now and $1,000 per month until paid.  Let me know if that will work.

Thanks,  Jon Hayes

M. Jonathan Hayes
jhayes@polarisnet.net
21800 Oxnard St. Suite 840
Woodland Hills, CA 91367
(818) 710-3656
(818) 710-3659 fax
(818) 402-7537 cell
www.lawprofessorblogs.com
If you have received this message in error, please call (818) 710-3656 and notify me of that fact and destroy all copies of this message."
Thank you.

EXHIBIT 4
PAGE 2

# EXHIBIT 5

1           UNITED STATES BANKRUPTCY COURT

2           SOUTHERN DISTRICT OF CALIFORNIA

3

4     ———————————————————————

5   In Re:               ) Case No. 05-0596-PBINV

6      FRANCIS J. LOPEZ,    )

7         Alleged Debtor.  )

8   ———————————————————————)

9

10     VIDEOTAPED DEPOSITION OF FRANCIS J. LOPEZ

11          San Diego, California

12           October 22, 2007

13

14

15

16

17   REPORTED BY HEIDI J. JOHNSON, RPR, CSR NO. 12525



Petterson Reporting
Truth and Technology, Transcribed.

530 B Street
Suite 350
San Diego, CA
92101

800 649 6353 toll free
619 260 1069 tel
619 688 1733 fax

bookadepo.com

Reporting
Videography
Trial Presentation
Global Reach
Complex Cases
Accurate, Fast

**EXHIBIT 5
PAGE 1**

1          UNITED STATES BANKRUPTCY COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3

4     _____

5     In Re:                    ) Case No. 05-0596-PBINV

6          FRANCIS J. LOPEZ,         )

7               Alleged Debtor.   )

8     _____)

