# LAW OFFICES OF
# M. JONATHAN HAYES

21800 Oxnard St. Suite 840
Woodland Hills, CA 91367

*tel:* 818.710-3656
*fax:* 818.710-3659

www.jonhayes.net

FILED

MAY 2 9 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY M. Jonathan Hayes   DEPUTY

jhayes@polarisnet.net

May 27, 2008

**United States District Court**
Southern District of California
Office of the Clerk
880 Front Street, Suite 4290
San Diego, CA 92101-8900

> Re:    Francis Lopez (Appellant) vs. Alan Stanly
>         Bankruptcy Case No. 05-05926-PBINV

Dear Sir or Madam:

      Enclosed please find two copies of: **(1) APPELLANT'S TRANSCRIPTS, (2) APPELLANT'S EXCERPTS OF RECORD Volume 1 and (3) APPELLANT'S EXCERPTS OF RECORD Volume 2,** and an additional copy of this letter with a self-addressed stamped envelope.  Please file these documents with the court and stamp the additional letter as received then return it to us via the provided envelope.

      Also, please note my change of address, I am no longer at 6080 Center Drive.

      Sincerely,

M. Jonathan Hayes

|djh
enclosure

Civil No. 08cv0713 JAH(WMc)
Bankruptcy No. 05-5926

**FILED**

MAY 2 9 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

In re

FRANCIS J. LOPEZ,

*Debtor,*

---

FRANCIS J. LOPEZ,

*Appellant,*

V.

ALAN STANLY,

*Appellee.*

On Appeal from Bankruptcy Court

---

## APPELLANT'S TRANSCRIPTS

---

M. Jonathan Hayes (Bar No. 90388)
21800 Oxnard St., Suite 840
Woodland Hills, CA 91367
818  710-3656
818  710-3659 fax

*Attorney for Appellant*
*Francis J. Lopez*

CR

Civil No. 08cv0713 JAH(WMc)
Bankruptcy No. 05-5926

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

In re

FRANCIS J. LOPEZ,

*Debtor,*

---

FRANCIS J. LOPEZ,

*Appellant,*

V.

ALAN STANLY,

*Appellee.*

On Appeal from Bankruptcy Court

---

## APPELLANT'S TRANSCRIPTS

---

M. Jonathan Hayes (Bar No. 90388)
21800 Oxnard St., Suite 840
Woodland Hills, CA 91367
818  710-3656
818  710-3659 fax

*Attorney for Appellant*
*Francis J. Lopez*

## TABLE OF CONTENTS

## APPELLANT'S EXCERPTS OF RECORD

## TRANSCRIPTS

| Filing Date | Tab | Item | No. |
|---|---|---|---|
| 07/31/2007 | <u>110</u> | **Transcript of Hearing on June 25, 2007** | **4** |
|  |  |  |  |
| 12/17/2007 | <u>119</u> | **Transcript of Hearing on November 19, 2007** | **25** |
|  |  |  |  |
|  |  | **Transcript of Hearing on January 28, 2008** | **46** |

Document 110

0 0 0 3

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING

|  |  |
|---|---|
| | ) |
| | ) |
| FRANCIS J. LOPEZ | ) CASE NO. 05-05926-PB |
| | ) |
| | ) |
| _____ | ) |

1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER: A ) IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR; AND, B) IMPOSING EVIDENTIARY SANCTIONS AGAINST THE DEBTOR.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, JUNE 25, 2007

SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, JUNE 25, 2007 , 10:00 A.M.

--- O O O ---

0005

THE CLERK:    IN THE MATTER OF FRANCIS J. LOPEZ.  TWO

MATTERS: CONTINUED STATUS CONFERENCE ON INVOLUNTARY

PETITION AND ANSWER; AND, PETITIONING CREDITORS' MOTION

FOR AN ENFORCEMENT ORDER (1) IMPOSING MONETARY SANCTIONS

AGAINST THE DEBTOR; AND, (2) IMPOSING EVIDENTIARY

SANCTIONS AGAINST THE DEBTOR.

APPEARANCES, PLEASE.

MR. KEEHN:    GOOD MORNING, YOUR HONOR.

SCOTT KEEHN APPEARING ON BEHALF OF THE PETITIONING

CREDITORS.

MR. HAYES:    GOOD MORNING, YOUR HONOR.

JOHN HAYES APPEARING FOR THE DEBTOR -- ALLEGED DEBTOR.

MR. KEEHN:    YOUR HONOR, THIS PARTICULAR ODYSSEY BEGAN

BEFORE THANKSGIVING, IF YOU CAN BELIEVE THAT, BACK ON

NOVEMBER 3RD.

THE COURT:    THAT'S NOTHING AT ALL COMPARED TO ADAMS.

    MR. KEEHN:    YOU KNOW, I WAS HOPING YOU WOULDN'T

JUST CONFINE YOURSELF TO THIS RECORD.  AND ALSO THE CASE

BEFORE, THERE WERE THIRTEEN MEET AND CONFER LETTERS; AND

WE DON'T MEET THAT RECORD, EITHER.

BUT THIS IS AN INVOLUNTARY PETITION.  AND WE WERE HOPING

TO MOVE IT ALONG WITH A LITTLE MORE ALACRITY THAN YOU MIGHT

EXPECT IN --

THE COURT:    SO YOU'RE SAYING IT REMAINS INVOLUNTARY?

MR. KEEHN:    OH, VERY INVOLUNTARY.

WHAT WE HAVE HERE IN RESPONSE TO OUR REQUEST FOR DISCOVERY

THAT WERE PROMULGATED NOW SEVEN MONTHS AGO; AT FIRST THERE
WAS NO RESPONSE AT ALL IN THE APPROPRIATE PERIOD.  ALL
OBJECTIONS WERE WAIVED.  AND WHEN WE MOVED FOR MOTION TO
COMPEL THE SANCTIONS.  COUNSEL COMES IN AND APOLOGIZES
FOR DEBTOR, BEMOANS THE FACT THAT WE'RE ASKING FOR A LOT
OF INFORMATION; AND AGREES TO THE COURT'S RULING THAT
SUPPLEMENTAL RESPONSES SHOULD BE PROVIDED NOT LATER THAN
THE 21ST OF MAY.
WELL, ON THE 21ST OF MAY -- AND, ACTUALLY NOTHING HAPPENED
BETWEEN THE TIME THE COURT MADE THAT -- GAVE THE DEBTOR
THAT SECOND CHANCE.  NOTHING HAPPENED BETWEEN THEN AND
MAY 21ST UNTIL SHORTLY AFTER SEVEN IN THE EVENING WHEN MR.
HAYES E-MAILED MY E-MAIL WITH A REQUEST FOR A DAY OR TWO
EXTENSION.
WELL, I DIDN'T HAVE ANY PROBLEM WITH A DAY OR TWO
EXTENSION, AS LONG AS I GET AN EQUAL EXTENSION AND TIME
TO REPLY.  AS SOON AS I SAW THE E-MAIL THE FOLLOWING
MORNING, I RELAYED THAT INFORMATION TO MR. HAYES.
IN RESPONSE TO THAT, I RECEIVED ANOTHER E-MAIL THAT SAID,
NO, WE'RE NOT GOING TO PROVIDE ANYTHING ELSE AND WE'RE
WITHDRAWING OUR REQUEST FOR EXTENSION.
SO ONCE AGAIN, WE HAVE THE TIME PERIOD PASSING AND, OF
COURSE, WE WERE PREJUDICED, NOT IN AN OVERWHELMING DEGREE,
BUT NOTICEABLY BY THE FACT THAT IN RESPONSE TO THE FIRST
E-MAIL WE HAD ANTICIPATED THAT WE WOULD NOT HAVE TO MEET
THE ORIGINAL DEADLINE FOR RESPONSE.
SO, UPON RECEIVING THE WITHDRAWAL E-MAIL, WE QUICKLY

REGROUPED AND DID OUR REPLY -- DID OUR MOTION, RATHER.  WE
HAD ONLY A FEW DAYS TO DO THAT, GIVEN THE SETTING OF THIS
PARTICULAR HEARING IN ORDER TO GIVE AN ADEQUATE TIME TO
RESPOND.  SO WE DID THAT.

AND WE HAVE WHAT HAS BECOME A FAMILIAR PATTERN.  WE HAVE,
WHAT PURPORTS TO BE RESPONSES GIVEN ON BEHALF OF MR. LOPEZ;
AND, IN FACT, THEY'RE NOT REALLY GOOD-FAITH RESPONSES AT
ALL.  THEY PROVIDE SOME PAPER, MOST OF WHICH WAS PLEADINGS
IN CASES THAT MR. LOPEZ HAD EVERY REASON TO KNOW THAT WE
ALREADY HAD AND SO WOULD BE COMPLETELY USELESS.

NOW, THIS PARTICULAR DISCOVERY DISPUTE CREATES A DYNAMIC
THAT'S DIFFERENT FROM MOST DISCOVERY DISPUTES, BECAUSE
MOST DISCOVERY DISPUTES ARISE IN TRADITIONAL LITIGATION.
AND TRADITIONAL LITIGATION IS ALWAYS LOOKING BACK AT AN
EVENT AND IS STATIC, IN TERMS OF WHERE THE LIABILITIES WILL
FALL.  BECAUSE THEY DEPEND ON WHAT HAPPENED BACK WHEN
WHATEVER INCIDENT OCCURRED, WHATEVER COURSE OF CONDUCT
OCCURRED THAT GAVE RISE TO THE TRADITIONAL LITIGATION.
SO YOU'RE ALWAYS LOOKING BACKWARDS AND YOU'RE NOT REALLY
CONCERNED ABOUT WHAT'S HAPPENING ON A GOING-FORWARD
BASIS.

THE DIFFERENT DYNAMIC THAT'S CREATED IN EVERY INVOLUNTARY
PETITION IS THE INVOLUNTARY GAP DYNAMIC.  BECAUSE, WHILE
DELAY IS ALWAYS PREJUDICIAL TO BRINGING A MATTER TO ITS
QUICK AND COST EFFECTIVE CONCLUSION, IT HAS AN AUXILIARY
PREJUDICE IN INVOLUNTARY CASES BECAUSE THE DEBTOR IS FREE
TO CREATE OBLIGATIONS THAT WILL BECOME INVOLUNTARY GAP

0008

CLAIMS AND LEAPFROG AHEAD IN PRIORITY TO THE CLAIMS OF THE
CREDITORS THAT BROUGHT THE ACTION.

AND THAT PARTICULAR FORM OF PREJUDICE IS RENDERED ALL THE
MORE DISTURBING BECAUSE THERE'S NO WAY TO MONITOR IT, NO
WAY TO QUANTIFY IT.  MR. LOPEZ IS OUT THERE.  MAYBE HE'S
NOT CREATING INVOLUNTARY GAP CLAIMS AND PERHAPS HE IS.
BUT THE RISK IS THAT THE UTILITY OF THE REMEDY OF
INVOLUNTARY BANKRUPTCY AS A CREDITOR'S REMEDY IS SUBJECT
TO THIS FORM OF DILUTION, SIMPLY BECAUSE THE ALLEGED
DEBTOR REFUSES -- I WANT TO UNDERSCORE THAT -- REFUSES TO
COMPLY WITH THE DISCOVERY IN GOOD FAITH.

WE ARE TRYING TO NARROW THE ISSUES WITH THE EVIDENCE THAT'S
AVAILABLE SO THAT WE CAN PROCEED IN THE SECOND PHASE, AS
WE DID IN THE FIRST, TO PRESENT THE ISSUES TO THE COURT
IN A SUMMARY JUDGMENT FASHION, BECAUSE WE THINK THIS CASE
IS AMENABLE TO SUMMARY JUDGMENT.

