1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8              UNITED STATES BANKRUPTCY COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                          )   Case No.  05-05926-PBINV
                                    )
12      FRANCIS J. LOPEZ,           )   **REPLY TO OPPOSITION TO MOTION
                                    )   FOR AN ENFORCEMENT
13          Alleged Debtor.         )   ORDER IMPOSING MONETARY
                                    )   SANCTIONS AGAINST THE DEBTOR**
14                                  )
                                    )   **[BIFURCATED PHASE II]**
15                                  )
                                    )   Date:   November 19, 2007
16                                  )   Time:   2:00 p.m.
                                    )   Judge: The Honorable Peter W. Bowie
17                                  )   Ctrm:  4
                                    )
18  _____)

19      Petitioning Creditors respectfully submit the following Reply to the "Opposition of Alleged

20  Debtor to Motion for Sanctions" filed by Francis J. Lopez ("Lopez"), the Alleged Debtor herein.

21                          **I.  INTRODUCTION**

22      Lopez's Opposition spins a dramatic tale *"full of sound and fury, signifying nothing"*.[1]  He

23  complains bitterly about the expense, inconvenience and "travel headaches" he has suffered as a

24  result of this case, but he never proffers a legitimate excuse for the unreasonable delays and other

25  misconduct that gave rise to this Motion or those that came before it.  In sum, he fails to provide

26  the Court with any good or legally cognizable reason why the Motion should be denied.

27

28
   _____
       [1]      William Shakespeare, *Macbeth*, Act V, scene 5.


                                                                    0 4 6 3

112151/LFK/5311.01

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1    Discovery rights become meaningless unless they are met with either good faith and timely

2    compliance, or a response from the court that will serve as a robust deterrent to scofflaws that do

3    more to probe the limits of the court's sufferance than to discharge their duties as a litigant.

4    Lopez's conduct in this case has shown him to be of that ilk, he is without excuse, and the Motion

5    should be granted in its entirety.

6                                    II. **DISCUSSION**

7    **A.    Lopez's Claimed Scheduling Dilemmas Do Not Justify His Failure to Give Reasonable**

8    **Notice of his "Inability" to Appear for his Noticed Deposition**

9    Lopez attempts to justify his *last minute*, unilateral cancellation of his deposition (noticed

10    for September 11, 2007) by claiming that his business and travel schedule prevented him from

11    committing to traveling to San Diego for the deposition.  A more disingenuous example of

12    meritless excuse-mongering is difficult to imagine.  Since June 25, 2007, Lopez has known that

13    his deposition would be taken here in San Diego.[2]  Three days later, he agreed through his counsel

14    to be deposed on either July 20 or 27, 2007.[3]  Twenty-two days later, in the evening (PDT) of July

15    20, 2007, he disavowed that commitment without explanation.[4]  At the same time, he insincerely

16    suggested sitting for the deposition on July 31, 2007, knowing that was the last day before

17    Petitioning Creditors' counsel would be leaving the district for a one-month absence, and hence

18    would be unlikely to be able to accept the invitation.[5]

19    On July 31, 2007, Petitioning Creditors' counsel reported these events to the Court in open

20    session, and further disclosed that the Lopez Deposition was scheduled for September 11, 2007,

21    here in San Diego.[6]  That provided Lopez with 42 days prior notice of his obligation to be here in

22    San Diego ready to testify on September 11, 2007.

23

24    [2]    See the "Declaration of L. Scott Keehn, Etc." dated October 19, 2007, filed as attachment 2 to Docket Item 114 ("LSK Decl" at ¶5).

25    [3]    *Id.* at ¶6.

26    [4]    *Id.* at ¶7.

27    [5]    *Id.* at ¶5 and ¶8.

28    [6]    *Id.* at ¶9.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0464

1  No objection to that date, time, or location was ever filed. So, whatever Lopez did or

2  failed to do in the days and weeks that followed was a course of conduct that he chose and bears

3  full responsibility for. If he was so dilatory in making his travel arrangements that when he finally

4  got around to it the task was genuinely impossible, that is nothing more than the foreseeable

5  consequence of his own choices. It neither justifies nor excuses his failure to appear — either in

6  July as originally promised, or on September 11, 2007.

7  Common experience tells us that 42 days is an adequate period of advance notice for

8  purposes of booking travel arrangements from the State of Florida to San Diego, California. The

9  Lopez Declaration provides no explanation as to why he was unable to perform that task.

10  Of equal significance is Lopez's failure to explain why Petitioning Creditors were not

11  advised of any of this — e.g., during the "first week of September" — the week Lopez admits that

12  his business and travel "arrangements were finalized."[7]

13  It was not until the afternoon of September 10, 2007 — less than 24 hours before the

14  deposition was scheduled to begin — that Lopez's attorney sent Petitioning Creditors' attorney, L.

15  Scott Keehn, a brief email stating that Lopez was "*unable to make travel arrangements for the*

16  *deposition tomorrow.*" The e-mail then suggested October 8, 2007, or October 22, 2007, as

17  possible dates for the deposition.

18  The timing of that notice appears to have been deliberately calculated to insure that

19  maximum time would be expended to prepare for a deposition that Lopez knew would not take

20  place. It is inconceivable that Lopez had no clue that he would be *unable to make travel*

21  *arrangements* until a point in time less than 24 hours prior to his scheduled deposition.

22  An additional, and more pragmatic, problem with that *eleventh hour* email was that by the

23  time it was sent, Mr. Keehn and his paralegal had spent a total of 7.7 hours preparing documents

24  and deposition questions, and much of that same field would have to be re-plowed six weeks later

25  when the deposition finally took place. If Lopez had even made one simple phone call, earlier in

26  the the first week of September, to advise that he may not be able to make the necessary travel

27

28  [7]    See, Declaration of Francis Lopez, page 3, line 20.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200  FACSIMILE (619) 400-2201

0465

1 arrangements to appear for his deposition, then those 7.7. hours of preparation would not have

2 been spent, and Petitioning Creditors would not have incurred the $2,164.50 in fees for that time.

3       Lopez's declaration never attempts to explain why that simple phone call was never made,

4 or why he never used some other method of communication to provide Petitioning Creditors with

5 reasonable notice of his purported inability to attend the noticed and agreed-upon deposition.

6 Indeed, from his declaration testimony, there does not appear to be any reasonable justification or

7 excuse for his failure to do so.   The Lopez Declaration leaves completely unanswered the

8 following significant questions:

9    •    What *did he do* to attempt to make travel arrangements, and when did he do it?

10    •    When did he first realize that making the necessary travel arrangements for the

11         September 11, 2007, deposition *might* have become impossible?

12    •    When did he make any effort to have that potential impossibility communicated to

13         Petitioning Creditors' counsel?

14    •    When did he first realize that making the necessary travel arrangements for the

15         September 11, 2007, deposition had in fact become "*impossible*"?

16    •    When did he make any effort to have that actual impossibility communicated to

17         Petitioning Creditors' counsel?

18       The fact that those questions (or others of similar import) have been left unanswered

19 speaks volumes.  It supports the inference that those questions have gone unanswered because

20 truthful answers would do far more to condemn Lopez than to exculpate him.  Petitioning

21 Creditors submit that is the inference that should be drawn, because Lopez — who has the ability

22 to come forward with stronger evidence of exculpation or excuse (if any exists) — has not done

23 so, despite the fact that it is very much in his interest to do so.  Under these circumstances, he

24 should be ordered to pay the $2,164.50, as part of the requested sanctions award, that he caused

25 Petitioning Creditors to unnecessarily incur.

26 ///

27 ///

28 ///

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0 4 6 6

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**B.**    **Lopez's Purported "Stress," "Travel Headaches," and Inability to Pay a Sanctions Award Do Not Justify Denying this Motion**

Lopez continues to cast himself in the victim role, and attempt to gain sympathy for himself, by lamenting that: (a) submitting to a deposition is "very stressful,"[8] (b) traveling to San Diego causes him to suffer "travel headaches,"[9] and (c) he can not afford to pay his attorney in this case, much less any potential sanctions award.  None of these complaints constitute a legitimate defense to the unreasonable delays and misconduct which gave rise to this Motion, particularly when no objection to the deposition was ever made.  Likewise, such an excuse can not justify denying the Motion.  Lopez cites no authority to the contrary.

Beyond that, his complaints are clearly pretextual afterthoughts that have no bearing on the merits of the Motion.  For example, he complains of the expense burden he must endure when he has to make "*a three-day trip when [he has] no other important matters to attend to in California.*"[10]  However, Lopez never voiced that concern prior to this Motion; and if he had, a cost-saving scheduling accommodation would have been made.[11]  His point is pure theater and devoid of merit.  The same is true of the other excuses proffered in paragraphs 5, 6, or elsewhere in the Lopez Declaration.

**C.**    **Lopez's Complaints and Speculations About the True Purpose of the Questions asked in his Deposition are Irrelevant and Do Not Justify Denying this Motion**

In Paragraphs 7 - 10 of his Declaration, Lopez complains about, and mischaracterizes, some of the questions asked in his deposition as a *fishing expedition* related to other cases pending against him.[12]  That characterization is patently inaccurate, as will be shown when it is used against him in the Petitioning Creditors' motion for summary judgment, in that all of the questions

---

[8]    See, Declaration of Francis Lopez, page 4, lines 6 - 7.

[9]    See, Declaration of Francis Lopez, page 4, lines 6 - 8.

[10]    See, Declaration of Francis Lopez, page 4, lines 3 - 4.

[11]    See, "Reply Declaration of L. Scott Keehn, Etc." filed concurrently herewith, ¶¶2-3.

[12]    See, Declaration of Francis Lopez, pages 4 - 5.

0467

1  posed were calculated to discover facts pertaining to this second phase of the present case. As a

2  layperson, Lopez can not presume to understand, and opine on, the legal strategy of counsel for

3  Petitioning Creditors. Indeed, in paragraph 9 of his deposition, when referring to one allegedly

4  improper line of questioning, Lopez admits that "I don't know what that was all about."[13]  In any

5  event, none of Lopez's statements or opinions are relevant to the issues raised in this Motion.

6  They refer to events that occurred after his failure to comply with his discovery obligations. They

7  should simply be ignored as irrelevant and speculative surplus.[14]

### III. CONCLUSION

9  The true magnitude of the harm caused by Lopez's dilatory discovery tactics can not be

10 ascertained at this time because we have no way of gaging the magnitude of the *Involuntary Gap*

11 *Claims* that will catapult to priority status over pre-petition claimants as a result of the delays in

12 processing this case forward.[15]  What we can say with certainty is that the delay has created a risk

13 of that harm that is over and above the direct costs that Petitioning Creditors seek to recover here.

14 That circumstance aggravates Lopez's level of culpability and enhances the need for the Court to

15 decisively condemn his conduct by awarding damages that can be shown at this point.

16 For this and all of the foregoing reasons, this Court should issue an Order imposing

17 monetary sanctions against Lopez in the amount of $12,133.50, payable forthwith from sources

18 other than property of the estate.

19

20 Dated: November 13, 2007                **KEEHN & ASSOCIATES**
                                          A Professional Corporation
21

22

23                                By:    //s// L. Scott Keehn
                                          L. Scott Keehn
24                                        Attorneys for **Petitioning Creditors**

25

26  _____

27  [13]    See, Declaration of Francis Lopez, page 5, lines 1 - 3.

    [14]    See, Petitioning Creditors' Evidentiary Objections filed concurrently herewith.
28
    [15]    See, 11 U.S.C. §507(a)(3).

**0468**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1  L. Scott Keehn, SBN 61(
   Leslie F. Keehn, SBN 1(
2  **KEEHN & ASSOCIA**
   A Professional Corpora
3  402 West Broadway, S(
   San Diego, California (
4  Telephone: (619) 400-

5  Attorneys for **Petitioning Creditors**

6

7

8              UNITED STATES BANKRUPTCY COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                          )  Case No.  05-05926-PBINV
                                    )
12         FRANCIS J. LOPEZ,        )  Involuntary Chapter 7
                                    )
13                Alleged Debtor.   )  **REPLY DECLARATION OF L. SCOTT**
                                    )  **KEEHN IN SUPPORT OF MOTION FOR**
14                                  )  **AN ENFORCEMENT ORDER IMPOSING**
                                    )  **MONETARY SANCTIONS AGAINST THE**
15                                  )  **DEBTOR**
                                    )
16                                  )  **[BIFURCATED PHASE II]**
                                    )
17                                  )  Date:  November 19, 2007
                                    )  Time:  2:00 p.m.
18                                  )  Judge: The Honorable Peter W. Bowie
                                    )  Ctrm:  4
19                                  )
                                    )
20                                  )
    _____)

21

22      I, L. Scott Keehn, declare:

23      1.     I am an attorney at law, duly licenced to practice before all courts of this State, and

24  before the United States District Court for the Southern District of California.  I am a shareholder

25  of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

26  personal knowledge of the factual matters stated herein.

27  ///

28  ///

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0469

112196/5311.01

2.      At no time did Mr. Lopez, or anyone acting on his behalf, make any indication to me that there would be dates on which the deposition would be more convenient and cost-effective for Mr. Lopez because he would have "other important matters to attend to in California"[1] in addition to his deposition.  Nor did anyone ever request that our office schedule his deposition to be in conjunction with such occasions.

3.      Had Mr. Lopez or his counsel requested that our office schedule Mr. Lopez's deposition to coincide with a time when he had other matters to attend to in California, I would have made every reasonable effort to comply with such a request.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this Declaration was executed this 13th day of November, 2007, at San Diego, California.

                                        //s// L. Scott Keehn
                                        L. Scott Keehn

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

---

[1]      See, "Opposition of Alleged Debtor to Motion for Sanctions; Declaration of Francis J. Lopez in Support Thereof", Docket Item No. 115, Page 4, Line 4.

0470

112196/5311.01



1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 121
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Cred**

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                          )  Case No. 05-05926-PBINV
                                    )
12      FRANCIS J. LOPEZ,           )  **EVIDENTIARY OBJECTIONS TO THE**
                                    )  **DECLARATION OF FRANCIS J. LOPEZ**
13          Alleged Debtor.         )
                                    )  **[BIFURCATED PHASE II]**
14                                  )
                                    )  Date:  November 19, 2007
15                                  )  Time:  2:00 p.m.
                                    )  Judge: The Honorable Peter W. Bowie
16                                  )  Ctrm:  4
                                    )
17                                  )
                                    )
18  _____ )

19  TO:    **THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY**

20         **JUDGE:**

21         Petitioning Creditors herein respectfully submit the following evidentiary objections, and

22  hereby move to strike the specified portions of the "Declaration of Francis J. Lopez" submitted in

23  support of his "Opposition of Alleged Debtor to Motion for Sanctions" (the "Lopez Declaration").

24         **REQUEST FOR RULING ON OBJECTIONS AND MOTION TO STRIKE**

25         Petitioning Creditors respectfully request that this Court issue rulings on the following

26  evidentiary objections and motion to strike prior to ruling on the merits of their Motion.

27  ///

28  ///

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 121.0
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0471

112192/LFK/5311.01

## EVIDENTIARY OBJECTIONS

Pursuant to the Federal Rules of Evidence ("FRE"), made applicable herein by Rule 9017 of the Federal Rules of Bankruptcy Procedure, Paragraphs 7 - 10 of the Lopez Declaration should be stricken in their entirety.

Paragraphs 7 - 10 of the Lopez Declaration all pertain to the specific questions asked in Lopez's deposition conducted on October 22, 2007.[1]  None of Lopez's proffered statements and opinions about those deposition questions has any bearing on the issues raised in this Motion.  For example, nowhere in Paragraphs 7 - 10 does Lopez address either: (a) his failure to give reasonable notice of his purported "inability" to appear for his deposition, originally noticed for September 11, 2007, or (b) his extensive history of unreasonable delay and *game playing* as set forth in this Motion and its supporting Declarations.  In sum, Paragraphs 7 - 10 are simply irrelevant and should be stricken in their entirety.  FRE 402.

Beyond that, Lopez is not qualified to opine on Petitioning Creditors' legal strategy.  FRE 701.  In Paragraphs 7 - 10 of the Lopez Declaration, Lopez claims that some of the questions asked in his deposition were part of an improper *fishing expedition* related to other cases pending against him, but he fails to set forth facts establishing that he is competent to proffer such an opinion.  Without the requisite foundation, the statements are improper and should be stricken.  FRE 701.

Dated: November 13, 2007            **KEEHN & ASSOCIATES**
                                    A Professional Corporation


                                    By:     //s// L. Scott Keehn
                                            L. Scott Keehn
                                            Attorneys for **Petitioning Creditors**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 FACSIMILE (619) 400-2201

---

[1]     See, Declaration of Francis Lopez, pages 4 - 5.

0472

Document 121

0473

CSD 1183 [10/17/05]
Name, Address, Telephone No. & I.D. No.
L. Scott Keehn (SBN 61691)
Leslie F. Keehn (SBN 199153)
**KEEHN & ASSOCIATES, APC**
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200
Attorneys for Petitioning Creditors

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

FRANCIS J. LOPEZ,

BANKRUPTCY NO.  05-05926-PBINV

Tax I.D.(EIN)#:_____/S.S.#:XXX-XX-____    Debtor.

### NOTICE OF HEARING AND MOTION

TO:    Alleged Debtor, Francis J. Lopez, Other Parties in Interest, and their Attorneys of Record

   **YOU ARE HEREBY NOTIFIED** that on __January 28, 2008_____, at _10:30_a.m.,
in Department No._4___, Room _328___ the Jacob Weinberger United States Courthouse, located at 325 West "F" Street,
San Diego, California 92101-6991, there will be a hearing regarding the motion of __the Petitioning Creditors_____,
for an Order Imposing Terminating Sanctions Against the Debtor.

   Any opposition or other response to this motion must be served upon the undersigned and the original and one copy
of such papers with proof of service must be filed with the Clerk of the U.S. Bankruptcy Court at 325 West "F" Street, San
Diego, California 92101-6991, NOT LATER THAN FOURTEEN (14)[1] DAYS FROM THE DATE OF SERVICE.

DATED: December 27, 2007

                    //s// L. Scott Keehn_____
                    [Attorney for] Moving Party

[1]If you were served electronically or by mail, you have three (3) additional days to take the above-stated actions.

