1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                              )  Case No. 05-05926-PBINV
                                        )
12      FRANCIS J. LOPEZ,               )  **REPLY TO OPPOSITION TO MOTION
                                        )  FOR AN ORDER IMPOSING
13              Alleged Debtor.         )  TERMINATING SANCTIONS AGAINST
                                        )  THE DEBTOR**
14                                      )
                                        )  **[BIFURCATED PHASE II]**
15                                      )
                                        )  Date:   January 28, 2008
16                                      )  Time:   10:30 a.m.
                                        )  Judge: The Honorable Peter W. Bowie
17                                      )  Ctrm:   4
                                        )
18                                      )
                                        )
19  ──────────────────────────────────  )

20

21      Petitioning Creditors respectfully submit their Reply to Alleged Debtor Francis J. Lopez's

22  Opposition to their Motion for an Order from this Court imposing terminating sanctions against

23  Lopez by striking his answer and entering an Order for Relief forthwith.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0555
112903/LFK/5311.01

1

## TABLE OF CONTENTS

2  I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3  II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4      A.   Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5      B.   Evidence of Affluence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6  III. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7      A.   Lopez Has Not Been Candid With the Court and His Claimed Inability
            to Pay the Sanctions Award is Disingenuous. . . . . . . . . . . . . . . . . . . . . 5

8
       B.   The Evidence Offered by Lopez in Support of His Opposition is
9           Specious and Conclusory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10     C.   The Lopez Bank Account Is Marital Property and Available to the
            Creditors of Both Francis and Madeleine Lopez . . . . . . . . . . . . . . . . . . 8

11
       D.   Lopez Should Have Followed Appropriate Procedure to Obtain the
12          Requested Relief from this Court's Order . . . . . . . . . . . . . . . . . . . . . . . 9

13 IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0556

# I. INTRODUCTION

**So as they say in New York: *Enough already!*[1]**

Hon. John S. Rodes, Sr.  United States District Court
Judge (Deceased)

Despite an apparent annual income of approximately $123,800,[2] Lopez continues his long history of non-cooperation and non-compliance with an unsupported and disingenuous protestation of poverty.  Enough is enough.  Since this Petition was filed over two and one half years ago, Lopez's discovery misconduct has made a mockery of these proceedings and this Court's authority.  And through it all, Lopez has avoided paying even one penny of the $8,130.50 in accrued monetary sanctions that this Court ordered he pay on or before December 19, 2007, after multiple warnings and deferment of the Order for over ten months.

Lopez's Opposition is more of the same old thing — i.e., Lopez purporting to cooperate while bemoaning his victimization at the hands of Petitioning Creditors, and, ultimately, not actually doing anything to process this case forward, fulfill his duties as a litigant, or comply with the lawful orders of the court.  His Opposition claims he has fully cooperated with all discovery requests, and even voluntarily appeared for his own deposition.  What he fails to acknowledge is that the limited discovery Petitioning Creditors were able to squeeze out of him were extracted at the cost of over a year of relentless effort, and three motions to compel that which should have been voluntarily tendered.

Lopez then feigns good faith by suggesting – but not tendering – a partial payment to be followed by monthly installments to pay the sanctions over a five-month period of time (i.e., $4,000 "*immediately*" and $1,000 per month thereafter).[3]  Again, what he does not say and what he fails to do are far more significant than what he does say.  Specifically, he fails to explain why

---

[1]  See: *40235 Washington St. Corp. v. W.D. Lusardi* 177 F. Supp. 2nd 1090, 1107 (S.D. Cal, 2001), *Affirmed* on other grounds by *Lusardi v. 40235 Washington St. Corp.* 329 F3d1076 (9th Cir (Cal) 2003.  (Judge Rhoades lamenting – with substantial justification – the waste of judicial resources.  It is a sentiment that has both value and wisdom when applied here.)

[2]  See Declaration of Cynthia K. Lay ("Lay Decl.") filed concurrently herewith at ¶¶ 8-10 and Exhibit 3.

[3]  See, Lopez's Opposition, page 4, lines 1 - 2.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2300 · FACSIMILE (619) 400-2301

0557

1  he has not proffered any evidence of his inability to pay the sanctions award in full; and he fails to

2  explain why, if he is truly sincere about making a good faith effort to pay the award, he has failed

3  to pay even the $4,000 he admits to having the immediate ability to pay, rather than just dangling

4  the prospect of partial payment to create leverage to coerce a protracted payment plan.  A man

5  acting in good faith does not withhold an obligatory payment to create a negotiating advantage.

6  But Lopez is not a man acting in good faith so he does exactly that.

7        Evidence obtained by Petitioning Creditors suggests that Lopez does have the ability to

8  immediately pay the sanctions award in full, but is simply choosing not to do so.  The choice is

9  obviously economically convenient and it is strategically beneficial as well.  The strategy is

10  simple.  Lopez has insured that every inch of progress made by the Petitioning Creditors comes at

11  the price of unnecessary costs and as well as delay.  By the simple expedient of increasing the

12  costs of litigation, Lopez can economically eviscerate the utility of the remedy sought.  Under the

13  cover of delay he can further dilute the value of the remedy here by incurring new debt that

14  catapults abroad of all pre-petition creditors as administrative gap claims.  His choice reflects a

15  pattern of behavior and purpose that is insidious, inexcusable, and intolerable.

## II.  FACTUAL BACKGROUND

17  **A.    PROCEDURAL HISTORY**

18  •     **January 29, 2007.**  The sanctions odyssey begins with Petitioning Creditors first Motion

19        to Compel Discovery (Docket Item 91 [Sanctions requested $4,242]).

20  •     **November 19, 2007.**  The Court imposes its sanctions of $8,130.50 and makes it clear that

21        they are entirely due and payable thirty (30) days from that date – December 19, 2007 (the

22        "Sanctions Deadline").  The Court also admonishes Lopez, through his counsel, that failure

23        to pay the sanctions could result in terminating sanctions.[4]  That admonishment concludes

24        with this point-blank warning:

25              But at this point in time, those sums will be required to be paid
              within thirty days to Mr. Keehn's firm.  And your client should be
26              made very aware, Mr. Hayes, that if he fails to pay that total sum

27  _____

28        [4]  See Declaration of L. Scott Keehn filed concurrently herewith at ¶2 and Exhibit 1
   (Transcript of the 11/19/07 Hearing at p. 16, ln. 9 to p. 18, ln. 13).

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0558

within thirty days of today's date – and that's today's date, not the date of the entry of the order – within thirty days of today's date, I will consider a terminating sanction motion to strike his opposition to the petition. And we'll take it from there.[5]

- **November 26, 2007.** Petitioning Creditors send Lopez's counsel a copy of the lodged Sanction Order together with wire transfer instructions for Keehn & Associates, APC, general operating account to facilitate timely compliance. The accompanying Transmittal Memorandum emphasizes the importance of timely payment as follows:

> The court has now imposed upon Mr. Lopez the duty to pay the full $8,130.50 awarded in sanctions. The enclosed wire instructions are provided to facilitate his full and timely discharge of that duty. The Petitioning Creditors would first steal and then paraphrase Admiral Lord Nelson's famous signal to his fleet as the Battle of Trafalgar was about to commence: *The United States Bankruptcy Court expects every man to do his duty!* The Petitioning Creditors hold the same expectation.[6]

This was intended to provide Lopez with advance warning that no delay in payment would be tolerated by the Petitioning Creditors.

- **November 26, 2007 to December 18, 2007** [Sanctions Deadline minus one day] – Lopez provides nothing but the *sounds of silence*.

- **December 19, 2007** [Sanctions Deadline]. Lopez, through counsel, communicates that he cannot pay the sanctions award and indicates that he can pay $4,000 plus $1,000 per month thereafter. However, Lopez tenders nothing[7].

- **December 20, 2007.** Petitioning Creditors, through counsel, responded to Lopez's counsel declining to acquiesce to any adjustment in the payment schedule imposed by the Sanctions Order. The reason for that position was specifically summarized as follows:

> "I do not now believe, nor have I ever since the date that I served you with the order and our bank wire instructions believed that your client lacked the financial ability to timely comply with the Court's order. I am informed and believe that my client has or has access to the evidence necessary to establish the validity of my belief. I say that so that your client has fair warning that should he be inclined to

---

[5] *Id.* Transcript of Proceedings at page 18, lines 6-13.

[6] See Declaration of L. Scott Keehn, filled concurrently herewith at ¶ 3 and Exhibit 2.

[7] See Declaration of L. Scott Keehn at ¶ 5, Exhibit 3.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

(559)

1   submit a declaration under penalty of perjury to the effect that he did
    not comply with the court's sanctions order because he lacked the
2   financial ability to do so, he does so at his peril."[8]

3   •   **December 20, 2007 through January 14, 2008.** Lopez makes no tender of any portion of

4       the Sanctions and provides nothing other than the now familiar *sounds of silence.*[9]

5   •   **January 15, 2007.** Lopez mails his opposition to the motion for terminating sanctions

6       supported by his conclusory statement that he lacked the ability to comply with the Court's

7       order.[10]

8   **B.   EVIDENCE OF AFFLUENCE**

9       1.      Lopez is currently employed by an entity known as Cargotel, pursuant to the terms

10  of a "Cargotel Contractor Agreement" dated August 17, 2006.[11] Under the terms of the Cargotel

11  Contractor Agreement Lopez is reimbursed his out-of-pocket expenses[12] and a daily fee of $400

12  per day up to "an annualized compensation level of $150,000".[13]

13      2.      During the course of litigation pending against Lopez's wife, Madeleine J. Magill-

14  Lopez, attorneys representing petitioning creditor Alan Stanly or one of his entities subpoenaed

15  bank records from SunTrust Bank located in Orlando, Florida, and obtained monthly checking

16  account statements for Madeleine Lopez for the seven month period from December 2006,

17  through June 2007[14] (hereinafter the "Bank Records"). The Bank Records indicate that in the

18  seven month period reflected by them, Madeleine and/or Francis Lopez caused deposits to be

19  made to the account in the aggregate amount of $72,225.46[15]. That reflects:

---

20
21      [8]  See Declaration of L. Scott Keehn at ¶ 6, Exhibit 4.

