1    L. Scott Keehn, SBN 61691
     Leslie F. Keehn, SBN 199153
2    **KEEHN & ASSOCIATES**
     A Professional Corporation
3    402 West Broadway, Suite 1210
     San Diego, California 92101
4    Telephone: (619) 400-2200

5    Attorneys for **Appellee**
     **Alan Stanly**

6

7

8           **UNITED STATES DISTRICT COURT**

9      **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11    In Re:            )    Case No. 08cv0713 JAH (WMc)
                        )
12    FRANCIS J. LOPEZ,      )    Bankruptcy No. 05-05926-PB7
                        )
13        Debtor.        )
                        )    **APPELLEE'S BRIEF**
14    _____ )

15                         )
16    FRANCIS J. LOPEZ,      )    Hearing:     September 15, 2008
                        )    Time:       2:30 p.m.
           Appellant,     )    Department: Courtroom 11
17                         )    Judge:      Hon. John A. Houston
     v.                     )
18                         )
                        )
19    ALAN STANLY,        )
                        )
20            Appellee.     )
21    _____ )

22        Appellee Alan Stanly ("Stanly"), respectfully submits his Appellee's Brief in opposition

23    and response to the Appellant's Opening Brief submitted by Appellant Francis J. Lopez ("Lopez").

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BASIS OF APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      The Bankruptcy Court's Factual Findings Are Reviewed Under the *Clearly
                Erroneous* Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      The Bankruptcy Court's Decision to Order the Terminating Sanction is
                Reviewed Under the Deferential *Abuse of Discretion* Standard . . . . . . . . . . . 4

V.      STATEMENT OF THE CASE/FACTUAL & PROCEDURAL BACKGROUND . . . 4

        A.      Filing of the Involuntary Petition and Lopez's First Motion to Dismiss . . . . . 4

        B.      Lopez Has the Case Bifurcated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.      Lopez's Second Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        D.      The Prosecution and Conclusion of Phase I . . . . . . . . . . . . . . . . . . . . . . . . . 6

        E.      Lopez Hindered, Delayed and Ultimately Refused to Provide Adequate
                Responses to Written Discovery Despite Multiple Orders and Admonishments
                from the Bankruptcy Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        F.      Lopez Continued His Delay Tactics in Connection with His Deposition . . . . 10

        G.      Despite The Bankruptcy Court's Explicit Warnings that Terminating
                Sanctions May be Issued if Lopez Failed to Pay the Monetary Sanctions,
                Lopez Failed to Pay Any Portion of the Monetary Sanctions . . . . . . . . . . . . 12

VI.     DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.      FRCP 37 Empowered the Bankruptcy Court to Strike Lopez's Answer . . . . 14

        B.      Given Lopez's Egregious Misconduct and Prior Violations, the Terminating
                Sanction Was Within the Acceptable Range of Available Sanctions Pursuant
                to FRCP 37(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                (1)     The Public's Interest in Expeditious Resolution of Litigation; and
                (2)     The Court's Need to Manage its Dockets . . . . . . . . . . . . . . . . . . . . . 16

                (3)     The Risk of Prejudice to the Party Seeking Sanctions . . . . . . . . . . . 18

                (4)     The Public Policy Favoring Disposition of Cases on Their Merits . . . 20

                (5)     The Availability of less Drastic Sanctions . . . . . . . . . . . . . . . . . . . . . 20

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3   *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337 (9th Cir. 1995) . . . . . . . . . . . 22

4   *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062
5   (2nd Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

6   *De Falco v. Oak Lawn Public Library*, 25 Fed.Appx. 455 (7th Cir. 2001) . . . . . . . . . . . . . . . . . 14

7   *Estrada v. Speno & Cohen*, 49 Fed. R. Serv.3d 50 (9th Cir. 2001) . . . . . . . . . . . . . . . . 1, 4, 15, 18

8   *Exxon Co. v. Sofec Inc.*, 54 F.3d 570 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9   *G-K Properties v. Redevelopment Agency of San Jose*, 577 F.2d 645 (9th Cir. 1978) . . . . . . 17, 19

10  *Halaco Engineering Co. v. Costle*, 843 F.2d 376 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 3, 4

11  *Hayes v. Woodford*, 301 F.3d 1054 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20

12  *Malone v. United States Postal Service*, 833 F.2d 128 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 4

13  *Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

14  *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S. Ct. 2778,
    49 L. Ed. 2d 747 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15  *Rice, In re*, 14 B.R. 843 (9th Cir.BAP 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16  *Security Farms v. International Broth. of Teamsters, Chauffers, Warehousemen & Helpers*,
17  124 F.3d 999 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18  *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051 (9th Cir. 1998) . . . . . . . . . . . . . . . . 15, 16, 20

    *Visioneering Const., Matter of*, 661 F.2d 119 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
19
    *Williams, In re*, 215 B.R. 289 (Dist. Ct. D.R.I. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
20
21  *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . 14

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE: (619) 400-2200 · FACSIMILE (619) 400-2201

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

# FEDERAL STATUTES

11 U.S.C. § 362(a) ......................................................... 19

11 U.S.C. § 502(f) ......................................................... 19

11 U.S.C. § 507(a) ......................................................... 19

28 U.S.C. §158(a)(1) ......................................................... 2

FRCP 1 ......................................................... 16

FRCP 37(b) ......................................................... 2, 3, 14, 15

FRBP 1001 ......................................................... 16

FRBP 9014(c) ......................................................... 2, 14

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**08cv0713**
**APPELLEE'S BRIEF**

114634/53115.02

# I. INTRODUCTION

"*Unfortunately, it is well-known in litigation circles that an oft-employed strategy is to force delay, hoping to wear out the opponent financially or emotionally.*"[1] That was Lopez's strategy from the outset, and he succeeded in delaying the inevitable Order for Relief for over *two and a half years* — from June 30, 2005, when the Involuntary Petition was filed, until January 28, 2008, when the Order for Relief was entered. He accomplished that delay by first bifurcating the case, and after his defense in Phase I failed, refusing to cooperate with discovery demands that followed. He would feign cooperation with false promises, and then, at the last minute, proffer some excuse as to why he could not comply. His shenanigans forced Petitioning Creditors to have to continually seek the Bankruptcy Court's assistance.

The Bankruptcy Court granted all of Petitioning Creditors' Motions to Compel discovery, and imposed on Lopez a variety of sanctions and admonishments in an effort to impress upon him the importance of his duties as a litigant. After giving Lopez ample opportunities to comply, the Court first imposed evidentiary sanctions, with the warning that monetary sanctions would be imposed next if his misconduct continued. Undeterred, Lopez's hindering and delay tactics continued. The Bankruptcy Court then imposed monetary sanctions in the amount of $8,130.50 (the "Monetary Sanctions"). Still undeterred, he continued to defy the Bankruptcy Court's authority by failing to pay any portion of the Monetary Sanctions despite unrefuted evidence of his ability to easily pay the entire sum.

