1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Appellee**,
   **Alan Stanly**

6

7

8                **UNITED STATES DISTRICT COURT**

9           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                          )  Case No. 08cv0713 JAH (WMc)
                                     )
12  FRANCIS J. LOPEZ,               )  Bankruptcy No. 05-05926-PB7
                                     )
13          Debtor.                  )
    _____)  **APPELLEE'S SUPPLEMENTAL**
14                                   )  **APPENDIX**
    FRANCIS J. LOPEZ,               )
15                                   )  **VOLUME 1 OF 3**
            Appellant,               )
16                                   )
    v.                               )  Hearing:      September 15, 2008
17                                   )  Time:         2:30 p.m.
    ALAN STANLY,                    )  Department:   Courtroom 11
18                                   )  Judge:        Hon. John A. Houston
            Appellee.                )
19  _____)

20

21      Appellee Alan Stanly ("Stanly"), respectfully submits his Appellee's Supplemental

22  Appendix containing excerpts from the record cited in the Appellee's Brief filed concurrently

23  herewith.

24  Date: <u>August 8, 2008</u>                    **KEEHN & ASSOCIATES, APC**

25

26                              By:   <u>//s// L. Scott Keehn</u>
                                      L. Scott Keehn
27                                    Leslie F. Keehn
                                      Attorneys for **Appellee**,
28                                    **Alan Stanly**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

114637/53115.02

**APPELLEE'S SUPPLEMENTAL APPENDIX**
**VOLUME 1 OF 3**

EXCERPTS OF THE RECORD ON APPEAL
(IN CHRONOLOGICAL ORDER)

| TAB NUMBER[1] | DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| 6 | Motion to Dismiss Case or Motion to Transfer Involuntary Petition; Declaration of Francis J. Lopez | 0001-0011 |
| 16 | Minute Order for Hearing held on 08/22/2005 | 0012 |
| 20 | Order Denying (Without Prejudice) Alleged Debtor's Motion to Dismiss or Transfer Involuntary Petition to the Northern District of Florida and Ordering Alleged Debtor to Answer Petition on or before 9/7/05 | 0013-0014 |
| 22 | Answer to Involuntary Petition | 0015-0023 |
| 23 | Transcript of Hearing held on 8/22/05 | 0024-0049 |
| 27 | Motion for an Order Bifurcating Trial re Involuntary Petition; Setting a Deadline to Add New Petitioning Creditors; and Requiring the Posting of a Bond; Declaration of Francis J. Lopez | 0050-0064 |
| 35 | Minute Order for Hearing held on 12/19/2005 | 0065 |
| 40 | Motion to Dismiss Involuntary Petition; Declarations of Francis J. Lopez, M. Jonathan Hayes | 0066-0080 |
| 43 | Alan Stanly's Memorandum of Points and Authorities in Opposition to Motion to Dismiss Involuntary Petition | 0081-0090 |
| 47 | Verified Ex Parte Application For Appointment Of Trustee; Supporting Memorandum of Points & Authorities; Declaration of Leslie F. Keehn | 0091-0110 |
| 52 | Amended Consent Order Enjoining Sale or Transfer of Real Property Located at 310 Sand Myrtle Trail, Destin, Florida, 32541 | 0111-0114 |

[1]    Tab numbers are also the Docket Number references to the docket for the underlying Bankruptcy Case *In re Francis J. Lopez*, before the United States Bankruptcy Court for the Southern District of California, Case No. 05-05926-PB7.

114638/5311.02

| 76 | Minute Order for Hearing held on 06/26/2006 | 0115 |
|---|---|---|
| 86 | Order on Motion for Summary Judgment | 0116-0131 |
| 93 | Minute Order for Hearing held on 03/12/2007 | 0132 |
| 97 | Petitioning Creditors' Motion for an Enforcement Order: (1) Striking the Debtor's Answer; (2) Entering an Order for Relief; and (3) Imposing Monetary Sanctions Against the Debtor | 0133-0134 |
| 97-1 | Petitioning Creditors' Memorandum of Points and Authorities in Support of Motion for an Enforcement Order: (1) Striking the Debtor's Answer; (2) Entering an Order for Relief; and (3) Imposing Monetary Sanctions Against the Debtor | 0135-0141 |
| 97-2 | Declaration of L. Scott Keehn in Support of Petitioning Creditors' Motion for an Enforcement Order: (1) Striking the Debtor's Answer; (2) Entering an Order for Relief; and (3) Imposing Monetary Sanctions Against the Debtor | 0142-0144 |
| 97-3 | Proof of Service | 0145-0146 |
| 102 | Notice of Withdrawal of Petitioning Creditors' Motion for an Enforcement Order: (1) Striking the Debtor's Answer; (2) Entering an Order for Relief; and (3) Imposing Monetary Sanctions Against the Debtor | 0147-0150 |
| 104 | Minute Order for Hearing held on 05/11/2007 | 0151 |

114638/5311.02

# TAB 6

1  M. Jonathan Hayes (Bar No. 90388)
   **Law Office of M. Jonathan Hayes**
2  21800 Oxnard St, Suite 840
   Woodland Hills, CA 91367
3  Telephone: (818) 710-3656
   Facsimile: (818) 710-3659
4  jhayes@polarisnet.net

5  Attorneys for Alleged Debtor Francis Lopez

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10                  **SAN DIEGO DIVISION**

11

12  In Re:                              )   CASE NO. 05-05926-PBINV
                                        )
13        FRANCIS J. LOPEZ,             )   **Involuntary Chapter 7**
                                        )
14        Alleged Debtor               )
                                        )   **MOTION TO DISMISS OR**
15                                      )   **TRANSFER INVOLUNTARY**
                                        )   **PETITION; DECLARATION OF**
16                                      )   **FRANCIS J. LOPEZ**
                                        )
17                                      )
                                        )
18                                      )   Date: August 22, 2005
                                        )   Time: 10:00 a.m.
19                                      )   Ctrm: 4
                                        )
20                                      )
                                        )
21                                      )
                                        )
22                                      )

23        TO THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY

24  JUDGE, TO PETITIONING CREDITOR ALAN STANLY AND ALL INTERESTED

25  PARTIES:

26

27

28

# I.

## **STATEMENT OF FACTS**

Francis J. Lopez and the single petitioning creditor Alan Stanly have been involved in significant litigation against each other since before the bankruptcy filing of their entity Prism Advanced Technologies, Inc. ("Prism")  This litigation has been bitterly fought for the past two years and is now pending in Superior Court between the parties, namely Lopez v Stanly, Case No. GIN029692, filed on May 14, 2003, San Diego Superior Court, North County.  In that matter, Mr. Lopez is suing Mr. Stanly for numerous causes of action, including invasion of privacy, breach of fiduciary duty, trespass and identity theft. Mr. Stanly filed a cross-complaint, of course.  Recently, in a second case, Mr. Stanly was successful in obtaining a judgment against Mr. Lopez for approximately $50,000 relating to a guarantee both had made to Union Bank of a Prism loan.  This involuntary chapter 7 petition is simply an extension of the litigation and a new strategy by Mr. Stanly to cause as much business and personal pain to Mr. Lopez as possible.

In any event, Mr. Lopez has been a permanent resident of Florida since July, 2003 when he and his family moved there from California.  He owns a residence in Florida and is employed there.  None of his creditors other than Stanly have any particular nexus to California.  If an involuntary proceeding is appropriate, which it absolutely is not, it should proceed in the Northern District of Florida.

Finally, as to the merits, Mr. Lopez has well more than 12 creditors as Mr. Stanly knows very well.  Yet Mr. Stanly is the only petitioning creditor.  Mr. Lopez is generally paying his debts as they become due except, of course, the purported debt owed to Mr. Stanly.  If this matter is not dismissed, Mr. Stanly will provide that information in his Answer pursuant to FRBP 1003(b).

## II.

## STATUTORY BASIS FOR MOTION TO DISMISS

The statutory basis for a Motion to Dismiss this involuntary case is set forth in F.R.C.P. 12(b)(3) and (6). That rule states:

Rule 12. Defenses and Objections--When and How Presented--By Pleading or Motion--Motion for Judgment on the Pleadings

**(a) When Presented.**

(1) Unless a different time is prescribed in a statute of the United States, a defendant shall serve an answer

(A) within 20 days after being served with the summons and complaint, or

. . .

**(b) How Presented.**

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, . . . (6) failure to state a claim upon which relief can be granted, . . .

**(h) Waiver or Preservation of Certain Defense**

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

1      (3) Whenever it appears by suggestion of the parties or otherwise that

2  the court lacks jurisdiction of the subject matter, the court shall dismiss the

3  action.

4

5      This case should be dismissed for three reasons:  1)  It was filed in bad faith by Mr.

6  Stanly as a completely transparent litigation strategy, attempting to change, in a

7  fundamental way, the framework of the pending litigation between the parties.  2) If an

8  involuntary bankruptcy filing were appropriate, proper venue is in Florida where Mr.

9  Lopez lives and works, and all of his assets and creditors except Mr. Stanly are located.  3)

10 There is no basis for the involuntary filing and therefore there is a failure to state a claim

11 upon which relief can be granted.  Mr. Lopez has more than 12 creditors and therefore

12 more than one petitioning creditor is required and Mr. Lopez is paying his debts as they

13 become due except the purported debt owed to Mr. Stanly.

14

15                                **III.**

16         **THE CASE SHOULD BE DISMISSED OR TRANSFERRED**

17                    **BECAUSE OF IMPROPER VENUE**

18 The venue of a bankruptcy case is governed by 28 USC Section 1408 which states:

19    **§ 1408. Venue of cases under title 11**

20 Except as provided in section 1410 of this title, a case under title 11 may be

21 commenced in the district court for the district--

22    **(1)** in which the domicile, residence, principal place of business in the

23 United States, or principal assets in the United States, of the person or entity

24 that is the subject of such case have been located for the one hundred and

25 eighty days immediately preceding such commencement, or for a longer

26 portion of such one-hundred-and-eighty-day period than the domicile,

27 residence, or principal place of business, in the United States, or principal

28

1    assets in the United States, of such person were located in any other district;

2    or

3    (2) in which there is pending a case under title 11 concerning such person's affiliate,

4  general partner, or partnership.

5

6    Mr. Lopez is domiciled in Florida, and has been for more than two years.  He has no

7  assets or business in California.  He and his wife are both employed in Florida where they

8  own a home.

9    The basis for Mr. Stanly's claim that venue is proper in the Southern District of

10  California is the pending case of Prism Advanced Technologies, Inc., Case No. 03-07777-

11  JM7 (the Prism Bankruptcy").  The Prism Bankruptcy has been pending since an order for

12  relief was entered on September 18, 2003.  Mr. Lopez was one of the two shareholders of

13  Prism, Mr. Stanly being the other.  The trustee in the Prism Bankruptcy case sued Mr.

14  Lopez for turnover but the matter was easily resolved by stipulation between the trustee

15  and Mr. Lopez.  Other than that proceeding, Mr. Lopez has had no involvement in the

16  Prism Bankruptcy case.

17    Since this involuntary case was not filed in the proper venue, existing defects in

18  venue must be cured under 28 USC § 1406(a) by requiring that the case be dismissed or

19  transferred to the proper venue.  Once venue is contested and found to be improper, the

20  bankruptcy court in San Diego may not retain the case based on convenience of the parties,

21  but rather must dismiss it or transfer it pursuant to Section 1406(a) and FRBP 1014(a)(2).

22

23    This holding is supported by FRBPand its history.

24        **FRBP 1014  Dismissal and Change of Venue**

25    (a) Dismissal and Transfer of cases

26      (1) Cases filed in proper district

27        If a petition is filed in a proper district, on timely motion of a party in

28    interest, and after hearing on notice to the petitioners, the United States

1    trustee, and other entities as directed by the court, the case may be

2    transferred to any other district if the court determines that the transfer is in

3    the interest of justice or for the convenience of the parties.

4

5        The involuntary petition was filed (as an obvious litigation tactic) in this district

6    even though there is an available district with substantially stronger venue facts.  For that

7    reason, "in the interest of justice," the case should be dismissed or transferred to Florida.

8    Mr. Lopez requests that if the court will not dismiss this case, it be transferred to Florida

9    before any adjudication is made on any other issue.  The issue of improper venue must be

10   raised at the commencement of the action or it is waived.  Once the court determines that

11   venue is more proper in another district, the case should be dismissed or transferred.

12       In re Bankers Trust, 403 F.2d 16 (7th Cir. 1968) (factors to be considered are

13   proximity of creditors of every kind, proximity of debtors to court, proximity to court of

14   witnesses necessary to administration of estate, location of assets, economical and efficient

15   administration of estate, and intertwined relationships of debtors); In re Peachtree Lane

16   Associates, Ltd., 188 B.R. 815, (Bkrtcy N.D.Ill.1995)(court should address whether

17   transfer of underlying bankruptcy case or adversary proceeding would promote efficient

18   administration of bankruptcy estate, judicial economy, timeliness, and fairness); In re

19   Jolly, 106 B.R. 299 (Bkrtcy.M.D.Fla.1989)(Principal criteria are proximity of creditors and

20   debtors to court, proximity of witnesses necessary to administration of estate, location of

21   assets, and economic and efficient administration of estate).

22       It will be extremely difficult for a chapter 7 trustee in San Diego to administer this

23   case when the debtors live, work and have all of their assets more than 3,000 miles away.

24   The administration will be far from "economical and efficient."  The case should be

25   dismissed.

26

27

28

# IV.

## THE COURT SHOULD ABSTAIN FROM HEARING

## THE MATTER AND DISMISS

The court should abstain from proceeding with this matter pursuant to Section 305 which states:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or

Clearly the interests of creditors and the debtor would be better served by dismissing this case. If Mr. Stanly wants to pursue an involuntary proceeding in Florida, that is his right.

In the matter of In re Spade, 258 B.R. 221 (Bankr.D.Colo.2001), the court found that

> The interests of the creditors and alleged debtor were better served by dismissing the involuntary Chapter 7 petition, pursuant to Section 305, since the petitioning creditors filed the petition not to commence an orderly and fair distribution of alleged debtor's assets to all creditors, but as a litigation tactic to control the forum and to gain an advantage.

In Spade, two lawsuits involving the parties were pending in state court. The court said that "the case is little more than a two-party collection dispute," and dismissed it. That is almost exactly if not exactly the same as the facts here.

In re Hall, Bayoutree Associates, Ltd., 939 F.2d 802 (9th Cir. (Ariz.) 1991), the court stated:

1    A review of the record reveals that the district court did not abuse its

2    discretion in dismissing the case. Although dismissal of an action for

3    improper venue is a harsh penalty, dismissal is proper where filing in an

4    improper forum evidences bad faith. *See* 1 J. Moore, A. Vestal & P. Kurland,

5    Moore's Manual, Federal Practice and Procedure, § 7.13[1] (1990); *cf.*

6    Phillips v. Illinois Cent. Gulf R.R., 874 F.2d 984, 986 (5th Cir.1989). We

7    therefore affirm the district court's dismissal of the case.

8

9    This case reeks of bad faith.  It has long been a rule of bankruptcy that a case may

10   be dismissed if it was filed in bad faith.  In In re Stolrow's Inc., 84 B.R. 167 (9th Cir. BAP

11   (Cal.) 1988), the BAP confirmed that dismissal of a chapter 11 case for lack of good faith

12   "is a matter for the bankruptcy court's discretion."  In In re St. Paul Self Storage Ltd.

13   Partnership, 185 B.R. 580 (9th Cir. BAP (Ariz.) 1995), the court found the existence of

14   cause since the case was essentially "a two-party dispute capable of prompt adjudication in

15   state court."

16   This case has been filed in bad faith because the bankruptcy filing will remove Mr.

17   Lopez as the plaintiff in the case against Mr. Stanly.  Mr. Lopez will be replaced by a

18   trustee who presumably will have no motivation to fight against Mr. Stanly and will settle.

19   This is a litigation tactic and should not be condoned and the case should be dismissed.

20

21                                    **V.**

22                              **CONCLUSION**

23   The alleged debtor asks this court to dismiss this involuntary proceeding on the

24   //

25   //

26   //

27   //

28   //

1  grounds of improper venue, bad faith and/or abstention.  If Mr. Stanly really believes that

2  an involuntary bankruptcy is appropriate, he can refile in the Northern District of Florida.

3

4                                        Respectfully submitted,

5                                        LAW OFFICES OF M. JONATHAN HAYES

6

7

8  Dated: _July 19, 2005_        By: _____

9                                        M. Jonathan Hayes, attorney for Francis J.
                                         Lopez

10

11

12

13

14      Signature by the attorney constitutes a certification under Fed. R. Bankr. P. 9011

15  that the relief provided by the order is the relief granted by the court.

16

17      Submitted by:

18

19  By: _____
        M. Jonathan Hayes
20      Attorney for Francis J. Lopez

21

22

23

24

25

26

27

28

1

2                          **DECLARATION OF FRANCIS J. LOPEZ**

3          I, Francis J. Lopez, declare as follows:

4          1.      I am the alleged debtor in this matter.  The statements made herein are of my

5    own personal knowledge and if called upon to testify, I could and would competently

6    testify thereto.

7          2.      I was one of the two shareholders of Prism Advanced Technologies, Inc.

8    ("Prism"), Mr. Stanly being the other.  The trustee in the Prism Bankruptcy case sued me

9    for turnover of assets but the matter was easily resolved by stipulation between the trustee

10   and myself.  Other than that proceeding, I have had no involvement in the Prism

11   Bankruptcy case.

12         3.      Alan Stanly and I have been involved in significant litigation against each

13   other since before the bankruptcy filing of our entity Prism.  In fact, litigation is pending

14   right now in Superior Court between us, namely <u>Lopez v Stanly</u>, Case No. GIN029692,

15   filed on May 14, 2003, pending in San Diego Superior Court, North County.  In that

16   matter, I sued Mr. Stanly for numerous causes of action, including invasion of privacy,

17   breach of fiduciary duty, trespass and identity theft.  Mr. Stanly filed a cross-complaint, of

18   course.  Recently, in a second case, Mr. Stanly was successful in obtaining a judgment

19   against me for approximately $50,000 relating to a guarantee both had made to Union

20   Bank of a Prism loan.  This involuntary chapter 7 petition is simply an extension of the

21   litigation and a new strategy by Mr. Stanly to cause me and my family as much business

22   and personal pain as possible.

23         4.      I have been a permanent resident of Florida since July, 2003 when my wife

24   and I and our two children moved here from California.  We own a residence in Florida

25   and are both employed there.  None of my creditors other than Stanly have any particular

26   nexus to California.  I have more than 12 creditors and am generally paying my debts as

27   they become due except, of course, the purported debt owed to Mr. Stanly.  I have no

28

1   assets or business in California.

2

3       I declare under penalty of perjury under the laws of the United States of America

4   that the foregoing is true and correct to the best of my knowledge and belief.

5       Executed this ___19th___ day of July, 2005 at Destin, FL.

6

7

8                                   Francis J. Lopez

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TAB 16

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA
# Minute Order

### *Hearing Information:*

|  |  |  |  |
|---|---|---|---|
| **Debtor:** | FRANCIS J. LOPEZ | | |
| **Case Number:** | 05-05926-PB7 | **Chapter:** 7 | |
| **Date / Time / Room:** | MONDAY, AUGUST 22, 2005 02:30 PM   DEPARTMENT 4 | | |
| **Bankruptcy Judge:** | PETER W. BOWIE | | |
| **Courtroom Clerk:** | MARCIA PEARSON | | |
| **Reporter / ECR:** | LYNETTE ALVES | | |

### *Matter:*

ALLEGED DEBTOR'S MOTION TO DISMISS OR TRANSFER INVOLUNTARY PETITION TO THE NORTHERN DISTRICT OF FLORIDA

### *Appearances:*

M. Jonathan Hayes, ATTORNEY FOR FRANCIS J. LOPEZ
L. Scott Keehn, ATTORNEY FOR ALAN STANLY

### *Disposition:*

Motion denied without prejudice;Order to be prepared by Keehn.
Answer due 9/7

**ASA 0012**

# TAB 20

CSD 1001 [09/11/07]

Name, Address, Telephone No. & I.D. No.
L. Scott Keehn (61691)          619-232-1700
**ROBBINS & KEEHN, APC**
530 B Street, Suite 2400
San Diego, CA  92101

Attorneys for **ALAN STANLY**

Order Entered on
**September 01, 2005**
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

Francis J. Lopez

                                                    Debtor.

**LODGED**

BANKRUPTCY NO.    05-05926-PB7

Date of Hearing:  August 22, 2005
Time of Hearing:  2:30 p.m.
Name of Judge:    Peter W. Bowie

## ORDER DENYING (WITHOUT PREJUDICE) ALLEGED DEBTOR'S MOTION TO DISMISS OR TRANSFER INVOLUNTARY PETITION TO THE NORTHERN DISTRICT OF FLORIDA

        IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2__ with exhibits, if any, for a total of __2__ pages, is granted.  Notice of Lodgment Docket Entry No. __17__

//

//

//

//

//

//

DATED:  **September 01, 2005**

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Robbins & Keehn, APC
(Firm name)

By: /s/ L. Scott Keehn
    Attorney for ☐ Movant ☑ Respondent

Judge, United States Bankruptcy Court

**ASA 0013**

CSD 1001C/103613

ORDER DENYING (WITHOUT PREJUDICE) ALLEGED DEBTOR'S MOTION TO DISMISS OR TRANSFER INVOLUNTARY
PETITION TO THE NORTHERN DISTRICT OF FLORIDA
DEBTOR: Francis J. Lopez                                    CASE NO:05-05926-PB7

The Alleged Debtor's motion to dismiss or, in the alternative, transfer venue of the Involuntary Petition to the Northern

District of Florida (the "Motions") came on regularly on August 22, 2005, at 2:30 p.m. in department 4 of the above entitled court

located at 325 West "F" Street, San Diego, California, the Honorable Peter W. Bowie, Judge, presiding.  Appearances were

made by the firm of Robbins & Keehn, APC, by L. Scott Keehn on behalf of Alan Stanly, petitioning creditor in opposition to

the motion, and Law Office of M. Jonathan Hayes, by M. Jonathan Hayes on behalf of the movant and Alleged Debtor, Francis

J.Lopez.

The court having previously considered all of the pleadings, papers, requests for judicial notice, and declarations

submitted by the parties in support of their respective positions, the oral arguments, contentions, and requests of the parties

were fully heard and considered in open session.

The court's findings of fact and conclusions of law were stated orally by the court, and recorded in open session,

following the close of argument, and are incorporated herein by this reference pursuant to Rules 7052 and 9014 of the Federal

Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure.  Based upon the foregoing, and good

cause therefore appearing,

**IT IS HEREBY ORDERED** that:

(1)      The Motions are denied without prejudice; and,

(2)      Alleged Debtor Francis J. Lopez is ordered to answer the petition on or before September 7, 2005.

**ASA 0014**

*Signed by Judge Peter W. Bowie September 01,2005*

# TAB 22

1 | M. Jonathan Hayes (Bar No. 90388)
**Law Office of M. Jonathan Hayes**
2 | 21800 Oxnard St, Suite 840
Woodland Hills, CA 91367
3 | Telephone: (818) 710-3656
Facsimile: (818) 710-3659
4 | jhayes@polarisnet.net

FILED AC

05 SEP -7 AM 9: 27

CLERK
U.S. BANKRUPTCY CT.
SO. DIST. OF CALIF.

5 | Attorneys for Alleged Debtor Francis Lopez

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO DIVISION

| | |
|---|---|
| In Re: | CASE NO. 05-05926-PBINV |
| FRANCIS J. LOPEZ, | Involuntary Chapter 7 |
| Alleged Debtor | **ANSWER OF ALLEGED DEBTOR TO INVOLUNTARY PETITION** |

COMES NOW the alleged debtor Francis J. Lopez ("alleged debtor" or "Lopez") and answers the involuntary petition as follows:

1.    Alleged debtor admits that the matters raised in the petition are a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(4).

2.     Alleged debtor denys that he has been domiciled in this district for the 180 days preceding the filing of the involuntary petition. Alleged debtor admits that a bankruptcy case concerning debtor's affiliate is pending in the district.

3.     Alleged debtor denies that his debts are primarily business debts.

4.     Alleged debtor has authority to answer the involuntary petition pursuant to Federal Rules of Bankruptcy Procedure Rule 1011(a).

## FIRST AFFIRMATIVE DEFENSE

5.     Alleged debtor asserts that the court lacks subject matter jurisdiction on the basis that the alleged debtor has more than 12 creditors and the petition was executed and initiated by only one creditor. Pursuant to FRBP Rule 1003(b), a list of all of the alleged debtor's creditors, addresses and a brief statement of the nature of their claims is attached hereto and incorporated by reference as Exhibit A. Alleged debtor reserves the right to supplement, add or amend the information contained in Exhibit A as further information is obtained.

## SECOND AFFIRMATIVE DEFENSE

6.     Alleged debtor asserts that the court lacks subject matter jurisdiction on the basis that the petitioning creditor is disqualified from bringing an involuntary petition against this alleged debtor because the alleged debt that constitutes the basis of petitioning creditor's claim is subject to a bona fide dispute.

## THIRD AFFIRMATIVE DEFENSE

7.     Alleged debtor alleges that the petition was filed in bad faith and for the purpose of disrupting on-going litigation between the alleged debtor and the petitioning creditor.

## FOURTH AFFIRMATIVE DEFENSE

8.     Alleged debtor asserts that the order for relief should not issue because the alleged debtor was, as of the date of the petition, generally paying his debts as they became due, unless those debts were subject to a bona fide dispute.

FIFTH AFFIRMATIVE DEFENSE

9.     Alleged debtor asserts that the case should be transferred to Florida which is the proper venue.

PRESERVATION OF CLAIMS

10.     Alleged debtor hereby reserves and shall not be deemed by this answer to have waived his rights to a cross claim or other relief pursuant to 11 U.S.C. §303(i)(1) and (2) and all subparts thereto, and as against petitioning creditors and/or those acting in conjunction with or counseling them.

WHEREFORE, alleged debtor prays:

1.     That the court decline to enter any order for relief pursuant to 11 U.S.C. §303;

2.     That the court dismiss the petition forthwith;

3.     That the court thereafter permit the alleged debtor to seek compensation by counterclaim or other appropriate method for the entry of a judgment against petitioning creditor and other appropriate parties, pursuant to 11 U.S.C. §303(i); and

4.     Such other relief as the court may deem proper.

Respectfully submitted,

LAW OFFICES OF M. JONATHAN HAYES

Dated:  *Sept 6, 2005*

By: _____
M. Jonathan Hayes, attorney for Francis J. Lopez

1

2

3          Signature by the attorney constitutes a certification under Fed. R. Bankr. P. 9011

4     that the relief provided by the order is the relief granted by the court.

