1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California  92101
4  Telephone:  (619) 400-2200

5  Attorneys for **Appellee**,
   **Alan Stanly**

6

7

8              UNITED STATES DISTRICT COURT

9        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                          )  Case No.  08cv0713 JAH (WMc)
                                    )
12  FRANCIS J. LOPEZ,               )  Bankruptcy No.  05-05926-PB7
                                    )
13          Debtor.                 )
    ─────────────────────────────  )  **APPELLEE'S SUPPLEMENTAL**
14                                  )  **APPENDIX**
    FRANCIS J. LOPEZ,               )
15                                  )  **VOLUME 3 OF 3**
            Appellant,             )
16                                  )
    v.                              )  Hearing:      September 15, 2008
17                                  )  Time:         2:30 p.m.
    ALAN STANLY,                    )  Department:   Courtroom 11
18                                  )  Judge:        Hon. John A. Houston
            Appellee.              )
19  ─────────────────────────────  )

20

21       Appellee Alan Stanly ("Stanly"), respectfully submits his Appellee's Supplemental

22  Appendix containing excerpts from the record cited in the Appellee's Brief filed concurrently

23  herewith.

24  Date:  August 8, 2008                    **KEEHN & ASSOCIATES, APC**

25

26                              By:    //s// L. Scott Keehn
                                       L. Scott Keehn
27                                     Leslie F. Keehn
                                       Attorneys for **Appellee**,
28                                     **Alan Stanly**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

114637/53115.02

## APPELLEE'S SUPPLEMENTAL APPENDIX
## VOLUME 3 OF 3

EXCERPTS OF THE RECORD ON APPEAL
(IN CHRONOLOGICAL ORDER)

| TAB NUMBER[1] | DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| 114-2 | Declaration of L. Scott Keehn Re: Motion for an Enforcement Order Imposing Monetary Sanctions Against the Debtor | 0324-0370 |
| 119 | Transcript of Hearing held on 11/19/2007 | 0371-0390 |
| 121 | Petitioning Creditors' Motion for an Order Imposing Terminating Sanctions Against the Debtor | 0391-0392 |
| 121-1 | Memorandum of Points and Authorities in Support of Motion for an Order Imposing Terminating Sanctions Against the Debtor | 0393-0397 |
| 121-2 | Declaration of L. Scott Keehn in Support of Motion for an Order Imposing Terminating Sanctions Against the Debtor | 0398-0462 |
| 125 | Opposition to Petitioning Creditors' Motion for Terminating Sanctions; Declaration of Francis J Lopez in Support Thereof | 0463-0469 |
| 126-1 | Declaration of L. Scott Keehn in Support of Reply to Opposition to Motion for an Order Imposing Terminating Sanctions Against the Debtor | 0470-0510 |
| 127 | Minute Order for Hearing held on 01/28/2008 | 0511 |
| 128 | Order for Relief and Order Directing Debtor to File Schedules & Statements | 0512 |
| 130 | Notice of Appeal | 0513-0531 |
| 133 | Transcript of Hearing held on 01/28/08 | 0532-0543 |
| 164 | Transcript of Hearing held on 06/26/06 | 0544-0580 |
| 167 | Transcript of Hearing held on 01/23/06 | 0581-0592 |

---

[1]    Tab numbers are also the Docket Number references to the docket for the underlying Bankruptcy Case *In re Francis J. Lopez*, before the United States Bankruptcy Court for the Southern District of California, Case No. 05-05926-PB7.

114684/5311.02

| 168 | Transcript of Hearing held on 03/12/07 | 0593-0601 |
| 169 | Transcript of Hearing held on 10/01/07 | 0602-0610 |

114684/5311.02

# TAB 114-2

1    L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
2    **KEEHN & ASSOCIATES**
A Professional Corporation
3    402 West Broadway, Suite 1210
San Diego, California 92101
4    Telephone: (619) 400-2200

5    Attorneys for **Petitioning Creditors**

6

7

8             **UNITED STATES BANKRUPTCY COURT**

9             **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11    In Re:                    )   Case No. 05-05926-PBINV

12        FRANCIS J. LOPEZ,        )   Involuntary Chapter 7

13            Alleged Debtor.      )   **DECLARATION OF L. SCOTT KEEHN RE: MOTION FOR AN ENFORCEMENT ORDER IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR**

15

16                             )   **[BIFURCATED PHASE II]**

17                             )   Date:   November 19, 2007
Time:   2:00 p.m.
Judge: The Honorable Peter W. Bowie
Ctrm:   4

19

20

21    _____ )

22        I, L. Scott Keehn, declare:

23           1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

24 before the United States District Court for the Southern District of California. I am a shareholder

25 of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors. I have

26 personal knowledge of the factual matters stated herein.

27          2.      The "Declaration of L. Scott Keehn in Support of Petitioning Creditors' Motion for

28 an Enforcement Order: (1) Imposing Monetary Sanctions Against the Debtor; and (2) Imposing

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0324**

Evidentiary Sanctions Against the Debtor" was filed herein by my office on May 24, 2007, and is incorporated herein by this reference.[1]  In that Declaration, I summarized the delay and *bad faith* discovery tactics employed by Lopez during the 6-month period of December 3, 2006 through May 23, 2007.

3.    On March 12, 2007, the Court ordered Lopez to provide supplemental discovery responses on or before April 11, 2007.  The Court — in open session — indicated that it was deferring its ruling on the request for monetary sanctions of $4,442 because: (a) it wanted the risk of those sanctions to serve as a *Sword of Damocles* to encourage compliance with the Court's order; and (b) Lopez would have to "work his way out of those sanctions."  Unfortunately, Lopez is apparently unimpressed with either this Court's order or the threat of sanctions.

4.    On June 25, 2007, the Court conducted its hearing on Petitioning Creditors' request for monetary and evidentiary sanctions based on Lopez's dilatory tactics up to that time.[2]  The Court deferred again the imposition of previously requested monetary sanctions ($4,442.00), but ordered the imposition of evidentiary sanctions precluding Lopez's use of any documents which he had not yet produced.[3]

5.    On the courthouse steps following the June 25, 2007 hearing, I conferred with Lopez's attorney Jonathan Hayes regarding Petitioning Creditors' request to take Lopez's deposition.  At that time, I stated that I would like to calendar the deposition before July 31, 2007 because I would be out of my office for virtually the entire month of August.  Mr. Hayes and I agreed that either July 20 or July 27 would work on our calendars, and Mr. Hayes indicated that he would inquire as to Lopez's availability on those dates.

6.    Three days later, on June 28, 2007, Mr. Hayes transmitted to me the following email message: *"I have spoken to my client about the deposition dates we discussed, July 20 or 27. He is checking his calendar.  I will let you know **shortly.**"* (Emphasis added.)

---

[1]        See Exhibit 1, Docket Item 105 (attachment #2).

[2]        See Exhibit 2, Docket Item 110 [Transcript of the June 25, 2007 hearing ("6/25/07 Transcript")].

[3]        See Exhibit 2, 6/25/07 Transcript at p. 17.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0325**

111886/LFK/5311.01

7.     Twenty-two days later — in the early evening of July 20, 2007 — Mr. Hayes transmitted an email suggesting, for the first time, July 31, 2007, as an available date for the deposition.

8.     Given that July 31, 2007 would be my last day in the office before a 30-day vacation, I knew I would be fully consumed with matters necessary to be completed in preparation for that absence.  Because of that, and because of the fact that I had received absolutely no communication from Mr. Hayes' office following the June 28, 2007 email, my office issued and mailed to Mr. Hayes a notice of Lopez's deposition for Tuesday, September 11, 2007, at 9:00 a.m. in our office.

9.     On July 31, 2007, there was a further Status Conference in the case.  I reported to the Court the events summarized in paragraphs 5-8 above, including the fact that we had noticed Mr. Lopez's deposition for September 11, 2007.  Mr. Hayes stated in open court  that he would communicate that information to Mr. Lopez, and let me know if there was any problem with that date.  That was the last I heard from Mr. Hayes until September 10, 2007.

10.     In the afternoon of September 10, 2007 — less than 24 hours before the deposition was scheduled to begin — Lopez's attorney sent me a brief email stating that Lopez was "*unable to make travel arrangements for the deposition tomorrow*."  The email suggested October 8, 2007 or October 22, 2007 as possible dates for the deposition.  Lopez's deposition is currently scheduled for October 22, 2007 at 9:30 a.m. based on Mr. Hayes' representation that it was an acceptable date and time.

11.     As stated in open court on June 25, 2007,[4] once Lopez's deposition is conducted, Petitioning Creditors intend to prepare and file their summary judgment motion to establish that Lopez was in fact not paying his debts as they came due as of the date of the involuntary petition.

12.     Lopez's past misconduct in this case mirrors his extensive misconduct in other litigation involving Lopez and Petitioning Creditor Alan Stanly in other San Diego courts, as detailed in the Declaration of Timothy P. Dillon filed herein on September 27, 2007 and

___

[4]     See Exhibit 2, 6/25/07 Transcript at p. 18.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1    incorporated herein by this reference.[5]  Considering Lopez's pervasive custom and practice of

2    refusing to perform his duties as a litigant unless and until he is [forensically] bludgeoned into

3    submission by the court, it appears clear that monetary sanctions should now be imposed.

4    Without a significant sanctions order, I do not believe that Lopez will ever voluntarily appear for,

5    and participate in good faith at, his deposition in this case.

6        13.    My office spent a total of 13.6 hours preparing this second motion for sanctions to

7    redress Lopez's discovery abuses.  Specifically, attorney Leslie F. Keehn spent 12.6 hours

8    working on this motion, at her standard hourly rate of $225.00.  I worked 1.0 hour, at my standard

9    hourly rate of $320.00.  Petitioning Creditors will be billed a total of $3,155.00 for this motion.

10       14.    I have reviewed the applicable time and billing records generated by my office.

11   True and correct copies of those records are attached hereto as Exhibit 4,[6] and are summarized as

12   follows: (a) $2,164.50 for 7.7 hours (attorney and paralegal time) spent preparing the necessary

13   documents and questions for Lopez's deposition; (b) $224.00 for 0.7 hours of my time to confer

14   with attorney Hayes regarding Lopez's last minute failure to appear; and (c) $6,590.00 for 25.7

15   hours of total attorney time (including my time and Leslie F. Keehn's time) reviewing the

16   requisite evidence, and drafting the declarations in support of Petitioning Creditors' renewed

17   motion for the monetary sanctions originally requested on May 24, 2007.

18       15.    With this motion, Petitioning Creditors are seeking monetary sanctions in the total

19   amount of **$12,133.50** to fully reimburse them for the fees they have actually incurred as described

20   in Paragraphs 13 and 14 above.

21       I declare under penalty of perjury under the laws of the United States that the foregoing is

22   true and correct, and that this Declaration was executed this 19th day of October, 2007, at San

23   Diego, California.

24                                    /s/ L. Scott Keehn
                                     L. Scott Keehn

25

26

27       [5]    See Exhibit 3, Docket Item 111 (attachment #1).

28       [6]    The non-applicable entries in the billing records contained in Exhibit 4 have been
     redacted.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0327**

111886/LFK/5311.01

# EXHIBIT 1

ASA 0328

1   L. Scott Keehn, SBN 61691
    Leslie F. Keehn, SBN 199153
2   **KEEHN & ASSOCIATES**
    A Professional Corporation
3   402 West Broadway, Suite 1210
    San Diego, California 92101
4   Telephone: (619) 400-2200

5   Attorneys for **Petitioning Creditors**

6

7

8                    UNITED STATES BANKRUPTCY COURT

9               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                           )   Case No.  05-05926-PBINV
                                     )
12        FRANCIS J. LOPEZ,          )   Involuntary Chapter 7
                                     )
13              Alleged Debtor.      )   **DECLARATION OF L. SCOTT KEEHN IN**
                                     )   **SUPPORT OF PETITIONING**
14                                   )   **CREDITORS' MOTION FOR AN**
                                     )   **ENFORCEMENT ORDER: (1) IMPOSING**
15                                   )   **MONETARY SANCTIONS AGAINST THE**
                                     )   **DEBTOR; AND (2) IMPOSING**
16                                   )   **EVIDENTIARY SANCTIONS AGAINST**
                                     )   **THE DEBTOR**
17                                   )
                                     )   **[BIFURCATED PHASE II]**
18                                   )
                                     )   Date:   June 25, 2007
19                                   )   Time:   10:30 a.m.
                                     )   Judge: The Honorable Peter W. Bowie
20                                   )   Ctrm:   4
                                     )
21  _____

22        I, L. Scott Keehn, declare:

23        1.    I am an attorney at law, duly licenced to practice before all courts of this State, and

24  before the United States District Court for the Southern District of California.  I am a shareholder

25  of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

26  personal knowledge of the factual matters stated herein.

27        2.    On November 03, 2006, my office served Lopez with Petitioning Creditors' First

28  Set of Written Discovery for Phase II (the "Phase II Written Discovery"), consisting of: (1) First

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0329**
110315/LFK/5311.01

1  Phase II Requests for Admission Propounded by Petitioning Creditors [10 Requests]; (2) First

2  Phase II Request for Production of Documents by Petitioning Creditors [162 categories of

3  documents]; and (3) First Phase II Interrogatories Propounded by Petitioning Creditors [35

4  Interrogatories].  True and correct copies of the Phase II Written Discovery are attached hereto,

5  marked Exhibits A, B and C respectively.  Lopez's responses were due on December 4, 2006.

6          3.          On December 03, 2006, Lopez served his "Response to Requests for Admission

7  Propounded to Alleged Debtor Francis J. Lopez (Phase II)."  **Lopez's responses were deficient,**

8  **and Lopez failed to verify the responses.**

9          4.          On December 05, 2006, Lopez served his "Response to Interrogatories Propounded

10  to Alleged Debtor Francis J. Lopez (Phase II).  **Lopez's responses were deficient, and Lopez**

11  **failed to verify the responses.**  At the same time, Lopez served his "Response to Requests for

12  Production of Documents."  **Lopez's responses were deficient.**

13          5.          On December 13, 2006, I sent a *meet and confer* letter to Lopez's attorney, M.

14  Jonathan Hayes, notifying him of the deficiencies in Lopez's responses to the Phase II Written

15  Discovery.

16          6.          On December 15, 2006, attorney Hayes and I participated in a telephonic *meet and*

17  *confer* conference wherein the parties agreed that Lopez would provide supplemental responses to

18  the Phase II Written Discovery on or before January 12, 2007.

19          7.          On January 12, 2007 – the Deadline for Lopez to provide the promised

20  supplemental responses to the Phase II Written Discovery – **Lopez failed, without explanation,**

21  **to provide supplemental responses to the Phase II Written Discovery.**

22          8.          On January 19, 2007, I sent a follow-up *meet and confer* letter to attorney Hayes

23  requesting an explanation regarding Lopez's failure to provide the promised supplemental

24  responses to discovery, and notifying Lopez of the imminent likelihood of a motion to compel his

25  responses to the Phase II Written Discovery.  **Lopez failed, without explanation, to respond to**

26  **that *meet and confer* letter.**

27          9.          On January 29, 2007, Petitioning Creditors filed a Motion to Compel responses to

28  the Phase II Written Discovery.  **Lopez failed, without explanation, to respond or file an**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0330**
110315/LFK/5311.01

1    **Opposition to that Motion.**

2        10.    On March 10, 2007 – a Saturday, just two days prior to the scheduled hearing on

3    Petitioning Creditors' Motion to Compel Lopez's responses to the Phase II Written Discovery –

4    attorney Hayes emailed me approximately 155 pages of documents, purportedly in response to the

5    "First Phase II Request for Production of Documents by Petitioning Creditors." **This last-minute**

6    ***"document dump"* was improper because the documents: (1) were not responsive to the**

7    **Requests, (2) were not organized by category of Request, and (3) consisted of at least 103**

8    **pages of pleadings filed in the San Diego Superior Court which are already in the Petitioning**

9    **Creditors' possession. Lopez failed, without explanation, to explain the deficiencies and/or**

10   **his failure to provide the agreed-upon supplemental responses.**

11       11.    On March 12, 2007, I appeared at the hearing during which this Court granted

12   Petitioning Creditors' motion to compel Lopez to provide supplemental responses to the Phase II

13   Written Discovery.[1]  The Court ordered Lopez to provide the supplemental responses on or before

14   April 11, 2007.  The Court — in open session — indicated that it was deferring its ruling on the

15   request for monetary sanctions of $4,242 because: (a) it wanted the risk of those sanctions to serve

16   as a *Sword of Damocles* to encourage compliance with the Court's order; and (b) Lopez would

17   have to "work his way out of those sanctions."

18       12.    On April 10, 2007, Lopez mailed my office a set of supplemental responses to the

19   Phase II Written Discovery which were patently deficient in that, i.e., they failed to fully respond

20   to the Interrogatories asked, failed to provide facts in support of asserted denials to the Requests

21   for Admissions, and failed to produce responsive documents.  True and correct copies of Lopez's

22   supplemental responses are attached hereto marked Exhibits D, E and F.

23       13.    On May 11, 2007, the parties, through their counsel, attended a status conference

24   wherein this Court ordered Lopez to file proper supplemental responses to the Phase II Written

25   Discovery on or before May 21, 2007.  Later that afternoon, I met with attorney Hayes at my office

26   regarding the deficiencies in Lopez's supplemental responses to the Phase II Written Discovery.

27

28
_____

[1]    See, Docket Item #93.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

**ASA 0331**
110315/LFK/5311.01

Attorney Hayes requested that I set forth the deficiencies in a *meet and confer* letter to him.

14.    As requested, on May 14, 2007, I sent a *meet and confer* letter via email and first class United States mail to attorney Hayes which enumerated each and every deficiency in Lopez's supplemental responses to the Phase II Written Discovery. A true and correct copy of that letter is attached hereto, marked Exhibit G.

15.    After the close of business, at 7:10 P.M., on May 21, 2007 – the deadline for Lopez to supplement his supplemental responses to the Phase II Written Discovery – attorney Hayes emailed me a request for two additional days for Lopez to supplement his responses to the Phase II Written Discovery. The next morning, on May 22, 2007, I responded to attorney Hayes' email by indicating that I would grant the requested two-day extension of time, in exchange for a stipulation providing Petitioning Creditors with an equivalent two-business-day extension of time – from May 25, 2007 to May 30, 2007 – to file any necessary discovery motion. A true and correct copy of that email correspondence is attached hereto, marked Exhibit H.

16.    On May 23, 2007, attorney Hayes sent me an email wherein he withdrew Lopez's request for an extension of time, and notified me that Lopez would not be providing any additional responses to the Phase II Written Discovery. A true and correct copy of that email correspondence is attached hereto, marked Exhibit I.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this Declaration was executed this 24th day of May, 2007, at San Diego, California.

/s/ L. Scott Keehn
L. Scott Keehn

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0332**

110315/LFK/5311.01

# EXHIBIT 2

ASA 0333

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING


|                              |   |                        |
|------------------------------|---|------------------------|
|                              | ) |                        |
|                              | ) |                        |
| FRANCIS J. LOPEZ             | ) | CASE NO. 05-05926-PB   |
|                              | ) |                        |
|                              | ) |                        |
| _____ | ) |                        |


1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT
ORDER: A ) IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR;
AND, B) IMPOSING EVIDENTIARY SANCTIONS AGAINST THE
DEBTOR.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, JUNE 25, 2007


SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

ASA 0334

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, JUNE 25, 2007 , 10:00 A.M.

--- O O O ---

ASA 0335

THE CLERK:    IN THE MATTER OF FRANCIS J. LOPEZ.  TWO

MATTERS: CONTINUED STATUS CONFERENCE ON INVOLUNTARY

PETITION AND ANSWER; AND, PETITIONING CREDITORS' MOTION

FOR AN ENFORCEMENT ORDER (1) IMPOSING MONETARY SANCTIONS

AGAINST THE DEBTOR; AND, (2) IMPOSING EVIDENTIARY

SANCTIONS AGAINST THE DEBTOR.

APPEARANCES, PLEASE.

MR. KEEHN:    GOOD MORNING, YOUR HONOR.

SCOTT KEEHN APPEARING ON BEHALF OF THE PETITIONING

CREDITORS.

MR. HAYES:    GOOD MORNING, YOUR HONOR.

JOHN HAYES APPEARING FOR THE DEBTOR -- ALLEGED DEBTOR.

MR. KEEHN:    YOUR HONOR, THIS PARTICULAR ODYSSEY BEGAN

BEFORE THANKSGIVING, IF YOU CAN BELIEVE THAT, BACK ON

NOVEMBER 3RD.

THE COURT:    THAT'S NOTHING AT ALL COMPARED TO ADAMS.

    MR. KEEHN:    YOU KNOW, I WAS HOPING YOU WOULDN'T

JUST CONFINE YOURSELF TO THIS RECORD.  AND ALSO THE CASE

BEFORE, THERE WERE THIRTEEN MEET AND CONFER LETTERS; AND

WE DON'T MEET THAT RECORD, EITHER.

BUT THIS IS AN INVOLUNTARY PETITION.  AND WE WERE HOPING

TO MOVE IT ALONG WITH A LITTLE MORE ALACRITY THAN YOU MIGHT

EXPECT IN --

THE COURT:    SO YOU'RE SAYING IT REMAINS INVOLUNTARY?

MR. KEEHN:    OH, VERY INVOLUNTARY.

WHAT WE HAVE HERE IN RESPONSE TO OUR REQUEST FOR DISCOVERY

ASA 0336

THAT WERE PROMULGATED NOW SEVEN MONTHS AGO; AT FIRST THERE
WAS NO RESPONSE AT ALL IN THE APPROPRIATE PERIOD.  ALL
OBJECTIONS WERE WAIVED.  AND WHEN WE MOVED FOR MOTION TO
COMPEL THE SANCTIONS.  COUNSEL COMES IN AND APOLOGIZES
FOR DEBTOR, BEMOANS THE FACT THAT WE'RE ASKING FOR A LOT
OF INFORMATION; AND AGREES TO THE COURT'S RULING THAT
SUPPLEMENTAL RESPONSES SHOULD BE PROVIDED NOT LATER THAN
THE 21ST OF MAY.

WELL, ON THE 21ST OF MAY -- AND, ACTUALLY NOTHING HAPPENED
BETWEEN THE TIME THE COURT MADE THAT -- GAVE THE DEBTOR
THAT SECOND CHANCE.  NOTHING HAPPENED BETWEEN THEN AND
MAY 21ST UNTIL SHORTLY AFTER SEVEN IN THE EVENING WHEN MR.
HAYES E-MAILED MY E-MAIL WITH A REQUEST FOR A DAY OR TWO
EXTENSION.

WELL, I DIDN'T HAVE ANY PROBLEM WITH A DAY OR TWO
EXTENSION, AS LONG AS I GET AN EQUAL EXTENSION AND TIME
TO REPLY.  AS SOON AS I SAW THE E-MAIL THE FOLLOWING
MORNING, I RELAYED THAT INFORMATION TO MR. HAYES.

IN RESPONSE TO THAT, I RECEIVED ANOTHER E-MAIL THAT SAID,
NO, WE'RE NOT GOING TO PROVIDE ANYTHING ELSE AND WE'RE
WITHDRAWING OUR REQUEST FOR EXTENSION.

SO ONCE AGAIN, WE HAVE THE TIME PERIOD PASSING AND, OF
COURSE, WE WERE PREJUDICED, NOT IN AN OVERWHELMING DEGREE,
BUT NOTICEABLY BY THE FACT THAT IN RESPONSE TO THE FIRST
E-MAIL WE HAD ANTICIPATED THAT WE WOULD NOT HAVE TO MEET
THE ORIGINAL DEADLINE FOR RESPONSE.

SO, UPON RECEIVING THE WITHDRAWAL E-MAIL, WE QUICKLY

ASA 0337

REGROUPED AND DID OUR REPLY -- DID OUR MOTION, RATHER.  WE
HAD ONLY A FEW DAYS TO DO THAT, GIVEN THE SETTING OF THIS
PARTICULAR HEARING IN ORDER TO GIVE AN ADEQUATE TIME TO
RESPOND.  SO WE DID THAT.

AND WE HAVE WHAT HAS BECOME A FAMILIAR PATTERN.  WE HAVE,
WHAT PURPORTS TO BE RESPONSES GIVEN ON BEHALF OF MR. LOPEZ;
AND, IN FACT, THEY'RE NOT REALLY GOOD-FAITH RESPONSES AT
ALL.  THEY PROVIDE SOME PAPER, MOST OF WHICH WAS PLEADINGS
IN CASES THAT MR. LOPEZ HAD EVERY REASON TO KNOW THAT WE
ALREADY HAD AND SO WOULD BE COMPLETELY USELESS.

NOW, THIS PARTICULAR DISCOVERY DISPUTE CREATES A DYNAMIC
THAT'S DIFFERENT FROM MOST DISCOVERY DISPUTES, BECAUSE
MOST DISCOVERY DISPUTES ARISE IN TRADITIONAL LITIGATION.
AND TRADITIONAL LITIGATION IS ALWAYS LOOKING BACK AT AN
EVENT AND IS STATIC, IN TERMS OF WHERE THE LIABILITIES WILL
FALL.  BECAUSE THEY DEPEND ON WHAT HAPPENED BACK WHEN
WHATEVER INCIDENT OCCURRED, WHATEVER COURSE OF CONDUCT
OCCURRED THAT GAVE RISE TO THE TRADITIONAL LITIGATION.
SO YOU'RE ALWAYS LOOKING BACKWARDS AND YOU'RE NOT REALLY
CONCERNED ABOUT WHAT'S HAPPENING ON A GOING-FORWARD
BASIS.

THE DIFFERENT DYNAMIC THAT'S CREATED IN EVERY INVOLUNTARY
PETITION IS THE INVOLUNTARY GAP DYNAMIC.  BECAUSE, WHILE
DELAY IS ALWAYS PREJUDICIAL TO BRINGING A MATTER TO ITS
QUICK AND COST EFFECTIVE CONCLUSION, IT HAS AN AUXILIARY
PREJUDICE IN INVOLUNTARY CASES BECAUSE THE DEBTOR IS FREE
TO CREATE OBLIGATIONS THAT WILL BECOME INVOLUNTARY GAP

ASA 0338

CLAIMS AND LEAPFROG AHEAD IN PRIORITY TO THE CLAIMS OF THE
CREDITORS THAT BROUGHT THE ACTION.

AND THAT PARTICULAR FORM OF PREJUDICE IS RENDERED ALL THE
MORE DISTURBING BECAUSE THERE'S NO WAY TO MONITOR IT, NO
WAY TO QUANTIFY IT.  MR. LOPEZ IS OUT THERE.  MAYBE HE'S
NOT CREATING INVOLUNTARY GAP CLAIMS AND PERHAPS HE IS.
BUT THE RISK IS THAT THE UTILITY OF THE REMEDY OF
INVOLUNTARY BANKRUPTCY AS A CREDITOR'S REMEDY IS SUBJECT
TO THIS FORM OF DILUTION, SIMPLY BECAUSE THE ALLEGED
DEBTOR REFUSES -- I WANT TO UNDERSCORE THAT -- REFUSES TO
COMPLY WITH THE DISCOVERY IN GOOD FAITH.

WE ARE TRYING TO NARROW THE ISSUES WITH THE EVIDENCE THAT'S
AVAILABLE SO THAT WE CAN PROCEED IN THE SECOND PHASE, AS
WE DID IN THE FIRST, TO PRESENT THE ISSUES TO THE COURT
IN A SUMMARY JUDGMENT FASHION, BECAUSE WE THINK THIS CASE
IS AMENABLE TO SUMMARY JUDGMENT.

AND MR. LOPEZ IS JUST VERY ADROITLY BLOCKING THAT WITH THIS
PASSIVE/AGGRESSIVE TACTIC OF HIS, WHERE HE DOESN'T REPLY
AT ALL UNTIL HIS BACK IS ABSOLUTELY TO THE WALL AND SOME
DRACONIAN CONSEQUENCE MIGHT BEFALL HIM.  AND THEN HE'LL
RESPOND, BUT HE WON'T REALLY RESPOND IN GOOD FAITH.  HE
GIVES YOU A PARITY OF GOOD-FAITH, THAT DOES NOT ADVANCE
THE PURPOSES OF DISCOVERY.

NOW, WE SHOULDN'T HAVE TO WAIT UNTIL HIS BACK IS AGAINST
THE WALL TO GET OUR RESPONSES.  WE'RE ENTITLED TO OUR
RESPONSES THIRTY DAYS AFTER THEY'RE SERVED, THIRTY-THREE
WHEN THEY'RE SERVED BY MAIL.

ASA 0339

AND WE'RE LONG PAST THAT WITH THESE DISCOVERY REQUESTS
THAT WERE PROMULGATED BACK IN NOVEMBER.  AND AS THE
OBJECTION DISCLOSES, THE ALLEGED DEBTOR IS WELL AWARE THAT
WE'RE DOING, ONCE AGAIN, WHAT WE DID IN THE FIRST PHASE;
WE'RE USING THE WRITTEN DISCOVERY AS, TO SORT OF TEE UP
THE ISSUES FOR OUR, DEPOSITION EXAMINATION, WHICH IS THE
NORMAL WAY TO PROCEED.

SO BY HINDERING AND DELAYING THE DISCOVERY PROCESS IN THE
WRITTEN PHASE, HE NATURALLY DEFERS THE ORAL EXAMINATION,
WHICH IN TURN DEFERS, ONCE AGAIN, THE DAY OF RECKONING.
AND ALL THE WHILE HE'S FREE TO BE OUT THERE INCURRING
FURTHER GAP CLAIMS.

SO I THINK THAT WHAT WE'VE SUGGESTED IN OUR PAPERS IS THE
APPROPRIATE RESPONSE.  NUMBER ONE, THE DEFERRED MONETARY
SANCTIONS THAT THE COURT ORIGINALLY AWARDED OF $42
000 -- EXCUSE ME, I'M DREAMING -- $4,242. SHOULD BE
IMPOSED.

THE -- I DON'T THINK THAT THE RESULT THE COURT HAD HOPED
TO ACHIEVE BY DEFERRING IT HAS BEEN ACHIEVED.  I DON'T
THINK IT EVER WILL BE ACHIEVED.  I THINK THAT THIS IS JUST
MR. LOPEZ'S LITIGATION TACTIC; HALT, HINDER AND DELAY AND
MAYBE I'LL HAVE TO ANSWER SOMEDAY.

THE EVIDENTIARY SANCTIONS THAT WE'VE REQUESTED, I THINK,
ARE APPROPRIATE.  AND THEY WILL FACILITATE THE PURPOSE OF
DISCOVERY, BECAUSE THEY NARROW THE ISSUES FOR US, EVEN
WITHOUT THE COOPERATION OF THE ALLEGED DEBTOR.

SO WE WOULD REQUEST THAT THE EVIDENTIARY SANCTIONS BE

ASA 0340

IMPOSED AS REQUESTED, AND THAT THE MONETARY SANCTION BE
AWARDED FORTHWITH, WITH A DATE CERTAIN ESTABLISHED AS TO
WHEN THAT SECTION SHOULD BE PAID.

THE COURT:     MR. HAYES.

MR. HAYES:     YOUR HONOR, THANK YOU.  I HAVE A COUPLE OF
COMMENTS.

THE FIRST ONE IS, I WANTED TO COMMENT ON THIS, THE REQUEST
I'VE MADE OF MR. KEEHN FOR ANOTHER ONE OR TWO DAYS.  I'VE
HAD -- MR. LOPEZ LIVES IN FLORIDA, AND I HAVE A HARD TIME
COMMUNICATING WITH HIM.  WE COMMUNICATE BY E-MAIL AND I
HAVE HIS CELL PHONE, AND INEVITABLY, I CATCH HIM WHEN HE'S
PICKING HIS KIDS UP OR HE'S IN A STORE OR SOMETHING AND
THERE'S THE THREE-HOUR TIME GAP.

ANYWAY, I SPOKE TO HIM VERY BRIEFLY A COUPLE OF TIMES.  I
SAID, LOOK, WE HAVE TO GET THEM MORE DOCUMENTS.

THERE'S -- MR. KEEHN SENT ME THIS LETTER, WHAT ARE WE GOING
TO DO?  WE DISCUSSED IT REAL QUICKLY.  AND FINALLY, THE
TIME CAME WHERE HE ABSOLUTELY HAD TO FILE A RESPONSE, AND
THAT'S WHEN I SENT THE E-MAIL TO MR. KEEHN SAYING, GIVE
ME ANOTHER DAY OR TWO.

THE FOLLOWING DAY I SPOKE TO MR. LOPEZ AT GREAT LENGTHS.
AND WE WENT THROUGH THE LETTER ONE BY ONE.  AND I MEAN,
THERE ISN'T ANYTHING ELSE WE CAN COME UP WITH.  THERE
ISN'T ANY OTHER DOCUMENTS EXCEPT THIS ISSUE WITH THE WIFE.
THERE ISN'T ANY DOCUMENTS THAT HAVEN'T BEEN TURNED OVER.
THERE ISN'T ANY, ANY MORE EXPLANATION OR, OR, MORE DETAILS
THAT WE COULD GIVE, OTHER THAN REALLY REPEAT INFORMATION

ASA 0341

THAT'S ON VARIOUS -- OF THE MANY STATEMENTS THAT HAVE BEEN
TURNED OVER I BELIEVE MANY TIMES BY NOW.

BUT, ADDRESSING THE MOTION, THE MOTION HAS TWO PARTS.   ONE
IS GRANT THESE SANCTIONS, WHICH I, FRANKLY, BELIEVE HAS
ALWAYS BEEN THE GOAL.   AND THE SECOND IS THESE EVIDENTIARY
SANCTIONS.

AS FAR AS THE SANCTIONS, THE $4000. I JUST WANT TO SAY
AGAIN, I JUST DON'T THINK THERE'S ANY OTHER DOCUMENTS THAT
CAN BE TURNED OVER OTHER THAN MRS. LOPEZ'S DOCUMENTS,
THERE ARE NO OTHER DOCUMENTS THAT CAN BE TURNED OVER THAT
HAVEN'T ALREADY BEEN TURNED OVER.

I BROUGHT MR. LOPEZ'S FIRST DEPOSITION.   IT'S
240-SOMETHING PAGES.   THIS IS WELL MORE THAN A YEAR AGO.
THE REST OF THESE PAPERS ARE EXHIBITS.   EVERY STATEMENT
OF EVERY ONE OF HIS BILLS OF THE TWENTY OR SO CREDITORS
ARE ALL CONSUMER DEBTS.   THIS IS WELL MORE THAN A YEAR OLD.
MR. KEEHN HAS SENT OUT SEVERAL SUBPOENAS.   I'M ACTUALLY
NOT SURE WHAT HE'S GOTTEN FROM THOSE.   WE PROVIDED MORE
DOCUMENTS TWICE IN THIS GO AROUND.   IF MR. KEEHN REALLY
WANTED TO GET MOVING WITH THIS, JUST TAKE THE DEPOSITION
AGAIN.   HE'S BEEN TELLING ME HE'S GOING TO TAKE THIS
DEPOSITION.   HE SOMEHOW CAN'T BECAUSE HE
REALLY -- THERE'S SOME MAGICAL PIECE OF PAPER THAT I'M NOT
CLEAR ABOUT THAT HE HASN'T GOTTEN YET; AND THEREFORE, HE
CAN'T GO FORWARD.   THAT'S JUST RIDICULOUS.

WITH RESPECT TO THE DOCUMENTS IN MRS. LOPEZ'S POSSESSION,
I'VE ACTUALLY NEVER MET MRS. LOPEZ.   BUT I MEAN, MY WIFE

HAS A CHECKING ACCOUNT AND SHE CARRIES THE CHECKBOOK
AROUND IN HER PURSE.  AND I'D BE LOOKING FOR A DIVORCE
ATTORNEY IF I WENT INTO HER PURSE AND FOUND HER CHECKBOOK
AND STARTED SENDING OFF INFORMATION SOMEBODY HAPPENED TO
BE SUING ME.

THE COURT:    SO YOU'RE CONTENDING THIS IS ALL SEPARATE
PROPERTY, AND HE HAS NO INTEREST WHATSOEVER IN THE FUNDS
THAT SHE ADMINISTERS OR THE DEBT SHE'S INCURRED WHETHER
IT'S A LEHMAN BROTHERS, OR THE MORTGAGE ON THE HOUSE OR
ANY OF THOSE KINDS OF THINGS?

MR. HAYES:    I DON'T KNOW IF I'D GET INTO WHETHER IT'S
COMMUNITY PROPERTY OR NOT.  BUT IF THEY WANT, I MEAN, THEY
CAN GO AFTER HER.  THEY CAN SUBPOENA HER OR THEY CAN COME
IN WITH SOME SORT OF EVIDENCE OF WHY THEY HAVE THE RIGHT
TO MAKE MR. LOPEZ --

THE COURT:    SO WHAT'S YOUR THEORY, WHAT'S YOUR THEORY
ON WHY SHE DOESN'T HAVE TO PROVIDE AN ANSWER WITH RESPECT
TO WHAT SHE HAS OR HOLDS OR PAYS, PARTICULARLY, IF HE'S
GOT SOME OBLIGATION OR LIABILITY ON IT?

MR. HAYES.  THEY HAVEN'T ASKED HER.  THEY'RE ASKING HIM.

THE COURT:    NO.  THAT'S NOT MY QUESTION.  MY QUESTION
IS, WHAT'S YOUR THEORY FOR WHY HE DOESN'T HAVE TO ANSWER
THAT QUESTION?

MR. HAYES:    THAT'S HER RIGHT TO PRIVACY.

THE COURT:    SO IT'S HER RIGHT TO PRIVACY, BECAUSE IT'S
SOME SEPARATE INTEREST OF HERS OR WHAT?
WHERE DOES SHE HAVE A RIGHT TO PRIVACY ON SOMETHING THAT

YOU SAY YOU DON'T GET TO THE COMMUNITY PROPERTY QUESTION.
I MEAN, HE'S GOT A COMMUNITY PROPERTY INTEREST IN IT, IF
HE'S GOT A STATE STATUTORY RIGHT TO CO-MANAGEMENT OF
COMMUNITY ASSETS OR ANYTHING ELSE THAT I HAVE NO IDEA WHAT
FLORIDA LAW PROVIDES.

I'M ASKING YOU WHAT YOUR THEORY IS FOR WHY HE DOESN'T HAVE
TO ANSWER IT?

MR. HAYES:     WELL, FOR ONE THING, FLORIDA IS NOT
COMMUNITY PROPERTY.   AND I DON'T KNOW HOW FLORIDA LAW IS.
BUT WHAT I FOCUSED ON IS MR. LOPEZ, GO TO YOUR WIFE AND
GET THESE DOCUMENTS.

THE COURT:     NO, POSSESSION -- YOU KNOW, WHAT DOES HE
HAVE IN HIS POSSESSION OR CONTROL?   WHAT DOES HE HAVE?
HAS HE PRODUCED EVERYTHING THAT'S IN HIS POSSESSION OR
CONTROL WITH RESPECT TO THAT?

MR. HAYES:     OH, ABSOLUTELY.   BUT THAT'S --

THE COURT:     AND THAT'S INCLUDING AS TO HIS LIABILITY
WITH RESPECT TO IT?

MR. HAYES:     YES.   AS FAR AS I KNOW.   BUT THAT DOES
RAISE THE QUESTION OF DOES -- IS WHAT'S IN HIS WIFE'S PURSE
IN HIS POSSESSION OR CONTROL?   I MEAN, THAT'S WHAT HE'S
TELLING ME.   I CAN'T --

THE COURT:     NO.   YOUR ANSWER IS, HE HAS NO INTEREST OR
OBLIGATION IN THE LEHMAN BROTHERS OR THE MORTGAGE OR
WHATEVER IT IS, THEN WHY DON'T YOU AGREE TO THOSE
EVIDENTIARY SANCTIONS AS WELL?   YOU SAY HE'S TURNED OVER
EVERYTHING.

ASA 0344

MR. HAYES:     WELL, EVERYTHING THAT'S IN HIS POSSESSION
OR HIS CONTROL WITHOUT GETTING DIVORCED; YES.

THE COURT:     THEN THE ANSWER, IT SEEMS TO ME, IS THAT
YOU AGREE TO THE EVIDENTIARY SANCTIONS, SAID THAT HE
CANNOT PRODUCE ANYTHING HE HAS NOT ALREADY PRODUCED, COME
TIME OF TRIAL WITH RESPECT TO THE ISSUE THAT WE'LL BE
LITIGATING IN THIS PHASE 2 OF THIS ISSUE.

MR. HAYES:     I MIGHT DO THAT.  I HADN'T THOUGHT OF IT,
MYSELF.

I WAS FOCUSING ON THE MOTION, WHICH BASICALLY ASKED YOU
TO GRANT SUMMARY JUDGMENT TODAY.  BUT I WOULD AGREE WITH
THE THEORY THAT THINGS -- HE SHOULDN'T BE ABLE TO COME IN
WITH SOMETHING AFTER THIS, OR HE SHOULDN'T BE ABLE TO,
"QUOTE," "UNQUOTE," FIND SOMETHING, YOU KNOW, TWO DAYS
BEFORE TRIAL.

AND I DO BELIEVE EVERYTHING'S BEEN TURNED OVER.

THE COURT:     WELL, THAT'S WHAT MR. KEEHN IS -- I HAVE
NO IDEA WHAT HIS STRATEGY IS, BUT THAT'S AT LEAST WHAT HE'S
ASKING FOR IN THE CONTEXT OF THIS MOTION, BECAUSE HE WANTS
TO BE ABLE TO CLOSE THE BOOK AND THEN GO TAKE YOUR CLIENT'S
DEPO KNOWING THAT YOUR CLIENT IS NOW PRECLUDED FROM
STEPPING UP AND SAYING OH, BUT HERE'S THIS, AND HERE'S THIS
AND HERE'S THAT; AND NOT EVER HAVING HAD A CHANCE TO LOOK
AT IT OR INDEPENDENTLY VALIDATE IT FROM THIRD PARTIES OR
ANY OF THOSE KINDS OF THINGS.

YOU WOULDN'T WALK INTO A DEPO BLIND THAT WAY.  I'M
CONFIDENT OF THAT.

ASA 0345

MR. HAYES:    NO.  YOU KNOW, WHAT I WAS FOCUSING ON IS
THE MOTION SAYS ELIMINATE ALL EVIDENCE ENTIRELY REGARDING
EACH ONE OF THESE CATEGORIES; NOT JUST ELIMINATE -- NOT
JUST HAVE AN EVIDENTIARY SANCTION THAT WE CAN'T FIND,
"QUOTE," "UNQUOTE," FIND MORE DOCUMENTS.

I THINK I WOULD AGREE TO THAT.  WHATEVER DOCUMENTS HAVEN'T
BEEN TURNED OVER UP TO NOW, I WOULD AGREE TO THAT.

THE COURT:    OKAY.

MR. HAYES:    I'M NOT SURE I -- YOU KNOW, HE JUST FOUND
A JOB AND HE DOESN'T HAVE $4,400.  AND I DON'T KNOW WHAT
ELSE I CAN SAY.

YOU SAID, YOU'RE NOT SURE WHAT MR. KEEHN'S STRATEGY IS.
I MEAN, IF THEY REALLY WANTED THIS CASE TO BE FINISHED,
THEY WOULD HAVE TAKEN HIS DEPOSITION SIX OR EIGHT MONTHS
AGO.

THE COURT:    I WOULDN'T HAVE.  I WAS A LITIGATOR FOR A
BUNCH OF YEARS.  I'M NOT WALKING INTO A DEPOSITION WHEN
THERE'S A WHOLE BUNCH OF DOCUMENTS OUT THERE AND HAVE THEM
SURPRISE ME.

MR. HAYES:    WELL, I DON'T THINK THERE ARE.

THE COURT:    WELL --

MR. HAYES:    FOR MONTHS THERE HAVEN'T BEEN A WHOLE BUNCH
OF DOCUMENTS OUT THERE, BUT ALL RIGHT, I HAVE NOTHING
FURTHER.

THE COURT:    OKAY.  MR. KEEHN.

MR. KEEHN:    YES.  THANK YOU, YOUR HONOR.

IN ADDITION TO THE REASONS THAT YOU'VE ALLUDED TO AS TO

ASA 0346

WHY YOU WOULDN'T TAKE THE DEPOSITION WITHOUT THE
DOCUMENTS, THERE WERE RESPONSES THAT MR. LOPEZ GAVE IN HIS
ORIGINAL DEPOSITION A YEAR AGO, NOW, THAT TO THE EFFECT
THAT, WELL THERE ARE MORE DOCUMENTS.  I JUST HAVE TO LOOK
AT THEM.  AND OBVIOUSLY THAT'S A DOOR WE NEED TO CLOSE.
IF WE GET THE EVIDENTIARY SANCTIONS, AS MR. HAYES
SUGGESTED, WE'VE CLOSED THE DOOR.
AND I, IN TERMS OF THE -- IF HE'S AGREEING TO THE SANCTIONS
THEN I DON'T NEED TO ADDRESS HOW HELLACIOUS THIS ARGUMENT
OF MARITAL STRESS IS CONCERNED.  I DID HAVE SOME DOCUMENTS
THAT WERE RECENTLY FILED IN THE DISTRICT COURT THAT BLOW
THAT OUT OF THE WATER.  BUT IF HE'S AGREEING TO IT, I WON'T
ADDRESS IT.
AS FAR AS THE MONETARY SANCTION IS CONCERNED, YOUR HONOR,
THIS -- WE TRIED TO CLOSE THE DOOR IN A PROCESS THAT BEGAN
SEVEN MONTHS AGO.  I SHOULDN'T BE HERE SEVEN MONTHS LATER
CLOSING IT ON A CAPITULATION TO A SECOND MOTION TO COMPEL
THAT I SHOULDN'T HAVE HAD TO FILE.
IF THERE REALLY ARE NO DOCUMENTS, THEN WHY IS THE RESPONSE,
WELL, THERE'S MORE THINGS I NEED TO CHECK AND I CAN'T BE
SURE.  IF THERE REALLY ARE NO DOCUMENTS, THEN WHY WAS THAT
ANSWER NOT GIVEN BACK IN MAY?  WHY WAS IT NOT GIVEN BACK
IN DECEMBER WHEN IT WOULD HAVE BEEN TIMELY?  THERE'S NO
EXPLANATION FOR THAT.
THIS IS EXACTLY THE KIND OF GAMESMANSHIP THAT RULE ONE OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE ABHORS.  THE
PURPOSE OF THE RULES, THEMSELVES, IS TO PROVIDE A

ASA 0347

MECHANISM AND A FRAMEWORK FOR THE RAPID AND FAIR
RESOLUTION OF ISSUES.

NOW, ONE COMMENT, SORT OF, AT LEAST I INFERRED THE ARGUMENT
FROM THE FACT THAT WE HAVE TWO TO THREE INCHES OF PAPER
FROM THE ORIGINAL DEPOSITION.  AND WHY ARE WE STILL HERE
A YEAR LATER?

IN ADDITION TO NOT HAVING THE DOCUMENTS PRODUCED, WE ALSO
HAVE THE POINT THAT THIS CASE WAS BIFURCATED AT MR. LOPEZ'S
REQUEST.  THERE WERE MANY QUESTIONS THAT I COULD EASILY
HAVE ASKED THE FIRST GO AROUND THAT MIGHT HAVE OBVIATED
THE NEED FOR FURTHER DEPOSITION, OR AT LEAST REDUCED IT.
I COULDN'T BECAUSE OF THE CONSTRAINTS PLACED BY THE
BIFURCATION ORDER.  AND I TRIED TO ADHERE TO THAT ORDER.
SO I HAVE TO TAKE HIS DEPOSITION YET A SECOND TIME.

AND THEN ONE OF THE LAST REMARKS THAT COUNSEL MADE, I
THINK, UNDERSCORES THE NEED FOR THE SANCTIONS HAVING BEEN
IMPOSED BECAUSE IT HIGHLIGHTS THE GAMESMAN-LIKE APPROACH
THAT MR. LOPEZ HAS TAKEN.  AND THAT, THAT COMMENT WAS, HE
JUST GOT A JOB.

WELL, IF BY THAT HE'S REPRESENTING TO THE COURT THAT UP
UNTIL THIS TIME HE'S BEEN UNEMPLOYED, I THINK THAT
EXACERBATES THE CULPABILITY OF MR. LOPEZ IN NOT TIMELY
RESPONDING.  WHAT ELSE WAS HE DOING?  WAS HE REALLY
SPENDING FORTY HOURS A WEEK LOOKING FOR A JOB?

IF HE WAS UNEMPLOYED, CERTAINLY HE WOULD HAVE HAD MORE TIME
AVAILABLE TO TEND TO HIS DUTIES AS A LITIGANT THAN A
FULLY-EMPLOYED INDIVIDUAL WOULD.  AND EVEN A

ASA 0348

FULLY-EMPLOYED INDIVIDUAL IS EXPECTED TO RESPOND AND
RESPOND TIMELY TO DISCOVERY OBLIGATIONS.

AS I SAID IN THE BEGINNING, WE DON'T KNOW TODAY, AND WE
WON'T KNOW UNTIL THAT ORDER FOR RELIEF IS ENTERED AND
SCHEDULES ARE FILED, IF THAT EVER HAPPENS.  HOW MUCH THIS
ESTATE AND THE GENERAL UNSECURED CREDITORS THAT BROUGHT
THIS POSITION HAVE BEEN PREJUDICED BY THIS DELAY AND THE
INCURRING OF GAP CLAIMS?

I THINK THAT MESSAGE THE COURT SENT THE FIRST TIME TO  MR.
LOPEZ WAS, I'LL GIVE YOU ANOTHER CHANCE.  I THINK THE
MESSAGE THAT THE COURT NEEDS TO SEND TO MR. LOPEZ NOW IS,
THIS ISN'T A GAME.  AND THERE AREN'T ANY MORE CHANCES.
AND YOU DIDN'T PLAY BY THE RULES, AND SO THE SHIELD THAT
I PUT IN FRONT OF YOU BEFORE, IS NOW DOWN.  AND THESE
SANCTIONS ARE DUE AND PAYABLE.

THE COURT:    WELL, IN MY VIEW, AT LEAST AT THIS POINT
IN TIME AND ON THE PRESENT STATE OF THE RECORD, THE
EVIDENTIARY SANCTIONS ARE WARRANTED, AND WILL BE ORDERED
IN THE FOLLOWING RESPECTS:

WITH RESPECT TO DEBTOR'S RESPONSE TO REQUEST FOR ADMISSION
NUMBER FIVE, THAT WILL BE, AND THE DEBTOR HAS AGREED, THAT
WILL BE AN UNQUALIFIED ADMISSION;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS FROM NOVION BETWEEN JANUARY 1 OF 2005 TO JULY 1
OF 2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED FROM JANUARY 1, 2005 TO JULY 1,

2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED BY HIS WIFE BETWEEN JANUARY 1,
2005 AND JULY 1 OF 2005.  AND I WILL ADD, AS TO THESE
PROHIBITIONS, THAT'S TO THE EXTENT NOT ALREADY DISCLOSED
TO THE MOVING CREDITORS, THE PETITIONING CREDITORS.  IF
IT'S BEEN DISCLOSED, THEN IT'S THERE.  THERE'S NO
PRECLUSION OF USE OF THAT INFORMATION IF IT'S BEEN
PREVIOUSLY PROVIDED TO THE PETITIONING CREDITORS, IN THE
CONTEXT OF THE DISCOVERY OF THIS CASE;

THE DEBTOR WILL BE PROHIBITED FROM PROVIDING ANY EVIDENCE
OF A DEBT IN FAVOR OF LEHMAN BROTHERS OR ANY PAYMENT TO
LEHMAN BROTHERS AS OF THE PETITION DATE EXCEPT TO THE
EXTENT AND SAME PROVISO, EXCEPT TO THE EXTENT ALREADY
DISCLOSED TO THE COUNSEL FOR PETITIONING CREDITORS;

AND, DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
DEBT IN FAVOR OF AMERICAN EXPRESS, BANK OF AMERICA, BANK
CARD, CINGULAR, CITI CARD, HOUSEHOLD BANK, NORTHWEST
FLORIDA DAILY NEWS, CITIBANK QUICKEN, TEXACO, VERIZON,
UNION BANK, OR MR. GORRILL OR ANY PAYMENT TO ANY OF THEM
AS OF THE PETITION DATE, EXCEPT TO THE EXTENT ALREADY
PROVIDED THE COUNSEL FOR PETITIONING CREDITORS IN THE
CONTEXT OF THE DISCOVERY IN THIS MATTER.

AS TO THE MONETARY SANCTIONS, I AM, AGAIN, GOING TO DEFER
AWARDING THOSE.  BUT THEY REMAIN THE SORT OF DAMOCLES OVER
MR. LOPEZ.  BECAUSE I DON'T KNOW THE ANSWER TO SOME OF
MR. KEEHN'S SPECULATION AS TO WHAT'S GOING ON.  MR. KEEHN

ASA 0350

IS CONVINCED THAT THIS IS A GAME THAT MR. LOPEZ IS PLAYING.
I'M NOT YET CONVINCED OF THAT.

SO EVENTUALLY WE WILL GET TO THE ANSWER ONE WAY OR THE
OTHER.  AND ONCE I KNOW THE ANSWER, I'LL APPLY THEM, IF
I DEEM THAT'S APPROPRIATE AT THE TIME.  BUT THE
EVIDENTIARY SANCTIONS AT THIS POINT IN TIME ARE WARRANTED.
I'LL SIGN AN ORDER TO THAT EFFECT.

MR. KEEHN:    THANK YOU, YOUR HONOR.

THE COURT:    OKAY.  NOW, WE HAVE A STATUS CONFERENCE.
TIMING.

ARE YOU, NOW, LOOKING AT THE DEPOSITION, MR. KEEHN?

MR. KEEHN:    I AM.  AND CONSISTENT WITH THE LOCAL
RULES, I NEED TO CONFER WITH COUNSEL AS TO AVAILABLE DATES.

MR. HAYES:    I HAVE TO BE BACK HERE JULY 31ST.  THAT'S
A LITTLE QUICK, BUT I'M GOING TO BE HERE ANYWAY.

THE COURT:    JULY 31ST?  THAT'S A TUESDAY.

MR. KEEHN:    YES.

THE COURT:    WHAT TIME IS YOUR HEARING ON THE 31ST?

MR. HAYES:    AT 10:00.  IT'S A SUMMARY JUDGMENT MOTION,
SO IT COULD BE IN THE AFTERNOON; SUMMARY JUDGMENT MOTION
THAT HASN'T BEEN FILED.

THE COURT:    WE COULD DO 2:00 P.M. ON THE 31ST.  DOES
THAT WORK?

MR.KEEHN:    IT'S CLEAR ON MY CALENDAR, YOUR HONOR.

MR. HAYES:    2:00?

THE COURT:    OKAY.  AND WE'LL DO THAT AS A FURTHER
STATUS CONFERENCE.  BUT IN THE MEANTIME, I ASSUME THE TWO

OF YOU WILL MEET AND CONFER ON A DEPOSITION DATE.   AND THEN

ONCE THE DEPOSITION IS CONCLUDED, I ASSUME MR. KEEHN,

YOU'RE PLANNING A MOTION?

MR. KEEHN:     I AM.

THE COURT:     JUST SO MR. HAYES SEES WHAT'S COMING AND

THEN WE'LL -- ONCE THAT MOTION'S DECIDED, WE'LL KNOW WHERE

WE GO NEXT, IF ANYWHERE.

MR. HAYES:     GREAT.

MR. KEEHN:     THANK YOU, YOUR HONOR.

MR. HAYES:     THANK YOU, YOUR HONOR.

THE COURT:     ALL RIGHT.   WE'LL BE IN RECESS.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

        I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY

CERTIFY:

ASA 0352

THAT I REPORTED IN SHORTHAND THE PROCEEDINGS
HELD IN THE FOREGOING CAUSE ON THE 25TH DAY OF JUNE, 2007;
THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING
UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT
CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.


DATED THIS _____ DAY OF _____, 2007.


_____
LYNETTE ALVES, CSR #12534, RPR #61256

ASA 0353

# EXHIBIT 3

ASA 0354

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8              UNITED STATES BANKRUPTCY COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                          )  Case No.  05-05926-PBINV
                                    )
12        FRANCIS J. LOPEZ,         )  **DECLARATION OF TIMOTHY P. DILLON**
                                    )
13            Alleged Debtor.       )  **[BIFURCATED PHASE II]**
                                    )
14                                  )  Date:   October 1, 2007 (Status Conference)
                                    )  Time:   10:30 a.m.
15                                  )  Judge: The Honorable Peter W. Bowie
                                    )  Ctrm:  4
16                                  )
                                    )
17                                  )
                                    )
18                                  )
                                    )
19  _____ )

20        I, TIMOTHY P. DILLON, declare as follows:

21        1.      I am an attorney duly admitted to practice before the Courts of this State. I am a

22  shareholder of the law firm of Dillon & Gerardi, APC, counsel for Petitioning Creditor Alan

23  Stanly ("Stanly") in certain cases involving the alleged debtor herein, Francis J. Lopez ("Lopez"),

24  which were and/or are pending before the San Diego Superior Court and the United States District

25  Court for the Southern District of California (the "Additional Lopez Cases"). In connection with

26  the Additional Lopez Cases, I am the *shareholder in charge* of the engagement of the firm on

27  behalf of Stanly, and the attorney within the firm who is most knowledgeable with respect to all

28  aspects of the Additional Lopez Cases. I make this Declaration based upon facts within my

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

- 1 -                                    111575/LFK/5311.01

**ASA 0355**

1   firsthand knowledge acquired in the course of conducting litigation against Lopez in the

2   Additional Lopez Cases.

3           2.      The delay and bad-faith litigation tactics employed by Lopez and his counsel

4   throughout the Additional Lopez Cases are summarized below.

5                   *Union Bank of California v. Francis J. Lopez, et. al.*

6               **San Diego Superior Court(Case No.: GIN 030827)**

7   Case Summary (06/2003 - 09/2004):

8           3.      In or about June of 2003, Union Bank of California initiated a litigation against

9   both Lopez and Stanly as guarantors of a loan which their corporation, Prism, had defaulted on.

10  Both Lopez and Stanly filed cross-claims against each other for contribution and indemnity.

11  Lopez and Stanly eventually settled with Union Bank.  Stanly prevailed on a motion for good faith

12  settlement and obtained a dismissal of Lopez's cross-claims.  At time of trial, the sole issues left in

13  the case were Stanly's claims against Lopez for indemnity and contribution.  Trial in the Union

14  Bank matter was continued several times due to Lopez's dilatory conduct, as more fully set forth

15  below.  When the Court finally held trial, neither Lopez nor his counsel appeared.  Trial proceeded

16  without Lopez.

17  Summary of Dilatory / Bad Faith Tactics:

18          4.      On March 9, 2004, Lopez requested a trial continuance due to the "illness of his

19  wife's aunt."  Based on that request, the parties ultimately stipulated to continue the trial for four

20  months — until July 9, 2004.

21          5.      On July 2, 2004 — the date of the trial readiness conference — Lopez's attorney,

22  Joseph Fischbach ("Fischbach"), faxed a "Declaration re: Non-Readiness for Trial" to my office.

23  A true and correct copy of that Declaration is attached hereto as Exhibit 1 to the "Compendium of

24  Exhibits in Support of Renewed Request for an Enforcement Order Imposing Monetary Sanctions

25  Against Alleged Debtor Francis J. Lopez" (hereinafter referred to as the "Exhibits Compendium")

26  filed concurrently herewith.  In his Declaration, Fischbach stated that he would be unable to

27  appear for trial because he had scheduled another trial for July 7, 2004.  This was the first time

28  Fischbach had ever indicated that he would be unable to attend trial.  He did not personally appear

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2350 · FACSIMILE (619) 400-2201

- 2 -

111575/LFK/5311.01

ASA 0356

1  at the trial readiness conference. Instead, Fischbach sent an *appearance counsel* to the trial

2  readiness conference who was not affiliated with Fischbach's law firm, and was unfamiliar with

3  the case. Because a "Declaration for Non-Readiness for Trial" is not a proper method of obtaining

4  a trial continuance, and Lopez did not properly apply for a continuance of trial, the Court had no

5  legal basis on which to order a continuance. The Court then confirmed that trial call would

6  remain set for July 9, 2004.

7      6.    On July 9, 2004, Lopez and his counsel failed to appear for trial, and the trial court

8  issued an Order to Show Cause as to why sanctions should not be issued against them. A true and

9  correct copy of the Order is attached as Exhibit 2 to the Exhibits Compendium.

10      7.    On July 16, 2004, Fischbach appeared before the Court and confirmed that he was

11  in trial on another matter on the dates set for trial in *Union Bank of California v. Francis J. Lopez,*

12  *et. al.* and stated that his failure to appear at the scheduled trial date was due to a mix-up with

13  co-counsel. No declaration of co-counsel was ever provided to corroborate the existence of the

14  mix-up or how it came to be. Additionally, Lopez provided declarations to the Court from himself

15  and his physician stating Lopez was suffering from "diverticulitis" and was too ill to participate in

16  a trial. A true and correct copy of the Declarations is attached as Exhibit 3 to the Exhibits

17  Compendium. This was the first time the Court had been advised of Lopez's purported

18  diverticulitis. Stanly was aware that Lopez could easily induce the aggravating symptoms of his

19  condition by eating popcorn. The Court continued the trial for approximately 60 days — until

20  September 10, 2004.

21      8.    On September 9, 2004 — one day before the twice-continued trial was set to begin

22  — Lopez applied *ex parte* for a third trial continuance. A true and correct copy of the Ex Parte

23  Application is attached as Exhibit 4 to the Exhibits Compendium. Lopez claimed he was still

24  suffering from diverticulitis, and that the medication he took for it made him "groggy."[1] Lopez

25  further stated that he could not appear for trial due to scheduled colonoscopy and endoscopy

26

27

28

---

[1]    See, Exhibits Compendium Tab 4.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1310
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

111575/LFK/5311.01

**ASA 0357**

1   procedures.[2] The evidence in support of Lopez's application was defective in that the declarations

2   were not signed under penalty of perjury under the laws of the State of California. The Court

3   ordered the application continued until September 10, 2004, and the Court's minute order

4   provided precise instructions to Lopez as to how to provide a competent declaration. A true and

5   correct copy of that Order is attached as Exhibit 5 to the Exhibits Compendium.

6         9.    On September 10, 2004, Stanly appeared with a proposal for the commencement of

7   trial. Lopez appeared through *appearance counsel* who was not affiliated with Fischbach's law

8   firm, and was unfamiliar with the status of the case. Despite the Court's specific instruction, no

9   competent declaration was provided to support Lopez's request for a third trial continuance.

10   Based on that, the Court denied his request.

11        10.    Trial proceeded on September 14, 2004, wherein Stanly obtained a judgment

12   against Lopez for $50,000.

13                     *Francis Lopez v. Alan Stanly*

14           **San Diego Superior Court (Case No.: GIN029692)**

15   <u>Case Summary (05/2003 - 06/2005):</u>

16        11.    This case has been stayed by the involuntary bankruptcy petition filed herein.

17   Lopez initially sued Stanly for breach of fiduciary duty, trespassing, conversion and invasion of

18   privacy. All but the invasion of privacy claims were dismissed via a motion for summary

19   adjudication. Stanly counter-claimed on a variety of claims, including breach of fiduciary duty,

20   unfair competition and misappropriation of trade secrets. Stanly obtained many discovery

21   sanctions against Lopez for his discovery violations. Because of the involuntary bankruptcy

22   petition, the Court did not issue monetary sanctions against Lopez. However, prior to the filing of

23   the bankruptcy petition, a discovery referee recommended the issuance of several thousand dollars

24   of discovery sanctions against Lopez, and $5,198.75 of discovery sanctions were issued against

25   Lopez's counsel and co-Plaintiff. The Court also issued evidentiary sanctions against Lopez.

26   / / /

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

---

[2]    *Id.*

111575/LFK/5311.01

**ASA 0358**

**Summary of Dilatory / Bad Faith Tactics:**

12.     Without justification or excuse, Lopez failed to provide any response to Stanly's First Set of written discovery propounded on him on December 31, 2003. Stanly filed a motion to compel discovery responses. During the extended meet and confer process, the parties worked out a resolution whereby Lopez paid Stanly $600 in sanctions and provided Stanly with discovery responses. In exchange, Stanly took the motion off calendar.

13.     On July 28, 2004, Stanly propounded a Second Set of written discovery consisting of interrogatories, requests for admission and requests for production on Martin Hudacko ("Hudacko") and Lopez. On September 2, 2004, Hudacko and Lopez provided responses consisting solely of identical boilerplate objections, without a single substantive response. After a meet and confer process, Lopez provided some substantive responses, however, these responses were still woefully inadequate. In addition, Lopez sought a protective order as to certain discovery (based on trade secret protection) and others he claimed he had already answered appropriately.

14.     In November of 2004, Lopez moved to appoint a discovery referee. Stanly agreed, and Judge Sarokin was appointed as discovery referee based on the parties' stipulation.

15.     On January 7, 2005, Stanly submitted to Judge Sarokin a motion to compel the discovery responses of Hudacko and Lopez. On February 18, 2005, Stanly's motion was granted, and Judge Sarokin ordered Lopez to respond to the written discovery requests and produce response documents. The 02/18/2005 ruling of Judge Sarokin was entered as an order of the trial court.

16.     On March 4, 2005 (the ordered production date), Lopez failed, without justification or excuse, to comply with Judge Sarokin's 02/18/2005 Order by failing to provide any responsive documents to Stanly's requests for production of documents. Stanly made several requests to Judge Sarokin for an additional Order requiring Lopez to produce documents, and for the imposition of sanctions against Lopez. On March 24, 2005, Judge Sarokin issued another Order requiring Lopez to produce all responsive documents on or before March 18, 2005.

17.     On April 1, 2005, after persistent requests from Stanly's attorneys, and two Orders

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111575/LFK/5311.01

ASA 0359

1   from Judge Sarokin, Lopez finally produced approximately 50 pages of additional materials via

2   email. Although Lopez provided some documents, he still failed, without justification or excuse,

3   to provide a video tape and several documents specifically referred to in his discovery responses.

4   Further, Lopez failed to provide audio recordings and a CD ROM purportedly in his possession.

5       18.    On April 15, 2005, Stanly filed another motion to compel and request for monetary

6   sanctions against Lopez, requesting, amongst other documents, that the audio recordings be

7   produced. On April 28, 2005, Judge Sarokin granted Stanly's motion and demanded Lopez

8   produce all responsive documents, including the audio recordings and the CD ROM.

9       19.    After Judge Sarokin issued the 04/28/2005 Order, Lopez produced some audio

10  recordings, but failed, without justification or excuse, to produce any of the other documents he

11  had been ordered to produce.

12      20.    After several repeated requests for production of the missing documentation, Stanly

13  brought another motion to compel before Judge Sarokin. On June 24, 2005, Judge Sarokin

14  granted the motion, and issued evidentiary and monetary sanctions against Lopez in the amount of

15  $2,000. A true and correct copy of that Order is attached as Exhibit 6 to the Exhibits

16  Compendium.

17      21.    On March 8, 2005, Lopez failed, without justification or excuse, to appear for the

18  deposition of Stanly that Lopez had noticed for that day, causing Stanly and his counsel great

19  expense and inconvenience.

20      22.    Without justification or excuse, Lopez repeatedly served deposition subpoenas on

21  third parties without providing notice of the Subpoenas to Stanly in an effort to secretly obtain

22  discovery without Stanly's knowledge. Stanly was only made aware of Lopez' failure to provide

23  notice of third party depositions after certain witnesses informed Stanly of the subpoenas. Judge

24  Sarokin issued evidentiary sanctions against Lopez for this conduct in his 06/24/2005 Report.[3]

25      23.    Pursuant to the terms of a protective Order issued by Judge Sarokin, and adopted

26  by the trial court, all parties were ordered to provide declarations detailing their use of corporate

27

28
         [3]      See, Exhibits Compendium Tab 6.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2300 · FACSIMILE (619) 400-2311

111575/LFK/5311.01

ASA 0360

funds for personal expenses. While Stanly complied with this request, Lopez did not. Lopez's declaration failed, without justification or excuse, to describe his use of corporate funds with any particularity. Stanly was forced to bring another motion before Judge Sarokin, requesting that supplemental declarations be ordered. In his 06/24/2005 Report, Judge Sarokin granted Stanly's motion and Ordered supplemental declarations be produced.[4]

24.    Lopez refused to stipulate to limit his emotional distress claims pursuant to California Code of Civil Procedure §2032, despite Stanly's repeated requests and Lopez's representations that he would enter into a stipulation.  Accordingly, Stanly moved for an Order requiring a medical examination of Lopez. Judge Sarokin issued sanctions against Lopez and his counsel in the amount of $2,948.75 for their failure to initially stipulate. This ruling is contained in Judge Sarokin's 06/24/2005 Report.[5]

25.    On October 22, 2004, Stanly served Lopez with a request for a Statement of Damages. Lopez never provided it, despite multiple follow-up requests. Judge Sarokin ordered the Statement served, and Lopez failed to comply with that Order, insisting that the Statement had already been served on Stanly. Judge Sarokin issued monetary sanctions in the amount of $1,245 against Lopez for his failure to comply with his Order. This ruling was also contained in Judge Sarokin's 06/24/2005 Report.[6]

*Enterprise Technology Holdings v. Noveon Systems, Inc. et al.*

**United States District Court for the Southern District of California (Case No.: 05-cv-2236)**

Case Summary (12/2005 - Present):

26.    Stanly is the President of Enterprise Technology Holdings, Inc. ("ETH") which filed this action against Noveon Systems, Inc., a company whose common stock is all owned by Mrs. Lopez. ETH successfully obtained a preliminary injunction against Noveon, enjoining Noveon, and all those acting in concert with Noveon, from utilizing, selling, licensing or

---

[4]    See, Exhibits Compendium Tab 6.

[5]    See, Exhibits Compendium Tab 6.

[6]    See, Exhibits Compendium Tab 6.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2400 FACSIMILE (619) 400-2431

111575/LFK/5311.01

**ASA 0361**

1  marketing Prism's software (the company formerly owned by Stanly and Lopez). Thereafter,

2  without any proffered justification or excuse, Novcon simply stopped participating in the

3  litigation. Noveon's counsel admitted his client was not participating in the litigation and, as a

4  result, Noveon's counsel withdrew from the case on January 17, 2007. It appears Lopez decided

5  to stop doing business as Noveon, and let the company take the fall in the case. Lopez left the

6  company with no money, no assets and no appointed officers or elected directors.

7       Although all of the Noveon stock is in his wife's name, Lopez was the company's founder

8  and the person who had managed all the day-to-day operations. The last remaining issue in this

9  case is whether Lopez's wife is an alter-ego of Noveon and thus liable for the company's debts.

10  **Summary of Dilatory / Bad Faith Tactics:**

11       27.    In October of 2006, ETH propounded written discovery on Noveon. Noveon failed

12  and refused to respond to the discovery requests even after multiple meet and confer attempts, and

13  two telephonic conferences with Magistrate Judge Catherine Bencivengo.

14       28.    ETH filed a motion for monetary, issue, evidentiary and terminating sanctions

15  against Noveon based on its failure to provide any discovery responses. Noveon failed to oppose

16  the motion. On December 8, 2007, Judge Bencivengo granted ETH's motion and ultimately

17  issued evidentiary, issue and terminating sanctions.

18       29.    On August 16, 2007, the Court granted ETH's motion for a default judgment

19  against Noveon. A true and correct copy of that Order is attached as Exhibit 7 to the Exhibits

20  Compendium.

21                          **LOPEZ'S ALLEGATIONS OF UNFAIR BIAS**

22       30.    Lopez's apparent *modus operandi* in the Additional Lopez Cases was to allege

23  unfair bias against the judicial officers who issued sanctions or adverse rulings against him.

24       31.    In *Union Bank of California v. Francis J. Lopez, et. al.*, Lopez responded to Judge

25  Sarokin's adverse rulings (described above) by failing to pay his portion of Judge Sarokin's

26  referee fees, and filing a motion to disqualify him based on alleged bias. Based on Lopez's

27  allegations, Judge Sarokin resigned rather than respond to the motion. Lopez also alleged that

28  Judge Jacqueline Stern was biased against him. He filed a complaint against Judge Stern with the

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

111575/LFK/5311.01

ASA 0362

1  | judicial counsel, and unsuccessfully moved to disqualify her.

2  |      32.     Likewise, in *Francis Lopez v. Alan Stanly*, Lopez responded to Judge Michael

3  | Orfield's adverse rulings by alleging he was unfairly biased against him, and moving for

4  | disqualification.  Judge Orfield voluntarily recused himself, and the case was referred to Judge

5  | Thomas Nugent.

6  | **FEES INCURRED FOR PREPARING SUMMARIES RE: LOPEZ'S MISCONDUCT**

7  |      33.     The summaries of the Additional Lopez Cases discussed herein were specifically

8  | prepared for Stanly's bankruptcy counsel (Keehn & Associates, APC) by my office in support of

9  | Stanly's renewed request for monetary sanctions against Lopez in the above-entitled bankruptcy

10 | case.  My office spent a total of 6.25 hours compiling the summaries, reviewing past documents,

11 | reviewing old case files and finalizing this declaration.  Stanly was billed $1,018.75 for actual

12 | legal fees incurred, as set forth below:

13 |      Attorney Timothy P. Dillon: 1.25 hour ($215 per hour)

14 |      Attorney Sunjina Kaur Ahuja: 5.0 hours ($150 per hour)

15 |      I declare under penalty of perjury under the law of the United States that the foregoing is

16 | true and correct, and that this Declaration was executed on this 26th day of September, 2007, at

17 | San Diego, California.

TIMOTHY P. DILLON

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200    FACSIMILE (619) 400-2201

111575/LFK/5311.01

ASA 0363

# EXHIBIT 4

ASA 0364

| October 19, 2007 4:25 pm | | | Keehn & Associates, APC Detail Time Submittal Report | | | Page 1 |

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 9317 | 8/1/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 100.00 | 10.00 |
| 9345 | 8/3/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.20 | 100.00 | 20.00 |
| 9356 | 8/6/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 100.00 | 10.00 |
| 9431 | 8/23/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.20 | 100.00 | 20.00 |
| 9956 | 9/2/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEW OF WORLD SAVINGS DOCUMENTS IN PREPARATION FOR UPCOMING DEPOSITION. | 0.80 | 320.00 | 256.00 |
| 9973 | 9/4/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON DOCUMENT REVIEW AND PREPARATION FOR UPCOMING DEPOSITION. | 1.00 | 320.00 | 320.00 |
| 9991 | 9/5/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) E-CORRESPONDENCE WITH CLIENT REGARDING VIDEO TAPE DEPOSITION. | 0.10 | 320.00 | 32.00 |
| 9992 | 9/5/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON INITIAL PREPARATION FOR DEPOSITION OF FRANCIS LOPEZ. | 1.10 | 320.00 | 352.00 |
| 10519 | 9/9/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORKED IN SUPPORT OF DEPOSITION OF FRANCIS LOPEZ REGARDING OUTLINE AND SUMMARY OF EVIDENCE PERTAINING TO REQUISITE ELEMENTS OF CLAIM. | 1.30 | 225.00 | 292.50 |

ASA 0365

October 19, 2007
4:25 pm

Keehn & Associates, APC
Detail Time Submittal Report

Page 2

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 10081 | 9/10/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>REVIEW OF DOCUMENTS AND RELATED<br>PREPARATION FOR UPCOMING DEPOSITION | 2.60 | 320.00 | 832.00 |
| 10082 | 9/10/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RRR RECEIPT, REVIEW AND RESPOND TO<br>E-CORRESPONDENCE FROM ATTORNEY HAYES<br>GIVING NOTICE THAT LOPEZ WILL NOT ATTENED<br>HIS 9/11/07 DEPOSITION | 0.20 | 320.00 | 64.00 |
| 10331 | 9/10/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>PARALEGAL SUPPORT REGARDING ATTORNEY<br>PREPARATION FOR UPCOMING DEPOSITION OF<br>FRANCIS LOPEZ. | 0.40 | 100.00 | 40.00 |
| 10333 | 9/10/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>PARALEGAL SUPPORT REGARDING COMPILATION<br>OF TAX DOCUMENTS PRODUCED BY LOPEZ. | 0.40 | 100.00 | 40.00 |
| 10086 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RR RECEIPT AND REVIEW OF<br>E-CORRESPONDENCE FROM CLIENT REGARDING<br>ISSUES WITH FRANCIS LOPEZ | 0.20 | 320.00 | 64.00 |
| 10087 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RR RECEIPT AND PRELIMINARY REVIEW OF<br>MATERIALS FROM TIM DILLON'S OFFICE FOR USE<br>IN SUPPORT OF SANCTIONS MOTIONS AGAINST<br>LOPEZ | 0.80 | 320.00 | 256.00 |
| 10088 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>███████████████████████ | 0.80 | 320.00 | 256.00 |
| 10140 | 9/13/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>███████████████████████ | 0.10 | 320.00 | 32.00 |
| 10141 | 9/13/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>███████████████████████ | 0.10 | 320.00 | 32.00 |

ASA 0366

October 19, 2007                          Keehn & Associates, APC                          Page 3
4:25 pm                                Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| | | | REQUEST. | | | |
| 10217 | 9/17/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10218 | 9/17/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>ECO E-CORRESPONDENCE TO JOHN HAYES<br>REGARDING DEPOSITION ISSUES | 0.10 | 320.00 | 32.00 |
| 10351 | 9/17/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 100.00 | 10.00 |
| 10553 | 9/18/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>REVIEWED SUMMARIES AND SUPPORTING<br>DOCUMENTS PERTAINING TO LOPEZ'S<br>DILATORY/BAD FAITH LITIGATION TACTICS<br>PROVIDED BY THE OFFICES OF DILLON &<br>GERARDI, APC; WORKED ON DRAFT OF<br>COMPREHENSIVE SUMMARY OF LOPEZ'S<br>DILATORY/BAD FAITH LITIGATION TACTICS IN<br>SUPPORT OF PETITIONING CREDITORS' REQUEST<br>FOR SANCTIONS; DRAFTED EMAIL<br>CORRESPONDENCE TO ATTORNEY SUNJINA K.<br>AHUJA IN SUPPORT OF SAME. | 3.90 | 225.00 | 877.50 |
| 10240 | 9/19/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>TCW TELEPHONE CONFERENCE WITH ALAN<br>STANLY REGARDING SANCTIONS MOTIONS AND<br>RELATED ISSUES | 0.40 | 320.00 | 128.00 |
| 10241 | 9/19/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WORK ON PREPARATION FOR LOPEZ DEPOSITION<br>AND GROUND WORK FOR SANCTIONS MOTION | 1.70 | 320.00 | 544.00 |
| 10253 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RRR RECEIPT, REVIEW AND RESPOND TO<br>E-CORRESPONDENCE FROM ATTORNEY HAYES<br>REGARDING DEPOSITION | 0.20 | 320.00 | 64.00 |
| 10254 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>TCW TELEPHONE CONFERENCE WITH CLIENT<br>REGARDING FOLLOW-UP RE: SANCTIONS AND | 0.30 | 320.00 | 96.00 |

**ASA 0367**

October 19, 2007                                       Keehn & Associates, APC                                       Page 4
4:25 pm                                                Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| | | | RELATED ISSUES | | | |
| 10255 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON DEVELOPMENT OF EVIDENTIARY RECORD FOR SANCTIONS HEARING | 1.60 | 320.00 | 512.00 |
| 10574 | 9/20/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RECEIVED AND REVIEWED EMAIL CORRESPONDENCE FROM ATTORNEY SUNJINA K. AHUJA REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; COMPLETED DRAFT OF COMPREHENSIVE SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS IN SUPPORT OF PETITIONING CREDITORS' RENEWED REQUEST FOR SANCTIONS. | 1.30 | 225.00 | 292.50 |
| 10277 | 9/21/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON EVIDENTIARY SUPPORT FOR SANCTIONS MOTIONS | 1.30 | 320.00 | 416.00 |
| 10586 | 9/24/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; DRAFTED CORRESPONDING COMPENDIUM OF EXHIBITS; DRAFTED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS. | 6.60 | 225.00 | 1485.00 |
| 10403 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVISE AND EDIT PROPOSED DECLARATION FOR TIMOTHY DILLON | 0.40 | 320.00 | 128.00 |
| 10404 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM CLIENT RE: SAME | 0.20 | 320.00 | 64.00 |
| 10405 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON SANCTIONS MOTION | 0.50 | 320.00 | 160.00 |
| 10588 | 9/25/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED COMPENDIUM OF EXHIBITS REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; REVISED AND FINALIZED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; DRAFTED DECLARATION OF L. SCOTT KEEHN REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS. | 4.30 | 225.00 | 967.50 |

ASA 0368

October 19, 2007                     Keehn & Associates, APC                     Page 5
4:25 pm                              Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 10409 | 9/26/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RRR RECEIPT, REVIEW AND RESPOND TO<br>MULTIPLE E-CORRESPONDENCE REGARDING<br>DECLARATIONS | 0.20 | 320.00 | 64.00 |
| 10410 | 9/26/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.40 | 320.00 | 128.00 |
| 10591 | 9/26/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>REVIEWED EMAILS FROM ATTORNEY DILLON AND<br>CLIENT; REVISED DILLON DECLARATION. | 0.80 | 225.00 | 180.00 |
| 10440 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.80 | 320.00 | 576.00 |
| 10441 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.30 | 320.00 | 96.00 |
| 10442 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.30 | 320.00 | 96.00 |
| 10599 | 9/27/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>FINALIZED DECLARATION OF TIMOTHY P. DILLON<br>REGARDING LOPEZ'S DILATORY/BAD FAITH<br>LITIGATION TACTICS; WORKED IN SUPPORT OF<br>FILING PETITIONING CREDITORS' RENEWED<br>REQUEST FOR MONETARY SANCTIONS AGAINST<br>LOPEZ. | 0.30 | 225.00 | 67.50 |
| 10740 | 9/28/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>RECEIVE, REVIEW AND RESPOND TO<br>E-CORRESPONDENCE FROM ATTORNEY HAYES<br>REGARDING SANCTIONS ISSUE. | 0.20 | 320.00 | 64.00 |
| 10868 | 10/1/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.20 | 320.00 | 64.00 |

ASA 0369

October 19, 2007                          Keehn & Associates, APC                          Page 6
4:25 pm                                   Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 10869 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WOF WORK ON FOLLOW-UP REGARDING<br>SANCTIONS MOTION | 0.20 | 320.00 | 64.00 |
| 10871 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.90 | 320.00 | 288.00 |
| 10872 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.00 | 320.00 | 320.00 |
| 10961 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.00 | 320.00 | 320.00 |
| 10911 | 10/3/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10912 | 10/3/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10935 | 10/4/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WOF WORK ON FOLLOW-UP REGARDING<br>PRESENTATION OF EVIDENTIARY MATERIALS IN<br>SUPPORT OF SANCTIONS MOTION | 0.90 | 320.00 | 288.00 |
| 10950 | 10/5/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |

|  | Daily Total (Billable) | 42.30 | 11448.50 ** |
|--|------------------------|-------|-------------|
|  | Grand Total (Billable) | 42.30 | 11448.50 ** |

ASA 0370

# TAB 119

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING

)
)
FRANCIS J. LOPEZ          ) CASE NO. 05-05926-PB
)
)
_____ )

1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER
IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, NOVEMBER 19, 2007

SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200

SAN DIEGO, CALIFORNIA, MONDAY, NOVEMBER 19, 2007, 2:00

--- O O O ---

*THE CLERK:*  IN THE MATTER OF FRANCIS J. LOPEZ.

**ASA 0372**

WE HAVE TWO MATTERS:  PETITIONING CREDITORS'
MOTION FOR AN ENFORCEMENT ORDER IMPOSING MONETARY
SANCTIONS AGAINST THE DEBTOR; AND, CONTINUED STATUS
CONFERENCE ON INVOLUNTARY PETITION AND ANSWER.

APPEARANCES, PLEASE.

MR. KEEHN:  GOOD AFTERNOON, YOUR HONOR.

SCOTT KEEHN APPEARING ON BEHALF OF THE
PETITIONING CREDITORS.

MR. HAYES:  GOOD AFTERNOON, YOUR HONOR.

JOHN HAYES, H-A-Y-E-S, FOR THE ALLEGED DEBTOR.

THE COURT:  OKAY.  LET'S TAKE THE STATUS FIRST.

MR. KEEHN:  OKAY.

THE COURT:  I TAKE IT THE DEPOSITION DID GO FORWARD,
FINALLY?

MR. KEEHN:  YES, IT DID.  AND IN FACT, SHORTLY BEFORE
LEAVING TO MAKE THIS APPEARANCE, A MESSENGER ARRIVED AND
DELIVERED THE TRANSCRIPT.

SO THE REVIEW PERIOD IS NOW IN PROCESS.

THE COURT:  AND THEN?

MR. KEEHN:  WELL, WE -- OUR PLAN OF PREPARING A
SUMMARY JUDGMENT MOTION HAS NOT CHANGED.

WE THINK THAT THAT'S THE WAY TO PROCEED; EVEN IF
WE DON'T GET THE GOLDEN RING, I THINK WE'LL ELIMINATE MANY
ISSUES THAT YOU WON'T NEED TO TAKE TIME TO TRY.

THE COURT:  OKAY.

MR. HAYES, ANYTHING ELSE ON STATUS?

MR. HAYES:  NO, YOUR HONOR.  I AGREE.

ASA 0373

THE COURT:  ALL RIGHT.

MR. KEEHN?

MR. KEEHN:  THANK YOU, YOUR HONOR.

AS A PRELIMINARY MATTER ON THE MOTION, I WOULD RENEW THE EVIDENTIARY OBJECTIONS TO THE LOPEZ --

THE COURT:  PARAGRAPHS SEVEN THROUGH TEN?

MR. KEEHN:  CORRECT.

AND I WOULD INQUIRE OF THE COURT IF YOU WOULD LIKE SEPARATE ARGUMENT ON THAT OR JUST RULE ON IT AT THE END?

THE COURT:  I'LL RULE ON IT AT THE END.

MR. KEEHN:  THANK YOU, YOUR HONOR.

WITH REGARD TO THIS MOTION -- AND I'M ASSUMING THAT YOUR HONOR HAS HAD AN OPPORTUNITY TO AND HAS, IN FACT, REVIEWED THE PAPERS AND IS FAMILIAR WITH THE FACTS AS THEY ARE SET FORTH THERE.

SO I WON'T BELABOR THE RECORD HERE THIS AFTERNOON WITH THE REPETITION OF THAT, OTHER THAN TO SAY IT'S A REMARKABLE RECORD.

AND REMARKABLE IN THE LACK OF NOT ONLY DILIGENCE BUT EVEN RESPECT, IN TERMS OF WHAT WAS GIVEN BY THIS ALLEGED DEBTOR IN RESPONSE TO HIS OBLIGATIONS.

I THINK, HOWEVER, AS BAD AS THAT RECORD IS, WHAT HAS LED US HERE TODAY, WHAT IS EQUALLY REMARKABLE THIS AFTERNOON IS FOUND WITHIN THE FOUR CORNERS OF THE OPPOSITION.  AND IT'S NOT REMARKABLE IN THE SENSE OF WHAT'S THERE; IT IS FAR MORE REMARKABLE IN THE SENSE OF WHAT ISN'T THERE.

ASA 0374

YOU DON'T, FOR EXAMPLE, SEE ANY ARGUMENT THAT THE
THEORIES UPON WHICH THE SANCTIONS ARE REQUESTED ARE FLAWED
IN ANY WAY.  YOU DO NOT SEE ANY CHALLENGE TO THE EVIDENCE
THAT'S BEEN PRESENTED.  YOU DO NOT SEE ANY CONTRAVENTION
OF THE LONG HISTORY OF DILATORY DISCOVERY TACTICS THAT ARE
LAID OUT AT LENGTH IN THE DILLON DECLARATION AND MY OWN
DECLARATION, IN SO FAR AS IT APPLIES TO THIS CASE.

THAT IS REMARKABLE BECAUSE IT PAINTS A VERY DARK
PICTURE CONCERNING MR. LOPEZ.  IT PAINTS THE PICTURE, AN
ACCURATE PICTURE, THAT THE GENTLEMEN IS SIMPLY A CLASSIC
SCOFFLAW WHO WILL NOT COMPLY WITH HIS OBLIGATIONS IN
DISCOVERY UNTIL IT IS SO PAINFUL NOT TO RESPOND THAT HE
ACTUALLY COMES FORWARD AND DOES SOMETHING.  AND THAT IS
EXEMPLIFIED IN THIS RECORD.

I HAVE SOME SYMPATHY FOR MR. HAYES BECAUSE I HAVE
EVERY CONFIDENCE THAT MR. HAYES IS DOING EVERYTHING HE CAN
TO PROD HIS CLIENT INTO COMPLIANCE, AND THAT THE DATES HE
HAS GIVEN ME HAVE BEEN IN GOOD FAITH FROM HIS PART; AND
HIS CLIENT SIMPLY REFUSES TO COME FORWARD WHEN IT'S
TIMELY.

HE, SORT OF, INDUCES THE PETITIONING CREDITORS
INTO SPENDING MONEY IN PREPARATION; KNOWING ALL THE WHILE
THAT HE'S NOT REALLY GOING TO COMPLY.  SO THOSE EXPENSES
WERE INCURRED.

AND THERE'S ANOTHER THING THAT YOU DON'T SEE IN
ANY OF THE OPPOSITION.  YOU DO NOT SEE EITHER THE
CONTENTION OR THE ARGUMENT THAT ANY OF THE FEES INCURRED

IN RESPONSE TO MR. LOPEZ'S FAILURE TO COMPLY WITH
DISCOVERY RESPONSES WERE UNREASONABLE, UNNECESSARY OR
UNWARRANTED.

WHAT YOU SEE IS THE CONTENTION THAT, "GEE, I
CAN'T AFFORD IT."  THAT'S NOT A DEFENSE.  SO ALL OF THE
EVIDENCE THAT HAS BEEN ADVANCED BY THE PETITIONING
CREDITORS IN RESPONSE TO THIS -- IN SUPPORT OF THIS MOTION
IS UN-REBUTTED.  AND THE ONLY EVIDENCE THAT MR. LOPEZ HAS
NOT HAD THE OPPORTUNITY TO REBUT IS THAT WHICH WAS
CONTAINED IN MY REPLY DECLARATION.  AND IF THERE'S
REBUTTAL TO THAT, I WOULD INVITE AN OFFER OF PROOF.

BUT I SIMPLY SAID, IN EFFECT, THAT THE COMPLAINT
ABOUT HAVING TO COME HERE WHEN HE HAS NO OTHER BUSINESS
IN CALIFORNIA IS SPECIOUS BECAUSE HE NEVER SAID HE WANTED
TO DO THAT.  WE CERTAINLY, UNDER THE LOCAL RULES, HAVE AN
OBLIGATION TO EXTEND EVERY COURTESY AND MAKE EVERY EFFORT
TO SET DATES FOR DEPOSITIONS THAT ARE CONVENIENT TO ALL
PARTIES.

SO IF THERE'S A CHALLENGE TO THAT, IF SOMEONE HAS
ASKED MY OFFICE AND WE'VE FAILED IN THAT DUTY, I WOULD LIKE
TO HEAR ABOUT IT, BECAUSE I'M NOT AWARE OF IT.

SO WHERE IT LEAVES US IS A POSITION WHERE IF THE
COURT DOES NOT FINALLY COME DOWN ON MR. LOPEZ -- AND HE
HAS HAD MANY AND MANY A CHANCE, DATING BACK FROM THE FIRST
DISCOVERY MOTION MADE IN CONNECTION WITH PHASE ONE TO
COMPLY WITHOUT EXPENSE -- IF THE COURT DOESN'T DO IT NOW,
THEN DISCOVERY HAS NO MEANING.

ASA 0376

IF PARTIES CAN SIMPLY REFUSE TO COOPERATE UNTIL
THE EXPENSE ASSOCIATED WITH THE DISCOVERY COMES TO
OUTWEIGH THE VALUE THAT IS GARNERED FROM THE INFORMATION,
WELL, THEN YOU'VE WRITTEN DISCOVERY RULES OUT OF THE
FEDERAL RULES OF CIVIL PROCEDURE OUT OF THE LOCAL RULES
OF BANKRUPTCY PROCEDURE.  AND THAT IS NOT WHAT THE RULES
THAT PROVIDE FOR SANCTIONS ARE INTENDED TO DO.

I THINK THIS COURT HAS BEEN MORE THAN LENIENT
WITH MR. LOPEZ.  I THINK IF THERE WERE A SCINTILLA, JUST
ONE SCINTILLA, OF REASONABLENESS IN HIS EFFORTS TO
COOPERATE, HE WOULD FIGURATIVELY WALK OUT OF THIS
COURTROOM TODAY UNSCATHED BY THE IMPOSITION OF ANY
SANCTIONS.

BUT I THINK THAT THE UTILITY OF THIS REMEDY HAS
BEEN HARMED BY HIS FAILURE.  AND AS I POINT OUT IN THE
CONCLUSION, THERE IS AN INCALCULABLE HARM -- MAY NOT EXIST
AT ALL, BUT IT MAY EXIST IN MONUMENTAL FORM -- THAT WE
CANNOT ASCERTAIN OR MEASURE AT THIS POINT; AND THAT IS,
THE HARM THAT EXISTS BECAUSE THE DAY-BY-DAY PASSAGE OF
TIME BETWEEN THE FILING OF THE PETITION IN JUNE OF '05 AND
THE ENTRY OF THE ORDER FOR RELIEF CREATES A UNIVERSE OF
GAP CLAIMS THAT WILL SPRING AHEAD IN PRIORITY TO THOSE OF
THE PETITIONING CREDITORS THAT FIRST SOUGHT THE REMEDY.

THAT PUTS THE KIND OF SANCTIONS MOTION THAT WE
HAVE HERE TODAY IN A DIFFERENT LEVEL OF THE STRATOSPHERE
THAN NORMAL DISCOVERY MOTIONS.  RARELY DOES THE MERE
FAILURE TO PROVIDE TIMELY DISCOVERY CREATE THE

ASA 0377

OPPORTUNITY TO HAVE EXACERBATING THE HARM OF THE PARTIES
AS IT DOES HERE IN THE CONTEXT OF AN INVOLUNTARY PETITION.

I THINK THAT WHEN WE WERE HERE LAST, THE COURT
MADE THE COMMENT THAT THE SWORD OF DAMOCLES THAT IT ONCE
SUSPENDED ABOVE MR. LOPEZ'S HEAD HAD BEEN CUT.  I THINK
THAT IT SHOULD FALL, AND FALL WITH A FORCE THAT WILL SERVE
AS A ROBUST DETERRENT FOR ANY SIMILAR CONDUCT NOT ONLY OF
MR. LOPEZ BUT OTHERS WHO BELIEVE THAT THE DISCOVERY
OBLIGATIONS EMBODIED IN THE FEDERAL RULES OF CIVIL
PROCEDURE ARE ADVISORY RATHER THAN OBLIGATORY.

WE HAVE REQUESTED SLIGHTLY OVER
$12,000 -- TWELVE THOUSAND, ONE THIRTY-THREE AND SOME
CHANGE.  AND WE WOULD REQUEST THAT THE COURT ENTER IT'S
ORDER AUTHORIZING SANCTIONS IN THAT AMOUNT, MAKING THEM
PAYABLE FORTHWITH AND COLLECTABLE VIA WRIT FROM ANY SOURCE
OTHER THAN PROPERTY OF THE ESTATE.

*THE COURT:*  MR. HAYES.

*MR. HAYES:*  THANK YOU, YOUR HONOR.

YOUR HONOR, I ALWAYS HAVE A HARD TIME WITH THESE
SORTS OF MOTIONS BECAUSE MY CLIENT HAS NOT DONE A GOOD JOB
OF RESPONDING TO DISCOVERY.

THERE HAVE BEEN LAST MINUTE PRODUCTION OF
DOCUMENTS.  I CAN'T -- HE KIND OF NAGGED AT ME ABOUT OUR
RESPONSE.  WHY AM I JUST -- HOW COME I'M NOT GOING AFTER
MR. KEEHN?  "LOOK AT ALL THE DOCUMENTS WE PRODUCED."
AND, "LOOK HOW MUCH THIS IS HURTING ME."

AND I CAN'T COME IN HERE AND SAY THAT WE'RE THE

REAL GOOD GUY AND WE DID EVERYTHING RIGHT.  AND MR. KEEHN
IS JUST BEING A MEAN GUY.

AND THE COURT MENTIONED AT THE LAST HEARING THAT
THE STRING HAS BEEN SEVERED; AND THEREFORE, I'VE ASSUMED,
BASICALLY, THAT SANCTIONS ARE GOING TO HAPPEN.

I MEAN, FROM MY OWN VIEWPOINT, THERE ARE FOUR OR
FIVE OTHER ACTIONS GOING ON HERE IN SAN DIEGO BETWEEN THESE
TWO PARTIES.  THERE'S BEEN A HUMONGOUS AMOUNT OF
PRODUCTION RESPONSES.  AND WHEN I SPEAK TO HIM, HE SAYS,
"GEEZ, NOW WHAT?"  AND I SAY, YOU KNOW, "YOU HAVE TO GET
THIS TO ME BY FRIDAY."  AND THEN THE FOLLOWING FRIDAY, I
CALL HIM AND HE SAYS, "OH, SORRY, SORRY, SORRY.  I'LL GET
IT TO YOU."

SO I CAN'T STAND UP HERE AND DO MY LITIGATION
ROUTINE AND ATTACK MR. KEEHN AND TRY TO WALK OUT OF HERE
WITH NOTHING.

HAVING SAID ALL OF THAT, THOUGH, I DO HAVE JUST
A COUPLE OF COMMENTS, UM, THAT I WOULD LIKE TO MAKE.

AS FAR AS THE DEPOSITION GOES,
MR. KEEHN -- MR. LOPEZ DID SHOW UP HERE IN SAN DIEGO ON
OCTOBER 23RD.  HE SHOWED UP WITHOUT ME.  HE HASN'T -- I
CAN'T PAY MY HOTEL BILLS WITH WHAT HE'S PAID ME IN THE LAST
COUPLE OF YEARS.  I OFFERED TO COME AND HE SAID, "NO, I'LL
JUST DO THE DEPOSITION MYSELF."  HE CALLED ME SEVERAL
TIMES DURING THE DAY COMPLAINING ABOUT THE QUESTIONS.
BUT AS I UNDERSTAND IT, HE DIDN'T REFUSE TO ANSWER
ANYTHING.

MR. KEEHN MAKES A BIG DEAL IN HIS MOTION ABOUT
HE AND I SPOKE IN JUNE; I WAS SUPPOSED TO GET BACK TO HIM
WITH A DATE; IT TOOK ME LONGER THAN EXPECTED.  HE TOLD ME
THAT HE WOULDN'T BE HERE THE ENTIRE MONTH OF AUGUST.  I
FORGOT THAT.  I DIDN'T TELL MR. LOPEZ, "LOOK, WE GOT TO
GET A DATE IN EARLY OR MIDDLE JULY BECAUSE MR. KEEHN IS
GOING OUT OF TOWN."  BUT ANYWAY, WE GAVE HIM THE DATE OF
JANUARY -- I MEAN, OF JULY 31ST.

MR. KEEHN CALLED ME OR SENT ME AN E-MAIL
IMMEDIATELY SAYING, "THAT WON'T WORK.  I TOLD YOU I'M
GOING OUT OF TOWN."  THAT'S MY MISTAKE.

HE THEN, UNILATERALLY, PICKED SEPTEMBER 11TH.
AND I CALLED MR. LOPEZ MAYBE A WEEK OR TEN DAYS BEFORE
THAT.  AND I SAID TO HIM, "YOU'RE SHOWING UP, RIGHT?"  HE
SAID, "OH, LET ME TRY TO GET TICKETS."

THEN HE CALLED ME BACK A FEW DAYS LATER AND SAID
THAT TICKETS WOULD COST $2,000; HE CAN'T MAKE IT.  SO I
TOLD HIM THAT, YOU KNOW, I'M NOT CALLING MR. KEEHN UNTIL
YOU GIVE ME AN ABSOLUTE DEFINITE DATE THAT YOU WILL COME
TO SAN DIEGO AND HAVE YOUR DEPOSITION TAKEN.  HE GAVE ME
THAT ON SEPTEMBER 10TH.  I GAVE IT TO MR. KEEHN
IMMEDIATELY AFTER THAT.

AS FAR AS THE DOCUMENTS GO AND THE RESPONSES TO
THE REQUEST FOR INTERROGATORIES, THE FIRST MOTION TO
COMPEL THE COURT MAY REMEMBER THAT I DIDN'T OPPOSE IT,
BECAUSE BY THE TIME IT HAD BEEN FILED, MY CLIENT HAD FOUND
MORE DOCUMENTS RESPONSIVE TO THE 165 CATEGORIES.  HE

ASA 0380

PRODUCED -- HE RESPONDED FURTHER TO INTERROGATORIES.

AFTER THAT, THERE WAS A SECOND MOTION TO COMPEL. AND THE RESULT OF THAT WAS NO ADDITIONAL DOCUMENTS, NO ADDITIONAL RESPONSES BECAUSE THE DEFENSE WAS, YOU'VE GOT EVERYTHING.  AND I AGREED IN COURT ON THAT HEARING THAT WE WOULD NOT OPPOSE AN ORDER THAT SAYS IF THERE'S ANYTHING ELSE OUT THERE THAT WE HAVEN'T TURNED OVER, HE DOESN'T GET THAT.  I MEAN, HE CAN'T USE THAT IN COURT.  THAT WAS THE RESULT OF THE SECOND MOTION TO COMPEL.

THE THIRD MOTION TO COMPEL WAS THIS FAILURE TO APPEAR.  HE DIDN'T SHOW UP ON SEPTEMBER 11TH; HE SHOWED UP ON OCTOBER 23RD.  AND AGAIN, GIVEN THE COURT'S COMMENTS, TO ME, IS A MATTER OF DEGREE.  HE CAN'T PAY ANYWAY.

MY OWN VIEW IS THIS IS AN -- I JUST HAVE NO DOUBT ABOUT IT -- THIS IS A SETUP FOR A MOTION TO STRIKE THE ANSWER.  THEY'RE TRYING TO GET AS MUCH SANCTIONS AS THEY CAN.  TRY TO GET MORE THAN HE CAN PAY.  THEN THE NEXT THING COMING WILL BE A MOTION TO STRIKE THE ANSWER.  AND THEN THEY WON'T HAVE TO GO THROUGH WITH THE MOTION FOR SUMMARY JUDGMENT.

BUT I WOULD ASK THE COURT TO EITHER MAKE IT A FRACTION OF WHAT MR. KEEHN HAS ASKED FOR, OR TO SET IT ASIDE, I MEAN, CARRY IT AGAIN.  MR. KEEHN IS GOING TO FILE A MOTION FOR SUMMARY JUDGMENT.  WE'LL FINALLY GET THIS OVER WITH.  THAT -- I MEAN, WE SHOULD BE ABLE TO HEAR THAT IN THE NEXT MONTH OR SO.  AND PERHAPS DELAY OF THE ULTIMATE

RESOLUTION OF THIS MOTION UNTIL THE MATTER IS FINALLY
RESOLVED.

    *THE COURT:* MR. KEEHN.

    *MR. KEEHN:* THANK YOU, YOUR HONOR.

    MY REMARKS ARE DIRECTED TO MR. LOPEZ AND NOT
MR. HAYES.  AND I WILL SAY THAT I WISH THAT I WASN'T HERE
ASKING FOR ANY SANCTIONS.

    I'M ENTITLED TO DISCOVERY UNDER THE RULES,
UNLESS OBJECTIONS -- GOOD FAITH OBJECTIONS -- ARE
PROPOUNDED OF WHICH IN THIS CASE WE HAVE HAD NONE.

    AS FAR AS THE DEPOSITION BEING TAKEN WITHOUT
MR. HAYES, THAT'S NO CHANGE FROM PHASE ONE PROCEDURE.
MR. STANLEY AND I TRAVELED TO FLORIDA AS THE COURT KNOWS
IN PHASE ONE.  AND WE CONDUCTED THE DEPOSITION.  AND IN
THAT CASE, AT THAT TIME, MR. LOPEZ CHOOSE NOT TO HAVE THE
DEPOSITION -- NOT TO BE REPRESENTED AT THE DEPOSITION.

    IN ADDITION TO THAT, I BELIEVE -- I KNOW THAT I
HAD ADMONISHED MR. LOPEZ, WHETHER IT WAS ON THE RECORD OR
NOT, I CAN'T RECALL SPECIFICALLY.  BUT I TOLD HIM THAT AT
ANY TIME HE WANTED TO CONFER WITH COUNSEL CONCERNING A
QUESTION THAT WE WOULD PAUSE AND ALLOW HIM TO DO THAT.  NO
SUCH REQUEST WAS EVER MADE.

    SO THIS NOTION THAT HE'S SOMEHOW BEEN PREJUDICED
BY THE WAY THE DEPOSITION WAS CONDUCTED IS JUST NONSENSE.
THE NOTION THAT HE'S SOMEHOW EXCUSED FROM HIS PRIOR
MISCONDUCT BECAUSE HE FINALLY CONDESCENDED TO SHOW UP ON
OCTOBER 22ND AFTER ALL OF HIS BROKEN PROMISES IS A

**ASA 0382**

COMPLETE ABSURDITY.  HE HAD A DUTY TO SHOW UP ON THE JULY
20 OR 27TH DATE THAT HIS COUNSEL PROVIDED TO ME.  AND THE
ONLY THING BACK IN JUNE 25 THAT WAS LEFT UP IN THE AIR WAS
WHETHER IT WOULD BE THE 20TH OR THE 27TH.

          ALL OF THIS IS ESTABLISHED IN MY ORIGINAL
DECLARATION.  AND HE SENT -- MR. HAYES SENDS ME AN E-MAIL
WHICH TELLS ME WHAT I AM ONE HUNDRED PERCENT CONFIDENT HE
BELIEVED TO BE TRUE AT THE TIME AND THAT HE WOULD LET ME
KNOW WHICH OF THOSE TWO DATES IT WOULD BE SHORTLY.

          AND I BELIEVE THAT HE BELIEVED THAT BECAUSE HE
FELT CERTAIN HIS CLIENT WOULD TELL HIM IN A FEW DAYS WHICH
OF THOSE TWO DAYS HE WAS GOING TO SHOW UP.  WELL, MR. LOPEZ
LET HIM DOWN.  MR. LOPEZ IS IN THE HABIT OF LETTING PEOPLE
DOWN WHEN IT COMES TO DISCOVERY, WHETHER IT'S HIS OWN
COUNSEL OR OPPOSING PARTY.

          SO THEN WE HAVE TO GO RIGHT DOWN THE ROAD AGAIN.
HERE WE GO AGAIN WITH MR. LOPEZ HAVING TO FORCE HIM TO DO
WHAT HE SHOULD BE DOING VOLUNTARILY; AND HE'S NEVER
OBJECTED TO ANY DATES OR SO FORTH.

          AND IF MR. HAYES SAYS HE FORGOT THAT PORTION OF
OUR DISCUSSION WHERE I INFORMED HIM OF MY ABSENCE, I TAKE
THAT AT FACE VALUE.  BUT THE FACT REMAINS, YOU CAN'T TELL
ME ON THE 27TH DAY OF JULY, WHEN I AM GOING TO BE ABSENT
FROM THE DISTRICT FOR ALL BUT THE LAST DAY OF AUGUST AND
EXPECT ME TO RE-JUGGLE MY CALENDAR TO FIT IN MR. LOPEZ
BECAUSE HE'S ONCE AGAIN CONDESCENDING TO DO HIS DUTY AT
THAT PARTICULAR DATE AND TIME; THAT'S COMPLETELY

ASA 0383

UNREASONABLE.

MR. LOPEZ WOULD BE THE FIRST TO COMPLAIN THAT THAT SHORT NOTICE FOR A DEPOSITION WAS PREJUDICIAL. IN FACT, MR. LOPEZ, IN EFFECT, IS COMPLAINING THAT THE FORTY-TWO DAYS HE HAD TO PREPARE FOR THE SEPTEMBER 11TH APPEARANCE WAS IN ADEQUATE. THIS IS JUST MORE OF THE SAME IN SO FAR AS MR. LOPEZ IS CONCERNED.

AS LONG AS IT'S PAINLESS FOR HIM, PAINLESS BECAUSE YOU'RE GOING TO DEFER TO THE END OF THE CASE; PAINLESS BECAUSE YOU'RE GOING TO GIVE HIM TIME TO PAY A DEBT THAT HE INCURRED THAT SHOULD NEVER HAVE BEEN INCURRED. WE SHOULD HAVE BEEN JUST LITIGATING THE FACTS AND LAW THE WAY THE RULES CONTEMPLATE RATHER THAN GOING ON THIS SIDESHOW TO GET HIM TO SHOW UP AND GIVE TESTIMONY.

IF YOU MAKE IT PAINLESS, WHICH IS WHAT MR. HAYES IS ESSENTIALLY ASKING YOU TO DO -- AND MR. LOPEZ RELIES ON THIS -- "GEE, IF I CAN JUST DEFER THE DAY OF JUDGMENT UNTIL AFTER I'VE ACTUALLY COMPLIED," NOT TIMELY COMPLIED, BUT COMPLIED -- "THEN I GET SOME MERCY."

AND I SUBMIT TO YOU THAT THERE ARE MANY OCCASIONS WHERE MERCY IS WARRANTED; THIS IS NOT ONE OF THEM. NONE OF THESE SANCTIONS WERE INEVITABLE. THEY WERE ALL BROUGHT UPON MR. LOPEZ'S HEAD BY HIS OWN MISCONDUCT. AND EVEN IF WE DID BRING A MOTION TO STRIKE, THAT'S A PRETTY RADICAL RESPONSE. AND IF I WAS A BETTING PERSON, I WOULDN'T BET ON IT, EVEN IF HE DOESN'T PAY. AT LEAST NOT IN THE NEAR TERM. AND THAT'S WHY WE HAVEN'T ASKED FOR IT,

FRANKLY.

WITH ALL OF THE DELAY THAT WE'VE ENCOUNTERED, WITH THE RISK OF EXPANDING THE UNIVERSE OF INVOLUNTARY GAP CLAIMS, WE COULD HAVE BROUGHT THAT REQUEST IN GOOD -- IN EQUALLY GOOD FAITH; WE DIDN'T.  BUT WE'RE ASKING FOR THE MONEY.  WE THINK WE'RE ENTITLED TO THE MONEY.  WE THINK THE COURT SHOULD AWARD IT; AWARD IT ALL; AND, MAKE IT PAYABLE FORTHWITH.

    THE COURT:  ALL RIGHT.

WELL, I'VE BEEN OVER IT MULTIPLE TIMES, AND I DO THINK IT'S TIME.

I HAVE TO SAY THAT I'M -- YOU KNOW, AS TROUBLED AS I'VE BEEN ALL ALONG IN THIS CASE AND MY DISTRESS HAS GROWN OVER THE INTERVENING PERIOD OF TIME, IN REVIEWING MR. LOPEZ'S OPPOSITION TO THIS PARTICULAR MOTION AND PARTICULARLY HIS EXPLANATION OF THE BUSINESS LEADING UP TO SEPTEMBER 11TH, REALLY, REALLY TROUBLES ME, FRANKLY.

AND IT TROUBLES ME IN ANOTHER PARTICULAR. MR. HAYES HAS SURMISED THAT THESE MOTIONS ARE REALLY AN EFFORT TO PIN MR. LOPEZ INTO A POSITION WHERE HE GETS SOME KIND OF TERMINATING SANCTION, IF YOU WILL, AGAINST HIM THAT ALLOWS A DETERMINATION, IN FACT, HE'S A DEBTOR; NOT AN ALLEGED DEBTOR; WHETHER IT'S BY STRIKING HIS RESPONSE IN  OPPOSITION TO THE PETITION -- THE INVOLUNTARY PETITION -- OR IN SOME OTHER FORM.  AND CERTAINLY THAT'S A THEORY WHICH WOULD NOT BE GROUNDLESS, ASSUMING THAT THAT'S MR. KEEHN'S THEORY.  BUT THAT'S WHAT PUZZLES ME

ALL THE MORE.

      IF THERE'S ANY THOUGHT THAT THAT'S A POSSIBLE THEORY, THEN WHY WOULDN'T YOU STEP UP AND SAY RIGHT OUT OF THE SHOOT, "SEPTEMBER 11TH ISN'T GOING TO WORK FOR ME." OR, "I NEED A DATE -- WE NEED TO JUGGLE A DATE.  I'VE GOT THESE TWO OTHER BALLS UP IN THE AIR WITH MY GEORGIA AND MICHIGAN TRAVEL AND STUFF."  AND, "I NEED TO NAIL THIS DOWN AND HAVE SOME COMMUNICATION THAT'S GOING TO THOSE ENDS."

      AND PARTICULARLY WITH WHAT HAD PRECEDED IT.  I JUST DON'T FIND ANY KIND -- ANY SEMBLANCE OF GOOD FAITH ON MR. LOPEZ'S PART IN RESPONDING TO THIS.  I'M NOT CLEAR IN MY MIND WHETHER IT'S A MATTER OF HIS JUST NOT RECOGNIZING THE SIGNIFICANCE OF THIS MATTER TO HIM; NOT SETTING IT AS SOME KIND OF PRIORITY; HAVING SOME SENSE THAT IF HE'S NOT SERVED WITH A SUBPOENA HE'S A FREE AGENT.  I HONESTLY DON'T KNOW WHAT IT IS.

      BUT AT THIS POINT IN TIME, I THINK IT'S APPROPRIATE TO AWARD MONETARY SANCTIONS AGAINST MR. LOPEZ.  THE ORIGINAL AMOUNT SOUGHT BEFORE THIS MOTION WAS $4,242.  IN ADDITION, FUNDS ARE SOUGHT TO COMPENSATE FOR THE TIME EXPENDED IN PREPARING FOR THE DEPOSITION THOUGHT TO OCCUR ON SEPTEMBER 11TH IN THE AMOUNT OF $2,164.50; THERE WAS THE $224 FOR COMMUNICATING WITH MR. HAYES ABOUT THE NON-APPEARANCE OF MR. LOPEZ IN THERE; AND, THERE'S A SUM FOR PREPARING THE RENEWED MOTION, WHICH, FRANKLY, I THINK IS TOO HIGH.  SO I'M ALLOWING

ASA 0386

$1,500 FOR PREPARING THE MOTION.

SO THAT'S AN AWARD TOTALING THE COMPONENTS OF $4,242; $2,164.50; $1,500 FOR PREPARING THE MOTION; AND, $224 FOR THE COMMUNICATION.  AND WHEN YOU ADD THOSE UP THAT'S THE TOTAL MONETARY SANCTION I'M AWARDING AT THIS TIME.  AND I'M STILL RESERVING ON THE DIFFERENCE.

BUT AT THIS POINT IN TIME, THOSE SUMS WILL BE REQUIRED TO BE PAID WITHIN THIRTY DAYS TO MR. KEEHN'S FIRM.  AND YOUR CLIENT SHOULD BE MADE VERY AWARE, MR. HAYES, THAT IF HE FAILS TO PAY THAT TOTAL SUM WITHIN THIRTY DAYS OF TODAY'S DATE -- AND THAT'S TODAY'S DATE, NOT THE DATE OF ENTRY OF THE ORDER -- WITHIN THIRTY DAYS OF TODAY'S DATE, I WILL CONSIDER A TERMINATING SANCTION MOTION TO STRIKE HIS OPPOSITION TO THE PETITION.  AND WE'LL TAKE IT FROM THERE.

*MR. KEEHN:*  YOUR HONOR, COULD I ASK THE COURT TO GO OVER THE AWARD ONE MORE TIME?

*THE COURT:*  SURE.  $4,242 FROM YOUR ORIGINAL APPLICATION; $2,164.50 FOR THE 7.7 HOURS PREPARING FOR THE 9-11 DEPOSITION; $1,500 FOR PREPARING PRESENT MOTION; AND, THE $224 FOR THE TIME SPENT ON SEPTEMBER 10TH COMMUNICATING WITH MR. HAYES.  THOSE ARE THE COMPONENTS.

*MR. KEEHN:*  THANK YOU, YOUR HONOR.

*THE COURT:*  ALL RIGHT.

NEW STATUS CONFERENCE DATE?

*MR. KEEHN:*  WELL, YOUR HONOR, IT WOULD BE GOOD TO SET IT FOR A DATE THAT'S MORE THAN THIRTY DAYS BEYOND TODAY'S

ASA 0387

DATE, SO WE'LL KNOW WHETHER WE'VE PAID OR NOT.

*THE COURT:* RIGHT. I'M ASSUMING -- DO WE WANT TO SET IT FOR A DATE WHEN THERE WOULD ALSO POSSIBLY BE A SUMMARY JUDGMENT HEARING DATE?

OR SHOULD WE TAKE THIS AS STEP ONE, AND THE SUMMARY JUDGMENT AS STEP TWO BECAUSE IT MAY BE OBVIATED?

*MR. KEEHN:* I THINK THE LATTER.

*THE COURT:* MR. HAYES?

*MR. HAYES:* I THINK MR. KEEHN OUGHT TO FILE HIS MOTION FOR SUMMARY JUDGMENT. I MEAN, DISCOVERY IS OVER NOW -- OR, SET A TRIAL DATE.

I DON'T SEE WHY WE HAVE TO WAIT THIRTY DAYS TO SEE WHAT HAPPENS.

*THE COURT:* WELL, SO WE CAN FIND OUT WHETHER HE PAYS IT OR NOT. YOU THINK HE'S GOING TO COME IN HERE AND APPEAR ON A TRIAL WHEN HE DOESN'T PAY THE SANCTIONS?

I'M NOT GOING TO PERMIT THAT. HE'S EXHAUSTED MY GOOD GRACES, MR. HAYES.

*MR. HAYES:* ALL RIGHT.

*THE COURT:* SO, JILL, I GUESS WE OUGHT TO GO THIRTY DAYS. BUT I THINK IT LOOKS LIKE IT'S GOING TO HAVE TO BE THE FIRST WEEK OF JANUARY.

*THE CLERK:* I'VE RESERVED SOME TIME ON THE 18TH. DO YOU WANT TO DO THAT?

*THE COURT:* OKAY. WE CAN DO THAT.

*MR. KEEHN:* WELL, HE HAS UNTIL THE 19TH TO PAY.

*THE CLERK:* HOW MUCH TIME WILL YOU NEED?

*THE COURT:* IT'S NOT GOING TO TAKE LONG.

*THE CLERK:* OKAY.

*THE COURT:* MR. HAYES MAY WANT TO APPEAR TELEPHONICALLY.

*MR. HAYES:* I WOULD, YOUR HONOR.

*THE CLERK:* JANUARY 7TH AT 9:30 A.M.

*THE COURT:* OKAY.

AND YOU'LL NEED TO CALL MS. WILKINSON AND BECAUSE OF THE HOLIDAYS, I'D SUGGEST YOU CALL BEFORE CHRISTMAS, A COUPLE WEEKS IN ADVANCE, TO SET IT UP WITH HER.

*MR. HAYES:* GREAT.

*THE COURT:* NORMALLY SHE ASKS FOR SEVEN DAYS TO DO THAT. BUT I'M NOT SURE WHERE SHE'S GOING TO BE.

*THE CLERK:* I WILL PUT A COURT NOTE ON HER V-CAL.

*THE COURT:* ALL RIGHT.

*MR. HAYES:* GREAT. THANK YOU, YOUR HONOR.

*MR. KEEHN:* THANK YOU, YOUR HONOR.

*THE COURT:* WE WILL BE IN RECESS.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

       I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY CERTIFY:

       THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE FOREGOING CAUSE ON THE 19TH DAY OF NOVEMBER, 2007; THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.

       DATED THIS _____ DAY OF _____, 2007.


_____

    LYNETTE ALVES, CSR #12534, RPR #61256

ASA 0390

# TAB 121

Name, Address, Telephone No. & I.D. No.
L. Scott Keehn (SBN 61691)
Leslie F. Keehn (SBN 199153)
**KEEHN & ASSOCIATES, APC**
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200
Attorneys for Petitioning Creditors

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

FRANCIS J. LOPEZ,

BANKRUPTCY NO. 05-05926-PBINV

Tax I.D.(EIN)#:_____/S.S.#:XXX-XX-_____ Debtor.

### NOTICE OF HEARING AND MOTION

TO:     Alleged Debtor, Francis J. Lopez, Other Parties in Interest, and their Attorneys of Record

        **YOU ARE HEREBY NOTIFIED** that on  January 28, 2008                                    , at  10:30 a.m.,
 in Department No. _4___, Room_328___  the Jacob Weinberger United States Courthouse, located at 325 West "F" Street,
San Diego, California 92101-6991, there will be a hearing regarding the motion of   the Petitioning Creditors            ,
for an Order Imposing Terminating Sanctions Against the Debtor.

        Any opposition or other response to this motion must be served upon the undersigned and the original and one copy
of such papers with proof of service must be filed with the Clerk of the U.S. Bankruptcy Court at 325 West "F" Street, San
Diego, California 92101-6991, NOT LATER THAN FOURTEEN (14)[1] DAYS FROM THE DATE OF SERVICE.

DATED: December 27, 2007

                                                    //s// L. Scott Keehn
                                                    [Attorney for] Moving Party

[1]If you were served electronically or by mail, you have three (3) additional days to take the above-stated action.

ASA 0391

## CERTIFICATE OF SERVICE

I, the undersigned whose address appears below, certify:

That I am, and at all times hereinafter mentioned was, more than 18 years of age;

That on _27th_ day of _December, 2007_____, I served a true copy of the within NOTICE OF MOTION AND HEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ORDER IMPOSING TERMINATING SANCTIONS AGAINST THE DEBTOR; DECLARATION OF L. SCOTT KEEHN IN SUPPORT OF MOTION FOR AN ORDER IMPOSING TERMINATING SANCTIONS AGAINST THE DEBTOR by [describe here mode of service]

FIRST CLASS MAIL

on the following persons [set forth name and address of each person served] and/or as checked below:

[ ✔ ]    Attorney for Debtor (if required):
M. Jonathan Hayes
Law Office of M. Jonathan Hayes
21800 Oxnard St., Suite 840
Woodland Hills, CA 91367

| [ ✔ ] | For Chpt. 7, 11, & 12 cases: | [ ] | For ODD numbered Chapter 13 cases: | [ ] | For EVEN numbered Chapter 13 cases: |
|---|---|---|---|---|---|
| | UNITED STATES TRUSTEE<br>Department of Justice<br>402 West Broadway, Suite 600<br>San Diego, CA 92101 | | THOMAS H. BILLINGSLEA, JR., TRUSTEE<br>530 "B" Street, Suite. 1500<br>San Diego, CA 92101 | | DAVID L. SKELTON, TRUSTEE<br>525 "B" Street, Suite 1430<br>San Diego, CA 92101-4507 |

I certify under penalty of perjury that the foregoing is true and correct.

Executed on _12/27/07_____
(Date)

_//s// Cynthia K. Lay_____
(Typed Name and Signature)

_402 West Broadway, Suite 1210_____
(Address)

_San Diego, CA 92101_____
(City, State, ZIP Code)

**ASA 0392**

# TAB 121-1

1  L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
A Professional Corporation
3  402 West Broadway, Suite 1210
San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8                        **UNITED STATES BANKRUPTCY COURT**

9              **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                                ) Case No.  05-05926-PBINV
                                          )
12        FRANCIS J. LOPEZ,               ) **MEMORANDUM OF POINTS AND**
                                          ) **AUTHORITIES IN SUPPORT OF MOTION**
13              Alleged Debtor.           ) **FOR AN ORDER IMPOSING**
                                          ) **TERMINATING SANCTIONS AGAINST**
14                                        ) **THE DEBTOR**
                                          )
15                                        ) **[BIFURCATED PHASE II]**
                                          )
16                                        ) Date:   January 28, 2008
                                          ) Time:   10:30 a.m.
17                                        ) Judge: The Honorable Peter W. Bowie
                                          ) Ctrm:  4
18                                        )
                                          )
19  _____ )

20        Pursuant to Rule 37(b) of the Federal Rules of Civil Procedure ("FRCP"), made applicable

21  to these proceedings by Rule 9014(c) of the Federal Rules of Bankruptcy Procedure ("FRBP"),

22  Petitioning Creditors respectfully submit their Motion for an Order from this Court imposing

23  terminating sanctions against Lopez by striking his answer and entering an Order for Relief

24  forthwith.

25  / / /

26  / / /

27  / / /

28  / / /

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0393**

112614/LFK/5311.01

# I. INTRODUCTION

This is the third sanctions motion that the misconduct of the alleged Debtor — Francis J. Lopez ("Lopez") — has forced the Petitioning Creditors to bring in order to redress his continuing pattern of misconduct.[1]  The first such motion resulted in an Order from this Court granting Petitioning Creditors' request for evidentiary sanctions, and deferring an award of monetary sanctions.[2]  Unfortunately, deferring the monetary sanctions award did not motivate Lopez to perform his duties as a litigant, and instead, Lopez continued his unreasonable delays and game playing.  Based on that, on November 19, 2007, the Court granted Petitioning Creditors' second sanctions motion, and ordered Lopez to pay Petitioning Creditors $8,130.50 in monetary sanctions on or before December 19, 2007 (30 days from the date of the Court's order).[3]  Lopez has failed to pay any portion of those sanctions.[4]

At this point — *two and a half years after this involuntary petition was filed* — the record developed to date gives the Petitioning Creditors no reason to believe that Lopez will comply with any additional discovery order imposing monetary sanctions.  Thus, a terminating sanction appears to be the only meaningful response to Lopez's consistent course of misconduct that will serve to process this case forward and to halt the threat of further prejudice to all creditors that is engendered by further delay.

/ / /

/ / /

/ / /

/ / /

---

[1]     See, Docket Item 105 (Petitioning Creditors' "Motion for an Enforcement Order: (1) Imposing Monetary Sanctions Against the Debtor; and (2) Imposing Evidentiary Sanctions Against the Debtor"); and Docket Item 114 (Petitioning Creditors' "Motion for an Enforcement Order Imposing Monetary Sanctions Against the Debtor").

[2]     See Docket Item 108.

[3]     See Docket Item 117.

[4]     See the "Declaration of L. Scott Keehn, etc." filed concurrently herewith ("LSK Decl.") at ¶ 4.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0394**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

# II. DISCUSSION

**A.    Terminating Sanctions are Warranted in Light of Lopez's Course of Misconduct and Refusal to Comply with this Court's Order Imposing Monetary Sanctions.**

"Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules."[5] Here, FRCP 37 is made applicable to these proceedings by FRBP 9014(c), and grants this Court broad discretion to tailor appropriate sanctions for Lopez's unjustified refusal to comply with this Court's 11/19/2007 discovery order.[6]

Where, as here, an alleged debtor has engaged in a course of serious discovery misconduct, which includes failure to comply with court orders, the court may issue a terminating sanction consisting of an order striking the debtor's answer and entering an Order for Relief.[7] Lopez has repeatedly demonstrated that he is unmoved by either the threat of monetary sanctions, or an actual order from this Court imposing the threatened monetary sanctions.[8] He has once again *thumbed his nose* at Petitioning Creditors and this Court's authority by simply refusing to pay the monetary sanctions which this Court ordered him to pay. Based on that blatant display of defiance, it appears highly unlikely that Lopez would comply with another order imposing monetary sanctions. Fortunately, Petitioning Creditors do have a viable remedy in the form of terminating sanctions.[9] Considering the totality of circumstances as they are memorialized by the

---

[5]    *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

[6]    *Matter of Visioneering Const.*, 661 F.2d 119, 123 (9th Cir. 1981) ("The bankruptcy court, faced with an obstreperous alleged bankrupt, unequivocally had the power to apply Fed.R.Civ.P. 37 sanctions for obstruction of discovery"); *In re Williams*, 215 B.R. 289, 299 (Dist. Ct. D.R.I. 1997) ("the choice and severity of the sanction imposed is a matter reserved to the sanctioning court's discretion").

[7]    *In re Rice*, 14 B.R. 843, 846 (9th Cir.BAP 1981); *Matter of Visioneering Const.*, supra, 661 F.2d at 123 (court's order striking alleged debtor's answer was an appropriate sanction since the debtor had "deliberately and obstinately refused to cooperate with discovery requests and court orders"); *De Falco v. Oak Lawn Public Library*, 25 Fed.Appx. 455, 457 (7th Cir. 2001) (terminating sanctions appropriate where the plaintiff "flouted the district court's order and exemplified the delay and avoidance to which the court referred").

[8]    See, Docket Items 105 & 108.

[9]    See, FRCP 37(b)(2)(A).

**ASA 0395**

1   record of Lopez's pervasive misconduct in this case, such terminating sanctions should be

2   imposed forthwith.[10]

3   **B.     Immediate Entry of the Order for Relief is Further Warranted in Order to Eliminate the Prejudice of Potentially Growing Priority Gap Claims.**

4

5          Delay has been the pervasive and foreseeable consequence of Lopez's continuing refusal

6   to either participate in good faith or obey the orders of this Court.  Whether by design or

7   happenstance, that delay exposes all creditors to the unnecessary risk of dilution of the value of

8   their claims — indeed the Bankruptcy process in its entirety — by the unending and

9   uncontrollable expansion of priority gap claims.  Lopez remains at liberty to create an unlimited

10  variety of "Gap Claims"[11] which will slip ahead of all of the pre-petition unsecured creditors in

11  priority.  The plight of those creditors is exacerbated by the automatic stay which prevents them

12  from taking any enforcement action to preserve the economic utility of their claims.[12]  The risks of

13  prejudice are further heightened by the initial delay that was occasioned by the bifurcation of the

14  case — at Lopez's request — so that the Involuntary Gap Period was necessarily rendered longer

15  than the norm.

16         What mischief has already occurred behind the shield of delay, and what further roguery

17  may yet occur before the Order for Relief is ultimately entered, is impossible to ascertain.  But,

18  what can be seen with absolute clarity is that Lopez will not willingly discharge the duties of a

19  litigant to participate in good faith in the process, nor will he obey the lawful orders of this Court.

20  He has used his *passive/aggressive* tactic of delay to the prejudice of the creditors, and that

21  prejudice must be truncated so that the risks of an expanding pool of priority claims is held in

22  check.

23         Lopez's past and present disobedience is particularly troubling because it demonstrates

24  that — beyond his willingness to disobey court mandates — he is impervious to the threat of

25

26      [10]     *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d
1062, 1068 (2nd Cir. 1979) ("sanctions must be weighed in light of the full record in the case").

27      [11]     See 11 U.S.C. §§ 502(f) and 507(a)(3).

28      [12]     See 11 U.S.C. § 362(a).

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0396**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1  monetary sanctions.  He just refuses to pay them.  So, what the fulness of time has demonstrated is

2  that neither the threat, nor the actual imposition of monetary sanctions, has any real impact on

3  Lopez.  Given this demonstration that he will neither play by the rules, nor obey the Court's

4  mandates, it is appropriate to truncate his continuing ability to dilute the value of the process to his

5  pre-petition creditors and demean the integrity of the Court by imposing the one sanction that can

6  not be ignored — the terminating sanction that puts a trustee in control and caps the universe of

7  priority gap claims.

### III.  CONCLUSION

9  Patience is a virtue.  But, like most virtues, it is vulnerable to exploitation, which converts

10  its salutary objectives into a deplorable reality.  This Court's patience has been beyond exemplary,

11  while Lopez's exploitation of it has been unending, despicable, and without excuse.  Because

12  "*sanctions must be weighed in light of the full record in the case*",[13] here only a terminating

13  sanction can set the scales aright.  In the course of their three sanctions motions, the Petitioning

14  Creditors have now thoroughly chronicled Lopez's extensive history of ignoring the mandates of

15  both the discovery statutes and this Court's orders.  His conduct is both inexcusable and

16  intolerable.  Based on that, and on all of the foregoing, Petitioning Creditors respectfully request

17  that this Court issue an Order striking Lopez's answer and entering an Order for Relief forthwith.

19  Dated: December 27, 2007          **KEEHN & ASSOCIATES**
                                      A Professional Corporation

21                          By:    //s// L. Scott Keehn
                                   L. Scott Keehn
22                                 Attorneys for **Petitioning Creditors**

[13] *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, supra, 602 F.2d at 1068.

**ASA 0397**

# TAB 121-2

L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
**KEEHN & ASSOCIATES**
A Professional Corporation
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

Attorneys for **Petitioning Creditors**

# UNITED STATES BANKRUPTCY COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | ) Case No.  05-05926-PBINV |
| | ) |
| FRANCIS J. LOPEZ, | ) **DECLARATION OF L. SCOTT KEEHN IN** |
| | ) **SUPPORT OF MOTION FOR AN** |
| Alleged Debtor. | ) **ORDER IMPOSING TERMINATING** |
| | ) **SANCTIONS AGAINST THE DEBTOR** |
| | ) |
| | ) **[BIFURCATED PHASE II]** |
| | ) |
| | ) Date:   January 28, 2008 |
| | ) Time:   10:30 a.m. |
| | ) Judge: The Honorable Peter W. Bowie |
| | ) Ctrm:   4 |
| | ) |
| | ) |
| | ) |
| _____ | ) |

1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

before the United States District Court for the Southern District of California.  I am a shareholder

of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

personal knowledge of the factual matters stated herein.

2.      The "Declaration of L. Scott Keehn in Support of Petitioning Creditors' Motion for

an Enforcement Order: (1) Imposing Monetary Sanctions Against the Debtor; and (2) Imposing

Evidentiary Sanctions Against the Debtor" was filed herein by my office on May 24, 2007, and is

**ASA 0398**

1    incorporated herein by this reference.[1]  In that Declaration, I summarized the delay and *bad faith*

2    dilatory discovery tactics employed by Lopez during the 6-month period of December 3, 2006

3    through May 23, 2007.

4         3.    The "Declaration of L. Scott Keehn Re: Motion for an Enforcement

5    Order imposing Monetary Sanctions Against the Debtor" was filed herein by my office on

6    October 19, 2007, and is incorporated herein by this reference.[2]  In that Declaration I:

7    (a) summarized the delay and *bad faith* discovery tactics employed by Lopez in connection with

8    his deposition during phase two of these bifurcated proceedings; and (b) referred the Court to the

9    Declaration of Timothy P. Dillon filed herein on September 27, 2007,[3] describing Lopez's similar

10   pattern of *bad faith* and tactics of delay in other cases involving Petitioning Creditor Alan Stanly.

11        4.    I was present at the hearing in this matter on November 19, 2007 when the Court

12   granted Petitioning Creditors' second sanctions motion, and ordered Lopez to pay Petitioning

13   Creditors $8,130.50 in monetary sanctions on or before December 19, 2007 (30 days from the date

14   of the Court's order).[4]  As of the date of this Declaration, Lopez has failed to pay any portion of

15   those sanctions.

16        5.    Petitioning Creditors have no reason to believe that Lopez will comply with any

17   additional discovery order imposing monetary sanctions.  Thus, a terminating sanction appears to

18   be the only meaningful response to Lopez's consistent course of misconduct.

19        I declare under penalty of perjury under the laws of the United States that the foregoing is

20   true and correct, and that this Declaration was executed this 27th day of December, 2007, at San

21   Diego, California.

22                              //s// L. Scott Keehn
                               **L. Scott Keehn**

23

24

25   [1]    See Exhibit A, Docket Item 105 (attachment #2).

26   [2]    See Exhibit B, Docket Item 114 (attachment #2).

27   [3]    See Exhibit C, Docket Item 111 (attachment #1).

28   [4]    See Docket Item 117.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0399**

# EXHIBIT A

ASA 0400

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8           UNITED STATES BANKRUPTCY COURT

9        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11 In Re:                      )  Case No.  05-05926-PBINV
                               )
12    FRANCIS J. LOPEZ,        )  Involuntary Chapter 7
                               )
13          Alleged Debtor.    )  **DECLARATION OF L. SCOTT KEEHN IN**
                               )  **SUPPORT OF PETITIONING**
14                             )  **CREDITORS' MOTION FOR AN**
                               )  **ENFORCEMENT ORDER: (1) IMPOSING**
15                             )  **MONETARY SANCTIONS AGAINST THE**
                               )  **DEBTOR; AND (2) IMPOSING**
16                             )  **EVIDENTIARY SANCTIONS AGAINST**
                               )  **THE DEBTOR**
17                             )
                               )  **[BIFURCATED PHASE II]**
18                             )
                               )  Date:  June 25, 2007
19                             )  Time:  10:30 a.m.
                               )  Judge: The Honorable Peter W. Bowie
20                             )  Ctrm:  4
                               )
21 ————————————————————————————

22        I, L. Scott Keehn, declare:

23        1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

24  before the United States District Court for the Southern District of California.  I am a shareholder

25  of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

26  personal knowledge of the factual matters stated herein.

27        2.      On November 03, 2006, my office served Lopez with Petitioning Creditors' First

28  Set of Written Discovery for Phase II (the "Phase II Written Discovery"), consisting of: (1) First

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1   Phase II Requests for Admission Propounded by Petitioning Creditors [10 Requests]; (2) First

2   Phase II Request for Production of Documents by Petitioning Creditors [162 categories of

3   documents]; and (3) First Phase II Interrogatories Propounded by Petitioning Creditors [35

4   Interrogatories]. True and correct copies of the Phase II Written Discovery are attached hereto,

5   marked Exhibits A, B and C respectively. Lopez's responses were due on December 4, 2006.

6       3.      On December 03, 2006, Lopez served his "Response to Requests for Admission

7   Propounded to Alleged Debtor Francis J. Lopez (Phase II)." **Lopez's responses were deficient,**

8   **and Lopez failed to verify the responses.**

9       4.      On December 05, 2006, Lopez served his "Response to Interrogatories Propounded

10  to Alleged Debtor Francis J. Lopez (Phase II). **Lopez's responses were deficient, and Lopez**

11  **failed to verify the responses.** At the same time, Lopez served his "Response to Requests for

12  Production of Documents." **Lopez's responses were deficient.**

13      5.      On December 13, 2006, I sent a *meet and confer* letter to Lopez's attorney, M.

14  Jonathan Hayes, notifying him of the deficiencies in Lopez's responses to the Phase II Written

15  Discovery.

16      6.      On December 15, 2006, attorney Hayes and I participated in a telephonic *meet and*

17  *confer* conference wherein the parties agreed that Lopez would provide supplemental responses to

18  the Phase II Written Discovery on or before January 12, 2007.

19      7.      On January 12, 2007 – the Deadline for Lopez to provide the promised

20  supplemental responses to the Phase II Written Discovery – **Lopez failed, without explanation,**

21  **to provide supplemental responses to the Phase II Written Discovery.**

22      8.      On January 19, 2007, I sent a follow-up *meet and confer* letter to attorney Hayes

23  requesting an explanation regarding Lopez's failure to provide the promised supplemental

24  responses to discovery, and notifying Lopez of the imminent likelihood of a motion to compel his

25  responses to the Phase II Written Discovery. **Lopez failed, without explanation, to respond to**

26  **that *meet and confer* letter.**

27      9.      On January 29, 2007, Petitioning Creditors filed a Motion to Compel responses to

28  the Phase II Written Discovery. **Lopez failed, without explanation, to respond or file an**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

110315/LFK/5311.01                **ASA 0402**

1   **Opposition to that Motion.**

2        10.    On March 10, 2007 – a Saturday, just two days prior to the scheduled hearing on

3   Petitioning Creditors' Motion to Compel Lopez's responses to the Phase II Written Discovery –

4   attorney Hayes emailed me approximately 155 pages of documents, purportedly in response to the

5   "First Phase II Request for Production of Documents by Petitioning Creditors." **This last-minute**

6   **"*document dump*" was improper because the documents: (1) were not responsive to the**

7   **Requests, (2) were not organized by category of Request, and (3) consisted of at least 103**

8   **pages of pleadings filed in the San Diego Superior Court which are already in the Petitioning**

9   **Creditors' possession. Lopez failed, without explanation, to explain the deficiencies and/or**

10   **his failure to provide the agreed-upon supplemental responses.**

11        11.    On March 12, 2007, I appeared at the hearing during which this Court granted

12   Petitioning Creditors' motion to compel Lopez to provide supplemental responses to the Phase II

13   Written Discovery.[1]  The Court ordered Lopez to provide the supplemental responses on or before

14   April 11, 2007. The Court — in open session — indicated that it was deferring its ruling on the

15   request for monetary sanctions of $4,242 because: (a) it wanted the risk of those sanctions to serve

16   as a *Sword of Damocles* to encourage compliance with the Court's order; and (b) Lopez would

17   have to "work his way out of those sanctions."

18        12.    On April 10, 2007, Lopez mailed my office a set of supplemental responses to the

19   Phase II Written Discovery which were patently deficient in that, i.e., they failed to fully respond

20   to the Interrogatories asked, failed to provide facts in support of asserted denials to the Requests

21   for Admissions, and failed to produce responsive documents. True and correct copies of Lopez's

22   supplemental responses are attached hereto marked Exhibits D, E and F.

23        13.    On May 11, 2007, the parties, through their counsel, attended a status conference

24   wherein this Court ordered Lopez to file proper supplemental responses to the Phase II Written

25   Discovery on or before May 21, 2007. Later that afternoon, I met with attorney Hayes at my office

26   regarding the deficiencies in Lopez's supplemental responses to the Phase II Written Discovery.

27

28          [1]      See, Docket Item #93.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

110315/LFK/331101    ASA 0403

1    Attorney Hayes requested that I set forth the deficiencies in a *meet and confer* letter to him.

2        14.    As requested, on May 14, 2007, I sent a *meet and confer* letter via email and first

3    class United States mail to attorney Hayes which enumerated each and every deficiency in Lopez's

4    supplemental responses to the Phase II Written Discovery. A true and correct copy of that letter is

5    attached hereto, marked Exhibit G.

6        15.    After the close of business, at 7:10 P.M., on May 21, 2007 – the deadline for Lopez

7    to supplement his supplemental responses to the Phase II Written Discovery – attorney Hayes

8    emailed me a request for two additional days for Lopez to supplement his responses to the Phase II

9    Written Discovery. The next morning, on May 22, 2007, I responded to attorney Hayes' email by

10   indicating that I would grant the requested two-day extension of time, in exchange for a stipulation

11   providing Petitioning Creditors with an equivalent two-business-day extension of time – from May

12   25, 2007 to May 30, 2007 – to file any necessary discovery motion. A true and correct copy of that

13   email correspondence is attached hereto, marked Exhibit H.

14       16.    On May 23, 2007, attorney Hayes sent me an email wherein he withdrew Lopez's

15   request for an extension of time, and notified me that Lopez would not be providing any additional

16   responses to the Phase II Written Discovery. A true and correct copy of that email correspondence

17   is attached hereto, marked Exhibit I.

18       I declare under penalty of perjury under the laws of the United States that the foregoing is

19   true and correct, and that this Declaration was executed this 24th day of May, 2007, at San Diego,

20   California.

21                                /s/ L. Scott Keehn
                                  L. Scott Keehn

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

110315/LFK/5311.01

ASA 0404

# EXHIBIT B

ASA 0405

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11 In Re:                          )  Case No.  05-05926-PBINV
                                   )
12     FRANCIS J. LOPEZ,           )  Involuntary Chapter 7
                                   )
13         Alleged Debtor.         )  **DECLARATION OF L. SCOTT KEEHN RE:**
                                   )  **MOTION FOR AN ENFORCEMENT**
14                                 )  **ORDER IMPOSING MONETARY**
                                   )  **SANCTIONS AGAINST THE DEBTOR**
15                                 )
                                   )  **[BIFURCATED PHASE II]**
16                                 )
                                   )  Date:  November 19, 2007
17                                 )  Time:  2:00 p.m.
                                   )  Judge: The Honorable Peter W. Bowie
18                                 )  Ctrm:  4
                                   )
19                                 )
                                   )
20                                 )
                                   )
21 _____ )

22     I, L. Scott Keehn, declare:

23     1.     I am an attorney at law, duly licenced to practice before all courts of this State, and

24 before the United States District Court for the Southern District of California.  I am a shareholder

25 of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

26 personal knowledge of the factual matters stated herein.

27     2.     The "Declaration of L. Scott Keehn in Support of Petitioning Creditors' Motion for

28 an Enforcement Order: (1) Imposing Monetary Sanctions Against the Debtor; and (2) Imposing

*(vertical left margin text)* KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1   Evidentiary Sanctions Against the Debtor" was filed herein by my office on May 24, 2007, and is

2   incorporated herein by this reference.[1]  In that Declaration, I summarized the delay and *bad faith*

3   discovery tactics employed by Lopez during the 6-month period of December 3, 2006 through

4   May 23, 2007.

5       3.    On March 12, 2007, the Court ordered Lopez to provide supplemental discovery

6   responses on or before April 11, 2007.  The Court — in open session — indicated that it was

7   deferring its ruling on the request for monetary sanctions of $4,442 because: (a) it wanted the risk

8   of those sanctions to serve as a *Sword of Damocles* to encourage compliance with the Court's

9   order; and (b) Lopez would have to "work his way out of those sanctions."  Unfortunately, Lopez

10  is apparently unimpressed with either this Court's order or the threat of sanctions.

11      4.    On June 25, 2007, the Court conducted its hearing on Petitioning Creditors' request

12  for monetary and evidentiary sanctions based on Lopez's dilatory tactics up to that time.[2]  The

13  Court deferred again the imposition of previously requested monetary sanctions ($4,442.00), but

14  ordered the imposition of evidentiary sanctions precluding Lopez's use of any documents which he

15  had not yet produced.[3]

16      5.    On the courthouse steps following the June 25, 2007 hearing, I conferred with

17  Lopez's attorney Jonathan Hayes regarding Petitioning Creditors' request to take Lopez's

18  deposition.  At that time, I stated that I would like to calendar the deposition before July 31, 2007

19  because I would be out of my office for virtually the entire month of August.  Mr. Hayes and I

20  agreed that either July 20 or July 27 would work on our calendars, and Mr. Hayes indicated that

21  he would inquire as to Lopez's availability on those dates.

22      6.    Three days later, on June 28, 2007, Mr. Hayes transmitted to me the following

23  email message: *"I have spoken to my client about the deposition dates we discussed, July 20 or 27.*

24  *He is checking his calendar.  I will let you know **shortly**."* (Emphasis added.)

25  _____

26      [1]    See Exhibit 1, Docket Item 105 (attachment #2).

27      [2]    See Exhibit 2, Docket Item 110 [Transcript of the June 25, 2007 hearing ("6/25/07
    Transcript")].

28      [3]    See Exhibit 2, 6/25/07 Transcript at p. 17.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 - FACSIMILE (619) 400-2201

- 2 -

ASA 0407
111886/LFK/5311.01

1      7.     Twenty-two days later — in the early evening of July 20, 2007 — Mr. Hayes

2   transmitted an email suggesting, for the first time, July 31, 2007, as an available date for the

3   deposition.

4      8.     Given that July 31, 2007 would be my last day in the office before a 30-day

5   vacation, I knew I would be fully consumed with matters necessary to be completed in preparation

6   for that absence. Because of that, and because of the fact that I had received absolutely no

7   communication from Mr. Hayes' office following the June 28, 2007 email, my office issued and

8   mailed to Mr. Hayes a notice of Lopez's deposition for Tuesday, September 11, 2007, at 9:00 a.m.

9   in our office.

10     9.     On July 31, 2007, there was a further Status Conference in the case. I reported to

11  the Court the events summarized in paragraphs 5-8 above, including the fact that we had noticed

12  Mr. Lopez's deposition for September 11, 2007. Mr. Hayes stated in open court that he would

13  communicate that information to Mr. Lopez, and let me know if there was any problem with that

14  date. That was the last I heard from Mr. Hayes until September 10, 2007.

15     10.    In the afternoon of September 10, 2007 — less than 24 hours before the deposition

16  was scheduled to begin — Lopez's attorney sent me a brief email stating that Lopez was *unable*

17  *to make travel arrangements for the deposition tomorrow.*" The email suggested October 8, 2007

18  or October 22, 2007 as possible dates for the deposition. Lopez's deposition is currently

19  scheduled for October 22, 2007 at 9:30 a.m. based on Mr. Hayes' representation that it was an

20  acceptable date and time.

21     11.    As stated in open court on June 25, 2007,[4] once Lopez's deposition is conducted,

22  Petitioning Creditors intend to prepare and file their summary judgment motion to establish that

23  Lopez was in fact not paying his debts as they came due as of the date of the involuntary petition.

24     12.    Lopez's past misconduct in this case mirrors his extensive misconduct in other

25  litigation involving Lopez and Petitioning Creditor Alan Stanly in other San Diego courts, as

26  detailed in the Declaration of Timothy P. Dillon filed herein on September 27, 2007 and

27

28  _____

    [4]      See Exhibit 2, 6/25/07 Transcript at p. 18.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

ASA 0408
111886/LFK/5311.01

1  incorporated herein by this reference.[5]  Considering Lopez's pervasive custom and practice of

2  refusing to perform his duties as a litigant unless and until he is [forensically] bludgeoned into

3  submission by the court, it appears clear that monetary sanctions should now be imposed.

4  Without a significant sanctions order, I do not believe that Lopez will ever voluntarily appear for,

5  and participate in good faith at, his deposition in this case.

6          13.    My office spent a total of 13.6 hours preparing this second motion for sanctions to

7  redress Lopez's discovery abuses.  Specifically, attorney Leslie F. Keehn spent 12.6 hours

8  working on this motion, at her standard hourly rate of $225.00.  I worked 1.0 hour, at my standard

9  hourly rate of $320.00.  Petitioning Creditors will be billed a total of $3,155.00 for this motion.

10         14.    I have reviewed the applicable time and billing records generated by my office.

11  True and correct copies of those records are attached hereto as Exhibit 4,[6] and are summarized as

12  follows: (a) $2,164.50 for 7.7 hours (attorney and paralegal time) spent preparing the necessary

13  documents and questions for Lopez's deposition; (b) $224.00 for 0.7 hours of my time to confer

14  with attorney Hayes regarding Lopez's last minute failure to appear; and (c) $6,590.00 for 25.7

15  hours of total attorney time (including my time and Leslie F. Keehn's time) reviewing the

16  requisite evidence, and drafting the declarations in support of Petitioning Creditors' renewed

17  motion for the monetary sanctions originally requested on May 24, 2007.

18         15.    With this motion, Petitioning Creditors are seeking monetary sanctions in the total

19  amount of **$12,133.50** to fully reimburse them for the fees they have actually incurred as described

20  in Paragraphs 13 and 14 above.

21         I declare under penalty of perjury under the laws of the United States that the foregoing is

22  true and correct, and that this Declaration was executed this 19th day of October, 2007, at San

23  Diego, California.

24                          /s/ L. Scott Keehn
                            L. Scott Keehn

25

26  _____

27     [5]     See Exhibit 3, Docket Item 111 (attachment #1).

28     [6]     The non-applicable entries in the billing records contained in Exhibit 4 have been
        redacted.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

ASA 0409
111886/LFK/5311.01

# EXHIBIT 1

ASA 0410

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8              UNITED STATES BANKRUPTCY COURT

9        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                              )  Case No. 05-05926-PBINV
                                        )
12        FRANCIS J. LOPEZ,             )  Involuntary Chapter 7
                                        )
13              Alleged Debtor.         )  **DECLARATION OF L. SCOTT KEEHN IN**
                                        )  **SUPPORT OF PETITIONING**
14                                      )  **CREDITORS' MOTION FOR AN**
                                        )  **ENFORCEMENT ORDER: (1) IMPOSING**
15                                      )  **MONETARY SANCTIONS AGAINST THE**
                                        )  **DEBTOR; AND (2) IMPOSING**
16                                      )  **EVIDENTIARY SANCTIONS AGAINST**
                                        )  **THE DEBTOR**
17                                      )
                                        )  [BIFURCATED PHASE II]
18                                      )
                                        )  Date:  June 25, 2007
19                                      )  Time:  10:30 a.m.
                                        )  Judge: The Honorable Peter W. Bowie
20  _____)  Ctrm:  4
                                        )
21

22        I, L. Scott Keehn, declare:

23        1.     I am an attorney at law, duly licenced to practice before all courts of this State, and

24  before the United States District Court for the Southern District of California.  I am a shareholder

25  of the firm Keehn & Associates APC, attorneys of record for Petitioning Creditors.  I have

26  personal knowledge of the factual matters stated herein.

27        2.     On November 03, 2006, my office served Lopez with Petitioning Creditors' First

28  Set of Written Discovery for Phase II (the "Phase II Written Discovery"), consisting of: (1) First

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1  Phase II Requests for Admission Propounded by Petitioning Creditors [10 Requests]; (2) First

2  Phase II Request for Production of Documents by Petitioning Creditors [162 categories of

3  documents]; and (3) First Phase II Interrogatories Propounded by Petitioning Creditors [35

4  Interrogatories].  True and correct copies of the Phase II Written Discovery are attached hereto,

5  marked Exhibits A, B and C respectively.  Lopez's responses were due on December 4, 2006.

6  3.    On December 03, 2006, Lopez served his "Response to Requests for Admission

7  Propounded to Alleged Debtor Francis J. Lopez (Phase II)."  **Lopez's responses were deficient,**

8  **and Lopez failed to verify the responses.**

9  4.    On December 05, 2006, Lopez served his "Response to Interrogatories Propounded

10  to Alleged Debtor Francis J. Lopez (Phase II).  **Lopez's responses were deficient, and Lopez**

11  **failed to verify the responses.**  At the same time, Lopez served his "Response to Requests for

12  Production of Documents."  **Lopez's responses were deficient.**

13  5.    On December 13, 2006, I sent a *meet and confer* letter to Lopez's attorney, M.

14  Jonathan Hayes, notifying him of the deficiencies in Lopez's responses to the Phase II Written

15  Discovery.

16  6.    On December 15, 2006, attorney Hayes and I participated in a telephonic *meet and*

17  *confer* conference wherein the parties agreed that Lopez would provide supplemental responses to

18  the Phase II Written Discovery on or before January 12, 2007.

19  7.    On January 12, 2007 – the Deadline for Lopez to provide the promised

20  supplemental responses to the Phase II Written Discovery – Lopez **failed, without explanation,**

21  **to provide supplemental responses to the Phase II Written Discovery.**

22  8.    On January 19, 2007, I sent a follow-up *meet and confer* letter to attorney Hayes

23  requesting an explanation regarding Lopez's failure to provide the promised supplemental

24  responses to discovery, and notifying Lopez of the imminent likelihood of a motion to compel his

25  responses to the Phase II Written Discovery.  Lopez **failed, without explanation, to respond to**

26  that *meet and confer* letter.

27  9.    On January 29, 2007, Petitioning Creditors filed a Motion to Compel responses to

28  the Phase II Written Discovery.  Lopez **failed, without explanation, to respond or file an**

1103150.FK/5311.02  ASA 0412

1   Opposition to that Motion.

2       10.    On March 10, 2007 – a Saturday, just two days prior to the scheduled hearing on

3   Petitioning Creditors' Motion to Compel Lopez's responses to the Phase II Written Discovery –

4   attorney Hayes emailed me approximately 155 pages of documents, purportedly in response to the

5   "First Phase II Request for Production of Documents by Petitioning Creditors." **This last-minute**

6   **"*document dump*" was improper because the documents: (1) were not responsive to the**

7   **Requests, (2) were not organized by category of Request, and (3) consisted of at least 103**

8   **pages of pleadings filed in the San Diego Superior Court which are already in the Petitioning**

9   **Creditors' possession. Lopez failed, without explanation, to explain the deficiencies and/or**

10  **his failure to provide the agreed-upon supplemental responses.**

11      11.    On March 12, 2007, I appeared at the hearing during which this Court granted

12  Petitioning Creditors' motion to compel Lopez to provide supplemental responses to the Phase II

13  Written Discovery.[1]  The Court ordered Lopez to provide the supplemental responses on or before

14  April 11, 2007.  The Court — in open session — indicated that it was deferring its ruling on the

15  request for monetary sanctions of $4,242 because: (a) it wanted the risk of those sanctions to serve

16  as a *Sword of Damocles* to encourage compliance with the Court's order; and (b) Lopez would

17  have to "work his way out of those sanctions."

18      12.    On April 10, 2007, Lopez mailed my office a set of supplemental responses to the

19  Phase II Written Discovery which were patently deficient in that, i.e., they failed to fully respond

20  to the Interrogatories asked, failed to provide facts in support of asserted denials to the Requests

21  for Admissions, and failed to produce responsive documents.  True and correct copies of Lopez's

22  supplemental responses are attached hereto marked Exhibits D, E and F.

23      13.    On May 11, 2007, the parties, through their counsel, attended a status conference

24  wherein this Court ordered Lopez to file proper supplemental responses to the Phase II Written

25  Discovery on or before May 21, 2007.  Later that afternoon, I met with attorney Hayes at my office

26  regarding the deficiencies in Lopez's supplemental responses to the Phase II Written Discovery.

27

28      [1]    See, Docket Item #93.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

- 3 -

110315/LFK/5311.01  **ASA 0413**

1   Attorney Hayes requested that I set forth the deficiencies in a *meet and confer* letter to him.

2      14.   As requested, on May 14, 2007, I sent a *meet and confer* letter via email and first

3   class United States mail to attorney Hayes which enumerated each and every deficiency in Lopez's

4   supplemental responses to the Phase II Written Discovery.  A true and correct copy of that letter is

5   attached hereto, marked Exhibit G.

6      15.   After the close of business, at 7:10 P.M., on May 21, 2007 – the deadline for Lopez

7   to supplement his supplemental responses to the Phase II Written Discovery –  attorney Hayes

8   emailed me a request for two additional days for Lopez to supplement his responses to the Phase II

9   Written Discovery.  The next morning, on May 22, 2007, I responded to attorney Hayes' email by

10  indicating that I would grant the requested two-day extension of time, in exchange for a stipulation

11  providing Petitioning Creditors with an equivalent two-business-day extension of time – from May

12  25, 2007 to May 30, 2007 – to file any necessary discovery motion.  A true and correct copy of that

13  email correspondence is attached hereto, marked Exhibit H.

14     16.   On May 23, 2007, attorney Hayes sent me an email wherein he withdrew Lopez's

15  request for an extension of time, and notified me that Lopez would not be providing any additional

16  responses to the Phase II Written Discovery.  A true and correct copy of that email correspondence

17  is attached hereto, marked Exhibit I.

18     I declare under penalty of perjury under the laws of the United States that the foregoing is

19  true and correct, and that this Declaration was executed this 24th day of May, 2007, at San Diego,

20  California.

21  /s/ L. Scott Keehn
    L. Scott Keehn

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2350 · FACSIMILE (619) 400-2201

110315/LFK/5311.01

**ASA 0414**

# EXHIBIT 2

ASA 0415

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING

```
                              )
                              )
FRANCIS J. LOPEZ              ) CASE NO. 05-05926-PB
                              )
                              )
_____ )
```

1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT
ORDER: A ) IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR;
AND, B) IMPOSING EVIDENTIARY SANCTIONS AGAINST THE
DEBTOR.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, JUNE 25, 2007

SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

APPEARANCES

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, JUNE 25, 2007 , 10:00 A.M.

--- o O o ---

**ASA 0417**

THE CLERK:    IN THE MATTER OF FRANCIS J. LOPEZ.  TWO

MATTERS: CONTINUED STATUS CONFERENCE ON INVOLUNTARY

PETITION AND ANSWER; AND, PETITIONING CREDITORS' MOTION

FOR AN ENFORCEMENT ORDER (1) IMPOSING MONETARY SANCTIONS

AGAINST THE DEBTOR; AND, (2) IMPOSING EVIDENTIARY

SANCTIONS AGAINST THE DEBTOR.

APPEARANCES, PLEASE.

MR. KEEHN:    GOOD MORNING, YOUR HONOR.

SCOTT KEEHN APPEARING ON BEHALF OF THE PETITIONING

CREDITORS.

MR. HAYES:    GOOD MORNING, YOUR HONOR.

JOHN HAYES APPEARING FOR THE DEBTOR -- ALLEGED DEBTOR.

MR. KEEHN:    YOUR HONOR, THIS PARTICULAR ODYSSEY BEGAN

BEFORE THANKSGIVING, IF YOU CAN BELIEVE THAT, BACK ON

NOVEMBER 3RD.

THE COURT:    THAT'S NOTHING AT ALL COMPARED TO ADAMS.

     MR. KEEHN:    YOU KNOW, I WAS HOPING YOU WOULDN'T

JUST CONFINE YOURSELF TO THIS RECORD.  AND ALSO THE CASE

BEFORE, THERE WERE THIRTEEN MEET AND CONFER LETTERS; AND

WE DON'T MEET THAT RECORD, EITHER.

BUT THIS IS AN INVOLUNTARY PETITION.  AND WE WERE HOPING

TO MOVE IT ALONG WITH A LITTLE MORE ALACRITY THAN YOU MIGHT

EXPECT IN --

THE COURT:    SO YOU'RE SAYING IT REMAINS INVOLUNTARY?

MR. KEEHN:    OH, VERY INVOLUNTARY.

WHAT WE HAVE HERE IN RESPONSE TO OUR REQUEST FOR DISCOVERY

ASA 0418

THAT WERE PROMULGATED NOW SEVEN MONTHS AGO; AT FIRST THERE
WAS NO RESPONSE AT ALL IN THE APPROPRIATE PERIOD.  ALL
OBJECTIONS WERE WAIVED.  AND WHEN WE MOVED FOR MOTION TO
COMPEL THE SANCTIONS.  COUNSEL COMES IN AND APOLOGIZES
FOR DEBTOR, BEMOANS THE FACT THAT WE'RE ASKING FOR A LOT
OF INFORMATION; AND AGREES TO THE COURT'S RULING THAT
SUPPLEMENTAL RESPONSES SHOULD BE PROVIDED NOT LATER THAN
THE 21ST OF MAY.
WELL, ON THE 21ST OF MAY -- AND, ACTUALLY NOTHING HAPPENED
BETWEEN THE TIME THE COURT MADE THAT -- GAVE THE DEBTOR
THAT SECOND CHANCE.  NOTHING HAPPENED BETWEEN THEN AND
MAY 21ST UNTIL SHORTLY AFTER SEVEN IN THE EVENING WHEN MR.
HAYES E-MAILED MY E-MAIL WITH A REQUEST FOR A DAY OR TWO
EXTENSION.
WELL, I DIDN'T HAVE ANY PROBLEM WITH A DAY OR TWO
EXTENSION, AS LONG AS I GET AN EQUAL EXTENSION AND TIME
TO REPLY.  AS SOON AS I SAW THE E-MAIL THE FOLLOWING
MORNING, I RELAYED THAT INFORMATION TO MR. HAYES.
IN RESPONSE TO THAT, I RECEIVED ANOTHER E-MAIL THAT SAID,
NO, WE'RE NOT GOING TO PROVIDE ANYTHING ELSE AND WE'RE
WITHDRAWING OUR REQUEST FOR EXTENSION.
SO ONCE AGAIN, WE HAVE THE TIME PERIOD PASSING AND, OF
COURSE, WE WERE PREJUDICED, NOT IN AN OVERWHELMING DEGREE,
BUT NOTICEABLY BY THE FACT THAT IN RESPONSE TO THE FIRST
E-MAIL WE HAD ANTICIPATED THAT WE WOULD NOT HAVE TO MEET
THE ORIGINAL DEADLINE FOR RESPONSE.
SO, UPON RECEIVING THE WITHDRAWAL E-MAIL, WE QUICKLY

ASA 0419

REGROUPED AND DID OUR REPLY -- DID OUR MOTION, RATHER.   WE
HAD ONLY A FEW DAYS TO DO THAT, GIVEN THE SETTING OF THIS
PARTICULAR HEARING IN ORDER TO GIVE AN ADEQUATE TIME TO
RESPOND.   SO WE DID THAT.
AND WE HAVE WHAT HAS BECOME A FAMILIAR PATTERN.   WE HAVE,
WHAT PURPORTS TO BE RESPONSES GIVEN ON BEHALF OF MR. LOPEZ;
AND, IN FACT, THEY'RE NOT REALLY GOOD-FAITH RESPONSES AT
ALL.   THEY PROVIDE SOME PAPER, MOST OF WHICH WAS PLEADINGS
IN CASES THAT MR. LOPEZ HAD EVERY REASON TO KNOW THAT WE
ALREADY HAD AND SO WOULD BE COMPLETELY USELESS.
NOW, THIS PARTICULAR DISCOVERY DISPUTE CREATES A DYNAMIC
THAT'S DIFFERENT FROM MOST DISCOVERY DISPUTES, BECAUSE
MOST DISCOVERY DISPUTES ARISE IN TRADITIONAL LITIGATION.
AND TRADITIONAL LITIGATION IS ALWAYS LOOKING BACK AT AN
EVENT AND IS STATIC, IN TERMS OF WHERE THE LIABILITIES WILL
FALL.   BECAUSE THEY DEPEND ON WHAT HAPPENED BACK WHEN
WHATEVER INCIDENT OCCURRED, WHATEVER COURSE OF CONDUCT
OCCURRED THAT GAVE RISE TO THE TRADITIONAL LITIGATION.
SO YOU'RE ALWAYS LOOKING BACKWARDS AND YOU'RE NOT REALLY
CONCERNED ABOUT WHAT'S HAPPENING ON A GOING-FORWARD
BASIS.
THE DIFFERENT DYNAMIC THAT'S CREATED IN EVERY INVOLUNTARY
PETITION IS THE INVOLUNTARY GAP DYNAMIC.   BECAUSE, WHILE
DELAY IS ALWAYS PREJUDICIAL TO BRINGING A MATTER TO ITS
QUICK AND COST EFFECTIVE CONCLUSION, IT HAS AN AUXILIARY
PREJUDICE IN INVOLUNTARY CASES BECAUSE THE DEBTOR IS FREE
TO CREATE OBLIGATIONS THAT WILL BECOME INVOLUNTARY GAP

CLAIMS AND LEAPFROG AHEAD IN PRIORITY TO THE CLAIMS OF THE
CREDITORS THAT BROUGHT THE ACTION.

AND THAT PARTICULAR FORM OF PREJUDICE IS RENDERED ALL THE
MORE DISTURBING BECAUSE THERE'S NO WAY TO MONITOR IT, NO
WAY TO QUANTIFY IT.   MR. LOPEZ IS OUT THERE.   MAYBE HE'S
NOT CREATING INVOLUNTARY GAP CLAIMS AND PERHAPS HE IS.
BUT THE RISK IS THAT THE UTILITY OF THE REMEDY OF
INVOLUNTARY BANKRUPTCY AS A CREDITOR'S REMEDY IS SUBJECT
TO THIS FORM OF DILUTION, SIMPLY BECAUSE THE ALLEGED
DEBTOR REFUSES -- I WANT TO UNDERSCORE THAT -- REFUSES TO
COMPLY WITH THE DISCOVERY IN GOOD FAITH.

WE ARE TRYING TO NARROW THE ISSUES WITH THE EVIDENCE THAT'S
AVAILABLE SO THAT WE CAN PROCEED IN THE SECOND PHASE, AS
WE DID IN THE FIRST, TO PRESENT THE ISSUES TO THE COURT
IN A SUMMARY JUDGMENT FASHION, BECAUSE WE THINK THIS CASE
IS AMENABLE TO SUMMARY JUDGMENT.

AND MR. LOPEZ IS JUST VERY ADROITLY BLOCKING THAT WITH THIS
PASSIVE/AGGRESSIVE TACTIC OF HIS, WHERE HE DOESN'T REPLY
AT ALL UNTIL HIS BACK IS ABSOLUTELY TO THE WALL AND SOME
DRACONIAN CONSEQUENCE MIGHT BEFALL HIM.   AND THEN HE'LL
RESPOND, BUT HE WON'T REALLY RESPOND IN GOOD FAITH.   HE
GIVES YOU A PARITY OF GOOD-FAITH, THAT DOES NOT ADVANCE
THE PURPOSES OF DISCOVERY.

NOW, WE SHOULDN'T HAVE TO WAIT UNTIL HIS BACK IS AGAINST
THE WALL TO GET OUR RESPONSES.   WE'RE ENTITLED TO OUR
RESPONSES THIRTY DAYS AFTER THEY'RE SERVED, THIRTY-THREE
WHEN THEY'RE SERVED BY MAIL.

ASA 0421

AND WE'RE LONG PAST THAT WITH THESE DISCOVERY REQUESTS
THAT WERE PROMULGATED BACK IN NOVEMBER.  AND AS THE
OBJECTION DISCLOSES, THE ALLEGED DEBTOR IS WELL AWARE THAT
WE'RE DOING, ONCE AGAIN, WHAT WE DID IN THE FIRST PHASE;
WE'RE USING THE WRITTEN DISCOVERY AS, TO SORT OF TEE UP
THE ISSUES FOR OUR, DEPOSITION EXAMINATION, WHICH IS THE
NORMAL WAY TO PROCEED.

SO BY HINDERING AND DELAYING THE DISCOVERY PROCESS IN THE
WRITTEN PHASE, HE NATURALLY DEFERS THE ORAL EXAMINATION,
WHICH IN TURN DEFERS, ONCE AGAIN, THE DAY OF RECKONING.
AND ALL THE WHILE HE'S FREE TO BE OUT THERE INCURRING
FURTHER GAP CLAIMS.

SO I THINK THAT WHAT WE'VE SUGGESTED IN OUR PAPERS IS THE
APPROPRIATE RESPONSE.  NUMBER ONE, THE DEFERRED MONETARY
SANCTIONS THAT THE COURT ORIGINALLY AWARDED OF $42
000 -- EXCUSE ME, I'M DREAMING -- $4,242. SHOULD BE
IMPOSED.

THE -- I DON'T THINK THAT THE RESULT THE COURT HAD HOPED
TO ACHIEVE BY DEFERRING IT HAS BEEN ACHIEVED.  I DON'T
THINK IT EVER WILL BE ACHIEVED.  I THINK THAT THIS IS JUST
MR. LOPEZ'S LITIGATION TACTIC; HALT, HINDER AND DELAY AND
MAYBE I'LL HAVE TO ANSWER SOMEDAY.

THE EVIDENTIARY SANCTIONS THAT WE'VE REQUESTED, I THINK,
ARE APPROPRIATE.  AND THEY WILL FACILITATE THE PURPOSE OF
DISCOVERY, BECAUSE THEY NARROW THE ISSUES FOR US, EVEN
WITHOUT THE COOPERATION OF THE ALLEGED DEBTOR.

SO WE WOULD REQUEST THAT THE EVIDENTIARY SANCTIONS BE

IMPOSED AS REQUESTED, AND THAT THE MONETARY SANCTION BE
AWARDED FORTHWITH, WITH A DATE CERTAIN ESTABLISHED AS TO
WHEN THAT SECTION SHOULD BE PAID.

THE COURT:    MR. HAYES.

MR. HAYES:    YOUR HONOR, THANK YOU.  I HAVE A COUPLE OF
COMMENTS.

THE FIRST ONE IS, I WANTED TO COMMENT ON THIS, THE REQUEST
I'VE MADE OF MR. KEEHN FOR ANOTHER ONE OR TWO DAYS.  I'VE
HAD -- MR. LOPEZ LIVES IN FLORIDA, AND I HAVE A HARD TIME
COMMUNICATING WITH HIM.  WE COMMUNICATE BY E-MAIL AND I
HAVE HIS CELL PHONE, AND INEVITABLY, I CATCH HIM WHEN HE'S
PICKING HIS KIDS UP OR HE'S IN A STORE OR SOMETHING AND
THERE'S THE THREE-HOUR TIME GAP.

ANYWAY, I SPOKE TO HIM VERY BRIEFLY A COUPLE OF TIMES.  I
SAID, LOOK, WE HAVE TO GET THEM MORE DOCUMENTS.

THERE'S -- MR. KEEHN SENT ME THIS LETTER, WHAT ARE WE GOING
TO DO?  WE DISCUSSED IT REAL QUICKLY.  AND FINALLY, THE
TIME CAME WHERE HE ABSOLUTELY HAD TO FILE A RESPONSE, AND
THAT'S WHEN I SENT THE E-MAIL TO MR. KEEHN SAYING, GIVE
ME ANOTHER DAY OR TWO.

THE FOLLOWING DAY I SPOKE TO MR. LOPEZ AT GREAT LENGTHS.
AND WE WENT THROUGH THE LETTER ONE BY ONE.  AND I MEAN,
THERE ISN'T ANYTHING ELSE WE CAN COME UP WITH.  THERE
ISN'T ANY OTHER DOCUMENTS EXCEPT THIS ISSUE WITH THE WIFE.
THERE ISN'T ANY DOCUMENTS THAT HAVEN'T BEEN TURNED OVER.
THERE ISN'T ANY, ANY MORE EXPLANATION OR, OR, MORE DETAILS
THAT WE COULD GIVE, OTHER THAN REALLY REPEAT INFORMATION

ASA 0423

THAT'S ON VARIOUS -- OF THE MANY STATEMENTS THAT HAVE BEEN
TURNED OVER I BELIEVE MANY TIMES BY NOW.

BUT, ADDRESSING THE MOTION, THE MOTION HAS TWO PARTS.   ONE
IS GRANT THESE SANCTIONS, WHICH I, FRANKLY, BELIEVE HAS
ALWAYS BEEN THE GOAL.   AND THE SECOND IS THESE EVIDENTIARY
SANCTIONS.

AS FAR AS THE SANCTIONS, THE $4000. I JUST WANT TO SAY
AGAIN, I JUST DON'T THINK THERE'S ANY OTHER DOCUMENTS THAT
CAN BE TURNED OVER OTHER THAN MRS. LOPEZ'S DOCUMENTS,
THERE ARE NO OTHER DOCUMENTS THAT CAN BE TURNED OVER THAT
HAVEN'T ALREADY BEEN TURNED OVER.

I BROUGHT MR. LOPEZ'S FIRST DEPOSITION.   IT'S
240-SOMETHING PAGES.   THIS IS WELL MORE THAN A YEAR AGO.
THE REST OF THESE PAPERS ARE EXHIBITS.   EVERY STATEMENT
OF EVERY ONE OF HIS BILLS OF THE TWENTY OR SO CREDITORS
ARE ALL CONSUMER DEBTS.   THIS IS WELL MORE THAN A YEAR OLD.
MR. KEEHN HAS SENT OUT SEVERAL SUBPOENAS.   I'M ACTUALLY
NOT SURE WHAT HE'S GOTTEN FROM THOSE.   WE PROVIDED MORE
DOCUMENTS TWICE IN THIS GO AROUND.   IF MR. KEEHN REALLY
WANTED TO GET MOVING WITH THIS, JUST TAKE THE DEPOSITION
AGAIN.   HE'S BEEN TELLING ME HE'S GOING TO TAKE THIS
DEPOSITION.   HE SOMEHOW CAN'T BECAUSE HE

REALLY -- THERE'S SOME MAGICAL PIECE OF PAPER THAT I'M NOT
CLEAR ABOUT THAT HE HASN'T GOTTEN YET; AND THEREFORE, HE
CAN'T GO FORWARD.   THAT'S JUST RIDICULOUS.

WITH RESPECT TO THE DOCUMENTS IN MRS. LOPEZ'S POSSESSION,
I'VE ACTUALLY NEVER MET MRS. LOPEZ.   BUT I MEAN, MY WIFE

HAS A CHECKING ACCOUNT AND SHE CARRIES THE CHECKBOOK
AROUND IN HER PURSE.  AND I'D BE LOOKING FOR A DIVORCE
ATTORNEY IF I WENT INTO HER PURSE AND FOUND HER CHECKBOOK
AND STARTED SENDING OFF INFORMATION SOMEBODY HAPPENED TO
BE SUING ME.

THE COURT:    SO YOU'RE CONTENDING THIS IS ALL SEPARATE
PROPERTY, AND HE HAS NO INTEREST WHATSOEVER IN THE FUNDS
THAT SHE ADMINISTERS OR THE DEBT SHE'S INCURRED WHETHER
IT'S A LEHMAN BROTHERS, OR THE MORTGAGE ON THE HOUSE OR
ANY OF THOSE KINDS OF THINGS?

MR. HAYES:    I DON'T KNOW IF I'D GET INTO WHETHER IT'S
COMMUNITY PROPERTY OR NOT.  BUT IF THEY WANT, I MEAN, THEY
CAN GO AFTER HER.  THEY CAN SUBPOENA HER OR THEY CAN COME
IN WITH SOME SORT OF EVIDENCE OF WHY THEY HAVE THE RIGHT
TO MAKE MR. LOPEZ --

THE COURT:    SO WHAT'S YOUR THEORY, WHAT'S YOUR THEORY
ON WHY SHE DOESN'T HAVE TO PROVIDE AN ANSWER WITH RESPECT
TO WHAT SHE HAS OR HOLDS OR PAYS, PARTICULARLY, IF HE'S
GOT SOME OBLIGATION OR LIABILITY ON IT?

MR. HAYES.  THEY HAVEN'T ASKED HER.  THEY'RE ASKING HIM.

THE COURT:    NO.  THAT'S NOT MY QUESTION.  MY QUESTION
IS, WHAT'S YOUR THEORY FOR WHY HE DOESN'T HAVE TO ANSWER
THAT QUESTION?

MR. HAYES:    THAT'S HER RIGHT TO PRIVACY.

THE COURT:    SO IT'S HER RIGHT TO PRIVACY, BECAUSE IT'S
SOME SEPARATE INTEREST OF HERS OR WHAT?

WHERE DOES SHE HAVE A RIGHT TO PRIVACY ON SOMETHING THAT

ASA 0425

YOU SAY YOU DON'T GET TO THE COMMUNITY PROPERTY QUESTION.
I MEAN, HE'S GOT A COMMUNITY PROPERTY INTEREST IN IT, IF
HE'S GOT A STATE STATUTORY RIGHT TO CO-MANAGEMENT OF
COMMUNITY ASSETS OR ANYTHING ELSE THAT I HAVE NO IDEA WHAT
FLORIDA LAW PROVIDES.

I'M ASKING YOU WHAT YOUR THEORY IS FOR WHY HE DOESN'T HAVE
TO ANSWER IT?

MR. HAYES:    WELL, FOR ONE THING, FLORIDA IS NOT
COMMUNITY PROPERTY.   AND I DON'T KNOW HOW FLORIDA LAW IS.
BUT WHAT I FOCUSED ON IS MR. LOPEZ, GO TO YOUR WIFE AND
GET THESE DOCUMENTS.

THE COURT:    NO, POSSESSION -- YOU KNOW, WHAT DOES HE
HAVE IN HIS POSSESSION OR CONTROL?   WHAT DOES HE HAVE?
HAS HE PRODUCED EVERYTHING THAT'S IN HIS POSSESSION OR
CONTROL WITH RESPECT TO THAT?

MR. HAYES:    OH, ABSOLUTELY.  BUT THAT'S --

THE COURT:    AND THAT'S INCLUDING AS TO HIS LIABILITY
WITH RESPECT TO IT?

MR. HAYES:    YES.  AS FAR AS I KNOW.  BUT THAT DOES
RAISE THE QUESTION OF DOES -- IS WHAT'S IN HIS WIFE'S PURSE
IN HIS POSSESSION OR CONTROL?   I MEAN, THAT'S WHAT HE'S
TELLING ME.  I CAN'T --

THE COURT:    NO.  YOUR ANSWER IS, HE HAS NO INTEREST OR
OBLIGATION IN THE LEHMAN BROTHERS OR THE MORTGAGE OR
WHATEVER IT IS, THEN WHY DON'T YOU AGREE TO THOSE
EVIDENTIARY SANCTIONS AS WELL?   YOU SAY HE'S TURNED OVER
EVERYTHING.

MR. HAYES:    WELL, EVERYTHING THAT'S IN HIS POSSESSION
OR HIS CONTROL WITHOUT GETTING DIVORCED; YES.

THE COURT:    THEN THE ANSWER, IT SEEMS TO ME, IS THAT
YOU AGREE TO THE EVIDENTIARY SANCTIONS, SAID THAT HE
CANNOT PRODUCE ANYTHING HE HAS NOT ALREADY PRODUCED, COME
TIME OF TRIAL WITH RESPECT TO THE ISSUE THAT WE'LL BE
LITIGATING IN THIS PHASE 2 OF THIS ISSUE.

MR. HAYES:    I MIGHT DO THAT.  I HADN'T THOUGHT OF IT,
MYSELF.

I WAS FOCUSING ON THE MOTION, WHICH BASICALLY ASKED YOU
TO GRANT SUMMARY JUDGMENT TODAY.  BUT I WOULD AGREE WITH
THE THEORY THAT THINGS -- HE SHOULDN'T BE ABLE TO COME IN
WITH SOMETHING AFTER THIS, OR HE SHOULDN'T BE ABLE TO,
"QUOTE," "UNQUOTE," FIND SOMETHING, YOU KNOW, TWO DAYS
BEFORE TRIAL.

AND I DO BELIEVE EVERYTHING'S BEEN TURNED OVER.

THE COURT:    WELL, THAT'S WHAT MR. KEEHN IS -- I HAVE
NO IDEA WHAT HIS STRATEGY IS, BUT THAT'S AT LEAST WHAT HE'S
ASKING FOR IN THE CONTEXT OF THIS MOTION, BECAUSE HE WANTS
TO BE ABLE TO CLOSE THE BOOK AND THEN GO TAKE YOUR CLIENT'S
DEPO KNOWING THAT YOUR CLIENT IS NOW PRECLUDED FROM
STEPPING UP AND SAYING OH, BUT HERE'S THIS, AND HERE'S THIS
AND HERE'S THAT; AND NOT EVER HAVING HAD A CHANCE TO LOOK
AT IT OR INDEPENDENTLY VALIDATE IT FROM THIRD PARTIES OR
ANY OF THOSE KINDS OF THINGS.

YOU WOULDN'T WALK INTO A DEPO BLIND THAT WAY.  I'M
CONFIDENT OF THAT.

ASA 0427

MR. HAYES:    NO.  YOU KNOW, WHAT I WAS FOCUSING ON IS
THE MOTION SAYS ELIMINATE ALL EVIDENCE ENTIRELY REGARDING
EACH ONE OF THESE CATEGORIES; NOT JUST ELIMINATE -- NOT
JUST HAVE AN EVIDENTIARY SANCTION THAT WE CAN'T FIND,
"QUOTE," "UNQUOTE," FIND MORE DOCUMENTS.
I THINK I WOULD AGREE TO THAT.  WHATEVER DOCUMENTS HAVEN'T
BEEN TURNED OVER UP TO NOW, I WOULD AGREE TO THAT.
THE COURT:    OKAY.
MR. HAYES:    I'M NOT SURE I -- YOU KNOW, HE JUST FOUND
A JOB AND HE DOESN'T HAVE $4,400.  AND I DON'T KNOW WHAT
ELSE I CAN SAY.
YOU SAID, YOU'RE NOT SURE WHAT MR. KEEHN'S STRATEGY IS.
I MEAN, IF THEY REALLY WANTED THIS CASE TO BE FINISHED,
THEY WOULD HAVE TAKEN HIS DEPOSITION SIX OR EIGHT MONTHS
AGO.
THE COURT:    I WOULDN'T HAVE.  I WAS A LITIGATOR FOR A
BUNCH OF YEARS.  I'M NOT WALKING INTO A DEPOSITION WHEN
THERE'S A WHOLE BUNCH OF DOCUMENTS OUT THERE AND HAVE THEM
SURPRISE ME.
MR. HAYES:    WELL, I DON'T THINK THERE ARE.
THE COURT:    WELL --
MR. HAYES:    FOR MONTHS THERE HAVEN'T BEEN A WHOLE BUNCH
OF DOCUMENTS OUT THERE, BUT ALL RIGHT, I HAVE NOTHING
FURTHER.
THE COURT:    OKAY.  MR. KEEHN.
MR. KEEHN:    YES.  THANK YOU, YOUR HONOR.
IN ADDITION TO THE REASONS THAT YOU'VE ALLUDED TO AS TO

ASA 0428

WHY YOU WOULDN'T TAKE THE DEPOSITION WITHOUT THE
DOCUMENTS, THERE WERE RESPONSES THAT MR. LOPEZ GAVE IN HIS
ORIGINAL DEPOSITION A YEAR AGO, NOW, THAT TO THE EFFECT
THAT, WELL THERE ARE MORE DOCUMENTS.  I JUST HAVE TO LOOK
AT THEM.  AND OBVIOUSLY THAT'S A DOOR WE NEED TO CLOSE.
IF WE GET THE EVIDENTIARY SANCTIONS, AS MR. HAYES
SUGGESTED, WE'VE CLOSED THE DOOR.
AND I, IN TERMS OF THE -- IF HE'S AGREEING TO THE SANCTIONS
THEN I DON'T NEED TO ADDRESS HOW HELLACIOUS THIS ARGUMENT
OF MARITAL STRESS IS CONCERNED.  I DID HAVE SOME DOCUMENTS
THAT WERE RECENTLY FILED IN THE DISTRICT COURT THAT BLOW
THAT OUT OF THE WATER.  BUT IF HE'S AGREEING TO IT, I WON'T
ADDRESS IT.
AS FAR AS THE MONETARY SANCTION IS CONCERNED, YOUR HONOR,
THIS -- WE TRIED TO CLOSE THE DOOR IN A PROCESS THAT BEGAN
SEVEN MONTHS AGO.  I SHOULDN'T BE HERE SEVEN MONTHS LATER
CLOSING IT ON A CAPITULATION TO A SECOND MOTION TO COMPEL
THAT I SHOULDN'T HAVE HAD TO FILE.
IF THERE REALLY ARE NO DOCUMENTS, THEN WHY IS THE RESPONSE,
WELL, THERE'S MORE THINGS I NEED TO CHECK AND I CAN'T BE
SURE.  IF THERE REALLY ARE NO DOCUMENTS, THEN WHY WAS THAT
ANSWER NOT GIVEN BACK IN MAY?  WHY WAS IT NOT GIVEN BACK
IN DECEMBER WHEN IT WOULD HAVE BEEN TIMELY?  THERE'S NO
EXPLANATION FOR THAT.
THIS IS EXACTLY THE KIND OF GAMESMANSHIP THAT RULE ONE OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE ABHORS.  THE
PURPOSE OF THE RULES, THEMSELVES, IS TO PROVIDE A

ASA 0429

MECHANISM AND A FRAMEWORK FOR THE RAPID AND FAIR
RESOLUTION OF ISSUES.

NOW, ONE COMMENT, SORT OF, AT LEAST I INFERRED THE ARGUMENT
FROM THE FACT THAT WE HAVE TWO TO THREE INCHES OF PAPER
FROM THE ORIGINAL DEPOSITION.  AND WHY ARE WE STILL HERE
A YEAR LATER?

IN ADDITION TO NOT HAVING THE DOCUMENTS PRODUCED, WE ALSO
HAVE THE POINT THAT THIS CASE WAS BIFURCATED AT MR. LOPEZ'S
REQUEST.  THERE WERE MANY QUESTIONS THAT I COULD EASILY
HAVE ASKED THE FIRST GO AROUND THAT MIGHT HAVE OBVIATED
THE NEED FOR FURTHER DEPOSITION, OR AT LEAST REDUCED IT.
I COULDN'T BECAUSE OF THE CONSTRAINTS PLACED BY THE
BIFURCATION ORDER.  AND I TRIED TO ADHERE TO THAT ORDER.
SO I HAVE TO TAKE HIS DEPOSITION YET A SECOND TIME.

AND THEN ONE OF THE LAST REMARKS THAT COUNSEL MADE, I
THINK, UNDERSCORES THE NEED FOR THE SANCTIONS HAVING BEEN
IMPOSED BECAUSE IT HIGHLIGHTS THE GAMESMAN-LIKE APPROACH
THAT MR. LOPEZ HAS TAKEN.  AND THAT, THAT COMMENT WAS, HE
JUST GOT A JOB.

WELL, IF BY THAT HE'S REPRESENTING TO THE COURT THAT UP
UNTIL THIS TIME HE'S BEEN UNEMPLOYED, I THINK THAT
EXACERBATES THE CULPABILITY OF MR. LOPEZ IN NOT TIMELY
RESPONDING.  WHAT ELSE WAS HE DOING?  WAS HE REALLY
SPENDING FORTY HOURS A WEEK LOOKING FOR A JOB?

IF HE WAS UNEMPLOYED, CERTAINLY HE WOULD HAVE HAD MORE TIME
AVAILABLE TO TEND TO HIS DUTIES AS A LITIGANT THAN A
FULLY-EMPLOYED INDIVIDUAL WOULD.  AND EVEN A

FULLY-EMPLOYED INDIVIDUAL IS EXPECTED TO RESPOND AND
RESPOND TIMELY TO DISCOVERY OBLIGATIONS.

AS I SAID IN THE BEGINNING, WE DON'T KNOW TODAY, AND WE
WON'T KNOW UNTIL THAT ORDER FOR RELIEF IS ENTERED AND
SCHEDULES ARE FILED, IF THAT EVER HAPPENS.  HOW MUCH THIS
ESTATE AND THE GENERAL UNSECURED CREDITORS THAT BROUGHT
THIS POSITION HAVE BEEN PREJUDICED BY THIS DELAY AND THE
INCURRING OF GAP CLAIMS?

I THINK THAT MESSAGE THE COURT SENT THE FIRST TIME TO  MR.
LOPEZ WAS, I'LL GIVE YOU ANOTHER CHANCE.  I THINK THE
MESSAGE THAT THE COURT NEEDS TO SEND TO MR. LOPEZ NOW IS,
THIS ISN'T A GAME.  AND THERE AREN'T ANY MORE CHANCES.
AND YOU DIDN'T PLAY BY THE RULES, AND SO THE SHIELD THAT
I PUT IN FRONT OF YOU BEFORE, IS NOW DOWN.  AND THESE
SANCTIONS ARE DUE AND PAYABLE.

THE COURT:    WELL, IN MY VIEW, AT LEAST AT THIS POINT
IN TIME AND ON THE PRESENT STATE OF THE RECORD, THE
EVIDENTIARY SANCTIONS ARE WARRANTED, AND WILL BE ORDERED
IN THE FOLLOWING RESPECTS:

WITH RESPECT TO DEBTOR'S RESPONSE TO REQUEST FOR ADMISSION
NUMBER FIVE, THAT WILL BE, AND THE DEBTOR HAS AGREED, THAT
WILL BE AN UNQUALIFIED ADMISSION;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS FROM NOVION BETWEEN JANUARY 1 OF 2005 TO JULY 1
OF 2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED FROM JANUARY 1, 2005 TO JULY 1,

2005;

DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
PAYMENTS OF CASH RECEIVED BY HIS WIFE BETWEEN JANUARY 1,
2005 AND JULY 1 OF 2005. AND I WILL ADD, AS TO THESE
PROHIBITIONS, THAT'S TO THE EXTENT NOT ALREADY DISCLOSED
TO THE MOVING CREDITORS, THE PETITIONING CREDITORS.   IF
IT'S BEEN DISCLOSED, THEN IT'S THERE.  THERE'S NO
PRECLUSION OF USE OF THAT INFORMATION IF IT'S BEEN
PREVIOUSLY PROVIDED TO THE PETITIONING CREDITORS, IN THE
CONTEXT OF THE DISCOVERY OF THIS CASE;

THE DEBTOR WILL BE PROHIBITED FROM PROVIDING ANY EVIDENCE
OF A DEBT IN FAVOR OF LEHMAN BROTHERS OR ANY PAYMENT TO
LEHMAN BROTHERS AS OF THE PETITION DATE EXCEPT TO THE
EXTENT AND SAME PROVISO, EXCEPT TO THE EXTENT ALREADY
DISCLOSED TO THE COUNSEL FOR PETITIONING CREDITORS;

AND, DEBTOR WILL BE PROHIBITED FROM PROVIDING EVIDENCE OF
DEBT IN FAVOR OF AMERICAN EXPRESS, BANK OF AMERICA, BANK
CARD, CINGULAR, CITI CARD, HOUSEHOLD BANK, NORTHWEST
FLORIDA DAILY NEWS, CITIBANK QUICKEN, TEXACO, VERIZON,
UNION BANK, OR MR. GORRILL OR ANY PAYMENT TO ANY OF THEM
AS OF THE PETITION DATE, EXCEPT TO THE EXTENT ALREADY
PROVIDED THE COUNSEL FOR PETITIONING CREDITORS IN THE
CONTEXT OF THE DISCOVERY IN THIS MATTER.

AS TO THE MONETARY SANCTIONS, I AM, AGAIN, GOING TO DEFER
AWARDING THOSE.  BUT THEY REMAIN THE SORT OF DAMOCLES OVER
MR. LOPEZ.  BECAUSE I DON'T KNOW THE ANSWER TO SOME OF
MR. KEEHN'S SPECULATION AS TO WHAT'S GOING ON.  MR. KEEHN

ASA 0432

IS CONVINCED THAT THIS IS A GAME THAT MR. LOPEZ IS PLAYING.
I'M NOT YET CONVINCED OF THAT.

SO EVENTUALLY WE WILL GET TO THE ANSWER ONE WAY OR THE
OTHER.  AND ONCE I KNOW THE ANSWER, I'LL APPLY THEM, IF
I DEEM THAT'S APPROPRIATE AT THE TIME.  BUT THE
EVIDENTIARY SANCTIONS AT THIS POINT IN TIME ARE WARRANTED.
I'LL SIGN AN ORDER TO THAT EFFECT.

MR. KEEHN:     THANK YOU, YOUR HONOR.

THE COURT:     OKAY.  NOW, WE HAVE A STATUS CONFERENCE.
TIMING.

ARE YOU, NOW, LOOKING AT THE DEPOSITION, MR. KEEHN?

MR. KEEHN:     I AM.  AND CONSISTENT WITH THE LOCAL
RULES, I NEED TO CONFER WITH COUNSEL AS TO AVAILABLE DATES.

MR. HAYES:     I HAVE TO BE BACK HERE JULY 31ST.  THAT'S
A LITTLE QUICK, BUT I'M GOING TO BE HERE ANYWAY.

THE COURT:     JULY 31ST?  THAT'S A TUESDAY.

MR. KEEHN:     YES.

THE COURT:     WHAT TIME IS YOUR HEARING ON THE 31ST?

MR. HAYES:     AT 10:00.  IT'S A SUMMARY JUDGMENT MOTION,
SO IT COULD BE IN THE AFTERNOON; SUMMARY JUDGMENT MOTION
THAT HASN'T BEEN FILED.

THE COURT:     WE COULD DO 2:00 P.M. ON THE 31ST.  DOES
THAT WORK?

MR.KEEHN:     IT'S CLEAR ON MY CALENDAR, YOUR HONOR.

MR. HAYES:     2:00?

THE COURT:     OKAY.  AND WE'LL DO THAT AS A FURTHER
STATUS CONFERENCE.  BUT IN THE MEANTIME, I ASSUME THE TWO

OF YOU WILL MEET AND CONFER ON A DEPOSITION DATE.  AND THEN

ONCE THE DEPOSITION IS CONCLUDED, I ASSUME MR. KEEHN,

YOU'RE PLANNING A MOTION?

MR. KEEHN:    I AM.

THE COURT:    JUST SO MR. HAYES SEES WHAT'S COMING AND

THEN WE'LL -- ONCE THAT MOTION'S DECIDED, WE'LL KNOW WHERE

WE GO NEXT, IF ANYWHERE.

MR. HAYES:    GREAT.

MR. KEEHN:    THANK YOU, YOUR HONOR.

MR. HAYES:    THANK YOU, YOUR HONOR.

THE COURT:    ALL RIGHT.  WE'LL BE IN RECESS.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

        I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY

CERTIFY:

THAT I REPORTED IN SHORTHAND THE PROCEEDINGS
HELD IN THE FOREGOING CAUSE ON THE 25TH DAY OF JUNE, 2007;
THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING
UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT
CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.


DATED THIS _____ DAY OF _____, 2007.


_____
LYNETTE ALVES, CSR #12534, RPR #61256

ASA 0435

# EXHIBIT 3

ASA 0436



1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  KEEHN & ASSOCIATES
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for Petitioning Creditors

6

7

8           UNITED STATES BANKRUPTCY COURT

9         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  In Re:                          )  Case No.  05-05926-PBINV
                                     )
12      FRANCIS J. LOPEZ,            )  DECLARATION OF TIMOTHY P. DILLON
                                     )
13          Alleged Debtor.          )  [BIFURCATED PHASE II]
                                     )
14                                   )  Date:   October 1, 2007 (Status Conference)
                                     )  Time:   10:30 a.m.
15                                   )  Judge:  The Honorable Peter W. Bowie
                                     )  Ctrm:   4
16                                   )
                                     )
17                                   )
                                     )
18                                   )
                                     )
19  _____  )

20      I, TIMOTHY P. DILLON, declare as follows:

21      1.      I am an attorney duly admitted to practice before the Courts of this State.  I am a

22  shareholder of the law firm of Dillon & Gerardi, APC, counsel for Petitioning Creditor Alan

23  Stanly ("Stanly") in certain cases involving the alleged debtor herein, Francis J. Lopez ("Lopez"),

24  which were and/or are pending before the San Diego Superior Court and the United States District

25  Court for the Southern District of California (the "Additional Lopez Cases").  In connection with

26  the Additional Lopez Cases, I am the *shareholder in charge* of the engagement of the firm on

27  behalf of Stanly, and the attorney within the firm who is most knowledgeable with respect to all

28  aspects of the Additional Lopez Cases.  I make this Declaration based upon facts within my

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

- 1 -                                    111575/LFK/5311.01

ASA 0437

1   firsthand knowledge acquired in the course of conducting litigation against Lopez in the

2   Additional Lopez Cases.

3       2.      The delay and bad-faith litigation tactics employed by Lopez and his counsel

4   throughout the Additional Lopez Cases are summarized below.

5                   *Union Bank of California v. Francis J. Lopez, et. al.*

6                   San Diego Superior Court(Case No.: GIN 030827)

7   Case Summary (06/2003 - 09/2004):

8       3.      In or about June of 2003, Union Bank of California initiated a litigation against

9   both Lopez and Stanly as guarantors of a loan which their corporation, Prism, had defaulted on.

10  Both Lopez and Stanly filed cross-claims against each other for contribution and indemnity.

11  Lopez and Stanly eventually settled with Union Bank. Stanly prevailed on a motion for good faith

12  settlement and obtained a dismissal of Lopez's cross-claims. At time of trial, the sole issues left in

13  the case were Stanly's claims against Lopez for indemnity and contribution. Trial in the Union

14  Bank matter was continued several times due to Lopez's dilatory conduct, as more fully set forth

15  below. When the Court finally held trial, neither Lopez nor his counsel appeared. Trial proceeded

16  without Lopez.

17  Summary of Dilatory / Bad Faith Tactics:

18      4.      On March 9, 2004, Lopez requested a trial continuance due to the "illness of his

19  wife's aunt." Based on that request, the parties ultimately stipulated to continue the trial for four

20  months — until July 9, 2004.

21      5.      On July 2, 2004 — the date of the trial readiness conference — Lopez's attorney,

22  Joseph Fischbach ("Fischbach"), faxed a "Declaration re: Non-Readiness for Trial" to my office.

23  A true and correct copy of that Declaration is attached hereto as Exhibit 1 to the "Compendium of

24  Exhibits in Support of Renewed Request for an Enforcement Order Imposing Monetary Sanctions

25  Against Alleged Debtor Francis J. Lopez" (hereinafter referred to as the "Exhibits Compendium")

26  filed concurrently herewith. In his Declaration, Fischbach stated that he would be unable to

27  appear for trial because he had scheduled another trial for July 7, 2004. This was the first time

28  Fischbach had ever indicated that he would be unable to attend trial. He did not personally appear

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 FACSIMILE (619) 400-2201

- 2 -

ASA 0438

1    at the trial readiness conference. Instead, Fischbach sent an *appearance counsel* to the trial

2    readiness conference who was not affiliated with Fischbach's law firm, and was unfamiliar with

3    the case. Because a "Declaration for Non-Readiness for Trial" is not a proper method of obtaining

4    a trial continuance, and Lopez did not properly apply for a continuance of trial, the Court had no

5    legal basis on which to order a continuance. The Court then confirmed that trial call would

6    remain set for July 9, 2004.

7         6.      On July 9, 2004, Lopez and his counsel failed to appear for trial, and the trial court

8    issued an Order to Show Cause as to why sanctions should not be issued against them. A true and

9    correct copy of the Order is attached as Exhibit 2 to the Exhibits Compendium.

10        7.      On July 16, 2004, Fischbach appeared before the Court and confirmed that he was

11    in trial on another matter on the dates set for trial in *Union Bank of California v. Francis J. Lopez,*

12    *et. al.* and stated that his failure to appear at the scheduled trial date was due to a mix-up with

13    co-counsel. No declaration of co-counsel was ever provided to corroborate the existence of the

14    mix-up or how it came to be. Additionally, Lopez provided declarations to the Court from himself

15    and his physician stating Lopez was suffering from "diverticulitis" and was too ill to participate in

16    a trial. A true and correct copy of the Declarations is attached as Exhibit 3 to the Exhibits

17    Compendium. This was the first time the Court had been advised of Lopez's purported

18    diverticulitis. Stanly was aware that Lopez could easily induce the aggravating symptoms of his

19    condition by eating popcorn. The Court continued the trial for approximately 60 days — until

20    September 10, 2004.

21        8.      On September 9, 2004 — one day before the twice-continued trial was set to begin

22    — Lopez applied *ex parte* for a third trial continuance. A true and correct copy of the Ex Parte

23    Application is attached as Exhibit 4 to the Exhibits Compendium. Lopez claimed he was still

24    suffering from diverticulitis, and that the medication he took for it made him "groggy."[1] Lopez

25    further stated that he could not appear for trial due to scheduled colonoscopy and endoscopy

26

27

28

        [1]    See, Exhibits Compendium Tab 4.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

1115750/EK/5311.01

**ASA 0439**

1   procedures.[2] The evidence in support of Lopez's application was defective in that the declarations

2   were not signed under penalty of perjury under the laws of the State of California. The Court

3   ordered the application continued until September 10, 2004, and the Court's minute order

4   provided precise instructions to Lopez as to how to provide a competent declaration. A true and

5   correct copy of that Order is attached as Exhibit 5 to the Exhibits Compendium.

6          9.      On September 10, 2004, Stanly appeared with a proposal for the commencement of

7   trial. Lopez appeared through *appearance counsel* who was not affiliated with Fischbach's law

8   firm, and was unfamiliar with the status of the case. Despite the Court's specific instruction, no

9   competent declaration was provided to support Lopez's request for a third trial continuance.

10  Based on that, the Court denied his request.

11         10.     Trial proceeded on September 14, 2004, wherein Stanly obtained a judgment

12  against Lopez for $50,000.

<center>*Francis Lopez v. Alan Stanly*</center>

<center>San Diego Superior Court (Case No.: GIN029692)</center>

15  Case Summary (05/2003 - 06/2005):

16         11.     This case has been stayed by the involuntary bankruptcy petition filed herein.

17  Lopez initially sued Stanly for breach of fiduciary duty, trespassing, conversion and invasion of

18  privacy. All but the invasion of privacy claims were dismissed via a motion for summary

19  adjudication. Stanly counter-claimed on a variety of claims, including breach of fiduciary duty,

20  unfair competition and misappropriation of trade secrets. Stanly obtained many discovery

21  sanctions against Lopez for his discovery violations. Because of the involuntary bankruptcy

22  petition, the Court did not issue monetary sanctions against Lopez. However, prior to the filing of

23  the bankruptcy petition, a discovery referee recommended the issuance of several thousand dollars

24  of discovery sanctions against Lopez, and $5,198.75 of discovery sanctions were issued against

25  Lopez's counsel and co-Plaintiff. The Court also issued evidentiary sanctions against Lopez.

26  ///

27

28
     _____

     [2]      *Id.*

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
242 WEST BROADWAY, SUITE 1250
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

111575/FK/5311.01

ASA 0440

<u>Summary of Dilatory / Bad Faith Tactics:</u>

12.    Without justification or excuse, Lopez failed to provide any response to Stanly's First Set of written discovery propounded on him on December 31, 2003. Stanly filed a motion to compel discovery responses. During the extended meet and confer process, the parties worked out a resolution whereby Lopez paid Stanly $600 in sanctions and provided Stanly with discovery responses. In exchange, Stanly took the motion off calendar.

13.    On July 28, 2004, Stanly propounded a Second Set of written discovery consisting of interrogatories, requests for admission and requests for production on Martin Hudacko ("Hudacko") and Lopez. On September 2, 2004, Hudacko and Lopez provided responses consisting solely of identical boilerplate objections, without a single substantive response. After a meet and confer process, Lopez provided some substantive responses, however, these responses were still woefully inadequate. In addition, Lopez sought a protective order as to certain discovery (based on trade secret protection) and others he claimed he had already answered appropriately.

14.    In November of 2004, Lopez moved to appoint a discovery referee. Stanly agreed, and Judge Sarokin was appointed as discovery referee based on the parties' stipulation.

15.    On January 7, 2005, Stanly submitted to Judge Sarokin a motion to compel the discovery responses of Hudacko and Lopez. On February 18, 2005, Stanly's motion was granted, and Judge Sarokin ordered Lopez to respond to the written discovery requests and produce response documents. The 02/18/2005 ruling of Judge Sarokin was entered as an order of the trial court.

16.    On March 4, 2005 (the ordered production date), Lopez failed, without justification or excuse, to comply with Judge Sarokin's 02/18/2005 Order by failing to provide any responsive documents to Stanly's requests for production of documents. Stanly made several requests to Judge Sarokin for an additional Order requiring Lopez to produce documents, and for the imposition of sanctions against Lopez. On March 24, 2005, Judge Sarokin issued another Order requiring Lopez to produce all responsive documents on or before March 18, 2005.

17.    On April 1, 2005, after persistent requests from Stanly's attorneys, and two Orders

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1150
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

- 5 -

ASA 0441

1    from Judge Sarokin, Lopez finally produced approximately 50 pages of additional materials via

2    email. Although Lopez provided some documents, he still failed, without justification or excuse,

3    to provide a video tape and several documents specifically referred to in his discovery responses.

4    Further, Lopez failed to provide audio recordings and a CD ROM purportedly in his possession.

5          18.    On April 15, 2005, Stanly filed another motion to compel and request for monetary

6    sanctions against Lopez, requesting, amongst other documents, that the audio recordings be

7    produced. On April 28, 2005, Judge Sarokin granted Stanly's motion and demanded Lopez

8    produce all responsive documents, including the audio recordings and the CD ROM.

9          19.    After Judge Sarokin issued the 04/28/2005 Order, Lopez produced some audio

10   recordings, but failed, without justification or excuse, to produce any of the other documents he

11   had been ordered to produce.

12         20.    After several repeated requests for production of the missing documentation, Stanly

13   brought another motion to compel before Judge Sarokin. On June 24, 2005, Judge Sarokin

14   granted the motion, and issued evidentiary and monetary sanctions against Lopez in the amount of

15   $2,000. A true and correct copy of that Order is attached as Exhibit 6 to the Exhibits

16   Compendium.

17         21.    On March 8, 2005, Lopez failed, without justification or excuse, to appear for the

18   deposition of Stanly that Lopez had noticed for that day, causing Stanly and his counsel great

19   expense and inconvenience.

20         22.    Without justification or excuse, Lopez repeatedly served deposition subpoenas on

21   third parties without providing notice of the Subpoenas to Stanly in an effort to secretly obtain

22   discovery without Stanly's knowledge. Stanly was only made aware of Lopez' failure to provide

23   notice of third party depositions after certain witnesses informed Stanly of the subpoenas. Judge

24   Sarokin issued evidentiary sanctions against Lopez for this conduct in his 06/24/2005 Report.[3]

25         23.    Pursuant to the terms of a protective Order issued by Judge Sarokin, and adopted

26   by the trial court, all parties were ordered to provide declarations detailing their use of corporate

27

28

       [3]    See, Exhibits Compendium Tab 6.

KEEFE'N & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
242 WEST BROADWAY, SUITE 1150
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111575/LFK/5311.01

ASA 0442

1  funds for personal expenses. While Stanly complied with this request, Lopez did not. Lopez's

2  declaration failed, without justification or excuse, to describe his use of corporate funds with any

3  particularity. Stanly was forced to bring another motion before Judge Sarokin, requesting that

4  supplemental declarations be ordered. In his 06/24/2005 Report, Judge Sarokin granted Stanly's

5  motion and Ordered supplemental declarations be produced.[4]

6        24.     Lopez refused to stipulate to limit his emotional distress claims pursuant to

7  California Code of Civil Procedure §2032, despite Stanly's repeated requests and Lopez's

8  representations that he would enter into a stipulation. Accordingly, Stanly moved for an Order

9  requiring a medical examination of Lopez. Judge Sarokin issued sanctions against Lopez and his

10  counsel in the amount of $2,948.75 for their failure to initially stipulate. This ruling is contained

11  in Judge Sarokin's 06/24/2005 Report.[5]

12        25.     On October 22, 2004, Stanly served Lopez with a request for a Statement of

13  Damages. Lopez never provided it, despite multiple follow-up requests. Judge Sarokin ordered

14  the Statement served, and Lopez failed to comply with that Order, insisting that the Statement had

15  already been served on Stanly. Judge Sarokin issued monetary sanctions in the amount of $1,245

16  against Lopez for his failure to comply with his Order. This ruling was also contained in Judge

17  Sarokin's 06/24/2005 Report.[6]

18        *Enterprise Technology Holdings v. Noveon Systems, Inc. et al.*

19    United States District Court for the Southern District of California (Case No.: 05-cv-2236)

20  Case Summary (12/2005 - Present):

21        26.     Stanly is the President of Enterprise Technology Holdings, Inc. ("ETH") which

22  filed this action against Noveon Systems, Inc., a company whose common stock is all owned by

23  Mrs. Lopez. ETH successfully obtained a preliminary injunction against Noveon, enjoining

24  Noveon, and all those acting in concert with Noveon, from utilizing, selling, licensing or

25

26       [4]    See, Exhibits Compendium Tab 6.

27       [5]    See, Exhibits Compendium Tab 6.

28       [6]    See, Exhibits Compendium Tab 6.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
412 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111575/LFK/5311.01

ASA 0443

1  marketing Prism's software (the company formerly owned by Stanly and Lopez).  Thereafter,

2  without any proffered justification or excuse, Noveon simply stopped participating in the

3  litigation.  Noveon's counsel admitted his client was not participating in the litigation and, as a

4  result, Noveon's counsel withdrew from the case on January 17, 2007.  It appears Lopez decided

5  to stop doing business as Noveon, and let the company take the fall in the case.  Lopez left the

6  company with no money, no assets and no appointed officers or elected directors.

7         Although all of the Noveon stock is in his wife's name, Lopez was the company's founder

8  and the person who had managed all the day-to-day operations.  The last remaining issue in this

9  case is whether Lopez's wife is an alter-ego of Noveon and thus liable for the company's debts.

10 <u>Summary of Dilatory / Bad Faith Tactics:</u>

11        27.    In October of 2006, ETH propounded written discovery on Noveon.  Noveon failed

12 and refused to respond to the discovery requests even after multiple meet and confer attempts, and

13 two telephonic conferences with Magistrate Judge Catherine Bencivengo.

14        28.    ETH filed a motion for monetary, issue, evidentiary and terminating sanctions

15 against Noveon based on its failure to provide any discovery responses.  Noveon failed to oppose

16 the motion.  On December 8, 2007, Judge Bencivengo granted ETH's motion and ultimately

17 issued evidentiary, issue and terminating sanctions.

18        29.    On August 16, 2007, the Court granted ETH's motion for a default judgment

19 against Noveon.  A true and correct copy of that Order is attached as Exhibit 7 to the Exhibits

20 Compendium.

21                  <u>LOPEZ'S ALLEGATIONS OF UNFAIR BIAS</u>

22        30.    Lopez's apparent *modus operandi* in the Additional Lopez Cases was to allege

23 unfair bias against the judicial officers who issued sanctions or adverse rulings against him.

24        31.    In *Union Bank of California v. Francis J. Lopez, et. al.*, Lopez responded to Judge

25 Sarokin's adverse rulings (described above) by failing to pay his portion of Judge Sarokin's

26 referee fees, and filing a motion to disqualify him based on alleged bias.  Based on Lopez's

27 allegations, Judge Sarokin resigned rather than respond to the motion.  Lopez also alleged that

28 Judge Jacqueline Stern was biased against him.  He filed a complaint against Judge Stern with the

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1140
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2244 • FACSIMILE (619) 400-2201

111575\LFK/5311.01

ASA 0444

1  judicial counsel, and unsuccessfully moved to disqualify her.

2      32.    Likewise, in *Francis Lopez v. Alan Stanly*, Lopez responded to Judge Michael

3  Orfield's adverse rulings by alleging he was unfairly biased against him, and moving for

4  disqualification. Judge Orfield voluntarily recused himself, and the case was referred to Judge

5  Thomas Nugent.

6  <u>FEES INCURRED FOR PREPARING SUMMARIES RE: LOPEZ'S MISCONDUCT</u>

7      33.    The summaries of the Additional Lopez Cases discussed herein were specifically

8  prepared for Stanly's bankruptcy counsel (Keehn & Associates, APC) by my office in support of

9  Stanly's renewed request for monetary sanctions against Lopez in the above-entitled bankruptcy

10  case. My office spent a total of 6.25 hours compiling the summaries, reviewing past documents,

11  reviewing old case files and finalizing this declaration. Stanly was billed $1,018.75 for actual

12  legal fees incurred, as set forth below:

13      Attorney Timothy P. Dillon: 1.25 hour ($215 per hour)

14      Attorney Sunjina Kaur Ahuja: 5.0 hours ($150 per hour)

15  I declare under penalty of perjury under the law of the United States that the foregoing is

16  true and correct, and that this Declaration was executed on this 26th day of September, 2007, at

17  San Diego, California.

18

19

20              TIMOTHY P. DILLON

21

22

23

24

25

26

27

28

- 9 -

ASA 0445

# EXHIBIT 4

ASA 0446

October 19, 2007                    Keehn & Associates, APC                    Page 1
4:25 pm                           Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 9317 | 8/1/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 100.00 | 10.00 |
| 9345 | 8/3/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.20 | 100.00 | 20.00 |
| 9356 | 8/6/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 100.00 | 10.00 |
| 9431 | 8/23/2007 [Billed: 1896] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.20 | 100.00 | 20.00 |
| 9956 | 9/2/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEW OF WORLD SAVINGS DOCUMENTS IN PREPARATION FOR UPCOMING DEPOSITION. | 0.80 | 320.00 | 256.00 |
| 9973 | 9/4/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON DOCUMENT REVIEW AND PREPARATION FOR UPCOMING DEPOSITION. | 1.00 | 320.00 | 320.00 |
| 9991 | 9/5/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) E-CORRESPONDENCE WITH CLIENT REGARDING VIDEO TAPE DEPOSITION. | 0.10 | 320.00 | 32.00 |
| 9992 | 9/5/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON INITIAL PREPARATION FOR DEPOSITION OF FRANCIS LOPEZ. | 1.10 | 320.00 | 352.00 |
| 10519 | 9/9/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORKED IN SUPPORT OF DEPOSITION OF FRANCIS LOPEZ REGARDING OUTLINE AND SUMMARY OF EVIDENCE PERTAINING TO REQUISITE ELEMENTS OF CLAIM. | 1.30 | 225.00 | 292.50 |

**ASA 0447**

October 19, 2007                          Keehn & Associates, APC                          Page 2
4:25 pm                                 Detail Time Submittal Report

| Ref No | Date      | Staff | Client and Matter | Hours | Rate | Amount |
|--------|-----------|-------|-------------------|-------|------|--------|
| 10081 | 9/10/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEW OF DOCUMENTS AND RELATED PREPARATION FOR UPCOMING DEPOSITION | 2.60 | 320.00 | 832.00 |
| 10082 | 9/10/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM ATTORNEY HAYES GIVING NOTICE THAT LOPEZ WILL NOT ATTENED HIS 9/11/07 DEPOSITION | 0.20 | 320.00 | 64.00 |
| 10331 | 9/10/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) PARALEGAL SUPPORT REGARDING ATTORNEY PREPARATION FOR UPCOMING DEPOSITION OF FRANCIS LOPEZ. | 0.40 | 100.00 | 40.00 |
| 10333 | 9/10/2007 [Billed: 1934] | CKL | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) PARALEGAL SUPPORT REGARDING COMPILATION OF TAX DOCUMENTS PRODUCED BY LOPEZ. | 0.40 | 100.00 | 40.00 |
| 10086 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RR RECEIPT AND REVIEW OF E-CORRESPONDENCE FROM CLIENT REGARDING ISSUES WITH FRANCIS LOPEZ | 0.20 | 320.00 | 64.00 |
| 10087 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RR RECEIPT AND PRELIMINARY REVIEW OF MATERIALS FROM TIM DILLON'S OFFICE FOR USE IN SUPPORT OF SANCTIONS MOTIONS AGAINST LOPEZ | 0.80 | 320.00 | 256.00 |
| 10088 | 9/11/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.80 | 320.00 | 256.00 |
| 10140 | 9/13/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.10 | 320.00 | 32.00 |
| 10141 | 9/13/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.10 | 320.00 | 32.00 |

ASA 0448

October 19, 2007                          Keehn & Associates, APC                          Page 3
4:25 pm                              Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| | | | REQUEST. | | | |
| 10217 | 9/17/2007 | LSK [Billed: 1934] | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ▓▓▓▓▓▓ | 0.10 | 320.00 | 32.00 |
| 10218 | 9/17/2007 | LSK [Billed: 1934] | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ECO E-CORRESPONDENCE TO JOHN HAYES REGARDING DEPOSITION ISSUES | 0.10 | 320.00 | 32.00 |
| 10351 | 9/17/2007 | CKL [Billed: 1934] | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ▓▓▓▓▓▓▓ | 0.10 | 100.00 | 10.00 |
| 10553 | 9/18/2007 | LFK [Billed: 1934] | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEWED SUMMARIES AND SUPPORTING DOCUMENTS PERTAINING TO LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS PROVIDED BY THE OFFICES OF DILLON & GERARDI, APC; WORKED ON DRAFT OF COMPREHENSIVE SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS IN SUPPORT OF PETITIONING CREDITORS' REQUEST FOR SANCTIONS; DRAFTED EMAIL CORRESPONDENCE TO ATTORNEY SUNJINA K. AHUJA IN SUPPORT OF SAME. | 3.90 | 225.00 | 877.50 |
| 10240 | 9/19/2007 | LSK [Billed: 1934] | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) TCW TELEPHONE CONFERENCE WITH ALAN STANLY REGARDING SANCTIONS MOTIONS AND RELATED ISSUES | 0.40 | 320.00 | 128.00 |
| 10241 | 9/19/2007 | LSK [Billed: 1934] | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON PREPARATION FOR LOPEZ DEPOSITION AND GROUND WORK FOR SANCTIONS MOTION | 1.70 | 320.00 | 544.00 |
| 10253 | 9/20/2007 | LSK [Billed: 1934] | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM ATTORNEY HAYES REGARDING DEPOSITION | 0.20 | 320.00 | 64.00 |
| 10254 | 9/20/2007 | LSK [Billed: 1934] | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) TCW TELEPHONE CONFERENCE WITH CLIENT REGARDING FOLLOW-UP RE: SANCTIONS AND | 0.30 | 320.00 | 96.00 |

October 19, 2007
4:25 pm

Keehn & Associates, APC
Detail Time Submittal Report

Page 4

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| | | | RELATED ISSUES | | | |
| 10255 | 9/20/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON DEVELOPMENT OF EVIDENTIARY RECORD FOR SANCTIONS HEARING | 1.60 | 320.00 | 512.00 |
| 10574 | 9/20/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RECEIVED AND REVIEWED EMAIL CORRESPONDENCE FROM ATTORNEY SUNJINA K. AHUJA REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; COMPLETED DRAFT OF COMPREHENSIVE SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS IN SUPPORT OF PETITIONING CREDITORS' RENEWED REQUEST FOR SANCTIONS. | 1.30 | 225.00 | 292.50 |
| 10277 | 9/21/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON EVIDENTIARY SUPPORT FOR SANCTIONS MOTIONS | 1.30 | 320.00 | 416.00 |
| 10586 | 9/24/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED SUMMARY OF LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; DRAFTED CORRESPONDING COMPENDIUM OF EXHIBITS; DRAFTED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS. | 6.60 | 225.00 | 1485.00 |
| 10403 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVISE AND EDIT PROPOSED DECLARATION FOR TIMOTHY DILLON | 0.40 | 320.00 | 128.00 |
| 10404 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM CLIENT RE: SAME | 0.20 | 320.00 | 64.00 |
| 10405 | 9/25/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) WORK ON SANCTIONS MOTION | 0.50 | 320.00 | 160.00 |
| 10588 | 9/25/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED COMPENDIUM OF EXHIBITS REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; REVISED AND FINALIZED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; DRAFTED DECLARATION OF L. SCOTT KEEHN REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS. | 4.30 | 225.00 | 967.50 |

**ASA 0450**

October 19, 2007             Keehn & Associates, APC            Page 5
4:25 pm                  Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 10409 | 9/26/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RRR RECEIPT, REVIEW AND RESPOND TO MULTIPLE E-CORRESPONDENCE REGARDING DECLARATIONS | 0.20 | 320.00 | 64.00 |
| 10410 | 9/26/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ████████████████████████ | 0.40 | 320.00 | 128.00 |
| 10591 | 9/26/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) REVIEWED EMAILS FROM ATTORNEY DILLON AND CLIENT; REVISED DILLON DECLARATION. | 0.80 | 225.00 | 180.00 |
| 10440 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ████████████████████████ | 1.80 | 320.00 | 576.00 |
| 10441 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ████████████████████████ | 0.30 | 320.00 | 96.00 |
| 10442 | 9/27/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ████████████████████████ | 0.30 | 320.00 | 96.00 |
| 10599 | 9/27/2007 [Billed: 1934] | LFK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) FINALIZED DECLARATION OF TIMOTHY P. DILLON REGARDING LOPEZ'S DILATORY/BAD FAITH LITIGATION TACTICS; WORKED IN SUPPORT OF FILING PETITIONING CREDITORS' RENEWED REQUEST FOR MONETARY SANCTIONS AGAINST LOPEZ. | 0.30 | 225.00 | 67.50 |
| 10740 | 9/28/2007 [Billed: 1934] | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) RECEIVE, REVIEW AND RESPOND TO E-CORRESPONDENCE FROM ATTORNEY HAYES REGARDING SANCTIONS ISSUE. | 0.20 | 320.00 | 64.00 |
| 10868 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) ████████████████████████ | 0.20 | 320.00 | 64.00 |

October 19, 2007                    Keehn & Associates, APC                    Page 6
4:25 pm                          Detail Time Submittal Report

| Ref No | Date | Staff | Client and Matter | Hours | Rate | Amount |
|--------|------|-------|-------------------|-------|------|--------|
| 10869 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WOF WORK ON FOLLOW-UP REGARDING<br>SANCTIONS MOTION | 0.20 | 320.00 | 64.00 |
| 10871 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.90 | 320.00 | 288.00 |
| 10872 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.00 | 320.00 | 320.00 |
| 10961 | 10/1/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 1.00 | 320.00 | 320.00 |
| 10911 | 10/3/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10912 | 10/3/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |
| 10935 | 10/4/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ)<br>WOF WORK ON FOLLOW-UP REGARDING<br>PRESENTATION OF EVIDENTIARY MATERIALS IN<br>SUPPORT OF SANCTIONS MOTION | 0.90 | 320.00 | 288.00 |
| 10950 | 10/5/2007 | LSK | 05311001 MR. ALAN STANLY<br>RE: INVOLUNTARY CHAPTER 7 PETITION (LOPEZ) | 0.10 | 320.00 | 32.00 |

Daily Total (Billable)          42.30              11448.50  **

Grand Total (Billable)          42.30              11448.50  **

ASA 0452

# EXHIBIT C

ASA 0453

L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
**KEEHN & ASSOCIATES**
A Professional Corporation
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

Attorneys for **Petitioning Creditors**

<div style="text-align:center">

## UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

</div>

| | |
|---|---|
| In Re: | Case No. 05-05926-PBINV |
| FRANCIS J. LOPEZ, | **DECLARATION OF TIMOTHY P. DILLON** |
| Alleged Debtor. | **[BIFURCATED PHASE II]** |
| | Date:   October 1, 2007 (Status Conference) |
| | Time:   10:30 a.m. |
| | Judge: The Honorable Peter W. Bowie |
| | Ctrm:  4 |

I, TIMOTHY P. DILLON, declare as follows:

1.      I am an attorney duly admitted to practice before the Courts of this State. I am a shareholder of the law firm of Dillon & Gerardi, APC, counsel for Petitioning Creditor Alan Stanly ("Stanly") in certain cases involving the alleged debtor herein, Francis J. Lopez ("Lopez"), which were and/or are pending before the San Diego Superior Court and the United States District Court for the Southern District of California (the "Additional Lopez Cases"). In connection with the Additional Lopez Cases, I am the *shareholder in charge* of the engagement of the firm on behalf of Stanly, and the attorney within the firm who is most knowledgeable with respect to all aspects of the Additional Lopez Cases. I make this Declaration based upon facts within my

<div style="text-align:center">- 1 -</div>

111575/LF-KJ/5311.01

**ASA 0454**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

1    firsthand knowledge acquired in the course of conducting litigation against Lopez in the

2    Additional Lopez Cases.

3        2.    The delay and bad-faith litigation tactics employed by Lopez and his counsel

4    throughout the Additional Lopez Cases are summarized below.

5                *Union Bank of California v. Francis J. Lopez, et. al.*

6             **San Diego Superior Court(Case No.: GIN 030827)**

7    Case Summary (06/2003 - 09/2004):

8        3.    In or about June of 2003, Union Bank of California initiated a litigation against

9    both Lopez and Stanly as guarantors of a loan which their corporation, Prism, had defaulted on.

10   Both Lopez and Stanly filed cross-claims against each other for contribution and indemnity.

11   Lopez and Stanly eventually settled with Union Bank. Stanly prevailed on a motion for good faith

12   settlement and obtained a dismissal of Lopez's cross-claims. At time of trial, the sole issues left in

13   the case were Stanly's claims against Lopez for indemnity and contribution. Trial in the Union

14   Bank matter was continued several times due to Lopez's dilatory conduct, as more fully set forth

15   below. When the Court finally held trial, neither Lopez nor his counsel appeared. Trial proceeded

16   without Lopez.

17   Summary of Dilatory / Bad Faith Tactics:

18       4.    On March 9, 2004, Lopez requested a trial continuance due to the "illness of his

19   wife's aunt." Based on that request, the parties ultimately stipulated to continue the trial for four

20   months — until July 9, 2004.

21       5.    On July 2, 2004 — the date of the trial readiness conference — Lopez's attorney,

22   Joseph Fischbach ("Fischbach"), faxed a "Declaration re: Non-Readiness for Trial" to my office.

23   A true and correct copy of that Declaration is attached hereto as Exhibit 1 to the "Compendium of

24   Exhibits in Support of Renewed Request for an Enforcement Order Imposing Monetary Sanctions

25   Against Alleged Debtor Francis J. Lopez" (hereinafter referred to as the "Exhibits Compendium")

26   filed concurrently herewith. In his Declaration, Fischbach stated that he would be unable to

27   appear for trial because he had scheduled another trial for July 7, 2004. This was the first time

28   Fischbach had ever indicated that he would be unable to attend trial. He did not personally appear

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111575/LFK/5311.01

ASA 0455

1    at the trial readiness conference.  Instead, Fischbach sent an *appearance counsel* to the trial

2    readiness conference who was not affiliated with Fischbach's law firm, and was unfamiliar with

3    the case.  Because a "Declaration for Non-Readiness for Trial" is not a proper method of obtaining

4    a trial continuance, and Lopez did not properly apply for a continuance of trial, the Court had no

5    legal basis on which to order a continuance.   The Court then confirmed that trial call would

6    remain set for July 9, 2004.

7         6.    On July 9, 2004, Lopez and his counsel failed to appear for trial, and the trial court

8    issued an Order to Show Cause as to why sanctions should not be issued against them.  A true and

9    correct copy of the Order is attached as Exhibit 2 to the Exhibits Compendium.

10         7.    On July 16, 2004, Fischbach appeared before the Court and confirmed that he was

11   in trial on another matter on the dates set for trial in *Union Bank of California v. Francis J. Lopez,*

12   *et. al.* and stated that his failure to appear at the scheduled trial date was due to a mix-up with

13   co-counsel.  No declaration of co-counsel was ever provided to corroborate the existence of the

14   mix-up or how it came to be.  Additionally, Lopez provided declarations to the Court from himself

15   and his physician stating Lopez was suffering from "diverticulitis" and was too ill to participate in

16   a trial.  A true and correct copy of the Declarations is attached as Exhibit 3 to the Exhibits

17   Compendium.  This was the first time the Court had been advised of Lopez's purported

18   diverticulitis.  Stanly was aware that Lopez could easily induce the aggravating symptoms of his

19   condition by eating popcorn.  The Court continued the trial for approximately 60 days — until

20   September 10, 2004.

21         8.    On September 9, 2004 — one day before the twice-continued trial was set to begin

22   — Lopez applied *ex parte* for a third trial continuance.  A true and correct copy of the Ex Parte

23   Application is attached as Exhibit 4 to the Exhibits Compendium.  Lopez claimed he was still

24   suffering from diverticulitis, and that the medication he took for it made him "groggy."[1]  Lopez

25   further stated that he could not appear for trial due to scheduled colonoscopy and endoscopy

26

27

28

---

[1]    See, Exhibits Compendium Tab 4.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

111575/LFK/5311.01

ASA 0456

1  procedures.[2] The evidence in support of Lopez's application was defective in that the declarations

2  were not signed under penalty of perjury under the laws of the State of California. The Court

3  ordered the application continued until September 10, 2004, and the Court's minute order

4  provided precise instructions to Lopez as to how to provide a competent declaration. A true and

5  correct copy of that Order is attached as Exhibit 5 to the Exhibits Compendium.

6      9.    On September 10, 2004, Stanly appeared with a proposal for the commencement of

7  trial. Lopez appeared through *appearance counsel* who was not affiliated with Fischbach's law

8  firm, and was unfamiliar with the status of the case. Despite the Court's specific instruction, no

9  competent declaration was provided to support Lopez's request for a third trial continuance.

10 Based on that, the Court denied his request.

11     10.   Trial proceeded on September 14, 2004, wherein Stanly obtained a judgment

12 against Lopez for $50,000.

<div align="center">

*Francis Lopez v. Alan Stanly*

**San Diego Superior Court (Case No.: GIN029692)**

</div>

15 <u>Case Summary (05/2003 - 06/2005):</u>

16     11.   This case has been stayed by the involuntary bankruptcy petition filed herein.

17 Lopez initially sued Stanly for breach of fiduciary duty, trespassing, conversion and invasion of

18 privacy. All but the invasion of privacy claims were dismissed via a motion for summary

19 adjudication. Stanly counter-claimed on a variety of claims, including breach of fiduciary duty,

20 unfair competition and misappropriation of trade secrets. Stanly obtained many discovery

21 sanctions against Lopez for his discovery violations. Because of the involuntary bankruptcy

22 petition, the Court did not issue monetary sanctions against Lopez. However, prior to the filing of

23 the bankruptcy petition, a discovery referee recommended the issuance of several thousand dollars

24 of discovery sanctions against Lopez, and $5,198.75 of discovery sanctions were issued against

25 Lopez's counsel and co-Plaintiff. The Court also issued evidentiary sanctions against Lopez.

26 / / /

27

28    [2]   *Id.*

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW

**ASA 0457**

**Summary of Dilatory / Bad Faith Tactics:**

12.     Without justification or excuse, Lopez failed to provide any response to Stanly's First Set of written discovery propounded on him on December 31, 2003. Stanly filed a motion to compel discovery responses. During the extended meet and confer process, the parties worked out a resolution whereby Lopez paid Stanly $600 in sanctions and provided Stanly with discovery responses. In exchange, Stanly took the motion off calendar.

13.     On July 28, 2004, Stanly propounded a Second Set of written discovery consisting of interrogatories, requests for admission and requests for production on Martin Hudacko ("Hudacko") and Lopez. On September 2, 2004, Hudacko and Lopez provided responses consisting solely of identical boilerplate objections, without a single substantive response. After a meet and confer process, Lopez provided some substantive responses, however, these responses were still woefully inadequate. In addition, Lopez sought a protective order as to certain discovery (based on trade secret protection) and others he claimed he had already answered appropriately.

14.     In November of 2004, Lopez moved to appoint a discovery referee. Stanly agreed, and Judge Sarokin was appointed as discovery referee based on the parties' stipulation.

15.     On January 7, 2005, Stanly submitted to Judge Sarokin a motion to compel the discovery responses of Hudacko and Lopez. On February 18, 2005, Stanly's motion was granted, and Judge Sarokin ordered Lopez to respond to the written discovery requests and produce response documents. The 02/18/2005 ruling of Judge Sarokin was entered as an order of the trial court.

16.     On March 4, 2005 (the ordered production date), Lopez failed, without justification or excuse, to comply with Judge Sarokin's 02/18/2005 Order by failing to provide any responsive documents to Stanly's requests for production of documents. Stanly made several requests to Judge Sarokin for an additional Order requiring Lopez to produce documents, and for the imposition of sanctions against Lopez. On March 24, 2005, Judge Sarokin issued another Order requiring Lopez to produce all responsive documents on or before March 18, 2005.

17.     On April 1, 2005, after persistent requests from Stanly's attorneys, and two Orders

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

ASA 0458

1   from Judge Sarokin, Lopez finally produced approximately 50 pages of additional materials via

2   email.  Although Lopez provided some documents, he still failed, without justification or excuse,

3   to provide a video tape and several documents specifically referred to in his discovery responses.

4   Further, Lopez failed to provide audio recordings and a CD ROM purportedly in his possession.

5          18.     On April 15, 2005, Stanly filed another motion to compel and request for monetary

6   sanctions against Lopez, requesting, amongst other documents, that the audio recordings be

7   produced.  On April 28, 2005, Judge Sarokin granted Stanly's motion and demanded Lopez

8   produce all responsive documents, including the audio recordings and the CD ROM.

9          19.     After Judge Sarokin issued the 04/28/2005 Order, Lopez produced some audio

10  recordings, but failed, without justification or excuse, to produce any of the other documents he

11  had been ordered to produce.

12         20.     After several repeated requests for production of the missing documentation, Stanly

13  brought another motion to compel before Judge Sarokin.  On June 24, 2005, Judge Sarokin

14  granted the motion, and issued evidentiary and monetary sanctions against Lopez in the amount of

15  $2,000.  A true and correct copy of that Order is attached as Exhibit 6 to the Exhibits

16  Compendium.

17         21.     On March 8, 2005, Lopez failed, without justification or excuse, to appear for the

18  deposition of Stanly that Lopez had noticed for that day, causing Stanly and his counsel great

19  expense and inconvenience.

20         22.     Without justification or excuse, Lopez repeatedly served deposition subpoenas on

21  third parties without providing notice of the Subpoenas to Stanly in an effort to secretly obtain

22  discovery without Stanly's knowledge.  Stanly was only made aware of Lopez' failure to provide

23  notice of third party depositions after certain witnesses informed Stanly of the subpoenas.  Judge

24  Sarokin issued evidentiary sanctions against Lopez for this conduct in his 06/24/2005 Report.[3]

25         23.     Pursuant to the terms of a protective Order issued by Judge Sarokin, and adopted

26  by the trial court, all parties were ordered to provide declarations detailing their use of corporate

27

28         [3]     See, Exhibits Compendium Tab 6.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 * FACSIMILE (619) 400-2201

111575/LFK/5311.01

**ASA 0459**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2300 • FACSIMILE (619) 400-2301

1  funds for personal expenses.  While Stanly complied with this request, Lopez did not.  Lopez's

2  declaration failed, without justification or excuse, to describe his use of corporate funds with any

3  particularity.  Stanly was forced to bring another motion before Judge Sarokin, requesting that

4  supplemental declarations be ordered.  In his 06/24/2005 Report, Judge Sarokin granted Stanly's

5  motion and Ordered supplemental declarations be produced.[4]

6        24.    Lopez refused to stipulate to limit his emotional distress claims pursuant to

7  California Code of Civil Procedure §2032, despite Stanly's repeated requests and Lopez's

8  representations that he would enter into a stipulation.  Accordingly, Stanly moved for an Order

9  requiring a medical examination of Lopez.  Judge Sarokin issued sanctions against Lopez and his

10 counsel in the amount of $2,948.75 for their failure to initially stipulate.  This ruling is contained

11 in Judge Sarokin's 06/24/2005 Report.[5]

12       25.    On October 22, 2004, Stanly served Lopez with a request for a Statement of

13 Damages.  Lopez never provided it, despite multiple follow-up requests.  Judge Sarokin ordered

14 the Statement served, and Lopez failed to comply with that Order, insisting that the Statement had

15 already been served on Stanly.  Judge Sarokin issued monetary sanctions in the amount of $1,245

16 against Lopez for his failure to comply with his Order.  This ruling was also contained in Judge

17 Sarokin's 06/24/2005 Report.[6]

18         *Enterprise Technology Holdings v. Noveon Systems, Inc. et al.*

19    United States District Court for the Southern District of California (Case No.: 05-cv-2236)

20 Case Summary (12/2005 - Present):

21       26.    Stanly is the President of Enterprise Technology Holdings, Inc. ("ETH") which

22 filed this action against Noveon Systems, Inc., a company whose common stock is all owned by

23 Mrs. Lopez.  ETH successfully obtained a preliminary injunction against Noveon, enjoining

24 Noveon, and all those acting in concert with Noveon, from utilizing, selling, licensing or

25

26    [4]    See, Exhibits Compendium Tab 6.

27    [5]    See, Exhibits Compendium Tab 6.

28    [6]    See, Exhibits Compendium Tab 6.

111575/LFK/5311.01

**ASA 0460**

1  marketing Prism's software (the company formerly owned by Stanly and Lopez).  Thereafter,

2  without any proffered justification or excuse, Noveon simply stopped participating in the

3  litigation.  Noveon's counsel admitted his client was not participating in the litigation and, as a

4  result, Noveon's counsel withdrew from the case on January 17, 2007.  It appears Lopez decided

5  to stop doing business as Noveon, and let the company take the fall in the case.  Lopez left the

6  company with no money, no assets and no appointed officers or elected directors.

7       Although all of the Noveon stock is in his wife's name, Lopez was the company's founder

8  and the person who had managed all the day-to-day operations.  The last remaining issue in this

9  case is whether Lopez's wife is an alter-ego of Noveon and thus liable for the company's debts.

10 **Summary of Dilatory / Bad Faith Tactics:**

11      27.     In October of 2006, ETH propounded written discovery on Noveon.  Noveon failed

12 and refused to respond to the discovery requests even after multiple meet and confer attempts, and

13 two telephonic conferences with Magistrate Judge Catherine Bencivengo.

14      28.     ETH filed a motion for monetary, issue, evidentiary and terminating sanctions

15 against Noveon based on its failure to provide any discovery responses.  Noveon failed to oppose

16 the motion.  On December 8, 2007, Judge Bencivengo granted ETH's motion and ultimately

17 issued evidentiary, issue and terminating sanctions.

18      29.     On August 16, 2007, the Court granted ETH's motion for a default judgment

19 against Noveon.  A true and correct copy of that Order is attached as Exhibit 7 to the Exhibits

20 Compendium.

21                    <u>LOPEZ'S ALLEGATIONS OF UNFAIR BIAS</u>

22      30.     Lopez's apparent *modus operandi* in the Additional Lopez Cases was to allege

23 unfair bias against the judicial officers who issued sanctions or adverse rulings against him.

24      31.     In *Union Bank of California v. Francis J. Lopez, et. al.*, Lopez responded to Judge

25 Sarokin's adverse rulings (described above) by failing to pay his portion of Judge Sarokin's

26 referee fees, and filing a motion to disqualify him based on alleged bias.  Based on Lopez's

27 allegations, Judge Sarokin resigned rather than respond to the motion.  Lopez also alleged that

28 Judge Jacqueline Stern was biased against him.  He filed a complaint against Judge Stern with the

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2500 ~ FACSIMILE (619) 400-2501

111575/LFK/5311.01

**ASA 0461**

1  judicial counsel, and unsuccessfully moved to disqualify her.

2     32.    Likewise, in *Francis Lopez v. Alan Stanly*, Lopez responded to Judge Michael

3  Orfield's adverse rulings by alleging he was unfairly biased against him, and moving for

4  disqualification.  Judge Orfield voluntarily recused himself, and the case was referred to Judge

5  Thomas Nugent.

6     **FEES INCURRED FOR PREPARING SUMMARIES RE: LOPEZ'S MISCONDUCT**

7     33.    The summaries of the Additional Lopez Cases discussed herein were specifically

8  prepared for Stanly's bankruptcy counsel (Keehn & Associates, APC) by my office in support of

9  Stanly's renewed request for monetary sanctions against Lopez in the above-entitled bankruptcy

10 case.  My office spent a total of 6.25 hours compiling the summaries, reviewing past documents,

11 reviewing old case files and finalizing this declaration.  Stanly was billed $1,018.75 for actual

12 legal fees incurred, as set forth below:

13        Attorney Timothy P. Dillon: 1.25 hour ($215 per hour)

14        Attorney Sunjina Kaur Ahuja: 5.0 hours ($150 per hour)

15     I declare under penalty of perjury under the law of the United States that the foregoing is

16 true and correct, and that this Declaration was executed on this 26th day of September, 2007, at

17 San Diego, California.

18

19

20     TIMOTHY P. DILLON

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

111575/LFK/5311.01

**ASA 0462**

# TAB 125

1  M. Jonathan Hayes (Bar No. 90388)
   **Law Office of M. Jonathan Hayes**
2  21800 Oxnard St, Suite 840
   Woodland Hills, CA 91367
3  Telephone: (818) 710-3656
   Facsimile: (818) 710-3659
4  jhayes@polarisnet.net

5  Attorneys for Alleged Debtor Francis Lopez

*FILED AC*

*08 JAN 17 AM 10: 35*

*CLERK*
*U.S. BANKRUPTCY CT.*
*SO. DIST. OF CALIF.*

6

7

8                UNITED STATES BANKRUPTCY COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10                        SAN DIEGO DIVISION

11

12  In Re:                              )  CASE NO. 05-05926-PBINV
                                        )
13        FRANCIS J. LOPEZ,             )  Involuntary Chapter 7
                                        )
14        Alleged Debtor                )
                                        )  **OPPOSITION OF ALLEGED DEBTOR**
15                                      )  **TO MOTION FOR TERMINATING**
                                        )  **SANCTIONS; DECLARATION OF**
16                                      )  **FRANCIS J. LOPEZ IN SUPPORT**
                                        )  **THEREOF**
17                                      )
                                        )  Date: January 28, 2007
18                                      )  Time: 10:30 a.m.
                                        )  Ctrm: 4
19                                      )

20      TO THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY

21  JUDGE, TO MOVANT PETITIONING CREDITOR ALAN STANLY:

22

23      The Declaration of Francis Lopez attached hereto is in response to the Motion for

24  Terminating Sanctions filed by Mr. Keehn. The Motion is based on the failure of Mr.

25  Lopez to pay sanctions to Mr. Keehn in the amount of $8,130.50.

26      This is a case about an alleged Debtor who owns a home with his wife in Florida

27  and virtually nothing else. The Petitioning Creditor has acknowledged that. The Alleged

28

1    Debtor attempted to pay every creditor including Mr. Stanly more than a year ago which

2    motion was opposed by Mr. Stanly.  The Court was inundated with the bills and debts of

3    Mr. Lopez at the previous Motion for Summary Judgment re the total number of creditors.

4    The Court knows that there are very few creditors of this estate who are owed small

5    amounts beyond Mr. Stanly.

6         Mr. Lopez prays that this court deny the motion to strike the Answer and set a trial

7    date.  Mr. Keehn, the attorney for the single petitioning creditor, has advised the court on

8    more than one occasion that once the deposition of Mr. Lopez was complete, he would file

9    a Motion for Summary Judgment as to Phase II.  Mr. Lopez traveled to San Diego at his

10   own cost without a court order requiring him to do so and appeared for his deposition on

11   October 23, 2007.  He answered the questions of Mr. Keehn for more than six hours.  The

12   long trail of this case is ready to finish.  The Court should not allow it to be short-circuited

13   by striking the Answer.

14        As to the Sanctions, Mr. Lopez, through counsel, offered on December 17, 2007 to

15   pay $4,000 of the sanctions immediately and $1,000 per month for four months thereafter.

16   See **Exhibit "A."**  Mr. Keehn responded on December 20, 2007 with a resounding "no."

17   That email communication is not attached because it contained other settlement discussion.

18        Terminating sanctions is an extreme remedy which should not be assessed except in

19   extraordinary circumstances.  Here Mr. Lopez has provided every document in his

20   possession, responded to written discovery more than once, and attended his deposition

21   twice.  Nothing has been withheld; the most that has happened is that Mr. Lopez has

22   perhaps been dilatory with some of his responses and in making preparations to attend his

23   second deposition in San Diego.  There was one Motion to Compel which was complied

24   with.  The Second Motion to Compel resulted in an Order of this court prohibiting Mr.

25   Lopez from introducing any document as evidence that had not already been produced.

26   There was no finding of the court that Mr. Lopez had in any way violated the Order from

27   the first Motion to Compel.  Counsel for Lopez agreed to the prohibitory order after

28   explaining to the court that there were simply no further documents that were relevant that

1   could be produced.  There is no discovery order that Mr. Lopez has failed to comply with.

2   There was no order to appear for his deposition.  Mr. Lopez voluntarily traveled to San

3   Diego for the convenience of Mr. Keehn without a court order.

4         In *Wyle v. R.J Reynolds Inductries, Inc.* 709 F.2d 585 (9th Cir. 1983), the court said,

5   "courts have inherent power to dismiss an action when a party has willfully deceived the

6   court and engaged in conduct utterly inconsistent with the orderly administration of

7   justice."    There is no deceit on behalf of Mr. Lopez.  The *Wylie* court said, "[B]ecause

8   dismissal is so harsh a penalty, it should be imposed only in extreme circumstances" citing

9   *Raiford v. Pounds,* 640 F.2d 944,945 (9th Cir. 1981).  "Sanctions interfering with a

10  litigant's claim or defenses violate due process when imposed merely for punishment of an

11  infraction that did not threaten to interfere with the rightful decision of the case." Citing

12  *G-K Properties v. Redevelopment Agency,* 577 F.2d 645, 648 (9th Cir. 1978).

13        Mr. Keehn has received every document he has requested.  He has taken two

14  depositions over two full day periods.  He has told the court he will file a Motion for

15  Summary Judgment once the deposition is complete.  The deposition is complete.  Mr.

16  Keehn has not suggested that Mr. Lopez refused to respond to any question asked or that

17  the delay in flying to California of about five weeks resulted in any prejudice or harm to

18  his ability to go through with his Motion for Summary Judgment.

19        The *Wylie* court "determined that the deliberate deception and the irreparable loss of

20  material evidence justified the sanction of dismissal."  There has been no deliberate

21  deception and no loss of anything.

22        In *Matter of Visioneering Const.,* 661 F.2d 119, 123 (9th Cir. 1981), an involuntary

23  petition case, the court struck the Answer.  The court said," [The alleged debtor's] near

24  total refusal to facilitate discovery related to the jurisdictional factual issues and continued

25  failure to respect discovery orders were therefore justifiably sanctioned by the entry of

26  default."  There has been no "near total refusal."  Mr. Lopez has provided hundreds of

27  pages of documents to Mr. Keehn.

28

1        Wherefore Alleged Debtor Francis Lopez prays that the court deny this motion,

2    allow him to pay the sanctions in payments of $4,000 immediately and $1,000 per month

3    and set a date to hear the Motion for Summary Judgment that Stanly has long promised to

4    file.

5

6

7    Dated: January 14, 2008          Respectfully submitted

8

9    By: _____

10        M. Jonathan Hayes

11        Attorney for Alleged Debtor Francis
          Lopez

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2           **DECLARATION OF FRANCIS LOPEZ**
3
4       I, Francis Lopez, declare and state as follows:
5       1.   I am the alleged debtor in this involuntary proceeding.  I have personal
6   knowledge of the facts stated herein, and if called as a witness, I could and would testify
7   competently thereto.
8       2.   I did not make the sanctions payment because I was unable to come up with the
9   full amount of the sanctions in Mid-December.  I authorized my attorney to offer to pay
10  $4,000 immediately and $1,000 per month until paid.
11
12      I declare under penalty of perjury that the foregoing is true and correct to the best of
13  my knowledge, information and belief.  Executed on this 14th day of January, 2008 at
14  Destin, Florida.
15
16                              By:  _____
17                                   Francis Lopez
18
19
20
21
22
23
24
25
26
27
28

## M. Jonathan Hayes

**From:**     "M. Jonathan Hayes" <jhayes@polarisnet.net>
**To:**       "L. Scott Keehn" <scottk@keehnlaw.com>
**Sent:**     Wednesday, December 19, 2007 11:05 AM
**Subject:**  Francis Lopez Sanctions

Mr. Keehn,

My client does not have the $8,100 in sanction to pay now.  He can pay you $4,000 now and $1,000 per month until paid.  Let me know if that will work.

Thanks,  Jon Hayes

M. Jonathan Hayes
jhayes@polarisnet.net
21800 Oxnard St. Suite 840
Woodland Hills, CA 91367
(818) 710-3656
(818) 710-3659 fax
(818) 402-7537 cell
www.lawprofessorblogs.com
If you have received this message in error, please call (818) 710-3656
and notify me of that fact and destroy all copies of this message."
Thank you.

ASA 0468

1

2 **PROOF OF SERVICE**

3  I, MJ Hayes, declare:

4  I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 21800 Oxnard St., Suite 840, Woodland Hills, CA 91367.  On January 15, 2008, I served the within documents:

5

6 **OPPOSITION OF ALLEGED DEBTOR TO MOTION FOR TERMINATING SANCTIONS; DECLARATION OF FRANCIS J. LOPEZ IN SUPPORT THEREOF**

7

8      by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

9   X   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

10

11   ..   by causing personal delivery by                 of the document(s) listed above to the person(s) at the address(es) set forth below.

12

13   ..   by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery

14

15   ..   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

16 L. Scott Keehn
17 KEEHN & Assoc, APC
   402 W. Broadway, Suite 1210
18 San Diego, CA 92101
   AND BY EMAIL
19

20  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

21

22

23  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

24

25  Executed on January 15, 2008, at Los Angeles, California.

26

27

28  _____
                  MJ Hayes

# TAB 126-1

1 | L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
2 | **KEEHN & ASSOCIATES**
A Professional Corporation
3 | 402 West Broadway, Suite 1210
San Diego, California 92101
4 | Telephone: (619) 400-2200

5 | Attorneys for **Petitioning Creditors**

6

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | In Re:                              ) Case No.  05-05926-PBINV
                                       )
12 |      FRANCIS J. LOPEZ,            ) **DECLARATION OF L. SCOTT KEEHN**
                                       )
13 |           Alleged Debtor.         ) **[BIFURCATED PHASE II]**
                                       )
14                                     )
                                       )
15                                     ) Date:   January 28, 2008
                                       ) Time:  10:30 a.m.
16                                     ) Judge: The Honorable Peter W. Bowie
                                       ) Ctrm:  4
17                                     )
                                       )
18 | _____ )

19 |      I, L. SCOTT KEEHN, declare as follows:

20 |      1.      I am an attorney at law, duly licenced to practice before all courts of this State, and

21 | before the United States District Court for the Southern District of California.  I am a shareholder

22 | of the firm Keehn & Associates, APC, attorneys of record for Petitioning Creditors.  I have

23 | personal knowledge of the factual matters stated herein.

24 |      2.      Attached hereto as Exhibit 1 is a true copy of excerpts from the transcript of the

25 | Court's proceeding conducted in this case on November 19, 2007.

26 |      3.      On November 26, 2007, I sent Mr. Hayes an e-mail to which I attached a copy of

27 | the lodged Sanctions Order, a Transmittal Memorandum, and wire instructions for the Firm's

28 | general account.  The Transmittal Memorandum explained the Petitioning Creditors' expectation

*(left margin, vertical text)* KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0470**

112907/LFK/5311.01

1  of full and timely compliance with the Sanctions Order. A true copy of the e-mail and its

2  attachments are attached hereto marked Exhibit 2 and incorporated herein by this reference.

3      4.      As of the date of this Declaration, no portion of the $8,130.50 sanctions award

4  (pursuant to this Court's Order dated 11/19/2007) has been paid, or tendered.

5      5.      At no time during the 30-day time period from when the Court made the Sanctions

6  Order (11/19/2007), through the payment deadline (12/18/2007), did Alleged Debtor Francis J.

7  Lopez ("Lopez") or his attorney ever contact my office to discuss any aspect of the sanctions

8  award other than the e-mail sent by Mr. Hayes on December 19, 2007 (the Sanctions Deadline),

9  asserting for the first time Lopez's inability to pay and requesting a consensual variance from the

10 relief requested. A copy of that e-mail is attached hereto as Exhibit 3. My office has never been

11 provided with any specific facts pertaining to Lopez's efforts to pay the sanctions award, and/or

12 the reasons for his purported inability to pay the full amount on or before December 18, 2007, as

13 ordered by the Court.

14     6.      On December 20, 2007, I promptly responded to Mr. Hayes' e-mail declining to

15 acquiesce to any variance from the performance required by the Sanctions Order. Attached hereto

16 marked Exhibit 4 and incorporated herein by this reference is a true, but redacted copy of that e-

17 mail. The redacted portion of the e-mail embodies a compromise proposal which is redacted to

18 preserve the privilege pursuant to Rule 408 of the Federal Rules of Evidence.

19     7.      On October 22, 2007, I personally conducted the videotaped Deposition of Francis

20 J. Lopez (the "Lopez Deposition") in San Diego, California. In the course of the Lopez

21 Deposition, Lopez authenticated an employment contract entitled "Cargotel Contractor

22 Agreement" as a true and correct copy of the employment agreement between him and Cargotel,

23 Inc.[1] Lopez testified that he entered into the employment contract with Cargotel in August of

24 2006.[2] A true and correct copy of: (a) the relevant portions of the Lopez Deposition Transcript,

25 and (b) the complete, executed copy of the Cargotel Contractor Agreement (Deposition Exhibit 2)

26

27      [1]      See, Lopez Deposition transcript, page 20, lines 6 - 21.

28      [2]      See, Lopez Deposition transcript, page 21, lines 5 - 18.

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

ASA 0471

1    is attached hereto as Exhibit 5.

2         I declare under penalty of perjury under the laws of the United States that the foregoing is

3    true and correct, and that this Declaration was executed this 22nd day of January, 2008, at San

4    Diego, California.

5                     //s// L. Scott Keehn

6                     **L. Scott Keehn**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

**ASA 0472**

# EXHIBIT 1

ASA 0473

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3    CHIEF JUDGE PETER W. BOWIE, PRESIDING

4

5                                    )

6                                    )

7    FRANCIS J. LOPEZ              ) CASE NO. 05-05926-PB

8                                    )

9                                    )

10   _____)

11

12

13

14   1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

15   2) PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER
        IMPOSING MONETARY SANCTIONS AGAINST THE DEBTOR

16

17   REPORTER'S TRANSCRIPT OF PROCEEDINGS

18   SAN DIEGO, CALIFORNIA

19   MONDAY, NOVEMBER 19, 2007

20

21

22

23   SAN DIEGO BANKRUPTCY REPORTERS
     BY: LYNETTE ALVES
24   P.O.BOX 496
     SOLANA BEACH, CA 92075
25   (858) 336-8558

```
 1    CLAIMS, WE COULD HAVE BROUGHT THAT REQUEST IN GOOD -- IN

 2    EQUALLY GOOD FAITH; WE DIDN'T.  BUT WE'RE ASKING FOR THE

 3    MONEY.  WE THINK WE'RE ENTITLED TO THE MONEY.  WE THINK THE

 4    COURT SHOULD AWARD IT; AWARD IT ALL; AND, MAKE IT PAYABLE

 5    FORTHWITH.

 6          THE COURT:  ALL RIGHT.

 7              WELL, I'VE BEEN OVER IT MULTIPLE TIMES, AND I DO

 8    THINK IT'S TIME.

 9              I HAVE TO SAY THAT I'M -- YOU KNOW, AS TROUBLED

10    AS I'VE BEEN ALL ALONG IN THIS CASE AND MY DISTRESS HAS

11    GROWN OVER THE INTERVENING PERIOD OF TIME, IN REVIEWING

12    MR. LOPEZ'S OPPOSITION TO THIS PARTICULAR MOTION AND

13    PARTICULARLY HIS EXPLANATION OF THE BUSINESS LEADING UP TO

14    SEPTEMBER 11TH, REALLY, REALLY TROUBLES ME, FRANKLY.

15              AND IT TROUBLES ME IN ANOTHER PARTICULAR.

16    MR. HAYES HAS SURMISED THAT THESE MOTIONS ARE REALLY AN

17    EFFORT TO PIN MR. LOPEZ INTO A POSITION WHERE HE GETS SOME

18    KIND OF TERMINATING SANCTION, IF YOU WILL, AGAINST HIM THAT

19    ALLOWS A DETERMINATION, IN FACT, HE'S A DEBTOR; NOT AN

20    ALLEGED DEBTOR; WHETHER IT'S BY STRIKING HIS RESPONSE IN

21    OPPOSITION TO THE PETITION -- THE INVOLUNTARY PETITION --

22    OR IN SOME OTHER FORM.  AND CERTAINLY THAT'S A THEORY WHICH

23    WOULD NOT BE GROUNDLESS, ASSUMING THAT THAT'S MR. KEEHN'S

24    THEORY.  BUT THAT'S WHAT PUZZLES ME ALL THE MORE.

25              IF THERE'S ANY THOUGHT THAT THAT'S A POSSIBLE
```

ASA 0475

```
 1    THEORY, THEN WHY WOULDN'T YOU STEP UP AND SAY RIGHT OUT OF
 2    THE SHOOT, "SEPTEMBER 11TH ISN'T GOING TO WORK FOR ME."
 3    OR, "I NEED A DATE -- WE NEED TO JUGGLE A DATE.  I'VE GOT
 4    THESE TWO OTHER BALLS UP IN THE AIR WITH MY GEORGIA AND
 5    MICHIGAN TRAVEL AND STUFF."  AND, "I NEED TO NAIL THIS DOWN
 6    AND HAVE SOME COMMUNICATION THAT'S GOING TO THOSE ENDS."
 7            AND PARTICULARLY WITH WHAT HAD PRECEDED IT.  I
 8    JUST DON'T FIND ANY KIND -- ANY SEMBLANCE OF GOOD FAITH ON
 9    MR. LOPEZ'S PART IN RESPONDING TO THIS.  I'M NOT CLEAR IN
10    MY MIND WHETHER IT'S A MATTER OF HIS JUST NOT RECOGNIZING
11    THE SIGNIFICANCE OF THIS MATTER TO HIM; NOT SETTING IT AS
12    SOME KIND OF PRIORITY; HAVING SOME SENSE THAT IF HE'S NOT
13    SERVED WITH A SUBPOENA HE'S A FREE AGENT.  I HONESTLY DON'T
14    KNOW WHAT IT IS.
15            BUT AT THIS POINT IN TIME, I THINK IT'S
16    APPROPRIATE TO AWARD MONETARY SANCTIONS AGAINST MR. LOPEZ.
17    THE ORIGINAL AMOUNT SOUGHT BEFORE THIS MOTION WAS $4,242.
18    IN ADDITION, FUNDS ARE SOUGHT TO COMPENSATE FOR THE TIME
19    EXPENDED IN PREPARING FOR THE DEPOSITION THOUGHT TO OCCUR
20    ON SEPTEMBER 11TH IN THE AMOUNT OF $2,164.50; THERE WAS THE
21    $224 FOR COMMUNICATING WITH MR. HAYES ABOUT THE
22    NON-APPEARANCE OF MR. LOPEZ IN THERE; AND, THERE'S A SUM
23    FOR PREPARING THE RENEWED MOTION, WHICH, FRANKLY, I THINK
24    IS TOO HIGH.  SO I'M ALLOWING $1,500 FOR PREPARING THE
25    MOTION.
```

```
 1            SO THAT'S AN AWARD TOTALING THE COMPONENTS OF
 2    $4,242; $2,164.50; $1,500 FOR PREPARING THE MOTION; AND,
 3    $224 FOR THE COMMUNICATION.  AND WHEN YOU ADD THOSE UP
 4    THAT'S THE TOTAL MONETARY SANCTION I'M AWARDING AT THIS
 5    TIME.  AND I'M STILL RESERVING ON THE DIFFERENCE.
 6            BUT AT THIS POINT IN TIME, THOSE SUMS WILL BE
 7    REQUIRED TO BE PAID WITHIN THIRTY DAYS TO MR. KEEHN'S FIRM.
 8    AND YOUR CLIENT SHOULD BE MADE VERY AWARE, MR. HAYES, THAT
 9    IF HE FAILS TO PAY THAT TOTAL SUM WITHIN THIRTY DAYS OF
10    TODAY'S DATE -- AND THAT'S TODAY'S DATE, NOT THE DATE OF
11    ENTRY OF THE ORDER -- WITHIN THIRTY DAYS OF TODAY'S DATE, I
12    WILL CONSIDER A TERMINATING SANCTION MOTION TO STRIKE HIS
13    OPPOSITION TO THE PETITION.  AND WE'LL TAKE IT FROM THERE.
14        MR. KEEHN:  YOUR HONOR, COULD I ASK THE COURT TO GO
15    OVER THE AWARD ONE MORE TIME?
16        THE COURT:  SURE.  $4,242 FROM YOUR ORIGINAL
17    APPLICATION; $2,164.50 FOR THE 7.7 HOURS PREPARING FOR THE
18    9-11 DEPOSITION; $1,500 FOR PREPARING PRESENT MOTION; AND,
19    THE $224 FOR THE TIME SPENT ON SEPTEMBER 10TH COMMUNICATING
20    WITH MR. HAYES.  THOSE ARE THE COMPONENTS.
21        MR. KEEHN:  THANK YOU, YOUR HONOR.
22        THE COURT:  ALL RIGHT.
23            NEW STATUS CONFERENCE DATE?
24        MR. KEEHN:  WELL, YOUR HONOR, IT WOULD BE GOOD TO SET
25    IT FOR A DATE THAT'S MORE THAN THIRTY DAYS BEYOND TODAY'S
```

ASA 0477

# EXHIBIT 2

ASA 0478

# L. Scott Keehn - Sanctions Order, Notice of Lodgement & TM

**From:**       L. Scott Keehn
**To:**         jhayes@polarisnet.net
**Date:**       11/26/2007 1:41 PM
**Subject:**    Sanctions Order, Notice of Lodgement & TM
**Attachments:** Stanly112307TM&NOLSamcOrd.pdf

Jon,

Please see the attachments below, and let me know if you have any questions, comments or objections to the
form of the order.

Best regards,
Scott



This is an e-mail from Keehn & Associates, APC, Attorneys-at-Law.  THE CONTENTS OF THIS E-MAIL ARE
PRIVILEGED AND CONFIDENTIAL AND ARE INTENDED ONLY FOR THE USE OF THE ORDINARY USER OF THE
E-MAIL ADDRESS TO WHICH IT WAS ADDRESSED.  No one
else may copy or forward all or any of it in any form.  Our postal address is 402 West Broadway, Suite 1210,
San Diego, California  92101.

If you receive this e-mail in error, we would be obliged if you would contact the sender by reply email or
telephone at (619) 400-2200 and destroy all copies of the original message.

**ASA 0479**



KEEHN & ASSOCIATES

402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101

A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS AT LAW
www.keehnlaw.com

PHONE: (619) 400-2200
FACSIMILE: (619) 400-2201

## TRANSMITTAL MEMORANDUM
### &lt;Via First Class Mail&gt;

DATE:                    November 26, 2007

TO:                      M. Jonathan Hayes, Esq.
                         Law Office of M. Jonathan Hayes
                         21800 Oxnard Street, Suite 840
                         Woodland Hills, CA  91367

FILE NUMBER:             5311.01

ENCLOSURES:              **1.**   Notice of Lodgement of Orders: (1) Granting Petitioning
                         Creditors' Motion for an Enforcement Order, Etc. and Imposing
                         Specific Monetary Sanctions; (2) Setting Compliance Date for
                         Payment of Sanctions; (3) Reserving Jurisdiction for Further
                         Ruling on Balance of Sanctions Requested; And, (4) Continuing
                         Status Conference

                         **2.**  Wire Instructions to the Keehn & Associates, APC General
                         Operating Account

REQUESTED ACTION:        The court has now imposed upon Mr. Lopez the duty to pay
                         the full $8,130.50 awarded in sanctions. The enclosed wire
                         instructions are provided to facilitate his full and timely
                         discharge of that duty.  The Petitioning Creditors would first
                         steal and then paraphrase Admiral Lord Nelson's famous
                         signal to his fleet as the Battle of Trafalgar was about to
                         commence: *The United States Bankruptcy Court expects
                         every man to do his duty!*  The Petitioning Creditors hold the
                         same expectation.

Very truly yours,

**KEEHN & ASSOCIATES, APC**

By: _L. Scott Keehn_
    L. Scott Keehn

Enclosures
112257/5311.01

**ASA 0480**

## WIRE TRANSFER INSTRUCTIONS

**ACCT NAME:**
KEEHN & ASSOCIATES, APC

**ABA NUMBER:**
122232109

**ACCT NUMBER:**
2070227641

**BANK ADDRESS:**
CALIFORNIA BANK AND TRUST
SAN DIEGO B STREET OFFICE
525 B STREET
SAN DIEGO, CA  92101
(800) 400-6080

112258/5311.01

**ASA 0481**

1  L. Scott Keehn (SBN 61691)
   **KEEHN & ASSOCIATES, APC**
2  402 W. Broadway, Suite 1210
   San Diego, California 92101
3  Telephone:    (619) 400-2200
   Facsimile:    (619) 400-2201
4
   Attorneys for **Petitioning Creditors**
5

6

7

8              UNITED STATES BANKRUPTCY COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10
   In Re:                               )  **Bankruptcy Case No. 05-05926-PB7**
11                                       )
                                         )  **NOTICE OF LODGEMENT OF**
12 FRANCIS J. LOPEZ,                     )  **ORDERS:**
                                         )
13            Debtor.                    )  **(1) GRANTING PETITIONING**
                                         )  **CREDITORS' MOTION FOR AN**
14                                       )  **ENFORCEMENT ORDER, ETC. AND**
                                         )  **IMPOSING SPECIFIC MONETARY**
15                                       )  **SANCTIONS;**
                                         )
16                                       )  **(2) SETTING COMPLIANCE DATE**
                                         )  **FOR PAYMENT OF SANCTIONS;**
17                                       )
                                         )  **(3) RESERVING JURISDICTION**
18                                       )  **FOR FURTHER RULING ON**
                                         )  **BALANCE OF SANCTIONS**
19                                       )  **REQUESTED; AND,**
                                         )
20                                       )   **(4) CONTINUING STATUS**
                                         )  **CONFERENCE**
21                                       )
                                         )  Date:   November 19, 2007
22                                       )  Time:   2:00 p.m.
                                         )  Dept:   4
23 _____       )  Judge: Hon. Peter W. Bowie
                                         )
24

25      **NOTICE IS HEREBY GIVEN** that pursuant to Rule 7054-3(b) of the Local Rules of the

26 United States Bankruptcy Court for the Southern District of California ("LBR"), the original of the

27 "**ORDERS: (1) GRANTING PETITIONING CREDITORS' MOTION FOR AN**

28 **ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY**

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200  FACSIMILE (619) 400-2201

1  SANCTIONS; (2)  SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS;

2  (3)  RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF

3  SANCTIONS REQUESTED; AND,  (4) CONTINUING STATUS CONFERENCE," a copy

4  of which is attached hereto marked "Exhibit 1" and incorporated herein by this reference, was

5  lodged with the Bankruptcy Court for signature by the Honorable Peter W. Bowie on November

6  26, 2007.

7      Pursuant to LBR 7054-3(b)(1), you are advised that you have five (5) business days within

8  which to file and serve, pursuant to LBR 7054-3(b)(3), any objections to the form and/or the

9  substance of the pleadings, and/or serve upon the undersigned alternate pleadings if desired.

10

11  Dated: __November 26, 2007____        KEEHN & ASSOCIATES,
                                          A Professional Corporation
12

13

14                                       By:  //s// L. Scott Keehn_____
                                              L. Scott Keehn
15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

112ASA 0483

# EXHIBIT 1

ASA 0484

CSD 1001C [11/15/04]
Name, Address, Telephone No. & I.D. No.
L. Scott Keehn, SBN 61691
Leslie F. Keehn, SBN 199153
KEEHN & ASSOCIATES, APC
402 West Broadway, Suite 1210
San Diego, California 92101
Telephone: (619) 400-2200

Attorneys for **Petitioning Creditors**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

    FRANCIS J. LOPEZ,

                              Debtor.

**LODGED**

BANKRUPTCY NO.  05-05926-PBINV

Date of Hearing:  November 19, 2007
Time of Hearing:  2:00 p.m.
Name of Judge:  Hon. Peter W. Bowie

## ORDERS:
### (1) GRANTING PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY SANCTIONS; (2) SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS; (3) RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF SANCTIONS REQUESTED; AND, (4) CONTINUING STATUS CONFERENCE

        IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through  2  with exhibits, if any, for a total of  2  pages, is granted. Motion Docket Entry No.  114 .

//

//

//

//

//

//
DATED:

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:
**KEEHN & ASSOCIATES, APC**

_____
(Firm name)

By: L. Scott Keehn
    Attorney for [X] Movant [ ] Respondent

CSD 1001C/112271

**ASA 0485**

CSD 1001C (11/15/04)(Page 2)
ORDERS: (1) GRANTING PETITIONING CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING SPECIFIC MONETARY SANCTIONS; (2)  SETTING COMPLIANCE DATE FOR PAYMENT OF SANCTIONS; (3) RESERVING JURISDICTION FOR FURTHER RULING ON BALANCE OF SANCTIONS REQUESTED; AND, (4) CONTINUING STATUS CONFERENCE

ALLEGED DEBTOR: FRANCIS J. LOPEZ                                    CASE NO:   05-05926-PBINV

---

Petitioning Creditors' "Motion for an Enforcement Order Imposing Sanctions etc." against Alleged Debtor Francis J. Lopez (the "Motion") came on regularly for hearing on November 19, 2007, at 2:00 p.m. in Department 4 of the above-entitled Court located at 325 West "F" Street, San Diego, California, the Honorable Peter W. Bowie presiding.  Appearances were made by the firm of Keehn & Associates, APC, by L. Scott Keehn, on behalf of Petitioning Creditors; and the Law Office of M. Jonathan Hayes, by M. Jonathan Hayes on behalf of Alleged Debtor, Francis J. Lopez ("Lopez"), in opposition to the Motion.

The Court, having previously considered all of the pleadings, papers, requests, declarations and arguments submitted by the parties in support of their positions, and, good cause therefore appearing,

**IT IS HEREBY ORDERED** that:

(1)     The Motion is Granted, and the court hereby awards sanctions against alleged debtor Francis J. Lopez in the amount of $8,130.50 (the "Sanctions");

(2)     Lopez shall pay the Sanctions, or cause them to be paid, to the law firm of Keehn & Associates, APC on or before December 19, 2007; and, in the event that the Sanctions are not paid by that date, the court will entertain and consider imposing a terminating sanction as a further enforcement remedy;

(3)     The Court specifically reserves jurisdiction for, and deferred its ruling on, the balance of the monetary sanctions requested by the Motion, but which were not awarded at this time (i.e., the sum of $4,300); and,

(4)     The Status Conference on this matter will continued to  January 7, 2008, at 9:30 a.m. in Department 4 of the above entitled court.

ASA 0486

1  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
2  **KEEHN & ASSOCIATES**
   A Professional Corporation
3  402 West Broadway, Suite 1210
   San Diego, California 92101
4  Telephone: (619) 400-2200

5  Attorneys for **Petitioning Creditors**

6

7

8                 **UNITED STATES BANKRUPTCY COURT**

9            **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In Re:                          )  Case No.  05-05926-PBINV
                                     )
12       FRANCIS J. LOPEZ,           )  Involuntary Chapter 7
                                     )
13           Alleged Debtor.         )
                                     )  **PROOF OF SERVICE**
14                                   )
                                     )
15                                   )
                                     )
16                                   )  Judge:  The Honorable Peter W. Bowie
                                     )  Ctrm:   4
17                                   )
                                     )
18  ─────────────────────────────── )

19       I, the undersigned, declare that I am over the age of eighteen years and not a party to this

20  cause. I am employed in, or am a resident of, the County of San Diego, California, and my

21  business address is: 402 West Broadway, Suite 1210, San Diego, California.

22       On the date shown below, I caused to be served the following document(s):

23  **NOTICE OF LODGEMENT OF ORDERS: (1) GRANTING PETITIONING
    CREDITORS' MOTION FOR AN ENFORCEMENT ORDER, ETC. AND IMPOSING**
24  **SPECIFIC MONETARY SANCTIONS; (2) SETTING COMPLIANCE DATE FOR
    PAYMENT OF SANCTIONS; (3) RESERVING JURISDICTION FOR FURTHER**
25  **RULING ON BALANCE OF SANCTIONS REQUESTED; AND, (4) CONTINUING
    STATUS CONFERENCE**
26
27  [ ]  BY PERSONAL SERVICE: I placed a true copy of the above document(s) in a sealed

28       envelope clearly labeled to identify the attorney for the party being served, and personally

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · FACSIMILE (619) 400-2201

ASA 0487
112270/5311.01

1  caused said such envelope to be personally delivered on each addressee named hereafter:

2  [ ] BY FACSIMILE AND MAIL: I declare that upon the prior agreement of the party being

3  served, I served the above named documents by facsimile transmission during usual office

4  hours from facsimile number 619-400-2201, to a facsimile machine maintained by the person

5  on whom it is served and that the transmission was reported as complete and without error.

6  Thereafter, I mailed (by first-class mail, postage prepaid) a true copy to each addressee

7  named hereafter:

8  [✔] BY MAIL: I declare that I am readily familiar with the business practice for collection and

9  processing of correspondence for mailing with the United States Postal Service, that the

10  correspondence shall be deposited with the United States Postal Service this same day in the

11  ordinary course of business; and that a true copy was placed in a separate envelope, with

12  postage thereon fully prepaid for each addressee named hereafter:

13  M. Jonathan Hayes
   Law Office of M. Jonathan Hayes
14  21800 Oxnard Street, Suite 840
   Woodland Hills, CA 91367

15
16  [ ] BY E-MAIL OR ELECTRONIC TRANSMISSION: I caused a true copy of the above-

17  named document(s) to be sent to the person(s) at the e-mail addresses listed below. I did not

18  receive, within a reasonable time after the transmission, any electronic message or other

   indication that the transmission was unsuccessful:
19
20  I declare under penalty of perjury under the laws of the United States that the foregoing is

21  true and correct.

22  Executed on November 26, 2007.

23                                    /s/ Jeanine M. Bourcier
                                    JEANINE M. BOURCIER
24
25
26
27
28

KEEHN & ASSOCIATES, APC
ATTORNEYS AND COUNSELORS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 • FACSIMILE (619) 400-2201

ASA 0488
112270/5311.01

# EXHIBIT 3

ASA 0489

**L. Scott Keehn - Francis Lopez Sanctions**

| | |
|---|---|
| **From:** | "M. Jonathan Hayes" <jhayes@polarisnet.net> |
| **To:** | "L. Scott Keehn" <scottk@keehnlaw.com> |
| **Date:** | 12/19/2007 11:04 AM |
| **Subject:** | Francis Lopez Sanctions |

Mr. Keehn,

My client does not have the $8,100 in sanction to pay now. He can pay you $4,000 now and $1,000 per month until paid. Let me know if that will work.

Thanks, Jon Hayes

M. Jonathan Hayes
jhayes@polarisnet.net
21800 Oxnard St. Suite 840
Woodland Hills, CA 91367
(818) 710-3656
(818) 710-3659 fax
(818) 402-7537 cell
www.lawprofessorblogs.com
If you have received this message in error, please call (818) 710-3656 and notify me of that fact and destroy all copies of this message."
Thank you.

ASA 0490

# EXHIBIT 4

ASA 0491

# L. Scott Keehn - Re: Francis Lopez Sanctions

**From:**     L. Scott Keehn
**To:**       Hayes, M. Jonathan
**Date:**     12/20/2007 6:08 PM
**Subject:**  Re: Francis Lopez Sanctions

Jon,

I have been in deposition all day yesterday, a hearing in Indio this morning and in Department 2 this afternoon, so I have only this moment seen your email. I apologize for the delay.

Turning to your inquiry itself, the answer is "no". I do not now believe, nor have I ever since the date that I served you with the order and our bank wire instructions believed that your client lacked the financial ability to timely comply with the Court's order. I am informed and believe that my client has or has access to the evidence necessary to establish the validity of my belief. I say that so that your client has fair warning that should he be inclined to submit a declaration under penalty of perjury to the effect that he did not comply with the court's sanctions order because he lacked the financial ability to do so, he does so at his peril.



Please let me know if you have any questions or comments. Meanwhile I hope that you and your family enjoy an extremely pleasant holiday season, and begin the new year fully refreshed.

Best regards,
Scott

# KEEHN
## ASSOCIATES

This is an e-mail from Keehn & Associates, APC, Attorneys-at-Law.  THE CONTENTS OF THIS E-MAIL ARE PRIVILEGED AND CONFIDENTIAL AND ARE INTENDED ONLY FOR THE USE OF THE ORDINARY USER OF THE E-MAIL ADDRESS TO WHICH IT WAS ADDRESSED.  No one
else may copy or forward all or any of it in any form.  Our postal address is 402 West Broadway, Suite 1210, San Diego, California  92101.

If you receive this e-mail in error, we would be obliged if you would contact the sender by reply email or telephone at (619) 400-2200 and destroy all copies of the original message.

>>> "M. Jonathan Hayes" <jhayes@polarisnet.net> 12/19/2007 11:05 AM >>>
Mr. Keehn,

**ASA 0492**

My client does not have the $8,100 in sanction to pay now.  He can pay you $4,000 now and $1,000 per month until paid.  Let me know if that will work.
    Thanks,  Jon Hayes

M. Jonathan Hayes
jhayes@polarisnet.net
21800 Oxnard St. Suite 840
Woodland Hills, CA 91367
(818) 710-3656
(818) 710-3659 fax
(818) 402-7537 cell
www.lawprofessorblogs.com
If you have received this message in error, please call (818) 710-3656 and notify me of that fact and destroy all copies of this message."
Thank you.

ASA 0493

# EXHIBIT 5

ASA 0494

1           UNITED STATES BANKRUPTCY COURT

2           SOUTHERN DISTRICT OF CALIFORNIA

3

4     _____

5    In Re:             ) Case No. 05-0596-PBINV

6        FRANCIS J. LOPEZ,     )

7           Alleged Debtor.   )

8     _____)

9

10      VIDEOTAPED DEPOSITION OF FRANCIS J. LOPEZ

11          San Diego, California

12           October 22, 2007

13

14

15

16

17    REPORTED BY HEIDI J. JOHNSON, RPR, CSR NO. 12525



Peterson Reporting
Truth and Technology, Transcribed.

530 B Street    800 649 6353 toll free               Reporting
Suite 350     619 260 1069 tel                Videography
San Diego, CA    619 688 1733 fax            Trial Presentation
92101                                       Global Reach
             bookadepo.com                     Complex Cases

ASA 0495

1          UNITED STATES BANKRUPTCY COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3

4       _____

5    In Re:                    ) Case No. 05-0596-PBINV

6        FRANCIS J. LOPEZ,          )

7              Alleged Debtor.    )

8       _____)

9

10

11        VIDEOTAPED DEPOSITION OF FRANCIS J. LOPEZ,

12    taken on behalf of the Petitioning Creditors at

13    402 West Broadway, Suite 1210, San Diego, California, on

14    Monday, October 22, 2007, at 9:58 a.m., before

15    Heidi J. Johnson, RPR, CSR No. 12525, a Certified

16    Shorthand Reporter in the State of California.

17

18

19

20

21

22

23

24

25

ASA 0496

1    APPEARANCES:

2    FOR THE PETITIONING CREDITORS:

3           KEEHN & ASSOCIATES, APC

4           BY:  L. SCOTT KEEHN, ESQ.

5           402 West Broadway, Suite 1210

6           San Diego, California 92101

7           (619)400-2200

8    ALSO PRESENT:

9           ABEL SIBREL, VIDEOGRAPHER

10          ALAN STANLY (APPEARING TELEPHONICALLY)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ASA 0497

1    A    CargoTel is a company that provides software          10:12

2   to the automotive logistics industry.          10:12

3         MR. KEEHN:  We'll mark that.          10:12

4         (Exhibit 2 was marked.)          10:12

5   BY MR. KEEHN:          10:12

6    Q    Okay.  I'm going to hand you a document          10:12

7   that's been marked as Exhibit 2 to the deposition.  Ask          10:12

8   you if you recognize that document.          10:12

9    A    I do.          10:12

10    Q    Okay.  Can you describe for the record what          10:12

11   it is?          10:12

12    A    It's a contractor agreement that is between          10:12

13   myself and CargoTel, C-a-r-g-o-T-e-l.          10:12

14    Q    Okay.          10:12

15    A    And it's -- it was signed in 2006, August of          10:13

16   2006.          10:13

17    Q    You're looking at the last page?          10:13

18    A    Yes.          10:13

19    Q    Okay.  So that is your signature where it          10:13

20   says, "Contractor Signature and Date"?          10:13

21    A    Yes, it is.          10:13

22    Q    And it was signed on or about August 17,          10:13

23   2006?          10:13

24    A    Yes -- well, this says August 15.          10:13

25    Q    I'm looking on the last page.          10:13

1          Will you join me in that?                          10:13

2      A    You're looking on the last page of the           10:13

3    exhibit?                                                 10:13

4      Q    I see.                                            10:13

5      A    I'm looking at the last page of the contract.    10:13

6      Q    Yeah, right.                                      10:13

7      A    So go two pages in.                               10:13

8      Q    All right.  So that's your signature on the      10:13

9    contractor name and date there as well?                 10:13

10     A    Yes.                                              10:13

11     Q    And August 15, 2006, is the time --              10:13

12   approximately the date it was executed?                 10:13

13     A    Yes.                                              10:13

14     Q    And, again, on the last page -- that's the       10:13

15   exhibit -- that is your signature?                      10:13

16     A    Yes, it is.                                       10:13

17     Q    Executed on or about August 17?                  10:13

18     A    Correct.                                          10:13

19     Q    Do you have any explanation as to why there's    10:13

20   a two-day gap between the execution of the agreement    10:14

21   and the exhibit?                                         10:14

22     A    I do not.                                         10:14

23     Q    Okay.                                             10:14

24     A    Could be a number of things.                      10:14

25     Q    What do you think it could be?                    10:14

1        A       It could be simply that the contractor          10:14

2    agreement was signed, and the exhibit was finalized two     10:14

3    days later.                                                 10:14

4        Q       Okay.  Do you have any recollection as to       10:14

5    whether or not that's the case as to what happened?         10:14

6        A       Not any specific recollection, no.              10:14

7        Q       Do you have any general recollection?           10:14

8        A       No.                                             10:14

9        Q       All right.  Let's turn to the first page of     10:14

10   Exhibit 2.  There are some handwritten items in there.      10:14

11   The word "twice" appears to be inserted.  The word          10:14

12   "period" -- both in paragraph 3.                            10:14

13              Do you see that?                                 10:14

14       A       I do.                                           10:14

15       Q       Is that your handwriting?                       10:14

16       A       Yes.                                            10:14

17       Q       Are those your initials to the -- to the        10:14

18   right of that?                                              10:14

19       A       Yes, they are.                                  10:14

20       Q       Okay.  And moving in to the third page of       10:14

21   Exhibit 2, the second paragraph of Section 5 is crossed     10:14

22   out.                                                        10:15

23              Do you see that?                                 10:15

24       A       I do.                                           10:15

25       Q       Okay.  Is one of -- are one of those initials   10:15

ASA 0500

1    yours?
                                                              10:15

2         A    Yes.
                                                              10:15

3         Q    Did you have any relationship with CargoTel
                                                              10:15

4    prior to August of 2006 by which you were entitled to
                                                              10:15

5    receive money?
                                                              10:15

6         A    No.
                                                              10:15

7         Q    So what we see as Exhibit No. 2 is your first
                                                              10:15

8    contractual relationship with CargoTel?
                                                              10:15

9         A    That's correct.
                                                              10:15

10        Q    Are you still a contractor for CargoTel?
                                                              10:15

11        A    Yes.
                                                              10:15

12        Q    Under the terms of the agreement that we have
                                                              10:15

13   as Exhibit 2?
                                                              10:15

14        A    Yes.
                                                              10:15

15        Q    How are you compensated by CargoTel?
                                                              10:15

16        A    Can I ask you a question, Mr. Keehn?
                                                              10:15

17        Q    No.  I get to ask the questions, actually.
                                                              10:15

18        A    Well, I'm just wondering what the relevance
                                                              10:15

19   is for this in the context of the deposition of a
                                                              10:15

20   bankruptcy case, particularly as it applies to paying
                                                              10:15

21   debts as they become due.
                                                              10:16

22        Q    Are you objecting to the question?
                                                              10:16

23        A    I'm asking you.
                                                              10:16

24        Q    No.  I don't answer the questions.  I ask
                                                              10:16

25   them.
                                                              10:16

1     A     Well --                                              10:16

2     Q     If you -- if you want to object to the              10:16

3  question, your objection will be noted, and then you're      10:16

4  entitled to answer the question.                             10:16

5     A     Okay.  That is my objection.                        10:16

6     Q     Okay.  You may answer, sir.                          10:16

7     A     Okay.  Can you repeat the question?                 10:16

8     Q     No, I can't.  I never do it twice the same --       10:16

9  the same way twice.                                           10:16

10     A     Okay.                                               10:16

11     Q     So I'll ask the reporter to read it back.          10:16

12            (The following question was read back:            10:16

13            "Q     How are you compensated by CargoTel?")     10:16

14            THE WITNESS:  My compensation consists of a       10:16

15  daily rate, which is specified in the contractor            10:16

16  agreement, plus additional bonuses that may come up as      10:16

17  a result of this agreement.                                 10:16

18  BY MR. KEEHN:                                               10:16

19     Q     Okay.  But if I read the four corners of the       10:16

20  agreement, I would be able to see in there all of the       10:17

21  forms of compensation that you have from CargoTel; is       10:17

22  that correct, sir?                                          10:17

23     A     That is correct.                                   10:17

24     Q     Okay.  Was there any signing bonus associated      10:17

25  with this contract?                                         10:17

ASA 0502

1      A    There was not.                                    10:17

2      Q    Did you ever receive any form of payment          10:17

3  whatsoever from CargoTel at any time prior to August of    10:17

4  2006?                                                       10:17

5      A    I do not believe so.                              10:17

6      Q    Okay.  Do you know what kind of an entity         10:17

7  CargoTel is?                                                10:17

8      A    Entity in terms of what?                          10:17

9      Q    When I say "entity," I mean a form of             10:17

10 business, other than a proprietorship.  It could be a      10:17

11 corporation, a partnership, a limited partnership, a       10:17

12 limited liability company, a business trust.               10:17

13     A    As far as I know, it is a corporation.            10:17

14     Q    Okay.  Do you have any understanding as to        10:17

15 what its state of incorporation is?                         10:18

16     A    I am not positive, but I believe it's either      10:18

17 in Maryland or Delaware.                                    10:18

18     Q    Do you receive any royalties from CargoTel        10:18

19 for your source code?                                       10:18

20     A    Absolutely not.                                   10:18

21     Q    All right.  Now, other than the Noveon            10:18

22 royalties that you've already testified to, have you       10:18

23 ever received from any entity royalties for your source    10:18

24 code?                                                       10:18

25     A    No.                                               10:18

2ASA 0503

## CARGOTEL CONTRACTOR AGREEMENT

Definitions:

1. "Services" means the tasks to be performed by Contractor, as more fully described in **Exhibit A.**

Scope of Services:

1. **Retention.** CargoTel hereby retains Contractor to perform the Services, and Contractor hereby accepts such retention. Contractor shall report to the CargoTel "President" identified in Exhibit A.
2. **Services.** Contractor shall perform the Services to the best of Contractor's ability and in a professional manner. Contractor acknowledges that time is of the essence in performing the Services.
3. **Interim Review.** During the term of this Agreement, CargoTel may review the progress of the Services, and take such actions as it deems reasonable based on such review.
4. **Changes.** CargoTel may, from time to time, request changes in the Services. If the request substantially alters the nature of the Services, Contractor shall, within seven (7) days thereafter, submit to CargoTel a proposal of changes in cost and schedule. Such changes may be authorized by an Amendment to Exhibit A assigned by the President and Contractor, and Contractor shall promptly effect such changes.
5. **CargoTel Facilities.** CargoTel may, at its discretion, provide Contractor with reasonable use of its facilities as required for Contractor to perform the Services; in which event Contractor agrees to abide by CargoTel's rules and policies, including but not limited to those relating to security and confidential information. Contractor shall sign in and out using the visitor's log book when on site at CargoTel. If Contractor is provided access to any CargoTel computer network, Contractor's use of thereof shall be solely in direct furtherance of Contractor's performance of this Agreement. Contractor shall not remove any property of CargoTel without CargoTel's prior written consent.

PAYMENT:

1. **Compensation.** As full compensation and consideration for the Services and other obligations of Contractor set forth in this Agreement, CargoTel will pay Contractor the Fees in accordance with the schedule on Exhibit A when properly invoiced for accepted Services.
2. **Expenses.** Any expenses incurred by Contractor in connection with providing the Services will be the sole responsibility of Contractor unless otherwise approved in writing by an authorized CargoTel representative prior to Contractor incurring such expense. If expense reimbursement is agreed to by CargoTel, expenses shall be billed at Contractor's actual out-of-pocket cost, with no surcharge, and Contractor shall endeavor to avoid unnecessary expenditures.                                                             *twice*
3. **Invoice Requirements.** Contractor shall invoice CargoTel each month for the Services performed, and any approved expenses incurred, in the immediately preceding month (the "Invoice Period"). Contractor shall include with each invoice:                    *period*

        •◻◻◻◻◻◻◻ Purchase order (P.O.) number;

        •◻◻◻◻◻◻◻◻A statement of the work performed;

        •◻◻◻◻◻◻◻ Receipts or other documentation supporting reimbursable expenses approved by CargoTel;

        •◻◻◻◻◻◻◻ Taxpayer identification number;

        •◻◻◻◻◻◻◻ Such additional information as is reasonably requested by CargoTel, Inc.

    4. **Taxes.** Contractor shall be responsible for payment of all taxes and other assessments by any government upon the transactions contemplated by this Agreement, other than taxes CargoTel's income.



EXHIBIT
2  *10 & n*
*Lopez*
10/22/07  HJ

ASA 0504

RELATIONSHIP OF THE PARTIES:

1. **Personal Agreement.** Contractor agrees to provide the Services personally to CargoTel, and CargoTel is relying on Contractor's expertise in performing the Services. Contractor may not assign, delegate, or subcontract any of the Services without the prior written approval of an authorized CargoTel representative.

2. **Independent Contractor.** Contractor is an independent contractor in the performance of the Services and is not an employee, agent, joint venture, partner, or franchisee of CargoTel. Contractor shall not be entitled to participate in any plans, arrangements, or distributions pertaining to any employee benefits made available to CargoTel's employees. CargoTel shall take no deduction from any amounts paid to Contractor whether for taxes or otherwise. Except to the extent otherwise required by law, Contractor shall report as income all amount received hereunder, file all forms, and pay all taxes that may be required by virtue of Contractor's status as an independent contractor. Nothing in this Agreement or its performance shall imply a joint venture or principal and agent relationship between the parties. Contractor shall indemnify and hold harmless CargoTel from any obligation to pay any taxes or fees, including but not limited to sales or withholding taxes, social security, workers' compensation, unemployment or disability insurance, or similar charges, including any interest or penalties thereon, in connection with any payments made Contractor hereunder.

3. **No Continuation of Service.** Nothing in this Agreement shall confer upon Contractor any right to continue to render services to CargoTel or to become employed by CargoTel, and CargoTel reserves all rights to terminate Contractor's services in accordance with the provisions of this Agreement.

CONFIDENTIALITY; COMPETITION; OWNERSHIP:

1. **Confidentiality.** Contractor agrees to keep confidential and not to disclose or make any unauthorized use of any trade secrets, confidential information, knowledge, data, or other information of CargoTel relating to products, processes, software, know-how, designs, formulas, test data, customer lists, business plans, marketing plans and strategies, and pricing strategies or other subject matter pertaining to any business of CargoTel or any of CargoTel's clients, customers, contractors, licensees or affiliates or information received in confidence from other third parties, which Contractor may have produced, obtained, learned or otherwise acquired during the course of rendering services to CargoTel (including, but not limited to, the Services) (collectively, "Confidential Information"). Contractor's duty to maintain such Confidential Information in confidence hereunder shall survive the termination of this Agreement for a period of three (3) years, except to the extent that any such Confidential Information becomes generally known in the industry through no direct or indirect fault of Contractor.

2. **Other Obligations.** Contractor acknowledges that CargoTel from time to time may have agreements with third parties which impose obligations or restrictions on CargoTel regarding inventions or creative works made during the course of work thereunder or regarding the confidential nature of such work. Contractor agrees to be bound by all such obligations and restrictions of which Contractor is informed, and to take all action necessary to discharge the obligations of CargoTel thereunder upon notice of same from CargoTel.

3. **Competition.** Contractor acknowledges that it will be exposed to certain of CargoTel's sensitive and confidential business information. Contractor may not use Confidential Information except for the benefit of CargoTel in accordance with this Agreement. Therefore, during the term of this Agreement, Contractor shall not perform services for any person which CargoTel reasonably deems to be a competitor of CargoTel, unless such services are wholly unrelated to the Services or Contractor first obtains CargoTel's written consent.

4. **Ownership.** Contractor acknowledges that any information Contractor may receive from CargoTel or is generated by Contractor as a result of the Services is the sole property of CargoTel, except to the extent information was already known, independently developed, or rightfully received from a third party by Contractor, or was generally know to the public. Contractor shall assign, and hereby does assign, such ownership and any rights of reproduction to CargoTel. Contractor further agrees to execute such documents of

ASA 0505

2-2

assignment or take such other action as CargoTel may reasonably request to evidence, perfect, or effect the transfer, recordation, or protection of such deliverables.

5. **Non-Compete.** Contractor agrees that it will be a significant member of CargoTel and CargoTel is engaged business in each of the fifty states of the United States. Contractor therefore agrees that during contract period with CargoTel it will not engage in any other employment or related activity that is in competition with CargoTel unless it receives CargoTel's prior written approval from the President to hold such outside employment or engage in such business or activity. Such written approval will not be unreasonably withheld if such outside employment, business or activity would not in any way be competitive with the business or proposed business of CargoTel or otherwise conflict with or adversely affect in any way your performance of your contract obligations to CargoTel.

Commencing on Employment Date and continuing until the twenty-four (24) months after you depart from CargoTel, you will not, as an employee, agent, consultant, adviser, independent contractor, general partner, officer, director, stockholder, investor, lender or corporation, partnership or other entity, or in any other capacity directly or indirectly: engage in any business which is competitive and substantially similar to the CargoTel's business or permit your name to be used in connection with a business which is competitive and substantially similar to the CargoTel's business; or induce or attempt to induce any person who at the time of such inducement is an employee of CargoTel to perform work or services for any other person or entity other than CargoTel. Notwithstanding the foregoing, you may own, directly or indirectly, solely up to one percent (1%) of any class of "publicly traded securities" of any person or entity which owns a business that is competitive or substantially similar to that of CargoTel.

If any restriction set forth in this non-competition section is found by a Court to be unreasonable, then you agree, and hereby submit, to the reduction and limitation of such prohibition to such area or period as shall be deemed reasonable. You acknowledge that the services that you will provide to CargoTel under this agreement are unique and that irreparable harm will be suffered by CargoTel in the event of the breach by you of any of your obligations under this agreement.

## WARRANTIES:

1. **Warranties by Contractor.** Contractor represents and warrants to CargoTel as follows: (a) Contractor has the expertise, experience, and knowledge to perform the Services; (b) Contractor is under no obligation which prevents Contractor from, and Contractor is not otherwise prohibited from, performing the Services; (c) Contractor has the right to disclose or use all ideas, processes, designs, data and other information which Contractor has gained from third parties, and which Contractor discloses or uses in the performance of this Agreement; (d) Contractor shall promptly disclose to CargoTel all actual or potential financial relationships or conflicts of interest Contractor may have with respect to, or resulting from, any recommendations or advice given by Contractor to CargoTel; and (e) the Services will comply with the material requirements of this Agreement. Contractor acknowledges that the warranties contained in this Agreement are in addition to any other applicable warranties, express or implied, arising under statute, law, or otherwise.

## INSURANCE, PERMITS, COMPLIANCE WITH LAWS:

1. **Insurance.** Contractor shall carry adequate policies of insurance to protect CargoTel from liability for Contractor's activities under this Agreement, including but not limited to workers' compensation insurance, state disability insurance, general liability insurance and such other insurance as CargoTel may reasonably request. Contractor will furnish to CargoTel a certificate evidencing such coverage upon CargoTel's request.
2. **Permits.** Contractor shall acquire and maintain in good standing, and as its sole expense, all permits and licenses required of it by law in the performance of Service under this Agreement.
3. **Compliance with Laws.** Contractor will perform the Services in accordance with all applicable laws.

ASA 0506

TERMS AND TERMINATION:

1. **Term.** This Agreement shall commence on the Effective Date and shall continue through the "Expiration Date" set forth on *Exhibit A*, unless earlier terminated in accordance with the provisions of this Article 8 or upon the mutual agreement of the parties.

2. **Termination Without Cause.** CargoTel may terminate this Agreement for convenience by delivering written notice to Contractor at least fourteen (14) days before the desired termination date; at CargoTel's request, Contractor shall continue to perform the Services during the fourteen (14) day period. Contractor may terminate this Agreement for convenience by delivering written notice to CargoTel at least twenty-eight (28) days before the desired termination date.

3. **Termination for Breach.** If either party defaults in the performance of any material provision of this Agreement, the nondefaulting party may terminate this Agreement upon notice thereof. Contractor's failure to perform the Services in a manner reasonably satisfactory to CargoTel and in accordance with the provisions of *Scope of Services, item 2, Services,* shall constitute a default for purposes of this *Term and Termination, item 8.3, Termination for Breach.*

4. **Phase-Out.** In the event either party provides notice of termination, Contractor agrees to cooperate with CargoTel to continue the work and effect a smooth transition of the Services and Deliverables to CargoTel or its designee in a professional manner reasonably acceptable to CargoTel.

5. **Payment Following Termination.** In the event of early termination of this Agreement for any reason, Contractor shall be entitled to receive payment only for work actually performed in accordance with the Services identified on Exhibit A and any permitted expenses. CargoTel may withhold a reasonable amount to compensate it for any estimated damages in the event CargoTel terminates this Agreement as a consequences of Contractor's breach of this Agreement or if Contractor fails to comply with Contractor's obligations under *Confidentiality; Competition; Ownership Section, item 1 Confidentiality and item 3 Competion,* and *Terms and Termination Section, item 6, Return of CargoTel Property.*

6. **Return of CargoTel Property.** Upon termination of this Agreement for any reason, Contractor shall deliver to CargoTel, within seven (7) days after the date of expiration or earlier termination: (1) any property of CargoTel in the possession or control of Contractor; (2) any data of any nature pertaining to or incorporating any Confidential Information of CargoTel, including any copies thereof; (3) the originals and all copies Deliverables, whether finished, prepared or produced by Contractor for CargoTel pursuant to this Agreement; and (4) such documentation as may be necessary to evidence the results of the Services and the progress of Contractor in the performance of the Services.

7. **Termination Obligations.** The provisions of Article 4, 5, 6, and 7 shall survive any termination or expiration of this Agreement.

INDEMNIFICATION:

1. **General.** Contractor shall defend, indemnify, and hold harmless CargoTel, its officers, directors, partners, employees, agents, affiliates, and attorneys from and against any loss or damage, or claims or actions brought by third parties, and from any and all direct and consequential resulting damages, losses, expenses, including reasonable attorney's fees and costs of litigation, arising out of or resulting from the performance of the Services to the extent caused by the negligence or willful misconduct of Contractor or any of Contractor's employees, agents, or subcontractors.

MISCELLANEOUS:

1. **Notices.** Any notice, demand, request or other communications hereunder shall be in writing and shall be deemed sufficient when delivered as follows: if to CargoTel, at CargoTel's principal place of business set forth above, Attention: President (as identified on Exhibit A), cc: Chief Counsel; and if to Contractor, at Contractor's address as set forth on *Exhibit A*, unless another address shall have been designated in the manner provided for in this *Miscellaneous Section, item 1, Notices.*

2. **Successors and Assigns.** The rights and benefits of this Agreement shall inure to the

benefit of and be enforceable by each party's permitted successors and assigns. The obligations of Contractor under this Agreement may only be assigned with the prior written consent of CargoTel.

3. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, without regard to the choice of law rules of any jurisdiction. Any action to enforce the provisions of this Agreement shall be brought in a court of competent jurisdiction in Baltimore, Maryland.

4. **Severability.** If any provision of this Agreement is found to be invalid, void, or unenforceable, the remaining provisions shall continue in full force and effect.

5. **Waiver.** No waiver of any provision of this Agreement shall be effective, except pursuant to a written instrument signed an authorized representative of the party waiving compliance, and any such waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

6. **Arbitration.** We each agree that any and all disputes between us, which arise out of this contract, the termination of this contract, or under the terms of this contract, shall be resolved through final and binding arbitration. This shall include, without limitation, disputes relating to this contract, any disputes regarding your contract work at CargoTel or the termination thereof, claims for breach of the covenant of good faith and fair dealing, and any claims of discrimination or other claims under and federal, state, or local law or regulation now in existence or hereafter enacted and as amended from time to time concerning in any way the subject of your contract with CargoTel or its termination. Binding arbitration will be conducted in Baltimore, MD in accordance with the rules and regulations of the American Arbitration Association. Each side will bear its own attorney's fees, unless otherwise decided by an arbitrator. You understand and agree the arbitration shall be instead of any civil litigation, that each side waives its rights to a jury trial, and that the arbitrator's decision shall be final and binding to the fullest extent permitted by law and enforceable by any court having jurisdiction thereof.

7. **Counterparts.** This Agreement may be executed in two counterparts each of which shall be an original and together which shall constitute one and the same instrument.

8. **Entire Agreement.** This Agreement, together with its Exhibits, embodies the entire agreement and understanding of the parties hereto, and supersedes all prior or contemporaneous written or oral communications or agreements between CargoTel and Contractor regarding its subject matter. This Agreement may only be amended by written agreement signed by Contractor and an authorized CargoTel representative.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date. Complete and sign **Contractor Agreement Exhibit A.**

●    :    _____    8/14/06

CargoTel President Name and Date

●    _____    8/15/06

Contractor Name and Date

ASA 0508

2-5

## CARGOTEL CONTRACTOR AGREEMENT
## EXHIBIT A

This form is for completion by independent contractors providing services to CargoTel Inc.
Please read the **Professional Services (Contractor) Agreement (General Services) Policy**
and complete the requested information below.  Sign Exhibit A and forward original to CargoTel
President prior to the effective date of your services.  Retain a copy for your records.

- **Contact Information:**

  *Name* Francis Lopez

  *Title*

  *Work Phone* 850 240 0397

  *Home Phone*

  *FAX*

  *E-mail* fjl4 @ adelphia.net

  *URL*

  *Effective*

  *Expiration*

- **Form of Organization (specify):**

  [✓] Individual (none)      [ ] General Partnership      [ ] Limited Partnership

  [ ] Limited Liability Partnership      [ ] Sole Proprietorship      [ ] Limited Liability Company

  [ ] Corporation      [ ] Other

- Enter your ADDRESS in the space provided below.

  310 SAND MYRTLE TRAIL   DESTIN, FL  32541

- Enter your TAX I.D. in the space provided below.

  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

ASA 0509
2-6

- Enter your **PURCHASE ORDER # (REQUIRED)** in the space provided below.

  CT 01
  _____

- Enter your **SERVICES** in the space provided below.

  _____

- Enter your **FEE/PAYMENT SCHEDULE** in the space provided below.

  Daily fee of $400.00 per day
  _____

  You will be eligible to receive commissions based on referrals made directly by you to CargoTel, which result in CargoTel new business revenue. CargoTel will pay you 25% of the base subscription, license and transaction revenue generated for the first year (excluded revenue items include Start-up Fee, Server Maintenance Fee(s), custom programming, help desk, and fax transmissions) up to an annualized compensation level of $150,000.00.

- **CONTRACTOR SIGNATURE** and **DATE** _____  8/17/06

- **CARGOTEL PRESIDENT SIGNATURE** and **DATE** _____  8/14/06

Note: Subcontracting of Services by Contractor is not permitted unless Subcontractor Addendum to Professional Services Agreement is completed and signed.

**ASA 0510**

# TAB 127

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

# Minute Order

### *Hearing Information:*

|  |  |  |  |
|---|---|---|---|
| **Debtor:** | FRANCIS J. LOPEZ | | |
| **Case Number:** | 05-05926-PB7 | **Chapter:** | 7 |
| **Date / Time / Room:** | MONDAY, JANUARY 28, 2008 10:30 AM   DEPARTMENT 4 | | |
| **Bankruptcy Judge:** | PETER W. BOWIE | | |
| **Courtroom Clerk:** | MARILYN WILKINSON | | |
| **Reporter / ECR:** | LYNETTE ALVES | | |

### *Matters:*

**1)** PETITIONING CREDITORS' MOTION FOR ORDER IMPOSING TERMINATING SANCTIONS AGAINST THE DEBTOR

**2)** STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER
(fr. 1/7/08)

### *Appearances:*

M. Jonathan Hayes, ATTORNEY FOR Francis J. Lopez
L. Scott Keehn, ATTORNEY FOR ALAN STANLY

### *Disposition:*

1)   Granted.  Order for Relief to be entered.
2)   Off calendar.

**ASA 0511**

# TAB 128



ENTERED 1 28 08

FILED

JAN 2 8 2008

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ 104 _____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

FRANCIS J. LOPEZ

BANKRUPTCY NO.   05-05926-B7

Debtor.

### ORDER FOR RELIEF AND ORDER DIRECTING DEBTOR
### TO FILE SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS

On consideration of the involuntary petition filed by Alan Stanly, Northwest Florida Daily News, and Alternative Resolution Center on JUNE 30, 2005, and the summons issued thereon having been served on JUNE 30, 2005, and no answer or other pleading in response thereto having been timely filed, an ORDER FOR RELIEF under Chapter 7 of Title 11 of the United States Code is GRANTED.

IT IS ORDERED that the Debtor file with the Court, WITHIN 15 DAYS of the entry of this order, the schedules and statements required by Federal Rule of Bankruptcy Procedure 1007(b) and (c).

DATED:  JAN 2 8 2008

_____
Judge, United States Bankruptcy Court

---

### CERTIFICATE OF MAILING

I hereby certify that on this date a copy of the within order was mailed to the following parties in interest, namely:

FRANCIS J. LOPEZ, 310 Sand Myrtle Trail, Destin, FL 32541-3429
M. Jonathan Hayes, Law Office of M. Jonathan Hayes, 21800 Oxnard St., Suite 840, Woodland Hills, CA 91367
L. Scott Keehn, Keehn & Associates, APC, 402 West Broadway, Suite 1210, San Diego, CA 92101
Alan Stanly, 1569 Berkshire Court, San Marcos, CA 92069
Northwest Florida Daily News, 200 Racetrack Rd., Ft. Walton Beach, FL 32549
Alternative Resolution Center, 11601 Wilshire Blvd., Suite 1950, Los Angeles, CA 90025
United States Trustee, Dept. of Justice, 402 W. Broadway, Ste. 600, San Diego, CA 92101

DATED:  JAN 2 8 2008

Barry K. Lander, Clerk

By: _____ , Deputy Clerk

**ASA 0512**

CSD 1127

# TAB 130

1  M. Jonathan Hayes (Bar No. 90388)
   **Law Office of M. Jonathan Hayes**
2  21800 Oxnard St, Suite 840
   Woodland Hills, CA 91367
3  Telephone: (818) 710-3656
   Facsimile: (818) 710-3659
4  jhayes@polarisnet.net

5  Attorneys for Alleged Debtor Francis Lopez

```
Case # : 05-05926-PBAPBK
Debtor.: FRANCIS J. LOPEZ
Judge..: PETER BOWIE
Chapter: APBK
-----------------------------------
Filed  : February 07, 2008  12:48:18
Deputy : K DURAN
Receipt: 197229
Amount : $255.00
-----------------------------------
```

6

7                **UNITED STATES BANKRUPTCY COURT**

8                **SOUTHERN DISTRICT OF CALIFORNIA**

9                       **SAN DIEGO DIVISION**

10

11  In Re:                          )    CASE NO. 05-05926-PBINV
                                    )
12      FRANCIS J. LOPEZ,           )    Involuntary Chapter 7
                                    )
13      Alleged Debtor              )
                                    )
14                                  )    **NOTICE OF APPEAL BY ALLEGED**
                                    )    **DEBTOR TO ORDER FOR RELIEF**
15                                  )
                                    )
16                                  )
                                    )
17                                  )

18

19      Alleged Debtor Francis Lopez hereby appeals under 28 U.S.C. § 1291 from the

20  judgment, order, or decree of Judge Peter Bowie granting an Order for Relief in this

21  Involuntary Case.  A copy of the Order is attached hereto.  This appeal includes appealing

22  from the ruling granting the Motion for Terminating Sanctions heard on January 28, 2008

23  for which no separate Order was entered as well as the Order Denying the Motion for

24  Summary Judgment brought by the Debtor and Granting the Motion for Summary

25  Judgment brought by petitioning creditor Alan Stanly.  The Order for Relief was entered

26  on January 28, 2008.  The Order re Summary Judgment was entered on September 26,

27  2006 and is also attached hereto.

28

LAW OFFICES
M. Jonathan Hayes                    1            NOTICE OF APPEAL **ASA 0513**

1       The names of all parties to the judgment, order, or decree appealed from and the

2   names, addresses, and telephone numbers of their respective attorneys are as follows:

3

4                        **Atty for Alleged Debtor Francis Lopez**

5                        M. Jonathan Hayes
                     21800 Oxnard St., Suite 840

6                        Woodland Hills, CA 91367
                     (818) 710-3656

7                        (818) 710-3659  fax

8                        **Atty for Petitioning Creditor, Alan Stanly**

9                        L. Scott Keehn

10                       KEEHN & Assoc, APC
                     402 W. Broadway, Suite 1210

11                       San Diego, CA 92101
                     (619) 400-2200

12                       (619) 400-2201  fax

13

14

15

16  Dated:  February 6, 2008               Respectfully submitted

17

18                       By: _____

19                       M. Jonathan Hayes
                     Attorneys for Reorganized Debtor,

20                       Urban Hotels, Inc.

21

22

23

24

25

26

27

28

CSD 1127 [07/01/96]

ENTERED __1/28/08__

FILED

JAN 2 8 2008

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____104_____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

FRANCIS J. LOPEZ

                                                    BANKRUPTCY NO.   05-05926-B7

                                    Debtor.

## ORDER FOR RELIEF AND ORDER DIRECTING DEBTOR
## TO FILE SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS

On consideration of the involuntary petition filed by Alan Stanly, Northwest Florida Daily News, and Alternative Resolution Center on JUNE 30, 2005, and the summons issued thereon having been served on JUNE 30, 2005, and no answer or other pleading in response thereto having been timely filed, an ORDER FOR RELIEF under Chapter 7 of Title 11 of the United States Code is GRANTED.

IT IS ORDERED that the Debtor file with the Court, WITHIN 15 DAYS of the entry of this order, the schedules and statements required by Federal Rule of Bankruptcy Procedure 1007(b) and (c).

DATED:  JAN 2 8 2008

                                    _____
                                    Judge, United States Bankruptcy Court

---

### CERTIFICATE OF MAILING

I hereby certify that on this date a copy of the within order was mailed to the following parties in interest, namely:

FRANCIS J. LOPEZ, 310 Sand Myrtle Trail, Destin, FL 32541-3429
M. Jonathan Hayes, Law Office of M. Jonathan Hayes, 21800 Oxnard St., Suite 840, Woodland Hills, CA 91367
L. Scott Keehn, Keehn & Associates, APC, 402 West Broadway, Suite 1210, San Diego, CA 92101
Alan Stanly, 1569 Berkshire Court, San Marcos, CA 92069
Northwest Florida Daily News, 200 Racetrack Rd., Ft. Walton Beach, FL 32549
Alternative Resolution Center, 11601 Wilshire Blvd., Suite 1950, Los Angeles, CA 90025
United States Trustee, Dept. of Justice, 402 W. Broadway, Ste. 600, San Diego, CA 92101

DATED:  JAN 2 8 2008

                                    Barry K. Lander, Clerk

                                    By: _____, Deputy Clerk

CSD 1127                                                                    **ASA 0515**

# WRITTEN DECISION NOT FOR PUBLICATION

ENTERED 9/26/06

FILED

SEP 26 2006

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ 64 ____ DEPUTY

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re                        )      Case No. 05-05926-PBINV
                             )
FRANCIS J. LOPEZ,            )      ORDER ON MOTION FOR
                             )      SUMMARY JUDGMENT
        Alleged Debtor.      )
_____)

On September 30, 2005, Alan Stanly commenced this case by filing an involuntary petition against alleged debtor, Francis Lopez. Northwest Florida Daily News later joined in the petition. Lopez challenged the petition on the ground that three petitioning creditors were necessary under Bankruptcy Code § 303(b)(1) because twelve or more entities held claims against him. On June 26, 2006, the Court held a hearing on the parties' cross-motions for summary judgment on the issue of the number of holders of claims against Lopez for the purposes of § 303(b). The Court requested additional briefing and took the matter under submission.

///

ASA 0516

1     On July 20, 2006, before the Court ruled on the motions,

2 Richard Kipperman, who asserts a claim against Lopez in the

3 amount of $30,968.57, filed a joinder in the involuntary

4 petition.  On the same date Stanly filed a "Suggestion of

5 Mootness" contending that the issue regarding whether there are a

6 sufficient number of creditors to support an involuntary petition

7 is now moot as a result of Mr. Kipperman's joinder, thereby

8 raising to three the number of petitioning creditors and

9 satisfying the requirements for the filing of an involuntary

10 bankruptcy petition regardless of the number of creditors

11 included in the "Section 303" count.

12     On the Court's direction Lopez filed a response to the

13 Suggestion of Mootness.  He contends that Mr. Kipperman (and

14 Northwest Florida Daily News for that matter) does not qualify

15 as a petitioning creditor.

16 **Number of Holders of Claims**

17     Bankruptcy Code Section 303(b) provides:

18    (b) An involuntary case against a person is commenced
by the filing with the bankruptcy court of a petition

19    under chapter 7 or 11 of this title-

20    (1) by three or more entities, each of which is either
a holder of a claim against such person that is not

21    contingent as to liability or the subject of a bona
fide dispute as to liability or amount, or an indenture

22    trustee representing such a holder, if such
noncontingent, undisputed claims aggregate at least

23    $12,300  more than the value of any lien on property of
the debtor securing such claims held by the holders of

24    such claims;

25    (2) if there are fewer than 12 such holders, excluding
any employee or insider of such person and any

26    transferee of a transfer that is voidable under section
544, 545, 547, 548, 549, or 724(a) of this title, by

- 2 -

1    one or more of such holders that hold in the aggregate
2    at least $12,300 of such claims;

3    On September 7, 2005, Lopez filed an answer to the petition
4 alleging that he had more than 12 creditors, and thus there were
5 an insufficient number of petitioners.  On September 19, 2005,
6 Lopez filed a declaration listing those creditors -- twenty-two
7 in all.

8    Stanly, on the other hand, argues that many of the creditors
9 asserted by Lopez do not qualify to be counted in the
10 determination of whether there are 12 or more creditors for
11 various reasons.  Of the twenty-two alleged holders of claims,
12 Stanly contends that:

13    -- seven did not hold a claim against Lopez as of the
14 petition date;

15    - one (Alan Stanly) is an excluded "insider" of Lopez;

16    -- three are "disputed";

17    -- nine received postpetition transfers voidable under
18 § 548; and

19    -- eleven received preferences voidable under § 547.

20    The Court has considered the arguments and evidence
21 submitted by Stanly and Lopez regarding each of the alleged
22 creditors and finds as follows with respect to each.

23 **Allstate Floridian:**

24    As to this creditor, Stanly contends that it did not hold a
25 claim as of June 30, 2005 -- the date of the petition.  Lopez
26 counters that prepetition the premium amount was adjusted upward

- 3 -

ASA 0518

1  so there was a balance owing of $134.   The Court finds that

2  according to the premium statement, which Lopez provided, an

3  additional amount was owing as of the petition date -- that is,

4  the covered period July, 2004 through July, 2005 was not

5  necessarily paid in full as Stanly suggests.   The Court finds

6  that this creditor should be counted.

7  **American Express:**

8      Stanly initially contended that American Express did not

9  hold a claim as of the petition date.   However, in his reply

10 Stanly concedes that this creditor should be counted.

11 **American Home Shield:**

12     Again, Stanly contends that this creditor did not hold a

13 claim as of the petition date.   In his opposition Lopez argued

14 that as of the petition date he was indebted to this creditor in

15 the amount of $128.   However, Lopez provides no evidence of such

16 and does not even mention this creditor in his declaration.   It

17 appears from Exhibit E to the Declaration of L. Scott Keehn in

18 support of Petitioning Creditors' Motion for Summary Judgment

19 (Keehn Dec.) that this creditor's policy was paid up through

20 7/16/05.   Since Lopez has provided no evidence to the contrary,

21 the Court finds that this creditor should not be counted.

22 **B of A:**

23     Stanly contends that this creditor should not be counted

24 because it received preferential payments which are voidable

25 under § 547 and postpetition payments voidable under § 548.

26 Lopez admits that minimum payments were made on this account, but

- 4 -

1  argues that they were made in the ordinary course of business.

2      While the "ordinary course" defense might apply to the

3  alleged preferences, there is no comparable defense to the

4  admitted postpetition transfers.  It is clear Lopez made

5  postpetition payments to this creditor.  While they are

6  authorized under § 303(f), they are nevertheless voidable.  See

7  § 549(a)(2).  Section 549(b) provides that in an involuntary case

8  such a transfer may not be avoided to the extent value is given

9  in exchange.  However, Lopez has provided no evidence of any such

10 value being received.  Thus, the Court finds that this creditor

11 should not be counted.

12 **Bankcard Services:**

13      Stanly contends that this claim is subject to a bona fide

14 dispute as to the late fees.  Stanly also argues that this

15 creditor should not be counted because it received preferential

16 payments which are voidable under § 547.

17      Lopez has provided evidence that the issue over late fees

18 had been resolved. Lopez also argues that the payments were made

19 in ordinary course in order to keep the account current.

20      The Court finds that Stanly has failed to establish that

21 there is a bona fide dispute.  In the deposition transcript of

22 Lopez (175:18-177-13), upon which Stanly relies, Lopez merely

23 says that he probably does not agree that the $39 late fee should

24 have been charged and that it was probably resolved on another

25 statement.  The Court does not find that this establishes that

26 the claim is subject to a bona fide dispute.

- 5 -

ASA 0520

1    Stanly argues that Lopez failed to provide evidence of his

2 payment practices with respect to this creditor or creditor's

3 requirements.  However, the Court is comfortable accepting

4 Lopez's assertion that this credit card company requires minimum

5 monthly payments in the ordinary course.  Stanly has provided no

6 evidence that Lopez made unusual payments to this creditor.  The

7 Court finds that this creditor should be counted.

8 **Cingular Wireless:**

9    Stanly contends that this creditor should not be counted

10 because it received preferential payments which are voidable

11 under § 547 and postpetition payments voidable under § 548.

12 Lopez admits that payments were made on this account, but argues

13 that they were made in the ordinary course of business and to

14 maintain service.  Lopez also contends that most of the payments

15 were made by Noveon - his employer.

16    As with B of A, discussed above, while the "ordinary course"

17 defense might apply to the alleged preferences, there is no

18 comparable defense to the admitted postpetition transfers.  It is

19 clear Lopez made postpetition payments to this creditor.  While

20 they are authorized under § 303(f), they are nevertheless

21 voidable.  See § 549(a)(2).  Section 549(b) provides that in an

22 involuntary case such transfer may not be avoided to the extent

23 value is given in exchange.  However, Lopez has provided no

24 evidence of any such value being received.  Further, the evidence

25 indicates that Lopez owed a prepetition balance and that the

26 entire bill was paid postpetition.  Thus, to the extent any

ASA 0521

1  postpetition value was given by Cingular, the amount of the

2  payments would have exceeded this value and thus some portion

3  would be recoverable -- the exception under § 549(b) is only "to

4  the extent any value ... is given."  Finally, Lopez provides no

5  evidence that any of the payments were made by his employer.

6      Thus, the Court finds that this creditor should not be

7  counted.

8  **Citicards:**

9      Stanly contends that this creditor should not be counted

10 because it received preferential payments which are voidable

11 under § 547.  Lopez admits that payments of $379/month were made,

12 but argues that they were made in the ordinary course to keep the

13 account current per an agreement with Citicards.  The payments

14 were direct debits from his checking account.

15     Unlike that discussed in connection with Bankcard Services

16 above, this does not appear to be a typical minimum payment

17 situation where the minimum amount due changes based upon the

18 prior month's activity.  Rather, this appears to be an

19 arrangement Lopez reached with this creditor to repay an

20 overextended account.  Lopez contends that he paid $379/month.

21 However, Stanly's undisputed evidence indicates that Lopez made

22 two payments each month.  Again, Lopez has failed to establish

23 that this is a typical ordinary course arrangement.  The Court

24 finds that this creditor should not be counted.

25 ///

26 ///

- 7 -

ASA 0522

1  in exchange, but has provided no evidence thereof.  Further, the
2  evidence indicates that Lopez owed a prepetition balance (the
3  monthly statement is as of 7/22/05) and that the entire bill was
4  paid postpetition.  Thus, to the extent any postpetition value
5  was given by Cox, the amount of the payments would have exceeded
6  this value and thus some portion would be recoverable.  Lopez
7  also provides no evidence that payments were made by his
8  employer.  The Court finds that this creditor should not be
9  counted.

10 **Ft. Walton Medical Center:**

11      Stanly argues that this claim is subject to a bona fide
12 dispute as to liability.  Lopez denies that there is a dispute.
13 Rather, he explains, he initially thought the services would be
14 covered by insurance (because the doctor told him they would),
15 but subsequently accepted that they were not because he did not
16 get prior approval.

17      The Court finds that Stanly has failed to establish that
18 there is a bona fide dispute with regard to this claim.  Stanly
19 characterizes Lopez's deposition testimony as admitting that he
20 thought the claim was in dispute.  The Court does not agree.  All
21 Lopez said at his deposition is that he was sore that the doctor
22 told him the claim would be covered by insurance and he later
23 learned that it was not.  He uses the term "dispute" but never
24 actually claims he was not liable on the claim.  See Depo. Trans.
25 at 182:5-185:4.  The Court finds that this creditor should be
26 counted.

- 9 -

ASA 0523

**Household Bank:**

Stanly contends that this creditor should not be counted because it received preferential payments voidable under § 547. Lopez contends that the payments were made for debts incurred in ordinary course and that they were made to keep the account current per an agreement with Household Bank.

Like the payment made to Citicards, these do not appear to be a typical minimum payment situation where the minimum amount due changes based upon the prior month's activity. Rather, Lopez made sporadic payments of differing amounts less than the minimum monthly amount. Lopez has not provided evidence that these payments were made in the ordinary course. The Court finds that this creditor should not be counted.

**Kelly Plantation Owners Assoc.**

Stanly argues that this creditor should not be counted since it received postpetition payments in full satisfaction of its claim. Lopez contends that these are homeowners association fees owing on his residence and that they were incurred and paid in the ordinary course. He also contends that they are frequently paid from his wife's checking account.

As noted above, there is no ordinary course defense to postpetition payments recoverable under § 549. Lopez made postpetition payments to this creditor as authorized under § 303(f). Under § 549(a)(2) these payments are voidable. Lopez provided neither argument nor evidence that he received value in exchange for the payments. Even if he did receive value (common

- 10 -

ASA 0524

1  ground maintenance or security for example), the evidence

2  indicates that Lopez owed a prepetition balance and that the

3  entire bill was paid postpetition.  Thus, to the extent any

4  postpetition value was given the amount of the payments would

5  have exceeded this value and thus some portion would be

6  recoverable.  The Court finds that this creditor should not be

7  counted.

8  **M. Northwest Florida Daily News**

9       In his declaration Lopez admits that this prepetition claim

10  was paid postpetition.  The Court therefor finds that this

11  creditor should not be counted.

12  **Okaloosa Gas District:**

13       Lopez admits that he made postpetition payments to this

14  creditor, but that they were made to maintain utility service to

15  his residence.  The exhibit provided by Stanly indicates that the

16  payments were less than $50.00/month.  The Court finds that

17  continued utility service constitutes value received in exchange

18  for such payments.  Accordingly, the Court finds that this

19  creditor should be counted.

20  **Progressive Insurance:**

21       Stanly contends that this creditor did not hold a claim as

22  of the petition date - that the premiums for the period had been

23  paid prepetition.  Lopez has provided no evidence to establish

24  the existence of any claim owing to this alleged creditor.  The

25  Court finds that this creditor should not be counted.

26  ///

- 11 -

ASA 0525

**Citibank/Quicken Platinum Card:**

Lopez admits that he made postpetition payments to this creditor and provides no evidence that value was received in exchange. Accordingly, the Court finds that this creditor should not be counted.

**Alan Stanley:**

Stanly contends that he, Stanly, cannot be counted because he is an "insider" as he and Lopez each own 50% of Prism. The analysis is a bit convoluted, but Stanly appears to be correct.

The definition of "insider" includes an "affiliate." § 101(31)(E). An "affiliate" includes a corporation owned more than 20% by the debtor. § 101(2)(B). Thus, Prism is an "affiliate" and "insider" of Lopez. Section 101(31)(E) also provides that an "insider of an affiliate" of the debtor is also an insider of the debtor. Stanly, as owner of more than 20% of Prism, is an insider of Prism under § 101(2)(B), and thus an insider of Lopez under § 101(31)(B) because he is an insider of an affiliate of Lopez.

So, Stanly is a "holder of a claim against" Lopez and thus qualifies to be a petitioning creditor under § 301(b)(1). However, for the purposes of determining the number of creditors, he is excluded as an insider under § 301(b)(2). The Court finds that this creditor is not to be counted.

**Texaco/Shell:**

Lopez admits that he made postpetition payments to this creditor and provides no evidence that value was received in

- 12 -

1  exchange.  The Court finds that this creditor should not be

2  counted.

3  **Union Bank:**

4       Again Lopez admits making postpetition payments to this

5  creditor, and provides no evidence that value was received in

6  exchange.  The Court finds that this creditor should not be

7  counted.

8  **Valley Forge Life Insurance:**

9       Stanly contends that this creditor did not hold a claim as

10 of the petition date because the premiums for the period had been

11 paid.  Also, Lopez is not the account debtor, but rather Madeline

12 Lopez.  See Keehn Dec at Exhibit L.  Lopez argues that this is a

13 life insurance policy which requires yearly payments.  However,

14 he provides no evidence that he, as opposed to Madeline, is the

15 debtor on this account.  Accordingly, the Court holds that this

16 claim should not be counted.

17 **Verizon Wireless:**

18      Stanly contends that this claim was subject to a bona fide

19 dispute as of the petition date.  It appears from Lopez's

20 testimony at his deposition that Verizon asserted a claim for

21 $262.47, while Lopez disputed any amount over $35.00.  Lopez

22 eventually paid the disputed portion, but not until August 21,

23 2005 - nearly two months after the petition was filed.  In his

24 deposition Lopez explained that he disputed the claim, but that

25 at some point he just got tired of fighting and paid it.  He does

26 not say that it was resolved prior to him simply paying the

- 13 -

ASA 0527

1   disputed amount.  See Depo. Trans. at 151-54.  Thus, it appears
2   that as of the petition date, this claim was subject to a bona
3   fide dispute and should not be counted.

4        Alternatively, Lopez admits that this creditor was paid
5   postpetition and provides no evidence of value received in
6   exchange.  Accordingly, it should not be counted because it could
7   be voided under § 549.  Either way this claim should not be
8   counted.

9   **Wayne Wise:**

10       Stanly alleges that this creditor received a preferential
11  payment of $900 on April 17, 2005 for interest which had accrued
12  on a note.  Lopez argues that the payment was made in exchange
13  for Wise's agreement to extend the maturity date of the note
14  until Lopez could sell his residence.

15       The Court finds that the extension which Lopez received in
16  exchange for the payment is akin to an agreement to forebear an
17  action against the debtor which, although valid consideration for
18  a contract, cannot constitute "new value," within meaning of the
19  new value exception to trustee's preference-avoidance power.
20  See, In re McLean Industries, Inc., 162 B.R. 410 (S.D.N.Y. 1993)
21  (reversed on other grounds 30 F.3d 385).  Thus, this creditor
22  should not be counted.

23  **Summary and Conclusion**

24       Based upon the foregoing analysis, the Court finds that of
25  the twenty-two creditors alleged by Lopez, seventeen must be
26  excluded from the count in § 301(b)(2) for one or more of

- 14 -

ASA 0528

1  the reasons set out in § 301(b).  This leaves only five

2  holders of claims against Lopez that qualify to be counted under

3  § 301(b)(2).  Since this is clearly "fewer than 12," the petition

4  was properly filed by one claim holder - Stanly.[1]

5      The Court does not reach the issue of whether Richard

6  Kipperman (and/or Northwest Florida Daily News) is a proper

7  petitioning creditor (which Lopez disputes), as only one

8  petitioning creditor is required given the Court's ruling.

9      For the reasons set forth above, the Court grants Stanly's

10  motion for summary judgment and denies Lopez's motion for summary

11  judgment on the issue of the number of holders of claims against

12  Lopez for the purposes of § 303(b).

13

14      IT IS SO ORDERED.

15      DATED:  <u>SEP 2 6 2006</u>

16

17                                    _____

18                                    PETER W. BOWIE, Chief Judge
                                      United States Bankruptcy Court

19

20

21

22

23

24  _____

25      [1]  In his opposition to the motion for summary judgment,
        Lopez alleges another, previously undisclosed creditor - Curd,
        Galindo & Smith, LLP.  Even if this creditor were included, the

26      number would still be insufficient to require more than one
        petitioning creditor.

                              - 15 -

ASA 0529

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

In re Case No. 05-05926-PBINV

**CERTIFICATE OF MAILING**

The undersigned, a regularly appointed and qualified clerk
in the office of the United States Bankruptcy Court for the
Southern District of California, at San Diego, hereby
certifies that a true copy of the attached document, to wit:

was enclosed in a sealed envelope bearing the lawful frank
of the Bankruptcy Judges and mailed to each of the parties
at their respective address listed below:

Attorney for Alleged Debtor:       Attorney for Petitioning
                                    Creditor Alan Stanly:

M. Jonathan Hayes, Esq.
21800 Oxnard Street, Ste. 840      L. Scott Keehn, Esq.
Woodland Hills, CA 91367           530 B Street, Suite 2400
                                    San Diego, CA 92101

Said envelope(s) containing such document were deposited
by me in a regular United States mail box in the City of
San Diego, in said district on September 26, 2006.

Barbara J. Kelly, Judicial Assistant

**ASA 0530**

1

**PROOF OF SERVICE**

2

I, MJ Hayes, declare:

3

I am a resident of the State of California and over the age of eighteen years, and not

4

a party to the within action; my business address is 21800 Oxnard St., Suite 840, Woodland Hills, CA 91367. On February 6, 2008, I served the within documents:

5

**NOTICE OF APPEAL BY ALLEGED DEBTOR TO ORDER FOR RELIEF**

6

7

          by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

8

    X      by placing the document(s) listed above in a sealed envelope with postage

9

thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

10

    ..      by causing personal delivery by             of the document(s) listed

11

above to the person(s) at the address(es) set forth below.

12

    ..      by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be

13

delivered to a _____ agent for delivery

14

    ..      by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

15

L. Scott Keehn

16

KEEHN & Assoc, APC

402 W. Broadway, Suite 1210

17

San Diego, CA 92101

18

19

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal

20

Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if

21

postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

22

I declare that I am employed in the office of a member of the bar of this court at

23

whose direction the service was made.

24

Executed on February 6, 2008, at Los Angeles, California.

25

26

_____

MJ Hayes

27

28

# TAB 133

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING


```
                                )
                                )
    FRANCIS J. LOPEZ            ) CASE NO. 05-05926-PB
                                )
                                )
_____ )
```


1) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

2) PETITIONING CREDITORS' MOTION FOR ORDER IMPOSING
    TERMINATING SANCTIONS AGAINST THE DEBTOR

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, JANUARY 28, 2008


SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, JANUARY 28, 2008, 10:30

--- O 0 O ---

**ASA 0533**

THE CLERK:  IN THE MATTER OF FRANCIS J. LOPEZ.  WE
HAVE TWO MATTERS ON CALENDAR:  1) PETITIONING CREDITORS'
MOTION FOR ORDER IMPOSING TERMINATING SANCTIONS AGAINST
THE DEBTOR; AND, 2) CONTINUED STATUS CONFERENCE ON
INVOLUNTARY PETITION AND ANSWER.

          APPEARANCES, PLEASE.

     MR. HAYES:  GOOD MORNING, YOUR HONOR.

          JOHN HAYES FOR THE ALLEGED DEBTOR, FRANCIS
LOPEZ.

     THE COURT:  MR. HAYES.

     MR. KEEHN:  GOOD MORNING, YOUR HONOR.

          SCOTT KEEHN APPEARING ON BEHALF OF THE
PETITIONING CREDITORS.

     THE COURT:  MR. KEEHN.

     MR. KEEHN:  YOUR HONOR, AS A MATTER OF ACADEMIC
REGULARITY, WE WOULD RENEW AT THIS TIME THE EVIDENTIARY
OBJECTIONS AND INQUIRE OF THE COURT IF IT WISHES TO PROCEED
WITH ARGUMENT AND CONSIDER THE OBJECTIONS IN LIGHT OF
THAT.

     THE COURT:  I STILL WANT TO PROCEED WITH ARGUMENT.

     MR. KEEHN:  OKAY.

          WELL, YOUR HONOR, THIS IS, AS I POINTED OUT IN
THE REPLY, WE ARE ONE DAY MINUS THE ONE YEAR ANNIVERSARY
OF WHAT HAS BECOME A SANCTIONS ODESSEY.  THE COURT HAS ON
INNUMERABLE OCCASIONS IN THE PAST PUT OFF THE DAY OF
RECKONING WITH REGARD TO MONETARY SANCTIONS.  AND THAT
DAY OF RECKONING FINALLY CAME ON NOVEMBER 19TH.  THAT WAS

ASA 0534

A LONG AND WINDING ROAD.

BUT HAVING GONE THAT LONG AND WINDING ROAD, THE COURT TOOK SPECIAL STEPS IN MAKING IT'S AWARD OF THE SANCTIONS TO INDICATE THAT THE TIME HAD COME TO PAY ATTENTION TO THIS CASE.

THE COURT DISCLOSED IT'S CONCERNS ABOUT THE CONDUCT OF THE ALLEGED DEBTOR AND HIS APPARENT LACK OF CONCERN FOR EITHER HIS RESPONSIBILITIES AS A LITIGANT OR IN OBEYING THE ORDERS OF THE COURT.  THAT WAS VERY CLEARLY COMMUNICATED AS INDICATED FROM THE PORTIONS OF THE TRANSCRIPT THAT WE CITED IN CONNECTION WITH OUR REPLY.

I HAVE NO DOUBT AND I SUSPECT THE COURT HAS NO DOUBT THAT THE COURTS MESSAGE WAS CONVEYED TO THE DEBTOR WITH CRYSTAL CLARITY.  BUT WE TOOK ANOTHER STEP WHEN WE SUBMITTED THE LODGED ORDER AND PROVIDED MR. HAYES WITH A COPY.  WE ALSO PROVIDED HIM WITH COPIES OF OUR WIRE TRANSFER INSTRUCTIONS, AND THE CLEAR -- THE EQUALLY CLEAR WARNING THAT THE PETITIONING CREDITORS WEREN'T GOING TO BROOK ANY DELAY IN MR. LOPEZ'S COMPLIANCE WITH THIS ORDER.

BUT WHAT YOU SEE FROM THE EVENTS THAT UNFOLDED SINCE THEN IS THAT YOU HAVE A REPETITION OF THE SAME OLD CONDUCT OF DISREGARDING THE COURT'S ORDER.  AND AT THE LAST MINUTE -- LITERALLY THE 11TH HOUR -- YOU GET A COMMUNICATION THAT SAYS SOMETHING TO THE EFFECT OF, "GEE, I CAN'T COMPLY.  WHY DON'T YOU NEGOTIATE WITH ME FOR SOME LESSER RESULT; A PARTIAL PAYMENT NOW AND MONTHLY INSTALLMENTS."

ASA 0535

WELL, WE WAITED A LONG TIME FOR THOSE MONETARY
SANCTIONS.  WE HAD A COURT ORDER.  AND WHAT DIDN'T
ACCOMPANY THAT REQUEST FOR ENTERING INTO A NEGOTIATING
SESSION WITH THE ALLEGED DEBTOR WAS ANY EXPLANATION AS TO
WHY WE SHOULD.  NOT JUST THAT WE HAD A ORDER TO RELY ON
BUT RATHER WHAT WERE THE EFFORTS THAT THE DEBTOR HAD
UNDERTAKEN FROM NOVEMBER 19TH THROUGH DECEMBER 19TH IN
ORDER TO COME UP WITH THE FUNDS REQUIRED BY THAT SANCTIONS
ORDER.  IF HE DID ANYTHING, HE CHOOSE NOT TO DISCLOSE IT
IN THE RECORD.  SO WE DECLINED.

AND AS INDICATED FROM THE E-MAIL THAT WAS
ATTACHED TO MY DECLARATION, WE DID MORE THAN JUST DECLINE.
WE WARNED MR. LOPEZ THAT IF HE WAS THINKING THAT HE WOULD,
AS HE HAD IN THE PAST, COME INTO COURT AND BEGGED FOR
LENIENCY BECAUSE HE JUST COULDN'T COMPLY, JUST DIDN'T HAVE
THE ABILITY, THAT WE HAVE EVIDENCE GARNERED FROM DISCOVERY
IN LITIGATION PENDING WITH HIS WIFE AND AN ENTITY THAT SHE
OWNS THAT THAT WAS FALSE.  AND WE GAVE HIM FAIR WARNING
TO BE CAREFUL ABOUT THE PENALTIES OF PERJURY IF HE WAS
GOING TO ADVANCE THAT ARGUMENT.

APPARENTLY, HE HAS SOME HEALTHY RESPECT FOR THE
PENALTIES OF PERJURY.  BECAUSE HE SAID IN HIS DECLARATION
THE ABSOLUTE MINIMAL AMOUNT THAT MIGHT BE CONSTRUED AS AN
EXCUSE FOR NOT PAYING: HE SAYS, "I COULDN'T COME UP WITH
IT."

WELL, I SUBMIT TO YOU THAT FOR THE REASONS
INDICATED BY THE EVIDENCE THAT WE PRODUCED AS WE PROMISED

ASA 0536

HIM WE WOULD IF HE WENT DOWN THAT PATH; THAT'S JUST FALSE.

THE GENTLEMEN HAS DISPOSABLE INCOME THAT APPEARS TO BE IN

THE NEIGHBORHOOD OF AT LEAST $123,800 A YEAR.  THE AVERAGE

OF DEPOSITS MADE INTO THE FAMILY ACCOUNT ARE $10,319.

HE'S AT 90.4 PERCENT ABOVE THE MEDIAN FOR INCOME IN THE

STATE -- IN FLORIDA WHERE HE RESIDES.  HE'S 80.3 PERCENT

ABOVE THE MEDIAN FOR TWO-EARNER FAMILIES.

SO THE NOTION THAT HE JUST DOESN'T HAVE THE

RESOURCES TO PAY THE SANCTION THAT WAS AWARDED IN NOVEMBER

JUST DON'T FLY UNLESS YOU PRESENT SOME OTHER EVIDENCE TO

SHOW WHY IT IS THAT THAT LEVEL OF INCOME WAS INSUFFICIENT

TO ALLOW HIM TO MAKE A FULL AND TIMELY PAYMENT OF THE

SANCTIONS AWARD.

THERE ARE OTHER THINGS HE DIDN'T DO.  HE COULD

HAVE, RIGHT UP TO DECEMBER 19, HE COULD HAVE FILED A RULE

60(B) MOTION SEEKING EITHER TOTAL RELIEF FROM THE

SANCTIONS FOR WHATEVER CAUSE HE MIGHT HAVE.  OR, AT LEAST,

INSTEAD OF ASKING US TO NEGOTIATE WITH HIM FOR AN EXTENDED

PAYMENT PERIOD, ASK THE COURT TO GIVE HIM SOME RELIEF ON

THE PAYMENT REQUIREMENT IN THE SAME WAY.  IN OTHER WORDS,

A DOWN PAYMENT AND PAYMENTS.

THE TROUBLE IS, OF COURSE, THAT HAD HE GONE DOWN

THAT PATH, HE WOULD HAVE NEEDED EVIDENCE; EVIDENCE TO SHOW

GOOD CAUSE.  AND HE DOESN'T HAVE ANY.  HE DOESN'T HAVE ANY

EVIDENCE TO SUPPORT A RULE 60(B) MOTION; HE DOESN'T HAVE

ANY EVIDENCE TO SUPPORT HIS OPPOSITION TO OUR REQUEST FOR

TERMINATING SANCTIONS.

**ASA 0537**

THIS LONG AND WINDING ROAD SHOULD COME TO AN END, BECAUSE DELAY FOR THE DEBTOR IS A VICTORY.  WE'VE EXPLAINED IT NOT JUST IN THIS MOTION BUT, I THINK, IN EVERY SANCTIONS MOTION THAT WE BROUGHT BEGINNING LAST JANUARY THAT ONE OF THE INSIDIOUS RISKS THAT IS ASSOCIATED WITH THIS CONSTANT TACTIC OF DELAY IS THAT THERE IS AN INVISIBLE CREDITOR BODY THAT CAN BE BUILDING A CREDITOR BODY OF INVOLUNTARY GAP CLAIMS THAT WILL LEAP AHEAD OF PRIORITY OF THE PETITIONING CREDITORS WHO TOOK THE TROUBLE TO BRING THE GENTLEMAN INTO THE BANKRUPTCY COURT WHERE HE BELONGS.

NOW, WE HAVE HARPED ON THAT POINT IN EVERY SET OF PAPERS THAT WE FILED; NOT JUST BECAUSE IT'S A VALID POINT THAT THE COURT SHOULD CONSIDER BUT IT HAS ANOTHER DIMENSION TO IT.  EVERY TIME WE RAISED THAT ARGUMENT, THERE WAS AN ELEMENT OF INVITATION.  AN INVITATION FOR THE DEBTOR TO COME FORWARD WITH DECLARATIONS UNDER PENALTY OF PERJURY TO DEMONSTRATE WHY THAT WASN'T A REAL RISK.

YOU HAVE HAVEN'T SEEN IN A WHOLE YEAR THAT WE'VE BEEN DOWN THIS SANCTIONS PATH, YOU HAVEN'T SEEN ONE DECLARATION THAT EVEN ADDRESSES THAT ISSUE.  AND I SUBMIT TO YOU THAT THE REASON YOU HAVE HAVEN'T SEEN IT IS BECAUSE, AGAIN, MR. LOPEZ HAS A HEALTHY RESPECT FOR THE PENALTIES OF PERJURY AND HE WON'T OUTRIGHT LIE TO YOU.

WHAT HE WILL DO AND WHAT HE HAS DONE IS DECEIVE YOU BY CALCULATED OMISSION.  SAYS HE DOESN'T HAVE THE MONEY.  HE DOESN'T TELL YOU WHAT HIS RESOURCES WERE AND HOW THEY WERE EXPENDED; JUST WANTS TO TELL YOU HE DOESN'T

HAVE THE MONEY.  AND I SUBMIT TO YOU THAT IN LIGHT OF THE
EVIDENCE OF THE RESOURCES THAT HE DOES HAVE, THAT IS A
DELIBERATE DECEPTION.

SO WHERE WE ARE TODAY, ONE YEAR DOWN THE ROAD,
IS AT A POINT WHERE THE COURT SHOULD SIMPLY STOP THE
ABILITY OF THE DEBTOR TO INCREASE THE INVOLUNTARY GAP
CREDITOR BODY.  THIS HAS BECOME ALMOST A GAME TO THE
DEBTOR.  HE'S BAITING YOU.  WHEN ARE YOU REALLY GOING TO
DO SOMETHING THAT'S MEANINGFUL?  YOU IMPOSE SANCTIONS,
BUT THAT DIDN'T BOTHER HIM BECAUSE HE HAD NO INTENTION OF
PAYING THEM; CERTAINLY NOT PAYING THEM IN THE TIME FRAME
THAT YOU REQUIRED.

AND NOW HE STANDS OFF BAITING STILL.  HE DOESN'T
PAY; HE WAITS FOR THE MOTION TO BE FILED.  AND I CAN TELL
YOU AS AN OFFICER OF THE COURT THAT AS I STAND HERE TODAY,
NO PORTION, NO PORTION OF THE SANCTIONS HAVE BEEN OFFERED
WITHOUT THE STRING THAT REQUIRED A NEGOTIATION; NOT ONE
PENNY.

THIS DEBTOR DOES NOT UNDERSTAND OR APPRECIATE
HIS DUTIES AS THE LITIGANT.  HE WILL NOT VOLUNTARILY
COMPLY.  AND THIS COURT HAS GIVEN HIM MORE CHANCES THAN
I WOULD HAVE IMAGINED, AND CERTAINLY MORE THAN HE
DESERVED.

IT'S TIME TO GET ON WITH THE BANKRUPTCY PROCESS
AND TO STRIKE HIS ANSWER; ENTER THE ORDER FOR RELIEF.
LET'S GET HIM TO FILE HIS SCHEDULES, GET A TRUSTEE IN PLACE
AND MOVE FORWARD.

ASA 0539

THE COURT:  MR. HAYES.

MR. HAYES:  THANK YOU, YOUR HONOR.

YOUR HONOR, I'M NOT SURE WHAT I CAN ADD AFTER, I MEAN, TWO AND A HALF YEARS, NOW, DOING THIS CASE.

BUT I WILL SAY THAT AT THE LAST HEARING, YOUR HONOR, BASICALLY, STATED THAT IF THE SANCTIONS WEREN'T PAID, TERMINATING SANCTIONS WOULD BE IMPOSED.  AND THE SANCTIONS HAVEN'T BEEN PAID.

I SPOKE TO MR. LOPEZ ON THURSDAY.  AND I SAID, "LOOK, IF I SHOW UP WITH A CHECK, WE CAN PROBABLY DODGE THIS RESULT."  AND HE TOLD ME THAT HE COULD COME UP WITH HALF BY SKIPPING A HOUSE PAYMENT.  AND HE JUST COULDN'T COME UP WITH THE REST OF IT.  AND THAT'S -- I MEAN, THAT'S WHERE THAT IS.

WHAT I WOULD LIKE TO ASK THE COURT, THOUGH, IS THAT DISCOVERY IS OVER; MR. KEEHN HAS STATED MANY TIMES THAT ONCE HE GETS THIS LAST DEPOSITION, HE'LL FILE A MOTION FOR SUMMARY JUDGMENT AS TO THE SECOND ISSUE.  THE DEBTOR WILL NOT FILE A MOTION FOR SUMMARY JUDGMENT BECAUSE I THINK MR. KEEHN KNOWS MORE ABOUT MR. LOPEZ THAN MR. LOPEZ DOES, I THINK.  HE'S GOT THE EVIDENCE TO ESTABLISH WHETHER OR NOT HE WAS PAYING THEIR DEBTS AS THEY GENERALLY BECAME DUE. HE'LL PRESENT IT TO THE COURT; THE COURT WILL RULE, BASED ON THE MERITS OF WHETHER AN INVOLUNTARY SHOULD BE IMPOSED. AND, I MEAN, THAT'S ONLY A MONTH AWAY, I IMAGINE.  AND TERMINATING SANCTIONS ARE -- SHOULD BE AVOIDED IF THERE'S ANY OTHER WAY TO RESOLVE THE ISSUE.  BUT BEYOND THAT, I

ASA 0540

MEAN, HE DIDN'T PAY THE SANCTIONS.

AND I HAVE NOTHING TO ADD.

THE COURT:  WELL, I THINK THE TIME HAS COME, FRANKLY.
AND I AM GOING TO GRANT THE TERMINATING SANCTIONS AND
REQUIRE THAT AN ORDER FOR RELIEF BE ENTERED; A TRUSTEE BE
APPOINTED; AND REQUIRE THE DEBTOR TO FILE SCHEDULES WITHIN
FIFTEEN DAYS OF TODAY'S DATE.  AND THAT'S NOT GOING TO
EXCUSE ANYTHING.

IF I WERE TO REQUIRE MR. KEEHN TO GOOD AHEAD AND
DO HIS MOTION FOR SUMMARY JUDGMENT ON THE SECOND ISSUE,
IT WOULD BE JUST AS IF MR. LOPEZ COULD CONTINUE TO IGNORE
THIS COURT'S ORDERS.  I LET YOU KNOW BACK IN NOVEMBER THAT
I'D ADD IT IN TERMS OF HIS NON-PARTICIPATION IN THIS
PROCESS; FOOT-DRAGGING AND NON-PARTICIPATION.  AND I
REMAIN IN THAT FRAME OF MIND.

SO THE ORDER FOR RELIEF WILL ENTER.

MR. KEEHN:  THANK YOU, YOUR HONOR.

MR. HAYES:  THANK YOU, YOUR HONOR.

THE CLERK:  STATUS CONFERENCE GOES OFF CALENDAR;
CORRECT?

THE COURT:  YES.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

       I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY
CERTIFY:

       THAT I REPORTED IN SHORTHAND THE PROCEEDINGS
HELD IN THE FOREGOING CAUSE ON THE 28TH DAY OF JANUARY,
2008; THAT MY NOTES WERE LATER TRANSCRIBED INTO
TYPEWRITING UNDER MY DIRECTION; AND, THAT THE FOREGOING
TRANSCRIPT CONTAINS A CORRECT STATEMENT OF THE
PROCEEDINGS.

       DATED THIS _____ DAY OF _____,
2008.

_____

LYNETTE ALVES, CSR #12534, RPR #61256

ASA 0543

# TAB 164

1                UNITED STATES BANKRUPTCY COURT

2               SOUTHERN DISTRICT OF CALIFORNIA

3            CHIEF JUDGE PETER W. BOWIE, PRESIDING

4

5    IN THE MATTER OF:              NO. 05-05926

6

7

8    FRANCIS J. LOPEZ

9

10   1)  ALLEGED DEBTOR'S MOTION FOR SUMMARY JUDGMENT AND

11   ORDER DISMISSING INVOLUNTARY PETITION

12   2)  PETITIONING CREDITORS' MOTION FOR SUMMARY JUDGMENT ON

13   PHASE 1 OF BIFURCATED INVOLUNTARY PETITION, OR

14   ALTERNATIVELY, SUMMARY ADJUDICATION OF FACTS NOT SUBJECT

15   TO MATERIAL DISPUTE

16   3)  STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER

17

18             REPORTER'S TRANSCRIPT OF PROCEEDING

19

20                   SAN DIEGO, CALIFORNIA

21                  MONDAY, JUNE 26, 2006

22

23   U.S. BANKRUPTCY COURT     BY COLLETTA BROOKS, CSR,RPR
     DEPARTMENT FOUR           CSR NO. 12589
24   325 WEST F STREET         SAN DIEGO BANKRUPTCY REPORTERS
     SAN DIEGO, CA 92101       325 WEST F STREET
25                             SAN DIEGO, CA 92101
                               (619) 741-0933

                                                      1

ASA 0544

1

2    APPEARANCES:

3

4

5    FOR THE CREDITOR:

6                        KEEHN & ASSOCIATES

7                        BY:  L. SCOTT KEEHN

8                        402 WEST BROADWAY, SUITE 1210

9                        SAN DIEGO, CALIFORNIA 92101

10                       (619) 400-2200

11

12   FOR THE ALLEGED DEBTOR:

13                       LAW OFFICE OF M. JONATHAN HAYES

14                       BY: M. JONATHAN HAYES

15                       21800 OXNARD STREET, SUITE 840

16                       WOODLAND HILLS, CALIFORNIA 91367

17                       (818) 710-3656

18

19

20

21

22

23

24

25

2

ASA 0545

```
 1  SAN DIEGO, CALIFORNIA, MONDAY, JUNE 26, 2006

 2

 3      MS. WILKINSON:  FOR TODAY ON FRANCIS J. LOPEZ, THREE

 4  MOTIONS OR TWO MOTIONS AND THE COURT'S STATUS

 5  CONFERENCE, ALLEGED DEBTOR'S MOTION FOR SUMMARY JUDGMENT

 6  AND ORDER DISMISSING INVOLUNTARY PETITION; PETITIONING

 7  CREDITORS' MOTION FOR SUMMARY JUDGMENT; AND THE STATUS

 8  CONFERENCE ON THE PETITION AND THE ANSWER.

 9          APPEARANCES, PLEASE.

10      MR. KEEHN:  GOOD AFTERNOON, YOUR HONOR.  SCOTT KEEHN

11  OF ROBBINS & KEEHN APPEARING ON BEHALF OF THE

12  PETITIONING CREDITORS.  AND MAY THE RECORD REFLECT THAT

13  ALAN STANLY IS PRESENT AND IN THE COURTROOM.

14      MR. HAYES:  GOOD AFTERNOON, YOUR HONOR.  JOHN HAYES,

15  H-A-Y-E-S, FOR THE ALLEGED DEBTOR, FRANCIS LOPEZ WHO IS

16  ALSO IN THE COURTROOM.

17      THE COURT:  MR. KEEHN, LET'S START WITH YOUR MOTION.

18      MR. KEEHN:  THANK YOU, YOUR HONOR.

19          WELL, YOUR HONOR, THERE WERE MANY THINGS ABOUT

20  THIS MOTION THAT CAME NOT AS A SURPRISE.  AND THAT IS TO

21  FIND THAT MOST OF THE CREDITORS IDENTIFIED BY THE DEBTOR

22  ARE NOT QUALIFIED FOR THE CALENDAR 303.  BUT WHAT CAME

23  AS EVEN A FURTHER SURPRISE WAS THAT THERE WAS NO REPLY

24  TO OUR OPPOSITION TO THE DEBTOR'S MOTION FOR SUMMARY

25  JUDGMENT ON BOTH COUNTS, NO RESPONSE IN EITHER OF THE --
```

3

ASA 0546

1    IN ANY OF THE PAPERS WITH REGARD TO OUR SHAM DECLARATION

2    OR SHAM AFFIDAVIT ATTACK ON MOST OF THE TESTIMONY

3    PROFFERED BY MR. LOPEZ.

4         THERE WAS ONE SURPRISE THAT DID COME FORWARD AS

5    A RESULT OF SOME OF MR. LOPEZ' OPPOSITION.  AND THAT WAS

6    DESPITE THE FACT THAT THEY CLAIM THEY HAD NO RESPONSIVE

7    DOCUMENTS IN RESPONSE TO OUR SUBPOENA, AMERICAN EXPRESS

8    APPEARS TO BE, NEVERTHELESS, A LEGITIMATE CREDITOR AS OF

9    THE TIME AS OF JUNE 30, 2005, WHEN WE FILED THE

10   PETITION.  MR. LOPEZ HAS PRODUCED A DOCUMENT THAT

11   APPEARS TO BE CORRESPONDENCE REGULARLY ISSUED FROM

12   AMERICAN EXPRESS SOMETIME IN THE FALL OF 2005

13   IDENTIFYING AS A SOMEWHAT HIGHER OBLIGATION.  AND WE'LL

14   ACCEPT THAT.  AND WE RECOGNIZE AT THIS POINT THAT

15   AMERICAN EXPRESS IS, INDEED, A QUALIFYING CREDITOR FOR

16   PURPOSES OF THE COUNT.  THAT TAKES THE COUNT FROM ZERO

17   TO ONE.  I THINK, YOUR HONOR, AS I INDICATED, YOUR

18   HONOR, IT'S NOW CLEAR THAT AMERICAN EXPRESS IS INDEED A

19   CREDITOR.

20        I THINK AS THE COURT CAN HAVE, WILL HAVE,

21   ALREADY ASCERTAINED FROM THE SUMMARY STATEMENT OF

22   UNDISPUTED FACTS THAT STATEMENT HAS EVOLVED TO REFLECT

23   BOTH OBJECTIONS PROFFERED BY THE ALLEGED DEBTOR AND OUR

24   RESPONSES AND SO THAT THE REPLY SUMMARY OF UNDISPUTED

25   FACTS I THINK YOU HAVE THE WHOLE STORY.  I DON'T THINK

4

1    THERE'S SO MUCH OF AN ARGUMENT ABOUT THE LEGAL

2    PRINCIPLES INVOLVED IN THIS CASE AS THIS IS A CASE THAT

3    FOCUSES ON THE EVIDENCE AS IT HAS BEEN GARNERED TO DATE.

4    AND REVIEWING THAT EVIDENCE, YOUR HONOR, I THINK IT'S

5    VERY CLEAR THAT THERE ARE, AND I'M ONLY FOCUSING ON

6    PHASE 1 OF THE BIFURCATED ISSUES, THERE ARE, INDEED,

7    LESS THAN 12 CREDITORS TO BE INCLUDED IN THE SECTION 303

8    COUNTS, WHICH WOULD MAKE THE PETITION FILED BY

9    MR. STANLY ACTING ALONE A VALID PETITION.  I WANT TO

10   DEAL WITH --

11       THE COURT:  I'M GOING TO GET TO THAT BECAUSE I'M

12   STRUGGLING WITH THE 303(B)(2) CONCEPT.  YOUR MOVING

13   PAPERS SAY THE COUNT'S ZERO.  YOU NOW SAY IT'S AT LEAST

14   ONE WITH AMERICAN EXPRESS, BUT YOUR MOVING PAPERS SAY

15   THE COUNT IS ZERO.  303(B)(2) SAYS THAT IF THERE ARE

16   FEWER THAN 12 SUCH HOLDERS, "SUCH HOLDERS" MEANING

17   PEOPLE WITH A CLAIM BEFORE ENTITIES WITH A CLAIM, IT'S

18   NOT CONTINGENT AS TO LIABILITY AND NOT SUBJECT TO

19   BONIFIDE DISPUTE AS TO EITHER LIABILITY OR NOT; RIGHT?

20   SO ARE WE AGREED ON THAT?

21       MR. KEEHN:  IT INCLUDES AT LEAST THAT.  IT ALSO

22   INCLUDES THE VOIDABLE CLAIMS THAT ARE HELD BY ENTITIES.

23       THE COURT:  WE HAVEN'T GOTTEN TO THE EXCLUSION

24   LANGUAGE YET.

25       MR. KEEHN:  OKAY.

5

ASA 0548

1      THE COURT:  NOW WE GET TO THE EXCLUSION LANGUAGE

2   UNDER (B)(2).

3      MR. KEEHN:  IT ALSO EXCLUDES UNDER (B)(1)

4   AFFILIATES.

5      THE COURT:  OKAY.

6      MR. KEEHN:  ALL RIGHT.

7      THE COURT:  WELL, IF YOU EXCLUDE IT UNDER (B)(1)

8   AFFILIATES.  THAT'S NOT A HOLDER OF A CLAIM?

9      MR. KEEHN:  WHEN YOU SAY OF "SUCH CLAIM" THE

10  LANGUAGE OF (B)(2) TAKES YOU BACK TO (B)(1).  (B)(1)

11  EXCLUDES AFFILIATES.

12     THE COURT:  WELL, ACTUALLY -- WELL, OKAY.  THE

13  INSIDER IS EXCLUDED IN (B)(2).  (B)(1) DOESN'T SAY

14  ANYTHING ABOUT IT ONE WAY OR THE OTHER.

15          BUT IF YOU TAKE IT BACK THERE WITH THE (B)(2),

16  MY QUESTION IS WHY ARE WE HERE?  HOW ARE WE HERE?  I

17  REALIZE YOUR THEORY IS EVEN IF THE NUMBER IS ZERO.  BUT

18  (B)(2) SAYS YOU'VE GOT TO HAVE AT LEAST ONE SUCH HOLDER

19  WHOSE CLAIMS EXCEED NOW THE 12,300.

20     MR. KEEHN:  YES.

21     THE COURT:  AND IF YOU CAN'T COUNT THEM --

22     MR. KEEHN:  NOW, YOUR HONOR, THE COUNTING IS ONLY

23  FOR PURPOSES OF DETERMINING THE 12 OR FEWER THRESHOLD.

24  YOU COULD HAVE A CREDITOR THAT HAD RECEIVED A

25  PREFERENCE.  THEY COULD STILL QUALIFY AS A PETITIONING

6

ASA 0549

1    CREDITOR.  THEY WOULDN'T BE INCLUDED IN THE COUNT OF 12

2    OR LESS.  THERE ARE TWO DISTINCT ANALYSES THAT HAVE TO

3    GO ON.

4        THE COURT:  OKAY.  I UNDERSTAND YOUR THEORY.  GO

5    AHEAD.

6        MR. KEEHN:  ALL RIGHT.  I WANT TO DEAL WITH THE

7    EVIDENCE, YOUR HONOR, AS IT ADDRESSES PEOPLE EXCLUDED.

8    AND I'M GOING TO DO IT IN THE ORDER IN A DESCENDING

9    ORDER WHERE IT WILL DEAL WITH THE EASIEST CHARACTERS

10   FIRST.  AND THAT IS, ALAN STANLY IS LITERALLY AN

11   AFFILIATE BECAUSE HE'S AN INSIDER OF AN AFFILIATE.  AND

12   AS WE POINTED OUT IN OUR PAPERS, THOSE ARE EXCLUDED.

13   AND, IN FACT, IT'S THE UNDISPUTED FACTS 121 AND 122 THAT

14   ESTABLISH THAT RELATIONSHIP.  AND THOSE ARE UNDISPUTED

15   EVEN BY THE DEBTOR.  HE DISPUTES THE CHARACTERIZATION,

16   BUT THE UNDERLYING FACTS THAT LEAD TO THAT

17   CHARACTERIZATION ARE CONCEDED.  AND, IN FACT, THIS COURT

18   HAS ALREADY ADDRESSED THAT ISSUE.  THAT'S WHY VENUE WAS

19   PROPERLY LAID IN THIS DISTRICT.  AND, THERE AGAIN, THAT

20   VENUE WAS TESTED IN A MOTION AT THE BEGINNING POINT OF

21   THE CASE.

22        THE NEXT EASIEST CATEGORY OF ENTITIES

23   IDENTIFIED ON THE DEBTOR'S EXHIBIT A EASIEST TO DISPOSE

24   OF ARE THOSE THAT ARE NOT CLAIMANTS AT ALL; THOSE WHO

25   DON'T HOLD CLAIMS AGAINST THE DEBTOR.  AND WE BEGIN WITH

7

ASA 0550

1    ALLSTATE FLORIDIAN.  AND IF YOU LOOK AT THE UNDISPUTED

2    SECTIONS 35 TO 40, YOU SEE THAT WHAT IS CLEAR IS THAT

3    THE POLICY PERIOD WAS PAID UP THROUGH JULY OF '05.

4    THERE WAS NOTHING NEW AT THAT POINT IN TIME.

5         THE NEXT CREDITOR THAT ISN'T A CREDITOR IS

6    AMERICAN HOME SHIELD.  AND HERE IN LOPEZ' STATEMENT OF

7    UNDISPUTED FACTS, HE, IN FACT, AT 46 HE ADMITS THE

8    UNDERLYING FACTS NECESSARY TO SHOW THAT HERE AGAIN YOU

9    HAVE A POLICY OF INSURANCE THAT WAS IN EFFECT ON THE

10   PETITION DATE AND NOTHING WAS OWED.  NOTHING WOULD BE

11   OWED UNTIL THE POLICY CAME TO ITS RENEWAL POINT.

12        THE SAME THING IS TRUE OF THE COASTAL COMMUNITY

13   INSURANCE. IT'S ANOTHER ONE.  WE'VE GOT, IT SAYS, THE

14   CREDITORS DID IN 73 TO 78.  IT'S CLEAR THAT THE POLICY

15   STRADDLES THE PETITION DATE, AND SO THERE IS NO DEBT

16   THAT WAS OWED ON THE 30TH OF JUNE.

17        VALLEY -- EXCUSE ME -- NORTHWEST FLORIDA DAILY

18   IS IN THE SAME CATEGORY.  THE EVIDENCE SHOWS THAT THE

19   OBLIGATION WAS PREPAID FOR THREE MONTHS.  THE

20   SUBSCRIPTION OBLIGATION IS UNDISPUTED.

21        NOW, IN REPLY, THE DEBTOR RAISES THE CONTENTION

22   BUT PROVIDES NO SUPPORTING DOCUMENTATION TO SUPPORT THE

23   CONTENTION THAT, IN FACT, HE OWED MONEY: THE $45 HE

24   CLAIMS FOR SOME SORT OF AN ADVERTISEMENT THAT HE HAD

25   PLACED WITH FLORIDA'S -- NORTHWEST FLORIDA DAILY.

8

ASA 0551

1          AND THE INTERESTING THING ABOUT THAT ARGUMENT
2     IS IT DOESN'T MAKE ANY DIFFERENCE WHETHER HE'S RIGHT OR
3     WRONG.  IF HE'S WRONG AND THERE IS NO DOCUMENT TO BACK
4     UP HIS CLAIM, THEN IT'S A NON-CREDITOR BECAUSE
5     EVERYTHING WAS PAID IN ADVANCE AT THAT TIME.  IF HE'S
6     CORRECT, THAT THERE WAS YET ANOTHER OBLIGATION CREATED
7     FOR SOME ADVERTISING ACTIVITY, THEN THE DEBTOR'S
8     EXCLUDED BECAUSE THEY RECEIVED A PREFERENCE PAYMENT
9     UNDER 547.  THE SAME DOCUMENT THAT SHOWS THAT THE
10    SUBSCRIPTION WAS PREPAID FOR THREE MONTHS ALSO INDICATES
11    THAT THERE WAS A SUBSTANTIAL ARREARAGE THAT WAS PAID AT
12    THE TIME PRE-PETITION.  SO THEY'RE OUT ON ONE OF THOSE
13    TWO THEORIES.
14         THE NEXT CREDITOR THAT ISN'T IS PROGRESSIVE
15    INSURANCE.  THIS IS AN AUTOMOBILE INSURANCE POLICY,
16    WHICH LIKE THE OTHER INSURANCE POLICIES, STRADDLED THE
17    ESTATE.  I THINK THE EVIDENCE IS CLEAR ON THAT.
18         THEN WE HAVE VALLEY FORGE LIFE INSURANCE.  WE
19    HAVE DOCUMENTARY EVIDENCE THAT WE HAVE REFERENCED IN THE
20    UNDISPUTED STATEMENTS OF FACTS THAT ACTUALLY SHOW
21    INVOICES FOR THIS PARTICULAR POLICY OF LIFE INSURANCE.
22    THE BENEFICIARY IS MRS. LOPEZ.  AND SHE IS IDENTIFIED AS
23    THE ACCOUNT DEBTOR.  SO MR. LOPEZ OWED THIS ENTITY NO
24    MONEY ON THE PETITION DATE.
25         THE NEXT CATEGORY OF CLAIMS HOLDERS THAT IS

9

1    EASIEST TO EXCLUDE ARE THOSE WHO RECEIVED POST-PETITION

2    PAYMENTS ON THE PRE-PETITION OBLIGATION.  FIRST WE HAVE

3    BANK OF AMERICA.  AND THERE IN NUMBER 56 OF THE

4    UNDISPUTED FACTS IS CLEARLY EVIDENCE OF PAYMENT HAVING

5    BEEN MADE AFTER JUNE 30TH, SO THEY'RE IN THE 549

6    CATEGORY.

7            AND IT'S INTERESTING THAT, NOT NECESSARILY WITH

8    THIS PARTICULAR CREDITOR BUT WITH OTHER CLAIMS, THE

9    DEBTOR ALLUDES TO THE FACT THAT, WELL, SOME OF THESE

10   WERE PAID FROM HIS WIFE'S ACCOUNT NOT HIS.  THERE'S

11   NOTHING IN THE MOVING PAPERS OR THE OPPOSING PAPERS OR

12   THOSE SUPPORTING THE MOVING PAPERS FOR THE DEBTOR'S

13   MOTION THAT IDENTIFIED THE ACTUAL SOURCE OF THE PAYMENT,

14   THE EVIDENCE OF IT.  SO WE JUST HAVE A CLAIM THAT'S

15   REALLY UNSUPPORTED BY THE EVIDENCE.  AND SO THERE'S

16   NOTHING TO INDICATE THAT THESE CLAIMS WOULD NOT BE

17   VOIDABLE UNDER SECTION 549.

18           CINGULAR WIRELESS.  IT'S UNDISPUTED STATEMENT

19   64.  IT ADMITS THE POST-PETITION PAYMENT TO THAT

20   CREDITOR.  IT'S A VERY SIMPLE EVIDENCE.  AND THERE'S NO

21   EVIDENCE TO SHOW WHY THAT POST-PETITION CLAIM WOULD NOT

22   BE VOIDABLE UNDER SECTION 549.  AND IT IS AT THIS POINT

23   IT WAS THE DEBTOR'S BURDEN TO COME FORWARD WITH EVIDENCE

24   TO SHOW THAT IF THE DEBT GOT PAID, IT WAS PAID FROM A

25   SOURCE OTHER THAN THE ESTATE, AND THEREFORE, NOT

10

ASA 0553

1    VOIDABLE.  WE DON'T HAVE ANY OF THAT EVIDENCE IN THE

2    RECORD.

3         NEXT WE HAVE COX COMMUNICATIONS.  THE STATEMENT

4    NUMBER 81 FOCUSES DIRECTLY ON THAT.  IT'S CLEARLY A

5    PAYMENT THAT WAS MADE POST-PETITION.  AND, AGAIN, NO

6    EVIDENCE TO SHOW THAT THERE'S A DEFENSE TO THAT

7    POST-PETITION PAYMENT.

8         NEXT IS KELLY PLANTATION OWNERS.  WE HAVE

9    STATEMENT NUMBER 92 AND 95 ADMITTING THE PAYMENT.  AND

10   NOTHING TO DEMONSTRATE WHY THERE ARE FACTS THAT WOULD

11   SUPPORT AN AVOIDANCE ACTION, SO THEY'RE HOLDING THE

12   CLAIM THAT WOULD BE VOIDABLE UNDER SECTION 549.

13        NEXT IS THE OKALOOSA GAS DISTRICT.  THAT GAS

14   DISTRICT IN THE -- IN FACT, IN 105 AND 106, YOU SEE IN

15   THE DOCUMENTS REFERRED TO YOU, YOU SEE THAT THE JUNE

16   BILL IS PAID IN JULY.  POST-PETITION PAID.

17        SAME THING WITH THE QUICKEN PLATINUM CARD.  THE

18   UNDISPUTED CLAIMS 116 TO 20 CLEARLY DEMONSTRATE THAT

19   THEY RECEIVED PAYMENTS POST-PETITION.  NO EVIDENCE TO

20   SHOW WHY THOSE PAYMENTS WOULD NOT BE, WOULD NOT BE

21   VOIDABLE.

22        SAME THING WITH TEXACO.  STATEMENTS 123 TO 131

23   CLEARLY DEMONSTRATE THAT THERE WERE POST-PETITION

24   PAYMENTS MADE ON THIS ACCOUNT.

25        THE SAME IS TRUE OF VERIZON WIRELESS, STATEMENT

11

ASA 0554

1    141 IN PARTICULAR INDICATES THAT THERE WERE PAYMENTS

2    POST-PETITION.

3        THE NEXT CATEGORY OF EXCLUSIONARY FACTS ARE

4    THOSE CLAIMS THAT ARE SUBJECT TO A DISPUTE.  HERE WE

5    HAVE BANKCARD SERVICES.  AND STATEMENTS 57 TO 60 THAT

6    CLEARLY DEMONSTRATE THE FACT THAT THERE WAS A DISPUTE.

7    I BELIEVE THAT THE STATEMENT, IN FACT, NUMBER 60 IN

8    PARTICULAR, ADDRESSES THAT ISSUE.  I'M NOT SURE IF IT IS

9    THIS PARTICULAR ACCOUNT, BUT THERE ARE OTHER ACCOUNTS

10    THAT WERE IDENTIFIED AS DISPUTED THAT THE DEBTOR NOW

11    WANTS TO CONTEND SHOULDN'T COUNT BECAUSE THE DISPUTE'S

12    BEEN RESOLVED, BUT THE TEST DATE FOR THAT ISSUE IS THE

13    PETITION DATE.  AND HIS TESTIMONY WAS CLEAR THAT THE

14    DISPUTE EXISTED AS OF THAT DATE.

15        NEXT WE HAVE THE FORT WALTON MEDICAL CENTER.

16    AND THE TESTIMONY THAT IS REFERRED TO IN UNDISPUTED

17    STATEMENTS 82 TO 84 THE DEBTOR ADMITTED TWICE IN HIS

18    DEPOSITION THERE WAS A DISPUTE.  THAT'S WHY HE WASN'T

19    PAYING.  BUT IT WAS A DISPUTED CLAIM, SO NOT COUNTED IN

20    THE COUNT.

21        SIMILARLY, STATEMENTS 138 TO 140 FOR VERIZON

22    IDENTIFY THE EXISTENCE OF A DISPUTE.  AND, AGAIN, THIS

23    DISPUTE MIGHT HAVE BEEN RESOLVED LATER.  IT MAY NOT

24    EXIST NOW, BUT CLEARLY IT EXISTED AT THE TIME THE

25    PETITION WAS FILED.

12

ASA 0555

1          THE LAST CATEGORY OF CLAIMS HOLDERS THAT ARE

2     EXCLUDED ARE THOSE THAT RECEIVED PREFERENTIAL PAYMENTS.

3     AND, AGAIN, WE HAVE IDENTIFIED THE UNDISPUTED FACT THAT

4     BANK OF AMERICA, THAT IS, CLEARLY RECEIVED PRE-PETITION

5     PAYMENTS ON ACCOUNT.

6          LIKEWISE EXHIBIT G TO MY ORIGINAL DECLARATION

7     SHOWS FOR CITY CARD PRE-PETITION PAYMENT.

8          NUMBERS 87, 88, AND 90 FOR HOUSEHOLD BANK SHOWS

9     THE PREFERENTIAL PAYMENTS.

10          AND LIKEWISE SECTIONS -- STATEMENTS 96 TO 100

11     DEMONSTRATE THAT NORTHWEST FLORIDA DAILY RECEIVED

12     PREFERENTIAL PAYMENTS.

13          FOR QUICKEN PLATINUM, WE HAVE AN UNDISPUTED

14     STATEMENT, AND THE EVIDENCE CITED THEREIN IN 119 THAT

15     ESTABLISHED THAT.

16          WE HAVE FOR WAYNE WISE, THE DEBTOR'S UNDISPUTED

17     TESTIMONY THAT THAT WAS PAID IN THE PREFERENCE PERIOD.

18     THE DEBTOR HAS RAISED THE ISSUE THAT THIS WAS AN

19     EXTENDED OBLIGATION, SO NOW REALLY -- AND THE PAYMENT

20     WAS MADE IN THE ORDINARY COURSE.

21          BUT IF YOU LOOK AT THE DOCUMENT ITSELF, THE

22     PAYMENT WAS ACTUALLY DUE IN NOVEMBER OF 2004, WHEN THE

23     RESIDENCE WAS REFINANCED.  THERE'S NO DISPUTE THAT THE

24     RESIDENCE WAS REFINANCED AT THAT TIME.  AND THE PLAIN

25     LANGUAGE OF THE NOTE INDICATES THAT WAS THE DATE THAT IT

13

ASA 0556

1    WAS DUE IF THAT SHOULD HAPPEN.

2         I'VE NOT MENTIONED UNION BANK.  THEY'RE

3    ACTUALLY EXCLUDED FOR TWO REASONS.  FIRST, THERE'S A

4    WHOLE STRING OF UNDISPUTED FACTS IN 148 TO 163 THAT SHOW

5    THE PAYMENTS THAT PUT THEM IN BOTH THE PRE-PETITION

6    PREFERENCE CATEGORY AND THE POST-PETITION CATEGORY --

7    POST-PETITION PAYMENT -- CATEGORY.

8         I WANT TO TAKE JUST A MOMENT IF I MAY AND TRY

9    AND ADDRESS SOME OF THE CONCERNS THAT THE COURT HAS

10   EXPRESSED ABOUT THE IDEA OF EXCLUDING FROM THE COUNT THE

11   PREFERENCE AND OTHER --

12        THE COURT:  YOU ALREADY ENTERED THAT.

13        MR. KEEHN:  OKAY.  I WOULD IF I COULD JUST

14   SUPPLEMENT THAT BY POINTING OUT HOW THAT WORKS IN THE

15   DYNAMIC OF AN INVOLUNTARY PETITION.  THE --

16        THE COURT:  YOU ENTERED THAT.

17        MR. KEEHN:  OKAY.  THANK YOU.

18        YOUR HONOR, I WOULD POINT OUT AGAIN TO

19   REEMPHASIZE THAT IT WAS THE DEBTOR'S OBLIGATION TO COME

20   FORWARD WITH EVIDENCE TO REFUTE THE PRIMA FACIE CASE WE

21   HAVE MADE IN EVERY CATEGORY.  I THINK, YOUR HONOR, IF

22   YOU LOOK AT THE EVIDENCE THAT'S REFERRED TO IN THE

23   SUPPORTING STATEMENT OF UNDISPUTED FACTS THAT EVIDENCE

24   IS OVERWHELMING THAT THESE PEOPLE WERE NOT INCLUDED AS

25   PART OF THE COUNT OF 12 TO GET US TO THE QUESTION OF DO

14

1    WE HAVE ENOUGH PETITIONING CREDITORS?  THE ANSWER

2    CLEARLY IS YES.

3          TO THE EXTENT THAT THERE ARE AFFIRMATIVE

4    DEFENSES THAT HAVE BEEN ASSERTED TO SOME OF THE

5    AVOIDANCE ITEMS, I THINK THAT THE IN RE NATIONAL LUMBER

6    AND SUPPLY CASE CITED IN OUR PAPERS MAKES IT VERY CLEAR

7    THAT INSOFAR AS THE PREFERENCE MATTER IS CONCERNED,

8    THERE HAS TO BE EVIDENCE PROFFERED BY THE ALLEGED DEBTOR

9    IN THIS CASE TO SHOW THAT PAYMENTS ARE IN THE ORDINARY

10   COURSE EVEN WITH RESPECT TO PAST PRACTICES OF THE

11   DEBTOR, IN PARTICULAR, CREDITOR AND THAT THEY WERE

12   ORDINARY IN RELATION TO GENERAL BUSINESS STANDARDS.

13   THERE'S NO EVIDENCE OF THAT AT ALL.  THERE'S NO ARGUMENT

14   ABOUT IT IN THE PAPERS FILED ON BEHALF OF MR. LOPEZ.

15   IT'S UNADDRESSED BECAUSE IT'S AN UNCURABLE PROBLEM.

16   MR. LOPEZ IS A DISTRESSED CREDITOR.  HE EXHIBITS

17   BEHAVIOR THAT IS TYPICAL OF DISTRESSED CREDITORS.  AND

18   HE MAKES PREFERENCE PAYMENTS.  HE MAKES MINIMUM PAYMENTS

19   TO KEEP VITAL SERVICES IN PLACE.  AND THAT'S

20   UNDERSTANDABLE, BUT THE FACT OF THE MATTER IS IT DOESN'T

21   REFUTE THE VERY STRONG, THE COMPELLING, IN FACT, THE

22   CONCLUSIVE EVIDENCE THAT HAS BEEN GARNERED THROUGH THIRD

23   PARTY SUBPOENAS AND THE DEPOSITION OF MR. LOPEZ THAT

24   INDICATE THAT ALL SAVE AMERICAN EXPRESS THESE CREDITORS

25   NEED TO BE EXCLUDED FROM THE COUNT FOR ONE OF THE

15

ASA 0558

1   REASONS ARTICULATED IN SECTION 303(B).

2        AND WE THINK THAT MR. STANLY HAS MET HIS BURDEN

3   IN THAT REGARD.  WE DON'T THINK THERE IS ANY EVIDENCE

4   THAT'S BEEN INDUCED TO REBUT THAT EVIDENCE, CERTAINLY NO

5   ADMISSIBLE EVIDENCE.  I WOULD REITERATE OUR EVIDENTIARY

6   OBJECTIONS AND HOPE THAT IN THE COURT'S RULING AND ASK

7   IN THE COURSE OF RULING ON THIS MATTER, THE COURT WOULD

8   ADDRESS THOSE OBJECTIONS AS WELL.  WHEN THAT'S ALL SAID

9   AND DONE, MR. LOPEZ IS FACING A PETITION WITH AN

10  INADEQUATE NUMBER OF CREDITORS.  AND HE NEEDS TO ADDRESS

11  THE SECOND.

12       WE NOW NEED TO ADDRESS THE SECOND OF THESE

13  SUBSTANTIVE ISSUES AS TO WHETHER OR NOT HE IS GENERALLY

14  PAYING HIS DEBTS AS THEY COME DUE.  AND WE HAVE NO DOUBT

15  THAT WE ARE GOING TO BE ABLE TO MEET THAT BURDEN AS

16  WELL.

17       YOUR HONOR INDICATED THAT WE WERE ADDRESSING MY

18  MOTION FIRST, SO I WOULD JUST LEAVE IT AT THAT FOR MY

19  MOTION AND RESERVE THE OPPORTUNITY, THE RIGHT, TO

20  RESPOND TO MR. HAYES' MOTION WHEN WE GET TO THAT.

21     THE COURT:  MR. HAYES, ANY OPPOSITION TO MR. KEEHN?

22     MR. HAYES:  THANK YOU, YOUR HONOR.

23       ONE THING I'VE LEARNED IN THIS CASE, IN FACT,

24  I'VE ACTUALLY LEARNED MORE THAN ONE THING.  ONE MAIN,

25  ONE BIG THING I'VE LEARNED IN THIS CASE IS THAT

16

ASA 0559

```
 1   MR. KEEHN LEAVES NO STONE UNTURNED.  HE FOLLOWS UP.  HE
 2   DOES HIS HOMEWORK.  TO A LARGE EXTENT, I'M IMPRESSED
 3   WITH THE AMOUNT OF EFFORT THAT'S BEEN MADE.
 4          THE REASON I SAY THAT IS WE COULD HAVE AVOIDED
 5   TODAY.  I ACTUALLY EXPECTED TO WALK IN THIS AFTERNOON
 6   AND HAVE HIM HAND ME TWO MORE PETITIONING CREDITORS.  IF
 7   HE WOULD HAVE, THE HUNDRED HOURS WE SPENT WORKING ON
 8   THIS WOULD HAVE BEEN IN VAIN.  I WARNED MY CLIENT THIS
 9   MORNING THAT MAKES THIS WHOLE THING MOOT.
10          THE POINT IS HE CAN'T FIND TWO MORE PETITIONING
11   CREDITORS.  THERE ARE NO OTHER PETITIONING CREDITORS OUT
12   THERE.  THERE IS NOBODY ELSE THAT WANTS HIM IN
13   BANKRUPTCY.  IN FACT, WE OFFERED TO PAY EVERYBODY.  THAT
14   WAS OPPOSED VIGOROUSLY.  BUT THE REASON WHY WE'RE HERE
15   TODAY IS BECAUSE THERE'S ONLY ONE PERSON THAT REALLY
16   WANTS HIM IN BANKRUPTCY.
17          THE SECOND COMMENT I WOULD MAKE BEFORE REALLY
18   GOING INTO THE DETAILS OF ALL OF THESE CREDITORS IS THE
19   CONCEPT OF THE SHAM DECLARATION.  MR. KEEHN ATTACKS THE
20   ENTIRE DEBTOR'S EXAM THAT WAS TAKEN PRIOR TO THE
21   BANKRUPTCY BEING FILED, WHICH BY THE WAY ON THURSDAY
22   WILL BE ONE YEAR AGO.  ONE OF THE QUESTIONS THAT WAS
23   ASKED EARLY ON IN THE DEPOSITION AFTER TWO PAGES OF
24   DISCUSSING CREDIT CARDS, HE WAS ASKED: "SO ARE THERE ANY
25   OTHER DEBTS?"
```

17

ASA 0560

```
1          MR. LOPEZ SAID: "NO.  THAT'S ALL I CAN THINK OF
2    RIGHT NOW," ON PAGE 22.
3          TWO SENTENCES LATER HE SAYS, "CREDIT CARD
4    DEBT?"  AND "YES.  THAT'S ALL I CAN THINK OF RIGHT NOW."
5          THE NEXT COUPLE OF PAGES THEY TALK ABOUT MR.
6    WISE, THE DEBT TO MR. WISE.  THEY TALK ABOUT THE DEBT TO
7    THE BROTHER, THE DEBT TO HIS FATHER.
8          ON PAGE 58, THE QUESTION ASKED WAS, "DO YOU
9    HAVE ANY MEDICAL DEBTS?"
10         "YES."
11         "TO WHOM?"
12         "THERE ARE PROBABLY SEVERAL OF THEM.  ONE MIGHT
13   BE FORT WALTON BEACH MEDICAL CENTER."
14         ON PAGE 64, "DO YOU HAVE ANY GIANT DEBT WITH
15   YOUR WIFE OTHER THAN THE HOME MORTGAGE?"
16         "YES.  THERE ARE PROBABLY SOME JOINT CREDIT
17   CARD DEBT."
18         THE ONLY THING THAT WAS WASN'T DISCUSSED IN THE
19   DEPOSITION REGARDING CREDITORS IS YOUR PHONE BILLS, THE
20   GAS BILL YOU OWE.  IN FACT, I REMEMBER MR. STANLY
21   TELLING ME, "I THINK THIS IS EVERYBODY."
22         I SAID, WHAT ABOUT YOUR PHONE BILL?  MOST
23   PEOPLE, IF YOU ASK THEM, DO YOU HAVE ANY DEBTS, THEY
24   WON'T THINK OF THE PHONE BILL THAT'S DUE NEXT THURSDAY
25   AS BEING A DEBT THAT THEY HAVE RIGHT NOW.
```

18

ASA 0561

```
 1          SO YOU SHOULD BE ABLE TO TELL JUST BY THE

 2   MASSIVE AMOUNT OF EFFORT THAT'S BEEN MADE IN THIS CASE

 3   THAT MR. LOPEZ IS NOT FLIP FLOPPING.

 4          ONE OF THE BASIS BEHIND THIS SHAM DECLARATION

 5   IS HE'S DENYING THAT MR. LOPEZ IS AN INSIDER.  THAT'S

 6   ANOTHER THING I LEARNED IN THIS CASE.  I FIRST SORT OF

 7   CHUCKLED WHEN I HEARD THAT HE WAS AN INSIDER.  THEN I

 8   READ THE CODE SECTION MORE CAREFULLY.  AND I CAN SEE

 9   THAT AS AN INSIDER OF AN AFFILIATE, IT MAKES HIM AN

10   INSIDER.  BUT THAT'S MY FAULT, NOT MR. LOPEZ'.

11          BUT WHAT THIS IS ABOUT IS THE HOME.  UNDISPUTED

12   FACT NUMBER 26 IS SAYING NOW THAT THE ONLY ASSETS

13   MR. LOPEZ OWNS IS HIS HOME AND MAYBE $10,000 OF OTHER

14   THINGS.  THE COURT MIGHT RECALL THAT WHEN I FILED A

15   MOTION TO TRANSFER THIS CASE AT THE BEGINNING OF THE

16   CASE ALMOST A YEAR AGO, THE RESPONSE WAS HE'S GOT ALL

17   THESE BUSINESSES.  HE'S GOT ALL OF THESE OPERATIONS

18   GOING ON IN CALIFORNIA.  THAT'S WHY IT'S ABSOLUTELY

19   CRITICAL THAT IT STAY IN CALIFORNIA.  WE NEED A TRUSTEE

20   TO HANDLE ALL OF THESE THINGS.  AND NOW THEY HAVE MADE

21   AN UNDISPUTED FACT.  THE ONLY THING HE OWNS IS HIS HOME.

22   IT'S HELD BY THE TENANCY BY THE ENTIRETIES IN FLORIDA.

23   IT'S EXEMPT UNDER SECTION 522(B)(3) OF THE BANKRUPTCY

24   CODE.  THEY KNOW THAT VERY WELL BECAUSE THEY TRIED TO

25   LEVY ON IT IN FLORIDA AND WERE UNABLE TO BECAUSE THE
```

19

1    TENANCY BY THE ENTIRETIES PROTECTS IT.

2         GOING THROUGH, WHAT I THOUGHT I WOULD DO, IS I

3    WENT TO PAGE 12 OF THE MEMORANDUM OF POINTS AND

4    AUTHORITIES SUPPORTING THE MOTION FOR SUMMARY JUDGMENT.

5    I JUST WENT DOWN THE LINE, WHICH I CAN DO QUICKLY NOW.

6         ALLSTATE FLORIDIAN, THERE'S A DISPUTE.

7    MR. LOPEZ SAYS PAYMENTS WERE MADE FROM AN ESCROW

8    ACCOUNT.  IT'S NOT IMPORTANT FRANKLY.

9         CREDIT CARD DEBT.  THEY'VE ACCEPTED THAT

10   AMERICAN EXPRESS IS A CREDITOR.

11        THE AMERICAN HOMESHIELD.  THAT IS NOT A

12   CREDITOR.  WE WILL ADMIT THAT.

13        AS TO BANK OF AMERICA, THERE ARE SUPPOSEDLY

14   PREFERENCES BEING MADE.  THERE WAS A $50 PAYMENT ON MAY

15   6TH TO A CREDIT CARD.  I MEAN, TO ESTABLISH THAT'S

16   PREFERENCE, THEY HAVE TO SHOW IT WAS MADE OUTSIDE OF THE

17   ORDINARY COURSE OF BUSINESS.  I MEAN, IT JUST SEEMS TO

18   BE WITHOUT -- I DON'T KNOW WHY THEY DO A TRIAL IF

19   THERE'S GOING TO BE A TRIAL OVER THIS ISSUE.  I MEAN, I

20   DON'T SEE HOW A $50 PAYMENT TO A CREDIT CARD COMPANY CAN

21   BE NOT MADE IN THE ORDINARY COURSE OF THE BUSINESS.

22        AS TO SECTION 549 CLAIMS, IT'S NOT JUST BANK OF

23   AMERICA.  THIS WILL APPLY TO ALL THE 549 CLAIMS OR THE

24   549 EXCUSES AS TO WHY THIS ISN'T A CREDITOR.  549 SAYS:

25   "A TRANSFER OF PROPERTY OF THE ESTATE POST-PETITION CAN

20

1    BE AVOIDED.  WAGES EARNED BY THE DEBTOR AFTER JUNE 30

2    ARE NOT THE PROPERTY OF THE ESTATE PURSUANT TO THE

3    BANKRUPTCY CODE IN SECTION 541."  PAYMENTS MADE BY MRS.

4    LOPEZ ARE NOT PROPERTY OF THE ESTATE.  THE ONLY PROPERTY

5    THAT'S GOING TO BE PROPERTY OF THE ESTATE IN ANY EVENT

6    IS THE HOME AND MAYBE $10,000 WORTH OF SOMETHING ELSE.

7    THERE ARE NO POST-PETITION TRANSFERS OF THE PROPERTY OF

8    THE ESTATE.  THERE ARE POST-PETITION PAYMENTS TO

9    CREDITORS, BUT THEY ARE NOT AVOIDABLE UNDER SECTION 549.

10          AS TO BANKCARD SERVICES OF THE DEBTOR -- OF THE

11   ALLEGED DEBTOR -- MR. LOPEZ TESTIFIED IN HIS DECLARATION

12   THAT THERE WAS A SIMPLE MISUNDERSTANDING OVER HOW HE WAS

13   BEING CHARGED.  THAT'S NOT A BANKCARD SERVICES.

14          CINGULAR WIRELESS.  THERE'S NO EVIDENCE OFFERED

15   OF HOW THAT CAN BE A PREFERENCE, BUT I WOULD LIKE TO

16   POINT OUT ON THESE THERE'S I THINK THERE'S THREE

17   TELEPHONE BILLS CREDITORS AND ONE OTHER UTILITY.

18          MR. KEEHN, IN HIS OPPOSITION TO OUR MOTION,

19   DISCUSSED THE ISSUE OF WHETHER OR NOT MR. LOPEZ WAS

20   PAYING HIS DEBTS AS THEY GENERALLY BECAME DUE.  HE MADE

21   THE COMMENT IN THERE THAT THE ONLY THING MR. LOPEZ WAS

22   PAYING GENERALLY AS THEY BECAME DUE IS HIS UTILITIES AND

23   HIS PHONE COMPANIES, WHICH IS FAIRLY OBVIOUS.  IF YOU

24   DON'T PAY THE PHONE BILL, IT'S SHUT OFF.  THE REASON I

25   BRING THAT UP IS HOW CAN A PAYMENT ON A PHONE BILL BE

21

**ASA 0564**

1    OUTSIDE OF THE ORDINARY COURSE OF BUSINESS?  THEREFORE,

2    IT CAN'T BE A PREFERENCE.

3        ANYWAY, AS TO CINGULAR WIRELESS MOBILE PHONE,

4    THERE IS NO PREFERENCE.  THERE IS NO POST-PETITION

5    TRANSFER OF PROPERTY TO THE ESTATE.

6        AS TO CITY CARDS, THAT WAS AN AUTOMATIC

7    DEDUCTION OF $379.  I BELIEVE THERE WAS THREE PAYMENTS,

8    WHICH MR. KEEHN SAYS IS AN AVOIDABLE PREFERENCE.  THOSE

9    ARE AUTOMATIC DEDUCTIONS.

10        AS TO COX COMMUNICATIONS, AGAIN, THE TELEVISION

11    AND THE INTERNET.  HE SAYS THAT THEY ARE NOT A CREDITOR

12    BECAUSE THERE WERE POST-PETITION TRANSFERS NOT OF

13    PROPERTY OF THE ESTATE.

14        FORT WALTON BEACH MEDICAL CENTER.  THE

15    ALLEGATION IS THAT WAS DISPUTED.  MR. LOPEZ EXPLAINED

16    THERE WAS A DISPUTE.  HE THOUGHT THE INSURANCE WAS GOING

17    TO PAY IT.  THE DISPUTE WAS WITH THE INSURANCE COMPANY,

18    NOT WITH FORT WALTON BEACH MEDICAL CENTER.

19        AS TO HOUSEHOLD BANK, THE ALLEGATION IS THAT

20    THERE WERE TWO PREFERENTIAL TRANSFERS.  THEY WERE $50 TO

21    A CREDIT CARD COMPANY.  I CAN'T -- I DON'T KNOW WHAT

22    ELSE I CAN SAY ABOUT THAT.  I GUESS IF WE GO TO TRIAL,

23    HE WOULD HAVE TO PROVE THE SEVEN FACTORS OF A

24    PREFERENCE.

25        KELLY PLANTATION OWNERS ASSOCIATION.  HE SAYS

22

ASA 0565

```
 1    THERE'S A POST-PETITION TRANSFER.  I'VE ANSWERED THAT.

 2            NORTHWEST FLORIDA DAILY NEWS.  THAT MR. KEEHN

 3    TALKED ABOUT IT SURPRISED ME.  THEY ARE A NON-CREDITOR.

 4    THEY ARE ACTUALLY ONE OF THE PETITIONING CREDITORS IN

 5    THIS CASE.  MR. KEEHN WENT OUT AND FOUND THEM AND SENT

 6    THEM AN APPLICATION TO BECOME A PETITIONING CREDITOR.

 7    IT WAS ALREADY FILLED OUT EXCEPT FOR THE AMOUNT.  THE

 8    AMOUNT TURNED OUT TO BE $69.  AND HE GOT SOME BOOKKEEPER

 9    IN FLORIDA TO SIGN THIS THING SAYING, WE'LL BE A

10    PETITIONING CREDITOR.  NOW HE SAYS RIGHT HERE ON PAGE 12

11    THEY'RE NOT A CREDITOR AT ALL.

12            THE OKALOOSA GAS DISTRICT.  THAT'S UTILITIES.

13    HOW CAN THAT BE PAID NOT IN THE ORDINARY COURSE OF

14    BUSINESS?

15            THE AUTOMOBILE INSURANCE.  I THINK WE WOULD

16    HAVE SOMETHING TO SAY ABOUT THAT IF THERE WAS ACTUALLY

17    GOING TO BE A TRIAL, BUT --

18            QUICKEN PLATINUM CARD.  THERE WAS A $32 PAYMENT

19    ONE MONTH AND AN $18 PAYMENT THE OTHER MONTH.  THE

20    ALLEGATION IS THOSE ARE PREFERENCES.

21            MR. STANLY.  OKAY.  HE'S AN INSIDER.

22            TEXACO.  THERE WAS ONE $40 PAYMENT AND ONE $20

23    PAYMENT ON A GASOLINE CREDIT CARD.  THE ALLEGATION IS

24    THAT THOSE ARE PREFERENCES.

25            THE UNION BANK OF CALIFORNIA.  THE AGREEMENT
```

23

ASA 0566

1    WAS THAT THAT WOULD BE PAID $1000 PER MONTH.  THERE WERE

2    TWO PAYMENTS MADE OF $500 EACH ON APRIL 13 OF '05, I

3    BELIEVE.  ANYWAY, THAT, IN FACT, HAS BEEN PAID IN FULL

4    NOW, BUT THE AGREEMENT THAT MR. LOPEZ HAD WITH UNION

5    BANK OF CALIFORNIA WAS THAT HE WOULD PAY $1000 A MONTH,

6    AND HE'S PAID IT.

7         THE VALLEY FORGE LIFE INSURANCE.  I'M SORT OF

8    CURIOUS MYSELF WHETHER HE WAS BUYING INSURANCE OR

9    WHETHER HE WAS PAYING BACK SOME LOAN WHETHER THEY'RE A

10   CREDITOR AT ALL.  SO I'LL SKIP THAT.

11        THE VERIZON WIRELESS AGAIN.  THE ALLEGATION IS

12   IT WAS DISPUTED.  MR. LOPEZ SAYS IT WAS NOT DISPUTED.

13   HE HAD A QUESTION ABOUT THE ACCOUNT.  HE'S PAID THE

14   ACCOUNT IN FULL NOW.

15        MR. WISE.  THE ALLEGATION IS HE RECEIVED

16   PREFERENCE PAYMENTS MADE TO MR. WISE.  THERE WAS ONE

17   PAYMENT OF $900, I BELIEVE, THAT WAS MADE BY MADELINE

18   LOPEZ PREFERENCES AS THE TRANSFER OF PROPERTY OF THE

19   ESTATE PRIOR TO THE 90 DAYS PRIOR TO THE BANKRUPTCY.

20   THAT'S NOT PREFERENCE.

21        MR. LOPEZ DID ADD ONE MORE CREDITOR, JEFFREY

22   SMITH, AN ATTORNEY THAT HE HAD RETAINED THAT HE FORGOT

23   THAT HE OWED.

24        I'M A LITTLE UNCLEAR MYSELF WHETHER THESE

25   MORTGAGES ARE CREDITORS OF THE ESTATE.  MR. KEEHN HAS

24

ASA 0567

1    POINTED OUT VARIOUS PLACES THAT THEY ARE, AND, AGAIN,

2    WHEN HE WAS ARGUING THAT HE'S NOT PAYING HIS DEBTS

3    GENERALLY AS THEY BECOME DUE, HE TALKED ABOUT THE

4    DEBTOR'S MORTGAGE OBLIGATIONS.

5         I COULD GO BACK AND SUMMARIZE THAT, BUT WHAT HE

6    HAS TO SHOW, WHAT WE HAVE TO SHOW, WHAT MR. KEEHN HAS TO

7    SHOW IS THAT THERE WAS MORE THAN 12 OR MORE.  THAT THERE

8    WAS LESS THAN 12 OR MORE.  12 PRE-PETITIONING CREDITORS,

9    WHICH AIN'T GOING TO HAPPEN.  MORE THAN 12 IS THE SAME

10   THING.  I MEAN, I SUPPOSE THAT BY THE SLIMMEST

11   FINGERNAIL YOU MIGHT HAVE, WELL, THERE'S A FACTUAL

12   DISPUTE WHETHER THERE WERE PREFERENCES OR NOT, WHETHER

13   THESE LITTLE PAYMENTS MADE TO CREDIT CARD DEBTS WERE

14   ACTUALLY PREFERENCES.

15        JUST ONE LAST COMMENT IN CLOSING.  I HOPE THE

16   COURT CAN SEE AT THIS POINT THAT THIS IS A TWO-PARTY

17   DISPUTE.  THERE IS OTHER LITIGATION GOING ON.  THIS IS

18   SIMPLY ONE MORE SWORD BY A CREDITOR OF MR. LOPEZ WHO HAS

19   UNLIMITED AMOUNTS OF MONEY, APPARENTLY, TO HIRE

20   ATTORNEYS.  THIS IS NOT ABOUT BANKRUPTCY.  THIS IS NOT

21   ABOUT SOME TRUSTEE NOW IN SAN DIEGO, THEORETICALLY, WHO

22   WOULD BE TRYING TO SETTLE MR. LOPEZ' HOME IN FLORIDA

23   FIGHTING OVER THE FLORIDA EXEMPTION STATUTE.  THIS

24   BANKRUPTCY -- THIS INVOLUNTARY SHOULD BE DISMISSED.

25   THANK YOU.

25

ASA 0568

1     THE COURT:  MR. KEEHN, BRIEFLY.

2     MR. KEEHN:  YES.  THANK YOU, YOUR HONOR.

3         A COUPLE OF THINGS.  MR. HAYES ASKED HOW CAN A

4  $49 PAYMENT BE A PREFERENCE?  WELL, CONGRESS ANSWERED

5  THAT QUESTION FOR US WHEN IT ENACTED THE NEW ACT.  AND

6  IT PUT A FLOOR ON PREFERENCE PAYMENTS AT $5,000.  THAT'S

7  CHANGED THE LAW.  IT DOESN'T MATTER WHAT THE AMOUNT IS

8  IF IT MEETS THE OTHER ELEMENTS OF PREFERENCE.  IT IS A

9  PREFERENCE AND AVOIDABLE.  AND SOME OF THE CONSTERNATION

10 REQUESTS BY MR. HAYES IS NO DOUBT A LARGE PART OF WHY

11 THE CONGRESS PUT THE LIMIT IN WHEN THEY DID.  THAT LIMIT

12 DOESN'T APPLY TO THIS CASE.  THEY ARE PREFERENCES.

13        AND COUNSEL HAS IT WRONG WITH REGARD TO SEVEN

14 ELEMENTS OF PREFERENCE.  THERE ARE FIVE ELEMENTS OF

15 PREFERENCE.

16        IF YOU LOOK AT 547 AND THEY DO NOT INCLUDE

17 COMING FORWARD TO SHOW ORDINARY COURSE.  THE LAW IS

18 CLEAR.  THE ORDINARY COURSE OF BUSINESS EXCEPTION, JUST

19 LIKE THE NEW VALUE EXCEPTION, THOSE ARE AFFIRMATIVE

20 DEFENSES THAT MUST BE PLEAD AND PROVED BY THE PARTY

21 ASSERTING THEM.  IN THIS CASE, IT'S THE ALLEGED DEBTOR.

22 AND HE HAS CERTAINLY ASSERTED THEM.  HE HAS SIMPLY NOT

23 SUPPORTED THE ASSERTION WITH ANY EVIDENCE.

24        AS TO THE NORTHWEST FLORIDA DAILY, YES, WE DID

25 OFFER THAT ENTITY THE OPPORTUNITY TO JOIN IN THE

26

ASA 0569

1    PETITION.  AND WE DID THAT SHORTLY AFTER MR. LOPEZ

2    BELATEDLY COMES UP WITH HIS EXHIBIT A TELLING US WHO ALL

3    THE CREDITORS ARE.  SO WE TAKE THAT AT FACE VALUE, AND

4    WE GO FORWARD, AND WE GOT A RESPONSE BACK FROM THAT

5    ENTITY TO JOINING.  WHEN WE RECEIVED THE DISCOVERY FROM

6    MR. LOPEZ -- I BELIEVE IT WAS FROM MR. LOPEZ -- THAT'S

7    THE FIRST TIME WE SAW THE RECEIPT THAT SHOWED THAT HE

8    PREPAID.  SO THERE'S NO REAL MYSTERY THERE.  AND NOW

9    THEY'RE EITHER NOT A CREDITOR BECAUSE THEY WERE PAID IN

10   FULL OR IF THERE WAS SOMETHING OWED THEY RECEIVED A

11   PREFERENCE.

12         MR. HAYES MAKES A WONDERFUL LEGAL ARGUMENT TO

13   YOU THAT IS ABSOLUTELY UNSUPPORTED BY ANY EVIDENCE OR

14   ANY CITATION OF AUTHORITY.  HE ASKS YOU TO ASSUME BY A

15   LEAP OF FAITH THAT MR. LOPEZ MADE PAYMENTS FROM WAGES

16   EARNED, AND SO WE CAN'T DEMONSTRATE THAT MONEY TRANSFERS

17   WERE AVOIDABLE BECAUSE IT CAME FROM PROPERTY OF THE

18   ESTATE.  HE'S MISSING A COUPLE OF POINTS.

19         NUMBER ONE, THAT IT DIDN'T COME FROM PROPERTY

20   OF THE ESTATE LIKE ORDINARY COURSE IS AN AFFIRMATIVE

21   DEFENSE.  IT'S NOT OUR BURDEN TO SHOW AND DISAPPROVE AN

22   AFFIRMATIVE DEFENSE.  TO THE CONTRARY, IT IS THE

23   DEBTOR'S BURDEN TO COME FORWARD AND SHOW THE EVIDENCE

24   THAT ESTABLISHES THAT IT WAS NOT PROPERTY OF THE ESTATE.

25   WE HAVE AN INDIVIDUAL DEBTOR WHOSE TESTIMONY IN HIS

27

1    DEPOSITION WAS THAT HE DOESN'T GET ANY WAGES.  HIS

2    TESTIMONY IN DEPOSITION WAS THAT HE GETS PAID ONLY FROM

3    TWO SOURCES OTHER THAN A RELATIVELY NOMINAL AMOUNT THAT

4    HE GOT IN CONNECTION WITH HIS INSURANCE ACTIVITY, WHICH

5    IS NOT ENOUGH TO COVER ALL OF THESE PAYMENTS.  BUT HE

6    SAYS THAT HIS TWO SOURCES OF PAYMENTS WERE A LICENSE FEE

7    THAT HE GETS FROM NOVEON FOR SOME SOFTWARE THAT HE

8    CLAIMS TO HAVE LICENSED AND A PROFIT SHARING

9    ARRANGEMENT, WHICH IS NOT A WAGE.  IT'S A PROFIT SHARING

10   ARRANGEMENT.  IF YOU LOOK AT HIS TESTIMONY IN THE

11   DEPOSITION IN THAT REGARD, IT'S VERY CLEAR HE'S NOT

12   TALKING ABOUT A WAGE.  SO SIMPLY PUT, THERE ARE NO WAGES

13   FOR MR. LOPEZ TO HAVE PAID THE POST-PETITION PAYMENTS

14   FROM.  AND AS FAR AS THE EVIDENCE GOES, THE TESTIMONY OF

15   MADELINE LOPEZ WAS THAT SHE GETS NOTHING FROM NOVEON

16   EITHER.  SO WHERE WERE THESE PAYMENTS?  WHERE DID THEY

17   COME FROM?  WHAT ACCOUNT DID THEY COME FROM?  WHAT IS

18   THE SOURCE OF THE ACCOUNT?  THESE ARE THE THINGS THAT

19   ESTABLISH THE AFFIRMATIVE DEFENSE THAT HE ALLUDES TO BUT

20   ASKS YOU TO EMBRACE IN A LEAP OF FAITH.

21        THE NEXT THING HE ASKS YOU TO EMBRACE

22   WITHOUT -- THAT IS A DIFFICULT LEGAL CHALLENGE, AND HE

23   ASKS YOU TO TAKE IT SIMPLY ON FAITH AND ARGUMENT WITHOUT

24   A SINGLE CITATION OF THE AUTHORITY, AND THAT IS THE

25   TENANCY BY THE ENTIRETIES OF THE PROPERTY.  WE ATTACHED

ASA 0571

1    THE WARRANTY DEED BY WHICH THE LOPEZES TOOK TITLE TO

2    THIS PROPERTY AS PART OF THE EXHIBITS THAT WE ATTACHED.

3    I DON'T THINK THERE'S ANY DISPUTE OF WHAT THAT WARRANTY

4    SAYS.  IT SAYS FRANCIS AND MADELINE, HUSBAND AND WIFE,

5    PERIOD.  END OF STORY.  THERE IS NO OCCASION THAT'S HELD

6    IN TENANCY BY THE ENTIRETIES.  NOW, IF THERE'S SOME

7    FEATURE OF FLORIDA LAW THAT MAKES IT AUTOMATIC, I

8    HAVEN'T HEARD IT.  I HAVEN'T SEEN IT.  NEITHER HAS THIS

9    COURT.  CERTAINLY IT'S NOT IN THE PAPERS THAT HAVE BEEN

10   FILED BY THIS ALLEGED DEBTOR.  SO THE THRESHOLD QUESTION

11   OF WHETHER OR NOT IT'S HELD IS BY TENANCY AS TENANCY BY

12   THE ENTIRETIES HAS NOT BEEN PROVEN.  THE ONLY EVIDENCE

13   THAT'S IN THE RECORD SHOWS THEY'RE HUSBAND AND WIFE.

14          THE NEXT QUESTION WITH REGARD TO TENANCY BY THE

15   ENTIRETIES THAT ISN'T ANSWERED IS WHETHER OR NOT IF IT

16   IS TENANCY BY ENTIRETIES WHETHER THAT WILL WITHSTAND AN

17   AVOIDANCE ACTION IN THE BANKRUPTCY CASE ITSELF.

18          AND LET ME TAKE YOU BACK TO THE RECORD AS IT

19   WAS DEVELOPED IN CONNECTION WITH THE MOTION TO CHANGE

20   VENUE.  THERE, AS PART OF THE EVIDENCE, IT BECAME CLEAR

21   THAT THE PROPERTY HELD IN CALIFORNIA IN CARLSBAD,

22   CALIFORNIA WAS SOLD AT TENS OF THOUSANDS OF DOLLARS

23   UNDER THE MARKET SO THAT LOPEZ COULD QUICKLY RETREAT TO

24   FLORIDA.  THAT WAS WITHIN A YEAR OF FILING THE PETITION.

25   THAT WAS FOR THE PURPOSE A TRUSTEE MIGHT WELL ALLEGE FOR

29

ASA 0572

1    PUTTING THAT ASSET BEYOND THE REACH OF CREDITORS.  SO IF

2    THERE WAS A TRANSFER INTO THE FLORIDA RESIDENCE FOR THE

3    PURPOSE OF CREATING THIS LARGER EXEMPTION.  THAT MAY NOT

4    WITHSTAND THE EXEMPTION CHALLENGE.  AND WE HAVE ONE OF

5    THE ASPECTS OF THE NEW CODE THAT IS APPLICABLE TO THIS

6    CASE IS THE LOOK BACK ON EXEMPTIONS WHERE WE ARE WITHIN

7    THE STATUTORY PERIOD, AND WE'RE WITHIN IT, THE DEBTOR

8    TRANSFERS PROPERTY TO ANOTHER STATE TO BASICALLY EXPAND

9    HIS EXEMPTIONS.  THEN YOU REVERT BACK TO THE EXEMPTION

10   LAW OF THE OLD STATE.  THIS IS THE REASON WHY WE SAID IN

11   OUR PAPERS THAT HIS HOME STATE EXEMPTION IS AT LEAST

12   $75,000.  THE GENTLEMAN IS AT RISK OF HAVING THE

13   HOMESTEAD EXEMPTION UNDER FLORIDA LAW DISALLOWED FOR THE

14   REASONS THAT I'VE JUST SUMMARIZED.

15        NOW LOTS AND LOTS OF TALK ABOUT ORDINARY COURSE

16   PAYMENTS.  WHAT HE IGNORES IS THE EVIDENCE THAT WE HAVE

17   PRODUCED TO SHOW, FOR EXAMPLE, THAT THERE ARE SEVERAL

18   CASES OF LATE PAYMENTS.  THERE ARE OVER THE LIMIT

19   CHARGES BEING MADE.  THERE ARE LESS THAN MINIMUM

20   PAYMENTS DUE.  THIS IS TRUE FOR AMERICAN EXPRESS, WHICH

21   IS WAY LATE.  BUT I GUESS WE'RE NOT TALKING ABOUT

22   PAYMENTS TO THEM.  BUT BANK OF AMERICA GOT PENALTY RATES

23   PAST DUE.  SAME THING FOR CINGULAR, CITY CARDS,

24   HOUSEHOLD BANK, NORTHWEST -- EXCUSE ME -- NO.  OKALOOSA.

25   THERE'S THE LATE CHARGES FOR APRIL AND JUNE SHOWN ON

30

ASA 0573

1    THERE.  THAT'S NOT THE ORDINARY COURSE OF BUSINESS.

2    SAME THING FOR PROGRESSIVE INSURANCE.  AND TEXACO SHELL.

3    SO IT ISN'T ALL AS SIMPLE AS COUNSEL WOULD HAVE YOU

4    BELIEVE.

5         AND THE PROBLEM IS, THIS IS THE TIME AND THIS

6    IS THE PLACE TO COME FORWARD WITH THE EVIDENCE TO REFUTE

7    THE PRIMA FACIE CASE THAT HAS BEEN ESTABLISHED BY

8    PETITIONING CREDITOR.  IT HASN'T BEEN DONE.  WE'RE

9    ENTITLED TO THE RELIEF THAT WE HAVE REQUESTED.

10        AND JUST ONE FINAL COMMENT.  MR. HAYES MENTIONS

11   THAT WE COULDN'T FIND ANYBODY ELSE THAT WANTED MR. LOPEZ

12   IN BANKRUPTCY.  WELL, OF COURSE NOT.  AND THE BEST

13   EXAMPLE WHY IS UNION BANK.  LOOK AT THE EVIDENCE OF

14   UNION BANK.  THEY GOT PAID ENTIRELY WHAT THEIR

15   SETTLEMENT AGREED OVER TIME.  THEY WERE GETTING PAID

16   PURSUANT TO THE SETTLEMENT AGREEMENT.  THEY WERE GETTING

17   PREFERENCE PAYMENTS TO BE PRECISE.  SO WHY WOULD A

18   CREDITOR SHOOT THEMSELVES IN THE FOOT BY JOINING A

19   PETITION THAT WOULD MAKE THEM VULNERABLE TO AVOIDANCE

20   ACTIONS?  THAT'S ONE OF THE REASONS WHY THIS PETITION

21   WAS IMPORTANT SO THAT THERE COULD BE AN EQUALIZING

22   DISTRIBUTION.  AND THERE'S ONLY ONE ASSET THAT THAT

23   DISTRIBUTION CAN COME FROM.  AND THAT'S THE HOME, THEN

24   IT STILL NEEDS TO BE DISTRIBUTED IN ACCORDANCE WITH THE

25   PROVISIONS OF THE BANKRUPTCY CODE.

31

ASA 0574

1          THAT, I THINK, YOUR HONOR, WAS BRIEFLY MY

2     RESPONSE.

3          THE COURT:  OKAY.  MR. HAYES, ON YOUR MOTION.

4          MR. HAYES:  YOUR HONOR, I'M NOT SURE I HAVE MUCH TO

5     ADD OTHER THAN THAT OUR MOTION FOR SUMMARY JUDGMENT ASKS

6     THE COURT TO ACTUALLY DISMISS THE CASE.  DISMISS THE

7     PETITION.

8          THE COURT:  RIGHT.  BASED UPON THE FACT THAT THERE

9     IS NO EVIDENCE THAT YOUR CLIENT HAS NOT PAID HIS DEBTS

10    AS THEY CAME DUE.

11         MR. HAYES:  WELL, NO.  BASED ON -- I MEAN, I HAVE

12    THAT IN THERE, BUT THE FIRST BASIS IS THERE AREN'T

13    ENOUGH PETITIONING CREDITORS.  THERE'S ONLY ONE.  THERE

14    NEEDS TO BE THREE.  IF THE COURT FIND NOW THAT THERE

15    AREN'T ENOUGH, THEN THE CASE SHOULD BE DISMISSED.

16         THE COURT:  OKAY.  MR. KEEHN, ANYTHING YOU WANT TO

17    ADD?

18         MR. KEEHN:  YES.  THERE IS, ACTUALLY.  THIS IS NOT

19    AS LENGTHY AS BEFORE BECAUSE IT'S A SIMPLER PROPOSITION.

20    WHEN MR. HAYES FIRST INDICATED AT OUR LAST SETTLEMENT

21    CONFERENCE THAT IT WAS HIS INTENTION TO BRING THE SECOND

22    PART OF THE BIFURCATED PROCEEDINGS BEFORE THE COURT IN

23    THE FORM OF A SUMMARY JUDGMENT MOTION, I PROTESTED THAT

24    IT WAS INHERENTLY UNFAIR BECAUSE --

25         THE COURT:  YOU DON'T NEED TO BELABOR THAT.  WE'RE

32

ASA 0575

1    GOING TO FOCUS ON THE NUMBER OF CREDITORS BECAUSE I

2    REVIEWED THE MINUTE ORDER THAT WE HAVE A BIFURCATION AND

3    THAT WAS JUST THE NUMBER OF CREDITORS.

4        MR. KEEHN:  CORRECT.

5        THE COURT:  SO YOU DON'T NEED TO SAY ANYTHING ELSE

6    ON THE OTHER POINT.

7        MR. KEEHN:  TO DEFEAT THE OTHER PORTION OF THE

8    MOTION, YOU'RE CORRECT.  I DON'T.

9            BUT WHAT HE'S TEED HIMSELF UP FOR IS THAT IS

10   THE PROCEDURAL SCENARIO WHERE I CAN WIN, BUT HE CAN'T ON

11   THAT MOTION.  HE CAN'T BECAUSE I'M ENTITLED TO TAKE

12   DISCOVERY.  AND YET HE CAN LOSE IF THE EVIDENCE THAT

13   HE'S BROUGHT FORWARD AND PUT HIMSELF AT RISK OF ADVERSE

14   BY ITSELF WITHOUT GIVING US THE OPPORTUNITY TO SHOW.

15       THE COURT:  WE'RE NOT PLAYING THAT GAME BECAUSE THE

16   BIFURCATION WAS AS TO THE NUMBER OF CREDITORS PERIOD.

17   SO I'M NOT ENTERTAINING THE MOTION ON PAYING DEBTS AS

18   THEY BECAME DUE PERIOD.

19       MR. KEEHN:  OKAY.  IN THAT CASE, YOU HONOR, I REALLY

20   HAVE NOTHING MORE TO SAY.

21       THE COURT:  OKAY.  MR. HAYES, ANYTHING IN REPLY?

22       MR. HAYES:  NO.

23       THE COURT:  OKAY.  FIVE DAYS FROM TODAY -- WELL,

24   ACTUALLY, IT'S GOING TO BE A LITTLE LONGER THAN THAT.

25   JULY 3.  I WANT EACH OF YOU TO SIMULTANEOUSLY FILE A

33

ASA 0576

```
 1    PAGE OF A LITTLE BRIEF NOT TO EXCEED FIVE PAGES THAT
 2    DISCUSSES THE ISSUE OF WHO HAS THE BURDEN OF WHETHER A
 3    549 TRANSFER OF PROPERTY TO THE ESTATE IN TERMS OF
 4    WHETHER THAT'S SOMETHING THAT THE ASSERTER HAS OR
 5    WHETHER IT'S AN AFFIRMATIVE DEFENSE.  THE LANGUAGE OF
 6    THE STATUTE IS THE TRANSFER OF PROPERTY TO THE ESTATE.
 7    SO THE QUESTION IS, ON A 549, IS THAT AN AFFIRMATIVE
 8    DEFENSE OR IS IT ANNULLED FOR A PROPONENT?  OKAY.
 9    THAT'S IT.  AND THEN I'LL LET YOU KNOW.
10        MR. KEEHN:  JULY THE 3RD, YOUR HONOR?
11        THE COURT:  YES.
12        MR. HAYES:  ACTUALLY FILED?
13        THE COURT:  ACTUALLY FILED.  CAN YOU DO THAT?  OR
14    ARE YOU OFF FOR THE FOURTH OF JULY HOLIDAY LONG WEEKEND?
15        MR. HAYES:  YOUR HONOR, THE ONLY PROBLEM I HAVE IS I
16    HAVE TO SEND IT BY OVERNIGHT MAIL, WHICH MEANS I HAVE TO
17    SEND IT FRIDAY.  SO I REALLY HAVE UNTIL FRIDAY.
18        THE COURT:  WELL, DO YOU WANT TO PUT IT OUT A LITTLE
19    FURTHER?  DO YOU WANT TO MAKE IT THE 10TH?
20        MR. HAYES:  THE 5TH WOULD WORK.  THE 5TH IS ONLY THE
21    DAY AFTER THE 4TH OF JULY, SO I CAN MAIL IT ON MONDAY.
22    THAT GIVES ME THE WEEKEND.
23        MR. KEEHN:  LET'S GO TO THE 6TH OR 7TH BECAUSE
24    MONDAYS ARE ALWAYS DISJOINTED DAYS.
25        THE COURT:  FROM THE HOLIDAY.  OKAY.  SO FRIDAY THE
```

34

ASA 0577

1   7TH?

2        MR. KEEHN:  YES.

3        MR. HAYES:  FRIDAY THE 7TH.

4        THE COURT:  OKAY.  AND THAT'S SIMULTANEOUS.  NO

5   REPLIES.  NOT TO EXCEED FIVE PAGES.  GOT IT?  I REALIZE

6   MR. KEEHN'S GOING TO BE CHALLENGED ON THAT.

7        MR. HAYES:  IT'S --

8        THE COURT:  NO APPENDICES EITHER.

9        MR. HAYES:  NO EXHIBITS?

10       THE COURT:  NO EXHIBITS.

11       MR. HAYES:  JUST AS TO THE LEGAL ISSUE.

12       THE COURT:  JUST AS TO THE LEGAL ISSUE.  OKAY.

13       MR. HAYES:  GREAT.

14       THE COURT:  ALL RIGHT.  I'LL LET YOU KNOW.  AND ONCE

15   I LET YOU KNOW, THEN WE'LL RESCHEDULE THE STATUS

16   CONFERENCE.

17       MR. KEEHN:  OKAY.  SO JULY 6TH IS THE FILING DATE.

18       THE COURT:  THE 7TH.

19       MR. HAYES:  ACTUALLY FILED ON THE 7TH.

20       THE COURT:  THAT'S THE DATE YOU SUGGESTED,

21   MR. KEEHN.

22       MR. KEEHN:  THAT'S FINE.

23       MS. WILKINSON:  FILED AND SERVED?

24       THE COURT:  RIGHT.  SIMULTANEOUSLY FILED AND SERVED.

25       MR. KEEHN:  FILED AND SERVED OR FILED AND RECEIVED

35

ASA 0578

1   LIKE A REPLY?

2       THE COURT:  HMMM?

3       MR. KEEHN:  NO.  I MEAN, THE STANDARD FOR A REPLY IS

4   RECEIVED BY THE OFFICE OF THE OPPOSING PARTY.

5       THE COURT:  NO.  THIS IS FILED AND SERVED BY THE

6   7TH, CLOSE OF BUSINESS ON THE 7TH.

7       MR. HAYES:  OKAY.  THANK YOU, YOUR HONOR.

8       MR. KEEHN:  THANK YOU, YOUR HONOR.

9           (PROCEEDINGS CONCLUDED AT 3:02 P.M.)

10                          -O0O-

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

**ASA 0579**

1

2    STATE OF CALIFORNIA

3    COUNTY OF SAN DIEGO

4

5    I, COLLETTA BROOKS, HEREBY CERTIFY:

6

7    THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE

8    FOREGOING CAUSE ON THE 26TH DAY OF JUNE 2006;

9    THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING

10   UNDER MY DIRECTION AND THAT THE FOREGOING 36 PAGES

11   CONTAIN A CORRECT STATEMENT OF THE PROCEEDINGS.

12

13   DATED THIS 22ND DAY OF APRIL, 2008.

14

15

16   _____
     COLLETTA BROOKS
17   CSR NO. 12589

18

19

20

21

22

23

24

25

37

ASA 0580

# TAB 167

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING


FRANCIS J. LOPEZ                 ) CASE NO. 05-05926-PB
                                 )
                                 )
                                 )
                                 )
_____ )


1) ALLEGED DEBTOR'S MOTION FOR ORDER SETTING A DEADLINE
        TO ADD NEW PETITIONING CREDITORS


2) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER


REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, JANUARY 23, 2006



SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

ASA 0581

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, JANUARY 23, 2006, 10:30

--- O 0 O ---

THE CLERK:  IN THE MATTER OF FRANCIS J. LOPEZ.

ASA 0582

CONTINUED HEARINGS:  ONE, ON ALLEGED DEBTOR'S MOTION FOR
ORDER SETTING A DEADLINE TO ADD NEW PETITIONING CREDITORS;
AND TWO, STATUS CONFERENCE ON INVOLUNTARY PETITION AND
ANSWER.

      APPEARANCES, PLEASE.

   MR. KEEHN:  GOOD MORNING, YOUR HONOR.

      SCOTT KEEHN OF THE FIRM OF ROBBINS & KEEHN
APPEARING ON BEHALF OF PETITIONING CREDITOR ALAN STANLEY.

   MR. HAYES:  GOOD MORNING, YOUR HONOR.

      JOHN HAYES FOR THE ALLEGED DEBTOR.

   THE COURT:  I SAW YOU'RE FOR A COUPLE OTHER
PETITIONING CREDITORS, TOO, NOW, AREN'T YOU?

   MR. KEEHN:  YES, THAT'S TRUE.  I SHOULD SAY
PETITIONING CREDITORS.  IT'S EARLY IN THE WEEK, YOUR
HONOR.

      WELL, YOU STOLE MY THUNDER.  WE HAVE HAD, SINCE
LAST WE WERE HERE, TWO ADDITIONAL CREDITORS ADDED.  ALSO,
ON THE 6TH OF JANUARY, I SENT A LETTER TO MR. HAYES IN AN
ATTEMPT TO COMPLY WITH OUR OBLIGATIONS UNDER LOCAL RULE
7030-2 TO AGREE UPON EXACT DATE, TIME AND LOCATION FOR THE
DEPOSITION OF MR. LOPEZ.

      I DIDN'T GET A RESPONSE.  AND ON THE 16TH, I
BELIEVE -- NO, IT WAS THE 17TH, IN THE COURSE OF AN E-MAIL
THAT WAS DISCUSSING DISCOVERY RESPONSES, I INQUIRED
FURTHER AS TO WHETHER OR NOT MR. LOPEZ WOULD BE WILLING
TO MAKE THE TRIP HERE RATHER THAN HAVING TWO SETS OF
COUNSEL TRAVEL TO FLORIDA.

ASA 0583

ON THE 19TH I RECEIVED A REPLY TO THAT E-MAIL
INDICATING THE NEGATIVE; THAT HE WAS NOT INTENDING TO BE
IN CALIFORNIA ANY TIME SOON.  BUT THERE WAS NO PROPOSED
DATES DISCUSSED AT THAT POINT IN TIME, WHICH WAS PROBABLY
JUST AS WELL BECAUSE BETWEEN THE 13TH AND THE 17TH WE
RECEIVED THE WRITTEN -- FIRST WRITTEN RESPONSES TO OUR
WRITTEN DISCOVERY.  AND IT WILL PROBABLY NOT SHOCK YOU TO
LEARN THAT WE'RE NOT ENTIRELY HAPPY WITH THE RESPONSES.

I HAVE PROVIDED MR. HAYES THIS MORNING WITH A
TWENTY-TWO PAGE SUMMARY PREPARED BY MY PARALEGAL WITH
RESPECT TO THE DOCUMENT PRODUCTION.  AND WE INTEND TO
AVAIL OURSELVES OF THE COURT'S CONFERENCE ROOMS TO DO WHAT
WE CAN ABOUT MEETING AND CONFERRING AS TO THE RESPONSES.
ALSO, AS TO CERTAIN PRIVILEDGE CLAIMS THAT WERE ASSERTED
IN RESPONSE TO THE WRITTEN DISCOVERY.  WE HAVE
BOILERPLATE OBJECTIONS TO VIRTUALLY ALL OF THE DISCOVERY
REQUESTS AND LARGE GROUPS OF INFORMATION THAT ARE NOT
PROVIDED.  AS I SAID TODAY, FOLLOWING THE HEARING, MR.
HAYES AND I WILL MEET AND CONFER.

NEEDLESS TO SAY, WE NEED TO BE SATISFIED THAT THE
DOCUMENT REQUESTS AND OTHER WRITTEN DISCOVERY REQUESTS
HAVE BEEN FULLY AND FAIRLY RESPONDED TO BEFORE WE
UNDERTAKE THE DEPOSITION OF MR.  LOPEZ.  WE REALLY ONLY
WANT TO DEPOSE HIM ONCE; AND I'M SURE THAT THAT'S ALL THAT
HE DESIRES.  AND WE'RE NOT IN A POSITION AT THIS POINT IN
TIME TO SET THE DATE FOR HIS DEPOSITION, SIMPLY BECAUSE
WE DON'T HAVE RESPONSES TO THE DISCOVERY.

THAT'S WHERE WE ARE IN THE CASE AT THIS TIME.

THE COURT:  OKAY.

MR. HAYES, I ASSUME YOU WANT TO TAKE SOME DISCOVERY AS TO THESE TWO NEW CREDITORS?

MR. HAYES:  DEFINITELY.  WE HAVE REASON TO BELIEVE -- I MEAN, DEFINITELY.  LET ME SAY THAT.

I JUST WANT TO MAKE A COUPLE COMMENTS THOUGH THAT -- YOU KNOW, WHAT JUST IRKS ME IS THE COMMENT THAT THEY WERE BOILERPLATE OBJECTIONS.  THAT IS SOMETHING, FRANKLY, I HATE AND I NEVER DO.  AND I'M LOOKING AT MY RESPONSES TO INTERROGATORIES --

THE COURT:  -- WELL, I DON'T HAVE ANY WAY TO RESPOND TO ANY OF --

MR. HAYES:  -- I DIDN'T OBJECT TO ONE SINGLE INTERROGATORY AT ALL.

MR. KEEHN:  I SHOULD HAVE BEEN MORE CLEAR.

I WAS DIRECTING THE BOILERPLATE RESPONSES COMMENT, I BELIEVE, TO THE DOCUMENT PRODUCTION.  AND I CALLED THEM BOILERPLATE ONLY BECAUSE THEY'RE IDENTICAL AND REPETITIOUS.

BUT THAT'S NOT AN ISSUE THAT'S BEFORE THE COURT.

THE COURT:  NOPE, IT'S NOT.

MR. HAYES:  IN ANY EVENT, THE DEPOSITION -- I BELIEVE I GAVE MR -- MY CLIENT LIVES IN FLORIDA.  HE DOESN'T COME TO LOS ANGELES OR SAN DIEGO.  HE'S AVAILABLE WHENEVER THEY WANT, REALLY.

I GAVE MR. KEEHN DATES THAT I COULD MAKE IT.

ASA 0585

I'VE NEVER BEEN TO FLORIDA, ACTUALLY.  HE LIVES NEAR
PENSACOLA --

    THE COURT:  AH, THE PANHANDLE.

    MR. HAYES:  RIGHT.  I TOLD HIM I'VE SPENT QUITE A BIT
OF TIME, ACTUALLY --

    THE COURT:  -- YOU DON'T WANT TO GO DURING HURRICANE
SEASON.

    MR. HAYES:  THAT'S, ACTUALLY, THE POINT MY WIFE MADE
BECAUSE THERE HAVE BEEN SOME --

    THE COURT:  OH, YEAH.

    MR. HAYES:  -- YOU KNOW, I GUESS, THERE'S ALWAYS
RUMORS THAT ONE'S ON IT'S WAY OR SOMETHING.  BUT MY WIFE
HAS ASKED ME WHAT I'M GOING TO DO ABOUT THAT.

        BUT IN ANY EVENT, I GAVE MR. KEEHN DATES THAT I
CAN MAKE IT.  I'VE ASKED MR. LOPEZ TO FIND COUNSEL IN
FLORIDA, SPECIALLY IF IT HAS TO BE RIGHT AWAY.

        ANYWAY, THE SUGGESTION THAT WE'RE, SORT OF,
BEING OBSTREPEROUS, IS RIDICULOUS.

    THE COURT:  WE'LL DEAL WITH THAT WHEN I GET A MOTION.

    MR. HAYES:  I WILL SAY THAT MR. KEEHN HANDED ME THIS
TWENTY-TWO PAGES.  AND I TOLD HIM I'D LOVE TO HIRE THIS
PARALEGAL HE HAS; STEAL HER AWAY FROM HIM.

        BUT I -- I MEAN, IT LOOKS LIKE THE SAME THREE
CHECKING ACCOUNT STATEMENTS OVER AND OVER AND OVER AND
OVER.  AND I REALLY -- I THINK A LOT OF THESE 'NONES' THERE
AREN'T ANY.  BUT ANYWAY, I HAVEN'T -- I WAS JUST HANDED
THIS.

SO THAT'S -- IT SEEMS TO ME LIKE WE COULD STILL HAVE A TRIAL OVER HOW MANY CREDITORS THERE ARE, AND WEAVE INTO THAT WHETHER OR NOT THESE TWO NEW PETITIONING CREDITORS WILL ACTUALLY -- ARE ACTUALLY LEGITIMATE.  I DON'T KNOW A BETTER WORD THAN LEGITIMATE.  BUT I HAVE REASON TO BELIEVE THAT I DIDN'T REALIZE WHAT THEY WERE DOING.

BUT IT SEEMS TO ME LIKE WE COULD STILL HAVE A TRIAL RIGHT AWAY OVER JUST THOSE TWO ISSUES.

THE COURT:  WELL, WE'RE BACK TO MY QUESTION, WHICH IS DID YOU WANT TO TAKE DISCOVERY OF THOSE TWO NEW PETITIONING CREDITORS BEFORE WE HAVE THAT HEARING?

MR. HAYES:  NO.  IF I CAN GET THE HEARING -- IF I CAN GET THE TRIAL RIGHT AWAY, I'LL WAIVE THE DISCOVERY, AT LEAST THE FORMAL DISCOVERY.

BUT I'LL SAY, AT LEAST, WRITTEN DISCOVERY.  I SUPPOSE IF I COULD TAKE THEIR DEPOSITIONS.  I DON'T -- I ASSUME THE COURT ISN'T GOING TO SET THIS IN THE NEXT TEN DAYS OR SOMETHING?

THE COURT:  WELL, IT ALL DEPENDS ON WHEN YOU WANT IT.

MR. HAYES:  WELL, YOU KNOW WHAT?  I BROUGHT MY CALENDAR.  WHAT I'D LIKE IS THREE WEEKS.

AND I MAY TRY TO TAKE THEIR DEPOSITIONS, THE DEPOSITIONS OF THE TWO -- THEY'RE LOCAL.  I DON'T REMEMBER WHETHER THEY'RE L.A. OR SAN DIEGO.  BUT I'LL TRY TO -- I WON'T DO ANY REQUEST FOR DOCUMENTS OR ANY OF THAT.

THANK YOU.

THE COURT:  HOW MANY WITNESSES DO YOU ANTICIPATE, MR. KEEHN?

MR. KEEHN:  WELL, ONE WITNESS FOR EACH CREDITOR. AND I MAY NEED THREE OR MORE TO AUTHENTICATE DOCUMENTS. WHAT I'M GIVING YOU IS AN OFF-THE-CUFF ESTIMATE.

THE COURT:  ALL RIGHT.

MR. KEEHN:  I HAVEN'T MULLED THAT OVER.

THE COURT:  WE'RE JUST TALKING ABOUT BONA FIDE PETITIONING CREDITORS.

MR. KEEHN:  I UNDERSTAND.

THE COURT:  SO WE'RE TALKING LESS THAN A DAY.

MR. KEEHN:  WELL, I THINK WE'RE TALKING LESS THAN A DAY.  I STILL AM GOING TO NEED SOME RESPONSES TO OUR DISCOVERY.

THE COURT:  WHY DO YOU NEED THAT TO PROVE WHETHER THEY'RE PETITIONING CREDITORS?

MR. KEEHN:  OH, WHETHER THEY ARE -- NO.

WELL, EXCUSE ME, YOUR HONOR.  YOU'RE FORGETTING, I THINK, THAT THERE ARE EXCLUSIONS.  THERE'S ALSO THE ISSUE OF WHETHER THERE ARE 12 OR MORE AND WHO YOU EXCLUDE FROM THE COUNT.

AND IT GOES TO QUESTIONS OF WHETHER OR NOT SOME THAT ARE IN THE ACCOUNT -- IN THE COUNT, HAVE RECEIVED PREFERENTIAL TRANSFERS OR TRANSFERS OTHERWISE AVOIDABLE.

THE COURT:  SO YOU'RE NOT -- YOUR POSITION IS YOU'RE NOT SANGUINE THAT YOU'VE BREACHED THAT BY HAVING THREE PETITIONING CREDITORS?

ASA 0588

MR. KEEHN:  WELL, YOUR HONOR, I'M ALWAYS IN FAVOR OF A FAILSAFE.

SO IF YOU WANT TO, INSTEAD OF BIFURCATE, TRIFURCATE THE TRIAL AS TO WHETHER OR NOT THE TWO NEW CREDITORS ARE LEGITIMATE, WELL, THEN THAT'S A DIFFERENT STORY.  BUT THAT MOTION WASN'T MADE.

AND AS I RECALL, BIFURCATION IS WHETHER OR NOT THERE ARE SUFFICIENT PETITIONING CREDITS.  AND THAT RAISES THE QUESTION OF THE NUMBER, THE LOCATION --

THE COURT:  OF HOW MANY CREDITORS THERE ARE?

MR. KEEHN:  YEAH.  SO THAT'S WHERE WE ARE.  SOME OF THESE DISCOVERY RESPONSES GO RIGHT TO THAT.  SO I'M STUCK. OF COURSE HE WANTS TO GO TO TRIAL, WE DON'T HAVE THE DISCOVERY.

THE COURT:  YEAH.  AND I'M NOT GO TO TRIFURCATE IT. WE'LL TRY HOW MANY CREDITORS THERE ARE, AT LEAST IN TERMS OF WHETHER THERE'S 12 OR MORE; AND THEN, HAVE HOW MANY BONA FIDE PETITIONING CREDITORS THERE ARE.

SO WE'RE GOING TO NEED THE DISCOVERY RESOLVED, ONE WAY OR ANOTHER; RIGHT?

MR. KEEHN:  RIGHT.

THE COURT:  OKAY.  AND SO YOU'RE GOING TO HAVE A MEET AND CONFER, AND THEN YOU'RE GOING BRING A MOTION, I ASSUME, IF YOU DON'T GET WHAT YOU FEEL YOU NEED?

MR. KEEHN:  I HAVEN'T RULED OUT THE POSSIBILITY THAT WHEN WE REASON TOGETHER, WE'LL GET EVERYTHING.

THE COURT:  AND THAT'S WHY I SAID IF.

SO WE REALLY OUGHT TO PUT THIS OUT ABOUT
FORTY-FIVE DAYS.

MR. KEEHN:  YES.  AND THAT'S JUST AS WELL, ANYWAY,
BECAUSE WHAT I WAS GOING TO TELL YOU IS I HAVE A SEVEN-DAY
TRIAL IN DEPARTMENT 67 THAT BEGINS -- DOESN'T BEGIN UNTIL
MARCH 3RD.  BUT I THINK THE COURT CAN APPRECIATE THAT
THESE LAST THIRTY DAYS BEFORE THAT TRIAL WILL HAVE ME FULLY
EMPLOYED.

THE COURT:  WELL, LET'S GO OUT ABOUT FORTY-FIVE OR
SO ON THIS FOR STATUS.  AND I'M WONDERING IF WE SHOULD PUT
IT ON IN THE AFTERNOON, COUPLED WITH A TENTATIVE HEARING
DATE ON A MOTION TO COMPEL.

MR. KEEHN:  I WAS JUST GOING TO REQUEST THAT; YES.

THE COURT:  OKAY.

DOES THAT MAKE SENSE, MR. HAYES, SO THAT WE DON'T
HAVE TO KEEP COMING BACK?

MR. HAYES:  SURE.

THE COURT:  SOMEWHERE IN THE FORTY-FIVE TO SIXTY DAY
RANGE, MARILYN.

THE CLERK:  IS MARCH 20TH TOO SOON?  THAT'S ABOUT
FORTY-FIVE.

MR. KEEHN:  IT'S CLEAR ON MY CALENDAR, YOUR HONOR.

MR. HAYES:  THAT'S FINE WITH ME.

THE CLERK:  AT 2:00.

THE COURT:  ALL RIGHT.  GOOD LUCK.

MR. HAYES:  THAT'S THE STATUS CONFERENCE AND A
TENTATIVE MOTION TO COMPEL?

ASA 0590

THE COURT:  TENTATIVE MOTION TO -- IF IT'S TIMELY FILED AND NOTICED.

MR. HAYES:  THANK YOU.

MR. KEEHN:  THANK YOU, YOUR HONOR.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY CERTIFY:

THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD IN THE FOREGOING CAUSE ON THE 23RD DAY OF JANUARY, 2006; THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.

DATED THIS _____ DAY OF _____, 2008.

_____

LYNETTE ALVES, CSR #12534, RPR #61256

ASA 0592

# TAB 168

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING


)
)
FRANCIS J. LOPEZ                    ) CASE NO. 05-05926-PB
)
)
_____ )



1) PETITIONING CREDITORS' MOTION TO COMPEL SUPPLEMENTAL
RESPONSES TO WRITTEN DISCOVERY FOR PHASE II OF THE
BIFURCATED PROCEEDINGS

2) STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER


REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, MARCH 12, 2007


SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, MARCH 12, 2007, 10:30

--- O O O ---

THE CLERK:  IN THE MATTER OF FRANCIS J. LOPEZ.  TWO

MATTERS:  ONE, HEARING ON PETITIONING CREDITORS' MOTION
TO COMPEL SUPPLEMENTAL RESPONSES TO WRITTEN DISCOVERY FOR
PHASE II OF THE BIFURCATED PROCEEDINGS; AND TWO, CONTINUED
STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER.

      APPEARANCES, PLEASE.

   MR. KEEHN:  GOOD MORNING, YOUR HONOR.

      SCOTT KEEHN APPEARING ON BEHALF OF THE
PETITIONING CREDITORS.

   MR. HAYES:  GOOD MORNING, YOUR HONOR.

      JOHN HAYES, H-A-Y-E-S, FOR THE ALLEGED DEBTOR.

   MR. KEEHN:  WELL, YOUR HONOR, IT WAS 129 DAYS AGO THAT
WE FIRST PROMULGATED OUR REQUEST FOR WRITTEN DISCOVERY IN
PHASE II.

      IF YOU'VE HAD AN OPPORTUNITY TO REVIEW THE PAPERS
THAT HAVE BEEN FILED, IT CHRONICLES THE MEET AND CONFER
THAT OCCURRED, THE PROMISE TO PRODUCE SUPPLEMENTAL
RESPONSES BY JANUARY 12, AND THE DISHONOR OF THAT PROMISE.
AND WHEN I SAY THE DISHONOR OF THE PROMISE, I WANT IT TO
BE CLEAR THAT IT IS MR. LOPEZ AND NOT MR. HAYES WHO IS
DISHONORING THE PROMISES.

      SO HERE WE ARE 129 DAYS LATER, BUT THERE HAS BEEN
ONE INTERVENING DEVELOPMENT.  SATURDAY, BETWEEN 12:05
AND 12:11 P.M. I RECEIVED FOUR E-MAILS THAT CONTAINED A
NUMBER OF ATTACHMENTS, WHICH I'M ASSUMING ARE DOCUMENTS
THAT PURPORT TO BE RESPONSIVE TO THE DOCUMENT PRODUCTION
REQUESTS.

      I NOTICED THEIR ARRIVAL LATE IN THE DAY ON

ASA 0595

SATURDAY, BUT I'VE BEEN PREPARING FOR A VERY SUBSTANTIAL
SETTLEMENT CONFERENCE IN L.A. THAT WILL HAPPEN THIS
AFTERNOON.  SO I HAVEN'T REALLY HAD A CHANCE TO STUDY WHAT
HAS BEEN PRODUCED BY E-MAIL 127 DAYS AFTER THE INITIAL
REQUESTS.

        I DID NOTICE, HOWEVER, THAT A NUMBER OF THE ITEMS
APPEAR TO BE PLEADINGS IN A STATE COURT ACTION THAT DATE
BACK TO JULY OF 2005.  AND THAT, OF COURSE, LEAVES ONE
WONDERING WHY IT TAKES 127 DAYS TO COME UP WITH PLEADINGS
IN A CASE AS TO WHICH YOU WERE A PARTY THAT ARE OVER YEAR
AND A HALF OLD.

        THIS IS ALL REMINISCENT OF THAT WHICH HAS GONE
BEFORE.  MR. LOPEZ NEVER RESPONDS TO DISCOVERY ON THE
FIRST GO-AROUND.  HE ALWAYS HAS TO BE FORCED; AND FORCED
UNDER THREAT OF SOME GRIEVOUS COMPULSION.

        SO HERE WE ARE WITH A MOTION THAT SHOULD NEVER
HAVE BEEN FILED TO INITIATE DISCOVERY ON A SECOND PHASE.
AND WE'RE HAVING THE SECOND PHASE ONLY BECAUSE MR. LOPEZ
WAS SO CERTAIN THAT WE WOULD DISPOSE OF THE PROPRIETY OF
HANDLING THE CASE BY A SINGLE PETITIONING CREDITOR THAT
HE HAD IT BIFURCATED.

        AND SO HERE WE ARE DOING WHAT PARTIES IN
OPPOSITION TO MR. LOPEZ ALWAYS FIND THEMSELVES DOING, AND
THAT'S BRINGING MOTIONS TO COMPEL THAT WHICH SHOULD BE
GIVEN VOLUNTARILY; SIMPLE RESPONSES TO WRITTEN DISCOVERY.

        NOT SURPRISING, THERE IS NO OPPOSITION FILED TO
OUR MOTION TO COMPEL.  THERE IS NOTHING IN THE RECORD AT

ASA 0596

LEAST AS OF 9:26 THIS MORNING AS PACER SHOWS IT; NOTHING
IN THE RECORD THAT WOULD SHOW A SUBSTANTIAL JUSTIFICATION
FOR NOT RESPONDING; NOTHING IN THE RECORD THAT WOULD SHOW
ANY JUSTIFICATION, SUBSTANTIAL OR OTHERWISE, AS TO WHY THE
SANCTIONS OF $4,242 REQUESTED IN THE MOTION SHOULD NOT BE
PAID.

AND WHAT THE RECORD SUGGESTS, WHAT THAT POSTURE
OF THE RECORD SUGGESTS, IS ABSOLUTELY TRUE.  THERE IS NO
LEGITIMATE OPPOSITION TO THE MOTION; THERE IS NO
LEGITIMATE REASON NOT TO AWARD THE SANCTIONS AS PRAYED.

SO WE WOULD REQUEST THAT THE COURT SET A DATE
CERTAIN BY WHICH MR. LOPEZ MUST PROVIDE FULL RESPONSES TO
THE DISCOVERY; AND THAT THE COURT AWARD THE SANCTIONS AS
PRAYED ($4,242) PAYABLE BY MR. LOPEZ, AGAIN, BY A DATE
CERTAIN; AND THEN, SET THE STATUS CONFERENCE OVER TO A DATE
BEYOND THAT DATE CERTAIN SO WE CAN ASSESS WHERE WE ARE.

THE COURT:  MR. HAYES.

MR. HAYES:  THANK YOU, YOUR HONOR.

YOUR HONOR IS WELL AWARE MY CLIENT LIVES IN
FLORIDA.  THE REQUEST FOR DOCUMENTS -- BY THE WAY, I
DIDN'T FILE A RESPONSE.  I MEAN, I THINK MR. KEEHN IS
CORRECT THAT HE HAS THE RIGHT TO AN ORDER COMPELLING THE
DISCOVERY.  BUT THERE WAS 162 CATEGORIES OF DOCUMENTS.
MY CLIENT LIVES IN FLORIDA.  THIS IS THE FIRST MOTION TO
COMPEL IN THIS CASE, WHICH IS NOW ALMOST TWO YEARS OLD.

I'M NOT INVOLVED IN OTHER CASES WITH MR. LOPEZ.
I'M NOT SURE MR. KEEHN IS EITHER.  SO ALL THIS STUFF ABOUT,

YOU KNOW, HE NEVER DOES ANYTHING UNTIL HE'S FORCED; I DON'T
KNOW WHAT THE FOUNDATION FOR THAT IS.

        BUT ALL I WOULD ASK THE COURT -- I'LL AGREE THAT
AN ORDER TO COMPEL CAN BE ISSUED.  AND THE TIMING AS
MR. KEEHN AS REQUESTED IS OKAY.  BUT I THINK $4,000 IS A
LITTLE STEEP FOR THE SANCTIONS.  AND IF THE COURT CAN MAKE
THAT A MORE REASONABLE AMOUNT --

    THE COURT:  WELL, WHAT I'M GOING TO DO IS I'M GOING
TO GRANT THE MOTION TO COMPEL.  I'M GOING TO REQUIRE THAT
RESPONSES BE SUPPLIED TO MR. KEEHN WITHIN THIRTY DAYS OF
TODAY'S DATE.

        AND IF THERE IS ANY NECESSARY RESOLUTION OF THE
SANCTIONS MOTION, I WILL DO THAT AT SOME POINT IN TIME IN
THE FUTURE.  BUT AT THIS POINT IN TIME, I INTEND IT TO BE
THE SORT OF DAMOCLES OVER MR.LOPEZ'S HEAD.

        AND I FULLY CONTEMPLATE AT THIS POINT IN TIME AND
GIVEN THE FACT THAT THERE WAS NO EFFORT FOR A PROTECTIVE
ORDER, NO EFFORT FOR A CONTINUANCE TO COMPLY BECAUSE OF
THE BULK OF THE REQUESTS OR ANY OF THAT KIND OF STUFF, THERE
WAS ABSOLUTELY NOTHING DONE BY YOUR CLIENT; UNDER THOSE
CIRCUMSTANCES AT THIS POINT IN TIME AND UNLESS I SEE
SOMETHING THAT DISABUSES ME OF IT, I INTEND AT SOME FUTURE
DATE TO AWARD SANCTIONS IN THAT AMOUNT.  SO IT'S HE'S GOT
TO EARN HIS WAY OUT OF IT, IF AT ALL.  AND I'M NOT TELLING
HIM THAT HE NECESSARILY CAN.

        SO I WILL SIGN AN ORDER COMPELLING AND RESPONSES
TO MR. KEEHN WITHIN 30 DAYS OF TODAY'S DATE.  BUT IF IT

COMES DOWN TO IT, HIS CLIENT'S NOT GOING TO HAVE TO PAY
FOR GOING THROUGH THIS.

    MR. HAYES:  SURE.

      AS FAR AS THE NEXT CONTINUED STATUS CONFERENCE
THEN, I HAVE TO BE BACK ON MAY 11TH IN ANOTHER MATTER. AND
MR. KEEHN THOUGHT THAT WOULD WORK FOR HIM.

    MR. KEEHN:  YEAH, THIRTY DAYS PUTS US AT MID-APRIL.
I DON'T EXPECT TO GET ANY RESPONSES AT ANYTHING OTHER THAN
CLOSE TO THE DEADLINE.  SO I'LL NEED SOME TIME TO ABSORB
WHAT IT IS I GET BY WAY OF RESPONSE.

      SO THE 9TH OF APRIL -- MAY, RATHER, WORKS FOR US
AS WELL.

    MR. HAYES:  THE 11TH.

    MR. KEEHN:  I'M SORRY?

    MR. HAYES:  THE 11TH OF MAY.

    MR. KEEHN:  OH, LET ME CHECK.

    MR. HAYES:  IF THAT WORKS FOR THE COURT.

    MR. KEEHN:  IT'S CLEAR ON MY CALENDAR.

    THE COURT:  MARILYN?

    THE CLERK:  WE CAN DO THAT AT 9:30 ON MAY 11TH.

    MR. HAYES:  PERFECT.

    MR. KEEHN:  AND YOUR HONOR, MAY WE ALSO USE THAT DATE
FOR ANY OTHER ENFORCEMENT ORDERS?

    THE COURT:  ONLY IF THEY'RE TIMELY FILED MOTIONS.

    MR. KEEHN:  I REALIZE THAT.  BUT IF THEY ARE, MAY WE
HAVE THAT DATE?

    THE COURT:  CONTACT MS. WILKINSON BECAUSE SHE'LL

HAVE TO BE ABLE TO TELL YOU, WHEN YOU GET TO THAT POINT
IN TIME, WHETHER THERE'S ANY TIME TO DO THAT.

    MR. KEEHN:  FAIR ENOUGH.

      THANK YOU.

    MR. HAYES:  THANK YOU, YOUR HONOR.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

    I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY
CERTIFY:

    THAT I REPORTED IN SHORTHAND THE PROCEEDINGS
HELD IN THE FOREGOING CAUSE ON THE 12TH DAY OF MARCH, 2007;
THAT MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING
UNDER MY DIRECTION; AND, THAT THE FOREGOING TRANSCRIPT
CONTAINS A CORRECT STATEMENT OF THE PROCEEDINGS.

DATED THIS _____ DAY OF _____,
2008.


_____

LYNETTE ALVES, CSR #12534, RPR #61256

ASA 0601

# TAB 169

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHIEF JUDGE PETER W. BOWIE, PRESIDING


|  |  |
|---|---|
| | ) |
| | ) |
| FRANCIS J. LOPEZ | ) CASE NO. 05-05926-PB |
| | ) |
| | ) |
| _____ | ) |


STATUS CONFERENCE ON INVOLUNTARY PETITION AND ANSWER


REPORTER'S TRANSCRIPT OF PROCEEDINGS

SAN DIEGO, CALIFORNIA
MONDAY, OCTOBER 1, 2007


SAN DIEGO BANKRUPTCY REPORTERS
BY: LYNETTE ALVES
P.O.BOX 496
SOLANA BEACH, CA 92075
(858) 336-8558

**APPEARANCES**

**M. JONATHAN HAYES**

LAW OFFICE OF M. JONATHAN HAYES

21800 OXNARD ST.

SUITE 840

WOODLAND HILLS, CA 91367

(818) 710-3656


**L. SCOTT KEEHN**

KEEHN & ASSOCIATES, APC

402 WEST BROADWAY, SUITE 1210

SAN DIEGO, CA 92101

(619) 400-2200


SAN DIEGO, CALIFORNIA, MONDAY, OCTOBER 1, 2007, 10:30

--- O 0 O ---

THE CLERK:  IN THE MATTER OF FRANCIS J. LOPEZ:

ASA 0603

CONTINUED STATUS CONFERENCE ON INVOLUNTARY PETITION AND
ANSWER.

       I'LL TAKE THE TELEPHONIC APPEARANCE FIRST,
FOLLOWED BY THOSE IN COURT.

    MR. HAYES:  GOOD MORNING, YOUR HONOR.

       THIS IS JOHN HAYES APPEARING FOR THE ALLEGED
DEBTOR, FRANCIS LOPEZ.  AND THANK YOU FOR LETTING ME
APPEAR BY TELEPHONE.

    THE COURT:  MR. HAYES.

     MR. KEEHN?

    MR. KEEHN:  THANK YOU, YOUR HONOR.

       SCOTT KEEHN APPEARING ON BEHALF OF THE
PETITIONING CREDITORS.

    THE COURT:  AND I SAW WHAT YOU FILED THURSDAY AND
FRIDAY; BUT ONLY THIS MORNING.

    MR. KEEHN:  WELL, LET ME TRY AND CAPSULIZE IT FOR YOU.

       WE THOUGHT WE WOULD BE HERE TODAY, READY TO SET
A DATE FOR A SUMMARY JUDGMENT MOTION BECAUSE WE WOULD HAVE
COMPLETED THE LAST DISCOVERY ACT REALLY NECESSARY FOR
THAT; AND THAT WOULD BE THE DECLARATION OF YOUNG MR. LOPEZ.
AND WE HAVE NOT TAKEN MR. LOPEZ'S DEPOSITION.  AND
ACTUALLY, THIS IS THE SECOND TIME THAT HE HAS FAILED TO
APPEAR.

       ON LATE IN THE AFTERNOON OF THE DAY BEFORE HIS
DEPOSITION WAS TO OCCUR, HE COMMUNICATED THROUGH HIS
COUNSEL THAT HE WOULD NOT BE ATTENDING BECAUSE HE HAD BEEN
UNABLE TO MAKE TRAVEL ARRANGEMENTS FROM FLORIDA TO SAN

DIEGO FOR THAT APPEARANCE.  NOW, IF HE'D ONLY STARTED ON
THE DAY BEFORE, I CAN UNDERSTAND WHY HE WOULD HAVE
DIFFICULTY; HOWEVER, THERE WAS WELL OVER A MONTH WHEN HE
KNEW WHAT THE DATE WAS.  AS I HAVE INDICATED, THIS IS HIS
SECOND TIME OF, SORT OF, I FEEL LIKE CHARLIE BROWN TRYING
TO KICK THE FOOTBALL WITH LUCY HOLDING.  EVERY TIME WE GET
UP TO DO THE KICK, THE BALL IS PULLED AWAY.

            AND I THINK IT'S RELEVANT, YOUR HONOR, THAT WE
REVISIT THE FIRST SANCTIONS AWARD BECAUSE WE HAVE
REQUESTED $4,442 SEVERAL MONTHS AGO WHEN WE WERE TRYING
TO FORCE   MR. LOPEZ TO RESPOND TO WRITTEN DISCOVERY.
THE COURT INDICATED THAT IT WANTED TO LEAVE THAT HANGING
AS A, SORT OF, DAMOCLES --

        THE COURT:  I'VE READ YOUR PLEADINGS.

        MR. KEEHN:  OKAY.  WELL, I THINK IT'S CLEAR THAT,
SORT OF, DAMOCLES DOESN'T WORK.  AND IT'S NOT GOING TO
WORK.  IT DIDN'T WORK IN PRODUCING ANY WRITTEN DISCOVERY;
YOU FINALLY HAD TO ISSUE AN EVIDENTIARY SANCTION.

            I DON'T THINK IT'S GOING TO WORK TO PRODUCE HIS
APPEARANCE AND MEANINGFUL PARTICIPATION IN THE DEPOSITION
BECAUSE IT'S JUST NOT HIS NATURE TO GO ALONG WITH THAT.
WE'RE IN THE PROCESS OF PREPARING A FOLLOW-UP SANCTIONS
MOTION TO RECOUP COSTS INCURRED IN PREPARING NOW TWICE FOR
THE ABORTED DEPOSITION.

            BUT STILL I THINK IT'S TIME THE, SORT OF,
DAMOCLES FELL.  AND I HAD ALERTED MR. HAYES THAT I'D BE
ASKING TO YOU CUT THE STRING THAT SUSPENDS IT AND IMPOSE

THOSE SANCTIONS AT THIS TIME.

    THE COURT:  MR. HAYES.

    MR. HAYES:  YES.  THANK YOU, YOUR HONOR.

       FIRST OF ALL, I GOT THE 130-SOME-ODD PAGES ON FRIDAY MORNING BY E-MAIL AND I HAVE LOOKED THEM OVER. MR. LOPEZ HAS COMMITTED TO APPEAR IN SAN DIEGO ON OCTOBER 22ND.  AND MR. KEEHN HAS RE-SET THE DEPOSITION DATE FOR THAT DAY.

       WHAT I WOULD ASK THE COURT, AND I'M NOT SURE, I DON'T KNOW WHAT MR. KEEHN MEANS BY THE SECOND NON-APPEARANCE.  BUT WHAT I WOULD ASK THE COURT IS -- HE'S GOING TO FILE A SECOND SANCTIONS MOTION ANYWAY.  I WOULD ASK THE COURT TO CONSIDER THE REQUEST TODAY, AT THAT TIME, AND TO WAIT UNTIL OCTOBER 22ND, AT WHICH TIME I'M PERSONALLY CONVINCED HE WILL APPEAR IN SAN DIEGO.

       BEYOND THAT, I DON'T -- I MEAN, I DON'T HAVE A SPECIFIC RESPONSE TO WHY HE SUDDENLY DIDN'T SHOW UP ON SEPTEMBER 11TH.  I DON'T KNOW WHAT -- I MEAN, I DON'T SEE THE -- I GOT PROPER NOTICE, FRANKLY, OF THIS REQUEST FOR SANCTIONS.  MR. KEEHN HAS ASKED FOR THESE SANCTIONS EACH OF THE LAST THREE OR FOUR HEARINGS.  AND I'M NOT SURPRISED THAT HE'S ASKING AGAIN.  BUT I WOULD ASK THE COURT TO PUT IT OFF UNTIL THERE'S A MOTION PENDING BEFORE YOUR HONOR.

    THE COURT:  WELL, IT'S BEEN HANGING OUT THERE; THAT PART IS TRUE.

       MY VIEW ON THE SANCTIONS IS THAT I WILL VIEW THAT INDEPENDENTLY.  I VIEW THAT IT IS NO LONGER THE, SORT OF,

DAMOCLES; WHETHER OR NOT MR. LOPEZ APPEARS ON THE 22ND FOR
THE DEPOSITION.  I WILL ENTERTAIN ALL OF IT IN YOUR
NEXT -- BECAUSE YOU SAY YOU'VE GOT YOUR NEXT ONE COMING.

YOU MAY BE RIGHT THAT THE, SORT OF, DAMOCLES
HASN'T WORKED, IN WHICH CASE, ENTERING AN ORDER TODAY ON
THIS KIND OF NOTICE -- I MEAN, YOU SAID YOU TOLD MR. HAYES
ON THE 20TH THAT YOU WERE GOING TO BE ASKING THAT; YOU PUT
IT IN PLEADINGS FILED FIRST LAST THURSDAY; SUPPLEMENTED
ON FRIDAY.  WE'D ALREADY REVIEWED THE FILE AT THAT POINT
IN TIME AND DID NOT KNOW THAT THAT WAS COMING ON UNTIL I
WENT BACK AND LOOKED AT IT AGAIN THIS MORNING.  BUT I SAW
IT THEN.

UNDER THOSE CIRCUMSTANCES, I'M GOING TO CONSIDER
IT.  AND I'LL CONSIDER IT AT OUR NEXT HEARING, WHEREVER
THAT IS, WHEN YOU FILE YOUR NEXT -- YOU KNOW, ESSENTIALLY
YOUR SUPPLEMENT FOR IT.

BUT I VIEW THAT THE STRING HAS BEEN SEVERED.  AND
SO I WILL DECIDE WHAT, IF ANYTHING, TO AWARD AS OF THIS
POINT IN TIME INDEPENDENT OF WHAT COMES UP NEXT.  IT'S NO
LONGER INTENDED AS ESSENTIALLY A CIVIL COERCION TO GET HIM
THERE.  IF HE DOESN'T GET THERE, HAVING ALREADY HAD
EVIDENTIARY SANCTIONS IMPOSED, THEN, YOU KNOW, WE'LL FIND
SOMETHING ELSE THAT MAYBE WORKS.

    MR. KEEHN:  THAT'S FINE, YOUR HONOR.

WE ANTICIPATE HAVING THE MOTION, THE
SUPPLEMENTAL MOTION, FILED THIS WEEK.  SO PERHAPS IF WE
COULD JUST GET THE DATE FOR THAT NOW SO WE CAN SAVE SOME

TIME?

THE COURT:  SO SOMETIME IN THE WEEK OF, SAY, WELL, PROBABLY NOVEMBER 12TH, MARILYN, SOMETHING LIKE THAT?  IS THAT A HOLIDAY OR SOMETHING?

THE CLERK:  THE 12TH IS THE HOLIDAY.  WE HAVE COURT ON THE 13TH.

THE COURT:  BUT IS THAT THE CHAPTER 13'S?

THE CLERK:  IN THE MORNING.  AND THERE'S A --

THE COURT:  -- CALENDAR IN THE AFTERNOON?

THE CLERK:  YES, BUT IT'S A SHORT ONE.

THE COURT:  SO WE COULD PUT THAT ON THE AFTERNOON OF THE 13TH.

DOES THAT WORK, MR. KEEHN?

MR. KEEHN:  IT'S CLEAR ON MY CALENDAR.

THE COURT:  MR. HAYES?

MR. HAYES:  YOUR HONOR, ACTUALLY, I HAVE A L.A. COUNTY BAR BANKRUPTCY LUNCHEON THAT DAY.  BUT, I MEAN, THAT'S THE ONLY THING I HAVE.  IT WOULDN'T BE THE END OF THE WORLD IF I DIDN'T GO.

THE COURT:  WELL, LET'S LOOK AT THE 19TH.

MR. KEEHN:  THAT WHOLE WEEK, THE 19TH OR THE 16TH WOULD WORK.

THE COURT:  WHAT ABOUT THE 19TH, MARILYN?

THE CLERK:  THE AFTERNOON IS CLEAR ON THE 19TH.

THE COURT:  OKAY.  YOU WANT TO PUT IT AT 2:00?

THE CLERK:  SURE.

MR. KEEHN:  2:00?

ASA 0608

THE COURT:  2:00 ON THE 19TH OF NOVEMBER.

THE CLERK:  AND THIS IS FOR THE SANCTIONS MOTION?

THE COURT:  FOR PROPOSED SANCTIONS MOTION AND
CONTINUED STATUS CONFERENCE.

MR. HAYES:  GREAT.

MR. KEEHN:  OKAY.  THANK YOU, YOUR HONOR.

MR. HAYES:  THANK YOU, YOUR HONOR.

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

I, LYNETTE ALVES, OFFICIAL REPORTER, DO HEREBY
CERTIFY:

THAT I REPORTED IN SHORTHAND THE PROCEEDINGS
HELD IN THE FOREGOING CAUSE ON THE 1ST DAY OF OCTOBER,
2007; THAT MY NOTES WERE LATER TRANSCRIBED INTO
TYPEWRITING UNDER MY DIRECTION; AND, THAT THE FOREGOING
TRANSCRIPT CONTAINS A CORRECT STATEMENT OF THE

**ASA 0609**

PROCEEDINGS.


DATED THIS _____ DAY OF _____, 2005.


_____

LYNETTE ALVES, CSR #12534, RPR #61256

ASA 0610