9

10

11          VIDEOTAPED DEPOSITION OF FRANCIS J. LOPEZ,

12     taken on behalf of the Petitioning Creditors at

13     402 West Broadway, Suite 1210, San Diego, California, on

14     Monday, October 22, 2007, at 9:58 a.m., before

15     Heidi J. Johnson, RPR, CSR No. 12525, a Certified

16     Shorthand Reporter in the State of California.

17

18

19

20

21

22

23

24

25

EXHIBIT 5
PAGE 2

```
 1    APPEARANCES:

 2    FOR THE PETITIONING CREDITORS:

 3              KEEHN & ASSOCIATES, APC

 4              BY:  L. SCOTT KEEHN, ESQ.

 5              402 West Broadway, Suite 1210

 6              San Diego, California 92101

 7              (619) 400-2200

 8    ALSO PRESENT:

 9              ABEL SIBREL, VIDEOGRAPHER

10              ALAN STANLY (APPEARING TELEPHONICALLY)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 5
PAGE 3

3

1    A    CargoTel is a company that provides software    10:12

2    to the automotive logistics industry.    10:12

3        MR. KEEHN:  We'll mark that.    10:12

4        (Exhibit 2 was marked.)    10:12

5    BY MR. KEEHN:    10:12

6    Q    Okay.  I'm going to hand you a document    10:12

7    that's been marked as Exhibit 2 to the deposition.  Ask    10:12

8    you if you recognize that document.    10:12

9    A    I do.    10:12

10    Q    Okay.  Can you describe for the record what    10:12

11    it is?    10:12

12    A    It's a contractor agreement that is between    10:12

13    myself and CargoTel, C-a-r-g-o-T-e-l.    10:12

14    Q    Okay.    10:12

15    A    And it's -- it was signed in 2006, August of    10:13

16    2006.    10:13

17    Q    You're looking at the last page?    10:13

18    A    Yes.    10:13

19    Q    Okay.  So that is your signature where it    10:13

20    says, "Contractor Signature and Date"?    10:13

21    A    Yes, it is.    10:13

22    Q    And it was signed on or about August 17,    10:13

23    2006?    10:13

24    A    Yes -- well, this says August 15.    10:13

25    Q    I'm looking on the last page.    10:13

EXHIBIT 5
PAGE 4

20

1          Will you join me in that?                    10:13

2     A    You're looking on the last page of the       10:13

3  exhibit?                                             10:13

4     Q    I see.                                       10:13

5     A    I'm looking at the last page of the contract. 10:13

6     Q    Yeah, right.                                 10:13

7     A    So go two pages in.                          10:13

8     Q    All right.  So that's your signature on the  10:13

9  contractor name and date there as well?             10:13

10    A    Yes.                                          10:13

11    Q    And August 15, 2006, is the time --          10:13

12 approximately the date it was executed?             10:13

13    A    Yes.                                          10:13

14    Q    And, again, on the last page -- that's the   10:13

15 exhibit -- that is your signature?                   10:13

16    A    Yes, it is.                                   10:13

17    Q    Executed on or about August 17?              10:13

18    A    Correct.                                      10:13

19    Q    Do you have any explanation as to why there's 10:13

20 a two-day gap between the execution of the agreement 10:14

21 and the exhibit?                                     10:14

22    A    I do not.                                     10:14

23    Q    Okay.                                         10:14

24    A    Could be a number of things.                 10:14

25    Q    What do you think it could be?               10:14

EXHIBIT 5
PAGE 5                                                        21

1      A    It could be simply that the contractor                10:14

2    agreement was signed, and the exhibit was finalized two        10:14

3    days later.                                                     10:14

4      Q    Okay.  Do you have any recollection as to               10:14

5    whether or not that's the case as to what happened?            10:14

6      A    Not any specific recollection, no.                      10:14

7      Q    Do you have any general recollection?                   10:14

8      A    No.                                                     10:14

9      Q    All right.  Let's turn to the first page of             10:14

10    Exhibit 2.  There are some handwritten items in there.        10:14

11    The word "twice" appears to be inserted.  The word            10:14

12    "period" -- both in paragraph 3.                              10:14

13           Do you see that?                                       10:14

14      A    I do.                                                  10:14

15      Q    Is that your handwriting?                              10:14

16      A    Yes.                                                   10:14

17      Q    Are those your initials to the -- to the              10:14

18    right of that?                                                10:14

19      A    Yes, they are.                                         10:14

20      Q    Okay.  And moving in to the third page of             10:14

21    Exhibit 2, the second paragraph of Section 5 is crossed       10:14

22    out.                                                          10:15

23           Do you see that?                                       10:15

24      A    I do.                                                  10:15