AND MR. LOPEZ IS JUST VERY ADROITLY BLOCKING THAT WITH THIS
PASSIVE/AGGRESSIVE TACTIC OF HIS, WHERE HE DOESN'T REPLY
AT ALL UNTIL HIS BACK IS ABSOLUTELY TO THE WALL AND SOME
DRACONIAN CONSEQUENCE MIGHT BEFALL HIM.  AND THEN HE'LL
RESPOND, BUT HE WON'T REALLY RESPOND IN GOOD FAITH.  HE
GIVES YOU A PARITY OF GOOD-FAITH, THAT DOES NOT ADVANCE
THE PURPOSES OF DISCOVERY.

NOW, WE SHOULDN'T HAVE TO WAIT UNTIL HIS BACK IS AGAINST
THE WALL TO GET OUR RESPONSES.  WE'RE ENTITLED TO OUR
RESPONSES THIRTY DAYS AFTER THEY'RE SERVED, THIRTY-THREE
WHEN THEY'RE SERVED BY MAIL.

0009

AND WE'RE LONG PAST THAT WITH THESE DISCOVERY REQUESTS
THAT WERE PROMULGATED BACK IN NOVEMBER.  AND AS THE
OBJECTION DISCLOSES, THE ALLEGED DEBTOR IS WELL AWARE THAT
WE'RE DOING, ONCE AGAIN, WHAT WE DID IN THE FIRST PHASE;
WE'RE USING THE WRITTEN DISCOVERY AS, TO SORT OF TEE UP
THE ISSUES FOR OUR, DEPOSITION EXAMINATION, WHICH IS THE
NORMAL WAY TO PROCEED.

SO BY HINDERING AND DELAYING THE DISCOVERY PROCESS IN THE
WRITTEN PHASE, HE NATURALLY DEFERS THE ORAL EXAMINATION,
WHICH IN TURN DEFERS, ONCE AGAIN, THE DAY OF RECKONING.
AND ALL THE WHILE HE'S FREE TO BE OUT THERE INCURRING
FURTHER GAP CLAIMS.

SO I THINK THAT WHAT WE'VE SUGGESTED IN OUR PAPERS IS THE
APPROPRIATE RESPONSE.  NUMBER ONE, THE DEFERRED MONETARY
SANCTIONS THAT THE COURT ORIGINALLY AWARDED OF $42
000 -- EXCUSE ME, I'M DREAMING -- $4,242. SHOULD BE
IMPOSED.

THE -- I DON'T THINK THAT THE RESULT THE COURT HAD HOPED
TO ACHIEVE BY DEFERRING IT HAS BEEN ACHIEVED.  I DON'T
THINK IT EVER WILL BE ACHIEVED.  I THINK THAT THIS IS JUST
MR. LOPEZ'S LITIGATION TACTIC; HALT, HINDER AND DELAY AND
MAYBE I'LL HAVE TO ANSWER SOMEDAY.

THE EVIDENTIARY SANCTIONS THAT WE'VE REQUESTED, I THINK,
ARE APPROPRIATE.  AND THEY WILL FACILITATE THE PURPOSE OF
DISCOVERY, BECAUSE THEY NARROW THE ISSUES FOR US, EVEN
WITHOUT THE COOPERATION OF THE ALLEGED DEBTOR.

SO WE WOULD REQUEST THAT THE EVIDENTIARY SANCTIONS BE

IMPOSED AS REQUESTED, AND THAT THE MONETARY SANCTION BE
AWARDED FORTHWITH, WITH A DATE CERTAIN ESTABLISHED AS TO
WHEN THAT SECTION SHOULD BE PAID.

THE COURT:     MR. HAYES.

MR. HAYES:     YOUR HONOR, THANK YOU.   I HAVE A COUPLE OF
COMMENTS.

THE FIRST ONE IS, I WANTED TO COMMENT ON THIS, THE REQUEST
I'VE MADE OF MR. KEEHN FOR ANOTHER ONE OR TWO DAYS.   I'VE
HAD -- MR. LOPEZ LIVES IN FLORIDA, AND I HAVE A HARD TIME
COMMUNICATING WITH HIM.   WE COMMUNICATE BY E-MAIL AND I
HAVE HIS CELL PHONE, AND INEVITABLY, I CATCH HIM WHEN HE'S
PICKING HIS KIDS UP OR HE'S IN A STORE OR SOMETHING AND
THERE'S THE THREE-HOUR TIME GAP.

ANYWAY, I SPOKE TO HIM VERY BRIEFLY A COUPLE OF TIMES.   I
SAID, LOOK, WE HAVE TO GET THEM MORE DOCUMENTS.

THERE'S -- MR. KEEHN SENT ME THIS LETTER, WHAT ARE WE GOING
TO DO?   WE DISCUSSED IT REAL QUICKLY.   AND FINALLY, THE
TIME CAME WHERE HE ABSOLUTELY HAD TO FILE A RESPONSE, AND
THAT'S WHEN I SENT THE E-MAIL TO MR. KEEHN SAYING, GIVE
ME ANOTHER DAY OR TWO.

THE FOLLOWING DAY I SPOKE TO MR. LOPEZ AT GREAT LENGTHS.
AND WE WENT THROUGH THE LETTER ONE BY ONE.   AND I MEAN,
THERE ISN'T ANYTHING ELSE WE CAN COME UP WITH.   THERE
ISN'T ANY OTHER DOCUMENTS EXCEPT THIS ISSUE WITH THE WIFE.
THERE ISN'T ANY DOCUMENTS THAT HAVEN'T BEEN TURNED OVER.
THERE ISN'T ANY, ANY MORE EXPLANATION OR, OR, MORE DETAILS
THAT WE COULD GIVE, OTHER THAN REALLY REPEAT INFORMATION

THAT'S ON VARIOUS -- OF THE MANY STATEMENTS THAT HAVE BEEN
TURNED OVER I BELIEVE MANY TIMES BY NOW.

BUT, ADDRESSING THE MOTION, THE MOTION HAS TWO PARTS.  ONE
IS GRANT THESE SANCTIONS, WHICH I, FRANKLY, BELIEVE HAS
ALWAYS BEEN THE GOAL.  AND THE SECOND IS THESE EVIDENTIARY
SANCTIONS.

AS FAR AS THE SANCTIONS, THE $4000. I JUST WANT TO SAY
AGAIN, I JUST DON'T THINK THERE'S ANY OTHER DOCUMENTS THAT
CAN BE TURNED OVER OTHER THAN MRS. LOPEZ'S DOCUMENTS,
THERE ARE NO OTHER DOCUMENTS THAT CAN BE TURNED OVER THAT
HAVEN'T ALREADY BEEN TURNED OVER.

I BROUGHT MR. LOPEZ'S FIRST DEPOSITION.  IT'S
240-SOMETHING PAGES.  THIS IS WELL MORE THAN A YEAR AGO.
THE REST OF THESE PAPERS ARE EXHIBITS.  EVERY STATEMENT
OF EVERY ONE OF HIS BILLS OF THE TWENTY OR SO CREDITORS
ARE ALL CONSUMER DEBTS.  THIS IS WELL MORE THAN A YEAR OLD.
MR. KEEHN HAS SENT OUT SEVERAL SUBPOENAS.  I'M ACTUALLY
NOT SURE WHAT HE'S GOTTEN FROM THOSE.  WE PROVIDED MORE
DOCUMENTS TWICE IN THIS GO AROUND.  IF MR. KEEHN REALLY
WANTED TO GET MOVING WITH THIS, JUST TAKE THE DEPOSITION
AGAIN.  HE'S BEEN TELLING ME HE'S GOING TO TAKE THIS
DEPOSITION.  HE SOMEHOW CAN'T BECAUSE HE
REALLY -- THERE'S SOME MAGICAL PIECE OF PAPER THAT I'M NOT
CLEAR ABOUT THAT HE HASN'T GOTTEN YET; AND THEREFORE, HE
CAN'T GO FORWARD.  THAT'S JUST RIDICULOUS.

WITH RESPECT TO THE DOCUMENTS IN MRS. LOPEZ'S POSSESSION,
I'VE ACTUALLY NEVER MET MRS. LOPEZ.  BUT I MEAN, MY WIFE

HAS A CHECKING ACCOUNT AND SHE CARRIES THE CHECKBOOK
AROUND IN HER PURSE. AND I'D BE LOOKING FOR A DIVORCE
ATTORNEY IF I WENT INTO HER PURSE AND FOUND HER CHECKBOOK
AND STARTED SENDING OFF INFORMATION SOMEBODY HAPPENED TO
BE SUING ME.

THE COURT:    SO YOU'RE CONTENDING THIS IS ALL SEPARATE
PROPERTY, AND HE HAS NO INTEREST WHATSOEVER IN THE FUNDS
THAT SHE ADMINISTERS OR THE DEBT SHE'S INCURRED WHETHER
IT'S A LEHMAN BROTHERS, OR THE MORTGAGE ON THE HOUSE OR
ANY OF THOSE KINDS OF THINGS?

MR. HAYES:    I DON'T KNOW IF I'D GET INTO WHETHER IT'S
COMMUNITY PROPERTY OR NOT. BUT IF THEY WANT, I MEAN, THEY
CAN GO AFTER HER. THEY CAN SUBPOENA HER OR THEY CAN COME
IN WITH SOME SORT OF EVIDENCE OF WHY THEY HAVE THE RIGHT
TO MAKE MR. LOPEZ --

THE COURT:    SO WHAT'S YOUR THEORY, WHAT'S YOUR THEORY
ON WHY SHE DOESN'T HAVE TO PROVIDE AN ANSWER WITH RESPECT
TO WHAT SHE HAS OR HOLDS OR PAYS, PARTICULARLY, IF HE'S
GOT SOME OBLIGATION OR LIABILITY ON IT?

MR. HAYES. THEY HAVEN'T ASKED HER. THEY'RE ASKING HIM.

THE COURT:    NO. THAT'S NOT MY QUESTION. MY QUESTION
IS, WHAT'S YOUR THEORY FOR WHY HE DOESN'T HAVE TO ANSWER
THAT QUESTION?

MR. HAYES:    THAT'S HER RIGHT TO PRIVACY.

THE COURT:    SO IT'S HER RIGHT TO PRIVACY, BECAUSE IT'S
SOME SEPARATE INTEREST OF HERS OR WHAT?

WHERE DOES SHE HAVE A RIGHT TO PRIVACY ON SOMETHING THAT

0013

YOU SAY YOU DON'T GET TO THE COMMUNITY PROPERTY QUESTION.

I MEAN, HE'S GOT A COMMUNITY PROPERTY INTEREST IN IT, IF

HE'S GOT A STATE STATUTORY RIGHT TO CO-MANAGEMENT OF

COMMUNITY ASSETS OR ANYTHING ELSE THAT I HAVE NO IDEA WHAT

FLORIDA LAW PROVIDES.

I'M ASKING YOU WHAT YOUR THEORY IS FOR WHY HE DOESN'T HAVE

TO ANSWER IT?

MR. HAYES:     WELL, FOR ONE THING, FLORIDA IS NOT

COMMUNITY PROPERTY.  AND I DON'T KNOW HOW FLORIDA LAW IS.

BUT WHAT I FOCUSED ON IS MR. LOPEZ, GO TO YOUR WIFE AND

GET THESE DOCUMENTS.

THE COURT:     NO, POSSESSION -- YOU KNOW, WHAT DOES HE

HAVE IN HIS POSSESSION OR CONTROL?  WHAT DOES HE HAVE?

HAS HE PRODUCED EVERYTHING THAT'S IN HIS POSSESSION OR

CONTROL WITH RESPECT TO THAT?

MR. HAYES:     OH, ABSOLUTELY.  BUT THAT'S --

THE COURT:     AND THAT'S INCLUDING AS TO HIS LIABILITY

WITH RESPECT TO IT?

MR. HAYES:     YES.  AS FAR AS I KNOW.  BUT THAT DOES

RAISE THE QUESTION OF DOES -- IS WHAT'S IN HIS WIFE'S PURSE

IN HIS POSSESSION OR CONTROL?  I MEAN, THAT'S WHAT HE'S

TELLING ME.  I CAN'T --

THE COURT:     NO.  YOUR ANSWER IS, HE HAS NO INTEREST OR

OBLIGATION IN THE LEHMAN BROTHERS OR THE MORTGAGE OR

WHATEVER IT IS, THEN WHY DON'T YOU AGREE TO THOSE

EVIDENTIARY SANCTIONS AS WELL?  YOU SAY HE'S TURNED OVER

EVERYTHING.