0474

CSD 1183/112616

CSD 1183 (Page 2) [10/17/05]

## CERTIFICATE OF SERVICE

I, the undersigned whose address appears below, certify:

That I am, and at all times hereinafter mentioned was, more than 18 years of age;

That on __27th__ day of _December, 2007_____, I served a true copy of the within NOTICE OF MOTION AND HEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ORDER IMPOSING TERMINATING SANCTIONS AGAINST THE DEBTOR; DECLARATION OF L. SCOTT KEEHN IN SUPPORT OF MOTION FOR AN ORDER IMPOSING TERMINATING SANCTIONS AGAINST THE DEBTOR by [describe here mode of service]

FIRST CLASS MAIL


on the following persons [set forth name and address of each person served] and/or as checked below:

[ ✔ ]    Attorney for Debtor (if required):
       M. Jonathan Hayes
       Law Office of M. Jonathan Hayes
       21800 Oxnard St., Suite 840
       Woodland Hills, CA  91367

| | For Chpt. 7, 11, & 12 cases: | [  ] | For ODD numbered Chapter 13 cases: | [  ] | For EVEN numbered Chapter 13 cases: |
|---|---|---|---|---|---|
| [ ✔ ] | UNITED STATES TRUSTEE<br>Department of Justice<br>402 West Broadway, Suite 600<br>San Diego, CA 92101 | | THOMAS H. BILLINGSLEA, JR., TRUSTEE<br>530 "B" Street, Suite, 1500<br>San Diego, CA 92101 | | DAVID L. SKELTON, TRUSTEE<br>525 "B" Street, Suite 1430<br>San Diego, CA 92101-4507 |

I certify under penalty of perjury that the foregoing is true and correct.

Executed on __12/27/07_____
            (Date)

     //s// Cynthia K. Lay_____
     (Typed Name and Signature)

     402 West Broadway, Suite 1210_____
     (Address)

     San Diego, CA  92101_____
     (City, State, ZIP Code)

0475

CSD 1183/112616

*Sean*

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8                  UNITED STATES BANKRUPTCY COURT

9           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                          )  Case No. 05-05926-PBINV
                                    )
12        FRANCIS J. LOPEZ,         )  **MEMORANDUM OF POINTS AND**
                                    )  **AUTHORITIES IN SUPPORT OF MOTION**
13             Alleged Debtor.      )  **FOR AN ORDER IMPOSING**
                                    )  **TERMINATING SANCTIONS AGAINST**
14                                  )  **THE DEBTOR**
                                    )
15                                  )  **[BIFURCATED PHASE II]**
                                    )
16                                  )  Date:  January 28, 2008
                                    )  Time:  10:30 a.m.
17                                  )  Judge: The Honorable Peter W. Bowie
                                    )  Ctrm:  4
18                                  )
                                    )
19  _____ )

20        Pursuant to Rule 37(b) of the Federal Rules of Civil Procedure ("FRCP"), made applicable

21  to these proceedings by Rule 9014(c) of the Federal Rules of Bankruptcy Procedure ("FRBP"),

22  Petitioning Creditors respectfully submit their Motion for an Order from this Court imposing

23  terminating sanctions against Lopez by striking his answer and entering an Order for Relief

24  forthwith.

25  / / /

26  / / /

27  / / /

28  / / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200  FACSIMILE (619) 400-2201

0476

112614/LFK/5311.01

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

# I. INTRODUCTION

This is the third sanctions motion that the misconduct of the alleged Debtor — Francis J. Lopez ("Lopez") — has forced the Petitioning Creditors to bring in order to redress his continuing pattern of misconduct.[1] The first such motion resulted in an Order from this Court granting Petitioning Creditors' request for evidentiary sanctions, and deferring an award of monetary sanctions.[2] Unfortunately, deferring the monetary sanctions award did not motivate Lopez to perform his duties as a litigant, and instead, Lopez continued his unreasonable delays and game playing. Based on that, on November 19, 2007, the Court granted Petitioning Creditors' second sanctions motion, and ordered Lopez to pay Petitioning Creditors $8,130.50 in monetary sanctions on or before December 19, 2007 (30 days from the date of the Court's order).[3] Lopez has failed to pay any portion of those sanctions.[4]

At this point — *two and a half years after this involuntary petition was filed* — the record developed to date gives the Petitioning Creditors no reason to believe that Lopez will comply with any additional discovery order imposing monetary sanctions. Thus, a terminating sanction appears to be the only meaningful response to Lopez's consistent course of misconduct that will serve to process this case forward and to halt the threat of further prejudice to all creditors that is engendered by further delay.

///
///
///
///

---

[1] See, Docket Item 105 (Petitioning Creditors' "Motion for an Enforcement Order: (1) Imposing Monetary Sanctions Against the Debtor; and (2) Imposing Evidentiary Sanctions Against the Debtor"); and Docket Item 114 (Petitioning Creditors' "Motion for an Enforcement Order Imposing Monetary Sanctions Against the Debtor").

[2] See Docket Item 108.

[3] See Docket Item 117.

[4] See the "Declaration of L. Scott Keehn, etc." filed concurrently herewith ("LSK Decl.") at ¶ 4.

0477

## II. DISCUSSION

**A.    Terminating Sanctions are Warranted in Light of Lopez's Course of Misconduct and Refusal to Comply with this Court's Order Imposing Monetary Sanctions.**

"Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules."[5]  Here, FRCP 37 is made applicable to these proceedings by FRBP 9014(c), and grants this Court broad discretion to tailor appropriate sanctions for Lopez's unjustified refusal to comply with this Court's 11/19/2007 discovery order.[6]

Where, as here, an alleged debtor has engaged in a course of serious discovery misconduct, which includes failure to comply with court orders, the court may issue a terminating sanction consisting of an order striking the debtor's answer and entering an Order for Relief.[7]  Lopez has repeatedly demonstrated that he is unmoved by either the threat of monetary sanctions, or an actual order from this Court imposing the threatened monetary sanctions.[8]  He has once again *thumbed his nose* at Petitioning Creditors and this Court's authority by simply refusing to pay the monetary sanctions which this Court ordered him to pay.  Based on that blatant display of defiance, it appears highly unlikely that Lopez would comply with another order imposing monetary sanctions.  Fortunately, Petitioning Creditors do have a viable remedy in the form of terminating sanctions.[9]  Considering the totality of circumstances as they are memorialized by the

---

[5]    *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

[6]    *Matter of Visioneering Const.*, 661 F.2d 119, 123 (9th Cir. 1981) ("The bankruptcy court, faced with an obstreperous alleged bankrupt, unequivocally had the power to apply Fed.R.Civ.P. 37 sanctions for obstruction of discovery"); *In re Williams*, 215 B.R. 289, 299 (Dist. Ct. D.R.I. 1997) ("the choice and severity of the sanction imposed is a matter reserved to the sanctioning court's discretion").

[7]    *In re Rice*, 14 B.R. 843, 846 (9th Cir.BAP 1981); *Matter of Visioneering Const.*, supra, 661 F.2d at 123 (court's order striking alleged debtor's answer was an appropriate sanction since the debtor had "deliberately and obstinately refused to cooperate with discovery requests and court orders"); *De Falco v. Oak Lawn Public Library*, 25 Fed.Appx. 455, 457 (7th Cir. 2001) (terminating sanctions appropriate where the plaintiff "flouted the district court's order and exemplified the delay and avoidance to which the court referred").

[8]    See, Docket Items 105 & 108.

[9]    See, FRCP 37(b)(2)(A).

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

0478

1 │ record of Lopez's pervasive misconduct in this case, such terminating sanctions should be

2 │ imposed forthwith.[10]

3 │ **B.      Immediate Entry of the Order for Relief is Further Warranted in Order to Eliminate
         the Prejudice of Potentially Growing Priority Gap Claims.**

4 │

5 │         Delay has been the pervasive and foreseeable consequence of Lopez's continuing refusal

6 │ to either participate in good faith or obey the orders of this Court. Whether by design or

7 │ happenstance, that delay exposes all creditors to the unnecessary risk of dilution of the value of

8 │ their claims — indeed the Bankruptcy process in its entirety — by the unending and

9 │ uncontrollable expansion of priority gap claims. Lopez remains at liberty to create an unlimited

10 │ variety of "Gap Claims"[11] which will slip ahead of all of the pre-petition unsecured creditors in

11 │ priority. The plight of those creditors is exacerbated by the automatic stay which prevents them

12 │ from taking any enforcement action to preserve the economic utility of their claims.[12] The risks of

13 │ prejudice are further heightened by the initial delay that was occasioned by the bifurcation of the

14 │ case — at Lopez's request — so that the Involuntary Gap Period was necessarily rendered longer

15 │ than the norm.

16 │         What mischief has already occurred behind the shield of delay, and what further roguery

17 │ may yet occur before the Order for Relief is ultimately entered, is impossible to ascertain. But,

18 │ what can be seen with absolute clarity is that Lopez will not willingly discharge the duties of a

19 │ litigant to participate in good faith in the process, nor will he obey the lawful orders of this Court.

20 │ He has used his *passive/aggressive* tactic of delay to the prejudice of the creditors, and that

21 │ prejudice must be truncated so that the risks of an expanding pool of priority claims is held in

22 │ check.

23 │         Lopez's past and present disobedience is particularly troubling because it demonstrates

24 │ that — beyond his willingness to disobey court mandates — he is impervious to the threat of

25 │

26 │     [10]   *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d
       1062, 1068 (2nd Cir. 1979) ("sanctions must be weighed in light of the full record in the case").

27 │     [11]   See 11 U.S.C. §§ 502(f) and 507(a)(3).

28 │     [12]   See 11 U.S.C. § 362(a).

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2300 · FACSIMILE (619) 400-2201

0479

1  monetary sanctions. He just refuses to pay them. So, what the fulness of time has demonstrated is

2  that neither the threat, nor the actual imposition of monetary sanctions, has any real impact on

3  Lopez. Given this demonstration that he will neither play by the rules, nor obey the Court's

4  mandates, it is appropriate to truncate his continuing ability to dilute the value of the process to his

5  pre-petition creditors and demean the integrity of the Court by imposing the one sanction that can

6  not be ignored — the terminating sanction that puts a trustee in control and caps the universe of

7  priority gap claims.

8                          **III. CONCLUSION**

9      Patience is a virtue. But, like most virtues, it is vulnerable to exploitation, which converts

10  its salutary objectives into a deplorable reality. This Court's patience has been beyond exemplary,

11  while Lopez's exploitation of it has been unending, despicable, and without excuse. Because

12  *"sanctions must be weighed in light of the full record in the case"*,[13] here only a terminating

13  sanction can set the scales aright. In the course of their three sanctions motions, the Petitioning

14  Creditors have now thoroughly chronicled Lopez's extensive history of ignoring the mandates of

15  both the discovery statutes and this Court's orders. His conduct is both inexcusable and

16  intolerable. Based on that, and on all of the foregoing, Petitioning Creditors respectfully request

17  that this Court issue an Order striking Lopez's answer and entering an Order for Relief forthwith.

19  Dated: December 27, 2007          **KEEHN & ASSOCIATES**
                                       A Professional Corporation

21                              By:   *//s// L. Scott Keehn*
22                                    L. Scott Keehn
                                      Attorneys for **Petitioning Creditors**

_____

[13]    *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, supra, 602 F.2d at 1068.



0480

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11 In Re:                              )  Case No.  05-05926-PBINV
                                       )
12      FRANCIS J. LOPEZ,              )  **DECLARATION OF L. SCOTT KEEHN IN**
                                       )  **SUPPORT OF MOTION FOR AN**
13          Alleged Debtor.           )  **ORDER IMPOSING TERMINATING**
                                       )  **SANCTIONS AGAINST THE DEBTOR**
14                                     )
                                       )  **[BIFURCATED PHASE II]**
15                                     )
                                       )  Date:   January 28, 2008
16                                     )  Time:   10:30 a.m.
                                       )  Judge: The Honorable Peter W. Bowie
17                                     )  Ctrm:   4
                                       )
18                                     )
                                       )
19 _____)

20      1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

21 before the United States District Court for the Southern District of California.  I am a shareholder

22 of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

23 personal knowledge of the factual matters stated herein.

24      2.      The "Declaration of L. Scott Keehn in Support of Petitioning Creditors' Motion for

25 an Enforcement Order: (1) Imposing Monetary Sanctions Against the Debtor; and (2) Imposing

26 Evidentiary Sanctions Against the Debtor" was filed herein by my office on May 24, 2007, and is

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0481

112617/LFK/5311.01

1  incorporated herein by this reference.[1]  In that Declaration, I summarized the delay and *bad faith*

2  dilatory discovery tactics employed by Lopez during the 6-month period of December 3, 2006

3  through May 23, 2007.

4      3.    The "Declaration of L. Scott Keehn Re: Motion for an Enforcement

5  Order imposing Monetary Sanctions Against the Debtor" was filed herein by my office on

6  October 19, 2007, and is incorporated herein by this reference.[2]  In that Declaration I:

7  (a) summarized the delay and *bad faith* discovery tactics employed by Lopez in connection with

8  his deposition during phase two of these bifurcated proceedings; and (b) referred the Court to the

9  Declaration of Timothy P. Dillon filed herein on September 27, 2007,[3] describing Lopez's similar

10  pattern of *bad faith* and tactics of delay in other cases involving Petitioning Creditor Alan Stanly.

11      4.    I was present at the hearing in this matter on November 19, 2007 when the Court

12  granted Petitioning Creditors' second sanctions motion, and ordered Lopez to pay Petitioning

13  Creditors $8,130.50 in monetary sanctions on or before December 19, 2007 (30 days from the date

14  of the Court's order).[4]  As of the date of this Declaration, Lopez has failed to pay any portion of

15  those sanctions.

16      5.    Petitioning Creditors have no reason to believe that Lopez will comply with any

17  additional discovery order imposing monetary sanctions.  Thus, a terminating sanction appears to

18  be the only meaningful response to Lopez's consistent course of misconduct.

19      I declare under penalty of perjury under the laws of the United States that the foregoing is

20  true and correct, and that this Declaration was executed this 27th day of December, 2007, at San

21  Diego, California.

22                                 //s// L. Scott Keehn

                                **L. Scott Keehn**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

---

[1]      See Exhibit A, Docket Item 105 (attachment #2).

[2]      See Exhibit B, Docket Item 114 (attachment #2).

[3]      See Exhibit C, Docket Item 111 (attachment #1).

[4]      See Docket Item 117.

0482

# EXHIBIT A

0483

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8                  UNITED STATES BANKRUPTCY COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                              )  Case No.  05-05926-PBINV
                                        )
12      FRANCIS J. LOPEZ,               )  Involuntary Chapter 7
                                        )
13              Alleged Debtor.         )  **DECLARATION OF L. SCOTT KEEHN IN
                                        )  SUPPORT OF PETITIONING
14                                      )  CREDITORS' MOTION FOR AN
                                        )  ENFORCEMENT ORDER: (1) IMPOSING
15                                      )  MONETARY SANCTIONS AGAINST THE
                                        )  DEBTOR; AND (2) IMPOSING
16                                      )  EVIDENTIARY SANCTIONS AGAINST
                                        )  THE DEBTOR**
17                                      )
                                        )  **[BIFURCATED PHASE II]**
18                                      )
                                        )  Date:  June 25, 2007
19                                      )  Time:  10:30 a.m.
                                        )  Judge: The Honorable Peter W. Bowie
20                                      )  Ctrm:  4
                                        )
21  _____)

22      I, L. Scott Keehn, declare:

23      1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

24  before the United States District Court for the Southern District of California. I am a shareholder

25  of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors. I have

26  personal knowledge of the factual matters stated herein.

27      2.      On November 03, 2006, my office served Lopez with Petitioning Creditors' First

28  Set of Written Discovery for Phase II (the "Phase II Written Discovery"), consisting of: (1) First

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0484

1  Phase II Requests for Admission Propounded by Petitioning Creditors [10 Requests]; (2) First

2  Phase II Request for Production of Documents by Petitioning Creditors [162 categories of

3  documents]; and (3) First Phase II Interrogatories Propounded by Petitioning Creditors [35

4  Interrogatories]. True and correct copies of the Phase II Written Discovery are attached hereto,

5  marked Exhibits A, B and C respectively. Lopez's responses were due on December 4, 2006.

6      3.    On December 03, 2006, Lopez served his "Response to Requests for Admission

7  Propounded to Alleged Debtor Francis J. Lopez (Phase II)." **Lopez's responses were deficient,**

8  **and Lopez failed to verify the responses.**

9      4.    On December 05, 2006, Lopez served his "Response to Interrogatories Propounded

10  to Alleged Debtor Francis J. Lopez (Phase II). **Lopez's responses were deficient, and Lopez**

11  **failed to verify the responses.** At the same time, Lopez served his "Response to Requests for

12  Production of Documents." **Lopez's responses were deficient.**

13      5.    On December 13, 2006, I sent a *meet and confer* letter to Lopez's attorney, M.

14  Jonathan Hayes, notifying him of the deficiencies in Lopez's responses to the Phase II Written

15  Discovery.

16      6.    On December 15, 2006, attorney Hayes and I participated in a telephonic *meet and*

17  *confer* conference wherein the parties agreed that Lopez would provide supplemental responses to

18  the Phase II Written Discovery on or before January 12, 2007.

19      7.    On January 12, 2007 – the Deadline for Lopez to provide the promised

20  supplemental responses to the Phase II Written Discovery – **Lopez failed, without explanation,**

21  **to provide supplemental responses to the Phase II Written Discovery.**

22      8.    On January 19, 2007, I sent a follow-up *meet and confer* letter to attorney Hayes

23  requesting an explanation regarding Lopez's failure to provide the promised supplemental

24  responses to discovery, and notifying Lopez of the imminent likelihood of a motion to compel his

25  responses to the Phase II Written Discovery. **Lopez failed, without explanation, to respond to**

26  **that** *meet and confer* **letter.**

27      9.    On January 29, 2007, Petitioning Creditors filed a Motion to Compel responses to

28  the Phase II Written Discovery. **Lopez failed, without explanation, to respond or file an**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**0 4 8 5**

110315/LFK/5311.01

1  Opposition to that Motion.

2      10.    On March 10, 2007 – a Saturday, just two days prior to the scheduled hearing on

3  Petitioning Creditors' Motion to Compel Lopez's responses to the Phase II Written Discovery –

4  attorney Hayes emailed me approximately 155 pages of documents, purportedly in response to the

5  "First Phase II Request for Production of Documents by Petitioning Creditors." **This last-minute**

6  **"*document dump*" was improper because the documents: (1) were not responsive to the**

7  **Requests, (2) were not organized by category of Request, and (3) consisted of at least 103**

8  **pages of pleadings filed in the San Diego Superior Court which are already in the Petitioning**

9  **Creditors' possession. Lopez failed, without explanation, to explain the deficiencies and/or**

10  **his failure to provide the agreed-upon supplemental responses.**

11      11.    On March 12, 2007, I appeared at the hearing during which this Court granted

12  Petitioning Creditors' motion to compel Lopez to provide supplemental responses to the Phase II

13  Written Discovery.[1]  The Court ordered Lopez to provide the supplemental responses on or before

14  April 11, 2007. The Court — in open session — indicated that it was deferring its ruling on the

15  request for monetary sanctions of $4,242 because: (a) it wanted the risk of those sanctions to serve

16  as a *Sword of Damocles* to encourage compliance with the Court's order; and (b) Lopez would

17  have to "work his way out of those sanctions."