22      [9]  See Declaration of L. Scott Keehn at ¶ 4.

23      [10] See Docket Item 125 (Proof of Service).

24      [11] See Declaration of L. Scott Keehn at ¶ 7 and Exhibit 5 (partial Depo Transcript and
    Depo Exhibit 2).

25      [12] See LSK Declaration at Exhibit 5, Depo Exhibit p. 1.

26      [13] *Id.* Depo Exhibit 2 at p. 2-7.

27      [14] See Declaration of Timothy P. Dillon filed concurrently herewith at ¶3 and Exhibit 2.

28      [15] See Declaration of Cynthia K. Lay filed concurrently herewith at ¶¶8-10 and Exhibit 3.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0560

1      •      An annualized total — $123,822.15[16];

2      •      A monthly average — $10,317.92;

3      •      Monthly excess over Mrs. Lopez's salary — $6,410.34;

4      •      Family income which is 90.4% over the median for a Florida family of four[17]; and,

5      •      Family income which is 80.3% over the median income of a "Two Earner

6                Household" in the State of Florida[18].

### III. DISCUSSION

**A.  Lopez Has Not Been Candid With the Court and His Claimed Inability to Pay the Sanctions Award is Disingenuous.**

In his Declaration, Lopez claims: "I did not make the sanctions payment because I was unable to come up with the full amount of the sanctions in Mid-December."[19]  Significantly, he fails to offer any evidence of why he was "unable to come up with" the money, and what efforts he actually made to do so.  For example, Lopez never specifies what his income and expenses currently are, or were, at or around the 30-day time period from when the Court entered the sanctions Order (11/19/2007) through the payment deadline (12/18/2007).[20]  But for the evidence garnered by Petitioning Creditors in other litigation, the Court would remain completely unaware of the $123,820 annual income available to the Lopez household.

Nor does Lopez explain why he never contacted Petitioning Creditors to advise of his efforts to obtain payment, and/or advise of his purported inability to pay.[21]  This day of reckoning has been a long time coming.  Lopez must have known long before December 19, 2007, that he "could not" pay the sanctions award (assuming that was the case).  But, rather than prompt and

---

[16]  *Id.*

[17]  See Lay Decl. at ¶¶ 2-4 and Exhibit 1 (Census Bureau Median Family Income by Family Size from U.S. Trustee website).

[18]  *Id.* and Exhibit 2 (Median Income Data from U.S. Census website).

[19]  See, Lopez's Opposition, page 5 (Declaration of Francis Lopez), lines 8 - 9.

[20]  See, Docket Item 117.

[21]  See Declaration of L. Scott Keehn filed concurrently herewith ("Keehn Decl."), ¶3.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0561

1    candid disclosure, he holds his cards close to his vest to maximize his perceived bargaining

2    position.

3         Lopez's claimed inability to pay the sanctions award appears particularly disingenuous

4    given the evidence of his and his wife's regular incomes.  On or about August 17, 2006, Lopez

5    entered into an employment contract with a corporation known as Cargotel, Inc. ("Cargotel")

6    whereby he agreed to perform services for Cargotel in exchange for compensation in the amount

7    of $400 per day, plus commissions of up to $150,000 per year.[22]  As recently as August 13, 2007,

8    Lopez declared that he was still working for Cargotel as its Vice President of Marketing,[23] and

9    Petitioning Creditors have no reason to believe that his employment has terminated.

10        Lopez is not the sole source of financial support for he and his wife, Madeleine.

11   Madeleine apparently earns a *net* salary of $3,907.58 per month from her job at Scripps Florida,

12   which is automatically deposited into her checking account held at SunTrust bank.[24]  Collectively,

13   Lopez and his wife appear to be earning sufficient salaries to have allowed Lopez to raise the

14   $8,130.50 within the 30-day period provided by the Court.  Lopez has provided no evidence to the

15   contrary.

16        Evidence garnered from discovery conducted in other litigation demonstrates that the

17   Lopez household made deposits into his general checking account for the periods ending

18   December 14, 2006 through June 15,2007, totaling $72,225.46.[25]  That is an average of

19   $10,317.92 per month, which is $6,410.34 per month in excess of the known net salary deposited

20   by Mrs. Lopez in the amount of $3,907.58.[26]  That income available for deposit of roughly

21

22

23

_____

24        [22]  See, Keehn Decl., Exhibit A.

25        [23]  Exhibit 1, to the Declaration of Timothy P. Dillon filed concurrently herewith ("Dillon
     Decl.").

26        [24]  See, Dillon Decl., Exhibit 2.

27        [25]  See Lay Decl. at ¶¶ 8-10 and Exhibit 3.

28        [26]  See Dillon Decl. at ¶ 3 and Exhibit 2.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0562

1  $123,822.15 over the statewide median family income for a family of four in the state of Florida,[27]

2  which is 90.4% over that median family income.  The same figure would represent $55,135.15

3  over the U.S. Census Bureau's estimated median income for a "two-earner" household in the state

4  of Florida,[28] which is 80.3% over the median income of a "two-earner" household in the state of

5  Florida.  In sum, the available evidence which the Petitioning Creditors have been able to garner

6  strongly suggest that the Lopez Family household is anything but poverty-stricken despite the

7  Lopez opposition declaration which concludes to the contrary.  That evidence, coupled with

8  Lopez's lack of disclosure, suggest his active intent to mislead the Court.  That inference is

9  bolstered in light of the fact that on December 20, 2007, his counsel was specifically warned that

10  Petitioning Creditors had evidence to rebut the claim of poverty, and Lopez — at his peril —

11  persisted in suggesting to the Court that he was unable to pay, while standing silent on the reality

12  of the income available to his household.

**B.    The Evidence Offered by Lopez in Support of His Opposition is Specious and Conclusory.**

15  Despite the fact that the events that have led to this day of reckoning began in January of

16  2007, Lopez offers no explanation as to why, despite that period of warning, he was simply

17  "unable to come up with the full amount of the sanctions in mid-December."[29]  An honest litigant

18  in Lopez's position would have submitted an evidentiary summary identifying: (a) all amounts of

19  cash, balances of deposit accounts, and other liquid assets that were available on November 19,

20  2007; (b) all cash received by his household between November 19, 2007 and December 19, 2007,

21  to demonstrate the total amount of cash available in that time period; and, (c) a detailed listing of

22  all expenditures made between November 19, 2007 and December 19, 2007, by amount, nature

23  and purpose, in order to establish his necessary expenses.  With that evidence, the Court could

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

---

[27]  Lay Decl. At ¶¶ 2-4 and Exhibit 1 ("Census Bureau Median Family Income by Family Size" from U.S. Trustee website), i.e., median income for family of four equals $65,024.

[28]  Id. and Exhibit 2 (Median income data from U.S. Census website) which indicates that the median income for a two-earner household in the state of Florida is $68,687.

[29]  Lopez Declaration ("Lopez Decl.") at ¶ 2.

0563

1   determine for itself whether Lopez was really "unable" to make the payment as ordered, or had

2   simply been rendered unable to do so by other spending decisions voluntarily made in the

3   operative time-frame. Lopez has never proffered such evidence, either before or after his failure

4   to comply with the Sanctions Order. Knowing what was at stake for the violation, his silence on

5   the point strongly suggests both: (a) that the evidence would demonstrate the willful nature of his

6   failure to pay the Sanctions Order, and (b) Lopez has a healthy respect for the penalties of perjury.

7   At this point, the only effective way to redress Lopez's misconduct, is to grant the motion for

8   terminating sanctions, and enter the Order for Relief forthwith.

9   **C.    The Lopez Bank Account Is Marital Property and Available to the Creditors of Both**
        **Francis and Madeleine Lopez**

10

11          Florida is an *equitable distribution* State which is similar to a *community property* State

12   such as California in that all property acquired during the marriage is presumptively "*marital*

13   *property*," belonging equally to both spouses.[30] Upon dissolution, the marital property is typically

14   distributed equally to each spouse, unless equitable considerations mandate a different

15   distribution.[31] Here, since Francis and Madeleine Lopez have been married since before the couple

16   fled to Florida, the monies deposited into Madeleine's SunTrust checking account presumptively

17   constitute *marital property*, owned equally by, and for the benefit of, both Lopez and Madeleine.[32]

18          Under Florida law, the debts incurred by Lopez during his marriage to Madeleine

19   constitute *marital liabilities* for which both spouses are presumptively equally responsible.[33] With

20   these principles in mind it is clear that all of the monies deposited into the Lopez Account are

21   marital assets which could have been used towards payment of the Sanctions Award. Those

22   deposits reflect a robust stream of income available to satisfy the sanctions and Lopez has

23

24          [30] See, Fla. Stat. §61.075(5)(a)(1).