One day short of the first anniversary of the day the Phase II discovery enforcement process began, it was crystal clear to everyone, including the Bankruptcy Court, that Lopez had no intention of complying with either his duties as a litigant, or the Bankruptcy Court's orders. Based on that, the Court imposed terminating sanctions by striking Lopez's answer/opposition to the Involuntary Petition, and entering the Order for Relief (the "Terminating Sanction"), which the Court recognized as the only effective sanction to remedy his misconduct at that point. No one was surprised since the Court had specifically warned Lopez's counsel that terminating sanctions

---

[1]       *Estrada v. Speno & Cohen*, 49 Fed. R. Serv.3d 50 (9th Cir. 2001).

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1  would be imposed if Lopez's behavior did not change. Indeed, the Court spoke for Petitioning

2  Creditors when he admonished Lopez's counsel that: "*[Lopez has] exhausted my good graces, Mr.*

3  *Hayes.*"[2]

4       And even now, Lopez remains undeterred, and is continuing his efforts to halt his

5  bankruptcy proceeding by filing an appeal that is devoid of merit. The extensive record in this

6  case clearly supports the Bankruptcy Court's imposition of graduating discovery sanctions, and

7  Lopez has failed to establish the requisite clear error to support a reversal of the Terminating

8  Sanction. The Bankruptcy Court's Order, resulting from his continuing course of unrepentant

9  misconduct, should be affirmed.

## II. BASIS OF APPELLATE JURISDICTION

11      This is an appeal from a final order of the Bankruptcy Court. This Court has appellate

12  jurisdiction pursuant to 28 U.S.C. §158(a)(1).

## III. ISSUES PRESENTED

14      The Bankruptcy Court's Order imposing the Terminating Sanction was the last in a series

15  of graduated sanctions, and based on Lopez's failure to comply with an earlier discovery order

16  (requiring payment of the Monetary Sanctions). The Order was made pursuant to Rule 37(b) of

17  the Federal Rules of Civil Procedure ("FRCP"), made applicable to the bankruptcy proceedings by

18  Rule 9014(c) of the Federal Rules of Bankruptcy Procedure. Specifically, FRCP 37(b)(2)(A) sets

19  forth seven options for a Court to consider in deciding how best to respond to a litigant who has

20  refused to obey an earlier discovery order.

21      Here, after first imposing evidentiary sanctions, then the Monetary Sanctions (which were

22  never paid), and threatening to impose terminating sanctions, the Bankruptcy Court determined

23  that the Terminating Sanction was appropriate in light of Lopez's flagrant dilatory conduct. The

24  Terminating Sanction is specifically authorized by FRCP 37(b)(2)(A)(iii) which provides that the

25  court may issue an order "*striking pleadings in whole or in part.*"[3] Such an order is proper so long

26  _____

27      [2]    Appellee's Supplemental Appendix (hereafter, "ASA") Tab 119, Reporters
Transcript (11/19/07), page 0388.

28      [3]    FRCP 37(b)(2)(A)(iii).

KEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

08cv0713
**APPELLEE'S BRIEF**

-2-

114634/53115.02

as it is "*just*."[4]  Thus, the issue in this appeal may be succinctly stated as: ***In light of the totality of the circumstances surrounding Lopez's discovery misconduct and the prior discovery orders, did the Bankruptcy Court improperly exercise its discretion by issuing the Terminating Sanction?***

## IV.  STANDARDS OF REVIEW

**A.    The Bankruptcy Court's Factual Findings Are Reviewed Under the *Clearly Erroneous* Standard.**

The Bankruptcy Court's findings of fact in support of its Order imposing the Terminating Sanction are reviewed under the clearly erroneous standard.[5]  An appellate court's "*review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed.*"[6]  The lower court's findings will not be disturbed unless they are patently implausible.[7]  The Ninth Circuit has adopted the Seventh Circuit's graphic description of the heavy burden this standard places on an appellant:

> To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.[8]

/ / /

/ / /

/ / /

/ / /

---

[4]    FRCP 37(b)(2)(A) (if a party has failed to obey a prior discovery order, then "the court where the action is pending may issue further just orders").

[5]    *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 379 (9th Cir. 1988) ("We review a district court's findings of fact in connection with a motion for sanctions under the clearly erroneous standard").

[6]    *Security Farms v. International Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1014 (9th Cir. 1997), quoting, *Exxon Co. v. Sofec Inc.*, 54 F.3d 570, 576 (9th Cir. 1995), aff'd, 517 U.S. 830, 116 S.Ct. 1813 (1996).

[7]    *Hayes v. Woodford*, 301 F.3d 1054, 1067 (9th Cir. 2002).

[8]    *Id.* (internal quotations and citations omitted).

KEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1  **B.     The Bankruptcy Court's Decision to Order the Terminating Sanction is Reviewed**

2  **Under the Deferential *Abuse of Discretion* Standard.**

3         The Bankruptcy Court's decision to issue the Terminating Sanction is reviewed under the

4  abuse of discretion standard.[9]  Under this deferential standard, "*[t]he question is not whether this*

5  *court would have, as an original matter, imposed the sanctions chosen by the trial court, but*

6  *whether the trial court exceeded the limits of its discretion.*"[10]  The Bankruptcy Court's ruling

7  should not be disturbed unless this Court "*has a definite and firm conviction that the lower court*

8  *committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant*

9  *factors.*"[11]  In other words, the Bankruptcy Court's choice of an appropriate sanction should be

10 affirmed unless this Court has "*a definite and firm conviction that it was clearly outside the*

11 *acceptable range of sanctions.*"[12]

12       **V.  STATEMENT OF THE CASE/FACTUAL & PROCEDURAL BACKGROUND**

13 **A.     Filing of the Involuntary Petition and Lopez's First Motion to Dismiss.**

14 **06/30/05:**     Alan Stanly acted as the Petitioning Creditor for the involuntary bankruptcy petition

15 that commenced this case.  [Appellant's Excerpts (hereafter "AR") Document 1.]

16 **07/20/05:**     Lopez responded to the Petition with a Motion to Dismiss, alleging bad faith, an

17 improper venue, and that the Petition fails to state a claim because Lopez had more than 12

18 Creditors.  [ASA Tab 6 at ¶ 4, ln. 5-13.]

19 **08/05/05:**     Opposition to the Motion to Dismiss was filed [AR Docket Nos. 8, 9 and 11; p.

20 0028-0029.]

21 **08/22/05:**     The Bankruptcy Court conducted a hearing on Lopez's Motion to Dismiss.  At the

22 outset of that hearing, Lopez's Counsel conceded that the Court cannot rely on Lopez's conclusory

23 _____

24       [9]     *Halaco Engineering Co. v. Costle*, supra, 843 F.2d at 379 ("We review sanctions
    imposed by a district court for abuse of discretion and will not reverse absent a definite and firm
25 conviction that the district court made a clear error of judgment").

26       [10]     *Halaco Engineering Co. v. Costle*, supra, 843 F.2d at 379.

27       [11]     *Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir. 1996).

28       [12]     *Estrada v. Speno & Cohen*, 49 Fed. R. Serv.3d 50 (9th Cir. 2001), quoting, *Malone
    v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987).

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

1  assertion that there are more than 12 Creditors as a basis for dismissal. [ASA Tab 23, Reporters

2  Transcript (8/22/05), p. 0027] The Court denied the Motion, and required an Answer to be filed by

3  September 7, 2005. [ASA Tab 16, Minute Order; ASA Tab 20, Order denying Motion without

4  prejudice).]