5

6          Submitted by:

7

8          By: _____

9                M. Jonathan Hayes
                  Attorney for Francis J. Lopez

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANCIS LOPEZ
EXHIBIT A
LIST OF CREDITORS

Progressive Insurance
PO Box 31260
Tampa, FL  33631
Acct. 37287380-4
$157.20
Insurance, Auto

Coastal Community Insurance
12139 Panama City Beach Pkwy.
Panama City Beach, FL  32407
Policy No. LHQ336763
$1,013.00
Insurance, Flood (Property)

Quicken Platinum Card
PO Box 44167
Jacksonville, FL  32231
$848.00
Goods and services, 1998- 2005

Okaloosa Gas District
PO Box 548
Valparaiso, FL  32580
$45.00
Utilities

Northwest Florida Daily News
200 Racetrack Rd.
Ft. Walton Beach, FL  32549
$45.00
Newspaper

Kelly Plantation Owners Association
4393 Commons Drive E.
Destin, FL  32541
$550.00
Homeowner's Association

Allstate Floridian
54 Beal Parkway
Ft. Walton Beach, FL  32548
$1900.00
Homeowners Insurance

EXHIBIT A

Texaco / Shell
PO Box 9151
Des Moines, IA  50368
Acct. No. 77-917-6550-1
$290.00
Gasoline and related

Bank Of America
PO Box 1390
Norfolk, VA  23501
Acct. No. 4050860512429141
Credit Card, goods and services
$2386.00

Verizon Wireless
PO Box 660108
Dallas, TX  75266
Acct. No. 81955380600001
$45.00
Utility – telephone

Cox Communications
PO Box 60970
New Orleans, LA
Acct. No. 0018710003886502
Utility – television and Internet
$112.00

Union Bank of California
8155 Mercury Ct.
San Diego, CA  92111
Settlement of Union Bank v. Francis Lopez, $15,000 original balance
$4,000.00

Bankcard Services
PO Box 15287
Wilmington, DE  19886
Acct. No. 5490999178488929
$10,000.00
Goods and services – 2001- 2005

Cingular Wireless
PO Box 8229
Aurora, IL  60572
Acct. No. 0050443578
$125.00
Utilities – telephone

EXHIBIT A                                                    ASA 0020



Wayne Wise
810 Red Tanager Ct.
Nashville, TN  37221
$15,000.00
Personal Loan

Valley Forge Life Insurance
100 CNA Drive
Nashville, TN  37214
Acct. No. VITU045825
$0.00   ($486.00 per year)
Life Insurance

American Home Shield
PO Box 849
Carroll, IA  51401
Acct. No. 58449061
$128.00
Home appliance insurance

Citi Cards
PO Box 6414
The Lakes, NV  88901
Acct. No. 5424180306665024
$32,515.00
Goods and Services, 1994 - 2005

Household Bank / HSBC
PO Box 5222
Carol Stream, IL  60197
Acct. No. 5176690006732635
Goods and Services, 2003 - 2005
$5,000.00

American Express
PO Box 297804
Ft. Lauderdale, FL  33329
Acct. No. 378349802283007
$22,000.00
Goods and Services, 1994 - 2004
Note:  Some of this debt may be owed by Prism and/or Stanly, though I have personal
guarantee

EXHIBIT A

ASA 0021




Ft. Walton Beach Medical Center
1000 Mar Walt Drive
Ft. Walton Beach, FL 32547
$1600.00
Medical and Health services
Making payments of $100.00 month

Alan Stanly
1569 Berkshire Ct.
San Marcos, CA 92069
$50,000.00
Judgment in Union Bank v. Stanly (cross-complaint by Stanly)
Currently under appeal in CA

ASA 0022

PROOF OF SERVICE

I, MJ Hayes, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 21800 Oxnard St., Suite 840, Woodland Hills, CA 91367.  On September 6, 2005, I served the within documents:

**ANSWER OF ALLEGED DEBTOR TO INVOLUNTARY PETITION**

        by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

ý      by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

..     by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below.

..     by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery

..     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

L. Scott Keehn
Robbins & Keehn, APC
530 B Street, Suite 2400
San Diego, CA 92101

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 6, 2005, at Los Angeles, California.

_____
MJ Hayes

# TAB 23

ENTERED _____

FILED

SEP - 7 2005

CLERK, US BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

1       UNITED STATES BANKRUPTCY COURT

2       SOUTHERN DISTRICT OF CALIFORNIA

3       JUDGE PETER W. BOWIE, PRESIDING

CERTIFIED COPY

4

5    IN THE MATTER OF:          NO. 05-05926-PB

6

7

8    FRANCIS J. LOPEZ

9

10

11   ALLEGED DEBTOR'S MOTION TO DISMISS OR TRANSFER

12   INVOLUNTARY PETITION TO THE NORTHERN DISTRICT OF FLORIDA

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDING

16

17

18            SAN DIEGO, CALIFORNIA

19            MONDAY, AUGUST 22, 2005

20

21   U.S. BANKRUPTCY COURT        BY COLLETTA JOHNSON, CSR,RPR
     DEPARTMENT THREE             CSR NO. 12589
22   325 WEST F STREET            FEDERAL COURT REPORTERS
     SAN DIEGO, CA 92101          325 WEST F STREET
23                                SAN DIEGO, CA 92101
                                  (619) 474-3737
24

25

1

ASA 0024

1                          APPEARANCES

2

3

4    FOR CREDITOR:                ROBBINS & KEEHN
                                  BY:  L. SCOTT KEEHN
5                                 530 B STREET, SUITE 2400
                                  SAN DIEGO, CALIFORNIA 92101
6                                 (619) 232-1700

7

8    FOR DEBTOR:                  LAW OFFICE OF M. JONATHAN HAYES
                                  BY:  M. JONATHAN HAYES
9                                 21800 OXNARD STREET, #840
                                  WOODLAND HILLS, CALIFORNIA 91367
10                                (818) 710-3656

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

ASA 0025

1    SAN DIEGO, CALIFORNIA, MONDAY, AUGUST 22, 2005, 2:45 P.M.

2

3      MS. PEARSON:  FRANCIS J. LOPEZ, ALLEGED DEBTOR'S

4 MOTION TO DISMISS OR TRANSFER INVOLUNTARY PETITION TO

5 THE NORTHERN DISTRICT OF FLORIDA.

6      MR. KEEHN:  GOOD AFTERNOON, YOUR HONOR.  SCOTT KEEHN

7 FROM THE FIRM OF ROBBINS & KEEHN APPEARING ON BEHALF OF

8 PETITIONING CREDITOR, ALAN STANLY, WHO IS PRESENT AND AT

9 COUNSEL TABLE.

10      THE COURT:  OKAY.

11      MR. HAYES:  GOOD AFTERNOON, YOUR HONOR.  JONATHAN

12 HAYES, H-A-Y-E-S, FOR THE ALLEGED DEBTOR.

13      THE COURT:  MR. HAYES, YOUR MOTION.

14      MR. HAYES:  YOUR HONOR, THE MOTION ASKS THAT THE

15 INVOLUNTARY BANKRUPTCY BE DISMISSED AS A BAD FAITH

16 FILING AS A LITIGATION TACTIC, OR IN THE ALTERNATIVE,

17 ASK THE COURT TO ABSTAIN FROM HEARING THE INVOLUNTARY AT

18 ALL, OR IN THE ALTERNATIVE, ASK THAT THE CASE BE

19 TRANSFERRED TO FLORIDA BECAUSE THAT'S WHERE THE DEBTOR

20 LIVES.  THAT'S WHERE HIS CREDITORS ARE.  THAT'S WHERE

21 HIS FAMILY IS.  THAT'S WHERE HIS PROPERTY IS.

22      I DON'T KNOW HOW MUCH THE COURT WANTS.

23      THE COURT:  I'VE READ THE PAPERS.

24      MR. HAYES:  RIGHT.  I'M CERTAINLY WILLING AND READY

25 TO ANSWER ANY QUESTIONS THE COURT MAY HAVE.

ASA 0026

1    THE COURT:  I ASSUME YOU APPRECIATE THAT I CAN'T

2  RELY ON YOUR CLIENT'S CONCLUSORY ASSERTION THAT THERE

3  ARE MORE THAN 12 CREDITORS TO SIMPLY USE THAT AS A BASIS

4  FOR DISMISSAL; RIGHT?

5    MR. HAYES:  YES.  I ACCEPT THAT.

6    THE COURT:  ALL RIGHT.

7    MR. HAYES:  I BELIEVE THERE IS MORE THAN AMPLE

8  EVIDENCE THAT IT'S A LITIGATION TACTIC.  THESE PARTIES

9  HAVE BEEN GOING AT IT FOR A FEW YEARS NOW.  THIS IS A

10  BUSINESS DIVORCE.  THERE IS LITIGATION PENDING NOW

11  BETWEEN THEM.  AND THIS INVOLUNTARY WILL THROW THAT OFF

12  THE TRACK, BRINGING IN A TRUSTEE.  IT JUST SEEMS TO BE

13  TRANSPARENT TO ME THAT THE PURPOSE OF THE BANKRUPTCY IS

14  NOT TO ALLOW MR. LOPEZ'S PROPERTY TO BE ADMINISTERED FOR

15  THE BENEFIT OF HIS CREDITORS.

16    THERE'S A COMMENT THAT -- WELL, I THINK THERE'S

17  FRAUDULENT CONVEYANCES, THAT IS SILLY FOR ONE THING, BUT

18  THERE'S NO EVIDENCE OF WHAT IT MIGHT BE; WHAT HE MIGHT

19  HAVE TRANSFERRED; WHERE IT MIGHT BE.  THERE'S THESE

20  PROPERTIES THAT THESE CORPORATIONS THAT THE TESTIMONY --

21  THE STATEMENTS IN THE DECLARATIONS -- ARE CONSISTENT

22  WITH THE TESTIMONY IN THE DEBTOR'S EXAM.  THEY'RE

23  DEFUNCT CORPORATIONS.

24    BUT IF THE COURT ISN'T WILLING TO JUST DISMISS

25  IT AS BEING IN BAD FAITH, THEN WE WOULD ASK THAT THE

4

```
 1   CASE BE TRANSFERRED BACK TO FLORIDA AND MOVE THERE.

 2   THAT'S WHERE HE LIVES NOW.  IT'S BEEN MORE THAN TWO

 3   YEARS.  HE'S ONLY COME TO CALIFORNIA A COUPLE OF TIMES

 4   SINCE.  THAT'S, FRANKLY, INVOLVED WITH THESE LITIGATION

 5   MATTERS.  I PERSONALLY HAVE NEVER MET HIM.  THIS IS THE

 6   SECOND MATTER I'VE HANDLED FOR HIM.  I KNOW HE

 7   DOESN'T -- I SHOULD SAY --

 8       THE COURT:  DOES HE REALLY EXIST?

 9       MR. HAYES:  HE DOES.  SOMEBODY WITH HIS NAME CALLED

10   ME THIS MORNING, AND I RECOGNIZED IT WAS THE SAME VOICE

11   AS I HAD HEARD BEFORE.

12       THE COURT:  WHOEVER THAT IS; RIGHT?

13       MR. HAYES:  THANK YOU.

14           I CAN ANSWER MORE QUESTIONS.

15       THE COURT:  NO.  GO AHEAD MR. KEEHN.

16       MR. KEEHN:  THANK YOU, YOUR HONOR.  FIRST, YOUR

17   HONOR, BEFORE I ADDRESS THE ISSUES, I WANT TO THANK BOTH

18   THE COURT AND COUNSEL FOR THE ACCOMMODATION IN

19   SCHEDULING.  AND I THINK YOUR BROTHERS FORWARD OF

20   BROADWAY WILL THANK YOU AS WELL.  WE WERE SUCCESSFUL IN

21   OUT ATTEMPTS TO SETTLE THAT MATTER.

22           BUT ADDRESSING THESE ISSUES, YOUR HONOR, AND I

23   THINK IT'S FAIRLY CLEAR ON THE RECORD NOW THAT WE'RE NOT

24   REALLY SUGGESTING, AS THE MOVING PAPERS INDICATED, THAT

25   THE MATTER BE DISMISSED FOR LESS THAN 12 CREDITORS.  I
```

5

1  THINK EVERYONE UNDERSTANDS HOW THAT NEEDS TO BE PROVEN

2  UP.

3          AS FAR AS BAD FAITH LITIGATION TACTICS, YOUR

4  HONOR, I THINK A COUPLE OF THINGS THAT ARE IN THE RECORD

5  ARE INTERESTING TO NOTE.

6          FIRST, THERE WAS NO EVIDENTIARY OBJECTION TO OR

7  CONTROVERSY OVER THE FACTS EMBODIED IN MR. STANLY'S

8  DECLARATION, WHICH I THINK FAIRLY AND ADEQUATELY

9  ESTABLISHES BOTH FINDINGS AS FAR AS THIS CASE IS

10 CONCERNED.  IF YOU SEARCH THE RECORD OF THIS CASE, THE

11 ONLY CREDITOR THAT IS DISCLOSED AS TO IDENTITY AND

12 AMOUNT OF THE CLAIM IS MR. STANLY.  HIS CLAIM, AS THE

13 EVIDENCE SHOWS, IS A JUDGMENT CLAIM, PRINCIPAL AMOUNT OF

14 $50,000.  NOW, SOMEWHERE IN THE REPLY PAPERS, I BELIEVE,

15 THE CONTENTION IS ADVANCED THAT THIS IS SOMEHOW A

16 DISPUTED CLAIM.  WELL, AS YOU CAN SEE FROM EXHIBIT 1 TO

17 THE STANLY DECLARATION, IT'S THE RESULT OF THE JUDGMENT.

18 AND THERE'S NO STAY OF THE EXECUTION.

19         SO EVEN IF THE MATTER IS ON APPEAL, I THINK FOR

20 PURPOSES OF DETERMINING WHETHER THIS IS A BONA FIDE

21 DISPUTE, AS THAT TERM IS USED BY THE *BANKRUPTCY CODE*, IT

22 DOESN'T EXIST.

23         SO HERE WE HAVE THE ONLY CREDITOR WE REALLY

24 KNOW ABOUT IN THE MATTER, WHO HAS A FIVE-FIGURE CLAIM

25 THAT CAN'T FAIRLY BE CHARACTERIZED AS THE SUBJECT OF

6

ASA 0029

1  CONTROVERSY.  WHO IS HERE.  WHO'S CLAIM ORIGINATED HERE

2  IN THE COURTS OF CALIFORNIA.  AND HE HAS FILED THE

3  BANKRUPTCY PETITION HERE FOR THE PURPOSE OF ATTEMPTING

4  TO COLLECT IT HERE.  AND I WILL GET INTO THIS IN A

5  LITTLE MORE DETAIL, BUT WHEN IT COMES TO THE QUESTION OF

6  WHETHER WHEN AN ORDER FOR RELIEF IS ULTIMATELY ENTERED

7  IN THIS CASE, AND SOME TRUSTEE IS SADDLED WITH THE

8  CONSIDERABLE UNDERTAKING OF SIFTING THROUGH MR. LOPEZ'S

9  HISTORY OF TRANSACTIONS AND EVENTS, HE WILL BE LOOKING

10  TO WITNESSES THAT ARE HERE IN CALIFORNIA.

11          NOW, I THOUGHT IT INTERESTING THAT COUNSEL SAID

12  THAT THERE WAS SOME VAGUE REFERENCE TO FRAUDULENT

13  TRANSFER, BUT HE DIDN'T HAVE ANY IDEA WHAT THAT IS.  I

14  FOUND THAT INTERESTING BECAUSE, AND I OFFERED THE PROOF

15  ON NOVEMBER 1ST OF 2004, MR. LOPEZ VERIFIED SUPPLEMENTAL

16  RESPONSES TO INTERROGATORIES IN THE STATE COURT ACTION

17  REFERRED TO AS *LOPEZ V. STANLY*.  WHAT WAS INTERESTING IN

18  HIS RESPONSE, SUPPLEMENTAL RESPONSE TO INTERROGATORY

19  9.1, WHICH I DIDN'T HAVE THE TEXT OF IT IN FRONT OF ME,

20  SO I HAD TO PARAPHRASE HIS ANSWER, BUT HE'S SAYING --

21      THE COURT:  IF IT WAS IN 9.1, IT MUST HAVE BEEN ONE

22  YOU WROTE; RIGHT?

23      MR. KEEHN:  IT MAY HAVE BEEN ONE OF THE -- I BELIEVE

24  IT WAS THE COURT'S, YOUR HONOR.  SO, NO, I CAN'T TAKE

25  CREDIT FOR THAT.  I WOULD LIKE TO.

ASA 0030

1      BUT IT ADDRESSES DAMAGES.  AND HE CLAIMS

2  $50,000 OF DAMAGES AGAINST MR. STANLY BECAUSE HE HAD TO

3  SELL HIS HOME FOR $50,000 LESS THAN ITS FAIR MARKET

4  VALUE.  SO WHAT WE HAVE IS A JUDICIAL OMISSION BY THIS

5  ALLEGED DEBTOR THAT HE HAS SOLD HIS PRIMARY ASSET, HIS

6  RESIDENCE, FOR AT LEAST $50,000 -- THAT'S WHAT HE ADMITS

7  TO IT BEING -- UNDER THE MARKET.  HE ALSO SAYS IN THIS

8  DECLARATION THAT HE'S BEEN A FLORIDA RESIDENT SINCE JULY

9  OF 2003.  STILL THAT RESIDENCE OCCURRED SHORTLY BEFORE

10  MR. LOPEZ REMOVED HIMSELF TO FLORIDA.

11      NOW, THAT RAISES A REALLY INTERESTING PROBLEM

12  FOR WHATEVER TRUSTEE IS ULTIMATELY SADDLED WITH THE

13  BURDEN OF FIGURING OUT WHAT WAS WHAT WITH REGARD TO

14  MR. LOPEZ.  AND THE REASON THAT IT'S SUCH AN INTRIGUING

15  QUESTION IS BECAUSE SECTION 308 OF THE NOW FAMOUS

16  *BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT*,

17  MAKES IMMEDIATELY EFFECTIVE ITS AMENDMENTS TO SECTION

18  522(O).

19      NOW, THAT SECTION, THE COURT WILL RECALL,

20  PROVIDES A TEN-YEAR LOOK BACK FOR TRANSACTIONS,

21  BASICALLY, THAT RESULT IN DISPOSITIONS THAT MAY HAVE

22  BEEN MADE FOR THE PURPOSE OF HINDERING, DELAYING, OR

23  DEFRAUDING CREDITORS, AND NOW RESULTS IN A HOMESTEAD.

24      WELL, FLORIDA'S HOMESTEAD IS LEGENDARY UNDER

25  $25,000.  I CAN'T CITE YOU THE EXACT STATUTORY

ASA 0031

1   PROVISION, BUT IF THE COURT WANTS IT, I CAN PROVIDE IT.

2   AND SO WE SEE THAT WITHIN A MONTH OF HIS ESTABLISHING

3   HIS RESIDENCE IN FLORIDA, MR. LOPEZ ADMITS TO SELLING

4   HIS HOMESTEAD HERE FOR LESS THAN FAIR VALUE AND ACQUIRES

5   A HOME IN FLORIDA WHERE HE CAN NOW CLAIM HIS $125,000

6   EXEMPTION.  NOW, WHAT THE AMENDMENT TO 522(O) PUTS INTO

7   THE HANDS OF THE TRUSTEE IS THE ABILITY TO SET ASIDE

8   $50,000 WORTH OF THAT EXEMPTION.

9        AND WHERE WILL THE WITNESSES COME FROM IF THE

10  TRUSTEE CHOOSES TO LITIGATE THAT ISSUE?  THEY'RE NOT IN

11  FLORIDA.  THEY'RE ALL IN CALIFORNIA.  THE REALTOR THAT

12  SOLD IT IS HERE IN CALIFORNIA.  ANY OF THE PARTIES THAT

13  MADE OFFERS TO MR. LOPEZ ARE HERE IN CALIFORNIA.  IN

14  OTHER WORDS, THE ONLY TRUSTEE THAT WOULD BE

15  DISADVANTAGED BY HAVING THE CASE MOVED TO FLORIDA IS THE

16  FLORIDA TRUSTEE.

17       AND I SUBMIT TO YOU THAT IF THIS CASE IS

18  TRANSFERRED TO FLORIDA, THAT TRUSTEE, BELEAGUERED AS HE

19  WILL BE WITH THIS CASE, IS MORE PROBABLY THAN NOT GOING

20  TO THROW UP HIS HANDS AND ABANDON ALL OF THESE POTENTIAL

21  CLAIMS.  AND YOU WILL HAVE ISSUES THAT COULD RESULT IN

22  SIGNIFICANT CONTRIBUTIONS TO THE ESTATE GOING UNATTENDED

23  TO.  WHY?  BECAUSE THE WITNESSES AREN'T IN FLORIDA.

24       BUT WE'RE NOT LEFT WITH JUST THE HOMESTEAD.

25  BECAUSE THERE IS A GAGGLE OF WITNESSES THAT PERTAIN TO

ASA 0032

1   AN ASSET, WHICH ACCORDING TO, ONCE AGAIN, MR. LOPEZ'S

2   NOVEMBER 1ST RESPONSE TO SUPPLEMENTAL RESPONSE TO

3   INTERROGATORY 9.1, SAYS THAT HE DOESN'T KNOW FOR SURE,

4   BUT HIS DAMAGES RANGE SOMEWHERE -- AGAIN, MR. STANLY --

5   RANGE SOMEWHERE BETWEEN $800,000 AND A MILLION FIVE.

6        NOW, WHAT DAMAGES ARE THOSE?  THOSE ARE DAMAGES

7   THAT HE HAS ALLEGED IN THE ACTION PENDING IN SUPERIOR

8   COURT, THE LOPEZ V. STANLY ACTION.  EVERY WITNESS ON THE

9   WITNESS LIST IN THAT CASE, OTHER THAN MR. LOPEZ HIMSELF,

10  IS HERE IN CALIFORNIA.  AND IF, IN FACT, HIS CLAIMS ARE

11  VALID, AND I WILL FOOTNOTE FOR THE RECORD THAT WE

12  CONTEND THAT THEY ARE NOT, AND I'VE REVIEWED THE MATTER

13  WITH TRIAL COUNSEL FOR THAT ACTION AND SHARE HIS

14  CONFIDENCE THAT MR. STANLY WILL BE VINDICATED, AND THAT

15  THE ACTUAL OBLIGATIONS WILL GO IN THE OTHER DIRECTION.

16  BUT TWO MOST VALUABLE POTENTIAL SOURCES IN A THEORETICAL

17  CONTEST FOR THIS ESTATE, THE LITIGATION ITEM AND THE

18  HOMESTEAD ITEM.  WITNESSES HERE IN CALIFORNIA.

19        NOW, WE'RE NOT THROUGH YET BECAUSE I WILL

20  INDICATE TO THE COURT THAT AFTER REVIEWING THE REPLY, I

21  WENT BACK TO THE JUDGMENT DEBTOR'S EXAM, EXCERPTS OF

22  WHICH WERE INCLUDED IN OUR -- IN MR. STANLY'S --

23  DECLARATION, AND I WILL MAKE AS AN OFFER OF PROOF THAT

24  ON PAGES 49 TO 50 OF THAT EXAMINATION, MR. LOPEZ ADMITS

25  TO HAVING SOLD HIS ROLEX WATCH TO ONE OF HIS ATTORNEYS,

ASA 0033

```
 1   MR. FISCHBACH, FOR THE PRINCELY SUM OF $2,500.  NOW, I'M
 2   NO EXPERT ON ROLEX WATCHES, BUT MY GUESS IS THAT ANY
 3   TRUSTEE WORTH HIS SALT IS GOING TO WANT TO KNOW A LITTLE
 4   BIT MORE ABOUT THAT TRANSACTION.  MR. FISCHBACH IS HERE
 5   IN CALIFORNIA.
 6           AT PAGES 55 AND 56, I'LL REPRESENT TO THE COURT
 7   AND MAKE AS AN OFFER OF PROOF, MR. LOPEZ ADDRESSES THE
 8   ISSUE OF A JAPANESE SUIT OF ARMOR THAT HE WAS KNOWN TO
 9   POSSESS.  HE CLAIMS THAT HE SOLD IT IN 2003.  WHEN ASKED
10   DID HE SELL IT IN FLORIDA, HE ANSWERED, "NO."
11           SO WE KNOW SINCE HE DIDN'T SELL IT FLORIDA, HE
12   MUST HAVE SOLD IT IN CALIFORNIA.  AND HOW MUCH DID HE
13   SELL IT FOR?  AGAIN, THE STAGGERING SUM OF $1,500.  I
14   DON'T KNOW FROM JAPANESE SUITS OF ARMOR, BUT MY GUESS IS
15   ANY TRUSTEE LOOKING AT THIS CASE IS GOING TO WANT TO
16   KNOW A LITTLE BIT MORE ABOUT HOW THAT PRICE WAS DERIVED
17   AND WHAT EVIDENCE OF VALUE THERE MAY BE.
18           I SUBMIT TO YOU THAT THOSE TRANSACTIONS, ALL OF
19   WHICH BY MR. LOPEZ'S ADMISSION, HERE IN THE STATE OF
20   CALIFORNIA WILL NOT BE -- FIND ANY ENLIGHTENMENT FROM
21   WITNESSES IN THE STATE OF FLORIDA.
22           SO THE QUESTION THEN BECOMES, AS WE HAVE
23   INDICATED IN OUR PAPERS, IN TERMS OF VENUE SELECTION, I
24   THINK ONE POINT IS VERY SIGNIFICANT TO MAKE AT THE
25   OUTSET.  NO ONE ARGUES THAT THIS IS A TECHNICALLY
```

ASA 0034

1    DEFECTIVE VENUE.  THE PENDENCY OF THE PRESENT BANKRUPTCY

2    CASE, THAT OF THE AFFILIATE, CLEARLY ESTABLISHES

3    PROPRIETY OF VENUE HERE IN THE SOUTHERN DISTRICT.

4         HAVING FILED THE CASE AS A CREDITOR'S REMEDY,

5    AND SOMETIMES WE GET SO WRAPPED UP IN THE DEBTOR RELIEF

6    ASPECT OF THE BANKRUPTCY CASE, THAT WE FORGET THAT FROM

7    THE STATUTES OF ELIZABETH I FORWARD, BANKRUPTCY LAWS IN

8    ENGLAND AND THE UNITED STATES HAVE VERY STRONG ROOTS AS

9    A CREDITOR'S REMEDY.  MR. STANLY IS A CREDITOR.  HE

10   WOULD LIKE TO BE PAID.  IF THAT'S BAD FAITH, IF THAT'S

11   WHAT'S EMBRACED WITHIN THE CONCEPT AS FAR AS MR. LOPEZ

12   SEES IT, THEN THIS IS IN BAD FAITH.  BUT ALL HE'S DOING

13   IS EXERCISING WHAT AMOUNTS TO A CREDITOR'S REMEDY OF

14   LAST RESORT.  THE CREDITOR'S REMEDY OF LAST RESORT ONLY

15   BECAUSE ALL OF THE CREDITORS THAT MR. LOPEZ HAS WILL

16   BENEFIT FROM THESE PROCEEDINGS IN THE EVENT THAT A COURT

17   ORDER FOR RELIEF IS ENTERED.

18        SO THE CASE LAW THAT WE HAVE CITED IN OUR

19   OPPOSING PAPERS, AND I DON'T THINK THERE'S ANY

20   ARGUMENT -- I SAW NO ARGUMENT TO THIS IN THE REPLY, NONE

21   AT ALL -- THAT ONCE YOU HAVE A CASE WHERE YOU CAN SAY

22   THAT THE VENUE IS PROPER, AS A MATTER OF LAW IT'S NOT

23   IMPROPER, THEN YOU LOOK TO THE CONVENIENCE OF THE

24   PARTIES AND THE WITNESSES.

25        NOW, WE ARE HERE TODAY, TWO PARTIES ARGUING IN

ASA 0035

1    A CASE THAT WILL ENCOMPASS OTHER PARTIES WHO ARE

2    CREDITORS.  WE'LL KNOW WHO THEY ARE WHEN MR. LOPEZ FILES

3    HIS SCHEDULES.  AND THEY'RE ALL GOING TO BE BENEFITTED

4    BY THE ACTION HERE.  I THINK THAT IT IS NOT THE

5    TRANSACTIONS, OCCURRENCES, AND EVENTS THAT MR. LOPEZ HAS

6    ENGAGED IN SINCE HE LEFT THIS JURISDICTION THAT WILL

7    EVER BE MUCH OF AN ISSUE.  MUCH MORE OF AN ISSUE WILL BE

8    THE TRANSACTIONS, OCCURRENCES, AND EVENTS THAT OCCURRED

9    IN THE TEN-YEAR PERIOD 19 -- EXCUSE ME -- FROM 1995 TO

10   2003 PERIOD WHEN HE WAS DOING BUSINESS HERE IN THE

11   SOUTHERN DISTRICT OF CALIFORNIA.  THOSE ARE THE

12   TRANSACTIONS AND EVENTS THAT ARE GOING TO BE RELEVANT.

13           AND TWO OF THE CASES THAT HAVE CLOSE PARALLEL

14   TO OUR SITUATION HERE, THE *WAXELBAUM* CASE AND *KONA JOINT*

15   *VENTURES* CASE -- EXCUSE ME.  THE BANKRUPTCY COURT FROM

16   HAWAII, AT LEAST WITHIN THE NINTH DISTRICT, POINTS OUT

17   THAT'S REALLY THE KEY.  WHERE ARE THOSE WITNESSES GOING

18   TO BE?  I HAVEN'T SEEN ANY EVIDENCE IN THE FORM OF A

19   DECLARATION.  AND I HAVEN'T HEARD ANY ARGUMENT THAT IT

20   ISN'T ENTIRELY CONCLUSIONARY.  AND THAT INDICATES THAT

21   THE CONVENIENCE OF THE PARTIES, OR IN THIS CASE, THE

22   VERY PURPOSE FOR WHICH INVOLUNTARY PROCEEDING HAS BEEN

23   INITIATED.  AND THAT IS TO PUT OUR ARMS AROUND WHATEVER

24   ASSETS MR. LOPEZ HAS AT THE MOMENT, AND SEE TO IT THAT

25   THEY ARE FULLY AND FAIRLY ADMINISTERED IN ACCORDANCE

ASA 0036

1   WITH THE BANKRUPTCY LAWS OF THE UNITED STATES.

2            NOW, IN HIS DECLARATION, HIS REPLY DECLARATION,

3   MR. LOPEZ INDICATES, FOR EXAMPLE, THAT HIS INTEREST IN

4   CAMBRIA HOLDINGS HAS NO VALUE.  IT'S DEFUNCT.  HE SAYS,

5   "IT HOLDS NO ASSETS."