25      Q    Okay.  Is one of -- are one of those initials          10:15

1    yours?                                                        10:15

2        A    Yes.                                                 10:15

3        Q    Did you have any relationship with CargoTel          10:15

4    prior to August of 2006 by which you were entitled to         10:15

5    receive money?                                                10:15

6        A    No.                                                  10:15

7        Q    So what we see as Exhibit No. 2 is your first        10:15

8    contractual relationship with CargoTel?                       10:15

9        A    That's correct.                                      10:15

10       Q    Are you still a contractor for CargoTel?             10:15

11       A    Yes.                                                 10:15

12       Q    Under the terms of the agreement that we have        10:15

13   as Exhibit 2?                                                 10:15

14       A    Yes.                                                 10:15

15       Q    How are you compensated by CargoTel?                 10:15

16       A    Can I ask you a question, Mr. Keehn?                 10:15

17       Q    No.  I get to ask the questions, actually.          10:15

18       A    Well, I'm just wondering what the relevance          10:15

19   is for this in the context of the deposition of a             10:15

20   bankruptcy case, particularly as it applies to paying         10:15

21   debts as they become due.                                     10:16

22       Q    Are you objecting to the question?                   10:16

23       A    I'm asking you.                                      10:16

24       Q    No.  I don't answer the questions.  I ask           10:16

25   them.                                                         10:16

1       A      Well --                                          10:16

2       Q      If you -- if you want to object to the           10:16

3   question, your objection will be noted, and then you're     10:16

4   entitled to answer the question.                            10:16

5       A      Okay.  That is my objection.                     10:16

6       Q      Okay.  You may answer, sir.                       10:16

7       A      Okay.  Can you repeat the question?              10:16

8       Q      No, I can't.  I never do it twice the same --    10:16

9   the same way twice.                                          10:16

10      A      Okay.                                             10:16

11      Q      So I'll ask the reporter to read it back.        10:16

12             (The following question was read back:           10:16

13             "Q    How are you compensated by CargoTel?")     10:16

14             THE WITNESS:  My compensation consists of a      10:16

15  daily rate, which is specified in the contractor            10:16

16  agreement, plus additional bonuses that may come up as      10:16

17  a result of this agreement.                                 10:16

18  BY MR. KEEHN:                                                10:16

19      Q      Okay.  But if I read the four corners of the     10:16

20  agreement, I would be able to see in there all of the       10:17

21  forms of compensation that you have from CargoTel; is       10:17

22  that correct, sir?                                           10:17

23      A      That is correct.                                  10:17

24      Q      Okay.  Was there any signing bonus associated    10:17

25  with this contract?                                          10:17

1       A    There was not.                                          10:17

2       Q    Did you ever receive any form of payment               10:17

3   whatsoever from CargoTel at any time prior to August of          10:17

4   2006?                                                            10:17

5       A    I do not believe so.                                    10:17

6       Q    Okay.  Do you know what kind of an entity              10:17

7   CargoTel is?                                                     10:17

8       A    Entity in terms of what?                                10:17

9       Q    When I say "entity," I mean a form of                  10:17

10  business, other than a proprietorship.  It could be a            10:17

11  corporation, a partnership, a limited partnership, a             10:17

12  limited liability company, a business trust.                     10:17

13      A    As far as I know, it is a corporation.                  10:17

14      Q    Okay.  Do you have any understanding as to             10:17

15  what its state of incorporation is?                              10:18

16      A    I am not positive, but I believe it's either           10:18

17  in Maryland or Delaware.                                         10:18

18      Q    Do you receive any royalties from CargoTel             10:18

19  for your source code?                                            10:18

20      A    Absolutely not.                                         10:18

21      Q    All right.  Now, other than the Noveon              10:18

22  royalties that you've already testified to, have you             10:18

23  ever received from any entity royalties for your source          10:18