MR. HAYES:    WELL, EVERYTHING THAT'S IN HIS POSSESSION
OR HIS CONTROL WITHOUT GETTING DIVORCED; YES.

THE COURT:    THEN THE ANSWER, IT SEEMS TO ME, IS THAT
YOU AGREE TO THE EVIDENTIARY SANCTIONS, SAID THAT HE
CANNOT PRODUCE ANYTHING HE HAS NOT ALREADY PRODUCED, COME
TIME OF TRIAL WITH RESPECT TO THE ISSUE THAT WE'LL BE
LITIGATING IN THIS PHASE 2 OF THIS ISSUE.

MR. HAYES:    I MIGHT DO THAT.  I HADN'T THOUGHT OF IT,
MYSELF.

I WAS FOCUSING ON THE MOTION, WHICH BASICALLY ASKED YOU
TO GRANT SUMMARY JUDGMENT TODAY.  BUT I WOULD AGREE WITH
THE THEORY THAT THINGS -- HE SHOULDN'T BE ABLE TO COME IN
WITH SOMETHING AFTER THIS, OR HE SHOULDN'T BE ABLE TO,
"QUOTE," "UNQUOTE," FIND SOMETHING, YOU KNOW, TWO DAYS
BEFORE TRIAL.

AND I DO BELIEVE EVERYTHING'S BEEN TURNED OVER.

THE COURT:    WELL, THAT'S WHAT MR. KEEHN IS -- I HAVE
NO IDEA WHAT HIS STRATEGY IS, BUT THAT'S AT LEAST WHAT HE'S
ASKING FOR IN THE CONTEXT OF THIS MOTION, BECAUSE HE WANTS
TO BE ABLE TO CLOSE THE BOOK AND THEN GO TAKE YOUR CLIENT'S
DEPO KNOWING THAT YOUR CLIENT IS NOW PRECLUDED FROM
STEPPING UP AND SAYING OH, BUT HERE'S THIS, AND HERE'S THIS
AND HERE'S THAT; AND NOT EVER HAVING HAD A CHANCE TO LOOK
AT IT OR INDEPENDENTLY VALIDATE IT FROM THIRD PARTIES OR
ANY OF THOSE KINDS OF THINGS.

YOU WOULDN'T WALK INTO A DEPO BLIND THAT WAY.  I'M
CONFIDENT OF THAT.

0015

MR. HAYES:    NO.  YOU KNOW, WHAT I WAS FOCUSING ON IS
THE MOTION SAYS ELIMINATE ALL EVIDENCE ENTIRELY REGARDING
EACH ONE OF THESE CATEGORIES; NOT JUST ELIMINATE -- NOT
JUST HAVE AN EVIDENTIARY SANCTION THAT WE CAN'T FIND,
"QUOTE," "UNQUOTE," FIND MORE DOCUMENTS.

I THINK I WOULD AGREE TO THAT.  WHATEVER DOCUMENTS HAVEN'T
BEEN TURNED OVER UP TO NOW, I WOULD AGREE TO THAT.

THE COURT:    OKAY.

MR. HAYES:    I'M NOT SURE I -- YOU KNOW, HE JUST FOUND
A JOB AND HE DOESN'T HAVE $4,400.  AND I DON'T KNOW WHAT
ELSE I CAN SAY.

YOU SAID, YOU'RE NOT SURE WHAT MR. KEEHN'S STRATEGY IS.
I MEAN, IF THEY REALLY WANTED THIS CASE TO BE FINISHED,
THEY WOULD HAVE TAKEN HIS DEPOSITION SIX OR EIGHT MONTHS
AGO.

THE COURT:    I WOULDN'T HAVE.  I WAS A LITIGATOR FOR A
BUNCH OF YEARS.  I'M NOT WALKING INTO A DEPOSITION WHEN
THERE'S A WHOLE BUNCH OF DOCUMENTS OUT THERE AND HAVE THEM
SURPRISE ME.

MR. HAYES:    WELL, I DON'T THINK THERE ARE.

THE COURT:    WELL --

MR. HAYES:    FOR MONTHS THERE HAVEN'T BEEN A WHOLE BUNCH
OF DOCUMENTS OUT THERE, BUT ALL RIGHT, I HAVE NOTHING
FURTHER.

THE COURT:    OKAY.  MR. KEEHN.

MR. KEEHN:    YES.  THANK YOU, YOUR HONOR.

IN ADDITION TO THE REASONS THAT YOU'VE ALLUDED TO AS TO

WHY YOU WOULDN'T TAKE THE DEPOSITION WITHOUT THE
DOCUMENTS, THERE WERE RESPONSES THAT MR. LOPEZ GAVE IN HIS
ORIGINAL DEPOSITION A YEAR AGO, NOW, THAT TO THE EFFECT
THAT, WELL THERE ARE MORE DOCUMENTS.  I JUST HAVE TO LOOK
AT THEM.  AND OBVIOUSLY THAT'S A DOOR WE NEED TO CLOSE.
IF WE GET THE EVIDENTIARY SANCTIONS, AS MR. HAYES
SUGGESTED, WE'VE CLOSED THE DOOR.

AND I, IN TERMS OF THE -- IF HE'S AGREEING TO THE SANCTIONS
THEN I DON'T NEED TO ADDRESS HOW HELLACIOUS THIS ARGUMENT
OF MARITAL STRESS IS CONCERNED.  I DID HAVE SOME DOCUMENTS
THAT WERE RECENTLY FILED IN THE DISTRICT COURT THAT BLOW
THAT OUT OF THE WATER.  BUT IF HE'S AGREEING TO IT, I WON'T
ADDRESS IT.

AS FAR AS THE MONETARY SANCTION IS CONCERNED, YOUR HONOR,
THIS -- WE TRIED TO CLOSE THE DOOR IN A PROCESS THAT BEGAN
SEVEN MONTHS AGO.  I SHOULDN'T BE HERE SEVEN MONTHS LATER
CLOSING IT ON A CAPITULATION TO A SECOND MOTION TO COMPEL
THAT I SHOULDN'T HAVE HAD TO FILE.

IF THERE REALLY ARE NO DOCUMENTS, THEN WHY IS THE RESPONSE,
WELL, THERE'S MORE THINGS I NEED TO CHECK AND I CAN'T BE
SURE.  IF THERE REALLY ARE NO DOCUMENTS, THEN WHY WAS THAT
ANSWER NOT GIVEN BACK IN MAY?  WHY WAS IT NOT GIVEN BACK
IN DECEMBER WHEN IT WOULD HAVE BEEN TIMELY?  THERE'S NO
EXPLANATION FOR THAT.

THIS IS EXACTLY THE KIND OF GAMESMANSHIP THAT RULE ONE OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE ABHORS.  THE
PURPOSE OF THE RULES, THEMSELVES, IS TO PROVIDE A

0017

MECHANISM AND A FRAMEWORK FOR THE RAPID AND FAIR
RESOLUTION OF ISSUES.

NOW, ONE COMMENT, SORT OF, AT LEAST I INFERRED THE ARGUMENT
FROM THE FACT THAT WE HAVE TWO TO THREE INCHES OF PAPER
FROM THE ORIGINAL DEPOSITION.  AND WHY ARE WE STILL HERE
A YEAR LATER?

IN ADDITION TO NOT HAVING THE DOCUMENTS PRODUCED, WE ALSO
HAVE THE POINT THAT THIS CASE WAS BIFURCATED AT MR. LOPEZ'S
REQUEST.  THERE WERE MANY QUESTIONS THAT I COULD EASILY
HAVE ASKED THE FIRST GO AROUND THAT MIGHT HAVE OBVIATED
THE NEED FOR FURTHER DEPOSITION, OR AT LEAST REDUCED IT.
I COULDN'T BECAUSE OF THE CONSTRAINTS PLACED BY THE
BIFURCATION ORDER.  AND I TRIED TO ADHERE TO THAT ORDER.
SO I HAVE TO TAKE HIS DEPOSITION YET A SECOND TIME.

AND THEN ONE OF THE LAST REMARKS THAT COUNSEL MADE, I
THINK, UNDERSCORES THE NEED FOR THE SANCTIONS HAVING BEEN
IMPOSED BECAUSE IT HIGHLIGHTS THE GAMESMAN-LIKE APPROACH
THAT MR. LOPEZ HAS TAKEN.  AND THAT, THAT COMMENT WAS, HE
JUST GOT A JOB.

WELL, IF BY THAT HE'S REPRESENTING TO THE COURT THAT UP
UNTIL THIS TIME HE'S BEEN UNEMPLOYED, I THINK THAT
EXACERBATES THE CULPABILITY OF MR. LOPEZ IN NOT TIMELY
RESPONDING.  WHAT ELSE WAS HE DOING?  WAS HE REALLY
SPENDING FORTY HOURS A WEEK LOOKING FOR A JOB?

IF HE WAS UNEMPLOYED, CERTAINLY HE WOULD HAVE HAD MORE TIME
AVAILABLE TO TEND TO HIS DUTIES AS A LITIGANT THAN A
FULLY-EMPLOYED INDIVIDUAL WOULD.  AND EVEN A

0018

FULLY-EMPLOYED INDIVIDUAL IS EXPECTED TO RESPOND AND
RESPOND TIMELY TO DISCOVERY OBLIGATIONS.

AS I SAID IN THE BEGINNING, WE DON'T KNOW TODAY, AND WE
WON'T KNOW UNTIL THAT ORDER FOR RELIEF IS ENTERED AND
SCHEDULES ARE FILED, IF THAT EVER HAPPENS.  HOW MUCH THIS
ESTATE AND THE GENERAL UNSECURED CREDITORS THAT BROUGHT
THIS POSITION HAVE BEEN PREJUDICED BY THIS DELAY AND THE
INCURRING OF GAP CLAIMS?

I THINK THAT MESSAGE THE COURT SENT THE FIRST TIME TO  MR.
LOPEZ WAS, I'LL GIVE YOU ANOTHER CHANCE.  I THINK THE
MESSAGE THAT THE COURT NEEDS TO SEND TO MR. LOPEZ NOW IS,
THIS ISN'T A GAME.  AND THERE AREN'T ANY MORE CHANCES.
AND YOU DIDN'T PLAY BY THE RULES, AND SO THE SHIELD THAT
I PUT IN FRONT OF YOU BEFORE, IS NOW DOWN.  AND THESE
SANCTIONS ARE DUE AND PAYABLE.

THE COURT:    WELL, IN MY VIEW, AT LEAST AT THIS POINT
IN TIME AND ON THE PRESENT STATE OF THE RECORD, THE
EVIDENTIARY SANCTIONS ARE WARRANTED, AND WILL BE ORDERED
IN THE FOLLOWING RESPECTS:

WITH RESPECT TO DEBTOR'S RESPONSE TO REQUEST FOR ADMISSION
NUMBER FIVE, THAT WILL BE, AND THE DEBTOR HAS AGREED, THAT
WILL BE AN UNQUALIFIED ADMISSION;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS FROM NOVION BETWEEN JANUARY 1 OF 2005 TO JULY 1
OF 2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED FROM JANUARY 1, 2005 TO JULY 1,

2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED BY HIS WIFE BETWEEN JANUARY 1,
2005 AND JULY 1 OF 2005. AND I WILL ADD, AS TO THESE
PROHIBITIONS, THAT'S TO THE EXTENT NOT ALREADY DISCLOSED
TO THE MOVING CREDITORS, THE PETITIONING CREDITORS. IF
IT'S BEEN DISCLOSED, THEN IT'S THERE. THERE'S NO
PRECLUSION OF USE OF THAT INFORMATION IF IT'S BEEN
PREVIOUSLY PROVIDED TO THE PETITIONING CREDITORS, IN THE
CONTEXT OF THE DISCOVERY OF THIS CASE;

THE DEBTOR WILL BE PROHIBITED FROM PROVIDING ANY EVIDENCE
OF A DEBT IN FAVOR OF LEHMAN BROTHERS OR ANY PAYMENT TO
LEHMAN BROTHERS AS OF THE PETITION DATE EXCEPT TO THE
EXTENT AND SAME PROVISO, EXCEPT TO THE EXTENT ALREADY
DISCLOSED TO THE COUNSEL FOR PETITIONING CREDITORS;

AND, DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
DEBT IN FAVOR OF AMERICAN EXPRESS, BANK OF AMERICA, BANK
CARD, CINGULAR, CITI CARD, HOUSEHOLD BANK, NORTHWEST
FLORIDA DAILY NEWS, CITIBANK QUICKEN, TEXACO, VERIZON,
UNION BANK, OR MR. GORRILL OR ANY PAYMENT TO ANY OF THEM
AS OF THE PETITION DATE, EXCEPT TO THE EXTENT ALREADY
PROVIDED THE COUNSEL FOR PETITIONING CREDITORS IN THE
CONTEXT OF THE DISCOVERY IN THIS MATTER.