18      12.    On April 10, 2007, Lopez mailed my office a set of supplemental responses to the

19  Phase II Written Discovery which were patently deficient in that, i.e., they failed to fully respond

20  to the Interrogatories asked, failed to provide facts in support of asserted denials to the Requests

21  for Admissions, and failed to produce responsive documents. True and correct copies of Lopez's

22  supplemental responses are attached hereto marked Exhibits D, E and F.

23      13.    On May 11, 2007, the parties, through their counsel, attended a status conference

24  wherein this Court ordered Lopez to file proper supplemental responses to the Phase II Written

25  Discovery on or before May 21, 2007. Later that afternoon, I met with attorney Hayes at my office

26  regarding the deficiencies in Lopez's supplemental responses to the Phase II Written Discovery.

27

28

[1]    See, Docket Item #93.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW

- 3 -

**0486**

110315/LFK/5311.01

1   Attorney Hayes requested that I set forth the deficiencies in a *meet and confer* letter to him.

2       14.     As requested, on May 14, 2007, I sent a *meet and confer* letter via email and first

3   class United States mail to attorney Hayes which enumerated each and every deficiency in Lopez's

4   supplemental responses to the Phase II Written Discovery.  A true and correct copy of that letter is

5   attached hereto, marked Exhibit G.

6       15.     After the close of business, at 7:10 P.M., on May 21, 2007 – the deadline for Lopez

7   to supplement his supplemental responses to the Phase II Written Discovery –  attorney Hayes

8   emailed me a request for two additional days for Lopez to supplement his responses to the Phase II

9   Written Discovery.  The next morning, on May 22, 2007, I responded to attorney Hayes' email by

10  indicating that I would grant the requested two-day extension of time, in exchange for a stipulation

11  providing Petitioning Creditors with an equivalent two-business-day extension of time – from May

12  25, 2007 to May 30, 2007 – to file any necessary discovery motion.  A true and correct copy of that

13  email correspondence is attached hereto, marked Exhibit H.

14      16.     On May 23, 2007, attorney Hayes sent me an email wherein he withdrew Lopez's

15  request for an extension of time, and notified me that Lopez would not be providing any additional

16  responses to the Phase II Written Discovery.  A true and correct copy of that email correspondence

17  is attached hereto, marked Exhibit I.

18      I declare under penalty of perjury under the laws of the United States that the foregoing is

19  true and correct, and that this Declaration was executed this 24th day of May, 2007, at San Diego,

20  California.

                                        /s/ L. Scott Keehn
                                        L. Scott Keehn

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2300 · FACSIMILE (619) 400-2301

0487

110315/LFK/5311.01

# EXHIBIT B

0488

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8                  UNITED STATES BANKRUPTCY COURT

9              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11 In Re:                                  ) Case No. 05-05926-PBINV
                                           )
12      FRANCIS J. LOPEZ,                   ) Involuntary Chapter 7
                                           )
13              Alleged Debtor.            ) **DECLARATION OF L. SCOTT KEEHN RE:**
                                           ) **MOTION FOR AN ENFORCEMENT**
14                                         ) **ORDER IMPOSING MONETARY**
                                           ) **SANCTIONS AGAINST THE DEBTOR**
15                                         )
                                           ) **[BIFURCATED PHASE II]**
16                                         )
                                           ) Date:  November 19, 2007
17                                         ) Time:  2:00 p.m.
                                           ) Judge: The Honorable Peter W. Bowie
18                                         ) Ctrm:  4
                                           )
19                                         )
                                           )
20                                         )
                                           )
21  _____)

22      I, L. Scott Keehn, declare:

23      1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

24  before the United States District Court for the Southern District of California.  I am a shareholder

25  of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

26  personal knowledge of the factual matters stated herein.

27      2.      The "Declaration of L. Scott Keehn in Support of Petitioning Creditors' Motion for

28  an Enforcement Order: (1) Imposing Monetary Sanctions Against the Debtor; and (2) Imposing

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0489

1  Evidentiary Sanctions Against the Debtor" was filed herein by my office on May 24, 2007, and is

2  incorporated herein by this reference.[1] In that Declaration, I summarized the delay and *bad faith*

3  discovery tactics employed by Lopez during the 6-month period of December 3, 2006 through

4  May 23, 2007.

5  　　　　3.　　On March 12, 2007, the Court ordered Lopez to provide supplemental discovery

6  responses on or before April 11, 2007. The Court — in open session — indicated that it was

7  deferring its ruling on the request for monetary sanctions of $4,442 because: (a) it wanted the risk

8  of those sanctions to serve as a *Sword of Damocles* to encourage compliance with the Court's

9  order; and (b) Lopez would have to "work his way out of those sanctions." Unfortunately, Lopez

10  is apparently unimpressed with either this Court's order or the threat of sanctions.

11  　　　　4.　　On June 25, 2007, the Court conducted its hearing on Petitioning Creditors' request

12  for monetary and evidentiary sanctions based on Lopez's dilatory tactics up to that time.[2] The

13  Court deferred again the imposition of previously requested monetary sanctions ($4,442.00), but

14  ordered the imposition of evidentiary sanctions precluding Lopez's use of any documents which he

15  had not yet produced.[3]

16  　　　　5.　　On the courthouse steps following the June 25, 2007 hearing, I conferred with

17  Lopez's attorney Jonathan Hayes regarding Petitioning Creditors' request to take Lopez's

18  deposition. At that time, I stated that I would like to calendar the deposition before July 31, 2007

19  because I would be out of my office for virtually the entire month of August. Mr. Hayes and I

20  agreed that either July 20 or July 27 would work on our calendars, and Mr. Hayes indicated that

21  he would inquire as to Lopez's availability on those dates.

22  　　　　6.　　Three days later, on June 28, 2007, Mr. Hayes transmitted to me the following

23  email message: *"I have spoken to my client about the deposition dates we discussed, July 20 or 27.*

24  *He is checking his calendar. I will let you know **shortly**."* (Emphasis added.)

25  _____

26  　　　[1]　　See Exhibit 1, Docket Item 105 (attachment #2).

27  　　　[2]　　See Exhibit 2, Docket Item 110 [Transcript of the June 25, 2007 hearing ("6/25/07
Transcript")].

28  　　　[3]　　See Exhibit 2, 6/25/07 Transcript at p. 17.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0490

111886/LFK/5311.01

7.    Twenty-two days later — in the early evening of July 20, 2007 — Mr. Hayes transmitted an email suggesting, for the first time, July 31, 2007, as an available date for the deposition.

8.    Given that July 31, 2007 would be my last day in the office before a 30-day vacation, I knew I would be fully consumed with matters necessary to be completed in preparation for that absence. Because of that, and because of the fact that I had received absolutely no communication from Mr. Hayes' office following the June 28, 2007 email, my office issued and mailed to Mr. Hayes a notice of Lopez's deposition for Tuesday, September 11, 2007, at 9:00 a.m. in our office.

9.    On July 31, 2007, there was a further Status Conference in the case. I reported to the Court the events summarized in paragraphs 5-8 above, including the fact that we had noticed Mr. Lopez's deposition for September 11, 2007. Mr. Hayes stated in open court that he would communicate that information to Mr. Lopez, and let me know if there was any problem with that date. That was the last I heard from Mr. Hayes until September 10, 2007.

10.    In the afternoon of September 10, 2007 — less than 24 hours before the deposition was scheduled to begin — Lopez's attorney sent me a brief email stating that Lopez was *unable to make travel arrangements for the deposition tomorrow.*" The email suggested October 8, 2007 or October 22, 2007 as possible dates for the deposition. Lopez's deposition is currently scheduled for October 22, 2007 at 9:30 a.m. based on Mr. Hayes' representation that it was an acceptable date and time.

11.    As stated in open court on June 25, 2007,[4] once Lopez's deposition is conducted, Petitioning Creditors intend to prepare and file their summary judgment motion to establish that Lopez was in fact not paying his debts as they came due as of the date of the involuntary petition.

12.    Lopez's past misconduct in this case mirrors his extensive misconduct in other litigation involving Lopez and Petitioning Creditor Alan Stanly in other San Diego courts, as detailed in the Declaration of Timothy P. Dillon filed herein on September 27, 2007 and

_____

[4]    See Exhibit 2, 6/25/07 Transcript at p. 18.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 FACSIMILE (619) 400-2201

0491

111886/LFK/5311.01

1  incorporated herein by this reference.[5]  Considering Lopez's pervasive custom and practice of

2  refusing to perform his duties as a litigant unless and until he is [forensically] bludgeoned into

3  submission by the court, it appears clear that monetary sanctions should now be imposed.

4  Without a significant sanctions order, I do not believe that Lopez will ever voluntarily appear for,

5  and participate in good faith at, his deposition in this case.

6       13.    My office spent a total of 13.6 hours preparing this second motion for sanctions to

7  redress Lopez's discovery abuses.  Specifically, attorney Leslie F. Keehn spent 12.6 hours

8  working on this motion, at her standard hourly rate of $225.00.  I worked 1.0 hour, at my standard

9  hourly rate of $320.00.  Petitioning Creditors will be billed a total of $3,155.00 for this motion.

10       14.    I have reviewed the applicable time and billing records generated by my office.

11  True and correct copies of those records are attached hereto as Exhibit 4,[6] and are summarized as

12  follows: (a) $2,164.50 for 7.7 hours (attorney and paralegal time) spent preparing the necessary

13  documents and questions for Lopez's deposition; (b) $224.00 for 0.7 hours of my time to confer

14  with attorney Hayes regarding Lopez's last minute failure to appear; and (c) $6,590.00 for 25.7

15  hours of total attorney time (including my time and Leslie F. Keehn's time) reviewing the

16  requisite evidence, and drafting the declarations in support of Petitioning Creditors' renewed

17  motion for the monetary sanctions originally requested on May 24, 2007.

18       15.    With this motion, Petitioning Creditors are seeking monetary sanctions in the total

19  amount of **$12,133.50** to fully reimburse them for the fees they have actually incurred as described

20  in Paragraphs 13 and 14 above.

21       I declare under penalty of perjury under the laws of the United States that the foregoing is

22  true and correct, and that this Declaration was executed this 19th day of October, 2007, at San

23  Diego, California.

24                     /s/ L. Scott Keehn
                   L. Scott Keehn

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

---

27  [5]    See Exhibit 3, Docket Item 111 (attachment #1).

28  [6]    The non-applicable entries in the billing records contained in Exhibit 4 have been
redacted.

0492

111886/LFK/5311.01

# EXHIBIT 1

0493

1   L. Scott Keehn, SBN 61691
    Leslie F. Keehn, SBN 199153
2   KEEHN & ASSOCIATES
    A Professional Corporation
3   402 West Broadway, Suite 1210
    San Diego, California 92101
4   Telephone: (619) 400-2200

5   Attorneys for Petitioning Creditors

6

7

8                    UNITED STATES BANKRUPTCY COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                              )  Case No.  05-05926-PBINV
                                        )
12          FRANCIS J. LOPEZ,           )  Involuntary Chapter 7
                                        )
13                  Alleged Debtor.     )  DECLARATION OF L. SCOTT KEEHN IN
                                        )  SUPPORT OF PETITIONING
14                                      )  CREDITORS' MOTION FOR AN
                                        )  ENFORCEMENT ORDER: (1) IMPOSING
15                                      )  MONETARY SANCTIONS AGAINST THE
                                        )  DEBTOR; AND (2) IMPOSING
16                                      )  EVIDENTIARY SANCTIONS AGAINST
                                        )  THE DEBTOR
17                                      )
                                        )  [BIFURCATED PHASE II]
18                                      )
                                        )  Date:  June 25, 2007
19                                      )  Time:  10:30 a.m.
                                        )  Judge: The Honorable Peter W. Bowie
20                                      )  Ctrm:  4
                                        )
21  _____

22      I, L. Scott Keehn, declare:

23      1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

24  before the United States District Court for the Southern District of California. I am a shareholder

25  of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors. I have

26  personal knowledge of the factual matters stated herein.

27      2.      On November 03, 2006, my office served Lopez with Petitioning Creditors' First

28  Set of Written Discovery for Phase II (the "Phase II Written Discovery"), consisting of: (1) First

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0494

1  Phase II Requests for Admission Propounded by Petitioning Creditors [10 Requests]; (2) First

2  Phase II Request for Production of Documents by Petitioning Creditors [162 categories of

3  documents]; and (3) First Phase II Interrogatories Propounded by Petitioning Creditors [35

4  Interrogatories]. True and correct copies of the Phase II Written Discovery are attached hereto,

5  marked Exhibits A, B and C respectively. Lopez's responses were due on December 4, 2006.

6       3.    On December 03, 2006, Lopez served his "Response to Requests for Admission

7  Propounded to Alleged Debtor Francis J. Lopez (Phase II)." **Lopez's responses were deficient,**

8  **and Lopez failed to verify the responses.**

9       4.    On December 05, 2006, Lopez served his "Response to Interrogatories Propounded

10  to Alleged Debtor Francis J. Lopez (Phase II). **Lopez's responses were deficient, and Lopez**

11  **failed to verify the responses.** At the same time, Lopez served his "Response to Requests for

12  Production of Documents." **Lopez's responses were deficient.**

13       5.    On December 13, 2006, I sent a *meet and confer* letter to Lopez's attorney, M.

14  Jonathan Hayes, notifying him of the deficiencies in Lopez's responses to the Phase II Written

15  Discovery.

16       6.    On December 15, 2006, attorney Hayes and I participated in a telephonic *meet and*

17  *confer* conference wherein the parties agreed that Lopez would provide supplemental responses to

18  the Phase II Written Discovery on or before January 12, 2007.

19       7.    On January 12, 2007 – the Deadline for Lopez to provide the promised

20  supplemental responses to the Phase II Written Discovery – **Lopez failed, without explanation,**

21  **to provide supplemental responses to the Phase II Written Discovery.**

22       8.    On January 19, 2007, I sent a follow-up *meet and confer* letter to attorney Hayes

23  requesting an explanation regarding Lopez's failure to provide the promised supplemental

24  responses to discovery, and notifying Lopez of the imminent likelihood of a motion to compel his

25  responses to the Phase II Written Discovery. **Lopez failed, without explanation, to respond to**

26  that *meet and confer* letter.

27       9.    On January 29, 2007, Petitioning Creditors filed a Motion to Compel responses to

28  the Phase II Written Discovery. Lopez failed, without explanation, to respond or file an

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

110315/LFK/53  0495

Opposition to that Motion.

10.    On March 10, 2007 – a Saturday, just two days prior to the scheduled hearing on Petitioning Creditors' Motion to Compel Lopez's responses to the Phase II Written Discovery – attorney Hayes emailed me approximately 155 pages of documents, purportedly in response to the "First Phase II Request for Production of Documents by Petitioning Creditors." **This last-minute "*document dump*" was improper because the documents: (1) were not responsive to the Requests, (2) were not organized by category of Request, and (3) consisted of at least 103 pages of pleadings filed in the San Diego Superior Court which are already in the Petitioning Creditors' possession. Lopez failed, without explanation, to explain the deficiencies and/or his failure to provide the agreed-upon supplemental responses.**

11.    On March 12, 2007, I appeared at the hearing during which this Court granted Petitioning Creditors' motion to compel Lopez to provide supplemental responses to the Phase II Written Discovery.[1] The Court ordered Lopez to provide the supplemental responses on or before April 11, 2007. The Court — in open session — indicated that it was deferring its ruling on the request for monetary sanctions of $4,242 because: (a) it wanted the risk of those sanctions to serve as a *Sword of Damocles* to encourage compliance with the Court's order; and (b) Lopez would have to "work his way out of those sanctions."

12.    On April 10, 2007, Lopez mailed my office a set of supplemental responses to the Phase II Written Discovery which were patently deficient in that, i.e., they failed to fully respond to the Interrogatories asked, failed to provide facts in support of asserted denials to the Requests for Admissions, and failed to produce responsive documents. True and correct copies of Lopez's supplemental responses are attached hereto marked Exhibits D, E and F.

13.    On May 11, 2007, the parties, through their counsel, attended a status conference wherein this Court ordered Lopez to file proper supplemental responses to the Phase II Written Discovery on or before May 21, 2007. Later that afternoon, I met with attorney Hayes at my office regarding the deficiencies in Lopez's supplemental responses to the Phase II Written Discovery.

---

[1]    See, Docket Item #93.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1   Attorney Hayes requested that I set forth the deficiencies in a *meet and confer* letter to him.

2       14.     As requested, on May 14, 2007, I sent a *meet and confer* letter via email and first

3   class United States mail to attorney Hayes which enumerated each and every deficiency in Lopez's

4   supplemental responses to the Phase II Written Discovery.  A true and correct copy of that letter is

5   attached hereto, marked Exhibit G.

6       15.     After the close of business, at 7:10 P.M., on May 21, 2007 – the deadline for Lopez

7   to supplement his supplemental responses to the Phase II Written Discovery –   attorney Hayes

8   emailed me a request for two additional days for Lopez to supplement his responses to the Phase II

9   Written Discovery.  The next morning, on May 22, 2007, I responded to attorney Hayes' email by

10  indicating that I would grant the requested two-day extension of time, in exchange for a stipulation

11  providing Petitioning Creditors with an equivalent two-business-day extension of time – from May

12  25, 2007 to May 30, 2007 – to file any necessary discovery motion.  A true and correct copy of that

13  email correspondence is attached hereto, marked Exhibit H.

14      16.     On May 23, 2007, attorney Hayes sent me an email wherein he withdrew Lopez's

15  request for an extension of time, and notified me that Lopez would not be providing any additional

16  responses to the Phase II Written Discovery.  A true and correct copy of that email correspondence

17  is attached hereto, marked Exhibit I.