25          [31] See, Fla. Stat. §61.075(1); *Karimi v. Karimi*, 867 So. 2d 471, 475 (Fla. 5th D.C.A. 2004).

26          [32] See, *Heinrich v. Heinrich*, 609 So. 2d 94, 95 - 96 (Fla. 3rd D.C.A. 1992) (if certain
27   "assets were acquired during the course of the parties' marriage, they are presumptively marital
     assets").

28          [33] See, Fla. Stat. §61.075(5)(a)(1).

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**0564**

1    advanced no evidence to show why it was not. Petitioning Creditors submit the Sanctions were

2    not paid simply because Lopez chose to spend the money elsewhere rather than enduring the

3    discomfort of having his lifestyle adversely impacted by the Sanctions Order.

4    **D.    Lopez Should Have Followed Appropriate Procedure to Obtain the Requested Relief from this Court's Order**

5

6        If Lopez was truly incapable of complying with the Sanctions Order, then he should have

7    at least complied with the Federal Rules of Civil Procedure ("FRCP"), and filed a motion for relief

8    from the Order pursuant to FRCP 60(b)/FRBP 9024 which provides, in pertinent part:

9        (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal

10       representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable

11       neglect. . . or (6) any other reason that justifies relief.

12   In choosing not to bring a motion for relief, Lopez has once again attempted to avoid his

13   responsibilities as a litigant. As set forth above, he fails to specify what, if any, evidence exists to

14   support his claimed inability to comply with the Order. He proffers nothing more than his own

15   naked assertion that he was *"unable to come up with full amount."* Obviously, that would be

16   patently insufficient to meet the requisite showing of excusable neglect or other justification under

17   FRCP 60(b), and it should likewise be rejected in the context of this Motion.

18       Lopez could have sought relief from the timing of the Sanctions Order if he had evidence

19   to support his hollow contention that he was unable to pay within the time mandated by the court.

20   No such motion was even sought. An even simpler form of relief could have been embodied in a

21   simple motion for extension of time to satisfy the sanctions award for good cause. The fact that

22   Lopez is represented by experienced and capable bankruptcy counsel, coupled with the fact that

23   neither such motion for relief was requested strongly suggests that there were neither conceptual

24   grounds or factual evidence that could be used to support such a request. If there were no grounds

25   for filing timely motions for relief from the Sanctions Order, there are no grounds to oppose the

26   request for the terminating sanctions which were a foreseeable result of the failure to fully and

27   timely comply with the courts Sanctions Order.

28   / / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

**0565**

### IV. CONCLUSION

The hearing on this motion will come one day prior to the first anniversary of the commencement of the sanctions odyssey. Along the way, this Court has bent over backwards to extend to Lopez every benefit of the doubt and reasonable opportunity to comply with his obligations of a litigant. Lopez appears to view that leniency with disdain.

When the Court finally awarded monetary sanctions, it clearly expressed the disturbing nature of Lopez's conduct and warned him plainly that failure to make full and timely payment of the sanctions awarded would create the risk of a terminating sanction. The Petitioning Creditors bolstered that warning by expressing, with equal clarity, that they would tolerate no delay in payment. But, the Court's threat of a terminating sanction has fallen on deaf ears as Lopez first ignores his duty to pay, then fails to seek any relief from the order imposed, and finally submits a declaration under penalty of perjury that is rendered materially misleading by the omission of critical income data that was obviously available to him. Simply put, Lopez has learned nothing from his experiences before this Court, and continues in his stubborn course of conduct that is tantamount to baiting the Court to actually impose a meaningful sanction.

At the same time, Lopez remains free to dilute the utility of this involuntary petition by creating new and unknowable involuntary gap claims that will advance ahead of those of the Petitioning Creditors and all other pre-petition creditors. Meanwhile, Lopez has advanced no authorities to rebut the applicability of the principles and authority cited against him in the moving papers, and relies entirely on his protestations of poverty and inability to comply. The evidence overwhelmingly suggests that his protestations are false. There is no reason why the ultimate sanction should not be imposed at this time.

For this and all of the foregoing reasons, the Court should grant the motion and issue a terminating sanction striking Lopez's answer to the petition and directing the entry of an order for relief.

Dated: January 22, 2008

**KEEHN & ASSOCIATES**
A Professional Corporation

By:    //s// L. Scott Keehn
L. Scott Keehn, Attorneys for **Petitioning Creditors**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0566

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                                    )   Case No.  05-05926-PBINV
                                              )
12        FRANCIS J. LOPEZ,                    )   **DECLARATION OF L. SCOTT KEEHN**
                                              )
.13          Alleged Debtor.                  )   **[BIFURCATED PHASE II]**
                                              )
14                                            )
                                              )   Date:   January 28, 2008
15                                            )   Time:   10:30 a.m.
                                              )   Judge: The Honorable Peter W. Bowie
16                                            )   Ctrm:  4
                                              )
17                                            )
                                              )
18  _____ )

19        I, L. SCOTT KEEHN, declare as follows:

20        1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

21  before the United States District Court for the Southern District of California.  I am a shareholder

22  of the firm Keehn & Associates, APC, attorneys of record for Petitioning Creditors.  I have

23  personal knowledge of the factual matters stated herein.

24        2.      Attached hereto as Exhibit 1 is a true copy of excerpts from the transcript of the

25  Court's proceeding conducted in this case on November 19, 2007.

26        3.      On November 26, 2007, I sent Mr. Hayes an e-mail to which I attached a copy of

27  the lodged Sanctions Order, a Transmittal Memorandum, and wire instructions for the Firm's

28  general account.  The Transmittal Memorandum explained the Petitioning Creditors' expectation

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0 5 6 7

112907/LFK/5311.01

1 of full and timely compliance with the Sanctions Order. A true copy of the e-mail and its

2 attachments are attached hereto marked Exhibit 2 and incorporated herein by this reference.

3     4.     As of the date of this Declaration, no portion of the $8,130.50 sanctions award

4 (pursuant to this Court's Order dated 11/19/2007) has been paid, or tendered.

5     5.     At no time during the 30-day time period from when the Court made the Sanctions

6 Order (11/19/2007), through the payment deadline (12/18/2007), did Alleged Debtor Francis J.

7 Lopez ("Lopez") or his attorney ever contact my office to discuss any aspect of the sanctions

8 award other than the e-mail sent by Mr. Hayes on December 19, 2007 (the Sanctions Deadline),

9 asserting for the first time Lopez's inability to pay and requesting a consensual variance from the

10 relief requested. A copy of that e-mail is attached hereto as Exhibit 3. My office has never been

11 provided with any specific facts pertaining to Lopez's efforts to pay the sanctions award, and/or

12 the reasons for his purported inability to pay the full amount on or before December 18, 2007, as

13 ordered by the Court.

14     6.     On December 20, 2007, I promptly responded to Mr. Hayes' e-mail declining to

15 acquiesce to any variance from the performance required by the Sanctions Order. Attached hereto

16 marked Exhibit 4 and incorporated herein by this reference is a true, but redacted copy of that e-

17 mail. The redacted portion of the e-mail embodies a compromise proposal which is redacted to

18 preserve the privilege pursuant to Rule 408 of the Federal Rules of Evidence.

19     7.     On October 22, 2007, I personally conducted the videotaped Deposition of Francis

20 J. Lopez (the "Lopez Deposition") in San Diego, California. In the course of the Lopez

21 Deposition, Lopez authenticated an employment contract entitled "Cargotel Contractor

22 Agreement" as a true and correct copy of the employment agreement between him and Cargotel,

23 Inc.[1] Lopez testified that he entered into the employment contract with Cargotel in August of

24 2006.[2] A true and correct copy of: (a) the relevant portions of the Lopez Deposition Transcript,

25 and (b) the complete, executed copy of the Cargotel Contractor Agreement (Deposition Exhibit 2)

26

27    [1]     See, Lopez Deposition transcript, page 20, lines 6 - 21.

28    [2]     See, Lopez Deposition transcript, page 21, lines 5 - 18.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2200

0568

1  is attached hereto as Exhibit 5.

2      I declare under penalty of perjury under the laws of the United States that the foregoing is

3  true and correct, and that this Declaration was executed this 22nd day of January, 2008, at San

4  Diego, California.

5                              //s// L. Scott Keehn
                               **L. Scott Keehn**
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

0569

# EXHIBIT 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF CALIFORNIA

3  CHIEF JUDGE PETER W. BOWIE, PRESIDING

4

5                                    )

6                                    )

7  FRANCIS J. LOPEZ            ) CASE NO. 05-05926-PB

8                                    )

9                                    )

10 _____)

11

12

13  1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

14

15  2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER
        IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR

16

17       REPORTER'S TRANSCRIPT OF PROCEEDINGS

18            SAN DIEGO, CALIFORNIA

19          MONDAY, NOVEMBER 19, 2007

20

21

22

23  SAN DIEGO BANKRUPTCY REPORTERS
    BY: LYNETTE ALVES
24  P.O.BOX 496
    SOLANA BEACH, CA 92075
25  (858) 336-8558

EXHIBIT 1
PAGE 1

0571

1   CLAIMS, WE COULD HAVE BROUGHT THAT REQUEST IN GOOD -- IN

2   EQUALLY GOOD FAITH; WE DIDN'T.  BUT WE'RE ASKING FOR THE

3   MONEY.  WE THINK WE'RE ENTITLED TO THE MONEY.  WE THINK THE

4   COURT SHOULD AWARD IT; AWARD IT ALL; AND, MAKE IT PAYABLE

5   FORTHWITH.

6        *THE COURT:*  ALL RIGHT.