5  **09/07/05:**    Lopez answered the Involuntary Petition and asserted several defenses, including

6  that the Court lacked of subject matter jurisdiction because he has more than 12 Creditors, and the

7  Petition was only filed by one of them. [ASA Tab 22, Answer.]

8  **B.    Lopez Has the Case Bifurcated.**

9  **11/22/05:**    Lopez filed a motion for an order bifurcating the proceedings and requiring the

10  posting of a bond by the Petitioning Creditor.  The primary thrust of the motion was that Lopez has

11  22 creditors, and, since 22 is more than 12, there must be three petitioning creditors.  [ASA Tab

12  27, pp. 0052 - 0054.]  The request for a bond was made to cover Lopez's damages in the event that

13  the Petition was unsuccessful. [*Id.* at p. 0054]  The motion was opposed. [AR Tab B, Docket Item

14  32, p.0031.]

15  **12/19/05:**    The Bankruptcy Court conducted its hearing on the bifurcation motion, and granted

16  bifurcation to consider first the number of creditors that Lopez had, and were required to be

17  included in the 11 USC § 303(b)(2) count.  The Court noted that the request for a bond was

18  withdrawn. [ASA Tab 35, Minute Order.]

19  **C.    Lopez's Second Motion to Dismiss.**

20  **03/27/06:**    Lopez filed a Motion to Dismiss the involuntary proceeding.  The basic premise of

21  the motion was that Lopez and his wife had agreed to sell their residence in Florida, and use the

22  proceeds to pay all creditors in full, but could not do so because the pending bankruptcy case

23  created a "cloud" on their title.  [ASA Tab 40.]

24  **03/29/06:**    Stanly filed an opposition to the Motion to Dismiss.  The basis for opposing the

25  motion included the fact that there was no evidence to indicate that the sales proceeds would be

26  adequate to the alleged purpose; and that there was substantial evidence that Lopez had previously

27  made promises to his creditors in court proceedings (in the form of a "Stipulation for Temporary

28  Protective Order"), and then intentionally violated the stipulation by absconding with substantial

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

1  proceeds.  [ASA Tab 43.]

2  **03/30/06:**      Stanly filed an *ex parte* Verified Application for Appointment of a Trustee as an

3  emergency measure to prevent Lopez from closing the sale of his residence without court

4  authority.  [ASA Tab 47.]  This emergency motion was necessary because Stanly had just learned

5  that the sale was about to close seven days later without any notice to the Court or the parties.

6  [ASA Tab 47, p. 0092, ln. 3-17.]

7  **04/03/06:**      The Bankruptcy Court conducted its hearing on the Motion to Dismiss and the *ex*

8  *parte* Verified Application for Appointment of a Trustee.  [AR Tab B, Docket Item 48 p.0034.]

9  On the record, Lopez's counsel stipulated to the entry of a consent order enjoining the sale of his

10  residence without Court approval, and the request for a Trustee was withdrawn on that basis.  [*Id.,*

11  see also, ASA Tab 52.]

12  **D.      The Prosecution and Conclusion of Phase I.**

13  **12/21/05:**      Creditor Northwest Florida Daily News filed a joinder as a Petitioning Creditor.

14  [AR Tab B Docket item 36 at p.0032.]

15  **12/29/05:**      Disputed creditor Alternative Resolution Center filed a joinder as a Petitioning

16  Creditor.  [*Id.* at Docket item 37.]

17  **05/29/06:**      Petitioning Creditors filed a Motion for Summary Judgment on Bifurcated Phase I.

18  [AR Tab B Docket Nos. 56-60 at p.0035.]

19  **06/26/06:**      The Bankruptcy Court conducted its hearing on the Motion for Summary Judgment

20  on Bifurcated Phase I, and ordered the simultaneous filing of supplemental briefs with the matter

21  then to be under submission.  [ASA Tab 76.]  The supplemental briefs were filed as ordered.  [AR

22  at Docket Nos. 77 and 78 at  p.0038.]

23  **09/26/06:**      The Bankruptcy Court entered its formal "Order on Motion for Summary

24  Judgment" [ASA Tab 86.] in which it held that there are "only five holders of claims against

25  Lopez that qualify to be counted under §303(b)(2).  Since this is clearly 'fewer than 12' the petition

26  was properly filed by one claim holder — Stanly."  [ASA Tab 86, p. 0130, ln.1 - 4 & 9 - 12.]  That

27  Order, which is now final and not the subject of appeal, ended Phase I of the contested Petition,

28  and opened the door for discovery in Phase II.

KEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 - FACSIMILE (619) 400-2201

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

E.     **Lopez Hindered, Delayed and Ultimately Refused to Provide Adequate Responses to Written Discovery Despite Multiple Orders and Admonishments from the Bankruptcy Court.**

**11/03/06:**     Lopez was served with Petitioning Creditors' First Set of Written Discovery for Phase II of the bifurcated proceeding (the "Phase II Written Discovery"), consisting of (1) First Phase II Requests for Admission Propounded by Petitioning Creditors [10 Requests]; (2) First Phase II Request for Production of Documents by Petitioning Creditors [162 categories of documents]; and (3) First Phase II Interrogatories Propounded by Petitioning Creditors [35 Interrogatories]. Lopez's responses to the Phase II Written Discovery were due on December 4, 2006. [ASA Tab 105-2, p. 0173, ln. 5.]

**12/03/06:**     Lopez served "Response to Requests for Admission Propounded to Alleged Debtor Francis J. Lopez (Phase II)." **Lopez's responses were deficient, and Lopez failed to verify the responses.** [ASA Tab 105-2, p. 0173, ln. 6 - 8.]

**12/05/06:**     Lopez served "Response to Interrogatories Propounded to Alleged Debtor Francis J. Lopez (Phase II). **Lopez's responses were deficient, and Lopez failed to verify the responses.** Lopez also served "Response to Requests for Production of Documents." **Lopez's responses were deficient.**   [ASA Tab 105-2, p. 0173, ln. 9 -12.]

**12/13/06:**     Petitioning Creditors' attorney, L. Scott Keehn ("Attorney Keehn"), sent a *meet and confer* letter to Lopez's attorney, M. Jonathan Hayes ("Attorney Hayes"), notifying him of the deficiencies in Lopez's responses to the Phase II Written Discovery.  [ASA Tab 105-2, p. 0173, ln. 13 - 15.]

**12/15/06:**     Attorneys Keehn and Hayes participated in a telephonic *meet and confer* conference wherein the parties agreed that Lopez would provide supplemental responses to the Phase II Written Discovery on or before January 12, 2007.  [ASA Tab 105-2, p. 0173, ln. 16 - 18.]

**01/12/07:**     Deadline for Lopez to provide the promised supplemental responses to the Phase II Written Discovery.  **Lopez failed, without explanation, to provide supplemental responses to the Phase II Written Discovery.**  [ASA Tab 105-2, p. 0173, ln. 19 - 21.]

**01/19/07:**     Attorney Keehn sent a follow-up *meet and confer* letter to Attorney Hayes

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

1   requesting an explanation regarding Lopez's failure to provide the promised supplemental

2   responses to discovery, and notifying Lopez of the imminent likelihood of a motion to compel his

3   responses to the Phase II Written Discovery. **Lopez failed, without explanation, to respond to**

4   **that *meet and confer* letter.**   [ASA Tab 105-2, p. 0173, ln. 22 - 26.]