6            HE DOESN'T SAY, I THINK THEY HOLD NO ASSETS.

7   HE SAYS, "NO ASSETS."

8            WE ARE GOING TO PROVE, AND I'VE CONFIRMED

9   THROUGH THAT ENTITY'S CPA, TAX RETURNS HAVE BEEN FILED

10  THAT SHOW ASSETS IN THAT ENTITY.  HIS INTEREST IN THAT

11  ENTITY IS AN ASSET THAT CAN BE SOLD.  HIS INTEREST IN

12  PRISM, WHICH AT FIRST BLUSH, ONE COULD HAVE SOME

13  SYMPATHY FOR HIS CONTENTION THAT PRISM IS A CHAPTER 7

14  DEBTOR ITSELF; AND, THEREFORE, IT HAS NO VALUE.

15           I WOULD OFFER TO PROVE, YOUR HONOR, THAT

16  MR. STANLY HIMSELF, THE OTHER 50 PERCENT SHAREHOLDER,

17  HAS AN INTEREST IN PURCHASING THE REMAINING 50 PERCENT.

18  I THINK THE RECORD THAT WE PROVIDED IN CONNECTION WITH

19  MR. STANLY'S DECLARATION, THE FINDINGS OF FACT WHERE HE

20  PURCHASED ASSETS OUT OF PRISM, CORROBORATED HIS

21  CONTENTION THAT HE HAS AN INTEREST IN ACQUIRING THAT

22  ENTITY.  THAT ENTITY, I'M TOLD, HAS LOST CARRYFORWARD

23  ATTRIBUTES THAT WOULD BE USEFUL IN THE HANDS OF A SOLE

24  SHARE.  MR. STANLY IS A CANDIDATE FOR THAT.  AND HE HAS

25  DEMONSTRATED IN THE PAST HIS WILLINGNESS AND ABILITY TO

ASA 0037

1  PAY FOR THINGS OUT OF BANKRUPTCY, WHICH GOES TO THE

2  BENEFIT OF ALL CREDITORS.  AND SO THAT, TOO, IS A REASON

3  FOR MAINTAINING THE ACTION HERE IN PARALLEL WITH THE

4  *PRISM* ACTION.

5          AND, OF COURSE, AS INDICATED IN OUR OPPOSING

6  PAPERS, IT'S ENTIRELY POSSIBLE THAT THERE WILL BE

7  FURTHER ACTIONS IN THE *PRISM* CASE INITIATED BY

8  MR. STANLY TO COMPEL THE COMPLIANCE WITH ORDERS MADE BY

9  JUDGE MEYERS IN CONNECTION WITH THE SALE OF ASSETS TO

10 HIM.

11         AS RECENTLY AS LAST WEEK, MR. LOPEZ FILED

12 SUBSTANTIAL DECLARATIONS AND OTHER OPPOSITION IN THE

13 *LOPEZ V. MARTIN* CASE.  HE SEES VALUE THERE.  I SUBMIT TO

14 YOU THAT WHEN AN ORDER FOR RELIEF IS ENTERED, A TRUSTEE

15 SHOULD LOOK AT THAT CASE.  AND HE CAN'T DO THAT

16 EFFECTIVELY FROM FLORIDA.

17         I THINK, IN SUM, OTHER THAN JUST A

18 CONCLUSIONARY ALLEGATION THAT THIS IS A LITIGATION

19 TACTIC, THERE'S NO EVIDENCE THAT SUPPORTS THAT CHARGE.

20         NOW, I UNDERSTAND THE HEAT THAT'S GENERATED BY

21 LITIGATION.  I ALSO UNDERSTAND THE PROPENSITY OF A

22 WITNESS WHO IS A PARTY TO THAT LITIGATION CAUGHT UP IN

23 ALL OF ITS NUANCES.  HE TENDS TO VIEW HIS ADVERSARY WITH

24 GREAT SUSPICION.  AND SO IT DOESN'T SURPRISE ME THAT THE

25 KNEE-JERK ACTION OF MR. LOPEZ TO THIS EXERCISE OF THE

15

1  CREDITORS' REMEDY IS:  WELL, THIS MUST BE ANOTHER BAD

2  FAITH TACTIC.

3        WELL, YOU HEARD FROM COUNSEL DURING HIS

4  PRESENTATION.  YOU HEARD HIM SAY THAT WE'RE TRYING TO

5  "DERAIL THAT LITIGATION."  AND I THINK THAT WE HAVE

6  SUBMITTED IN OPPOSITION SUBSTANTIAL EVIDENCE TO COUNTER

7  THAT NOTION.  THERE WAS THE CORRESPONDENCE BOTH FROM OUR

8  OFFICE AND FROM MR. DILLON'S OFFICE, THE STATE COURT

9  COUNSEL, THAT WERE APPENDED TO MR. STANLY'S DECLARATION.

10       AND THEY ESTABLISHED TWO THINGS.  THAT, NUMBER

11 ONE, MR. STANLY IS PREPARED TO STIPULATE THAT THOSE

12 MATTERS CAN GO FORWARD SO THAT THERE WOULDN'T BE A

13 DELAY.  THE REQUEST FOR THAT STIPULATION WAS REBUFFED.

14       MR. STANLY ALSO HAD OFFERED -- TRIED -- TO GET

15 AN AGREEMENT AMONG COUNSEL TO CONCEDE THAT WHICH THE

16 CASE LAW PROVIDES.  AND THAT IS THAT A DEFENDANT IN AN

17 ACTION WHERE THE TITLE 11 DEBTOR IS THE PLAINTIFF, IS

18 NOT PRECLUDED BY THE AUTOMATIC STAY FROM THE DEFENSIVE

19 ACTION OF A SUMMARY JUDGMENT MOTION AGAINST THE

20 PLAINTIFF'S CASE.  AND, OF COURSE, THAT'S THE REASON

21 THAT THAT ISSUE WAS PUT BEFORE JUDGE MOOREFIELD, I

22 BELIEVE IT IS, IN THE STATE COURT, WHO CONCURRED WITH

23 THE AUTHORITIES THAT WERE PRESENTED.  AND THAT'S WHY THE

24 SUMMARY MOTION JUDGMENT AGAINST THE DEBTOR'S ACTION IS

25 PROCEEDING TO HEARING SOMETIME MID-SEPTEMBER.

ASA 0039

1     BUT MR. STANLY HAS NEVER DONE ANYTHING TO

2  "DERAIL THAT LITIGATION."  AND HE DOESN'T INTEND TO.

3  HE'S PERFECTLY HAPPY TO PROCEED AT A PACE WITH THE

4  TRIAL.  AND IN THAT CASE, THE TRUSTEE HERE OR FLORIDA OR

5  ANYWHERE WILL BE HANDED AN ADJUDICATION AS TO WHAT THAT

6  ASSET, IF IT EXISTS, IS.  SO THERE'S NO INTENTION TO

7  DELAY THAT'S SUPPORTED BY THE EVIDENCE.

8     THERE'S NO EVIDENCE THAT SUPPORTS A FINDING OF

9  BAD FAITH.  WHAT MR. STANLY HAS DONE IS HE HAS ACTED

10  QUICKLY TO ENFORCE HIS CREDITOR'S RIGHTS, AS HE SEES

11  THEM, BEFORE HIS FEARS THAT MR. LOPEZ MAY SEEK READ

12  ASSETS OR OTHERWISE PUT THEM BEYOND THE REACH OF HIS

13  CREDITORS OR HIS TRUSTEE CAN COME TO FRUITION.  AND,

14  TOO, BROUGHT THIS MATTER BEFORE THE COURT AS PROMPTLY AS

15  HE COULD IN THE HOPES THAT AS FEW AS POSSIBLE OF THE

16  POTENTIALLY AVOIDABLE TRANSACTIONS THAT MR. LOPEZ HAS

17  WOULD RIPEN TO A POINT WHERE THEY WERE BEYOND THE

18  STATUTES OF LIMITATION.  THE OTHER SIDE OF A CREDITOR'S

19  REMEDY IS NOT BAD FAITH.  THERE IS NO, ABSOLUTELY NO,

20  EVIDENCE OF BAD FAITH.

21     AND ONE FINAL OFFER OF PROOF.  AND I MAKE THIS

22  AS AN OFFER OF PROOF BECAUSE I'VE ONLY SEEN THE

23  CONFIRMING FACTS FROM THE ALTERNATIVE RESOLUTION

24  COMPANY, I BELIEVE IT IS, THE ENTITY THAT EMPLOYED THE

25  PRIVATE MEDIATOR, THAT VERIFIED THAT THEY ARE STILL OWED

17

ASA 0040

1  IN THE NEIGHBORHOOD OF $1,500.  SO THERE'S ANOTHER

2  CALIFORNIA CREDITOR TO BE BENEFITED.  CALIFORNIA

3  CREDITORS ARE THE ONLY ONES WE KNOW BY NAME.  MR. STANLY

4  IS LIKELY TO BE THE LARGEST IN THE CASE.  AND I THINK

5  HIS FORUM SELECTION, UNDER THE CONTROLLING PRINCIPALS,

6  HAS TO BE GIVEN DEFERENCE.

7       AND THERE IS ABSOLUTELY NO EVIDENCE, NONE, THAT

8  SUPPORTS THE NOTION THAT THE CREDITORS OF THIS ESTATE,

9  IF AN ESTATE IS CREATED BY ORDER OF RELIEF, WILL BENEFIT

10 BY A TRANSFER TO FLORIDA.  MR. LOPEZ WILL BE THE SOLE

11 BENEFICIARY OF THAT WINDFALL.

12    THE COURT:  MR. HAYES.

13    MR. HAYES:  THANK YOU, YOUR HONOR.

14       FIRST OF ALL, I'D LIKE TO OBJECT TO THE BULK OF

15 MR. KEEHN'S TESTIMONY UP HERE.  VERIFIED INTERROGATORIES

16 9.1, I HAVEN'T SEEN THAT.  IT ISN'T IN ANY OF THE

17 PAPERS.  THERE WAS TESTIMONY ABOUT HIS HOME BEING SOLD

18 BEFORE FILING.  I DIDN'T KNOW THAT.  IT WAS NOT IN THE

19 PAPERS.  I DIDN'T ASK.  I DIDN'T KNOW THAT THERE'S THIS

20 ROLEX WATCH SOLD FOR $2,000.  AND THAT'S MR. KEEHN'S

21 GUESS THAT IT'S WORTH MORE THAN THAT.  THERE'S TAX

22 RETURNS FROM HIS CPA FOR -- I DIDN'T GET THE NAME OF THE

23 COMPANY -- BUT OTHER SUBSTANTIAL DECLARATIONS FILED

24 RECENTLY.

25       BUT WHAT WAS REALLY INTERESTING TO ME IS THAT

ASA 0041

1    THEY DID TAKE MR. LOPEZ'S DEBTOR'S EXAM IN FLORIDA.

2    THEY ATTACHED A COUPLE PAGES OF IT TO THE MOTION -- TO

3    THE OPPOSITION.  PRESUMABLY, ALL OF THAT WOULD HAVE BEEN

4    IN THERE.  DID YOU SELL YOUR HOUSE?  HOW MUCH DID YOU

5    GET FOR IT?  HOW MUCH DID YOU SELL IT FOR, THE AMOUNT?

6    DID YOU SELL ANYTHING ELSE IN THE LAST YEAR?  HAVE YOU

7    SOLD ANYTHING IN FIVE YEARS?  PRESUMABLY, THEY WOULD

8    HAVE ASKED THAT, AND IT WOULD HAVE BEEN IN THE DEBTOR'S

9    EXAM.  THEY WOULD HAVE HAD SOMETHING TO ATTACH.

10   MR. KEEHN'S SAID THIS IS A HISTORY OF TRANSACTIONS AND

11   EVENTS.  WHY ISN'T IT IN THERE?  AND I'LL OBJECT AND ASK

12   THAT THE COURT STRIKE ALL OF THAT TESTIMONY.

13        BUT GETTING BEYOND THE OBJECTION, I THINK

14   MR. KEEHN SAID THAT MR. LOPEZ IS ALLEGING MILLIONS OF

15   DOLLARS, OR, I GUESS, $1,800,000 IN DAMAGES IN THIS

16   LITIGATION.  ACTUALLY, I DIDN'T REALIZE THAT.  I HAVEN'T

17   BEEN INVOLVED IN THE LITIGATION.

18        BUT, I MEAN, IT JUST POPPED OUT AT ME AS SO

19   OBVIOUS, THE MOTIVATION AT THIS POINT.  HE'S BEING SUED

20   FOR A MILLION DOLLARS.  IF THERE'S A CHAPTER 7, HE'LL

21   HAVE SOMEBODY TO NEGOTIATE WITH AND TO GET THAT TO GO

22   AWAY FOR, HOPEFULLY, SOME -- YOU KNOW, THERE WILL BE A

23   NEW FACE ON WHO'S AFTER HIM.  IT WILL BE THE TRUSTEE.

24   THAT SHOWS THAT IT IS LITIGATION STRATEGY.

25        THE SECTION 522(O), AND THAT WORKS NO MATTER

ASA 0042

1    WHAT STATE THE BANKRUPTCY IS IN, IF THERE'S AN OBJECTION

2    TO THE HOMESTEAD EXEMPTION ON THE HOME THAT HE OWNS IN

3    FLORIDA, THAT APPLIES NO MATTER WHICH STATE THE

4    BANKRUPTCY IS IN.  IT'S IRRELEVANT TO HOW THE HOMESTEAD

5    WORKS, AT LEAST, UNDER SECTION 522(O).

6             BUT I WOULD LIKE TO MAKE ONE LAST COMMENT.  I

7    DIDN'T FILE AN EVIDENTIARY OBJECTION TO MR. STANLY'S

8    DECLARATION.  60 PERCENT OF IT, AT LEAST, IS ARGUMENTS,

9    AND IT'S COMPLETELY OBJECTIONABLE, BUT I'M TRYING TO

10   FOCUS JUST ON THE INCREDIBLE UNFAIRNESS TO AN INDIVIDUAL

11   LIVING IN FLORIDA WITH HIS FAMILY HAVING TO GET STUCK

12   WITH GOING THROUGH A BANKRUPTCY IN CALIFORNIA.  I'M

13   REALLY TRYING TO KEEP HIS COSTS DOWN.  THAT'S WHY I

14   LIMITED THE MOTION TO WHAT IT IS.  AND I DIDN'T FILE AN

15   EVIDENTIARY OBJECTION.

16             BUT DOES THE COURT HAVE ANY QUESTIONS OF ME?

17       THE COURT:  NOPE.

18       MR. HAYES:  THANK YOU.

19       THE COURT:  ALL RIGHT.  WELL, I'LL TELL YOU MY VIEW.

20   FIRST OFF, IT'S 1412 OF TITLE 28 THAT GOVERNS TRANSFER

21   OF CASES UNDER TITLE 11 AS DISTINCT FROM TRADITIONAL

22   CIVIL CASES, WHICH IS 1404.  AND IT DOESN'T INCLUDE

23   CONVENIENCE OF WITNESSES AS ONE OF THE GROUNDS

24   INTERESTINGLY.  IT'S NOT AS BROAD AS 1404(A) IS.

25   INDEED, THERE'S A BRAND NEW CASE OUT OF THE NINTH

ASA 0043

1  CIRCUIT THAT HAS JUST COME DOWN THAT DISCUSSES IT

2  SOMEWHAT.

3       I'M SATISFIED THAT ON THE PRESENT RECORD, THERE

4  IS NO BASIS FOR DISMISSAL OF THIS INVOLUNTARY PETITION.

5  THAT'S FIRST.

6       SECONDLY, THE REQUEST HAS BEEN MADE THAT I

7  ABSTAIN.  BUT THERE IS NOTHING FOR ME TO ABSTAIN IN

8  FAVOR OF.  ABSTENTION WORKS IF THERE WERE AN ADVERSARY

9  PROCEEDING PENDING AS PART OF THIS, AND THERE WAS

10 ALREADY A PROCEEDING PENDING SOMEWHERE ELSE THAT COULD

11 GET THROUGH IT EXPEDITIOUSLY AND RESOLVE THAT QUESTION.

12 THERE IS NO OTHER PLACE THAT HAS JURISDICTION.

13      SO WE'RE REALLY ONLY TALKING ABOUT TRANSFERRING

14 VENUE IN THIS CONTEST.  AND I'M NOT PREPARED ON THIS

15 RECORD TO SAY THERE'S A BASIS FOR DOING SO.  BUT I LEAVE

16 IT OPEN FOR US TO CONSIDER.

17      IT SEEMS TO ME THAT IF MR. LOPEZ WANTS TO FIND

18 OUT WHETHER THERE'S ANYTHING HERE, STEP ONE MAY BE TO

19 AGREE TO ENTRY OF AN ORDER FOR RELIEF.  WE GET A CHAPTER

20 7 TRUSTEE IN THERE, AND THEN WE FIND OUT.

21      ONE OF YOUR CONCERNS, MR. HAYES, IS THIS NOTION

22 THAT THE TRUSTEE CAN NEGOTIATE FOR THE VALUE OF

23 MR. LOPEZ'S CAUSE OF ACTION AGAINST MR. STANLY, AND THAT

24 MR. STANLY MAY BE ABLE TO BUY HIS PEACE THROUGH THE

25 TRUSTEE.  IF, IN FACT, THE ONLY LIABILITIES THAT

ASA 0044

1   MR. LOPEZ HAS ARE THIS $50,000 OWED ON THE STANLY

2   JUDGMENT, AND A FEW OTHER THINGS, THEN MR. LOPEZ WOULD

3   BE RECOGNIZED AS HAVING AN INTEREST, BECAUSE IN THEORY

4   IT COULD BE A SOLVENT ESTATE IN DISCUSSING WHAT COULD

5   HAPPEN TO THAT CAUSE OF ACTION.  NOTE THAT THERE IS SOME

6   RESIDUAL BORNE IN THAT CONTEXT BECAUSE HE WOULD HAVE AN

7   INTEREST IN THAT CIRCUMSTANCE.  IT'S ONLY WHEN WHATEVER

8   THE TRUSTEE CAN GET FOR IT IS GOING TO BE LESS THAN

9   WHAT'S OWED BY THE ESTATE THAT THE DEBTOR ENDS UP HAVING

10  NO INTEREST AND IS UNABLE TO PARTICIPATE IN THAT PROCESS

11  IN ANY KIND OF MEANINGFUL WAY.  BUT GIVEN THOSE KINDS OF

12  NUMBERS AND SO ON, AND GIVEN THE DEBTOR'S THEORY OF WHAT

13  IT MAY BE WORTH, THERE MAY WELL BE SOMETHING THERE THAT

14  WOULD BE RESIDUAL.  AND SO THE DEBTOR IS NOT CLOSED OUT

15  FROM JUST PARTICIPATING IN THAT PROCESS IF, IN FACT,

16  THAT IS SOMETHING THAT OCCURRED.  I HAVE NO IDEA WHETHER

17  THAT WILL OCCUR.

18        SO AT THIS POINT IN TIME, THE MOTION TO CHANGE

19  VENUE WILL BE DENIED, AS WILL THE MOTION TO DISMISS, AND

20  ABSTAIN.  BUT THAT WILL BE WITHOUT PREJUDICE.  AND WE'LL

21  TAKE ANOTHER LOOK AT IT.  IF, IN FACT, WE WIND UP IN A

22  FEW -- IN A SHORT PERIOD OF TIME IN A MONTH OR TWO, THE

23  TRUSTEE SAYS THERE'S NOTHING HERE THAT I WANT TO PURSUE

24  AND FILES A REPORT OF NO DISTRIBUTION, THAT WE MAY

25  EITHER -- YOUR CLIENT MAY EITHER HAVE A DISCHARGE OR

ASA 0045

1  WILL HAVE A BASIS FOR TRANSFER BECAUSE OF THE THINGS

2  THAT MR. KEEHN HAS PARADED AS BEING POSSIBLE BASES FOR

3  RECOVERY FOR THE BENEFIT OF CREDITORS BY A TRUSTEE,

4  TRUSTEE IS DETERMINED NOT TO PURSUE FOR WHATEVER REASON.

5       MR. HAYES:  I HAVE A RIGHT TO FILE AN ANSWER; RIGHT?

6       THE COURT:  OH, ABSOLUTELY.  SURE.

7       MR. HAYES:  AND A TRUSTEE ISN'T GOING TO BE

8  APPOINTED UNLESS THERE'S A MOTION.

9       THE COURT:  NO.  THERE'S GOING TO BE -- WELL, NO,

10  ONCE THERE'S AN ORDER FOR RELIEF IN A 7, A TRUSTEE WILL

11  BE APPOINTED.

12       MR. HAYES:  ABSOLUTELY.  BUT YOU'RE NOT ENTERING AN

13  ORDER.

14       THE COURT:  NO.  YOU GET TO FILE AN ANSWER AND

15  CONTEST IT.  BUT, YOU KNOW, IF YOU FILE AN ANSWER AND

16  CONTEST IT, THEN THERE WILL BE DISCOVERIES AS TO THE

17  FACTS ON WHICH YOU PREDICATE YOUR ANSWERS.

18       MR. KEEHN:  YOUR HONOR, JUST A POINT OF

19  CLARIFICATION, I UNDERSTAND CRYSTAL CLEAR THE DENIAL OF

20  THE VENUE MOTION IS WITHOUT PREJUDICE.  BUT THAT WITHOUT

21  PREJUDICE TAG DOESN'T GO TO THE OTHER TWO MOTIONS.

22       THE COURT:  WELL, AS TO ABSTAIN, THERE'S NOTHING TO

23  ABSTAIN IN FAVOR OF.  AND AS TO THE MOTION TO DISMISS ON

24  THE GROUNDS THAT IT'S BAD FAITH AT THIS POINT IN TIME --

25  I MEAN, IF SUBSEQUENTLY SOMETHING TURNS UP THAT

23

ASA 0046

1    PERSUADES ME THAT IT IS, I'D EXPECT TO HEAR ABOUT IT

2    FROM MR. HAYES.

3        MR. HAYES:  WELL, WOULD THE COURT GIVE ME A DEADLINE

4    TO FILE AN ANSWER?  I MEAN, I DON'T THINK THERE'S A

5    STATUTORY DEADLINE.

6        MR. KEEHN:  YOUR HONOR, IF THEY FILED FROM THE TIME

7    THE SUMMONS WAS SERVED, THEY GET 30 DAYS.  THEY HAVE NOW

8    KNOWN ABOUT IT FOR A COUPLE OF MONTHS.  I WOULD THINK

9    IT'S FAIR IF AN ANSWER WAS FILED 15 DAYS FROM TODAY'S

10   DATE.

11       MR. HAYES:  OKAY.

12       THE COURT:  IS 15 DAYS COMFORTABLE WITH YOU?

13       MR. HAYES:  YES.

14       THE COURT:  OKAY.  THAT WOULD MAKE IT THE 6TH OF

15   SEPTEMBER, WHICH IS A TUESDAY, THE FIRST DAY AFTER LABOR

16   DAY.

17       MR. HAYES:  YOUR HONOR, COULD YOU MAKE IT THE 7TH?

18       THE COURT:  SURE.  I HATE DEADLINES THAT FALL AFTER

19   THREE-DAY WEEKENDS MYSELF.  AND I HAVE NO PROBLEM WITH

20   THAT ACCOMMODATION.

21       MR. HAYES:  I HAVE TO MAIL IT, SO IT WOULD BE --

22   ANYWAY, THE 7TH IS GREAT.

23       THE COURT:  OKAY.

24       MR. HAYES:  THANK YOU.

25       THE COURT:  WE'LL SEE YOU ANON.

24

1       MR. HAYES:  MR. KEEHN WILL SUBMIT AN ORDER?

2       MR. KEEHN:  YES.  I WILL.  I DO HAVE A PROPOSED FORM

3   OF ORDER.

4       MR. HAYES:  THANK YOU, YOUR HONOR.

5       MR. KEEHN:  THANK YOU, YOUR HONOR.

6       THE COURT:  ALL RIGHT. WE'LL BE IN RECESS.

7            (PROCEEDINGS CONCLUDED AT 3:20 P.M.)

8                      -OOO-

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

ASA 0048

1

2  STATE OF CALIFORNIA

3  COUNTY OF SAN DIEGO

4

5  I, COLLETTA JOHNSON, HEREBY CERTIFY:

6

7  THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE

8  FOREGOING CAUSE ON THE 22ND DAY OF AUGUST, 2005;

9  THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING

10  UNDER MY DIRECTION AND THAT THE FOREGOING 25 PAGES

11  CONTAIN A CORRECT STATEMENT OF THE PROCEEDINGS.

12

13  DATED THIS 5TH DAY OF SEPTEMBER, 2005.

14

15

16  _____

    COLLETTA JOHNSON
17  CSR NO. 12589

18

19

20

21

22

23

24

25

26

ASA 0049

# TAB 27

1  M. Jonathan Hayes (Bar No. 90388)
   **Law Office of M. Jonathan Hayes**
2  21800 Oxnard St, Suite 840
   Woodland Hills, CA 91367
3  Telephone:  (818) 710-3656
   Facsimile:  (818) 710-3659
4  jhayes@polarisnet.net

5  Attorneys for Alleged Debtor Francis Lopez

```
┌─────────────────────────────┐
│        ✓ FILED              │
│          ENTERED            │
│          LODGED             │
│          RECEIVED           │
│                             │
│      NOV 2 2 2005           │
│                             │
│  CLERK, U.S. BANKRUPTCY COURT │
│  SOUTHERN DISTRICT OF CALIFORNIA │
│  BY              DEPUTY      │
└─────────────────────────────┘
```

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10                   **SAN DIEGO DIVISION**

11

12  In Re:                        )   CASE NO. 05-05926-PBINV
                                  )
13      FRANCIS J. LOPEZ,         )   **Involuntary Chapter 7**
                                  )
14      Alleged Debtor            )
                                  )
15                                )   **MOTION BY ALLEGED DEBTOR**
                                  )   **FOR AN ORDER BIFURCATING**
16                                )   **TRIAL RE INVOLUNTARY**
                                  )   **PETITION; SETTING A DEADLINE**
17                                )   **TO ADD NEW PETITIONING**
                                  )   **CREDITORS; AND REQUIRING THE**
18                                )   **POSTING OF A BOND;**
                                  )   **DECLARATION OF FRANCIS J.**
19                                )   **LOPEZ**
                                  )
20                                )
                                  )
21                                )   Date:  December 19, 2005
                                  )   Time:  10:00 a.m.
22                                )   Ctrm:  4

23      TO THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY

24  JUDGE, TO PETITIONING CREDITOR ALAN STANLY AND ALL INTERESTED

25  PARTIES:

26

27

28

# I.

## STATEMENT OF FACTS

Francis J. Lopez and the single petitioning creditor Alan Stanly have been involved in significant litigation against each other since before the bankruptcy filing of their entity Prism Advanced Technologies, Inc. ("Prism").   This litigation has been bitterly fought for the past two years and is now pending in Superior Court between the parties, namely Lopez v Stanly, Case No. GIN029692, filed on May 14, 2003, San Diego Superior Court, North County.  In that matter, Mr. Lopez has alleged numerous causes of action against Mr. Stanly including invasion of privacy, breach of fiduciary duty, trespass and identity theft.  Mr. Stanly filed a cross-complaint, of course.  Recently, in a second case, Mr. Stanly was successful in obtaining a judgment against Mr. Lopez for approximately $50,000 relating to a guarantee both had made to Union Bank of a Prism loan.  Recently, in a third case, Mr. Stanly has sued Mrs. Lopez claiming that she "removed property" causing $2,000 in storage costs.  It requests $2,000 in damages and "compensatory" and punitive damages of "more than $10,000 up to $25,000." Mrs. Lopez has had to retain counsel to defend herself.