24  code?                                                            10:18

25      A    No.                                                     10:18

EXHIBIT 5
PAGE 9

## CARGOTEL CONTRACTOR AGREEMENT

Definitions:

1. "Services" means the tasks to be performed by Contractor, as more fully described in **Exhibit A.**

Scope of Services:

1. **Retention.** CargoTel hereby retains Contractor to perform the Services, and Contractor hereby accepts such retention. Contractor shall report to the CargoTel "President" identified in Exhibit A.
2. **Services.** Contractor shall perform the Services to the best of Contractor's ability and in a professional manner. Contractor acknowledges that time is of the essence in performing the Services.
3. **Interim Review.** During the term of this Agreement, CargoTel may review the progress of the Services, and take such actions as it deems reasonable based on such review.
4. **Changes.** CargoTel may, from time to time, request changes in the Services. If the request substantially alters the nature of the Services, Contractor shall, within seven (7) days thereafter, submit to CargoTel a proposal of changes in cost and schedule. Such changes may be authorized by an Amendment to Exhibit A assigned by the President and Contractor, and Contractor shall promptly effect such changes.
5. **CargoTel Facilities.** CargoTel may, at its discretion, provide Contractor with reasonable use of its facilities as required for Contractor to perform the Services; in which event Contractor agrees to abide by CargoTel's rules and policies, including but not limited to those relating to security and confidential information. Contractor shall sign in and out using the visitor's log book when on site at CargoTel. If Contractor is provided access to any CargoTel computer network, Contractor's use of thereof shall be solely in direct furtherance of Contractor's performance of this Agreement. Contractor shall not remove any property of CargoTel without CargoTel's prior written consent.

PAYMENT:

1. **Compensation.** As full compensation and consideration for the Services and other obligations of Contractor set forth in this Agreement, CargoTel will pay Contractor the Fees in accordance with the schedule on Exhibit A when properly invoiced for accepted Services.
2. **Expenses.** Any expenses incurred by Contractor in connection with providing the Services will be the sole responsibility of Contractor unless otherwise approved in writing by an authorized CargoTel representative prior to Contractor incurring such expense. If expense reimbursement is agreed to by CargoTel, expenses shall be billed at Contractor's actual out-of-pocket cost, with no surcharge, and Contractor shall endeavor to avoid unnecessary expenditures.
3. **Invoice Requirements.** Contractor shall invoice CargoTel each month for the Services performed, and any approved expenses incurred, in the immediately preceding month *~~month~~ period* (the "Invoice Period"). Contractor shall include with each invoice:

   •▯▯▯▯▯▯▯▯ Purchase order (P.O.) number;

   •▯▯▯▯▯▯▯▯ A statement of the work performed;

   •▯▯▯▯▯▯▯▯ Receipts or other documentation supporting reimbursable expenses approved by CargoTel;

   •▯▯▯▯▯▯▯▯ Taxpayer identification number;

   •▯▯▯▯▯▯▯▯ Such additional information as is reasonably requested by CargoTel, Inc.

4. Taxes. Contractor shall be responsible for payment of all taxes and other assessments by any government upon the transactions contemplated by this Agreement, other than taxes CargoTel's income.



EXHIBIT
2  Jen
*Lopez*
10/22/07  HJ

EXHIBIT 5
PAGE 10

RELATIONSHIP OF THE PARTIES:

1. **Personal Agreement.** Contractor agrees to provide the Services personally to CargoTel, and CargoTel is relying on Contractor's expertise in performing the Services. Contractor may not assign, delegate, or subcontract any of the Services without the prior written approval of an authorized CargoTel representative.

2. **Independent Contractor.** Contractor is an independent contractor in the performance of the Services and is not an employee, agent, joint venture, partner, or franchisee of CargoTel. Contractor shall not be entitled to participate in any plans, arrangements, or distributions pertaining to any employee benefits made available to CargoTel's employees. CargoTel shall take no deduction from any amounts paid to Contractor whether for taxes or otherwise. Except to the extent otherwise required by law, Contractor shall report as income all amount received hereunder, file all forms, and pay all taxes that may be required by virtue of Contractor's status as an independent contractor. Nothing in this Agreement or its performance shall imply a joint venture or principal and agent relationship between the parties. Contractor shall indemnify and hold harmless CargoTel from any obligation to pay any taxes or fees, including but not limited to sales or withholding taxes, social security, workers' compensation, unemployment or disability insurance, or similar charges, including any interest or penalties thereon, in connection with any payments made Contractor hereunder.

3. **No Continuation of Service.** Nothing in this Agreement shall confer upon Contractor any right to continue to render services to CargoTel or to become employed by CargoTel, and CargoTel reserves all rights to terminate Contractor's services in accordance with the provisions of this Agreement.

CONFIDENTIALITY; COMPETITION; OWNERSHIP:

1. **Confidentiality.** Contractor agrees to keep confidential and not to disclose or make any unauthorized use of any trade secrets, confidential information, knowledge, data, or other information of CargoTel relating to products, processes, software, know-how, designs, formulas, test data, customer lists, business plans, marketing plans and strategies, and pricing strategies or other subject matter pertaining to any business of CargoTel or any of CargoTel's clients, customers, contractors, licensees or affiliates or information received in confidence from other third parties, which Contractor may have produced, obtained, learned or otherwise acquired during the course of rendering services to CargoTel (including, but not limited to, the Services) (collectively, "Confidential Information"). Contractor's duty to maintain such Confidential Information in confidence hereunder shall survive the termination of this Agreement for a period of three (3) years, except to the extent that any such Confidential Information becomes generally known in the industry through no direct or indirect fault of Contractor.

2. **Other Obligations.** Contractor acknowledges that CargoTel from time to time may have agreements with third parties which impose obligations or restrictions on CargoTel regarding inventions or creative works made during the course of work thereunder or regarding the confidential nature of such work. Contractor agrees to be bound by all such obligations and restrictions of which Contractor is informed, and to take all action necessary to discharge the obligations of CargoTel thereunder upon notice of same from CargoTel.

3. **Competition.** Contractor acknowledges that it will be exposed to certain of CargoTel's sensitive and confidential business information. Contractor may not use Confidential Information except for the benefit of CargoTel in accordance with this Agreement. Therefore, during the term of this Agreement, Contractor shall not perform services for any person which CargoTel reasonably deems to be a competitor of CargoTel, unless such services are wholly unrelated to the Services or Contractor first obtains CargoTel's written consent.

4. **Ownership.** Contractor acknowledges that any information Contractor may receive from CargoTel or is generated by Contractor as a result of the Services is the sole property of CargoTel, except to the extent information was already known, independently developed, or rightfully received from a third party by Contractor, or was generally know to the public. Contractor shall assign, and hereby does assign, such ownership and any rights of reproduction to CargoTel. Contractor further agrees to execute such documents of

**EXHIBIT 5**
**PAGE 11**

2-2

assignment or take such other action as CargoTel may reasonably request to evidence, perfect, or effect the transfer, recordation, or protection of such deliverables.

5. **Non-Compete.** Contractor agrees that it will be a significant member of CargoTel and CargoTel is engaged business in each of the fifty states of the United States. Contractor therefore agrees that during contract period  with CargoTel it will not engage in any other employment or related activity that is in competition with CargoTel unless it  receives CargoTel's prior written approval from the President to hold such outside employment or engage in such business or activity. Such written approval will not be unreasonably withheld if such outside employment, business or activity would not in any way be competitive with the business or proposed business of CargoTel or otherwise conflict with or adversely affect in any way your performance of your contract obligations to CargoTel.

Commencing on Employment Date and continuing until the twenty-four (24) months after you depart from CargoTel, you will not, as an employee, agent, consultant, adviser, independent contractor, general partner, officer, director, stockholder, investor, lender or corporation, partnership or other entity, or in any other capacity directly or indirectly: engage in any business which is competitive and substantially similar to the CargoTel's business or permit your name  to be used in connection with a business which is competitive and substantially similar to the CargoTel's business; or induce or attempt to induce any person who at the time of such inducement is an employee of CargoTel to perform work or services for any other person or entity other than CargoTel. Notwithstanding the foregoing, you may own, directly or indirectly, solely up to one percent (1%) of any class of "publicly traded securities" of any person or entity which owns a business that is competitive or substantially similar to that of CargoTel.

If any restriction set forth in this non-competition section is found by a Court to be unreasonable, then you agree, and hereby submit, to the reduction and limitation of such prohibition to such area or period as shall be deemed reasonable. You acknowledge that the services that you will provide to CargoTel under this agreement are unique and that irreparable harm will be suffered by CargoTel in the event of the breach by you of any of your obligations under this agreement.