AS TO THE MONETARY SANCTIONS, I AM, AGAIN, GOING TO DEFER
AWARDING THOSE. BUT THEY REMAIN THE SORT OF DAMOCLES OVER
MR. LOPEZ. BECAUSE I DON'T KNOW THE ANSWER TO SOME OF
MR. KEEHN'S SPECULATION AS TO WHAT'S GOING ON. MR. KEEHN

IS CONVINCED THAT THIS IS A GAME THAT MR. LOPEZ IS PLAYING.
I'M NOT YET CONVINCED OF THAT.

SO EVENTUALLY WE WILL GET TO THE ANSWER ONE WAY OR THE
OTHER.  AND ONCE I KNOW THE ANSWER, I'LL APPLY THEM, IF
I DEEM THAT'S APPROPRIATE AT THE TIME.  BUT THE
EVIDENTIARY SANCTIONS AT THIS POINT IN TIME ARE WARRANTED.
I'LL SIGN AN ORDER TO THAT EFFECT.

MR. KEEHN:     THANK YOU, YOUR HONOR.

THE COURT:     OKAY.  NOW, WE HAVE A STATUS CONFERENCE.
TIMING.

ARE YOU, NOW, LOOKING AT THE DEPOSITION, MR. KEEHN?

MR. KEEHN:     I AM.  AND CONSISTENT WITH THE LOCAL
RULES, I NEED TO CONFER WITH COUNSEL AS TO AVAILABLE DATES.

MR. HAYES:     I HAVE TO BE BACK HERE JULY 31ST.  THAT'S
A LITTLE QUICK, BUT I'M GOING TO BE HERE ANYWAY.

THE COURT:     JULY 31ST?  THAT'S A TUESDAY.

MR. KEEHN:     YES.

THE COURT:     WHAT TIME IS YOUR HEARING ON THE 31ST?

MR. HAYES:     AT 10:00.  IT'S A SUMMARY JUDGMENT MOTION,
SO IT COULD BE IN THE AFTERNOON; SUMMARY JUDGMENT MOTION
THAT HASN'T BEEN FILED.

THE COURT:     WE COULD DO 2:00 P.M. ON THE 31ST.  DOES
THAT WORK?

MR.KEEHN:     IT'S CLEAR ON MY CALENDAR, YOUR HONOR.

MR. HAYES:     2:00?

THE COURT:     OKAY.  AND WE'LL DO THAT AS A FURTHER
STATUS CONFERENCE.  BUT IN THE MEANTIME, I ASSUME THE TWO

OF YOU WILL MEET AND CONFER ON A DEPOSITION DATE.  AND THEN

ONCE THE DEPOSITION IS CONCLUDED, I ASSUME MR. KEEHN,

YOU'RE PLANNING A MOTION?

MR. KEEHN:     I AM.

THE COURT:     JUST SO MR. HAYES SEES WHAT'S COMING AND

THEN WE'LL -- ONCE THAT MOTION'S DECIDED, WE'LL KNOW WHERE

WE GO NEXT, IF ANYWHERE.

MR. HAYES:     GREAT.

MR. KEEHN:     THANK YOU, YOUR HONOR.

MR. HAYES:     THANK YOU, YOUR HONOR.

THE COURT:     ALL RIGHT.  WE'LL BE IN RECESS.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

        I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY

CERTIFY:

THAT I REPORTED IN SHORTHAND THE PROCEEDINGS
HELD IN THE FOREGOING CAUSE ON THE 25TH DAY OF JUNE, 2007;
THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING
UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT
CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.


DATED THIS _____ DAY OF _____, 2007.


_____

LYNETTE ALVES, CSR #12534, RPR #61256


0023

Document 119

0024

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING

|  |  |
|---|---|
| | ) |
| | ) |
| FRANCIS J. LOPEZ | ) CASE NO. 05-05926-PB |
| | ) |
| | ) |
| _____ | ) |

1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER
IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, NOVEMBER 19, 2007

SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

0025

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, NOVEMBER 19, 2007, 2:00

--- O O O ---

*THE CLERK:*  IN THE MATTER OF FRANCIS J. LOPEZ.

0026

WE HAVE TWO MATTERS:  PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR; AND, CONTINUED STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER.

APPEARANCES, PLEASE.

*MR. KEEHN:* GOOD AFTERNOON, YOUR HONOR.

SCOTT KEEHN APPEARING ON BEHALF OF THE PETITIONING CREDITORS.

*MR. HAYES:* GOOD AFTERNOON, YOUR HONOR.

JOHN HAYES, H-A-Y-E-S, FOR THE ALLEGED DEBTOR.

*THE COURT:* OKAY.  LET'S TAKE THE STATUS FIRST.

*MR. KEEHN:* OKAY.

*THE COURT:* I TAKE IT THE DEPOSITION DID GO FORWARD, FINALLY?

*MR. KEEHN:* YES, IT DID.  AND IN FACT, SHORTLY BEFORE LEAVING TO MAKE THIS APPEARANCE, A MESSENGER ARRIVED AND DELIVERED THE TRANSCRIPT.

SO THE REVIEW PERIOD IS NOW IN PROCESS.

*THE COURT:* AND THEN?

*MR. KEEHN:* WELL, WE -- OUR PLAN OF PREPARING A SUMMARY JUDGMENT MOTION HAS NOT CHANGED.

WE THINK THAT THAT'S THE WAY TO PROCEED; EVEN IF WE DON'T GET THE GOLDEN RING, I THINK WE'LL ELIMINATE MANY ISSUES THAT YOU WON'T NEED TO TAKE TIME TO TRY.

*THE COURT:* OKAY.

MR. HAYES, ANYTHING ELSE ON STATUS?

*MR. HAYES:* NO, YOUR HONOR.  I AGREE.

*THE COURT:* ALL RIGHT.

MR. KEEHN?

*MR. KEEHN:* THANK YOU, YOUR HONOR.

AS A PRELIMINARY MATTER ON THE MOTION, I WOULD RENEW THE EVIDENTIARY OBJECTIONS TO THE LOPEZ --

*THE COURT:* PARAGRAPHS SEVEN THROUGH TEN?

*MR. KEEHN:* CORRECT.

AND I WOULD INQUIRE OF THE COURT IF YOU WOULD LIKE SEPARATE ARGUMENT ON THAT OR JUST RULE ON IT AT THE END?

*THE COURT:* I'LL RULE ON IT AT THE END.

*MR. KEEHN:* THANK YOU, YOUR HONOR.

WITH REGARD TO THIS MOTION -- AND I'M ASSUMING THAT YOUR HONOR HAS HAD AN OPPORTUNITY TO AND HAS, IN FACT, REVIEWED THE PAPERS AND IS FAMILIAR WITH THE FACTS AS THEY ARE SET FORTH THERE.

SO I WON'T BELABOR THE RECORD HERE THIS AFTERNOON WITH THE REPETITION OF THAT, OTHER THAN TO SAY IT'S A REMARKABLE RECORD.

AND REMARKABLE IN THE LACK OF NOT ONLY DILIGENCE BUT EVEN RESPECT, IN TERMS OF WHAT WAS GIVEN BY THIS ALLEGED DEBTOR IN RESPONSE TO HIS OBLIGATIONS.

I THINK, HOWEVER, AS BAD AS THAT RECORD IS, WHAT HAS LED US HERE TODAY, WHAT IS EQUALLY REMARKABLE THIS AFTERNOON IS FOUND WITHIN THE FOUR CORNERS OF THE OPPOSITION.  AND IT'S NOT REMARKABLE IN THE SENSE OF WHAT'S THERE; IT IS FAR MORE REMARKABLE IN THE SENSE OF WHAT ISN'T THERE.

YOU DON'T, FOR EXAMPLE, SEE ANY ARGUMENT THAT THE THEORIES UPON WHICH THE SANCTIONS ARE REQUESTED ARE FLAWED IN ANY WAY.  YOU DO NOT SEE ANY CHALLENGE TO THE EVIDENCE THAT'S BEEN PRESENTED.  YOU DO NOT SEE ANY CONTRAVENTION OF THE LONG HISTORY OF DILATORY DISCOVERY TACTICS THAT ARE LAID OUT AT LENGTH IN THE DILLON DECLARATION AND MY OWN DECLARATION, IN SO FAR AS IT APPLIES TO THIS CASE.

THAT IS REMARKABLE BECAUSE IT PAINTS A VERY DARK PICTURE CONCERNING MR. LOPEZ.  IT PAINTS THE PICTURE, AN ACCURATE PICTURE, THAT THE GENTLEMEN IS SIMPLY A CLASSIC SCOFFLAW WHO WILL NOT COMPLY WITH HIS OBLIGATIONS IN DISCOVERY UNTIL IT IS SO PAINFUL NOT TO RESPOND THAT HE ACTUALLY COMES FORWARD AND DOES SOMETHING.  AND THAT IS EXEMPLIFIED IN THIS RECORD.

I HAVE SOME SYMPATHY FOR MR. HAYES BECAUSE I HAVE EVERY CONFIDENCE THAT MR. HAYES IS DOING EVERYTHING HE CAN TO PROD HIS CLIENT INTO COMPLIANCE, AND THAT THE DATES HE HAS GIVEN ME HAVE BEEN IN GOOD FAITH FROM HIS PART; AND HIS CLIENT SIMPLY REFUSES TO COME FORWARD WHEN IT'S TIMELY.

HE, SORT OF, INDUCES THE PETITIONING CREDITORS INTO SPENDING MONEY IN PREPARATION; KNOWING ALL THE WHILE THAT HE'S NOT REALLY GOING TO COMPLY.  SO THOSE EXPENSES WERE INCURRED.

AND THERE'S ANOTHER THING THAT YOU DON'T SEE IN ANY OF THE OPPOSITION.  YOU DO NOT SEE EITHER THE CONTENTION OR THE ARGUMENT THAT ANY OF THE FEES INCURRED

IN RESPONSE TO MR. LOPEZ'S FAILURE TO COMPLY WITH
DISCOVERY RESPONSES WERE UNREASONABLE, UNNECESSARY OR
UNWARRANTED.

WHAT YOU SEE IS THE CONTENTION THAT, "GEE, I
CAN'T AFFORD IT." THAT'S NOT A DEFENSE. SO ALL OF THE
EVIDENCE THAT HAS BEEN ADVANCED BY THE PETITIONING
CREDITORS IN RESPONSE TO THIS -- IN SUPPORT OF THIS MOTION
IS UN-REBUTTED. AND THE ONLY EVIDENCE THAT MR. LOPEZ HAS
NOT HAD THE OPPORTUNITY TO REBUT IS THAT WHICH WAS
CONTAINED IN MY REPLY DECLARATION. AND IF THERE'S
REBUTTAL TO THAT, I WOULD INVITE AN OFFER OF PROOF.