18      I declare under penalty of perjury under the laws of the United States that the foregoing is

19  true and correct, and that this Declaration was executed this 24th day of May, 2007, at San Diego,

20  California.

/s/ L. Scott Keehn
L. Scott Keehn

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
432 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

110315/LFK/5311.01

0497

# EXHIBIT 2

0498

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING

|  |  |
|---|---|
| | ) |
| | ) |
| FRANCIS J. LOPEZ | ) CASE NO. 05-05926-PB |
| | ) |
| | ) |
| _____ | ) |

1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT
ORDER: A ) IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR;
AND, B) IMPOSING EVIDENTIARY SANCTIONS AGAINST THE
DEBTOR.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, JUNE 25, 2007

SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

M. JONATHAN HAYES

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


L. SCOTT KEEHN

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, JUNE 25, 2007 , 10:00 A.M.

--- O O O ---

0500

THE CLERK:    IN THE MATTER OF FRANCIS J. LOPEZ.   TWO

MATTERS: CONTINUED STATUS CONFERENCE ON INVOLUNTARY

PETITION AND ANSWER; AND, PETITIONING CREDITORS' MOTION

FOR AN ENFORCEMENT ORDER (1) IMPOSING MONETARY SANCTIONS

AGAINST THE DEBTOR; AND, (2) IMPOSING EVIDENTIARY

SANCTIONS AGAINST THE DEBTOR.

APPEARANCES, PLEASE.

MR. KEEHN:    GOOD MORNING, YOUR HONOR.

SCOTT KEEHN APPEARING ON BEHALF OF THE PETITIONING

CREDITORS.

MR. HAYES:    GOOD MORNING, YOUR HONOR.

JOHN HAYES APPEARING FOR THE DEBTOR -- ALLEGED DEBTOR.

MR. KEEHN:    YOUR HONOR, THIS PARTICULAR ODYSSEY BEGAN

BEFORE THANKSGIVING, IF YOU CAN BELIEVE THAT, BACK ON

NOVEMBER 3RD.

THE COURT:    THAT'S NOTHING AT ALL COMPARED TO ADAMS.

    MR. KEEHN:    YOU KNOW, I WAS HOPING YOU WOULDN'T

JUST CONFINE YOURSELF TO THIS RECORD.  AND ALSO THE CASE

BEFORE, THERE WERE THIRTEEN MEET AND CONFER LETTERS; AND

WE DON'T MEET THAT RECORD, EITHER.

BUT THIS IS AN INVOLUNTARY PETITION.  AND WE WERE HOPING

TO MOVE IT ALONG WITH A LITTLE MORE ALACRITY THAN YOU MIGHT

EXPECT IN --

THE COURT:    SO YOU'RE SAYING IT REMAINS INVOLUNTARY?

MR. KEEHN:    OH, VERY INVOLUNTARY.

WHAT WE HAVE HERE IN RESPONSE TO OUR REQUEST FOR DISCOVERY

0501

THAT WERE PROMULGATED NOW SEVEN MONTHS AGO; AT FIRST THERE WAS NO RESPONSE AT ALL IN THE APPROPRIATE PERIOD.  ALL OBJECTIONS WERE WAIVED.  AND WHEN WE MOVED FOR MOTION TO COMPEL THE SANCTIONS.  COUNSEL COMES IN AND APOLOGIZES FOR DEBTOR, BEMOANS THE FACT THAT WE'RE ASKING FOR A LOT OF INFORMATION; AND AGREES TO THE COURT'S RULING THAT SUPPLEMENTAL RESPONSES SHOULD BE PROVIDED NOT LATER THAN THE 21ST OF MAY.

WELL, ON THE 21ST OF MAY -- AND, ACTUALLY NOTHING HAPPENED BETWEEN THE TIME THE COURT MADE THAT -- GAVE THE DEBTOR THAT SECOND CHANCE.  NOTHING HAPPENED BETWEEN THEN AND MAY 21ST UNTIL SHORTLY AFTER SEVEN IN THE EVENING WHEN MR. HAYES E-MAILED MY E-MAIL WITH A REQUEST FOR A DAY OR TWO EXTENSION.

WELL, I DIDN'T HAVE ANY PROBLEM WITH A DAY OR TWO EXTENSION, AS LONG AS I GET AN EQUAL EXTENSION AND TIME TO REPLY.  AS SOON AS I SAW THE E-MAIL THE FOLLOWING MORNING, I RELAYED THAT INFORMATION TO MR. HAYES.

IN RESPONSE TO THAT, I RECEIVED ANOTHER E-MAIL THAT SAID, NO, WE'RE NOT GOING TO PROVIDE ANYTHING ELSE AND WE'RE WITHDRAWING OUR REQUEST FOR EXTENSION.

SO ONCE AGAIN, WE HAVE THE TIME PERIOD PASSING AND, OF COURSE, WE WERE PREJUDICED, NOT IN AN OVERWHELMING DEGREE, BUT NOTICEABLY BY THE FACT THAT IN RESPONSE TO THE FIRST E-MAIL WE HAD ANTICIPATED THAT WE WOULD NOT HAVE TO MEET THE ORIGINAL DEADLINE FOR RESPONSE.

SO, UPON RECEIVING THE WITHDRAWAL E-MAIL, WE QUICKLY

REGROUPED AND DID OUR REPLY -- DID OUR MOTION, RATHER.    WE
HAD ONLY A FEW DAYS TO DO THAT, GIVEN THE SETTING OF THIS
PARTICULAR HEARING IN ORDER TO GIVE AN ADEQUATE TIME TO
RESPOND.    SO WE DID THAT.

AND WE HAVE WHAT HAS BECOME A FAMILIAR PATTERN.    WE HAVE,
WHAT PURPORTS TO BE RESPONSES GIVEN ON BEHALF OF MR. LOPEZ;
AND, IN FACT, THEY'RE NOT REALLY GOOD-FAITH RESPONSES AT
ALL.    THEY PROVIDE SOME PAPER, MOST OF WHICH WAS PLEADINGS
IN CASES THAT MR. LOPEZ HAD EVERY REASON TO KNOW THAT WE
ALREADY HAD AND SO WOULD BE COMPLETELY USELESS.

NOW, THIS PARTICULAR DISCOVERY DISPUTE CREATES A DYNAMIC
THAT'S DIFFERENT FROM MOST DISCOVERY DISPUTES, BECAUSE
MOST DISCOVERY DISPUTES ARISE IN TRADITIONAL LITIGATION.
AND TRADITIONAL LITIGATION IS ALWAYS LOOKING BACK AT AN
EVENT AND IS STATIC, IN TERMS OF WHERE THE LIABILITIES WILL
FALL.    BECAUSE THEY DEPEND ON WHAT HAPPENED BACK WHEN
WHATEVER INCIDENT OCCURRED, WHATEVER COURSE OF CONDUCT
OCCURRED THAT GAVE RISE TO THE TRADITIONAL LITIGATION.
SO YOU'RE ALWAYS LOOKING BACKWARDS AND YOU'RE NOT REALLY
CONCERNED ABOUT WHAT'S HAPPENING ON A GOING-FORWARD
BASIS.

THE DIFFERENT DYNAMIC THAT'S CREATED IN EVERY INVOLUNTARY
PETITION IS THE INVOLUNTARY GAP DYNAMIC.    BECAUSE, WHILE
DELAY IS ALWAYS PREJUDICIAL TO BRINGING A MATTER TO ITS
QUICK AND COST EFFECTIVE CONCLUSION, IT HAS AN AUXILIARY
PREJUDICE IN INVOLUNTARY CASES BECAUSE THE DEBTOR IS FREE
TO CREATE OBLIGATIONS THAT WILL BECOME INVOLUNTARY GAP

CLAIMS AND LEAPFROG AHEAD IN PRIORITY TO THE CLAIMS OF THE
CREDITORS THAT BROUGHT THE ACTION.

AND THAT PARTICULAR FORM OF PREJUDICE IS RENDERED ALL THE
MORE DISTURBING BECAUSE THERE'S NO WAY TO MONITOR IT, NO
WAY TO QUANTIFY IT.  MR. LOPEZ IS OUT THERE.  MAYBE HE'S
NOT CREATING INVOLUNTARY GAP CLAIMS AND PERHAPS HE IS.
BUT THE RISK IS THAT THE UTILITY OF THE REMEDY OF
INVOLUNTARY BANKRUPTCY AS A CREDITOR'S REMEDY IS SUBJECT
TO THIS FORM OF DILUTION, SIMPLY BECAUSE THE ALLEGED
DEBTOR REFUSES -- I WANT TO UNDERSCORE THAT -- REFUSES TO
COMPLY WITH THE DISCOVERY IN GOOD FAITH.

WE ARE TRYING TO NARROW THE ISSUES WITH THE EVIDENCE THAT'S
AVAILABLE SO THAT WE CAN PROCEED IN THE SECOND PHASE, AS
WE DID IN THE FIRST, TO PRESENT THE ISSUES TO THE COURT
IN A SUMMARY JUDGMENT FASHION, BECAUSE WE THINK THIS CASE
IS AMENABLE TO SUMMARY JUDGMENT.

AND MR. LOPEZ IS JUST VERY ADROITLY BLOCKING THAT WITH THIS
PASSIVE/AGGRESSIVE TACTIC OF HIS, WHERE HE DOESN'T REPLY
AT ALL UNTIL HIS BACK IS ABSOLUTELY TO THE WALL AND SOME
DRACONIAN CONSEQUENCE MIGHT BEFALL HIM.  AND THEN HE'LL
RESPOND, BUT HE WON'T REALLY RESPOND IN GOOD FAITH.  HE
GIVES YOU A PARITY OF GOOD-FAITH, THAT DOES NOT ADVANCE
THE PURPOSES OF DISCOVERY.

NOW, WE SHOULDN'T HAVE TO WAIT UNTIL HIS BACK IS AGAINST
THE WALL TO GET OUR RESPONSES.  WE'RE ENTITLED TO OUR
RESPONSES THIRTY DAYS AFTER THEY'RE SERVED, THIRTY-THREE
WHEN THEY'RE SERVED BY MAIL.

AND WE'RE LONG PAST THAT WITH THESE DISCOVERY REQUESTS
THAT WERE PROMULGATED BACK IN NOVEMBER. AND AS THE
OBJECTION DISCLOSES, THE ALLEGED DEBTOR IS WELL AWARE THAT
WE'RE DOING, ONCE AGAIN, WHAT WE DID IN THE FIRST PHASE;
WE'RE USING THE WRITTEN DISCOVERY AS, TO SORT OF TEE UP
THE ISSUES FOR OUR, DEPOSITION EXAMINATION, WHICH IS THE
NORMAL WAY TO PROCEED.

SO BY HINDERING AND DELAYING THE DISCOVERY PROCESS IN THE
WRITTEN PHASE, HE NATURALLY DEFERS THE ORAL EXAMINATION,
WHICH IN TURN DEFERS, ONCE AGAIN, THE DAY OF RECKONING.
AND ALL THE WHILE HE'S FREE TO BE OUT THERE INCURRING
FURTHER GAP CLAIMS.

SO I THINK THAT WHAT WE'VE SUGGESTED IN OUR PAPERS IS THE
APPROPRIATE RESPONSE. NUMBER ONE, THE DEFERRED MONETARY
SANCTIONS THAT THE COURT ORIGINALLY AWARDED OF $42
000 -- EXCUSE ME, I'M DREAMING -- $4,242. SHOULD BE
IMPOSED.

THE -- I DON'T THINK THAT THE RESULT THE COURT HAD HOPED
TO ACHIEVE BY DEFERRING IT HAS BEEN ACHIEVED. I DON'T
THINK IT EVER WILL BE ACHIEVED. I THINK THAT THIS IS JUST
MR. LOPEZ'S LITIGATION TACTIC; HALT, HINDER AND DELAY AND
MAYBE I'LL HAVE TO ANSWER SOMEDAY.

THE EVIDENTIARY SANCTIONS THAT WE'VE REQUESTED, I THINK,
ARE APPROPRIATE. AND THEY WILL FACILITATE THE PURPOSE OF
DISCOVERY, BECAUSE THEY NARROW THE ISSUES FOR US, EVEN
WITHOUT THE COOPERATION OF THE ALLEGED DEBTOR.

SO WE WOULD REQUEST THAT THE EVIDENTIARY SANCTIONS BE

IMPOSED AS REQUESTED, AND THAT THE MONETARY SANCTION BE
AWARDED FORTHWITH, WITH A DATE CERTAIN ESTABLISHED AS TO
WHEN THAT SECTION SHOULD BE PAID.

THE COURT:     MR. HAYES.

MR. HAYES:     YOUR HONOR, THANK YOU.  I HAVE A COUPLE OF
COMMENTS.

THE FIRST ONE IS, I WANTED TO COMMENT ON THIS, THE REQUEST
I'VE MADE OF MR. KEEHN FOR ANOTHER ONE OR TWO DAYS.  I'VE
HAD -- MR. LOPEZ LIVES IN FLORIDA, AND I HAVE A HARD TIME
COMMUNICATING WITH HIM.  WE COMMUNICATE BY E-MAIL AND I
HAVE HIS CELL PHONE, AND INEVITABLY, I CATCH HIM WHEN HE'S
PICKING HIS KIDS UP OR HE'S IN A STORE OR SOMETHING AND
THERE'S THE THREE-HOUR TIME GAP.

ANYWAY, I SPOKE TO HIM VERY BRIEFLY A COUPLE OF TIMES.  I
SAID, LOOK, WE HAVE TO GET THEM MORE DOCUMENTS.

THERE'S -- MR. KEEHN SENT ME THIS LETTER, WHAT ARE WE GOING
TO DO?  WE DISCUSSED IT REAL QUICKLY.  AND FINALLY, THE
TIME CAME WHERE HE ABSOLUTELY HAD TO FILE A RESPONSE, AND
THAT'S WHEN I SENT THE E-MAIL TO MR. KEEHN SAYING, GIVE
ME ANOTHER DAY OR TWO.

THE FOLLOWING DAY I SPOKE TO MR. LOPEZ AT GREAT LENGTHS.
AND WE WENT THROUGH THE LETTER ONE BY ONE.  AND I MEAN,
THERE ISN'T ANYTHING ELSE WE CAN COME UP WITH.  THERE
ISN'T ANY OTHER DOCUMENTS EXCEPT THIS ISSUE WITH THE WIFE.
THERE ISN'T ANY DOCUMENTS THAT HAVEN'T BEEN TURNED OVER.
THERE ISN'T ANY, ANY MORE EXPLANATION OR, OR, MORE DETAILS
THAT WE COULD GIVE, OTHER THAN REALLY REPEAT INFORMATION

THAT'S ON VARIOUS -- OF THE MANY STATEMENTS THAT HAVE BEEN
TURNED OVER I BELIEVE MANY TIMES BY NOW.

BUT, ADDRESSING THE MOTION, THE MOTION HAS TWO PARTS.  ONE
IS GRANT THESE SANCTIONS, WHICH I, FRANKLY, BELIEVE HAS
ALWAYS BEEN THE GOAL.  AND THE SECOND IS THESE EVIDENTIARY
SANCTIONS.

AS FAR AS THE SANCTIONS, THE $4000. I JUST WANT TO SAY
AGAIN, I JUST DON'T THINK THERE'S ANY OTHER DOCUMENTS THAT
CAN BE TURNED OVER OTHER THAN MRS. LOPEZ'S DOCUMENTS,
THERE ARE NO OTHER DOCUMENTS THAT CAN BE TURNED OVER THAT
HAVEN'T ALREADY BEEN TURNED OVER.

I BROUGHT MR. LOPEZ'S FIRST DEPOSITION.  IT'S
240-SOMETHING PAGES.  THIS IS WELL MORE THAN A YEAR AGO.
THE REST OF THESE PAPERS ARE EXHIBITS.  EVERY STATEMENT
OF EVERY ONE OF HIS BILLS OF THE TWENTY OR SO CREDITORS
ARE ALL CONSUMER DEBTS.  THIS IS WELL MORE THAN A YEAR OLD.
MR. KEEHN HAS SENT OUT SEVERAL SUBPOENAS.  I'M ACTUALLY
NOT SURE WHAT HE'S GOTTEN FROM THOSE.  WE PROVIDED MORE
DOCUMENTS TWICE IN THIS GO AROUND.  IF MR. KEEHN REALLY
WANTED TO GET MOVING WITH THIS, JUST TAKE THE DEPOSITION
AGAIN.  HE'S BEEN TELLING ME HE'S GOING TO TAKE THIS
DEPOSITION.  HE SOMEHOW CAN'T BECAUSE HE
REALLY -- THERE'S SOME MAGICAL PIECE OF PAPER THAT I'M NOT
CLEAR ABOUT THAT HE HASN'T GOTTEN YET; AND THEREFORE, HE
CAN'T GO FORWARD.  THAT'S JUST RIDICULOUS.

WITH RESPECT TO THE DOCUMENTS IN MRS. LOPEZ'S POSSESSION,
I'VE ACTUALLY NEVER MET MRS. LOPEZ.  BUT I MEAN, MY WIFE

HAS A CHECKING ACCOUNT AND SHE CARRIES THE CHECKBOOK
AROUND IN HER PURSE.  AND I'D BE LOOKING FOR A DIVORCE
ATTORNEY IF I WENT INTO HER PURSE AND FOUND HER CHECKBOOK
AND STARTED SENDING OFF INFORMATION SOMEBODY HAPPENED TO
BE SUING ME.

THE COURT:    SO YOU'RE CONTENDING THIS IS ALL SEPARATE
PROPERTY, AND HE HAS NO INTEREST WHATSOEVER IN THE FUNDS
THAT SHE ADMINISTERS OR THE DEBT SHE'S INCURRED WHETHER
IT'S A LEHMAN BROTHERS, OR THE MORTGAGE ON THE HOUSE OR
ANY OF THOSE KINDS OF THINGS?

MR. HAYES:    I DON'T KNOW IF I'D GET INTO WHETHER IT'S
COMMUNITY PROPERTY OR NOT.  BUT IF THEY WANT, I MEAN, THEY
CAN GO AFTER HER.  THEY CAN SUBPOENA HER OR THEY CAN COME
IN WITH SOME SORT OF EVIDENCE OF WHY THEY HAVE THE RIGHT
TO MAKE MR. LOPEZ --

THE COURT:    SO WHAT'S YOUR THEORY, WHAT'S YOUR THEORY
ON WHY SHE DOESN'T HAVE TO PROVIDE AN ANSWER WITH RESPECT
TO WHAT SHE HAS OR HOLDS OR PAYS, PARTICULARLY, IF HE'S
GOT SOME OBLIGATION OR LIABILITY ON IT?