7             WELL, I'VE BEEN OVER IT MULTIPLE TIMES, AND I DO

8   THINK IT'S TIME.

9             I HAVE TO SAY THAT I'M -- YOU KNOW, AS TROUBLED

10  AS I'VE BEEN ALL ALONG IN THIS CASE AND MY DISTRESS HAS

11  GROWN OVER THE INTERVENING PERIOD OF TIME, IN REVIEWING

12  MR. LOPEZ'S OPPOSITION TO THIS PARTICULAR MOTION AND

13  PARTICULARLY HIS EXPLANATION OF THE BUSINESS LEADING UP TO

14  SEPTEMBER 11TH, REALLY, REALLY TROUBLES ME, FRANKLY.

15            AND IT TROUBLES ME IN ANOTHER PARTICULAR.

16  MR. HAYES HAS SURMISED THAT THESE MOTIONS ARE REALLY AN

17  EFFORT TO PIN MR. LOPEZ INTO A POSITION WHERE HE GETS SOME

18  KIND OF TERMINATING SANCTION, IF YOU WILL, AGAINST HIM THAT

19  ALLOWS A DETERMINATION, IN FACT, HE'S A DEBTOR; NOT AN

20  ALLEGED DEBTOR; WHETHER IT'S BY STRIKING HIS RESPONSE IN

21  OPPOSITION TO THE PETITION -- THE INVOLUNTARY PETITION --

22  OR IN SOME OTHER FORM.  AND CERTAINLY THAT'S A THEORY WHICH

23  WOULD NOT BE GROUNDLESS, ASSUMING THAT THAT'S MR. KEEHN'S

24  THEORY.  BUT THAT'S WHAT PUZZLES ME ALL THE MORE.

25            IF THERE'S ANY THOUGHT THAT THAT'S A POSSIBLE

EXHIBIT 1
PAGE 2

0572

1    THEORY, THEN WHY WOULDN'T YOU STEP UP AND SAY RIGHT OUT OF

2    THE SHOOT, "SEPTEMBER 11TH ISN'T GOING TO WORK FOR ME."

3    OR, "I NEED A DATE -- WE NEED TO JUGGLE A DATE.  I'VE GOT

4    THESE TWO OTHER BALLS UP IN THE AIR WITH MY GEORGIA AND

5    MICHIGAN TRAVEL AND STUFF."  AND, "I NEED TO NAIL THIS DOWN

6    AND HAVE SOME COMMUNICATION THAT'S GOING TO THOSE ENDS."

7         AND PARTICULARLY WITH WHAT HAD PRECEDED IT.  I

8    JUST DON'T FIND ANY KIND -- ANY SEMBLANCE OF GOOD FAITH ON

9    MR. LOPEZ'S PART IN RESPONDING TO THIS.  I'M NOT CLEAR IN

10   MY MIND WHETHER IT'S A MATTER OF HIS JUST NOT RECOGNIZING

11   THE SIGNIFICANCE OF THIS MATTER TO HIM; NOT SETTING IT AS

12   SOME KIND OF PRIORITY; HAVING SOME SENSE THAT IF HE'S NOT

13   SERVED WITH A SUBPOENA HE'S A FREE AGENT.  I HONESTLY DON'T

14   KNOW WHAT IT IS.

15        BUT AT THIS POINT IN TIME, I THINK IT'S

16   APPROPRIATE TO AWARD MONETARY SANCTIONS AGAINST MR. LOPEZ.

17   THE ORIGINAL AMOUNT SOUGHT BEFORE THIS MOTION WAS $4,242.

18   IN ADDITION, FUNDS ARE SOUGHT TO COMPENSATE FOR THE TIME

19   EXPENDED IN PREPARING FOR THE DEPOSITION THOUGHT TO OCCUR

20   ON SEPTEMBER 11TH IN THE AMOUNT OF $2,164.50; THERE WAS THE

21   $224 FOR COMMUNICATING WITH MR. HAYES ABOUT THE

22   NON-APPEARANCE OF MR. LOPEZ IN THERE; AND, THERE'S A SUM

23   FOR PREPARING THE RENEWED MOTION, WHICH, FRANKLY, I THINK

24   IS TOO HIGH.  SO I'M ALLOWING $1,500 FOR PREPARING THE

25   MOTION.

EXHIBIT 1
PAGE 3

1          SO THAT'S AN AWARD TOTALING THE COMPONENTS OF

2    $4,242; $2,164.50; $1,500 FOR PREPARING THE MOTION; AND,

3    $224 FOR THE COMMUNICATION.  AND WHEN YOU ADD THOSE UP

4    THAT'S THE TOTAL MONETARY SANCTION I'M AWARDING AT THIS

5    TIME.  AND I'M STILL RESERVING ON THE DIFFERENCE.

6          BUT AT THIS POINT IN TIME, THOSE SUMS WILL BE

7    REQUIRED TO BE PAID WITHIN THIRTY DAYS TO MR. KEEHN'S FIRM.

8    AND YOUR CLIENT SHOULD BE MADE VERY AWARE, MR. HAYES, THAT

9    IF HE FAILS TO PAY THAT TOTAL SUM WITHIN THIRTY DAYS OF

10   TODAY'S DATE -- AND THAT'S TODAY'S DATE, NOT THE DATE OF

11   ENTRY OF THE ORDER -- WITHIN THIRTY DAYS OF TODAY'S DATE, I

12   WILL CONSIDER A TERMINATING SANCTION MOTION TO STRIKE HIS

13   OPPOSITION TO THE PETITION.  AND WE'LL TAKE IT FROM THERE.

14        *MR. KEEHN:*  YOUR HONOR, COULD I ASK THE COURT TO GO

15   OVER THE AWARD ONE MORE TIME?

16        *THE COURT:*  SURE.  $4,242 FROM YOUR ORIGINAL

17   APPLICATION; $2,164.50 FOR THE 7.7 HOURS PREPARING FOR THE

18   9-11 DEPOSITION; $1,500 FOR PREPARING PRESENT MOTION; AND,

19   THE $224 FOR THE TIME SPENT ON SEPTEMBER 10TH COMMUNICATING

20   WITH MR. HAYES.  THOSE ARE THE COMPONENTS.

21        *MR. KEEHN:*  THANK YOU, YOUR HONOR.

22        *THE COURT:*  ALL RIGHT.

23          NEW STATUS CONFERENCE DATE?

24        *MR. KEEHN:*  WELL, YOUR HONOR, IT WOULD BE GOOD TO SET

25   IT FOR A DATE THAT'S MORE THAN THIRTY DAYS BEYOND TODAY'S

EXHIBIT 1
PAGE 4

0574

# EXHIBIT 2

0575

## L. Scott Keehn - Sanctions Order, Notice of Lodgement & TM

| | |
|---|---|
| **From:** | L. Scott Keehn |
| **To:** | jhayes@polarisnet.net |
| **Date:** | 11/26/2007 1:41 PM |
| **Subject:** | Sanctions Order, Notice of Lodgement & TM |
| **Attachments:** | Stanly112307TM&NOLSamcOrd.pdf |

Jon,

Please see the attachments below, and let me know if you have any questions, comments or objections to the form of the order.

Best regards,
Scott

# KEEHN
## ASSOCIATES

This is an e-mail from Keehn & Associates, APC, Attorneys-at-Law. THE CONTENTS OF THIS E-MAIL ARE PRIVILEGED AND CONFIDENTIAL AND ARE INTENDED ONLY FOR THE USE OF THE ORDINARY USER OF THE E-MAIL ADDRESS TO WHICH IT WAS ADDRESSED. No one
else may copy or forward all or any of it in any form. Our postal address is 402 West Broadway, Suite 1210, San Diego, California 92101.

If you receive this e-mail in error, we would be obliged if you would contact the sender by reply email or telephone at (619) 400-2200 and destroy all copies of the original message.

**EXHIBIT 2**
**PAGE 1**

0576

# KEEHN & ASSOCIATES

A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS AT LAW
www.keehnlaw.com

402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101

PHONE: (619) 400-2200
FACSIMILE: (619) 400-2201

## TRANSMITTAL MEMORANDUM
### \<Via First Class Mail\>

DATE:                    November 26, 2007

TO:                      M. Jonathan Hayes, Esq.
                         Law Office of M. Jonathan Hayes
                         21800 Oxnard Street, Suite 840
                         Woodland Hills, CA 91367

FILE NUMBER:             5311.01

ENCLOSURES:              1.  Notice of Lodgement of Orders: (1) Granting Petitioning
                         Creditors' Motion for an Enforcement Order, Etc. and Imposing
                         Specific Monetary Sanctions; (2) Setting Compliance Date for
                         Payment of Sanctions; (3) Reserving Jurisdiction for Further
                         Ruling on Balance of Sanctions Requested; And, (4) Continuing
                         Status Conference

                         2.  Wire Instructions to the Keehn & Associates, APC General
                         Operating Account

REQUESTED ACTION:        The court has now imposed upon Mr. Lopez the duty to pay
                         the full $8,130.50 awarded in sanctions. The enclosed wire
                         instructions are provided to facilitate his full and timely
                         discharge of that duty. The Petitioning Creditors would first
                         steal and then paraphrase Admiral Lord Nelson's famous
                         signal to his fleet as the Battle of Trafalgar was about to
                         commence: *The United States Bankruptcy Court expects
                         every man to do his duty!* The Petitioning Creditors hold the
                         same expectation.