5   **01/29/07:**   Petitioning Creditors filed a Motion to Compel responses to the Phase II Written

6   Discovery wherein they requested an award of monetary sanctions in the amount of $4,242 (the

7   "First Motion to Compel"). **Lopez failed, without explanation, to respond or file an**

8   **Opposition to the First Motion to Compel.**   [ASA Tab 105-2, p. 0173, ln. 27 - p.0174, ln. 1.]

9   **03/10/07:**   On a Saturday, just two days prior to the hearing scheduled on the First Motion to

10  Compel, Attorney Hayes emailed approximately 155 pages of documents to Attorney Keehn,

11  purportedly in response to the "First Phase II Request for Production of Documents by Petitioning

12  Creditors." **This last-minute "*document dump*" was improper because the documents:**

13  **(1) were not responsive to the Requests, (2) were not organized by category of Request, and**

14  **(3) consisted of at least 103 pages of pleadings filed in the San Diego Superior Court which**

15  **Lopez knew were already in Petitioning Creditors' possession. Lopez failed, without**

16  **explanation, to explain the deficiencies and/or his failure to provide the agreed-upon**

17  **supplemental responses.**   [ASA Tab 105-2, p. 0174, ln. 2 - 10.]

18  **03/12/07:**   The Bankruptcy Court granted the First Motion to Compel. [ASA Tab 93.]  The

19  Court ordered Lopez to provide the supplemental responses on or before April 11, 2007.  The

20  Court — in open session — indicated that it was deferring its ruling on the request for monetary

21  sanctions of $4,242 because: (a) it wanted the risk of those sanctions to serve as a *Sword of*

22  *Damocles* to encourage compliance with the Court's order, and (b) Lopez would have to "*earn his*

23  *way out of those sanctions.*" [ASA Tab 168, Reporters Transcript (03/12/07), p. 0598.]

24  **04/11/07:**   The date Lopez placed his supplemental discovery responses in the mail from a

25  Florida postal station.  [ASA Tab 105-2, p. 0174, ln. 18 - 22.]

26  **04/13/07:**   Since Petitioning Creditors had not yet received the supplemental discovery

27  responses that had been mailed from Florida on April 11, 2007, they filed a "Motion for an

28  Enforcement Order: (1) striking the Debtor's Answer; (2) Entering an Order for Relief; and (3)

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

1  Imposing Monetary Sanctions Against the Debtor." [ASA Tabs 97 through 97-3.] This Motion

2  was withdrawn on April 18, 2008. [ASA Tab 102.] **However, the supplemental responses were**

3  **patently deficient, and prompted another round of the *meet and confer* process.**

4  **05/11/07:**    The Bankruptcy Court held a status conference wherein it ordered Lopez to file

5  supplemental discovery responses to the Phase II Written Discovery on or before May 21, 2007.

6  [ASA Tab 104.] The Court further ordered that any motion to compel further responses must be

7  filed on May 25, 2007. [ASA Tab 104.]

8  **05/21/07:**    (1)    Deadline for Lopez to supplement his supplemental responses to the Phase

9  II Written Discovery. **Lopez failed to provide supplemental responses as required by the**

10  **Bankruptcy Court's Order.** [ASA Tab 105-2, p. 0175, ln. 6 - 9.]

11              (2)    After the close of business, at 7:10 P.M., Attorney Hayes emailed Attorney

12  Keehn a request for two additional days for Lopez to supplement his responses to the Phase II

13  Written Discovery. [ASA Tab 105-2, p. 0175, ln. 6 - 9.]

14  **05/22/07:**    Attorney Keehn responded to Attorney Hayes' email by granting the requested two-

15  day extension of time, in exchange for a stipulation providing Petitioning Creditors with an

16  extension of time – from May 25, 2007 to May 30, 2007 – to file any necessary discovery motion.

17  [ASA Tab 105-2, p. 0175, ln. 9 - 13.]

18  **05/23/07:**    Attorney Hayes emailed Attorney Keehn to withdraw Lopez's request for an

19  extension of time, and notify him that Lopez would not be providing any additional responses to

20  the Phase II Written Discovery. [ASA Tab 105-2, p. 0175, ln. 14 - 17.]

21  **05/24/07:**    Petitioning Creditors filed their "Motion for an Enforcement Order: (1) Imposing

22  Monetary Sanctions Against the Debtor; and (2) Imposing Evidentiary Sanctions Against the

23  Debtor" (the "Second Motion to Compel") wherein they renewed their request for monetary

24  sanctions in the amount of $4,242. [ASA Tabs 105 through 105-4.]

25  **06/25/07:**    The Bankruptcy Court imposed evidentiary sanctions against Lopez as requested in

26  the Second Motion to Compel, and deferred the ruling on Petitioning Creditors' request for

27  monetary sanctions, indicating that the Court still wanted them to act as a *Sword of Damocles* and

28  would address them later. [ASA Tab 110, Reporter's Transcript (06/25/07), page 0311.]

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 / FACSIMILE (619) 400-2201

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

**F.    Lopez Continued His Delay Tactics in Connection with His Deposition.**

**06/25/07:**    Attorney Hayes and Attorney Keehn conferred in person regarding Petitioning Creditors' request to take Lopez's deposition. At that time, Attorney Keehn stated that he would like to calendar Lopez's deposition before July 31, 2007 because he would be out of the office for virtually the entire month of August. The attorneys agreed that either July 20 or July 27 would work on their calendars, and Attorney Hayes stated that he would inquire as to Lopez's availability on those dates. [ASA Tab 114-2, p. 0325, ln. 16 - 21.]

**06/28/07:**    Attorney Hayes emailed Attorney Keehn the following message: *"I have spoken to my client about the deposition dates we discussed, July 20 or 27. He is checking his calendar. I will let you know **shortly**."* (Emphasis added.) [ASA Tab 114-2, p. 0325, ln. 22 - 24.]

**07/20/07:**    Twenty-two days after the June 28, 2007 email — in the early evening — Attorney Hayes transmitted an email suggesting, for the first time, July 31, 2007, as an available date for Lopez's deposition. [ASA Tab 114-2, p. 0326, ln. 1 - 3.] Given that July 31, 2007 would be Attorney Keehn's last day in the office before a 30-day vacation, he knew he would be fully engaged with matters necessary to be completed in preparation for that absence. Because of that, and because of the fact that he had received absolutely no communication from Attorney Hayes' office following the June 28, 2007 email, Attorney Keehn issued and mailed to Attorney Hayes a notice of Lopez's deposition for Tuesday, September 11, 2007, at 9:00 a.m. in San Diego, California. [ASA Tab 114-2, p. 0326, ln. 4 - 9.]

**07/31/07:**    The Bankruptcy Court conducted a Status Conference wherein Attorney Keehn reported to the Court the events summarized above, including the fact that Petitioning Creditors had noticed Lopez's deposition for September 11, 2007. Attorney Hayes stated in open court that he would communicate that information to Lopez, and inform Petitioning Creditors if Lopez could not attend his deposition on the scheduled date. That was the last Petitioning Creditors heard from Attorney Hayes until September 10, 2007. [ASA Tab 114-2, p. 0326, ln. 10 - 14.]