This involuntary chapter 7 petition is simply an extension of the litigation and a new strategy by Mr. Stanly to cause as much business and personal pain to Mr. Lopez as possible.   On August 11, 2005, Mr. Lopez learned that two of his credit cards have been cancelled because the issuer thinks that he filed this bankruptcy himself.  The long term costs in terms of increased interest on loans are obvious.

In any event, Mr. Lopez has well more than 12 creditors as Mr. Stanly knows very well.  He knows this very well because he conducted a debtor's examination on Mr. Lopez in Florida on May 9, 2005.  The examination transcript covers 65 pages of testimony by Mr. Lopez.  Mr. Lopez was asked at length about his creditors and the numbers and total amount owed.  Despite Mr. Stanly's personal participation in the examination by

1  telephone, he nevertheless stated in his declaration in this case that he was only aware that

2  the alleged debtor had three creditors, which he claimed were all in California.

3       This Involuntary Petition was filed June 30, 2005 with Mr. Stanly as the only

4  petitioning creditor. The Answer specifically identified 22 creditors. That list is attached

5  hereto as Exhibit A. On or about October 3, 2005, Mr. Stanly served 12 of the creditors

6  with a subpoena seeking documents on November 1, 2005. At the Status Conference on

7  October 12, 2005, Stanly's counsel advised the court that discovery was sitting on his desk

8  to be served that week. As of November 16, 2005, no such discovery has been served and

9  in fact nothing at all has taken place.

10       No new creditors have joined as petitioning creditors. Therefore this case will be

11  dismissed at trial which should be held at the earliest possible time.

12

13  ## II.

14  ## TRIAL SHOULD BE BIFURCATED SO THAT THE ISSUE OF

15  ## NUMBER OF CREDITORS MAY BE DETEMINED QUICKLY AND A

16  ## DEADLINE SHOULD BE SET FOR ADDING ADDITIONAL

17  ## PETITIONING CREDITORS

18       An Involuntary Chapter 7 case exists pursuant to Section 303 of the bankruptcy

19  code which requires that two factors be met, namely, that there be three petitioning

20  creditors, and that the debtor be found to be "generally no paying his debts as they become

21  due." An exception exists that if the debtor has fewer than 12 creditors, only one

22  petitioning creditor is required. The alleged debtor has identified his creditors in the

23  Answer. There are 22 and therefore this case must be dismissed.

24       Mr. Stanly's counsel correctly pointed out at the Status Conference that certain

25  creditors are not included in the computation of the total. Section 303(b)(1) requires the

26  creditor to be "such person that is not contingent as to liability or the subject of a bona fide

27  dispute as to liability or amount . . ." and Section 303(b) excludes "any employee or

28  insider of such person and any transferee of a transfer that is voidable under section 544,

1  545, 547, 548, 549, or 724(a) of this title." Since he has not been able to find two other

2  persons to join him in this jaunt, he is presumably attempting to determine if he can

3  eliminate nearly half of Mr. Lopez's creditors so that he can be the sole petitioning

4  creditor.

5      The requirement that, in the presence of 12 or more creditors, at least 3 must

6  petition before an order for relief issues is not jurisdictional, but is an **absolute defense** to

7  the issuance of an order for relief. *In Re Kidwell*, 158 B.R. 203 (Bkrtcy E.D. Cal. 1993).

8  If no more petitioning creditors join this case, it is Stanly's **burden** to prove that the

9  alleged debtor has less than 12 creditors. *In Re Smith*, 243 B.R. 169, 183 (Bkrtcy. N.D.Ga.

10  1999).

11      All creditors are to be counted, no matter how small. The court may *not* exclude

12  small, recurring or de minimus creditors. *Hornblower & Weeks-Hemphill Noyes v.

13  Okamoto*, 491 F.2d 496 (9th Cir. 1974).[1]

14      The alleged debtor requests that this court bifurcate the trial and require Mr. Stanly

15  to put on testimony and documentary evidence *immediately* establishing that he has met

16  the requirement of Section 303(b)(1). This does not require further discovery. This will

17  not require significant court time because the issues are easy. Mr. Lopez is ready for trial

18  on this issue at any time. In fact, it is unlikely that his testimony will be required at trial.

19  Per his declaration attached, his 22 creditors are not contingent, or subject of a bona fide

20  dispute (except Mr. Stanly whose judgment is being appealed). None of the 22 are

21  employees or insiders. None of these creditors received a payment which was outside of

22  the ordinary course of business.

23      As to the second issue of whether or not Mr. Lopez is "generally paying his debts as

24  they become due," the trial is likely to be lengthy. Significantly more evidence will be

25

26

27      [1] There is a split of authority on this issue in the circuits. For a discussion on the
split, the policy reasons behind both sides of that argument see *Matter of Rassi* (7th Cir.

28  1983) 701 F.2d 627, where the court decided to follow the Ninth Circuit, which appears to
be the majority rule.

1 | required and therefore if the case can be dismissed without getting to that issue, justice will

2 | be served.

3 |     In addition, Mr. Stanly should be required to find additional petitioning creditors by

4 | a date certain. This case has been pending for more than four months now and Mr. Stanly

5 | had knowledge long ago that Mr. Lopez had more than 12 creditors. To allow him an

6 | unlimited amount of time to add petitioning creditors only adds to the unfair burden

7 | already placed on the alleged debtor. Mr. Lopez requests that the deadline be set for 10

8 | days prior to the time set for trial in this matter.

9 |

10 | **III.**

11 | **THE COURT SHOULD REQUIRE A BOND PURSUANT**

12 | **TO SECTION 303(e)**

13 |     11 USC Section 303(e) provides:

14 |     "(e) After notice and a hearing, and for cause, the court may require the petitioners

15 | under this section to file a bond to indemnify the debtor for such amounts as the court may

16 | later allow under subsection (i) of this section."

17 |     The court is requested to require the posting of a bond by Mr. Stanly in an amount

18 | deemed reasonable to the court but at least $20,000 as the alleged debtor intends to seek

19 | his costs, attorney's fees and damages once this case is dismissed. The filing of the

20 | petition has caused considerable damage to the alleged debtor as certain creditors believe

21 | that he filed the case himself and have refused to

22 |     11 USC Section 303(i) provides:

23 |     (i) If the court dismisses a petition under this section other than on consent of all

24 | petitioners and the debtor, and if the debtor does not waive the right to judgment under this

25 | subsection, the court may grant judgment—

26 |     (1) against the petitioners and in favor of the debtor for—

27 |         (A) costs; or

28 |         (B) a reasonable attorney's fee; or

1    (2) against any petitioner that filed the petition in bad faith, for—

2         (A) any damages proximately caused by such filing; or

3         (B) punitive damages.

4    *In Matter of Dill*, 13 B.R. 9, (Bkrtcy.D.Nev 1991) the court looked at the good faith

5    of the petitioning creditors who "appeared to be men of some substantial means who

6    seemed to have filed in good faith" when denying the bond requirement.  Also in that case,

7    the property of the estate was a building which was not declining in value and therefore the

8    alleged debtor was deemed not to be in risk.  See also, *In re Reed*, 11 B.R. 755 (Bkrtcy

9    S.D.W.Va.1981) Here an order granting fees, costs and damages against Mr. Stanly is

10    likely to be very difficult to collect.

11        The legislative analysis of this code section states: "The bonding requirement will

12    discourage frivolous petitions as well as spiteful petitions based on a desire to embarrass

13    the debtor (who may be a competitor of a petitioning creditor) or to put the debtor out of

14    business without good cause. An involuntary petition may put a debtor out of business

15    even if it is without foundation and is later dismissed." Mr. Lopez is at great risk here

16    which is obviously the goal.  A significant bond should be required.

17

18                                    **IV.**

19                               <u>**CONCLUSION**</u>

20        The alleged debtor asks this court to bifurcate the trial so that the issue of number of

21    creditors is tried first, set the trial on that issue at the earliest possible time and require the

22    posting of a bond.

23

24                        Respectfully submitted,

25                        LAW OFFICES OF M. JONATHAN HAYES

26

27    Dated:  11/18/05              By: _____

28                                    M. Jonathan Hayes, Attorney for Francis J.
                                     Lopez

1

2

3      Signature by the attorney constitutes a certification under Fed. R. Bankr. P. 9011

4  that the relief provided by the order is the relief granted by the court.

5

6      Submitted by:

7

8  By:  _____

9      M. Jonathan Hayes
       Attorney for Francis J. Lopez

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                  <u>**DECLARATION OF FRANCIS J. LOPEZ**</u>

3          I, Francis J. Lopez, declare as follows:

4          1.      I am the alleged debtor in this matter.  The statements made herein are of my

5   own personal knowledge and if called upon to testify, I could and would competently

6   testify thereto.

7          2.      Alan Stanly and I have been involved in significant litigation against each

8   other since before the bankruptcy filing of our entity Prism.  In fact, litigation is pending

9   right now in Superior Court between us, namely <u>Lopez v Stanly</u>, Case No. GIN029692,

10  filed on May 14, 2003, pending in San Diego Superior Court, North County.  In that

11  matter, I sued Mr. Stanly for numerous causes of action, including invasion of privacy,

12  breach of fiduciary duty, trespass and identity theft.  Mr. Stanly filed a cross-complaint, of

13  course.  Recently, in a second case, Mr. Stanly was successful in obtaining a judgment

14  against me for approximately $50,000 relating to a guarantee both had made to Union

15  Bank of a Prism loan.  Recently, in a third case, Mr. Stanly has sued my wife claiming that

16  she "removed property" causing $2,000 in storage costs.  It requests $2,000 in damages

17  and "compensatory" and punitive damages of "more than $10,000 up to $25,000."  She has

18  had to retain counsel to defend herself.

19         3.      This involuntary chapter 7 petition is simply an extension of the litigation and

20  a new strategy by Mr. Stanly to cause me and my family as much business and personal

21  pain as possible.  On August 11, 2005, I learned that two of my credit cards have been

22  cancelled because the issuer thinks that I filed this bankruptcy myself.  The long term costs

23  in terms of increased interest on loans are obvious.

24         4.      Mr. Stanly conducted a debtor's examination of me in Florida on May 9,

25  2005.  The examination transcript covers 65 pages of my testimony.  I was asked at length

26  about my creditors and the numbers and total amount owed.  My Answer filed in this case

27  specifically identified 22 creditors.  The list is attached hereto as Exhibit A.

28

1    5.    I am ready for trial on this issue at any time.  My 22 creditors are not

2  contingent, or subject of a bona fide dispute (except Mr. Stanly whose judgment is being

3  appealed).  None of the 22 are employees or insiders.  None of these creditors received a

4  payment which was outside of the ordinary course of business.

5

6

7    I declare under penalty of perjury under the laws of the United States of America

   that the foregoing is true and correct to the best of my knowledge and belief.

8    Executed this _____ day of November, 2005 at Destin, FL.

9

10    _____*NEXT PAGE*_____

11    Francis J. Lopez

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     5.    I am ready for trial on this issue at any time.  My 22 creditors are not

2  contingent, or subject of a bona fide dispute (except Mr. Stanly whose judgment is being

3  appealed).  None of the 22 are employees or insiders.  None of these creditors received a

4  payment which was outside of the ordinary course of business.

5

6

7      I declare under penalty of perjury under the laws of the United States of America

8  that the foregoing is true and correct to the best of my knowledge and belief.

9  Executed this ___17th___ day of November, 2005 at Destin, FL.

10

11                      Francis J. Lopez

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
M. Jonathan Hayes

9

Motion to Bifurcate Trial

ASA 0059

FRANCIS LOPEZ
EXHIBIT A
LIST OF CREDITORS

Progressive Insurance
PO Box 31260
Tampa, FL  33631
Acct. 37287380-4
$157.20
Insurance, Auto

Coastal Community Insurance
12139 Panama City Beach Pkwy.
Panama City Beach, FL  32407
Policy No. LHQ336763
$1,013.00
Insurance, Flood (Property)

Quicken Platinum Card
PO Box 44167
Jacksonville, FL  32231
$848.00
Goods and services, 1998- 2005

Okaloosa Gas District
PO Box 548
Valparaiso, FL  32580
$45.00
Utilities

Northwest Florida Daily News
200 Racetrack Rd.
Ft. Walton Beach, FL  32549
$45.00
Newspaper

Kelly Plantation Owners Association
4393 Commons Drive E.
Destin, FL  32541
$550.00
Homeowner's Association

Allstate Floridian
54 Beal Parkway
Ft. Walton Beach, FL  32548
$1900.00
Homeowners Insurance

EXHIBIT A

ASA 0060

Texaco / Shell
PO Box 9151
Des Moines, IA  50368
Acct. No. 77-917-6550-1
$290.00
Gasoline and related

Bank Of America
PO Box 1390
Norfolk, VA  23501
Acct. No. 4050860512429141
Credit Card, goods and services
$2386.00

Verizon Wireless
PO Box 660108
Dallas, TX  75266
Acct. No. 81955380600001
$45.00
Utility – telephone

Cox Communications
PO Box 60970
New Orleans, LA
Acct. No. 0018710003886502
Utility – television and Internet
$112.00

Union Bank of California
8155 Mercury Ct.
San Diego, CA  92111
Settlement of Union Bank v. Francis Lopez, $15,000 original balance
$4,000.00

Bankcard Services
PO Box 15287
Wilmington, DE  19886
Acct. No. 5490999178488929
$10,000.00
Goods and services – 2001- 2005

Cingular Wireless
PO Box 8229
Aurora, IL  60572
Acct. No. 0050443578
$125.00
Utilities – telephone

EXHIBIT A

ASA 0061



Wayne Wise
810 Red Tanager Ct.
Nashville, TN  37221
$15,000.00
Personal Loan

Valley Forge Life Insurance
100 CNA Drive
Nashville, TN  37214
Acct. No. VITU045825
$0.00   ($486.00 per year)
Life Insurance

American Home Shield
PO Box 849
Carroll, IA  51401
Acct. No. 58449061
$128.00
Home appliance insurance

Citi Cards
PO Box 6414
The Lakes, NV  88901
Acct. No. 5424180306665024
$32,515.00
Goods and Services, 1994 - 2005

Household Bank / HSBC
PO Box 5222
Carol Stream, IL  60197
Acct. No. 5176690006732635
Goods and Services, 2003 - 2005
$5,000.00

American Express
PO Box 297804
Ft. Lauderdale, FL  33329
Acct. No. 378349802283007
$22,000.00
Goods and Services, 1994 - 2004
Note:  Some of this debt may be owed by Prism and/or Stanly, though I have personal
guarantee

EXHIBIT A

**ASA 0062**



Ft. Walton Beach Medical Center
1000 Mar Walt Drive
Ft. Walton Beach, FL  32547
$1600.00
Medical and Health services
Making payments of $100.00 month

Alan Stanly
1569 Berkshire Ct.
San Marcos, CA  92069
$50,000.00
Judgment in Union Bank v. Stanly (cross-complaint by Stanly)
Currently under appeal in CA

ASA 0063

PROOF OF SERVICE

I, MJ Hayes, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 21800 Oxnard St., Suite 840, Woodland Hills, CA 91367. On November 18, 2005, I served the within documents:

**MOTION BY ALLEGED DEBTOR FOR AN ORDER BIFURCATING TRIAL RE INVOLUNTARY PETITION; SETTING A DEADLINE TO ADD NEW PETITIONING CREDITORS; AND REQUIRING THE POSTING OF A BOND; DECLARATION OF FRANCIS J. LOPEZ**

by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

X    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

..    by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below.

..    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery

..    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

L. Scott Keehn
Robbins & Keehn, APC
530 "B" Street, Ste 2400
San Diego, CA 92101

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 18, 2005, at Los Angeles, California.

_____
MJ Hayes

# TAB 35

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA
# Minute Order

### *Hearing Information:*

|  |  |  |  |
|---:|:---|:---|:---|
| **Debtor:** | FRANCIS J. LOPEZ | | |
| **Case Number:** | 05-05926-PB7 | **Chapter:** | 7 |
| **Date / Time / Room:** | MONDAY, DECEMBER 19, 2005 10:30 AM   DEPARTMENT 4 | | |
| **Bankruptcy Judge:** | PETER W. BOWIE | | |
| **Courtroom Clerk:** | MARCIA PEARSON | | |
| **Reporter / ECR:** | LYNETTE ALVES | | |

### *Matters:*

1)  ALLEGED DEBTOR'S MOTION FOR ORDER BIFURCATING TRIAL; SETTING A DEADLINE TO ADD NEW PETITIONING CREDITORS AND REQUIRING A BOND

2)  STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER (fr. 11/29/05)

### *Appearances:*

M. Jonathan Hayes, ATTORNEY FOR Francis J. Lopez
L. Scott Keehn, ATTORNEY FOR ALAN STANLEY

### *Disposition:*

Bifurcation granted as to number of creditors; bond request withdrawn
1) & 2) Hearings continued to 1/23/06 @ 10:30 a.m.

**ASA 0065**

# TAB 40

1  M. Jonathan Hayes (Bar No. 90388)
   **Law Office of M. Jonathan Hayes**
2  21800 Oxnard St, Suite 840
   Woodland Hills, CA 91367
3  Telephone: (818) 710-3656
   Facsimile: (818) 710-3659
4  jhayes@polarisnet.net

5  Attorneys for Alleged Debtor Francis Lopez

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10                    **SAN DIEGO DIVISION**

11

12   In Re:                           )  CASE NO. 05-05926-PBINV
                                       )
13        FRANCIS J. LOPEZ,            )  **Involuntary Chapter 7**
                                       )
14        Alleged Debtor              )
                                       )
15                                     )  **MOTION TO DISMISS**
                                       )  **INVOLUNTARY PETITION;**
                                       )  **DECLARATIONS OF FRANCIS J.**
16                                     )  **LOPEZ AND M. JONATHAN HAYES**
                                       )
17                                     )
                                       )
18                                     )  Date: April 3, 2006
                                       )  Time: 11:00 a.m.
19                                     )  Ctrm: 4
                                       )
20                                     )
                                       )
21                                     )
                                       )
22                                     )

23        TO THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY

24   JUDGE, TO PETITIONING CREDITOR ALAN STANLY AND ALL INTERESTED

25   PARTIES:

26

27

28

# I.

## REQUEST FOR DISMISSAL

The petition in this case was filed by a single petitioning creditor Alan Stanly on June 30, 2005.  On September 7, 2005, the alleged debtor, Francis Lopez filed his Answer denying all of the material allegations contained therein.  Included with his Answer was a list of his creditors, as of the petition date.  A copy of that list is attached hereto as **Exhibit "A."**[1]  The list includes the claims of 22 creditors with total claims of $149,759.00 which includes Mr. Stanly's judgment of $50,000.  Some of these creditors have been paid by Mr. Lopez since the bankruptcy filing.

As the court is aware, Mr. Lopez has been a permanent resident of Florida since July, 2003 when he and his family moved there from California.  He owns a residence in Florida and is employed there.  Mr. Lopez and his wife have recently agreed to sell their home and the proceeds of the sale will be sufficient to pay all creditors in full.  The sale escrow cannot close without this order because of the "cloud" on title caused by this case.

Based thereon, the alleged debtor seeks an order dismissing this bankruptcy case.  As part of the dismissal, Mr. Lopez will execute an irrevocable escrow instruction to pay one of the creditors in full, Wayne Wise, whom Mr. Lopez listed with his creditors with a claim of $15,000.  Escrow will also be instructed irrevocably to transfer $135,000 into the client trust account of M. Jonathan Hayes to be held as follows:

Mr. Hayes will contact each of the remaining 21 creditors in writing and request a written demand for payment.  Upon resolution of the amount owed, in writing, Mr. Hayes will cause each creditor to be paid out of the funds in his client trust account.  Upon confirmation from the creditor in writing to Mr. Hayes that no amount is owed to a

---

[1]  The court is reminded that in the response to an earlier Motion to Dismiss or Transfer the case, Mr. Stanly asserted that he believed that the alleged debtor had only a few creditors including him (which was why he was the only petitioning creditor at the time).

1    particular creditor, or if the amount owed is less than the amount set forth on **Exhibit "A"**

2    and is paid, the balance of the funds with respect to those creditors will be returned to Mr.

3    Lopez by Mr. Hayes. Once, each of the 21 creditors are paid or there is written

4    confirmation that no balance is owing, Mr. Hayes will return the remaining funds to Mr.

5    Lopez.

6        With respect to Mr. Stanly's claim, Mr. Lopez intends to post a *supersedeas* bond

7    with the California Superior Court that will automatically effectuate a stay pending appeal

8    of the judgment obtained by Mr. Stanly against Mr. Lopez. The automatic stay pursuant to

9    California C.C.P. 917.1(b) requires a bond from "an admitted surety insurer" of 150% of

10   the $50,000 judgment or $75,000. In order to obtain such a bond, Mr. Lopez will be

11   required by the bonding company to post a cash deposit of the full bonded amount of

12   $75,000. Mr. Lopez will be entitled to use $50,000 of the funds in the client trust account

13   to collateralize the *supersedeas* bond. If the bond is not obtained and filed with the

14   superior court within fifteen days after the funds are transferred to Mr. Hayes' account,

15   Mr. Hayes will forward $50,000 to Mr. Stanlys' counsel.

16        The debtor requests an Order Dismissing this Involuntary Petition based on the

17   above arrangement to pay all of his creditors. If escrow does not close within twenty days

18   of entry of the Order, or if there are insufficient funds to pay the full amount indicated to

19   Mr. Hayes' client trust account, Mr. Lopez will stipulate to an Order Vacating the Order

20   Dismissing this case.

21

22                           **II.**

23                   **CONCLUSION**

24        This case should be dismissed because under the proposal set forth herein every

25   creditor will be paid or adequate irrevocable assurance that they will be paid in the future

26   will be provided. Mr. Lopez' counsel will bring an Order to the hearing and request

27

28

1 | immediate entry so that the Order may be forwarded to escrow in Florida.  A proposed

2 | Order is attached hereto as **Exhibit "B."**

3

4

5 | Respectfully submitted,

6 | LAW OFFICES OF M. JONATHAN HAYES

7

8

9 | Dated: _March 23, 2006_    By: _____

10 | M. Jonathan Hayes, attorney for Francis J. Lopez

11

12

13

14 | Signature by the attorney constitutes a certification under Fed. R. Bankr. P. 9011

15 | that the relief provided by the order is the relief granted by the court.

16

17 | Submitted by:

18

19 | By: _____

20 | M. Jonathan Hayes

21 | Attorney for Francis J. Lopez

22

23

24

25

26

27

28

LAW OFFICES
M. Jonathan Hayes

4

1
2      ## DECLARATION OF FRANCIS J. LOPEZ

3      I, Francis J. Lopez, declare as follows:

4           1.    I am the alleged debtor in this matter.  The statements made herein are of my

5      own personal knowledge and if called upon to testify, I could and would competently

6      testify thereto.

7           2.    On September 7, 2005, I filed my Answer along with a list of my creditors, as

8      of the petition date.  A true and correct copy of that list is attached hereto as **Exhibit "A."**

9      The list includes the claims of 22 creditors with total claims of $149,759.00 which includes

10     Mr. Stanly's judgment of $50,000.  I have paid some of these creditors since the

11     bankruptcy filing.

12          3.    I have been a permanent resident of Florida since July, 2003 when I and my

13     family moved there from California.  I own a residence in Florida and am employed there.

14     My wife and I have recently agreed to sell our home and the proceeds of the sale will be

15     sufficient to pay all creditors in full.  The sale escrow cannot close without this order

16     because of the "cloud" on title caused by this case.

17          4.    As part of the requested dismissal, my wife and I will execute an irrevocable

18     escrow instruction to pay one of the creditors in full, Wayne Wise, $15,000 and to transfer

19     $135,000 into the client trust account of M. Jonathan Hayes to be held to pay my creditors.

20          5.    With respect to Mr. Stanly's claim, I intend to post a *supersedeas* bond with

21     the California Superior Court that will automatically effectuate a stay pending appeal.  I

22     have spoken to a number of bonding companies and they will require me to post a cash

23     deposit of the full bonded amount of $75,000.  I will need to use $50,000 of the funds in

24     the client trust account to collateralize the *supersedeas* bond.  I agree, that if the bond is

25     not obtained and filed with the superior court within fifteen days after the funds are

26     transferred to Mr. Hayes' account, Mr. Hayes will forward $50,000 to Mr. Stanlys'

27     counsel.

28

1    6.  I agree that if escrow does not close within twenty days of entry of the Order, or

2  if there are insufficient funds to pay the full amount indicated to Mr. Hayes' client trust

3  account, I will stipulate to an Order Vacating the Order Dismissing this case.

4

5        I declare under penalty of perjury under the laws of the United States of America

6  that the foregoing is true and correct to the best of my knowledge and belief.

7        Executed this _____ day of March, 2006 at Destin, FL.

8

9

10                                                    _____
                                                        Francis J. Lopez

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      6. I agree that if escrow does not close within twenty days of entry of the Order, or

2  if there are insufficient funds to pay the full amount indicated to Mr. Hayes' client trust

3  account, I will stipulate to an Order Vacating the Order Dismissing this case.

4

5      I declare under penalty of perjury under the laws of the United States of America

6  that the foregoing is true and correct to the best of my knowledge and belief.

7  Executed this _23rd_ day of March, 2006 at Destin, FL.

8

9

10              Francis J. Lopez

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF M. JONATHAN HAYES

I, M. Jonathan Hayes, declare as follows:

1. I have personal knowledge of the facts set forth below and if called as a witness to testify, I would and could testify competently thereto. I am a member of the California Bar. I am admitted to practice in all the courts of the State of California and am admitted to practice before the District Court of the Central District of California.

2. I have agreed with Mr. Lopez and represent to the court that I will contact each of the 21 creditors in writing and request a written demand for payment. Upon resolution of the amount owed, in writing, I will cause each creditor to be paid out of the funds to be transferred by escrow to my client trust account. Upon confirmation from the creditor in writing to me that no amount is owed to a particular creditor, or if the amount owed is less than the amount set forth on **Exhibit "A"** and is paid, I will return the balance of the funds with respect to those creditors to Mr. Lopez. Once, each of the 21 creditors are paid or there is written confirmation that no balance is owing, I will return the remaining funds to Mr. Lopez. I will not return the funds to him before that time.

3) If requested by Mr. Lopez, I will send $50,000 of the funds in the client trust account directly to the bonding company if needed to collateralize the *supersedeas* bond he intends to obtain. If the bond is not obtained and filed with the superior court within fifteen days after the funds are transferred to my account, I will forward $50,000 to Mr. Stanlys' counsel.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23 day of March, 2006, at Woodland Hills, California.