**WARRANTIES:**

1. **Warranties by Contractor.** Contractor represents and warrants to CargoTel as follows: (a) Contractor has the expertise, experience, and knowledge to perform the Services; (b) Contractor is under no obligation which prevents Contractor from, and Contractor is not otherwise prohibited from, performing the Services; (c) Contractor has the right to disclose or use all ideas, processes, designs, data and other information which Contractor has gained from third parties, and which Contractor discloses or uses in the performance of this Agreement; (d) Contractor shall promptly disclose to CargoTel all actual or potential financial relationships or conflicts of interest  Contractor may have with respect to, or resulting from, any recommendations or advice given by Contractor to CargoTel; and (e) the Services will comply with the material requirements of this Agreement.  Contractor acknowledges that the warranties contained in this Agreement are in addition to any other applicable warranties, express or implied, arising under statute, law, or otherwise.

**INSURANCE, PERMITS, COMPLIANCE WITH LAWS:**

1. **Insurance.** Contractor shall carry adequate policies of insurance to protect CargoTel from liability for Contractor's activities under this Agreement, including but not limited to workers' compensation insurance, state disability insurance, general liability insurance and such other insurance as CargoTel may reasonably request.  Contractor will furnish to CargoTel a certificate evidencing such coverage upon CargoTel's request.
2. **Permits.**  Contractor shall acquire and maintain in good standing, and as its sole expense, all permits and licenses required of it by law in the performance of Service under this Agreement.
3. **Compliance with Laws.**  Contractor will perform the Services in accordance with all applicable laws.

**EXHIBIT 5**
**PAGE 12**

TERMS AND TERMINATION:

1. **Term.** This Agreement shall commence on the Effective Date and shall continue through the "Expiration Date" set forth on *Exhibit A*, unless earlier terminated in accordance with the provisions of this Article 8 or upon the mutual agreement of the parties.
2. **Termination Without Cause.** CargoTel may terminate this Agreement for convenience by delivering written notice to Contractor at least fourteen (14) days before the desired termination date; at CargoTel's request, Contractor shall continue to perform the Services during the fourteen (14) day period. Contractor may terminate this Agreement for convenience by delivering written notice to CargoTel at least twenty-eight (28) days before the desired termination date.
3. **Termination for Breach.** If either party defaults in the performance of any material provision of this Agreement, the nondefaulting party may terminate this Agreement upon notice thereof. Contractor's failure to perform the Services in a manner reasonably satisfactory to CargoTel and in accordance with the provisions of *Scope of Services, item 2, Services*, shall constitute a default for purposes of this *Term and Termination, item 8.3, Termination for Breach*.
4. **Phase-Out.** In the event either party provides notice of termination, Contractor agrees to cooperate with CargoTel to continue the work and effect a smooth transition of the Services and Deliverables to CargoTel or its designee in a professional manner reasonably acceptable to CargoTel.
5. **Payment Following Termination.** In the event of early termination of this Agreement for any reason, Contractor shall be entitled to receive payment only for work actually performed in accordance with the Services identified on Exhibit A and any permitted expenses. CargoTel may withhold a reasonable amount to compensate it for any estimated damages in the event CargoTel terminates this Agreement as a consequences of Contractor's breach of this Agreement or if Contractor fails to comply with Contractor's obligations under *Confidentiality; Competition; Ownership Section, item 1 Confidentiality and item 3 Competion*, and *Terms and Termination Section, item 6, Return of CargoTel Property*.
6. **Return of CargoTel Property.** Upon termination of this Agreement for any reason, Contractor shall deliver to CargoTel, within seven (7) days after the date of expiration or earlier termination: (1) any property of CargoTel in the possession or control of Contractor; (2) any data of any nature pertaining to or incorporating any Confidential Information of CargoTel, including any copies thereof; (3) the originals and all copies Deliverables, whether finished, prepared or produced by Contractor for CargoTel pursuant to this Agreement; and (4) such documentation as may be necessary to evidence the results of the Services and the progress of Contractor in the performance of the Services.
7. **Termination Obligations.** The provisions of Article 4, 5, 6, and 7 shall survive any termination or expiration of this Agreement.

INDEMNIFICATION:

1. **General.** Contractor shall defend, indemnify, and hold harmless CargoTel, its officers, directors, partners, employees, agents, affiliates, and attorneys from and against any loss or damage, or claims or actions brought by third parties, and from any and all direct and consequential resulting damages, losses, expenses, including reasonable attorney's fees and costs of litigation, arising out of or resulting from the performance of the Services to the extent caused by the negligence or willful misconduct of Contractor or any of Contractor's employees, agents, or subcontractors.

MISCELLANEOUS:

1. **Notices.** Any notice, demand, request or other communications hereunder shall be in writing and shall be deemed sufficient when delivered as follows: if to CargoTel, at CargoTel's principal place of business set forth above, Attention: President (as identified on Exhibit A), cc: Chief Counsel; and if to Contractor, at Contractor's address as set forth on *Exhibit A*, unless another address shall have been designated in the manner provided for in this *Miscellaneous Section, item 1, Notices*.
2. **Successors and Assigns.** The rights and benefits of this Agreement shall inure to the

**EXHIBIT 5**
**PAGE 13**

2-4

benefit of and be enforceable by each party's permitted successors and assigns. The obligations of Contractor under this Agreement may only be assigned with the prior written consent of CargoTel.

3. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, without regard to the choice of law rules of any jurisdiction. Any action to enforce the provisions of this Agreement shall be brought in a court of competent jurisdiction in Baltimore, Maryland.

4. **Severability.** If any provision of this Agreement is found to be invalid, void, or unenforceable, the remaining provisions shall continue in full force and effect.

5. **Waiver.** No waiver of any provision of this Agreement shall be effective, except pursuant to a written instrument signed an authorized representative of the party waiving compliance, and any such waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

6. **Arbitration.** We each agree that any and all disputes between us, which arise out of this contract, the termination of this contract, or under the terms of this contract, shall be resolved through final and binding arbitration. This shall include, without limitation, disputes relating to this contract, any disputes regarding your contract work at CargoTel or the termination thereof, claims for breach of the covenant of good faith and fair dealing, and any claims of discrimination or other claims under and federal, state, or local law or regulation now in existence or hereafter enacted and as amended from time to time concerning in any way the subject of your contract with CargoTel or its termination. Binding arbitration will be conducted in Baltimore, MD in accordance with the rules and regulations of the American Arbitration Association. Each side will bear its own attorney's fees, unless otherwise decided by an arbitrator. You understand and agree that arbitration shall be instead of any civil litigation, that each side waives its rights to a jury trial, and that the arbitrator's decision shall be final and binding to the fullest extent permitted by law and enforceable by any court having jurisdiction thereof.

7. **Counterparts.** This Agreement may be executed in two counterparts each of which shall be an original and together which shall constitute one and the same instrument.

8. **Entire Agreement.** This Agreement, together with its Exhibits, embodies the entire agreement and understanding of the parties hereto, and supersedes all prior or contemporaneous written or oral communications or agreements between CargoTel and Contractor regarding its subject matter. This Agreement may only be amended by written agreement signed by Contractor and an authorized CargoTel representative.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date. Complete and sign **Contractor Agreement Exhibit A.**

_____     8/14/06

CargoTel President Name and Date

_____     8/15/06

Contractor Name and Date

**EXHIBIT 5**
**PAGE 14**

2-5

## CARGOTEL CONTRACTOR AGREEMENT
## EXHIBIT A

This form is for completion by independent contractors providing services to CargoTel Inc.
Please read the **Professional Services (Contractor) Agreement (General Services) Policy**
and complete the requested information below.  Sign Exhibit A and forward original to CargoTel
President prior to the effective date of your services.  Retain a copy for your records.

- **Contact Information:**

    *Name* Francis Lopez

    *Title*

    *Work Phone*  850 240 0397

    *Home Phone*

    *FAX*

    *E-mail*  fjl4 @ adelphia . net

    *URL*

    *Effective*

    *Expiration*

- **Form of Organization (specify):**

  [✓] Individual (none)    [ ] General Partnership    [ ] Limited Partnership
  [ ] Limited Liability Partnership    [ ] Sole Proprietorship    [ ] Limited Liability Company
  [ ] Corporation    [ ] Other

- Enter your ADDRESS in the space provided below.

    310 SAND MYRTLE TRAIL  DESTIN, FL 32541

- Enter your TAX I.D. in the space provided below.

    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

**EXHIBIT 5**
**PAGE 15**

2-6

- Enter your **PURCHASE ORDER # (REQUIRED)** in the space provided below.

  *CT01*
  _____

- Enter your **SERVICES** in the space provided below.

  _____

- Enter your **FEE/PAYMENT SCHEDULE** in the space provided below.

  Daily fee of $400.00 per day

  _____

  You will be eligible to receive commissions based on referrals made directly by you to CargoTel, which result in CargoTel new business revenue. CargoTel will pay you 25% of the base subscription, license and transaction revenue generated for the first year (excluded revenue items include Start-up Fee, Server Maintenance Fee(s), custom programming, help desk, and fax transmissions) up to an annualized compensation level of $150,000.00.

- **CONTRACTOR SIGNATURE** and **DATE** _____ 8/17/06

- **CARGOTEL PRESIDENT SIGNATURE** and **DATE** _____ 8/14/06

  Note: Subcontracting of Services by Contractor is not permitted unless Subcontractor Addendum to Professional Services Agreement is completed and signed.

**EXHIBIT 5**
**PAGE 16**