BUT I SIMPLY SAID, IN EFFECT, THAT THE COMPLAINT
ABOUT HAVING TO COME HERE WHEN HE HAS NO OTHER BUSINESS
IN CALIFORNIA IS SPECIOUS BECAUSE HE NEVER SAID HE WANTED
TO DO THAT. WE CERTAINLY, UNDER THE LOCAL RULES, HAVE AN
OBLIGATION TO EXTEND EVERY COURTESY AND MAKE EVERY EFFORT
TO SET DATES FOR DEPOSITIONS THAT ARE CONVENIENT TO ALL
PARTIES.

SO IF THERE'S A CHALLENGE TO THAT, IF SOMEONE HAS
ASKED MY OFFICE AND WE'VE FAILED IN THAT DUTY, I WOULD LIKE
TO HEAR ABOUT IT, BECAUSE I'M NOT AWARE OF IT.

SO WHERE IT LEAVES US IS A POSITION WHERE IF THE
COURT DOES NOT FINALLY COME DOWN ON MR. LOPEZ -- AND HE
HAS HAD MANY AND MANY A CHANCE, DATING BACK FROM THE FIRST
DISCOVERY MOTION MADE IN CONNECTION WITH PHASE ONE TO
COMPLY WITHOUT EXPENSE -- IF THE COURT DOESN'T DO IT NOW,
THEN DISCOVERY HAS NO MEANING.

IF PARTIES CAN SIMPLY REFUSE TO COOPERATE UNTIL THE EXPENSE ASSOCIATED WITH THE DISCOVERY COMES TO OUTWEIGH THE VALUE THAT IS GARNERED FROM THE INFORMATION, WELL, THEN YOU'VE WRITTEN DISCOVERY RULES OUT OF THE FEDERAL RULES OF CIVIL PROCEDURE OUT OF THE LOCAL RULES OF BANKRUPTCY PROCEDURE.  AND THAT IS NOT WHAT THE RULES THAT PROVIDE FOR SANCTIONS ARE INTENDED TO DO.

I THINK THIS COURT HAS BEEN MORE THAN LENIENT WITH MR. LOPEZ.  I THINK IF THERE WERE A SCINTILLA, JUST ONE SCINTILLA, OF REASONABLENESS IN HIS EFFORTS TO COOPERATE, HE WOULD FIGURATIVELY WALK OUT OF THIS COURTROOM TODAY UNSCATHED BY THE IMPOSITION OF ANY SANCTIONS.

BUT I THINK THAT THE UTILITY OF THIS REMEDY HAS BEEN HARMED BY HIS FAILURE.  AND AS I POINT OUT IN THE CONCLUSION, THERE IS AN INCALCULABLE HARM -- MAY NOT EXIST AT ALL, BUT IT MAY EXIST IN MONUMENTAL FORM -- THAT WE CANNOT ASCERTAIN OR MEASURE AT THIS POINT; AND THAT IS, THE HARM THAT EXISTS BECAUSE THE DAY-BY-DAY PASSAGE OF TIME BETWEEN THE FILING OF THE PETITION IN JUNE OF '05 AND THE ENTRY OF THE ORDER FOR RELIEF CREATES A UNIVERSE OF GAP CLAIMS THAT WILL SPRING AHEAD IN PRIORITY TO THOSE OF THE PETITIONING CREDITORS THAT FIRST SOUGHT THE REMEDY.

THAT PUTS THE KIND OF SANCTIONS MOTION THAT WE HAVE HERE TODAY IN A DIFFERENT LEVEL OF THE STRATOSPHERE THAN NORMAL DISCOVERY MOTIONS.  RARELY DOES THE MERE FAILURE TO PROVIDE TIMELY DISCOVERY CREATE THE

OPPORTUNITY TO HAVE EXACERBATING THE HARM OF THE PARTIES AS IT DOES HERE IN THE CONTEXT OF AN INVOLUNTARY PETITION.

I THINK THAT WHEN WE WERE HERE LAST, THE COURT MADE THE COMMENT THAT THE SWORD OF DAMOCLES THAT IT ONCE SUSPENDED ABOVE MR. LOPEZ'S HEAD HAD BEEN CUT.  I THINK THAT IT SHOULD FALL, AND FALL WITH A FORCE THAT WILL SERVE AS A ROBUST DETERRENT FOR ANY SIMILAR CONDUCT NOT ONLY OF MR. LOPEZ BUT OTHERS WHO BELIEVE THAT THE DISCOVERY OBLIGATIONS EMBODIED IN THE FEDERAL RULES OF CIVIL PROCEDURE ARE ADVISORY RATHER THAN OBLIGATORY.

WE HAVE REQUESTED SLIGHTLY OVER $12,000 -- TWELVE THOUSAND, ONE THIRTY-THREE AND SOME CHANGE.  AND WE WOULD REQUEST THAT THE COURT ENTER IT'S ORDER AUTHORIZING SANCTIONS IN THAT AMOUNT, MAKING THEM PAYABLE FORTHWITH AND COLLECTABLE VIA WRIT FROM ANY SOURCE OTHER THAN PROPERTY OF THE ESTATE.

*THE COURT:*  MR. HAYES.

*MR. HAYES:*  THANK YOU, YOUR HONOR.

YOUR HONOR, I ALWAYS HAVE A HARD TIME WITH THESE SORTS OF MOTIONS BECAUSE MY CLIENT HAS NOT DONE A GOOD JOB OF RESPONDING TO DISCOVERY.

THERE HAVE BEEN LAST MINUTE PRODUCTION OF DOCUMENTS.  I CAN'T -- HE KIND OF NAGGED AT ME ABOUT OUR RESPONSE.  WHY AM I JUST -- HOW COME I'M NOT GOING AFTER MR. KEEHN?  "LOOK AT ALL THE DOCUMENTS WE PRODUCED." AND, "LOOK HOW MUCH THIS IS HURTING ME."

AND I CAN'T COME IN HERE AND SAY THAT WE'RE THE

0032

REAL GOOD GUY AND WE DID EVERYTHING RIGHT.  AND MR. KEEHN
IS JUST BEING A MEAN GUY.

AND THE COURT MENTIONED AT THE LAST HEARING THAT
THE STRING HAS BEEN SEVERED; AND THEREFORE, I'VE ASSUMED,
BASICALLY, THAT SANCTIONS ARE GOING TO HAPPEN.

I MEAN, FROM MY OWN VIEWPOINT, THERE ARE FOUR OR
FIVE OTHER ACTIONS GOING ON HERE IN SAN DIEGO BETWEEN THESE
TWO PARTIES.  THERE'S BEEN A HUMONGOUS AMOUNT OF
PRODUCTION RESPONSES.  AND WHEN I SPEAK TO HIM, HE SAYS,
"GEEZ, NOW WHAT?"  AND I SAY, YOU KNOW, "YOU HAVE TO GET
THIS TO ME BY FRIDAY."  AND THEN THE FOLLOWING FRIDAY, I
CALL HIM AND HE SAYS, "OH, SORRY, SORRY, SORRY.  I'LL GET
IT TO YOU."

SO I CAN'T STAND UP HERE AND DO MY LITIGATION
ROUTINE AND ATTACK MR. KEEHN AND TRY TO WALK OUT OF HERE
WITH NOTHING.

HAVING SAID ALL OF THAT, THOUGH, I DO HAVE JUST
A COUPLE OF COMMENTS, UM, THAT I WOULD LIKE TO MAKE.

AS FAR AS THE DEPOSITION GOES,
MR. KEEHN -- MR. LOPEZ DID SHOW UP HERE IN SAN DIEGO ON
OCTOBER 23RD.  HE SHOWED UP WITHOUT ME.  HE HASN'T -- I
CAN'T PAY MY HOTEL BILLS WITH WHAT HE'S PAID ME IN THE LAST
COUPLE OF YEARS.  I OFFERED TO COME AND HE SAID, "NO, I'LL
JUST DO THE DEPOSITION MYSELF."  HE CALLED ME SEVERAL
TIMES DURING THE DAY COMPLAINING ABOUT THE QUESTIONS.
BUT AS I UNDERSTAND IT, HE DIDN'T REFUSE TO ANSWER
ANYTHING.

MR. KEEHN MAKES A BIG DEAL IN HIS MOTION ABOUT
HE AND I SPOKE IN JUNE; I WAS SUPPOSED TO GET BACK TO HIM
WITH A DATE; IT TOOK ME LONGER THAN EXPECTED.  HE TOLD ME
THAT HE WOULDN'T BE HERE THE ENTIRE MONTH OF AUGUST.  I
FORGOT THAT.  I DIDN'T TELL MR. LOPEZ, "LOOK, WE GOT TO
GET A DATE IN EARLY OR MIDDLE JULY BECAUSE MR. KEEHN IS
GOING OUT OF TOWN."  BUT ANYWAY, WE GAVE HIM THE DATE OF
JANUARY -- I MEAN, OF JULY 31ST.

MR. KEEHN CALLED ME OR SENT ME AN E-MAIL
IMMEDIATELY SAYING, "THAT WON'T WORK.  I TOLD YOU I'M
GOING OUT OF TOWN."  THAT'S MY MISTAKE.

HE THEN, UNILATERALLY, PICKED SEPTEMBER 11TH.
AND I CALLED MR. LOPEZ MAYBE A WEEK OR TEN DAYS BEFORE
THAT.  AND I SAID TO HIM, "YOU'RE SHOWING UP, RIGHT?"  HE
SAID, "OH, LET ME TRY TO GET TICKETS."

THEN HE CALLED ME BACK A FEW DAYS LATER AND SAID
THAT TICKETS WOULD COST $2,000; HE CAN'T MAKE IT.  SO I
TOLD HIM THAT, YOU KNOW, I'M NOT CALLING MR. KEEHN UNTIL
YOU GIVE ME AN ABSOLUTE DEFINITE DATE THAT YOU WILL COME
TO SAN DIEGO AND HAVE YOUR DEPOSITION TAKEN.  HE GAVE ME
THAT ON SEPTEMBER 10TH.  I GAVE IT TO MR. KEEHN
IMMEDIATELY AFTER THAT.

AS FAR AS THE DOCUMENTS GO AND THE RESPONSES TO
THE REQUEST FOR INTERROGATORIES, THE FIRST MOTION TO
COMPEL THE COURT MAY REMEMBER THAT I DIDN'T OPPOSE IT,
BECAUSE BY THE TIME IT HAD BEEN FILED, MY CLIENT HAD FOUND
MORE DOCUMENTS RESPONSIVE TO THE 165 CATEGORIES.  HE

PRODUCED -- HE RESPONDED FURTHER TO INTERROGATORIES.

AFTER THAT, THERE WAS A SECOND MOTION TO COMPEL. AND THE RESULT OF THAT WAS NO ADDITIONAL DOCUMENTS, NO ADDITIONAL RESPONSES BECAUSE THE DEFENSE WAS, YOU'VE GOT EVERYTHING.  AND I AGREED IN COURT ON THAT HEARING THAT WE WOULD NOT OPPOSE AN ORDER THAT SAYS IF THERE'S ANYTHING ELSE OUT THERE THAT WE HAVEN'T TURNED OVER, HE DOESN'T GET THAT.  I MEAN, HE CAN'T USE THAT IN COURT.  THAT WAS THE RESULT OF THE SECOND MOTION TO COMPEL.

THE THIRD MOTION TO COMPEL WAS THIS FAILURE TO APPEAR.  HE DIDN'T SHOW UP ON SEPTEMBER 11TH; HE SHOWED UP ON OCTOBER 23RD.  AND AGAIN, GIVEN THE COURT'S COMMENTS, TO ME, IS A MATTER OF DEGREE.  HE CAN'T PAY ANYWAY.

MY OWN VIEW IS THIS IS AN -- I JUST HAVE NO DOUBT ABOUT IT -- THIS IS A SETUP FOR A MOTION TO STRIKE THE ANSWER.  THEY'RE TRYING TO GET AS MUCH SANCTIONS AS THEY CAN.  TRY TO GET MORE THAN HE CAN PAY.  THEN THE NEXT THING COMING WILL BE A MOTION TO STRIKE THE ANSWER.  AND THEN THEY WON'T HAVE TO GO THROUGH WITH THE MOTION FOR SUMMARY JUDGMENT.