MR. HAYES.  THEY HAVEN'T ASKED HER.  THEY'RE ASKING HIM.

THE COURT:    NO.  THAT'S NOT MY QUESTION.  MY QUESTION
IS, WHAT'S YOUR THEORY FOR WHY HE DOESN'T HAVE TO ANSWER
THAT QUESTION?

MR. HAYES:    THAT'S HER RIGHT TO PRIVACY.

THE COURT:    SO IT'S HER RIGHT TO PRIVACY, BECAUSE IT'S
SOME SEPARATE INTEREST OF HERS OR WHAT?
WHERE DOES SHE HAVE A RIGHT TO PRIVACY ON SOMETHING THAT

0508

YOU SAY YOU DON'T GET TO THE COMMUNITY PROPERTY QUESTION.

I MEAN, HE'S GOT A COMMUNITY PROPERTY INTEREST IN IT, IF

HE'S GOT A STATE STATUTORY RIGHT TO CO-MANAGEMENT OF

COMMUNITY ASSETS OR ANYTHING ELSE THAT I HAVE NO IDEA WHAT

FLORIDA LAW PROVIDES.

I'M ASKING YOU WHAT YOUR THEORY IS FOR WHY HE DOESN'T HAVE

TO ANSWER IT?

MR. HAYES:    WELL, FOR ONE THING, FLORIDA IS NOT

COMMUNITY PROPERTY.  AND I DON'T KNOW HOW FLORIDA LAW IS.

BUT WHAT I FOCUSED ON IS MR. LOPEZ, GO TO YOUR WIFE AND

GET THESE DOCUMENTS.

THE COURT:    NO, POSSESSION -- YOU KNOW, WHAT DOES HE

HAVE IN HIS POSSESSION OR CONTROL?  WHAT DOES HE HAVE?

HAS HE PRODUCED EVERYTHING THAT'S IN HIS POSSESSION OR

CONTROL WITH RESPECT TO THAT?

MR. HAYES:    OH, ABSOLUTELY.  BUT THAT'S --

THE COURT:    AND THAT'S INCLUDING AS TO HIS LIABILITY

WITH RESPECT TO IT?

MR. HAYES:    YES.  AS FAR AS I KNOW.  BUT THAT DOES

RAISE THE QUESTION OF DOES -- IS WHAT'S IN HIS WIFE'S PURSE

IN HIS POSSESSION OR CONTROL?  I MEAN, THAT'S WHAT HE'S

TELLING ME.  I CAN'T --

THE COURT:    NO.  YOUR ANSWER IS, HE HAS NO INTEREST OR

OBLIGATION IN THE LEHMAN BROTHERS OR THE MORTGAGE OR

WHATEVER IT IS, THEN WHY DON'T YOU AGREE TO THOSE

EVIDENTIARY SANCTIONS AS WELL?  YOU SAY HE'S TURNED OVER

EVERYTHING.

MR. HAYES:    WELL, EVERYTHING THAT'S IN HIS POSSESSION
OR HIS CONTROL WITHOUT GETTING DIVORCED; YES.

THE COURT:    THEN THE ANSWER, IT SEEMS TO ME, IS THAT
YOU AGREE TO THE EVIDENTIARY SANCTIONS, SAID THAT HE
CANNOT PRODUCE ANYTHING HE HAS NOT ALREADY PRODUCED, COME
TIME OF TRIAL WITH RESPECT TO THE ISSUE THAT WE'LL BE
LITIGATING IN THIS PHASE 2 OF THIS ISSUE.

MR. HAYES:    I MIGHT DO THAT.  I HADN'T THOUGHT OF IT,
MYSELF.

I WAS FOCUSING ON THE MOTION, WHICH BASICALLY ASKED YOU
TO GRANT SUMMARY JUDGMENT TODAY.  BUT I WOULD AGREE WITH
THE THEORY THAT THINGS -- HE SHOULDN'T BE ABLE TO COME IN
WITH SOMETHING AFTER THIS, OR HE SHOULDN'T BE ABLE TO,
"QUOTE," "UNQUOTE," FIND SOMETHING, YOU KNOW, TWO DAYS
BEFORE TRIAL.

AND I DO BELIEVE EVERYTHING'S BEEN TURNED OVER.

THE COURT:    WELL, THAT'S WHAT MR. KEEHN IS -- I HAVE
NO IDEA WHAT HIS STRATEGY IS, BUT THAT'S AT LEAST WHAT HE'S
ASKING FOR IN THE CONTEXT OF THIS MOTION, BECAUSE HE WANTS
TO BE ABLE TO CLOSE THE BOOK AND THEN GO TAKE YOUR CLIENT'S
DEPO KNOWING THAT YOUR CLIENT IS NOW PRECLUDED FROM
STEPPING UP AND SAYING OH, BUT HERE'S THIS, AND HERE'S THIS
AND HERE'S THAT; AND NOT EVER HAVING HAD A CHANCE TO LOOK
AT IT OR INDEPENDENTLY VALIDATE IT FROM THIRD PARTIES OR
ANY OF THOSE KINDS OF THINGS.

YOU WOULDN'T WALK INTO A DEPO BLIND THAT WAY.  I'M
CONFIDENT OF THAT.

0510

MR. HAYES:    NO.  YOU KNOW, WHAT I WAS FOCUSING ON IS
THE MOTION SAYS ELIMINATE ALL EVIDENCE ENTIRELY REGARDING
EACH ONE OF THESE CATEGORIES; NOT JUST ELIMINATE -- NOT
JUST HAVE AN EVIDENTIARY SANCTION THAT WE CAN'T FIND,
"QUOTE," "UNQUOTE," FIND MORE DOCUMENTS.

I THINK I WOULD AGREE TO THAT.  WHATEVER DOCUMENTS HAVEN'T
BEEN TURNED OVER UP TO NOW, I WOULD AGREE TO THAT.

THE COURT:    OKAY.

MR. HAYES:    I'M NOT SURE I -- YOU KNOW, HE JUST FOUND
A JOB AND HE DOESN'T HAVE $4,400.  AND I DON'T KNOW WHAT
ELSE I CAN SAY.

YOU SAID, YOU'RE NOT SURE WHAT MR. KEEHN'S STRATEGY IS.
I MEAN, IF THEY REALLY WANTED THIS CASE TO BE FINISHED,
THEY WOULD HAVE TAKEN HIS DEPOSITION SIX OR EIGHT MONTHS
AGO.

THE COURT:    I WOULDN'T HAVE.  I WAS A LITIGATOR FOR A
BUNCH OF YEARS.  I'M NOT WALKING INTO A DEPOSITION WHEN
THERE'S A WHOLE BUNCH OF DOCUMENTS OUT THERE AND HAVE THEM
SURPRISE ME.

MR. HAYES:    WELL, I DON'T THINK THERE ARE.

THE COURT:    WELL --

MR. HAYES:    FOR MONTHS THERE HAVEN'T BEEN A WHOLE BUNCH
OF DOCUMENTS OUT THERE, BUT ALL RIGHT, I HAVE NOTHING
FURTHER.

THE COURT:    OKAY.  MR. KEEHN.

MR. KEEHN:    YES.  THANK YOU, YOUR HONOR.

IN ADDITION TO THE REASONS THAT YOU'VE ALLUDED TO AS TO

0511

WHY YOU WOULDN'T TAKE THE DEPOSITION WITHOUT THE
DOCUMENTS, THERE WERE RESPONSES THAT MR. LOPEZ GAVE IN HIS
ORIGINAL DEPOSITION A YEAR AGO, NOW, THAT TO THE EFFECT
THAT, WELL THERE ARE MORE DOCUMENTS.  I JUST HAVE TO LOOK
AT THEM.  AND OBVIOUSLY THAT'S A DOOR WE NEED TO CLOSE.
IF WE GET THE EVIDENTIARY SANCTIONS, AS MR. HAYES
SUGGESTED, WE'VE CLOSED THE DOOR.
AND I, IN TERMS OF THE -- IF HE'S AGREEING TO THE SANCTIONS
THEN I DON'T NEED TO ADDRESS HOW HELLACIOUS THIS ARGUMENT
OF MARITAL STRESS IS CONCERNED.  I DID HAVE SOME DOCUMENTS
THAT WERE RECENTLY FILED IN THE DISTRICT COURT THAT BLOW
THAT OUT OF THE WATER.  BUT IF HE'S AGREEING TO IT, I WON'T
ADDRESS IT.
AS FAR AS THE MONETARY SANCTION IS CONCERNED, YOUR HONOR,
THIS -- WE TRIED TO CLOSE THE DOOR IN A PROCESS THAT BEGAN
SEVEN MONTHS AGO.  I SHOULDN'T BE HERE SEVEN MONTHS LATER
CLOSING IT ON A CAPITULATION TO A SECOND MOTION TO COMPEL
THAT I SHOULDN'T HAVE HAD TO FILE.
IF THERE REALLY ARE NO DOCUMENTS, THEN WHY IS THE RESPONSE,
WELL, THERE'S MORE THINGS I NEED TO CHECK AND I CAN'T BE
SURE.  IF THERE REALLY ARE NO DOCUMENTS, THEN WHY WAS THAT
ANSWER NOT GIVEN BACK IN MAY?  WHY WAS IT NOT GIVEN BACK
IN DECEMBER WHEN IT WOULD HAVE BEEN TIMELY?  THERE'S NO
EXPLANATION FOR THAT.
THIS IS EXACTLY THE KIND OF GAMESMANSHIP THAT RULE ONE OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE ABHORS.  THE
PURPOSE OF THE RULES, THEMSELVES, IS TO PROVIDE A

0512

MECHANISM AND A FRAMEWORK FOR THE RAPID AND FAIR

RESOLUTION OF ISSUES.

NOW, ONE COMMENT, SORT OF, AT LEAST I INFERRED THE ARGUMENT

FROM THE FACT THAT WE HAVE TWO TO THREE INCHES OF PAPER

FROM THE ORIGINAL DEPOSITION.   AND WHY ARE WE STILL HERE

A YEAR LATER?

IN ADDITION TO NOT HAVING THE DOCUMENTS PRODUCED, WE ALSO

HAVE THE POINT THAT THIS CASE WAS BIFURCATED AT MR. LOPEZ'S

REQUEST.   THERE WERE MANY QUESTIONS THAT I COULD EASILY

HAVE ASKED THE FIRST GO AROUND THAT MIGHT HAVE OBVIATED

THE NEED FOR FURTHER DEPOSITION, OR AT LEAST REDUCED IT.

I COULDN'T BECAUSE OF THE CONSTRAINTS PLACED BY THE

BIFURCATION ORDER.   AND I TRIED TO ADHERE TO THAT ORDER.

SO I HAVE TO TAKE HIS DEPOSITION YET A SECOND TIME.

AND THEN ONE OF THE LAST REMARKS THAT COUNSEL MADE, I

THINK, UNDERSCORES THE NEED FOR THE SANCTIONS HAVING BEEN

IMPOSED BECAUSE IT HIGHLIGHTS THE GAMESMAN-LIKE APPROACH

THAT MR. LOPEZ HAS TAKEN.   AND THAT, THAT COMMENT WAS, HE

JUST GOT A JOB.

WELL, IF BY THAT HE'S REPRESENTING TO THE COURT THAT UP

UNTIL THIS TIME HE'S BEEN UNEMPLOYED, I THINK THAT

EXACERBATES THE CULPABILITY OF MR. LOPEZ IN NOT TIMELY

RESPONDING.   WHAT ELSE WAS HE DOING?   WAS HE REALLY

SPENDING FORTY HOURS A WEEK LOOKING FOR A JOB?

IF HE WAS UNEMPLOYED, CERTAINLY HE WOULD HAVE HAD MORE TIME

AVAILABLE TO TEND TO HIS DUTIES AS A LITIGANT THAN A

FULLY-EMPLOYED INDIVIDUAL WOULD.   AND EVEN A

FULLY-EMPLOYED INDIVIDUAL IS EXPECTED TO RESPOND AND
RESPOND TIMELY TO DISCOVERY OBLIGATIONS.

AS I SAID IN THE BEGINNING, WE DON'T KNOW TODAY, AND WE
WON'T KNOW UNTIL THAT ORDER FOR RELIEF IS ENTERED AND
SCHEDULES ARE FILED, IF THAT EVER HAPPENS.  HOW MUCH THIS
ESTATE AND THE GENERAL UNSECURED CREDITORS THAT BROUGHT
THIS POSITION HAVE BEEN PREJUDICED BY THIS DELAY AND THE
INCURRING OF GAP CLAIMS?

I THINK THAT MESSAGE THE COURT SENT THE FIRST TIME TO  MR.
LOPEZ WAS, I'LL GIVE YOU ANOTHER CHANCE.  I THINK THE
MESSAGE THAT THE COURT NEEDS TO SEND TO MR. LOPEZ NOW IS,
THIS ISN'T A GAME.  AND THERE AREN'T ANY MORE CHANCES.
AND YOU DIDN'T PLAY BY THE RULES, AND SO THE SHIELD THAT
I PUT IN FRONT OF YOU BEFORE, IS NOW DOWN.  AND THESE
SANCTIONS ARE DUE AND PAYABLE.

THE COURT:     WELL, IN MY VIEW, AT LEAST AT THIS POINT
IN TIME AND ON THE PRESENT STATE OF THE RECORD, THE
EVIDENTIARY SANCTIONS ARE WARRANTED, AND WILL BE ORDERED
IN THE FOLLOWING RESPECTS:

WITH RESPECT TO DEBTOR'S RESPONSE TO REQUEST FOR ADMISSION
NUMBER FIVE, THAT WILL BE, AND THE DEBTOR HAS AGREED, THAT
WILL BE AN UNQUALIFIED ADMISSION;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS FROM NOVION BETWEEN JANUARY 1 OF 2005 TO JULY 1
OF 2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED FROM JANUARY 1, 2005 TO JULY 1,

2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED BY HIS WIFE BETWEEN JANUARY 1,
2005 AND JULY 1 OF 2005.  AND I WILL ADD, AS TO THESE
PROHIBITIONS, THAT'S TO THE EXTENT NOT ALREADY DISCLOSED
TO THE MOVING CREDITORS, THE PETITIONING CREDITORS.  IF
IT'S BEEN DISCLOSED, THEN IT'S THERE.  THERE'S NO
PRECLUSION OF USE OF THAT INFORMATION IF IT'S BEEN
PREVIOUSLY PROVIDED TO THE PETITIONING CREDITORS, IN THE
CONTEXT OF THE DISCOVERY OF THIS CASE;

THE DEBTOR WILL BE PROHIBITED FROM PROVIDING ANY EVIDENCE
OF A DEBT IN FAVOR OF LEHMAN BROTHERS OR ANY PAYMENT TO
LEHMAN BROTHERS AS OF THE PETITION DATE EXCEPT TO THE
EXTENT AND SAME PROVISO, EXCEPT TO THE EXTENT ALREADY
DISCLOSED TO THE COUNSEL FOR PETITIONING CREDITORS;

AND, DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
DEBT IN FAVOR OF AMERICAN EXPRESS, BANK OF AMERICA, BANK
CARD, CINGULAR, CITI CARD, HOUSEHOLD BANK, NORTHWEST
FLORIDA DAILY NEWS, CITIBANK QUICKEN, TEXACO, VERIZON,
UNION BANK, OR MR. GORRILL OR ANY PAYMENT TO ANY OF THEM
AS OF THE PETITION DATE, EXCEPT TO THE EXTENT ALREADY
PROVIDED THE COUNSEL FOR PETITIONING CREDITORS IN THE
CONTEXT OF THE DISCOVERY IN THIS MATTER.

AS TO THE MONETARY SANCTIONS, I AM, AGAIN, GOING TO DEFER
AWARDING THOSE.  BUT THEY REMAIN THE SORT OF DAMOCLES OVER
MR. LOPEZ.  BECAUSE I DON'T KNOW THE ANSWER TO SOME OF
MR. KEEHN'S SPECULATION AS TO WHAT'S GOING ON.  MR. KEEHN

IS CONVINCED THAT THIS IS A GAME THAT MR. LOPEZ IS PLAYING.
I'M NOT YET CONVINCED OF THAT.

SO EVENTUALLY WE WILL GET TO THE ANSWER ONE WAY OR THE
OTHER.  AND ONCE I KNOW THE ANSWER, I'LL APPLY THEM, IF
I DEEM THAT'S APPROPRIATE AT THE TIME.  BUT THE
EVIDENTIARY SANCTIONS AT THIS POINT IN TIME ARE WARRANTED.
I'LL SIGN AN ORDER TO THAT EFFECT.

MR. KEEHN:    THANK YOU, YOUR HONOR.

THE COURT:    OKAY.  NOW, WE HAVE A STATUS CONFERENCE.
TIMING.

ARE YOU, NOW, LOOKING AT THE DEPOSITION, MR. KEEHN?

MR. KEEHN:    I AM.  AND CONSISTENT WITH THE LOCAL
RULES, I NEED TO CONFER WITH COUNSEL AS TO AVAILABLE DATES.

MR. HAYES:    I HAVE TO BE BACK HERE JULY 31ST.  THAT'S
A LITTLE QUICK, BUT I'M GOING TO BE HERE ANYWAY.

THE COURT:    JULY 31ST?  THAT'S A TUESDAY.

MR. KEEHN:    YES.

THE COURT:    WHAT TIME IS YOUR HEARING ON THE 31ST?

MR. HAYES:    AT 10:00.  IT'S A SUMMARY JUDGMENT MOTION,
SO IT COULD BE IN THE AFTERNOON; SUMMARY JUDGMENT MOTION
THAT HASN'T BEEN FILED.

THE COURT:    WE COULD DO 2:00 P.M. ON THE 31ST.  DOES
THAT WORK?

MR. KEEHN:    IT'S CLEAR ON MY CALENDAR, YOUR HONOR.

MR. HAYES:    2:00?

THE COURT:    OKAY.  AND WE'LL DO THAT AS A FURTHER
STATUS CONFERENCE.  BUT IN THE MEANTIME, I ASSUME THE TWO

OF YOU WILL MEET AND CONFER ON A DEPOSITION DATE.    AND THEN

ONCE THE DEPOSITION IS CONCLUDED, I ASSUME MR. KEEHN,

YOU'RE PLANNING A MOTION?

MR. KEEHN:      I AM.