Very truly yours,

KEEHN & ASSOCIATES, APC

By: _L. Scott Keehn_____
       L. Scott Keehn

Enclosures
112257/5311.01

**EXHIBIT 2
PAGE 2**

0577

## WIRE TRANSFER INSTRUCTIONS

**ACCT NAME:**
KEEHN & ASSOCIATES, APC

**ABA NUMBER:**
122232109

**ACCT NUMBER:**
2070227641

**BANK ADDRESS:**
CALIFORNIA BANK AND TRUST
SAN DIEGO B STREET OFFICE
525 B STREET
SAN DIEGO, CA 92101
(800) 400-6080

112258/5311.01

**EXHIBIT 2**
**PAGE 3**

0578

1  L. Scott Keehn (SBN 61691)
   **KEEHN & ASSOCIATES, APC**
2  402 W. Broadway, Suite 1210
   San Diego, California 92101
3  Telephone:    (619) 400-2200
   Facsimile:    (619) 400-2201
4
   Attorneys for **Petitioning Creditors**
5

6

7

8              UNITED STATES BANKRUPTCY COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10
   In Re:                              )   Bankruptcy Case No.  05-05926-PB7
11                                      )
                                        )   **NOTICE OF LODGEMENT OF**
12 FRANCIS J. LOPEZ,                    )   **ORDERS:**
                                        )
13             Debtor.                  )   **(1) GRANTING PETITIONING**
                                        )   **CREDITORS' MOTION FOR AN**
14                                      )   **ENFORCEMENT ORDER, ETC. AND**
                                        )   **IMPOSING SPECIFIC MONETARY**
15                                      )   **SANCTIONS;**
                                        )
16                                      )   **(2)  SETTING COMPLIANCE DATE**
                                        )   **FOR PAYMENT OF SANCTIONS;**
17                                      )
                                        )   **(3)  RESERVING JURISDICTION**
18                                      )   **FOR FURTHER RULING ON**
                                        )   **BALANCE OF SANCTIONS**
19                                      )   **REQUESTED; AND,**
                                        )
20                                      )    **(4) CONTINUING STATUS**
                                        )   **CONFERENCE**
21                                      )
                                        )   Date:   November 19, 2007
22                                      )   Time:   2:00 p.m.
                                        )   Dept:   4
23                                      )   Judge:  Hon. Peter W. Bowie
                                        )
24 ─────────────────────────

25         **NOTICE IS HEREBY GIVEN** that pursuant to Rule 7054-3(b) of the Local Rules of the

26 United States Bankruptcy Court for the Southern District of California ("LBR"), the original of the

27 "**ORDERS: (1) GRANTING PETITIONING CREDITORS' MOTION FOR AN**

28 **ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY**

EXHIBIT 2
PAGE 4                                                              112259/5311.01

0 5 7 9

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1   SANCTIONS; (2)  SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS;

2   (3)  RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF

3   SANCTIONS REQUESTED; AND,  (4) CONTINUING STATUS CONFERENCE," a copy

4   of which is attached hereto marked "Exhibit 1" and incorporated herein by this reference, was

5   lodged with the Bankruptcy Court for signature by the Honorable Peter W. Bowie on November

6   26, 2007.

7       Pursuant to LBR 7054-3(b)(1), you are advised that you have five (5) business days within

8   which to file and serve, pursuant to LBR 7054-3(b)(3), any objections to the form and/or the

9   substance of the pleadings, and/or serve upon the undersigned alternate pleadings if desired.

10

11  Dated:  November 26, 2007         KEEHN & ASSOCIATES,
                                      A Professional Corporation
12

13

14                                    By:  //s// L. Scott Keehn
                                           L. Scott Keehn
15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2300 · FACSIMILE (619) 400-2301

EXHIBIT 2
PAGE 5                          - 2 -                    112259/5311.01

0580

# EXHIBIT 1

EXHIBIT 2
PAGE 6

0581

CSD 1001C (11/15/04)
Name, Address, Telephone No. & I.D. No.
L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
KEEHN & ASSOCIATES, APC
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

**Attorneys for Petitioning Creditors**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

FRANCIS J. LOPEZ,

Debtor.

**LODGED**

BANKRUPTCY NO.  05-05926-PBINV

Date of Hearing:  November 19, 2007
Time of Hearing:  2:00  p.m.
Name of Judge:  Hon. Peter W. Bowie

## ORDERS:
## (1) GRANTING PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY SANCTIONS; (2) SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS; (3) RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF SANCTIONS REQUESTED; AND, (4) CONTINUING STATUS CONFERENCE

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through  2  with exhibits, if any, for a total of  2  pages, is granted.  Motion Docket Entry No.  114 .

// 

//

//

//

//

//
DATED:

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:
KEEHN & ASSOCIATES, APC

_____
(Firm name)

By: L. Scott Keehn
Attorney for [X] Movant ☐ Respondent

**EXHIBIT 2**
**PAGE 7** 1001C/112271

0582

CSD 1001C (11/15/04)(Page 2)
ORDERS: (1) GRANTING PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY SANCTIONS; (2) SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS; (3) RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF SANCTIONS REQUESTED; AND, (4) CONTINUING STATUS CONFERENCE

ALLEGED DEBTOR: FRANCIS J. LOPEZ                                     CASE NO:   05-05926-PBINV

Petitioning Creditors' "Motion for an Enforcement Order Imposing Sanctions etc." against Alleged Debtor Francis J. Lopez (the "Motion") came on regularly for hearing on November 19, 2007, at 2:00 p.m. in Department 4 of the above-entitled Court located at 325 West "F" Street, San Diego, California, the Honorable Peter W. Bowie presiding. Appearances were made by the firm of Keehn & Associates, APC, by L. Scott Keehn, on behalf of Petitioning Creditors; and the Law Office of M. Jonathan Hayes, by M. Jonathan Hayes on behalf of Alleged Debtor, Francis J. Lopez ("Lopez"), in opposition to the Motion.

The Court, having previously considered all of the pleadings, papers, requests, declarations and arguments submitted by the parties in support of their positions, and, good cause therefore appearing,

**IT IS HEREBY ORDERED** that:

(1)     The Motion is Granted, and the court hereby awards sanctions against alleged debtor Francis J. Lopez in the amount of $8,130.50 (the "Sanctions");

(2)     Lopez shall pay the Sanctions, or cause them to be paid, to the law firm of Keehn & Associates, APC on or before December 19, 2007; and, in the event that the Sanctions are not paid by that date, the court will entertain and consider imposing a terminating sanction as a further enforcement remedy;

(3)     The Court specifically reserves jurisdiction for, and deferred its ruling on, the balance of the monetary sanctions requested by the Motion, but which were not awarded at this time (i.e., the sum of $4,300); and,

(4)     The Status Conference on this matter will continued to January 7, 2008, at 9:30 a.m. in Department 4 of the above entitled court.

**EXHIBIT 2**
**PAGE 8**1001C/112271

0583

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  KEEHN & ASSOCIATES
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8                    UNITED STATES BANKRUPTCY COURT

9               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                          )   Case No.  05-05926-PBINV
                                     )
12        FRANCIS J. LOPEZ,          )   Involuntary Chapter 7
                                     )
13            Alleged Debtor.        )
                                     )   **PROOF OF SERVICE**
14                                   )
                                     )
15                                   )
                                     )
16                                   )   Judge:  The Honorable Peter W. Bowie
                                     )   Ctrm:  4
17                                   )
                                     )
18  ─────────────────────────────── )

19        I, the undersigned, declare that I am over the age of eighteen years and not a party to this

20  cause.  I am employed in, or am a resident of, the County of San Diego, California, and my

21  business address is:  402 West Broadway, Suite 1210, San Diego, California.

22        On the date shown below, I caused to be served the following document(s):

23        NOTICE OF LODGEMENT OF ORDERS: (1) GRANTING PETITIONING
          CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING
24        SPECIFIC MONETARY SANCTIONS; (2)  SETTING COMPLIANCE DATE FOR
          PAYMENT OF SANCTIONS; (3)  RESERVING JURISDICTION FOR FURTHER
25        RULING ON BALANCE OF SANCTIONS REQUESTED; AND, (4) CONTINUING
          STATUS CONFERENCE

26  [ ]   BY PERSONAL SERVICE:  I placed a true copy of the above document(s) in a sealed
27
28        envelope clearly labeled to identify the attorney for the party being served, and personally

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**EXHIBIT 2
PAGE 9**

1   caused said such envelope to be personally delivered on each addressee named hereafter:

2   [ ]  BY FACSIMILE AND MAIL: I declare that upon the prior agreement of the party being

3   served, I served the above named documents by facsimile transmission during usual office

4   hours from facsimile number 619-400-2201, to a facsimile machine maintained by the person

5   on whom it is served and that the transmission was reported as complete and without error.