**09/10/07:**    Less than 24 hours before Lopez's deposition was scheduled to begin, Attorney Hayes sent Attorney Keehn a brief email stating that Lopez was *"unable to make travel arrangements for the deposition tomorrow."* The email suggested October 8, 2007 or October 22,

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1  2007 as possible dates for the deposition.  [ASA Tab 114-2, p. 0326, ln. 15 - 20.]

2  **10/01/07:**    The Bankruptcy Court conducted a status conference on the Involuntary Petition.

3  Petitioning Creditors renewed the request to impose monetary sanctions.  The Court recognized

4  that the *Sword of Damocles* had not worked, the "*string has been severed*" and monetary sanctions

5  would be considered at the next hearing.  [ASA Tab 169, p. 0607.]

6  **10/19/07:**    Petitioning Creditors filed a "Motion for an Enforcement Order imposing Monetary

7  Sanctions Against the Debtor" (the "Third Motion to Compel") wherein they requested an award

8  of monetary sanctions in the amount of $12,133.50.  The requested sanctions consisted of actually-

9  incurred legal fees as follows: (a) $3,155.00 for preparing the motion; (b) $2,164.50 for preparing

10  the necessary documents and questions for Lopez's deposition (that he cancelled less than 24

11  hours before it was scheduled to begin); (c) $224.00 for conferring with Lopez's attorney

12  regarding Lopez's *last minute* failure to appear for his deposition; and (d) $6,590.00 for preparing

13  Petitioning Creditors' renewed motion for the monetary sanctions originally requested on May 24,

14  2007.  [ASA Tabs 114 through 114-2.]

15  **10/22/07:**    Lopez appeared for his deposition in San Diego, California.  [ASA Tab 126-1, p.

16  0471, ln. 19 - 20.]

17  **11/19/07:**    The Bankruptcy Court granted Petitioning Creditor's Third Motion to Compel, and

18  imposed monetary sanctions against Lopez in the amount of $8,130.50.  The Court made it clear

19  that the entire sum was due and payable within thirty (30) days from that date – December 19,

20  2007.  **The Court admonished Lopez, through his counsel, that failure to pay the sanctions**

21  **could result in terminating sanctions.  That admonishment concluded with this point-blank**

22  **warning:**

23      But at this point in time, those sums will be required to be paid within thirty days to Mr.
        Keehn's firm.  And your client should be made very aware, Mr. Hayes, that if he fails to
24      pay that total sum within thirty days of today's date – and that's today's date, not the date of
        the entry of the order – within thirty days of today's date, I will consider a terminating
25      sanction motion to strike his opposition to the petition.  And we'll take it from there.
        [ASA, Tab 119 Reporters Transcript (11/19/07), p. 0385 - 0387.]

26

27  / / /

28  / / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**G.** **Despite The Bankruptcy Court's Explicit Warnings that Terminating Sanctions May be Issued if Lopez Failed to Pay the Monetary Sanctions, Lopez Failed to Pay Any Portion of the Monetary Sanctions.**

**11/26/07:**    Petitioning Creditors sent Lopez's counsel a copy of the lodged Sanction Order, together with wire transfer instructions for the Keehn & Associates, APC general operating account to facilitate timely compliance. The accompanying Transmittal Memorandum emphasized the importance of timely payment as follows:

> The court has now imposed upon Mr. Lopez the duty to pay the full $8,130.50 awarded in sanctions. The enclosed wire instructions are provided to facilitate his full and timely discharge of that duty. The Petitioning Creditors would first steal and then paraphrase Admiral Lord Nelson's famous signal to his fleet as the Battle of Trafalgar was about to commence: *The United States Bankruptcy Court expects every man to do his duty!* The Petitioning Creditors hold the same expectation.

This was intended to provide Lopez with advance warning that no delay in payment would be tolerated by Petitioning Creditors. [ASA Tab 126-1, p.0470, ln. 26 - p.0471, ln. 2 & p.0480.]

**11/26/07 - 12/18/07:**   Lopez provided nothing but the *sounds of silence*. [ASA Tab 126-1, p.0471, ln. 3 - 4.]

**12/19/07:**    **The Sanctions Deadline.**  Lopez, through counsel, communicated that he could not pay the full sanctions award, and offered to pay $4,000 plus $1,000 per month thereafter. However, Lopez failed to tender the $4,000 or any portion thereof.  [ASA Tab 126-1, p.0471, ln. 5 - 13 & p. 0490]

**12/20/07:**    Petitioning Creditors, through counsel, responded to Lopez's counsel by declining to acquiesce to any adjustment in the payment schedule imposed by the Sanctions Order. The reason for that position was specifically summarized as follows:

> I do not now believe, nor have I ever since the date that I served you with the order and our bank wire instructions believed that your client lacked the financial ability to timely comply with the Court's order. I am informed and believe that my client has or has access to the evidence necessary to establish the validity of my belief. I say that so that your client has fair warning that should he be inclined to submit a declaration under penalty of perjury to the effect that he did not comply with the court's sanctions order because he lacked the financial ability to do so, he does so at his peril. [ASA Tab 126-1, p.0471, ln. 14 - 17 & p. 0492.]

**12/20/07 - 01/15/07:**  Lopez failed to tender any portion of the Sanctions, and provided nothing other than the familiar *sounds of silence*. [ASA Tab 126-1, p.0471, ln. 3 - 4.]

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1  **12/27/07:**      Petitioning Creditors filed their Motion for Terminating Sanctions based on

2  Lopez's failure, without justification or excuse, to pay any portion of the Sanctions.  [ASA Tabs

3  121 through 121-2.]

4  **01/15/08:**      Lopez mailed his opposition to the Motion for Terminating Sanctions, supported by

5  his conclusory statement that he lacked the ability to comply with the Bankruptcy Court's order.

6  [ASA Tab 125, Proof of Service, p. 0469.]

7  **01/22/08:**      Petitioning Creditors filed their Reply which included unrefuted evidence of

8  Lopez's available income, and ability to pay the Monetary Sanctions. [AR Tab B, Docket Nos. 126

9  and exhibits; ASA Tab 133, Reporter's Transcript, (01/28/08, p. 0537.)

10 **01/28/08:**      (1)      The Bankruptcy Court conducted a hearing on the Motion for Terminating

11 Sanctions.  Attorney Hayes admitted in open court that prior to the hearing he had advised Lopez

12 that if he could take "*a check*" to the hearing for payment of some or all of the Sanctions, then

13 Lopez could probably avoid the terminating sanctions.  [ASA Tab 133, Reporter's Transcript

14 (01/28/08), p. 0540.]  Lopez declined to do so, and his attorney never challenged the Reply

15 evidence showing he had the ability to do so. [Id. at p. 0537.]

16         (2)      The Bankruptcy Court granted the Motion for Terminating Sanctions, and

17 struck Lopez's Answer.  [ASA Tab 127.]

18         (3)      The Bankruptcy Court entered an Order for Relief, ordering Lopez to file

19 the requisite Schedules and Statements within 15 days of the Order.  [ASA Tab 128.]  Lopez failed

20 to comply with that Order, and instead filed this Appeal.  [ASA Tab 130.]