M. Jonathan Hayes

FRANCIS LOPEZ
EXHIBIT A
LIST OF CREDITORS

Progressive Insurance
PO Box 31260
Tampa, FL  33631
Acct. 37287380-4
$157.20
Insurance, Auto

Coastal Community Insurance
12139 Panama City Beach Pkwy.
Panama City Beach, FL  32407
Policy No. LHQ336763
$1,013.00
Insurance, Flood (Property)

Quicken Platinum Card
PO Box 44167
Jacksonville, FL  32231
$848.00
Goods and services, 1998- 2005

Okaloosa Gas District
PO Box 548
Valparaiso, FL  32580
$45.00
Utilities

Northwest Florida Daily News
200 Racetrack Rd.
Ft. Walton Beach, FL  32549
$45.00
Newspaper

Kelly Plantation Owners Association
4393 Commons Drive E.
Destin, FL  32541
$550.00
Homeowner's Association

Allstate Floridian
54 Beal Parkway
Ft. Walton Beach, FL  32548
$1900.00
Homeowners Insurance

ASA 0074
A-1

Texaco / Shell
PO Box 9151
Des Moines, IA  50368
Acct. No. 77-917-6550-1
$290.00
Gasoline and related

Bank Of America
PO Box 1390
Norfolk, VA  23501
Acct. No. 4050860512429141
Credit Card, goods and services
$2386.00

Verizon Wireless
PO Box 660108
Dallas, TX  75266
Acct. No. 81955380600001
$45.00
Utility – telephone

Cox Communications
PO Box 60970
New Orleans, LA
Acct. No. 0018710003886502
Utility – television and Internet
$112.00

Union Bank of California
8155 Mercury Ct.
San Diego, CA  92111
Settlement of Union Bank v. Francis Lopez, $15,000 original balance
$6,000.00

Bankcard Services
PO Box 15287
Wilmington, DE  19886
Acct. No. 5490999178488929
$10,000.00
Goods and services – 2001- 2005

Cingular Wireless
PO Box 8229
Aurora, IL  60572
Acct. No. 0050443578
$125.00
Utilities – telephone

EXHIBIT A

ASA 0075

Wayne Wise
810 Red Tanager Ct.
Nashville, TN 37221
$15,000.00
Personal Loan

Valley Forge Life Insurance
100 CNA Drive
Nashville, TN 37214
Acct. No. VITU045825
$0.00   ($486.00 per year)
Life Insurance

American Home Shield
PO Box 849
Carroll, IA 51401
Acct. No. 58449061
$128.00
Home appliance insurance

Citi Cards
PO Box 6414
The Lakes, NV 88901
Acct. No. 5424180306665024
$32,515.00
Goods and Services, 1994 - 2005

Household Bank / HSBC
PO Box 5222
Carol Stream, IL 60197
Acct. No. 5176690006732635
Goods and Services, 2003 - 2005
$5,000.00

American Express
PO Box 297804
Ft. Lauderdale, FL 33329
Acct. No. 378349802283007
$22,000.00
Goods and Services, 1994 - 2004
Note:  Some of this debt may be owed by Prism and/or Stanly, though I have personal
guarantee

ASA 0076

Ft. Walton Beach Medical Center
1000 Mar Walt Drive
Ft. Walton Beach, FL 32547
$1600.00
Medical and Health services
Making payments of $100.00 month

Alan Stanly
1569 Berkshire Ct.
San Marcos, CA 92069
$50,000.00
Judgment in Union Bank v. Stanly (cross-complaint by Stanly)
Currently under appeal in CA

1  M. Jonathan Hayes (Bar No. 90388)
   **Law Office of M. Jonathan Hayes**
2  21800 Oxnard St, Suite 840
   Woodland Hills, CA 91367
3  Telephone:  (818) 710-3656
   Facsimile:  (818) 710-3659
4  jhayes@polarisnet.net

5  Attorneys for Alleged Debtor Francis Lopez

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10                    **SAN DIEGO DIVISION**

11

12  In Re:                              )  CASE NO. 05-05926-PBINV
                                        )
13         FRANCIS J. LOPEZ,            )  Involuntary Chapter 7
                                        )
14         Alleged Debtor               )
                                        )  **(Proposed) ORDER DISMISSING**
15                                      )  **INVOLUNTARY PETITION**
                                        )
16                                      )
                                        )  Date:  April 3, 2006
17                                      )  Time:  11:00 a.m.
                                        )  Ctrm:  4
18                                      )
                                        )
19

20      A hearing took place at the above time and place, M. Jonathan Hayes appearing for

21  Alleged Debtor Francis Lopez and L. Scott Keehn appearing for Petitioning Creditor Alan

22  Stanly.  After consideration of the Motion to Dismiss filed by the Alleged Debtor, and

23  oppositions is any, and good cause appearing,

24

25      IT IS ORDERED:

26      1)  The Involuntary Petition is dismissed subject to being reopened as set forth

27  herein.

28

2.   Mr. Lopez shall execute an irrevocable escrow instruction to pay one of the creditors in full, Wayne Wise, whom Mr. Lopez listed with his creditors with a claim of $15,000, as well as to irrevocably transfer $135,000 into the client trust account of M. Jonathan Hayes.

3.   Mr. Hayes is ordered to contact each of the remaining 21 creditors in writing and request a written demand for payment.  Upon resolution of the amount owed, in writing, Mr. Hayes shall cause each creditor to be paid out of the funds in his client trust account.  Upon confirmation from the creditor in writing to Mr. Hayes that no amount is owed to a particular creditor, or if the amount owed is less than the amount set forth on Exhibit "A" to the Motion to Dismiss, and is paid, the balance of the funds with respect to those creditors will be returned to Mr. Lopez by Mr. Hayes.  Once, each of the 21 creditors are paid or there is written confirmation that no balance is owing, Mr. Hayes will return the remaining funds to Mr. Lopez.

4.   Mr. Hayes is authorized to transfer $50,000 to a bonding company if required to post a cash deposit of the bonded amount.  If the bond is not obtained and filed with the superior court within fifteen days after the funds are transferred to Mr. Hayes' account, Mr. Hayes shall forward $50,000 to Mr. Stanlys' counsel.

5.   If the sale escrow now pending does not close within twenty days of entry of this Order, or if there are insufficient funds to transfer $135,000 to Mr. Hayes' client trust account, counsel for the petitioning creditor may seek to vacate this order on shortened notice.

Dated: _____          _____
                                  Hon. Peter W. Bowie
                                  United States Bankruptcy Judge

PROOF OF SERVICE

I, MJ Hayes, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 21800 Oxnard St., Suite 840, Woodland Hills, CA 91367. On March 23, 2006, I served the within documents:

ý     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

L. Scott Keehn
Sarah H. Lanham
**ROBBINS & KEEHN, APC**
530 B Street, Suite 2400
San Diego, CA 92101
AND BY EMAIL

Northwest Florida Daily News
Elenor Hypes
200 Racetrack Rd.
Fort Walton Beach, FL 32547

Alternative Resolution Center
11601 Wilshire Blvd., Ste 1950
Los Angeles, CA 90025

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 23, 2006, at Los Angeles, California.

_____
MJ Hayes

# TAB 43

1    L. Scott Keehn (61691)
     **ROBBINS & KEEHN, APC**
2    A Professional Corporation
     530 "B" Street, Suite 2400
3    San Diego, California 92101
     Telephone: (619) 232-1700
4
     Attorneys for **Moving Creditor, ALAN STANLY**
5

6                    **UNITED STATES BANKRUPTCY COURT**

7                    **SOUTHERN DISTRICT OF CALIFORNIA**

8                         **SAN DIEGO DIVISION**

9                                        )   Case No. 05-05926-PBINV
                                         )
10   In Re:                              )   Involuntary Chapter 7
                                         )
11          FRANCIS J. LOPEZ             )
                                         )
12                                       )   **ALAN STANLY'S MEMORANDUM OF**
            Alleged Debtor               )   **POINTS AND AUTHORITIES IN**
13                                       )   **OPPOSITION TO MOTION TO DISMISS**
                                         )   **INVOLUNTARY PETITION**
14                                       )
                                         )
15                                       )   **Date:**  April 3, 2006
                                         )   **Time:** 11:00 a.m.
16                                       )   **Ctrm:** 4
                                         )
17   _____)
18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

106191/LFK/5311.01

**ASA 0081**

**I**

**INTRODUCTION**

The Motion to Dismiss provides cause for both encouragement and alarm. It is encouraging to the extent that it reflects Lopez's intention to commit his assets to the satisfaction of his debts; but it alarmingly reveals his return to past practices of hood-winking courts and the parties before them so that he can abscond with assets earmarked for the satisfaction of claims.[1] Unfortunately, whatever encouragement can be gleaned from the Motion appears to be eclipsed by the sense of *deja-vu* created by what appears to be just another attempt to lull the Court with a false promise of payment to cover a covert usurpation of assets.[2]

That relegates us to looking to the substantive merit of the motion, and of that there is none. The Motion is an attempt to establish a payment plan (a *plan of reorganization* as bankruptcy practitioners might say) in Chapter 7 — the one Chapter in the Code where no such Plan was ever contemplated by Congress. It takes that impossible proposal, and makes it more egregious by imposing upon unnoticed creditors an impermissible disparity of treatment in the general unsecured class of claims depending upon the *liquidated* or *unliquidated* nature of the claim. Not surprisingly, Lopez cites not a single authority to support the requested relief. There is none. The Motion can only be denied.

**II**

**FACTUAL CHRONOLOGY OF PERTINENT EVENTS**[3]

1994:    Stanly formed Computer Handyman, Inc. which was later renamed Prism Advanced Technologies, Inc.

1996:    Stanly gave Lopez 50% interest in Prism Advanced Technologies, Inc. ("Prism"). Prism was a California corporation that created, authored and licensed transportation software; and sold computer hardware and services.

11/2002 -

---

[1]    See, Part III C below regarding the secret sale of Lopez's Carlsbad residence in 2003 in violation of a "no sale" stipulation, and Lopez's subsequent flight (with the proceeds) to Florida.

[2]    *Id.*

[3]    The facts herein are supported by the Declaration of Alan Stanly, filed concurrently herewith.

106191/LFK/5311.01

**ASA 0082**

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9995

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

| 03/2003: | Dispute arose between Stanly and Lopez regarding personal expenditures Lopez made with Prism's funds; In addition, Stanly learned Lopez had used Prism funds to start a competing business. |
|---|---|
| 04/2003: | Lopez and Stanly stipulated to appoint Richard Kipperman as receiver to run Prism's affairs. In or about July 8, 2003, the receiver ceased Prism's operations. |
| 04/03/2003: | Lopez filed *Prism Advanced Technologies, Inc. and Lopez v. Stanly*, San Diego Superior Court Case Number GIN 028765, wherein Lopez claimed civil harassment, and sought Stanly's ejection from Prism's business premises. No hearing on the merits was ever held in this action. |
| 04/30/2003: | Letter from Union Bank of California to Stanly and Lopez demanding payment on a Prism bank loan (approx. $300,000), personally guaranteed by both Stanly and Lopez. Union Bank's representative, Adam Karrer, emphasized to Lopez that, if necessary, Union Bank would vigorously pursue Lopez's personal assets to satisfy the obligation. |
| 05/14/2003: | Lopez filed *Lopez and Prism Advanced Technologies, Inc. v. Stanly*, San Diego Superior Court Case Number GIN 029692 which sought money damages. |
| 06/03/2003: | Letter from Pacific Carlsbad Partners to Stanly and Lopez requesting payment on an outstanding balance of a promissory note executed by Prism, and personally guaranteed by both Stanly and Lopez. The letter states that Pacific Carlsbad will seek a writ of attachment if a civil collection action is filed. |
| 06/26/2003: | Union Bank of California filed a civil collection action entitled *Union Bank of California v. Lopez*, San Diego Superior Court Case Number GIN 030827; and Pacific Carlsbad Partners filed a civil collection action entitled *Pacific Carlsbad Partners, LLC v. Prism Advanced Technologies, Lopez and Stanly*, San Diego Superior Court Case Number GIC 813397. |
| 07/03/2003: | "Stipulation for Temporary Protective Order" filed in *Pacific Carlsbad Partners, LLC v. Prism Advanced Technologies, Lopez and Stanly*, whereby **Stanly and Lopez each stipulate not to sell their residential real property** – assets which could be used to pay the outstanding balance on the note owed to Pacific Carlsbad Partners– **until at least August 8, 2003, the date of the hearing on Pacific Carlsbad Partners's Application for Writ of Attachment.** |
| **07/18/2003:** | **Lopez violates the Stipulation for Temporary Protective Order filed on 07/03/2003, sells his Carlsbad residence – for a price that is below fair market value, and on a shortened escrow – and flees to Florida.**[4] |
| 08/22/2003: | Involuntary Chapter 7 Bankruptcy Petition filed against Prism in the United States Bankruptcy Court for the Southern District of California, Case |

---

[4]    See also, Lopez Declaration in Support of Motion to Dismiss, ¶2 ("I have been a permanent resident of Florida since July, 2003 when I and my family moved there from California"). Lopez *Does it to his creditors once — shame on him*." Now he seeks an opportunity to do it to us twice.

-3-

106191/LFK/5311.01

ASA 0083

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2401 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1 | Number 03-07777.

2 | 09/20/2004: | Judgment entered against Lopez in favor of Stanly in the principal amount of $50,000 in *Union Bank of California v. Lopez*, San Diego Superior Court Case Number GIN 030827. Interest begins to accrue on that judgment at the statutory rate of 10% per annum.[5]

3

4

5 | 11/30/2004: | Lopez filed a Notice of Appeal of the judgment entered in *Union Bank of California v. Lopez*, in the California Court of Appeal, Fourth Appellate District, Division 1 (San Diego), Case Number: D045451. The appeal is currently stayed, pending the outcome of Lopez's involuntary bankruptcy case. Lopez's California attorneys file quarterly status reports with the Court of Appeal regarding Lopez's bankruptcy (last status report filed on 01/11/2006).

6

7

8 | 06/30/2005: | • Involuntary Chapter 7 Bankruptcy Petition filed herein against Lopez.

9 |  | • As of this date, Stanly held an undisputed, liquidated claim against Lopez in the amount of 53,877.10,[6] and disputed and unliquidated claims against Lopez (acquired in the purchase of Prism's assets) in the approximate amount of $500,000. In addition, Greg Akers, the Chapter 7 Trustee in the Prism Case, holds insider preference avoidance claims in at least the amount of $25,000.

10

11

12 |  | •

13 | 12/21/2005: | Creditor Northwest Florida Daily News filed Joinder in Involuntary Petition for Francis J. Lopez. [Docket Number 36]

14

15 | 12/21/2005: | Creditor Alternative Resolution Center filed Joinder in Involuntary Petition for Francis J. Lopez. [Docket Number 37]

16 | 02/22/2006: | Without notice to any creditors, Lopez listed his Florida residence (a 5-bedroom, custom-built home in a prestigious, gated community) for sale, through listing agent Coastal Properties of N.W. Florida. The list price is $1,295,000.00.

17

18

19 | 03/27/2006: | • Stanly learns – for the first time – that Lopez has listed his Florida residence for sale, when the Florida process service who is attempting to personally serve Lopez with a Deposition Subpoena sees the For Sale sign, and lock box, on Lopez's vacant residence.

20

21 |  | • Lopez files a de facto "Plan" of reorganization masquerading as a motion to dismiss the case. But he fails to give notice to all creditors or to provide treatment to the disputed and unliquidated creditor body.

22 |  | •

23 | 04/07/2006: | Date escrow is scheduled to close on the sale of Lopez's Florida residence.

24

25

26 | _____

[5]     Cal. Code of Civil Procedure §§685.010 [10% per annum] and 685.020(a) [interest

27 | begins to accrue upon entry of judgment].

28 | [6]     Includes interest from September 20, 2004 to June 30, 2005 (283 days of interest at $13.70 per day).

-4-                                                      106191/LFK/5311.01

ASA 0084

**III**

**DISCUSSION**

**A.    LOPEZ'S MOTION TO DISMISS IS PROCEDURALLY DEFECTIVE AND SUBSTANTIVELY INDEFENSIBLE**

    **1.    Procedural Defects: Inadequate Notice and No Supporting Authority.**

"All creditors of the alleged debtor have standing to object to the proposed dismissal; they need not meet the qualifications necessary to initiate or join in an involuntary petition." [7] Here, the Proof of Service filed with Lopez's Motion to Dismiss establishes that the only creditors who have received notice of the Motion are the three petitioning creditors: Alan Stanly, Northwest Florida Daily News, and Alternative Resolution Center. Given that a bankruptcy court will not dismiss a case unless it finds dismissal to be in the best interest of *all* of the parties, *all* of an alleged debtor's creditors must be notified of a request for dismissal, and given an opportunity to object. [8] Section 303(j) of the Bankruptcy Code specifically states that an involuntary bankruptcy petition may not be dismissed without notice to "all creditors."  The purpose of the notice requirement is to protect the non-petitioning creditors from a collusive dismissal. [9] Here, Lopez's failure to provide all of his creditors with notice of his Motion is fatal to the Motion, and the Motion should be denied.

    The second procedural defect in the Motion springs from the substantive flaw described in part (2) below. Specifically, Lopez has ignored the — not insignificant — procedural requirement imposed by LBR 9014-2(b) which clearly mandates that all motions be supported and "*accompanied by ... a memorandum of points and authorities upon which the movant is relying.*" On the face of the moving papers, it is clear that this requirement has been ignored. A thoughtful analysis of the relief requested reveals the reason for the omission: There is no authority to support dismissal under these circumstances or by utilization of the mechanism proposed.

---

[7]    *In re Taub*, 150 B.R. 96, 98 (Bkrtcy. D.Conn. 1993).

[8]    11 U.S.C. §§303(j); 305(a)(1).

[9]    *In re Rajneesh Neo-Sannyas Intern. Commune*, 59 B.R. 49, 51 (Bkrtcy. D.Or. 1986).

106191/LFK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9995

ASA 0085

## 2.    <u>Fatal Substantive Flaw</u>: No Legal Authority

Lopez should not be granted the requested relief without – *at a minimum* – being required to cite to some authority indicating that the relief he requests is in fact available, and within the Court's power to grant. Alas, there is no authority because the Motion is – in effect – a *de facto* "Plan" of reorganization. Lopez's Motion consists entirely of a proposed payment plan, the likes of which are available within the statutory framework of a Chapter 11 or Chapter 13 case –but not one in a Chapter 7. There is no existing legal authority that would allow a Chapter 7 debtor to exit the proceedings with a de facto "Plan."  Beyond that, the provisions of this plan, which first ignore, and then provide a disparate treatment of disputed and unliquidated claims, make this specific proposal intensely inapposite to the policies of the Bankruptcy Code. Ratable distribution to all creditors — as determined by the definition of §101(5), not just those described in §303 (b) — is an overarching principle and goal of the Bankruptcy Code. Specifically:

> The purpose of bankruptcy law is to equitably adjust the relationship between a debtor and its creditors, ratably distributing limited assets among competing claimants in accordance with the federally-mandated priority scheme.[10]

> A purpose of bankruptcy is so to administer an estate as to bring about a ratable distribution of assets among the bankrupt's creditors.[11]

> ...historically one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets..."[12]

> It is the purpose of bankruptcy to cause whatever assets the bankrupt has to be distributed ratably among the creditors.[13]

Lopez's proposed plan throws the ratable distribution concept out the window. It addresses only the non-contingent and liquidated claims — those described in §303(b) —  and makes no provision for the known unliquidated claims. So under the Lopez *de facto* Plan, the liquidated

---

[10]   *In re Auto Parts Club, Inc.*, 224 B.R. 445, 447 (Bankr. S.D. Cal. 1998).

[11]   *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161 (1946).

[12]   *Young v. Higbee Co.*, 324 U.S. 204, 210 (1945).

[13]   *Hassen v. Jonas*, 373 F.2d 880, 881 (9th Cir. 1967).

106191/LFK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

**ASA 0086**

1  claims get paid (presumably 100%), while the unliquidated claim holders get to chase Lopez for

2  whatever may be left. But insofar as the Bankruptcy Code is concerned, both the liquidated and

3  the unliquidated claims occupy the same level of priority — general unsecured claims. Thus the

4  Lopez *de facto* is a scheme that is at odds with the most fundamental underpinnings of the

5  Bankruptcy Code. It can not be put into effect.

6       If Lopez has a passion for proposing a plan, then he should embrace rather than resist the

7  bankruptcy process, consent to an order for relief under Chapter 11 (or 13 if he qualifies), and

8  move forward with his plan. As it is, he is asking this Court to deprive all creditors of the

9  protections afforded by those chapters that enable debtors to propose restructuring plans. That

10  circumvention is an anathema to the Bankruptcy Code, and this Court should have no part in such

11  a perversion of the Code's most salutary policies.

12  **B.    LOPEZ FAILS TO ESTABLISH THE REQUISITE "CAUSE" FOR DISMISSAL**

13       11 U.S.C. §707 governs the dismissal of a Chapter 7 case, and is the beginning point of the

14  Court's analysis of this Motion. Subsection (a) provides a non-exclusive list of what constitutes

15  sufficient "cause" for dismissal, including:

16           (1) unreasonable delay by the debtor that is prejudicial to creditors;
             (2) nonpayment of any fees or charges required under chapter 123 of
17           title 28; and
             (3) failure of the debtor in a voluntary case to file, within fifteen
18           days or such additional time as the court may allow after the filing
             of the petition commencing such case, the information required by
19           paragraph (1) of section 521, but only on a motion by the United
             States trustee.

20

21       Here, Lopez's Motion requests dismissal in order to facilitate the close of escrow –

22  **currently scheduled for Friday, April 7, 2006** – on the sale of his Florida home. See, Motion to

23  Dismiss, page 2, lines 13-15 ("The sale escrow cannot close without the [dismissal] order because

24  of the 'cloud' on title created by this case"). Certainly, facilitating the sale of an alleged debtor's

25  only significant asset – a transaction outside the ordinary course of the debtor's business, and

26  without notice to any creditors – cannot be the sort of "cause" Congress intended to support a

27  dismissal under Section 707.

28       Lopez's ostensibly magnanimous gesture of using the proceeds from the sale to pay all the

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

**ASA 0087**

1    creditors he listed in his Answer is likewise insufficient to support a dismissal.[14] Significantly,

2    Lopez's "full payment" proposal is based on hopelessly incomplete information: He proposes to

3    sell certain real property without providing any evidence whatsoever as to: (1) the fair market

4    value of the property, (2) the agreed-upon sale price for the property, (3) existing encumbrances

5    on the property, (4) his projected net proceeds, (5) his tax basis in the residence, and/or (6) the tax

6    consequences to the estate (without dismissal) of the sale under its currently terms. Without those

7    fundamental, foundational facts, this Court lacks the evidentiary springboard upon which to take

8    the suggested leap to the conclusion that dismissal would be in the best interest of *all* of Lopez's

9    creditors.[15] Lopez asks the Court and creditors to make that leap on faith alone. The impropriety of

10   that request is self-evident.[16]

11        Lopez's dismissal plan does not even purport to treat all similarly-situated creditors

12   equally. Rather, types of creditors within the same class would be treated differently. Specifically,

13   Lopez has proposed one plan for creditor Wayne Wise (upon sale of Lopez's residence,

14   immediately pay the full amount claimed), another plan for Petitioning Creditor Alan Stanly (an

15   amorphous "bond" scheme which, at best, *may* result in Stanly receiving the outstanding principal

16   amount owed on his judgment without any of the accrued interest), another plan for each of the

17   remaining creditors Lopez chose to list in his Answer (negotiate a "resolution" with each creditor

18   regarding how much Lopez actually owes), and significantly, no plan whatsoever for those

19   creditors who have disputed and/or unliquidated claims. Such disparate treatment is patently

20

21

22        [14]    *Matter of Nina Merchandise Corp.*, 5 B.R. 743, 746 (Bkrtcy. N.Y. 1980)
23   ("dismissal should not be granted because of the ability of the debtor to pay off some or all
     outstanding creditors").

24        [15]    *In re Rajneesh Neo-Sannyas Intern. Commune*, supra, 59 B.R. at 52 (bankruptcy
25   court would not dismiss an involuntary Chapter 7 case where the dismissal would "not assure
     equal treatment for the unsecured creditors who would share pro-rata in a Chapter 7"); see also, *In
26   re Auto Parts Club, Inc.*, supra, 224 B.R. at 447 ("The purpose of bankruptcy law is to equitably
     adjust the relationship between a debtor and its creditors, ratably distributing limited assets among
27   competing claimants in accordance with the federally-mandated priority scheme").

28        [16]    This *leap of faith* is made all the more inappropriate when considered in light of
     Lopez's past misconduct in similar circumstances discussed in part C below.

106191/LFK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

ASA 0088

1    improper in the context of any chapter,[17] and should be flatly rejected.

2    **C.    LOPEZ HAS DEMONSTRATED THAT HE IS NOT TRUSTWORTHY — HIS
     EXIT FROM BANKRUPTCY REQUIRES COURT SUPERVISION**

3

4            Lopez has already demonstrated his willingness to dishonor promises made to a court and

5    other parties in pending litigation.[18]  Ominously, Lopez appears to be setting up precisely the same

6    forensic scam he used to hinder and evade his creditors in 2003 – sell his residence and flee with

7    the proceeds. In July 2003, just 15 days after executing a written stipulation promising not to sell

8    his Carlsbad residence, Lopez sold that residence and fled to Florida. Now, only a few years later,

9    when aggressive creditors have once again caught up with him, Lopez is attempting to sell his

10   residence – the only significant asset available to satisfy the outstanding claims. Significantly,

11   Lopez listed the Florida residence for sale on February 22, 2006, without any notice whatsoever to

12   the Court or any of the creditors in this case. Lopez remained silent about the sale at the status

13   conference held by this Court on March 20, 2006 – even though at that point the property had

14   been on the market for approximately a month —  and that sale was the obvious source of money

15   needed to fund the *pay-and-dismiss* concept discussed at that hearing.

16           Stanly only recently learned that Lopez's residence was actually for sale when he

17   attempted to serve Lopez with the deposition subpoena in this action, and the Florida process

18   server discovered the For Sale sign, and lock-box on the residence door. Even Lopez's own

19   Motion never clearly discloses the fact that he has already found a buyer for the property, or that it

20   is in escrow, and ready to close. Instead, the Motion is artfully worded to convey the impression

21   that Lopez and

22    his wife only recently decided to put the property on the market for the purported purpose of

23

24

25   _____

26           [17]    Absent the express consent of all creditors that receive something less than the best
     treatment given to any member of the class (see e.g. §1124(a)(4)).

27           [18]    See Part II above and Stanly Declaration [Regarding his promise not to liquidate
28   his Carlsbad residence prior to an attachment hearing followed by his dishonor of the promise,
     sacrificial (below the market) sale of that residence, and flight to Florida].

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

106191/LFK/5311.01

ASA 0089

1   paying creditors.[19]

2       Given his acts of banditry in earlier proceedings before the Superior Court, and his current

3   lack of candor with respect to his most significant asset, it is clearly essential to keep this debtor

4   safely corralled inside the confines of an orderly bankruptcy proceeding. Lopez provides no

5   evidence to suggest that he can or should be trusted to act in the best interest of his creditors

6   without being forced to do so by this Court; and there is ample evidence to show his propensity to

7   use dishonesty and sharp practices to the detriment of his creditors.  There is just no escaping the

8   obvious need to keep Lopez under judicial supervision to insure that he delivers what he promises.

9                                                    **IV**

10                                       <u>**CONCLUSION**</u>

11      There is absolutely no authority that permits the relief requested. The Motion would

12  pervert rather than promote the policies upon which the Bankruptcy Code is grounded, and robs

13  most of the creditor constituencies of notice and opportunity to be heard. It is poorly conceived

14  and beyond repair. For these and all of the forgoing reasons the Motion must be denied. [20]

15

16  Dated: March 29, 2006                    **ROBBINS & KEEHN**
                                             A Professional Corporation
17

18

19                                    By:   //s// L. Scott Keehn
                                             L. Scott Keehn
20                                           Attorneys for Petitioning Creditor
                                             Alan Stanly
21

22

23  _____

24      [19]    See, Motion to Dismiss, page 2, lines 12-14 ("Mr. Lopez and his wife have recently
        agreed to sell their home and the proceeds of the sale will be sufficient to pay all creditors in
25      full").