BUT I WOULD ASK THE COURT TO EITHER MAKE IT A FRACTION OF WHAT MR. KEEHN HAS ASKED FOR, OR TO SET IT ASIDE, I MEAN, CARRY IT AGAIN.  MR. KEEHN IS GOING TO FILE A MOTION FOR SUMMARY JUDGMENT.  WE'LL FINALLY GET THIS OVER WITH.  THAT -- I MEAN, WE SHOULD BE ABLE TO HEAR THAT IN THE NEXT MONTH OR SO.  AND PERHAPS DELAY OF THE ULTIMATE

0035

RESOLUTION OF THIS MOTION UNTIL THE MATTER IS FINALLY
RESOLVED.

    *THE COURT:*  MR. KEEHN.

    *MR. KEEHN:*  THANK YOU, YOUR HONOR.

    MY REMARKS ARE DIRECTED TO MR. LOPEZ AND NOT
MR. HAYES.  AND I WILL SAY THAT I WISH THAT I WASN'T HERE
ASKING FOR ANY SANCTIONS.

    I'M ENTITLED TO DISCOVERY UNDER THE RULES,
UNLESS OBJECTIONS -- GOOD FAITH OBJECTIONS -- ARE
PROPOUNDED OF WHICH IN THIS CASE WE HAVE HAD NONE.

    AS FAR AS THE DEPOSITION BEING TAKEN WITHOUT
MR. HAYES, THAT'S NO CHANGE FROM PHASE ONE PROCEDURE.
MR. STANLEY AND I TRAVELED TO FLORIDA AS THE COURT KNOWS
IN PHASE ONE.  AND WE CONDUCTED THE DEPOSITION.  AND IN
THAT CASE, AT THAT TIME, MR. LOPEZ CHOOSE NOT TO HAVE THE
DEPOSITION -- NOT TO BE REPRESENTED AT THE DEPOSITION.

    IN ADDITION TO THAT, I BELIEVE -- I KNOW THAT I
HAD ADMONISHED MR. LOPEZ, WHETHER IT WAS ON THE RECORD OR
NOT, I CAN'T RECALL SPECIFICALLY.  BUT I TOLD HIM THAT AT
ANY TIME HE WANTED TO CONFER WITH COUNSEL CONCERNING A
QUESTION THAT WE WOULD PAUSE AND ALLOW HIM TO DO THAT.  NO
SUCH REQUEST WAS EVER MADE.

    SO THIS NOTION THAT HE'S SOMEHOW BEEN PREJUDICED
BY THE WAY THE DEPOSITION WAS CONDUCTED IS JUST NONSENSE.
THE NOTION THAT HE'S SOMEHOW EXCUSED FROM HIS PRIOR
MISCONDUCT BECAUSE HE FINALLY CONDESCENDED TO SHOW UP ON
OCTOBER 22ND AFTER ALL OF HIS BROKEN PROMISES IS A

COMPLETE ABSURDITY. HE HAD A DUTY TO SHOW UP ON THE JULY 20 OR 27TH DATE THAT HIS COUNSEL PROVIDED TO ME. AND THE ONLY THING BACK IN JUNE 25 THAT WAS LEFT UP IN THE AIR WAS WHETHER IT WOULD BE THE 20TH OR THE 27TH.

ALL OF THIS IS ESTABLISHED IN MY ORIGINAL DECLARATION. AND HE SENT -- MR. HAYES SENDS ME AN E-MAIL WHICH TELLS ME WHAT I AM ONE HUNDRED PERCENT CONFIDENT HE BELIEVED TO BE TRUE AT THE TIME AND THAT HE WOULD LET ME KNOW WHICH OF THOSE TWO DATES IT WOULD BE SHORTLY.

AND I BELIEVE THAT HE BELIEVED THAT BECAUSE HE FELT CERTAIN HIS CLIENT WOULD TELL HIM IN A FEW DAYS WHICH OF THOSE TWO DAYS HE WAS GOING TO SHOW UP. WELL, MR. LOPEZ LET HIM DOWN. MR. LOPEZ IS IN THE HABIT OF LETTING PEOPLE DOWN WHEN IT COMES TO DISCOVERY, WHETHER IT'S HIS OWN COUNSEL OR OPPOSING PARTY.

SO THEN WE HAVE TO GO RIGHT DOWN THE ROAD AGAIN. HERE WE GO AGAIN WITH MR. LOPEZ HAVING TO FORCE HIM TO DO WHAT HE SHOULD BE DOING VOLUNTARILY; AND HE'S NEVER OBJECTED TO ANY DATES OR SO FORTH.

AND IF MR. HAYES SAYS HE FORGOT THAT PORTION OF OUR DISCUSSION WHERE I INFORMED HIM OF MY ABSENCE, I TAKE THAT AT FACE VALUE. BUT THE FACT REMAINS, YOU CAN'T TELL ME ON THE 27TH DAY OF JULY, WHEN I AM GOING TO BE ABSENT FROM THE DISTRICT FOR ALL·BUT THE LAST DAY OF AUGUST AND EXPECT ME TO RE-JUGGLE MY CALENDAR TO FIT IN MR. LOPEZ BECAUSE HE'S ONCE AGAIN CONDESCENDING TO DO HIS DUTY AT THAT PARTICULAR DATE AND TIME; THAT'S COMPLETELY

UNREASONABLE.

MR. LOPEZ WOULD BE THE FIRST TO COMPLAIN THAT THAT SHORT NOTICE FOR A DEPOSITION WAS PREJUDICIAL.  IN FACT, MR. LOPEZ, IN EFFECT, IS COMPLAINING THAT THE FORTY-TWO DAYS HE HAD TO PREPARE FOR THE SEPTEMBER 11TH APPEARANCE WAS IN ADEQUATE.  THIS IS JUST MORE OF THE SAME IN SO FAR AS MR. LOPEZ IS CONCERNED.

AS LONG AS IT'S PAINLESS FOR HIM, PAINLESS BECAUSE YOU'RE GOING TO DEFER TO THE END OF THE CASE; PAINLESS BECAUSE YOU'RE GOING TO GIVE HIM TIME TO PAY A DEBT THAT HE INCURRED THAT SHOULD NEVER HAVE BEEN INCURRED.  WE SHOULD HAVE BEEN JUST LITIGATING THE FACTS AND LAW THE WAY THE RULES CONTEMPLATE RATHER THAN GOING ON THIS SIDESHOW TO GET HIM TO SHOW UP AND GIVE TESTIMONY.

IF YOU MAKE IT PAINLESS, WHICH IS WHAT MR. HAYES IS ESSENTIALLY ASKING YOU TO DO -- AND MR. LOPEZ RELIES ON THIS -- "GEE, IF I CAN JUST DEFER THE DAY OF JUDGMENT UNTIL AFTER I'VE ACTUALLY COMPLIED," NOT TIMELY COMPLIED, BUT COMPLIED -- "THEN I GET SOME MERCY."

AND I SUBMIT TO YOU THAT THERE ARE MANY OCCASIONS WHERE MERCY IS WARRANTED; THIS IS NOT ONE OF THEM.  NONE OF THESE SANCTIONS WERE INEVITABLE.  THEY WERE ALL BROUGHT UPON MR. LOPEZ'S HEAD BY HIS OWN MISCONDUCT.  AND EVEN IF WE DID BRING A MOTION TO STRIKE, THAT'S A PRETTY RADICAL RESPONSE.  AND IF I WAS A BETTING PERSON, I WOULDN'T BET ON IT, EVEN IF HE DOESN'T PAY.  AT LEAST NOT IN THE NEAR TERM.  AND THAT'S WHY WE HAVEN'T ASKED FOR IT,

FRANKLY.

WITH ALL OF THE DELAY THAT WE'VE ENCOUNTERED, WITH THE RISK OF EXPANDING THE UNIVERSE OF INVOLUNTARY GAP CLAIMS, WE COULD HAVE BROUGHT THAT REQUEST IN GOOD -- IN EQUALLY GOOD FAITH; WE DIDN'T.  BUT WE'RE ASKING FOR THE MONEY.  WE THINK WE'RE ENTITLED TO THE MONEY.  WE THINK THE COURT SHOULD AWARD IT; AWARD IT ALL; AND, MAKE IT PAYABLE FORTHWITH.

*THE COURT:*  ALL RIGHT.

WELL, I'VE BEEN OVER IT MULTIPLE TIMES, AND I DO THINK IT'S TIME.

I HAVE TO SAY THAT I'M -- YOU KNOW, AS TROUBLED AS I'VE BEEN ALL ALONG IN THIS CASE AND MY DISTRESS HAS GROWN OVER THE INTERVENING PERIOD OF TIME, IN REVIEWING MR. LOPEZ'S OPPOSITION TO THIS PARTICULAR MOTION AND PARTICULARLY HIS EXPLANATION OF THE BUSINESS LEADING UP TO SEPTEMBER 11TH, REALLY, REALLY TROUBLES ME, FRANKLY.

AND IT TROUBLES ME IN ANOTHER PARTICULAR. MR. HAYES HAS SURMISED THAT THESE MOTIONS ARE REALLY AN EFFORT TO PIN MR. LOPEZ INTO A POSITION WHERE HE GETS SOME KIND OF TERMINATING SANCTION, IF YOU WILL, AGAINST HIM THAT ALLOWS A DETERMINATION, IN FACT, HE'S A DEBTOR; NOT AN ALLEGED DEBTOR; WHETHER IT'S BY STRIKING HIS RESPONSE IN  OPPOSITION TO THE PETITION -- THE INVOLUNTARY PETITION -- OR IN SOME OTHER FORM.  AND CERTAINLY THAT'S A THEORY WHICH WOULD NOT BE GROUNDLESS, ASSUMING THAT THAT'S MR. KEEHN'S THEORY.  BUT THAT'S WHAT PUZZLES ME

ALL THE MORE.

IF THERE'S ANY THOUGHT THAT THAT'S A POSSIBLE THEORY, THEN WHY WOULDN'T YOU STEP UP AND SAY RIGHT OUT OF THE SHOOT, "SEPTEMBER 11TH ISN'T GOING TO WORK FOR ME." OR, "I NEED A DATE -- WE NEED TO JUGGLE A DATE. I'VE GOT THESE TWO OTHER BALLS UP IN THE AIR WITH MY GEORGIA AND MICHIGAN TRAVEL AND STUFF." AND, "I NEED TO NAIL THIS DOWN AND HAVE SOME COMMUNICATION THAT'S GOING TO THOSE ENDS."

AND PARTICULARLY WITH WHAT HAD PRECEDED IT. I JUST DON'T FIND ANY KIND -- ANY SEMBLANCE OF GOOD FAITH ON MR. LOPEZ'S PART IN RESPONDING TO THIS. I'M NOT CLEAR IN MY MIND WHETHER IT'S A MATTER OF HIS JUST NOT RECOGNIZING THE SIGNIFICANCE OF THIS MATTER TO HIM; NOT SETTING IT AS SOME KIND OF PRIORITY; HAVING SOME SENSE THAT IF HE'S NOT SERVED WITH A SUBPOENA HE'S A FREE AGENT. I HONESTLY DON'T KNOW WHAT IT IS.

BUT AT THIS POINT IN TIME, I THINK IT'S APPROPRIATE TO AWARD MONETARY SANCTIONS AGAINST MR. LOPEZ. THE ORIGINAL AMOUNT SOUGHT BEFORE THIS MOTION WAS $4,242. IN ADDITION, FUNDS ARE SOUGHT TO COMPENSATE FOR THE TIME EXPENDED IN PREPARING FOR THE DEPOSITION THOUGHT TO OCCUR ON SEPTEMBER 11TH IN THE AMOUNT OF $2,164.50; THERE WAS THE $224 FOR COMMUNICATING WITH MR. HAYES ABOUT THE NON-APPEARANCE OF MR. LOPEZ IN THERE; AND, THERE'S A SUM FOR PREPARING THE RENEWED MOTION, WHICH, FRANKLY, I THINK IS TOO HIGH. SO I'M ALLOWING

$1,500 FOR PREPARING THE MOTION.