THE COURT:      JUST SO MR. HAYES SEES WHAT'S COMING AND

THEN WE'LL -- ONCE THAT MOTION'S DECIDED, WE'LL KNOW WHERE

WE GO NEXT, IF ANYWHERE.

MR. HAYES:      GREAT.

MR. KEEHN:      THANK YOU, YOUR HONOR.

MR. HAYES:      THANK YOU, YOUR HONOR.

THE COURT:      ALL RIGHT.    WE'LL BE IN RECESS.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

         I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY

CERTIFY:

0517

THAT I REPORTED IN SHORTHAND THE PROCEEDINGS
HELD IN THE FOREGOING CAUSE ON THE 25TH DAY OF JUNE, 2007;
THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING
UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT
CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.


DATED THIS _____ DAY OF _____, 2007.


_____

LYNETTE ALVES, CSR #12534, RPR #61256

0518

# EXHIBIT 3

0519

L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
KEEHN & ASSOCIATES
A Professional Corporation
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

Attorneys for Petitioning Creditors

UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

In Re:

FRANCIS J. LOPEZ,

            Alleged Debtor.

Case No.  05-05926-PBINV

DECLARATION OF TIMOTHY P. DILLON

[BIFURCATED PHASE II]

Date:   October 1, 2007 (Status Conference)
Time:   10:30 a.m.
Judge: The Honorable Peter W. Bowie
Ctrm:   4

I, TIMOTHY P. DILLON, declare as follows:

1.    I am an attorney duly admitted to practice before the Courts of this State. I am a shareholder of the law firm of Dillon & Gerardi, APC, counsel for Petitioning Creditor Alan Stanly ("Stanly") in certain cases involving the alleged debtor herein, Francis J. Lopez ("Lopez"), which were and/or are pending before the San Diego Superior Court and the United States District Court for the Southern District of California (the "Additional Lopez Cases"). In connection with the Additional Lopez Cases, I am the *shareholder in charge* of the engagement of the firm on behalf of Stanly, and the attorney within the firm who is most knowledgeable with respect to all aspects of the Additional Lopez Cases. I make this Declaration based upon facts within my

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

- 1 -

111575/LFK/5311.01

1  firsthand knowledge acquired in the course of conducting litigation against Lopez in the

2  Additional Lopez Cases.

3        2.     The delay and bad-faith litigation tactics employed by Lopez and his counsel

4  throughout the Additional Lopez Cases are summarized below.

5                  *Union Bank of California v. Francis J. Lopez, et. al.*

6                  San Diego Superior Court(Case No.: GIN 030827)

7  <u>Case Summary (06/2003 - 09/2004):</u>

8        3.     In or about June of 2003, Union Bank of California initiated a litigation against

9  both Lopez and Stanly as guarantors of a loan which their corporation, Prism, had defaulted on.

10 Both Lopez and Stanly filed cross-claims against each other for contribution and indemnity.

11 Lopez and Stanly eventually settled with Union Bank. Stanly prevailed on a motion for good faith

12 settlement and obtained a dismissal of Lopez's cross-claims. At time of trial, the sole issues left in

13 the case were Stanly's claims against Lopez for indemnity and contribution. Trial in the Union

14 Bank matter was continued several times due to Lopez's dilatory conduct, as more fully set forth

15 below. When the Court finally held trial, neither Lopez nor his counsel appeared. Trial proceeded

16 without Lopez.

17 <u>Summary of Dilatory / Bad Faith Tactics:</u>

18       4.     On March 9, 2004, Lopez requested a trial continuance due to the "illness of his

19 wife's aunt." Based on that request, the parties ultimately stipulated to continue the trial for four

20 months — until July 9, 2004.

21       5.     On July 2, 2004 — the date of the trial readiness conference — Lopez's attorney,

22 Joseph Fischbach ("Fischbach"), faxed a "Declaration re: Non-Readiness for Trial" to my office.

23 A true and correct copy of that Declaration is attached hereto as Exhibit 1 to the "Compendium of

24 Exhibits in Support of Renewed Request for an Enforcement Order Imposing Monetary Sanctions

25 Against Alleged Debtor Francis J. Lopez" (hereinafter referred to as the "Exhibits Compendium")

26 filed concurrently herewith. In his Declaration, Fischbach stated that he would be unable to

27 appear for trial because he had scheduled another trial for July 7, 2004. This was the first time

28 Fischbach had ever indicated that he would be unable to attend trial. He did not personally appear

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

- 2 -

111575/8.FK/5311.01

1  at the trial readiness conference. Instead, Fischbach sent an *appearance counsel* to the trial

2  readiness conference who was not affiliated with Fischbach's law firm, and was unfamiliar with

3  the case. Because a "Declaration for Non-Readiness for Trial" is not a proper method of obtaining

4  a trial continuance, and Lopez did not properly apply for a continuance of trial, the Court had no

5  legal basis on which to order a continuance.   The Court then confirmed that trial call would

6  remain set for July 9, 2004.

7        6.    On July 9, 2004, Lopez and his counsel failed to appear for trial, and the trial court

8  issued an Order to Show Cause as to why sanctions should not be issued against them. A true and

9  correct copy of the Order is attached as Exhibit 2 to the Exhibits Compendium.

10       7.    On July 16, 2004, Fischbach appeared before the Court and confirmed that he was

11  in trial on another matter on the dates set for trial in *Union Bank of California v. Francis J. Lopez,*

12  *et. al.* and stated that his failure to appear at the scheduled trial date was due to a mix-up with

13  co-counsel. No declaration of co-counsel was ever provided to corroborate the existence of the

14  mix-up or how it came to be. Additionally, Lopez provided declarations to the Court from himself

15  and his physician stating Lopez was suffering from "diverticulitis" and was too ill to participate in

16  a trial. A true and correct copy of the Declarations is attached as Exhibit 3 to the Exhibits

17  Compendium. This was the first time the Court had been advised of Lopez's purported

18  diverticulitis. Stanly was aware that Lopez could easily induce the aggravating symptoms of his

19  condition by eating popcorn. The Court continued the trial for approximately 60 days — until

20  September 10, 2004.

21       8.    On September 9, 2004 — one day before the twice-continued trial was set to begin

22  — Lopez applied *ex parte* for a third trial continuance. A true and correct copy of the Ex Parte

23  Application is attached as Exhibit 4 to the Exhibits Compendium. Lopez claimed he was still

24  suffering from diverticulitis, and that the medication he took for it made him "groggy."[1] Lopez

25  further stated that he could not appear for trial due to scheduled colonoscopy and endoscopy

26

27

28
_____

[1]    See, Exhibits Compendium Tab 4.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1310
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2350 · FACSIMILE (619) 400-2351

111575/VLFK/S311.01

0522

1    procedures.[2] The evidence in support of Lopez's application was defective in that the declarations

2    were not signed under penalty of perjury under the laws of the State of California. The Court

3    ordered the application continued until September 10, 2004, and the Court's minute order

4    provided precise instructions to Lopez as to how to provide a competent declaration. A true and

5    correct copy of that Order is attached as Exhibit 5 to the Exhibits Compendium.

6        9.    On September 10, 2004, Stanly appeared with a proposal for the commencement of

7    trial. Lopez appeared through *appearance counsel* who was not affiliated with Fischbach's law

8    firm, and was unfamiliar with the status of the case. Despite the Court's specific instruction, no

9    competent declaration was provided to support Lopez's request for a third trial continuance.

10   Based on that, the Court denied his request.

11       10.   Trial proceeded on September 14, 2004, wherein Stanly obtained a judgment

12   against Lopez for $50,000.

*Francis Lopez v. Alan Stanly*

San Diego Superior Court (Case No.: GIN029692)

15   **Case Summary (05/2003 - 06/2005):**

16       11.   This case has been stayed by the involuntary bankruptcy petition filed herein.

17   Lopez initially sued Stanly for breach of fiduciary duty, trespassing, conversion and invasion of

18   privacy. All but the invasion of privacy claims were dismissed via a motion for summary

19   adjudication. Stanly counter-claimed on a variety of claims, including breach of fiduciary duty,

20   unfair competition and misappropriation of trade secrets. Stanly obtained many discovery

21   sanctions against Lopez for his discovery violations. Because of the involuntary bankruptcy

22   petition, the Court did not issue monetary sanctions against Lopez. However, prior to the filing of

23   the bankruptcy petition, a discovery referee recommended the issuance of several thousand dollars

24   of discovery sanctions against Lopez, and $5,198.75 of discovery sanctions were issued against

25   Lopez's counsel and co-Plaintiff. The Court also issued evidentiary sanctions against Lopez.

26   ///

27

28   ——————————————

        [2]    *Id.*

KEHRN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2300 • FACSIMILE (619) 400-2311

111575/LFK/5311.01

0523

<u>Summary of Dilatory / Bad Faith Tactics:</u>

12.    Without justification or excuse, Lopez failed to provide any response to Stanly's First Set of written discovery propounded on him on December 31, 2003. Stanly filed a motion to compel discovery responses. During the extended meet and confer process, the parties worked out a resolution whereby Lopez paid Stanly $600 in sanctions and provided Stanly with discovery responses. In exchange, Stanly took the motion off calendar.

13.    On July 28, 2004, Stanly propounded a Second Set of written discovery consisting of interrogatories, requests for admission and requests for production on Martin Hudacko ("Hudacko") and Lopez. On September 2, 2004, Hudacko and Lopez provided responses consisting solely of identical boilerplate objections, without a single substantive response. After a meet and confer process, Lopez provided some substantive responses, however, these responses were still woefully inadequate. In addition, Lopez sought a protective order as to certain discovery (based on trade secret protection) and others he claimed he had already answered appropriately.

14.    In November of 2004, Lopez moved to appoint a discovery referee. Stanly agreed, and Judge Sarokin was appointed as discovery referee based on the parties' stipulation.

15.    On January 7, 2005, Stanly submitted to Judge Sarokin a motion to compel the discovery responses of Hudacko and Lopez. On February 18, 2005, Stanly's motion was granted, and Judge Sarokin ordered Lopez to respond to the written discovery requests and produce response documents. The 02/18/2005 ruling of Judge Sarokin was entered as an order of the trial court.

16.    On March 4, 2005 (the ordered production date), Lopez failed, without justification or excuse, to comply with Judge Sarokin's 02/18/2005 Order by failing to provide any responsive documents to Stanly's requests for production of documents. Stanly made several requests to Judge Sarokin for an additional Order requiring Lopez to produce documents, and for the imposition of sanctions against Lopez. On March 24, 2005, Judge Sarokin issued another Order requiring Lopez to produce all responsive documents on or before March 18, 2005.

17.    On April 1, 2005, after persistent requests from Stanly's attorneys, and two Orders

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

1115758.FK/5311.01

0524

1  from Judge Sarokin, Lopez finally produced approximately 50 pages of additional materials via

2  email. Although Lopez provided some documents, he still failed, without justification or excuse,

3  to provide a video tape and several documents specifically referred to in his discovery responses.

4  Further, Lopez failed to provide audio recordings and a CD ROM purportedly in his possession.

5        18.     On April 15, 2005, Stanly filed another motion to compel and request for monetary

6  sanctions against Lopez, requesting, amongst other documents, that the audio recordings be

7  produced. On April 28, 2005, Judge Sarokin granted Stanly's motion and demanded Lopez

8  produce all responsive documents, including the audio recordings and the CD ROM.

9        19.     After Judge Sarokin issued the 04/28/2005 Order, Lopez produced some audio

10  recordings, but failed, without justification or excuse, to produce any of the other documents he

11  had been ordered to produce.

12        20.     After several repeated requests for production of the missing documentation, Stanly

13  brought another motion to compel before Judge Sarokin. On June 24, 2005, Judge Sarokin

14  granted the motion, and issued evidentiary and monetary sanctions against Lopez in the amount of

15  $2,000. A true and correct copy of that Order is attached as Exhibit 6 to the Exhibits

16  Compendium.

17        21.     On March 8, 2005, Lopez failed, without justification or excuse, to appear for the

18  deposition of Stanly that Lopez had noticed for that day, causing Stanly and his counsel great

19  expense and inconvenience.

20        22.     Without justification or excuse, Lopez repeatedly served deposition subpoenas on

21  third parties without providing notice of the Subpoenas to Stanly in an effort to secretly obtain

22  discovery without Stanly's knowledge. Stanly was only made aware of Lopez' failure to provide

23  notice of third party depositions after certain witnesses informed Stanly of the subpoenas. Judge

24  Sarokin issued evidentiary sanctions against Lopez for this conduct in his 06/24/2005 Report.[3]

25        23.     Pursuant to the terms of a protective Order issued by Judge Sarokin, and adopted

26  by the trial court, all parties were ordered to provide declarations detailing their use of corporate

27

28       [3]     See, Exhibits Compendium Tab 6.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2350 · FACSIMILE (619) 400-2311

111575/LFK/5311.01

0525

1  funds for personal expenses. While Stanly complied with this request, Lopez did not. Lopez's

2  declaration failed, without justification or excuse, to describe his use of corporate funds with any

3  particularity. Stanly was forced to bring another motion before Judge Sarokin, requesting that

4  supplemental declarations be ordered. In his 06/24/2005 Report, Judge Sarokin granted Stanly's

5  motion and Ordered supplemental declarations be produced.[4]

6        24.     Lopez refused to stipulate to limit his emotional distress claims pursuant to

7  California Code of Civil Procedure §2032, despite Stanly's repeated requests and Lopez's

8  representations that he would enter into a stipulation. Accordingly, Stanly moved for an Order

9  requiring a medical examination of Lopez. Judge Sarokin issued sanctions against Lopez and his

10  counsel in the amount of $2,948.75 for their failure to initially stipulate. This ruling is contained

11  in Judge Sarokin's 06/24/2005 Report.[5]

12        25.     On October 22, 2004, Stanly served Lopez with a request for a Statement of

13  Damages. Lopez never provided it, despite multiple follow-up requests. Judge Sarokin ordered

14  the Statement served, and Lopez failed to comply with that Order, insisting that the Statement had

15  already been served on Stanly. Judge Sarokin issued monetary sanctions in the amount of $1,245

16  against Lopez for his failure to comply with his Order. This ruling was also contained in Judge

17  Sarokin's 06/24/2005 Report.[6]

18        *Enterprise Technology Holdings v. Noveon Systems, Inc. et al.*

19    United States District Court for the Southern District of California (Case No.: 05-cv-2236)

20  Case Summary (12/2005 - Present):

21        26.     Stanly is the President of Enterprise Technology Holdings, Inc. ("ETH") which

22  filed this action against Noveon Systems, Inc., a company whose common stock is all owned by

23  Mrs. Lopez. ETH successfully obtained a preliminary injunction against Noveon, enjoining

24  Noveon, and all those acting in concert with Noveon, from utilizing, selling, licensing or

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2201 FACSIMILE (619) 400-2271

[4]    See, Exhibits Compendium Tab 6.

[5]    See, Exhibits Compendium Tab 6.

[6]    See, Exhibits Compendium Tab 6.

- 7 -

0526

1  marketing Prism's software (the company formerly owned by Stanly and Lopez). Thereafter,

2  without any proffered justification or excuse, Noveon simply stopped participating in the

3  litigation. Noveon's counsel admitted his client was not participating in the litigation and, as a

4  result, Noveon's counsel withdrew from the case on January 17, 2007. It appears Lopez decided

5  to stop doing business as Noveon, and let the company take the fall in the case. Lopez left the

6  company with no money, no assets and no appointed officers or elected directors.

7      Although all of the Noveon stock is in his wife's name, Lopez was the company's founder

8  and the person who had managed all the day-to-day operations. The last remaining issue in this

9  case is whether Lopez's wife is an alter-ego of Noveon and thus liable for the company's debts.

10  **Summary of Dilatory / Bad Faith Tactics:**

11      27.    In October of 2006, ETH propounded written discovery on Noveon. Noveon failed

12  and refused to respond to the discovery requests even after multiple meet and confer attempts, and

13  two telephonic conferences with Magistrate Judge Catherine Bencivengo.

14      28.    ETH filed a motion for monetary, issue, evidentiary and terminating sanctions

15  against Noveon based on its failure to provide any discovery responses. Noveon failed to oppose

16  the motion. On December 8, 2007, Judge Bencivengo granted ETH's motion and ultimately

17  issued evidentiary, issue and terminating sanctions.

18      29.    On August 16, 2007, the Court granted ETH's motion for a default judgment

19  against Noveon. A true and correct copy of that Order is attached as Exhibit 7 to the Exhibits

20  Compendium.

21                    LOPEZ'S ALLEGATIONS OF UNFAIR BIAS

22      30.    Lopez's apparent *modus operandi* in the Additional Lopez Cases was to allege

23  unfair bias against the judicial officers who issued sanctions or adverse rulings against him.

24      31.    In *Union Bank of California v. Francis J. Lopez, et. al.*, Lopez responded to Judge

25  Sarokin's adverse rulings (described above) by failing to pay his portion of Judge Sarokin's

26  referee fees, and filing a motion to disqualify him based on alleged bias. Based on Lopez's

27  allegations, Judge Sarokin resigned rather than respond to the motion. Lopez also alleged that

28  Judge Jacqueline Stern was biased against him. He filed a complaint against Judge Stern with the

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

- 8 -

1  judicial counsel, and unsuccessfully moved to disqualify her.

2      32.    Likewise, in *Francis Lopez v. Alan Stanly*, Lopez responded to Judge Michael

3  Orfield's adverse rulings by alleging he was unfairly biased against him, and moving for

4  disqualification. Judge Orfield voluntarily recused himself, and the case was referred to Judge

5  Thomas Nugent.

6  <u>FEES INCURRED FOR PREPARING SUMMARIES RE: LOPEZ'S MISCONDUCT</u>

7      33.    The summaries of the Additional Lopez Cases discussed herein were specifically

8  prepared for Stanly's bankruptcy counsel (Keehn & Associates, APC) by my office in support of

9  Stanly's renewed request for monetary sanctions against Lopez in the above-entitled bankruptcy

10  case. My office spent a total of 6.25 hours compiling the summaries, reviewing past documents,

11  reviewing old case files and finalizing this declaration. Stanly was billed $1,018.75 for actual

12  legal fees incurred, as set forth below: .