6   Thereafter, I mailed (by first-class mail, postage prepaid) a true copy to each addressee

7   named hereafter:

8   [✔]  BY MAIL: I declare that I am readily familiar with the business practice for collection and

9   processing of correspondence for mailing with the United States Postal Service, that the

10   correspondence shall be deposited with the United States Postal Service this same day in the

11   ordinary course of business; and that a true copy was placed in a separate envelope, with

12   postage thereon fully prepaid for each addressee named hereafter:

13   M. Jonathan Hayes
Law Office of M. Jonathan Hayes
14   21800 Oxnard Street, Suite 840
Woodland Hills, CA  91367

15

16   [ ·]  BY E-MAIL OR ELECTRONIC TRANSMISSION: I caused a true copy of the above-

named document(s) to be sent to the person(s) at the e-mail addresses listed below.  I did not
17
receive, within a reasonable time after the transmission, any electronic message or other
18
indication that the transmission was unsuccessful:
19
I declare under penalty of perjury under the laws of the United States that the foregoing is
20
true and correct.
21
22      Executed on November 26, 2007.

23      _____/s/ Jeanine M. Bourcier_____
        **JEANINE M. BOURCIER**

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

EXHIBIT 2
PAGE 10

- 2 -

112270/5311.01

0585

# EXHIBIT 3

0586

## L. Scott Keehn - Francis Lopez Sanctions

**From:**     "M. Jonathan Hayes" <jhayes@polarisnet.net>
**To:**       "L. Scott Keehn" <scottk@keehnlaw.com>
**Date:**     12/19/2007 11:04 AM
**Subject:**  Francis Lopez Sanctions

Mr. Keehn,
    My client does not have the $8,100 in sanction to pay now. He can pay you $4,000 now and $1,000 per month until paid. Let me know if that will work.
    Thanks, Jon Hayes

. M. Jonathan Hayes
jhayes@polarisnet.net
21800 Oxnard St. Suite 840
Woodland Hills, CA 91367
(818) 710-3656
(818) 710-3659 fax
(818) 402-7537 cell
www.lawprofessorblogs.com
If you have received this message in error, please call (818) 710-3656
and notify me of that fact and destroy all copies of this message."
Thank you.

EXHIBIT 3
PAGE 1

0 5 8 7

# EXHIBIT 4

0588

## L. Scott Keehn - Re: Francis Lopez Sanctions

**From:**    L. Scott Keehn
**To:**      Hayes, M. Jonathan
**Date:**    12/20/2007 6:08 PM
**Subject:** Re: Francis Lopez Sanctions

Jon,

I have been in deposition all day yesterday, a hearing in Indio this morning and in Department 2 this afternoon, so I have only this moment seen your email. I apologize for the delay.

Turning to your inquiry itself, the answer is "no". I do not now believe, nor have I ever since the date that I served you with the order and our bank wire instructions believed that your client lacked the financial ability to timely comply with the Court's order. I am informed and believe that my client has or has access to the evidence necessary to establish the validity of my belief. I say that so that your client has fair warning that should he be inclined to submit a declaration under penalty of perjury to the effect that he did not comply with the court's sanctions order because he lacked the financial ability to do so, he does so at his peril.



Please let me know if you have any questions or comments. Meanwhile I hope that you and your family enjoy an extremely pleasant holiday season, and begin the new year fully refreshed.

Best regards,
Scott

# KEEHN
## ASSOCIATES

This is an e-mail from Keehn & Associates, APC, Attorneys-at-Law.  THE CONTENTS OF THIS E-MAIL ARE PRIVILEGED AND CONFIDENTIAL AND ARE INTENDED ONLY FOR THE USE OF THE ORDINARY USER OF THE E-MAIL ADDRESS TO WHICH IT WAS ADDRESSED.  No one
else may copy or forward all or any of it in any form.  Our postal address is 402 West Broadway, Suite 1210, San Diego, California  92101.

If you receive this e-mail in error, we would be obliged if you would contact the sender by reply email or telephone at (619) 400-2200 and destroy all copies of the original message.

>>> "M. Jonathan Hayes" <jhayes@polarisnet.net> 12/19/2007 11:05 AM >>>
Mr. Keehn,

EXHIBIT 4
PAGE 1

My client does not have the $8,100 in sanction to pay now.  He can pay you $4,000 now and $1,000 per month until paid.  Let me know if that will work.

Thanks,  Jon Hayes

M. Jonathan Hayes
jhayes@polarisnet.net
21800 Oxnard St. Suite 840
Woodland Hills, CA 91367
(818) 710-3656
(818) 710-3659 fax
(818) 402-7537 cell
www.lawprofessorblogs.com
If you have received this message in error, please call (818) 710-3656 and notify me of that fact and destroy all copies of this message."
Thank you.

# EXHIBIT 5

0591

1          UNITED STATES BANKRUPTCY COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3

4    _____

5    In Re:                    ) Case No. 05-0596-PBINV

6         FRANCIS J. LOPEZ,    )

7              Alleged Debtor.  )

8    _____)

9

10        <u>VIDEOTAPED DEPOSITION OF FRANCIS J. LOPEZ</u>

11                San Diego, California

12                October 22, 2007

13

14

15

16

17    REPORTED BY HEIDI J. JOHNSON, RPR, CSR NO. 12525

Peterson Reporting
Truth and Technology, Transcribed.

530 B Street
Suite 350
San Diego, CA
92101

800 649 6353 toll free
619 260 1069 tel
619 688 1733 fax

bnnb.ndepo.com

Reporting
Videography
Trial Presentation
Global Reach
Complex Cases
Accurate, Fast

EXHIBIT 5
PAGE 1

1              UNITED STATES BANKRUPTCY COURT

2            SOUTHERN DISTRICT OF CALIFORNIA

3

4    ——————————————————————————

5    In Re:               ) Case No. 05-0596-PBINV

6        FRANCIS J. LOPEZ,    )

7           Alleged Debtor.  )

8    ——————————————————————————)