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

# VI.  DISCUSSION

## A.    FRCP 37 Empowered the Bankruptcy Court to Strike Lopez's Answer.

"*Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules.*"[13] FRCP 37 was made applicable to this bankruptcy case by FRBP 9014(c), and granted the Bankruptcy Court broad discretion to tailor appropriate sanctions for Lopez's unjustified refusal to comply with its 11/19/2007 Discovery Order imposing the Monetary Sanctions.[14]

Where, as here, an alleged debtor has engaged in a course of serious discovery misconduct, which includes failure to comply with prior court orders, the bankruptcy court may issue a terminating sanction consisting of an order striking the debtor's answer and entering an Order for Relief.[15] Here, Lopez had repeatedly demonstrated that he is unmoved by either the threat of monetary sanctions, or an actual order from the Bankruptcy Court imposing the threatened monetary sanctions.  He *thumbed his nose* at Petitioning Creditors and the Bankruptcy Court's authority by simply refusing to pay the Monetary Sanctions, even though unrefuted evidence established that Lopez had the financial resources to pay the entire amount.

Based on that blatant display of defiance, and after considering the totality of the circumstances as they are memorialized by the record of Lopez's pervasive misconduct, the Bankruptcy Court reasoned that terminating sanctions were necessary and appropriate; and imposing any lessor sanction "*would be just as if Mr. Lopez could continue to ignore this Court's*

---

[13]    *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

[14]    *Matter of Visioneering Const.*, 661 F.2d 119, 123 (9th Cir. 1981) ("The bankruptcy court, faced with an obstreperous alleged bankrupt, unequivocally had the power to apply Fed.R.Civ.P. 37 sanctions for obstruction of discovery"); *In re Williams*, 215 B.R. 289, 299 (Dist. Ct. D.R.I. 1997) ("the choice and severity of the sanction imposed is a matter reserved to the sanctioning court's discretion").

[15]    *In re Rice*, 14 B.R. 843, 846 (9th Cir.BAP 1981); *Matter of Visioneering Const.*, supra, 661 F.2d at 123 (court's order striking alleged debtor's answer was an appropriate sanction since the debtor had "deliberately and obstinately refused to cooperate with discovery requests and court orders"); *De Falco v. Oak Lawn Public Library*, 25 Fed.Appx. 455, 457 (7th Cir. 2001) (terminating sanctions appropriate where the plaintiff "flouted the district court's order and exemplified the delay and avoidance to which the court referred").

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 - FACSIMILE (619) 400-2201

08cv0713
APPELLEE'S BRIEF

114634/53115.02

1    *orders.*"[16]  That decision is authorized by FRCP 37(b), and may not be disturbed without "*a*

2    *definite and firm conviction that it was clearly outside the acceptable range of sanctions.*"[17]

3    **B.    Given Lopez's Egregious Misconduct and Prior Violations, the Terminating Sanction**

4    **Was Within the Acceptable Range of Available Sanctions Pursuant to FRCP 37(b).**

5        FRCP 37(b)(2) gives a court broad discretion to issue discovery orders that are *just* under

6    the particular circumstances of each case.  "*Thus the central factor in evaluating the district court*

7    *order is justice, and everyone has notice from the text of  Rule 37(b)(2) that [striking a party's*

8    *pleading] is a possible sanction for failure to obey discovery orders.*"[18]  To determine whether an

9    order issuing terminating sanctions is *just*, the Ninth Circuit has adopted a test, consisting of an

10    evaluation of the following five factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the
> court's need to manage its dockets; (3) the risk of prejudice to the
> [party seeking sanctions]; (4) the public policy favoring disposition
> of cases on their merits; and (5) the availability of less drastic
> sanctions.[19]

14    However, the five factors are not exclusive, and do not constitute a *bright line* test.  Rather, they

15    provide "*a way for a district judge to think about what to do, not a series of conditions precedent*

16    *before the judge can do anything.*"[20]  Ultimately, an appellate court will not reverse the lower

17    court's decision to issue a particular sanction without a "*a definite and firm conviction that the*

18    *district court made a clear error in judgment.*"[21]  Here, consideration of the five factors in

19    connection with the entire record of Lopez's misconduct supports the Bankruptcy Court's decision

---

16    ASA Tab 133, Reporter's Transcript (01/28/08), p. 0541.

17    *Estrada v. Speno & Cohen*, supra.

18    *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1056-1057 (9th Cir. 1998);
FRCP 37(b)(2)(A)(iii) (the court may issue an order "striking pleadings in whole or in part").

19    *Valley Eng'rs v. Electric Eng'g Co.*, supra, 158 F.3d at 1057.

20    *Valley Eng'rs v. Electric Eng'g Co.*, supra, 158 F.3d at 1057.

21    *Valley Eng'rs v. Electric Eng'g Co.*, supra, 158 F.3d at 1057.

KEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

08cv0713
APPELLEE'S BRIEF

114634/53115.02

1    to order the Terminating Sanction.[22]

2        **(1) The Public's Interest in Expeditious Resolution of Litigation; and (2) The Court's**

3        **Need to Manage its Dockets.**

4        These first two factors support an order issuing terminating sanctions where, as here, a

5    litigant has already violated a prior discovery order, and engaged in conduct to hinder and delay

6    discovery.[23]  Indeed, the district courts are bound by the legislative mandate set forth in both FRCP

7    1 and FRBP 1001, requiring that the discovery statutes (and other Federal rules) "*be construed and*

8    *administered to secure the just, speedy, and inexpensive determination of every action and*

9    *proceeding.*"[24]  Litigants like Lopez make that impossible to accomplish.  Because of that, FRCP

10   37(b) empowers courts to protect the integrity of the judicial system by issuing terminating

11   sanctions.

12       From the outset, Lopez has hindered and delayed this case.  First, the case was bifurcated at

13   his insistence, and over Petitioning Creditors objection.  While there is nothing wrong with that

14   fact *in a vacuum*, the unavoidable delay resulting from that bifurcation should heighten the duty of

15   the requesting litigant to proceed with good faith and alacrity when defeat in Phase I ushers in the

16   discovery process in Phase II.

17       Then, after losing Phase I, Lopez refused to provide adequate responses to the Phase II

18   Written Discovery, forcing Petitioning Creditors to incur the cost of multiple rounds of fruitless

19   *meet and confer* dialogue, and formal motions seeking orders from the Bankruptcy Court — filed

20   on January 29, 2007 (the First Motion to Compel), and again on May 24, 2007 (the Second Motion

21   to Compel).  That battle finally ended on June 25, 2007 — *over 6 months after the date the*

22   *discovery should have been produced* — with Lopez refusing to produce further discovery, and the

23   Bankruptcy Court responding to that refusal by imposing evidentiary sanctions prohibiting Lopez

24   from using any evidence at trial that he had refused to produce in response to discovery.  The

25   _____

26   [22]    *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d
1062, 1068 (2nd Cir. 1979) ("sanctions must be weighed in light of the full record in the case").

27   [23]    *Valley Eng'rs v. Electric Eng'g Co.*, supra, 158 F.3d at 1057.