26      [20]    However, to the extent that what the Motion really reflects is Lopez's first step in
        facing and dealing with his creditors, then that step is to be applauded.  The petitioning creditors
27      encourage Lopez to hasten the day when repayment will be realized by consenting to the entry of
        an Order for Relief under the chapter of his choosing.  Prompt action in that direction may even
28      permit his estate to preserve and perform the pending sale (or a better one)  — which also hastens
        the day that Lopez can receive the cash benefit of his homestead exemption.

                                             -10-                            106191/LFK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

ASA 0090

# TAB 47

L. Scott Keehn (61691)
**ROBBINS & KEEHN, APC**
A Professional Corporation
530 "B" Street, Suite 2400
San Diego, California 92101
Telephone: (619) 232-1700

Attorneys for **Petitioning Creditor, ALAN STANLY**

### UNITED STATES BANKRUPTCY COURT

### SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

In Re:

      FRANCIS J. LOPEZ

              Alleged Debtor

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 05-05926-PBINV

Involuntary Chapter 7

**VERIFIED *EX PARTE* APPLICATION FOR
AN ORDER APPOINTING AN INTERIM
TRUSTEE; AND SUPPORTING
MEMORANDUM OF POINTS AND
AUTHORITIES, AND DECLARATION OF
LESLIE F. KEEHN**

**[11 U.S.C. §303(g)]**

**Judge:    The Honorable Peter W. Bowie**
**Dept.:    Four**

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

TO:    THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY
        JUDGE:
                          **I.  VERIFIED APPLICATION**

      Pursuant to FRBP 2001(a) and 11 U.S.C. §303(g), Petitioning Creditor Alan Stanly

("Stanly") respectfully submits the following Verified *Ex Parte* Application for an Order

Appointing an Interim Trustee. Stanly bases this Application on the following enumerated

grounds, as well as the accompanying Memorandum of Points and Authorities, and Declaration of

Leslie F. Keehn:

    **IN SEVEN DAYS, THE DEBTOR INTENDS TO CLOSE THE PENDING SALE**

              **OF HIS ONLY SIGNIFICANT ASSET**

    1.       Stanly is aware of only one significant asset owned by alleged debtor Francis J.

106266/LFK/5311.01

**ASA 0091**

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2401 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

Lopez ("Lopez") – residential real property commonly known as 310 Sand Myrtle Trail, Destin, Florida 32541 (the "Florida Property").

2.    On March 28, 2006 Stanly learned – for the first time – that the Florida Property had been listed for sale on February 22, 2006, and that Lopez has found a buyer. **ESCROW IS SCHEDULED TO CLOSE ON THE SALE OF THE FLORIDA PROPERTY NEXT FRIDAY APRIL 7, 2006**. Stanly does not know the agreed-upon sale price, but the Florida Property was listed at a sale price of $1,295,000. A true and correct copy of the Internet listing of the Florida Property is attached hereto as Exhibit 1.

3.    Lopez failed to notify Stanly and/or this Court of either one of these critical facts: (1) that the Florida Property had been listed for sale; and (2) that an escrow had been opened, and is scheduled to close on Friday April 7, 2006.

4.    No mention of the listing and/or sale of the Florida Property was made at the status conference held before this Court on March 20, 2006, even though at that point the Florida Property had been on the market for approximately a month.

5.    The unsupervised liquidation of what may be the estate's only asset of consequence is an extraordinary event. It heightens the risk of loss to the estate by converting a permanent and immovable asset into a liquid and highly mobile asset which is capable of immediate dissipation.

## "PAST BEHAVIOR IS THE BEST PREDICTOR OF FUTURE BEHAVIOR"[1]

6.    Lopez appears to be reacting to this Involuntary Petition in precisely the same way he reacted in 2003 when his creditors had finally closed in on him, and were about to collect – he conducted a secret sale of his residential real property (in Carlsbad, California), and absconded to Florida with the proceeds, in violation of a court order and his own stipulation (as explained below). His creditors first learned of Lopez's sale of his Carlsbad property when they attempted to personally serve him with process in the pending litigation against him, and discovered the property had been vacated and sold.

7.    Specifically, on June 26, 2003, creditor Union Bank of California filed a civil

---

[1]    Federal courts recognize "the truth of the axiom that past behavior is the best predictor of future behavior." *U.S. v. Crawford*, 372 F.3d 1048, 1071 (9th Cir. 2004).

106266/LFK/5311.01

ASA 0092

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

1    collection action against Lopez, Stanly and Prism Advanced Technologies, Inc. ("Prism") to

2    collect the outstanding balance on a bank loan of approximately $300,000 (*Union Bank of*

3    *California v. Lopez*, San Diego Superior Court Case Number GIN 030827). Union Bank had

4    loaned the money to Prism, and Lopez and Stanly, as Prism's officers, had each personally

5    guaranteed the loan.

6         8.    The same day (June 26, 2003), creditor Pacific Carlsbad Partners filed a civil

7    collection action against Lopez, Stanly and Prism to collect the outstanding balance on a

8    promissory note of approximately $40,000 (*Pacific Carlsbad Partners, LLC v. Prism Advanced*

9    *Technologies, Lopez and Stanly*, San Diego Superior Court Case Number GIC 813397). Pacific

10    Carlsbad Partners had loaned money to Prism, and Lopez and Stanly, as Prism's officers, had each

11    personally guaranteed the loan.

12         9.    In both collection actions, the creditors sought to attach the property of both Lopez

13    and Stanly as a prejudgment remedy pending the outcome of the actions. Toward that end, on July

14    3, 2003, Union Bank obtained a Temporary Protective Order against Lopez and Stanly in which

15    the Court, *inter alia*, specifically restrained Lopez from selling his residential real property

16    commonly known as 5461 Los Robles Drive, Carlsbad, California 92008 (the "Carlsbad

17    Property"). A true and correct copy of that Temporary Protective Order is attached hereto as

18    Exhibit 2.

19         10.    That same day (July 3, 2003), Lopez and Stanly each executed a "Stipulation for

20    Temporary Protective Order" in favor of Pacific Carlsbad Partners whereby Lopez and Stanly

21    promised not to sell their residential real property – including the Carlsbad Property –  until at least

22    August 8, 2003, the date of the hearing on Pacific Carlsbad Partners' Application for Writ of

23    Attachment. A true and correct copy of that Stipulation is attached hereto as Exhibit 3.

24         11.    Four days later, on July 7, 2003, Lopez thumbed his nose at both Protective Orders

25    described above when – without notice to the California Superior Court, or any of his creditors –

26    he sold the Carlsbad Property for approximately $700,000 (approximately $50,000 below fair

27    market value) in a shortened escrow, and fled to Florida. A true and correct copy of the San Diego

28    County Recorder's Office transaction record of this sale is attached hereto as Exhibit 4.

ASA 0093

12.    A scant eight days later, on July 15, 2003, Lopez had consummated the purchase of the Florida Property for approximately $745,000 (presumably with the purloined proceeds from the Carlsbad Property sale). That left Lopez living comfortably in Florida several weeks before the scheduled attachment hearing on August 8, 2003.

13.    Now the past is proving to be prologue to the future as the risk of history repeating itself looms largely as a threat to the efficacy of the bankruptcy process. Lopez has again secretly arranged for the sale of his residence – the only significant asset available to satisfy the claims of the creditors in this proceeding. And he would have gotten away with it *again*, but for the occurrence of one serendipitous event: on or about March 27, 2006, a process server, sent to personally serve Lopez with a Deposition Subpoena, discovered a For Sale sign on the Florida Property, and noted that it was vacant. This triggered Stanly's immediate investigation which revealed the even more alarming details of the impending escrow.

14.    If the sale is allowed to proceed without the supervision of a trustee, Lopez's bankruptcy estate may well be emptied of assets, and Lopez's creditors will be left empty-handed *again*.

15.    In order to preserve the assets of the estate, and assure a ratable distribution of available assets, an interim trustee must be appointed to fairly administer the proceeds of the sale of the Florida Property for the benefit of Lopez's creditors.

16.    Stanly is prepared to furnish a bond in an amount approved by this Court pursuant to FRBP 2001(b). In that connection, Stanly submits that the only damages Lopez may incur is the difference between the interest earned on the trustee's deposit account and other interest or investment opportunities available to Lopez. Absent contrary evidence submitted by Lopez, Stanly submits that the difference will be nominal.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to FRBP 2002(a) and 11 U.S.C. §303(g), an interim trustee may be appointed in an involuntary proceeding at any time before an order for relief is entered, where, as here, a trustee is "necessary to preserve the property of the estate or to prevent loss to the estate." Under exigent circumstances, an interim trustee may be appointed on an ex parte basis – even without notice to

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9055

-4-

ASA 0094

1  the debtor and/or a hearing. *Matter of R. S. Grist Co.*, 16 B.R. 872 (Dist. Ct. S.D.Fla. 1982)

2  (without notice to the debtor or a hearing, the bankruptcy court properly granted an ex parte

3  application to appoint an interim trustee to preserve estate assets).

4        An interim trustee should be appointed where, as here, a debtor has demonstrated an intent

5  to dissipate an estate's only significant asset. *In re James Plaza Joint Venture*, 62 B.R. 959

6  (Bkrtcy. S.D.Tex. 1986) (interim trustee appointed where debtors were using the estate's only

7  asset – a fund of approximately $150,000 – to pay attorneys and accountants in connection with

8  State court proceedings). Here, Lopez is attempting to sell the only significant asset that would be

9  available to satisfy the claims of the creditors in this action – the Florida Property. Once that asset

10 is sold, it will not be available to the estate. Those exigent circumstances require the appointment

11 of an interim trustee. *Id.*

12       Luckily, this is not a situation like the one in 2003, where the horse had already left the

13 barn, and Lopez's creditors did not learn of the sale of his only asset until it was just exactly too

14 late. This time, there is just enough time to act – to put an interim trustee in place to insure that

15 Lopez is finally held to account, and his creditors receive ratable distribution. Stanly respectfully

16 requests that this Court do so by granting this Application.

17       **WHEREFORE**, Stanly respectfully requests that this Court:

18       1.    Enter an Order appointing an interim trustee to: (1) conduct the sale of the Florida

19 Property, and (2) preserve and appropriately administer the proceeds from the sale of the Florida

20 Property; and

21       2.    For such other and further relief as the court deems reasonable, just and proper.

22

23 Dated: March 30, 2006                    **ROBBINS & KEEHN**
                                            A Professional Corporation
24

25

26                             By:    //s// L. Scott Keehn

27                                    L. Scott Keehn
                                      Attorneys for Petitioning Creditor
28                                    **ALAN STANLY**

                                      -5-                      106266/LFK/5311.01

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

**ASA 0095**

### III. DECLARATION OF LESLIE F. KEEHN

I, Leslie F. Keehn, declare:

1.      I am an attorney with the law firm of Robbins & Keehn, APC, attorneys of record for Petitioning Creditor, Alan Stanly. I have personal knowledge of the facts stated herein.

2.      On March 30, 2006, at approximately 3:45 p.m., I called this Court to notify it of the filing of this *Ex Parte* Application.

3.      On March 30, 2006, at approximately 4:00 p.m., I called Lopez's attorney, Jonathan Hayes, to notify him of the filing of this *Ex Parte* Application. Mr. Hayes' office informed me that Mr. Hayes was not in the office, and I was transferred to his voicemail. I left Mr. Hayes a detailed message explaining that this *Ex Parte* Application would be electronically filed with this Court at some point during the evening of March 30, 2006. I further informed Mr. Hayes that the purpose of this *Ex Parte* Application is to obtain an order from this Court appointing an interim trustee to conduct the sale of Lopez's Florida Property. I further informed Mr. Hayes that my office would serve them with a copy of this *Ex Parte* Application via email and facsimile to Mr. Hayes' office.

4.      I personally arranged to fax copies of this *Ex Parte* Application to the United States Trustee, the other Petitioning Creditors, and Camille Collins (Lopez's listing agent for the sale of the Florida Property) on March 30, 2006 (immediately after the Application has been filed with this Court).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this Declaration was executed on March 30, 2006 at San Diego, California.

//s// Leslie F. Keehn
**LESLIE F. KEEHN**

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9095

-6-

**VERIFICATION**

I, **ALAN STANLY** , declare:

I am over the age of eighteen (18) and am a Petitioning Creditor in these proceedings. I have read the foregoing "**VERIFIED *EX PARTE* APPLICATION FOR AN ORDER APPOINTING AN INTERIM TRUSTEE**" and know the contents thereof. Based upon my personal knowledge, I know that the factual matters stated in the "Verified Application" are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this Verification was executed on March 30, 2006 at San Marcos, California.

//s// Alan Stanly
**ALAN STANLY**

ROBBINS & KEEHN, APC
ATTORNEYS AT LAW
2400 UNION BANK BUILDING · 530 "B" STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 232-1700 · TELECOPIER (619) 544-9055

106266/LFK/5311.01

**ASA 0097**

# EXHIBIT 1

ASA 0098

Case 3:08-cv-00713-JAH-BLM    Document 11-3    Filed 08/08/2008    Page 112 of 174

**PostAHouse**

Search for a Property:   Select Your State      To Buy      Search

Home
Contact Us
About Us

Sell a Home
Buy a Home

Rent Your Property
Rental Listings

Cancel Listing

Resources
Home Selling Tips
Mortgage Calculator

Links Trade
Link Partners

Do you have a home to sell?
Have your home listing displayed on PostaHouse.com. **List your home now**.

View Counter: 46

**Contact Information:**

House Owner: camille collins
Phone: 850 650 7293
✉ **Contact This Owner**

**Home Information:**

**Address:** 310 Sand Myrtle Trail
**City:** Destin  **State:** Florida  **Zip:** 32541

**Description:** A stunning custom home with all the features a family needs. It has a lovely foyer with an alabaster chandelier, gourmet kitchen, home office, and too many extras to list.A quality home, and the best value in Kelly Plantation, the most prestigious gated community in Destin.
✆ **Tell a Friend**   🗺 **Map Direction**





Image Not Available          Image Not Available

   closer look
closer look   
closer look   

**Date Post:** 2/22/2006 10:25:56 AM  **Price:** $1,295,000.00

**Beds:** 5    **Baths:** 3.5    **Garage:** 2    **Sq feet:** 4000 - 5000    **Years built:** 1997



❤ Instant Love Alert

Find a  Beautiful ▾   ● Girl  ○ Guy  in  Minneapolis ▾  for  Love ▾   Go!

Single? Free Dating!                                    FREE-BANNERS.COM

**Home** | **Cancel Your Listing** | **Post a Home** | **Buy a Home** | **About Us** | **Contact Us** | **Spread the Word** | **Home Selling Tips - News**
**Links Trade** | **Links** | **Terms and Conditions** | **Home Mortgage Calculator** | **Reciprocal Link Exchange.com**

Copyright © 2006 PostaHouse.com - All Rights Reserved.

ASA 0099

# EXHIBIT 2

ASA 0100

AT-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Jeffrey Isaacs (Bar No. 042622)
Gerald P. Kennedy (Bar No. 105887)
Procopio, Cory, Hargreaves & Savitch LLP
530 "B" Street, Suite 2100
San Diego, California 92101
TELEPHONE NO.: 619-515-3239     FAX NO.: 619-235-0398
ATTORNEY FOR *(Name):* Plaintiff Union Bank of California, N.A.

NAME OF COURT: San Diego Superior Court
STREET ADDRESS: 325 South Melrose Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Vista, California 92083
BRANCH NAME: North County Division

PLAINTIFF: UNION BANK OF CALIFORNIA, N.A., a National
banking association
DEFENDANT: FRANCIS J. LOPEZ, ALAN STANLY, and DOES I
through IV, inclusive

F I L E D
Clerk of the Superior Court

JUL 0 3 2003

BY: A. LUM

| TEMPORARY PROTECTIVE ORDER | CASE NUMBER:<br>GIN 030827 |
|---|---|

1. The court has considered the application of plaintiff for
   a. [X] a right to attach order, order for issuance of writ of attachment pursuant to Chapter 4 (beginning with Code Civ. Proc., § 484.010), and a temporary protective order.
   b. [ ] an ex parte right to attach order and order for issuance of writ of attachment under Chapter 5 (beginning with Code Civ. Proc., § 485.010).

**FINDINGS**

2. THE COURT FINDS
   a. Defendant is a [X] natural person [ ] partnership [ ] unincorporated association [ ] corporation
      [ ] other *(specify):*
   b. The amount sought to be secured by the attachment under the application for the right to attach is: $
   c. The claim upon which the application for attachment is based is one upon which an attachment may be issued under Code of Civil Procedure section 483.010.
   d. Plaintiff has established the probable validity of the claim upon which the application for the attachment is based.
   e. The order is not sought for a purpose other than the recovery upon the claim on which the application for the attachment is based.
   f. Great or irreparable injury will result to the plaintiff if this order is not issued, based on the following:
      (1) [X] There is a danger that the property sought to be attached would be
          (a) [X] concealed.
          (b) [ ] substantially impaired in value.
          (c) [X] made unavailable to levy by other than concealment or substantial impairment in value.
      (2) [ ] Defendant has failed to pay the debt underlying the requested attachment and is insolvent as defined in Code of Civil Procedure section 485.010, subdivision (b)(2).
      (3) [ ] A bulk sales notice was recorded and published pursuant to Division 6 (beginning with section 6101) of the Commercial Code with respect to a bulk transfer by the defendant.
      (4) [ ] An escrow has been opened pursuant to the provisions of Business and Professions Code section 24074 with respect to the sale by the defendant of a liquor license. The liquor license number is:
      (5) [X] Other circumstances: Plaintiff is informed defendants' real property located at 5461 Los Robles Drive, Carlsbad, California is currently listed for sale and that any proceeds from the sale may be concealed or otherwise made available to levy by other than concealment pending entry of judgment in the matter absent a temporary protective order.
   g. [X] The requirements of Code of Civil Procedure section 485.220 are satisfied, but a temporary protective order should issue instead of an ex parte right to attach order and order for issuance of writ of attachment.
   h. Plaintiff must file an undertaking in the amount of: $ 10,000   before a temporary protective order shall issue, and plaintiff has filed an undertaking in that amount. *OTHER THAN THOSE NECESSARY FOR ORDINARY LIVING EXPENSES AND DEFTS CURRENT*
   i. The property subject to the following order is: The real property commonly known as 5461 Los Robles Drive, Carlsbad, California 92008, and the proceeds from the refinancing of the real property distributed to Defendant Francis J. Lopez out of Escrow No. 122817-SRW, at American Title Company, 1440 North Harbor Boulevard, Suite 108, Fullerton, CA 92836, on or about June 20, 2003.

*(Continued on reverse)*

Form Approved for Optional Use
Judicial Council of California
AT-140 [Rev. January 1, 2000]

**TEMPORARY PROTECTIVE ORDER**
*(Attachment)*

Legal
Solutions
.® Plus

Code of Civil Procedure
§§ 482.030, ...

ASA 0101

| SHORT TITLE: Union Bank v. Lopez, et al. | CASE NUMBER:<br>GIN 030827 |
|---|---|

2. j. ☐ The following property of defendant is inventory or farm products held for sale and may be transferred in the ordinary course of business (specify):

k. ☐ Other (specify):

# ORDER

3. THE COURT ORDERS
   a. Defendant shall not transfer, directly or indirectly, any interest in the property described in item 2i of the findings.
   b. ☐ Defendant shall not dispose of the proceeds of any transfer of inventory or farm products held for sale except under the following restrictions:

   c. ☐ Other (specify):

   d. This order shall expire at the earliest of the following times:
      (1) when plaintiff levies upon specific property described in this order,
      (2) after (date): _____ , or
      (3) 40 days after the issuance of this order.

4. Number of pages attached: _____

Date: **JUL 0 3 2003**
**THOMAS P. NUGENT**
(TYPE OR PRINT NAME)

The foregoing instrument is a full, true and correct copy of the original on file in this office.
Attest: **SEP 1 2 2003**
Clerk of the Superior Court of the State of California,
In and for the County of San Diego.
By _____ Deputy
E. GONZALEZ

► _____
(SIGNATURE OF JUDGE OR COMMISSIONER)

---

**NOTICE TO DEFENDANT:** An undertaking has been filed with the court by plaintiff. You may object to the undertaking.
a. You may issue any number of checks against any of your accounts in a financial institution in this state in any amount for the following purposes:
   (1) Payment of any payroll expense (including fringe benefits and taxes and premiums for workers' compensation and unemployment insurance) falling due in the ordinary course of business prior to the levy of a writ of attachment.
   (2) Payment for goods thereafter delivered to you C.O.D. for use in your trade, business, or profession.
   (3) Payment of taxes if payment is necessary to avoid penalties which will accrue if there is any further delay in payment.
   (4) Payment of reasonable legal fees and reasonable costs and expenses required for your representation in the action.
b. In addition, you may issue any number of checks for any purpose so long as the total amount of such checks does not exceed the greater of the following:
   (1) The amount by which the total amount on deposit exceeds the sum of the amount sought to be secured by the attachment and the amounts permitted to be paid pursuant to this notice.
   (2) One thousand dollars ($1,000).
c. If the property is farm products held for sale or is inventory, the temporary protective order may not prohibit you from transferring the property in the ordinary course of business, but may impose appropriate restrictions on the disposition of the proceeds from such transfer.

---

| [SEAL] | **CLERK'S CERTIFICATE**<br>I certify that the foregoing is a correct copy of the original on file in my office.<br>Date: |
|---|---|
| | Clerk, by _____ , Deputy |

**TEMPORARY PROTECTIVE ORDER**
(Attachment)

**ASA 0102**

# EXHIBIT 3

ASA 0103

1  BARRY E. HAGER (SBN 137973)
   M. ANDREW SCHNEIDER (SBN 219441)
2  TREITLER & HAGER, LLP
   3737 Camino del Rio South, Suite 109
3  San Diego, California 92108
   Telephone: 619-283-1111
4  Facsimile: 619-528-0746

5  Attorneys for Plaintiff PACIFIC CARLSBAD PARTNERS, LLC

F I L E D
Clerk of the Superior Court

JUL 03 2003

By: SCOTT SEYLER, Deputy

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            IN AND FOR THE COUNTY OF COUNTY OF SAN DIEGO

10

11  PACIFIC CARLSBAD PARTNERS, LLC,      )    Case No.  GIC 813397
    a California Limited Liability Company,  )
12                                        )    **STIPULATION FOR TEMPORARY**
              Plaintiff,                  )    **PROTECTIVE ORDER**
13                                        )
         vs.                              )
14                                        )    Date:  July 3, 2003
    PRISM ADVANCED TECHNOLOGIES,          )    Time:  8:30 a.m.
15  INC., a California Corporation, FRANCIS )    Dept:  65
    J. LOPEZ, an individual, ALAN STANLY,  )
16  an individual, and DOES 1 through 10,  )
    inclusive,                            )
17                                        )
              Defendants.                 )
18                                        )

19        IT IS HEREBY STIPULATED by and between Plaintiff PACIFIC CARLSBAD

20  PARTNERS, LLC, through its attorneys of record, and Defendants FRANCIS J. LOPEZ and

21  ALAN STANLY that a temporary protective order shall issue as follows:

22        1.    FRANCIS J. LOPEZ ("LOPEZ") will not transfer, directly or indirectly, any

23              interest in real property owned by LOPEZ, including, but not limited to, the certain

24              real property located at 5461 Los Robles Drive, Carlsbad, California 92008

25        2.    ALAN STANLY ("STANLY") will not transfer, directly or indirectly, any interest

26              in real property owned by STANLY, including, but not limited to, not to further

27              encumber the certain real property located at 1569 Berkshire Court, San Marcos,

28              California 92069

STIPULATION FOR TEMPORARY PROTECTIVE          1
ORDER

**ASA 0104**

1    The temporary protective order shall be effective commencing July 3, 2003 and shall

2  remain in effect through and until the Court's hearing on Plaintiff's Application for Writ of

3  Attachment, which is scheduled for August 8, 2003.

4    The parties hereby waive any requirement that Plaintiff file an undertaking prior to the

5  issuance of the temporary protective order.

6

7  IT IS SO STIPULATED:

8  Dated: _7/2/03_                    TREITLER & HAGER, LLP

9

10

11                                  By _____
                                      BARRY E. HAGER
12                                    Attorney for Plaintiff
13                                    PACIFIC CARLSBAD PARTNERS,
                                      LLC
14

15

16  Dated: _____          By_____
17                                      FRANCIS J. LOPEZ
18

19

20  Dated: _____          By_____
21                                      ALAN STANLY
22

23

24

25

26

27

28

STIPULATION FOR TEMPORARY PROTECTIVE          2
ORDER

**ASA 0105**

1    The temporary protective order shall be effective commencing July 3, 2003 and shall

2  remain in effect through and until the Court's hearing on Plaintiff's Application for Writ of

3  Attachment, which is scheduled for August 5, 2003.

4    The parties hereby waive any requirement that Plaintiff file an undertaking prior to the

5  issuance of the temporary protective order.

6

7  IT IS SO STIPULATED:

8

9  Dated: _____          TREITLER & HAGER, LLP

10

11                                 By _____

12                                    BARRY E. HAGER
                                      Attorney for Plaintiff
13                                    PACIFIC CARLSBAD PARTNERS,
                                      LLC
14

15

16  Dated: 7-2-03                   By _____

17                                    FRANCIS J. LOPEZ

18

19

20  Dated: _____          By _____

21                                    ALAN STANLY

22

23

24

25

26

27

28

STIBULATION FOR TEMPORARY PROTECTIVE          2
ORDER

ASA 0106

1        The temporary protective order shall be effective commencing July 3, 2003 and shall

2    remain in effect through and until the Court's hearing on Plaintiff's Application for Writ of

3    Attachment, which is scheduled for August 8, 2003.

4        The parties hereby waive any requirement that Plaintiff file an undertaking prior to the

5    issuance of the temporary protective order.

6

7    IT IS SO STIPULATED:

8

9    Dated: _____          TREITLER & HAGER, LLP

10

11                                          By _____

12                                              BARRY E. HAGER
                                                Attorney for Plaintiff

13                                              PACIFIC CARLSBAD PARTNERS,
                                                LLC

14

15

16   Dated: _____          By _____

17                                              FRANCIS J. LOPEZ

18

19

20   Dated: 7/2/03 _____          By _____

21                                              ALAN STANLY

22

23

24

25

26

27

28

STIPULATION FOR TEMPORARY PROTECTIVE
ORDER                                        2

7/2/03 AHS pg2 **ASA 0107**

# EXHIBIT 4

ASA 0108

Westlaw.

APN: 210-115-06-00                                                    Page 1


**REAL PROPERTY TRANSACTION RECORD**

Filings Collected Through:03-22-2006
County Last Updated:03-30-2006
Frequency of Update:WEEKLY
Current Date:03/30/2006
Source:COUNTY                    RECORDER
, SAN DIEGO, CALIFORNIA


 OWNER INFORMATION

Owner(s):LANG RMD TRUST
Ownership Rights:PERSONAL TRUST
Additional Owner #1:LANG RMD TRUST
Owner Rights:PERSONAL TRUST
Property Address:5461 LOS ROBLES DR
CARLSBAD CA 92008-4423
Mailing Address:5461 LOS ROBLES DR
CARLSBAD CA 92008-4423

 PROPERTY INFORMATION

County:SAN DIEGO
Assessor's Parcel Number:210-115-06-00
Property Type:SINGLE FAMILY RESIDENCE - TOWNHOUSE
Land Use:SINGLE FAMILY RESIDENCE
Building Square Feet:1651

 TRANSACTION INFORMATION

Transaction Date:07/07/2003
Seller Name:LOPEZ FRANCIS J
Sale Price:$700,000.00
Consideration:SALE PRICE (FULL)
Deed Type:GRANT DEED
Type of Transaction:RESALE
Mortgage Amount:$560,000.00
Mortgage Type:CONVENTIONAL
Mortgage Term:30 YEARS
Mortgage Deed Type:DEED OF TRUST
Mortgage Date:07/16/2003
Mortgage Due Date:08/01/2033
Interest Rate:ADJUSTABLE
Lender Name: COUNTRYWIDE HM LNS INC
Lender Address: CALABASAS, CA 91302-1613
Recording Date:07/18/2003

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**ASA 0109**

                    Document Number:860383
                    Title Company:CHICAGO TITLE CO.
                    Construction Type:RESALE
                    Purchase Payment:MORTGAGE
TAX ASSESSOR RECORD is available for this property. The record contains
information from the office of the local real property tax assessor office. In
addition to identifying the current owner, the record may include tax assessment
information, the legal description, and property characteristics. Additional
charges may apply.