SO THAT'S AN AWARD TOTALING THE COMPONENTS OF $4,242; $2,164.50; $1,500 FOR PREPARING THE MOTION; AND, $224 FOR THE COMMUNICATION.  AND WHEN YOU ADD THOSE UP THAT'S THE TOTAL MONETARY SANCTION I'M AWARDING AT THIS TIME.  AND I'M STILL RESERVING ON THE DIFFERENCE.

BUT AT THIS POINT IN TIME, THOSE SUMS WILL BE REQUIRED TO BE PAID WITHIN THIRTY DAYS TO MR. KEEHN'S FIRM.  AND YOUR CLIENT SHOULD BE MADE VERY AWARE, MR. HAYES, THAT IF HE FAILS TO PAY THAT TOTAL SUM WITHIN THIRTY DAYS OF TODAY'S DATE -- AND THAT'S TODAY'S DATE, NOT THE DATE OF ENTRY OF THE ORDER -- WITHIN THIRTY DAYS OF TODAY'S DATE, I WILL CONSIDER A TERMINATING SANCTION MOTION TO STRIKE HIS OPPOSITION TO THE PETITION.  AND WE'LL TAKE IT FROM THERE.

MR. KEEHN:  YOUR HONOR, COULD I ASK THE COURT TO GO OVER THE AWARD ONE MORE TIME?

THE COURT:  SURE.  $4,242 FROM YOUR ORIGINAL APPLICATION; $2,164.50 FOR THE 7.7 HOURS PREPARING FOR THE 9-11 DEPOSITION; $1,500 FOR PREPARING PRESENT MOTION; AND, THE $224 FOR THE TIME SPENT ON SEPTEMBER 10TH COMMUNICATING WITH MR. HAYES.  THOSE ARE THE COMPONENTS.

MR. KEEHN:  THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.

NEW STATUS CONFERENCE DATE?

MR. KEEHN:  WELL, YOUR HONOR, IT WOULD BE GOOD TO SET IT FOR A DATE THAT'S MORE THAN THIRTY DAYS BEYOND TODAY'S

DATE, SO WE'LL KNOW WHETHER WE'VE PAID OR NOT.

*THE COURT:* RIGHT. I'M ASSUMING -- DO WE WANT TO SET IT FOR A DATE WHEN THERE WOULD ALSO POSSIBLY BE A SUMMARY JUDGMENT HEARING DATE?

OR SHOULD WE TAKE THIS AS STEP ONE, AND THE SUMMARY JUDGMENT AS STEP TWO BECAUSE IT MAY BE OBVIATED?

*MR. KEEHN:* I THINK THE LATTER.

*THE COURT:* MR. HAYES?

*MR. HAYES:* I THINK MR. KEEHN OUGHT TO FILE HIS MOTION FOR SUMMARY JUDGMENT. I MEAN, DISCOVERY IS OVER NOW -- OR, SET A TRIAL DATE.

I DON'T SEE WHY WE HAVE TO WAIT THIRTY DAYS TO SEE WHAT HAPPENS.

*THE COURT:* WELL, SO WE CAN FIND OUT WHETHER HE PAYS IT OR NOT. YOU THINK HE'S GOING TO COME IN HERE AND APPEAR ON A TRIAL WHEN HE DOESN'T PAY THE SANCTIONS?

I'M NOT GOING TO PERMIT THAT. HE'S EXHAUSTED MY GOOD GRACES, MR. HAYES.

*MR. HAYES:* ALL RIGHT.

*THE COURT:* SO, JILL, I GUESS WE OUGHT TO GO THIRTY DAYS. BUT I THINK IT LOOKS LIKE IT'S GOING TO HAVE TO BE THE FIRST WEEK OF JANUARY.

*THE CLERK:* I'VE RESERVED SOME TIME ON THE 18TH. DO YOU WANT TO DO THAT?

*THE COURT:* OKAY. WE CAN DO THAT.

*MR. KEEHN:* WELL, HE HAS UNTIL THE 19TH TO PAY.

*THE CLERK:* HOW MUCH TIME WILL YOU NEED?

0042

*THE COURT:*  IT'S NOT GOING TO TAKE LONG.

*THE CLERK:*  OKAY.

*THE COURT:*  MR. HAYES MAY WANT TO APPEAR TELEPHONICALLY.

*MR. HAYES:*  I WOULD, YOUR HONOR.

*THE CLERK:*  JANUARY 7TH AT 9:30 A.M.

*THE COURT:*  OKAY.

AND YOU'LL NEED TO CALL MS. WILKINSON AND BECAUSE OF THE HOLIDAYS, I'D SUGGEST YOU CALL BEFORE CHRISTMAS, A COUPLE WEEKS IN ADVANCE, TO SET IT UP WITH HER.

*MR. HAYES:*  GREAT.

*THE COURT:*  NORMALLY SHE ASKS FOR SEVEN DAYS TO DO THAT.  BUT I'M NOT SURE WHERE SHE'S GOING TO BE.

*THE CLERK:*  I WILL PUT A COURT NOTE ON HER V-CAL.

*THE COURT:*  ALL RIGHT.

*MR. HAYES:*  GREAT.  THANK YOU, YOUR HONOR.

*MR. KEEHN:*  THANK YOU, YOUR HONOR.

*THE COURT:*  WE WILL BE IN RECESS.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

       I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY CERTIFY:

       THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE FOREGOING CAUSE ON THE 19TH DAY OF NOVEMBER, 2007; THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.

       DATED THIS _____ DAY OF _____, 2007.

_____
    LYNETTE ALVES, CSR #12534, RPR #61256

0044

Document _____

0045

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING

|  |  |
|---|---|
| | ) |
| | ) |
| FRANCIS J. LOPEZ | ) CASE NO. 05-05926-PB |
| | ) |
| | ) |
| _____ | ) |

1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR ORDER IMPOSING
TERMINATING SANCTIONS AGAINST THE DEBTOR

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, JANUARY 28, 2008

SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

0046

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, JANUARY 28, 2008, 10:30

--- O O O ---

0047

THE CLERK:  IN THE MATTER OF FRANCIS J. LOPEZ.  WE
HAVE TWO MATTERS ON CALENDAR:  1) PETITIONING CREDITORS'
MOTION FOR ORDER IMPOSING TERMINATING SANCTIONS AGAINST
THE DEBTOR; AND, 2) CONTINUED STATUS CONFERENCE ON
INVOLUNTARY PETITION AND ANSWER.

APPEARANCES, PLEASE.

MR. HAYES:  GOOD MORNING, YOUR HONOR.

JOHN HAYES FOR THE ALLEGED DEBTOR, FRANCIS
LOPEZ.

THE COURT:  MR. HAYES.

MR. KEEHN:  GOOD MORNING, YOUR HONOR.

SCOTT KEEHN APPEARING ON BEHALF OF THE
PETITIONING CREDITORS.

THE COURT:  MR. KEEHN.

MR. KEEHN:  YOUR HONOR, AS A MATTER OF ACADEMIC
REGULARITY, WE WOULD RENEW AT THIS TIME THE EVIDENTIARY
OBJECTIONS AND INQUIRE OF THE COURT IF IT WISHES TO PROCEED
WITH ARGUMENT AND CONSIDER THE OBJECTIONS IN LIGHT OF
THAT.

THE COURT:  I STILL WANT TO PROCEED WITH ARGUMENT.

MR. KEEHN:  OKAY.

WELL, YOUR HONOR, THIS IS, AS I POINTED OUT IN
THE REPLY, WE ARE ONE DAY MINUS THE ONE YEAR ANNIVERSARY
OF WHAT HAS BECOME A SANCTIONS ODESSEY.  THE COURT HAS ON
INNUMERABLE OCCASIONS IN THE PAST PUT OFF THE DAY OF
RECKONING WITH REGARD TO MONETARY SANCTIONS.  AND THAT
DAY OF RECKONING FINALLY CAME ON NOVEMBER 19TH.  THAT WAS

A LONG AND WINDING ROAD.

BUT HAVING GONE THAT LONG AND WINDING ROAD, THE
COURT TOOK SPECIAL STEPS IN MAKING IT'S AWARD OF THE
SANCTIONS TO INDICATE THAT THE TIME HAD COME TO PAY
ATTENTION TO THIS CASE.

THE COURT DISCLOSED IT'S CONCERNS ABOUT THE
CONDUCT OF THE ALLEGED DEBTOR AND HIS APPARENT LACK OF
CONCERN FOR EITHER HIS RESPONSIBILITIES AS A LITIGANT OR
IN OBEYING THE ORDERS OF THE COURT.  THAT WAS VERY CLEARLY
COMMUNICATED AS INDICATED FROM THE PORTIONS OF THE
TRANSCRIPT THAT WE CITED IN CONNECTION WITH OUR REPLY.

I HAVE NO DOUBT AND I SUSPECT THE COURT HAS NO
DOUBT THAT THE COURTS MESSAGE WAS CONVEYED TO THE DEBTOR
WITH CRYSTAL CLARITY.  BUT WE TOOK ANOTHER STEP WHEN WE
SUBMITTED THE LODGED ORDER AND PROVIDED MR. HAYES WITH A
COPY.  WE ALSO PROVIDED HIM WITH COPIES OF OUR WIRE
TRANSFER INSTRUCTIONS, AND THE CLEAR -- THE EQUALLY CLEAR
WARNING THAT THE PETITIONING CREDITORS WEREN'T GOING TO
BROOK ANY DELAY IN MR. LOPEZ'S COMPLIANCE WITH THIS ORDER.

BUT WHAT YOU SEE FROM THE EVENTS THAT UNFOLDED
SINCE THEN IS THAT YOU HAVE A REPETITION OF THE SAME OLD
CONDUCT OF DISREGARDING THE COURT'S ORDER.  AND AT THE
LAST MINUTE -- LITERALLY THE 11TH HOUR -- YOU GET A
COMMUNICATION THAT SAYS SOMETHING TO THE EFFECT OF, "GEE,
I CAN'T COMPLY.  WHY DON'T YOU NEGOTIATE WITH ME FOR SOME
LESSER RESULT; A PARTIAL PAYMENT NOW AND MONTHLY
INSTALLMENTS."

0049

WELL, WE WAITED A LONG TIME FOR THOSE MONETARY
SANCTIONS.  WE HAD A COURT ORDER.  AND WHAT DIDN'T
ACCOMPANY THAT REQUEST FOR ENTERING INTO A NEGOTIATING
SESSION WITH THE ALLEGED DEBTOR WAS ANY EXPLANATION AS TO
WHY WE SHOULD.  NOT JUST THAT WE HAD A ORDER TO RELY ON
BUT RATHER WHAT WERE THE EFFORTS THAT THE DEBTOR HAD
UNDERTAKEN FROM NOVEMBER 19TH THROUGH DECEMBER 19TH IN
ORDER TO COME UP WITH THE FUNDS REQUIRED BY THAT SANCTIONS
ORDER.  IF HE DID ANYTHING, HE CHOOSE NOT TO DISCLOSE IT
IN THE RECORD.  SO WE DECLINED.

AND AS INDICATED FROM THE E-MAIL THAT WAS
ATTACHED TO MY DECLARATION, WE DID MORE THAN JUST DECLINE.
WE WARNED MR. LOPEZ THAT IF HE WAS THINKING THAT HE WOULD,
AS HE HAD IN THE PAST, COME INTO COURT AND BEGGED FOR
LENIENCY BECAUSE HE JUST COULDN'T COMPLY, JUST DIDN'T HAVE
THE ABILITY, THAT WE HAVE EVIDENCE GARNERED FROM DISCOVERY
IN LITIGATION PENDING WITH HIS WIFE AND AN ENTITY THAT SHE
OWNS THAT THAT WAS FALSE.  AND WE GAVE HIM FAIR WARNING
TO BE CAREFUL ABOUT THE PENALTIES OF PERJURY IF HE WAS
GOING TO ADVANCE THAT ARGUMENT.