13      Attorney Timothy P. Dillon: 1.25 hour ($215 per hour)

14      Attorney Sunjina Kaur Ahuja: 5.0 hours ($150 per hour)

15      I declare under penalty of perjury under the law of the United States that the foregoing is

16  true and correct, and that this Declaration was executed on this 26th day of September, 2007, at

17  San Diego, California.

18

19

              TIMOTHY P. DILLON

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-3300  FACSIMILE (619) 400-3291

1115750LFK/5311.01

0528

# EXHIBIT 4

October 19, 2007
4:25 pm

Keehn & Associates, APC
Detail Time Submittal Report

Page 1

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 9317 | 8/1/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 100.00 | 10.00 |
| 9345 | 8/3/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.20 | 100.00 | 20.00 |
| 9356 | 8/6/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 100.00 | 10.00 |
| 9431 | 8/23/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.20 | 100.00 | 20.00 |
| 9956 | 9/2/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEW OF WORLD SAVINGS DOCUMENTS IN PREPARATION FOR UPCOMING DEPOSITION. | 0.80 | 320.00 | 256.00 |
| 9973 | 9/4/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON DOCUMENT REVIEW AND PREPARATION FOR UPCOMING DEPOSITION. | 1.00 | 320.00 | 320.00 |
| 9991 | 9/5/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) E-CORRESPONDENCE WITH CLIENT REGARDING VIDEO TAPE DEPOSITION. | 0.10 | 320.00 | 32.00 |
| 9992 | 9/5/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON INITIAL PREPARATION FOR DEPOSITION OF FRANCIS LOPEZ. | 1.10 | 320.00 | 352.00 |
| 10519 | 9/9/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORKED IN SUPPORT OF DEPOSITION OF FRANCIS LOPEZ REGARDING OUTLINE AND SUMMARY OF EVIDENCE PERTAINING TO REQUISITE ELEMENTS OF CLAIM. | 1.30 | 225.00 | 292.50 |

0530

October 19, 2007
4:25 pm

Keehn & Associates, APC
Detail Time Submittal Report

Page 2

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 10081 | 9/10/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEW OF DOCUMENTS AND RELATED PREPARATION FOR UPCOMING DEPOSITION | 2.60 | 320.00 | 832.00 |
| 10082 | 9/10/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM ATTORNEY HAYES GIVING NOTICE THAT LOPEZ WILL NOT ATTENED HIS 9/11/07 DEPOSITION | 0.20 | 320.00 | 64.00 |
| 10331 | 9/10/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) PARALEGAL SUPPORT REGARDING ATTORNEY PREPARATION FOR UPCOMING DEPOSITION OF FRANCIS LOPEZ. | 0.40 | 100.00 | 40.00 |
| 10333 | 9/10/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) PARALEGAL SUPPORT REGARDING COMPILATION OF TAX DOCUMENTS PRODUCED BY LOPEZ. | 0.40 | 100.00 | 40.00 |
| 10086 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RR RECEIPT AND REVIEW OF E-CORRESPONDENCE FROM CLIENT REGARDING ISSUES WITH FRANCIS LOPEZ | 0.20 | 320.00 | 64.00 |
| 10087 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RR RECEIPT AND PRELIMINARY REVIEW OF MATERIALS FROM TIM DILLON'S OFFICE FOR USE IN SUPPORT OF SANCTIONS MOTIONS AGAINST LOPEZ | 0.80 | 320.00 | 256.00 |
| 10088 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.80 | 320.00 | 256.00 |
| 10140 | 9/13/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10141 | 9/13/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |

0531

| | | | | Hours | Rate | Amount |
|---|---|---|---|---|---|---|

October 19, 2007
4:25 pm

Keehn & Associates, APC
Detail Time Submittal Report

Page 3

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| | | | REQUEST. | | | |
| 10217 | 9/17/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ████████████████████████ | 0.10 | 320.00 | 32.00 |
| 10218 | 9/17/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ECO E-CORRESPONDENCE TO JOHN HAYES REGARDING DEPOSITION ISSUES | 0.10 | 320.00 | 32.00 |
| 10351 | 9/17/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ████████████████████ ████████████████ ████████████████ | 0.10 | 100.00 | 10.00 |
| 10553 | 9/18/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEWED SUMMARIES AND SUPPORTING DOCUMENTS PERTAINING TO LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS PROVIDED BY THE OFFICES OF DILLON & GERARDI, APC; WORKED ON DRAFT OF COMPREHENSIVE SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS IN SUPPORT OF PETITIONING CREDITORS' REQUEST FOR SANCTIONS; DRAFTED EMAIL CORRESPONDENCE TO ATTORNEY SUNJINA K. AHUJA IN SUPPORT OF SAME. | 3.90 | 225.00 | 877.50 |
| 10240 | 9/19/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) TCW TELEPHONE CONFERENCE WITH ALAN STANLY REGARDING SANCTIONS MOTIONS AND RELATED ISSUES | 0.40 | 320.00 | 128.00 |
| 10241 | 9/19/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON PREPARATION FOR LOPEZ DEPOSITION AND GROUND WORK FOR SANCTIONS MOTION | 1.70 | 320.00 | 544.00 |
| 10253 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM ATTORNEY HAYES REGARDING DEPOSITION | 0.20 | 320.00 | 64.00 |
| 10254 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) TCW TELEPHONE CONFERENCE WITH CLIENT REGARDING FOLLOW-UP RE: SANCTIONS AND | 0.30 | 320.00 | 96.00 |

October 19, 2007                         Keehn & Associates, APC                         Page 4
4:25 pm                                 Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| | | | RELATED ISSUES | | | |
| 10255 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON DEVELOPMENT OF EVIDENTIARY RECORD FOR SANCTIONS HEARING | 1.60 | 320.00 | 512.00 |
| 10574 | 9/20/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RECEIVED AND REVIEWED EMAIL CORRESPONDENCE FROM ATTORNEY SUNJINA K. AHUJA REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; COMPLETED DRAFT OF COMPREHENSIVE SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS IN SUPPORT OF PETITIONING CREDITORS' RENEWED REQUEST FOR SANCTIONS. | 1.30 | 225.00 | 292.50 |
| 10277 | 9/21/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON EVIDENTIARY SUPPORT FOR SANCTIONS MOTIONS | 1.30 | 320.00 | 416.00 |
| 10586 | 9/24/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; DRAFTED CORRESPONDING COMPENDIUM OF EXHIBITS; DRAFTED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS. | 6.60 | 225.00 | 1485.00 |
| 10403 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVISE AND EDIT PROPOSED DECLARATION FOR TIMOTHY DILLON | 0.40 | 320.00 | 128.00 |
| 10404 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM CLIENT RE: SAME | 0.20 | 320.00 | 64.00 |
| 10405 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON SANCTIONS MOTION | 0.50 | 320.00 | 160.00 |
| 10588 | 9/25/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED COMPENDIUM OF EXHIBITS REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; REVISED AND FINALIZED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; DRAFTED DECLARATION OF L. SCOTT KEEHN REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS. | 4.30 | 225.00 | 967.50 |

0533

October 19, 2007
4:25 pm

Keehn & Associates, APC
Detail Time Submittal Report

Page 5

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 10409 | 9/26/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO MULTIPLE E-CORRESPONDENCE REGARDING DECLARATIONS | 0.20 | 320.00 | 64.00 |
| 10410 | 9/26/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.40 | 320.00 | 128.00 |
| 10591 | 9/26/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEWED EMAILS FROM ATTORNEY DILLON AND CLIENT; REVISED DILLON DECLARATION. | 0.80 | 225.00 | 180.00 |
| 10440 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.80 | 320.00 | 576.00 |
| 10441 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.30 | 320.00 | 96.00 |
| 10442 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.30 | 320.00 | 96.00 |
| 10599 | 9/27/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; WORKED IN SUPPORT OF FILING PETITIONING CREDITORS' RENEWED REQUEST FOR MONETARY SANCTIONS AGAINST LOPEZ. | 0.30 | 225.00 | 67.50 |
| 10740 | 9/28/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RECEIVE, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM ATTORNEY HAYES REGARDING SANCTIONS ISSUE. | 0.20 | 320.00 | 64.00 |
| 10868 | 10/1/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.20 | 320.00 | 64.00 |

0534

October 19, 2007
4:25 pm

Keehn & Associates, APC
Detail Time Submittal Report

Page 6

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 10869 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WOF WORK ON FOLLOW-UP REGARDING<br>SANCTIONS MOTION | 0.20 | 320.00 | 64.00 |
| 10871 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.90 | 320.00 | 288.00 |
| 10872 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.00 | 320.00 | 320.00 |
| 10961 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.00 | 320.00 | 320.00 |
| 10911 | 10/3/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10912 | 10/3/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10935 | 10/4/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WOF WORK ON FOLLOW-UP REGARDING<br>PRESENTATION OF EVIDENTIARY MATERIALS IN<br>SUPPORT OF SANCTIONS MOTION | 0.90 | 320.00 | 288.00 |
| 10950 | 10/5/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |

| | Hours | Amount | |
|---|-------|--------|---|
| Daily Total (Billable) | 42.30 | 11448.50 | ** |
| Grand Total (Billable) | 42.30 | 11448.50 | ** |

0535

# EXHIBIT C

0536

1   L. Scott Keehn, SBN 61691
    Leslie F. Keehn, SBN 199153
2   **KEEHN & ASSOCIATES**
    A Professional Corporation
3   402 West Broadway, Suite 1210
    San Diego, California 92101
4   Telephone: (619) 400-2200

5   Attorneys for **Petitioning Creditors**

6

7

8              UNITED STATES BANKRUPTCY COURT

9           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11   In Re:               )  Case No. 05-05926-PBINV

12       FRANCIS J. LOPEZ,      )  **DECLARATION OF TIMOTHY P. DILLON**

13           Alleged Debtor.    )  **[BIFURCATED PHASE II]**

14                  )  Date:  October 1, 2007 (Status Conference)

15                  )  Time:  10:30 a.m.
                    )  Judge: The Honorable Peter W. Bowie

16                  )  Ctrm:  4

17                  )

18                  )

19                  )

20       I, TIMOTHY P. DILLON, declare as follows:

21       1.      I am an attorney duly admitted to practice before the Courts of this State. I am a

22   shareholder of the law firm of Dillon & Gerardi, APC, counsel for Petitioning Creditor Alan

23   Stanly ("Stanly") in certain cases involving the alleged debtor herein, Francis J. Lopez ("Lopez"),

24   which were and/or are pending before the San Diego Superior Court and the United States District

25   Court for the Southern District of California (the "Additional Lopez Cases"). In connection with

26   the Additional Lopez Cases, I am the *shareholder in charge* of the engagement of the firm on

27   behalf of Stanly, and the attorney within the firm who is most knowledgeable with respect to all

28   aspects of the Additional Lopez Cases. I make this Declaration based upon facts within my

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

111575/LFK/5311.01

0537

1  firsthand knowledge acquired in the course of conducting litigation against Lopez in the

2  Additional Lopez Cases.

3        2.      The delay and bad-faith litigation tactics employed by Lopez and his counsel

4  throughout the Additional Lopez Cases are summarized below.

5                    *Union Bank of California v. Francis J. Lopez, et. al.*

6                    **San Diego Superior Court(Case No.: GIN 030827)**

7  <u>Case Summary (06/2003 - 09/2004):</u>

8        3.      In or about June of 2003, Union Bank of California initiated a litigation against

9  both Lopez and Stanly as guarantors of a loan which their corporation, Prism, had defaulted on.

10  Both Lopez and Stanly filed cross-claims against each other for contribution and indemnity.

11  Lopez and Stanly eventually settled with Union Bank.  Stanly prevailed on a motion for good faith

12  settlement and obtained a dismissal of Lopez's cross-claims.  At time of trial, the sole issues left in

13  the case were Stanly's claims against Lopez for indemnity and contribution.  Trial in the Union

14  Bank matter was continued several times due to Lopez's dilatory conduct, as more fully set forth

15  below.  When the Court finally held trial, neither Lopez nor his counsel appeared.  Trial proceeded

16  without Lopez.

17  <u>Summary of Dilatory / Bad Faith Tactics:</u>

18        4.      On March 9, 2004, Lopez requested a trial continuance due to the "illness of his

19  wife's aunt."  Based on that request, the parties ultimately stipulated to continue the trial for four

20  months — until July 9, 2004.

21        5.      On July 2, 2004 — the date of the trial readiness conference — Lopez's attorney,

22  Joseph Fischbach ("Fischbach"), faxed a "Declaration re: Non-Readiness for Trial" to my office.

23  A true and correct copy of that Declaration is attached hereto as Exhibit 1 to the "Compendium of

24  Exhibits in Support of Renewed Request for an Enforcement Order Imposing Monetary Sanctions

25  Against Alleged Debtor Francis J. Lopez" (hereinafter referred to as the "Exhibits Compendium")

26  filed concurrently herewith.  In his Declaration, Fischbach stated that he would be unable to

27  appear for trial because he had scheduled another trial for July 7, 2004.  This was the first time

28  Fischbach had ever indicated that he would be unable to attend trial.  He did not personally appear

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111575/LFK/5311.01

0538

1   at the trial readiness conference. Instead, Fischbach sent an *appearance counsel* to the trial

2   readiness conference who was not affiliated with Fischbach's law firm, and was unfamiliar with

3   the case. Because a "Declaration for Non-Readiness for Trial" is not a proper method of obtaining

4   a trial continuance, and Lopez did not properly apply for a continuance of trial, the Court had no

5   legal basis on which to order a continuance. The Court then confirmed that trial call would

6   remain set for July 9, 2004.

7          6.      On July 9, 2004, Lopez and his counsel failed to appear for trial, and the trial court

8   issued an Order to Show Cause as to why sanctions should not be issued against them. A true and

9   correct copy of the Order is attached as Exhibit 2 to the Exhibits Compendium.

10         7.      On July 16, 2004, Fischbach appeared before the Court and confirmed that he was

11  in trial on another matter on the dates set for trial in *Union Bank of California v. Francis J. Lopez,*

12  *et. al.* and stated that his failure to appear at the scheduled trial date was due to a mix-up with

13  co-counsel. No declaration of co-counsel was ever provided to corroborate the existence of the

14  mix-up or how it came to be. Additionally, Lopez provided declarations to the Court from himself

15  and his physician stating Lopez was suffering from "diverticulitis" and was too ill to participate in

16  a trial. A true and correct copy of the Declarations is attached as Exhibit 3 to the Exhibits

17  Compendium. This was the first time the Court had been advised of Lopez's purported

18  diverticulitis. Stanly was aware that Lopez could easily induce the aggravating symptoms of his

19  condition by eating popcorn. The Court continued the trial for approximately 60 days — until

20  September 10, 2004.

21         8.      On September 9, 2004 — one day before the twice-continued trial was set to begin

22  — Lopez applied *ex parte* for a third trial continuance. A true and correct copy of the Ex Parte

23  Application is attached as Exhibit 4 to the Exhibits Compendium. Lopez claimed he was still

24  suffering from diverticulitis, and that the medication he took for it made him "groggy."[1] Lopez

25  further stated that he could not appear for trial due to scheduled colonoscopy and endoscopy

26

27

28

_____

¹       See, Exhibits Compendium Tab 4.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1310
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2110 • FACSIMILE (619) 400-2201

111575/LFK/5311.01

0539

1  procedures.[2] The evidence in support of Lopez's application was defective in that the declarations

2  were not signed under penalty of perjury under the laws of the State of California. The Court

3  ordered the application continued until September 10, 2004, and the Court's minute order

4  provided precise instructions to Lopez as to how to provide a competent declaration. A true and

5  correct copy of that Order is attached as Exhibit 5 to the Exhibits Compendium.

6       9.     On September 10, 2004, Stanly appeared with a proposal for the commencement of

7  trial. Lopez appeared through *appearance counsel* who was not affiliated with Fischbach's law

8  firm, and was unfamiliar with the status of the case. Despite the Court's specific instruction, no

9  competent declaration was provided to support Lopez's request for a third trial continuance.

10  Based on that, the Court denied his request.

11      10.    Trial proceeded on September 14, 2004, wherein Stanly obtained a judgment

12  against Lopez for $50,000.

13                    *Francis Lopez v. Alan Stanly*

14           **San Diego Superior Court (Case No.: GIN029692)**

15  Case Summary (05/2003 - 06/2005):

16      11.    This case has been stayed by the involuntary bankruptcy petition filed herein.

17  Lopez initially sued Stanly for breach of fiduciary duty, trespassing, conversion and invasion of

18  privacy. All but the invasion of privacy claims were dismissed via a motion for summary

19  adjudication. Stanly counter-claimed on a variety of claims, including breach of fiduciary duty,

20  unfair competition and misappropriation of trade secrets. Stanly obtained many discovery

21  sanctions against Lopez for his discovery violations. Because of the involuntary bankruptcy

22  petition, the Court did not issue monetary sanctions against Lopez. However, prior to the filing of

23  the bankruptcy petition, a discovery referee recommended the issuance of several thousand dollars

24  of discovery sanctions against Lopez, and $5,198.75 of discovery sanctions were issued against

25  Lopez's counsel and co-Plaintiff. The Court also issued evidentiary sanctions against Lopez.

26  / / /

27

28          [2]    *Id.*

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111575/LFK/5311.01

0540

Summary of Dilatory / Bad Faith Tactics:

12.     Without justification or excuse, Lopez failed to provide any response to Stanly's First Set of written discovery propounded on him on December 31, 2003. Stanly filed a motion to compel discovery responses. During the extended meet and confer process, the parties worked out a resolution whereby Lopez paid Stanly $600 in sanctions and provided Stanly with discovery responses. In exchange, Stanly took the motion off calendar.

13.     On July 28, 2004, Stanly propounded a Second Set of written discovery consisting of interrogatories, requests for admission and requests for production on Martin Hudacko ("Hudacko") and Lopez. On September 2, 2004, Hudacko and Lopez provided responses consisting solely of identical boilerplate objections, without a single substantive response. After a meet and confer process, Lopez provided some substantive responses, however, these responses were still woefully inadequate. In addition, Lopez sought a protective order as to certain discovery (based on trade secret protection) and others he claimed he had already answered appropriately.

14.     In November of 2004, Lopez moved to appoint a discovery referee. Stanly agreed, and Judge Sarokin was appointed as discovery referee based on the parties' stipulation.

15.     On January 7, 2005, Stanly submitted to Judge Sarokin a motion to compel the discovery responses of Hudacko and Lopez. On February 18, 2005, Stanly's motion was granted, and Judge Sarokin ordered Lopez to respond to the written discovery requests and produce response documents. The 02/18/2005 ruling of Judge Sarokin was entered as an order of the trial court.