9

10

11        VIDEOTAPED DEPOSITION OF FRANCIS J. LOPEZ,

12   taken on behalf of the Petitioning Creditors at

13   402 West Broadway, Suite 1210, San Diego, California, on

14   Monday, October 22, 2007, at 9:58 a.m., before

15   Heidi J. Johnson, RPR, CSR No. 12525, a Certified

16   Shorthand Reporter in the State of California.

17

18

19

20

21

22

23

24

25

EXHIBIT 5
PAGE 2

0593

1    APPEARANCES:

2    FOR THE PETITIONING CREDITORS:

3            KEEHN & ASSOCIATES, APC

4            BY:  L. SCOTT KEEHN, ESQ.

5            402 West Broadway, Suite 1210

6            San Diego, California 92101

7            (619)400-2200

8    ALSO PRESENT:

9            ABEL SIBREL, VIDEOGRAPHER

10           ALAN STANLY (APPEARING TELEPHONICALLY)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 5
PAGE 3

3
0594

1       A    CargoTel is a company that provides software    10:12

2   to the automotive logistics industry.    10:12

3            MR. KEEHN:  We'll mark that.    10:12

4            (Exhibit 2 was marked.)    10:12

5   BY MR. KEEHN:    10:12

6       Q    Okay.  I'm going to hand you a document    10:12

7   that's been marked as Exhibit 2 to the deposition.  Ask    10:12

8   you if you recognize that document.    10:12

9       A.   I do.    10:12

10      Q    Okay.  Can you describe for the record what    10:12

11  it is?    10:12

12      A    It's a contractor agreement that is between    10:12

13  myself and CargoTel, C-a-r-g-o-T-e-l.    10:12

14      Q    Okay.    10:12

15      A    And it's -- it was signed in 2006, August of    10:13

16  2006.    10:13

17      Q    You're looking at the last page?    10:13

18      A    Yes.    10:13

19      Q    Okay.  So that is your signature where it    10:13

20  says, "Contractor Signature and Date"?    10:13

21      A    Yes, it is.    10:13

22      Q    And it was signed on or about August 17,    10:13

23  2006?    10:13

24      A    Yes -- well, this says August 15.    10:13

25      Q    I'm looking on the last page.    10:13

Peterson Reporting, Video & Litigation Services

EXHIBIT 5
PAGE 4

20

0595

1          Will you join me in that?                    10:13

2     A    You're looking on the last page of the      10:13

3    exhibit?                                           10:13

4     Q    I see.                                       10:13

5     A    I'm looking at the last page of the contract. 10:13

6     Q    Yeah, right.                                 10:13

7     A    So go two pages in.                          10:13

8     Q    All right.  So that's your signature on the 10:13

9    contractor name and date there as well?           10:13

10    A    Yes.                                         10:13

11    Q    And August 15, 2006, is the time --         10:13

12   approximately the date it was executed?           10:13

13    A    Yes.                                         10:13

14    Q    And, again, on the last page -- that's the  10:13

15   exhibit -- that is your signature?                10:13

16    A    Yes, it is.                                  10:13

17    Q    Executed on or about August 17?             10:13

18    A    Correct.                                     10:13

19    Q    Do you have any explanation as to why there's 10:13

20   a two-day gap between the execution of the agreement 10:14

21   and the exhibit?                                   10:14

22    A    I do not.                                    10:14

23    Q    Okay.                                        10:14

24    A    Could be a number of things.                 10:14

25    Q    What do you think it could be?               10:14

EXHIBIT 5
PAGE 5

21

0596

1    A    It could be simply that the contractor    10:14

2    agreement was signed, and the exhibit was finalized two    10:14

3    days later.    10:14

4    Q    Okay.  Do you have any recollection as to    10:14

5    whether or not that's the case as to what happened?    10:14

6    A    Not any specific recollection, no.    10:14

7    Q    Do you have any general recollection?    10:14

8    A    No.    10:14

9    Q    All right.  Let's turn to the first page of    10:14

10    Exhibit 2.  There are some handwritten items in there.    10:14

11    The word "twice" appears to be inserted.  The word    10:14

12    "period" -- both in paragraph 3.    10:14

13    Do you see that?    10:14

14    A    I do.    10:14

15    Q    Is that your handwriting?    10:14

16    A    Yes.    10:14

17    Q    Are those your initials to the -- to the    10:14

18    right of that?    10:14

19    A    Yes, they are.    10:14

20    Q    Okay.  And moving in to the third page of    10:14

21    Exhibit 2, the second paragraph of Section 5 is crossed    10:14

22    out.    10:15

23    Do you see that?    10:15

24    A    I do.    10:15

25    Q    Okay.  Is one of -- are one of those initials    10:15

1    yours?                                                    10:15

2         A    Yes.                                            10:15

3         Q    Did you have any relationship with CargoTel    10:15

4    prior to August of 2006 by which you were entitled to    10:15

5    receive money?                                           10:15

6         A    No.                                             10:15

7         Q    So what we see as Exhibit No. 2 is your first  10:15

8    contractual relationship with CargoTel?                  10:15

9         A    That's correct.                                10:15

10         Q    Are you still a contractor for CargoTel?       10:15

11         A    Yes.                                           10:15

12         Q    Under the terms of the agreement that we have  10:15

13    as Exhibit 2?                                            10:15

14         A    Yes.                                           10:15

15         Q    How are you compensated by CargoTel?           10:15

16         A    Can I ask you a question, Mr. Keehn?           10:15

17         Q    No.  I get to ask the questions, actually.     10:15

18         A    Well, I'm just wondering what the relevance    10:15

19    is for this in the context of the deposition of a       10:15

20    bankruptcy case, particularly as it applies to paying   10:15

21    debts as they become due.                               10:16

22         Q    Are you objecting to the question?             10:16

23         A    I'm asking you.                                10:16

24         Q    No.  I don't answer the questions.  I ask      10:16

25    them.                                                    10:16

**EXHIBIT 5**
**PAGE 7**

                                                              23

0598

1    A    Well --                                                      10:16

2    Q    If you -- if you want to object to the                      10:16

3    question, your objection will be noted, and then you're          10:16

4    entitled to answer the question.                                 10:16

5    A    Okay.  That is my objection.                                10:16

6    Q    Okay.  You may answer, sir.                                 10:16

7    A    Okay.  Can you repeat the question?                         10:16

8    Q    No, I can't.  I never do it twice the same --               10:16

9    the same way twice.                                              10:16

10   A    Okay.                                                       10:16

11   Q    So I'll ask the reporter to read it back.                   10:16

12        (The following question was read back:                      10:16

13        "Q   How are you compensated by CargoTel?")                 10:16

14        THE WITNESS:  My compensation consists of a                 10:16

15   daily rate, which is specified in the contractor                 10:16

16   agreement, plus additional bonuses that may come up as           10:16

17   a result of this agreement.                                      10:16

18   BY MR. KEEHN:                                                    10:16

19   Q    Okay.  But if I read the four corners of the                10:16

20   agreement, I would be able to see in there all of the            10:17

21   forms of compensation that you have from CargoTel; is            10:17

22   that correct, sir?                                               10:17

23   A    That is correct.                                            10:17

24   Q    Okay.  Was there any signing bonus associated               10:17

25   with this contract?                                              10:17

EXHIBIT 5                                                              24
PAGE 8

0599

1          A     There was not.                                    10:17

2          Q     Did you ever receive any form of payment          10:17

3    whatsoever from CargoTel at any time prior to August of       10:17

4    2006?                                                         10:17

5          A     I do not believe so.                              10:17

6          Q     Okay.  Do you know what kind of an entity         10:17

7    CargoTel is?                                                  10:17

8          A     Entity in terms of what?                          10:17

9          Q     When I say "entity," I mean a form of             10:17

10   business, other than a proprietorship.  It could be a        10:17

11   corporation, a partnership, a limited partnership, a         10:17

12   limited liability company, a business trust.                 10:17

13         A     As far as I know, it is a corporation.            10:17

14         Q     Okay.  Do you have any understanding as to        10:17

15   what its state of incorporation is?                          10:18

16         A     I am not positive, but I believe it's either     10:18

17   in Maryland or Delaware.                                     10:18

18         Q     Do you receive any royalties from CargoTel       10:18

19   for your source code?                                        10:18

20         A     Absolutely not.                                  10:18

21         Q     All right.  Now, other than the Noveon           10:18

22   royalties that you've already testified to, have you         10:18

23   ever received from any entity royalties for your source      10:18

24   code?                                                        10:18

25         A     No.                                              10:18

## CARGOTEL CONTRACTOR AGREEMENT

**Definitions:**

1. "Services" means the tasks to be performed by Contractor, as more fully described in **Exhibit A.**

**Scope of Services:**

1. **Retention.** CargoTel hereby retains Contractor to perform the Services, and Contractor hereby accepts such retention. Contractor shall report to the CargoTel "President" identified in Exhibit A.
2. **Services.** Contractor shall perform the Services to the best of Contractor's ability and in a professional manner. Contractor acknowledges that time is of the essence in performing the Services.
3. **Interim Review.** During the term of this Agreement, CargoTel may review the progress of the Services, and take such actions as it deems reasonable based on such review.
4. **Changes.** CargoTel may, from time to time, request changes in the Services. If the request substantially alters the nature of the Services, Contractor shall, within seven (7) days thereafter, submit to CargoTel a proposal of changes in cost and schedule. Such changes may be authorized by an Amendment to Exhibit A assigned by the President and Contractor, and Contractor shall promptly effect such changes.
5. **CargoTel Facilities.** CargoTel may, at its discretion, provide Contractor with reasonable use of its facilities as required for Contractor to perform the Services; in which event Contractor agrees to abide by CargoTel's rules and policies, including but not limited to those relating to security and confidential information. Contractor shall sign in and out using the visitor's log book when on site at CargoTel. If Contractor is provided access to any CargoTel computer network, Contractor's use of thereof shall be solely in direct furtherance of Contractor's performance of this Agreement. Contractor shall not remove any property of CargoTel without CargoTel's prior written consent.

**PAYMENT:**

1. **Compensation.** As full compensation and consideration for the Services and other obligations of Contractor set forth in this Agreement, CargoTel will pay Contractor the Fees in accordance with the schedule on Exhibit A when properly invoiced for accepted Services.
2. **Expenses.** Any expenses incurred by Contractor in connection with providing the Services will be the sole responsibility of Contractor unless otherwise approved in writing by an authorized CargoTel representative prior to Contractor incurring such expense. If expense reimbursement is agreed to by CargoTel, expenses shall be billed at Contractor's actual out-of-pocket cost, with no surcharge, and Contractor shall endeavor to avoid unnecessary expenditures.  ~~twice~~
3. **Invoice Requirements.** Contractor shall invoice CargoTel each month for the Services performed, and any approved expenses incurred, in the immediately preceding month~~-(the~~ "Invoice Period"). Contractor shall include with each invoice:  *period* 

    ▫ □□□□□□□ Purchase order (P.O.) number;

    ▫ □□□□□□□□ A statement of the work performed;

    ▫ □□□□□□□ Receipts or other documentation supporting reimbursable expenses approved by CargoTel;

    ▫ □□□□□□□ Taxpayer identification number;

    ▫ □□□□□□□ Such additional information as is reasonably requested by CargoTel, Inc.

4. **Taxes.** Contractor shall be responsible for payment of all taxes and other assessments by any government upon the transactions contemplated by this Agreement, other than taxes CargoTel's income.

EXHIBIT
2  of
Lopez
10/22/07  HJ

**EXHIBIT 5
PAGE 10**

**RELATIONSHIP OF THE PARTIES:**

1. **Personal Agreement.** Contractor agrees to provide the Services personally to CargoTel, and CargoTel is relying on Contractor's expertise in performing the Services. Contractor may not assign, delegate, or subcontract any of the Services without the prior written approval of an authorized CargoTel representative.

2. **Independent Contractor.** Contractor is an independent contractor in the performance of the Services and is not an employee, agent, joint venture, partner, or franchisee of CargoTel. Contractor shall not be entitled to participate in any plans, arrangements, or distributions pertaining to any employee benefits made available to CargoTel's employees. CargoTel shall take no deduction from any amounts paid to Contractor whether for taxes or otherwise. Except to the extent otherwise required by law, Contractor shall report as income all amount received hereunder, file all forms, and pay all taxes that may be required by virtue of Contractor's status as an independent contractor. Nothing in this Agreement or its performance shall imply a joint venture or principal and agent relationship between the parties. Contractor shall indemnify and hold harmless CargoTel from any obligation to pay any taxes or fees, including but not limited to sales or withholding taxes, social security, workers' compensation, unemployment or disability insurance, or similar charges, including any interest or penalties thereon, in connection with any payments made Contractor hereunder.