28   [24]    FRCP 1; FRBP 1001.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

1    Court specifically warned Lopez, through his counsel, that monetary sanctions would be imposed

2    if the misconduct continued.[25]

3         Lopez continued his *hinder and delay* strategy in connection with his deposition, and

4    caused further delay and expense, all of which necessitated the Third Motion to Compel. The

5    Bankruptcy Court granted that Motion and imposed the Monetary Sanctions of $8,130.50.

6    Unimpressed, Lopez failed to obey the Order. To this day, not one penny of the Monetary

7    Sanctions has been paid.

8         Lopez's refusal to perform his duties as a litigant, and his blatant defiance of the

9    Bankruptcy Court's authority, demonstrate an inherent lack of respect for the court system in

10   general, and particularly for the Bankruptcy Court's need to manage its docket effectively in order

11   to expeditiously and fairly resolve *all* the cases pending before it. The Ninth Circuit encourages

12   terminating sanctions against individuals like Lopez, whose conduct threatens the integrity of the

13   entire system, and only serves as a *bad example* to other litigants:

> Where it is determined that counsel or a party has acted willfully or
> in bad faith in failing to comply with rules of discovery or with court
> orders enforcing the rules or in flagrant disregard of those rules or
> orders, it is within the discretion of the trial court to dismiss the
> action or to render judgment by default against the party responsible
> for noncompliance. Fed.R.Civ.P. 37(b). Here the court dismissed the
> plaintiffs' action with prejudice. It acted properly in so doing. We
> encourage such orders. Litigants who are willful in halting the
> discovery process act in opposition to the authority of the court and
> cause impermissible prejudice to their opponents. It is even more
> important to note, in this era of crowded dockets, that they also
> deprive other litigants of an opportunity to use the courts as a serious
> dispute-settlement mechanism. Here the appellants' last-minute
> tender of relevant documents could not cure the problem they had
> previously created. As the Supreme Court stated in upholding a
> dismissal for failure to comply with a discovery order, "[although] it
> might well be that *these* [litigants] would faithfully comply with all
> future discovery orders entered by the District Court in this case . . .
> [if the order of dismissal were overturned] other parties to other
> lawsuits would feel freer than we think *Rule 37* contemplates they
> should feel to flout other discovery orders of other district courts."[26]

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

---

[25]    ASA Tab 110, Reporters Transcript (06/25/07), p. 0311.

[26]    *G-K Properties v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647-648 (9th Cir. 1978), quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976) (per curiam) (emphasis in original).

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

Here, Lopez argues that terminating sanctions should not have issued since he ultimately appeared "*voluntarily*" for his deposition — albeit three months *after* it had been originally scheduled, and *after* the Third Motion to Compel. At that point, the Bankruptcy Court was very familiar with Lopez's pattern of hindering, delaying and excuse-mongering before offering the slightest gesture of compliance by, e.g., serving deficient responses to discovery, and finally appearing for a deposition (after dramatically bemoaning the inconvenience and expense it would cause him). Litigation simply can not proceed that way. And, as the Ninth Circuit has observed, terminating sanctions are an appropriate means to ensure that it does not have to:

> Parties may not wilfully, repeatedly, and persistently disobey court orders even after receiving graduating sanctions. There is -- and there must be -- sufficient play in the joints of our system to allow a district judge to impose the ultimate sanction on such obstreperous parties. Otherwise, the wheels of justice would quickly grind to a halt.[27]

The Bankruptcy Court wisely recognized when it needed to say *enough is enough*, and end the matter with terminating sanctions. Doing so was a proper exercise of the Bankruptcy Court's discretion, and the Order should be affirmed.

**(3) The Risk of Prejudice to the Party Seeking Sanctions.**

This factor weighs in favor of the Bankruptcy Court's Order. Lopez argues that even though he "*has perhaps been dilatory with some of his responses and in making preparations to attend his second deposition in San Diego*,"[28] Petitioning Creditors have not been prejudiced by his failure to pay the Sanctions. The argument is disingenuous at best.

The failure to pay the ordered Monetary Sanctions was the proverbial *last straw* in a series of misconduct that in its totality warranted the Terminating Sanction. The *last straw*, standing alone, never breaks the camel's back, but is a part of the totality of straws that caused the fracture. Looking only at the *last straw* will always lead to an incomplete analysis, and a flawed conclusion.

As quoted above, the Ninth Circuit recognizes that "*[l]itigants who are willful in halting*

---

[27]     *Estrada v. Speno & Cohen*, supra.

[28]     Appellant's Opening Brief, page 12.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1   *the discovery process act in opposition to the authority of the court **and cause impermissible***

2   ***prejudice to their opponents.***"[29]  Petitioning Creditors have painstakingly set forth in their

3   multiple Motions to Compel how Lopez's misconduct has prejudiced them and this case.

4       In connection with the Motions to Compel, Petitioning Creditors were forced to incur legal

5   fees in excess of $12,133.50.  Beyond that, Lopez's strategic delaying of the proceedings unfairly

6   exposed all of his pre-petition creditors, including Petitioning Creditors, to unnecessary prejudice,

7   the extent of which is currently unknown.  During the *43 month* period of time from when the

8   Petition was filed (06/30/2005) to when the Order for Relief was entered (01/28/2008), Lopez was

9   free to incur new debt that will be superior to the claims of all pre-petition creditors due to the

10  priority status given to Involuntary Gap Claims[30] under 11 U.S.C. §502(f) and 11 U.S.C.

11  §507(a)(3).  The specter of an ever-expanding body of Involuntary Gap Claims with priority over

12  all other general creditors was an ominous threat to the economic utility of the Bankruptcy remedy

13  sought by Petitioning Creditors.  That plight of Lopez's pre-petition creditors is exacerbated by the

14  automatic stay which prevents them from taking any enforcement action to preserve the economic

15  utility of their claims.[31]

16      The risk of prejudice was further heightened by the initial delay that was occasioned by the

17  bifurcation of the case — at Lopez's request — so that the Involuntary Gap Period was necessarily

18  rendered longer than the norm.  Lopez knew that, and so did the Bankruptcy Court.  And with no

19  end to Lopez's *game playing* in sight, it was appropriate for the Bankruptcy Court to finally *close*

20  *the gap* by issuing the Terminating Sanction, and entering the Order for Relief.

21  / / /

22  / / /

23  / / /

24  / / /

KEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

---

26      [29]    *G-K Properties v. Redevelopment Agency of San Jose*, supra, 577 F.2d at 647
(emphasis added).

27      [30]    Claims arising after the Petition date, and before entry of an Order for Relief.

28      [31]    See 11 U.S.C. §362(a).

**(4) The Public Policy Favoring Disposition of Cases on Their Merits.**

This factor typically weighs against a terminating sanction.[32]  However, as the Ninth Circuit has pointed out, there can be no true *trial on the merits* in a case where one of the parties can not be trusted to cooperate in the process and produce all available evidence, however damaging it may be to his case, to allow a just and proper resolution.[33]  "*Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts*," then a trial on the merits may indeed be impossible, and "*a case dispositive sanction may be appropriate*."[34]  That is exactly the case here, and the Bankruptcy Court knew it. That determination should not be disturbed unless the record establishes it is clearly erroneous.[35]

**(5) The Availability of less Drastic Sanctions.**

The Ninth Circuit advises that this fifth factor "*involves consideration of three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal*."[36]  Here, the Bankruptcy Court did all three of the above, and therefore this factor weighs in favor of the Bankruptcy Court's Order.