TRANSACTION HISTORY REPORT is available for this property. The report contains
details about all available transactions associated with this property. The report
may include information about sales, ownership transfers, refinances, construction
loans, 2nd mortgages, or equity loans based on recorded deeds. Additional charges
may apply.


            Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
              to order copies of documents related to this or other matters.
                          Additional charges apply.


END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**ASA 0110**

# TAB 52

CSD 1001A [08/06/03]
Name, Address, Telephone No. & I.D. No.

L. Scott Keehn (61691)
**ROBBINS & KEEHN, APC**
A Professional Corporation
530 "B" Street, Suite 2400
San Diego, California 92101
Telephone: (619) 232-1700

Order Entered on
April 07, 2006
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

FRANCIS J. LOPEZ

Alleged Debtor.

BANKRUPTCY NO.  05-05926-PBINV

Date of Hearing:  N/A
Time of Hearing:  N/A
Name of Judge:  N/A

**CONSENT ORDER ENJOINING SALE OR TRANSFER OF REAL PROPERTY LOCATED AT
310 SAND MYRTLE TRAIL, DESTIN, FLORIDA, 32541**
A M E N D E D *

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2___ with exhibits, if any, for a total of __4___ pages, is granted.  Motion/Application Docket Entry No. __49___

//

//

//

//

//

//

DATED:  April 07, 2006

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted jointly by:

Robbins & Keehn, APC
(Firm name)

By: //s// L. Scott Keehn
Attorneys for [X] Movant [ ] Respondent

Judge, United States Bankruptcy Court

Law Offices of M. Jonathan Hayes
(Firm name)

By:  //s// M. Jonathan Hayes

**ASA 0111**

CSD 1001A/106358

**CONSENT ORDER ENJOINING SALE OR TRANSFER OF REAL PROPERTY LOCATED AT 310 SAND MYRTLE TRAIL, DESTIN, FLORIDA, 32541 - AMENDED\***

Debtor: Francis Lopez                                    BANKRUPTCY NO.  05-05926-PBINV

The Court, having reviewed the "Stipulation for Entry of Consent Order Enjoining Sale or Transfer of Debtor's Real Property" filed concurrently herewith, and good cause therefore appearing;

IT IS HEREBY ORDERED, that:

1.    Until further order of this court, Francis J. Lopez, the alleged Debtor herein, together with all of his agents, employees, escrow agents, attorneys, and all persons acting pursuant to his request, or direction, or acting in concert with him, are restrained, enjoined, and prohibited from causing, permitting, or suffering the sale or transfer of any interest of Francis J. Lopez in or to that certain residential real property commonly known as 310 Sand Myrtle Trail, Destin, Florida, 32541, and more fully described in Exhibit "1" attached hereto and incorporated herein by this reference (the "Property").

2.    Without limiting the generality of the foregoing, and until further order of this court, Francis J. Lopez, the alleged Debtor herein, together with all of his agents, employees, escrow agents, attorneys, and all persons acting pursuant to his request, or direction, or acting in concert with him, are restrained, enjoined, and prohibited from causing, permitting, or suffering that certain escrow mentioned at First American Title identified as Commitment No.1054-1126315 to close.

3.    Francis J. Lopez shall cause a true copy of this order to be delivered to his escrow agent at First American Title with respect to Commitment No.1054-1126315, not later than April 7, 2006, by e-mail or fax.

4.    A certified copy of this Order may be recorded or filed in the official Real Property Records of the county (or counties) in which the Property is located.

\*Amended to include Exhibit "1"

**ASA 0112**

CSD 1001A/106358

*Signed by Judge James W. Meyers April 07,2006*

# EXHIBIT "1"

ASA 0113

*Signed by Judge James W. Meyers April 07,2006*

# L. SCOTT KEEHN - Legal Description

| | |
|---|---|
| **From:** | "M. Jonathan Hayes" <jhayes@polarisnet.net> |
| **To:** | "L. SCOTT KEEHN" <LSK@robbins-keehn.com> |
| **Date:** | 4/6/2006 11:15:47 AM |
| **Subject:** | Legal Description |

The legal description is as follows:

Lot 5, Block I, KELLY PLANTATION PHASE II, according to the Plat thereof as recorded in

Plat Book 15, Page(s) 59 & 60, of the Public Records of Okaloosa County, Florida.

I have asked the title company to send me the name of the escrow.

Jon

**ASA 0114**

# TAB 76

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA
# Minute Order

### *Hearing Information:*

|  |  |
|---|---|
| **Debtor:** | FRANCIS J. LOPEZ |
| **Case Number:** | 05-05926-PB7     **Chapter:** 7    INVOLUNTARY |
| **Date / Time / Room:** | MONDAY, JUNE 26, 2006 02:00 PM   DEPARTMENT 4 |
| **Bankruptcy Judge:** | PETER W. BOWIE |
| **Courtroom Clerk:** | MARILYN WILKINSON |
| **Reporter / ECR:** | COLLETTA JOHNSON |

### *Matters:*

1) ALLEGED DEBTOR'S MOTION FOR SUMMARY JUDGMENT & ORDER DISMISSING INVOLUNTARY PETITION

2) PETITIONING CREDITORS' MOTION FOR SUMMARY JUDGMENT ON PHASE 1 OF BIFURCATED INVOLUNTARY PETITION, OR ALTERNATIVELY, SUMMARY ADJUDICATION OF FACTS NOT SUBJECT TO MATERIAL DISPUTE

3) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER
(fr. 5/4/06)

### *Appearances:*

M. Jonathan Hayes, ATTORNEY FOR Francis J. Lopez
L. Scott Keehn, ATTORNEY FOR ALAN STANLY
Mr. Stanly & Mr. Lopez, present

### *Disposition:*

1 & 2)  Simultaneous Briefs not to exceed 5 pages re: § 549 transfers to be filed and served on 7/7/06.  No reply. Matter will then be under submission.  Contested.
3)        To be re-set, if needed.

cc: Barbara

**ASA 0115**

# TAB 86

# WRITTEN DECISION NOT FOR PUBLICATION

ENTERED _9/26/06_

FILED

SEP 26 2006

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ /04 _____ DEPUTY

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re                          )    Case No. 05-05926-PBINV
                               )
FRANCIS J. LOPEZ,              )    ORDER ON MOTION FOR
                               )    SUMMARY JUDGMENT
          Alleged Debtor.      )
_____)

On September 30, 2005, Alan Stanly commenced this case by
filing an involuntary petition against alleged debtor, Francis
Lopez.  Northwest Florida Daily News later joined in the
petition.  Lopez challenged the petition on the ground that
three petitioning creditors were necessary under Bankruptcy Code
§ 303(b)(1) because twelve or more entities held claims against
him.  On June 26, 2006, the Court held a hearing on the parties'
cross-motions for summary judgment on the issue of the number of
holders of claims against Lopez for the purposes of § 303(b).
The Court requested additional briefing and took the matter under
submission.

///

1    On July 20, 2006, before the Court ruled on the motions,

2   Richard Kipperman, who asserts a claim against Lopez in the

3   amount of $30,968.57, filed a joinder in the involuntary

4   petition.   On the same date Stanly filed a "Suggestion of

5   Mootness" contending that the issue regarding whether there are a

6   sufficient number of creditors to support an involuntary petition

7   is now moot as a result of Mr. Kipperman's joinder, thereby

8   raising to three the number of petitioning creditors and

9   satisfying the requirements for the filing of an involuntary

10  bankruptcy petition regardless of the number of creditors

11  included in the "Section 303" count.

12    On the Court's direction Lopez filed a response to the

13  Suggestion of Mootness.   He contends that Mr. Kipperman (and

14  Northwest Florida Daily News for that matter) does not qualify

15  as a petitioning creditor.

16  **Number of Holders of Claims**

17    Bankruptcy Code Section 303(b) provides:

18    (b) An involuntary case against a person is commenced
      by the filing with the bankruptcy court of a petition
19    under chapter 7 or 11 of this title-

20    (1) by three or more entities, each of which is either
      a holder of a claim against such person that is not
21    contingent as to liability or the subject of a bona
      fide dispute as to liability or amount, or an indenture
22    trustee representing such a holder, if such
      noncontingent, undisputed claims aggregate at least
23    $12,300  more than the value of any lien on property of
      the debtor securing such claims held by the holders of
24    such claims;

25    (2) if there are fewer than 12 such holders, excluding
      any employee or insider of such person and any
26    transferee of a transfer that is voidable under section
      544, 545, 547, 548, 549, or 724(a) of this title, by

- 2 -                          ASA 0117

1    one or more of such holders that hold in the aggregate
2    at least $12,300 of such claims;

3    On September 7, 2005, Lopez filed an answer to the petition
4 alleging that he had more than 12 creditors, and thus there were
5 an insufficient number of petitioners.  On September 19, 2005,
6 Lopez filed a declaration listing those creditors -- twenty-two
7 in all.

8    Stanly, on the other hand, argues that many of the creditors
9 asserted by Lopez do not qualify to be counted in the
10 determination of whether there are 12 or more creditors for
11 various reasons.  Of the twenty-two alleged holders of claims,
12 Stanly contends that:

13    -- seven did not hold a claim against Lopez as of the
14 petition date;

15    - one (Alan Stanly) is an excluded "insider" of Lopez;

16    -- three are "disputed";

17    -- nine received postpetition transfers voidable under
18 § 548; and

19    -- eleven received preferences voidable under § 547.

20    The Court has considered the arguments and evidence
21 submitted by Stanly and Lopez regarding each of the alleged
22 creditors and finds as follows with respect to each.

23 **Allstate Floridian:**

24    As to this creditor, Stanly contends that it did not hold a
25 claim as of June 30, 2005 -- the date of the petition.  Lopez
26 counters that prepetition the premium amount was adjusted upward

- 3 -

ASA 0118

1  so there was a balance owing of $134.   The Court finds that

2  according to the premium statement, which Lopez provided, an

3  additional amount was owing as of the petition date -- that is,

4  the covered period July, 2004 through July, 2005 was not

5  necessarily paid in full as Stanly suggests.   The Court finds

6  that this creditor should be counted.

7  **American Express:**

8      Stanly initially contended that American Express did not

9  hold a claim as of the petition date.  However, in his reply

10  Stanly concedes that this creditor should be counted.

11  **American Home Shield:**

12      Again, Stanly contends that this creditor did not hold a

13  claim as of the petition date.   In his opposition Lopez argued

14  that as of the petition date he was indebted to this creditor in

15  the amount of $128.   However, Lopez provides no evidence of such

16  and does not even mention this creditor in his declaration.   It

17  appears from Exhibit E to the Declaration of L. Scott Keehn in

18  support of Petitioning Creditors' Motion for Summary Judgment

19  (Keehn Dec.) that this creditor's policy was paid up through

20  7/16/05.  Since Lopez has provided no evidence to the contrary,

21  the Court finds that this creditor should not be counted.

22  **B of A:**

23      Stanly contends that this creditor should not be counted

24  because it received preferential payments which are voidable

25  under § 547 and postpetition payments voidable under § 548.

26  Lopez admits that minimum payments were made on this account, but

- 4 -

ASA 0119

1 argues that they were made in the ordinary course of business.

2 While the "ordinary course" defense might apply to the

3 alleged preferences, there is no comparable defense to the

4 admitted postpetition transfers.  It is clear Lopez made

5 postpetition payments to this creditor.  While they are

6 authorized under § 303(f), they are nevertheless voidable.  See

7 § 549(a)(2).  Section 549(b) provides that in an involuntary case

8 such a transfer may not be avoided to the extent value is given

9 in exchange.  However, Lopez has provided no evidence of any such

10 value being received.  Thus, the Court finds that this creditor

11 should not be counted.

12 **Bankcard Services:**

13 Stanly contends that this claim is subject to a bona fide

14 dispute as to the late fees.  Stanly also argues that this

15 creditor should not be counted because it received preferential

16 payments which are voidable under § 547.

17 Lopez has provided evidence that the issue over late fees

18 had been resolved. Lopez also argues that the payments were made

19 in ordinary course in order to keep the account current.

20 The Court finds that Stanly has failed to establish that

21 there is a bona fide dispute.  In the deposition transcript of

22 Lopez (175:18-177-13), upon which Stanly relies, Lopez merely

23 says that he probably does not agree that the $39 late fee should

24 have been charged and that it was probably resolved on another

25 statement.  The Court does not find that this establishes that

26 the claim is subject to a bona fide dispute.

- 5 -

ASA 0120

1    Stanly argues that Lopez failed to provide evidence of his
2   payment practices with respect to this creditor or creditor's
3   requirements.   However, the Court is comfortable accepting
4   Lopez's assertion that this credit card company requires minimum
5   monthly payments in the ordinary course.   Stanly has provided no
6   evidence that Lopez made unusual payments to this creditor.   The
7   Court finds that this creditor should be counted.
8   **Cingular Wireless:**
9    Stanly contends that this creditor should not be counted
10  because it received preferential payments which are voidable
11  under § 547 and postpetition payments voidable under § 548.
12  Lopez admits that payments were made on this account, but argues
13  that they were made in the ordinary course of business and to
14  maintain service.   Lopez also contends that most of the payments
15  were made by Noveon – his employer.
16    As with B of A, discussed above, while the "ordinary course"
17  defense might apply to the alleged preferences, there is no
18  comparable defense to the admitted postpetition transfers.   It is
19  clear Lopez made postpetition payments to this creditor.   While
20  they are authorized under § 303(f), they are nevertheless
21  voidable.   See § 549(a)(2).   Section 549(b) provides that in an
22  involuntary case such transfer may not be avoided to the extent
23  value is given in exchange.   However, Lopez has provided no
24  evidence of any such value being received.   Further, the evidence
25  indicates that Lopez owed a prepetition balance and that the
26  entire bill was paid postpetition.   Thus, to the extent any

ASA 0121

1  postpetition value was given by Cingular, the amount of the
2  payments would have exceeded this value and thus some portion
3  would be recoverable -- the exception under § 549(b) is only "to
4  the extent any value ... is given."  Finally, Lopez provides no
5  evidence that any of the payments were made by his employer.
6      Thus, the Court finds that this creditor should not be
7  counted.
8  **Citicards:**
9      Stanly contends that this creditor should not be counted
10 because it received preferential payments which are voidable
11 under § 547.  Lopez admits that payments of $379/month were made,
12 but argues that they were made in the ordinary course to keep the
13 account current per an agreement with Citicards.  The payments
14 were direct debits from his checking account.
15     Unlike that discussed in connection with Bankcard Services
16 above, this does not appear to be a typical minimum payment
17 situation where the minimum amount due changes based upon the
18 prior month's activity.  Rather, this appears to be an
19 arrangement Lopez reached with this creditor to repay an
20 overextended account.  Lopez contends that he paid $379/month.
21 However, Stanly's undisputed evidence indicates that Lopez made
22 two payments each month.  Again, Lopez has failed to establish
23 that this is a typical ordinary course arrangement.  The Court
24 finds that this creditor should not be counted.
25 ///
26 ///

**ASA 0122**

**Coastal Community Insurance:**

Stanly contends that this creditor did not hold a claim as of the petition date -- that it was paid by Lopez's lender. Lopez argues in his brief that the policy had been renewed as of June 30, 2005 so payments would continue to come due.  However, Lopez's declaration is silent as to this alleged creditor.  Based upon Lopez's deposition testimony (see Depo. Trans. at 119-25) it does not appear that any amount was owing as of the petition date.  The premium for coverage through July, 2005 had been paid. The statement Lopez relied upon in the deposition was for coverage beginning after the petition was filed.  See Depo. Trans. at Ex. 20.  The Court finds that this creditor should not be counted.

**Cox Communications:**

Stanly contends that this creditor received postpetition payments in full satisfaction of its obligation.  Lopez contends in his brief that payments on this account were made in the ordinary course of business and to maintain service and that most of the payments were made by Noveon -- Lopez's employer. However, Lopez's declaration does not provide any evidence whatsoever with regard to this creditor including of his payment practices with respect to this creditor or payment by his employer.  All Lopez does is attach the statement.

It seems clear Lopez made postpetition payments to this creditor as authorized under § 303(f).  Under § 549(a)(2) these payments would be voidable.  Lopez argues that he received value

- 8 -

ASA 0123

1  in exchange, but has provided no evidence thereof.  Further, the
2  evidence indicates that Lopez owed a prepetition balance (the
3  monthly statement is as of 7/22/05) and that the entire bill was
4  paid postpetition.  Thus, to the extent any postpetition value
5  was given by Cox, the amount of the payments would have exceeded
6  this value and thus some portion would be recoverable.  Lopez
7  also provides no evidence that payments were made by his
8  employer.  The Court finds that this creditor should not be
9  counted.

10 **Ft. Walton Medical Center:**

11      Stanly argues that this claim is subject to a bona fide
12 dispute as to liability.  Lopez denies that there is a dispute.
13 Rather, he explains, he initially thought the services would be
14 covered by insurance (because the doctor told him they would),
15 but subsequently accepted that they were not because he did not
16 get prior approval.

17      The Court finds that Stanly has failed to establish that
18 there is a bona fide dispute with regard to this claim.  Stanly
19 characterizes Lopez's deposition testimony as admitting that he
20 thought the claim was in dispute.  The Court does not agree.  All
21 Lopez said at his deposition is that he was sore that the doctor
22 told him the claim would be covered by insurance and he later
23 learned that it was not.  He uses the term "dispute" but never
24 actually claims he was not liable on the claim.  See Depo. Trans.
25 at 182:5-185:4.  The Court finds that this creditor should be
26 counted.

ASA 0124

**Household Bank:**

1      Stanly contends that this creditor should not be counted
2  because it received preferential payments voidable under § 547.
3  Lopez contends that the payments were made for debts incurred in
4  ordinary course and that they were made to keep the account
5  current per an agreement with Household Bank.

6      Like the payment made to Citicards, these do not appear to
7  be a typical minimum payment situation where the minimum amount
8  due changes based upon the prior month's activity.  Rather, Lopez
9  made sporadic payments of differing amounts less than the minimum
10  monthly amount.  Lopez has not provided evidence that these
11  payments were made in the ordinary course.  The Court finds that
12  this creditor should not be counted.

**Kelly Plantation Owners Assoc.**

13      Stanly argues that this creditor should not be counted since
14  it received postpetition payments in full satisfaction of its
15  claim.  Lopez contends that these are homeowners association fees
16  owing on his residence and that they were incurred and paid in
17  the ordinary course.  He also contends that they are frequently
18  paid from his wife's checking account.

19      As noted above, there is no ordinary course defense to
20  postpetition payments recoverable under § 549.  Lopez made
21  postpetition payments to this creditor as authorized under
22  § 303(f).  Under § 549(a)(2) these payments are voidable.  Lopez
23  provided neither argument nor evidence that he received value in
24  exchange for the payments.  Even if he did receive value (common

- 10 -

ASA 0125

1  ground maintenance or security for example), the evidence
2  indicates that Lopez owed a prepetition balance and that the
3  entire bill was paid postpetition.  Thus, to the extent any
4  postpetition value was given the amount of the payments would
5  have exceeded this value and thus some portion would be
6  recoverable.  The Court finds that this creditor should not be
7  counted.

8  **M. Northwest Florida Daily News**

9       In his declaration Lopez admits that this prepetition claim
10 was paid postpetition.  The Court therefor finds that this
11 creditor should not be counted.

12 **Okaloosa Gas District:**

13      Lopez admits that he made postpetition payments to this
14 creditor, but that they were made to maintain utility service to
15 his residence.  The exhibit provided by Stanly indicates that the
16 payments were less than $50.00/month.  The Court finds that
17 continued utility service constitutes value received in exchange
18 for such payments.  Accordingly, the Court finds that this
19 creditor should be counted.

20 **Progressive Insurance:**

21      Stanly contends that this creditor did not hold a claim as
22 of the petition date – that the premiums for the period had been
23 paid prepetition.  Lopez has provided no evidence to establish
24 the existence of any claim owing to this alleged creditor.  The
25 Court finds that this creditor should not be counted.

26 ///

- 11 -

1  **Citibank/Quicken Platinum Card:**

2       Lopez admits that he made postpetition payments to this

3  creditor and provides no evidence that value was received in

4  exchange.  Accordingly, the Court finds that this creditor should

5  not be counted.

6  **Alan Stanley:**

7       Stanly contends that he, Stanly, cannot be counted because

8  he is an "insider" as he and Lopez each own 50% of Prism.  The

9  analysis is a bit convoluted, but Stanly appears to be correct.

10      The definition of "insider" includes an "affiliate."

11 § 101(31)(E).  An "affiliate" includes a corporation owned more

12 than 20% by the debtor.  § 101(2)(B).  Thus, Prism is an

13 "affiliate" and "insider" of Lopez.  Section 101(31)(E) also

14 provides that an "insider of an affiliate" of the debtor is also

15 an insider of the debtor.  Stanly, as owner of more than 20% of

16 Prism, is an insider of Prism under § 101(2)(B), and thus an

17 insider of Lopez  under § 101(31)(B) because he is an insider of

18 an affiliate of Lopez.

19      So, Stanly is a "holder of a claim against" Lopez and thus

20 qualifies to be a petitioning creditor under § 301(b)(1).

21 However, for the purposes of determining the number of creditors,

22 he is excluded as an insider under § 301(b)(2).  The Court finds

23 that this creditor is not to be counted.

24 **Texaco/Shell:**

25      Lopez admits that he made postpetition payments to this

26 creditor and provides no evidence that value was received in

- 12 -

ASA 0127

1 exchange.  The Court finds that this creditor should not be

2 counted.

3 **Union Bank:**

4     Again Lopez admits making postpetition payments to this

5 creditor, and provides no evidence that value was received in

6 exchange.  The Court finds that this creditor should not be

7 counted.

8 **Valley Forge Life Insurance:**

9     Stanly contends that this creditor did not hold a claim as

10 of the petition date because the premiums for the period had been

11 paid.  Also, Lopez is not the account debtor, but rather Madeline

12 Lopez.  See Keehn Dec at Exhibit L.  Lopez argues that this is a

13 life insurance policy which requires yearly payments.  However,

14 he provides no evidence that he, as opposed to Madeline, is the

15 debtor on this account.  Accordingly, the Court holds that this

16 claim should not be counted.

17 **Verizon Wireless:**

18     Stanly contends that this claim was subject to a bona fide

19 dispute as of the petition date.  It appears from Lopez's

20 testimony at his deposition that Verizon asserted a claim for

21 $262.47, while Lopez disputed any amount over $35.00.  Lopez

22 eventually paid the disputed portion, but not until August 21,

23 2005 - nearly two months after the petition was filed.  In his

24 deposition Lopez explained that he disputed the claim, but that

25 at some point he just got tired of fighting and paid it.  He does

26 not say that it was resolved prior to him simply paying the

ASA 0128

1  disputed amount.  See Depo. Trans. at 151-54.  Thus, it appears

2  that as of the petition date, this claim was subject to a bona

3  fide dispute and should not be counted.

4      Alternatively, Lopez admits that this creditor was paid

5  postpetition and provides no evidence of value received in

6  exchange.  Accordingly, it should not be counted because it could

7  be voided under § 549.  Either way this claim should not be

8  counted.

9  **Wayne Wise:**

10     Stanly alleges that this creditor received a preferential

11  payment of $900 on April 17, 2005 for interest which had accrued

12  on a note.  Lopez argues that the payment was made in exchange

13  for Wise's agreement to extend the maturity date of the note

14  until Lopez could sell his residence.

15     The Court finds that the extension which Lopez received in

16  exchange for the payment is akin to an agreement to forebear an

17  action against the debtor which, although valid consideration for

18  a contract, cannot constitute "new value," within meaning of the

19  new value exception to trustee's preference-avoidance power.

20  See, In re McLean Industries, Inc., 162 B.R. 410 (S.D.N.Y. 1993)

21  (reversed on other grounds 30 F.3d 385).  Thus, this creditor

22  should not be counted.

23  **Summary and Conclusion**

24     Based upon the foregoing analysis, the Court finds that of

25  the twenty-two creditors alleged by Lopez, seventeen must be

26  excluded from the count in § 301(b)(2) for one or more of

- 14 -

ASA 0129

1  the reasons set out in § 301(b).  This leaves only five

2  holders of claims against Lopez that qualify to be counted under

3  § 301(b)(2).  Since this is clearly "fewer than 12," the petition

4  was properly filed by one claim holder - Stanly.[1]

5       The Court does not reach the issue of whether Richard

6  Kipperman (and/or Northwest Florida Daily News) is a proper

7  petitioning creditor (which Lopez disputes), as only one

8  petitioning creditor is required given the Court's ruling.

9       For the reasons set forth above, the Court grants Stanly's

10  motion for summary judgment and denies Lopez's motion for summary

11  judgment on the issue of the number of holders of claims against

12  Lopez for the purposes of § 303(b).

13

14       IT IS SO ORDERED.

15       DATED:   SEP 2 6 2006

16

17                                   _____

18                                   PETER W. BOWIE, Chief Judge
                                     United States Bankruptcy Court

19

20

21

22

23

24  _____

25       [1]  In his opposition to the motion for summary judgment,
    Lopez alleges another, previously undisclosed creditor - Curd,
    Galindo & Smith, LLP.  Even if this creditor were included, the
26  number would still be insufficient to require more than one
    petitioning creditor.

- 15 -

ASA 0130

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

In re Case No. 05-05926-PBINV

**CERTIFICATE OF MAILING**

The undersigned, a regularly appointed and qualified clerk
in the office of the United States Bankruptcy Court for the
Southern District of California, at San Diego, hereby
certifies that a true copy of the attached document, to wit:

was enclosed in a sealed envelope bearing the lawful frank
of the Bankruptcy Judges and mailed to each of the parties
at their respective address listed below:

Attorney for Alleged Debtor:     Attorney for Petitioning
                                  Creditor Alan Stanly:

M. Jonathan Hayes, Esq.
21800 Oxnard Street, Ste. 840    L. Scott Keehn, Esq.
Woodland Hills, CA 91367         530 B Street, Suite 2400
                                 San Diego, CA 92101

Said envelope(s) containing such document were deposited
by me in a regular United States mail box in the City of
San Diego, in said district on September 26, 2006.

Barbara J. Kelly
Barbara J. Kelly, Judicial Assistant

ASA 0131

# TAB 93

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

# Minute Order

### *Hearing Information:*

|  |  |  |  |
|---|---|---|---|
| **Debtor:** | FRANCIS J. LOPEZ | | |
| **Case Number:** | 05-05926-PB7 | **Chapter:** 7 | INVOLUNTARY |
| **Date / Time / Room:** | MONDAY, MARCH 12, 2007 10:30 AM   DEPARTMENT 4 | | |
| **Bankruptcy Judge:** | PETER W. BOWIE | | |
| **Courtroom Clerk:** | MARILYN WILKINSON | | |
| **Reporter / ECR:** | LYNETTE ALVES | | |

### *Matters:*

**2)** STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER
(fr. 1/29/07)

**1)** PETITIONING CREDITORS' MOTION TO COMPEL SUPPLEMENTAL RESPONSES TO WRITTEN
DISCOVERY FOR PHASE II OF THE BIFURCATED PROCEEDINGS

### *Appearances:*

M. Jonathan Hayes, ATTORNEY FOR Francis J. Lopez
L. Scott Keehn, ATTORNEY FOR ALAN STANLY, PETITIONING CREDTORS

### *Disposition:*

1)  Granted.  Response due within 30 days of today's date.  Issue of sanctions reserved.