APPARENTLY, HE HAS SOME HEALTHY RESPECT FOR THE
PENALTIES OF PERJURY.  BECAUSE HE SAID IN HIS DECLARATION
THE ABSOLUTE MINIMAL AMOUNT THAT MIGHT BE CONSTRUED AS AN
EXCUSE FOR NOT PAYING: HE SAYS, "I COULDN'T COME UP WITH
IT."

WELL, I SUBMIT TO YOU THAT FOR THE REASONS
INDICATED BY THE EVIDENCE THAT WE PRODUCED AS WE PROMISED

HIM WE WOULD IF HE WENT DOWN THAT PATH; THAT'S JUST FALSE.
THE GENTLEMEN HAS DISPOSABLE INCOME THAT APPEARS TO BE IN
THE NEIGHBORHOOD OF AT LEAST $123,800 A YEAR.  THE AVERAGE
OF DEPOSITS MADE INTO THE FAMILY ACCOUNT ARE $10,319.
HE'S AT 90.4 PERCENT ABOVE THE MEDIAN FOR INCOME IN THE
STATE -- IN FLORIDA WHERE HE RESIDES.  HE'S 80.3 PERCENT
ABOVE THE MEDIAN FOR TWO-EARNER FAMILIES.

SO THE NOTION THAT HE JUST DOESN'T HAVE THE
RESOURCES TO PAY THE SANCTION THAT WAS AWARDED IN NOVEMBER
JUST DON'T FLY UNLESS YOU PRESENT SOME OTHER EVIDENCE TO
SHOW WHY IT IS THAT THAT LEVEL OF INCOME WAS INSUFFICIENT
TO ALLOW HIM TO MAKE A FULL AND TIMELY PAYMENT OF THE
SANCTIONS AWARD.

THERE ARE OTHER THINGS HE DIDN'T DO.  HE COULD
HAVE, RIGHT UP TO DECEMBER 19, HE COULD HAVE FILED A RULE
60(B) MOTION SEEKING EITHER TOTAL RELIEF FROM THE
SANCTIONS FOR WHATEVER CAUSE HE MIGHT HAVE.  OR, AT LEAST,
INSTEAD OF ASKING US TO NEGOTIATE WITH HIM FOR AN EXTENDED
PAYMENT PERIOD, ASK THE COURT TO GIVE HIM SOME RELIEF ON
THE PAYMENT REQUIREMENT IN THE SAME WAY.  IN OTHER WORDS,
A DOWN PAYMENT AND PAYMENTS.

THE TROUBLE IS, OF COURSE, THAT HAD HE GONE DOWN
THAT PATH, HE WOULD HAVE NEEDED EVIDENCE; EVIDENCE TO SHOW
GOOD CAUSE.  AND HE DOESN'T HAVE ANY.  HE DOESN'T HAVE ANY
EVIDENCE TO SUPPORT A RULE 60(B) MOTION; HE DOESN'T HAVE
ANY EVIDENCE TO SUPPORT HIS OPPOSITION TO OUR REQUEST FOR
TERMINATING SANCTIONS.

THIS LONG AND WINDING ROAD SHOULD COME TO AN END,
BECAUSE DELAY FOR THE DEBTOR IS A VICTORY.  WE'VE
EXPLAINED IT NOT JUST IN THIS MOTION BUT, I THINK, IN EVERY
SANCTIONS MOTION THAT WE BROUGHT BEGINNING LAST JANUARY
THAT ONE OF THE INSIDIOUS RISKS THAT IS ASSOCIATED WITH
THIS CONSTANT TACTIC OF DELAY IS THAT THERE IS AN INVISIBLE
CREDITOR BODY THAT CAN BE BUILDING A CREDITOR BODY OF
INVOLUNTARY GAP CLAIMS THAT WILL LEAP AHEAD OF PRIORITY
OF THE PETITIONING CREDITORS WHO TOOK THE TROUBLE TO BRING
THE GENTLEMAN INTO THE BANKRUPTCY COURT WHERE HE BELONGS.

NOW, WE HAVE HARPED ON THAT POINT IN EVERY SET
OF PAPERS THAT WE FILED; NOT JUST BECAUSE IT'S A VALID
POINT THAT THE COURT SHOULD CONSIDER BUT IT HAS ANOTHER
DIMENSION TO IT.  EVERY TIME WE RAISED THAT ARGUMENT,
THERE WAS AN ELEMENT OF INVITATION.  AN INVITATION FOR THE
DEBTOR TO COME FORWARD WITH DECLARATIONS UNDER PENALTY OF
PERJURY TO DEMONSTRATE WHY THAT WASN'T A REAL RISK.

YOU HAVE HAVEN'T SEEN IN A WHOLE YEAR THAT WE'VE
BEEN DOWN THIS SANCTIONS PATH, YOU HAVEN'T SEEN ONE
DECLARATION THAT EVEN ADDRESSES THAT ISSUE.  AND I SUBMIT
TO YOU THAT THE REASON YOU HAVE HAVEN'T SEEN IT IS BECAUSE,
AGAIN, MR. LOPEZ HAS A HEALTHY RESPECT FOR THE PENALTIES
OF PERJURY AND HE WON'T OUTRIGHT LIE TO YOU.

WHAT HE WILL DO AND WHAT HE HAS DONE IS DECEIVE
YOU BY CALCULATED OMISSION.  SAYS HE DOESN'T HAVE THE
MONEY.  HE DOESN'T TELL YOU WHAT HIS RESOURCES WERE AND
HOW THEY WERE EXPENDED; JUST WANTS TO TELL YOU HE DOESN'T

HAVE THE MONEY.  AND I SUBMIT TO YOU THAT IN LIGHT OF THE
EVIDENCE OF THE RESOURCES THAT HE DOES HAVE, THAT IS A
DELIBERATE DECEPTION.

SO WHERE WE ARE TODAY, ONE YEAR DOWN THE ROAD,
IS AT A POINT WHERE THE COURT SHOULD SIMPLY STOP THE
ABILITY OF THE DEBTOR TO INCREASE THE INVOLUNTARY GAP
CREDITOR BODY.  THIS HAS BECOME ALMOST A GAME TO THE
DEBTOR.  HE'S BAITING YOU.  WHEN ARE YOU REALLY GOING TO
DO SOMETHING THAT'S MEANINGFUL?  YOU IMPOSE SANCTIONS,
BUT THAT DIDN'T BOTHER HIM BECAUSE HE HAD NO INTENTION OF
PAYING THEM; CERTAINLY NOT PAYING THEM IN THE TIME FRAME
THAT YOU REQUIRED.

AND NOW HE STANDS OFF BAITING STILL.  HE DOESN'T
PAY; HE WAITS FOR THE MOTION TO BE FILED.  AND I CAN TELL
YOU AS AN OFFICER OF THE COURT THAT AS I STAND HERE TODAY,
NO PORTION, NO PORTION OF THE SANCTIONS HAVE BEEN OFFERED
WITHOUT THE STRING THAT REQUIRED A NEGOTIATION; NOT ONE
PENNY.

THIS DEBTOR DOES NOT UNDERSTAND OR APPRECIATE
HIS DUTIES AS THE LITIGANT.  HE WILL NOT VOLUNTARILY
COMPLY.  AND THIS COURT HAS GIVEN HIM MORE CHANCES THAN
I WOULD HAVE IMAGINED, AND CERTAINLY MORE THAN HE
DESERVED.

IT'S TIME TO GET ON WITH THE BANKRUPTCY PROCESS
AND TO STRIKE HIS ANSWER; ENTER THE ORDER FOR RELIEF.
LET'S GET HIM TO FILE HIS SCHEDULES, GET A TRUSTEE IN PLACE
AND MOVE FORWARD.

THE COURT:  MR. HAYES.

MR. HAYES:  THANK YOU, YOUR HONOR.

YOUR HONOR, I'M NOT SURE WHAT I CAN ADD AFTER, I MEAN, TWO AND A HALF YEARS, NOW, DOING THIS CASE.

BUT I WILL SAY THAT AT THE LAST HEARING, YOUR HONOR, BASICALLY, STATED THAT IF THE SANCTIONS WEREN'T PAID, TERMINATING SANCTIONS WOULD BE IMPOSED.  AND THE SANCTIONS HAVEN'T BEEN PAID.

I SPOKE TO MR. LOPEZ ON THURSDAY.  AND I SAID, "LOOK, IF I SHOW UP WITH A CHECK, WE CAN PROBABLY DODGE THIS RESULT."  AND HE TOLD ME THAT HE COULD COME UP WITH HALF BY SKIPPING A HOUSE PAYMENT.  AND HE JUST COULDN'T COME UP WITH THE REST OF IT.  AND THAT'S -- I MEAN, THAT'S WHERE THAT IS.

WHAT I WOULD LIKE TO ASK THE COURT, THOUGH, IS THAT DISCOVERY IS OVER; MR. KEEHN HAS STATED MANY TIMES THAT ONCE HE GETS THIS LAST DEPOSITION, HE'LL FILE A MOTION FOR SUMMARY JUDGMENT AS TO THE SECOND ISSUE.  THE DEBTOR WILL NOT FILE A MOTION FOR SUMMARY JUDGMENT BECAUSE I THINK MR. KEEHN KNOWS MORE ABOUT MR. LOPEZ THAN MR. LOPEZ DOES, I THINK.  HE'S GOT THE EVIDENCE TO ESTABLISH WHETHER OR NOT HE WAS PAYING THEIR DEBTS AS THEY GENERALLY BECAME DUE. HE'LL PRESENT IT TO THE COURT; THE COURT WILL RULE, BASED ON THE MERITS OF WHETHER AN INVOLUNTARY SHOULD BE IMPOSED. AND, I MEAN, THAT'S ONLY A MONTH AWAY, I IMAGINE.  AND TERMINATING SANCTIONS ARE -- SHOULD BE AVOIDED IF THERE'S ANY OTHER WAY TO RESOLVE THE ISSUE.  BUT BEYOND THAT, I

**0 0 5 4**

MEAN, HE DIDN'T PAY THE SANCTIONS.

AND I HAVE NOTHING TO ADD.

THE COURT:  WELL, I THINK THE TIME HAS COME, FRANKLY. AND I AM GOING TO GRANT THE TERMINATING SANCTIONS AND REQUIRE THAT AN ORDER FOR RELIEF BE ENTERED; A TRUSTEE BE APPOINTED; AND REQUIRE THE DEBTOR TO FILE SCHEDULES WITHIN FIFTEEN DAYS OF TODAY'S DATE.  AND THAT'S NOT GOING TO EXCUSE ANYTHING.

IF I WERE TO REQUIRE MR. KEEHN TO GOOD AHEAD AND DO HIS MOTION FOR SUMMARY JUDGMENT ON THE SECOND ISSUE, IT WOULD BE JUST AS IF MR. LOPEZ COULD CONTINUE TO IGNORE THIS COURT'S ORDERS.  I LET YOU KNOW BACK IN NOVEMBER THAT I'D ADD IT IN TERMS OF HIS NON-PARTICIPATION IN THIS PROCESS; FOOT-DRAGGING AND NON-PARTICIPATION.  AND I REMAIN IN THAT FRAME OF MIND.

SO THE ORDER FOR RELIEF WILL ENTER.

MR. KEEHN:  THANK YOU, YOUR HONOR.

MR. HAYES:  THANK YOU, YOUR HONOR.

THE CLERK:  STATUS CONFERENCE GOES OFF CALENDAR; CORRECT?

THE COURT:  YES.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

      I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY CERTIFY:

      THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE FOREGOING CAUSE ON THE 28TH DAY OF JANUARY, 2008; THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.

      DATED THIS _____ DAY OF _____, 2008.

0056

LYNETTE ALVES, CSR #12534, RPR #61256