16.     On March 4, 2005 (the ordered production date), Lopez failed, without justification or excuse, to comply with Judge Sarokin's 02/18/2005 Order by failing to provide any responsive documents to Stanly's requests for production of documents. Stanly made several requests to Judge Sarokin for an additional Order requiring Lopez to produce documents, and for the imposition of sanctions against Lopez. On March 24, 2005, Judge Sarokin issued another Order requiring Lopez to produce all responsive documents on or before March 18, 2005.

17.     On April 1, 2005, after persistent requests from Stanly's attorneys, and two Orders

KEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

111575/l.FK/5311.01

0541

1  from Judge Sarokin, Lopez finally produced approximately 50 pages of additional materials via

2  email. Although Lopez provided some documents, he still failed, without justification or excuse,

3  to provide a video tape and several documents specifically referred to in his discovery responses.

4  Further, Lopez failed to provide audio recordings and a CD ROM purportedly in his possession.

5        18.    On April 15, 2005, Stanly filed another motion to compel and request for monetary

6  sanctions against Lopez, requesting, amongst other documents, that the audio recordings be

7  produced. On April 28, 2005, Judge Sarokin granted Stanly's motion and demanded Lopez

8  produce all responsive documents, including the audio recordings and the CD ROM.

9        19.    After Judge Sarokin issued the 04/28/2005 Order, Lopez produced some audio

10  recordings, but failed, without justification or excuse, to produce any of the other documents he

11  had been ordered to produce.

12        20.    After several repeated requests for production of the missing documentation, Stanly

13  brought another motion to compel before Judge Sarokin. On June 24, 2005, Judge Sarokin

14  granted the motion, and issued evidentiary and monetary sanctions against Lopez in the amount of

15  $2,000. A true and correct copy of that Order is attached as Exhibit 6 to the Exhibits

16  Compendium.

17        21.    On March 8, 2005, Lopez failed, without justification or excuse, to appear for the

18  deposition of Stanly that Lopez had noticed for that day, causing Stanly and his counsel great

19  expense and inconvenience.

20        22.    Without justification or excuse, Lopez repeatedly served deposition subpoenas on

21  third parties without providing notice of the Subpoenas to Stanly in an effort to secretly obtain

22  discovery without Stanly's knowledge. Stanly was only made aware of Lopez' failure to provide

23  notice of third party depositions after certain witnesses informed Stanly of the subpoenas. Judge

24  Sarokin issued evidentiary sanctions against Lopez for this conduct in his 06/24/2005 Report.[3]

25        23.    Pursuant to the terms of a protective Order issued by Judge Sarokin, and adopted

26  by the trial court, all parties were ordered to provide declarations detailing their use of corporate

27

28       [3]    See, Exhibits Compendium Tab 6.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

111575/LFK/5311.01

**0 5 4 2**

1  funds for personal expenses. While Stanly complied with this request, Lopez did not. Lopez's

2  declaration failed, without justification or excuse, to describe his use of corporate funds with any

3  particularity. Stanly was forced to bring another motion before Judge Sarokin, requesting that

4  supplemental declarations be ordered. In his 06/24/2005 Report, Judge Sarokin granted Stanly's

5  motion and Ordered supplemental declarations be produced.[4]

6       24.    Lopez refused to stipulate to limit his emotional distress claims pursuant to

7  California Code of Civil Procedure §2032, despite Stanly's repeated requests and Lopez's

8  representations that he would enter into a stipulation.  Accordingly, Stanly moved for an Order

9  requiring a medical examination of Lopez. Judge Sarokin issued sanctions against Lopez and his

10  counsel in the amount of $2,948.75 for their failure to initially stipulate. This ruling is contained

11  in Judge Sarokin's 06/24/2005 Report.[5]

12      25.    On October 22, 2004, Stanly served Lopez with a request for a Statement of

13  Damages. Lopez never provided it, despite multiple follow-up requests. Judge Sarokin ordered

14  the Statement served, and Lopez failed to comply with that Order, insisting that the Statement had

15  already been served on Stanly. Judge Sarokin issued monetary sanctions in the amount of $1,245

16  against Lopez for his failure to comply with his Order. This ruling was also contained in Judge

17  Sarokin's 06/24/2005 Report.[6]

18                *Enterprise Technology Holdings v. Noveon Systems, Inc. et al.*

19      United States District Court for the Southern District of California (Case No.: 05-cv-2236)

20  Case Summary (12/2005 - Present):

21      26.    Stanly is the President of Enterprise Technology Holdings, Inc. ("ETH") which

22  filed this action against Noveon Systems, Inc., a company whose common stock is all owned by

23  Mrs. Lopez. ETH successfully obtained a preliminary injunction against Noveon, enjoining

24  Noveon, and all those acting in concert with Noveon, from utilizing, selling, licensing or

25

26  ────────────────

       [4]      See, Exhibits Compendium Tab 6.

27     [5]      See, Exhibits Compendium Tab 6.

28     [6]      See, Exhibits Compendium Tab 6.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2380 • FACSIMILE (619) 400-2381

111575/LFK/5311.01

0543

1  marketing Prism's software (the company formerly owned by Stanly and Lopez). Thereafter,

2  without any proffered justification or excuse, Noveon simply stopped participating in the

3  litigation. Noveon's counsel admitted his client was not participating in the litigation and, as a

4  result, Noveon's counsel withdrew from the case on January 17, 2007. It appears Lopez decided

5  to stop doing business as Noveon, and let the company take the fall in the case. Lopez left the

6  company with no money, no assets and no appointed officers or elected directors.

7       Although all of the Noveon stock is in his wife's name, Lopez was the company's founder

8  and the person who had managed all the day-to-day operations. The last remaining issue in this

9  case is whether Lopez's wife is an alter-ego of Noveon and thus liable for the company's debts.

10 **Summary of Dilatory / Bad Faith Tactics:**

11       27.    In October of 2006, ETH propounded written discovery on Noveon. Noveon failed

12 and refused to respond to the discovery requests even after multiple meet and confer attempts, and

13 two telephonic conferences with Magistrate Judge Catherine Bencivengo.

14       28.    ETH filed a motion for monetary, issue, evidentiary and terminating sanctions

15 against Noveon based on its failure to provide any discovery responses. Noveon failed to oppose

16 the motion. On December 8, 2007, Judge Bencivengo granted ETH's motion and ultimately

17 issued evidentiary, issue and terminating sanctions.

18       29.    On August 16, 2007, the Court granted ETH's motion for a default judgment

19 against Noveon. A true and correct copy of that Order is attached as Exhibit 7 to the Exhibits

20 Compendium.

21              LOPEZ'S ALLEGATIONS OF UNFAIR BIAS

22       30.    Lopez's apparent *modus operandi* in the Additional Lopez Cases was to allege

23 unfair bias against the judicial officers who issued sanctions or adverse rulings against him.

24       31.    In *Union Bank of California v. Francis J. Lopez, et. al.*, Lopez responded to Judge

25 Sarokin's adverse rulings (described above) by failing to pay his portion of Judge Sarokin's

26 referee fees, and filing a motion to disqualify him based on alleged bias. Based on Lopez's

27 allegations, Judge Sarokin resigned rather than respond to the motion. Lopez also alleged that

28 Judge Jacqueline Stern was biased against him. He filed a complaint against Judge Stern with the

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 310
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

- 8 -

1    judicial counsel, and unsuccessfully moved to disqualify her.

2        32.    Likewise, in *Francis Lopez v. Alan Stanly*, Lopez responded to Judge Michael

3    Orfield's adverse rulings by alleging he was unfairly biased against him, and moving for

4    disqualification.  Judge Orfield voluntarily recused himself, and the case was referred to Judge

5    Thomas Nugent.

6    **FEES INCURRED FOR PREPARING SUMMARIES RE: LOPEZ'S MISCONDUCT**

7        33.    The summaries of the Additional Lopez Cases discussed herein were specifically

8    prepared for Stanly's bankruptcy counsel (Keehn & Associates, APC) by my office in support of

9    Stanly's renewed request for monetary sanctions against Lopez in the above-entitled bankruptcy

10   case.  My office spent a total of 6.25 hours compiling the summaries, reviewing past documents,

11   reviewing old case files and finalizing this declaration.  Stanly was billed $1,018.75 for actual

12   legal fees incurred, as set forth below:

13        Attorney Timothy P. Dillon: 1.25 hour ($215 per hour)

14        Attorney Sunjina Kaur Ahuja: 5.0 hours ($150 per hour)

15       I declare under penalty of perjury under the law of the United States that the foregoing is

16   true and correct, and that this Declaration was executed on this 26th day of September, 2007, at

17   San Diego, California.

19   TIMOTHY P. DILLON

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

11157/S/LFK/5311.00   0545

Document 125

0546

1  M. Jonathan Hayes (Bar No. 90388)
   **Law Office of M. Jonathan Hayes**
2  21800 Oxnard St, Suite 840
   Woodland Hills, CA 91367
3  Telephone: (818) 710-3656
   Facsimile: (818) 710-3659
4  jhayes@polarisnet.net

5  Attorneys for Alleged Debtor Francis Lopez

FILED AC

08 JAN 17 AM 10: 35

CLERK
U.S. BANKRUPTCY CT.
SO. DIST OF CALIF.

6

7

8              UNITED STATES BANKRUPTCY COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10                   SAN DIEGO DIVISION

11

12  In Re:                          )  CASE NO. 05-05926-PBINV
                                    )
13       FRANCIS J. LOPEZ,          )  Involuntary Chapter 7.
                                    )
14       Alleged Debtor             )
                                    )
15                                  )  **OPPOSITION OF ALLEGED DEBTOR**
                                    )  **TO MOTION FOR TERMINATING**
                                    )  **SANCTIONS; DECLARATION OF**
16                                  )  **FRANCIS J. LOPEZ IN SUPPORT**
                                    )  **THEREOF**
17                                  )
                                    )  Date: January 28, 2007
18                                  )  Time: 10:30 a.m.
                                    )  Ctrm: 4
19                                  )

20       TO THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY

21  JUDGE, TO MOVANT PETITIONING CREDITOR ALAN STANLY:

22

23       The Declaration of Francis Lopez attached hereto is in response to the Motion for

24  Terminating Sanctions filed by Mr. Keehn. The Motion is based on the failure of Mr.

25  Lopez to pay sanctions to Mr. Keehn in the amount of $8,130.50.

26       This is a case about an alleged Debtor who owns a home with his wife in Florida

27  and virtually nothing else. The Petitioning Creditor has acknowledged that. The Alleged

28

1   Debtor attempted to pay every creditor including Mr. Stanly more than a year ago which

2   motion was opposed by Mr. Stanly.  The Court was inundated with the bills and debts of

3   Mr. Lopez at the previous Motion for Summary Judgment re the total number of creditors.

4   The Court knows that there are very few creditors of this estate who are owed small

5   amounts beyond Mr. Stanly.

6          Mr. Lopez prays that this court deny the motion to strike the Answer and set a trial

7   date.  Mr. Keehn, the attorney for the single petitioning creditor, has advised the court on

8   more than one occasion that once the deposition of Mr. Lopez was complete, he would file

9   a Motion for Summary Judgment as to Phase II.  Mr. Lopez traveled to San Diego at his

10  own cost without a court order requiring him to do so and appeared for his deposition on

11  October 23, 2007.  He answered the questions of Mr. Keehn for more than six hours.  The

12  long trail of this case is ready to finish.  The Court should not allow it to be short-circuited

13  by striking the Answer.

14         As to the Sanctions, Mr. Lopez, through counsel, offered on December 17, 2007 to

15  pay $4,000 of the sanctions immediately and $1,000 per month for four months thereafter.

16  See **Exhibit "A."**  Mr. Keehn responded on December 20, 2007 with a resounding "no."

17  That email communication is not attached because it contained other settlement discussion.

18         Terminating sanctions is an extreme remedy which should not be assessed except in

19  extraordinary circumstances.  Here Mr. Lopez has provided every document in his

20  possession, responded to written discovery more than once, and attended his deposition

21  twice.  Nothing has been withheld; the most that has happened is that Mr. Lopez has

22  perhaps been dilatory with some of his responses and in making preparations to attend his

23  second deposition in San Diego.  There was one Motion to Compel which was complied

24  with.  The Second Motion to Compel resulted in an Order of this court prohibiting Mr.

25  Lopez from introducing any document as evidence that had not already been produced.

26  There was no finding of the court that Mr. Lopez had in any way violated the Order from

27  the first Motion to Compel.  Counsel for Lopez agreed to the prohibitory order after

28  explaining to the court that there were simply no further documents that were relevant that

1  could be produced.  There is no discovery order that Mr. Lopez has failed to comply with.

2  There was no order to appear for his deposition.  Mr. Lopez voluntarily traveled to San

3  Diego for the convenience of Mr. Keehn without a court order.

4      In *Wyle v. R.J Reynolds Inductries, Inc.* 709 F.2d 585 (9th Cir. 1983), the court said,

5  "courts have inherent power to dismiss an action when a party has willfully deceived the

6  court and engaged in conduct utterly inconsistent with the orderly administration of

7  justice."   There is no deceit on behalf of Mr. Lopez.  The *Wylie* court said, "[B]ecause

8  dismissal is so harsh a penalty, it should be imposed only in extreme circumstances" citing

9  *Raiford v. Pounds*, 640 F.2d 944,945 (9th Cir. 1981).  "Sanctions interfering with a

10  litigant's claim or defenses violate due process when imposed merely for punishment of an

11  infraction that did not threaten to interfere with the rightful decision of the case."  Citing

12  *G-K Properties v. Redevelopment Agency*, 577 F.2d 645, 648 (9th Cir. 1978).

13      Mr. Keehn has received every document he has requested.  He has taken two

14  depositions over two full day periods.  He has told the court he will file a Motion for

15  Summary Judgment once the deposition is complete.  The deposition is complete.  Mr.

16  Keehn has not suggested that Mr. Lopez refused to respond to any question asked or that

17  the delay in flying to California of about five weeks resulted in any prejudice or harm to

18  his ability to go through with his Motion for Summary Judgment.

19      The *Wylie* court "determined that the deliberate deception and the irreparable loss of

20  material evidence justified the sanction of dismissal."  There has been no deliberate

21  deception and no loss of anything.

22      In *Matter of Visioneering Const.*, 661 F.2d 119, 123 (9th Cir. 1981), an involuntary

23  petition case, the court struck the Answer.  The court said," [The alleged debtor's] near

24  total refusal to facilitate discovery related to the jurisdictional factual issues and continued

25  failure to respect discovery orders were therefore justifiably sanctioned by the entry of

26  default."  There has been no "near total refusal."  Mr. Lopez has provided hundreds of

27  pages of documents to Mr. Keehn.

28

1      Wherefore Alleged Debtor Francis Lopez prays that the court deny this motion,

2  allow him to pay the sanctions in payments of $4,000 immediately and $1,000 per month

3  and set a date to hear the Motion for Summary Judgment that Stanly has long promised to

4  file.

5

6

7  Dated:  January 14, 2008                    Respectfully submitted

8

9                                             By: _____

10                                            M. Jonathan Hayes
                                              Attorney for Alleged Debtor Francis
11                                            Lopez

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF FRANCIS LOPEZ

I, Francis Lopez, declare and state as follows:

1.   I am the alleged debtor in this involuntary proceeding.  I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2.   I did not make the sanctions payment because I was unable to come up with the full amount of the sanctions in Mid-December.  I authorized my attorney to offer to pay $4,000 immediately and $1,000 per month until paid.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.  Executed on this 14th day of January, 2008 at Destin, Florida.

By:  _____
                Francis Lopez

## M. Jonathan Hayes

**From:**    "M. Jonathan Hayes" <jhayes@polarisnet.net>
**To:**      "L. Scott Keehn" <scottk@keehnlaw.com>
**Sent:**    Wednesday, December 19, 2007 11:05 AM
**Subject:** Francis Lopez Sanctions

Mr. Keehn,

   My client does not have the $8,100 in sanction to pay now.  He can pay you $4,000 now and $1,000 per month until paid.  Let me know if that will work.

   Thanks,  Jon Hayes

M. Jonathan Hayes
jhayes@polarisnet.net
21800 Oxnard St. Suite 840
Woodland Hills, CA 91367
(818) 710-3656
(818) 710-3659 fax
(818) 402-7537 cell
www.lawprofessorblogs.com
If you have received this message in error, please call (818) 710-3656
and notify me of that fact and destroy all copies of this message."
Thank you.

0 5 5 2
1/14/2008

1

2                              **PROOF OF SERVICE**
          I, MJ Hayes, declare:
3
          I am a resident of the State of California and over the age of eighteen years, and not
4    a party to the within action; my business address is 21800 Oxnard St., Suite 840,
     Woodland Hills, CA 91367.  On January 15, 2008, I served the within documents:
5
     **OPPOSITION OF ALLEGED DEBTOR TO MOTION FOR TERMINATING**
6    **SANCTIONS; DECLARATION OF FRANCIS J. LOPEZ IN SUPPORT THEREOF**

7
                    by transmitting via facsimile the document(s) listed above to the fax
8                   number(s) set forth below on this date before 5:00 p.m.

9          X        by placing the document(s) listed above in a sealed envelope with postage
                    thereon fully prepaid, in the United States mail at Los Angeles, California
10                  addressed as set forth below.

11         ..       by causing personal delivery by              of the document(s) listed
                    above to the person(s) at the address(es) set forth below.
12
           ..       by placing the document(s) listed above in a sealed _____
13                  envelope and affixing a pre-paid air bill, and causing the envelope to be
                    delivered to a _____ agent for delivery
14
           ..       by personally delivering the document(s) listed above to the person(s) at the
15                  address(es) set forth below.

16   L. Scott Keehn
17   KEEHN & Assoc, APC
     402 W. Broadway, Suite 1210
18   San Diego, CA 92101
     AND BY EMAIL
19
          I am readily familiar with the firm's practice of collection and processing
20   correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal
     Service on that same day with postage thereon fully prepaid in the ordinary course of
21   business.  I am aware that on motion of the party served, service is presumed invalid if
     postal cancellation date or postage meter date is more than one day after date of deposit for
22   mailing in affidavit.

23        I declare that I am employed in the office of a member of the bar of this court at
     whose direction the service was made.
24
          Executed on January 15, 2008, at Los Angeles, California.
25

26

27                                        _____
28                                                  MJ Hayes

LAW OFFICES                                            Opposition to Motion for
M. Jonathan Hayes                6                     Terminating Sanctions
                                                            0553

Document 126