3. **No Continuation of Service.** Nothing in this Agreement shall confer upon Contractor any right to continue to render services to CargoTel or to become employed by CargoTel, and CargoTel reserves all rights to terminate Contractor's services in accordance with the provisions of this Agreement.

**CONFIDENTIALITY; COMPETITION; OWNERSHIP:**

1. **Confidentiality.** Contractor agrees to keep confidential and not to disclose or make any unauthorized use of any trade secrets, confidential information, knowledge, data, or other information of CargoTel relating to products, processes, software, know-how, designs, formulas, test data, customer lists, business plans, marketing plans and strategies, and pricing strategies or other subject matter pertaining to any business of CargoTel or any of CargoTel's clients, customers, contractors, licensees or affiliates or information received in confidence from other third parties, which Contractor may have produced, obtained, learned or otherwise acquired during the course of rendering services to CargoTel (including, but not limited to, the Services) (collectively, "Confidential Information"). Contractor's duty to maintain such Confidential Information in confidence hereunder shall survive the termination of this Agreement for a period of three (3) years, except to the extent that any such Confidential Information becomes generally known in the industry through no direct or indirect fault of Contractor.

2. **Other Obligations.** Contractor acknowledges that CargoTel from time to time may have agreements with third parties which impose obligations or restrictions on CargoTel regarding inventions or creative works made during the course of work thereunder or regarding the confidential nature of such work. Contractor agrees to be bound by all such obligations and restrictions of which Contractor is informed, and to take all action necessary to discharge the obligations of CargoTel thereunder upon notice of same from CargoTel.

3. **Competition.** Contractor acknowledges that it will be exposed to certain of CargoTel's sensitive and confidential business information. Contractor may not use Confidential Information except for the benefit of CargoTel in accordance with this Agreement. Therefore, during the term of this Agreement, Contractor shall not perform services for any person which CargoTel reasonably deems to be a competitor of CargoTel, unless such services are wholly unrelated to the Services or Contractor first obtains CargoTel's written consent.

4. **Ownership.** Contractor acknowledges that any information Contractor may receive from CargoTel or is generated by Contractor as a result of the Services is the sole property of CargoTel, except to the extent information was already known, independently developed, or rightfully received from a third party by Contractor, or was generally know to the public. Contractor shall assign, and hereby does assign, such ownership and any rights of reproduction to CargoTel. Contractor further agrees to execute such documents of

**EXHIBIT 5**
**PAGE 11**

2-2 9602

assignment or take such other action as CargoTel may reasonably request to evidence, perfect, or effect the transfer, recordation, or protection of such deliverables.

5. **Non-Compete.** Contractor agrees that it will be a significant member of CargoTel and Contractor is engaged business in each of the fifty states of the United States. Contractor therefore agrees that during contract period with CargoTel it will not engage in any other employment or related activity that is in competition with CargoTel unless it receives CargoTel's prior written approval from the President to hold such outside employment or engage in such business or activity. Such written approval will not be unreasonably withheld if such outside employment, business or activity would not in any way be competitive with the business or proposed business of CargoTel or otherwise conflict with or adversely affect in any way your performance of your contract obligations to CargoTel.

Commencing on Employment Date and continuing until the twenty-four (24) months after you depart from CargoTel, you will not, as an employee, agent, consultant, adviser, independent contractor, general partner, officer, director, stockholder, investor, lender or corporation, partnership or other entity, or in any other capacity directly or indirectly: engage in any business which is competitive and substantially similar to the CargoTel's business or permit your name to be used in connection with a business which is competitive and substantially similar to the CargoTel's business; or induce or attempt to induce any person who at the time of such inducement is an employee of CargoTel to perform work or services for any other person or entity other than CargoTel. Notwithstanding the foregoing, you may own, directly or indirectly, solely up to one percent (1%) of any class of "publicly traded securities" of any person or entity which owns a business that is competitive or substantially similar to that of CargoTel.

If any restriction set forth in this non-competition section is found by a Court to be unreasonable, then you agree, and hereby submit, to the reduction and limitation of such prohibition to such area or period as shall be deemed reasonable. You acknowledge that the services that you will provide to CargoTel under this agreement are unique and that irreparable harm will be suffered by CargoTel in the event of the breach by you of any of your obligations under this agreement.

## WARRANTIES:

1. **Warranties by Contractor.** Contractor represents and warrants to CargoTel as follows: (a) Contractor has the expertise, experience, and knowledge to perform the Services; (b) Contractor is under no obligation which prevents Contractor from, and Contractor is not otherwise prohibited from, performing the Services; (c) Contractor has the right to disclose or use all ideas, processes, designs, data and other information which Contractor has gained from third parties, and which Contractor discloses or uses in the performance of this Agreement; (d) Contractor shall promptly disclose to CargoTel all actual or potential financial relationships or conflicts of interest Contractor may have with respect to, or resulting from, any recommendations or advice given by Contractor to CargoTel; and (e) the Services will comply with the material requirements of this Agreement. Contractor acknowledges that the warranties contained in this Agreement are in addition to any other applicable warranties, express or implied, arising under statute, law, or otherwise.

## INSURANCE, PERMITS, COMPLIANCE WITH LAWS:

1. **Insurance.** Contractor shall carry adequate policies of insurance to protect CargoTel from liability for Contractor's activities under this Agreement, including but not limited to workers' compensation insurance, state disability insurance, general liability insurance and such other insurance as CargoTel may reasonably request. Contractor will furnish to CargoTel a certificate evidencing such coverage upon CargoTel's request.

2. **Permits.** Contractor shall acquire and maintain in good standing, and as its sole expense, all permits and licenses required of it by law in the performance of Service under this Agreement.

3. **Compliance with Laws.** Contractor will perform the Services in accordance with all applicable laws.

EXHIBIT 5
PAGE 12

2,603

**TERMS AND TERMINATION:**

1. **Term.** This Agreement shall commence on the Effective Date and shall continue through the "Expiration Date" set forth on *Exhibit A*, unless earlier terminated in accordance with the provisions of this Article 8 or upon the mutual agreement of the parties.

2. **Termination Without Cause.** CargoTel may terminate this Agreement for convenience by delivering written notice to Contractor at least fourteen (14) days before the desired termination date; at CargoTel's request, Contractor shall continue to perform the Services during the fourteen (14) day period. Contractor may terminate this Agreement for convenience by delivering written notice to CargoTel at least twenty-eight (28) days before the desired termination date.

3. **Termination for Breach.** If either party defaults in the performance of any material provision of this Agreement, the nondefaulting party may terminate this Agreement upon notice thereof. Contractor's failure to perform the Services in a manner reasonably satisfactory to CargoTel and in accordance with the provisions of *Scope of Services, item 2, Services*, shall constitute a default for purposes of this *Term and Termination, item 8.3, Termination for Breach*.

4. **Phase-Out.** In the event either party provides notice of termination, Contractor agrees to cooperate with CargoTel to continue the work and effect a smooth transition of the Services and Deliverables to CargoTel or its designee in a professional manner reasonably acceptable to CargoTel.

5. **Payment Following Termination.** In the event of early termination of this Agreement for any reason, Contractor shall be entitled to receive payment only for work actually performed in accordance with the Services identified on Exhibit A and any permitted expenses. CargoTel may withhold a reasonable amount to compensate it for any estimated damages in the event CargoTel terminates this Agreement as a consequences of Contractor's breach of this Agreement or if Contractor fails to comply with Contractor's obligations under *Confidentiality; Competition; Ownership Section, item 1 Confidentiality and item 3 Competion*, and *Terms and Termination Section, item 6, Return of CargoTel Property*.

6. **Return of CargoTel Property.** Upon termination of this Agreement for any reason, Contractor shall deliver to CargoTel, within seven (7) days after the date of expiration or earlier termination: (1) any property of CargoTel in the possession or control of Contractor; (2) any data of any nature pertaining to or incorporating any Confidential Information of CargoTel, including any copies thereof; (3) the originals and all copies Deliverables, whether finished, prepared or produced by Contractor for CargoTel pursuant to this Agreement; and (4) such documentation as may be necessary to evidence the results of the Services and the progress of Contractor in the performance of the Services.

7. **Termination Obligations.** The provisions of Article 4, 5, 6, and 7 shall survive any termination or expiration of this Agreement.

**INDEMNIFICATION:**

1. **General.** Contractor shall defend, indemnify, and hold harmless CargoTel, its officers, directors, partners, employees, agents, affiliates, and attorneys from and against any loss or damage, or claims or actions brought by third parties, and from any and all direct and consequential resulting damages, losses, expenses, including reasonable attorney's fees and costs of litigation, arising out of or resulting from the performance of the Services to the extent caused by the negligence or willful misconduct of Contractor or any of Contractor's employees, agents, or subcontractors.

**MISCELLANEOUS:**

1. **Notices.** Any notice, demand, request or other communications hereunder shall be in writing and shall be deemed sufficient when delivered as follows: if to CargoTel, at CargoTel's principal place of business set forth above, Attention: President (as identified on Exhibit A), cc: Chief Counsel; and if to Contractor, at Contractor's address as set forth on *Exhibit A*, unless another address shall have been designated in the manner provided for in this *Miscellaneous Section, item 1, Notices*.

2. **Successors and Assigns.** The rights and benefits of this Agreement shall inure to the

EXHIBIT 5
PAGE 13

2-0604