The Bankruptcy Court considered and tried multiple sanctions options — first, evidentiary sanctions and a deferred ruling on monetary sanctions, imposed on June 25, 2007; and later, an award of monetary sanctions in the amount of $8,130.50, imposed on November 19, 2007.  Before imposing the Monetary Sanctions, the Bankruptcy Court had decided to try deferring its ruling on them in order to hold the prospect as a *Sword of Damocles* over Lopez's head, and thereby compel him to fulfill his duties as a litigant.  At the hearing on Petitioning Creditors' First Motion to Compel, the Court explained its intent with regard to deferring the imposition of monetary

---

[32]    *Valley Eng'rs v. Electric Eng'g Co.*, supra, 158 F.3d at 1057.

[33]    *Valley Eng'rs v. Electric Eng'g Co.*, supra, 158 F.3d at 1058 (terminating sanctions were appropriate because the past discovery misconduct had "cast a pall upon the disobedient parties' integrity and the expectation that this case is capable of a fair and just resolution on the merits").

[34]    *Valley Eng'rs v. Electric Eng'g Co.*, supra, 158 F.3d at 1058.

[35]    *Hayes v. Woodford*, supra, 301 F.3d at 1067.

[36]    *Valley Eng'rs v. Electric Eng'g Co.*, supra, 158 F.3d at 1057.

KEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 450-2200 · FACSIMILE (619) 450-2201

sanctions:

> I'm going to require that responses be supplied to Mr. Keehn within thirty days of today's date. And if there is any necessary resolution of the sanctions motion, I will do that at some point in time in the future. But at this point in time, I intend it to be the [Sword] of Damocles over Mr. Lopez's head. And I fully contemplate at this point in time and given the fact that there was no effort for a protective order, no effort for a continuance to comply because of the bulk of the requests or any of that kind of stuff, there was absolutely nothing done by [Lopez]; under those circumstances at this point in time and unless I see something that disabuses me of it, I intend at some future date to award sanctions in that amount [$4,242]. . . He's got to earn his way out of it, if at all. And I'm not telling him that he necessarily can. So I will sign an order compelling . . . . responses to Mr. Keehn within 30 days of today's date. But if it comes down to it, his client is not going to have to pay for going through this.[37]

But the Bankruptcy Court had to *let the sword fall* when it was obvious that Lopez was impervious to the threat of monetary sanctions. The Bankruptcy Court stated:

> But I view the string [on the Sword of Damocles] has been severed. And so I will decide what, if anything, to award as of this point in time independent of what comes up next. It's no longer intended as essentially a civil coercion to get him there. If he doesn't get there, having already had evidentiary sanctions imposed, then, you know, we'll find something else that maybe works.[38]

A month later, when the Bankruptcy Court imposed monetary sanctions, it explicitly warned that terminating sanctions would be forthcoming if Lopez did not comply with the Order and pay the Monetary Sanctions:

> Well, I've been over it multiple times, and I do think it's time. I have to say that I'm — you know, as troubled as I've been all along in this case and my distress has grown over the intervening period of time, in reviewing Mr. Lopez's opposition to this particular motion and particularly his explanation of the business leading up to September 11th [the date noticed for his deposition], really, really troubles me, frankly. . . And [Lopez] should be made very aware, Mr. Hayes, that if he fails to pay that total sum [of monetary sanctions] within thirty days of today's date — and that's today's date, not the date of entry of the order — within thirty days of today's date, I will consider a terminating sanction motion to strike his opposition to the Petition. And we'll take it from there.[39]

---

[37]    ASA Tab 168, Reporters Transcript (03/12/07), p. 0598 - 0599.

[38]    ASA Tab 169, Reporters Transcript (10/01/07), p. 0607.

[39]    ASA Tab 119, Reporters Transcript (11/19/07), p. 0385 - 0387.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1    Despite the Bankruptcy Court's Order, and its explicit warning of impending terminating

2    sanctions, no portion of the Monetary Sanctions has been paid.

3         Ultimately, the Bankruptcy Court determined that neither evidentiary nor monetary

4    sanctions were sufficient to deter Lopez, and that terminating sanctions were necessary and

5    appropriate:

> If I were to require Mr. Keehn to [go] ahead and do his Motion for
> Summary Judgment on the second issue, it would be just as if Mr.
> Lopez could continue to ignore this Court's orders. I let you know
> back in November that I'd [had] it in terms of his non-participation
> in this process; foot-dragging and non-participation. And I remain
> in that frame of mind. So the Order for Relief will enter.[40]

10   The Ninth Circuit agrees that "*[i]t is appropriate to reject lesser sanctions where the court*

11   *anticipates continued deceptive misconduct.*"[41]  Lopez's past disobedience was particularly

12   troubling because it demonstrated that — beyond his willingness to disobey court mandates — he

13   is impervious to the threat of monetary sanctions.  He just refuses to pay them.  So, what the

14   fulness of time was able to demonstrate to the Bankruptcy Court is that neither the threat, nor the

15   actual imposition of monetary sanctions, has any real impact on Lopez.  Given this demonstration

16   that Lopez will neither play by the rules, nor obey the Bankruptcy Court's mandates, it was

17   appropriate for the Bankruptcy Court to truncate his continuing ability to dilute the value of the

18   process to his pre-petition creditors, and demean the integrity of the Court, by imposing the one

19   sanction that can not be ignored — the terminating sanction that puts a trustee in control, and caps

20   the universe of priority Involuntary Gap Claims.[42]  The Bankruptcy Court properly exercised its

21   discretion in issuing the Terminating Sanction, and the Order should be affirmed.

22   / / /

23   / / /

24   / / /

25   _____

26   [40]    ASA Tab 133, Reporters Transcript (01/28/08), p. 0541.

27   [41]    *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 352 (9th Cir.
     1995).

28   [42]    Claims arising after the Petition date, and before entry of an Order for Relief.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

08cv0713
**APPELLEE'S BRIEF**

114634/53115.02

## VII.  CONCLUSION

"*Nothing emboldens sin so much as mercy.*"[43]  In a stunning example of *life imitating art*, Lopez's conduct in this case offers empirical proof of that literary postulate.  For a year, he successfully employed passive-aggressive tactics to hinder, delay, emotionally frustrate, and financially drain his opponents in a campaign to eviscerate the economic utility of the involuntary Petition.  Along the way, he encountered the Bankruptcy Court's profound patience, and almost unending willingness to give him mercy in the form of second chances and deferred sanctions to coax him into doing what he is obligated to do as a litigant.  It was only after Lopez had clearly eschewed every reasonable opportunity to recant, that the Bankruptcy Court exercised its last available sanction.

The Bankruptcy Court's findings were supported by substantial evidence, and were not clearly erroneous.  The Bankruptcy Court did not abuse its discretion in striking Lopez's Answer, and its Order should be affirmed.

Date:  August 8, 2008                    KEEHN & ASSOCIATES
                                         A Professional Corporation

                             By:    //s// L. Scott Keehn
                                    L. Scott Keehn
                                    Leslie F. Keehn
                                    Attorneys for **Appellee**,
                                    **Alan Stanly**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200  FACSIMILE (619) 400-2201

---

[43]    William Shakespeare, *Timon of Athens*, Act III, Scene iii.