2)  Continued to 5/11/07 at 9:30 a.m.

**ASA 0132**

# TAB 97

Name, Address, Telephone No. & I.D. No.

L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
KEEHN & ASSOCIATES
A Professional Corporation
402 West Broadway, Suite 1210
San Diego, California 92101

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re
Francis J. Lopez

BANKRUPTCY NO. 05-05926-PBINV

Tax I.D.(EIN)#:_____/S.S.#:XXX-XX-_____   Debtor.

## NOTICE OF HEARING AND MOTION

TO:  FRANCIS J. LOPEZ, the alleged Debtor herein and his attorney of record.

**YOU ARE HEREBY NOTIFIED** that on May 11, 2007_____, at _9:30 a_.m., in Department No.4___, Room 328____ the Jacob Weinberger United States Courthouse, located at 325 West "F" Street, San Diego, California 92101-6991, there will be a hearing regarding the motion of Petitioning Creditors_____, for

(1) STRIKING THE DEBTOR'S ANSWER; (2) ENTERING AN ORDER FOR RELIEF; AND (3) IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR

This Motion is supported by the Memorandum of Points and Authorities and the Declaration of L. Scott Keehn filed concurrently herewith.

Any opposition or other response to this motion must be served upon the undersigned and the original and one copy of such papers with proof of service must be filed with the Clerk of the U.S. Bankruptcy Court at 325 West "F" Street, San Diego, California 92101-6991, NOT LATER THAN FOURTEEN (14)[1] DAYS FROM THE DATE OF SERVICE.

DATED:  April 13, 2007

/s/ L. Scott Keehn
[Attorney for] Moving Party

[1]If you were served electronically or by mail, you have three (3) additional days to take the above-stated actions. **ASA 0133**

CSD 1183

## CERTIFICATE OF SERVICE

I, the undersigned whose address appears below, certify:

That I am, and at all times hereinafter mentioned was, more than 18 years of age;

That on <u>13th</u> day of <u>April, 2007</u> _____, I served a true copy of the within NOTICE OF MOTION AND HEARING by [describe here mode of service]

on the following persons [set forth name and address of each person served] and/or as checked below:

[ ✓ ]    Attorney for Debtor (if required):

M. Jonathan Hayes
Law Office of M. Jonathan Hayes
21800 Oxnard Street, Suite 840
Woodland Hills, CA 91367

| | For Chpt. 7, 11, & 12 cases: | | | For ODD numbered Chapter 13 cases: | | | For EVEN numbered Chapter 13 cases: |
|---|---|---|---|---|---|---|---|
| [ ] | UNITED STATES TRUSTEE<br>Department of Justice<br>402 West Broadway, Suite 600<br>San Diego, CA 92101 | [ ] | | THOMAS H. BILLINGSLEA, JR., TRUSTEE<br>530 "B" Street, Suite. 1500<br>San Diego, CA 92101 | [ ] | | DAVID L. SKELTON, TRUSTEE<br>525 "B" Street, Suite 1430<br>San Diego, CA 92101-4507 |

I certify under penalty of perjury that the foregoing is true and correct.

Executed on <u>April 13, 2007</u>
              (Date)

<u>Mark P. Laemmle</u>
(Typed Name and Signature)

<u>402 W. Broadway, Suite 1210</u>
(Address)

<u>San Diego, CA 92101</u>
(City, State, ZIP Code)

**ASA 0134**

# TAB 97-1

L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
**KEEHN & ASSOCIATES**
A Professional Corporation
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

Attorneys for **Petitioning Creditors**

# UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. 05-05926-PBINV |
| FRANCIS J. LOPEZ, | Involuntary Chapter 7 |
| Alleged Debtor. | **PETITIONING CREDITORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ENFORCEMENT ORDER: (1) STRIKING THE DEBTOR'S ANSWER; (2) ENTERING AN ORDER FOR RELIEF; AND (3) IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR** |
| | **[BIFURCATED PHASE II]** |
| | Date:  May 11, 2007 |
| | Time:  9:00 a.m. |
| | Judge: The Honorable Peter W. Bowie |
| | Ctrm:  4 |

The Alleged Debtor — Francis J. Lopez ("Lopez") — has ignored the Court's order directing him to supplement his discovery responses by April 11, 2007. Accordingly, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure ("FRCP"), made applicable to these proceedings by Rule 9014(c) of the Federal Rules of Bankruptcy Procedure ("FRBP"), Petitioning Creditors respectfully submit their Motion for an Order from this Court: (1) striking the Answer filed by Lopez; (2) entering an Order for Relief; and (2) imposing monetary sanctions against Lopez in the amount of $4,242.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

ASA 0135

109906/LFK/5311.01

# I. __INTRODUCTION__

*Delays have dangerous ends.*

William Shakespeare
*Henry VI, Part One*
Act III, Scene ii

Francis J. Lopez — Master Scofflaw — is pulling this case and its creditors down the dangerous path of delay by ignoring the court's mandate for compliance with his duties to disclose that which unopposed discovery compels him to disclose. Having paralyzed the case first by his refusal to cooperate, and second by his disobedience to the court's ruling, Lopez remains at liberty to create an unlimited variety of "Priority Gap Claims"[1] which will slip ahead of all of the pre-petition unsecured creditors. The plight of those creditors is exacerbated by the automatic stay which prevents them from taking any enforcement action to preserve the economic utility of their claims.[2] The risks of prejudice are further heightened by the initial delay that was occasioned by the bifurcation of the case — at Lopez's request — so that the Involuntary Gap Period was necessarily rendered longer than the norm, even before the latest delays were encountered.

What mischief has already occurred behind the shield of delay, and what further mischief may yet occur before the Order for Relief is ultimately entered, is impossible to ascertain. But, what can be seen with absolute clarity is that Lopez will not willingly discharge the duties of a litigant to participate in good faith in this process. He has used his *passive/aggressive* tactic of delay to the prejudice of the creditors, and that prejudice must be truncated so that the *dangerous end* of an expanding pool of priority claims is held in check.

Lopez's disobedience is particularly troubling because it demonstrates that — beyond his willingness to disobey court mandates — he is impervious to the threat of monetary sanctions. At the hearing conducted on March 12, 2007, this Court made clear on the record: (a) the seriousness of Lopez's failure to respond to discovery which he never opposed; (b) its willingness to defer the issue of ruling on the requested sanctions of $4,242; and (c) its intention that the risk of sanctions

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

[1]    See 11 U.S.C. §§502(f) and 507(a)(3).

[2]    See 11 U.S.C. §362(a).

**ASA 0136**

- 2 -

109906/LFK/5311.01

1   was to serve as a *Sword of Damocles* suspended above Lopez to motivate compliance.  With that

2   in mind, the court then gave him another 30 days — to April 11, 2007 — to fully respond to

3   discovery promulgated five months earlier, on November 3, 2006.  But, in response to the court's

4   clear direction, Lopez has provided nothing but that which Simon & Garfunkel made famous in

5   the 60's: the *Sounds of Silence*.

6       His silence is anything but golden.  It is a badge of dishonor and contempt.  It endangers

7   the creditors' expectations of distributions.  It taunts the threat of monetary sanctions.  It is

8   insufferable.  It warrants the immediate entry of terminating sanctions.

9                          II.  **FACTUAL AND PROCEDURAL CHRONOLOGY**

10  **A.    Lopez's Four-Month History of Hindering, Delaying and Refusing to Provide**

11         **Discovery Despite Being Ordered to Do so by this Court**

12           11/03/06:    Lopez was served with Petitioning Creditors' First Set of Written Discovery

13                        for Phase II (the "Phase II Written Discovery"), consisting of (1) First Phase

14                        II Requests for Admission Propounded by Petitioning Creditors [10

15                        Requests]; (2) First Phase II Request for Production of Documents by

16                        Petitioning Creditors [162 categories of documents]; and (3) First Phase II

17                        Interrogatories Propounded by Petitioning Creditors [35 Interrogatories].

18                        Lopez's responses to the Phase II Written Discovery were due on December

19                        4, 2006.

20           12/03/06:    Lopez served "Response to Requests for Admission Propounded to Alleged

21                        Debtor Francis J. Lopez (Phase II)."  **Lopez's responses were deficient,**

22                        **and Lopez failed to verify the responses**.

23           12/05/06:    Lopez served "Response to Interrogatories Propounded to Alleged Debtor

24                        Francis J. Lopez (Phase II).  **Lopez's responses were deficient, and Lopez**

25                        **failed to verify the responses**.  Lopez also served "Response to Requests

26                        for Production of Documents."  **Lopez's responses were deficient.**

27           12/13/06:    Petitioning Creditors' attorney, L. Scott Keehn, sent a *meet and confer* letter

28                        to Lopez's attorney, M. Jonathan Hayes, notifying him of the deficiencies in

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0137**

109906/LFK/5311.01

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1    Lopez's responses to the Phase II Written Discovery.

2    12/15/06:    Attorneys Keehn and Hayes participated in a telephonic *meet and confer*

3    conference wherein the parties agreed that Lopez would provide

4    supplemental responses to the Phase II Written Discovery on or before

5    January 12, 2007.

6    01/12/07:    Deadline for Lopez to provide the promised supplemental responses to the

7    Phase II Written Discovery.  **Lopez failed, without explanation, to**

8    **provide supplemental responses to the Phase II Written Discovery.**

9    01/19/07:    Attorney Keehn sent a follow-up *meet and confer* letter to attorney Hayes

10    requesting an explanation regarding Lopez's failure to provide the promised

11    supplemental responses to discovery, and notifying Lopez of the imminent

12    likelihood of a motion to compel his responses to the Phase II Written

13    Discovery.  **Lopez failed, without explanation, to respond to that *meet***

14    **and confer letter.**

15    01/29/07:    Petitioning Creditors filed a Motion to Compel responses to the Phase II

16    Written Discovery.  **Lopez failed, without explanation, to respond or file**

17    **an Opposition to that Motion.**

18    03/10/07:    On a Saturday, just two days prior to the scheduled hearing on Petitioning

19    Creditors' Motion to Compel Lopez's responses to the Phase II Written

20    Discovery, attorney Hayes emailed approximately 155 pages of documents

21    to attorney Keehn, purportedly in response to the "First Phase II Request for

22    Production of Documents by Petitioning Creditors." **This last-minute**

23    **"*document dump*" was improper because the documents: (1) were not**

24    **responsive to the Requests, (2) were not organized by category of**

25    **Request, and (3) consisted of at least 103 pages of pleadings filed in the**

26    **San Diego Superior Court which are already in the Petitioning**

27    **Creditors' possession.  Lopez failed, without explanation, to explain the**

28    **deficiencies and/or his failure to provide the agreed-upon supplemental**

**ASA 0138**

1    **responses.**

2    03/12/07:    This Court granted Petitioning Creditors' motion to compel Lopez to

3    provide supplemental responses to the Phase II Written Discovery.[3] The

4    Court ordered Lopez to provide the supplemental responses on or before

5    April 11, 2007. The Court — in open session — indicated that it was

6    deferring its ruling on the request for monetary sanctions of $4,242 because:

7    (a) it wanted the risk of those sanctions to serve as a *Sword of Damocles* to

8    encourage compliance with the Court's order; and (b) Lopez would have to

9    "work his way out of those sanctions." **Lopez has failed, without**

10    **explanation, to comply with this Court's Order.**

**III. DISCUSSION**

11

12    A.    <u>**Terminating Sanctions are a Necessary and Appropriate Response to Lopez's Brazen**</u>

13    <u>**Disregard for His Discovery Obligations and this Court's Order.**</u>

14    Pursuant to FRCP Rule 37(d), made applicable to these proceedings by FRBP Rule

15    9014(c), this Court has broad discretion to strike Lopez's Answer and enter an Order for Relief as

16    a sanction for Lopez's continued, unreasonable refusal to provide discovery.[4] Where, as here, an

17    alleged debtor has engaged in a course of conduct clearly designed to avoid his discovery

18    obligations, the seemingly "harsh" sanction of striking the debtor's answer and adjudicating him a

19    bankrupt is both appropriate and necessary to avoid encouraging "a blatant disregard for the

20    discovery mechanism."[5]

21    Lopez's responses to the Phase II Written Discovery (served on November 03, 2006) were

22    due on December 4, 2006. Four months have now passed since that original production date, and

23    Petitioning Creditors have yet to receive Lopez's responses, or even a reasonable justification for

25    [3]    See, Docket Item #93.

26    [4]    *Matter of Visioneering Const.*, 661 F.2d 119, 123 - 124 (9th Cir. 1981); *In re Rice*, 14 B.R. 843, 846 (9th Cir.BAP 1981).

28    [5]    *In re Rice*, supra, 14 B.R. at 846; *Matter of Visioneering Const.*, supra, 661 F.2d at 123 (court's order striking alleged debtor's answer was an appropriate sanction since the debtor had "deliberately and obstinately refused to cooperate with discovery requests and court orders").

**ASA 0139**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW

1  the delay.  And that is not because Petitioning Creditors have not been trying.  As set forth in

2  Section I above, Petitioning Creditors made multiple efforts to *meet and confer* with Lopez before

3  obtaining this Court's Order compelling Lopez to provide the discovery he promised to produce

4  three months ago – on January 12, 2007.  Unfortunately, this Court's Order has had even less

5  impact on Lopez than Petitioning Creditors' efforts – Lopez has totally ignored this Court's Order

6  without even feigning compliance, e.g., with an eleventh-hour *document dump*.  That act was pure

7  theater, and did nothing to cure the deficiencies in Lopez's discovery responses.

8  **B.    Lopez's Discovery Abuse is Unfairly Prejudicial to Existing Creditors.**

9         Lopez's strategic delaying of these proceedings unfairly exposes all creditors to

10  unnecessary prejudice, the extent of which is currently unknown, in that Lopez is free to incur

11  new debt that will be superior to the claims of all pre-petition creditors due to the priority status

12  given to gap claims under 11 U.S.C. §502(f).[6]  As we approach June 30, 2007, which will be the

13  second anniversary of the petition, the specter of an ever-expanding body of gap claims looms as

14  an ominous threat to the economic utility of the Bankruptcy remedy sought by the Petitioning

15  Creditors.  It is ironic, inequitable and intolerable that the creditors should continue to be exposed

16  to that peril because Lopez refuses to comply with both his discovery obligations and the orders of

17  the Court.  Lopez's game-playing must stop now so that this estate can proceed toward a fair and

18  orderly administration.  At the same time, all creditors deserve to have the prejudice caused by

19  Lopez's willful disregard of the Court's order neutralized.  Since there is no way to turn back the

20  hands of time or undo any gap claims that Lopez may have created in his period of non-

21  compliance, terminating sanctions is the only way to do that.

22  **C.    The Deferred Monetary Sanctions Should Now Be Imposed.**

23         In its Order,[7] dated March 12, 2007, this Court deferred ruling on Petitioning Creditors'

24  request for monetary sanctions as set forth in their Motion to compel Lopez's responses to the

25

26

27
   [6]    See, 11 U.S.C. §507(a)(3).
28
   [7]    See, Docket Item #93.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0140**

109906/LFK/5311.01

1   Phase II Written Discovery.[8]  Petitioning Creditors hereby renew their request for monetary

2   sanctions in the amount of $4,242, consisting of the attorneys' fees incurred by Petitioning

3   Creditors in bringing that Motion, as though fully set forth herein.

4                                    IV.  **CONCLUSION**

5           Based on all of the foregoing, Petitioning Creditors respectfully request that this Court

6   issue an Order: (1) striking the Debtor's Answer; (2) entering an Order for Relief; and

7   (3) imposing monetary sanctions against Lopez in the amount of $4,242.

8

9   Dated: April 13, 2007                    **KEEHN & ASSOCIATES**
                                              A Professional Corporation
10

11

12                                  By:    //s// L. Scott Keehn
                                           L. Scott Keehn
13                                         Attorneys for **Petitioning Creditors**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____

[8]        See, Docket Item #91.

**ASA 0141**

109906/LFK/5311.01

# TAB 97-2

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8                  **UNITED STATES BANKRUPTCY COURT**

9            **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                              ) Case No.  05-05926-PBINV
                                        )
12      FRANCIS J. LOPEZ,               ) Involuntary Chapter 7
                                        )
13              Alleged Debtor.         ) **DECLARATION OF L. SCOTT KEEHN IN**
                                        ) **SUPPORT OF PETITIONING**
14                                      ) **CREDITORS' MOTION FOR AN**
                                        ) **ENFORCEMENT ORDER: (1) STRIKING**
15                                      ) **THE DEBTOR'S ANSWER; (2) ENTERING**
                                        ) **AN ORDER FOR RELIEF; AND (3)**
16                                      ) **IMPOSING MONETARY SANCTIONS**
                                        ) **AGAINST THE DEBTOR**
17                                      )
                                        ) **[BIFURCATED PHASE II]**
18                                      )
                                        ) Date:  May 11, 2007
19                                      ) Time:  9:00 a.m.
                                        ) Judge: The Honorable Peter W. Bowie
20                                      ) Ctrm:  4
                                        )
21  _____ )

22      I, L. Scott Keehn, declare:

23      1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

24  before the United States District Court for the Southern District of California.  I am a shareholder

25  of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

26  personal knowledge of the factual matters stated herein.

27      2.      On November 03, 2006, my office served Lopez with Petitioning Creditors' First

28  Set of Written Discovery for Phase II (the "Phase II Written Discovery"), consisting of (1) First

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0142**

1   Phase II Requests for Admission Propounded by Petitioning Creditors [10 Requests]; (2) First

2   Phase II Request for Production of Documents by Petitioning Creditors [162 categories of

3   documents]; and (3) First Phase II Interrogatories Propounded by Petitioning Creditors [35

4   Interrogatories]. Lopez's responses to the Phase II Written Discovery were due on December 4,

5   2006.

6          3.      On December 03, 2006, Lopez served his "Response to Requests for Admission

7   Propounded to Alleged Debtor Francis J. Lopez (Phase II)." **Lopez's responses were deficient,**

8   **and Lopez failed to verify the responses**.

9          4.      On December 05, 2006, Lopez served his "Response to Interrogatories Propounded

10  to Alleged Debtor Francis J. Lopez (Phase II). **Lopez's responses were deficient, and Lopez**

11  **failed to verify the responses**. At the same time, Lopez served his "Response to Requests for

12  Production of Documents." **Lopez's responses were deficient.**

13         5.      On December 13, 2006, I sent a *meet and confer* letter to Lopez's attorney, M.

14  Jonathan Hayes, notifying him of the deficiencies in Lopez's responses to the Phase II Written

15  Discovery.

16         6.      On December 15, 2006, attorney Hayes and I participated in a telephonic *meet and*

17  *confer* conference wherein the parties agreed that Lopez would provide supplemental responses to

18  the Phase II Written Discovery on or before January 12, 2007.

19         7.      On January 12, 2007 – the Deadline for Lopez to provide the promised

20  supplemental responses to the Phase II Written Discovery – **Lopez failed, without explanation,**

21  **to provide supplemental responses to the Phase II Written Discovery.**

22         8.      On January 19, 2007, I sent a follow-up *meet and confer* letter to attorney Hayes

23  requesting an explanation regarding Lopez's failure to provide the promised supplemental

24  responses to discovery, and notifying Lopez of the imminent likelihood of a motion to compel his

25  responses to the Phase II Written Discovery. **Lopez failed, without explanation, to respond to**

26  **that *meet and confer* letter.**

27         9.      On January 29, 2007, Petitioning Creditors filed a Motion to Compel responses to

28  the Phase II Written Discovery. **Lopez failed, without explanation, to respond or file an**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

**ASA 0143**

109936/LFK/5311.01

**Opposition to that Motion.**

10.     On March 10, 2007 – a Saturday, just two days prior to the scheduled hearing on Petitioning Creditors' Motion to Compel Lopez's responses to the Phase II Written Discovery – attorney Hayes emailed me approximately 155 pages of documents, purportedly in response to the "First Phase II Request for Production of Documents by Petitioning Creditors." **This last-minute "*document dump*" was improper because the documents: (1) were not responsive to the Requests, (2) were not organized by category of Request, and (3) consisted of at least 103 pages of pleadings filed in the San Diego Superior Court which are already in the Petitioning Creditors' possession.  Lopez failed, without explanation, to explain the deficiencies and/or his failure to provide the agreed-upon supplemental responses.**

11.     On March 12, 2007, I appeared at the hearing during which this Court granted Petitioning Creditors' motion to compel Lopez to provide supplemental responses to the Phase II Written Discovery.[1]  The Court ordered Lopez to provide the supplemental responses on or before April 11, 2007.  The Court — in open session — indicated that it was deferring its ruling on the request for monetary sanctions of $4,242 because: (a) it wanted the risk of those sanctions to serve as a *Sword of Damocles* to encourage compliance with the Court's order; and (b) Lopez would have to "work his way out of those sanctions."  **Lopez has failed, without explanation, to comply with this Court's Order.**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this Declaration was executed this 13th day of April, 2007, at San Diego, California.

/s/ L. Scott Keehn
L. Scott Keehn

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

---

[1]     See, Docket Item #93.

ASA 0144

109936/LFK/5311.01

# TAB 97-3

L. Scott Keehn (SBN 61691)
**KEEHN & ASSOCIATES**
A Professional Corporation
402 West Broadway, Suite 1210
San Diego, California  92101
Telephone: (619) 400-2200

Attorneys for **Petitioning Creditors**

# UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | ) **Bankruptcy Case No.  05-05926-PB7** |
| | ) |
| **FRANCIS J. LOPEZ,** | ) **PROOF OF SERVICE** |
| | ) |
| **Debtor**. | ) Date:   March 12, 2007 |
| | ) Time:   10:30 a.m. |
| | ) Dept:  4 |
| | ) Judge: Hon. Peter W. Bowie |

I, the undersigned, declare that I am over the age of eighteen years and not a party to this cause.  I am employed in, or am a resident of, the County of San Diego, California, and my business address is:  402 West Broadway, Suite 1210, San Diego, California.

On the date shown below, I caused to be served the following document(s):

**NOTICE OF HEARING AND MOTION (1) STRIKING THE DEBTOR'S ANSWER; (2) ENTERING AN ORDER FOR RELIEF; AND (3) IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR**

**PETITIONING CREDITORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ENFORCEMENT ORDER**

**DECLARATION OF L. SCOTT KEEHN IN SUPPORT OF PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER**

/ / /

/ / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0145**

1   [✔]  BY MAIL:  I declare that I am readily familiar with the business practice for collection and

2        processing of correspondence for mailing with the United States Postal Service, that the

3        correspondence shall be deposited with the United States Postal Service this same day in the

4        ordinary course of business; and that a true copy was placed in a separate envelope, with

5        postage thereon fully prepaid for each addressee named hereafter:

6   **M. Jonathan Hayes**
    **Law Office of M. Jonathan Hayes**
7   **21800 Oxnard Street, Suite 840**
    **Woodland Hills, CA 91367**

8        I declare under penalty of perjury under the laws of the United States that the foregoing is

9   true and correct.

10       Executed on April 13, 2007.

11

12                                              **MARK P. LAEMMLE**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0146**

- 2 -

109937/MPL/5311.01

# TAB 102

L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
**KEEHN & ASSOCIATES**
A Professional Corporation
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

Attorneys for **Petitioning Creditors**

# UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | ) Case No. 05-05926-PBINV |
| | ) |
| FRANCIS J. LOPEZ, | ) Involuntary Chapter 7 |
| | ) |
| Alleged Debtor. | ) **NOTICE OF WITHDRAWAL OF** |
| | ) **PETITIONING CREDITORS' MOTION** |
| | ) **FOR AN ENFORCEMENT ORDER:** |
| | ) **(1) STRIKING THE DEBTOR'S ANSWER;** |
| | ) **(2) ENTERING AN ORDER FOR RELIEF;** |
| | ) **AND (3) IMPOSING MONETARY** |
| | ) **SANCTIONS AGAINST THE DEBTOR** |
| | ) |
| | ) **[BIFURCATED PHASE II]** |
| | ) |
| | ) Date: May 11, 2007 |
| | ) Time: 9:30 a.m. |
| | ) Judge: The Honorable Peter W. Bowie |
| | ) Ctrm: 4 |
| | ) |
| _____ | ) |

**TO:    THE HONORABLE PETER W. BOWIE, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, CLERK OF THE COURT, ALL PARTIES-IN-INTEREST AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Petitioning Creditors respectfully withdraw their Motion for

an Enforcement Order: (1) Striking the Debtor's Answer; (2) Entering an Order for Relief; and (3)

Imposing Monetary Sanctions Against the Debtor (the "Motion"), filed on April 13, 2007, as

Docket Entry No. 97. The Motion is withdrawn in light of the letter dated April 18, 2007, from

M. Jonathan Hayes, attorney for the Debtor, to L. Scott Keehn, attorney for the Petitioning

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0147**

109973/LFK/5311.01

1  Creditors, a copy of which is attached hereto marked Exhibit "A" and incorporated herein by this

2  reference.  The Petitioning Creditors withdraw the Motion without prejudice, and with a full

3  reservation of their rights, including but not limited to, their right to object to the substantive

4  sufficiency of discovery responses received.

5

6  Dated: April 18, 2007                    **KEEHN & ASSOCIATES**
                                             A Professional Corporation
7

8
                                    By:    //s// L. Scott Keehn
9                                          L. Scott Keehn
                                           Attorneys for **Petitioning Creditors**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0148**

109973/LFK/5311.01

# EXHIBIT "A"

ASA 0149

Law Offices of
# M. Jonathan Hayes

21800 Oxnard St.Suite 840
Woodland Hills, CA 91367

*tel:* 818.710-3656
*fax:* 818.710-3659

www.jonhayes.net

M. Jonathan Hayes
Jhayes@polarisnet.net

April 18, 2007

*By Fax only  619  400-2201*
L. Scott Keehn
Keehn & Associates
402 W Broadway Ste 1210
San Diego, CA 92101

Re:    In re Francis Lopez,
       Case No. 05-05926-PBINV
       Discovery Responses

Dear Scott,

Per our telephone conversation yesterday, my son Desmond mailed the discovery responses to you on April 11, 2007.  I remember looking at the thick envelope that morning to make sure we had your new address.  I do not have a postage machine.  We use the one in the suite I am in.  I checked with them about whether the date can even be "backdated."  I learned that it can be advanced to a future date but not reversed.

Anyway, we certainly mailed the responses on time.  You told me that with this letter you would take the Motion to Strike the Answer off calendar.  This does not waive any rights you may have re the substance of the responses.

If you have any questions, please do not hesitate to call.

Very truly yours,

M. Jonathan Hayes

MJH/dh
Cc:  Francis Lopez

**ASA 0150**

# TAB 104

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

# Minute Order

### *Hearing Information:*

|  |  |
|---|---|
| **Debtor:** | FRANCIS J. LOPEZ |
| **Case Number:** | 05-05926-PB7   **Chapter:** 7   INVOLUNTARY |
| **Date / Time / Room:** | FRIDAY, MAY 11, 2007 09:30 AM   DEPARTMENT 4 |
| **Bankruptcy Judge:** | PETER W. BOWIE |
| **Courtroom Clerk:** | MARILYN WILKINSON |
| **Reporter / ECR:** | COLLETTA BROOKS |

### *Matter:*

STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER
(fr. 3/12/07)

### *Appearances:*

M. Jonathan Hayes, ATTORNEY FOR Francis J. Lopez
L. Scott Keehn, ATTORNEY FOR ALAN STANLY

### *Disposition:*

Continued to 6/25/07 at 10:30 a.m.
Debtor's supplemental responses to written discovery to be filed by 5/21/07.
Any Motion to Comnpel to be filed and served by 5/25/07 for hearing on 6/25/07 at 10:30 a.m.

**ASA 0151**